# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **Cummings Manookian, PLLC** | ) | CASE NO. **319-07235-CW-7** |
| | ) | Chapter 7 |
| Debtor(s) | ) | Judge Walker |

**THE DEADLINE FOR FILING A TIMELY RESPONSE IS:   June 17, 2021**
**IF A RESPONSE IS TIMELY FILED, A HEARING WILL BE:   June 25, 2021, 11:00a.m.,**
**By AT & T conference line number 1-888-363-4749; Access Code 7250422#**

## NOTICE OF CHAPTER 7 TRUSTEE'S OBJECTION TO CLAIM NUMBER 6 FILED BY RONETTE LEAL MCCARTHY, ESQ

Jeanne Ann Burton, Trustee, has asked the court for the following: order to disallow claim number 6.

**YOUR RIGHTS MAY BE AFFECTED.** If you do not want the court to grant the attached motion, or if you want the court to consider your views on the motion, then on or before the response date stated above, you or your attorney must:

1. File with the court your response, answer, or objection explaining your position. **PLEASE NOTE: THE BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE REQUIRES ELECTRONIC FILING. ANY RESPONSE, ANSWER OR OBJECTION YOU WISH TO FILE MUST BE SUBMITTED ELECTRONICALLY. TO FILE ELECTRONICALLY, YOU OR YOUR ATTORNEY MUST GO TO THE COURT WEBSITE AND FOLLOW THE INSTRUCTIONS AT: <https://ecf.tnmb.uscourts.gov>.**

If you need assistance with Electronic Filing, you may call the Bankruptcy Court at (615) 736-5584. You may also visit the Bankruptcy court in person at: 701 Broadway, 1st Floor, Nashville, TN (Monday - Friday, 8:00 a.m. - 4:00 p.m.).

2.      **Your response should state  the deadline for filing responses, the date of the scheduled hearing is and the motion to which you are responding.**

If a response is filed before the deadline stated above, a hearing will be held at the time and place indicated above. **THERE WILL BE NO FURTHER NOTICE OF THE HEARING DATE.** You may check whether a timely response has been filed by calling the Clerk's office at 615-736-5584 or viewing the case on the Court's website at **<https://ecf.tnmb.uscourts.gov>.**

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter the original of the attached order granting that relief.

Date: **5/18/2021**

/s/ **Jeanne Ann Burton**
Jeanne Ann Burton
 Jeanne Ann Burton, PLLC
Attorneys for Trustee
4117 Hillsboro Pike, Ste 103-116
Nashville, TN 37215
(615) 678-6960
jeanne.burton@comcast.net

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE: )
Cummings Manookian, PLLC ) CASE No. 319-07235-CW-7
    Debtor(s) ) CHAPTER 7
     ) JUDGE Walker

## <u>CHAPTER 7 TRUSTEE'S OBJECTION TO CLAIM NUMBER 6 FILED BY RONETTE LEAL MCCARTHY, ESQ.</u>

Jeanne Ann Burton, Trustee, by and through counsel, respectfully represents the following to the Court:

1. This Chapter 7 case was filed on November 6, 2019. The Trustee was appointed as the Chapter 7 Trustee and is duly qualified.

2. Claim number 6 ("Claim") filed by Ronette Leal McCarthy, Esq. (the "Claimant"), is an unsecured claim for a referral fee of no less than 25% of a $1,350,000.00 contingency fee for settlement of a wrongful death action ($337,500.00).

The Tennessee Rules of Professional Conduct, Rule 1.5: Fees provides in RPC1.5(e): A division of a fee between lawyers who are not in the same firm may be made only if:
(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation; (2) The client agrees to the arrangement, and the agreement is confirmed in writing; and (3) the total fee is reasonable.

The Addendum to the Claim states that Debtor agreed to pay Claimant a referral fee; however there appears to be no confirmation in writing that the Debtor or the client agreed to the arrangement as required by the Rules. Even if the client had agreed to the fee sharing in writing, Claimant has made no showing that the division of fees were proportionate to the services she performed for the client, that she had assumed joint responsibility for the representation, or the $337,500.00 is a reasonable fee for the services she provided the client, if any. Accordingly, the Claim should be disallowed.

3. Pursuant to B.R. 3007 and L.B.R. 3007-1, a declaration under penalty of perjury stating the basis for disallowance of the Claim is attached hereto and made a part hereof.

4. Pursuant to B.R. 3007 and L.B.R. 3007-1, notice of this objection shall be mailed to the Claimant, giving the Claimant 30 days to file an objection hereto.

**WHEREFORE, THE TRUSTEE PRAYS** for the entry of an order sustaining Trustee's objection and disallowing the Claim, and for such other relief as is necessary and appropriate.

**DATED: 5/18/2021**

Respectfully submitted,
JEANNE ANN BURTON, PLLC

**/s/ Jeanne Ann  Burton**
Jeanne Ann Burton
4117 Hillsboro Pike, Ste 103-116
Nashville, Tennessee 37215
(615) 678-6960
jeanne.burton@comcast.net

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the NOTICE, OBJECTION and PROPOSED ORDER was either mailed electronically or by U.S. mail, postage prepaid, this 18th day of May, 2021, to the United States Trustee, to the Debtor, to the Debtor's attorney and to all creditors as listed on the matrix attached to the original of this pleading on file with the Clerk of the Court.

**/s/ Jeanne Ann Burton**
Jeanne Ann Burton

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE:                              )
Cummings Manookian, PLLC         ) CASE No. 319-07235-CW-7
      Debtor(s)                    ) CHAPTER 7
                               ) JUDGE  Walker

## PROPOSED ORDER DISALLOWING CLAIM NUMBER 6 FILED BY RONETTE LEAL MCCARTHY, ESQ.

Upon the Motion of Jeanne Ann Burton, Trustee, objecting to to Claim Number 6 ; thirty (30) days notice having been given pursuant to L.B.R. 9013-1 and L.B.R. 3007-1, and no objections having been filed;

**IT IS HEREBY ORDERED** that Claim Number 6 in this case shall be disallowed.

**IT IS FURTHER ORDERED** that this order is deemed a final determination as to the disallowance of Claim Number 6.

**This order was signed and entered electronically as indicated at the top of the first page.**

Submitted for entry:
JEANNE ANN BURTON, PLLC

/s/ Jeanne Ann Burton
Jeanne Ann Burton
4117 Hillsboro Pike, Ste 103-116
Nashville, Tennessee 37215
(615) 678-6960
jeanne.burton@comcast.net

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| Cummings Manookian, PLLC | ) | CASE NO. 319-07235-CW-7 |
| | ) | CHAPTER 7 |
| | ) | JUDGE Walker |
| Debtor(s) | ) | |

## <u>DECLARATION OF JEANNE ANN BURTON, TRUSTEE IN SUPPORT OF OBJECTION TO CLAIM NUMBER 6 FILED BY RONETTE LEAL MCCARTHY, ESQ.</u>

Comes now Jeanne Ann Burton, Trustee, and declares as follows:

1. I am the duly appointed Chapter 7 Trustee in the case of Cummings Manookian, PLLC, Case No. 319-07235-CW-7, pending in the United States Bankruptcy Court for the Middle District of Tennessee.

2. In my capacity as Chapter 7 Trustee, I have examined all proofs of claim filed in the case.

3. My review indicates that Claim 6 filed by Ronette Leal McCarthy, Esq. is an unsecured claim for a referral fee of no less than 25% of a $1,350,000.00 contingency fee for settlement of a wrongful death action ($337,500.00).

The Tennessee Rules of Professional Conduct, Rule 1.5: Fees provides in RPC1.5(e): A division of a fee between lawyers who are not in the same firm may be made only if:(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation; (2) The client agrees to the arrangement, and the agreement is confirmed in writing; and (3) the total fee is reasonable.

The Addendum to the Claim states that Debtor agreed to pay Claimant a referral fee; however there appears to be no confirmation in writing that the Debtor or the client agreed to the arrangement as required by the Rules. Even if the client had agreed to the fee sharing in writing, Claimant has made no showing that the division of fees were proportionate to the services she performed for the client, that she had assumed joint responsibility for the representation, or the $337,500.00 is a reasonable fee for the services she provided the client, if any. Accordingly, the Claim should be disallowed.

Under penalty of perjury, I declare that the foregoing is true and correct to the best o my knowledge, information, and belief.

Dated this 18th day of May, 2020

/s/ Jeanne Ann burton, Trustee
JEANNE ANN BURTON, TRUSTEE

CUMMINGS MANOOKIAN, PLLC
c/o Brian Manookian
45 Music Square West
NASHVILLE, TN 37203-3205

Steven L. Lefkovits
Lefkovitz and Lefkovitz, PLLC
618 Church St., Ste 410
NASHVILLE, TN 37219-2452

Dean Chase, Sandra Chase and D.F. Chase, Inc
c/o Daniel H. Puryear
104 Woodmont Blvd-Ste 201
Nashville, TN 37205-2245

GRANT KONVALINKA & HARRISON, P.C.
c/o Harry R. Cash
633 Chestnut St., Ste 900
CHATTANOOGA, TN 37450-0900

George Robertson, M.D .and Family Medical Associates
c/o Phillip North, Noth Pursell & Ramos, PLLC
414 Union Street
Nashville, TN 37219-1783

Toby Smith, M.D. and Middle TN Pulmonary
c/o Phillip North, North Pursell & Ramos, PLLC
414 Union St., Ste 1850
Nashville, TN 37219-1783

Afsoon Hagh and Hagh Law, PLLC
c/o Craig V. Gabbert, Jr. and Glen B. Rose, Bass,
Berry & Sims PLC
150 Third Ave. S., Ste. 2800
Nashville, TN 37201

Ronette Leal McCarthy, Esq
c/o Lynne B. Xerras, Esq.
Holland & Knight LLP, 10 St. James Ave.
Boston, MA 02116

InsBank
Philip Fons, EVP & CCO
2106 Crestmoor Rd
Nashville, TN 37215

Megan Seliber
Office of UST
701 Broadway, Ste 318
Nashville, TN 37203

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

In re: )
)
**Cummings Manookian, PLLC** ) **Bankruptcy Case No. 3:19-bk-07235**
**Debtor.** ) **Chapter 7**
) **Judge Walker**
)

## Withdrawal of Proof of Claim

INSBank respectfully gives notice that it is withdrawing its proof of claim (Proof of Claim #1) due to payoff. Specifically, the real estate collateral securing INSBank's loan to Debtor was sold and the loan paid in full. INSBank has contemporaneously updated its claim, on the claims register, to list a claim amount of zero.

Respectfully submitted,

*/s/ Michael G. Abelow*
Michael G. Abelow (No. 26710)
SHERRARD ROE VOIGT & HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, Tennessee 37201
Telephone: (615) 742-4200
Fax: (615) 742-4539
mabelow@srvhlaw.com

<u>CERTIFICATE OF SERVICE</u>

I certify that true and exact copies of the foregoing have been served via the Court's electronic filing system on May 17, 2021 on all filing users accepting electronic service.

*/s/ Michael G. Abelow*

## IN THE UNITED STATES BANKRUPTCY COIURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Cummings Manookian, PLLC | ) | CASE NO. 319-07235-CW-7 |
| | ) | Chapter 7 |
| Debtor(s) | ) | Judge Walker |

## RESPONSE TO CHAPTER 7 TRUSTEE'S OBJECTION TO CLAIM
## NUMBERS 3 AND 4

COMES NOW, North Pursell and Ramos on behalf of Family Medical Associates, a/k/a Family Medical. P.C. and Toby Smith, M.D. and Middle TN Pulmonary Associates, and makes the following response to the Trustee's objection to their claims number 3 and 4.

The debt underlying these claims has particular significance. It is not an ordinary commercial or consumer debt. Rather, it is a debt that arises from sanctions imposed by two Circuit Courts of the State of Tennessee against a now suspended attorney for misconduct during the state judicial process.

There is, therefore, a strong public policy consideration in the enforcement of these judgments from the courts of general jurisdiction for the State of Tennessee.

Claims 3 and 4 are also based upon "Charging Orders" entered pursuant to TCA 48-249-507 et seq. by the Honorable John Wootten, Judge of the Circuit Court of Wilson County and the Honorable Don Ash, sitting by special appointment to the Circuit Court of Davidson County, Tennessee.

While the underlying Orders imposing monetary sanctions are against Brian Manookian individually, the charging orders go against "…any interest of Brian Philip Manookian in any limited liability company, partnership or joint venture in which he may be engaged…"

Both Charging Orders from the State Courts state that the financial interests of Brian Philip Manookian in the corporate entities "…Cummings Manookian, PLC, Hagh Law, PLLC and Manookian, PLLC are hereby subjected to an encumbrance and lien imposed by the Charging Order …"

By the terms of the Charging Orders, the judgments against Brian Manookian are payable to the Circuit Court Clerk of the respective counties.

The underlying monetary judgment in the Davidson County matter was sustained on appeal by the Tennessee Court of Appeals.  No appeal to the Supreme Court was made. The judgments from Wilson County were not appealed and are now final.

No effort has been made by Brian Philip Manookian to comply with the Sanction Orders from the state courts.

According to the website of the Secretary of State for the State of Tennessee, Cummings Manookian PLC has been dissolved and thus no longer exists.

Respondent is advised that the Trustee in the instant case is holding substantial funds pending a decision on how those funds are to be allocated.  The allocation of these funds is of vital importance to the Respondent in that whatever is determined to be payable to Brian Philip Manookian should go first to satisfy the obligations reflected in the Charging Orders and be payable to the Circuit Court Clerks of the respective counties in Tennessee.

It is a matter of fundamental fairness and due process that the Respondents be allowed notice and an opportunity to be heard when the allocation decisions are made in the instant case.

The enforcement of these disciplinary Sanction Orders is vital to uphold the integrity of the state judicial process. The enforcement has particular public policy justification including the preservation of the public confidence in the bar and the state judicial process.

Therefore, Respondents respectfully request the Court overrule the Objections of the Trustee to Claims 3 and 4 at least until such time as a distribution is imminent allowing the Respondent to continue to receive notice and an opportunity to be heard on matters that could affect the enforcement of these vital state court rulings.

The deadline for filing this Response is June 17, 2021. Since this Response has been timely filed, a hearing will be held June 25, 2021 at 11:00 a.m. by AT &T conference line number 1-888-363-4749; Access Code: 7250422#

Respectfully submitted,

/s/ Phillip North
Phillip North, #2407
***North, Pursell & Ramos, PLC***
Philip's Plaza
414 Union Street, Suite 1850
Nashville, Tennessee 37219-1783
(615) 255-2555 – Telephone
(615) 255-0032 – Facsimile
pn@npr.legal
*Counsel for Toby Smith, M.D.,Middle Tennessee Pulmonary Associate, PLLC, George Robertson, M.D. and Family Medical Associates.*

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Response was either mailed electronically or by U.S. Mail, postage prepaid, this 17th day of June, 2021, to the United States Trustee, to the Debtor, to the Debtor's attorney and to all creditors as listed on the matrix attached to the original of this pleading on file with the Clerk of the Court.

/s/ Phillip North
Phillip North

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| **Debtor.** | ) | **Chapter 7** |
| | ) | **Judge Walker** |

---

## MOTION TO CONTINUE HEARING ON TRUSTEE'S
## OBJECTION TO CLAIM NUMBERS 3 AND 4

---

Come now Jeanne Ann Burton, Trustee (the "Trustee"), by and through counsel, and requests a continuance until July 15, 2021, of the hearing on the Chapter 7 Trustee's Objection to Claim Number 3 of North, Pursell & Ramos, PLC, on Behalf of Family Medical Associates, a/k/a Family Medical, P.C. (Doc. 98), the Chapter 7 Trustee's Objection to Claim Number 4 of North, Pursell & Ramos, PLC, on Behalf of Toby Smith, M.D. and Middle TN Pulmonary Assoc. (Doc. 99) (Doc. 98 and Doc. 99, collectively, the "Claim Objections"), and the Response to Chapter 7 Trustee's Objection to Claim Numbers 3 and 4 (Doc. 102) (the "Response"). In support for this request, the Trustee states that the Trustee and her counsel have a conflict for the hearing currently scheduled for June 25, 2021, and the Trustee is exploring whether the parties can resolve this matter with an agreed order. The parties believe that, with a brief continuance, they will likely be able to resolve this matter. Counsel for the responding parties has consented to the proposed continuance.

Therefore, the Trustee requests that the hearing currently scheduled for June 25, 2021, be reset on or after July 15, 2021.

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was served via the Court's electronic filing system upon all parties having entered appearances therein, and via United States mail, postage prepaid, upon the following, this the 22nd day of June, 2021:


Phillip North
North, Pursell & Ramos, PLC
414 Union Street, Suite 1850
Nashville, TN 37219


/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| **Debtor.** | ) | **Chapter 7** |
| | ) | **Judge Walker** |

---

**ORDER CONTINUING HEARING ON TRUSTEE'S**
**OBJECTION TO CLAIM NUMBERS 3 AND 4**

---

This matter is currently set for a hearing on the Chapter 7 Trustee's Objection to Claim Number 3 of North, Pursell & Ramos, PLC, on Behalf of Family Medical Associates, a/k/a Family Medical, P.C. (Doc. 98), the Chapter 7 Trustee's Objection to Claim Number 4 of North, Pursell & Ramos, PLC, on Behalf of Toby Smith, M.D. and Middle TN Pulmonary Assoc. (Doc. 99) (Doc. 98 and Doc. 99, collectively, the "Claim Objections"), and the Response to Chapter 7 Trustee's Objection to Claim Numbers 3 and 4 (Doc. 102) (the "Response") on June 25, 2021. Upon consideration of the Motion to Continue Hearing on Trustee's Objection to Claim Numbers 3 and 4 (the "Motion to Continue") filed by the Trustee, and counsel for the Trustee having represented that all parties have agreed to the requested continuance, and for the reasons set forth in the Motion to Continue, the Court finds that good cause exists and, therefore,

1.     **IT IS ORDERED** that the hearing on the Claim Objections and the Response presently set on June 25, 2021 is hereby be reset to _____, **2021 at _____ a.m.** via AT&T Conference Line, Call-In Number 1-888-363-4749, Access Code 7250422#.

```
┌─────────────────────────────────────────────────────────────────┐
│         THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS       │
│             INDICATED AT THE TOP OF THE FIRST PAGE                │
└─────────────────────────────────────────────────────────────────┘
```

APPROVED FOR ENTRY:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee



Charles M. Walker
U.S. Bankruptcy Judge
Dated: 6/22/2021

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | Case No. 3:19-bk-07235 |
| Debtor. | ) | Chapter 7 |
| | ) | Judge Walker |

---

### ORDER CONTINUING HEARING ON TRUSTEE'S
### OBJECTION TO CLAIM NUMBERS 3 AND 4

---

This matter is currently set for a hearing on the Chapter 7 Trustee's Objection to Claim Number 3 of North, Pursell & Ramos, PLC, on Behalf of Family Medical Associates, a/k/a Family Medical, P.C. (Doc. 98), the Chapter 7 Trustee's Objection to Claim Number 4 of North, Pursell & Ramos, PLC, on Behalf of Toby Smith, M.D. and Middle TN Pulmonary Assoc. (Doc. 99) (Doc. 98 and Doc. 99, collectively, the "Claim Objections"), and the Response to Chapter 7 Trustee's Objection to Claim Numbers 3 and 4 (Doc. 102) (the "Response") on June 25, 2021. Upon consideration of the Motion to Continue Hearing on Trustee's Objection to Claim Numbers 3 and 4 (the "Motion to Continue") filed by the Trustee, and counsel for the Trustee having represented that all parties have agreed to the requested continuance, and for the reasons set forth in the Motion to Continue, the Court finds that good cause exists and, therefore,

1. **IT IS ORDERED** that the hearing on the Claim Objections and the Response

presently set on June 25, 2021 is hereby be reset to ___July 21_____, **2021 at** 11:00 **a.m.**

via AT&T Conference Line, Call-In Number 1-888-363-4749, Access Code 7250422#.

┌─────────────────────────────────────────────────────────┐
│   THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS    │
│        INDICATED AT THE TOP OF THE FIRST PAGE            │
└─────────────────────────────────────────────────────────┘

APPROVED FOR ENTRY:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

410

United States Bankruptcy Court
Middle District of Tennessee

In re:                                         Case No. 19-07235-CMW

CUMMINGS MANOOKIAN, PLLC               Chapter 7

     Debtor

# CERTIFICATE OF NOTICE

| District/off: 0650-3 | User: jmw0113 | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Jun 22, 2021 | Form ID: pdf001 | Total Noticed: 1 |

The following symbols are used throughout this certificate:

**Symbol**       **Definition**

+                 Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jun 24, 2021:**

| Recip ID | Recipient Name and Address |
|---|---|
| db | + CUMMINGS MANOOKIAN, PLLC, 45 MUSIC SQUARE WEST, NASHVILLE, TN 37203-3205 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jun 24, 2021              Signature:       /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on June 22, 2021 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com bankr@bassberry.com;delores.walker@bassberry.com |
| DANIEL HAYS PURYEAR | on behalf of Creditor D.F. Chase Inc. dpuryear@puryearlawgroup.com, paralegalgroup@puryearlawgroup.com |
| GLENN BENTON ROSE | on behalf of Defendant Hagh Law PLLC grose@bassberry.com bankr@bassberry.com |
| HARRY R CASH | on behalf of Creditor Grant Konvalinka & Harrison, P.C. hcash@gkhpc.com, hdowney@gkhpc.com |
| JEANNE ANN BURTON | TN24@ecfcbis.com |
| JOHN T. SPRAGENS | on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM spragenslaw@ecf.courtdrive.com |

Jeanne Ann Burton PLLC
                    jeanne.burton@comcast.net

LEFKOVITZ AND LEFKOVITZ, PLLC
                    on behalf of Debtor CUMMINGS MANOOKIAN  PLLC slefkovitz@lefkovitz.com,
                    sllbkecf@gmail.com;khancock@lefkovitz.com;lefkovitzcvlecf@lefkovitz.com;r52946@notify.bestcase.com;mspezia@lefkovitz.c
                    om

MEGAN REED SELIBER
                    on behalf of U.S. Trustee US TRUSTEE megan.seliber@usdoj.gov

MICHAEL G ABELOW
                    on behalf of Creditor INSBANK mabelow@srvhlaw.com  sdossey@srvhlaw.com;pacer.service@antage.net

PHILLIP G YOUNG
                    on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com

PHILLIP L NORTH
                    on behalf of Creditor Middle Tennessee Pulmonary pn@npr.legal

US TRUSTEE
                    ustpregion08.na.ecf@usdoj.gov


TOTAL: 13

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 6/22/2021



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| **Debtor.** | ) | **Chapter 7** |
| | ) | **Judge Walker** |

---

## ORDER CONTINUING HEARING ON TRUSTEE'S
## OBJECTION TO CLAIM NUMBERS 3 AND 4

---

This matter is currently set for a hearing on the Chapter 7 Trustee's Objection to Claim Number 3 of North, Pursell & Ramos, PLC, on Behalf of Family Medical Associates, a/k/a Family Medical, P.C. (Doc. 98), the Chapter 7 Trustee's Objection to Claim Number 4 of North, Pursell & Ramos, PLC, on Behalf of Toby Smith, M.D. and Middle TN Pulmonary Assoc. (Doc. 99) (Doc. 98 and Doc. 99, collectively, the "Claim Objections"),  and the Response to Chapter 7 Trustee's Objection to Claim Numbers 3 and 4 (Doc. 102) (the "Response") on June 25, 2021.  Upon consideration of the Motion to Continue Hearing on Trustee's Objection to Claim Numbers 3 and 4 (the "Motion to Continue") filed by the Trustee, and counsel for the Trustee having represented that all parties have agreed to the requested continuance, and for the reasons set forth in the Motion to Continue, the Court finds that good cause exists and, therefore,

1.     **IT IS ORDERED** that the hearing on the Claim Objections and the Response

presently set on June 25, 2021 is hereby be reset to ___July 21_____, **2021 at** <u>11:00</u> **a.m.**

via AT&T Conference Line, Call-In Number 1-888-363-4749, Access Code 7250422#.

| THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE |
|---|

APPROVED FOR ENTRY:

/s/ Phillip G. Young, Jr._____
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| **Debtor.** | ) | **Chapter 7** |
| | ) | **Judge Walker** |

<u>**NOTICE OF EXTENSION OF TIME TO RESPOND TO CHAPTER 7 TRUSTEE'S
OBJECTION TO CLAIM NUMBER 6 FILED BY RONETTE LEAL MCCARTHY**</u>

Jeanne Ann Burton, chapter 7 trustee herein (the "Trustee"), hereby gives notice that she

has granted an extension of time to Ronette Leal McCarthy ("Claimant") to file a response to the

Chapter 7 Trustee's Objection to Claim Number 6 Filed by Ronette Leal McCarthy (the "Claim

Objection"). The Trustee has extended the Claimant's deadline to respond to the Claim

Objection to July 19, 2021. If the Trustee and the Claimant have not resolved this matter prior to

the extended response deadline, and the Claimant files a timely response, the Trustee will file a

notice with this Court scheduling a hearing on the Claim Objection.

Dated: June 29, 2021

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
Email: phillip@thompsonburton.com

Special Counsel for Trustee

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was served via the Court's electronic filing system upon all parties having entered appearances therein.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN RE: )
)
CUMMINGS MANOOKIAN, PLLC, ) Case No. 3:19-bk-07235
    Debtor. ) Chapter 7
) Judge Walker

---

**THE DEADLINE FOR FILING A TIMELY RESPONSE IS July 27, 2021**
**IF A RESPONSE IS TIMELY FILED, THE HEARING WILL BE: August 11, 2021 at 9:00 a.m., by AT&T**
**conference line number 1-888-363-4749, Access Code 7250422#**

---

NOTICE OF TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT

    Jeanne Ann Burton, Trustee, has asked the court for the following relief: approval of compromise and settlement.

    **YOUR RIGHTS MAY BE AFFECTED.** If you do not want the court to grant the attached motion by entering the attached order, or if you want the court to consider your views on the motion, then on or before July 27, 2021, you or your attorney must:

1.     File with the court your response or objection explaining your position. **PLEASE NOTE: THE BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE REQUIRES ELECTRONIC FILING. ANY RESPONSE OR OBJECTION YOU WISH TO FILE MUST BE SUBMITTED ELECTRONICALLY. TO FILE ELECTRONICALLY, YOU OR YOUR ATTORNEY MUST GO TO THE COURT WEBSITE AND FOLLOW THE INSTRUCTIONS AT: <https://ecf.tnmb.uscourts.gov>.**

    If you need assistance with Electronic Filing you may call the Bankruptcy Court at (615) 736-5584.

2.     **Your response must state that the deadline for filing responses is July 27, 2021, the date of the scheduled hearing is August 11, 2021, and the motion to which you are responding is the Trustee's Motion to Approve Compromise and Settlement.**

3.     You must serve your response or objection **by electronic service through the Electronic Filing system** described above. You must also mail a copy of your response or objection to:

| | | |
|---|---|---|
| Jeanne Ann Burton | United States Trustee | Phillip G. Young, Jr. |
| 4117 Hillsboro Pike | 701 Broadway, Customs House Suite 318 | Thompson Burton PLLC |
| Suite 103-116 | Nashville, TN 37203 | One Franklin Park |
| Nashville, TN 37218 | | 6100 Tower Circle, Suite 200 |
| | | Franklin, TN 37067 |

    If a response is filed before the deadline stated above, the hearing will be held at the time and place indicated above. ***THERE WILL BE NO FURTHER NOTICE OF THE HEARING DATE.*** You may check whether a timely response has been filed by calling the Clerk's office at (615) 736-5584 or viewing the case on the Court's website at <https://ecf.tnmb.uscourts.gov>.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter the attached order granting that relief.

Dated: July 6, 2021

By: /s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: 615-465-6008
phillip@thompsonburton.com

*Special Counsel to Trustee*

2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

IN RE:                      )

                            )

CUMMINGS MANOOKIAN, PLLC,     )    Case No. 3:19-bk-07235

      Debtor.                    )    Chapter 7

                            )    Judge Walker

## TRUSTEE'S MOTION TO
## APPROVE COMPROMISE AND SETTLEMENT

Jeanne Ann Burton, chapter 7 trustee herein ("Trustee"), hereby moves (the "Motion") this Court for entry of an order (the "Order"), substantially in the form submitted herewith, approving the compromise and settlement of Claim No. 5 (the "Claim") filed by Dean Chase, Sandra Chase, and D.F. Chase, Inc. (collectively, the "Chase Parties"). In support of this Motion, the Trustee respectfully represents as follows:

### BACKGROUND

1. On November 6, 2019 (the "Petition Date"), Cummings Manookian, PLC (the "Debtor") filed a voluntary Chapter 7 petition in this Court. Jeanne Ann Burton was appointed to serve as the Chapter 7 Trustee in this case.

2. Prior to the Petition Date, on July 20, 2018, the Circuit Court for Williamson County, Tennessee (the "State Court") issued a sanctions judgment against the Debtor, Brian Manookian, Mark Hammervold, and Hammervold Law, PLC, jointly and severally, in the amount of $622,696.12. On September 28, 2018, the State Court increased the sanctions judgment to $748,769.21, by supplemental order. The sanctions judgment was based primarily upon attorney fees and expenses incurred by the Chase Parties.

3.    On October 30, 2019, Brian Manookian appealed the State Court's sanctions award to the Tennessee Court of Appeals.  Mark Hammervold and Hammervold Law, PLC joined in the appeal on November 30, 2019.  The Debtor did not appeal the sanctions judgment, nor did it join in the appeal; the Debtor did appeal the State Court judge's refusal to recuse himself.

4.    On February 4, 2021, the Tennessee Court of Appeals vacated the sanctions judgment, and remanded the matter for rehearing.  The Tennessee Court of Appeals found that the State Court judge should have recused himself due to the appearance of bias:  "Because the trial court's impartiality might reasonably be questioned, the court should have recused itself.  And under the circumstances of this case, retroactive recusal is warranted.  In finding retroactive recusal warranted, we express no opinion on the merits of the contempt proceeding."  February 4, 2021 Opinion, p.11.  However, the Tennessee Court of Appeals also noted, "The record reflects that the judge showed extraordinary patience and was thorough in his review of serious allegations against Mr. Manookian and Mr. Hammervold.  We do not conclude that the judge was actually partial.  But that is not the standard for recusal."  *Id.* at p. 8.

5.    The Chase Parties have now appealed the decision of the Tennessee Court of Appeals to the Tennessee Supreme Court.  If the Tennessee Supreme Court accepts certiorari, it is unclear when it will hear this matter and issue an opinion.  If it denies certiorari, the matter will return to the State Court, be assigned to a new judge, and the hearing process will begin anew.  The litigation before the State Court took approximately two years in the first instance.

6.    Meanwhile, as this Court is well aware, the Trustee has filed a Complaint (the "Complaint") against Hagh Law, PLLC, Afsoon Hagh, and Manookian, PLLC (collectively, the "Defendants"), which initiated Adversary Proceeding No. 3:20-ap-90002 (the "AP").  The Complaint alleges, among other things, claims for conversion, fraudulent transfer, tortious

2

interference with contract, successor liability and turnover.  The Complaint seeks damages in excess of $1,300,000.

7.    In conjunction with the AP, the Trustee filed an Expedited Motion for Turnover of Funds (the "Motion for Turnover"), in which the Trustee sought the turnover of $715,000.00 that was on deposit with the State Court.  On January 16, 2020, the Court entered an Order directing that the $715,000.00 be deposited with the Clerk of the United States Bankruptcy Court for the Middle District of Tennessee.  This Court's Clerk continues to hold those funds.

8.    As the Trustee has explained to the Court during the last pretrial conference conducted in the AP, it has been difficult for the Trustee to proceed with the prosecution of her Complaint without knowing the ultimate resolution of the Claim filed by the Chase Parties.  On March 30, 2020, the Chase Parties filed the Claim as a secured claim in the amount of $806,927.04.  Other than the Claim filed by the Chase Parties, only five other parties filed proofs of claim.  Insbank originally filed an unsecured claim in the amount of $963,951.62, but it has recently withdrawn the claim.  Grant, Konvalinka & Harrison, P.C. has filed an unsecured claim in the amount of $295,305.27 which the Trustee assumes to be valid.  George Robertson, MD and Toby Smith, MD have each filed unsecured claims, totaling $89,190.99 between them, based on obligations owing them by Brian Manookian, individually.  The Trustee has objected to these claims and believes that they will ultimately be disallowed, by agreement or by order of the Court.  Finally, Ronette Leal McCarthy, Esq. has filed an unsecured claim in the amount of $337,500.00, to which the Trustee has objected.  The Trustee continues investigating the merits of this claim.

9.    Therefore, other than the Chase Parties' Claim, the total unsecured claims of this estate will likely range between $295,305.27 - $542,805.27.  Were the Supreme Court to reinstate the

3

421

sanctions judgment on appeal, or were the State Court to issue a sanctions order in a similar amount after a subsequent hearing, the likely range of claims would then be 1,044,074.48 - $1,291,574.48.[1]

10.    The Trustee has reached an agreement with the Chase Parties to settle and compromise the Claim and the Trustee's potential objections thereto.  The Trustee has agreed to allow the Claim as a general unsecured claim in the amount of $250,000.00 (the "Allowed Amount") and waive any other causes of action the estate might otherwise have against the Chase Parties, and the Chase Parties have agreed to dismiss the Debtor from the State Court action and to release any other claims that the Chase Parties might have against the Trustee or the estate.  A copy of the proposed settlement agreement between the Trustee and the Chase Parties is attached hereto as Exhibit A and incorporated herein by reference.

11.    It is the Trustee's opinion that approval of this Settlement Agreement is in the best interest of the estate and should be accepted, for several reasons.  First, there is a question about whether the vacation of the sanctions orders applies to the Debtor since the Debtor did not appeal the sanctions order and the appeal was specifically stayed as to the Debtor.  It could be argued that the sanctions judgment might still be applicable to the Debtor in the original amount of $748,769.21.  Second, this proposed settlement reduces the potential exposure of this estate by approximately $500,000.[2]  If the State Court were to issue a new sanctions judgment in a similar amount after a subsequent hearing, the effect on this estate will be approximately $500,000 greater than the proposed Allowed Amount.  Third, the expensive and time-consuming litigation that

---

[1] It is also possible that the State Court could *increase* the sanctions judgment after a subsequent hearing to account for the additional pre-petition legal fees incurred by the Chase Parties since the original judgment.

[2] Pursuant to the terms of the Settlement Agreement, the Chase Parties are also waiving their purported security interest in any of the Debtor's fees, agreeing instead to be treated as an unsecured creditor of this estate.

4

422

would be required if the estate must engage in new litigation in the State Court is not in the best interest of this estate or its creditors. If the Tennessee Supreme Court rejects the Chase Parties' appeal, the matter will essential "start over" in the State Court. Originally, it took approximately two years to litigate this matter before the State Court. The Trustee believes that, if this litigation were to begin anew in the State Court and she had reached no settlement with the Chase Parties, the Trustee would require separate representation in that matter. The Trustee believes that the estate's legal fees for that matter, given the nature and contentiousness of the litigation would be substantial, possibly exceeding $150,000. Finally, it is in the best interest of the creditors and judicial economy to fix an amount for the Chase Parties' Claim so that the Trustee can move forward with the AP. Once this Claim is fixed, the Trustee will know what the total claims base is for this estate. Depending on the outcome of the pending claim objections, the total unsecured claims in this estate could be as little as $545,305.27. If that were the case, the $715,000 being held by the Court Clerk, plus the amount being held by the Trustee, might be sufficient to pay all claims in full. If the Trustee need only recover the $715,000 to pay all claims it full, that would curtail litigation efforts in the AP, saving this estate substantial time and money.

12. For all of these reasons, the Trustee believes it is in the best interest of the estate and its creditors to enter into the settlement agreement attached hereto as <u>Exhibit A</u>.

13. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

14. The statutory predicate for the relief requested herein is section 105 of the Bankruptcy Code and rule 9019 of the Federal Rules of Bankruptcy Procedure ("Rule 9019").

RELIEF REQUESTED

15.     By the Motion, the Trustee seeks an order approving the terms of the settlement agreement attached hereto as Exhibit A.

APPLICABLE AUTHORITY

16.     Bankruptcy Rule 9019 provides that the Court "may approve a compromise or settlement."  Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy.  See Fishell v. Soltow (In re Fishell), No. 94-1109, 1995 WL 66622, at *2 (6th Cir. February 16, 1995); In re Martin, 91 F.3d 389, 393 (3d Cir. 1996) ("To minimize litigation and expedite the administration of a bankruptcy case, '[c]ompromises are favored in bankruptcy.'") (quoting 9 Colliers on Bankruptcy ¶ 9019.03[1] (15th Ed. 1993)).  Various courts have endorsed the use of Bankruptcy Rule 9019.  See, e.g., In re Check Reporting Service, Inc., 137 B.R. 653 (Bankr. W.D. Mich. 1992); Bartel v. Bar Harbour Airways, Inc., 196 B.R. 268 (S.D.N.Y. 1996); In re Foundation for New Era Philanthropy, Case No. 95-13729B, 1996 Bankr. LEXIS 1892 (Bankr. E.D. Pa. Aug. 21, 1996).

17.     The standards by which a Court should evaluate a settlement are well established. In addition to considering the proposed terms of the settlement, the Court should consider the following factors:

- the probability of success in litigation;

- the difficulty in collecting any judgment that may be obtained;

- the complexity of the litigation involved, and the expense inconvenience and delay necessarily attendant to it;

- the interest of creditors and stockholders and a proper deference to their reasonable views of the settlement.

6

See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-245 (1968); Fishell, 1995 W.L. 66622, at *3; In re Barton, 45 B.R. 225, 227 (M.D. Tenn. 1984); In re Pennsylvania Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992), aff'd, 8 F.3d 812 (3d Cir. 1993); In re Grant Broadcasting, Inc., 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987); In re Neshaminy Office Bldg. Assoc's., 62 B.R. 798, 803 (E.D. Pa. 1986).

18.     The decision to approve a settlement or compromise is within the discretion of the Court and is warranted where the settlement is found to be reasonable and fair in light of the particular circumstances of the case.  See TMT Trailer Ferry, 390 U.S. at 424-25.  The settlement need not be the best that the debtor could have achieved, but need only fall "within the reasonable range of litigation possibilities."  In re Penn Central Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979).  In making its determination, a court should not substitute its own judgment for that of the debtor.  Neshaminy Office, 63 B.R. at 803.

19.     Under the circumstances presented here, the Trustee has satisfied the applicable standards.

WHEREFORE, the Trustee respectfully requests that this Court enter an order in the form submitted herewith and grant such other and further relief as is appropriate under the circumstances.

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: 615-465-6008
phillip@thompsonburton.com

*Special Counsel to Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served this 6th day of July, 2021, upon all parties of record through the Court's electronic filing system and by U.S. Mail to all parties listed on the creditor matrix attached hereto.

/s/ Phillip G. Young, Jr.

426

# PROPOSED

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | Case No. 3:19-bk-07235 |
| Debtor. | ) | Chapter 7 |
| | ) | Judge Walker |

## ORDER APPROVING COMPROMISE AND SETTLEMENT

This matter having come for hearing on the motion (the "Motion") filed Jeanne Ann Burton, chapter 7 trustee herein ("Trustee"), pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, for an order approving a settlement and compromise of Claim No. 5 (the "Claim") filed by Dean Chase, Sandra Chase, and D.F. Chase, Inc. (collectively, the "Chase Parties"), pursuant to the terms of the settlement agreement attached as <u>Exhibit A</u> to the Motion (the "Settlement Agreement"); and no party-in-interest having timely filed a response to the Motion; and the Court being satisfied that the relief herein is appropriate under the circumstances; and the court being otherwise sufficiently advised,

IT IS HEREBY FOUND THAT:

A.    The Trustee, in the proper exercise of her business judgment, determined that the relief afforded herein is in the best interests of the Debtor's creditors.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

9

1.  The Motion is granted.

2.  The Trustee is hereby authorized to enter into and to execute the Settlement Agreement, and the terms of the Settlement Agreement are hereby approved by this Court.

3.  The Claim is hereby allowed as a general unsecured claim in the amount of $250,000.00 (the "Allowed Amount").

4.  The Claim is hereby disallowed to the extent that it exceeds the Allowed Amount.

5.  The Court shall retain jurisdiction to interpret this Order, and to determine any disputes related hereto.

> This order was signed and entered electronically as indicated at the top of the first page.

AGREED TO AND
APPROVED FOR ENTRY:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: 615-465-6008
phillip@thompsonburton.com

*Special Counsel to Trustee*

10

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made as of June 9, 2021, by and among: Jeanne Ann Burton, Chapter 7 Trustee of the bankruptcy estate of Cummings Manookian, PLC ("Trustee") on the one hand; and Dean Chase, Sandra Chase, and D.F. Chase Inc. (collectively the "Chase Parties") on the other. Together, Trustee and the Chase Parties may hereinafter be referred to, collectively, as the "Parties".

## RECITALS

A. On November 6, 2019 (the "Petition Date"), Cummings Manookian, PLC ("Debtor") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court"), Case No. 3:19-bk-07235 (the "Bankruptcy Case"). Trustee was appointed to serve as the Chapter 7 Trustee in the Bankruptcy Case and administer the Debtor's bankruptcy estate (the "Bankruptcy Estate").

B. Prior to the Petition Date, in 2015, David Chase initiated an action in the Circuit Court for Williamson County, Tennessee, Case No. 2015-200 (the "First State Court Case"), against Chris Stewart et al. On or about July 20, 2018, the Williamson County Circuit Court entered a Memorandum and Order for contempt of court and sanctions in favor of the Chase Parties, as intervening non-parties, against the Debtor, Brian Manookian, Mark Hammervold, and Hammervold PLLC, jointly and severally, issuing a judgment in the amount of $622,696.12 (the "Original Contempt/Sanctions Order"). On or about September 27, 2018, the Williamson County Circuit Court later entered an Order of Supplemental Attorneys' Fees and Expenses Award (the "Supplemental Order"), which increased the contempt and sanctions award to $748,769.21 and constituted a Final Judgment pursuant to Tenn. R. Civ. Proc. 54.01 (the "Judgment"). The Debtor, Brian Manookian, Mark Hammervold, and Hammervold, PLLC, respectively, filed certain appeals regarding the Judgment, but did not post a supersedeas bond to stay execution on the Judgment.

C. In furtherance of executing on the Judgment, the Chase Parties filed a separate lawsuit, along with expedited motion, for the appointment of a receiver and other related relief in the Circuit Court of Williamson County, Tennessee, Case No. 2019-221 (the "Second State Court Case" and, collectively with the First State Court Case, the "State Court Cases"). In the Second State Court Case, the Court granted, *inter alia*, the requested appointment of a receiver to collect the corporate choses in action of Debtor and Hammervold PLLC.

D. After the Petition Date, and prior to the Court of Appeals hearing oral argument on the appeal of the Judgment, The Trustee filed a suggestion of Bankruptcy as to Debtor, staying the appeal as to Debtor. The Trustee has continued filing regular updates with the Court of Appeals concerning the status of this bankruptcy matter. The Court of Appeals entered an order noting that the appeal would proceed as to the remaining parties only.

1

429

E.    On March 3, 2020, the Chase Parties filed Proof of Claim Number 5 (the "Proof of Claim") as a secured claim in the Bankruptcy Case in the amount of $806,927.04 (the "Claimed Amount"). The Claimed Amount includes the amount of the Judgment plus interest that had accrued on the Judgment through the Petition Date.

F.    On February 4, 2021, the Tennessee Court of Appeals issued an opinion in which it held that the Williamson County Trial Court should have recused itself because its impartiality might reasonably be questioned. The Court of Appeals vacated the Judgment as to Brian Manookian, Mark Hammervold, and Hammervold, PLLC and remanded the matter to the Williamson County Circuit Court for adjudication by another judge. The Judgment was not vacated as to the Debtor due to stay imposed by the pending Bankruptcy Case.

G.    On or about May 15, 2021, the Chase Parties appealed the ruling of the Tennessee Court of Appeals to the Tennessee Supreme Court. That appeal remains pending as of the date of this Settlement Agreement.

H.    The Parties have agreed to resolve all actual and potential matters between them, including the Claim, all actions taken in the State Court Cases and the Judgment as it relates to the Debtor, so as to avoid the time and expense of further litigation, and the uncertainty of the outcome of continued litigation on the terms stated herein, the terms of which are contingent upon approval in unaltered form by the Bankruptcy Court in the Bankruptcy Case.

I.    This Settlement Agreement is executed as a compromise of disputed matters, liability for which is expressly denied by each of the Parties. By entering into this Settlement Agreement, the Parties do not admit any liability, nor do the Parties intend it to be construed as such.

NOW, THEREFORE, for and in consideration of the covenants and agreements set forth herein and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.    Accuracy of Recitals. Each of the Parties acknowledges and agrees that the Recitals set forth above are accurate and, by this reference, are hereby incorporated into and made a part of the body of this Settlement Agreement.

2.    Partial Allowance of Claim. Trustee and the Chase Parties agree that the Claim shall be allowed as a general unsecured claim in the Bankruptcy Case in the amount of Two Hundred and Fifty Thousand Dollars ($250,000.00) (the "Allowed Amount"). The Trustee and the Chase Parties agree that the Claim shall be disallowed to the extent it exceeds the Allowed Amount.

3.    Dismissal of State Court Cases as Regards Debtor. Trustee and the Chase Parties agree that, within five (5) business days after the Effective Date (as that term is defined below), they will take any action necessary to dismiss the Debtor from any action pending in the State Court Cases, including any pending appeals thereof.

2

4. No Release as to Third Parties. This Settlement Agreement shall not act as a release of liability, a satisfaction of the Judgment, or a release of any cause of action related to the State Court Cases as against any third parties, including Brian Manookian, Mark Hammervold, or Hammervold, PLLC.

5. No Guarantee of Payment. Nothing herein shall be deemed or interpreted as a guarantee of payment of any sum certain on account of the Claim or the Allowed Amount. The Trustee shall continue administering the Bankruptcy Case as she deems appropriate, according to her fiduciary duty and business judgment, and nothing herein shall be deemed to alter those rights, obligations, or authority.

6. Effectiveness of Settlement Agreement. This Settlement Agreement shall become effective upon, but only upon, the full and complete satisfaction of each of the following conditions precedent: (i) The Settlement Agreement shall have been executed by the Parties; and (ii) the Bankruptcy Court shall have entered an order in the Bankruptcy Case, in form and substance acceptable to the Parties, approving the Settlement Agreement and the transactions contemplated thereby in its entirety, which order shall not have been stayed, reversed, vacated or otherwise modified (the "Bankruptcy Approval Order"). The date on which the Settlement Agreement becomes effective in accordance with this Section shall be referred to herein as the "Effective Date." In the event that the Bankruptcy Court denies approval of the Settlement Agreement, then the Settlement Agreement shall be null and void. Nothing contained herein shall require any Party to appeal disapproval of this Agreement.

7. Reservation of Rights. In the event this Settlement Agreement does not become effective because the conditions precedent in Section 6 are not fully satisfied (or waived), then the Parties fully reserve all of their respective claims, rights and remedies, including, but not limited to, all claims, liens, rights and remedies under and with respect to the Judgment, the Claim, the Bankruptcy Case, applicable law, and otherwise, and all such claims, rights and remedies will remain in full force and effect.

8. Bankruptcy Court Approval. This Settlement Agreement shall be subject to the approval of the Bankruptcy Court in the Bankruptcy Case. The Parties agree to present this Settlement Agreement for approval by the Bankruptcy Court, and to take other actions necessary to obtain entry of the Bankruptcy Approval Order.

9. Releases. As of the Effective Date, Trustee, on behalf of herself and the Debtor, hereby releases and discharges the Chase Parties, and their counsel and other professionals, from any and all claims and causes of action, of any nature or type, whether known or unknown, that Trustee or the Debtor has or may have against them, arising from or relating to the State Court Cases, the Bankruptcy Case, or the Judgment. Similarly, as of the Effective Date, the Chase Parties hereby release and discharge the Trustee and the Debtor from any and all claims (except for the Claim in the Allowed Amount) and causes of action, of any nature or type, whether known or unknown, that the Chase Parties, individually or collectively, have or may have against the Trustee or the Debtor, arising from or relating to the State Court Cases, the Bankruptcy Case, or the Judgment. For clarity, nothing herein shall be deemed to release the Claim, which is being allowed in the Allowed Amount.

3

431

10.     Waiver of Jury Trial. THE PARTIES HEREBY AGREE TO WAIVE ANY AND ALL RIGHT TO A JURY TRIAL IN ANY LEGAL ACTION COMMENCED BY EITHER PARTY AGAINST THE OTHER RELATING IN ANY WAY TO THIS SETTLEMENT AGREEMENT OR ANY RELATIONSHIP BETWEEN OR ANY CONDUCT BY THE PARTIES WITH RESPECT THERETO, WHETHER AT LAW OR IN EQUITY, AND WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE.

11.     Applicable Law. This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Tennessee, and The United States Bankruptcy Court for the Middle District of Tennessee shall be the exclusive jurisdiction for any action pursuant to this Settlement Agreement.

12.     Amendments. This Settlement Agreement cannot be amended, rescinded, supplemented, or modified except in a writing executed by all Parties.

13.     Complete Agreement. This Settlement Agreement contains the entire agreement of the Parties and supersedes any other discussions or agreements relating to the subject of this Settlement Agreement.

14.     Interpretation. Section/Paragraph titles, and any headings to sections/paragraphs are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation hereof. The Parties acknowledge that they and their counsel have reviewed and revised this Settlement Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation, construction, and enforcement of this Settlement Agreement or any amendment hereto.

15.     Counterpart Execution. This Settlement Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument. Further, this Settlement Agreement may be executed by facsimile or by portable document format (.pdf) signature, such that execution of this Settlement Agreement by facsimile or by portable document format (.pdf) signature shall be deemed effective for all purposes as though this Settlement Agreement was executed as a "blue ink" original.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement on the day and year set forth above.

JEANNE ANN BURTON,
Chapter 7 Trustee

By: _____ _____

4

DEAN CHASE

By: _[signature]_

SANDRA CHASE

By: _[signature]_

D.F. CHASE INC.

By: _[signature]_ CEO

Its: _Chairman/CEO_

5

433

Label Matrix for local noticing
0650-3
Case 3:19-bk-07235
MIDDLE DISTRICT OF TENNESSEE
Nashville
Mon Apr 27 06:11:54 CDT 2020

CUMMINGS MANOOKIAN, PLLC
45 MUSIC SQUARE WEST
NASHVILLE, TN 37203-3205

D.F. Chase, Inc.

Grant, Konvalinka & Harrison, P.C.
633 Chestnut Street, Suite 900
Chattanooga, TN 37450-0900

LEFKOVITZ AND LEFKOVITZ, PLLC  +
618 CHURCH ST STE 410
NASHVILLE, TN 37219-2452

Middle Tennessee Pulmonary
414 Union Street, Ste. 1850
1850
Nashville, TN 37219-1783

701 Broadway Room 170
Nashville, TN 37203-3979

D.F. CHASE, INC.
C/O PURYEAR LAW
104 WOODMONT BLVD, SUITE 201
Nashville TN 37205-2245

D.F. Chase, Inc.
c/o Daniel H. Puryear
104 Woodmont Blvd-Ste 201
Nashville, TN 37205-2245

DEAN CHASE ET AL
C/O PURYEAR LAW
104 WOODMONT BLVD, SUITE 201
Nashville TN 37205-2245

Dean Chase
c/o Daniel H. Puryear
104 Woodmont Blvd-Ste 201
Nashville, TN 37205-2245

GRANT KONVALINKA & HARRIS
633 CHESTNUT STREET
SUITE 900
CHATTANOOGA TN 37450-0900

George Robertson, M.D.
Family Medical Associates
414 Union Street, Ste. 1850
Nashville, TN 37219-1783

INSBANK
PHILIP FONS EVP & CHIEF CREDIT OFFICER
2106 CRESTMOOR ROAD
NASHVILLE TN 37215-2605

SANDRA CHASE
C/O PURYEAR LAW
104 WOODMONT BLVD, SUITE 201
Nashville TN 37205-2245

Sandra Chase
c/o Daniel H. Puryear
104 Woodmont Blvd-Ste 201
Nashville, TN 37205-2245

Toby Smith, M.D.
Middle Tennessee Pulmonary
414 Union Street, Ste. 1850
Nashville, TN 37219-1783

US TRUSTEE  +
OFFICE OF THE UNITED STATES TRUSTEE
701 BROADWAY STE 318
NASHVILLE, TN 37203-3966

Afsoon Hagh
45 Music Square W
Nashville, TN 37203-3205

BRIAN MANOOKIAN
45 MUSIC SQUARE WEST
NASHVILLE, TN 37203-3205

George Robertson, M.D.
414 Union Street
1850
Nashville, TN 37219-1783

JEANNE ANN BURTON  +
Jeanne Ann Burton PLLC
4117 Hillsboro Pk
Suite 103-116
NASHVILLE, TN 37215

Phillip Family Medical Associates
414 Union Street
1850
Nashville, TN 37219-1783

Toby Smith, M.D.
414 Union Street, Ste. 1850
1850
Nashville, TN 37219-1783

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Hagh Law, PLLC

(d)Grant, Konvalinka & Harrison, P.C.
633 Chestnut Street, Suite 900
Chattanooga, TN  37450-0900

(u)Dean Chase

(u)Sandra Chase

End of Label Matrix
Mailable recipients    23
Bypassed recipients     4
Total                  27

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |

**AGREED ORDER RESOLVING CHAPTER 7 TRUSTEE'S**
**OBJECTION TO CLAIM NUMBERS 3 AND 4**

This matter came before the Court on the Chapter 7 Trustee's Objection to Claim Number 3 Filed by North, Pursell & Ramos, PLC, on Behalf of Family Medical Associates a/k/a Family Medical, P.C. (Doc. 98) and the Chapter 7 Trustee's Objection to Claim Number 4 Filed by North, Pursell & Ramos, PLC, on Behalf of Toby Smith, M.D. and Middle TN Pulmonary Assoc. (Doc. 99) (collectively, the "Objections"), and the Response to Chapter 7 Trustee's Objection to Claim Numbers 3 and 4 (Doc. 102) (the "Response") filed by Family Medical Associates, a/k/a Family Medical P.C., Toby Smith, M.D., and Middle TN Pulmonary Associates (collectively, the "Claimants"); Jeanne Ann Burton, the Chapter 7 Trustee herein (the "Trustee") and the Claimants having agreed, as evidenced by the signatures of counsel below, to resolve the Objections on the terms set forth herein; the Court having considered all related filings; and the Court finding sufficient cause for granting the relief as evidenced in this Agreed Order;

IT IS HEREBY FOUND:

1.       The Claimants timely filed Claim Numbers 3 and 4 in this case.

2. The Trustee objected to Claim Numbers 3 and 4, alleging that they evidenced a debt owed by Brian Manookian, a principal of the Debtor, and not a debt owed by the Debtor.

3. The Claimants responded alleging that, to the extent the Trustee or this estate held funds that were ultimately payable to Brian Manookian individually, that the charging orders in favor of the Claimants mandated that the Trustee surrender those funds to the Claimants.

4. The Trustee and the Claimant have reached an agreement to resolve the Objections.

IT IS HEREBY ORDERED THAT:

1. Claim Numbers 3 and 4 are hereby disallowed as claims against the bankruptcy estate of Cummings Manookian, PLC, as they evidence a debt owed by Brian Manookian individually.

2. To the extent that the Trustee or the bankruptcy estate comes into possession of funds belonging to Brian Manookian, or to the extent that the Trustee is to make a distribution to Brian Manookian, the Trustee shall honor the terms of the charging orders entered by the Circuit Court of Davidson County, Tennessee and the Circuit Court of Wilson County, Tennessee.

3. The Court reserves the right to interpret and enforce this Order, as needed.

This order was signed and entered electronically as indicated at the top of the first page.

2

Approved for entry:


*/s/ Phillip G. Young, Jr.*
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6001 Tower Circle, Suite 200
Franklin, TN 37067
Tel. (615) 465-6008
phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee


*/s/ Phillip North*
Phillip North
North, Pursell & Ramos, PLC
Philip's Plaza
414 Union Street, Suite 1850
Nashville, TN 37219-1783
Tel. (615) 255-2555
pn@npr.legal

Attorney for Claimants

438

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

IN RE: )
)
**CUMMINGS MANOOKIAN, PLLC,** ) Case No. 3:19-bk-07235
    Debtor. ) Chapter 7
) Judge Walker

## AGREED ORDER RESOLVING CHAPTER 7 TRUSTEE'S
## OBJECTION TO CLAIM NUMBER 6 FILED BY RONETTE LEAL MCCARTHY, ESQ.

This matter came before the Court on the Chapter 7 Trustee's Objection to Claim Number 6 Filed by Ronette Leal McCarthy, Esq. (Doc. 100) (the "Objection"); Jeanne Ann Burton, the Chapter 7 Trustee herein (the "Trustee") and Ronette Leal McCarthy (the "Claimant") having agreed, as evidenced by the signatures of counsel below, to resolve the Objection on the terms set forth herein; the Court having considered all related filings; and the Court finding sufficient cause for granting the relief as evidenced in this Agreed Order;

IT IS HEREBY FOUND:

1.      The Claimant filed Claim Number 6 (the Claim") in this case as a general unsecured claim in the amount of $337,500.00.  While the Claim was filed after the claims deadline, the Claimant was not listed as a creditor in the bankruptcy filing and she states that she had no knowledge of the bankruptcy filing until shortly before the Proof of Claim was filed.

2.      The basis of the Claim is an allegation that the Claimant is entitled to a portion of the fees earned by the Debtor in its representation of the plaintiffs in a wrongful death action

filed in the Williamson County Circuit Court, styled as *Fitzgerald v. Osbourne*, Case No. 2018-cv-311 (the "State Court Matter"). The Claimant alleges that she referred the State Court Matter to the Debtor, that she participated in the representation of the plaintiffs in that matter, and that she was entitled to a portion of the fees earned by the Debtor in the State Court Matter. The State Court Matter settled on August 19, 2019 for $4,050,000.00. The plaintiffs' attorneys were entitled to an aggregate fee of $1,350,000.00 as a result of the settlement.

3.     The Trustee objected to the Claim on multiple grounds, including:

(a)  There was no written confirmation that the Debtor and/or the plaintiffs in the State Court Matter consented to the Claimant's continuing representation of the plaintiffs and/or a fee sharing arrangement;

(b)  The amount stated in the Claim was not proportionate to the services she provided to the plaintiffs; and

(c)  There was no evidence that the Claimant has assumed joint responsibility for the representation of the plaintiffs.

4.     The Trustee's Objection was based, in part, on an engagement letter produced by the Debtor's corporate representative, Brian Manookian. The engagement letter made no mention of the Claimant nor of any fee sharing arrangement with the Claimant.

5.     Subsequent to the filing of the Objection, the Claimant produced certain communications between her and Mr. Manookian which showed that the Claimant was involved to some degree in the representation of the plaintiffs in the State Court Matter. Among the communications produced to the Trustee subsequent to the Objection was a copy of an engagement letter related to the State Court Matter, signed by the plaintiffs and sent to the Claimant by Mr. Manookian, that specifically mentions a fee sharing arrangement between the

Debtor and the Claimant. The Claimant also produced emails in which Mr. Manookian discussed Claimant receiving a fee of between 25-33% of the total fees received by the Debtor in the State Court Matter.

6. Nevertheless, the Trustee disputes that the Claimant's agreement with the Debtor, or the services rendered by the Claimant, entitle her to a general unsecured claim in the amount of $337,500.00.

7. The Trustee and the Claimant have reached an agreement to resolve the Objection.

IT IS HEREBY ORDERED THAT:

1. Claim Number 6 shall be, and hereby is, allowed as a general unsecured claim in this case in an amount equal to ten percent (10%) of the amount that the bankruptcy estate actually recovers on account of the settlement of the State Court Matter (the "Allowed Amount").

2. The Claim shall be, and hereby is, disallowed to the extent it exceeds the Allowed Amount.

3. For sake of clarity, the $715,000.00 in funds currently held by the Clerk of the Bankruptcy Court, if recovered by the estate, would be considered funds to which Claimant would be entitled to a ten percent claim.

4. Nothing herein shall be deemed or interpreted as a guarantee of payment of any sum certain on account of the Claim or the Allowed Amount. The Trustee shall continue administering the Bankruptcy Case as she deems appropriate, according to her fiduciary duty and business judgment, and nothing herein shall be deemed to alter those rights, obligations, or authority.

441

This order was signed and entered electronically as indicated at the top of the first page.

Approved for entry:


*/s/ Phillip G. Young, Jr.*
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6001 Tower Circle, Suite 200
Franklin, TN  37067
Tel. (615) 465-6008
phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee


*/s/ David J. Fischer*
David J. Fischer
Holland & Knight LLP
150 North Riverside Plaza, Suite 2700
Chicago, IL 60606
Tel. (312) 263-3600
David.fischer@hklaw.com

Attorney for Claimant

442

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE

IN RE:                   *

                           *      **CASE NO.: 3:19-bk-07235**

**CUMMINGS MANOOKIAN, PLLC,** *

                           *      **CHAPTER 7**

     **Debtor.**            *

## OBJECTION OF GRANT, KONVALINKA & HARRISON, P.C. TO TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT

Comes Grant, Konvalinka & Harrison, P.C. ("GKH") and objects to the Trustee's Motion to Approve Compromise and Settlement (Doc. 108) in which the Trustee proposes to settle Claim No. 5 filed by Dean Chase, Sandra Chase and B. F. Chase, Inc. ("the Chase Parties") by allowing the Chase claim as a general unsecured claim in the amount of $250,000.00. The date to file responses or objections to the Trustee's Motion is July 27, 2021 and the date of the scheduled hearing is August 11, 2021.

### BACKGROUND

1.      Cummings Manookian, PLLC ("Debtor") filed a Chapter 7 petition in this Court on November 6, 2019 and Jeanne Ann Burton was appointed as the Chapter 7 Trustee.

2.      On March 30, 2020, the Chase Parties filed a secured claim in the amount of $806,927.04 based on a sanctions judgment against the Debtor, Brian Manookian, Mark Hammervold and Hammervold Law, PLC, jointly and severally.

3.      Upon appeal of the sanctions judgment, the Tennessee Court of Appeals for the Middle Section of Tennessee vacated the sanctions judgment and remanded the matter for rehearing, primarily based on the determination that the trial court judge should have recused himself due to the appearance of bias.

1

4.     The Chase Parties have appealed the Tennessee Court of Appeals' decision to the Tennessee Supreme Court which has not yet determined whether to accept certiorari.

5.     The Trustee asserts that it is her opinion that approval of a settlement agreement with the Chase Parties to allow the Chase claim as an unsecured claim in the amount of $250,000.00 is in the best interest of the estate and should be accepted.

LAW AND ARGUMENT

Under the settlement proposed by the Trustee, the Chase claim will be allowed as an unsecured claim in the amount of $250,000 and the Trustee will waive any other cause of action the estate might have against the Chase parties in exchange for the Chase parties' agreement to dismiss the Debtor from the state court action and to release any other claims the Chase parties might have against the estate or the Trustee.

The Trustee asserts that approval of the settlement agreement with the Chase Parties is in the best interest of creditors based on several reasons.  First, the Trustee asserts that a question exists as to whether the vacation of the sanctions order applies to the Debtor since the Debtor did not appeal the sanctions order and the appeal was specifically stayed as to the Debtor.  Per the Trustee, it is arguable that the sanctions judgment might still be applicable to the Debtor since the Debtor did not appeal the decision.  However, it is clear from the appellate records that the Court of Appeals considered Cummings Manookian to have been before the appellate court as the Court granted its Motion for Extension of Time to file its brief and recited in the Order remanding the case that Debtor filed a voluntary bankruptcy petition after briefing in the appeal. *Chase v. Stewart*, No. M2018-01991-COA-R3-CV, 2021 Tenn. App. LEXIS 42, at **2, *fn.* 1 (Tenn. Ct. App. Feb. 4, 2021); see copy of Order entered by the Tennessee Court of Appeals on June 21, 2019, attached hereto as Exhibit 1.

Secondly, the proposed settlement reduces the potential exposure of this estate by approximately $500,000.00 as it reduces their claim from potentially $748,769.20 to $250,000.00.

The third basis for the Trustee's opinion that the proposed settlement is in the best interest of the estate is that the expensive and time-consuming litigation that would be required if the estate had to engage in new litigation in the state court is not in the best interest of this estate or creditors, as the Trustee would require separate representation in the matter and additional fees and expenses would be incurred, possibly in an amount in excess of $150,000.00.

Finally, the Trustee asserts that it is in the best interest of the creditors and judicial economy to establish an amount for the Chase Parties' claims so that the Trustee can proceed with the pending adversary case against Hagh Law, PLLC, Afsoon Hagh and Manookian, PLLC and determine what claims in the estate are valid.

The Trustee has filed its Motion to Approve Compromise and Settlement pursuant to Bankr. R. Civ. 9019 which provides that the Court "may approve a compromise or settlement." The standards which a court must consider evaluating a settlement include:

(1) the probability of success in the litigation;

(2) the likely difficulties in collection;

(3) the complexity of the litigation;

(4) the expense, inconvenience and delay necessarily attending it; and

(5) the paramount interest of the creditors.

*In re Martin*, 91 F.3d 389, 36 (3rd Cir. 1996); *In re Healthco Int'l, Inc.*, 136 F.3d 45 (1st Cir. 1998); *In re A & C Properties,* 784 F.2d 1377 (9th Cir. 1986).

Stated more generally, the standard for approving a settlement, whether it is in the best interest of the estate, entails an examination of the settlement's terms with the litigation's probable

cause and benefit. *In re Bond*, 16 F.3d 408 (4th Cir. 1994). Thus, the Court must determine the likelihood that the sanctions judgment will be reinstated against the Debtor as the principal of Mr. Manookian, the cost to the estate of further litigation to determine the Debtor's liability for Mr. Manookian's actions and the potential benefits the estate is waiving in giving up any potential claims the estate might have against the Chase parties. GKH asserts that it is unlikely that the trial court or any appellate court will assess liability against the Debtor for Mr. Manookian's violations of a court order as such actions should not be considered actions of any attorney acting within the scope of his employment, even if the trial court were to determine that Mr. Manookian should be sanctioned individually. Furthermore, the Motion is devoid of any explanation as to what potential claims against the Debtor the Trustee is waiving.

As reflected in the February 4, 2021, Tennessee Court of Appeals decision, the Chase parties sought findings of contempt and an award of damages - and alternatively, an award of sanctions by the State Court pursuant to Tenn. R. Civ. P. 37.02 - based on the alleged misdeeds of attorney Manookian and attorney Hammervold which the Chase parties contended were in violation of certain orders entered by the State Court. See *Chase*, 2021 Tenn. App. LEXIS 42, at **2-9. According to the vacated State Court July 20, 2021, order/judgment, the alleged grounds/basis for the State Court's determination that sanctions awarded should also purportedly be assessed against Cummings Manookian PLC is the State Court's finding that: "… Cummings Manookian, PLC is also in civil contempt based upon the knowing, willful, and intentional violations of Mr. Manookian acting as its agent for the law firm." [See the State Court's July 20, 2018 Memorandum and Order, p. 95].

4

**A. Tennessee state law standards for holding a party in contempt for violating a court order**.

In *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346 (Tenn. 2008), the Tennessee Supreme Court reiterated certain mandatory standards/restrictions applicable for a finding of contempt:

> … At common law, the contempt power was broad and undefined. *See Nye v. United States,* 313 U.S. 33, 43–47, 61 S.Ct. 810, 85 L.Ed. 1172 (1941). Concerned about the potential abuse of this power, the Tennessee General Assembly, like its counterparts in other states, enacted statutes to define and limit the courts' power to punish for contempt. *Black v. Blount,* 938 S.W.2d at 397. As a result, the courts' contempt power is now purely statutory. *Scott v. State,* 109 Tenn. 390, 394–95, 71 S.W. 824, 825 (1902); *State v. Galloway,* 45 Tenn. at 328–31; *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d 602, 611 (Tenn. Ct. App. 2006); *Derryberry v. Derryberry,* 8 Tenn. Civ. App. (Higgins) 401, 402 (1918).

> Tenn. Code Ann. § 16–1–103 (1994) currently provides that "[f]or the effectual exercise of its powers, every court is vested with the power to punish for contempt, as provided for in this code."[10] To give effect to this power, Tenn. Code Ann. §§ 29–9–101 to –108 (2000) further define the scope of the contempt power and the punishment and remedies for contemptuous acts.[11] Of particular relevance to this case, Tenn. Code Ann. § 29–9–102(3) specifically empowers the courts to use their contempt powers in circumstances involving "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." This provision enables the courts to maintain the integrity of their orders. *Wilson v. Wilson,* 984 S.W.2d 898, 904 (Tenn. 1998); *Thigpen v. Thigpen,* 874 S.W.2d 51, 53 (Tenn. Ct. App.1993); *State v. Sammons,* 656 S.W.2d 862, 869 (Tenn. Crim. App.1982).

*   *   *

## III.

Civil contempt claims based upon an alleged disobedience of a court order have four essential elements. First, the order alleged to have been violated must be "lawful."[12] Second, the order alleged to have been violated must be clear, specific, and unambiguous.[13] Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order.[14] Fourth, the person's violation of the order must be "willful."[15]

5

The threshold issue in any contempt proceeding is whether the order alleged to have been violated is "lawful." A lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties. *Vanvabry v. Staton,*[16] 88 Tenn. 334, 351–52, 12 S.W. 786, 791 (1890);[17] *Churchwell v. Callens,* 36 Tenn. App. 119, 131, 252 S.W.2d 131, 136–37 (1952). An order is not rendered void or unlawful simply because it is erroneous or subject to reversal on appeal. *Vanvabry v. Staton,* 88 Tenn. at 351, 12 S.W. at 791; *Churchwell v. Callens,* 36 Tenn. App. at 131, 252 S.W.2d at 137. Erroneous orders must be followed until they are reversed. *Blair v. Nelson,* 67 Tenn. (8 Baxt.) 1, 5 (1874). … Naturally, the determination of whether a particular order is lawful is a question of law.

The second issue involves the clarity of the order alleged to have been violated. A person may not be held in civil contempt for violating an order unless the order expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden. *Sanders v. Air Line Pilots Ass'n Int'l,* 473 F.2d 244, 247 (2d Cir.1972); *Hall v. Nelson,* 282 Ga. 441, 651 S.E.2d 72, 75 (2007); *Marquis v. Marquis,* 175 Md. App. 734, 931 A.2d 1164, 1171 (2007); *Cunningham v. Eighth Judicial Dist. Ct. of Nev.,* 102 Nev. 551, 729 P.2d 1328, 1333–34 (1986); *Petrosinelli v. People for the Ethical Treatment of Animals, Inc.,* 273 Va. 700, 643 S.E.2d 151, 154–55 (2007). The order must, therefore, be clear, specific, and unambiguous. *See Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d at 471; *Long v. McAllister–Long,* 221 S.W.3d at 14.[18]

Vague or ambiguous orders that are susceptible to more than one reasonable interpretation cannot support a finding of civil contempt. *City of Gary v. Major,* 822 N.E.2d 165, 170 (Ind.2005); *Judge Rotenberg Educ. Ctr., Inc. v. Comm'r of Dep't of Mental Retardation,* 424 Mass. 430, 677 N.E.2d 127, 137 (1997); *Ex parte Slavin,* 412 S.W.2d at 45. Orders need not be "full of superfluous terms and specifications adequate to counter any flight of fancy a contemner may imagine in order to declare it vague." *Ex parte Blasingame,* 748 S.W.2d 444, 446 (Tex.1988)(quoting *Ex parte McManus,* 589 S.W.2d 790, 793 (Tex. Civ. App. - Dallas 1979)). They must, however, leave no reasonable basis for doubt regarding their meaning. *Int'l Longshoremen's Ass'n, Local No. 1291 v. Phila. Marine Trade Ass'n,* 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967); *Salt Lake City v. Dorman–Ligh,* 912 P.2d 452, 455 (Utah Ct. App. 1996).

Orders alleged to have been violated should be construed using an objective standard that takes into account both the language of the order and the circumstances surrounding the issuance of the order, including the audience to whom the order is addressed. *United States v. Bernardine,* 237 F.3d 1279, 1282 (11th Cir. 2001); *United States v. Young,* 107 F.3d 903, 907–08 (D.C. Cir. 1997). Ambiguities in an order alleged to have been violated should be interpreted in favor of the person facing the contempt charge. *Liberte Capital Group, LLC v. Capwill,* 462 F.3d 543, 551 (6th Cir. 2006); *Levin v. Tiber Holding Corp.,* 277 F.3d 243, 251 (2d Cir. 2002); *Town of Virgil v. Ford,* 184 A.D.2d 901, 585 N.Y.S.2d 559, 560 (1992); *Greene v. Finn,* 153 P.3d at 951. Determining whether an order is

6

sufficiently free from ambiguity to be enforced in a contempt proceeding is a legal inquiry that is subject to de novo review. *Davies v. Grossmont Union High Sch. Dist.,* 930 F.2d 1390, 1394 (9th Cir. 1991); *In re Leah S.,* 284 Conn. 685, 935 A.2d 1021, 1027 (2007); *City of Wisconsin Dells v. Dells Fireworks, Inc.,* 197 Wis.2d 1, 539 N.W.2d 916, 924 (1995).[19]

The third issue focuses on whether the party facing the civil contempt charge actually violated the order. This issue is a factual one to be decided by the court without a jury. *See Pass v. State,* 181 Tenn. 613, 620, 184 S.W.2d 1, 4 (1944); *Sherrod v. Wix,* 849 S.W.2d 780, 786 (Tenn. Ct. App. 1992). The quantum of proof needed to find that a person has actually violated a court order is a preponderance of the evidence. *Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d at 474. Thus, decisions regarding whether a person actually violated a court order should be reviewed in accordance with the standards in Tenn. R. App. P. 13(d).

The fourth issue focuses on the willfulness of the person alleged to have violated the order. …

In the context of a civil contempt proceeding under Tenn. Code Ann. § 29–2–102(3), acting willfully does not require the same standard of culpability that is required in the criminal context. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d at 612. Rather, willful conduct

> consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is 'willful' if it is the product of free will rather than coercion. Thus, a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

*State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d at 612 (citations omitted). … Determining whether the violation of a court order was willful is a factual issue that is uniquely within the province of the finder-of-fact who will be able to view the witnesses and assess their credibility. Thus, findings regarding "willfulness" should be reviewed in accordance with the Tenn. R. App. P. 13(d) standards.[21]

After determining that a person has willfully violated a lawful and sufficiently clear and precise order, the court may, in its discretion, decide to hold the person in civil contempt. *See Robinson v. Air Draulics Eng'g Co.,* 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964). …

… Discretionary decisions must take the applicable law and relevant facts into account. *Ballard v. Herzke,* 924 S.W.2d 652, 661 (Tenn.1996). Thus, reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs

reasoning that causes an injustice to the complaining party. *Mercer v. Vanderbilt Univ.,* 134 S.W.3d 121, 131 (Tenn.2004); *Perry v. Perry,* 114 S.W.3d 465, 467 (Tenn.2003).

*Konvalinka*, 249 S.W.3d at 354-358. (Footnotes omitted; emphasis added).


**B.      Under what circumstances can a law firm – when the firm is not a party to the action - be held in contempt for violating a court order and/or be assessed sanctions based on the conduct of one of the law firm's attorneys?**

In *Phuc Quang Le v. Humphrey*, 703 F. App'x 830, 835-36 (11th Cir. 2017), the Court

stated:

> In an appropriate case, of course, a law firm can be sanctioned. *See, e.g., In re Mroz*, 65 F.3d 1567, 1575-76 (11th Cir. 1995) (inherent powers); *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (28 U.S.C. § 1927). And Rule 11 requires a district court to bind a law firm "[a]bsent exceptional circumstances." Fed R. Civ. P. 11(c)(1). But here the district court never returned to the issue of Merritt Watson's liability following the September 2012 hearing, and Mr. Le did not ask the court for clarification. Under the circumstances, Merritt Watson reasonably believed that it was off the hook.

However, the issue of whether a law firm should be subject to sanctions/contempt, because of

misconduct of one of its attorneys, pursuant to 18 U.S.C § 1927 and/or under the authority of a

federal court's "inherent powers" to police "bad faith" conduct in proceedings before it was

assessed differently in *Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp.)*, Nos. 02-02250, 04-

10459, 2010 Bankr. LEXIS 2689 (Bankr. D.D.C. Aug. 9, 2010). In *Alberts*, one of the defendants

in a bankruptcy court adversary proceeding (Epstein Becker & Green P.C) moved for an award of

attorneys' fees and expenses against the attorneys **and law firm** that represented the plaintiff (Sam

J. Alberts, Trustee for the DCHC Liquidating Trust) pursuant to § 1927 and/or the court's inherent

powers.  *Alberts* 2010 Bankr. LEXIS 2689, at *2.   In granting Epstein Becker's motion in part and

imposing sanctions against Sam J. Alberts as counsel for the plaintiff with respect to litigation

450

pursued after the court granted Epstein Becker's motion for summary judgment, the *Alberts* Court

stated, in relevant part:

> Based upon the evidence submitted to the court and the representations made by counsel, there was no good faith basis for Alberts to assert that a settlement agreement existed, and thus no valid ground upon which to move to have summary judgment vacated and discovery reopened. Alberts' motion was frivolous, unreasonable, and in bad faith, having been based upon facts he knew to be false. His conduct was based on an obstinate refusal to acknowledge that the entry of the summary judgment order had brought the claims against Epstein Becker to an end with a finality that Epstein Becker had repeatedly made clear it desired.
>
> \* \* \*
>
> IV.
>
> Sanctions under § 1927 are only appropriate against Alberts. Under 28 U.S.C. § 1927, the court has the authority to sanction "any attorney or other person admitted to conduct cases in any court of the United States or any Territory" that committed the offending conduct. *Claiborne v. Wisdom*, 414 F.3d 715, 722-24 (7th Cir. 2005), holds that sanctions under § 1927 may not be imposed against a law firm, and I adopt the reasoning of that decision on that point. Although the Court of Appeals for this circuit upheld an award of sanctions against a law firm under § 1927 in *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 905, 330 U.S. App. D.C. 386 (D.C. Cir. 1998), the law firm failed to raise the issue of whether a law firm, and not only those attorneys of the law firm who conducted the litigation, could be sanctioned under § 1927, and the decision in *LaPrade* thus did not decide the issue. Limiting the award of § 1927 sanctions to one against only Alberts, however, does not address his law firm's vicarious liability for the award if Alberts fails to pay the award. *Claiborne v. Wisdom*, 414 F.3d at 724.
>
> V.
>
> Under its inherent authority, the court may sanction a party's law firm. *In re Mroz*, 65 F.3d at 1574; *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1228 (3d Cir. 1995) (upholding sanctions—beyond Rule 9011 sanctions imposed against one attorney, who had signed the offending paper—against law firm pursuant to the court's inherent power because the **trial court concluded that other attorneys at the law firm were primarily responsible for the sanctionable conduct)**. *See Wallace*, 964 F.2d at 1218. Here, the sanctionable conduct was committed in the filing of the motion to vacate the order and reopen discovery. (*See* DE No. 313, p. 6.) Alberts signed and litigated that motion, and sanctions against him under the court's inherent authority are appropriate as to him. **There is no evidence that anyone else in his law firm bore any responsibility for that course of conduct**. In the exercise of my discretion, I do not believe it appropriate to impose sanctions for bad faith litigation against the White & Case law firm as a whole. *See Wolters Kluwer Fin. Servs., Inc. v.*

*Scivantage*, 564 F.3d 110 (2d Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 625, 175 L. Ed. 2d 501 (Nov. 16, 2009). In *Scivantage*, an attorney, Peters, engaged in bad faith conduct, and the district court imposed sanctions against her law firm. The court of appeals declined to uphold such sanctions against the law firm, finding that the district court imputed Peters's bad faith to the law firm because the law firm failed to prevent what she did. The court of appeals explained:

> we have held that "[b]ad faith is personal" and "may not automatically be visited" on others. *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1089 (2d Cir.1977). Accordingly, absent other specific evidence of [the law firm's] bad faith, a sanction under the court's inherent power is unjustified.

In this court, the local rules provide for an attorney to enter his or her appearance on behalf of a client, although the attorney's law firm is also understood to be representing the client. To impose sanctions against the law firm personally appears unwarranted when the law firm, as an institution, has not engaged in any conduct leading to the bad faith conduct. *See Claiborne*, 414 F.3d at 724 (contemplating sanctions on a law firm where previous litigation and events had put the law firm on notice that the attorney's litigation practices were questionable and warranted monitoring). Nevertheless, this does not address the issue of whether White & Case LLP can be held vicariously liable for the sanctions award if Alberts does not satisfy the award.

Because Alberts, in his capacity as counsel, signed and litigated the motion to vacate the summary judgment order, the sanctions, the amount of which will be determined at a later hearing, are imposed upon Alberts in his capacity as counsel for the plaintiff. This will require him "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See* 28 U.S.C. § 1927.

*Alberts*, 2010 Bankr. LEXIS 2689, at *66, 69-73.

The above-stated principles as to whether misconduct of an attorney can be attributed and/or should be automatically attributed to such attorney's law firm are consistent with the holdings in *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009), *cert. denied*, 558 U.S. 1037, 130 S. Ct. 625, 175 L. Ed. 2d 501 (Nov. 16, 2009) which the *Alberts* Court relies upon – in part – as precedential authority for its holdings. In asserting such principles, the *Wolters Kluwer Fin. Servs., Inc.* Court stated:

10

The district court imposed two non-monetary sanctions on Dorsey & Whitney as a firm: one for voluntarily dismissing the Wolters Kluwer suit in the Southern District, and one for using the deposition transcripts [which had been designated by the opposing party as for "Attorney Eyes Only" pursuant to a Protective Order in the New York action] in the Massachusetts action. Both sanctions must be overturned.

\* \* \*

In seeking reversal of the sanction, Dorsey advances two arguments: (1) the district court's finding that Dorsey lawyers acted with an improper purpose was not accompanied by a finding that the firm itself acted in bad faith; and (2) … .

With regard to bad faith, the only passage in the district court's opinion touching on culpability of the firm itself is in a footnote to its conclusion, in which the court wrote that the firm's culpability "stems not only from Ms. Peters, but also from the firm's inability ? to adequately supervise its attorneys, as well as its decision to leave Ms. Peters in charge of the litigation while she was on vacation." This passage reflects that the district court imputed Peters's bad faith to Dorsey because Dorsey failed to prevent what she did. But we have held that "[b]ad faith is personal" and "may not automatically be visited" on others. *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1089 (2d Cir. 1977). **Accordingly, absent other specific evidence of Dorsey's bad faith, a sanction under the court's inherent power is unjustified.**

*Wolters Kluwer Fin. Servs.*, 564 F.3d at 114.[1]

---

[1] The New York federal district court decision at issue in *Wolters Kluwer Fin. Servs., Inc.* also addressed these same principles regarding the imposition of sanctions against law firms because of the misconduct of its individual attorneys. For example, the district court stated:

> … a finding of bad faith is a prerequisite to sanctions under 28 U.S.C. § 1927. *Oliveri v. Thompson*, 803 F.2d 1265, 1273. It should also be noted that sanctions imposed under 28 U.S.C. § 1927 may only be imposed on counsel, not the client. See *Oliveri v. Thompson*, 803 F.2d at 1273. In addition, "[b]ecause the statute is penal in nature…and is to be strictly construed, no vicarious liability should be imposed on third parties, such as uninvolved partners of violators or law firms. To extend liability beyond violators would not conform with the punitive nature of the statute." Joseph, SANCTIONS TREATISE at 380.

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 525 F. Supp.2nd 448, 538 (S.D.N.Y. 2007); see also *CPR Assoc., Inc. v. Se. Pa. Chapter of Am. Heart Ass'n*, CIVIL ACTION No. 90-3758, 1992 U.S. Dist. LEXIS 13703, at *30-31 (E.D. Pa. Sep. 3, 1992) (citing G. Joseph, *Sanctions: The Federal Law of Litigation Abuse* at 320 (1989), "Because the statute is penal in nature, however, and is to be strictly construed, no vicarious liability should be imposed on third parties, such as uninvolved partners of violators or law firms. To extend liability beyond violators would not conform with the punitive nature of the statute or the requirement that it be strictly construed.").

> With respect to the imposition of sanctions against law firms because of the misconduct by one of the firm's attorneys by a court through its inherent powers, the district court stated, "…a finding of bad faith is personal to the offender and thus cannot be attributed to another, such as an offending attorney's client or law firm, through such legal doctrines as vicarious liability. Joseph, SANCTIONS TREATISE at 446." *Id.*

Although not in the context of whether a "law firm", together with one of its attorneys, can also be found in contempt and/or subject to sanctions based upon such attorney's misdeeds, the following case addressed whether certain types of misdeeds by an attorney should be imputed pursuant to vicarious liability principles. In *Barrett v. Jones, Funderburg, Sessums, Peterson & Lee, LLC*, 27 So. 3d 363 (Miss. 2009), the Mississippi Supreme Court addressed the propriety of a trial court's imposition of sanctions against all then existing members of the Scruggs Katrina Group (SKG), a joint venture, along with attorney Don Barrett and attorney Richard Scruggs individually, based upon the misconduct of Richard F. Scruggs, who pleaded guilty to conspiracy to bribe the trial judge in the underlying fee dispute lawsuit over attorneys' fees filed by a former co-venturer, the law firm of Jones, Funderburg, Sessums, Peterson & Lee, LLC (the Jones Firm). *Id*. at 364. On appeal of such sanctions, the Barrett Firm; Don Barrett, individually; and the Lovelace Firm contended, *inter alia*, that: the imputation of Richard Scruggs's bad-faith misconduct to the appellants exceeded the circuit court's inherent power to sanction**; and the court erred by sanctioning the appellants because Richard Scruggs had acted outside the ordinary course of business of the joint venture**. *Id*. at 364-365.   As to those contentions, the Mississippi Supreme Court determined that the trial court had the discretionary authority to impose sanctions against SKG based upon the acts of a single partner that occurred in the ordinary course of business of SKG; however, the Court concluded that the trial court erred by finding that Richard Scruggs's misconduct occurred in the ordinary course of SKG's business and reversed the order of sanctions against the appellants/defendants. *Id.*

GKH asserts that the Trustee has failed to establish that the proposed settlement with the Chase parties is in the best interest of the bankruptcy estate and the Trustee's Motion to Approve Compromise and Settlement should not be approved. Neither the legitimate creditors of the Debtor,

including GKH, nor this Court can determine the extent of the benefit the estate will receive by waiving potential defenses the estate might have against the Chase parties' claims.

Furthermore, for the Chase parties to have a claim against the estate, and currently they have no claim, specific evidence of the Debtor's bad faith must be shown, rather than simply imputing Mr. Manookian's bad faith to his law firm. *Wolters Kluwer Fin. Servs.*, 564 F.3d at 114. A finding of bad faith is personal to the offender and cannot be attributed to another, such as an offending attorney's client or law firm, through such legal doctrines as vicarious liability. G. Joseph, *Sanctions: The Federal Law of Litigation Abuse at 446*. Mr. Manookian's misconduct in violating a lawful court order, even if true, is not an act taken within the scope of his authority as a licensed attorney and cannot be used to bind his employer, the Debtor.

GKH submits that it is likely that no sanctions will be awarded against the Debtor and the Chase parties will have no claim in the bankruptcy estate. As the Trustee has estimated that litigation expenses might "possibly" exceed $150,000,[2] it is not in the best interest of the estate to allow the Chase claim in an amount exceeding that expense.

For the foregoing reasons, GKH submits that the Trustee's Motion to Approve Compromise and Settlement should be denied.

---

[2] GKH is willing to consider defending the Trustee in any claim by the Chase parties with a limitation as to the maximum amount that the Trustee would have to pay.

Respectfully submitted,

GRANT KONVALINKA & HARRISON, P.C.

By:     s/John P. Konvalinka
        John P. Konvalinka (BPR #001780)
        Harry R. Cash (BPR #009385)
        633 Chestnut Street, Suite 900
        Chattanooga, TN 37450-0900
        jkonvalinka@gkhpc.com
        hcash@gkhpc.com
        (423) 756-8400
        (423) 756-6518 (*facsimile*)

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2021, a true and exact copy of the foregoing Objection to Trustee's Motion to Approve Compromise and Settlement was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the Notice of Electronic Filing. In addition, a copy was sent by regular U.S. mail with sufficient postage thereon to deliver same to the following:

Jeanne Ann Burton, Trustee
Jeanne Ann Burton, PLLC
4117 Hillsboro Pike, Suite 103-106
Nashville, TN  37215

United States Trustee
701 Broadway
Customs House, Suite 318
Nashville, TN  37203

Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN  37067

               /s/ John P. Konvalinka

456

# IN THE COURT OF APPEALS OF TENNESSEE AT NASHVILLE

## DAVID CHASE v. CHRIS STEWART ET AL.

**Circuit Court for Williamson County**
**No. 2015-200**

---

### No. M2018-01991-COA-R3-CV

---

### ORDER

Two of the appellants, Cummings Manookian PLC and Brian Manookian, have moved the court for an extension of time within which to file their brief through July 8, 2019. Dean Chase, Sandra Chase, and D.F. Chase, Inc. oppose the motion and have moved to dismiss the appeal as to these appellants.

The intent of the Tennessee Rules of Appellate Procedure is to allow cases to be resolved on their merits, Tenn. R. App. P. 1, *Johnson v. Hardin*, 926 S.W.2d 236, 238 (Tenn. 1996), and this court is given wide discretion to waive or suspend the rules in furtherance of that intent. Tenn. R. App. P. 2. Moreover, Tenn. R. App. P. 29(c) specifically grants this court authority to order the filing of a brief in lieu of granting a motion to dismiss. The court finds good cause to grant the requested extension of time. However, no further extensions will be granted absent a showing of exigent circumstances.

It is, therefore, ordered that the time for filing the brief of Cummings Manookian PLC and Brian Manookian is extended through July 8, 2019. The motion to dismiss is denied.

PER CURIAM



EXHIBIT
1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 3:19-bk-07235 |
| CUMMINGS MANOOKIAN, PLLC, ) | Chapter 7 |
| ) | Judge Walker |
| Debtor. ) | |
| ) | |

## BRIAN MANOOKIAN'S OBJECTION TO
## PROPOSED CHASE CLAIM AND SETTLEMENT

Brian Manookian is an attorney and the sole member and owner of Cummings Manookian, PLLC. For the reasons articulated below, Mr. Manookian objects to the Chase Parties' proposed claim and settlement with the Bankruptcy Estate. The date to file responses or objections to the Trustee's Motion is July 27, 2021 and the date of the scheduled hearing is August 11, 2021.[1]

## I.    INTRODUCTION

The Chase Claim rests on a judgment in a state court contempt proceeding that has since been vacated by the Tennessee Court of Appeals.[2] After having their Petition for Rehearing denied, the Chase Parties offered to resolve their claims with Cummings Manookian in exchange for a $0 walk-away and mutual release.[3] Inexplicably, the Trustee now proposes to ***negotiate up*** that offer to $250,000.

---

[1] The parties have agreed to postpone the hearing date due to a scheduling conflict and will file a proposed agreed order for the Court's consideration after all objectors are identified and consulted.

[2] *Chase v. Stewart, et al.*, No. M2018-01191-COA-R3-CV (Tenn. Ct. App. 2021), attached as **Exhibit 1.**

[3] Correspondence from Charlie Malone, March 18, 2021, attached as **Exhibit 2.**

1

Because the Chase Claim arises entirely out of a vacated and facially frivolous contempt proceeding; because the established and negotiated value of the Chase Claim is zero dollars; and because the negotiations between the Chase Parties and Special Counsel to the Trustee are rife with actual conflict and the appearance of a *quid pro quo*, Mr. Manookian requests that the proposed settlement be rejected.

## II.  FACTS

### A.  The Underlying *Chase v. Stewart* Matter

In 2015, Brian Manookian agreed to represent six defendants, *pro bono*, in a Williamson County Circuit Court case styled *Chase v. Stewart* ("the Chase Matter"). The Chase Matter was a malicious prosecution suit brought by real estate developer David Chase. Mr. Chase had been arrested during the early morning hours of June 8, 2014 for domestic violence after beating his girlfriend. Upon being booked into the Davidson County jail, Mr. Chase contacted attorney Bryan Lewis, who in turn called General Sessions Judge Casey Moreland, who arranged for Mr. Chase to be released from jail – notwithstanding a mandatory hold period – at which time Mr. Chase returned to his home and assaulted his girlfriend a second time, leading to his immediate re-arrest, national headlines, and, ultimately the Chase Matter.

David Chase filed *Chase v. Stewart* contending that various individuals conspired to have him arrested for domestic violence for the purpose of ruining his reputation and depriving him of his burgeoning career in real estate development. Brian Manookian, a partner with the firm Cummings Manookian PLLC, agreed to represent six (6) of the eight (8) defendants in Mr. Chase's lawsuit, and moreover, to do so on a *pro bono* basis.

As part of his representation, Mr. Manookian set out to prove that the dismissal of the criminal charges against Mr. Chase were not on the merits, but rather secured as part of a release-dismissal agreement with the Davidson County District Attorney. Doing so would defeat a central element of a malicious prosecution claim, in that the underlying charge must be dismissed on the merits as opposed to resulting from a negotiated settlement.

Toward that end, Mr. Manookian subpoenaed targeted materials from David Chase's employers, business entities, and parents (hereinafter "the Chase Parties"). On August 31, 2015, the Chase Parties responded by filing a Motion for the Entry of an Agreed Limited Protective Order (hereinafter the "ALPO") covering a narrow, specifically defined set of materials that could potentially be viewed as confidential.

The Trial Court never entered the ALPO as submitted by the Chase Parties, and the Chase Parties themselves immediately disregarded its terms. As such, and in the absence of any Order to the contrary, Brian Manookian disseminated certain of the Chase Parties' discovery materials to Media Outlets, the U.S. Attorney's Office, and the Federal Bureau of Investigation.

The Chase Parties responded by petitioning the Trial Court to hold Brian Manookian and Cummings Manookian in contempt of court for purported "violations" of a protective order that did not exist at the time of Mr. Manookian's dissemination.

Deep into the pendency of the years-long contempt proceedings, the Trial Court Judge, Michael Binkley, revealed that he held a pervasive personal animus against Brian Manookian over its belief that Mr. Manookian had filed a complaint with the Board of Judicial Conduct that led to widespread media reporting of the Trial Court Judge's arrest for solicitation of prostitution.

Brian Manookian and Cummings Manookian quickly moved for the Trial Court's recusal. The Trial Court not only refused to do so but began swiftly entering orders finding Manookian in contempt of court and awarding $748,769.21 in civil contempt damages against him and his law firm.

Brian Manookian and Cummings Manookian promptly appealed the Trial Court's Orders; arguing that the Trial Court was required to recuse itself from the matter; that the Trial Court's findings were not based in fact or law, but rather on an extreme, impermissible personal biases; and that, in any event, Brian Manookian and Cummings Manookian could not be held in contempt for violating an Order that did not exist.

**B.    Appointment of Phillip Young as a Receiver in the State Action**

While the Chase Appeal was pending, the Chase Parties filed a collections action asking the Williamson County Chancery Court to create a receivership over Cummings Manookian's accounts receivable and to specifically appoint Attorney Phillip Young as the Receiver to collect the $748,769,21 awarded by Judge Michael Binkley. The State Court did so, and Philip Young immediately began placing liens on Cummings Manookian's receivables and levying them as they came due.

Mr. Young collected tens of thousands of dollars owed to Cummings Manookian, ultimately paying all of that money to himself, and, in the meantime, instituting new adverse proceedings against Cummings Manookian, including seeking monetary awards against Cummings Manookian and asking the Court to hold Cummings Manookian in contempt.

**C.    Appointment of Phillip Young as Special Counsel in this Bankruptcy Proceeding**

While Phillip Young was acting as Receiver in the State Court Action – and while

the Chase Appeal was still pending – Mr. Manookian filed for bankruptcy on behalf of Cummings Manookian; in part, to seek protection from the increasingly punitive actions Phillip Young was taking against Cummings Manookian at the request of the Chase Parties.

The Bankruptcy Trustee petitioned to have Phillip Young – the same attorney who was concurrently pursuing Cummings Manookian's receivables on behalf of the Chase Parties as well as pursuing new sanctions against Cummings Manookian in the State Action – appointed as her Special Counsel in the Bankruptcy matter. Her request was granted over Mr. Manookian's objection, and Phillip Young began serving dual roles as Counsel for the Trustee in Cummings Manookian's Bankruptcy as well as Receiver in the Chase Parties' state court lawsuit against Cummings Manookian; roles in which he continues to serve as of the time of this filing.

### D.    The Court of Appeals' Decision and Denial of Rehearing

On February 4, 2021, the Tennessee Court of Appeals released its holding in *Chase v. Stewart*. The Court of Appeals vacated the judgment of $748,769,21, finding that Judge Michael Binkley should have recused himself as a result of an appearance of bias; and further finding that the bias had existed for so long as to justify his retroactive recusal.

The Chase Parties petitioned the Court of Appeals for rehearing. Their Petition was denied in a multi-page order issued on March 16, 2021.[4]

### E.    The Chase Parties' Offer of a Walk-Away

Two days after the Tennessee Court of Appeals denied the Chase Parties' Petition for Rehearing, the Chase Parties sent a settlement letter to Counsel for Brian Manookian

---

[4] *Chase v. Stewart*, Order on Petition for Rehearing, attached as **Exhibit 3**.

offering to "walk-away" from their purported claims against Brian Manookian and Cummings Manookian in exchange for no payment and with all parties executing mutual releases. The letter indicated that the Chase Parties would seek agreement for the "walk-away" settlement on behalf of Cummings Manookian from the Trustee.

### F. The Chase Parties' Unexplained Withdrawal from Negotiations and Simultaneous, Gratuitous Payment of Phillip Young's Fees in the State Action

Days after offering a walk-away settlement on their now-vacated claims, the Chase Parties *sua sponte* and gratuitously announced they had agreed to pay all of Phillip Young's outstanding fees in the State Collections action. This was significant for Mr. Young. As the Receiver of a collections action where the underlying judgment had been vacated, Mr. Young stood the likelihood of not only having his outstanding fees unpaid, but also having Cummings Manookian and the other parties against whom he had seized receivables and which he remitted to himself as Receiver, seek reassessment and repayment.[5]

### G. The Chase Parties New Proposed Settlement with State Receiver / Federal Bankruptcy Special Counsel Phillip Young

Shortly after having gratuitously agreed to pay Receiver Phillip Young's outstanding fees in the State Action, the Chase Parties and Special Counsel Phillip Young in the Bankruptcy Matter entered into a new settlement which is drastically worse for Cummings Manookian than the previously proposed "walk-away," but provides a quarter-million-dollar windfall for the Chase Parties.

---

[5] Indeed, at least one other Defendant in the state collections case, Hammervold PLC, has asked the State Trial Court to refund its receivables which were ultimately paid to Phillip Young. That request is currently pending before the Court. Phillip Young, as Special Counsel in the Bankruptcy matter, has not asked the State Court to refund Cummings Manookian's money paid to Receiver Phillip Young.

In exchange for releasing the <u>vacated</u> claims which the Chase Parties had previously only required a non-payment and mutual release, Special Counsel Phillip Young now proposes to pay the Chase Parties $250,000.

## III.    ARGUMENT

The proposed claim and settlement with the Chase Parties should be rejected. Cummings Manookian has no liability to the Chases.   Cummings Manookian has prevailed twice on appeal.  The Chase Parties have appropriately and recently valued their own claims at $0 by offering a walk-away.  That walk-away was apparently scuttled by new, and dubiously-ethical, negotiations by a conflicted Special Counsel with a result highly suggestive of a *quid pro quo*.

Moreover, the Chases' "claims" which Special Counsel seeks to compromise are facially frivolous and will cost Cummings Manookian nothing to defend – if such claims are even pursued.  The proposed settlement is, at best, not remotely in the interest of the Bankruptcy Estate and, at worst, the result of conflicted self-dealing on behalf of the Chase Parties and Mr. Young.   Brian Manookian, as the sole owner and member of Cummings Manookian, objects to its terms.

### A.    Cummings Manookian Has No Liability to the Chase Parties

As a threshold matter, it bears emphasis that Cummings Manookian has zero current or likely liability to the Chase Parties.  The Chase Parties "claim" is the threat of proceeding with a facially-frivolous contempt petition which has now been vacated and denied for rehearing.   As a result, there is no existing judgment against Cummings Manookian for the Trustee to "compromise," nor is there likely to ever be one.

   *1.    Cummings Manookian has Repeatedly Prevailed Against the
         Chase Parties on Appeal*

7

The Chase Parties' Claim, as originally filed in this bankruptcy action, consisted of a $748,000 judgment from the Williamson County Circuit Court. That judgment has now been vacated, and the petition for rehearing has been denied. The only legally-binding basis for the Chase's assertion that Cummings Manookian once owed them money no longer exists. At best and at present, the Chase Parties are left with a set of unproven allegations in a state court contempt proceeding; an action that may not even be currently prosecuted against Cummings Manookian.

    2.    *The Chase Parties Existing "Claim" is Properly Valued at a Walk-Away*

As recognized by the Chase Parties, the proper value of their existing "claim" is zero.[6] Following the denial of their Petition for Rehearing with the Tennessee Court of Appeals, the Chase Parties sought to compromise their "claim" against Cummings Manookian and the other parties involved in the contempt proceeding in exchange for a mutual release and walk-away.

The Chase Parties sought a walk-away, in part, because they justifiably now fear being sued for damages by Cummings Manookian to recover the funds that were levied by State Court Receiver Phillip Young. Stated alternatively, Cummings Manookian has legitimate and cognizable claims against the Chase Parties as a result of their seizing funds through Receiver Phillip Young for which they no longer hold a judgment.

The idea that Cummings Manookian would pay any sum of money to the Chase Parties – much less $250,000 – after (1) the underlying judgment has been vacated, (2) the Chase Parties have nevertheless seized funds belonging to Cummings Manookian

---

[6] *See* **Exhibit 2**.

without returning them post-vacated judgment, and (3) the Chase Parties have offered a $0 walk-away and mutual release is farcical.  Rather than act in the Bankruptcy Estate's interest, Special Counsel for the Trustee proposes to negotiate **up** Cummings Manookian's liability from $0 to a quarter of a million dollars.

3. *The Underlying Chase Claims are Facially Frivolous*

In any event, the underlying claims in the contempt proceeding are facially frivolous.  The gravamen of the Chases' Contempt Proceeding is a claim that Brian Manookian violated a protective order by disseminating discovery materials to the media and law enforcement.  But the protective order had not been entered at the time of Mr. Manookian's dissemination.  It is axiomatic that one cannot violate an order that does not exist.  Likewise, one cannot be held in contempt for taking otherwise lawful actions that have not been proscribed by a Court.  Finally, the Chase Parties have conceded they have no damages from Mr. Manookian's actions other than incurring attorney's fees in pursuing the contempt proceeding itself.  The underlying, unproven, and unproveable "claims" the Trustee proposes to settle are facially frivolous.

**B.     THE TRUSTEE HAS FAILED TO INVESTIGATE THE CHASE CLAIM**

It is additionally worth emphasizing – because it is emblematic of a consistent issue in this case – that the Trustee appears to have made little to no effort to investigate the Chase Claim or subject it to minimal scrutiny. Special Counsel for the Trustee, Phillip Young, did not even contact the attorneys who represented Cummings Manookian in the appeal or underlying contempt proceedings to evaluate the merits of the claim.

Indeed, it is difficult to address the Trustee's reasoning for proposing a quarter million-dollar settlement with the Chase Parties because no reasoning is ever articulated

in its proposal. The Trustee appears to suggest that there is some uncertainty as to whether the Court of Appeals' opinion impacts the judgment against Cummings Manookian. This is either a deliberate attempt to mislead this Court or a display of profound misunderstanding of basic litigation. The only judgment against Cummings Manookian was the same order that the Court of Appeals entirely vacated.

Likewise, the Trustee appears to suggest that because the underlying contempt proceeding dragged on for a number of years that Cummings Manookian *could possibly* incur costs in defending a renewed proceeding. Preliminarily, this presumes that the Chase Parties will renew the proceeding, which Mr. Manookian believes is highly unlikely. But moreover, it fails to consider (and the Trustee, in fact, failed to even inquire into) Cummings Manookian's costs in defending the prior action: $0.

Cummings Manookian's liability to the Chase Parties is entirely derivative. Cummings Manookian may only be held liable if its agent, Brian Manookian, is found liable. Brian Manookian has – and will continue to – vigorously defend any action by the Chase Parties at no expense to Cummings Manookian.

In sum, the Trustee has neither adequately scrutinized the Chase Claim or articulated any bases in the interest of the Bankruptcy Estate for a significant payment; or why that payment should be $250,000 as opposed to any other randomly selected number. Instead, the Trustee bizarrely frames her proposal as a negotiation down from a vacated $750,000 judgment when, in reality, she has negotiated up from the currently existing $0 obligation and the contemporaneously proposed $0 walk-away.

## C. SPECIAL COUNSEL HAS NEGOTIATED A DEAL RIFE WITH ACTUAL CONFLICTS AND HIGHLY SUGGESTIVE OF A *QUID PRO QUO*

As articulated above, Special Counsel Phillip Young has significant, ongoing actual conflicts that are particularly egregious in his dealings on behalf of the Bankruptcy Estate with the Chase Parties. Prior to the Bankruptcy Filing, the Chase Parties sued Cummings Manookian and asked the Court specifically to appoint Phillip Young as the Receiver to levy Cummings Manookian's receivables. In that role, Receiver Phillip Young has seized money belonging to Cummings Manookian, paid himself that money, and pursued new punitive actions against Cummings Manookian. The position staked out by Mr. Young as Receiver is undeniably and expressly adverse to Cummings Manookian and beneficial to the Chase Parties – and it continues to be.

In his concurrent role as Special Counsel in Cummings Manookian's bankruptcy, Phillip Young has declined to institute any action to recoup the Cummings Manookian money paid to Receiver Phillip Young in fulfillment of a now-vacated judgment. And in what is highly suggestive of a *quid pro quo* (and conclusive of an actual conflict), Special Counsel Phillip Young proposes to pay the Chase Parties $250,000 of Cummings Manookian's funds in the Bankruptcy Proceeding shortly after the Chase Parties gratuitously agreed to pay Receiver Phillip Young's fees in the Cummings Manookian collections action. Particularly in light of their days-earlier offer of a walk-away, this arrangement gives the appearance that the Chase Parties have secured a payment of Cummings Manookian's funds from Special Counsel Phillip Young in exchange for making a payment to Receiver Phillip Young.

Brian Manookian will shortly be filing a comprehensive Motion to Disqualify Phillip Young following receipt of certain materials in the state collections action. In the

11

interim, Mr. Manookian objects to the proposed settlement negotiated by Phillip Young serving dual roles as both Receiver and Special Counsel.

## IV.   CONCLUSION

For all of the foregoing reasons, Mr. Manookian objects to the proposed claim and settlement with the Chase Parties.

Date:  July 27, 2021                                    Respectfully submitted,


                                                        /s/ John Spragens
                                                        John Spragens (TN Bar No. 31445)
                                                        Spragens Law PLC
                                                        311 22nd Ave. N.
                                                        Nashville, TN 37203
                                                        T: (615) 983-8900
                                                        F: (615) 682-8533
                                                        john@spragenslaw.com

                                                        *Attorney for Manookian PLLC and
                                                        Brian Manookian*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed July 27, 2021 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.


                                                        /s/ John Spragens

469

# EXHIBIT 1

FILED
02/04/2021
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### January 7, 2020 Session

## DAVID CHASE v. CHRIS STEWART ET AL.

### Appeal from the Circuit Court for Williamson County
### No. 2015-200     Michael Binkley, Judge
_____

### No. M2018-01991-COA-R3-CV
_____

A trial court held two attorneys in contempt, assessing damages and sanctions against them. Shortly before another hearing in which the court was to consider a supplemental award of attorney's fees, the judge of the trial court made comments in an unrelated case about one of the attorneys held in contempt. That attorney moved to recuse based, in part, on the judge's comments. The trial court denied the motion to recuse and later entered a supplemental order of damages against the attorneys. Because the judge's comments provide a reasonable basis for questioning his impartiality, we reverse the denial of the motion to recuse. And because retroactive recusal is appropriate, we also vacate the contempt and damages orders.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Brian P. Manookian, Nashville, Tennessee, pro se appellant.

Mark Andrew Hammervold, Elmhurst, Illinois, pro se appellant.

Brian P. Manookian, Nashville, Tennessee, for the appellant, Cummings Manookian PLC.

Mark Andrew Hammervold, Elmhurst, Illinois, for the appellant, Hammervold Law, PLC.

Gayle I. Malone, Jr., Charles I. Malone, and Beau C. Creson, Nashville, Tennessee, for the appellees, Dean Chase, Sandra Chase, and D.F. Chase, Inc.

471

Marcus M. Crider and Heath H. Edwards, Nashville, Tennessee, for the appellees, CK Global, LLC and NV Music Row, LLC.

## OPINION

### I.

#### A.

In this consolidated appeal, we review the trial court's denial of a motion to recuse and its orders holding in contempt and sanctioning two attorneys, Brian Manookian and Mark Hammervold, and their respective law firms, Cummings Manookian PLC[1] and Hammervold Law, PLC. The orders on appeal arise from, but have little to do with, a case filed by David Chase ("Plaintiff") against multiple defendants. Mr. Manookian and Mr. Hammervold represented several of the defendants. Purportedly to defeat an element of the malicious prosecution claim brought by Plaintiff and to prove Plaintiff had not suffered reputational harm, Mr. Manookian subpoenaed individuals and entities that were not parties to the case. The non-parties included Plaintiff's parents, Dean Chase and Sandra Chase; and entities to which Plaintiff had some connection, D.F. Chase, Inc.; CK Global, LLC; and NV Music Row, LLC. Mr. Manookian also sought deposition testimony from Plaintiff's parents.

Wanting to protect confidential information, Dean Chase; Sandra Chase; D.F. Chase, Inc.; CK Global, LLC; and NV Music Row, LLC (collectively, "Petitioners") proposed an agreed protective order before responding to the subpoenas or submitting to the depositions. And, after negotiations, counsel reached an agreement on the terms of the protective order. Among other things, the proposed order defined confidential information, provided methods for both designating information as "confidential" and challenging such designations, and restricted the indiscriminate or mass designation of information as "confidential."

Counsel for Petitioners then proposed that the document production could proceed provided that Mr. Manookian would agree that the production was subject to the protective order despite it not being entered by the court. Mr. Manookian responded: "I agree that the Order is binding on me and my clients at the time it is signed with permission as opposed to entered by the Court." So counsel for Petitioners filed the proposed agreed protective order with the court. The same day, Petitioners produced

---

[1] After briefing in this appeal, Cummings Manookian PLC filed a voluntary bankruptcy petition for relief under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Tennessee. Late last year, the Chapter 7 Trustee reported that "it is unforeseeable that the bankruptcy case will be resolved before April, 2021, at the earliest."

over 78,000 pages of documents in response to the subpoenas. Petitioners designated all of the documents as "confidential" under the proposed agreed protective order. In a cover letter, counsel for Petitioners stated that, while they "realize[d] that the Protective Order cautioned against mass designation of documents as 'confidential' . . . it would have been unduly burdensome upon our clients to review each of the . . . documents . . . ." Counsel for Petitioners offered to conduct a page-by-page review if Mr. Manookian's clients would pay for it. Counsel alternatively suggested that Mr. Manookian's clients could challenge any "confidential" designation to a specific document or documents.

Mr. Manookian objected to the mass designation and, in a filing with the court, withdrew his consent to the proposed agreed protective order. But, a few days later, he made another filing requesting that the court enter the proposed agreed protective order. Petitioners then filed a motion requesting the entry of a protective order and that the court sustain its confidentiality designations. They set the motion for hearing on October 30, 2015.

Before the hearing took place, Mr. Manookian filed documents and excerpts from the deposition transcripts of Dean and Sandra Chase, all of which had been designated as "confidential," in response to a motion filed by Plaintiff. Counsel for Petitioners appeared at an October 20, 2015 hearing on Plaintiff's motion and made an oral motion. Counsel requested that the court treat as confidential all documents already produced by Petitioners, as well as the deposition testimony of Dean and Sandra Chase. Counsel also requested that the response filed by Mr. Manookian, including the exhibits, be kept under seal. The court granted the oral motion.

At the October 30, 2015 hearing, the court again ruled in favor of Petitioners and ordered that "all pleadings or documents containing, attaching, or referencing documents, testimony, or information designated as confidential . . . were to be filed under seal." And the court "adopted,"[2] with modifications, the proposed agreed protective order. The court ordered that documents designated as "confidential" be protected consistent with the terms of the agreed protective order. The court's oral rulings at the October 20 and October 30 hearings were reflected in written orders entered on November 7, 2015, and November 6, 2015, respectively.

### B.

On February 25, 2016, Dean Chase, Sandra Chase, and D.F. Chase, Inc. moved for sanctions. They claimed that, on February 3, 2016, confidential materials, including video recordings of Dean Chase's and Sandra Chase's deposition testimony, were

---

[2] It is unclear if the court entered the proposed agreed protective order.

3

featured on two television news broadcasts and were also published online. And other media outlets had published stories using the same materials.

While the motion did not specifically allege that either Mr. Manookian or Mr. Hammervold provided the confidential materials to the media, it blamed the pair for use of confidential documents in separate litigation they had filed on behalf of another client against Dean Chase. The motion asked the court to identify who had violated its previous orders and to hold those parties or counsel in contempt and award costs, attorney's fees, and other expenses.

Following a hearing on the motion for sanctions, the court entered an order identifying four attorneys "whose actions in this matter strongly indicate violations of Tennessee Rule of Civil Procedure 37.02 and possible contempt of the orders of th[e] Court." The court granted leave to those "affected by alleged violations of Tennessee Rule of Civil Procedure 37.02 and violations of the corresponding Court Orders [to] file appropriate pleadings for sanctions, listing specifically each violation alleged to have occurred and the specific injury inflicted upon each party." Petitioners did so against three attorneys, including Mr. Manookian and Mr. Hammervold and their respective law firms.

After the hearing, the trial court found Mr. Manookian and Mr. Hammervold in contempt. The court found Mr. Manookian in contempt for using confidential materials in preparing, strategizing, and negotiating the separate lawsuit and in attaching a confidential document to a pleading in that lawsuit. And the trial court also found that Mr. Manookian had disclosed confidential materials to the media after the court had ordered that such documents not be disclosed. The trial court found Mr. Hammervold in contempt for allowing the filing of the confidential document in the separate lawsuit. Though Mr. Manookian made the filing, Mr. Hammervold was his co-counsel. As such, the court held that Mr. Hammervold was responsible as well.

The trial court also sanctioned Mr. Manookian and Mr. Hammervold under Tennessee Rule of Civil Procedure 37.02. The trial court first sanctioned both attorneys for the same actions for which it had found them in contempt. The court then found other actions of the two attorneys sanctionable. As to Mr. Manookian, the trial court sanctioned him for disclosing confidential materials to law enforcement and three attorneys not involved in the case before the court issued any ruling on the protective order. The court categorized those actions as an abuse of discovery. The court also found that he was not candid with the court and attempted to defraud the court. As to Mr. Hammervold, the trial court sanctioned him for Mr. Manookian's disclosure to the media. The court found that Mr. Hammervold "had knowledge of and was complicit in concealing the improper disclosure" from the court. The court reasoned that Mr. Hammervold had also abused the discovery process, failed to be candid with the court, and attempted to defraud the court.

4

Based on its finding of contempt—and, alternatively, its finding of sanctionable conduct—the trial court awarded damages to Petitioners in the form of attorney's fees and expenses against Mr. Manookian and Mr. Hammervold and their respective law firms. Considering affidavits filed by Petitioners' attorneys, the court awarded Petitioners $622,696.12. The trial court also granted counsel for Petitioners leave to supplement their affidavits with fees incurred for time spent preparing for the contempt hearing through the date of the contempt order.

C.

About a month after the contempt order and before the hearing on the supplemental fee request, the judge of the trial court referenced Mr. Manookian while presiding over a hearing in the case of *Elite Emergency Services, LLC v. Nesmith*. In open court, the judge said

> There was a lawyer, Mr. Brian Manookian, who I have released a one-hundred-twenty-two page memorandum and order on, who, among many, many other things, submitted a false and fake package, along with another person, to the Board of Professional Responsibility and the Court of the Judiciary.

> Well, come to find out that it was fake. And it was wrong. Channel 4 News picked it up and made it a headline . . . . Totally false. Totally false.

> The Board of Professional Responsibility saw what it was and said, "We're not going to investigate it, Judge Binkley." And I said, "Oh, please do. I'm begging you to investigate because you know how people are. They'll read half the story and say, 'Ah, that was a put-up. They're helping Judge Binkley out.'"

> I don't want that. I hired a lawyer and I said, "Let's do it right." Full investigation, dismissed, and it should've been. Now, Channel 4 News published it as if it were true. Now, what do I do when I'm sitting there watching that, and my family is watching it, and all of my friends are watching it?

> And as a judge it's probably good that I don't say a word. It's very difficult. But my day will come. And it's just about here . . . . I feel like it's necessary for me to be crystal clear, transparent and clear. I did not like what Mr. Manookian did at all, and my day will come.

5

After the trial court made these comments, Mr. Manookian, on behalf of himself and his law firm, moved to recuse the judge.[3]  In his recusal motion, Mr. Manookian argued, among other things, that the above comments showed the court's bias against him.  The trial court denied the recusal motion, finding the statements made in open court "irrelevant to the issues in the present case."

Two days after the denial of Mr. Manookian's recusal motion, the trial court awarded Petitioners $126,073.09 in supplemental attorney's fees in a separate order.  In total, then, the trial court held Mr. Manookian, Mr. Hammervold, and their respective law firms jointly and severally liable for $748,769.21.  The trial court designated the original order of contempt and damages and the supplemental order of damages together as a final judgment under Tennessee Rule of Civil Procedure 54.02.

## II.

Mr. Manookian petitioned for an accelerated interlocutory appeal of the denial of his third recusal motion.  *See* TENN. SUP. CT. R. 10B, § 2.01.  And Mr. Manookian and Mr. Hammervold appealed the final judgment of contempt and damages.  We consolidated the interlocutory appeal with the appeal of the final judgment.

The parties' arguments focus both on whether the trial judge should have recused himself and on the merits of the contempt and damages orders.  We find the recusal issue dispositive.  As to that issue, the parties argue over various possible grounds for recusal.  We focus on the trial court's comments about Mr. Manookian in the unrelated proceeding.

## A.

Rule 10B of the Rules of the Supreme Court of Tennessee governs the procedure for "determin[ing] whether a judge should preside over a case."  TENN. SUP. CT. R. 10B.  When a trial court denies a motion to recuse, a party can either take an interlocutory appeal or raise the issue in an appeal after entry of final judgment.  *Id.* § 2.01.  In both scenarios, we review a trial court's ruling on a motion to recuse de novo.  *Id.*

In Tennessee, litigants "have a fundamental right to a 'fair trial before an impartial tribunal.'"  *Holsclaw v. Ivy Hall Nursing Home, Inc.*, 530 S.W.3d 65, 69 (Tenn. 2017) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)); *see Kinard v. Kinard*, 986

---

[3] The previous year Mr. Manookian filed two recusal motions, which were denied.  He sought accelerated interlocutory review of the denial of his first recusal motion.  *See* TENN. SUP. CT. R. 10B, § 2.01.  We affirmed the denial of that motion.  *Chase v. Stewart*, No. M2017-01192-COA-T10B-CV, 2017 WL 3738466, at *4 (Tenn. Ct. App. Aug. 29, 2017).  Mr. Manookian did not seek interlocutory review of his second recusal motion.

S.W.2d 220, 227 (Tenn. Ct. App. 1998) (reasoning that litigants "are entitled to the 'cold neutrality of an impartial court'" (quoting *Leighton v. Henderson*, 414 S.W.2d 419, 421 (Tenn. 1967))); *see also* TENN. CONST. art. VI, § 11. It "goes without saying that a trial before a biased or prejudiced fact finder is a denial of due process." *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998).

Tennessee has long recognized that "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001); *see In re Cameron*, 151 S.W. 64, 76 (Tenn. 1912) ("[I]t is of immense importance, not only that justice shall be administered . . . , but that [the public] shall have no sound reason for supposing that it is not administered."). Of course, a judge should recuse when they have "any doubt as to [their] ability to preside impartially in [a] case." *Davis*, 38 S.W.3d at 564. But a judge must also "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." TENN. SUP. CT. R. 10, Rule 2.11(A). This test is "an objective one." *State v. Cannon*, 254 S.W.3d 287, 307 (Tenn. 2008). It requires recusal "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis*, 38 S.W.3d at 564-65 (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)).

A party seeking disqualification or recusal must support a recusal motion with an affidavit or declaration and "other appropriate materials." TENN. SUP. CT. R. 10B, § 1.01. When a party brings forward a trial court's comments as evidence to support a recusal motion, we must determine whether the comments "indicate that the judge has prejudged factual issues." *Alley*, 882 S.W.2d at 822. "Any comments made by the trial court must be construed in the context of all the facts and circumstances to determine whether a reasonable person would construe those remarks as indicating partiality on the merits of the case." *Id.*

Here, Mr. Manookian submitted the declaration of Samuel Clemmons. In this declaration, Mr. Clemmons detailed the comments that the trial judge made about Mr. Manookian in the *Elite Emergency Services* case, to which Mr. Clemmons was a party.[4] Petitioners challenge Mr. Clemmons's declaration as "inherently suspect, at best." We disagree. Courts instead presume that testimony provided under oath and

---

[4] Petitioners argue that Mr. Manookian waived the right to seek recusal of the trial judge based on the judge's comments. A party waives the right "to question a judge's impartiality" if the party does not assert the grounds for recusal "in a timely manner." *Kinard*, 986 S.W.2d at 228 (citations omitted). A one-year delay in asserting grounds for recusal constitutes waiver. *Chase*, 2017 WL 3738466, at *3; *In re Samuel P.*, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *6 (Tenn. Ct. App. Aug. 31, 2016). Here, Mr. Manookian filed the third recusal motion twenty-two days after the judge's comments. Under the circumstances, we find that Mr. Manookian acted in a timely manner.

penalty of perjury is true.  *See, e.g.*, *Hogue v. Kroger Co.*, 356 S.W.2d 267, 271 (Tenn. 1962) ("This court certainly will not ascribe to the oath-taker the infamy of a perjurious mind.  We think, with every presumptive support, that people normally are honest and tell the truth." (citation omitted)).  In its order denying the recusal motion, the trial court treated the comments as if they had been made, so we do also.

In his comments, the judge claimed that Mr. Manookian "submitted a false and fake package . . . to the Board of Professional Responsibility and the Court of the Judiciary."  The media ultimately "picked it up" and published a "[t]otally false" story about the judge.  But, the judge continued, the media published the story "as if it were true."  So, the judge wondered, "what do I do when I'm sitting there watching that, and my family is watching it, and all of my friends are watching it?"

The gist of the comments is that the judge blamed Mr. Manookian for the court's exposure to negative publicity, possibly drawing the scrutiny of the judge's family and friends.  The judge was "crystal clear" and "transparent" about not liking that "at all."  The court also did not like "many, many other things" Mr. Manookian had done.  And the judge envisaged that "my day will come."

Taken in context, "a reasonable person would construe th[e] remarks as indicating" that the judge may have sought retribution against Mr. Manookian for a perceived wrongdoing unrelated to the contempt charges.[5]  *See Alley*, 882 S.W.2d at 822.  This possible motivation provides "a reasonable basis for questioning the judge's impartiality."  *See Davis*, 38 S.W.3d at 564; *see also State v. Cobbins*, No. E2012-02025-CCA-10B-DD, 2012 WL 5266427, at *22-23 (Tenn. Crim. App. Oct. 25, 2012) (recusal warranted based, in part, on trial court's comments that it was "[m]y time" and "my day had finally come").

Petitioners insist that the trial court was "impartial and entirely fair" to Mr. Manookian and Mr. Hammervold.[6]  The record reflects that the judge showed

---

[5]  In the order denying the motion to recuse, the trial court provided more context.  The judge explained that Mr. Manookian had been providing information about the judge to Mr. Clemmons.  Mr. Clemmons then used this information to file a complaint with the Board of Judicial Conduct.  That complaint was later dismissed.  In the judge's view, Mr. Manookian and Mr. Clemmons "have obviously worked together for the sole purpose of . . . attempt[ing] to publicly embarrass or ridicule the Court."

[6]  Petitioners argue that Mr. Hammervold did not properly preserve the recusal issue for appeal.  In response to our order directing the parties to respond to Mr. Manookian's Rule 10B petition for recusal appeal, *see* TENN. SUP. CT. R. 10B, § 2.05, Mr. Hammervold, on behalf of himself and his law firm, joined the petition.  And as a party, he was entitled to raise the denial of the recusal motion in his brief, which he did.  *See* Tenn. R. App. P. 3(h) (broadly allowing any party to raise any issue "upon the filing of a single notice of appeal").  Although Mr. Hammervold did not join Mr. Manookian's recusal motion in the trial court, the Rules of the Supreme Court of Tennessee speak of recusal as to proceedings, not as to parties.  *See* TENN. SUP. CT. R. 10, Rule 2.11(A).

extraordinary patience and was thorough in his review of serious allegations against Mr. Manookian and Mr. Hammervold. We do not conclude that the judge was actually partial. But that is not the standard for recusal. *See Kinard*, 986 S.W.2d at 228 ("[T]he public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial."). Under Tennessee's objective standard, the judge's impartiality might reasonably be questioned. So the judge should have recused himself. *See Cook v. State*, 606 S.W.3d 247, 255 (Tenn. 2020) (reasoning that Tennessee's objective standard "'may sometimes bar trial by judges who have no actual bias'" (quoting *In re Murchison*, 349 U.S. 133, 136 (1955))).

Petitioners also contend that, because the judge made the comments after the contempt order, the comments cannot be evidence of any predisposition against Mr. Manookian. *See Alley*, 882 S.W.2d at 821. We again disagree. The unfavorable news story for which the judge claimed Mr. Manookian was responsible ran in February 2017. And the trial court issued the contempt order in July 2018. So the impetus for the judge's thoughts about Mr. Manookian may have existed for almost a year and a half before the court entered the contempt order.[7] That the judge did not air those thoughts until after entry of the contempt order misses the point.

## B.

Having determined that recusal was appropriate, we must consider the impact on the final judgment of contempt and damages. Retroactive recusal generally is not the appropriate remedy. *See Watson v. Cal-Three, LLC*, 254 P.3d 1189, 1193 (Colo. App. 2011) ("Recusal provides prospective relief; it does not necessarily invalidate orders previously entered."); 46 AM. JUR. 2D *Judges* § 210, Westlaw (database updated Nov. 2020). But, in *Liljeberg v. Health Services Acquisition Corp.*, the United States Supreme Court set forth a test to determine whether retroactive recusal is appropriate under the federal recusal statute. 486 U.S. 847, 863-64 (1988). We find it appropriate to apply the *Liljeberg* test here. Tennessee courts "may look to federal interpretation of similar federal laws for guidance in enforcing [Tennessee] statutes." *Van Tran v. State*, 66 S.W.3d 790, 821 (Tenn. 2001) (Barker, J., concurring in part and dissenting in part); *see Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000) (interpreting Tennessee anti-discrimination laws), *abrogated on other grounds by Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010); *Arnold v. Morgan Keegan & Co.*, 914 S.W.2d 445, 448 & n.2 (Tenn. 1996) (interpreting the Tennessee Uniform Arbitration Act); *Thomas v. Oldfield*, 279 S.W.3d 259, 261-62 & n.3 (Tenn. 2009) (interpreting the

---

[7] Although one of the two hearing dates on the contempt petition occurred before the media story ran, there is still a "reasonable basis for questioning" whether partiality may have affected the trial court's contempt order. *See Davis*, 38 S.W.3d at 564.

Tennessee Rules of Civil Procedure); *State v. Clayton*, 131 S.W.3d 475, 478 (Tenn. Crim. App. 2003) (interpreting the Tennessee Rules of Criminal Procedure). Tennessee's recusal standard is identical to the federal standard, save for noun and pronoun usage. *Compare* TENN. SUP. CT. R. 10, Rule 2.11(A), *with* 28 U.S.C. § 455(a) (2018). And Tennessee courts have often cited the United States Supreme Court with approval on recusal issues. *See State v. Griffin*, 610 S.W.3d 752, 760 (Tenn. 2020) (citing *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1907-09 (2016)); *Cook*, 606 S.W.3d at 255 (citing *In re Murchison*, 349 U.S. at 136); *Bailey v. Blount Cty. Bd. of Educ.*, 303 S.W.3d 216, 239 (Tenn. 2010) (citing *Chapman v. California*, 386 U.S. 18, 23 n.8 (1967)); *Kinard*, 986 S.W.2d at 228 (citing *Offutt v. United States*, 348 U.S. 11, 14 (1954)); *Alley*, 882 S.W.2d at 821 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)).

The *Liljeberg* test "consider[s] the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 864. As to the parties in this case, the purpose of the right to impartiality "is to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion." *State v. Benson*, 973 S.W.2d 202, 205 (Tenn. 1998) (citing *Chumbley v. People's Bank & Tr. Co.*, 57 S.W.2d 787, 788 (Tenn. 1933)).

As noted above, the basis for the judge's thoughts about Mr. Manookian may have existed for nearly a year and a half before the July 2018 contempt order. It likely existed at least since May 23, 2017, when the trial court entered the order denying an earlier recusal motion filed by Mr. Manookian. That order indicates that, by then, the judge suspected that Mr. Manookian was behind the news story and unfounded complaints about the judge made to the Board of Professional Responsibility and the Court of the Judiciary. The contempt order itself references the Board of Professional Responsibility complaint in an adverse credibility finding against Mr. Manookian. So once the court revealed its thoughts about Mr. Manookian in open court, one might reasonably question whether the court "had reached a prejudged conclusion" as to the contempt order. *See Benson*, 973 S.W.2d at 205. Although the contempt order is the product of over two years of litigation, under these circumstances "there is a greater risk of unfairness in upholding the judgment in favor of [Petitioners] than there is in allowing a new judge to take a fresh look at the issues." *See Liljeberg*, 486 U.S. at 868; *see also Olerud v. Morgan*, No. M2010-01248-COA-R3-CV, 2011 WL 607113, at *2-3 (Tenn. Ct. App. Feb. 18, 2011) (vacating orders of the trial court entered before a recusal motion was filed when the basis for recusal "was discovered . . . after the court entered critical rulings in the case").

Second, to deny retroactive relief could cause injustice in other cases. Our supreme court has cautioned judges about inappropriate remarks. *See Cook*, 606 S.W.3d at 257 (admonishing Tennessee judges "to refrain from [making] inappropriate

comments"); *see also Leighton*, 414 S.W.2d at 420 ("[T]he judge must be careful not to give an expression to any thought, or to infer what his opinion would be in favor or against either of the parties in the trial."). Allowing a remedy for inappropriate remarks even late in the proceedings would encourage judges to reflect on possible grounds for recusal through all phases of a case. *See Liljeberg*, 486 U.S. at 868 (Retroactive enforcement "may prevent a substantive injustice in some future case by encouraging a judge . . . to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered.").

Third, allowing the contempt order to stand risks undermining public confidence in the judiciary. Surely, "'justice must satisfy the appearance of justice.'" *Liljeberg*, 486 U.S. at 864 (quoting *In re Murchison*, 349 U.S. at 136); *Cook*, 606 S.W.3d at 255 (quoting same). Here, when the judge mused that "my day will come," the judge also said that day is "just about here"—less than a month before awarding supplemental damages and finalizing the contempt order. And the judge mentioned that he had "released a one-hundred-twenty-two page memorandum and order on" Mr. Manookian, which was the order holding him in contempt. So the basis upon which it is reasonable to question the judge's impartiality is directly connected to the contempt order.

Because the trial court's impartiality might reasonably be questioned, the court should have recused itself. And under the circumstances of this case, retroactive recusal is warranted. In finding retroactive recusal warranted, we express no opinion on the merits of the contempt proceeding.

### III.

We reverse the denial of the third motion to recuse. And we vacate the contempt and damages order of July 20, 2018, and the order awarding supplemental attorney's fees and expenses of September 27, 2018. This case is remanded for reassignment and further proceedings consistent with this opinion.

_____

W. NEAL MCBRAYER, JUDGE

11

# EXHIBIT 2

# K&L GATES

March 18, 2021

Daniel Horowitz
daniel.a.horwitz@gmail.com

Mark Hammervold
mark@hammervoldlaw.com

Charles I. Malone
charlie.malone@klgates.com

T 615 780 6731
F 615 780 6799

**SETTLEMENT COMMUNICATION PROTECTED BY TENN. R. EVID. 408**

  *Re: David Chase v. Chris Stewart et al., No. M2018-01991-COA-R3-CV*

Dear Daniel and Mark:

  Daniel, as you requested of my partner Beau Creson, we are writing now that the Court of Appeals has issued its ruling on the Chase Non-Parties' motion for reconsideration in the above-reference matter. Following the issuance of the opinion, we received a settlement communication email (along with another email) directly from your client Brian Manookian. In compliance with the ethical rules, we will communicate with you as Mr. Manookian's attorney.

  I am writing both of you collectively to follow up on prior settlement discussions. I do not intend to argue the merits of the case, other than to state that any insinuation or belief that the Court of Appeals has ruled in Respondents favor on the merits is wrong. As it stands now, the Chase Non-Parties have the option of seeking review by the Tennessee Supreme Court or simply having a new trial judge decide the case based on facts that have already been established. If required, the Chase Parties will pursue one or both of these avenues.

  The Chase Non-Parties, however, are willing to agree to a global resolution of this matter in which everyone goes their separate ways in a "walk-away" with full releases. Such resolution would need to be global in that it include at a minimum Brian Manookian, Cummings Manookian PLC,[1] Mark Hammervold, Hammervold Law PLC, Afsoon Hagh and her law firm, in addition to standard broad language that includes employees, agents, affiliates, etc. As part of such resolution, the Chase Non-Parties will dismiss with prejudice the contempt and sanctions proceedings, along with the collection action. The proposed resolution would be contingent on execution of a formal agreement and release, the terms and conditions of which would be agreed to by all parties.

---

[1] I realize that the bankruptcy trustee will likely have to act on behalf of Cummings Manookian, PLC, which is a matter that we can address to the extent a settlement is possible.

K&L GATES LLP
222 SECOND AVENUE SOUTH, SUITE 1700, NASHVILLE, TENNESSEE 37201
T +1 615 780 6700 F +1 615 780 6799 klgates.com

483

I believe this offer is in line with the communication sent by Mr. Manookian this week, except that his communication was not clear as to whether it included anyone other than himself individually.

If you would like to discuss a potential resolution further, I would be happy to have a phone call at your convenience.

Very truly yours,

Charles I. Malone

# EXHIBIT 3

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## DAVID CHASE v. CHRIS STEWART ᴇᴛ ᴀʟ.

### Circuit Court for Williamson County
### No. 2015-200

_____

### No. M2018-01991-COA-R3-CV

_____

## ORDER ON PETITION FOR REHEARING

Appellees, Dean Chase; Sandra Chase; and D.F. Chase, Inc., have petitioned for rehearing. *See* Tenn. R. App. P. 39. In this Court's opinion, we determined that recusal of the trial judge was warranted because of the judge's comments about one of the litigants. *Chase v. Stewart*, No. M2018-01991-COA-R3-CV, 2021 WL 402565, at *5 (Tenn. Ct. App. Feb. 4, 2021). And employing the test set forth in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988), we determined that retroactive recusal was appropriate. *See id.* at *6-7.

In their detailed petition for rehearing, Appellees argue that retroactive recusal was not requested and that the parties did not brief the *Liljeberg* factors. Appellees offer alternative tests for retroactive recusal that they submit are "more in line with Tennessee law." They also argue that, even if adoption of the *Liljeberg* factors was proper, this Court misapplied the factors and that retroactive recusal was not appropriate. And, even if retroactive recusal was appropriate, they request that we "clarify" the scope of the remedy.

Retroactive recusal was not specifically requested or briefed. But we have discretion to "grant the relief on the law and facts to which [a] party is entitled or the proceeding otherwise requires." *See* Tenn. R. App. P. 36(a); *see also Lovlace v. Copley*, 418 S.W.3d 1, 37 (Tenn. 2013) (recognizing that "unique facts and procedural posture" can justify the exercise of our discretion under Tennessee Rule of Appellate Procedure 36(a)). And the parties' arguments below and on appeal recognized the impact of the timing of the trial judge's comments. We considered, but rejected, Appellees' contention at oral argument that recusal should be prospective only. We did so based on the factors set forth in *Liljeberg*.

Instead of *Liljeberg*, Appellees advocate for tests that focus on whether the substantial rights of a party were affected. *See State v. Gardner*, 789 P.2d 273, 278 (Utah 1989) ("Failure of a trial judge to recuse . . . based on the appearance of possible bias or prejudice[] does not require reversal unless the 'substantial rights of the party are affected.'" (citation omitted)); *Tennant v. Marion Health Care Found., Inc.*, 459 S.E.2d 374, 387 (W. Va. 1995) ("[W]e must ask whether the trial court's rulings, decisions, and actions have erroneously and adversely affected the substantial rights of the parties."). An error is not reversible unless it "involv[es] a substantial right" and "more probably than not affected the judgment *or would result in prejudice to the judicial process*." Tenn. R. App. P. 36(b) (emphasis added). So Appellees essentially claim that the judge's failure to recuse was harmless error. *See State v. Rodriguez*, 254 S.W.3d 361, 370 (Tenn. 2008) (reasoning that Rule 36(b) "provid[es] the foundation for Tennessee's harmless error doctrine"). We disagree. The right at issue here, a judge free from bias, is fundamental. *See Holsclaw v. Ivy Hall Nursing Home, Inc.*, 530 S.W.3d 65, 69 (Tenn. 2017). And "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001). So, the judge's failure to recuse "more probably than not . . . result[ed] in prejudice to the judicial process." *See* Tenn. R. App. P. 36(b).

The first *Liljeberg* factor is "the risk of injustice to the parties in the particular case." *Liljeberg*, 486 U.S. at 864. Appellees rely on cases that seem to require a showing of actual bias for retroactive recusal to be appropriate under this factor. *See United States v. Microsoft Corp.*, 253 F.3d 34, 116-17 (D.C. Cir. 2001) (declining to set aside a recused judge's findings of fact and conclusions of law because there was "no basis to suppose that actual bias infected his factual findings"); *United States v. Cerceda*, 172 F.3d 806, 813 (11th Cir. 1999) (reasoning that, absent a showing of actual bias, a party cannot prove that "potential bias on the part of the judge presented a risk of injustice to [the party]"). We find these cases unpersuasive. The *Liljeberg* test determines when retroactive recusal is appropriate after a finding that the judge's impartiality might reasonably be questioned. *See Liljeberg*, 486 U.S. at 863-65; 28 U.S.C. § 455(a) (2018). Actual bias is unnecessary for there to be "a greater risk of unfairness in upholding the judgment in favor of [Appellees] than . . . in allowing a new judge to take a fresh look at the issues." *See Chase*, 2021 WL 402565, at *7 (citing *Liljeberg*, 486 U.S. at 868).

We recognize that Appellees have put significant time and expense into this case, and the remedy we imposed will require additional time and expense. On balance, though, the first factor favors the retroactive recusal granted here. The judge's comments specifically referenced the July 20, 2018 order. But the basis for those comments likely arose by May 23, 2017, well before the orders of July 20, 2018, and September 27, 2018, that we vacated. *Chase*, 2021 WL 402565, at *7.

The second *Liljeberg* factor is "the risk that the denial of relief will produce injustice in other cases." *Liljeberg*, 486 U.S. at 864. Appellees argue that the circumstances here

2

are unique.  So retroactive recusal "would have only a minimal deterrent effect" in other cases.  *See Cerceda*, 172 F.3d at 815.  But inappropriate commentary like that which occurred here is not unique.  *See, e.g.*, *Cook v. State*, 606 S.W.3d 247, 255 (Tenn. 2020); *State v. Jones*, No. M2002-00738-CCA-R9-CO, 2003 WL 1562088, at *5 (Tenn. Crim. App. Mar. 26, 2003); *Alley v. State*, 882 S.W.2d 810, 819 (Tenn. Crim. App. 1994).  And, as we explained, "a remedy for inappropriate remarks even late in the proceedings would encourage judges to reflect on possible grounds for recusal through all phases of a case." *Chase*, 2021 WL 402565, at *7 (citing *Liljeberg*, 486 U.S. at 868).

The third *Liljeberg* factor is "the risk of undermining the public's confidence in the judicial process."  *Liljeberg*, 486 U.S. at 864.  Appellees argue that the trial court's orders were correct on the merits.  And vacating a correct decision, they argue, undermines confidence in the judiciary.  But, as stated above, the error was not harmless.  And we find it inappropriate to reach the merits.  *See Cook*, 606 S.W.3d at 257 (declining to reach the merits after concluding that the judge should have recused himself).  Retroactive recusal is appropriate here under the circumstances and in light of the *Liljeberg* factors.

Lastly, Appellees ask, as a matter of clarity, that on remand "the new trial judge . . . decide the merits of the contempt and sanctions action on the record that was already developed."  A new evidentiary hearing is necessary.  *See id.* at 257 (reasoning that "the evaluation of [the merits] must be made by the newly assigned judge based on the evidence presented at the new hearing").  It is important that the newly assigned judge "see the witnesses testify and . . . weigh their testimony and judge their credibility."  46 AM. JUR. 2D *Judges* § 31, Westlaw (database updated Feb. 2021); *see Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (recognizing the importance of "observ[ing] witnesses as they testify . . . to resolve factual disputes hinging on credibility determinations").  We note, however, that the need for a new hearing does not bar introduction of prior testimony or other evidence from the prior hearings if consistent with the rules of evidence.

We respectfully deny the petition to rehear.


**PER CURIAM**

# United States Bankruptcy Court

## MIDDLE DISTRICT OF TENNESSEE
### Case No. <u>3:19−bk−07235</u>
### Chapter 7

In re:

    CUMMINGS MANOOKIAN, PLLC
    45 MUSIC SQUARE WEST
    NASHVILLE, TN 37203

Social Security No.:

Employer's Tax I.D. No.:
    47−2636732

---

### CLERK'S REMARK

---

Clerk's Remark − The related document has the following defect(s): Document submitted under incorrect event.. − LBR 9013 Response docketed without entering hearing information. (RE: related document(s)111 Objection to Trustee's Motion to Approve Compromise and Settlement. (Attachments: # 1 Exhibit 1) Filed on the behalf of: Creditor Grant, Konvalinka & Harrison, P.C. (RE: related document(s)108).) (lel)

Dated: <u>7/28/21</u>

        <u>TERESA C. AZAN</u>
        Court Clerk

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 8/4/2021



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |

## AGREED ORDER RESOLVING CHAPTER 7 TRUSTEE'S
## OBJECTION TO CLAIM NUMBERS 3 AND 4

This matter came before the Court on the Chapter 7 Trustee's Objection to Claim Number 3 Filed by North, Pursell & Ramos, PLC, on Behalf of Family Medical Associates a/k/a Family Medical, P.C. (Doc. 98) and the Chapter 7 Trustee's Objection to Claim Number 4 Filed by North, Pursell & Ramos, PLC, on Behalf of Toby Smith, M.D. and Middle TN Pulmonary Assoc. (Doc. 99) (collectively, the "Objections"), and the Response to Chapter 7 Trustee's Objection to Claim Numbers 3 and 4 (Doc. 102) (the "Response") filed by Family Medical Associates, a/k/a Family Medical P.C., Toby Smith, M.D., and Middle TN Pulmonary Associates (collectively, the "Claimants"); Jeanne Ann Burton, the Chapter 7 Trustee herein (the "Trustee") and the Claimants having agreed, as evidenced by the signatures of counsel below, to resolve the Objections on the terms set forth herein; the Court having considered all related filings; and the Court finding sufficient cause for granting the relief as evidenced in this Agreed Order;

IT IS HEREBY FOUND:

    1.    The Claimants timely filed Claim Numbers 3 and 4 in this case.

2.      The Trustee objected to Claim Numbers 3 and 4, alleging that they evidenced a debt owed by Brian Manookian, a principal of the Debtor, and not a debt owed by the Debtor.

3.      The Claimants responded alleging that, to the extent the Trustee or this estate held funds that were ultimately payable to Brian Manookian individually, that the charging orders in favor of the Claimants mandated that the Trustee surrender those funds to the Claimants.

4.      The Trustee and the Claimant have reached an agreement to resolve the Objections.

IT IS HEREBY ORDERED THAT:

1. Claim Numbers 3 and 4 are hereby disallowed as claims against the bankruptcy estate of Cummings Manookian, PLC, as they evidence a debt owed by Brian Manookian individually.

2. To the extent that the Trustee or the bankruptcy estate comes into possession of funds belonging to Brian Manookian, or to the extent that the Trustee is to make a distribution to Brian Manookian, the Trustee shall honor the terms of the charging orders entered by the Circuit Court of Davidson County, Tennessee and the Circuit Court of Wilson County, Tennessee.

3. The Court reserves the right to interpret and enforce this Order, as needed.

This order was signed and entered electronically as indicated at the top of the first page.

2

Approved for entry:


/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6001 Tower Circle, Suite 200
Franklin, TN  37067
Tel. (615) 465-6008
phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee


/s/ Phillip North
Phillip North
North, Pursell & Ramos, PLC
Philip's Plaza
414 Union Street, Suite 1850
Nashville, TN 37219-1783
Tel. (615) 255-2555
pn@npr.legal

Attorney for Claimants

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

492

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 8/4/2021



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |

### AGREED ORDER RESOLVING CHAPTER 7 TRUSTEE'S
### OBJECTION TO CLAIM NUMBER 6 FILED BY RONETTE LEAL MCCARTHY, ESQ.

This matter came before the Court on the Chapter 7 Trustee's Objection to Claim Number 6 Filed by Ronette Leal McCarthy, Esq. (Doc. 100) (the "Objection"); Jeanne Ann Burton, the Chapter 7 Trustee herein (the "Trustee") and Ronette Leal McCarthy (the "Claimant") having agreed, as evidenced by the signatures of counsel below, to resolve the Objection on the terms set forth herein; the Court having considered all related filings; and the Court finding sufficient cause for granting the relief as evidenced in this Agreed Order;

IT IS HEREBY FOUND:

1.    The Claimant filed Claim Number 6 (the Claim") in this case as a general unsecured claim in the amount of $337,500.00.  While the Claim was filed after the claims deadline, the Claimant was not listed as a creditor in the bankruptcy filing and she states that she had no knowledge of the bankruptcy filing until shortly before the Proof of Claim was filed.

2.    The basis of the Claim is an allegation that the Claimant is entitled to a portion of the fees earned by the Debtor in its representation of the plaintiffs in a wrongful death action

filed in the Williamson County Circuit Court, styled as *Fitzgerald v. Osbourne*, Case No. 2018-cv-311 (the "State Court Matter"). The Claimant alleges that she referred the State Court Matter to the Debtor, that she participated in the representation of the plaintiffs in that matter, and that she was entitled to a portion of the fees earned by the Debtor in the State Court Matter. The State Court Matter settled on August 19, 2019 for $4,050,000.00. The plaintiffs' attorneys were entitled to an aggregate fee of $1,350,000.00 as a result of the settlement.

3.     The Trustee objected to the Claim on multiple grounds, including:

(a)  There was no written confirmation that the Debtor and/or the plaintiffs in the State Court Matter consented to the Claimant's continuing representation of the plaintiffs and/or a fee sharing arrangement;

(b)  The amount stated in the Claim was not proportionate to the services she provided to the plaintiffs; and

(c)  There was no evidence that the Claimant has assumed joint responsibility for the representation of the plaintiffs.

4.     The Trustee's Objection was based, in part, on an engagement letter produced by the Debtor's corporate representative, Brian Manookian. The engagement letter made no mention of the Claimant nor of any fee sharing arrangement with the Claimant.

5.     Subsequent to the filing of the Objection, the Claimant produced certain communications between her and Mr. Manookian which showed that the Claimant was involved to some degree in the representation of the plaintiffs in the State Court Matter. Among the communications produced to the Trustee subsequent to the Objection was a copy of an engagement letter related to the State Court Matter, signed by the plaintiffs and sent to the Claimant by Mr. Manookian, that specifically mentions a fee sharing arrangement between the

2

Debtor and the Claimant. The Claimant also produced emails in which Mr. Manookian discussed Claimant receiving a fee of between 25-33% of the total fees received by the Debtor in the State Court Matter.

6. Nevertheless, the Trustee disputes that the Claimant's agreement with the Debtor, or the services rendered by the Claimant, entitle her to a general unsecured claim in the amount of $337,500.00.

7. The Trustee and the Claimant have reached an agreement to resolve the Objection.

IT IS HEREBY ORDERED THAT:

1. Claim Number 6 shall be, and hereby is, allowed as a general unsecured claim in this case in an amount equal to ten percent (10%) of the amount that the bankruptcy estate actually recovers on account of the settlement of the State Court Matter (the "Allowed Amount").

2. The Claim shall be, and hereby is, disallowed to the extent it exceeds the Allowed Amount.

3. For sake of clarity, the $715,000.00 in funds currently held by the Clerk of the Bankruptcy Court, if recovered by the estate, would be considered funds to which Claimant would be entitled to a ten percent claim.

4. Nothing herein shall be deemed or interpreted as a guarantee of payment of any sum certain on account of the Claim or the Allowed Amount. The Trustee shall continue administering the Bankruptcy Case as she deems appropriate, according to her fiduciary duty and business judgment, and nothing herein shall be deemed to alter those rights, obligations, or authority.

495

This order was signed and entered electronically as indicated at the top of the first page.

Approved for entry:


*/s/ Phillip G. Young, Jr.*
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6001 Tower Circle, Suite 200
Franklin, TN  37067
Tel. (615) 465-6008
phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee


*/s/ David J. Fischer*
David J. Fischer
Holland & Knight LLP
150 North Riverside Plaza, Suite 2700
Chicago, IL 60606
Tel. (312) 263-3600
David.fischer@hklaw.com

Attorney for Claimant

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

496

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

IN RE: )
            )
**CUMMINGS MANOOKIAN, PLLC,** )     **Case No. 3:19-bk-07235**
    **Debtor.** )     **Chapter 7**
            )     **Judge Walker**

---

## MOTION TO CONTINUE HEARING ON TRUSTEE'S
## MOTION TO APPROVE COMPROMISE AND SETTLEMENT

---

Come now Jeanne Ann Burton, Trustee (the "Trustee"), by and through counsel, and requests a continuance until September 17, 2021, of the hearing on the Chapter 7 Trustee's Motion to Approve Compromise and Settlement (Doc. 108), the Objection of Grant, Konvalinka & Harrison P.C. to Trustee's Motion to Approve Compromise and Settlement (Doc. 111) (the "GKH Objection"), and Brian Manookian's Objection to Proposed Chase Claim Settlement (Doc. 112) (the "Manookian Objection").[1]  In support for this request, the Trustee states that John Spragens, counsel for Brian Manookian, notified undersigned counsel that he would not be in town on August 11, 2021, and asked that this hearing be continued.  Subsequently, Mr. Spragens informed undersigned counsel that he would also be out of town on August 18, 2021, and had a deposition scheduled on September 8, 2021.  Therefore, September 17, 2021 was the first docket date on which Mr. Spragens was available.  He asked that the Trustee and John Konvalinka, counsel for Grant, Konvalinka & Harrison P.C., consent to continuing this hearing to that date.  Both counsel

---

[1] The Trustee contends that Brian Manookian lacks standing to file the Manookian Objection and that he is judicially estopped from arguing otherwise due to his prior statements, under oath, that this estate has no assets.  The Trustee's agreement to continue this hearing to accommodate the schedule of Mr. Manookian's counsel should in no way be interpreted as a waiver of the standing challenge, and the Trustee specifically reserves same.

agreed, and the parties have agreed to continue this matter to the Court's September 17, 2021 docket, pending approval by this Court. Undersigned counsel agreed to draft this Motion and the accompanying agreed order as a matter of convenience.

Therefore, the Trustee requests that the hearing currently scheduled for August 11, 2021, be reset on or after September 17, 2021.

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been sent to all parties requesting notice via CM/ECF Electronic Filing on the 2nd day of August, 2021.

/s/ Phillip G. Young, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

IN RE:                           )

                                    )

**CUMMINGS MANOOKIAN, PLLC,**   )   **Case No. 3:19-bk-07235**

      **Debtor.**                  )   **Chapter 7**

                                      )   **Judge Walker**

## AGREED ORDER GRANTING MOTION TO CONTINUE HEARING ON TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT

Upon the Motion to Continue Hearing on Trustee's Motion to Approve Compromise and Settlement filed by Jeanne Ann Burton, Trustee ("Trustee"), and by agreement of the parties as indicated by the signatures of counsel below, and good cause having been shown,

IT IS HEREBY ORDERED that the hearing to consider the Chapter 7 Trustee's Motion to Approve Compromise and Settlement (Doc. 108), the Objection of Grant, Konvalinka & Harrison P.C. to Trustee's Motion to Approve Compromise and Settlement (Doc. 111) (the "GKH Objection"), and Brian Manookian's Objection to Proposed Chase Claim Settlement (Doc. 112) (the "Manookian Objection") scheduled in this matter for August 11, 2021 is hereby continued until _____, 2021 at _____ __.m. via _____.

---

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

Submitted for entry:

 /s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

 /s/ John P. Konvalinka
John P. Konvalinka
Grant, Konvalinka & Harrison, P.C.
633 Chestnut Street, Suite 900
Chattanooga, TN 37450-0900
Tel: (423) 756-8400
jkonvalinka@gkhpc.com

Counsel to Grant, Konvalinka & Harrison, P.C.

 /s/ John T. Spragens
John T. Spragens
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
Tel: (615) 983-8900
john@spragenslaw.como

Counsel to Brian Manookian

500

In re:

CUMMINGS MANOOKIAN, PLLC

    Debtor

Case No. 19-07235-CMW

Chapter 7

# CERTIFICATE OF NOTICE

| District/off: 0650-3 | User: anm0611 | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Aug 04, 2021 | Form ID: pdf001 | Total Noticed: 1 |

The following symbols are used throughout this certificate:

**Symbol    Definition**

+          Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 06, 2021:**

| Recip ID | Recipient Name and Address |
|---|---|
| db | + CUMMINGS MANOOKIAN, PLLC, 45 MUSIC SQUARE WEST, NASHVILLE, TN 37203-3205 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 06, 2021        Signature:        /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 4, 2021 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | |
| | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com bankr@bassberry.com;delores.walker@bassberry.com |
| DANIEL HAYS PURYEAR | |
| | on behalf of Creditor D.F. Chase Inc. dpuryear@puryearlawgroup.com, paralegalgroup@puryearlawgroup.com |
| GLENN BENTON ROSE | |
| | on behalf of Defendant Hagh Law PLLC grose@bassberry.com bankr@bassberry.com |
| HARRY R CASH | |
| | on behalf of Creditor Grant Konvalinka & Harrison, P.C. hcash@gkhpc.com, hdowney@gkhpc.com |
| JEANNE ANN BURTON | |
| | TN24@ecfcbis.com |
| JOHN PATRICK KONVALINKA | |
| | on behalf of Creditor Grant Konvalinka & Harrison, P.C. jkonvalinka@gkhpc.com, jdoherty@gkhpc.com |

JOHN T. SPRAGENS
     on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM   spragenslaw@ecf.courtdrive.com

Jeanne Ann Burton PLLC
     jeanne.burton@comcast.net

LEFKOVITZ AND LEFKOVITZ, PLLC
     on behalf of Debtor CUMMINGS MANOOKIAN  PLLC slefkovitz@lefkovitz.com,
     sllbkecf@gmail.com;khancock@lefkovitz.com;lefkovitzcvlecf@lefkovitz.com;r52946@notify.bestcase.com;mspezia@lefkovitz.c
     om

MEGAN REED SELIBER
     on behalf of U.S. Trustee US TRUSTEE megan.seliber@usdoj.gov

MICHAEL G ABELOW
     on behalf of Creditor INSBANK mabelow@srvhlaw.com   sdossey@srvhlaw.com;pacer.service@antage.net

PHILLIP G YOUNG
     on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com

PHILLIP L NORTH
     on behalf of Creditor Middle Tennessee Pulmonary pn@npr.legal

US TRUSTEE
     ustpregion08.na.ecf@usdoj.gov


TOTAL: 14

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 8/4/2021



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | Case No. 3:19-bk-07235 |
| Debtor. | ) | Chapter 7 |
| | ) | Judge Walker |

## AGREED ORDER RESOLVING CHAPTER 7 TRUSTEE'S
## OBJECTION TO CLAIM NUMBERS 3 AND 4

This matter came before the Court on the Chapter 7 Trustee's Objection to Claim Number 3 Filed by North, Pursell & Ramos, PLC, on Behalf of Family Medical Associates a/k/a Family Medical, P.C. (Doc. 98) and the Chapter 7 Trustee's Objection to Claim Number 4 Filed by North, Pursell & Ramos, PLC, on Behalf of Toby Smith, M.D. and Middle TN Pulmonary Assoc. (Doc. 99) (collectively, the "Objections"), and the Response to Chapter 7 Trustee's Objection to Claim Numbers 3 and 4 (Doc. 102) (the "Response") filed by Family Medical Associates, a/k/a Family Medical P.C., Toby Smith, M.D., and Middle TN Pulmonary Associates (collectively, the "Claimants"); Jeanne Ann Burton, the Chapter 7 Trustee herein (the "Trustee") and the Claimants having agreed, as evidenced by the signatures of counsel below, to resolve the Objections on the terms set forth herein; the Court having considered all related filings; and the Court finding sufficient cause for granting the relief as evidenced in this Agreed Order;

IT IS HEREBY FOUND:

1.    The Claimants timely filed Claim Numbers 3 and 4 in this case.

2. The Trustee objected to Claim Numbers 3 and 4, alleging that they evidenced a debt owed by Brian Manookian, a principal of the Debtor, and not a debt owed by the Debtor.

3. The Claimants responded alleging that, to the extent the Trustee or this estate held funds that were ultimately payable to Brian Manookian individually, that the charging orders in favor of the Claimants mandated that the Trustee surrender those funds to the Claimants.

4. The Trustee and the Claimant have reached an agreement to resolve the Objections.

IT IS HEREBY ORDERED THAT:

1. Claim Numbers 3 and 4 are hereby disallowed as claims against the bankruptcy estate of Cummings Manookian, PLC, as they evidence a debt owed by Brian Manookian individually.

2. To the extent that the Trustee or the bankruptcy estate comes into possession of funds belonging to Brian Manookian, or to the extent that the Trustee is to make a distribution to Brian Manookian, the Trustee shall honor the terms of the charging orders entered by the Circuit Court of Davidson County, Tennessee and the Circuit Court of Wilson County, Tennessee.

3. The Court reserves the right to interpret and enforce this Order, as needed.

| This order was signed and entered electronically as indicated at the top of the first page. |
|---|

504

Approved for entry:


*/s/ Phillip G. Young, Jr.*
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6001 Tower Circle, Suite 200
Franklin, TN  37067
Tel. (615) 465-6008
phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee


*/s/ Phillip North*
Phillip North
North, Pursell & Ramos, PLC
Philip's Plaza
414 Union Street, Suite 1850
Nashville, TN 37219-1783
Tel. (615) 255-2555
pn@npr.legal

Attorney for Claimants

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

In re:
Case No. 19-07235-CMW

CUMMINGS MANOOKIAN, PLLC
Chapter 7

    Debtor

# CERTIFICATE OF NOTICE

| District/off: 0650-3 | User: anm0611 | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Aug 04, 2021 | Form ID: pdf001 | Total Noticed: 3 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 06, 2021:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | CUMMINGS MANOOKIAN, PLLC, 45 MUSIC SQUARE WEST, NASHVILLE, TN 37203-3205 |
| intp | + | BRIAN MANOOKIAN, 45 MUSIC SQUARE WEST, NASHVILLE, TN 37203-3205 |
| 7158230 | + | RONETTE LEAL MCCARTHY ESQ, C O LYNNE B XERRAS ESQ, HOLLAND & KNIGHT LLP, 10 ST JAMES AVENUE, BOSTON MA 02116-3889 |

TOTAL: 3

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 06, 2021      Signature:    /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 4, 2021 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | |
| | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com  bankr@bassberry.com;delores.walker@bassberry.com |
| DANIEL HAYS PURYEAR | |
| | on behalf of Creditor D.F. Chase  Inc. dpuryear@puryearlawgroup.com, paralegalgroup@puryearlawgroup.com |
| GLENN BENTON ROSE | |
| | on behalf of Defendant Hagh Law PLLC grose@bassberry.com  bankr@bassberry.com |
| HARRY R CASH | |
| | on behalf of Creditor Grant  Konvalinka & Harrison, P.C. hcash@gkhpc.com, hdowney@gkhpc.com |
| JEANNE ANN BURTON | |
| | TN24@ecfcbis.com |

JOHN PATRICK KONVALINKA
> on behalf of Creditor Grant  Konvalinka & Harrison, P.C. jkonvalinka@gkhpc.com, jdoherty@gkhpc.com

JOHN T. SPRAGENS
> on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM  spragenslaw@ecf.courtdrive.com

Jeanne Ann Burton PLLC
> jeanne.burton@comcast.net

LEFKOVITZ AND LEFKOVITZ, PLLC
> on behalf of Debtor CUMMINGS MANOOKIAN  PLLC slefkovitz@lefkovitz.com,
> sllbkecf@gmail.com;khancock@lefkovitz.com;lefkovitzcvlecf@lefkovitz.com;r52946@notify.bestcase.com;mspezia@lefkovitz.com

MEGAN REED SELIBER
> on behalf of U.S. Trustee US TRUSTEE megan.seliber@usdoj.gov

MICHAEL G ABELOW
> on behalf of Creditor INSBANK mabelow@srvhlaw.com  sdossey@srvhlaw.com;pacer.service@antage.net

PHILLIP G YOUNG
> on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com

PHILLIP L NORTH
> on behalf of Creditor Middle Tennessee Pulmonary pn@npr.legal

US TRUSTEE
> ustpregion08.na.ecf@usdoj.gov


TOTAL: 14



**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **CUMMINGS MANOOKIAN, PLLC,** | ) **Case No. 3:19-bk-07235** |
| **Debtor.** | ) **Chapter 7** |
| | ) **Judge Walker** |

**AGREED ORDER RESOLVING CHAPTER 7 TRUSTEE'S**
**OBJECTION TO CLAIM NUMBER 6 FILED BY RONETTE LEAL MCCARTHY, ESQ.**

This matter came before the Court on the Chapter 7 Trustee's Objection to Claim Number 6 Filed by Ronette Leal McCarthy, Esq. (Doc. 100) (the "Objection"); Jeanne Ann Burton, the Chapter 7 Trustee herein (the "Trustee") and Ronette Leal McCarthy (the "Claimant") having agreed, as evidenced by the signatures of counsel below, to resolve the Objection on the terms set forth herein; the Court having considered all related filings; and the Court finding sufficient cause for granting the relief as evidenced in this Agreed Order;

IT IS HEREBY FOUND:

1.     The Claimant filed Claim Number 6 (the "Claim") in this case as a general unsecured claim in the amount of $337,500.00.  While the Claim was filed after the claims deadline, the Claimant was not listed as a creditor in the bankruptcy filing and she states that she had no knowledge of the bankruptcy filing until shortly before the Proof of Claim was filed.

2.     The basis of the Claim is an allegation that the Claimant is entitled to a portion of the fees earned by the Debtor in its representation of the plaintiffs in a wrongful death action

filed in the Williamson County Circuit Court, styled as *Fitzgerald v. Osbourne*, Case No. 2018-cv-311 (the "State Court Matter"). The Claimant alleges that she referred the State Court Matter to the Debtor, that she participated in the representation of the plaintiffs in that matter, and that she was entitled to a portion of the fees earned by the Debtor in the State Court Matter. The State Court Matter settled on August 19, 2019 for $4,050,000.00. The plaintiffs' attorneys were entitled to an aggregate fee of $1,350,000.00 as a result of the settlement.

3.      The Trustee objected to the Claim on multiple grounds, including:

(a)  There was no written confirmation that the Debtor and/or the plaintiffs in the State Court Matter consented to the Claimant's continuing representation of the plaintiffs and/or a fee sharing arrangement;

(b)  The amount stated in the Claim was not proportionate to the services she provided to the plaintiffs; and

(c)  There was no evidence that the Claimant has assumed joint responsibility for the representation of the plaintiffs.

4.      The Trustee's Objection was based, in part, on an engagement letter produced by the Debtor's corporate representative, Brian Manookian. The engagement letter made no mention of the Claimant nor of any fee sharing arrangement with the Claimant.

5.      Subsequent to the filing of the Objection, the Claimant produced certain communications between her and Mr. Manookian which showed that the Claimant was involved to some degree in the representation of the plaintiffs in the State Court Matter. Among the communications produced to the Trustee subsequent to the Objection was a copy of an engagement letter related to the State Court Matter, signed by the plaintiffs and sent to the Claimant by Mr. Manookian, that specifically mentions a fee sharing arrangement between the

Debtor and the Claimant. The Claimant also produced emails in which Mr. Manookian discussed Claimant receiving a fee of between 25-33% of the total fees received by the Debtor in the State Court Matter.

6.      Nevertheless, the Trustee disputes that the Claimant's agreement with the Debtor, or the services rendered by the Claimant, entitle her to a general unsecured claim in the amount of $337,500.00.

7.      The Trustee and the Claimant have reached an agreement to resolve the Objection.

IT IS HEREBY ORDERED THAT:

1.      Claim Number 6 shall be, and hereby is, allowed as a general unsecured claim in this case in an amount equal to ten percent (10%) of the amount that the bankruptcy estate actually recovers on account of the settlement of the State Court Matter (the "Allowed Amount").

2.      The Claim shall be, and hereby is, disallowed to the extent it exceeds the Allowed Amount.

3.      For sake of clarity, the $715,000.00 in funds currently held by the Clerk of the Bankruptcy Court, if recovered by the estate, would be considered funds to which Claimant would be entitled to a ten percent claim.

4.      Nothing herein shall be deemed or interpreted as a guarantee of payment of any sum certain on account of the Claim or the Allowed Amount. The Trustee shall continue administering the Bankruptcy Case as she deems appropriate, according to her fiduciary duty and business judgment, and nothing herein shall be deemed to alter those rights, obligations, or authority.

510

This order was signed and entered electronically as indicated at the top of the first page.

Approved for entry:


/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6001 Tower Circle, Suite 200
Franklin, TN  37067
Tel. (615) 465-6008
phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee


/s/ David J. Fischer
David J. Fischer
Holland & Knight LLP
150 North Riverside Plaza, Suite 2700
Chicago, IL 60606
Tel. (312) 263-3600
David.fischer@hklaw.com

Attorney for Claimant

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

511

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 8/8/2021



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **CUMMINGS MANOOKIAN, PLLC,** | ) **Case No. 3:19-bk-07235** |
| Debtor. | ) **Chapter 7** |
| | ) **Judge Walker** |

### AGREED ORDER GRANTING MOTION TO CONTINUE HEARING ON TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT

Upon the Motion to Continue Hearing on Trustee's Motion to Approve Compromise and Settlement filed by Jeanne Ann Burton, Trustee ("Trustee"), and by agreement of the parties as indicated by the signatures of counsel below, and good cause having been shown,

IT IS HEREBY ORDERED that the hearing to consider the Chapter 7 Trustee's Motion to Approve Compromise and Settlement (Doc. 108), the Objection of Grant, Konvalinka & Harrison P.C. to Trustee's Motion to Approve Compromise and Settlement (Doc. 111) (the "GKH Objection"), and Brian Manookian's Objection to Proposed Chase Claim Settlement (Doc. 112) (the "Manookian Objection") scheduled in this matter for August 11, 2021 is hereby continued until ___September 17th___, 2021 at ___11:00___ a .m. via via Zoom http://www.tnmb.uscourts.gov/zoomgov-videoaudio-information for Zoom information.

---

### THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE

Submitted for entry:


/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

/s/ John P. Konvalinka
John P. Konvalinka
Grant, Konvalinka & Harrison, P.C.
633 Chestnut Street, Suite 900
Chattanooga, TN 37450-0900
Tel: (423) 756-8400
jkonvalinka@gkhpc.com

Counsel to Grant, Konvalinka & Harrison, P.C.

/s/ John T. Spragens
John T. Spragens
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
Tel: (615) 983-8900
john@spragenslaw.como

Counsel to Brian Manookian

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

In re:

CUMMINGS MANOOKIAN, PLLC
    Debtor

Case No. 19-07235-CMW

Chapter 7

# CERTIFICATE OF NOTICE

| District/off: 0650-3 | User: anm0611 | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Aug 09, 2021 | Form ID: pdf001 | Total Noticed: 3 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 11, 2021:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | CUMMINGS MANOOKIAN, PLLC, 45 MUSIC SQUARE WEST, NASHVILLE, TN 37203-3205 |
| intp | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| intp | + | BRIAN MANOOKIAN, 45 MUSIC SQUARE WEST, NASHVILLE, TN 37203-3205 |

TOTAL: 3

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 11, 2021        Signature:       /s/Joseph Speetjens

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 9, 2021 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | |
| | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com bankr@bassberry.com;delores.walker@bassberry.com |
| DANIEL HAYS PURYEAR | |
| | on behalf of Creditor D.F. Chase Inc. dpuryear@puryearlawgroup.com, paralegalgroup@puryearlawgroup.com |
| GLENN BENTON ROSE | |
| | on behalf of Defendant Hagh Law PLLC grose@bassberry.com bankr@bassberry.com |
| HARRY R CASH | |
| | on behalf of Creditor Grant Konvalinka & Harrison, P.C. hcash@gkhpc.com, hdowney@gkhpc.com |
| JEANNE ANN BURTON | |
| | TN24@ecfcbis.com |

JOHN PATRICK KONVALINKA
          on behalf of Creditor Grant  Konvalinka & Harrison, P.C. jkonvalinka@gkhpc.com, jdoherty@gkhpc.com

JOHN T. SPRAGENS
          on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM  spragenslaw@ecf.courtdrive.com

Jeanne Ann Burton PLLC
          jeanne.burton@comcast.net

LEFKOVITZ AND LEFKOVITZ, PLLC
          on behalf of Debtor CUMMINGS MANOOKIAN  PLLC slefkovitz@lefkovitz.com,
          sllbkecf@gmail.com;khancock@lefkovitz.com;lefkovitzcvlecf@lefkovitz.com;r52946@notify.bestcase.com;mspezia@lefkovitz.c
          om

MEGAN REED SELIBER
          on behalf of U.S. Trustee US TRUSTEE megan.seliber@usdoj.gov

MICHAEL G ABELOW
          on behalf of Creditor INSBANK mabelow@srvhlaw.com  sdossey@srvhlaw.com;pacer.service@antage.net

PHILLIP G YOUNG
          on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com

PHILLIP L NORTH
          on behalf of Creditor Middle Tennessee Pulmonary pn@npr.legal

US TRUSTEE
          ustpregion08.na.ecf@usdoj.gov


TOTAL: 14

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 8/8/2021



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **CUMMINGS MANOOKIAN, PLLC,** | ) **Case No. 3:19-bk-07235** |
| **Debtor.** | ) **Chapter 7** |
| | ) **Judge Walker** |

## AGREED ORDER GRANTING MOTION TO CONTINUE HEARING ON TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT

Upon the Motion to Continue Hearing on Trustee's Motion to Approve Compromise and Settlement filed by Jeanne Ann Burton, Trustee ("Trustee"), and by agreement of the parties as indicated by the signatures of counsel below, and good cause having been shown,

IT IS HEREBY ORDERED that the hearing to consider the Chapter 7 Trustee's Motion to Approve Compromise and Settlement (Doc. 108), the Objection of Grant, Konvalinka & Harrison P.C. to Trustee's Motion to Approve Compromise and Settlement (Doc. 111) (the "GKH Objection"), and Brian Manookian's Objection to Proposed Chase Claim Settlement (Doc. 112) (the "Manookian Objection") scheduled in this matter for August 11, 2021 is hereby continued until ___September 17th___, 2021 at ___11:00___ a_.m. via via Zoom http://www.tnmb.uscourts.gov/zoomgov-videoaudio-information for Zoom information.

> **THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

Submitted for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

/s/ John P. Konvalinka
John P. Konvalinka
Grant, Konvalinka & Harrison, P.C.
633 Chestnut Street, Suite 900
Chattanooga, TN 37450-0900
Tel: (423) 756-8400
jkonvalinka@gkhpc.com

Counsel to Grant, Konvalinka & Harrison, P.C.

/s/ John T. Spragens
John T. Spragens
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
Tel: (615) 983-8900
john@spragenslaw.como

Counsel to Brian Manookian

2

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) Case No. 3:19-bk-07235 |
| CUMMINGS MANOOKIAN, PLLC, | ) Chapter 7 |
| | ) Judge Walker |
| Debtor. | ) |
| | ) |

## NOTICE OF FILING SUPPLEMENT TO MANOOKIAN OBJECTION
## TO PROPOSED CHASE CLAIM AND SETTLEMENT

Brian Manookian files this supplement to his prior-filed objection (Doc. No. 112) to the proposed Chase Claim and Settlement to update the Court on relevant recent developments. This matter is set to be heard on September 17, 2021.

Since the time the Trustee proposed to pay the Chase Parties $250,000 in resolution of a vacated judgment, (1) the Chases' appeal seeking to reinstate the vacated judgment has been rejected by the Tennessee Supreme Court, and (2) a motion for summary judgment that would dispose of any liability by the Debtor to the Chase Parties has been filed and is awaiting adjudication by the Williamson County Circuit Court.

## I.  THE TENNESSEE SUPREME COURT HAS NOW REJECTED THE CHASE APPEAL

The Chase "Claim" consists of a pending contempt proceeding in the Williamson County Circuit Court against Brian Manookian. The Tennessee Court of Appeals previously vacated a judgment in favor of the Chase Parties in that matter, and further ordered the recusal of the trial court judge who ruled in favor of the Chases.

The Chase Parties petitioned the Tennessee Supreme Court to reinstate the judgment, and, in the interim, the Trustee sought to settle the vacated claim. The Trustee cited the potential for

1

518

the Tennessee Supreme Court reinstating the judgment as part of her rationale for proposing to pay the Chase Parties $250,000.

On August 6, 2021, the Tennessee Supreme Court denied the Chase Parties application for permission to appeal.  **Exhibit 1**.  The Chase Parties have exhausted their appellate avenues for reinstating the vacated judgment.

## II.     SUMMARY JUDGMENT IS NOW PENDING ON THE CHASE CLAIM

As the Chase Parties have conceded, any potential liability of Cummings Manookian PLC could only occur after a finding against Brian Manookian.  ("[T]he entirety of CM PLC's potential liability is based on the conduct of Manookian." Chase Parties' Motion to Stay, filed August 27, 2021, Williamson County Circuit Court.)  **Exhibit 2**.

On September 3, 2021, Brian Manookian filed a Motion for Summary Judgment on all claims brought by the Chase Parties.  **Exhibit 3**.  That Motion is pending and is expected to be heard following assignment of the case to a new judge.  If the Motion is adjudicated in Mr. Manookian's favor – as he expects – even the currently remote potential liability of Cummings Manookian to the Chase Parties will be extinguished.

## III.    THE PROPOSED SETTLEMENT PROVIDES *NO* BENEFIT TO THE DEBTOR

The proposed settlement confers **_zero_** benefit upon the debtor because the Trustee failed to secure a concomitant release of claims against the Debtor's agent, Brian Manookian.  As thoroughly briefed by Objector Konvalinka, Cummings Manookian can only be liable in a contempt proceeding against Brian Manookian to the extent that Mr. Manookian's subject conduct was undertaken in the course and scope of his duties with Cummings Manookian.

The operating agreement of Cummings Manookian (previously produced to the Trustee) provides that Cummings Manookian must indemnify Mr. Manookian for any and all claims against him arising out of actions taken in the course and scope of his duties.

This presents two possible outcomes for the Chase Claim as it is litigated. In the event that Mr. Manookian's complained-of conduct was not undertaken in the course and scope of his duties with Cummings Manookian, the Debtor would have no liability to the Chases that requires settlement. Alternatively, if the conduct was undertaken in the course and scope of his duties with Cummings Manookian, Mr. Manookian would be entitled to complete indemnification, regardless of any side agreement negotiated between the Trustee and the Chase Parties. Cummings Manookian then would be required to pay the very damages that the proposed settlement agreement purports to resolve.

Thus, by failing to secure the typical release of its agents and principals as part of her proposed settlement agreement with the Chases, the Trustee has ensured that the settlement confers **<u>zero</u>** benefit on the Debtor.

## IV.    CONCLUSION

For all of the foregoing reasons, Mr. Manookian objects to the proposed claim and settlement with the Chase Parties.

Date:   September 10, 2021                    Respectfully submitted,


                                              /s/ John Spragens
                                              John Spragens (TN Bar No. 31445)
                                              Spragens Law PLC
                                              311 22nd Ave. N.
                                              Nashville, TN 37203
                                              T: (615) 983-8900
                                              F: (615) 682-8533
                                              john@spragenslaw.com

                                              *Attorney for Manookian PLLC and Brian Manookian*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed September 10, 2021 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.


                                              /s/ John Spragens

FILED

08/06/2021

Clerk of the
Appellate Courts

# IN THE SUPREME COURT OF TENNESSEE
# AT NASHVILLE

## DAVID CHASE v. CHRIS STEWART ET AL.

### Circuit Court for Williamson County
### No. 2015-200

EXHIBIT

1

_____

### No. M2018-01991-SC-R11-CV

_____

## ORDER

Upon consideration of the application for permission to appeal of Dean Chase, Sandra Chase, and D. F. Chase, Inc., and the record before us, the application is denied.

The opinion of the Court of Appeals is designated "Not For Citation" in accordance with Supreme Court Rule 4, § E.

PER CURIAM

ELECTRONICALLY FILED
2021 Aug 27 3:17 PM - 15CV-200
Williamson County Circuit Court

**IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE**

| | | |
|---|---|---|
| DAVID CHASE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2015-200 |
| | ) | JURY DEMAND |
| CHRIS STEWART, EMILY | ) | |
| STEWART, LAUREN BULL, | ) | |
| JASON RITZEN, ANDY CHO, | ) | |
| LINO LOVRENOVIC, BRYAN | ) | |
| EVERETT, SUSAN MARTIN | ) | |
| and CLAYTON MCKENZIE, | ) | |
| | ) | |
| Defendants. | ) | |

> **EXHIBIT**
>
> **2**

---

**NON-PARTIES' DEAN CHASE, SANDRA CHASE,
AND D.F. CHASE, INC.'S MOTION TO STAY**

---

Non-Parties Dean Chase, Sandra Chase, and D.F. Chase, Inc. (collectively, the "Non-Parties") respectfully move the Court for entry of an Order temporarily staying this matter. Specifically, the Non-Parties submit that a stay in this matter is justified as a result of the automatic stay created by Cummings Manookian, PLC's ("CM PLC") pending bankruptcy proceeding in the United States Bankruptcy Court for the Middle District of Tennessee. As explained below, this matter should be stayed until either (1) the Non-Parties' Petition for Contempt and Motion for Sanctions against CM PLC are voluntarily dismissed as a result of a proposed settlement with the Trustee of CM PLC's bankruptcy estate that is pending approval by the Bankruptcy Court; or (2) the automatic stay against CM PLC is otherwise lifted by the Bankruptcy Court. The grounds for the Non-Parties' Motion are as follows:

310673107.2

1. This case began on May 7, 2015, when Plaintiff David Chase[1] filed a Complaint alleging various tort claims against Chris Stewart, Emily Stewart, Lauren Bull, Jason Ritzen, Andy Cho, Lino Lovrenovic, Bryan Everett, Susan Martin, and Clayton McKenzie. (Compl.). The Non-Parties were not originally parties to the case. Instead, they were issued third-party subpoenas to produce certain documents and, in the case of Dean Chase and Sandra Chase, to provide third-party deposition testimony.

2. In 2016, the Non-Parties sought a finding of civil contempt and/or the imposition of sanctions against Brian Manookian, his law firm CM PLC, Mark Hammervold, and his law firm Hammervold Law, PLC based on their apparent violations of an Agreed Limited Protective Order and certain of the Court's Orders relating to their third-party discovery materials. (*See* 2/25/16 Motion).

3. On September 27, 2018, after multiple evidentiary hearings and substantial motion practice, the Court entered a final judgment of civil contempt and sanctions against Manookian, CM PLC, Hammervold, and Hammervold PLC on the Non-Parties' Petitions.

4. After the final judgment was entered, Manookian, CM PLC, Hammervold, and Hammervold PLC filed certain appeals with the Tennessee Court of Appeals.

5. On December 23, 2019, during the pendency of the appeals, Jeanne Ann Burton, the Chapter 7 Trustee of CM PLC ("Trustee") filed a Suggestion of Bankruptcy as to Appellant Cummings Manookian PLLC, which gave notice that CM PLC had filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Case"). (*See* Suggestion of Bankruptcy, attached as <u>Exhibit A</u>). The Trustee's Suggestion of Bankruptcy further stated that, by virtue of 11 U.S.C. § 362, the appeal was

---

[1] David Chase is the adult son of Dean and Sandra Chase.

310673107.2

automatically stayed as to CM PLC unless and until ordered otherwise by the Bankruptcy Court. (*Id*.).

6.      On January 3, 2020, the Tennessee Court of Appeals entered an Order stating that all proceedings on appeal were stayed as to CM PLC, but that the appeal would proceed as to the remaining parties.

7.      On March 3, 2020, the Non-Parties filed a Proof of Claim in the Bankruptcy Case relating to their contempt and sanctions judgment against CM PLC.

8.      On February 4, 2021, the Court of Appeals issued an Opinion on the appeals, vacating the final judgment based solely on the Court's denial of Manookian's third Motion to Recuse.   On March 16, 2021, the Court of Appeals denied the Non-Parties' Petition for a Rehearing, and stated that on remand this Court would need to hold an evidentiary hearing before entering a new decision on the Non-Parties' Petitions.

9.      On May 14, 2021, the Non-Parties filed a Rule 11 Application for Permission to Appeal to the Tennessee Supreme Court.

10.      On June 9, 2021, the Non-Parties and the Trustee entered into a Settlement Agreement with the Trustee on their claim against CM PLC only, where such Settlement Agreement is contingent on the approval of the Bankruptcy Court (the "Bankruptcy Settlement").

11.      On July 6, 2021, the Trustee filed a Motion for the Bankruptcy Court to approve the Bankruptcy Settlement. (*See* 7/6/21 Motion, attached as <u>Exhibit B</u>)

12.      The Non-Parties understand that Manookian and another creditor of the CM PLC bankruptcy estate have filed objections to the Bankruptcy Settlement.

3

13.     The hearing on the Trustee's Motion to approve the Bankruptcy Settlement is currently set to be heard on September 17, 2021.

14.     The Non-Parties respectfully submit that this matter should be stayed until one of the following occurs:

    a.     The Bankruptcy Court approves the settlement between the Non-Parties and the Trustee for CM PLC's bankruptcy estate, at which point CM PLC would be dismissed from this matter by the Non-Parties and the automatic stay would no longer be an issue; or

    b.     The Bankruptcy Court denies the settlement between the Non-Parties and the Trustee, and the Non-Parties have time to move to have the automatic stay lifted with regard to this proceeding.

15.     Questions regarding whether to stay a proceeding "are matters entrusted to the sound discretion of the trial judge." *Sanjines v. Ortwein and Associates, P.C.*, 984 S.W.2d 907, 909 (Tenn. 1998).  Thus, such decisions are reviewed for an abuse of discretion, with the key question being whether one or another party is prejudiced by the grant or denial of the stay.  *See id*.

16.     There are four key reasons why this matter should be stayed until the automatic stay is lifted as to the Petitions against CM PLC.

    a.     *First*, without a stay the Non-Parties will be prejudiced because it will be virtually impossible to take any proof at the evidentiary hearing against Manookian without potentially violating the automatic stay and incurring liability.  Manookian is an agent of CM PLC, and the entirety of CM PLC's potential liability is based on the conduct of Manookian.  Thus, at the evidentiary hearing the Non-Parties may take or present proof, including from Manookian, that almost certainly would be used equally against CM PLC and Manookian.  The

310673107.2

automatic stay created by 11 U.S.C. § 362 is broad, prohibiting the Non-Parties from, *inter alia*, "any act to obtain possession of property of the [CM PLC] estate," and "any act to...assess, or recover a claim against [CM PLC]." A violation of the automatic stay can subject the violator to liability in the form of damages, attorneys' fees, and in some instances punitive damages. *See* 11 U.S.C. § 362(k). Based on these provisions, it seems unlikely that the Non-Parties can take or present proof against Manookian without running the risk of violating the automatic stay.

b. *Second*, staying this proceeding until CM PLC is either dismissed or the automatic stay is lifted will encourage judicial efficiency and conserve party resources because it will limit the remaining proceedings to a single evidentiary hearing instead of multiple, duplicative hearings. The Non-Parties have already spent hundreds of thousands of dollars in this proceeding, oftentimes as a result of the gamesmanship and delay tactics of Manookian and Hammervold. If the Court stays this matter until there is resolution as to CM PLC in the Bankruptcy Case, then this proceeding can finally be brought to a close after a single evidentiary hearing.

c. *Third*, CM PLC will obviously be prejudiced if the stay is not granted because, if the Bankruptcy Settlement is not approved by the Bankruptcy Court for some reason, CM PLC will still be faced with having to litigate the Non-Parties' Petitions in some forum (this proceeding or an adversary proceeding). Since CM PLC may have to litigate the issues in this Court, proceedings on the Petitions should not occur until it is known whether CM PLC will be a party to them. Under these particular circumstances, CM PLC is akin to an indispensable party under Tennessee Rule of Civil Procedure 19.01. Just as Rule 19.02 allows for a case to be stayed in the absence of an indispensable party, the Court should find that a stay is warranted here

because CM PLC -- an undisputedly indispensable party -- has essentially been rendered absent by the automatic stay.

        d.     *Fourth*, Manookian, Hammervold, and Hammervold PLC will not suffer any undue prejudice as a result of the stay. The Petitions have been pending since 2016. Manookian and Hammervold are representing themselves, and, upon information and belief, Hammervold PLC is no longer operating as a law firm. There is no unfair harm that will be suffered by Manookian, Hammervold, or Hammervold PLC if resolution of this matter is delayed for a short while longer. And, any potential prejudice to Manookian, Hammervold, or Hammervold, PLC is far outweighed by the above prejudice that would be suffered by the Non-Parties and CM PLC if the stay is not granted.

For all of these reasons, this matter should be stayed until the automatic stay is lifted or the Petitions are voluntarily dismissed as to CM PLC as a result of confirmation of the Bankruptcy Settlement. The Non-Parties will set this motion for hearing after the case is assigned to a new trial judge and the Non-Parties can determine available dates for motion hearings.

310673107.2

Respectfully submitted,

/s/ Beau C. Creson
Charles I. Malone (TN Bar # 022904)
Beau C. Creson (TN Bar # 032049)
K&L Gates LLP
222 Second Avenue South, Suite 1700
Nashville, Tennessee  37201
Phone:  (615) 780-6730
Fax:  (615) 780-6799

Gayle I. Malone, Jr. (TN Bar # 002388)
BUTLER SNOW LLP
150 Third Avenue South, Suite 1600
Nashville, Tennessee 37201
Phone:  (615) 651-6700

*Attorneys for Dean Chase, Sandra Chase, and D.F. Chase, Inc.*

310673107.2

## CERTIFICATE OF SERVICE

I certify that, on this 27th day of August, 2021, a true and correct copy of the foregoing has been served via first-class U.S. mail, postage prepaid, and email on the following:

Philip L. Robertson
Brittany M. Bartkowiak
Robertson Law Group
3401 Mallory Lane, Suite 200
Franklin, Tennessee 37067
probertson@robertsonlg.com;
Brittany@robertsonlg.com

*Attorneys for David Chase*

Rob McGuire
Assistant United States Attorney
United States Attorney's Office
110 Ninth Avenue South, Suite A961
Nashville, Tennessee 37203

*Attorney for Lauren Bull*

Marcus M. Crider
Heath H. Edwards
Waller Lansden
511 Union Street, Suite 2700
Nashville, Tennessee 37219-1760
marcus.crider@wallerlaw.com
heath.edwards@wallerlaw.com

*Attorneys for Non-Parties*

Brian Manookian
Manookian PLC
45 Music Square West
Nashville, Tennessee 37203
brian@tntriallawyers.com

Robert F. Parsley
Michael Kohler
Miller & Martin
832 Georgia Avenue, Suite 1200
Chattanooga, Tennessee 37402
bparsley@millermartin.com
mkohler@millermartin.com

*Attorneys for Andy Cho*

David Hooper
Hooper, Zinn, McNamee
109 Westpark Drive, Suite 300
Brentwood, Tennessee 37027
dhooper@hooperzinn.com

*Attorney for Jason Ritzen*

Ronald G. Harris
Neal & Harwell
1201 Demonbreun Street, Suite 1000
Nashville, Tennessee 37203
rharris@nealharwell.com

*Attorney for Non-Party Scripps Media, Inc.*

Mark Hammervold
Hammervold PLC
155 S. Lawndale Avenue
Elmhurst, Illinois 60126
mark@hammervoldlaw.com

8

James D. Kay
John B. Enkema
Michael A. Johnson
Kay, Griffin, Enkema & Colbert, PLLC
222 Second Avenue North, Suite 240M
Nashville, Tennessee 37201
jim.kay@kaygriffin.com
john.enkema@kaygriffin.com
mjohnson@kaygriffin.com

*Attorneys for Non-Party*
*Attorney General Glenn Funk*

Jeanne Ann Burton, Trustee
4117 Hillsboro Pike, Suite 103-116
Nashville, Tennessee 37215
Jeanne.burton@comcast.net

Paul R. McAdoo
Reporters Committee for Freedom
of the Press
6688 Nolensville Road, Suite 108-20
Brentwood, Tennessee 37027
pmcadoo@rcfp.org

*Attorney for Non-Party*
*Meredith Corporation*

/s/ Beau C. Creson
_____

310673107.2

531

**EXHIBIT**

**3**

F I L E D
WILLIAMSON COUNTY
CIRCUIT COURT

2021 SEP -3 PM 3: 19

ENTERED_____

# IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE

| | | |
|---|---|---|
| **DAVID CHASE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 2015-200** |
| | ) | |
| **CHRIS STEWART,** *et al.* | ) | |
| | ) | **JURY DEMAND** |
| **Defendants.** | ) | |

---

## RESPONDENT BRIAN MANOOOKIAN'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Comes now Respondent Brian Manookian, pursuant to Rule 56 of the Tennessee Rules of Civil Procedure, and hereby moves this Court for an order granting summary judgment on all claims asserted against Mr. Manookian in the Chase Parties' Petition for Contempt.

The Petition for Contempt alleges that Mr. Manookian provided discovery materials originally produced by the Chase Parties to third-parties in violation of an order of the Court. The Declaration of Brian Manookian, Respondent's Statement of Undisputed Material Facts, and Respondent's Memoradum in Support of Motion for Summary Judgment demonstrate that there is no genuine issue of material fact as to the following: Respondent did not provide any person or entity with discovery materials from this case in violation of an existing court order. Mr. Manookian is entitled to summary judgment on Petitioner's claims.

1

**THIS MOTION IS ANTICIPATED TO BE HEARD FOLLOWING THIS MATTER'S ASSIGNMENT TO A JUDGE AND IDENTIFICATION OF A BRIEFING AND HEARING SCHEDULE CONSISTENT WITH THE LOCAL RULES AND TENNESSEE RULES OF CIVIL PROCEDURE.**

Respectfully submitted,

s/ BRIAN MANOOKIAN

_____

**Brian Manookian**
P.O. Box 150229
Nashville, TN 37215

## CERTIFICATE OF SERVICE

I certify that, on September 3, 2021, a true and correct copy of this document was provided by email to the following:

| | |
|---|---|
| Philip L. Robertson<br>Brittany M. Bartkowiak<br>Robertson Law Group<br>1896 General George Patton, Suite 600<br>Franklin, TN 37067<br>(T) 615.656.1729<br>(F) 615.656.1736<br>probertson@robertsonlg.com<br>*Attorneys for David Chase* | David Hooper<br>Hooper, Zinn, McNamee<br>109 Westpark Drive, Suite 300<br>Brentwood, Tennessee 37027<br>(T) 615.661.5472<br>(F) 615.661.5473<br>dhooper@hooperzinn.com<br>*Attorney for Jason Ritzen* |

533

| | |
|---|---|
| Robert F. Parsley<br>Michael Kohler<br>Miller & Martin<br>832 Georgia Avenue, Suite 1200<br>Chattanooga, TN 37402<br>(T) 423.756.6600<br>(F) 423.785.8480<br>bparsley@millermartin.com<br>mkohler@millermartin.com<br>*Attorneys for Andy Cho* | John Phillip Williams, Esq.<br>Tune, Entrekin & White P.C.<br>315 Deaderick Street, Suite 1700<br>Nashville, TN 37238<br>Telephone: 615.244.2770<br>Facsimile: 615.244.2778<br>jwilliams@tewlawflrm.com<br>*Attorney for the Nashville Scene* |
| Mark Hammervold<br>Hammervold PLC<br>155 S. Lawndale Avenue<br>Elmhurst, Illinois 60126<br>mark@hammervoldlaw.com | Charles I. Malone<br>Beau C. Creson<br>K&L Gates LLP<br>222 Second Avenue South,Suite 1700<br>Nashville, Tennessee 37201<br><br>Gayle I. Malone, Jr.<br>150 Third Avenue South, Suite 1600<br>Nashville, Tennessee 37201<br><br>*Attorneys for Dean Chase, Sandra Chase, and D.F. Chase, Inc.* |
| Marcus Crider<br>Heath Edwards<br>Waller Lansden<br>511 Union Street, Suite 2700<br>Nashville, TN 37219<br>(T): 615.244.6380<br>(F): 615.244.6804<br>marcus.crider@wallerlaw.com<br>heath.edwards@wallerlaw.com<br>*Attorneys for Intervening Parties NV Partners, CK Global, and D.F. Chase* | Ronald Harris<br>Neal & Harwell<br>2000 One Nashville Place<br>150 Fourth Ave. N.<br>Nashville, TN 37219<br>(T): 615.244.1713<br>(F): 615.726.0573<br>rharris@nealharwell.com<br>*Attorney for Intervening Party Scripps Media* |

| John Enkema | Paul R. McAdoo |
|---|---|
| James Kay | Reporters Committee for Freedom of |
| Kay, Griffin, Enkema, & Colbert | the Press |
| 222 Second Ave. N., Suite 340M | 6688 Nolensville Road, Suite 108-20 |
| Nashville, TN 37201 | Brentwood, Tennessee 37027 |
| (T): 615.742.4800 | pmcadoo@rcfp.org |
| (F): 615.742.4801 | *Attorney for Non-Party Meredith* |
| jenkema@kaygriffin.com | *Corporation* |
| jim.kay@kaygriffin.com | |
| *Attorneys for Intervening Party Glenn Funk* | |
| Jeanne Ann Burton, Trustee | |
| 4117 Hillsboro Pike, Suite 103-116 | |
| Nashville, Tennessee 37215 | |
| Jeanne.burton@comcast.net | |

s/ BRIAN MANOOKIAN

BRIAN MANOOKIAN

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

IN RE:                                    )
                                          )
CUMMINGS MANOOKIAN, PLLC,                 )         Case No: 3:19-bk-07235
                                          )         Chapter 7
                                          )         Judge Walker
          Debtor.                         )

## TRUSTEE'S RESPONSE TO OBJECTION OF GRANT, KONVALINKA & HARRISON, P.C. TO TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT

Jeanne Ann Burton, Chapter 7 Trustee herein, by and through special counsel, hereby respectfully responds to the Objection of Grant, Konvalinka & Harrison, P.C. to Trustee's Motion to Approve Compromise and Settlement (Doc. 111) (the "GKH Objection").

## BACKGROUND

Shortly after Cummings Manookian, PLLC (the "Debtor") filed for Chapter 7 bankruptcy relief on November 6, 2019 (the "Petition Date") and Jeanne Ann Burton (the "Trustee") was appointed to serve as Trustee, it became obvious that one of the central issues in this case would be the allowance or disallowance of a claim by Dean Chase, Sandra Chase and B.F. Chase, Inc. (the "Chase Parties"). The Chase Parties filed an $806,927.04 secured claim (the "Chase Claim") in this case on March 30, 2020, based on a sanctions judgment (the "Judgment") granted by the Williamson County Circuit Court (the "State Court") in favor of the Chase Parties against the Debtor, Brian Manookian, Mark Hammervold, and Hammervold Law, PLC (the "Judgment Parties"), jointly and severally. The two opinions issuing the Judgment are attached hereto as collective Exhibit A. As of the Petition Date, some of the Judgment Parties had appealed the Judgment to the Tennessee Court of Appeals, though the execution of the Judgment had not been stayed.

On February 4, 2021, the Tennessee Court of Appeals (the "Court of Appeals") vacated the Judgment, and remanded the matter for rehearing by another judge. The Court of Appeals decision is attached hereto as Exhibit B. While the Court of Appeals noted that the State Court judge "showed extraordinary patience and was thorough in his review of serious allegations against Mr. Manookian and Mr. Hammervold" (Exhibit B pp. 8-9) , and while it noted that "[w]e do not conclude that the judge was actually partial" (Id at p. 9), the Court of Appeals concluded, "[b]ecause the trial court's impartiality might reasonably be questioned, the court should have recused itself." Id at p. 12. The Chase Parties sought permission to appeal the Court of Appeals' decision to the Tennessee Supreme Court (the "Supreme Court"), but the Supreme Court denied the Chase Parties' application for permission to appeal on August 6, 2021. With the Supreme Court's decision, all issues that gave rise to the Judgment are now returning to the State Court for rehearing by another judge.

While the Chase Parties' Judgment was being appealed, the Trustee began exercising her fiduciary duty of identifying and pursuing assets of the Debtor's estate. Among those assets were certain causes of action against Afsoon Hagh, Hagh Law PLLC, and Manookian PLLC (collectively, the "Defendants"). In the infancy of this case, the Trustee took action to freeze $715,000 of funds in the possession of the Defendants, but which the Trustee claimed belonged to this estate. Those funds were ultimately deposited with the Clerk of this Court where they remain today. At the urging of the Defendants, the Trustee acted expeditiously in filing her complaint against the Defendants on January 8, 2020, which initiated Adversary Proceeding Number 3:20-ap-90002 (the "AP"). The AP was proceeding rapidly, with the Trustee having already issued written discovery to the Defendants, when the pandemic shut down the court

2

537

system.  For a number of months during the pandemic the Defendants asked the Court to delay proceedings, which the Court obliged.

In more recent months, the Defendants suddenly began urging the Trustee and the Court to speed up the pretrial deadlines associated with the AP.  The Trustee explained to the Defendants and to the Court that pursuit of the AP in light of the uncertainty associated with the allowance of the Chase Claim was imprudent and inefficient.  After all, the Chase Claim is by far this estate's largest claim; if it is allowed in full, then the Trustee might need to pursue each and every cause of action alleged in the AP but if it is disallowed or allowed in a reduced amount, then the Trustee might be able to only pursue certain causes of action in the AP that are less factually intensive.  Despite this explanation, the Defendants have urged the Court to force the Trustee to immediately pursue all claims in the AP.

It is against this backdrop that the Trustee began objecting to certain claims filed in this case, and decided to entertain a potential settlement of the Chase Claim.  As more fully described in the Trustee's Motion to Approve Compromise and Settlement (Doc. 108) (the "Settlement Motion"), the Trustee has negotiated a settlement that would allow the Chase Claim as a general unsecured claim against the estate in the amount of $250,000, would waive any causes of action that the Trustee and estate might otherwise have against the Chase Parties, would dismiss the estate from all causes of action in the State Court, and would waive any other causes of action that the Chase Parties might have against the estate or the Trustee (including any claims that they might have as an alleged secured creditor).

As stated in the Settlement Motion, the Trustee has three primary motivations for entering into the proposed settlement with the Chase Parties.  First, the proposed settlement eliminates the risk that the State Court will assess a new sanctions judgment against the Debtor

3

in a similar amount, or even a higher amount given the fees incurred by the Chase Parties since the Judgment was issued, than was first assessed against the Debtor in the Judgment. After all, the facts underlying this matter have not changed and neither the Court of Appeals nor the Supreme Court opined on the ultimate outcome; the Court of Appeals questioned only whether *that particular* judge should have issued the sanctions judgment. There is no reason to believe that a different judge reviewing the same facts will reach a different conclusion.

Second, the proposed settlement significantly reduces potential legal expenses of the estate. As mentioned in the Settlement Motion, the Trustee believes that the estate's participation in the retrial of the sanctions issues before the State Court could cost the estate $150,000 or more in legal fees, given the litigious nature of the sanctions issues and the length of time it took to try the matter initially.[1] The proposed settlement might also allow the Trustee to limit the issues that must be tried in the AP. If the Trustee is able to reduce the estate's allowed claims to a point where the $715,000 being held by the Court would be sufficient to pay all creditors in full (or even close thereto), the issues to be tried in the AP and legal fees associated with that trial will be substantially curtailed. The Trustee believes this could save the estate an additional $100,000+ in legal fees and expenses.

Finally, fixing the Chase Claim via this settlement is in the best interest of the estate and judicial economy, as reaching some finality on the Chase Claim will allow the Trustee to proceed with the AP and fully administer this estate. If the Court were to reject the settlement, it is likely that the Trustee will be embroiled in litigation over the sanctions before the State Court (and this state's appellate courts) for years to come. Even if the Trustee were to move forward with the AP, despite it being inefficient to do so without first fixing the Chase Claim, she would not be

---

[1] Currently, the estate would lack the funds necessary to pay such legal fees. The balance on-hand in the estate's account is $86,683.37.

4

able to administer the estate and make a distribution until the conclusion of the litigation concerning the sanctions award. That would hold this case, and the creditors' distributions, in limbo for many years to come.

For these reasons, the Trustee, in the exercise of her fiduciary duty and business judgment, has determined that it is in the estate's best interest to enter into the proposed settlement at this time. The Settlement Motion drew two objections: one by Grant, Konvalinka & Harrison, P.C. (Doc. 111) (the "GKH Objection") and one by Brian Manookian (Doc. 112) (the "Manookian Objection"). The Trustee respectfully requests that the Court grant the Settlement Motion and deny the GKH Objection and the Manookian Objection.

## THE GKH OBJECTION OFFERS NO REASON WHY THE COURT SHOULD NOT APPROVE THE SETTLEMENT MOTION

The gist of the GKH Objection to the Settlement Motion is that the Court should not approve the settlement because the State Court might, upon rehearing, decide that the Debtor is not liable for the sanctionable actions of Brian Manookian. While the GKH Objection, on pages 5-7, thoroughly and correctly recites the Tennessee state law standards for holding a party in contempt for violation of a court's order (which was the finding that led to the Judgment), GKH then applies the incorrect standard to this matter on pages 8-13 of its objection. The majority of the substance of the GKH Objection focuses on federal courts' application of 28 U.S.C. §1927, which is inapplicable in this matter. The Debtor was sanctioned because it and its agent, Brian Manookian, were found to have violated an order of a Tennessee state court. 28 U.S.C. §1927 is a federal statute that addresses a party's liability for vexatious litigation in federal court; it has nothing to do with the Debtor's liability for violating the terms of a state court order.

Indeed, the State Court already considered all of the evidence and found that the Debtor was liable for contempt of its order. In fact, as noted in the GKH Objection, the State Court

5

specifically found that "Cummings Manookian, PLC is also in civil contempt based upon the knowing, willful, and intentional violations of Mr. Manookian acting as its agent for the law firm." *See* <u>Exhibit A</u>, p. 95. While the Judgment has now been vacated, and the Trustee will certainly argue that the Debtor should not be responsible for Mr. Manookian's actions if the estate is forced to relitigate this matter in the State Court, there is no reason to believe that the new judge assigned to consider this matter will reach any different conclusion. In its objection, GKH argues that Mr. Manookian's actions were *ultra vires* and were not undertaken on behalf of his law firm, the Debtor. However, the facts that would establish the Debtor's liability for Mr. Manookian's actions seem difficult to overcome: (1) Mr. Manookian was an attorney authorized to practice law on behalf of the Debtor; (2) in fact, he was one of two named members of the Debtor law firm and was authorized to make decisions on behalf of the Debtor; and (3) every appearance he made in the underlying matter involving the Chase Parties was made as a member of the Debtor law firm. Given these facts, the Trustee sees no reason why a new judge assigned to hear this matter would reach any different conclusion than the first judge reached: that Brian Manookian was an agent of the Debtor and that, as such, his sanctionable actions are impugned to the Debtor. GKH has presented no facts or law that leads one to believe that the Debtor might not be found liable for Mr. Manookian's actions on rehearing. Accordingly, the GKH Objection should be overruled.

### THE EXPENSE OF CONTINUED LITIGATION IS A VALID PART OF THE JUSTIFICATION FOR THE PROPOSED SETTLEMENT

At the conclusion of the GKH Objection, GKH seems to question the Trustee's business decision to settle the Chase Claim in order to avoid future litigation expenses. GKH does so in a single sentence and a related footnote. The GKH Objection states: "As the Trustee has estimated that litigation expenses might 'possibly' exceed $150,000, it is not in the best interest

6

of the estate to allow the Chase claim in an amount exceeding that expense." GKH Objection, p. 13. A corresponding footnote reads: "GKH is *willing to consider* defending the Trustee in any claim by the Chase parties with a limitation as to the maximum amount that the Trustee would have to pay". Id. (emphasis added).

This criticism of the proposed settlement is invalid for two reasons. First, this statement ignores that the Trustee has cited multiple reasons for reaching the proposed settlement with the Chase Parties, not just cost of future litigation. As explained in the Settlement Motion and again herein, the Trustee also considered the risk that the State Court would reinstate the Judgment in its original amount, or perhaps even add to that amount due to legal fees expended by the Chase Parties since the entry of Judgment. Moreover, the Trustee considered the need for judicial efficiency in reaching this proposed settlement. Not only does the Trustee have a fiduciary duty to administer this estate as quickly and efficiently as possible, and a multi-year state court litigation over these sanctions would inhibit that duty, but this settlement also allows the Trustee to avoid added time and expense associated with the AP. As the Trustee has explained herein, and has mentioned to the Court in hearings associated with the AP, the scope of discovery and litigation needed to prove all allegations in the Complaint is substantially more than what is needed to prove the estate's right to the $715,000 being held by the Clerk of this Court. If the Trustee can minimize the claims against the estate such that the $715,000 would be sufficient to pay all claims in full, it will drastically cut the time and expense of litigation in the AP; the Trustee estimates that it might reduce the estate's legal fees in the AP by $100,000. When the Trustee examined all benefits of this proposed settlement, not just the avoidance of approximately $150,000 in fees associated with the state court litigation, the allowance of the Chase Claim at a reduced amount of $250,000 seemed to be in this estate's best interest.

7

Nor does GKH's conditional offer to consider representing the estate at a discount change the Trustee's view of the proposed settlement. First, GKH has made the Trustee no offer of representation; rather, the footnote vaguely indicates that it would "consider" representing the Trustee before the State Court on some ill-defined terms. Furthermore, even if GKH's conditional offer came to fruition, the Trustee would need to consider whether she wished to seek the employment of GKH as special counsel in this matter.

The Trustee's concern about expenses if the estate has to litigate with the Chase Parties in State Court is a legitimate consideration when evaluating the proposed settlement, though it is just one of several considerations. The proposed settlement is in the best interest of this estate, in its totality, and should be approved.

WHEREFORE, the Trustee respectfully requests that the Court overrule the GKH Objection, grant the Settlement Motion, and grant the Trustee such other relief as the Court deems necessary and appropriate.

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel for Chapter 7 Trustee

8

**Certificate of Service**

The undersigned hereby certifies that a copy of the preceding document was electronically filed and served via the Court's ECF system this 14th day of September, 2021.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
Tel:     (615) 465-6000
phillip@thompsonburton.com

Special Counsel for Chapter 7 Trustee

9

IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE
AT FRANKLIN

DAVID CHASE,                                    )
                                               )
              PLAINTIFF,                        )
                                               )
VS.                                            )          CASE NO. 2015-200
                                               )
CHRIS STEWART, EMILY STEWART,                   )       THIS *MEMORANDUM AND ORDER*
LAUREN BULL, ANDY CHO, LINO                     )       IS <u>NOT</u> TO BE FILED UNDER SEAL
LOVRENOVIC, BRYAN EVERETT,                      )
SUSAN MARTIN, and CLAYTON                       )
MACKENZIE,                                      )
                                               )
              DEFENDANTS.                       )

---

## MEMORANDUM AND ORDER

This matter came before the Court upon Petitioners, Dean Chase, Sandra Chase, and D.F. Chase, Inc.'s *Petition for Civil Contempt and Motion for Sanctions* filed on April 11, 2016, as well as the *Motion for Sanctions* filed by Non-Parties CK Global, LLC and NV Music Row, LLC (hereinafter collectively referred to as the "Non-Parties"), against Respondents, Brian Manookian; Cummings Manookian, PLC; Mark Hammervold; and Hammervold Law, PLC (hereinafter collectively referred to as Respondents").[1] The Court held an evidentiary hearing on September 23, 2016 and November 9, 2017. On December 21, 2017, the Court received Non-Parties' *Proposed Findings of Fact and Conclusions of Law* and Respondents' *Proposed Findings of Fact*

---

[1] The Non-Parties originally filed their *Petitions* against Rob McGuire and McGuire, Menke, Reddick & Shabayek, PLLC, but subsequently dismissed all of their claims based upon a non-monetary settlement. (Hr'g Tr. 117:20-119:4, November 9, 2016.) However, this Court has not excused Mr. McGuire's conduct in his irregular activities in this case involving Mr. Manookian, which will hereinafter be discussed.

Page 1 of 122

*and Conclusions of Law.*[2] Upon a review of the filings, arguments of counsel, and the record, the Court makes the following findings of fact and conclusions of law.

## I.     RELEVANT PROCEDURAL HISTORY AND BACKGROUND INFORMATION

Prior to analyzing the current issues before the Court, the Court finds it necessary to provide relevant procedural history and background to understand the underlying issues in this case.

Plaintiff, David Chase, filed his original *Complaint* in the Circuit Court for Williamson County, Tennessee, on May 7, 2015. On June 5, 2015, Plaintiff, David Chase, filed his *First Amended Complaint.* Additionally, the Court eventually granted Plaintiff, David Chase, leave to file his *Verified Second Amended Complaint* on October 5, 2015. All of the allegations in the *Verified Second Amended Complaint* stemmed from a central allegation of civil conspiracy relating to a domestic violence incident between Plaintiff, David Chase, and Defendant, Lauren Bull, with the other Defendants acting as alleged co-conspirators. In the *Verified Second Amended Complaint*, Plaintiff, David Chase, named the following Defendants: (1) Lauren Bull; (2) Andy Cho; (3) Bryan Everett; (4) Lino Lovrenovic; (5) Clayton Mackenzie; (6) Susan Martin; (7) Jason Ritzen; (8) Chris Stewart; and (9) Emily Moss Stewart. Furthermore, in the *Verified Second Amended Complaint*, Plaintiff, David Chase, asserted the following claims against the Defendants: (1) assault and battery, (2) trespass, (3) defamation, (4) intentional interference with business relationships, (5) abuse of process and malicious prosecution, (6) outrageous conduct, (7) damage to property, and (8) civil conspiracy. In

---

[2] The Court notes Respondents Brian Manookian and Cummings Manookian, PLC filed a separate *Proposed Findings of Fact and Conclusions of Law* from Respondent's Mark Hammervold and Hammervold Law, PLC.

due course, the Defendants filed multiple dispositive motions against Plaintiff, David Chase's, claims.[3]

On October 30, 2015, the Court heard a lengthy hearing on the numerous motions for summary judgments, motions for dismissals, and discovery disputes.[4] On February 12, 2016, the Court issued an *Interim Order* on the *Motions for Summary Judgment* and determined a significant procedural issue in the record and invited the Defendants to file supplemental filings to correct the record.

After the Parties filed their supplemental filings and in an attempt to provide a succinct ruling on the multiple and complex motions for summary judgment filed in this case, the Court treated each one of the voluminous motions for summary judgment individually and entered a *Memorandum and Order* on June 27, 2016. First, the Court denied *Defendants Chris and Emily Stewart's Motion for Summary Judgment* filed on February 16, 2016. Second, the Court denied Defendants', Lino Lovrenovic, Bryan Everett, Susan Martin, and Clayton McKenzie, *Motion for Summary Judgment* filed on February 16, 2016. Third, the Court denied Defendant Lauren Bull's *Motion for Summary Judgment* filed on February 16, 2016. Fourth, the Court granted, in its entirety, Defendant, Andy Cho's, *Amended Motion for Summary Judgment* filed on September 28, 2015, and *Supplemental Grounds for an Amended Motion for Summary*

---

[3] On August 28, 2015, Defendants, Lino Lovrenovic, Bryan Everett, and Susan Martin, also filed a *Motion for Summary Judgment*. Additionally, on August 31, 2015, Plaintiff, David Chase, filed his *Motion for Default Judgment* against Defendant, Bryan Everett. Moreover, on September 23, 2015, Defendant, Clayton McKenzie, filed his *Motion for Summary Judgment*; Defendants, Chris Stewart and Emily Stewart, filed a *Supplemental Filing in Support of their Motion to Dismiss and/or Summary Judgment*; Defendants, Lino Lovrenovic, Bryan Everett and Susan Martin, filed a *joint Motion for Summary Judgment*; and Defendant, Lauren Bull filed her *Motion for Summary Judgment on Counts III-VI*. On September 28, 2015, Defendant, Andy Cho, filed his *Amended Motion for Summary Judgment*. Lastly, on October 20, 2015, Defendant, Andy Cho, also filed a *Motion to Dismiss Second Amended Complaint*.
[4] Most notably, at the hearing of October 30, 2015, the Court adopted and modified the *Agreed Protective Order* at issue in this current proceeding.

*Judgment* filed on February 16, 2016. Fifth, the Court granted, in its entirety, Defendant, Jason Ritzen's, *Motion for Summary Judgment* filed on July 17, 2015; and *Supplemental Grounds for Summary Judgment* filed on March 21, 2016, all of which the Court analyzed in detail and made its findings of fact and conclusions of law in a 40-page *Memorandum and Order* entered on June 27, 2016. From this description, this would appear to be a typical case, albeit much larger, which was nearly concluded.

Unfortunately, there was what this Court can only describe as an undercurrent of discovery abuses and contemptuous misconduct beneath the surface performed by certain attorneys involved in this case. Thus, this case transformed into essentially a case within a case.

Dating back to August 28, 2015, which is the day the Parties, the Non-Parties, and the attorneys involved in this matter entered into the *Agreed Limited Protective Order as to Certain Subpoenaed Non-Parties* (hereinafter referred to as the "*Agreed Protective Order*") and the Non-Parties provided their initial discovery distribution, this case has been riddled with discovery disputes and abuses. So much so, on October 8, 2015, Plaintiff, David Chase, filed an *Expedited Motion for Sanctions, Protective Orders, and Other Related Relief*. On October 20, 2015 and October 30, 2015, respectively, the Court held hearings to resolve the discovery disputes and entered *Orders* to prevent the dissemination of confidential material.[5]

On February 25, 2016, the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., filed *Non-Parties' Motion to File their Motion for Sanctions and All Attachments Thereto Under Seal*. The *Motion for Sanctions* was based upon the violations of the *Agreed Protective Order* and sought to discover how certain

---

[5] *See* Court's *Order* of November 6, 2015 and *Order* of November 7, 2015.

Case 3:19-bk-07235   Claim 5-1 Part 4   Filed 03/30/20   Desc Exhibit July 2018
Sanctions Judgment   Page 4 of 124

548

confidential material was disseminated to members of the public and the news media. Subsequently, the Defendants filed their relative *Responses*.

On March 10, 2016, the Court conducted a hearing, *inter alia*, on the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc.'s, *Motion for Sanctions* and the Non-Parties, CK Global, LLC, NV Music Row, LLC, D.F. Chase, Inc., Dean Chase and Sandra Chase's, *Motions and Supplements for: (1) Entry of Agreed Limited Protective Order; (2) Declaration that All Parties are Bound by the Order; and (3) Expedited Hearing.*[6] The Court analyzed these *Motions*, arguments from the March 10, 2016 hearing, and a thorough review of the voluminous record, over many weeks of review,[7] the Court entered an *Order* on March 29, 2016 finding these allegations were supported by fact and credible affidavit testimony, warranting serious consideration by this Court. The Court identified the following attorneys and firms whose actions in this matter strongly indicate violations of Tennessee Rule of Civil Procedure 37.02 and possible contempt of Court:

(1) Brian Manookian and Cummings Manookian, PLC;

(2) Mark Hammervold and Hammervold, PLC;

(3) Rob McGuire and MRRS Law; and

(4) Travis R. Thompson and Miller & Martin, PLLC.[8]

---

[6] The Court notes the following *Motions* were also before the Court at this hearing: (1) Plaintiff, David Chase's, *Motion to Alter or Amend Entered Protective Order on Plaintiff's Expedited Motion for Sanctions, Protective Order, and Other Related Relief and Expedited Motion to Compel;* (2) Plaintiff's *Supplemental Motion to Alter or Amend;* and (3) Defendants, Stewarts, Ritzen, Martin, Lovrenovic and McKenzie's, *Motions for Sanctions, Motion to Compel, and to Hold Plaintiff in Contempt.* See *Order* of March 10, 2016.
[7] Specifically, in connection with the oral *Orders* issued at the October 20, 2015 and October 30, 2015 hearings, and the corresponding written *Orders* entered on November 7, 2015 and November 6, 2015, respectively.
[8] The Court understands Travis R. Thompson is no longer with the firm of Miller & Martin, PLC. No action has been taken against Travis R. Thompson, Esq., as a result of the Court's review. There are, however,

The Parties and/or Non-Parties affected by alleged violations of Tennessee Rules of Civil Procedure 37.02 and violations of the corresponding Court *Orders* were instructed through this Court's *Order* entered on March 29, 2016 to file within ten days of the March 29, 2016 *Order* appropriate pleadings for sanctions, listing specifically each violation alleged to have occurred and the specific injury inflicted upon each Party. Further, it was ordered in the March 29, 2016 *Order*, should any Party and/or Non-Party pursue civil contempt and/or criminal contempt, those affected shall file appropriately-pled petitions for civil contempt and/or criminal contempt within ten days of the March 29, 2016 *Order*, following precisely the well-established case law for bringing such allegations set forth in the Tennessee Court of Appeals' Eastern Section case of *Furlong v. Furlong*, 370 S.W.3d 329 (Tenn. Ct. App. 2011) and its progeny.

Thus, the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, filed their *Petition for Civil Contempt and Motion for Sanctions* on April 11, 2016. Non-Parties, CK Global, LLC and NV Music Row, LLC, filed their *Motion for Sanctions*, against Respondents, Brian Manookian; Cummings Manookian, PLC; Mark Hammervold; and Hammervold Law, PLC on April 11, 2016 as well. Therefore, the Court held evidentiary hearings on September 23, 2016 and November 9, 2017, respectively, in order to address the alleged attorney misconduct.

---

two other attorneys of record with the firm who represent Andy Cho, namely, Robert F. Parsley and Michael Kohler.

## II.   **FINDINGS OF FACT**

The Court finds it necessary to provide a thorough and wide-ranging findings of fact to clearly and efficiently make factual determinations on the Non-Parties' *Petition for Civil Contempt and Motion for Sanctions* and the Non-Parties, CK Global, LLC and NV Music Row, LLC's, *Motion for Sanctions*. Thus, the Court finds it is essential to first list the relevant attorneys representing the Parties and the Non-Parties involved in this matter. Second, the Court shall make its general findings relating to facts of this case. Finally, the Court shall make specific findings relating to the material facts at issue.

### A.   **Attorneys for the Parties**

1. Plaintiff, David Chase, has at all times been represented by Phillip Robertson, Esq. (hereinafter referred to as "Mr. Robertson") and Brittany Bartkowiak, Esq. (hereinafter referred to as "Ms. Bartkowiak") of Robertson Law Group.

2. Defendants, Chris Stewart, Emily Stewart, Susan Martin, Lino Lovrenovic, Bryan Everett, and Clayton McKenzie, have at all times been represented by Brian Manookian, Esq. (hereinafter referred to as "Mr. Manookian") of Cummings Manookian, PLC.

3. Defendants, Bryan Everett, Lino Lovrenovic, Susan Martin, and Clayton McKenzie, have also been represented simultaneously by Mark Hammervold, Esq. (hereinafter referred to as "Mr. Hammervold") of Hammervold Law, PLC, who has served as co-counsel with Mr. Manookian.

4. Defendant, Jason Ritzen, has at all relevant times been represented by David Hooper, Esq. (hereinafter referred to as "Mr. Hooper") of Hooper, Zinn, and McNamee.

5. Defendant, Lauren Bull, has at all relevant times been represented by Rob McGuire, Esq. (hereinafter referred to as "Mr. McGuire") of Rob McGuire Law and previously of McGuire, Menke, Reddick & Shabayek, PLLC ("MMRS Law").[9]

6. Defendant, Andy Cho, has at all relevant times been represented by Robert Parsley, Esq. (hereinafter referred to as "Mr. Parsley") and others of Miller & Martin, PLC.

   **B.**   **Attorneys for the Non-Parties**

7. At all relevant times in these proceedings, the Non-Parties, CK Global, LLC; NV Music Row, LLC; Dean Chase, Sandra Chase, and D.F. Chase, Inc., were represented by Marcus Crider, Esq. (hereinafter referred to as "Mr. Crider"), Frances Fenelon, Esq. (hereinafter referred to as "Ms. Fenelon"), Heath E. Edwards, Esq. (hereinafter referred to as "Mr. Edwards"), and Chris Dunn, Esq. (hereinafter referred to as "Mr. Dunn") at the law firm of Waller (hereinafter collectively referred to as "Waller").

8. The Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., have also been represented in this matter by Gayle Malone, Jr. Esq. (hereinafter referred to as "Mr. Gayle Malone"), Charles I. Malone, Esq. (hereinafter referred to as "Mr. Charles Malone"), and Beau C. Creson, Esq. (hereinafter referred to as "Mr. Creson") of Butler Snow, LLP since shortly after January 20, 2016, when it was learned certain media outlets had been provided and were intending to publish confidential material disclosed by the Non-Parties.

   Accordingly, after identifying the relevant attorneys involved in this matter, the Court makes the following findings of fact:

---

[9] MMRS Law is now a defunct law firm, and Mr. McGuire is now serving as an Assistant United States Attorney in the United States Attorney's Office in Nashville, Tennessee

## C.    General Findings of Fact

9.  On May 7, 2015, Plaintiff, David Chase, filed a *Complaint* alleging multiple claims against Defendants, Chris Stewart, Emily Stewart, Lauren Bull, Jason Ritzen, Andy Cho, Lino Lovrenovic, Bryan Everett, Susan Martin, and Clayton McKenzie.

10. On July 20, 2015, Mr. Manookian issued third-party subpoenas on the Non-Parties seeking certain documents and deposition testimonies. (*See* Subpoenas to Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., issued on July 20, 2015.)[10] These subpoenas required the Non-Parties to produce 39 categories of documents and for Dean Chase and Sandra Chase to submit to deposition testimony. (Hr'g Tr. 95:7-98:15, Sept. 23, 2016.) In lieu of objecting to these subpoenas, the Non-Parties, through their counsel from Waller, bargained to produce documents and give testimony, provided these documents and testimonies would be given under the protection of a protective order.[11] (Hr'g Tr. 41:14-21, Nov. 9, 2016.)

11. On August 24, 2015, Frances Fenelon, Esq. of Waller, emailed Mr. Manookian a proposed protective order for Defendants' review. (Hr'g Tr. 189:10-190:11, Sept. 23, 2016; Tr. Exhibit 18, Sept. 23, 2016.) In response, Mr. Manookian sent Ms. Fenelon a new proposed protective order drafted by him, which included the names of the individual Defendants he, his partner, Brian Cummings, and their firm, Cummings Manookian PLC, represented. (Hr'g Tr. 190:12-191:6, Sept. 23, 2016; Tr. Exhibit 19, Sept. 23, 2016.)

---

[10] The Court also notes the other Non-Parties, CK Global, LLC and NV Music Row, LLC, were also issued subpoenas.
[11] *See Agreed Protective Order*, Nov. 9, 2017.

12. On August 28, 2015, Ms. Fenelon emailed to Mr. Manookian a final version of the *Agreed Protective Order* which had been negotiated between the Parties and Non-Parties. (Hr'g Tr. 108:24-109:12, Sept. 23, 2016; Tr. Exhibit 3, Sept. 23, 2016.)

13. In the same email, Ms. Fenelon stated "[i]f you can agree that the productions are subject to the terms of the Protective Order even before the Court has signed and entered it, timing of production versus order entry shouldn't be a problem. Can you agree?" *Id.* In his Response, Mr. Manookian unequivocally stated, "<u>I agree that the Order is binding on me and my clients at the time it is signed with permission as opposed to entered by the Court.</u>" (*Id.*) (emphasis added).

14. On August 28, 2015, Ms. Fenelon of Waller, as counsel for the Non-Parties, signed the *Agreed Limited Protective Order As to Certain Subpoenaed Non-Parties* (which was previously referred to above as the "*Agreed Protective Order*") for all counsel and parties by permission and filed the *Agreed Protective Order* with the Court. (*Motion for Entry of Agreed Limited Protective Order as to Certain Subpoenaed Parties* of August 28, 2015, Exhibit 1.) Upon the signing of the *Agreed Protective Order*, that very same day, the Non-Parties made their first production of documents pursuant to the terms of the *Agreed Protective Order*. (Hr'g Tr. 113:13-116:8, Sept. 23, 2016; Tr. Exhibit 5, Sept. 23, 2016.)

15. In a letter attached to the August 28, 2015 document production, Ms. Fenelon stated the production was being made jointly on behalf of all of the Non-Parties subpoenaed by Mr. Manookian. (Tr. Exhibit 5, Sept. 23, 2016.) The letter also mentioned while the Non-Parties "realize[d] that the [*Agreed Protective Order*] cautioned against mass designation of documents as 'confidential' . . . it would have

been unduly burdensome upon our clients to review each of the 17,648 of documents (**representing 78,000 pages**) identified through search designed to be as reasonably comprehensive as possible." (*Id.*) (emphasis added) In so doing, the Non-Parties designated all of the disclosed documents as "confidential" under the *Agreed Protective Order*, but offered either to conduct a page-by-page review for confidentiality, if Mr. Manookian's clients were willing to pay for such a review, or to review any confidentiality challenge Mr. Manookian wanted to make to the Non-Parties' specific designations, pursuant to the challenge procedures set forth in the *Agreed Protective Order.* (*Id.*)

16. The *Agreed Protective Order* includes the following procedure for challenging the Non-Parties' designation of documents or deposition testimony as confidential:

## 6. CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1 <u>Timing of Challenges</u>. A Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2 <u>Challenge to Designation</u>. A Challenging Party who disputes a designation need only give written notice to the Designating Party that consists of an identification of the documents or materials whose designation is being challenged. The written notice does not require that a basis for the challenge be specified. Written notice may be provided by letter, fax, or electronically by email.

6.3 <u>Responses to Challenge</u>. Upon receipt of the Challenging Party's written notice, the Designating Party has fourteen (14) days of such written notice to apply to the Court for an order specifically designating the Disclosure or Discovery Material at issue as confidential. The Party seeking such an order has the burden of establishing good cause for the Disclosure or Discovery Material to be treated as confidential.

6.4 <u>Treatment of Information While Challenge is Pending</u>. Notwithstanding any challenge to the designation of Disclosure or Discovery Material as Confidential, all materials designated as such must

be treated as such and subject to this order until one of the following occurs:

      a.     the Designating Party withdraws its confidentiality designation in writing;

      b.     the Designating Party fails to apply to the Court for an order designating the material confidential within the time period specified above after receipt of a written challenge to such designation; or

      c.     the Court decides the material issue is not subject to protection as confidential.

(*Motion for Entry of Agreed Limited Protective Order as to Certain Subpoenaed Parties* of August 28, 2015, Exhibit 1, Section 6.)

17. On August 31, 2015, Mr. Manookian submitted a challenge to the confidential designations made by the Non-Parties by filing *Defendants Chris Stewart, Emily Stewart, Jason Ritzen, Susan Martin, Lino Lovrenovic, and Bryan Everett's Response in Opposition to the Non-Parties' Motion for Entry of Agreed Limited Protective Order.*[12] In this *Response*, Mr. Manookian requested the Court to not enter the *Agreed Protective Order*. However, on September 3, 2015, Mr. Manookian struck his *Response* of August 31, 2015 in opposition to the entry of the *Agreed Protective Order*, and instead "respectfully request[ed] that the proposed order be entered" by the Court. (Tr. Exhibit 6, Sept. 23, 2016.) Mr. Manookian claims he struck his *Response* so the Parties and Non-Parties could go through the designation-challenge procedure set forth in the *Agreed Protective Order*. (Hr'g Tr. 117:21-24, Sept. 23, 2016.)

18. On September 14, 2015, the Non-Parties filed their *Non-Parties' Joint Motion for Entry of a Protective Order*, in which the Non-Parties requested the Court uphold the

---

[12] In the *Response*, Mr. Manookian claimed misrepresentations had been made to the Defendants, as well as this Court.

confidential designation of the materials that had been challenged by Mr. Manookian.[13] This *Joint Motion* was filed in accordance with the *Agreed Protective Order* and was set to be heard before this Court on October 30, 2015. (*Id.*) Accordingly, based upon the terms of the *Agreed Protective Order*, all of the materials designated "confidential" were to be treated as such until an adjudication by this Court could be made. (*Motion for Entry of Agreed Limited Protective Order as to Certain Subpoenaed Parties*, Aug. 28, 2015, Exhibit 1, Section 6.4.)

19. On September 16, 2015, the Defendants, which included Mr. Manookian, took the depositions of Dean Chase and Sandra Chase. (Hr'g Tr. 120:14-15, Sept. 23, 2016.) In Section 5.2b of the *Agreed Protective Order*, the following is stated as the procedure for the Non-Parties' giving deposition testimony:

> b. <u>For testimony given by the Subpoenaed Parties in deposition or in other pretrial or trial proceedings</u>, the Party or Non-party offering or sponsoring the testimony must identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony. When it is impractical to identify separately each portion of testimony that is entitled to protection, and when it appears that substantial portions of the testimony may qualify for protection, the Party or Non-party that sponsors, offers, or gives the testimony may invoke on the record (before the deposition or proceeding is concluded) a right to have up to 10 days to identify the specific portions of the testimony as to which protection is sought.

(*Motion for Entry of Agreed Limited Protective Order as to Certain Subpoenaed Parties* of August 28, 2015, Exhibit 1, Section 5.2b.)

20. At the beginning of the depositions, Marc Crider, Esq., an attorney at Waller and attorney for the Non-Parties, designated specific portions of the testimonies of the Non-Parties as "confidential" pursuant to the terms of the *Agreed Protective Order*. (Hr'g Tr. 182:15-21, Sept. 23, 2016.)

---

[13] The Court notes Non-Parties, NV Music Row, LLC, and CK Global LLC, jointly filed this *Motion*.

21. On October 1, 2015, Mr. Manookian sent an email to counsel for the Non-Parties requesting authority to provide News Channel 4 WSMV with copies of Sandra Chase's deposition testimony. (Tr. Exhibits 7 & 8, Sept. 23, 2016.) In the email, Mr. Manookian inquired whether the Non-Parties took the position that certain portions of Sandra Chase's testimony were confidential, and stated, "I will, obviously, follow your preference on this issue. I just need to know what that is." (*Id.*)

22. In two emails sent on October 2, 2015, Mr. Crider of Waller, on behalf of the Non-Parties, rejected Mr. Manookian's request, and stated he considered the entirety of Dean Chase and Sandra Chase's deposition testimonies to be confidential. (Tr. Exhibit 8, Sept. 23, 2016.)

23. On October 8, 2015, Plaintiff, David Chase, filed an *Expedited Motion for Sanctions, Protective Orders, and Other Related Relief*, and this matter was later set to be heard on October 20, 2015.

24. On October 19, 2015, Mr. Manookian filed *Defendants' Response to Plaintiff's Expedited Motion for Sanctions, Protective Orders and Other Relief*. (Tr. Exhibit 9, Sept. 23, 2016.) This filing included portions of Dean Chase and Sandra Chase's testimonies, which were marked as "Exhibit G" and "Exhibit H," respectively, and portions of text messages that had been produced and designated in the first document production of August 28, 2015, which was marked as "Exhibit I." (*Id.*) Mr. Manookian testified he filed these exhibits under seal. (Hr'g Tr. 133:20-135:1, Sept. 23, 2016; Tr. Exhibit 10, Sept. 23, 2016.)

25. On October 20, 2015, the Court held a hearing to resolve the urgent discovery issues in this case. At this hearing, Mr. Crider of Waller, on behalf of all Non-Parties, made an oral motion to ensure all of the Non-Parties' materials and deposition testimonies that had been designated confidential, as well as Mr. Manookian's *Response* of October 19, 2015 and attachments thereto, be treated as confidential and remain under seal pending the hearing set on October 30, 2015 for the *Non-Parties' Joint Motion for Entry of a Protective Order* of September 14, 2015. At the conclusion of the hearing, this Court granted Mr. Crider's oral motion to seal all of the related documents and testimonies and considered this information confidential (hereinafter referred to as the "*First Oral Order.*")[14]

26. On October 21, 2015, Mr. Manookian sent an email to the other attorneys in this case and stated he, "took precautions to ensure [the designated confidential material] were [sic] provided only to the Court and attorneys for the parties to this action. You apparently received them nonetheless. To the extent these materials surface outside of the seal, it is important to know who has been disclosing them and to what additional non-parties they have been disclosed." (Tr. Exhibit 10, Sept. 23, 2016.)

27. On October 26, 2015, Mr. Manookian filed *Defendants' Response to Non-Parties' Joint Motion for Entry of a Protective Order of October 26, 2015*, arguing the Court should not uphold the Non-Parties' confidential designations because the Non-

---

[14] This *First Oral Order* was memorialized by the Court's *Order on Plaintiff's Expedited Motion for Sanctions, Protective Order, and Other Related Relief and Expedited Motion to Compel* entered on November 7, 2015.

Page 15 of 122

Parties had breached the *Agreed Protective Order* when they designated their production as confidential.

### (2)    This Court's Second Oral Order of October 30, 2015:

28. At the hearing on October 30, 2015, this Court rejected the arguments presented by Mr. Manookian and orally granted the Non-Parties' *Joint Motion*, and so doing the Court ordered: (1) all pleadings or documents containing, attaching, or referencing documents, testimony, or information designated as confidential by the Non-Parties were to be filed under seal; and (2) adopted and modified the *Agreed Protective Order* to permit the Non-Parties to designate all materials as confidential in the manner set forth by the Non-Parties (hereinafter referred to as the "*Second Oral Order*.")[15]

### (3)    This Court's *Order on Plaintiff's Expedited Motion for Sanctions, Protective Order, and Other Related Relief and Expedited Motion to Compel* entered on November 7, 2015

29. On November 7, 2015, the Court entered the *Order on Plaintiff's Expedited Motion for Sanctions, Protective Order, and Other Related Relief and Expedited Motion to Compel*, memorializing its *First Oral Order* from the hearing on October 20, 2015, which stated, in pertinent part, as follows:

> Non-Parties D.F. Chase, Inc., Dean Chase, and Sandra Chase's Oral Motion to Seal is **GRANTED** as follows:
>
> 4. a.    Defendants' Response to Plaintiff's Expedited Motion for Sanctions, Protective Order, and Other Related Relief as well as the Exhibits attached thereto shall be sealed pending hearing of Non-Parties' Motion for Protective Order;
>
> b.    All materials previously produced by Nonparties D.F. Chase, Inc., Dean Chase, and Sandra Chase in this action shall be

---

[15] This *Second Oral Order* was memorialized by the Court's *Order* entered on November 6, 2015.

treated as confidential and only filed under seal pending hearing of Nonparties' Motion for Protective Order;

c. All transcripts and video of deposition testimony previously given by Dean Chase and Sandra Chase shall be treated as confidential and only filed under seal pending hearing of Nonparties' Motion for Protective Order;

*Order on Plaintiff's Expedited Motion for Sanctions, Protective Order, and Other Related Relief and Expedited Motion to Compel* entered on November 7, 2015, p. 2-3.[16]

### (4)   This Court's *Order* entered on November 6, 2015:

30. On November 6, 2015, the Court memorialized its *Second Oral Order*, which

provided in pertinent part:

It appearing to the Court, based upon the pleadings and record before the Court and arguments of counsel, that the Motions submitted on behalf of the Nonparties . . . should be and hereby are GRANTED. The Court Orders as follows:

. . .

3. Any pleading or document filed or submitted to the Court that contains, attaches, or refers to documents, testimony, or information designated as confidential by the Nonparties      must be filed or submitted under seal;

4. The Agreed Protective Order is modified to permit the Nonparties to designate documents as "confidential" in the manner in which such designations have been made, and any and all documents so marked by the Nonparties shall be protected from disclosure consistent with the terms of the Agreed Protective Order and in accordance with this Order;

. . . .

*Order* of November 6, 2015.

---

[16] The Court notes this *Order* was filed on November 9, 2015.

31. The Court finds, as of October 20, 2015, all of the materials designated as confidential by the Non-Parties in their document production and the deposition testimonies of Dean Chase and Sandra Chase were ordered to be kept confidential by this Court. The subsequent oral and typewritten *Orders* entered by this Court relating to the *Agreed Protective Order* shall hereinafter be referred to collectively as "the Court's *Orders*."

### D. Findings of Fact Regarding the Lawsuit Styled *Jonathan King v. Dean Chase*, Case No. 16-0030-BC in Davidson County Chancery Court

32. In December of 2015, despite the plain terms of the *Agreed Protective Order* and the multiple *Orders* entered by this Court, as explained above, Mr. Manookian and Mr. Hammervold, knowingly, willfully, and intentionally and in blatant disregard of this Court's *Orders*, began using the Non-Parties' confidential materials in their representation of Jonathan King (hereinafter referred to as "Mr. King"), the Plaintiff in the lawsuit styled *Jonathan King v. Dean Chase*, Case No. 16-0030-BC, in the Davidson County Chancery Court (hereinafter referred to as "*King v. Chase*").

33. On December 30, 2015, Mr. King sent an email to John Palmer (hereinafter referred to as "Mr. Palmer"), another non-party to this present case, in which he discussed a potential lawsuit against Dean Chase and copied Mr. Manookian. The email Mr. King wrote on December 30, 2015, stated, in pertinent part:

> I believe David mentioned that I am vigilantly pursing a cause of action for breach of fiduciary duties on behalf of the law firm [Waller] and Dean [Chase] and attorney malpractice.
>
> **I was put in touch with an extremely competent and savvy attorney in Nashville who, through discovery, has ascertained all communications between the law firm [Waller], Dean [Chase] and**

**David [Chase]** and has intimate knowledge of with [sic] what really took place behind the scenes.

. . . .

**You will be shocked to read the communications between Steven and Dean,** always putting Dean's personal interest first and never operating out of the best interest of the group.

(Tr. Exhibit 4, Nov. 9, 2017.) (emphasis added)

34. The Court finds this email was sent after the Court entered its *Order* of November 6, 2015. (*Id.*) Also, this email clearly shows Mr. Manookian disclosed the confidential text messages to Mr. King. (*Id.*)

35. Right on cue, on December 31, 2015, Mr. Manookian sent a demand letter on behalf of Mr. King to a Waller attorney, Steven Kirkham, Esq. (hereinafter referred to as "Mr. Kirkham"), which requested to examine, copy, and audit the books and records of NV Partners, a Tennessee partnership. (Tr. Exhibit 13, Sept. 23, 2016.)

36. Additionally, in this letter, Mr. Manookian threatened various lawsuits against Waller, as well as Non-Parties, Dean Chase and D.F. Chase, Inc., as Mr. Manookian said, committing fraud, conversion, breach of fiduciary duty, legal malpractice, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (*Id.*) Mr. Hammervold was copied as co-counsel on Mr. Manookian's demand letter. (*Id.*)

37. On January 6, 2016, Mr. Manookian sent another email to certain attorneys at Waller regarding the threatened litigation against Dean Chase and accused Waller of fraud and attempting to cover up criminal activity relating to NV Partners, citing "80,000 pages of documents evidencing the same" that Mr. Manookian said had been produced by counsel for the Non-Parties in this case and that were "preserved in

[Mr. Manookian's] custody."[17] (Tr. Exhibit 15, Sept. 23, 2016.) (emphasis added) Mr. Hammervold was again copied on this email exchange. (Id.)

38. On January 12, 2016, Mr. Manookian and Mr. Hammervold, acting as co-counsel, filed a Complaint against Dean Chase in the *King v. Chase* case in the Chancery Court of Davidson County, Case No. 16-0030-II. (Tr. Exhibit 16, Sept. 23, 2016.)

39. On February 3, 2016, Mr. Manookian and Mr. Hammervold filed *Plaintiff's Response to Defendant's Motion for Protective Order*, attaching as Exhibit 1 a copy of an unsigned Agreement of Partnership of NV Partners, which had been produced to Mr. Manookian and Mr. Hammervold by the Non-Parties in this case and had been marked confidential pursuant to the *Agreed Protective Order* and the *Orders* of this Court. (Tr. Exhibit 17, Sept. 23, 2016.)[18]

40. Subsequently, Mr. Manookian and Mr. McGuire attended a meeting with Mr. Charles Malone together with other counsel of record regarding the *King v. Chase* case, at which they cited to documents by Bates-number supporting the threatened litigation against Dean Chase.[19] (Hr'g Tr. 291:8-293:3, Sept. 23, 2016.) These documents were again the very documents marked confidential pursuant to the *Agreed Protective Order* and the above *Orders* of this Court. (Id.)

41. As to the question of whether the *King v. Chase* case in Davidson County is related to these current court proceedings in Williamson County, on October 28, 2016,

---

[17] *See* numbered ¶ 15 above, in which Ms. Fenelon explained the August 28, 2015 document production included 17,648 of documents representing 78,000 pages. (Tr. Exhibit 5, Sep. 23, 2016.)
[18] Mr. Manookian and Mr. Hammervold contend this document was in the possession of Mr. King and is not the confidential material submitted by the Non-Parties.
[19] At the hearing on September 23, 2016, Mr. McGuire testified he attended a meeting with his co-counsel, Mr. Manookian, wherein they informed the opposing counsel in the *King v. Chase* case of the documents they believed to support their threatened litigation. (Hr'g Tr. 291:8-17, Sept. 23, 2016.) Mr. McGuire claimed this was a discovery meeting in the *King v. Chase* case. (Hr'g Tr. 292:3-24, Sept. 23, 2016.)

564

Chancellor Ellen H. Lyle entered a *Scheduling Order* in *King v. Chase*, finding as follows: "**the Court documents that Plaintiff's Counsel [Mr. Manookian] stated that this lawsuit and the Williamson County lawsuits are not related.**" (Tr. Exhibit 1, Nov. 9, 2017.) (emphasis added)  Mr. Manookian and Mr. Hammervold were copied on this *Scheduling Order* as counsel for Mr. King. (*Id.*)

### E.    Findings of Fact Regarding the News Media Disclosure of Possession of Confidential Material

42. On January 20, 2016, through an email from Mr. Phillip Robertson, Plaintiff, David Chase, notified counsel for the Non-Parties and Defendants he had recently received a phone call from Jeremy Finley (hereinafter referred to as "Mr. Finley"), an investigative reporter at News Channel 4 WSMV, wherein Mr. Finley disclosed he was in receipt of certain discovery materials from this case, which included confidential text messages produced by the Non-Parties and the confidential deposition testimonies of Dean Chase and Sandra Chase. (Tr. Exhibit 11, Sept. 23, 2016.)

43. On that same day, in an email exchange among Mr. Manookian to Mr. Phillip Robertson, copying counsel Brittany Bartkowiak, David Hooper, Mark Hammervold, Michael Kohler, Travis Thompson, Bob Parsley, Rob McGuire, Brian Cummings, Frances Fenelon, Marcus Crider and Heath Edwards, concerning the report of the leaked, confidential material, Mr. Manookian wrote, "**[d]id Mr. Finley indicate who the 'source' may be? I would note that [my [Manookian's] client Defendant] Clayton McKenzie never agreed to keep any materials confidential; nor was he**

required to at any time prior to October 20, 2015 . . . "[20] (*Id.*) (emphasis added) Mr. Hammervold, co-counsel for Mr. McKenzie, was copied on the January 20, 2016 email. (*Id.*)

44. On January 21, 2016, Mr. Finley also contacted Davidson County District Attorney General Glenn R. Funk (hereinafter referred to as "General Funk") to discuss a news story he planned to broadcast concerning this case. (Hr'g Tr. 222:11-229:7, Sept. 23, 2016; Tr. Exhibit 21, Sept. 23, 2016.) Subsequently, Mr. Finley submitted a series of emails to General Funk for the basis of his news story, which included (1) Mr. Manookian's October 19, 2015 *Response to Plaintiff's Expedited Motion for Sanctions, Protective Orders and Other Relief*; (2) the deposition transcript of Dean Chase and Sandra Chase of September 16, 2015; and (3) text messages produced by the Non-Parties in the original document discovery.[21] (Tr. Exhibit 21, Sept. 23, 2016.)

45. Notably, the Dean Chase and Sandra Chase deposition transcripts sent to General Funk from Mr. Finley had the exact same document identification marker as "Exhibit G" and "Exhibit H" to Mr. Manookian's *Defendants' Response to Plaintiff's Expedited Motion for Sanctions, Protective Orders and Other Relief* filed on October 19, 2015.[22] **As stated above, these documents were ordered to be under seal at this time in the proceedings, and by Mr. Manookian's own account he had "[taken] precautions to ensure [the designated confidential materials] were**

---

[20] This statement is contradictory to Mr. Manookian's prior email to Ms. Fenelon in which he clearly acknowledged the *Agreed Protective Order* was in effect and binding on him and his clients and stated, "I agree that the Order is binding on me and my clients at the time it is signed with permission as opposed to entered by the Court." (Tr. Exhibit 3, Sept. 23, 2016.)

[21] The Court notes these attachments were designated "confidential" by the *Agreed Protective Order* and the *Orders* entered by this Court.

[22] *See* numbered ¶ 24 above; Trial Exhibit 9, Sept. 23, 2016.

566

provided only to the Court and attorneys for the parties to this action." (emphasis added) (Tr. Exhibit 10, Sept. 23, 2016.) The Court finds Mr. Manookian's alleged "precautions" were thwarted by News Channel 4 WSMV's receipt of these documents, which only the Court and the attorneys in this case were in possession of and privileged to view.

46. In addition, on January 29, 2016, Phil Robertson, Esq. (hereinafter referred to as "Mr. Robertson"), the attorney for Plaintiff, David Chase, forwarded two emails dated January 27, 2016 from Mr. Finley to counsel for the Non-Parties and Parties. (*See Order* of March 29, 2016, p. 8.) The first email attached four pages of text messages the Non-Parties had designated and labeled as confidential, and which were previously included as part of "Exhibit I" of Mr. Manookian's *Response to Plaintiff's Expedited Motion for Sanctions, Protective Orders and Other Relief* of October 19, 2015. (*Id.*; Hr'g Tr. 129:20-132:3, Sept. 23, 2016; Exhibit 9, Sept. 23, 2016.)

47. The second email contained ten pages of excerpts from the transcripts of Dean Chase's and Sandra Chase's depositions, with each such deposition's cover page also showing the "Exhibit G" and "Exhibit H" stickers from Mr. Manookian's *Response to Plaintiff's Expedited Motion for Sanctions, Protective Orders and Other Relief* of October 19, 2015. (*Id.*) Based upon this evidence, the Court finds Mr. Finley was in possession of the exhibits to Mr. Manookian's *Response to Plaintiff's Expedited Motion for Sanctions, Protective Orders and Other Relief* of October 19, 2015 and attached exhibits. Who provided the confidential information to Mr. Finley and when this disclosure was made is still to be determined and will be shown in detail below.

**F.    Findings of Fact Regarding News Channel 4 WSMV's
       Publication of Confidential Discovery Materials**

48. On February 3, 2016, Mr. Finley and News Channel 4 WSMV published a story in

    which the Non-Parties' confidential materials and deposition testimonies were

    released. (Tr. Exhibit 2, Nov. 9, 2017.) The following confidential material and

    deposition testimonies were broadcasted: (1) from the 2:29 to 2:47 minute mark, Mr.

    Manookian's *Response to Plaintiff's Expedited Motion for Sanctions, Protective

    Orders and Other Relief* of October 19, 2015 is shown and discussed by Mr.

    Finley;[23] (2) from the 2:48-3:02 and 4:56-5:48 minute marks, portions of the text

    messages that were previously included as part of "Exhibit I" of Mr. Manookian's

    *Response to Plaintiff's Expedited Motion for Sanctions, Protective Orders and Other

    Relief* of October 19, 2015 are shown and discussed by Mr. Finley; and (3) from the

    4:21-4:55 minute mark, the transcripts of Dean Chase's and Sandra Chase's

    depositions are shown, with each deposition's cover page showing the "Exhibit G"

    and "Exhibit H" stickers from Mr. Manookian's October 19, 2015 *Response to

    Plaintiff's Expedited Motion for Sanctions, Protective Orders and Other Relief.* (*Id.*)[24]

**G.    Findings of Fact Regarding News Channel 5 WTVF and the *Nashville
       Scene's* Publication of Confidential Discovery Materials**[25]

49. On February 3, 2016 and February 4, 2016, News Channel 5 WTVF and the

    *Nashville Scene* published separate stories containing the confidential materials and

---

[23] The Court also notes Mr. Manookian is featured in the broadcast video giving what appears to be an interview.

[24] Once again, the Court reiterates these confidential materials and deposition testimonies were designated as confidential by the *Agreed Protective Order* and the Court's *Orders*.

[25] The Court took judicial notice that News Channel 5 WTVF, News Channel 4 WSMV, and the *Nashville Scene* made publications, but did not make a determination as to whether the information was confidential at that time. (Hr'g Tr. 211:2-212:16; 233:2-7, Sept. 23, 2016; Hr'g Tr. 19:13-19, Nov. 9, 2017; Tr. Exhibit 2, Nov. 9, 2016.)

deposition testimonies of Dean Chase and Sandra Chase. (Hr'g Tr. 211:2-212:16; 233:2-7, Sept. 23, 2016; Hr'g Tr. 19:13-19, Nov. 9, 2017; Tr. Exhibit 2, Nov. 9, 2016.)

50. In the NewsChannel 5 WTVF story, from the 0:00-0:17, 1:41-1:49, 2:31-3:20, 3:34-4:11, and 5:19-5:49 minute marks, the video recordings of the depositions of Dean Chase and Sandra Chase are shown and discussed by Phil Williams. (Tr. Exhibit 2, Nov. 9, 2017.) Additionally, from the 2:00-2:17, 4:20-4:46, 5:10-5:19, and 5:58-6:13 minute marks, portions of the text messages that were previously included as part of "Exhibit I" of Mr. Manookian's October 19, 2015 *Response to Plaintiff's Expedited Motion for Sanctions, Protective Orders and Other Relief* are shown and discussed by Phil Williams. (*Id.*)

## H.    Findings of Fact as to the Subsequent Proceedings

51. On February 25, 2016, the Non-Parties filed a *Motion for Sanctions* based primarily on two violations of the *Agreed Protective Order* and the Court's *Orders*: (1) the dissemination of the Non-Parties' confidential discovery materials and deposition testimonies to the news media; and (2) the use of the Non-Parties' confidential discovery materials in the *King v. Chase* case and other threatened litigation. The Non-Parties requested the Court conduct an investigation to determine which of the parties and/or counsel for the parties violated the *Agreed Protective Order* and subsequent Court *Orders* and to levy all necessary sanctions against the violator(s).

52. On March 7, 2016, Miller & Martin, PLC and Defendant Cho filed a *Response* to the *Non-Parties' Motion for Sanctions* that contained the following sworn representations from both Bob Parsley, Esq. as an Officer of the Court and Defendant Cho: (1) they did not disseminate, directly or indirectly, the Non-Parties' confidential discovery

materials to the media, the public, or any other prohibited persons and (2) they do not know who disseminated any confidential discovery materials to the news media. (*See Defendant Andy Cho's Response to Various Motions Set for Hearing on March 10, 2016.*)

53. On March 7, 2016, David T. Hooper, Esq. of Hooper, Zinn & McNamee, PLLC and Defendant Ritzen, filed a *Response* to the *Non-Parties' Motion for Sanctions* that contained the following sworn representations from both David Hooper as an Officer of the Court and Defendant Ritzen:(1) they did not disseminate, directly or indirectly, the Non-Parties' confidential discovery materials to the media, the public, or any other prohibited personal and (2) they do not know who disseminated any confidential discovery materials to the news media. (*Response of Jason Ritzen to Motion for Sanctions of Non-Parties Dean Chase, Sandra Chase, and D.F. Chase, Inc.* of March 7, 2016.)

54. On March 7, 2016, Mr. Manookian, together with the assistance of Mr. Hammervold, executed a different strategy, and began what this Court can only describe as a knowing, willful, and intentional course of conduct to deceive and defraud this Court in order to avoid punishment for their actions and to gain personal advantage in this case and the *King v. Chase* lawsuit. First, Mr. Manookian filed a *Motion to Strike and Response to Non-Parties' Motion for Sanctions*, asserting the Non-Parties' *Motion for Sanctions* was in reality a petition for contempt that should be stricken because the *Motion* does not even identify who the Non-Parties believe should be held in contempt. Also, Mr. Manookian argued the Court had "no authority" to sanction the offending individuals.

55. Second, in conjunction with Mr. Manookian's filing of his *Motion to Strike*, Mr. Hammervold failed to file a response to the Non-Parties' *Motion for Sanctions* prior to the Court-ordered March 10, 2016 hearing date. Mr. Hammervold never asked for an extension of time to file his ordered response.

56. Third, on March 10, 2016, the Court held a hearing regarding the *Non-Parties' Motion for Sanctions.* However, Mr. Manookian failed to appear. (*See Non-Parties' Notice of Filing of Court Transcript* of April 26, 2017, Exhibit A, March 10, 2016, Hr'g Tr. 11:21-12:11; 29:23-24.) Mr. Hammervold did appear and made arguments on behalf of Mr. Manookian as well as himself. (*Id.* at 25:21-28:2; 51:18-54:18.) It is noteworthy Mr. Hammervold argued Defendant, Clayton McKenzie, whom Mr. Hammervold and Mr. Manookian represented, was not bound by the *Agreed Protective Order;* the *Agreed Protective Order* allowed the Non-Parties' confidential materials to be used in related litigation, and the sanctions sought by the Non-Parties were inappropriate. (*Id.* at 25:21-28:2; 29:23-24.) Once again, this argument is contradictory to Mr. Manookian's prior email to Ms. Fenelon in which he clearly acknowledged the *Agreed Protective Order* was in effect and binding on him and his clients and stated, "I agree that the Order is binding on me and my clients at the time it is signed with permission as opposed to entered by the Court." (Tr. Exhibit 3, Sept. 23, 2016.)

57. After oral arguments, this Court explained it did not wish to rule on the *Motion for Sanctions* at the present time, stating:

> But I really think I want to give everyone an opportunity either to certify they had nothing to do with it or come forward, say, "Yeah, I did."

This should not have to be an investigation. Really shouldn't. If it involves lawyers violating an order, the Court should not have to be required to do that. But if that's what it takes, that's what we'll do. I believe that a lawyer should, as a member of the bar -- and under some very stringent rules and regulations, should certify that they had nothing to do with it. If they cannot, then they simply cannot.

(*Id.* at p. 48:20-49:7.)

58. Upon review of the *Motion for Sanctions*, the Court fully explained to all of the attorneys the Court should not be required to investigate these types of situations. Thus, the Court strongly urged and implored all of the attorneys, as officers of the Court, to come forward and admit to violating the *Agreed Protective Order* and the Court's subsequent *Orders*. Regrettably, the guilty party(ies) remained silent, refused come forward and to tell the truth, and continued to actively perpetrate a continuing fraud upon this Court, the attorneys, and the parties in this case and thus traveled down an expensive and unnecessary path to uncover the truth, despite this Court's adamant attempts to persuade the guilty party(ies) to admit to their violations of the Court's *Orders* to prevent an extremely time-consuming project for this Court and the litigants, not to mention an expensive undertaking for the Non-Parties.[26]

59. Accordingly, the Court took the *Non-Parties' Motions for Sanctions* under advisement to begin a lengthy and time-consuming, fact-finding review of the evidence and issue a written order which would set forth the result of the Court's review into the Non-Parties' *Motion for Sanctions*.

60. On March 17, 2016, Mr. Hammervold filed a *Supplemental Response to NonParties* [sic] *Motion for Sanctions* on behalf of Defendants, Lovrenovic, Bryan Everett, Susan

---

[26] As Senator Howard Henry Baker, Jr., a former Republican United States Senator from Tennessee, who served as the Senate Majority Leader and White House Chief of Staff under President Ronald Reagan, and who was also the ranking minority member of the Senate committee which investigated the Watergate scandal, stated, "[i]t is almost always the cover-up rather than the event that causes trouble."

Martin, and Clayton McKenzie. In the *Response*, Mr. Hammervold stated as an Officer of the Court: (1) he had not disseminated any of the Non-Parties' confidential discovery materials or depositions to the media, any unauthorized third party, or to his clients; and (2) asserted his and Mr. Manookian's claims that the use of the Non-Parties' confidential discovery materials in *King v. Chase* were not wrongful because such litigation should be considered "future related litigation" under the *Agreed Protective Order.*[27]

61. On March 17, 2016, Mr. Manookian filed (*in camera* with the Court only) a *Declaration* under penalty of perjury, to which Mr. Manookian stated (1) he "had not disseminated confidential discovery materials in this case in violation of a court order;" (emphasis added) (2) that between October 2, 2015 through October 8, 2015, he had given and/or discussed certain of the Non-Parties' discovery materials to/with David Raybin, Kim Hodde, and Eli Richardson, three attorneys who do not represent any of the Parties in this case, as well as law enforcement; and (3) he was only disclosing such dissemination because it prevented him from "broadly certify[ing] that I have not disseminated portions of the Non-Parties' discovery materials to third parties." (*Declaration of Brian Manookian* filed In-Camera on March 17, 2016.)

62. At this time in the proceedings, Mr. Manookian had the opportunity to come forward and provide to the Court information as to how the media received the confidential materials. Instead, Mr. Manookian submitted to this Court the only people he had

---

[27] Mr. Hammervold contended the *Agreed Protective Order* permitted the use of protected materials in "future related litigation." Thus, he submitted the *King v. Chase* case constituted "future related litigation." However, the Court notes this was also after Mr. Manookian argued to Chancellor Lyle in the *King v. Chase* case in Davidson County the cases were not related. (*See* numbered ¶ 41 above; Tr. Exhibit 1, Nov. 9, 2017.)

Page 29 of 122

disclosed the confidential material to were with the three attorneys mentioned above and law enforcement. However, as will be thoroughly examined below, this was a complete and blatant lie made under oath (with the penalty of perjury), which is evident by Mr. Manookian's subsequent admission to this Court at the evidentiary hearing on September 23, 2016, that <u>he did release the confidential information to the news media</u>.

63. On March 29, 2016, the Court entered an *Order* on the Non-Parties' *Motion for Sanctions*, finding the allegations in the Non-Parties' *Motion* were "supported by fact and credible affidavit testimony, warranting serious consideration by the Court." (*Order* of March 29, 2016, at p. 1-2.) Furthermore, the Court declined at that time to grant the Non-Parties' *Motion for Sanctions*, but instead ruled the Non-Parties should file detailed motions for sanctions and/or petitions for contempt if they wished to pursue the matter at a later date. (*Id.*)

I. **Findings of Fact as to the Non-Parties' *Petition for Contempt and Motion for Sanctions* of April 11, 2016**

64. On April 11, 2016, the Non-Parties filed their *Petition for Civil Contempt and Motion for Sanctions* (hereinafter referred collectively as the "*Petitions*") against Mr. Manookian and Mr. Hammervold, as well as against their respective law firms.[28]

65. In furtherance of Mr. Manookian's and Mr. Hammervold's attempts to defraud the Court, on April 21, 2016, Mr. Manookian filed a *Response* to the Non-Parties' *Petitions*, arguing the *Petitions* should be denied because they constitute "**rank unsupported hypothesizing**," "**speculation and shameless, Johnny-come-lately histrionics**," and "**assorted real and imagined conduct**." (emphasis added) (*Brian*

---

[28] The Court notes the Non-Parties, CK Global, LLC and NV Music Row, LLC, also filed a separate *Motion for Sanctions* on April 11, 2016.

*Manookian and Cummings Manookian PLC's Response to Non-Parties' Petition for Contempt and Motion for Sanctions* of April 21, 2016, at p. 1-2; 8.) On that same day, Mr. Hammervold also filed a *Response to the Non-Parties Petitions*, in which Mr. Hammervold noted his previous representations he had not disclosed any materials to the media or third parties and added he did **"not know how the media obtained the protected materials."** (Tr. Exhibit 23, n. 2, Sept. 23, 2016) (emphasis added). Also, Mr. Hammervold represented he had **"not disclosed, referenced, filed, or otherwise 'used'** *any* **of the Protected Materials that the Non-Parties (mass) designated as confidential in the** *King v. Chase* **case."** (*Id.* at p.1.) (emphasis added).

66. After the conclusion of the proof in this matter and ample time to thoroughly examine the evidence, the Court has been utterly dumbfounded by Mr. Manookian's willingness to attempt to mislead the Court from uncovering his violations of the Court's *Orders* by any means necessary, and even to go so far, as he did here, to claim the Non-Parties' *Petitions* were merely "rank unsupported hypothesizing" when he very well knew he was the one who released the information to the news media. Also, the Court notes at this point Mr. Hammervold lied to the Court because he and Mr. Manookian "used" the confidential material in their representation of Mr. King in the *King v. Chase* case, which he was co-counsel with Mr. Manookian.[29]

---

[29] *See* numbered ¶¶ 32-41 above (showing Mr. Manookian's and Mr. Hammervold's use of the confidential material in their representation of Mr. King.)

**Findings of Fact Regarding Evidentiary Hearing of September 23, 2016**

67. On September 23, 2016, the Court held the first day of the evidentiary hearing on the Non-Parties' *Petitions*. Prior to the beginning of the hearing, the Court denied *Respondents Mark Hammervold, Hammervold PLC, Brian Manookian, and Cummings Manookian's Joint Motion to Dismiss Contempt Petition and Motion for Sanctions* filed on September 16, 2016. In their *Joint Motion to Dismiss*, Mr. Manookian and Mr. Hammervold argued the Non-Parties' *Petition* was a "circus-like mass-inquisition" and "chas[ing] a wild goose" but also that it was "abundantly clear that [the Non-Parties] have no information to support their speculative allegations." (*Mark Hammervold, Hammervold PLC, Brian Manookian, and Cummings Manookian's Joint Motion to Dismiss Contempt Petition and Motion for Sanctions* of September 16, 2016, p. 2-3.)

68. Once again, Mr. Manookian and Mr. Hammervold continued their ongoing fraud upon the Court by their adamant insistence the investigation into the release of the confidential information was nothing more than a "wild goose chase." However, this Court finds, based upon Mr. Manookian's own testimony below, the apparent "wild goose" had been caught.

### (1)   Mr. Manookian's Testimony

69. At the hearing on September 23, 2016, Mr. Manookian was placed under oath and gave the following testimony in response to cross-examination: (1) Mr. Manookian admitted he disclosed portions of the Non-Parties' confidential discovery materials to General Funk on September 1, 2015;[30] (2) Mr. Manookian admitted he disclosed

---

[30] (Hr'g Tr. 109:13-110:11, Sept. 23, 2016; Tr. Exhibit 4, Sept. 23, 2016.)

portions of the Non-Parties' confidential discovery materials and deposition testimonies to Mr. Finley of News Channel 4 WSVM; however, Mr. Manookian claimed he physically delivered the materials to Mr. Finley sometime between October 4, 2015 through October 6, 2015;[31] (3) Mr. Manookian admitted he disclosed portions of the Non-Parties' confidential discovery materials and deposition testimonies to Phil Williams of News Channel 5 WTVF. However, Mr. Manookian claimed he emailed the deposition testimonies to Mr. Williams on October 6, 2015, but he hand-delivered the video portions of the confidential discovery materials in the same time period;[32] (4) Mr. Manookian admitted he disclosed portions of the Non-Parties' confidential discovery materials and deposition testimonies to Jim Ridley at the *Nashville Scene* between October 4-6, 2015, and he physically delivered the materials to Mr. Ridley;[33] (5) Mr. Manookian admitted he disclosed portions of the Non-Parties' confidential deposition testimonies to attorneys David Raybin, Kim Hodde, and Eli Richardson in the same early October 2015 period because he wanted to find out from them if he had an affirmative obligation to present such information to law enforcement;[34] Mr. Manookian failed to advise any of these attorneys about the *Agreed Protective Order* when seeking such advice, yet, each attorney, at least according to Mr. Manookian, still advised him he did not have an affirmative obligation to disclose the Non-Parties' confidential deposition testimonies to law enforcement;[35] and (6) Mr. Manookian testified he already disclosed portions of the Non-Parties' confidential deposition testimonies to the U.S.

---

[31] (Hr'g Tr. 107:3-10; 159:20-160:13; 161:5-10, Sept. 23, 2016.)
[32] (Hr'g Tr. 107:11-17; 160:14-25; 161:5-10, Sept. 23, 2016.)
[33] (Hr'g Tr. 107:18-24; 108:2-4, Sept. 23, 2016.)
[34] (Hr'g Tr. 126:7-127:13, Sept. 23, 2016.)
[35] (*Id.*)

Attorney's Office and Federal Bureau of Investigation ("FBI") on October 4, 2015, after he had consulted with his attorney, if in fact Mr. Manookian can be believed as to his assertions.[36]

70. Mr. Manookian provided no credible information in any form to support his statements, and the Court seriously doubts the veracity of Mr. Manookian's statements set forth in numbered paragraph 69 above.

### (2)   Mr. Hammervold's Testimony

71. At the hearing on September 23, 2016, Mr. Hammervold was placed under oath and gave the following testimony in response to cross-examination: (1) Mr. Hammervold testified he learned Mr. Manookian had given the Non-Parties' confidential documents and deposition testimonies to the news media a few days before the hearing on September 23, 2016;[37] (2) Mr. Hammervold testified, prior to his new found knowledge of Mr. Manookian's disclosure before the hearing, he had never asked Mr. Manookian, his co-counsel, whether he gave the confidential documents or the deposition videos to the media;[38] (3) Mr. Hammervold testified he was acting as co-counsel with Mr. Manookian when Mr. Manookian explicitly sent emails relating to confidential documents to opposing counsel in the *King v. Chase* case and when Mr. Manookian and Mr. McGuire cited these confidential documents at a

---

[36] (Hr'g Tr. 124:17-21, Sept. 23, 2016.)
[37] (Hr'g Tr. 257:24-258:14, Sept. 23, 2016.) Based upon Mr. Hammervold's testimony of only finding out about Mr. Manookian's disclosure of the confidential information a few days prior to the hearing, the Court is perplexed as to why Mr. Hammervold did not amend, strike, or make a statement at the outset of the hearing correcting his *Joint Motion to Dismiss*, which included assertions the *Petitions* were futile and unsubstantiated. Instead of taking such actions, Mr. Hammervold stood by his *Joint Motion to Dismiss*, which included assertions of which he knew to be false.
[38] (Hr'g Tr. 257:24-258:2, Sept. 23, 2016.)

meeting with opposing counsel;[39] and (3) Mr. Hammervold admitted Mr. Manookian, with Mr. Hammervold as his co-counsel, had filed in *King v. Chase* a copy of the Agreement of Partnership of NV Partners, which had been produced to them by the Non-Parties in this present case and had been marked confidential pursuant to the *Agreed Protective Order* and subsequent *Orders* of this Court on October 20, 2015 and October 30, 2015.[40]

### K. Findings of Fact Regarding Attempts to Conclude Evidentiary Hearing on the Petitions

72. The evidentiary hearing on the *Petitions* was not completed on September 23, 2016, and the Court scheduled the second day of the hearing for November 7, 2016 to permit Mr. Manookian and Mr. Hammervold to introduce additional evidence in their defense.

73. Regrettably, this case was set to be heard after another case also set on November 7, 2016, which inevitably exceeded its allotted time. Thus, the second day set for the remainder of the evidentiary hearing did not resume on November 7, 2016.

74. After three months of delay, on February 16, 2017, the Non-Parties filed the *Non-Parties' Motion to Close Liability Hearing on Non-Parties' Petition for Contempt and Motion for Sanctions*. This *Motion* was set to be heard on March 2, 2017.[41]

---

[39] (Hr'g Tr. 156:19-159:2; 267:2-4; 269:5-272:7; 289;21-24; 291:8-19; 292:22-24, Sept. 23, 2016: Tr. Exhibits 13, 15, and 16, Sept. 23, 2016.)

[40] (Hr'g Tr. 266:23-267;122; 287:24-289:20, Sept. 23, 2016; Tr. Exhibit 17, Sept. 23, 2016.) The Court notes Mr. Hammervold pointed out Mr. King is a signatory to this Agreement, and he believed Mr. King was entitled to use the document in the *King v. Chase* case in the Davidson County Chancery Court.

[41] The *Non-Parties' Motion to Close Liability Hearing on Non-Parties' Petition for Contempt and Motion for Sanctions* was "specially set" by this Court to be heard on March 2, 2017 at 9:00 a.m. via an email from this Court's Judicial Legal Assistant, Deborah M. Rubenstein, PLS, to all counsel of record dated February 3, 2017 at 11:28 a.m., a copy of which is annexed hereto as **Exhibit "A"** and made a part hereof. This Court never received any communication in any form whatsoever by email, letter, or in any other way through pleadings or otherwise stating that either Mr. Manookian or Mr. Hammervold would be attending the hearing on March 2, 2017. This Court was convinced the non-communication from both attorneys was yet another delay tactic. Mr. Hammervold never responded to Mr. Malone's numerous

75. On March 2, 2017, the Court held a hearing on the *Non-Parties' Motion to Close Liability Hearing on Non-Parties' Petition for Contempt and Motion for Sanctions*. However, both Mr. Manookian and Mr. Hammervold failed to appear. In an attempt to give Mr. Manookian and Mr. Hammervold every opportunity to be heard regarding the evidentiary hearing, the Court temporarily suspended the hearing to reach Mr. Manookian and Mr. Hammervold and inquire as to their absence. Mrs. Deborah Rubenstein, this Court's Judicial Legal Assistant (hereinafter referred to as "Mrs. Rubenstein"), acting on behalf of the Court and pursuant to the direction of the Court, vigorously attempted to contact Mr. Manookian and Mr. Hammervold to discover any reason for their failures to appear. (*Notice of Filing* of April 26, 2017, Exhibit C, Hr'g Tr. 19:11-22:18; 24:2-27:17, Mar. 2, 2017.) Mrs. Rubenstein sent emails to the known email addresses owned by Mr. Manookian and Mr. Hammervold. (*Id.* at 26:1-27:16.) Despite this Court's efforts to contact Mr. Manookian and Mr. Hammervold by leaving numerous telephone messages as well as emails, neither Mr. Manookian nor anyone working on his behalf responded to confirm why he failed to appear. (*Id.*)

76. Mrs. Rubenstein was eventually able to make contact with Mr. Hammervold. (*Id.* at 27:18-29:4.) Mr. Hammervold, who was in Chicago, Illinois, at the time of the 10:20 a.m. phone call with Mrs. Rubenstein, represented to Mrs. Rubenstein he (Mr.

---

attempts to set this matter for hearing. Based upon Mr. Malone's statements in *Non-Parties' Motion to Close Liability Hearing on Non-Parties' Petition for Contempt and Motion for Sanctions; or, Alternatively, for the Court to Set a Date for Continuation of the Hearing* and his attempts to coordinate a date by agreement received absolutely no cooperation from Mr. Manookian or Mr. Hammervold. Therefore, this Court allowed the hearing date to remain on March 2, 2017. It should be clearly known the *Non-Parties' Motion* was properly noticed by counsel for Dean Chase, Sandra Chase, and D. F. Chase, Inc., Mr. Gayle Malone, in said *Motion* pursuant to the Williamson County Local Rules of Practice of the 21st Judicial District, with the *Motion* including the required Certificate of Service to all counsel of record and setting forth the hearing date of **March 2, 2017.**

Hammervold) was not able to make the hearing in this matter because he had a "conflict" with a hearing set in Dallas, Texas that same morning which he planned to attend, but the Dallas hearing had been cancelled earlier in the day. (*Id.* at 28:7-29:4.)

77. When Mrs. Rubenstein asked Mr. Hammervold when the hearing in Dallas, Texas, was to take place that morning and how he planned to attend such a hearing if he was in Chicago, Illinois, inexplicably, he had no answer for her. (*Id.* at 27:18-31:3.) Mr. Hammervold eventually agreed to send an email to Mrs. Rubenstein substantiating his representations. (*Id.*) Consequently, the email Mr. Hammervold sent Mrs. Rubenstein indicated the hearing he had planned to attend in Dallas, Texas, had been cancelled that morning at 7:11 a.m. (*See Notice of Filing* of March 7, 2017, Exhibit B.) The email also indicated the hearing to which Mr. Hammervold was to attend was set to begin at 9:00 a.m. in Dallas, Texas. (*Id.*) Thus, by Mr. Hammervold's own explanation, he was unable to attend this Court's hearing because he had a "conflict" with another hearing set in Dallas, Texas at 9:00 a.m. However, the Dallas, Texas hearing was cancelled at 7:11 a.m., and Mr. Hammervold was actually in Chicago, Illinois at the time of the cancellation of the hearing scheduled in Dallas, Texas, which obviously makes no sense.

78. Based upon the conflicting evidence that Mr. Hammervold was in Chicago, Illinois at the time of Mrs. Rubenstein's phone call at 10:20 a.m. CDT on March 2, 2017, Mr. Hammervold submitted to this Court he could not attend this Court's hearing due to another hearing in Dallas, Texas, nearly 800 miles away from his location, at 9:00 a.m. CDT, which was in fact only cancelled at 7:11 a.m. CDT that morning [March 2,

2017], the Court is unconvinced of Mr. Hammervold's excuse. Mr. Hammervold's representations to the Court through Mrs. Rubenstein simply make no sense. The Court finds this to be another instance of Mr. Hammervold's failing to be honest with the Court and an attempt to deceive the Court from his wrongful actions.

79. Despite Mr. Manookian's and Mr. Hammervold's unexplained absences from the hearing on March 2, 2017, the Court once again, as it had on numerous previous occasions, gave Mr. Manookian and Mr. Hammervold the benefit of the growing doubt about their honesty with this Court. The Court declined to rule on the *Non-Parties' Motion to Close Liability Hearing on Non-Parties' Petition for Contempt and Motion for Sanction* until Mr. Manookian and Mr. Hammervold had the opportunity to be fully heard. The Court reset the hearing for oral arguments on April 19, 2017.

80. On April 19, 2017, at 8:00 a.m., Mr. Manookian filed his first *Motion to Disqualify* minutes prior to the hearing on the same day, April 19, 2017, at 8:15 a.m. Unfortunately, the Court had to adjourn the anticipated hearing, pursuant to Tennessee Supreme Court Rule 10B.

81. On May 23, 2017, this Court filed *Court's Response to Motion to Disqualify* denying Mr. Manookian's *Motion to Disqualify* filed April 19, 2017. Mr. Manookian appealed this Court's denial of his *Motion to Disqualify* of April 19, 2017 to the Tennessee Court of Appeals, and on August 29, 2017, the Tennessee Court of Appeals affirmed this Court's denial. (*See* Tennessee Court of Appeals Opinion, Aug. 29, 2017 in Case No. M2017-01192-COA-T10B-CV.) It is noteworthy, when Mr. Manookian filed his *Motion to Disqualify* on April 19, 2017, he gave no prior notice such a motion was going to be filed. Instead, he waited minutes prior to the hearing to file his *Motion to*

*Disqualify* all in an effort to delay this lawsuit based upon reasons in his first *Motion to Disqualify*, as will further be explained in more detail below under section (1) Mr. Manookian's credibility, beginning on p. 58, based upon the false and made-up reasons provided by Mr. Manookian, totally contrary to the explicit requirements of Supreme Court Rule 10B. As will be seen below under section (1) Mr. Manookian's credibility, beginning on p. 58, Mr. Manookian was clearly "gaming the system" by using the rules and procedures meant to protect the order and integrity of our legal system to manipulate the system for his own personal desired outcome.

82. On November 9, 2017, immediately prior to the scheduled hearing which was to begin at 9:00 a.m. on the same day [November 9, 2017], Mr. Manookian filed yet another *Motion to Disqualify* this Court. The second *Motion to Disqualify*, which is stamped filed with the Circuit Court Clerk's Office, bears the date and time of "2017 NOV 9 AM 8:14," again, as in his first *Motion to Disqualify*, just minutes before the hearing was to be conducted at 9:00 a.m., despite the fact Mr. Manookian had eight months from the last hearing date of March 2, 2017, which he and Mr. Hammervold failed to appear, to November 9, 2017, to file his *Motion to Disqualify*, he waited until the last minute of the day of the hearing to file his second *Motion to Disqualify* without giving anyone any prior notice such a motion was being filed. As will be set forth below under section (1) Mr. Manookian's credibility, beginning on p. 62, as to the second *Motion to Disqualify*, based upon the bogus statements made in Mr. Manookian's second request to disqualify this Court, Mr. Manookian was once again "gaming the system" by using the rules and procedures meant to protect the order and integrity of our legal system to manipulate the system for his own personal

desired outcome. Upon receipt of the *Motion to Disqualify* at 8:14 a.m., the Court

was forced to postpone the hearing for four hours (the attorneys and/or parties

waited in the courtroom).

83. At 1:01 p.m. on November 9, 2017, this Court entered *Court's Response to Second*

*Motion to Disqualify* in response to Mr. Manookian's second *Motion to Disqualify*

filed on the same day, November 9, 2017, at 8:14 a.m., denying the *Motion to*

*Disqualify*, which read, in pertinent part, as follows:

> [T]he Court can draw no other conclusion than good cause is presented,
> which would lead any reasonable personal to conclude that the motions to
> disqualify and the means stated therein along with the inordinate delay
> and the timing of the filing of the *Motion* leads to only one conclusion, that
> the *Motion* is being used in an improper manner and not in conformity with
> the purpose and rules of the Supreme Court Rules, Rule 10B.

The final day of the evidentiary hearing then proceeded to commence.

### L.    Findings of Fact of the Hearing on November 9, 2017

84. After the Tennessee Court of Appeals affirmed the Court's ruling on the *Motion to*

*Disqualify*, this Court set the final hearing on Non-Parties' *Petitions* for November 9,

2017 at 9:00 a.m., with a pre-trial conference set for November 3, 2017 at 8:00 a.m.

85. On November 3, 2017, Mr. Manookian and Mr. Hammervold appeared for the pre-

trial hearing and an *Order* was entered on various evidentiary issues.

86. On November 9, 2017, the Court held the second day of the evidentiary hearing. At

the hearing, Mr. Manookian and Mr. Hammervold inexplicably chose not to present

any evidence in their defense. Such a decision is surprising to the Court because of

Mr. Manookian's adamant testimony, whereby he claimed to have sent the

confidential information to members of the news media by email, which could have

assisted the Court in determining when or even if he violated the Court's *Orders*.

Page **40** of **122**

Nonetheless, the evidence presented at the hearing was primarily related to the Non-Parties' claimed damages, which were the Non-Parties' attorneys' fees and expenses related to the *Petitions*.[42] Accordingly, at the close of the proof, the Court took this matter under advisement.

Based upon the above findings of fact, the Court finds it necessary to make specific determinations, which are essentially undisputed, based upon the Court's findings above and the testimonies provided by Mr. Manookian and Mr. Hammervold, to narrow the remaining issues.

### M.  Specific Findings of Fact on Material Matters Regarding Liability

87. Based upon the facts set forth in numbered paragraphs 11-15 herein, the Court finds on August 28, 2015, Mr. Manookian and Mr. Hammervold, as co-counsel, agreed on behalf of themselves and their clients they were bound by the *Agreed Protective Order* at the time it was signed, as opposed to when it was entered by the Court.

88. Based upon the facts set forth in numbered paragraph 17 herein, the Court finds on August 31, 2015, Mr. Manookian submitted a challenge to the Non-Parties' confidential designations and opposed entry of the *Agreed Protective Order*; however, Mr. Manookian struck his opposition on September 3, 2015 and requested specifically the Court enter the *Agreed Protective Order*, which the participants would follow in resolution of their dispute. However, as clearly shown on the face of the *Agreed Protective Order*, Mr. Manookian had already specifically agreed to be bound by it and the terms set forth therein.

---

[42] The Court shall address the findings of fact and conclusions of law as regards to damages below.

585

89. Based upon the facts set forth in numbered paragraph 69 herein, on September 1, 2015, Mr. Manookian knowingly, willfully, and intentionally disclosed certain documents of the Non-Parties' confidential discovery materials to General Funk. This disclosure of Non-Parties'. confidential documents did not comply with the *Agreed Protective Order*.

90. Based upon the facts set forth in numbered paragraph 69 herein, in early October 2015, the Court finds Mr. Manookian knowingly, willfully, and intentionally disclosed documents of the Non-Parties' confidential discovery materials to David Raybin, Kim Hodde, and Eli Richardson, in violation of the procedures set forth in the *Agreed Protective Order*, each disclosure being an individual violation of the Court's Orders.

91. Based upon the facts set forth in numbered paragraphs 25-31 herein, on October 20, 2015 and October 30, 2015, the Court entered *Oral Orders* and subsequently written *Orders* on November 6, 2015 and November 7, 2015, respectively, mandating the Non-Parties' confidential discovery materials and deposition testimonies were to be kept confidential under the terms of the *Agreed Protective Order*. At both hearings, Mr. Manookian knowingly, willfully, and intentionally misled the Court in an attempt to cover up his wrongful acts by his failure to disclose his violations of the Court's *Order*.

92. Based upon the facts set forth in numbered paragraph 69 herein, Mr. Manookian knowingly, willfully, and intentionally violated the Court's *Orders* by providing the Non-Parties' confidential discovery materials and deposition testimonies to News Channel 4 WSMV, NewsChannel 5 WTVF, and the *Nashville Scene* and then continued to "cover up" his violations of the Court's *Orders* by perpetrating a

586

continuing and active fraud on the Court, the attorneys, and the parties to this lawsuit for many months.

93. Based upon the facts set forth in numbered paragraphs 48-50 herein, in February 2016, News Channel 4 WSMV, NewsChannel 5 WTVF, and the *Nashville Scene* took the Non-Parties' confidential discovery materials and deposition testimonies that Mr. Manookian unlawfully provided to these news entities, who then broadcasted separate news stories that disseminated such confidential materials and deposition testimonies to the general public throughout Middle Tennessee.

94. Based upon the facts set forth in numbered paragraphs 32-41 herein, starting in December 2016, Mr. Manookian and Mr. Hammervold knowingly, willfully, and intentionally employed the Non-Parties' confidential discovery materials in their representation of Mr. King in the matter of *King v. Chase* and other threatened criminal litigation in violation of the Court's *Orders*.

### N. Critical Disputed Factual Issues

The Court finds there are two critical factual disputes as to which the Court must resolve. First, the Court must determine whether Mr. Manookian gave the Non-Parties' confidential discovery materials and deposition testimonies to the news media between October 4, 2015 and October 6, 2015, as he claimed at the September 23, 2016 hearing and which would still be a violation of the *Agreed Protective Order* to which he signed and agreed to be bound by on August 28, 2015, or whether he gave such materials to the news media sometime after the Court ordered all of the Non-Parties' materials be kept confidential on October 20, 2015.

Second, the Court must determine whether Mr. Hammervold first found out about Mr. Manookian's disclosures to the news media a few days before the hearing of September 23, 2016, or whether he knew about and was complicit in such disclosures before that time, and has been an active participant in keeping such information from the Non-Parties and the Court throughout these proceedings.

For the Court to make such a factual finding related to the disputed facts, it first must determine the credibility of Mr. Manookian and Mr. Hammervold and measure the proper weight to give their respective testimonies. Over the many months of this misrepresentation and fraud perpetrated upon the Court, this Court has had the opportunity to witness the demeanor of Mr. Manookian, who testified as a witness, and Mr. Hammervold, who testified as a witness. It was important for this Court to carefully observe the demeanor of these witnesses since it appeared all of the proof was pointing to these two lawyers, as the two who wrongfully released protected documents to the media and others and then perpetrated an ongoing fraud against the Court for over two years, and it would be their opportunities to explain their actions. The Court carefully observed the behavior and appearance of both Mr. Manookian and Mr. Hammervold. Courts have always acknowledged the significance of observing and hearing a witness prior to assessing his or her credibility. For instance, the United States Court of Appeals for the Second Circuit has recognized that the carriage, behavior, bearing, manner and appearance of a witness—in short, his "demeanor"—is part of the evidence. The words used are by no means all that we rely on in making up our minds as judges about the truth of a question that arises in our ordinary affairs . . . . *Dyer v. MacDougall*, 201 F.2d 265, 268-69 (2d Cir. 1952); *see also, e.g., Ruggieri*, 291 A.2d at



588

445 (resolving the question of a witness' credibility would depend largely upon the observations of the witness' testifying at trial).

### (1)   Mr. Manookian's Credibility

The Court finds a credibility determination for Mr. Manookian is particularly important in this proceeding, because many of his positions and arguments are supported solely by his uncorroborated testimony. As such, the Court makes the following findings:

First, Mr. Manookian's *Declaration* of March 17, 2016 is a clear course of conduct to knowingly, willfully, and intentionally mislead the Court, the parties, and the attorneys. Although Mr. Manookian acknowledged the hearing of March 10, 2016, regarding the Non-Parties' *Motion for Sanctions*, "involve[d] the media's possession of discovery materials from this case," Mr. Manookian refused and failed to notify the Court in his *Declaration* under oath (emphasis added) of the fact that **he** was the individual who gave the confidential materials at issue to the news media. Mr. Manookian knowingly, willfully, and intentionally left out these crucial facts and did not mention the most important detail relating to this case, which was **he** was the actual person who released the confidential material to the news media. Instead, Mr. Manookian knowingly, willfully, and intentionally made the Court and the Non-Parties believe he was not the culprit of the leaked, confidential information through his knowing, willful, and intentional deception. There was no mystery that at the time he submitted his *Declaration* on March 17, 2016, Mr. Manookian knew he had violated the Court's *Orders*, and he was responsible for the disclosures to the news media; however, for weeks and months on end, Mr. Manookian purposefully chose to lie and perpetrate a continuing fraud on this

Court, the parties, and the attorneys in order to gain a personal advantage in his lawsuit, all to the detriment of everyone else.

Second, despite the procedure set forth in the *Agreed Protective Order*, to challenge certain designations of discovery material being marked as "confidential," on September 1, 2015, Mr. Manookian knowingly, willfully, and intentionally disclosed information the Non-Parties had designated "confidential" under the *Agreed Protective Order* in a letter to General Funk. (Tr. Exhibit 4, Sept. 23, 2016.) Mr. Manookian's letter claimed his improper disclosure was based upon, at least in part, "an interest of General Funk's safety," which this Court finds not credible. (*Id.*) Regardless of Mr. Manookian's "feelings" for General Funk, such a disclosure clearly violates the *Agreed Protective Order*, which provides any concerns about non-disclosure adversely affecting public safety should first be addressed with the Court. (*Motion for Entry of Agreed Limited Protective Order as to Certain Subpoenaed Parties* of August 28, 2015, Exhibit 1, section 12.1.) It should be noted, Mr. Manookian never raised these concerns laid out in his September 1, 2015 letter with the Court to disclose the Non-Parties' confidential materials to General Funk. Further, when General Funk did not respond to Mr. Manookian's "warning" letter of September 1, 2015, Mr. Manookian served General Funk with a deposition subpoena on September 9, 2015, which underscores the Court's finding that Mr. Manookian's interest in General Funk's "safety," was feigned as Mr. Manookian previously claimed.

Third, on February 3, 2016, Mr. Manookian and Mr. Hammervold filed *Plaintiff's Response to Defendant's Motion for Protective Order*, attaching as Exhibit 1 a copy of an unsigned Agreement of Partnership of NV Partners, which had been produced to Mr.

Manookian and Mr. Hammervold by the Non-Parties in this case and had been marked confidential pursuant to the *Agreed Protective Order* and the Court's *Orders*. (Tr. Exhibit 17, Sept. 23, 2016.) The Court finds such conduct shows Mr. Manookian's lack of credibility because he was willing to file a confidential document in violation of the *Agreed Protective Order* and this Court's *Orders*.

Fourth, Mr. Manookian and Mr. McGuire attended a meeting with Mr. Charles Malone together with other counsel of record regarding the *King v. Chase* case, at which they cited to documents by Bates-number supporting the threatened litigation against Dean Chase. (Hr'g Tr. 291:8-293:3, Sept. 23, 2016.) These documents were the very documents marked confidential pursuant to the *Agreed Protective Order* and the above *Orders* of this Court. (*Id.*) Thus, Mr. Manookian's failure to follow the terms of the *Agreed Protective Order* and the Court's *Orders* and attempting to use the confidential information provided in this case to support his other client's, Mr. King's case, shows Mr. Manookian's lack of credibility in this matter.

Fifth, as explained above, on January 21, 2016, Mr. Finley contacted General Funk to discuss a news story he planned to broadcast concerning this case. (Hr'g Tr. 222:11-229:7, Sept. 23, 2016; Tr. Exhibit 21, Sept. 23, 2016.) Mr. Finley submitted a series of emails to General Funk for the basis of his news story, which included (1) Mr. Manookian's October 19, 2015 *Response to Plaintiff's Expedited Motion for Sanctions, Protective Orders and Other Relief*; (2) the deposition transcript of Dean Chase and Sandra Chase of September 16, 2015; and (3) text messages produced by the Non-Parties in the original document discovery.[43] (Tr. Exhibit 21, Sept. 23, 2016.) Mr.

---

[43] The Court again notes these attachments were designated "confidential" by the *Agreed Protective Order* and the *Orders* entered by this Court.

Manookian admitted he in fact was the one that disclosed this information to Mr. Finley, which again was a violation of the *Agreed Protective Order* and the Court's *Orders*. This is further proof of Mr. Manookian's lack of credibility.

Sixth, on March 7, 2016, Mr. Manookian, together with the assistance of Mr. Hammervold, began a strategy to knowingly, willfully, and intentionally attempt to deceive and defraud this Court in order to avoid punishment for their actions. First, Mr. Manookian filed a *Motion to Strike and Response to Non-Parties' Motion for Sanctions*, asserting the Non-Parties' *Motion for Sanctions* was in reality a petition for contempt that should be stricken because the *Motion* does not even identify who the Non-Parties believe should be held in contempt. Also, Mr. Manookian argued the Court had "no authority" to sanction the offending individuals. It is apparent these actions were taken to prevent the Court from discovering the violators of the Court's *Orders* and the actual party that disseminated the confidential material to members of the public and the news media.



Seventh, on March 10, 2016, the Court held a hearing regarding the *Non-Parties' Motion for Sanctions*. However, Mr. Manookian failed to appear. (*See Non-Parties' Notice of Filing of Court Transcript* of April 26, 2017, Exhibit A, March 10, 2016, Hr'g Tr. 11:21-12:11; 29:23-24.) Mr. Hammervold did appear and made arguments on behalf of Mr. Manookian as well as himself. (*Id.* at 25:21-28:2; 51:18-54:18.) Mr. Hammervold argued Defendant, Clayton McKenzie, whom Mr. Hammervold and Mr. Manookian represented, was not bound by the *Agreed Protective Order;* the *Agreed Protective Order* allowed the Non-Parties' confidential materials to be used in related litigation, and the sanctions sought by the Non-Parties were inappropriate. (*Id.* at 25:21-28:2; 29:23-



592

24.) Once again, this argument is contradictory to Mr. Manookian's prior email to Ms. Fenelon in which he clearly acknowledged the *Agreed Protective Order* was in effect and binding on him and his clients and stated, "I agree that the Order is binding on me and my clients at the time it is signed with permission as opposed to entered by the Court." (Tr. Exhibit 3, Sept. 23, 2016. Thus, for Mr. Manookian to allow Mr. Hammervold to represent him at the hearing and make such egregious arguments, while being fully aware he violated the *Agreed Protective Order* and the Court's *Orders* is indicative of Mr. Manookian's lack of credibility.

Eighth, on December 30, 2015, Mr. King sent an email to Mr. Palmer, another non-party to this present case, in which he discussed a potential lawsuit against Dean Chase and copied Mr. Manookian. The email Mr. King wrote on December 30, 2015, stated, in pertinent part:

> I believe David mentioned that I am vigilantly pursing a cause of action for breach of fiduciary duties on behalf of the law firm [Waller] and Dean [Chase] and attorney malpractice.
>
> **I was put in touch with an extremely competent and savvy attorney in Nashville who, through discovery, has ascertained all communications between the law firm [Waller], Dean [Chase] and David [Chase]** and has intimate knowledge of with [sic] what really took place behind the scenes.
>
> . . . .
>
> **You will be shocked to read the communications between Steven and Dean,** always putting Dean's personal interest first and never operating out of the best interest of the group.

(Tr. Exhibit 4, Nov. 9, 2017) (emphasis added).

The Court already found that this email was sent after the Court's *Order* of November 6, 2015 and, by a preponderance of the evidence, shows Mr. Manookian

disclosed this information to his client Mr. King. Thus, this again establishes Mr. Manookian's willingness to violate the *Agreed Protective Order* and Court's *Orders* for his own advantage and shows his lack of credibility.

Ninth, on August 31, 2015, Mr. Manookian submitted a challenge to the Non-Parties' confidential designations and opposed entry of the *Agreed Protective Order;* however, Mr. Manookian struck his opposition on September 3, 2015 and requested specifically the Court enter the *Agreed Protective Order*, which the participants would follow in resolution of their dispute. However, as clearly shown on the face of the *Agreed Protective Order*, Mr. Manookian had already specifically agreed to be bound by it and the terms set forth therein. Thus, Mr. Manookian attempting to unravel the *Agreed Protective Order* after he had already received the benefit of the bargain by receiving the confidential material shows his lack of credibility.

Tenth, on October 1, 2016, Mr. Manookian emailed counsel for the Non-Parties requesting authority to provide News Channel 4 WSMV with copies of Sandra Chase's deposition testimony, stating, "I will, **obviously**, follow your preference on this issue. I just need to know what that is." (*See* Tr. Exhibits 7 & 8, Sept. 23, 2016.) (emphasis added) Contrary to his representation he would respect the Non-Parties' "preference on this issue," Mr. Manookian once again knowingly, willfully, and intentionally violated the Court's *Orders* and disclosed the confidential deposition transcripts of both Dean Chase and Sandra Chase and the confidential documentation of text messages to Mr. Finley of News Channel 4 WSMV, Phil Williams of News Channel 5 WTVF, and Jim Ridley at the *Nashville Scene*. Each of these three disclosures represents individual, knowing, willful, and intentional violations of the Court's *Orders*, after Mr. Manookian was specifically told

the Non-Parties considered the depositions of both Dean Chase and Sandra Chase to be confidential. The Court finds Mr. Manookian's statement to counsel for the Non-Parties to be untrue. In other words, Mr. Manookian once again outright lied to counsel for the Non-Parties. This shows Mr. Manookian's lack of credibility.

Eleventh, on October 21, 2015, in an email to counsel for the Non-Parties and the Parties, Mr. Manookian, after asserting he had filed the exhibits to his October 19, 2015 filing under seal, represented that he:

> [T]ook precautions to ensure that [the exhibits containing the Non-Parties' confidential deposition testimonies and text messages] were provided only to the Court and attorneys for the parties to this action. You apparently received them nonetheless. To the extent these materials surface outside of the seal, it is important to know who has been disclosing them and to what additional non-parties they have been disclosed.

(Tr. Exhibit 10, Sept. 23, 2016.)

Remarkably, at the time Mr. Manookian sent this email, he had in fact already disclosed the subject confidential discovery materials and deposition testimonies to a number of individuals in violation of the *Agreed Protective Order*, which included General Funk, David Raybin, Kim Hodde, and Eli Richardson, and members of law enforcement. These disclosures to these individuals, plus law enforcement, if they in fact occurred, as stated by Mr. Manookian, are all just more examples of Mr. Manookian's defiant conduct as well as his knowing, willful, and intentional conduct to continue to perpetrate a fraud on the Court, the attorneys involved in the case, and the parties and his attempts to try and cover up his conduct by more misrepresentations, knowing, willful, and intentional false statements, and other deceitful conduct. This shows Mr. Manookian's lack of credibility.

Twelfth, in response to an email on January 20, 2016, concerning the report of a leak to the news media and a potential violation of the Court's Orders, Mr. Manookian wrote, "did Mr. Finley indicate who the 'source' may be? I would note that [my client Defendant] Clayton McKenzie never agreed to keep any materials confidential; nor was he required to at any time prior to October 20, 2015." (Tr. Exhibit 11, Sept. 23, 2016.) As later admitted by Mr. Manookian, this email was knowingly, willfully, and intentionally "misleading" when written because Mr. Manookian was well aware at that time **he** had given the materials to Mr. Finley.[44] The Court finds the statement when made by Mr. Manookian was known by him to be false and misleading, but was made knowingly, willfully, and intentionally to extend even longer Mr. Manookian's continuing ruse and fraud upon the Court, the attorneys involved, and the parties herein.

In addition, this Court finds it uncanny that any lawyer would knowingly, willfully, and intentionally implicate his own client of wrongdoing in order to defray the Court's attention from himself in order to, once again, continue to perpetrate his ongoing fraud against the Court, the attorneys involved, and the parties. This shows Mr. Manookian's lack of credibility.

Thirteenth, on April 21, 2016, Mr. Manookian filed a Response to the Non-Parties' Petitions, arguing the Petitions should be denied because they constituted "rank, unsupported hypothesizing," "speculation and shameless, Johnny-come-lately histrionics," and "assorted real and imagine conduct." (Brian Manookian and Cummings Manookian PLC's Response to Non-Parties' Petition for Contempt and Motion for

---

[44] The Court is astounded with Mr. Manookian's ability to not only implicate his own client in the violation of the Agreed Protective Order, but at the same time cover the tracks of his own wrongdoing, and his continuous deceptive conduct to accomplish such a feat in only one email exchange. The time and effort utilized by Mr. Manookian to continue to perpetrate his fraud, deceptive conduct, and misrepresentations upon the Court is astonishing.

*Sanctions* of April 21, 2016, at p. 1-2; 8.) When Mr. Manookian filed these statements, he knew they were false and misleading because he had, in fact, already disclosed the Non-Parties' confidential discovery materials to the news media and others, and he was using the Non-Parties' materials in *King v. Chase* and other threatened criminal litigation to attempt to intimidate the attorneys. This also shows Mr. Manookian's willingness to continue on his path of deceiving this Court through his fraud and misrepresentations. This shows Mr. Manookian's lack of credibility.

Fourteenth, on September 16, 2016, Mr. Manookian, in yet another attempt to continue his ongoing fraud against the Court, the attorneys, and the litigants herein, filed a *Joint Motion to Dismiss* the *Petitions* [for contempt] prior to the September 23, 2016 evidentiary hearing at which he would have to testify, claiming to the Court the Non-Parties' *Petitions* constituted a "circus-like mass-inquisition" and "chas[ing] a wild goose," but also that it was "abundantly clear that [the Non-Parties] have no information to support their speculative allegations." (*Respondents Mark Hammervold, Hammervold PLC, Brian Manookian, and Cummings Manookian's Joint Motion to Dismiss Contempt Petition and Motion for Sanctions* of September 16, 2016, at p. 2-3.)  Mr. Manookian utilized very selective and convenient outrage to describe the actions of contempt set forth in the *Petition for Contempt*. Further, Mr. Manookian's use of theatrical histrionics to continue his fraud and deception are yet additional examples of his "litigation strategy" in this case, which was to lie, deceive, and then to "cover up".  However, despite Mr. Manookian's knowing, willful, and intentional warped and false portrayal of the facts in this case, and after being warned by the Court of his evasive, non-responsive, and deceitful responses, he would be forced to admit on cross-examination,

only hours after said *Joint Motion* was argued, that it was he who had disseminated the materials to the news media. This is yet another example of a false statement made by Mr. Manookian to continue his ongoing fraud, misrepresentation, and manipulation of the Court, the attorneys, and the litigants. This shows Mr. Manookian's lack of credibility. This shows Mr. Manookian's lack of credibility.

Fifteenth, on October 28, 2016, Chancellor Lyle entered a *Scheduling Order* in *the King v. Chase* case in the Chancery Court of Davidson County, Case No. 16-0030-II, in which she noted Mr. Manookian had stated in open court that "this lawsuit and the Williamson County lawsuits are not related." (Tr. Exhibit 1, Nov. 9, 2017.) However, Mr. Manookian's and Mr. Hammervold's representations to this Court have always been the filings in this case **are** related to *King v. Chase*. This leaves the Court with two logical conclusions; either Mr. Manookian and Mr. Hammervold were truthful with Chancellor Lyle, while at the same time they were deceiving and lying to this Court in order for their disclosure of confidential discovery materials to be permissible under the terms of the *Agreed Protective Order*, or Mr. Manookian and Mr. Hammervold were truthful with this Court but untruthful and lied to Chancellor Lyle in the *King v. Chase* case. Either way, Mr. Manookian and Mr. Hammervold have proven to have lied before at least two judges of this state to promote their own personal interests and to continue to perpetrate a fraud upon this Court, the lawyers, and the litigants.[45] This shows Mr. Manookian's and Mr. Hammervold's lack of credibility.

---

[45] Throughout this *Memorandum and Order*, the Court has given several examples of Mr. Manookian's lying under oath regarding material matters in his ongoing fraud on this Court. The Court makes no decision whether or not Mr. Manookian's perjury is misdemeanor perjury or felony aggravated perjury. This task will be left to the individuals and/or bodies in charge of making that determination.

Sixteenth, the Court noted, during Mr. Manookian's opportunity to finally tell the complete truth and stop the incessant, knowing, willful, and intentional lying on material issues, he still had an extremely difficult time being candid with the Court. In addition, the Court noted on numerous occasions, when Mr. Manookian made statements to this Court and to the attorneys, his tone of voice during arguments or while testifying as a witness, where his animosity and resentment of this Court and the attorneys was almost palpable. Throughout his sworn testimony on September 23, 2016, Mr. Manookian was warned repeatedly by this Court he was being evasive, vague, and ambiguous, and he was continuously failing to answer the questions being presented by Mr. Gayle Malone, counsel for the Non-Parties. The following are seven examples of this Court's attempts to warn Mr. Manookian of his evasive conduct in responding to questions under oath:

> **(1)** THE COURT: All right. This is what I want to do: Mr. Manookian, I know it's not comfortable testifying up here, and I understand that, and I'm not trying to be disrespectful to you, sir, as a lawyer. But what I like to hear as a trier of fact is a question, and then if you would, if you can answer the question with yes, then feel free to explain; no, feel free to explain; I don't know.

Transcript of Hearing, Vol. I of II, September 23, 2016 at 111:17-23, *Chase v. Stewart, et al*, Williamson Circuit Court Case No. 2015-200.

> **(2)** THE COURT: All right. Let's – let's – excuse me just a moment. I'm sorry to interrupt.
> Let's try to be responsive to the question first, because I want to be clear.
> So let's ask the question again.
> If you'll answer the question first, sir, and then feel free to explain that answer any way you want to.

Hr'g Tr. at 128:12-18.

> **(3)** THE COURT: Let's do this: I would really like to get an answer to the question.

MR. GAYLE MALONE:    Me too.

THE COURT:        I really would.    Because this is important. I want to do the right thing. And in order to do the right thing, I want to be crystal clear.

So, once again, I don't want to accuse you, sir, of being evasive. I'm not ready to do that at all. What I'd like for you to do, to help me understand, is to answer the question first if you can then feel free to explain.

Would you do that for me?

MR. MANOOKIAN:    Absolutely.

THE COURT:        All right.

Hr'g Tr. at 137:15-138:1-2.

**(4)**  **THE COURT:**        But let's just try to answer the question and then explain so I can be crystal clear.

MR. MANOOKIAN:    And I've done that. And Your Honor will probably notice --

THE COURT:        I don't think --

MR. MANOOKIAN:    -- that I haven't made hardly any objections to any of the questions --

THE COURT:        That's not what --

MR. MANOOKIAN:    -- because I want to get on the record precisely what occurred here with all the allegations have been made.

THE COURT:        I understand. That's not what I'm talking about. I simply want you to answer the question, if you can: yes; no; I don't know. And then, if you can, feel free to explain that. I just want to be clear, instead of going off into orbit somewhere without answering the question. Would you do that for me?

MR. MANOOKIAN:    Absolutely I will, Your Honor.

THE COURT:        Thank you. All right.

MR. GAYLE MALONE:    I'll try again.

Page 56 of 122

| | |
|---|---|
| THE COURT: | Okay. Thank you. |
| MR. GAYLE MALONE: | I'll try to keep it simple. |
| THE COURT: | That's what I want to do. |

Hr'g Tr. at 138:8-139:1-5.

**(5)** THE COURT: Okay. This is not difficult to me at all. It is very simple. The questions that are being asked are directed to you and your conduct. I understand that you may be trying to provide a defense of some type, but that's not in response to the question. I would appreciate it, if you would, in fact, answer the question.

MR. MANOOKIAN: I believe I have. I'm just –

THE COURT: I don't believe you have. I would appreciate if you would, once again, please answer the question so that I can understand what happened.

MR. GAYLE MALONE: Do you want me to ask it again?

THE COURT: Let's try it again.

Q. (By Mr. Gayle Malone) I'm trying to be simple.

Hr'g Tr. at 140:3-15.

**(6)** THE COURT: Stand by.
I really, one more time, sir, would like for you to answer the question first, if you could, and then explain. That will really help me. We're evolving into responses that are nonresponsive to the question that is very simple. I know it's not pleasant.

MR. MANOOKIAN: It's not unpleasant.

THE COURT: May I – may I just finish.
I know it's not pleasant. I know you don't like to be on the witness stand any more than anybody else. But you've got to play by the rules like everyone else.
I would like for you to please answer the question first and then explain. So let's be responsive.
Let's ask the question again, please.

Hr'g Tr. at 148:15-25; 149:1-2.

**(7)  THE COURT:**                    Once again, sir, very respectfully, I would like for you to answer the question and then feel free to explain that answer. I do not want to find that you, as a witness, that you're being evasive and nonresponsive. I don't want to do that.

Hr'g Tr. at 150:21-25.

As noted throughout the above examples, this Court continuously tried to be respectful of Mr. Manookian in admonishing him and warning him about his obviously knowing, willful, and intentional avoidance in responding to easy and legitimate questions involving the history of his fraud and deceit on this Court, the attorneys, and the parties to this lawsuit. This shows Mr. Manookian's lack of credibility.

Seventeenth, in Mr. Manookian's first *Motion to Disqualify* filed April 19, 2017, (to which this Court filed *Court's Response to Motion to Disqualify* on May 23, 2017, Mr. Manookian sought disqualification because the Court entered its March 29, 2016 *Order* relating to the Non-Parties' original *Motion for Sanctions, Motions and Supplements for: (1) Entry of Agreed Limited Protective Order; (2) Declaration that All Parties are Bound by the Order;* and (3) *Expedited Hearing.* In that March 29, 2016 *Order*, this Court explained the documents filed in support of the *Motions for Sanctions, Supplements, Entry of Protective Order, Declaration of All Parties Bound by the Order*, numerous affidavits and declarations filed by attorneys of record and parties to the case (including a declaration from Mr. Manookian himself), and oral argument, indicated Mr. Manookian and others may have committed sanctionable and/or contemptuous conduct. This March 29, 2016 *Order* also declined to grant the Non-Parties' *Motion for Sanctions* even though Mr. Manookian failed to appear at the March 10, 2016 hearing on the *Motion for Sanctions*, and instead, the Court ordered the Non-Parties to file detailed motions for

Page **58** of **122**

sanctions and/or petitions for contempt allowing Mr. Manookian and other Respondents sufficient opportunity to defend themselves. Mr. Manookian's allegation provided absolutely no facts in the form of affidavits or information based upon personal knowledge that served as any factual basis for his allegation. It was simply a bald statement with no factual basis or other supporting documentation as required by Supreme Court Rule 10B, Rules of Judicial Conduct. This allegation was false.

In addition, Mr. Manookian alleged in his first *Motion to Disqualify* this Court's outright refusal to rule upon Defendants' *Motion for Summary Judgment* and its ongoing refusal to rule on *Motions to Alter or Amend*, which is totally false and again is not supported by any facts from personal knowledge or other information as required by Supreme Court Rule 10B. Again, this allegation was false.

In another allegation set forth in the first *Motion to Disqualify* this Court, Mr. Manookian stated Judge Michael Binkley's alleged conduct and bias toward the media parties as a reason for recusal of Judge Binkley from this case. Yet, Mr. Manookian provided no affidavits or other factual information, citations to the record, or any other proof or facts to support this allegation. However, the Court responded to the vague allegation the best it could in its *Response to Motion to Disqualify* entered May 23, 2017.

Mr. Manookian also made baseless allegations about Judge Binkley's personal connections to "parties and material witnesses." (*See, Motion to Disqualify*, E. The Overwhelming Bases [sic] for Disqualification, p. 4.) The information provided by Mr. Manookian on this issue in his original *Motion to Disqualify* is totally false and was repeated claims from an anonymous complaint filed with the Board of Professional

Responsibility involving this Court (Judge Michael W. Binkley), District Attorney General Glenn Funk of Nashville, Davidson County, and others. (*See, Motion to Disqualify*, Apr. 19, 2017 and *Court's Response to Motion to Disqualify*, May 23, 2017.) The "anonymous" complainant to the Board of Professional Responsibility provided a fake and false email address and other supposedly "verifying information" which was false, fake, and incapable of being verified. Regardless, the allegations were thoroughly investigated by the Board of Professional Responsibility with this Court's full and complete cooperation, and as a result, the false complaint was unfounded and was dismissed by the Board on March 23, 2017. Although complaints to the Board of Professional Responsibility are supposed to be confidential unless formal action is taken, the false complaint was, not surprisingly, released to a friend of Mr. Manookian's with News Channel 4 WSMV television news station, as well as to News Channel 5 WTVF, and the *Nashville Scene* on the same day the false and fake public and anonymous complaint was made to the Board of Professional Responsibility. This Court specifically notes the same media sources that received protected information from Mr. Manookian were the same exact sources that received the fake and false Board of Professional Responsibility complaint involving this Court, District Attorney Glenn Funk, and others. (*See Motion to Disqualify*, Exhibit 3, Apr. 19, 2017.) Mr. Manookian also made references to this Court's alleged inappropriate relationship with Mr. Glenn Funk, District Attorney General for Davidson County, Tennessee, but again provided absolutely no facts, statements, affidavits, or any other information in any form whatsoever as required by Supreme Court Rule 10B to support his allegations. (*See Motion to Disqualify*, p. 14-15, Apr. 19, 2017.) Mr. Manookian also went on to state,

without any factual statement whatsoever, in any form whatsoever, and without any affidavits, actual knowledge, or any other proof in any other form whatsoever, that former Davidson County General Sessions Judge Casey Moreland is "a material witness to this action." (*Id.*) These statements made by Mr. Manookian were likewise false. It is noteworthy, in this present case, Mr. Manookian and Mr. Hammervold previously prepared their list of witnesses related to the petitions and the motions for contempt in this case, and not surprisingly, Judge Casey Moreland was NOT identified on any of these documents, and is not "a material witness to this action" in any form whatsoever, and of course, was never called as a witness. Once again, Mr. Manookian has used the courts and Supreme Court Rule 10B in his attempts to recuse this Court from further hearing the facts in this case as a vehicle by which to delay this case, and to embarrass, ridicule, and demean this Court.

In addition, as stated above, Mr. Manookian filed his second *Motion to Disqualify* at 8:14 a.m. on November 9, 2017, in an obvious attempt to delay the final hearing in the proceedings which were to begin at 9:00 a.m., to buy additional time, and to frustrate everyone. Mr. Manookian had eight months from the date of the last hearing of March 2, 2017 (which he and Mr. Hammervold failed to attend) in which to file such a motion. This Court responded immediately in its *Response to Second Motion to Disqualify* entered the same day, November 9, 2017 at 1:01 p.m., and would point out once again the allegations made by Mr. Manookian are not in any way whatsoever supported by any affidavits, sworn testimony, and other factual information as required by Supreme Court Rule 10B. In fact, one of Mr. Manookian's reasons to disqualify this Court was already ruled upon by the Court of Appeals in affirming this Court's refusal to

,

be disqualified based upon an alleged *ex parte* communication with Senior Judge William B. Acree Jr. The other allegations made in the second *Motion to Disqualify* this Court are false, misleading, and serve as yet additional examples of Mr. Manookian's inability to be truthful under oath and his propensity and history to outright lie without hesitation. This type of manipulative and unethical conduct is extremely concerning to this Court from a member of the Bar who clearly uses the rules of this Court to game the legal system in an intolerable manner over and over again. These two *Motions to Disqualify* and the total unsupported allegations are yet even more examples of Mr. Manookian's lack of credibility.

Ultimately, Mr. Manookian did everything within his power to undermine the foundation of the integrity of this case, the integrity of this Court, and the integrity of the lawyers, of the parties, and of others involved in this lawsuit. It is extremely unfortunate Mr. Manookian tried over and over again to not only destroy the credibility and integrity of this Court, but also doing the same thing with the lawyers in this lawsuit, as well as the parties, all in what appears to be "pure sport" for Mr. Manookian. Mr. Manookian could have, at any time, been forthright, honest, and candid about his ongoing fraud, misrepresentation, and dishonesty employed throughout this lawsuit. This minimum requirement was totally lost on Mr. Manookian. As one can see, this record is replete with this Court's giving Mr. Manookian the benefit of the doubt over, and over, and over again, almost to the point of being absurd when it could have sanctioned Mr. Manookian for his unethical conduct and for his knowing, willful, and intentional refusal to appear in court or to exercise the common courtesy of notifying this Court of his inability to appear.

After reviewing the entire record, Mr. Manookian's dishonest and deceitful conduct throughout this case, in looking back on all the examples of his ongoing and continuing fraud against this Court, his chronic dishonesty and lying under oath, this Court now has no doubt whatsoever Mr. Manookian does not deserve the benefit of the doubt as to his dishonesty and fraudulent ongoing behavior in this Court. Throughout the course of these proceedings, from the hearing on October 20, 2015 through the evidentiary hearing on November 9, 2017, Mr. Manookian filed numerous filings and made oral arguments before this Court on multiple occasions regarding the issues relating to the release of the Non-Parties' confidential material. Despite his obligations as a licensed attorney in the State of Tennessee, his ethical responsibilities as a lawyer, and the mandates of the *Agreed Protective Order*, to which Mr. Manookian agreed to be bound and was eventually ordered by this Court to follow, Mr. Manookian continued to perpetrate an active fraud upon the Court, week after week, month after month, for two years, by not only perpetrating lies but also by refusing to alert the Court and to simply tell the truth and be honest with the Court, the litigants, and the attorneys during any one of those appearances, that he had previously disclosed the Non-Parties' confidential discovery materials to the media. In fact, it is obvious now from all of the facts, Mr. Manookian went to great lengths on numerous occasions to knowingly, willfully, and intentionally mislead the Court regarding such facts when he knew exactly what he was doing was dishonest and unethical, at the very least.

The Court notes it takes no pleasure in finding an Officer of the Court as lacking credibility; however, the facts in this case give the Court no other option. Therefore, based upon the above analysis, the Court finds Mr. Manookian totally lacked credibility

in this Court during the evidentiary hearing of this case by his continuing knowing, willful, and intentional misrepresentations to the Court throughout this lawsuit, his refusing to disclose the truth of all matters involving his obstructionist conduct and fraud, and his testimony, all of which shall be given the appropriate weight in accordance with this determination. It is clear from all the evidence cited Mr. Manookian cannot be believed under oath and Mr. Manookian's sworn oath to tell the truth while he is under oath means nothing to him. In addition, it is clear Mr. Manookian's giving "his word" to his fellow lawyers means nothing, and he has no problem being deceitful and dishonest to his fellow lawyers. In addition, Mr. Manookian has no qualms about lying to judges on material issues.

### (2)    Mr. Hammervold's Credibility

Mr. Hammervold's demeanor as an attorney arguing as co-counsel with Mr. Manookian and while testifying was somewhat different. Mr. Hammervold made arguments which were circular, disingenuous, and in many cases, simply nonsensical. In observing Mr. Hammervold's demeanor, his carriage, and his approach to discussing issues in an attempt to defend his and Mr. Manookian's actions, Mr. Hammervold appeared to be struggling, even to the point of stuttering and being unable to finish sentences in a clear and cogent manner. The Court observed and noted Mr. Hammervold's struggling to try and explain his bogus arguments as well as his testimony under oath, and the Court is aware now that he, too, was involved in the fraud and cover up of Mr. Manookian's fraudulent and deceitful conduct in this case.

Furthermore, the Court must make a factually-based determination as to Mr. Hammervold's credibility to assist in resolving these factual disputes as well. Just like

608

Mr. Manookian, Mr. Hammervold's positions and arguments are based solely upon his own uncorroborated testimony. Thus, the Court must analyze his testimony and the circumstantial evidence in this case in order to determine the weight to be given his testimony. Accordingly, the Court makes the following findings as to Mr. Hammervold's credibility:

First, at the hearing of September 23, 2016, Mr. Hammervold made the following argument in support of his *Joint Motion to Dismiss*:

> [I] want to point out here is that Rule 11 requires anyone who's making an affirmative pleading to stand behind it and to say, I have factual and legal grounds to make this allegation, and if they don't, the Court can sanction them. ·
>
> Now, the movants [Non-Parties], **they don't have factual and legal ground for their allegations**, which is why they're hedging so much . . . **They know that they don't have the factual and legal support for it,** they don't want to stand behind the allegations, and they shouldn't simultaneously be allowed to go forward and not stand behind the allegations.

(Hr'g Tr. 47:21-48:8, Sept. 23, 2016.) (Emphasis added)

However, later that same day, Mr. Hammervold testified he knew Mr. Manookian had given the Non-Parties' confidential documents and deposition testimonies to the news media a few days before the hearing on September 23, 2016. Yet, Mr. Hammervold utterly failed to tell the Court this apparently "new information" and to disclose to this Court his knowledge of his co-counsel's unethical and blatantly dishonest behavior. Thus, at the time Mr. Hammervold presented his oral argument for his *Joint Motion to Dismiss*, he was fully aware the Non-Parties indeed had a factual basis and legal grounds for their *Petitions*, yet he continued to protest these proceedings knowing his statements were false. Mr. Hammervold is nothing more than