**C.    Brian Cummings Acknowledges and Reiterates his Agreements to the Terms of the Initial and Updated Engagement Agreements.**

On January 3, 2020, Brian Cummings emailed Brett Keefer acknowledging his receipt, review, and acceptance of the Updated August 2019 Engagement Agreement whose terms were materially identical to the Initial 2017 Engagement Agreement other than to reflect that Brian Manookian and Brian Cummings were no longer operating as law partners. **Exhibit 3**, Email from Brian Cummings to Brett Keefer, January 3, 2020.

Indeed, Mr. Cummings simply asked Brett Keefer to confirm that Brian Cummings was still authorized to work on the case and that Brian Cummings would be reimbursed for any advanced expenses. Mr. Cummings went on to assure Mr. Keefer that agreeing to those two points would "only supplement the previous Attorney Client Agreements you signed in this case" and not "delete any aspects of any other such documents you signed." **Exhibit 3**.

I need to confirm with you that you have always agreed to and authorized me to work as a lawyer on this case, and that you continue to do so. I also need to confirm with you that any litigation expenses I have or that I will advance on your behalf will be reimbursed. This 2019 agreement does not speak to those two particular issues, and even if we both expected those to things to be part of the past and ongoing work done by me on this case, I need to ask that you email me back something like "I agree."

This request for a responsive email is only to supplement the previous Attorney-Client Agreements you signed in this case, and this affirmation is not meant to delete any aspect of any other such documents you signed. Also, nothing about this email exchange today increases or changes the total contingency fee rate of 33.33% that is in the prior documents.

Brian

The only prior attorney-client agreements Mr. Keefer had signed were the 2017 Initial Agreement and 2019 Updated Agreement, both of which contain binding covenants-not-to-sue and binding mediation-arbitration clauses. Mr. Cummings email of January 3, 2020, expressly acknowledged and reaffirmed those terms.

**D.** **Brian Cummings Seeks to Renegotiate the Terms of the Initial and Updated Engagement Agreements and then Withdraws in a Fit of Pique.**

On September 24, 2020, Brian Cummings wrote Brett Keefer asking him to sign a new engagement agreement "setting for the basis on which I will continue to represent you." *Correspondence from Brian Cummings to Brett Keefer*, September 24, 2020, **Exhibit 4**. The letter began by purporting to be a "follow-up" to Mr. Keefer's two prior engagement agreements as well as Mr. Cummings' email acknowledging their validity.

> This letter is a follow up on the following enclosed documents – (1) your original Attorney-Client Agreement with Cummings Manookian while I was there, (2) your additional Agreement with Afsoon Hagh and Brian Manookian following my departure from Cummings Manookian and the end of that firm and the beginning of their firms, and (3) our more recent email exchange documenting you have continued to want me to represent you in this matter.

The letter went on to ask Mr. Keefer to sign a new engagement agreement solely with Mr. Cummings that included identical terms to Mr. Keefer's prior engagement agreements. The only addition was a provision requiring the client to agree that "if you leave any kind of review for my law firm online, including a Google review, that it will be 5/5 starts and have only positive comments." **Exhibit 4**, at Page 3.

Notably, Mr. Cummings' proposed new agreement included the same covenant-not-to-sue and binding mediation-arbitration clause present in the operative engagement agreements.

> **Mediation and Binding Arbitration of Any Attorney-Client Disputes**
>
> While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential dispute or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do I) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorney in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

When Mr. Keefer declined to sign the new Engagement Agreement, Mr. Cummings promptly – and without notice – withdrew as counsel "effective immediately" leaving only Ms. Hagh to continue prosecuting the matter. *Correspondence from Brian Cummings,* October 2, 2020, **Exhibit 5**. As the basis for his withdrawal, Mr. Cummings cited Mr. Keefer declining to sign a new engagement agreement; Mr. Keefer's feeling that Mr. Cummings was pressuring him to settle the case; as well as Ms. Hagh's characterization of Mr. Cummings' fixation on Mr. Cummings' own financial outcome in the case as "only looking out for Brian Cummings." *Id.* at Page 3.

Following Mr. Cummings' withdrawal immediately prior to the beginning of expert discovery, Ms. Hagh continued to develop, fund, and prosecute the case on her own. She ultimately brought on former United States Senator John Edwards to act as co-trial counsel. As previously discussed, the case settled in late October 2021, following adjudication of pre-trial motions, and just days before jury selection was set to begin.

**E.      Brian Cummings Acknowledges All Issues Related to his Representation of Mr. Keefer must be Resolved Out-of-Court**

Soon after Mr. Cummings learned that the case was not proceeding to trial, he retained counsel who began writing Ms. Hagh "requesting that you inform me whether or not your client, wishes to proceed with the binding arbitration as provided for in the Attorney-Client Agreement." *Correspondence from James Price*, February 1, 2022, **Exhibit 6**. The letter from MR. Cummings' counsel, James Price, acknowledged that the parties entered into binding arbitration agreement covering Mr. Cummings' claims arising out of his work on the Shoemaker case. Indeed, in its less than one-page length, the letter references binding arbitration no less than eight (8) times.

---

Dear Afsoon:

I emailed you at afsoon@haghlaw.com on the 24th day of January, 2022, requesting that you inform me as to whether or not your client, Mr. Keefer, wishes to proceed with the binding arbitration as provided for in the Attorney-Client Agreement. It appears that the email at this address was rejected so I am re-sending my letter by U.S. Mail, fax, and email.

I am sure you agree that it is to everyone's benefit that this matter be resolved as quickly as possible. It would appear that the binding arbitration as provided for in the Attorney-Client Agreement is the most simple and quick way to resolve this issue and my client is prepared to proceed with that immediately. If you and your client agree with that, please let me know and I will be happy to provide a list of proposed arbitrators.

---

The letter closed by unilaterally requiring a response "no later than ten days from receipt... as to whether or not you represent Mr. Keefer and whether or not he wishes to proceed with binding arbitration." Despite no language existing in the Attorney-Client Agreement permitting such an outcome, Mr. Cummings threatened "unpleasant and lengthy litigation" if he did not receive a prompt response; concurrently announcing that a failure to respond would be treated as a waiver of arbitration.

Ms. Hagh responded by letter dated February 11, 2022. She began by recounting that "Brian Cummings previously served as counsel in *Keefer v. VUMC*. He quit early in

496

the matter after the client would not agree to settle the case for a fraction of its value, and because Mr. Cummings did not want to further contribute to the prosecution of the case." *Correspondence from Afsoon Hagh*, February 11, 2022, **Exhibit 7**.

Ms. Hagh pointed out to Mr. Price that [i]n such an event, the engagement agreement that your client drafted and signed is crystal clear that Mr. Cummings would only be entitled to reimbursement of his advanced costs and expenses. Your client has already been reimbursed his advanced costs and expenses. Although your letter references a 'fee dispute,' it fails to describe any such dispute. It then immediately proceeds to demand that Bretton Keefer choose arbitration or litigation as the means of adjudicating the 'dispute' that is never identified." *Id.* at Page 1. Ms. Hagh closed her response by requesting that Mr. Cummings' attorney "actually outline[] whatever it is your client is asking proceed to arbitration or litigation" so that she could meaningfully respond. Rather than do so, Mr. Cummings proceeded to file suit.

### F. Brian Cummings Breaches the Terms of the Engagement Agreements by Filing this Suit

On March 22, 2022, Brian Cummings filed an action in the Circuit Court for Davidson County Tennessee against Bretton Keefer and Jeanne Burton as Trustee for Cummings Manookian PLC. On March 29, 2022, Brian Cummings purported to Amend his complaint to add Afsoon Hagh as a Defendant.

On April 26, 2022, Jeanne Burton filed a Notice removing the lawsuit to the United States District Court for the Middle District of Tennessee, while simultaneously moving for the case to be remanded to Bankruptcy Court where Cummings Manookian is currently in bankruptcy. *Cummings v. Cummings Manookian*, Case No. 3:22-cv-00301, D.E. 1; D.E. 2.

For the next ten (10) months, Brian Cummings failed to serve either Brett Keefer or Afsoon Hagh with his Complaint or Summons, requesting serial extensions of time to do so. *See e.g.*, *Cummings v. Keefer*, Case No. 3:22-cv-00301, D.E. 20; D.E. 24; D.E. 31; D.E.42.

On February 27, 2023, Attorney John Spragens made an appearance on behalf of Brett Keefer and Afsoon Hagh solely for the purpose of entering an Agreed Order accepting service of process and setting a deadline of sixty days following service of the Complaint via email in which to file a responsive pleading. *Cummings v. Keefer*, Case No. 3:22-cv-00301, D.E. 53. To date, no Complaint has been served via email on Mr. Spragens following entry of the Court's Order permitting the same. Defendants file this Motion to Dismiss in response nonetheless.

## IV.    LAW AND ARGUMENT

### A.    Standard for Dismissal

This motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or in the alternative, Rule 12(b)(6) for failure to state a claim. Courts in the Sixth Circuit permit motions to dismiss pursuant to a covenant-not-to-sue or arbitration agreement to be brought as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *See, e.g., Winn v. Tenet Healthcare Corp.*, No. 2:10-cv-02140-JPM-cgc, 2011 WL 294407 (W.D. Tenn. Jan. 27, 2011); *Multiband Corp. v. Block*, No. 11-15006, 2012 WL 1843261, at *5 (E.D. Mich. May 21, 2012).

Rule 12(b)(1) motions to dismiss fall into two categories: facial attacks and factual attacks. *Gentek Bldg. Prods, v. Sherwin-Williams Co.*, 491 F.2d 320, 330 (6th Cir. 2007). Unlike a facial attack, a factual attack does not challenge the sufficiency of the pleading,

but the factual existence of subject matter jurisdiction. *Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "[N]o presumptive truthfulness applies to factual allegations and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citation omitted). In reviewing factual motions, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

With either challenge (facial or factual), the plaintiff bears the burden of proving that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *see also Rogers v. Stratton Indus., Inc.* 798 F.2d 913, 915 (6th Cir. 1986). Where, as in the instant case, a court lacks jurisdiction over a plaintiff's claims pursuant to Rule 12(b)(1), the complaint also fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Accordingly, "[w]hen all claims made in the litigation are subject to arbitration, the court may choose to dismiss the action in its entirety for failure to state a claim under Rule 12(b)(6)." *Rutter v. Darden Restaurants, Inc.*, No. CV 08-6106 AHM (SSx), 2008 WL 494043, at *9 (C.D. Cal. Nov. 18, 2008). **In fact, "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration**." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). (emphasis added).

## B. The Federal Arbitration Act Provides for Enforcement of the Arbitration Agreement and Covenant-Not-to-Sue.

The Federal Arbitration Act ("FAA") applies to agreements "involving commerce." 9 U.S.C. § 2. The FAA provides in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The "term 'involving commerce' in the FAA [is] the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). For the FAA to apply, the transaction that the contract evidences need only affect interstate commerce.  *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995).

The contract at issue here clearly "affects commerce." It is an engagement agreement between a law firm, its lawyers, and a client for the purpose of bringing suit against one of the largest hospitals and health care providers in the Southeast. Accordingly, each of the engagement agreements implicated "involved commerce" and the FAA is controlling.

In enacting the FAA, Congress intended to overcome general reluctance to enforce arbitration agreements. *Allied-Bruce Terminix Cos.*, 513 U.S. at 270.  The FAA establishes the types of arbitration agreements that are enforceable and provides that "[a] written provision in any contract . . . involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Circuit City Stores*, 532 U.S. at 105 (finding that the use of agreements to resolve matters through mandatory arbitration is well-recognized, valid, and enforceable); *Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (arbitration agreements must be enforced according to their terms).  The FAA places arbitration on

15

equal footing with contracts and establishes a federal policy in favor of arbitration. *See, e.g., Green Tree Financial Corp. v. Randolph*, 531 U.S 79, 90 (2000); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Arbitration will generally be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techns., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Accordingly, any doubts regarding the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. Both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit recognize this concept and have applied a liberal presumption in favor of arbitrability. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Dawson v. Rent-A-Ctr., Inc.*, 490 F. App'x 727, 729 (6th Cir. 2012).

"When faced with a motion to compel arbitration, a district court must follow the procedure set forth in [S]ection 4 of the FAA . . . ." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003). "[I]f a litigant establishes the existence of a valid agreement to arbitrate, the district court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration." *Cronk v. TRG Customer Sols., Inc.*, No. 1:17-cv-00017, 2017 WL 5517259, at *3 (M.D. Tenn. Nov. 17, 2017) (citing *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005)).

**C.** **Plaintiff Cummings, as well as Co-Defendant Cummings Manookian, entered into an Enforceable Arbitration Agreement and Covenant-Not-to-Sue with the Defendants.**

The parties' arbitration agreement is valid and enforceable. The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principal that arbitration is a matter of contract. 9 U.S.C. § 4. A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA. *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under Tennessee law, a contract is formed when the parties have a meeting of the minds – an offer, an acceptance, and consideration. *See Doe v. HCA Health Servs. of Tenn., Inc.*, 26 S.W.3d 191, 196 (Tenn. 2001) (setting forth the requirements for contract formation under Tennessee law). Here, an explicit offer and acceptance occurred. Cummings literally drafted and then agreed to all of the terms within the engagement agreement, including the specific terms prohibiting the litigation of any claim in favor of a mediation and then binding arbitration.

There was also valid and ample consideration for both the covenant-not-to-sue and the arbitration agreement. Mr. Keefer was provided with representation by attorneys and the attorneys were provided with the payment in the form of a contingency fee in a significant wrongful death suit. In any event, a mere mutual agreement not to litigate is routinely considered sufficient consideration for purposes of an arbitration agreement. *See, e.g., Wilks v. Pep Boys,* 241 F. Supp. 2d 860, 863 (M.D. Tenn. 2003) (explaining that mutual promises to arbitrate claims constitutes adequate consideration); *Brown v. Heartland Emp't Servs.*, No. 19-11603, 2020 WL 2542009, *3 (E.D. Mich. May 19, 2020) (noting that "[t]he Sixth Circuit has found in numerous cases that mutual promises to arbitrate claims constitute bilateral consideration").

**D.    The Covenant-Not-to-Sue and the Arbitration Agreement Apply to the Claims Raised in this Case.**

Plaintiff's claims here fall squarely within the scope of the parties' covenant-not-to-sue and arbitration agreement and are expressly contemplated by the 2017 and 2019 engagement agreements. While Mr. Keefer never accepted it, it is worth noting that the engagement agreement Mr. Cummings asked him to sign in 2020 included a verbatim provision. There is simply no doubt that Mr. Cummings, throughout the entire course of his representation and relationship with the Defendants, agreed that he would never litigate the very claims he has brought in this case: disputes arising out of his representation of Brett Keefer.

The Supreme Court has held: "absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of dispute subject to arbitration." *Equal Employment Opportunity Comm'n v. Waffle House*, 534 U.S. 279, 289 (2002). Moreover, in reviewing the scope of the arbitration agreement, the court must be guided by the principle that arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–50 (1986); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

"In the Sixth Circuit, the test for determining whether a dispute falls within the scope of a broad arbitration clause is if 'an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement – along with the presumption in favor of arbitrability and the intent of the parties.'" *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 758 (E.D. Tenn. 2011) (quoting *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008)).

Here, Mr. Cummings' own Complaint does not and cannot exist without reference to the attorney-client relationship or engagement agreements at issue. Indeed, the covenant-not-to-sue and arbitration provisions expressly informed Mr. Cummings (its drafter) that they cover all claims and controversies arising out of the attorney-client relationship: "potential" or "real." It is hard to imagine more broadly applicable language in a contract between an attorney and client than the following:

> "Consequently, neither the client <u>nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship,</u> and the forum for any such dispute must first be a good-faith mediation and then binding arbitration." **Exhibit 1**. at Page 3. Emphasis added.

> **<u>Mediation and Binding Arbitration of Any Attorney-Client Disputes</u>**
>
> While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

Put simply and alternatively, Mr. Keefer and Mr. Cummings did not have a relationship outside of their attorney-client relationship. Moreover, and notably, the clauses expressly cover any and all claims by "any attorneys" in the attorney-client

relationship "about… or within the attorney-client relationship." This broad, encompassing language applies to Defendants Hagh and Cummings Manookian as well. Accordingly, all of Mr. Cummings' claims fall within the scope of the covenant-not-to-sue and arbitration provisions he drafted and insisted upon.

## E. The Case Should Be Dismissed with Prejudice, or in the Alternative, the Court Should Stay the Action.

Because Mr. Cummings' claims are both barred by his own contract and arbitrable under the FAA, this Court should dismiss all of Plaintiff's claims with prejudice. Although the FAA provides for a stay of court proceedings "until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, courts routinely dismiss cases where all of the claims are subject to arbitration, <u>even in the absence of an express covenant-not-to-sue **as exists here**</u>. *See Arnold v. Arnold Corp. Printed Commc'ns for Bus.*, 920 F.2d 1269, 1275–76 (6th Cir. 1990) (holding that it was not "error for the district court to dismiss the complaint" after ordering arbitration); *Dean v. Draughons Jr. Coll., Inc.*, 917 F. Supp. 2d 751, 764 (M.D. Tenn. 2013); *Allen v. Tenet Healthcare Corp.*, 370 F. Supp. 2d 682 (M.D. Tenn. 2005) (wherein this court dismissed plaintiff's claims with prejudice where all claims were subject to binding arbitration). *See also Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (rejecting argument that the FAA requires district courts to stay suits pending arbitration rather than dismiss them).

The Sixth Circuit Court of Appeals has stated that "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.,* 200 F.3d 967, 973 (6th Cir. 2000); *SL Tennessee LLC v. Ochiai Georgia*, LLC, No. 3:11-cv-340, 2012 WL 381338, at *7–8 (E.D. Tenn. Feb. 6, 2012) ("[W]hen the court determines that all the claims in a cause of

action are to be submitted to arbitration, it may dismiss, rather than stay the action because staying the action will serve no purpose."); *see also Asbell v. Educ. Affiliates*, No. 3:12-cv-00579, <mark>2013 WL 1775078</mark>, at *18 (M.D. Tenn. Apr. 25, 2013) (dismissing case).

The necessity for a dismissal with prejudice is further underscored here, where Mr. Cummings – a sophisticated lawyer – drafted and inserted a clause in the very contract he now seeks to litigate which **expressly** states that, "neither the client <u>nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship</u>."  Mr. Cummings apparent disregard for the sanctity of his own signed representations aside, he has simply contracted himself out of this courtroom.

## V.    CONCLUSION

This Court does not have the lawful authority to adjudicate Plaintiffs' claims because the parties have contractually agreed that "neither the client nor the attorneys in this Attorney Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship" and designated mediation followed by arbitration instead as the exclusive manner of resolution for all disputes between the parties.  The clauses expressly and unambiguously apply to all of the claims asserted by Mr. Cummings (which arise exclusively out of his attorney-client relationship) and all of the parties (whose roles and conduct were exclusively within the attorney-client relationship).  __Exhibit 1__, at Page 3.  Accordingly, the Court should dismiss this matter in its entirety with prejudice.

Date:  May 4, 2023                          Respectfully submitted,


                                            */s/ John Spragens*
                                            John Spragens (TN Bar No. 31445)
                                            Spragens Law PLC
                                            311 22nd Ave. N.
                                            Nashville, TN 37203
                                            T: (615) 983-8900
                                            F: (615) 682-8533
                                            john@spragenslaw.com

                                            *Attorney for Brett Keefer and Afsoon*
                                            *Hagh for Purposes of Motion to Dismiss*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed May 4, 2023 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.


                                            */s/ John Spragens*

# CUMMINGS MANOOKIAN

**ATTORNEY-CLIENT AGREEMENT**

**BRIAN CUMMINGS**
Licensed to practice in
Tennessee, Georgia,
Florida, California, and
Hawaii

April 19, 2017


**EXHIBIT**
**1**

<u>**Via E-Mail: chimme_chunga@yahoo.com**</u>
Edward Goodwin
Brett Keefer

Re:    **Legal Representation and Engagement**

Dear Edward and Brett:

It is our firm's practice to enter into written engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you. <u>Please read it carefully</u>.

**BRIAN MANOOKIAN**
Licensed to practice in
Tennessee

Once you have reviewed this letter and are in agreement with its terms, please sign a copy in the space provided below and return it to our office. We reserve the right to not begin work on your case, or to stop existing work, until a signed copy is received. If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

## Client and Scope of Representation

Our clients will be you as the surviving spouse and surviving child regarding the April 14, 2017 death of Chesta Shoemaker at Vanderbilt University Medical Center.

www.cmtriallawyers.com

All work on this matter by Cummings Manookian, our firm, will be done by Brian Cummings or Brian Manookian. Our office phone number is (615) 266-3333. We can be reached on that line during normal business hours.

Should you have any questions or concerns about any person in our firm who is working on this matter, or any work being performed by us on your behalf, please do not hesitate to contact us. We are happy to discuss those items with you at any time.

## Contingency Fee

Our fees for work on this case will be on a contingency basis. This means that you only pay us a fee if you receive a settlement, judgment, or

45 Music Square West
Nashville, TN 37203
T: (615) 266-3333
F: (615) 266-0250

1

award in this matter. If you do not receive a settlement, judgment, or award we do not receive a fee. The contingency fee rate is 33.33%.

## Costs and Expenses

There will likely be costs and expenses involved in pursuing this matter. They may include items such as obtaining records, court filing fees, expert witness fees, court reporter fees, and deposition transcripts, among other things. We will advance those costs and expenses, arranging for them to be paid directly by our firm during the pendency of the matter. You remain ultimately responsible for the costs and expenses. At the conclusion of the matter, the costs and expenses that we advanced will be reimbursed to our firm by those expenses being deducted from the amount you receive after the contingency fee is allocated.

We specifically do not charge you for, or collect at the end of matter, expenses for general office copies, faxes, postage, courier services, long-distance phone calls, or mileage. In the potential and unlikely event that you lose in litigation via the Defendant getting dismissed via a Motion to Dismiss being granted in favor of the Defendant (which is very unlikely), you may also be responsible for the opposing party's attorneys' fees and costs.

## Review and Waiver of Conflicts

We have evaluated potential conflicts of interest with respect to our representation of you. We are not currently aware of any conflicts in connection with this matter.

## Your Responsibilities

We cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with us and to promptly provide all information known or available to you that is relevant to our representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing us of changes in your address and telephone numbers.

## Settlement or Compromise

This is your case. Prior to any settlement, we will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding.

## Termination of Professional Relationship

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you

509

terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

## Mediation and Binding Arbitration of Any Attorney-Client Disputes

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

*****************

If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (bcummings@cummingsmanookian.com), fax (615-266-0250), or mail.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me.

Sincerely,

Brian Cummings
CUMMINGS MANOOKIAN PLC

3

I have read and consent to the terms in this letter.

_____     4-19-17
Edward Goodwin                       DATE

_____     4-19-17
Brett Keefer                         DATE

4

511



EXHIBIT

2

Correspondence from:
**Brian Manookian, Esq.**
brian@tntriallawyers.com

BRIAN MANOOKIAN
Licensed to practice in TN

August 23, 2019

<u>Via E-Mail:</u>
Brett Keefer

Re:    **Updated Legal Representation and Engagement**

Dear Brett:

As you know, Brian Cummings and I no longer practice as partners in the same firm. As a result, Cummings Manookian, the law firm, no longer exists. I am providing you this updated Attorney-Client Agreement to simply memorialize that you are now represented by Manookian PLLC. The terms are otherwise identical to the prior agreement you signed.

It is our firm's practice to enter into written engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you. <u>Please read it carefully.</u>

Once you have reviewed this letter and are in agreement with its terms, please sign a copy in the space provided below and return it to our office. We reserve the right to not begin work on your case, or to stop existing work, until a signed copy is received. If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

**Client and Scope of Representation**

Our clients will be you as the surviving spouse and surviving child regarding the April 14, 2017 death of Chesta Shoemaker at Vanderbilt University Medical Center.

All work on this matter by Manookian PLLC or Hagh Law, our firms, will be done by Brian Manookian or Afsoon Hagh. Manookian PLLC's office phone number is (615) 266-3333. I can be reached on that line during normal business hours.

Should you have any questions or concerns about any person in our firm who is working on this matter, or any work being performed by us on your

45 Music Square West
Nashville, TN 37203
T  615.266.3333
F  615.266.0250

www.tntriallawyers.com

behalf, please do not hesitate to contact us. We are happy to discuss those items with you at any time.

### Contingency Fee

Our fees for work on this case will be on a contingency basis. This means that you only pay us a fee if you receive a settlement, judgment, or award in this matter. If you do not receive a settlement, judgment, or award we do not receive a fee. The contingency fee rate is 33.33%. We may split some portion of that fee with Brian Cummings of Cummings Law as permitted by the Tennessee Rules of Professional Conduct. Any portion of the fee paid to Brian Cummings will come from our 33.33% and will cost you nothing additional.

### Costs and Expenses

There will likely be costs and expenses involved in pursuing this matter. They may include items such as obtaining records, court filing fees, expert witness fees, court reporter fees, and deposition transcripts, among other things. We will advance those costs and expenses, arranging for them to be paid directly by our firm during the pendency of the matter. You remain ultimately responsible for the costs and expenses. At the conclusion of the matter, the costs and expenses that we advanced will be reimbursed to our firm by those expenses being deducted from the amount you receive after the contingency fee is allocated.

We specifically do not charge you for, or collect at the end of matter, expenses for general office copies, faxes, postage, courier services, long-distance phone calls, or mileage. In the potential and unlikely event that you lose in litigation via the Defendant getting dismissed via a Motion to Dismiss being granted in favor of the Defendant (which is very unlikely), you may also be responsible for the opposing party's attorneys' fees and costs.

### Review and Waiver of Conflicts

We have evaluated potential conflicts of interest with respect to our representation of you. We are not currently aware of any conflicts in connection with this matter.

### Your Responsibilities

We cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with us and to promptly provide all information known or available to you that is relevant to our representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing us of changes in your address and telephone numbers.

513

**Settlement or Compromise**

This is your case. Prior to any settlement, we will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding.

**Termination of Professional Relationship**

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

**Mediation and Binding Arbitration of Any Attorney-Client Disputes**

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

*****************

If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (brian@tntriallawyers.com), fax (615-266-0250), or mail.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me.

3

514

Sincerely,

Brian Manookian

9-16-2019

Brett Keefer

4


## Re: Shoemaker - Brian Cummings / Cummings Law

1 me age

**Brett keefer** <brett.keefer@yahoo.com>
To: Brian Cummings <brian@cummingsinjurylaw.com>



Fri, Jan 3, 2020 at 11:42 AM

I agree

Sent from Yahoo Mail for iPhone

On Friday, January 3, 2020, 12:35 PM, Brian Cummings <brian@cummingsinjurylaw.com> wrote:

Brett   Thank you for providing me this morning with the attached Attorney Client Agreement you signed with Manookian PLLC in the second half of 2019. Today was the first time I saw a copy of that document.

I need to confirm with you that you have always agreed to and authorized me to work as a lawyer on this case, and that you continue to do so. I also need to confirm with you that any litigation expenses I have or that I will advance on your behalf will be reimbursed. This 2019 agreement does not speak to those two particular issues, and even if we both expected those to things to be part of the past and ongoing work done by me on this case, I need to ask that you email me back something like "I agree."

This request for a responsive email is only to supplement the previous Attorney Client Agreements you signed in this case, and this affirmation is not meant to delete any aspect of any other such documents you signed. Also, nothing about this email exchange today increases or changes the total contingency fee rate of 33.33% that is in the prior documents.

Brian

--
Brian Cummings
Cumming   Law
4235 Hillsboro Pike #300
Nashville, TN 37215
T: 615-800-6822
F  615 815 1876
www.cummingsinjurylaw.com

# CUMMINGS LAW

www.cummingsinjurylaw.com

**Brian Cummings**
Licensed to practice in TN, GA,
FL, CA & HI

brian@cummingsinjurylaw.com

4235 Hillsboro Pike #300
Nashville, TN 37215

Phone: (615) 800-6822
Fax: (615) 815-1876

**EXHIBIT**

**4**

September 24, 2020

<u>**Via Email: brett.keefer@yahoo.com**</u>
Brett Keefer

### Re: <u>Chesta Shoemaker – medical malpractice / wrongful death matter</u>

Dear Brett:

It is my firm's practice to enter into written engagement letters with my clients. This letter serves the purpose of setting forth the basis on which I will continue to represent you. <u>Please read it carefully.</u>

<u>This letter is a follow up on the following enclosed documents – (1) your original Attorney-Client Agreement with Cummings Manookian while I was there, (2) your additional Agreement with Afsoon Hagh and Brian Manookian following my departure from Cummings Manookian and the end of that firm and the beginning of their firms, and (3) our more recent email exchange documenting you have continued to want me to represent you in this matter.</u>

Once you have reviewed this letter and agree with its terms, <u>please sign and date a copy in the space provided below and return it to me</u>. <u>Nothing in this agreement increases the total attorney's fee that has already been agreed to via the contingency fee agreement of 33.33%.</u> If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

### Client and Scope of Representation

My client will continue to be you regarding the medical malpractice related to your mother's April 14, 2017 death at Vanderbilt.

### Contingency Fee

The attorneys' fees for work on this case will be on a "contingency" basis. This means that I only receive a fee if you receive a settlement, judgment, or award in this matter. If you do not

receive a settlement, judgment, or award, I do not receive a fee. The contingency fee rate is 33.33%, with that fee being split between the attorneys who have worked and are working on this matter – including as permitted by Tennessee law and the Tennessee's Rules of Professional Conduct applicable to attorneys. <u>Again, nothing in this agreement increases the total attorney's fee that has already been agreed to via the contingency fee agreement of 33.33%.</u>

## Costs and Expenses

There will likely be ongoing, additional costs and expenses involved in this matter. They may include items such as fees for obtaining records, court filing fees, expert fees, expert witness fees, court reporter fees, and fees for copies of deposition transcripts, among other things. To the extent my firm advances those costs and expenses, they will be paid directly by my firm during the pendency of the matter. You remain ultimately responsible for the costs and expenses, including regardless of the case outcome. At the conclusion of the matter, the costs and expenses that have been advanced by me and that will be advanced by me will be reimbursed to my firm.

## Review and Waiver of Conflicts

I previously evaluated potential conflicts of interest with respect to my representation of you. I continue to not be aware of any conflicts in connection with this matter.

## Your Responsibilities

I cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with me and to promptly provide all information known or available to you that is relevant to this representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing me of changes in your address and telephone numbers. You agree to provide me with an email address I can use to email you regarding this matter, including to send you electronic copies of documents.

## Settlement or Compromise

<u>This is your case</u>. Prior to any potential settlement, I will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding.

## Termination of Professional Relationship

You have the right to change attorneys to another attorney or firm at any time by sending me a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you terminate the representation before the conclusion of the matter, I will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work performed, based upon

the amount of time required, the complexity of the matter, the time frame within which the work was performed, my experience, ability, reputation, the responsibility involved, and the results obtained.

I may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you.

## Online Reviews of Law Firm

As part of this Agreement, you agree that if you leave any kind of review for my law firm online, including a Google review, that it will be 5/5 stars and have only positive comments. If you do not believe you can leave such a review, then you simply agree to not leave any type of review. This provision is included to avoid having to deal with the hypothetical possibility that a client's potential emotional response to any aspect of this matter would otherwise lead the client to leave an unjustified negative review, or to threaten such a thing, including if a medical expert is unable to provide an opinion in support of this matter.

## Mediation and Binding Arbitration of Any Attorney-Client Disputes

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential dispute or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do I) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorney in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

****************

If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (brian@cummingsinjurylaw.com), fax (615-815-1876), or traditional U.S. Mail. I appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me at any time.

Sincerely,

Brian Cummings

3

I have read and consent to the terms in this letter.

_____        _____

BRETT KEEFER                                                  DATE

## CUMMINGS MANOOKIAN

**ATTORNEY-CLIENT AGREEMENT**

April 19, 2017

**BRIAN CUMMINGS**
Licensed to practice in
Tennessee, Georgia,
Florida, California, and
Hawaii

<u>**Via E-Mail: chimme_chunga@yahoo.com**</u>
Edward Goodwin
Brett Keefer

Re:    **Legal Representation and Engagement**

Dear Edward and Brett:

It is our firm's practice to enter into written engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you. <u>Please read it carefully</u>.

**BRIAN MANOOKIAN**
Licensed to practice in
Tennessee

Once you have reviewed this letter and are in agreement with its terms, please sign a copy in the space provided below and return it to our office. We reserve the right to not begin work on your case, or to stop existing work, until a signed copy is received. If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

**Client and Scope of Representation**

www.cmtriallawyers.com

Our clients will be you as the surviving spouse and surviving child regarding the April 14, 2017 death of Chesta Shoemaker at Vanderbilt University Medical Center.

All work on this matter by Cummings Manookian, our firm, will be done by Brian Cummings or Brian Manookian. Our office phone number is (615) 266-3333. We can be reached on that line during normal business hours.

Should you have any questions or concerns about any person in our firm who is working on this matter, or any work being performed by us on your behalf, please do not hesitate to contact us. We are happy to discuss those items with you at any time.

**Contingency Fee**

45 Music Square West
Nashville, TN 37203
T: (615) 266-3333
F: (615) 266-0250

Our fees for work on this case will be on a contingency basis. This means that you only pay us a fee if you receive a settlement, judgment, or

521

award in this matter. If you do not receive a settlement, judgment, or award we do not receive a fee. The contingency fee rate is 33.33%.

## Costs and Expenses

There will likely be costs and expenses involved in pursuing this matter. They may include items such as obtaining records, court filing fees, expert witness fees, court reporter fees, and deposition transcripts, among other things. We will advance those costs and expenses, arranging for them to be paid directly by our firm during the pendency of the matter. You remain ultimately responsible for the costs and expenses. At the conclusion of the matter, the costs and expenses that we advanced will be reimbursed to our firm by those expenses being deducted from the amount you receive after the contingency fee is allocated.

We specifically do not charge you for, or collect at the end of matter, expenses for general office copies, faxes, postage, courier services, long-distance phone calls, or mileage. In the potential and unlikely event that you lose in litigation via the Defendant getting dismissed via a Motion to Dismiss being granted in favor of the Defendant (which is very unlikely), you may also be responsible for the opposing party's attorneys' fees and costs.

## Review and Waiver of Conflicts

We have evaluated potential conflicts of interest with respect to our representation of you. We are not currently aware of any conflicts in connection with this matter.

## Your Responsibilities

We cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with us and to promptly provide all information known or available to you that is relevant to our representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing us of changes in your address and telephone numbers.

## Settlement or Compromise

This is your case. Prior to any settlement, we will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding.

## Termination of Professional Relationship

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you

2

522

terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

## Mediation and Binding Arbitration of Any Attorney-Client Disputes

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

*****************

If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (bcummings@cummingsmanookian.com), fax (615-266-0250), or mail.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me.

Sincerely,

Brian Cummings
CUMMINGS MANOOKIAN PLC

3

523

I have read and consent to the terms in this letter.

_____  4-19-17
Edward Goodwin              DATE

_____  4-19-17
Brett Keefer                DATE

4

524


MANOOKIAN PLLC

Correspondence from:
**Brian Manookian, Esq.**
brian@tntriallawyers.com

BRIAN MANOOKIAN
Licensed to practice in TN

August 23, 2019

<u>Via E-Mail:</u>
Brett Keefer

Re:    **Updated Legal Representation and Engagement**

Dear Brett:

As you know, Brian Cummings and I no longer practice as partners in the same firm. As a result, Cummings Manookian, the law firm, no longer exists. I am providing you this updated Attorney-Client Agreement to simply memorialize that you are now represented by Manookian PLLC. The terms are otherwise identical to the prior agreement you signed.

It is our firm's practice to enter into written engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you. <u>Please read it carefully</u>.

Once you have reviewed this letter and are in agreement with its terms, please sign a copy in the space provided below and return it to our office. We reserve the right to not begin work on your case, or to stop existing work, until a signed copy is received. If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

**<u>Client and Scope of Representation</u>**

Our clients will be you as the surviving spouse and surviving child regarding the April 14, 2017 death of Chesta Shoemaker at Vanderbilt University Medical Center.

All work on this matter by Manookian PLLC or Hagh Law, our firms, will be done by Brian Manookian or Afsoon Hagh. Manookian PLLC's office phone number is (615) 266-3333. I can be reached on that line during normal business hours.

Should you have any questions or concerns about any person in our firm who is working on this matter, or any work being performed by us on your

45 Music Square West
Nashville, TN 37203
T 615.266.3333
F 615.266.0250

www.tntriallawyers.com

behalf, please do not hesitate to contact us. We are happy to discuss those items with you at any time.

## Contingency Fee

Our fees for work on this case will be on a contingency basis. This means that you only pay us a fee if you receive a settlement, judgment, or award in this matter. If you do not receive a settlement, judgment, or award we do not receive a fee. The contingency fee rate is 33.33%. We may split some portion of that fee with Brian Cummings of Cummings Law as permitted by the Tennessee Rules of Professional Conduct. Any portion of the fee paid to Brian Cummings will come from our 33.33% and will cost you nothing additional.

## Costs and Expenses

There will likely be costs and expenses involved in pursuing this matter. They may include items such as obtaining records, court filing fees, expert witness fees, court reporter fees, and deposition transcripts, among other things. We will advance those costs and expenses, arranging for them to be paid directly by our firm during the pendency of the matter. You remain ultimately responsible for the costs and expenses. At the conclusion of the matter, the costs and expenses that we advanced will be reimbursed to our firm by those expenses being deducted from the amount you receive after the contingency fee is allocated.

We specifically do not charge you for, or collect at the end of matter, expenses for general office copies, faxes, postage, courier services, long-distance phone calls, or mileage. In the potential and unlikely event that you lose in litigation via the Defendant getting dismissed via a Motion to Dismiss being granted in favor of the Defendant (which is very unlikely), you may also be responsible for the opposing party's attorneys' fees and costs.

## Review and Waiver of Conflicts

We have evaluated potential conflicts of interest with respect to our representation of you. We are not currently aware of any conflicts in connection with this matter.

## Your Responsibilities

We cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with us and to promptly provide all information known or available to you that is relevant to our representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing us of changes in your address and telephone numbers.

526

## Settlement or Compromise

This is your case. Prior to any settlement, we will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding.

## Termination of Professional Relationship

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

## Mediation and Binding Arbitration of Any Attorney-Client Disputes

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (brian@tntriallawyers.com), fax (615-266-0250), or mail.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me.

3

Sincerely,

Brian Manookian

Brett Keefer    9-16-2019

4


## Re: Shoemaker - Brian Cummings / Cummings Law
1 message

**Brett keefer** <brett.keefer@yahoo.com>                          Fri, Jan 3, 2020 at 11:42 AM
To: Brian Cummings <brian@cummingsinjurylaw.com>

I agree

Sent from Yahoo Mail for iPhone

On Friday, January 3, 2020, 12:35 PM, Brian Cummings <brian@cummingsinjurylaw.com> wrote:

Brett - Thank you for providing me this morning with the attached Attorney-Client Agreement you signed with Manookian PLLC in the second half of 2019. Today was the first time I saw a copy of that document.

I need to confirm with you that you have always agreed to and authorized me to work as a lawyer on this case, and that you continue to do so. I also need to confirm with you that any litigation expenses I have or that I will advance on your behalf will be reimbursed. This 2019 agreement does not speak to those two particular issues, and even if we both expected those to things to be part of the past and ongoing work done by me on this case, I need to ask that you email me back something like "I agree."

This request for a responsive email is only to supplement the previous Attorney-Client Agreements you signed in this case, and this affirmation is not meant to delete any aspect of any other such documents you signed. Also, nothing about this email exchange today increases or changes the total contingency fee rate of 33.33% that is in the prior documents.

Brian

--
Brian Cummings
Cummings Law
4235 Hillsboro Pike #300
Nashville, TN 37215
T: 615-800-6822
F: 615-815-1876
www.cummingsinjurylaw.com

# CUMMINGS LAW

**Brian Cummings**
Licensed to practice in TN, GA,
FL, CA & HI

www.cummingsinjurylaw.com

4235 Hillsboro Pike #300
Nashville, TN 37215

brian@cummingsinjurylaw.com

Phone: (615) 800-6822
Fax: (615) 815-1876

October 2, 2020

**EXHIBIT**

**5**

**Via Email**
Brett Keefer
Afsoon Hagh

Re:    **Shoemaker matter – Brian Cummings' withdrawal as counsel**

Dear Brett and Afsoon:

First, let me say that it has been a pleasure to represent Brett since April 2017 when Brian Manookian and I practiced law together at Cummings Manookian. With that said, I am writing to communicate that, effective today, I am withdrawing as co-counsel in this matter.

After conversations last week with Afsoon and then yesterday with Brett, I believe I am ethically required to withdraw as counsel. Based on your very recent comments, my relationships with each of you have become strained, and your comments indicate there is personal conflict in these relationships. The deterioration of these relationships is unfortunate, but it happens. Professionally, however, my belief is that the situation requires me to withdraw as counsel because those strains may prevent us going forward from working as well and effectively together for the client and for the case as is at all times required.

I heard from Afsoon last week that she believed I was acting "shady" and "only looking out for Brian Cummings." I heard from Brett yesterday that he would not sign an Attorney-Client Agreement with my current firm (I do appreciate Brett stating yesterday that he believed I was "covered" under a previous agreement and that he was told this), that he was told not to sign the Agreement, that he was concerned I was trying to increase the total contingency fee above the 33.33% fee rate previously agreed to (which would be deceitful, and despite me previously stating orally and underlining in the Agreement that no such increase would occur), and telling me he felt I have become frustrated with him. Based on these very recent comments, these relationships lack the amount of complete trust and the absence of conflict that is required in my co-counsel relationships and in my Attorney-Client relationships.

I wanted to send this in writing soon after my conversation with Brett yesterday. It will be next week before I will file notice with the Court regarding my withdrawal. Because this withdrawal is effective immediately, please understand that our communications going forward will not be covered by the Attorney-Client Privilege, but nonetheless, I ask that any such communication be in writing.

Enclosed is a list of our experts' email addresses. I am providing this so Afsoon can move forward with communicating with our experts regarding confirming and scheduling their depositions, and as follow up on the recent emails I copied her on about the scheduling of their

depositions. I am willing to let the experts know that I am no longer involved in this case and that Afsoon is their contact going forward, including for payment of their future invoices, but I understand if Afsoon wants to handle those communications herself. I simply ask that nothing disparaging be said about me to the experts, including because at least one of our experts in this case is also working with me on another matter.

Logistically, I will be glad to email Afsoon any part of the file that she does not currently have, as I have always been. With that said, I leave today on a family vacation and will be doing much less work than normal during that time, but I will respond to any such request in a reasonable amount of time.

Lastly, let me wish both of you the best in this case and in all things. What occurred at Vanderbilt was awful and easily preventable, and a terrific case exists for a great outcome for Brett after all that was taken from him and his brothers, and for which dollars are the only civil remedy.

Sincerely,

Brian Cummings

Enclosure

**Email addresses for Shoemaker experts**

Dr. Jeffrey Springer      jrsfpdoc@gmail.com

Dr. Ruxana Sadikot      ruxana.sadikot@emory.edu

Dr. James Calland      james.forrest.calland@gmail.com

Dr. Don Reiff      dreiff@uabmc.edu

Dr. Leon Sykes      trasurg@aol.com

Dr. Jeffrey Jim      jjmdms@gmail.com

Dr. Alfred Pirro      alpirro1@gmail.com

Dr. Fred Callahan      stealthasc@earthlink.net

Dr. Gretchen Green      DrGreen@gretchengreenmd.com

Charles Baum, Ph.D.      cbaum@baumeconomics.com

JAMES W. PRICE, JR.*
WM. TIMOTHY HILL

* ALSO ADMITTED IN FLORIDA

LAW OFFICES
**PRICE, HILL & KOLARICH**
AN ASSOCIATION
SUITE 1800
201 4th AVENUE NORTH
NASHVILLE, TENNESSEE 37219

ROBERT E. KOLARICH**

** ALSO ADMITTED IN MISSOURI AND MISSISSIPPI

TELEPHONE 615-244-5772
TELECOPIER 615-244-5821

February 1, 2022

**EXHIBIT**

**6**

**EMAIL:** afsoon@haghlaw.com
**FAX:** 615-266-3655
**U.S. MAIL:**
Afsoon Hagh
Hagh Law PLC
1906 Glen Echo Road, #150229
Nashville, TN 37215

Re: *Keefer v. VUMC* (Fee Dispute Mediation)

Dear Afsoon:

I emailed you at afsoon@haghlaw.com on the 24th day of January, 2022, requesting that you inform me as to whether or not your client, Mr. Keefer, wishes to proceed with the binding arbitration as provided for in the Attorney-Client Agreement. It appears that the email at this address was rejected so I am re-sending my letter by U.S. Mail, fax, and email.

I am sure you agree that it is to everyone's benefit that this matter be resolved as quickly as possible. It would appear that the binding arbitration as provided for in the Attorney-Client Agreement is the most simple and quick way to resolve this issue and my client is prepared to proceed with that immediately. If you and your client agree with that, please let me know and I will be happy to provide a list of proposed arbitrators.

Even though Mr. Cummings is prepared to proceed to arbitration, we do not feel that it is proper for him to demand that Mr. Keefer submit to arbitration. As unpleasant and lengthy as litigation may be, however, my client is prepared to go forward in that venue if Mr. Keefer does not wish to arbitrate.

In light of all of that, please contact me as soon as possible and no later than ten days from receipt of this letter as to whether or not you represent Mr. Keefer and whether or not he wishes to proceed with binding arbitration. If I do not hear from you by this time, I will assume that you represent Mr. Keefer and he does not wish to submit to binding arbitration. In that case, I will have no alternative but to file suit in the Circuit Court to enforce the lien.

I urge your immediate response to this.

Very truly yours,

James W. Price, Jr.

JWP/vg

Enclosure

cc:     Brian Cummings



**AFSOON HAGH**
Licensed to practice in TN

February 11, 2022

EXHIBIT

7
_____

**VIA ELECTRONIC MAIL**
James Price
201 4th Avenue North
Nashville, TN 37219

> *Re:     Keefer v. VUMC*

Mr. Price,

I am in receipt of your letter dated February 1, 2022.  That letter demands "an immediate response" as to whether Bretton Keefer wishes to arbitrate or litigate some unarticulated "dispute" with your client, Brian Cummings.  As briefly explained below, your letter is deficient as to defy response.[1]

Brian Cummings previously served as counsel in *Keefer v. VUMC*. He quit early in the matter after the client would not agree to settle the case for a fraction of its value, and because Mr. Cummings did not want to further contribute to the prosecution of the case.

In such an event, the engagement agreement that your client drafted and signed is crystal clear that Mr. Cummings would only be entitled to reimbursement of his advanced costs and expenses.

Your client has already been reimbursed his advanced costs and expenses.  Although your letter references a "fee dispute," it fails to describe any such dispute.  It then immediately proceeds to demand that Bretton Keefer choose arbitration or litigation as the means of adjudicating the "dispute" that is never identified.

Your letter is problematic because (1) your client objectively has no claims against Bretton Keefer, and (2) your client appears to be deliberately declining to reveal whatever claims he intends to bring *until after Mr. Keefer commits to a forum.*

Simply stated, Mr. Keefer is not in a position to respond to threats to sue him when you decline to identify the grounds for doing so.  To the extent your client incorrectly believes he is entitled to some portion of the

---

[1] This may be a result of your failing to include some enclosure that is noted in your letter but was not attached to your correspondence.  If your letter contained a draft complaint or position statement, please send it to me.

recovery in the case of his deceased mother's estate against VUMC, I can respond generally; and I am happy to do so here.

### I.  Brian Cummings is not entitled to any fee in the *Shoemaker* matter under any theory of recovery.

Brian Cummings is not entitled to any fee in the *Shoemaker* matter, either on a contractual basis or under any equitable theory.  Brian Cummings quit, early in the case, when it became apparent that he could not pressure the client to settle it for pennies on the dollar.  Mr. Cummings withdrawal occurred immediately prior to the commencement of expensive expert discovery for which Mr. Cummings did not want to contribute financially.

The engagement agreement with the client only permits repayment of expenses where the attorney quits or withdraws.  Under the terms of that agreement, Brian Cummings is entitled to repayment of advanced expenses (which he has already received), and nothing more.

Likewise, any equitable claim to attorney's fees by Mr. Cummings fails because there was an existing contract.  This alone precludes any recovery on a *quantum meruit* theory.  Even if there had not been a legally binding contract, Mr. Cummings would not be entitled to any portion of the ultimate recovery because Brian Cummings' "work" on the case was (a) *de minimis* and (b) legally deficient to the point of inarguable, objective malpractice.

### II.  Brian Cummings withdrew from the *Shoemaker* case, contractually precluding any claim to an attorney's fee.

The attorneys in this case had an engagement agreement with the client.  The engagement agreement provides that if the client fires the attorney, the attorney will be entitled to his advanced expenses plus a reasonable attorney's fee.

The engagement agreement goes on to provide that if the attorney withdraws, as opposed to being fired, the attorney is only entitled to receive back his advanced expenses.

This was a deliberate provision, drafted by Mr. Cummings, not the client; and will be construed against Mr. Cummings.  The purpose of the provision was to allow the attorneys to promptly withdraw in cases where they chose to do so, without saddling the case with an attorney's lien that could make it difficult for the client to retain new counsel.

Thus, there is an express distinction – memorialized in writing by your client – as to the consequences when an attorney is fired as opposed to when an attorney voluntarily quits.  If the attorney is removed from the case without his permission, he receives his advanced expenses and "**additionally**" a reasonable portion of the attorney's fee.  Conversely, where the attorney chooses to quit, the attorney only receives reimbursement of advanced expenses, with no additional attorney's fee.

 I am not going to belabor this point because it is self-evident from the contract Mr. Cummings drafted.  If you have any doubt, review the provision that states that in the event of

2

termination (as opposed to quitting as Mr. Cummings did), that the attorney is "**ADDITIONALLY**" entitled to a portion of the fee. No such additional allowance is made where the attorney voluntarily withdraws.

### III. Brian Cummings abandoned the client and co-counsel in his withdrawal.

Brian Cummings' withdrawal from the case was done in a highly unprofessional manner that constituted abandonment of the client. Mr. Cummings had very few responsibilities in the case, and even less that he had actually followed through with as of late September 2020. One of those responsibilities, however, was to handle expert discovery; both defending the depositions of Plaintiff's experts and conducting the depositions of Defendant's experts.

By September 30, 2020, all expert depositions had been scheduled around Mr. Cummings schedule. On that day Mr. Cummings emailed opposing counsel a final list of the deposition dates and times, confirming that he would be attending each.

Less than 72 hours later, Mr. Cummings abruptly – and out of nowhere – announced by letter that he was withdrawing from the case "effective immediately." This had never been mentioned or discussed; much less planned for such that a smooth transition could occur. At that moment over a dozen depositions of expensive, by-the-hour, experts were scheduled to go forward based upon Mr. Cummings' schedule and little could be done to rearrange those deposition given pending scheduling order deadlines.

In over a decade of practice as a plaintiff's lawyer, I have seen numerous attorneys withdraw or substitute from cases. I have never seen – or even heard of – an attorney announcing that they quit "effective immediately," without so much as consulting with co-counsel and to the clear detriment of the client.

Mr. Cummings' action in this regard were, at least, characteristic of his approach to this case from the outset. His first priority has always been himself and his own financial considerations; not what is best for the client.

### IV. Brian Cummings quit the case because he did not want to spend money on it and because the client would not settle the matter for a fraction of its final resolution; a resolution which Brian Cummings did not participate in funding or securing.

In fact, and as I later learned, Mr. Cummings had been surreptitiously attempting to have the client sign a new engagement agreement solely with Mr. Cummings' firm that provided more favorable financial terms to Mr. Cummings to the exclusion of the other lawyers who were actually working on the case.

When the client declined to renegotiate the terms of the agreement – and because the client consistently refused to settle the case for a fraction of what was ultimately recovered – Mr. Cummings quit.

3

### V. Brian Cummings did no competent, substantive work on the case.

In any event, Brian Cummings did no competent, substantive work on the case. He essentially had two major tasks; both of which he screwed up, literally, beyond repair, and both of which later resulted in the Court ordering the Plaintiff to correct or redo.

Brian Cummings was charged with drafting the Complaint in the case. He drafted a meandering, unnecessarily long, and unfocused pleading that, despite its length, failed to include many of the most basic and fundamental causes of action. Ultimately, the Court found the Complaint so deficient that it continued the trial and ordered the Plaintiff to submit an Amended Complaint. Mr. Cummings' original Complaint was so bad as to be unsalvageable. Plaintiff's counsel had to spend close to a month redrafting an entirely new Complaint.

Brian Cummings was also charged with drafting the expert disclosure. They were equally terrible. The Court found them to lack basic elements of the experts' opinions and required Plaintiff to redo them.

In sum, even where Brian Cummings actually did work, it was so deficient as to require that it be recompleted. His "contributions" were thus not contributions, but rather a distraction that did nothing to add to the bottom line.

Other than those two items, Brian Cummings primary involvement in the case consisted of tagging along to depositions taken by Brian Manookian and antagonizing the client regarding settlement offers that Mr. Cummings wanted the client to accept.

### VI. Brian Cummings' primary impact on the case was to commit significant malpractice, which he then fraudulently concealed.

As stated above, Mr. Cummings was tasked with drafting the Complaint and conducting expert discovery. In Tennessee, prior to filing a medical malpractice case, a Plaintiff must first secure an opinion from a qualified expert that there is a good faith basis for believing that malpractice was committed. A qualified expert is a physician in the same field or specialty that practiced in Tennessee or a contiguous state in the year immediately preceding the alleged act of malpractice.

Thus, Brian Cummings needed to secure an opinion from a doctor licensed in Tennessee or a bordering state that there was a good faith reason to believe Vanderbilt had committed malpractice in its treatment of Chesta Shoemaker.

Unbeknownst to the other attorneys, Mr. Cummings secured the pre-suit opinion from a physician, Dr. Sadikot, who was only licensed to practice in Florida. Inexplicably, Mr. Cummings then disclosed Dr. Sadikot as Plaintiff's foremost opinion expert in the case. Dr. Sadikot was, and is, statutorily incompetent to serve in either role.

Opposing counsel, Bradley Dowd, uncovered in Dr. Sadikot's deposition that she was never licensed in Tennessee or a surrounding state. Defendant immediately moved to disqualify

538

her, and Plaintiff was required to withdraw her as a testifying witness.

Plaintiff only recently discovered that Dr. Sadikot was also his pre-suit "expert" when Mr. Cummings submitted his expenses for reimbursement. But Dr. Sadikot could not serve in that role. Nevertheless, Brian Cummings executed an affidavit with the filing of the Complaint that he had received a pre-suit opinion from a qualified expert, when he had not. The ramifications of this fraud are beyond the scope of this letter, but could expose Mr. Keefer to suit by VUMC for fraud in the inducement.[2]

### VII.    Brian Cummings has substantial liability to Brett Keefer.

Mr. Cummings committed objective, black letter legal malpractice by disclosing a statutorily incompetent expert. He committed a fraud upon the Court and the client by executing an affidavit claiming that he had consulted with a qualified physician prior to bringing the case.

If VUMC were to learn of this, it is possible they could seek repayment of the settlement agreement on the basis of fraud in the inducement. By now the statute of limitations and repose have run on refiling any claims belonging to the Plaintiff. Mr. Keefer is put in a highly precarious situation by Mr. Cummings' malpractice and deceit.

### VIII.    Conclusion

I am not in a position to respond to your letter demanding that my client commit to a forum for resolving some "dispute" that Mr. Cummings simultaneously and deliberately declines to identify. And while I cannot remotely imagine what Mr. Cummings thinks he is owed here, I can assure you that if he files suit, it will be met with significant counterclaims, and, ultimately a malicious prosecution action against him and any attorney and law firm unwise enough to take his case.

Finally, to the extent your prior letter included an enclosure that actually outlines whatever it is your client is asking proceed to arbitration or litigation, please send it to me so that I can evaluate it and discuss it with Mr. Keefer. It is entirely plausible that my role as lead counsel in the *Shoemaker* matter would make me a witness in any future controversy. If that is the case, I have recommended that Mr. Keefer retain both the Gideon firm and Neal and Harwell to defend any meritless claims by Mr. Cummings as well as prosecute malpractice, fraud, breach of contract, and malicious prosecution actions against him.

Sincerely,

Afsoon Hagh

---

[2] Unbelievably, Mr. Cummings still insisted on being reimbursed for his expenses in retaining Dr. Sadikot; which the client has now paid him.

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 5/25/2023



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | CASE NO: 3:19-bk-07235 |
| | ) | Chapter 7 |
| Debtor. | ) | Honorable Charles M. Walker |
| | ) | |
| | ) | |
| BRIAN CUMMINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:23-ap-90036 |
| | ) | |
| BRETTON KEEFER, on behalf of the | ) | |
| deceased, CHESTA SHOEMAKER, | ) | |
| AFSOON HAGH, and JEANNE | ) | |
| BURTON, Trustee on behalf of | ) | |
| Cummings Manookian, PLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER SCHEDULING EVIDENTIARY HEARING REGARDING
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PENDING
MEDIATION AND ARBITRATION FILED ON BEHALF OF DEFENDANTS
BRETTON KEEFER AND AFSOON HAGH**

THIS MATTER before the Court is on Defendants' Bretton Keefer and Afsoon Hagh's
Motion to Dismiss, or in the Alternative, to Stay this Adversary Proceeding pending Mediation
and Arbitration. After review of the Defendants' pleading, the Court being duly advised,

IT IS HEREBY ORDERED that:

(1)    An evidentiary hearing is set for the presentation of the motion, objections, and responses
on Wednesday, August 30, 2023, at 11:00 a.m.

(2)     Any objections related to the scope of the hearing to be considered by the Court must be filed by <u>July 19, 2023</u>. Responses must be filed by <u>August 2, 2023</u>. Replies must be filed by <u>August 9, 2023</u>.

(3)     Witness and exhibit lists must be filed no later than <u>August 16, 2023</u>.

(4)     All parties and/or counsel must appear in person on the above scheduled date and time in Courtroom 2, Second Floor, Customs House, 701 Broadway, Nashville, Tennessee.

(5)     Presentation of evidence and argument is subject to applicable Federal and Local Rules.

***This order was signed and entered electronically as indicated at the top of this page.***

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

CUMMINGS,

    Plaintiff                                         Adv. Proc. No. 23-90036-CMW

KEEFER,

    Defendant

# CERTIFICATE OF NOTICE

| District/off: 0650-3 | User: admin | Page 1 of 2 |
| --- | --- | --- |
| Date Rcvd: May 25, 2023 | Form ID: pdf001 | Total Noticed: 5 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
| --- | --- |
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on May 27, 2023:**

| Recip ID | | Recipient Name and Address |
| --- | --- | --- |
| aty | + | KRISTEN M SHIELDS, COTNEY CONSTRUCTION LAW LLP, NASHVILLE, 3201 TREVOR ST, SUITE 300 NASHVILLE, TN 37209-1569 |
| aty | + | PHILLIP G YOUNG, JR, THOMPSON BURTON PLLC, 1801 WEST END AVENUE, SUITE 1550, NASHVILLE, TN 37203-2604 |
| dft | | BRETTON KEEFER, on behalf of the deceased Chesta, Shoemaker |
| dft | | JEANNE BURTON, as Trustee on behalf of Cummings, Manookian PLC |

TOTAL: 4

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
| --- | --- | --- | --- |
| ust | Email/Text: ustpregion08.na.ecf@usdoj.gov | May 26 2023 00:35:00 | US TRUSTEE, OFFICE OF THE UNITED STATES TRUSTEE, 701 BROADWAY STE 318, NASHVILLE, TN 37203-3966 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: May 27, 2023               Signature:        /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on May 25, 2023 at the address(es) listed below:**

| Name | Email Address |
| --- | --- |
| ELIZABETH SARA TIPPING | |
| | on behalf of Plaintiff BRIAN CUMMINGS liz@counterpointlaw.com |
| JOHN T. SPRAGENS | |

                          on behalf of Defendant AFSOON HAGH JOHN@SPRAGENSLAW.COM spragenslaw@ecf.courtdrive.com

PHILLIP G YOUNG

                          on behalf of Defendant JEANNE BURTON phillip@thompsonburton.com


TOTAL: 3




Charles M. Walker
U.S. Bankruptcy Judge
Dated: 5/25/2023

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | CASE NO: 3:19-bk-07235 |
| | ) | Chapter 7 |
| Debtor. | ) | Honorable Charles M. Walker |
| | ) | |
| | ) | |
| BRIAN CUMMINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:23-ap-90036 |
| | ) | |
| BRETTON KEEFER, on behalf of the | ) | |
| deceased, CHESTA SHOEMAKER, | ) | |
| AFSOON HAGH, and JEANNE | ) | |
| BURTON, Trustee on behalf of | ) | |
| Cummings Manookian, PLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER SCHEDULING EVIDENTIARY HEARING REGARDING
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PENDING
MEDIATION AND ARBITRATION FILED ON BEHALF OF DEFENDANTS
BRETTON KEEFER AND AFSOON HAGH**

THIS MATTER before the Court is on Defendants' Bretton Keefer and Afsoon Hagh's Motion to Dismiss, or in the Alternative, to Stay this Adversary Proceeding pending Mediation and Arbitration. After review of the Defendants' pleading, the Court being duly advised,

IT IS HEREBY ORDERED that:

(1) An evidentiary hearing is set for the presentation of the motion, objections, and responses on <u>Wednesday, August 30, 2023, at 11:00 a.m.</u>

(2)    Any objections related to the scope of the hearing to be considered by the Court must be filed by July 19, 2023. Responses must be filed by August 2, 2023. Replies must be filed by August 9, 2023.

(3)    Witness and exhibit lists must be filed no later than August 16, 2023.

(4)    All parties and/or counsel must appear in person on the above scheduled date and time in Courtroom 2, Second Floor, Customs House, 701 Broadway, Nashville, Tennessee.

(5)    Presentation of evidence and argument is subject to applicable Federal and Local Rules.

*This order was signed and entered electronically as indicated at the top of this page.*

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | Case No. 3:19-bk-07235 |
|     Debtor. | ) | Chapter 7 |
| | ) | Judge Walker |
| BRIAN CUMMINGS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:23-ap-90036 |
| | ) | |
| BRETTON KEEFER; JEANNE | ) | |
| BURTON, TRUSTEE; and AFSOON | ) | |
| HAGH, | ) | |
|     Defendants. | ) | |

## RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Continuing their pattern of delays and attempts to avoid any substantive ruling on Plaintiff Brian Cummings' claims, Defendants Afsoon Hagh and Bretton Keefer have asked this Court to dismiss Plaintiff's claims and issue an order compelling arbitration. This Court should deny Defendants' Motion for three reasons: First, this Court has exclusive jurisdiction over the matters at issue, as both the Trustee and the Plaintiff have filed claims for a portion of the attorney's fees generated by the lawsuit in which Defendant Keefer was plaintiff, and these intertwined claims should be determined in the same action. Second, there is no arbitration agreement between Defendant Hagh and Plaintiff, and it would be improper to force Plaintiff to arbitrate his claim against her. Finally, the Defendants waived arbitration when they insisted that Plaintiff file this litigation and then delayed seeking arbitration of the claims for more than one year.

### Statement of Facts and Procedural History

As the Defendants note in their Motion to Dismiss, there are two types of Rule 12(b)(1) motions: facial attacks and factual attacks. In a factual attack, the court considers evidence beyond

the pleadings to resolve jurisdictional facts. *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). However, bringing a "factual attack" does not give Defendants leave to attack the merits of Plaintiff's claims by asserting competing unsupported "facts" in the guise of background information. The Sixth Circuit has made clear that a court "engages in a factual inquiry regarding the complaint's allegations only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." *Id*. If the attack on jurisdiction also implicates an element of the cause of action, the court "should find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's claim." *Id*. This "provides a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) or Rule 56, both of which place greater restrictions" on the court's discretion. *Id*.

This adversary proceeding is a dispute concerning the division of a legal fee earned in a wrongful death action (the "Shoemaker lawsuit") that was resolved at mediation in October 2021. (Doc. No. 5-15.)[1] The plaintiff in the Shoemaker lawsuit, Defendant Bretton Keefer, was initially represented by three attorneys: Plaintiff Brian Cummings, Defendant Afsoon Hagh, and Defendant Hagh's husband, Brian Manookian. (*Id*. at ¶¶ 2-5.) The three attorneys originally represented Defendant Keefer while practicing together at Cummings Manookian, PLC ("CM"). (*Id*.) In September 2018, Plaintiff voluntarily left CM and began practicing at Cummings Law. (*Id*. at ¶¶ 5, 8.) From that time until October 2020, Plaintiff and Defendant Hagh jointly represented Defendant Keefer (Mr. Manookian was suspended from the practice of law for the majority of the time that the Shoemaker lawsuit was pending). (*Id*. at ¶¶ 8, 14; Doc. No. 5-83.)

---

[1] Unless otherwise noted in the citations, all references to documents by number refer to documents that are part of the record in this adversary proceeding.

Between April 2017, when Defendant Keefer retained CM, and October 2020, Plaintiff performed a substantial portion of the legal work on the Shoemaker lawsuit, including performing all pre-lawsuit investigation, preparing the 65-page complaint, preparing a significant portion of the written discovery propounded upon the defendant in that case, preparing all of Defendant Keefer's written responses to discovery, taking and defending numerous depositions, retaining all Rule 26 witnesses and medical experts, and preparing the Rule 26 disclosures. (Doc. No. 5-15 at ¶¶ 11-13, 25-31.) Plaintiff also advanced over $60,000.00 in litigation expenses, representing 90-100% of all litigation expenses incurred by Defendant Keefer during Plaintiff's representation. (*Id*. at ¶¶ 39-40.) Plaintiff withdrew as counsel for Defendant Keefer in October 2020 after being told by the Board of Professional Responsibility that comments made by Defendants Hagh and Keefer required him to withdraw immediately, and on November 27, 2020, Plaintiff filed a Notice of Attorney's Lien in the Shoemaker lawsuit. (*Id*. at ¶¶ 14-20; Doc. No. 5-84.)

While the Shoemaker lawsuit was pending, in November 2019, CM filed a bankruptcy petition in this Court because of debts incurred solely due to the actions of Brian Manookian. (Doc. No. 5-3 at ¶ 2; Doc. No. 5-15 at ¶ 5; Case No. 3:19-bk-07235 at Doc. No. 1.) Shortly after Jeanne Burton's appointment as Trustee in CM's bankruptcy action, she filed an adversary proceeding against Defendant Hagh, Defendant Hagh's law firm, and Mr. Manookian's law firm (the "Hagh AP"). (Doc. No. 5-3 at ¶¶ 2-3; Case No. 3:20-ap-90002 at Doc. No. 1.) The Trustee raised numerous claims against Defendant Hagh and the other defendants in the Hagh AP based on their fraudulent transfers and conversion of property of CM, including attorney's fees to which CM was entitled, for the purposes of hindering, delaying, and defrauding creditors. (*See generally* Case No. 3:20-ap-90002 at Doc. No. 1.) The Trustee also raised claims of successor liability and alter ego based on the fact that Defendant Hagh and Mr. Manookian used the two defendant law firms to

548

transfer CM's assets and divert attorney's fees from CM in an effort to hinder, delay, and defraud CM's creditors. (*Id*.) Among the attorney's fees to which the Trustee has asserted a claim are the attorney's fees generated in the Shoemaker lawsuit (the "Keefer fee"), and the Trustee filed an attorney's lien in the Shoemaker lawsuit on October 29, 2021. (Exhibit 1; Doc. No 5-3 at ¶ 3.) Plaintiff is in agreement that a portion of his work on the Shoemaker lawsuit was performed while Plaintiff was still at CM, thus subjecting a percentage of Plaintiff's fee (and Plaintiff's lien) to the jurisdiction of the Bankruptcy Court. (Doc. No. 5-15 at ¶ 9.)

After the Shoemaker lawsuit settled, Plaintiff filed a motion for status conference concerning a hearing on his attorney's lien. (Doc. No. 5-15 at ¶ 22; Doc. No. 5-85.) Defendant Hagh, as counsel for Defendant Keefer, demanded that the state court require Plaintiff to file this separate action to resolve the issues regarding the division of the Keefer fee. (Doc. No. 5-86.) In a telephonic hearing with the state court regarding whether a separate action was required, Defendant Hagh represented that she would speak with Defendant Keefer to determine whether he wished to arbitrate Plaintiff's claim or waive arbitration. (Exhibit 4; Doc. No. 5-15 at ¶ 55.) Given Defendant Hagh's statement to the state court concerning possible waiver of arbitration, prior to filing the instant lawsuit, Plaintiff's counsel, Attorney James Price, contacted Defendant Hagh, as counsel for Defendant Keefer, to determine whether Defendant Keefer wished to proceed with arbitration of Plaintiff's claim or waive arbitration. (Exhibit 2; Doc. No. 5-15 at ¶ 55.) In a series of letters,[2] Defendant Hagh refused to answer the question of whether Defendant Keefer was waiving arbitration, and neither Defendant Hagh nor Defendant Keefer requested or mentioned

---

[2] Defendant Hagh made many false assertions in these letters concerning the merits of this case. To be clear, Plaintiff disputes Defendant Hagh's allegations regarding his representation of Defendant Keefer. Plaintiff is confident that the evidence regarding the merits of this case will demonstrate that Defendant Keefer received substantial benefits from Plaintiff's work on the Shoemaker case and that Plaintiff's work added significant value to the case.

arbitration until Attorney Spragens raised it in a letter sent to undersigned counsel on April 28, 2023, a week before filing the instant Motion. (Exhibits 2-7; Doc. No. 5-15 at ¶ 55.)

Plaintiff filed this lawsuit on March 22, 2022. (Doc. No. 5-1.) The Trustee removed the case to the District Court on April 26, 2022 and filed a motion to refer the case to this Court. (Doc. No. 5; Doc. No. 5-3.) No party opposed the Trustee's motion to refer the case to this Court. (Doc. No. 5-99.)

Plaintiff served Defendant Keefer via Certified Mail in June of 2022. (Doc. No. 5-25.) Attorney Spragens, who was counsel of record for Manookian PLLC at that time, sent a letter to Attorney Price claiming that service on Defendant Keefer was ineffective. (Exhibit 8.) Although Attorney Spragens offered to facilitate service, he did not respond to any of Attorney Price's requests concerning Defendant Keefer or Defendant Hagh. (Exhibits 8-9.) To resolve any doubt regarding service, Defendant Keefer was subsequently served again by private process server. (Doc. No. 5-49.)

Defendant Hagh actively evaded service of process for eight months. (Doc. No. 5-23; Doc. No. 5-29; Doc. No. 5-33; Doc. No. 5-39; Doc. No. 5-41.) In June of 2022, Plaintiff sent copies of the complaint and a request for waiver of service to Defendant Hagh at both the address she registered with the Tennessee Board of Professional Responsibility and her last known home address. (Doc. No. 5-33 at ¶ 11.) Plaintiff attempted to serve Defendant Hagh via Certified Mail, via private process server, and through counsel, before asking the District Court to order the U.S. Marshals Service to serve Defendant Hagh. (*Id.* at ¶¶ 7, 8, 12.) When the U.S. Marshals Service attempted service, Defendant Hagh's husband, Brian Manookian, intervened and aggressively impeded service, causing the Deputy U.S. Marshal to believe that Mr. Manookian would escalate the situation to a physical confrontation. (Doc. No. 5-67.)

Plaintiff filed Motions for Entry of Default against Defendants on February 10, 2023. (Doc. No. 5-70; Doc. No. 5-73.) On February 24, 2023, Attorney Spragens advised that he had been authorized to accept service on behalf of the Defendants if Plaintiff withdrew his Motions for Entry of Default and agreed to grant the Defendants an additional 60 days to file a responsive pleading. (Doc. No. 5-97.) Plaintiff and Defendants submitted an Agreed Order setting forth this agreement.[3] (*Id*.) On May 4, 2023, Defendants filed the instant Motion demanding an order compelling arbitration of Plaintiff's claims, fifteen months after Defendant Hagh refused to respond to Plaintiff's questions regarding whether Defendant Keefer had decided to waive arbitration.

The only document cited by Defendants that Plaintiff signed that contains an arbitration provision is a representation agreement between Plaintiff and Defendant Keefer. (*See* Doc. No. 9-1, at pp. 1-3.) Plaintiff has never agreed to submit disputes between Plaintiff and Defendant Hagh to arbitration.

## Discussion

Defendants have asked this Court to dismiss Plaintiff's claims against them,[4] relying on an arbitration provision in the representation agreement between Plaintiff and Defendant Keefer.[5] This reliance is misplaced, and Defendants' Motion should be denied.

---

[3] Defendants assert that Plaintiff failed to serve the Amended Complaint pursuant to their agreement; however, it was served by email as the parties had agreed, immediately following the submission of the Agreed Order. (Exhibit 10.)

[4] Defendants ask this Court to dismiss Plaintiff's claims with prejudice; however, "a dismissal under Rule 12(b)(1) is necessarily not on the merits and thus is always without prejudice." *Property Mgmt. Connection, LLC v. Consumer Fin. Prot. Bureau*, 2021 U.S. Dist. LEXIS 219041 at *22 (M.D. Tenn. Nov. 10, 2021) (emphasis supplied).

[5] Although they devote the bulk of their Motion addressing the arbitration provision, Defendants assert in the introduction section of their Motion that there are two separate provisions of the representation letter justifying dismissal of Plaintiff's claims. To create the other purported reason for dismissal, Defendants characterize the final sentence of the arbitration provision as a "covenant-not-to-sue." It is clear from the plain reading of the paragraph on which Defendants rely that the final sentence of that paragraph is not a separate and distinct covenant, but is simply part of the arbitration provision. (Doc. No. 9-1, at p. 3.) Since Defendants have not made any arguments concerning the claimed "covenant-not-to-sue" that are distinct from their arguments regarding arbitration, Plaintiff has not made a distinction between the arbitration paragraph and that paragraph's final sentence in this Response.

**A. This Court Should Deny Defendants' Motion, Because this Court has Exclusive Jurisdiction Over this Proceeding.**

The District Court transferred this matter to this Court on March 13, 2023, pursuant to the Trustee's unopposed Motion to Refer Case to Bankruptcy Court. (Doc. No. 5-99.) In her Motion, the Trustee explained that, as part of her administration of CM's estate, the Trustee had filed the Hagh AP against Afsoon Hagh, Hagh Law, PLLC, and Manookian, PLLC. (Doc. No. 5-3 at ¶ 3.) According to the Trustee, a "significant element of the allegations in the [Hagh] AP is that the defendants in the [Hagh] AP, including Afsoon Hagh (who is a defendant in this matter), received fees belonging to CM," including the Keefer fee. (*Id*.) Since Plaintiff, Defendant Hagh, and the Trustee each claim an interest in the Keefer fee, Plaintiff's claims are directly related to the Trustee's claims in the Hagh AP and to the pending bankruptcy matter.

Bankruptcy courts have exclusive jurisdiction over bankruptcy cases, the property of a debtor, and the bankruptcy estate. *In re Project Restore, LLC*, 2022 Bankr. LEXIS 2868 at *12-13 (Bankr. M.D. Tenn. Oct. 7, 2022). This Court has noted that disputes involving the Bankruptcy Code and the Federal Arbitration Act "often present a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution." *Id*. at *9. When evaluating motions to compel arbitration, courts are asked to determine whether the dispute is a core proceeding and whether an inherent conflict exists between the enforcement of an arbitration agreement and the underlying purposes of the Bankruptcy Code. *Id*. at *11. This involves conducting a "particularized inquiry into the nature of the claim and the facts of the specific bankruptcy" as well as consideration of the objectives of the Bankruptcy Code, such as "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation,

7

and the undisputed power of a bankruptcy court to enforce its own orders." *See Anderson v. Credit One Bank, N.A.*, 884 F.3d 382, 389 (2nd Cir. 2017).

Applying this analysis, courts around the country have found that arbitration agreements inherently conflict with the purposes of the Bankruptcy Code in a variety of circumstances. For example, the Second Circuit Court of Appeals found it was error to compel arbitration of a claim seeking a declaratory judgment of the parties' rights under various insurance policies, which provided the only funds available to numerous personal injury claimants. *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Protection & Indem. Ass'n*, 197 F.3d 631 (2nd Cir. 1999). The *U.S. Lines* Court determined that the declaratory judgment proceedings were integral to the bankruptcy court's ability to preserve and equitably distribute assets, and that the need for a centralized proceeding was augmented by the complex factual scenario, involving multiple claims, policies, and insurers. *Id*. at 640-41.

Likewise, the Fifth Circuit Court of Appeals affirmed denial of a motion to compel arbitration of a debtor's claims, which included claims of avoidance of fraudulent transfers and to recover transferred property. *Gandy v. Gandy*, 299 F.3d 489 (5th Cir. 2002). The *Gandy* Court recognized that while the claims could technically be divided and some sent to arbitration, parallel proceedings would be wasteful and inefficient, and potentially could yield different results and subject parties to dichotomous obligations. 299 F.3d at 499. The Court found that arbitration of the debtor's claims inherently conflicted with the Bankruptcy Code's goal of centralized resolution, the need to protect creditors and debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders. *Id*. at 500.

The inherent conflict can exist even where the request for arbitration does not seek to compel any claims by or against the debtor to arbitration. The Fourth Circuit Court of Appeals

affirmed denial of a motion to compel arbitration of claims where the debtor was not going to be a named party in the arbitration, because the arbitration would substantially interfere with the debtor's efforts to reorganize. *Phillips v. Congelton, L.L.C.*, 403 F.3d 164 (4th Cir. 2005). The *Phillips* Court explained that the bankruptcy court's findings regarding the impact of the proposed arbitration on the bankruptcy proceedings confirmed that the arbitration was inconsistent with the purpose of the bankruptcy laws to centralize disputes about a debtor's legal obligations. *Id.* at 170. *See also In re EPD Inv. Co., LLC*, 821 F.3d 1146 (9th Cir. 2016) (affirming denial of motion to compel arbitration of Trustee's claims, including claims to disallow proofs of claims and to avoid fraudulent transfers); *Roth v. Butler Univ.*, 594 B.R. 672 (Bankr. S.D. Ind. 2018) (declining to compel arbitration where it would require the debtor to pursue the same claims against different parties in two forums, incur the cost of two separate proceedings, and face potentially different outcomes); *Larson v. Swift Rock Financial, Inc.*, 545 B.R. 47 (D. Colo. 2015) (affirming bankruptcy court's denial of motion to compel arbitration of trustee's direct claims, including trustee's § 548 claims).

Cummings Manookian, PLC filed this bankruptcy action nearly four years ago, in November of 2019. (Case No. 3:19-bk-07235 at Doc. No. 1.) After Ms. Burton was appointed as Trustee, she filed the Hagh AP against Defendant Hagh, Defendant Hagh's law firm, and Mr. Manookian's law firm, asserting multiple claims against Defendant Hagh and the other defendants based on their fraudulent transfers and conversion of property of CM, including attorney's fees to which CM was entitled, for the purposes of hindering, delaying, and defrauding creditors. (Doc. No. 5-3 at ¶¶ 2-3; Case No. 3:20-ap-90002 at Doc. No. 1.) The Trustee also asserted claims of successor liability and alter ego based on the fact that Defendant Hagh and Mr. Manookian used

the two defendant law firms to transfer CM's assets and divert attorney's fees from CM in an effort to hinder, delay, and defraud CM's creditors. (Case No. 3:20-ap-90002 at Doc. No. 1.)

The Trustee, Defendant Hagh, and Plaintiff all claim an interest in the same funds: the Keefer fee. (Doc. No 5-3 at ¶¶ 3-4; Doc. No. 5-15 at ¶¶ 9, 44-46.) Both the Trustee and the Plaintiff filed attorney's liens in the Shoemaker lawsuit. (Exhibit 1; Doc. No. 5-84.) There is no question that resolution of the competing interests of the Trustee, Defendant Hagh, and Plaintiff (including the attorney's liens and the Plaintiff's claim against the Trustee) in the same fee from the Shoemaker lawsuit is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), (K), and (O).

The Court is therefore tasked with determining whether enforcing the arbitration provision relied upon by Defendants Hagh and Keefer inherently conflicts with the underlying purposes of the Bankruptcy Code. Compelling arbitration of Plaintiff's claims against Defendants Hagh and Keefer will result in piecemeal litigation concerning the proper distribution of the Keefer fee. More problematic is the fact that the resolution of the claims by and against the Trustee with respect to the Keefer fee in the bankruptcy court and resolution of the Plaintiff's claims against Defendants Hagh and Keefer with respect to the Keefer fee in arbitration will result in inconsistent rulings where both this Court and the arbitrator will be allocating the same fee, but among different parties. This is precisely the reason for the Bankruptcy Code's goal of centralized resolution of issues, and maintaining all claims regarding the Keefer fee in this Court is integral to the Court's ability to preserve and equitably distribute assets. As such, this Court should decline to compel arbitration of Plaintiff's claims and deny the Motion to Dismiss in its entirety.

**B. This Court Should Deny Defendants' Motion, Because There is No Arbitration Agreement Between Brian Cummings and Afsoon Hagh.**

Defendant Hagh's request that Plaintiff's claim against her be submitted to arbitration should also be denied because there is no basis for compelling arbitration of that claim. Although Defendants' Motion to Dismiss makes no distinction between Plaintiff's claim against Defendant Hagh and Plaintiff's claim against Defendant Keefer, there is a crucial difference relevant to the pending Motion: <u>There is no arbitration provision in any contract between Plaintiff and Defendant Hagh</u>. This is fatal to Defendant Hagh's request that this Court dismiss this case against her.

When considering a motion seeking to compel the arbitration of a dispute, the Court must first consider whether a valid arbitration agreement exists. *VIP, Inc. v. KYB Corp.*, 951 F.3d 377, 380 (6th Cir. 2020). Since arbitration is a matter of contract, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Id*. at 382 (*quoting Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010) (emphasis in original)). It also "goes without saying that a contract cannot bind a nonparty." *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625, 631 (6th Cir. 2014) (*quoting EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002)). It is well-settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id*. (*quoting AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).

Relying on these principles, in *W.J. O'Neil*, the Sixth Circuit reversed dismissal of a plaintiff subcontractor's claims against an architect and a designer arising from the construction

of a hospital.[6] 765 F.3d at 627-28. The plaintiff subcontractor had a contract with the construction manager that contained an arbitration provision, and the architect and designer both had contracts with the property owner that contained arbitration provisions, but there was no contract between the plaintiff and the architect or the designer. *Id*. at 628, 632-33. As such, the Court found that the plaintiff had not consented to arbitrate its claims against the architect and designer and was entitled to pursue his claims through litigation. *Id*. at 633-34.

In *VIP, Inc. v. KYB Corp.*, the Sixth Circuit refused to force plaintiffs to arbitrate their claims against a manufacturer based on an arbitration clause in a warranty incorporated by reference in the plaintiffs' agreements. 951 F.3d at 380. The Sixth Circuit examined the language of the arbitration provision and determined that, by its terms, it only applied to claims filed by "original retail purchasers" of the products at issue. *Id*. at 383-84. The Court found that the plaintiffs were distributors, not original retail purchasers. *Id*. Even if, as the defendant asserted, the plaintiffs had agreed to the arbitration provision by reference, the Court concluded that the plaintiffs had not consented to arbitration of the claims at issue. *Id*. at 384. The Court stated: "No plain language reading of this arbitration provision evidences an intent to bind anyone to arbitration other than 'original retail purchasers.'" *Id*. at 383-84. Since the plaintiffs had not agreed to arbitrate the particular dispute at issue, the Court refused to force them to do so. *Id*. at 385-86.

Throughout the Motion to Dismiss, the Defendants repeatedly quote from a representation agreement between Plaintiff and Defendant Keefer. (*See* Doc. No. 9-1 at pp. 1-3.) Notably, there is no reference anywhere in the Motion to Dismiss or in the various exhibits to an arbitration

---

[6] The district court in *W.J. O'Neil* had concluded that the claims were barred by the doctrine of res judicata based on an arbitration between the plaintiff and the construction manager arising from the same construction project. 765 F.3d at 627. The construction manager had previously filed claims for indemnification against the architect and the designer, and those claims were adjudicated in a consolidated arbitration alongside the plaintiff's claims against the construction manager. *Id*. at 628-29. The Sixth Circuit held that the plaintiff's claims against the architect and the designer were not barred by res judicata. *Id*. at 627-28.

agreement between Plaintiff and Defendant Hagh. That is because no such agreement exists. Plaintiff did not agree to submit disputes between Plaintiff and Defendant Hagh to arbitration, and he cannot be forced to arbitrate his claim against her. Indeed, Defendant Hagh is not even mentioned as one of the attorneys representing Defendant Keefer in the representation agreement upon which she relies. (*See id*)

Even if Defendant Hagh had been a party to the arbitration provision, arbitration of Plaintiff's claim against her would still be improper. The arbitration provision refers to disputes arising between the attorneys and the client within the Attorney-Client relationship, not to disputes between two attorneys regarding division of a fee. (*Id*. at p. 3.) Plaintiff did not agree to arbitrate disputes that he has with other attorneys (and certainly not with an attorney who was not even a party to the arbitration provision), and it would be improper for this Court to force him to arbitrate a dispute that he did not agree should be submitted to arbitration.

## C. This Court Should Deny Defendants' Motion, Because the Defendants Waived Arbitration of Plaintiff's Claim.

Finally, the Court should deny Defendants' Motion on the grounds that, through their actions and deliberate tactics, Defendants have waived any rights they may have had to enforce arbitration.

The Sixth Circuit has previously found that a defendant waived its right to arbitrate by engaging in activities strikingly similar to those of the Defendants in this case. In *O.J. Distributing, Inc. v. Hornell Brewing Co.*, after the defendant terminated the parties' contract, the plaintiff initiated settlement discussions in April of 1997. 340 F.3d 345, 348-49 (6th Cir. 2003). The parties exchanged settlement correspondence for over a year, and the plaintiff filed suit in May of 1998. *Id*. at 347, 349-51. The plaintiff sent a Request for Waiver of Service to the defendant, which the defendant did not return, so the plaintiff sent a copy of the complaint to the defendant by overnight

courier. *Id.* at 347. In August and September of 1998, the defendant sent multiple letters to the plaintiff demanding arbitration and objecting to the plaintiff's attempted service. *Id.* On September 30, 1998, the plaintiff obtained an entry of default and filed a Motion for Default Judgment on October 2, 1998. *Id.* On October 5, 1998, the defendant initiated arbitration with the American Arbitration Association. *Id.*

The Sixth Circuit found that the defendant waived its right to arbitrate when it engaged in negotiations with the plaintiff for fifteen months before raising the issue of arbitration and did not initiate arbitration until after the entry of default. *Id.* at 357-59. The Court rejected the defendant's argument that it immediately demanded arbitration after the plaintiff filed suit, noting that the defendant waited another sixty days after plaintiff filed suit before demanding arbitration in a letter to plaintiff and waited more than five months before formally demanding arbitration with the AAA. *Id.* at 359. The Court found that the defendant had "slept on its rights for approximately fifteen months," while the plaintiff incurred costs.[7] *Id.* at 358-59. *See also General Star Nat'l Ins. Co. v. Administratia Asigurarilor De Stat*, 289 F.3d 434 (6th Cir. 2002) (finding that defendant waived its right to arbitrate where the defendant had actual notice of the lawsuit for 17 months but did not invoke the arbitration provision until after the district court had entered default judgment); *Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334 (6th Cir. 2010) (finding that defendants waived arbitration where they actively participated in litigation for 26 months).

In the instant case, the Plaintiff initially asked the state court where the Shoemaker lawsuit was pending to address his attorney's lien. (Doc. No. 5-85.) Defendant Hagh, as counsel for Defendant Keefer, demanded that Plaintiff's claim be addressed in a separately filed lawsuit. (Doc.

---

[7] In its analysis, the Sixth Circuit also looked at the prejudice these delays caused the plaintiff; however, the United States Supreme Court recently clarified that prejudice is not to be used as a condition for finding waiver, which is simply "the intentional relinquishment or abandonment of a known right." *See Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022)

No. 5-86.) After representing to the state court in a telephonic hearing that she would speak with Defendant Keefer regarding whether he wished to arbitrate Plaintiff's claim or waive arbitration, Defendant Hagh refused to answer direct questions regarding whether Defendant Keefer waived arbitration. (Exhibits 2-7; Doc. No. 5-15 at ¶ 55.)

Plaintiff filed this lawsuit on March 22, 2022 and served Defendant Keefer via Certified Mail in June of 2022. (Doc. No. 5-1; Doc. No. 5-25.) Although he claimed he was only representing Manookian PLLC at the time, Attorney Spragens sent a letter to Attorney Price asserting that service on Defendant Keefer was ineffective. (Exhibit 8.) Attorney Spragens initially stated that he would facilitate service, but then failed to respond to any of Attorney Price's requests concerning Defendant Keefer or Defendant Hagh. (Exhibits 8-9.)

After convincing the state court that a separate lawsuit was required and then refusing to respond to Plaintiff's questions about arbitration, Defendant Hagh actively evaded service of process for eight months. (Doc. No. 5-23; Doc. No. 5-29; Doc. No. 5-33; Doc. No. 5-39; Doc. No. 5-41.) In June of 2022, Plaintiff sent copies of the complaint and a request for waiver of service to Defendant Hagh at both the address she registered with the Tennessee Board of Professional Responsibility and her last known home address. (Doc. No. 5-33 at ¶ 11.) After unsuccessful attempts to serve Defendant Hagh via Certified Mail, via private process server, and through counsel, Plaintiff asked the District Court to order the U.S. Marshals Service to serve Defendant Hagh. (*Id*. at ¶¶ 7, 8, 12.) Defendant Hagh's husband, Brian Manookian, intervened and aggressively impeded service by the U.S. Marshals Service, behaving in such a manner that the Deputy U.S. Marshal believed that Mr. Manookian would escalate the situation to a physical confrontation. (Doc. No. 5-67.)

Despite Defendant Hagh and Defendant Keefer having actual notice of Plaintiff's claims since December 2021 and actual notice of Plaintiff's lawsuit by June 2022 at the latest, neither Defendant requested or demanded arbitration until their counsel raised it one week before filing their May 2023 Motion to Dismiss. The Defendants remained silent about arbitration for 15 months, including refusing to respond to Plaintiff's express questions regarding whether Defendant Keefer had decided to waive arbitration. Even after Plaintiff filed Motions for Entry of Default and Defendants finally engaged counsel, Defendants waited another two months before demanding arbitration. In other words, even if the Defendants had an enforceable arbitration agreement, they slept on their rights for at least 15 months. Like the Sixth Circuit found in *O.J. Distributing*, *General Star* and *Hurley*, this Court should find that the Defendants waived arbitration and deny their Motion to Dismiss.

## Conclusion

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss in its entirety.

Respectfully Submitted,

**COUNTERPOINT LEGAL, PLC**

By:    /s/ Elizabeth S. Tipping
       Elizabeth S. Tipping, No. 023066
       2689 Union Hill Road
       Joelton, TN 37080
       (615) 426-5566
       liz@counterpointlaw.com
       *Counsel for Plaintiff Brian Cummings*

561

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was electronically filed and served via the Court's ECF system this, the 2nd day of August, 2023.

/s/ Elizabeth S. Tipping
Elizabeth S. Tipping, No. 023066
Counterpoint Legal, PLC
2689 Union Hill Road
Joelton, TN 37080
(615) 426-5566
liz@counterpointlaw.com

562

# Exhibit 1

IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

BRETTON KEEFER O/B/O )
CHESTA SHOEMAKER )
    Plaintiff, )
)
v. )     No. 19C358
)
VANDERBILTY UNIVERSITY )
MEDICAL CENTER, )
    Defendant. )

---

**NOTICE OF FILING**
**NOTICE OF ATTORNEY'S LIEN AND ABSTRACT OF SUIT**

---

Jeanne Ann Burton, Chapter 7 Trustee, hereby gives notice of filing the attached Notice of

Filing Attorney's Lien and Abstract of Suit which has been recorded with the Davidson County

Register of Deed's office.

Respectfully Submitted,

Phillip C. Young, Jr. #021087
**_THOMPSON BURTON PLLC_**
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
615-465-6000
615-461-1737 – fax

Special Counsel for Jeanne Ann Burton, Trustee

1

564

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent via U.S. Mail, postage prepaid, to:

Vanderbilt University Medical Center
c/o Thomas A. Wiseman III
Wiseman Ashworth Law Group, PLC
511 Union Street, Suite 800
Nashville, TN 37219-1743

Brian Manookian
PO Box 150229
Nashville, TN 37215

Afsoon Hagh
226 Pelham Drive
Brentwood, TN 37027

Brian Cummings
4235 Hillsboro Pike #300
Nashville, TN 37215

John Edwards
Edwards Kirby
3201 Glenwood Ave., Suite 100
Raleigh, NC 27612

This 29th day of October, 2021.

_____
Phillip G. Young, Jr.

2

565

IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

BRETTON KEEFER O/B/O )
CHESTA SHOEMAKER )
    Plaintiff, )
          )
          )    No. 19C358
v. )
          )
VANDERBILTY UNIVERSITY )
MEDICAL CENTER, )
    Defendant. )

---

## NOTICE OF ATTORNEY'S LIEN AND ABSTRACT OF SUIT

---

    TO:    Vanderbilt University Medical Center
           c/o Thomas A. Wiseman III
           Wiseman Ashworth Law Group, PLC
           511 Union Street, Suite 800
           Nashville, TN 37219-1743

    Pursuant to Tenn. Code Ann § 23-2-102, et. seq., you are notified that Jeanne Ann Burton,

Chapter 7 Bankruptcy Trustee for Cummings Manookian, PLC, claims an attorney's lien against

all property, both real and personal, tangible and intangible, money, funds or other assets, which

may be awarded to or received by Cummings Manookian, PLC, for attorneys' fee or

reimbursement of expenses, through settlement or trial of this legal action. A copy of the United

States Bankruptcy Court for the Middle District of Tennessee's *Notice of Bankruptcy Case Filing*

is attached hereto.

    Jeanne Ann Burton, Chapter 7 Bankruptcy Trustee for Cummings Manookian, PLC claims

such attorney's lien for all amounts owing to Cummings Manookian, PLC in this matter.

## OATH

I, **JEANNE ANN BURTON, TRUSTEE**, after being first duly sworn, make oath that the facts and matters stated in the foregoing Lien are true and correct to the best of my knowledge, information and belief.



_____
Jeanne Ann Burton, Trustee

**STATE OF TENNESSEE**      )
**COUNTY OF DAVIDSON**      )

Personally appeared before me, a Notary Public in and for the aforesaid State and County, the within named **JEANNE ANN BURTON**, with whom I am personally acquainted, (or upon sufficient evidence provided), and who acknowledged that she executed the within instrument for the purposes therein contained.

WITNESS my hand and official seal on this _16th_ day of _April_ , 2021.

_____
NOTARY PUBLIC
My Commission Expires: 9-5-2021

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent via U.S. Mail, postage prepaid, to:

Vanderbilt University Medical Center
c/o Thomas A. Wiseman III
Wiseman Ashworth Law Group, PLC
511 Union Street, Suite 800
Nashville, TN 37219-1743

Brian Manookian
PO Box 150229
Nashville, TN 37215

Afsoon Hagh
226 Pelham Drive
Brentwood, TN 37027

Brian Cummings
4235 Hillsboro Pike #300
Nashville, TN 37215

John Edwards
Edwards Kirby
3201 Glenwood Ave., Suite 100
Raleigh, NC 27612

This 29th day of October, 2021.

Phillip G. Young
Special Counsel for the Trustee

3