Respectfully submitted,

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr. (BPR 004702)
Glenn B. Rose (BPR 10598)
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

*Attorney for Afsoon Hagh and*
*Hagh Law, PLLC*

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed December 23, 2021, and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

/s/ Craig V. Gabbert, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION TO CONTINUE HEARING

Upon the Motion to Continue Hearing filed by Defendants Hagh Law, PLLC, Afsoon Hagh and Manookian, PLLC ("Defendants"), and good cause shown,

IT IS HEREBY ORDERED that the hearing scheduled in the matter for January 5, 2022 is hereby continued until February 2, 2022 at _____ ___.m. via Zoom video for Nashville.

Response deadline to the Motion to Compel is January 26. 2022

THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.

Submitted for entry by:

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr. (BPR 004702)
Glenn B. Rose (BPR 010598)
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

*Attorneys for Afsoon Hagh and*
*Hagh Law, PLLC*


/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed December 23, 2021, and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

/s/ Craig V. Gabbert, Jr.

32197265.1

Burton,

    Plaintiff

                                         Adv. Proc. No. 20-90002-CMW

Hagh Law PLLC,

    Defendant

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0650-3 | User: leq0323 | Page 1 of 2 |
| Date Rcvd: Dec 22, 2021 | Form ID: hrgnot | Total Noticed: 16 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Dec 24, 2021:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| aty | + | CRAIG VERNON GABBERT, JR, BASS, BERRY & SIMS PLC, 150 THIRD AVENUE SOUTH, SUITE 2800, NASHVILLE, TN 37201-2017 |
| aty | + | GLENN BENTON ROSE, BASS, BERRY & SIMS PLC, 150 THIRD AVENUE SOUTH, SUITE 2800, NASHVILLE, TN 37201-2017 |
| aty | + | JOHN T. SPRAGENS, SPRAGENS LAW PLC, 311 22ND AVE N, NASHVILLE, TN 37203-1843 |
| aty | + | PHILLIP G YOUNG, Thompson Burton PLLC, One Franklin Park, 6100 Tower Circle, Suite 200, FRANKLIN, TN 37067-1465 |
| ust | + | MADALYN GREENWOOD, OFFICE OF THE US TRUSTEE, 200 JEFFERSON AVE, SUITE 400, MEMPHIS, TN 38103-2374 |
| ust | + | NATALIE MARIE COX, US DEPARTMENT OF JUSTICE, OFFICE OF THE UNITED STATES TRUSTEE, 701 BROADWAY, SUITE 318 NASHVILLE, TN 37203-3966 |
| ust | | TestUST TNMB, UST, Ustrustee Office, Nashville, TN 37203 |
| ust | + | U.S. Trustee, Office of the U.S. Trustee, One Memphis Place, 200 Jefferson Avenue, Suite 400, Memphis, TN 38103-2383 |
| ust | + | United States Trustee, Historic U.S. Courthouse, 31 E. Eleventh Street, Fourth Floor, Chattanooga, TN 37402-4205 |
| dft | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Hagh Law PLLC, c/o Afsoon Hagh, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Manookian PLLC, c/o Brian Manookian, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |

TOTAL: 12

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**

Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| ust | | Email/Text: ustpregion21.hr.ecf@usdoj.gov | Dec 22 2021 22:32:00 | MONSITA LECAROZ ARRIBAS, OFFICE OF THE US TRUSTEE (UST), OCHOA BUILDING, 500 TANCA STREET SUITE 301, SAN JUAN, PR 00901 |
| ust | + | Email/Text: ustpregion09.gr.ecf@usdoj.gov | Dec 22 2021 22:32:00 | Michael V. Maggio, Trial Attorney, Office of the US Trustee, The Ledyard Building, 2nd Floor, 125 Ottawa NW, Suite 200R, Grand Rapids, MI 49503-2865 |
| ust | | Email/Text: ustpregion08.na.ecf@usdoj.gov | Dec 22 2021 22:32:00 | US TRUSTEE, OFFICE OF THE UNITED STATES TRUSTEE, 701 BROADWAY STE 318, NASHVILLE, TN 37203-3966 |
| pla | + | Email/Text: jeanne.burton@comcast.net | Dec 22 2021 22:32:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 4

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| ust | | CARRIE |
| ust | | KALISIA SCHAEFFER, REVENUE ASSSURANCE PROFESSIONALS, 1350 CONCOURSE AVE SUITE 600 |
| ust | | STEVEN EDWARD ANDERSON, ANDERSON & REYNOLDS PLC |
| ust | | worr robinson |

TOTAL: 4 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Dec 24, 2021          Signature:      _/s/Joseph Speetjens_____

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on December 22, 2021 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com  bankr@bassberry.com;delores.walker@bassberry.com |
| GLENN BENTON ROSE | on behalf of Defendant Hagh Law PLLC grose@bassberry.com  bankr@bassberry.com |
| JOHN T. SPRAGENS | on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM  spragenslaw@ecf.courtdrive.com |
| PHILLIP G YOUNG | on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com |

TOTAL: 4

# UNITED STATES BANKRUPTCY COURT

## MIDDLE DISTRICT OF TENNESSEE

701 Broadway Room 170
Nashville, TN 37203

Adversary Proceeding No.  3:20−ap−90002
Related Bankruptcy Proceeding No.  3:19−bk−07235

Judge  Charles M Walker

In Re:

Plaintiff/Movant : Jeanne Ann Burton

vs

Defendant/Respondent : Hagh Law PLLC

PLEASE TAKE NOTICE that a hearing will be held :

; via Zoom video; For details, please see www.tnmb.uscourts on 1/5/22 at 11:00 AM

to consider and act upon the following:

*95 −* Motion and Notice to Compel Discovery Responses from Manookian, PLLC (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4)Certificate of Service mailed on 12/20/21. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP)

*96 −* Motion and Notice to Compel Discovery Responses from Hagh Law, PLLC (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4)Certificate of Service mailed on 12/20/21. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP)

*97 −* Motion and Notice to Compel Discovery Responses from Afsoon Hagh (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3)Certificate of Service mailed on 12/20/21. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP)

Dated: 12/22/21            /s/ TERESA C. AZAN
                                   Clerk, U.S. Bankruptcy Court

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 12/28/2021



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST COMPANY,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION TO CONTINUE HEARING

Upon the Motion to Continue Hearing filed by Defendants Hagh Law, PLLC, Afsoon Hagh and Manookian, PLLC ("Defendants"), and good cause shown,

IT IS HEREBY ORDERED that the hearing scheduled in the matter for January 5, 2022 is hereby continued until February 2, 2022 at 11:00 a .m. via Zoom video for Nashville.

Response deadline to the Motion to Compel is January 26. 2022

THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.

Submitted for entry by:

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr. (BPR 004702)
Glenn B. Rose (BPR 010598)
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

*Attorneys for Afsoon Hagh and*
*Hagh Law, PLLC*


/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed December 23, 2021, and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

/s/ Craig V. Gabbert, Jr.

32197265.1

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

Burton,

    Plaintiff

Hagh Law PLLC,

    Defendant

Adv. Proc. No. 20-90002-CMW

# CERTIFICATE OF NOTICE

| District/off: 0650-3 | User: mlh9971 | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Dec 29, 2021 | Form ID: pdf001 | Total Noticed: 1 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Dec 31, 2021:**

NONE

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**

Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| pla | + Email/Text: jeanne.burton@comcast.net | Dec 29 2021 22:34:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Dec 31, 2021      Signature:   /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on December 29, 2021 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com bankr@bassberry.com;delores.walker@bassberry.com |
| GLENN BENTON ROSE | on behalf of Defendant Hagh Law PLLC grose@bassberry.com bankr@bassberry.com |
| JOHN T. SPRAGENS | on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM spragenslaw@ecf.courtdrive.com |
| PHILLIP G YOUNG | on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com |

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 12/28/2021



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST COMPANY,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION TO CONTINUE HEARING

Upon the Motion to Continue Hearing filed by Defendants Hagh Law, PLLC, Afsoon Hagh and Manookian, PLLC ("Defendants"), and good cause shown,

IT IS HEREBY ORDERED that the hearing scheduled in the matter for January 5, 2022 is hereby continued until February 2, 2022 at 11:00 a .m. via Zoom video for Nashville.

Response deadline to the Motion to Compel is January 26. 2022

THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.

Submitted for entry by:

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr. (BPR 004702)
Glenn B. Rose (BPR 010598)
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

*Attorneys for Afsoon Hagh and
Hagh Law, PLLC*


/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC*

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was filed December 23, 2021, and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

/s/ Craig V. Gabbert, Jr.

32197265.1

```
This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.
```

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **IN RE:** | |
| **CUMMINGS MANOOKIAN, PLLC** | |
| Debtor. | **Case No. 3:19-bk-07235**<br>**Adv. Proc. No. 3:20-ap-90002** |
| **JEANNE ANN BURTON, TRUSTEE** | **Chapter 7** |
| Plaintiff, | **Judge Walker** |
| v. | |
| **HAGH LAW, PLLC, AFSOON HAGH,**<br>**and MANOOKIAN PLLC,** | |
| Defendants. | |

**DEFENDANT MANOOKIAN PLLC'S MOTION TO COMPEL
RESPONSES TO INTERROGATORIES FROM FIRST AND
SECOND SETS OF WRITTEN DISCOVERY**

Pursuant to Federal Rules of Bankruptcy Procedure 9014(c) and 7037, Manookian PLLC, Adversary Proceeding Defendant (the "Defendant"), respectfully moves to compel responses to Defendant's First and Second Set of Interrogatories propounded to Plaintiff Jeanne Anne Burton ("Plaintiff").

**I.      Introduction and Background**

This is an adversary proceeding.  The Plaintiff is the Trustee for a defunct law firm, Cummings Manookian ("CM").  The Defendant is the law firm Manookian PLLC.  Over two (2) years ago, the Plaintiff sued the Defendant making numerous and serious claims of fraudulent transfer, tortious interference with contracts, and conversion.

1

The Complaint, however, was grossly deficient as to detail. For example, although it alleges that Manookian PLLC received "substantial Property of CM without giving reasonable equivalent value" it never actually identifies the property over which it brought suit. Complaint, ¶ 48. Other representative allegations include that Manookian PLLC received substantial transfers form (*sic*) CM without giving reasonably equivalent value," but again neglecting to identify any details about these alleged transfers. *Id.*, ¶ 52. The utter lack of specificity of these allegations was particularly disturbing to Manookian PLLC given that it has never received property or transfers from any person or entity, and, indeed, has never even held a bank account.

In order to learn what Plaintiff was even alleging occurred, Manookian PLLC propounded its first set of written discovery on January 26, 2021, including eighteen separate interrogatories. Manookian PLLC followed up by posing a second set of written discovery on January 27, 2021, including five additional interrogatories. Pursuant to the Federal Rules of Civil Procedure and the Bankruptcy Rules, responses were due no later than February 25, 2021 and February 26, 2021, respectively.

The Plaintiff served her responses on March 1, 2021. Those responses are attached as **Collective Exhibit 1.** Consistent with the deficiencies noted in the Complaint, Plaintiff once again declined to provide any detail whatsoever regarding her allegations; either outright refusing to respond, lodging improper boilerplate objections, or providing non-responsive advocacy positions in response to all 23 pending interrogatories.[1]

---

[1] The Plaintiff additionally refused to produce a single page of documents in response to twenty-four (24) separate detailed Requests for Production. Defendant continues to seek adequate responses to its Requests for Production, but anticipates filing a Motion to Compel on those requests if unsuccessful.

2

Following the expiration of a discovery stay, Defendant wrote the Plaintiff on October 21, 2021, seeking full, supplemented responses to its outstanding discovery. **Exhibit 2.** The Defendant requested supplementation within two (2) weeks by November 5, 2021.

Unfortunately, despite two (2) years having passed since Plaintiff filed her bare-bones Complaint; one (1) year having passed since Defendant posed basic written discovery seeking elemental information about Plaintiff's claims; and three (3) months having passed since Defendant sought full responses in writing through a meet-and-confer letter, Plaintiff continues to refuse to provide even the most basic information about her allegations against the Defendant.

As a result, Defendant seeks an Order compelling Defendant to fully and adequately respond to the interrogatories discussed below. Because of the extreme bad-faith nature of Plaintiff's responses (refusing to answer a single interrogatory *about Plaintiff's own allegations*) – and the inordinate amount of time Defendant has been required to spend addressing those deficiencies – Manookian PLLC additionally seeks an award of the attorney's fees it has been required to spend simply to learn what Plaintiff is alleging Manookian PLLC did wrong or to otherwise injure Plaintiff.

## II.     First Set of Written Discovery

<u>Interrogatory No. 1:</u>     This interrogatory seeks the specific dates on which Cummings Manookian withdrew, terminated its representation, or stopped providing legal services to any client from January 1, 2018 to the present. Plaintiff lodges boilerplate objections and refuses to provide any substantive information in response. This interrogatory is directly relevant to Plaintiff's claims that Plaintiff is due attorney's fees for work performed in those very same cases. By identifying the date on which Cummings Manookian alleges it withdrew from the case, Defendant can begin to determine the scope of work Cummings

3

Manookian alleges it completed, as well as any work which occurred after Cummings Manookian was no longer involved in a case.

Interrogatory No. 2:    This interrogatory seeks specific information about cases from which Cummings Manookian withdrew, in particular the last or most recent legal task or service provided by the Plaintiff to the client.  The Plaintiff refuses to respond on the circular grounds that it refused to respond to Interrogatory No. 1.

This interrogatory is relevant to Plaintiff's claims that it provided legal services for which it should be compensated.  Again, a full response to this interrogatory allows the Defendant to "book-end" Plaintiff's claims of unpaid, rendered services.  Any work performed after those final services would necessarily not have been completed by Cummings Manookian, and would therefore not be subject to any claims by Cummings Manookian.

Interrogatory No. 3:    This interrogatory seeks detailed information about the work performed by Plaintiff, services rendered by Plaintiff, and outcomes achieved by Plaintiff in any case for which Plaintiff is claiming Plaintiff is owed money for services provided to a legal client.  Rather than answer the detailed inquiries, Plaintiff simply provides a list of cases for which she alleges that "Cummings Manookian is entitled to fees and/or expenses."  This is necessary, but nowhere approaching sufficient.  Rather, the interrogatory requests *specific information* about Cummings Manookian's work on those cases in order to test the validity of the Plaintiff's claims.  The Plaintiff just provides a list of cases without detailing what Plaintiff alleges CM did in those cases.  Again, this is non-responsive to the tailored, detailed inquiries.

<p style="text-align:center">4</p>

**Interrogatory No. 4:**     This interrogatory requests that Plaintiff state the total number of hours Cummings Manookian spent working on any case for which Plaintiff claims the firm is due monies, even if such number is merely an estimate.  Plaintiff makes a boilerplate objection and then refuses to respond.  Again, this interrogatory is narrowly tailored to discover material factual information regarding Plaintiff's claims that the firm worked on legal cases for which it is now due compensation.  If Plaintiff is unable to provide even a rough estimate of the number of hours CM worked on any case, she should simply say so.

**Interrogatory No. 5:**     This interrogatory seeks detailed information regarding the allegations of fraud that Plaintiff has alleged against any Defendant in the case.  The Defendant, again, just refuses to answer.  This is directly material to Plaintiff's own ambiguous allegations contained in the Complaint—allegations that are governed by Fed. R. Civ. P. 9(b) and Fed. R. Bank. P. 9011. Defendant is entitled to know precisely which of its actions Plaintiff is alleging constituted fraud or one of the discrete elements of fraud. Fed. R. Bank. P. 7009 ("[Fed. R. Civ. P.] Rule 9 applies in adversary proceedings."); *see also In re Kimmel*, 2008 WL 5076380 at *1 (9th Cir. 2008) ("In order to properly plead fraud with particularity, the complaint must allege the time, and content of the fraudulent representation such that a defendant can prepare an adequate response to the allegations."); *In re Doctors Hosp. of Hyde Park, Inc.*, 308 B.R. 311, 322 (Bankr. N.D. Ill. 2004) (noting that "fraud is a serious charge, easy to allege and hard to prove").

**Interrogatory No. 6:**     This interrogatory seeks a concrete answer as to the date upon which Cummings Manookian completely ceased, as an entity, providing legal services.  This is

material for any number of reasons, including the fact that Cummings Manookian – as a law firm – eventually neither employed any licensed attorneys or had any actively licensed members. As a result, it necessarily stopped providing legal services as of some date when it no longer had any licensed professionals whom could carry out legal services. Plaintiff seeks Defendant's position on the date of that occurence. In reply, the Defendant lodges multiple boilerplate objections to this straightforward, material inquiry before declining to provide a concrete response. This interrogatory is material to Plaintiff's claims that it is due compensation for purported legal services it allegedly rendered.

Interrogatory No. 7:    At some point during its operation, Cummings Manookian occupied (but never owned) office space at 45 Music Square West. Plaintiff alleges that, at some other separate undisclosed time, all of the Defendants somehow improperly utilized that office space; including, presumably, by being physically present on the premises. This interrogatory asks the Plaintiff to identify each and every day that Afsoon Hagh or any employee of Hagh PLLC was present at 45 Music Square West. The Defendant lodges boilerplate objections before refusing to answer. This interrogatory is directly relevant and highly material to Plaintiff's claims that the Defendants somehow improperly used 45 Music Square West, which is pled repeatedly, but without detail, in Plaintiff's Complaint.

Interrogatory No. 8:    This interrogatory asks the Plaintiff the identify with specificity the "furnishings and equipment" it alleges that Afsoon Hagh of Hagh Law improperly utilized in Paragraph 17 of Plaintiff's Complaint. The Plaintiff makes a number of boilerplate objections before refusing to respond. This interrogatory is relevant and material because

6

the Plaintiff alleges that Defendants improperly utilized "furnishings and equipment" as one of its claims, but has, to date, refused to describe any such furnishings and equipment.

Interrogatory No. 9:     This interrogatory seeks identification of the specific "office space" and specific "furnishings and equipment" that the Plaintiff alleges that Brian Manookian or Manookian PLLC improperly utilized at Paragraph 20 of the Plaintiff's Complaint. The Defendant generally identifies 45 Music Square West as the "office space" but refuses to identify any specific "furnishings and equipment."

This information is material because Plaintiff's Complaint is so devoid of actual factual allegations, the Defendant is not even on notice of what it is alleged to have improperly utilized. Defendant is not aware of any "furnishings" or "equipment" owned by Cummings Manookian. Because of the total lack of detail in Plaintiff's Complaint and discovery responses, Manookian PLLC cannot even be sure what Plaintiff is claiming. Plaintiff should be required to respond by stating with specificity the purported "furnishings and equipment" that were allegedly improperly utilized.

Interrogatory No. 10:     In addition to "improper utilization" of office space, furnishings, and equipment, one of Plaintiff's more bizarre claims is that Manookian PLLC converted or otherwise stole "telephone numbers" or "email addresses" belonging to Cummings Manookian. But the Plaintiff refuses to even identify those telephone numbers or email addresses with specificity.

7

What makes this allegation all the more perplexing is (1) Defendant is not aware that anyone can "own" a telephone number and (2) Manookian PLLC did not even use the same domain for email addresses as Cummings Manookian. Cummings Manookian email addresses were located at cummingsmanookian.com while Manoookian PLLC email addresses were located at tntriallawyers.com. Brian Manookian, for example, used the email address bmanookian@cummingsmanookian.com while with Cummings Manookian and brian@tntriallawyers.com while with Manookian PLLC.

This interrogatory asks the Plaintiff to specifically identify any and all office space, real property, furnishings, equipment, telephone numbers, and email addresses that Defendant alleges were owned by Cummings Manookian PLLC in Plaintiff's Complaint. The Plaintiff lodges a number of boilerplate objections and refuses to respond, other than by stating it had "an interest" in unidentified telephone number and email addresses and a "leasehold interest" in 45 Music Square West. This is not responsive. The interrogatory specifically seeks identification of those enumerated categories which the Defendant alleges it *owns or owned*. The Defendant should be required to provide an actual response to the inquiry posed.

Interrogatory No. 11: This interrogatory asks the Plaintiff to specifically identify the "property" and "client files" that Plaintiff alleges in Paragraph 20 of its Complaint were "used" by Brian Manookian or Manookian PLLC. After lodging various boilerplate objections, the Trustee again simply states "all furnishings and equipment" located at 45 Music Square West, without such much as generally describing the furnishings or equipment, and then refuses to identify any specific "client file."

8

This response is self-evidently problematic, but more so given that certain furnishings or equipment were indisputably owned by Brian Cummings. For example, Mr. Cummings owned his own desk, a valuable antique, as well as other office furniture. The Trustee's casual response that "everything" located inside a particular street address belonged to Cummings Manookian is not only unhelpful in unraveling her allegations, but demonstrably false.

Defendant is entitled to know with specificity the actual "property" and "client files" that are only generally referred to in Plaintiff's Complaint. With respect to the "client files," Defendant's understanding is that such files are owned by the client. To the extent Plaintiff is alleging otherwise (which it appears Plaintiff is generally doing), the Trustee needs to identify those client files as well as their content. Defendant is not capable of responding to Plaintiff's claims in the absence of actual identification of the property or client files. If Plaintiff has actual, concrete information supporting its claims, it should be a simple matter to state what exactly it claims the Defendant improperly took.

Interrogatory No. 12:    This interrogatory asks the Plaintiff to identify with specificity the work it completed in the Fitzgerald case, including specifying the number of hours spent on each task, and which attorney performed the work. This is highly relevant and material to Plaintiff's claims that it is due some unpaid money as a result of purported legal service performed in the Fitzgerald case. After lodging various boilerplate objections, the Plaintiff simply refuses to answer, despite having alleged that it performed such work in its Complaint.

<div align="center">9</div>

Interrogatory No. 13:     This interrogatory asks the Plaintiff to identify any and all offers of settlement obtained by Cummings Manookian in the Fitzgerald case during any time that Cummings Manookian was involved in the Fitzgerald case.  This request is highly relevant and directly material to Plaintiff's claims that it is due money in the Fitzgerald case, because it evidences outcomes that Cummings Manookian may have directly worked to secure for the Fitzgerald.

After lodging various objections, the Trustee states that "any and all settlement offers in the Fitzgerald Case were obtained by Cummings Manookian."  Notwithstanding the fact that this response is demonstrably false (because Cummings Manookian no longer existed as a going concern at the time of the case's settlement); it also fails to answer the inquiry.  To the extent that Cummings Manookian obtained any settlement offers, the Defendant requests that the Plaintiff identify those settlement offers with specificity.  Such specificity would include, at a minimum, the date on which the offer was obtained and the amount of money of the settlement offer.

Interrogatory No. 14:     This interrogatory asks the Plaintiff to identify the date on which Cummings Manookian stopped providing legal services in the Fitzgerald case.  This is highly relevant and material to the Plaintiff's claims that it is due unpaid monies for services purportedly rendered in the Fitzgerald case.  After lodging various objections, the Plaintiff responds that "notwithstanding these objections, the Trustee states that Cummings Manookian PLC continued providing services in the Fitzgerald case through the conclusion of that matter."  Again, notwithstanding that Plaintiff's response is demonstrably false

10

(Cummings Manookian no longer existed by that time or had any licensed professionals working for it), Plaintiff has failed to identify the specific date it concluded its representation. If Plaintiff's position is that it continued provided services through the "conclusion of the matter," it should be able to identify a date or approximate date on which the matter concluded and Cummings Manookian's representation ended.

Interrogatory No. 15: This interrogatory asks the Plaintiff to "identify and itemize" the specific property it alleges in Paragraph 44 of its Complaint that any Defendant "exercised control over to the exclusion of Cummings Manookian." This is highly relevant in that it merely and literally asks the Plaintiff to describe in detail the property at the heart of its own claims (but for which the Plaintiff has only generally listed by broad category in the Complaint).

Yet again, after lodging various boilerplate objections, the Plaintiff refuses to do so. Defendant is entitled to specific, itemized, and detailed descriptions of whatever property, items, or other materials the Plaintiff is alleging the Defendant wrongfully exercised control over. This request is taken directly from the language in Plaintiff's Complaint.

Interrogatory No. 16: This interrogatory is a direct question. It asks the Plaintiff whether it alleges that Afsoon Hagh was ever employed by Cummings Manookian, and, if so, to identify the dates and terms of her employment. This is directly relevant to all of Plaintiff's claims alleging that work completed by Afsoon Hagh should be credited to the Plaintiff. After raising various objections, the Plaintiff again refuses to respond with a simple affirmation or denial. This is a simple, straightforward request to which Defendant is entitled an answer.

11

Interrogatory No. 17:    This interrogatory is another direct question, this time asking the Plaintiff whether it contends that Cummings Manookian has ever entered into any written agreement with any of the Defendants. This goes to the heart of Plaintiff's claims. Plaintiff is apparently alleging that the Defendants have some unfulfilled financial obligation to the Plaintiff. Here, the Defendant seeks to identify whether that purported obligation is contractual in nature, or otherwise, rule out any such basis for the alleged obligation. Plaintiff lodges various boilerplate objections before refusing to give a straightforward response. To the extent Defendant is alleging that any of the Defendants had any written agreement with the Plaintiff, Defendant is entitled to know.

Interrogatory No. 18:    This final interrogatory is of critical importance. Plaintiff has sued the Defendant for various causes of action, alleging general and unarticulated injuries. This interrogatory asks the Plaintiff to "identify and itemize with specificity all economic damages Cummings Manookian claims to have suffered and is seeking from any Defendant in this action." After lodging various objections, the Plaintiff, again refuses to provide any type of substantive response from which the Defendant could possibly divine, what, specifically the Plaintiff wants from it.

This is perhaps one of the most fundamental inquiries that can be made in a lawsuit. Defendant simply wants to know, with specificity, what Plaintiff is alleging it is owed, and by whom. Defendant is entitled to this very basic information. Defendant cannot even determine its purported liability or financial exposure in the absence of such elemental information.

12

## III.   Second Set of Written Discovery

<u>Interrogatory No. 1:</u>   Paragraphs 47 and 48 of Plaintiff's Complaint allege that Manookian PLLC received fraudulent transfers of property.   This interrogatory merely asks the Plaintiff to identify with specificity the dates of the transfers, as well as precisely what was transferred, what was received by the Defendant, and in what manner.   After raising various boilerplate objections, the Plaintiff refuses to provide a substantive response to the inquiry, including providing no dates, no specific property, and failing to specify the manner in which Manookian PLLC purportedly received those transfers.   Again, this is fundamental information to which the Defendant is entitled.

<u>Interrogatory No. 2:</u>   Plaintiff's Complaint alleges that Defendants received "substantial transfers from Cummings Manookian."   This interrogatory simply asks the Plaintiff to identify those transfers with specificity, including the nature of the property transferred, the value of the property transferred, and the dates of the transfers.   Again, after lodging various objections, the Plaintiff refuses to provide any specific and substantive response.

Plaintiff was apparently confident enough in its Complaint to allege that Manookian PLLC, a law firm, received "substantial transfers" from Cummings Manookian.   Defendant is entitled to know what those purported transfers consisted of, what the Plaintiff believes those transfers were worth, and the date on which those transfers were alleged to occur.

<u>Interrogatory No. 3:</u>   Paragraph 63 of the Plaintiff's Complaint references "client and vendors" that were purportedly improperly utilized or otherwise taken from Cummings

<div align="center">13</div>

Manookian. This interrogatory simply asks the Plaintiff to specifically identify those clients and vendors, as well as the date and nature of any agreement between those clients and vendors and any party to this suit. The relevance of this inquiry is self-evident. Defendant needs to know what Plaintiff is alleging in order to defend itself from Plaintiff's claims. In response, Plaintiff refuses to identify a single client or vendor by name, a single agreement between a client or vendor and any party to this lawsuit, or a single date or the nature of any such agreement. Defendant is entitled to the identity of these individuals and entities that Plaintiff alleges Defendant improperly "utilized."

Interrogatory No. 4: Paragraph 66 of the Plaintiff's Complaint alleges that "assets" were transferred from Cummings Manookian. This interrogatory simply asks that the Plaintiff identify all such assets with specificity. This is an incredibly basic request. After lodging various boilerplate objections, the Plaintiff refuses to identify any such asset that was purportedly *transferred from Cummings Manookian* with any specificity. Defendant is entitled to this information, including on fundamental due process grounds. The continual reference to non-specific "property" or "assets" in Plaintiff's Complaint, purportedly taken from Cummings Manookian, is improper and impossibly insufficient to place Defendant on notice of whatever Plaintiff is even claiming was taken from Cummings Manookian. Defendant is entitled to this information.

Interrogatory No. 5: This interrogatory asks the Plaintiff to describe in as much detail, including listing a dollar amount and the bases for same, of any legal or equitable interest the Plaintiff claims to hold in any attorney's fee for cases the Plaintiff identified in its Complaint, including whether those cases even generated an attorney's fee.

14

This inquiry is highly relevant to Plaintiff's claims of being owed attorney's fees, particularly so because a number of the cases in Plaintiff's complaint never generated attorney's fees to Defendant's knowledge. In response, Plaintiff lodges serial boilerplate objections and refuses to provide any substantive response.

Defendant is entitled to know exactly what dollar amount of attorney's fees the Plaintiff is alleging Defendant owes it, and the bases for such a claim. This is fundamental to the litigation and critical for the Defendant to mount a defense. For example, this Defendant has never received an attorney's fee in any case. It is simply perplexed how it could then owe such attorney's fees (which it has never received) to a third-party with which it never had any type of agreement.

## IV.    Conclusion

For all of the reasons discussed above, Manookian PLLC requests that the Court compel the Plaintiff to respond to the outstanding Interrogatories discussed in this Motion. Manookian PLLC further requests that the Court award it its attorney's fees in connection with this Motion.[2]

Date:   January 19, 2022                    Respectfully submitted,


                                            */s/ John Spragens*
                                            John Spragens (TN Bar No. 31445)
                                            Spragens Law PLC
                                            311 22nd Ave. N.
                                            Nashville, TN 37203

---

[2] *See*, Fed. R. Civ. Pro. 37(a)(5)(a).

T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC and Brian Manookian*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was filed January 19, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*

16

# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSES TO MANOOKIAN PLLC'S FIRST SET OF WRITTEN DISCOVERY TO THE PLAINTIFF

Comes Now, Plaintiff, Jeanne Ann Burton, Trustee ("Trustee"), and for her Responses to Manookian PLLC's First Set of Written Discovery to the Plaintiff (the "Discovery"), states as follows:

### GENERAL OBJECTIONS

1.      Trustee's Responses to the Discovery shall not constitute a waiver of her objections as to admissibility.

2.      Trustee objects to the Discovery to the extent it exceeds the scope of permissible discovery.

3.      Trustee objects to the Discovery to the extent that the information sought is protected from discovery by the attorney-client privilege or the attorney work-product doctrine.

1

4.      Trustee objects to the Discovery to the extent that the information and documents sought are not in her possession, custody or control.

5.      Trustee objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Trustee objects to the Discovery to the extent that the information sought is equally available to Defendant as to Trustee.

7.      Trustee objects to the definitions and instructions to the extent Defendant seeks to impose any requirement in excess of those imposed by the Federal Rules of Civil Procedure. Additionally, Trustee is not required by the Federal Rules of Civil Procedure to adopt, follow or utilize Defendant's definitions and instructions, and Trustee's Responses are based upon the governing provisions of the applicable Rules, laws and the ordinary and usual meaning of the words used, except as otherwise noted in the Responses.

8.      Trustee reserves the right to supplement her Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.

## **INTERROGATORIES**

1.      Identify by case name every previously pending legal action in which Cummings Manookian withdrew, terminated their representation, or stopped providing legal services to any client from January 1, 2018 to the present. For each case, state the date on which Cummings Manookian withdrew, terminated their representation, or stopped providing legal services in a pending case from, January 1, 2018 to the present.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this

2

Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she is unaware of any case in which Cummings Manookian terminated its representation or stopped providing legal services from January 1, 2018 to the Petition Date. However, the Trustee has been provided a letter from Cummings Manookian to the Fitzgerald plaintiffs that allegedly served as a notice of withdrawal, though it remains unclear whether that letter was delivered or whether Cummings Manookian actually withdrew.

2.     For every matter you listed in response to Interrogatory No. 1, identify by case, date, description, and attorney the last or most recent legal task or service completed by Cummings Manookian in the case (for example: Jones v. Johnson, take deposition of Dr. Johnson, 2/1/19, 3.5 hours, Brian Manookian)

**RESPONSE**:

No matter was listed in response to Interrogatory No. 1.

3.     For any matter in which you allege Cummings Manookian is entitled to an attorney's fee, reimbursement of costs, or monies of any kind from Afsoon Hagh, Hagh Law PLLC, or Manookian PLLC:

     a.   identify the case by style and docket number;

     b.   state the date Cummings Manookian began representing the client and the date Cummings Manookian stopped providing legal services in the matter;

     c.   identify and describe in detail all legal work performed by Cummings Manookian in the case (i.e., research, drafting motions, arguing motions, responding to discovery, taking depositions, etc.), including a description of the number of hours spent performing each task, the date the task was performed, and which attorney or attorneys performed the work;

     d.   identify any and all offers of settlement obtained by Cummings Manookian during its period of representation in the case;

     e.   identify any actual recovery of monies obtained by Cummings Manookian

3

in the matter, and;

    f.   identify and itemize any costs for which you allege Cummings Manookian is due reimbursement.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she alleges that Cummings Manookian is entitled to fees and/or expenses in the following matters:

| Case Name | Court |
|---|---|
| Bailey v. HCA | Davidson Circuit |
| Balay v. Hutson et al | Davidson Circuit |
| Beckworth v. LBMC | Williamson Circuit |
| Brooks v. Reinking | Davidson Circuit |
| Dyer v. Vanderbilt Imaging | Davidson Circuit |
| Fitzgerald v. Osborn | Williamson Circuit |
| Knapp v. Ripley | Davidson Circuit |
| Manookian v. Pennsylvania Higher Education et al | Davidson Circuit |
| Miller v. Vanderbilt Medical | Davidson Circuit |
| Ruffino v. Archer | M.D. Tenn. |
| Salas v. Rosdeutscher et al | Davidson Circuit |
| Shoemaker v. Vanderbilt Medical | Davidson Circuit |
| Thompson v. Sidrys | Putnam Circuit |
| Waldron v. Monroe County | Monroe Circuit |
| Wheeler Bonding Co. v. Parks | Davidson Circuit |
| Wolf v. Mid-Cumberland Resources Agency | Rutherford Circuit |

    4.    For any matter in which you allege Cummings Manookian is entitled to an attorney's fee, reimbursement of costs, or monies of any kind from Afsoon Hagh, Hagh Law PLLC, or Manookian PLLC provide the total number of hours Cummings Manookian spent working on the case, even if such number is an estimate (if the number is an estimate please so state).

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this

4

Interrogatory in that it seeks information for which the Trustee is still seeking discovery.

5.    For every instance in which you allege a Defendant in this case committed "fraud," identify with specificity:

      a. the precise content of purportedly false representation or the material omission made by the Defendant;

      b. the date of the purportedly false representation or material omission;

      c. the identify of any individual or entity who relied upon the purportedly false representation or material omission; and

      d. a detailed description of the damages suffered by the individual or entity as a result of their reliance on the purportedly false representation or material omission.

**RESPONSE**:

The Trustee alleges in her Complaint that all three defendants received *fraudulent transfers* under 11 U.S.C. §548 and/or T.C.A. § 66-3-301. Therefore, there are no "fraudulent representations" or "material omissions" alleged.

6.    Identify with specificity the date upon which Cummings Manookian completely ceased, as an entity, providing legal services.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory to the extent it calls for a legal conclusion. Notwithstanding these objections, the Trustee can state that Cummings Manookian ceased providing legal services on the Petition Date, November 6, 2019.

7.    Identify each and every day since July 3, 2018 that Afsoon Hagh or any employee of Hagh Haw, PLLC was present at 45 Music Square West, Nashville, Tennessee.

5

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The Trustee finally objects to this Interrogatory because it is irrelevant to the cause of action against Manookian PLLC.

8.      Identify with specificity the "furnishings and equipment" you allege Afsoon Hagh or Hagh Law PLLC utilized in Paragraph 17 of your Complaint.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The Trustee finally objects to this Interrogatory because it is irrelevant to the cause of action against Manookian PLLC.

9.      Identify the "office space" and the specific "furnishings and equipment" you allege Brian Manookian or Manookian PLLC utilized in Paragraph 20 of your Complaint.

**RESPONSE**:

Premises located at 45 Music Square West, Nashville, Tennessee and all furnishings, equipment, and personal property located therein.

10.      Identify any and all office space, real property, furnishings, equipment, telephone numbers, and email addresses that you allege were owned by Cummings Manookian PLLC in your Complaint.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states, upon information and belief, that Cummings Manookian PLLC had a leasehold interest in 45 Music Square West, Nashville, Tennessee, and had an interest in all furnishings and equipment located therein. The Trustee further states that Cummings Manookian PLLC had an interest in all telephone numbers and email addresses that appeared in any signature block listing the law firm of Cummings Manookian, PLLC, including those utilized by Afsoon Hagh and Brian Manookian.

6

11.    Specifically identify the "property" and "client files" you allege were owned by Cummings Manookian and "use[d]" by Brian Manookian or Manookian PLLC as alleged in Paragraph 20 of your Complaint.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Manookian PLLC utilized office space located at 45 Music Square West, Nashville, Tennessee, all furnishings and equipment located therein, and utilized Cummings Manookian PLLC's client list and contact information to continue working on cases for which Cummings Manookian had an engagement agreement with the clients.

12.    Identify with specificity all work done by Cummings Manookian in the Fitzgerald Case, including, but not limited to, all pleadings drafted, all motions attended, all depositions attended, and specify the number of hours spent on each task, individually, including which attorney performed the work.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that all work done in the Fitzgerald Case was performed by Cummings Manookian, PLLC and its attorneys, and further states that pleadings of public record in that matter indicate on their face that substantial work was performed by Cummings Manookian, PLLC. The Trustee further states that the number of hours spent by Cummings Manookian, PLLC is irrelevant because it had a binding contingency agreement in that matter.

13.    Identify any and all offers of settlement obtained by Cummings Manookian for resolution of the Fitzgerald Case during any time you allege Cummings Manookian was involved in the Fitzgerald Case.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is

7

730

more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that any and all settlement offers in the Fitzgerald Case were obtained by Cummings Manookian.

14.     Identify the date on which Cummings Manookian stopped providing legal services in the Fitzgerald Case.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory to the extent it calls for a legal conclusion. Notwithstanding these objections, the Trustee states that Cummings Manookian, PLLC continued providing legal services in the Fitzgerald case through the conclusion of that matter.

15.     Identify and itemize with specificity the "leased premises, furniture, equipment, intellectual property, attorneys' fees, and reimbursement of costs" you allege Afsoon Hagh, Hagh Law, or Manookian PLLC have taken from Cummings Manookian or exercised control over to the exclusion of Cummings Manookian as alleged in Paragraph 44 of your Complaint.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The Trustee finally objects to this Interrogatory because questions involving transfers to Afsoon Hagh and Hagh Law are irrelevant to the cause of action against Manookian PLLC. Notwithstanding these objections, the Trustee states that the Defendants used space located 45 Music Square West, Nashville, Tennessee, they used all furnishings and equipment therein, they utilized telephone numbers and email addresses that had been associated with Cummings Manookian, PLLC and listed on numerous court pleadings as the contact information for Cummings Manookian, PLLC, and have taken, have attempted to take, or have improperly asserted an interest in fees and expenses owing to Cummings Manookian, PLLC in the cases identified in the response to Interrogatory No. 3 above.

16.     Do you contend that Cummings Manookian ever employed Afsoon Hagh? If so, please identify the start and end dates of her employment as well as the terms of her employment, including her duties, salary, hours, etc.

8

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The Trustee finally objects to this Interrogatory because it is irrelevant to the cause of action against Manookian PLLC. Notwithstanding these objections, the Trustee states that she does not know whether Afsoon Hagh was ever a paid employee of Cummings Manookian, PLLC, but she was certainly its agent.

17. Do you contend that Cummings Manookian has ever entered into a contract or written agreement of any kind with Manookian PLC, Hagh Law, or Afsoon Hagh? If so, please provide the date of the contract and a detailed description of its content.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The Trustee finally objects to this Interrogatory because any question concerning agreement with Afsoon Hagh or Hagh Law is irrelevant to the cause of action against Manookian PLLC. Notwithstanding these objections, the Trustee states that she is not currently aware of any such contract or written agreement.

18. Identify and itemize with specificity all economic damages Cummings Manookian claims to have suffered and is seeking from any Defendant in this action (for example: reimbursement of deposition transcript in Johnson case, reimbursement of expert witness fee in Johnson case, payment of attorney's fee in Johnson case).

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that this estate is entitled to some or all fees and expenses collected related to the cases listed in the response to Interrogatory No. 3 above.

9

Trustee cAB, Tr

## VERIFICATION

I, **Jeanne Ann Burton,** swear or affirm that the answers to the foregoing Interrogatories and are true, complete, and accurate. I also understand that it is my duty to properly notify my attorney should I later learn that any of these answers are incomplete, inaccurate, or misleading, or should I obtain further information relative to the answers provided herein.

Witness my hand this the 2nd day of March ,2021.

Jeanne Ann Burton, Trustee

STATE OF TN

COUNTYOF Davidson

SWORN TO AND SUBSCRIBED before me this 2ND day of March 2021.

Kim L. Turner

NOTARY PUBLIC



10



## REQUESTS FOR PRODUCTION

1. Produce any and all documents evidencing any ownership interest in real property at any time by Cummings Manookian, including 45 Music Square West, Nashville, Tennessee 37203.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

2. Produce any and all documents evidencing any rent payment by Cummings Manookian to the owner of 45 Music Square West from September 1, 2018 to the present.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

3. Produce any and all documents evidencing or reflecting Cummings Manookian's performance of its obligations under the terms of any lease agreement from September 1, 2018 to the present.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

4. Produce any and all documents evidencing or reflecting the ownership of any

11

fixtures or furniture located at 45 Music Square West, Nashville Tennessee 37203 at any time by

Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

5. Produce any and all documents evidencing the ownership of "intellectual property" by Cummings Manookian that you reference in your Complaint.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

6. Produce any and all documents identifying the "intellectual property" that you allege was improperly utilized by the Defendants in your Complaint.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that documents filed in the public record in cases identified in the response to Interrogatory No. 3 above list telephone numbers and email addresses that were associated with Cummings Manookian, PLLC and utilized by one or more Defendants.

7. Produce any and all documents evidencing the ownership of any telephone number by Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

8.     Produce and any all documents evidencing the ownership of any website or email address by Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

9.     Produce any and all documents reflecting, regarding, or evidencing any legal services provided by Cummings Manookian in the *Fitzgerald* matter.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that an engagement letter between Cummings Manookian PLLC and the Fitzgerald Plaintiffs is responsive to this request, but is in the possession or control of the Defendant and needs not be produced. Further, all pleadings filed in the Fitzgerald case are responsive to this request but are publicly available.

10.     Produce any and all documents reflecting, regarding, or evidencing any legal services provided by Cummings Manookian in any lawsuit in which you allege Cummings Manookian is owed monies by Manookian PLC, Hagh Law, or Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that the engagement letter between Cummings Manookian PLLC and

13

the Fitzgerald plaintiffs is responsive to this request, but that document in the possession or control of the Defendant and need not be produced. Further, all pleadings filed in the Fitzgerald matter are responsive to this request but are publicly available.

11.     Produce any and all itemized statements reflecting work performed by Cummings

Manookian in a lawsuit in which you allege Cummings Manookian is owed monies by Manookian

PLC, Hagh Law, or Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

12.     Produce any and all offers of settlement received by Cummings Manookian in any

lawsuit in which you allege Cummings Manookian is owed monies by Manookian PLC, Hagh

Law, or Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

13.     Produce any and all communications or correspondence between Jeanne Burton or

Phillip Young with any purported creditor of Cummings Manookian or any person acting on behalf

of a purported creditor of Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is not relevant to this matter, as neither Jeanne Burton nor Phillip Young possess any communications or correspondence with creditors related to the allegations brought in this adversary proceeding. The Trustee further objects to this Request on the grounds that it is overly broad and unduly burdensome.

14

14.     Provide any and all contracts or written agreements between Cummings Manookian and Manookian PLC.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

15.     Provide any and all contracts or written agreements between Cummings Manookian and Hagh Law.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Maanookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

16.     Provide any and all contracts or written agreements between Cummings Manookian and Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Maanookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

17.     Provide and any all documents or materials evidencing or reflecting Afsoon Hagh's employment with Cummings Manookian to the extent you allege she was an employee of Cummings Manookian.

**RESPONSE**:

15

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Maanookian, PLLC. Notwithstanding these objections, the Trustee states that pleadings she filed in the public records of certain cases identified in the response to Interrogatory No. 3 above, including the Fitzgerald matter, indicate that she was an agent of Cummings Manookian, PLLC, though the Trustee possesses no documents that indicate she was a paid employee. The pleadings referenced above are publicly available.

18.     Provide any and all documents evidencing or reflecting any salary paid to Afsoon Hagh by Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Maanookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

19.     Provide any and all pay stubs evidencing or reflecting any payment of any kind by Cummings Manookian to Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Manookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

20.     Provide any and all documents or materials reflecting any work done or legal services provided by Brian Cummings on the Fitzgerald case.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more

16

available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Manookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

21.     Produce any and all documents reflecting a false representation made by any

Defendant in this matter to Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant because her Complaint is not based upon any false representation. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

22.     Produce any and all documents reflecting a material omission committed by any

Defendant in this matter to the detriment of Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant because her Complaint is not based upon any material omission. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

23.     Produce any and all documents reflecting or evidencing any "fraud" perpetrated by

any Defendant in this matter as alleged in the Complaint.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is overly broad, as the Trustee does not know how to interpret the term "fraud". Notwithstanding these objections, the Trustee states all facts and documents

17

referenced herein support the claim that Cummings Manookian, PLLC made fraudulent transfers to the Defendants.

Respectfully submitted,

/s/ Phillip G. Young
Phillip G. Young (TN 021087)
THOMPSON BURTON, PLLC
6100 TOWER CIRCLE, SUITE 200
FRANKLIN, TENNESSEE 37067
(615)-465-6008
phillip@thompsonburton.com

*Attorneys for Jeanne Ann Burton, Trustee*

18

**Certificate of Service**

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via United States Mail, first class, postage prepaid, and by electronic mail to the following persons:

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203
john@spragenslaw.com

Craig V. Gabbert
Bass, Berry & Sims PLC
150 Third Ave. S, Suite 2800
Nashville, TN 37201
cgabbert@bassberry.com

This 1st day of March, 2021.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | )    **Case No. 3:19-bk-07235** |
| **CUMMINGS MANOOKIAN, PLLC,** | )    **Chapter 7** |
| | )    **Judge Walker** |
| Debtor. | ) |
| | ) |
| **JEANNE ANN BURTON, TRUSTEE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    **Adv. Proc. No. 3:20-ap-90002** |
| | ) |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) |
| **MANOOKIAN, PLLC; and FIRST-** | ) |
| **CITIZENS BANK & TRUST COMPANY,** | ) |
| | ) |
| Defendant. | ) |

---

## PLAINTIFF'S RESPONSES TO MANOOKIAN PLLC'S SECOND SET OF WRITTEN DISCOVERY TO THE PLAINTIFF

---

Comes Now, Plaintiff, Jeanne Ann Burton, Trustee ("Trustee"), and for her Responses to Manookian PLLC's Second Set of Written Discovery to the Plaintiff (the "Discovery"), states as follows:

### GENERAL OBJECTIONS

1.      Trustee's Responses to the Discovery shall not constitute a waiver of her objections as to admissibility.

2.      Trustee objects to the Discovery to the extent it exceeds the scope of permissible discovery.

3.      Trustee objects to the Discovery to the extent that the information sought is protected from discovery by the attorney-client privilege or the attorney work-product doctrine.

1

4.      Trustee objects to the Discovery to the extent that the information and documents sought are not in her possession, custody or control.

5.      Trustee objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Trustee objects to the Discovery to the extent that the information sought is equally available to Defendant as to Trustee.

7.      Trustee objects to the definitions and instructions to the extent Defendant seeks to impose any requirement in excess of those imposed by the Federal Rules of Civil Procedure. Additionally, Trustee is not required by the Federal Rules of Civil Procedure to adopt, follow or utilize Defendant's definitions and instructions, and Trustee's Responses are based upon the governing provisions of the applicable Rules, laws and the ordinary and usual meaning of the words used, except as otherwise noted in the Responses.

8.      Trustee reserves the right to supplement her Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.

## INTERROGATORIES

1.      Identify with specificity the property and transfers referenced in Paragraphs 47 and 48 of your Complaint including the date of the transfers, as well as precisely what you contend was received by Manookian PLLC, in what manner, and on what date.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that, from the date of its inception as an entity, Manookian PLLC utilized office space located at 45 Music Square West, Nashville, Tennessee, all

2

furnishings and equipment located therein, and utilized Cummings Manookian PLLC's client list and contact information to continue working on cases for which Cummings Manookian had an engagement agreement with the clients. Further, according to Manookian PLLC's discovery responses, it currently asserts an interest in fees that the Trustee believes belongs to Cummings Manookian PLLC.

      2.     Identify with specificity the "substantial transfers from Cummings Manookian" you allege were received by Afsoon Hagh, Hagh Law, and / or Manookian PLLC, including the nature of the property transferred, the value of the property transferred, and the dated of the transfers.

**RESPONSE**:

      The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to the relevance of this Interrogatory with respect to Afsoon Hagh and Hagh Law as Manookian PLLC has no standing to seek discovery on their behalf. Notwithstanding these objections, the Trustee states that, from the date of their inception as entities, Manookian PLLC and Hagh Law, PLLC utilized office space located at 45 Music Square West, Nashville, Tennessee, all furnishings and equipment located therein, and utilized Cummings Manookian PLLC's client list and contact information to continue working on cases for which Cummings Manookian had an engagement agreement with the clients. Further, according to the Defendants' discovery responses, all three defendants currently assert an interest in fees that the Trustee believes belongs to Cummings Manookian PLLC. Finally, Afsoon Hagh and/or Hagh Law, PLLC received a substantial distribution of funds from the Fitzgerald settlement that was property of Cummings Manookian, PLLC.

      3.     Identify the clients and vendors of Cummings Manookian referenced in Paragraph 63 of your Complaint that alleges "are the same or are vastly similar to the clients and vendors of Hagh Law and Manookian PLLC," including the names of the clients and vendors and the dates and nature of any agreements between the clients, vendors, Cummings Manookian, Hagh Law, and Manookian PLLC.

**RESPONSE**:

      The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to the relevance of this Interrogatory with respect to Afsoon Hagh and Hagh Law as Manookian PLLC has no standing to seek discovery on their behalf. Notwithstanding these

3

objections, the Trustee states that the plaintiffs in the matters identified in the Plaintiff's response to Interrogatory No. 3 of the First Set of Discovery were Cummings Manookian, PLLC's clients who Afsoon Hagh, Hagh Law PLLC, and/or Manookian PLLC now claim are their own clients.

4. Identify with specificity the "assets" you allege in Paragraph 66 of your Complaint were transferred from Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this interrogatory to the extent it is duplicative of a number of other interrogatories. Notwithstanding these objections, the Trustee states that the Defendants used space located 45 Music Square West, Nashville, Tennessee, they used all furnishings and equipment therein, they utilized telephone numbers and email addresses that had been associated with Cummings Manookian, PLLC and listed on numerous court pleadings as the contact information for Cummings Manookian, PLLC, and have taken, attempted to take, or have improperly asserted an interest in fees and expenses owing to Cummings Manookian, PLLC in the cases identified in the response to Interrogatory No. 3 in the First Set of Discovery, all without any compensation to Cummings Manookian, PLLC.

5. Describe in as much detail as possible, including listing dollar amounts and the bases for same, the "legal and/or equitable interest in the attorney's fees generated by each of the CM Cases" you allege are held by Cummings Manookian, including when and whether attorney's fees were even generated in those matter. In so doing, describe the bases or theory for CM's purported "legal and/or equitable interest."

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this interrogatory because it is vague and compound. Notwithstanding these objections, the Trustee states that this estate has a legal interest in all fees generated by the cases listed in the response to Interrogatory No. 3 of the First Set of Discovery by virtue of the Debtor's engagement letters with those plaintiffs. Alternatively, to the extent the Court determines that the Debtor has no legal interest in the fees generated by those cases, the Trustee has an equitable claim, for *quantum meruit*, for the services provided by Cummings Manookian, PLLC on those cases.

4

JAB, Tr
Trustee       VERIFICATION

I, **Jeanne Ann Burton,** swear or affirm that the answers to the foregoing Interrogatories and are true, complete, and accurate. I also understand that it is my duty to properly notify my attorney should I later learn that any of these answers are incomplete, inaccurate, or misleading, or should I obtain further information relative to the answers provided herein.

Witness my hand this the 2nd day of March ,2021.

_____
Jeanne Ann Burton, Trustee

STATE OF TN

COUNTY OF Davidson _____

SWORN   TO   AND   SUBSCRIBED   before   me   this   2nd day of March _____ 2021.

_____
Kim L. Turner
NOTARY PUBLIC

KIM L. TURNER
STATE OF TENNESSEE
NOTARY PUBLIC
WILLIAMSON COUNTY
My Commission Expires SEPT. 5, 2021

5



## REQUESTS FOR PRODUCTION

    1.    Produce any and all documents evidencing the "legal and/or equitable interest in the attorney's fees generated by each of the CM Cases" you allege are held by Cummings Manookian as recited in your Complaint.

**RESPONSE**:

    The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that the engagement letters between Cummings Manookian PLLC and the plaintiffs in the cases listed in the response to Interrogatory No. 3 of the First Set of Discovery are responsive to this request, but those in the possession or control of the Defendant and need not be produced. Further, all pleadings filed in the matters listed in the response to Interrogatory No. 3 of the First Set of Discovery are responsive to this request but are publicly available.

    Respectfully submitted,

    /s/ Phillip G. Young
    Phillip G. Young (TN 021087)
    THOMPSON BURTON, PLLC
    6100 TOWER CIRCLE, SUITE 200
    FRANKLIN, TENNESSEE 37067
    (615)-465-6008
    phillip@thompsonburton.com

    *Attorneys for Jeanne Ann Burton, Trustee*

6

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via United States Mail, first class, postage prepaid, and by electronic mail to the following persons:

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203
john@spragenslaw.com

Craig V. Gabbert
Bass, Berry & Sims PLC
150 Third Ave. S, Suite 2800
Nashville, TN 37201
cgabbert@bassberry.com

This 1st day of March, 2021.

*/s/ Phillip G. Young, Jr.*
Phillip G. Young, Jr.

7

# EXHIBIT 2

# SPRAGENS LAW

October 21, 2021

**VIA EMAIL**
Phillip Young, Jr.
Thompson Burton, PLLC
One Franklin Park
6100 Tower Circle, Ste. 200
Franklin, Tennessee 37067

Phillip,

      I have attached your client's prior responses to Requests for Admission, Interrogatories, and Requests for Production in this matter. They are deficient in every respect. In fact, the vast majority of the responses are flat-out refusals to answer basic requests for information *about your client's own allegations.*

      This letter is my good-faith attempt to resolve a discovery dispute. Please provide full, supplemented responses to each of the following identified requests. If such responses are not received by November 5, 2021, we will address the matter with the Court.

**Manookian PLLC's First Requests for Admission (February 25, 2021):** 1-14; 19-55; 57-68; 70-85.

**Plaintiff's First Set of Written Discovery (March 1, 2021):** Interrogatories 1-18; Requests for Production 1-23

**Plaintiff's Second Set of Written Discovery (March 1, 2021):** Interrogatories 1-5; Requests for Production 1.

      I understand that is it easy to make unfounded allegations, and that you now find yourself in the untenable position of being required to support those allegations with actual evidence. Simply refusing to answer, or lodging bogus objections is not sufficient or proper. In each of these instances where you lack any shred of evidence to support your claims; just say so.

Case 3:23-cv-00961    Document 6-1    Filed 10/04/23    Page 59 of 678 PageID #: 2975

Additionally, please provide dates for Jeanne Burton's deposition so that we can get it on the calendar. I anticipate needing two full days. As the accuser, her deposition will need to be completed prior to the other depositions occurring in this case.

Thank you for your consideration of these important issues.

Sincerely,

John Spragens
Spragens Law PLC

Enclosure

Form hrgnot

# UNITED STATES BANKRUPTCY COURT

## MIDDLE DISTRICT OF TENNESSEE

701 Broadway Room 170
Nashville, TN 37203

Adversary Proceeding No.  3:20–ap–90002
Related Bankruptcy Proceeding No.  3:19–bk–07235

Judge  Charles M Walker

In Re:

Plaintiff/Movant : Jeanne Ann Burton

    vs

Defendant/Respondent : Hagh Law PLLC

PLEASE TAKE NOTICE that a hearing will be held :

; via Zoom video; For details, please see www.tnmb.uscourts on 2/16/22 at 11:00 AM

to consider and act upon the following:

*104* – Manookian PLLC's Motion and Notice to Compel Plaintiff Trustee Jeanne Burton to Respond to Interrogatories (Attachments: # 1 Exhibit Defendant Manookian PLLC's Interrogatories and Responses # 2 Exhibit Meet and Confer Letter)Filed on the behalf of: Defendant Manookian PLLC. (SPRAGENS, JOHN)

Dated: 1/20/22                                    /s/ TERESA C. AZAN
                                                         Clerk, U.S. Bankruptcy Court

Burton,

    Plaintiff

                                          Adv. Proc. No. 20-90002-CMW

Hagh Law PLLC,

    Defendant

# CERTIFICATE OF NOTICE

| District/off: 0650-3 | User: leq0323 | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Jan 20, 2022 | Form ID: hrgnot | Total Noticed: 16 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jan 22, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| aty | + | CRAIG VERNON GABBERT, JR, BASS, BERRY & SIMS PLC, 150 THIRD AVENUE SOUTH, SUITE 2800, NASHVILLE, TN 37201-2017 |
| aty | + | GLENN BENTON ROSE, BASS, BERRY & SIMS PLC, 150 THIRD AVENUE SOUTH, SUITE 2800, NASHVILLE, TN 37201-2017 |
| aty | + | JOHN T. SPRAGENS, SPRAGENS LAW PLC, 311 22ND AVE N, NASHVILLE, TN 37203-1843 |
| aty | + | PHILLIP G YOUNG, Thompson Burton PLLC, One Franklin Park, 6100 Tower Circle, Suite 200, FRANKLIN, TN 37067-1465 |
| ust | + | MADALYN GREENWOOD, OFFICE OF THE US TRUSTEE, 200 JEFFERSON AVE, SUITE 400, MEMPHIS, TN 38103-2374 |
| ust | + | NATALIE MARIE COX, US DEPARTMENT OF JUSTICE, OFFICE OF THE UNITED STATES TRUSTEE, 701 BROADWAY, SUITE 318 NASHVILLE, TN 37203-3966 |
| ust | | TestUST TNMB, UST, Ustrustee Office, Nashville, TN 37203 |
| ust | + | U.S. Trustee, Office of the U.S. Trustee, One Memphis Place, 200 Jefferson Avenue, Suite 400, Memphis, TN 38103-2383 |
| ust | + | United States Trustee, Historic U.S. Courthouse, 31 E. Eleventh Street, Fourth Floor, Chattanooga, TN 37402-4205 |
| dft | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Hagh Law PLLC, c/o Afsoon Hagh, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Manookian PLLC, c/o Brian Manookian, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |

TOTAL: 12

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| ust | | Email/Text: ustpregion21.hr.ecf@usdoj.gov | Jan 20 2022 22:47:00 | MONSITA LECAROZ ARRIBAS, OFFICE OF THE US TRUSTEE (UST), OCHOA BUILDING, 500 TANCA STREET SUITE 301, SAN JUAN, PR 00901 |
| ust | + | Email/Text: ustpregion09.gr.ecf@usdoj.gov | Jan 20 2022 22:47:00 | Michael V. Maggio, Trial Attorney, Office of the US Trustee, The Ledyard Building, 2nd Floor, 125 Ottawa NW, Suite 200R, Grand Rapids, MI 49503-2865 |
| ust | | Email/Text: ustpregion08.na.ecf@usdoj.gov | Jan 20 2022 22:47:00 | US TRUSTEE, OFFICE OF THE UNITED STATES TRUSTEE, 701 BROADWAY STE 318, NASHVILLE, TN 37203-3966 |
| pla | + | Email/Text: jeanne.burton@comcast.net | Jan 20 2022 22:47:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 4

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| ust | | [ *** NO NAME OR ADDRESS SUPPLIED *** ] |
| ust | | CARRIE |
| ust | | KALISIA SCHAEFFER, REVENUE ASSSURANCE PROFESSIONALS, 1350 CONCOURSE AVE SUITE 600 |
| ust | | STEVEN EDWARD ANDERSON, ANDERSON & REYNOLDS PLC |
| ust | | worr robinson |

TOTAL: 5 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jan 22, 2022       Signature:      /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on January 20, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com  bankr@bassberry.com;delores.walker@bassberry.com |
| GLENN BENTON ROSE | on behalf of Defendant Hagh Law PLLC grose@bassberry.com  bankr@bassberry.com |
| JOHN T. SPRAGENS | on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM  spragenslaw@ecf.courtdrive.com |
| PHILLIP G YOUNG | on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com |

TOTAL: 4

Form hrgnot

# UNITED STATES BANKRUPTCY COURT

## MIDDLE DISTRICT OF TENNESSEE

701 Broadway Room 170
Nashville, TN 37203

Adversary Proceeding No.  3:20−ap−90002
Related Bankruptcy Proceeding No.  3:19−bk−07235

Judge  Charles M Walker

In Re:

Plaintiff/Movant : Jeanne Ann Burton

vs

Defendant/Respondent : Hagh Law PLLC

PLEASE TAKE NOTICE that a hearing will be held :

; via Zoom video; For details, please see www.tnmb.uscourts on 2/16/22 at 11:00 AM

to consider and act upon the following:

*104 −* Manookian PLLC's Motion and Notice to Compel Plaintiff Trustee Jeanne Burton to Respond to Interrogatories (Attachments: # 1 Exhibit Defendant Manookian PLLC's Interrogatories and Responses # 2 Exhibit Meet and Confer Letter)Filed on the behalf of: Defendant Manookian PLLC. (SPRAGENS, JOHN)

Dated: 1/20/22                                              /s/ TERESA C. AZAN
                                                                  Clerk, U.S. Bankruptcy Court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | Case No, 3:19-bk-07235 |
| | Chapter 7 |
| CUMMINGS MANOOKIAN, PLLC | Judge Walker |
| Debtor. | |
| | Adv. Proc. No. 3:20-ap-90002 |
| JEANNE ANN BURTON, TRUSTEE | |
| Plaintiff, | |
| v. | |
| HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC, | |
| Defendants. | |

## DEFENDANT HAGH LAW, PLLC AND AFSOON HAGH'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

Hagh Law PLLC and Afsoon Hagh the "Hagh Defendants"), through counsel, file this response in opposition to Plaintiff's Motion to Compel. The Hagh Defendants have either fully responded to all outstanding discovery, lodged proper objections, or have offered to make further responses and production upon the narrowing and clarifying of objectively unreasonable and overbroad requests. From its complete sets of Interrogatories, Requests for Production, and Requests for Admission, Plaintiff identifies only a single interrogatory, five requests for production, and no requests for admission for which she believes supplemented responses are necessary.

1

As discussed below, the Hagh Defendants continue to be entirely willing to supplement any and all responses upon identification of appropriate parameters. Stated alternatively, outside of privileged materials, the Hagh Defendants are in no way drawing a hard line against any particular requests. Rather, the Hagh Defendants are simply asking that the Plaintiff reign in or clarify certain requests that are incredibly overbroad, overly burdensome, or impossibly vague. Unfortunately, Plaintiff has not taken up the Hagh Defendants on that open offer. In response to Plaintiff's Motion to Compel, Defendants address each of the requests identified by Plaintiff, including proposing a reasonable resolution to the current impasse.

**Interrogatory No. 8 (Hagh Law and Afsoon Hagh):** This interrogatory asks the Hagh Defendants to state the legal or factual support for any amount of payment that the Hagh Defendants believe they are entitled to receive from work performed on a specific list of litigation matters. The interrogatory goes on to state, "without limitation, reference to any communication establishing the amounts to which the Defendant claims entitlement. [sic]"

The Hagh Defendants fully answered this interrogatory by identifying the bases of their compensation claims as their engagement agreements with Marty and Melissa Fitzgerald, Sandy Miller, Pamela Salas, and Bretton Keefer. It is not clear from Plaintiff's Motion what additional information she believes has not been provided.

**Request for Production No. 1 (Hagh Law):** This request states, in its entirety, "Please produce every Document or Communication that you allege supports your denials in your Answer."

This is an absurdly overbroad request. As just one example, Plaintiff has alleged that Defendant Hagh utilized office space at 45 Music Square West after September 2018. But Defendant Hagh never again worked at 45 Music Square West after taking maternity leave in June

2

of 2018. "Every document" supporting Ms. Hagh's denial that was not at 45 Music Square West after June 2018 would encompass an impossibly large universe of materials including all of her medical records reflecting her presence at the Hospital for labor and delivery, as well as any document – including family and vacation photographs, personal text messages, grocery and store receipts, etc. – evidencing her presence at any location other than 45 Music Square West for over two years. This is just a single example of the overbreadth of Request for Production No. 1.

The Hagh Defendants have offered to reevaluate this Request and supplement their response to the extent Plaintiff will narrow and clarify the Request by identifying discrete denials in the Answer. Plaintiff has thus far refused to do so.

**Request for Production No. 3 (Hagh Law):** This request seeks every document or communication evidencing the creation of an attorney/client relationship between Defendant and any party to a specific number of cases, including but not limited to engagement letters. The Hagh Defendants have agreed to produce all non-privileged materials, including engagement letters, subject to entry of a suitable protective order.

**Request for Production No. 5 (Hagh Law):** This request seeks production of every Document or Communication that evidences the amount of money the Hagh Defendants are entitled to from a specific list of cases. Again, the Hagh Defendants identify its engagement agreements which they have already agreed to produce upon entry of a suitable protective order.

**Request for Production No. 8 (Hagh Law):** This request seeks "all Documents and Communications that relate or refer to the *Fitzgerald v. Osborn* case in the Circuit Court for Williamson County, Tennessee." This is, again, an absurdly overbroad request. All documents

3

and communications "relating or referring" to a multi-year matter would include reams of attorney-client privileged materials, deposition and hearing transcripts, mountains of discovery responses, insurance policies, police reports, pleadings, emails, newspaper articles, and scores of other categories of documents from various repositories, the majority of which are totally immaterial to this matter.

In response, Defendants requested that Plaintiff identify key words, topics, or dates of correspondence that the Trustee seeks so that Defendants could even begin to formulate a search or search parameters. Defendants remain willing and open to doing so. Stated alternatively, if the Plaintiff will just identify with even a small amount of precision what she is looking for, Defendants will undertake to locate and produce those materials.

**Request for Production No. 9 (Hagh Law):** Plaintiff seeks any and all bank statements for any account from which funds from the settlement of *Fitzgerald v. Osborn* were deposited, transferred, or held. The disputed funds from that matter are being held by the Court. Prior to the funds being deposited with the Court, they were held by prior Defendant to this action, Citizens Bank and Trust. The Trustee, through Special Counsel, has already been provided with those statements.

For all of the foregoing reasons, Plaintiff's Motion to Compel and request for costs and fees should be denied. The Hagh Defendants have already given full responses to every interrogatory and request for production within their capacity to do so, and have repeatedly offered to supplement any other responses to the extent the Plaintiff chooses to narrow or clarify them. The Hagh Defendants remain willing to do so. Defendants limited objections are justified given the overly broad requests.

4

Respectfully submitted,

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr. (BPR 004702)
Glenn B. Rose (BPR 10598)
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

*Attorney for Afsoon Hagh and*
*Hagh Law, PLLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed January 26, 2022, and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

/s/ Craig V. Gabbert, Jr
Craig V. Gabbert, Jr.

32374068.1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| Debtor. | **Adv. Proc. No. 3:20-ap-90002** |
| **JEANNE ANN BURTON, TRUSTEE** | |
| Plaintiff, | |
| v. | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | |
| **and MANOOKIAN PLLC,** | |
| Defendants. | |

## DEFENDANT MANOOKIAN PLLC'S RESPONSE TO
## PLAINTIFF'S MOTION TO COMPEL

Defendant Manookian PLLC files this response in opposition to Plaintiff's Motion to Compel. Defendant has fully answered all outstanding discovery posed by Plaintiff, or otherwise explained why Plaintiff's request defies response. In doing so, Defendant has repeatedly offered to supplement any response where supplementation is made possible if Plaintiff will simply clarify or narrow her request. Plaintiff has declined to do so, filing the present motion instead.

The fundamental issue on the small number of discovery responses to which Plaintiff seeks a compelled response is that (1) the underlying request is so broad, vague, or general, that Defendant is not capable of providing a meaningful reply, or (2) the request presumes a predicate

1

that does not exist.  With respect to the former problem, Defendant remains willing to work with Plaintiff to provide supplemented responses to the extent Plaintiff is able to simply identify what exactly she is looking for.

Defendant provides the following responses to the individual discovery requests that Plaintiff contends are deficient.

**Interrogatory 5** – This interrogatory asks Defendant Manookian PLLC to "state what amounts that the Defendant alleges it is entitled to from each of the [following] cases."  But Defendant has not alleged it is entitled to any amount of money from any of the listed cases, and particularly, the Defendant has never alleged it is entitled to any from the Plaintiff.

**Interrogatory 8** – This interrogatory asks Manookian PLLC to state the bases for its response to Interrogatory Number 5.  Manookian PLLC correctly states that basis.  It does not make a claim to any money for 14 of the 16 cases because it had no contractual relationship with the litigants or did no work for the litigants.  For the remaining 2 cases, Manookian PLLC has not made a claim to entitlement of any monies.

**Request for Production 1** – This request asks Manookian PLLC to "produce every Document or Communication that you allege supports your denials in the Answer."  This is a ridiculous and overbroad request.  For example, the allegations against Manookian PLLC include assertions that it "utilized" Cummings Manookian's phone number and email address.  Thus, every email ever sent by Manookian PLLC from its own email accounts would "support its denial" of that allegation.  Likewise, every record of every phone call ever made by Manookian PLLC – none of which were made from a phone number owned by Cummings Manookian – therefore "support its denials" in the Answer.  Nevertheless, as stated by Manookian PLLC in its response to this

2

Request, "to the extent Plaintiff chooses to identify a specific denial for which it seeks documentary support, the Defendant will evaluate such on a request-by-request basis."

**Request for Production 3** – This request seeks every Document or Communication that evidences the creation of an attorney/client relationship between Defendant and any party to a specific list of cases. Again, this request is needlessly and absurdly overbroad. *Each and every* communication that ever occurred between Manookian PLLC and its clients necessarily evidences the creation of an attorney/client relationship. To the extent the Plaintiff simply wants engagement agreements, the Defendant has already agreed to permit inspection and related activities upon entry of a protective order.

**Request for Production 4** – This request seeks every Document or Communication that evidences the termination of an attorney/client relationship between Defendant and any party to a specific list of cases. Again, to the extent any such materials exist, Defendant has already agreed to permit inspection and related activities upon entry of a protective order.

**Request for Production 5** – This request seeks "every Document or Communication that supports your response to Interrogatory No. 5." Interrogatory No. 5 is the interrogatory which asked Defendant to identify the amounts of money it alleges it is entitled to receive for a list of cases. But Manookian PLLC has not alleged it is entitled to monies from those cases, and particularly not from the parties to this suit. Manookian PLLC nevertheless offered to make any responsive documents, to the extent they exist, available for inspection and related activities. As such, Manookian, PLLC responded appropriately as follows:

> Response: Objection. This Request is overly broad and unduly burdensome. Defendant will nevertheless attempt to respond. For the cases in which Manookian PLLC does not claim entitlement to a fee, there would be no document or communication supporting that contention precisely because Manookian PLLC did no work on the matter and/or had no contractual relationship with the client. In fact, Manookian PLLC does not recognize certain of the cases and believes it may have never even interacted with the client. To the extent any non-privileged, responsive documents exist, inspection and related activities will be permitted as requested.

**Request for Production 8** – This request seeks copies of "all Documents and Communications" that relate or refer to the *Fitzgerald v. Osborn* case in the Circuit Court for Williamson County, Tennessee, including but not limited to correspondence between you and counsel for the defendants in that matter."

Again, this response is wildly overbroad. Defendant does not even know what "every document" that ***relates*** to a lengthy wrongful death case would consist of, but certainly it would include hundreds of pages of attorney-client privileged materials for which the clients, the Fitzgeralds, hold the privilege. To the extent Plaintiff wishes to identify even general categories of materials she wants, Defendant is happy to attempt to locate and produce responsive documents. As currently posed, however, this Request is not capable of meaningful response.

4

For all of the foregoing reasons, Plaintiff's Motion to Compel should be denied. For those documents for which Defendant has requested a protective order, Defendant will work with Plaintiff to submit a protective order for entry to this Court and provide any responsive documents immediately thereafter.

Date:   January 26, 2022                    Respectfully submitted,


                                            /s/ John Spragens
                                            John Spragens (TN Bar No. 31445)
                                            Spragens Law PLC
                                            311 22nd Ave. N.
                                            Nashville, TN 37203
                                            T: (615) 983-8900
                                            F: (615) 682-8533
                                            john@spragenslaw.com

                                            *Attorney for Manookian PLLC and Brian Manookian*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed January 26, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.


                                            /s/ John Spragens

5

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>**CUMMINGS MANOOKIAN, PLLC**<br><br>    Debtor.<br><br>**JEANNE ANN BURTON, TRUSTEE**<br><br>     Plaintiff,<br><br>v.<br><br>**HAGH LAW, PLLC; AFSOON HAGH;**<br>**and MANOOKIAN PLLC,**<br><br>    Defendants. | **Case No, 3:19-bk-07235**<br>**Chapter 7**<br>**Judge Walker**<br><br>**Adv. Proc. No. 3:20-ap-90002** |

## DEFENDANT MANOOKIAN, PLLC'S MOTION TO DETERMINE SUFFICIENCY OF RESPONSES TO REQUESTS FOR ADMISSION, OR, ALTERNATIVELY, TO DEEM ADMITTED

Pursuant to Federal Rules of Bankruptcy Procedure 7036 and Federal Rule of Civil Procedure 36, Manookian PLLC, Adversary Proceeding Defendant (the "Defendant"), respectfully moves to determine the sufficiency of Plaintiff Jeanne Ann Burton's Responses to Requests for Admission or, alternatively, to deem those Requests discussed below admitted.

## I.    Introduction and Background

This is an adversary proceeding. The Plaintiff is the Trustee for a defunct law firm, Cummings Manookian ("CM"). The Defendant is the law firm, Manookian PLLC. Over two (2) years ago, the Plaintiff sued the Defendant making numerous and serious claims of fraudulent transfer, tortious interference with contracts, and conversion.

1

On January 26, 2021, Defendant served 85 separate requests for admission on Plaintiff. Plaintiff served her responses on February 25, 2021.  **Exhibit 1**.  Following the expiration of a discovery stay, the Defendant wrote Plaintiff on October 21, 2021 to notify her that Plaintiff's responses were deficient.  **Exhibit 2**.  Specifically, Defendant sought supplemented responses to Requests 1-14; 19-55; 57-68; and 70-85.  Defendant asked that supplementation be provided within two weeks by November 5, 2021.  Unfortunately, to date, the Plaintiff has declined to provide full responses.

## II.    Plaintiff's Purported Inability to Admit or Deny

Rule 36 of the Federal Rules of Civil Procedure provides that, in responding to a Request for Admission, "[t]he answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."

In response to a full 67 of Defendant's 85 Requests for Admission, the Plaintiff claims that she lacks the ability to admit or deny.[1]  Plaintiff, however, fails to comply with the minimum mandates of Rule 36 by confirming through an express statement that she has made reasonable inquiry into the matter and that the information she knows or can readily obtain is insufficient to enable her to admit or deny.

Such inquiry and confirmation of the same are non-discretionary under Rule 36.  The Court should determine that Plaintiff's Responses are insufficient and either (1) order prompt supplementation of those responses in a manner that conforms with Rule 36, or (2) deem each of the offending Responses to Requests admitted.

---

[1] **Exhibit 1**.  Responses to Requests for Admissions Nos. 1-11; 13-14; 21-48; 50-55; 57-68; 71; 76-82.

2

### III. Plaintiff's Repeated Objections Based upon Cummings Manookian PLLC's Purported Failure to Respond to Discovery

In response to 47 separate Requests for Admission, Plaintiff objects by claiming that she is "unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to discovery."[2] This is perplexing given that (1) the Plaintiff and her lawyer are the very individuals responsible for answering discovery on behalf of Cummings Manookian, PLLC; and (2) the Plaintiff has not posed any discovery to Cummings Manookian, PLLC for it to answer.

Pursuant to Rule 36(a)(6), Defendant requests that the Court find unjustified Plaintiff's objections which are based upon a purported failure of Cummings Manookian, PLLC to answer discovery. Pursuant to that subsection, Defendant requests that the Court additionally deem the matters admitted or, alternatively, order that supplemented answers be promptly served.

### IV. Plaintiff's Improper Objections as to Calling for a Legal Conclusion

Plaintiff has objected to Requests for Admission Nos. 49-55 on the grounds that those Requests "call for a legal conclusion." **Exhibit 1**. In fact, each of the Requests ask Plaintiff to admit or deny the truth of matters involving the application of law to fact or opinions about facts and the application of law to facts.

Rule 36(a)(1) defines the permissible scope of Requests for Admission. "A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) *relating to facts, the application of law to fact, or opinions about either*." (Emphasis added.)

---

[2] **Exhibit 1**. Responses to Requests for Admissions Nos. 1-7; 9-11; 13-14; 21-28; 31-33; 45-48; 50-55; 57-71.

3

Plaintiff's objections to Requests for Admission Nos. 49-55 are not justified. Defendant requests that the Court deem those matters admitted or, alternatively, order the Plaintiff to serve full, supplemented Responses.

Date: January 27, 2022

Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC and Brian Manookian*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed January 27, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*

4

# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSES TO MANOOKIAN PLLC'S FIRST SET OF REQUESTS FOR ADMISSION TO THE PLAINTIFF

Comes Now, Plaintiff, Jeanne Ann Burton, Trustee ("Trustee"), and for her Responses to Manookian PLLC's First Set of Requests for Admission to Plaintiff (the "Discovery"), states as follows:

### GENERAL OBJECTIONS

1.     Trustee's Responses to the Discovery shall not constitute a waiver of her objections as to admissibility.

2.     Trustee objects to the Discovery to the extent it exceeds the scope of permissible discovery.

3.     Trustee objects to the Discovery to the extent that the information sought is protected from discovery by the attorney-client privilege or the attorney work-product doctrine.

1

4.      Trustee objects to the Discovery to the extent that the information and documents sought are not in her possession, custody or control.

5.      Trustee objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Trustee objects to the Discovery to the extent that the information sought is equally available to Defendant as to Trustee.

7.      Trustee objects to the definitions and instructions to the extent Defendant seeks to impose any requirement in excess of those imposed by the Federal Rules of Civil Procedure. Additionally, Trustee is not required by the Federal Rules of Civil Procedure to adopt, follow or utilize Defendant's definitions and instructions, and Trustee's Responses are based upon the governing provisions of the applicable Rules, laws and the ordinary and usual meaning of the words used, except as otherwise noted in the Responses.

8.      Trustee reserves the right to supplement her Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.

## REQUESTS FOR ADMISSION

1.      Admit that Afsoon Hagh was never an employee of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue.  Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.  However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block.  Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

2.      Admit that Cummings Manookian never identified Afsoon Hagh as an employee to

2

the Internal Revenue Service.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

3. Admit that Cummings Manookian never identified Afsoon Hagh as an employee to the Tennessee Department of Revenue.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

4. Admit that Cummings Manookian never filed any documents with any state, local, or federal agency identifying Afsoon Hagh as an employee of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

5. Admit that Afsoon Hagh was never a member of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this

3

issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

6. Admit that Afsoon Hagh was never a partner in Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

7. Admit that Afsoon Hagh never held an ownership interest in Cummings

Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

8. Admit that Afsoon Hagh served as co-counsel with certain attorney members of

Cummings Manookian in various legal cases.

**RESPONSE:**

Trustee admits that Afsoon Hagh made notices of appearance as counsel in several Cummings Manookian matters. Trustee is unable to admit or deny the remainder of this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

4

9.      Admit that Afsoon Hagh was never paid a salary by Cummings Manookian.

   **RESPONSE:**

   Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue.  Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

10.      Admit that Afsoon Hagh was never paid an hourly wage by Cummings Manookian.

   **RESPONSE:**

   Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue.  Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

11.      Admit that Afsoon Hagh was never listed on Cummings Manookian's website.

   **RESPONSE:**

   Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue.  Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.  However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block.   Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

12.      Admit that Afsoon Hagh was never paid any monies by Cummings Manookian.

   **RESPONSE:**

   Denied.  Afsoon Hagh received funds from the settlement of the *Fitzgerald* matter that were otherwise owed to Cummings Manookian.

13.      Admit that Cummings Manookian had two members.

   **RESPONSE:**

      Admitted that Cummings Manookian had at least two members.  Trustee is unable to

admit or deny any remaining elements of this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue.  Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

14.     Admit that the two members of Cummings Manookian were Brian Manookian and Brian Cummings.

**RESPONSE:**

Admitted that Brian Manookian and Brian Cummings were members of Cummings Manookian.  Trustee is unable to admit or deny whether Mr. Cummings and Mr. Manookian were Cummings Manookian's only members because Cummings Manookian, PLC and/or Afsoon Hagh have failed to appropriately or adequately respond to Trustee's outstanding discovery requests on this issue.

15.     Admit that Cummings Manookian was a professional limited liability company.

**RESPONSE:**

Admitted.

16.     Admit that Cummings Manookian was created to provide professional services in the form of legal services.

**RESPONSE:**

Admitted.

17.     Admit that Cummings Manookian specialized in representing plaintiffs in medical malpractice cases.

**RESPONSE:**

Admitted.

18.     Admit that Cummings Manookian primarily accepted cases on a contingency fee basis whereby Cummings Manookian was only paid if they recovered monies for their client.

**RESPONSE:**

6

Admitted.

19. Admit that Cummings Manookian entered into engagement agreements with their clients.

**RESPONSE:**

Admitted that Cummings Manookian entered into engagement agreements with some clients. However, Trustee is unable to admit or deny whether Cummings Manookian entered into engagement letters with all of their clients because Trustee has not been given copies of all Cummings Manookian engagement agreements.

20. Admit that Cummings Manookian entered into engagement agreements with their clients that laid out the duties and rights of both parties to the contract.

**RESPONSE:**

Admitted that Cummings Manookian entered into engagement agreements with some clients that laid out the duties and rights of both parties to the contract. Trustee is unable to admit or deny whether Cummings Manookian entered into engagement letters with all of their clients because Trustee has not been given copies of all Cummings Manookian engagement agreements.

21. Admit that Cummings Manookian utilized a standard form engagement agreement whose content and terms with respect to the rights and duties of the parties generally did not vary from case to case ("the Cummings Manookian Engagement Agreement).

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee has only been provided copies of certain engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that most of the engagement agreements she has been provided appear to be based upon a standard form.

22. Admit that the Cummings Manookian Engagement Agreement included terms regarding the parties' rights in the event that the client terminated Cummings Manookian.

7

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee has not been provided copies of all engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that the engagement agreements she has been provided include terms regarding the parties' right in the event the client terminated Cummings Manookian.

23. Admit that the Cummings Manookian Engagement Agreement included terms regarding the parties' rights in the event that Cummings Manookian withdrew from representing the client.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee has not been provided copies of all engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that the engagement agreements she has been provided include terms regarding the parties' rights in the event that Cummings Manookian withdrew from representing the client.

24. Admit that the Cummings Manookian Engagement Agreement requires the client to pay Cummings Manookian an attorney's fee in the event the client terminates Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee has not been provided copies of all engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee also objects to this request to the extent it calls for a legal conclusion.

25. Admit that the Cummings Manookian Engagement Agreement does not require the client to pay Cummings Manookian an attorney's fee in the event Cummings Manookian withdraws from the representation.

**RESPONSE:**

8

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee has not been provided copies of all engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee also objects to this request to the extent it calls for a legal conclusion.

26.     Admit that Cummings Manookian has never entered into a contract or written agreement with Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

27.     Admit that Cummings Manookian has never entered into a contract or written agreement with Hagh Law PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

28.     Admit that Cummings Manookian has never entered into a contract or written agreement with Manookian PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookiann PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

29.     Admit that Cummings Manookian does not own, and has never owned, any real property.

9

**RESPONSE:**

Trustee admits that Cummings Manookian does not currently own any real property. Trustee is unable to admit or deny the remaining elements of this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

30.     Admit that Cummings Manookian does not own, and has never owned, 45 Music Square West, Nashville, Tennessee 37203.

**RESPONSE:**

Trustee admits that Cummings Manookian does not currently own 45 Music Square West, Nashville, Tennessee 37203.  Trustee is unable to admit or deny the remaining elements of this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

31.     Admit that Cummings Manookian was a party to a lease for 45 Music Square West, Nashville, Tennessee, 37203 ("the 45 MSW Lease).

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.   Trustee has specifically requested a copy of any such lease but none has been provided.

32.     Admit that Cummings Manookian was required to pay rent to 45 MSW Partners under the terms of the 45 MSW Lease.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.   Trustee has specifically requested a copy of any such lease but none has been provided.

33.     Admit that Cummings Manookian breached the 45 MSW Lease by failing to pay rent to 45 MSW Partners beginning in November of 2018.

10

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.   Trustee has specifically requested a copy of any such lease but none has been provided.

    34.    Admit that Cummings Manookian owns no furniture.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.  Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no furniture, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there is furniture in the offices where Cummings Manookian operated.

    35.    Admit that Cummings Manookian has never owned any furniture.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.  Trustee admits that Brian Manookian has alleged that Cummings Manookian has never owned furniture, but this allegation has not been tested.   However, upon information and belief, the Trustee believes that there is furniture in the offices where Cummings Manookian operated.

    36.    Admit that Cummings Manookian owns no computers.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.  Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no computers, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there are computers in the offices where Cummings Manookian operated.

    37.    Admit that Cummings Manookian has never owned any computers.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.  Trustee admits that Brian Manookian has

11

alleged that Cummings Manookian has never owned computers, but this allegation has not been tested.  However, upon information and belief, the Trustee believes that there are computers in the offices where Cummings Manookian operated.

38.     Admit that Cummings Manookian owns no telephones.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.  Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no telephones, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there are telephones in the offices where Cummings Manookian operated.

39.     Admit that Cummings Manookian has never owned any telephones.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.  Trustee admits that Brian Manookian has alleged that Cummings Manookian has never owned telephones, but this allegation has not been tested.   However, upon information and belief, the Trustee believes that there are telephones in the offices where Cummings Manookian operated.

40.     Admit that the web domain cummingsmanookian.com was registered by Brian

Cummings.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

41.     Admit that the web domain cummingsmanookian.com is owned by Brian

Cummings.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

12

42.     Admit that Cummings Manookian has never owned any website.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.  However, Trustee is aware that Cummings Manookian utilized a website at times during its operations.

43.     Admit that the Defendants have never utilized cummingsmanookian.com as a website.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

44.     Admit that cummingsmanookian.com has not functioned as a website since at least October of 2018.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

45.     Admit the telephone number 615-266-3333 was purchased individually by Brian Cummings prior to the formation of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. However, Trustee is aware that Cummings Manookian utilized that telephone number at times during its operations.

13

46. Admit that all telephone numbers utilized by Cummings Manookian during its period of operation were privately purchased Brian Cummings prior to the formation of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. However, Trustee is aware that Cummings Manookian utilized certain telephone numbers at times during its operations.

47. Admit that none of the Defendants have utilized a phone number owned by Cummings Manookian at any time.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Afsoon Hagh listed a Cummings Manookian telephone number and email address in numerous court pleadings.

48. Admit that none of the Defendants have utilized a phone number owned by Cummings Manookian at any time after October 2018.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Afsoon Hagh listed a Cummings Manookian telephone number and email address in numerous court pleadings after October 2018.

49. Admit that, under Tennessee law, a legal client's file is owned by the client.

**RESPONSE:**

14

Trustee objects to this request on the grounds that it calls for a legal conclusion. However, Trustee affirmatively alleges that a law firm may own client lists, client contact information, and accounts receivable associated with clients.

50.     Admit that Cummings Manookian does not now, nor has it ever, owned a client's

case file.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee also objects to this request to the extent that it calls for a legal conclusion. However, Trustee affirmatively alleges that Cummings Manookian did own client lists, client contact information, and accounts receivable associated with clients.

51.     Admit that Cummings Manookian is and was required to return, destroy, or transfer

a client's case file upon that client's request.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. Trustee further states that she has not been provided copies of certain disengagement letters that might govern Cummings Manookian's responsibilities to its clients.

52.     Admit that Cummings Manookian does not "own" a client's case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

53.     Admit that Cummings Manookian does not have an ownership interest in any case

brought on behalf of a client.

**RESPONSE:**

15

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

54. Admit that any cause of action or right of recovery pursued by Cummings

Manookian on behalf of a client belongs to the client.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

55. Admit that any cause of action or right of recovery pursued by Cummings

Manookian on behalf of a client does not belong to Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

56. Admit that any Cummings Manookian client was empowered to terminate

Cummings Manookian at any time and for any reason.

**RESPONSE:**

Admitted that any client had the right to terminate Cummings Manookian at any time and for any reason.

57. Admit that Cummings Manookian provided no services to Manookian PLLC.

16

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property.

58.　　Admit that Cummings Manookian provided no goods to Manookian PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property.

59.　　Admit that Cummings Manookian provided no services to Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property.

60.　　Admit that Cummings Manookian provided no goods to Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property.

61.　　Admit that Cummings Manookian provided no services to Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh

17

to utilize its leased premises and certain personal property.

62. Admit that Cummings Manookian provided no goods to Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property.

63. Admit that Cummings Manookian provided no services to Manookian PLLC in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

64. Admit that Cummings Manookian provided no goods to Manookian PLLC in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

65. Admit that Cummings Manookian provided no services to Hagh Law in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on

18

this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

66. Admit that Cummings Manookian provided no goods to Hagh Law in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

67. Admit that Cummings Manookian provided no services to Afsoon Hagh in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

68. Admit that Cummings Manookian provided no goods to Afsoon Hagh in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

69. Admit that Cummings Manookian had an existing, enforceable contract with Marty and Melissa Fitzgerald covering the subject matter of Cummings Manookian's representation in

19

the Fitzgerald v. Osborn matter.

**RESPONSE:**

Admitted

70.     Admit that Cummings Manookian withdrew from representing the Fitzgeralds in

the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.   While Brian Manookian has produced a letter from Cummings Manookian that allegedly terminated the client relationship with the Fitzgeralds, no evidence has been produced that the letter was delivered to the Firtzgeralds, nor was any notice of withdrawal ever filed in that case.

71.     Admit that the Fitzgeralds did not terminate Cummings Manookian from

representing them in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue.

72.     Admit that Cummings Manookian never recovered any monies for the Fitzgerald

in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.  Cummings Manookian recovered a substantial monetary settlement for the Fitzgeralds in that matter.

73.     Admit that Cummings Manookian never even secured an offer of settlement from

the Defendants in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.  Cummings Manookian recovered a substantial monetary settlement for the Fitzgeralds in that matter.

20

74. Admit that Cummings Manookian did minimal work on the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.  Cummings Manookian filed  a substantial number of pleadings in that case.

75. Admit that none of the work performed by Cummings Manookian in the Fitzgerald v Osborn matter resulted in any settlement or payment to the Fitzgeralds.

**RESPONSE:**

Denied.  The work performed by Cummings Manookian in the matter directly caused the settlement payment.

76. Admit that Manookian PLLC has never received a transfer of funds from Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.  However, according to its discovery responses, Manookian PLLC claims an interest in certain funds which Trustee believes to be property of this estate.

77. Admit that Manookian PLLC has never received any funds from Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.  However, according to its discovery responses, Manookian PLLC claims an interest in certain funds which Trustee believes to be property of this estate.

78. Admit that Manookian PLLC has never received any funds belonging to Cummings Manookian.

**RESPONSE:**

21

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, according to its discovery responses, Manookian PLLC claims an interest in certain funds which Trustee believes to be property of this estate.

79. Admit that Manookian PLLC has never received any monies from Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic.

80. Admit that Manookian PLLC has never received any monies from Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic.

81. Admit that Manookian PLLC has never received any monies from any person or any entity.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.

82. Admit that Manookian PLLC does not now, nor has it ever, held a bank account.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.

83. Admit that Hagh Law PLLC has never received any monies from Cummings Manookian.

**RESPONSE:**

Denied. Hagh Law PLLC received a distribution of a substantial sum of money from the Fitzgerald settlement that was property of Cummings Manookian.

22

84. Admit that Hagh Law has never received any monies from any person intended for Cummings Manookian.

**RESPONSE:**

Denied. Hagh Law PLLC received a distribution of a substantial sum of money from the Fitzgerald settlement that was property of Cummings Manookian.

85. Admit that no person or entity has ever provided Afsoon Hagh, Hagh Law, or Manookian PLLC with monies that such person or entity instructed to be delivered to Cummings Manookian.

**RESPONSE:**

Denied. Afsoon Hagh and Hagh Law received a transfer of funds that the Chancery Court of Williamson County directed to be held in trust. However, the money was unilaterally transferred into an account in the name of Hagh Law and Afsoon Hagh.

Respectfully submitted,

/s/ Phillip G. Young
Phillip G. Young (TN 021087)
THOMPSON BURTON, PLLC
6100 TOWER CIRCLE, SUITE 200
FRANKLIN, TENNESSEE 37067
(615)-465-6008
phillip@thompsonburton.com

*Attorneys for Jeanne Ann Burton, Trustee*

23

**Certificate of Service**

The undersigned hereby certifies that a true and exact copy of the foregoing has been served

via United States Mail, first class, postage prepaid, and by electronic mail to the following persons:

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203
john@spragenslaw.com

Craig V. Gabbert
Bass, Berry & Sims PLC
150 Third Ave. S, Suite 2800
Nashville, TN 37201
cgabbert@bassberry.com

This 25th day of February, 2021.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

# EXHIBIT 2

# SPRAGENS LAW

October 21, 2021

**VIA EMAIL**
Phillip Young, Jr.
Thompson Burton, PLLC
One Franklin Park
6100 Tower Circle, Ste. 200
Franklin, Tennessee 37067

Phillip,

      I have attached your client's prior responses to Requests for Admission, Interrogatories, and Requests for Production in this matter. They are deficient in every respect. In fact, the vast majority of the responses are flat-out refusals to answer basic requests for information *about your client's own allegations.*

      This letter is my good-faith attempt to resolve a discovery dispute. Please provide full, supplemented responses to each of the following identified requests. If such responses are not received by November 5, 2021, we will address the matter with the Court.

**Manookian PLLC's First Requests for Admission (February 25, 2021):** 1-14; 19-55; 57-68; 70-85.

**Plaintiff's First Set of Written Discovery (March 1, 2021): Interrogatories** 1-18; **Requests for Production** 1-23

**Plaintiff's Second Set of Written Discovery (March 1, 2021): Interrogatories** 1-5; **Requests for Production** 1.

      I understand that is it easy to make unfounded allegations, and that you now find yourself in the untenable position of being required to support those allegations with actual evidence. Simply refusing to answer, or lodging bogus objections is not sufficient or proper. In each of these instances where you lack any shred of evidence to support your claims; just say so.

Additionally, please provide dates for Jeanne Burton's deposition so that we can get it on the calendar. I anticipate needing two full days. As the accuser, her deposition will need to be completed prior to the other depositions occurring in this case.

Thank you for your consideration of these important issues.

Sincerely,

John Spragens
Spragens Law PLC

Enclosure

# UNITED STATES BANKRUPTCY COURT

## MIDDLE DISTRICT OF TENNESSEE

701 Broadway Room 170
Nashville, TN 37203

---

Adversary Proceeding No.  3:20–ap–90002
Related Bankruptcy Proceeding No.  3:19–bk–07235

Judge  Charles M Walker

In Re:

Plaintiff/Movant : Jeanne Ann Burton

vs

Defendant/Respondent : Hagh Law PLLC

---

PLEASE TAKE NOTICE that a hearing will be held :

; via Zoom video; For details, please see www.tnmb.uscourts on 2/16/22 at 11:00 AM

to consider and act upon the following:

*109* – Manookian PLLC's Motion for Court to Determine Sufficiency of Plaintiffs Responses to Requests for Admission, or, Alternatively, to Deem Admitted. (Attachments: # 1 Exhibit RFA Responses # 2 Exhibit Meet and Confer Letter)Filed on the behalf of: Defendant Manookian PLLC. (SPRAGENS, JOHN)

Dated: 1/31/22                                    /s/ TERESA C. AZAN
                                                           Clerk, U.S. Bankruptcy Court

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

INRE:                                              )
                                                   )
CUMMINGS MANOOKIAN, PLLC,                           )    Case No. 3:19-bk-07235
          Debtor.                           )    Chapter 7
                                                   )    Judge Walker
JEANNE ANN BURTON, TRUSTEE,                         )
          Plaintiff,                        )
                                                   )
v.                                                 )
                                                   )
HAGH LAW, PLLC; AFSOON HAGH;                        )
MANOOKIAN, PLLC; and FIRST-                         )
CITIZENS BANK & TRUST                               )
COMPANY,                                           )
          Defendants.                       )
                                                   )    Adv. Proc. No. 3:20-ap-90002

# PROTECTIVE ORDER

Plaintiff Jeanne Ann Burton, Trustee and Defendants Hagh Law, PLLC, Afsoon Hagh, and Manookian, PLLC (each of the foregoing, a "Party," and collectively, the "Parties") anticipate that certain of their confidential business and/or client records, as well as those of non-parties, may be produced in discovery in the above-captioned action (the "Action") and that such confidential records must be protected from further disclosure. Pursuant to Federal Rule of Civil Procedure 26(c), made applicable to this matter by Bankruptcy Rule 7026, the Court finds good cause for entry of this Stipulated Protective Order ("Protective Order") to provide such protection according to the terms and conditions set forth below. To expedite the flow of discovery material and the litigation of this case, facilitate the prompt resolution of disputes over confidentiality, and adequately protect material entitled to be kept confidential, it is, by agreement of the Parties, STIPULATED and ORDERED that:

1.       Correspondence and communications between the law firm and lawyer parties to this case (Cummings Manookian PLLC, Hagh Law PLLC, Afsoon Hagh, and Manookian PLLC) and their clients shall be treated as confidential.  This provision specifically includes engagement agreements.  This provision additionally includes such communications between Brian Cummings and his clients as well as Brian Manookian and his clients.

2.       Documents subject to this Protective Order, when filed with the Court in this action for any reason, shall be filed under seal. The party wishing to file any such documents with the Court must first move to have the information filed under seal in accordance with the procedure mandated by the local rules.

3.       Nothing in this Protective Order shall affect the admissibility of any evidence at a trial or hearing in this case.

4.       This Protective Order may be modified by the Court at any time for good cause shown following notice to the Parties and an opportunity for them to be heard.

2

_____

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**
_____

Submitted for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr.
Bass, Berry & Sims, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: (615) 742-6277
cgabbert@bassberry.com

Counsel to Afsoon Hagh and Hagh Law, PLLC

3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
|     Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON | ) | |
| HAGH; MANOOKIAN, PLLC; and | ) | |
| FIRST-CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
|     Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

---

## MOTION TO COMPEL MARTY FITZGERALD TO COMPLY WITH SUBPOENA FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Bankruptcy Procedure 9016 and Federal Rule of Civil Procedure 45, Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff herein (the "Trustee"), respectfully moves to compel Marty Fitzgerald ("Fitzgerald") to respond to a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of a Premises in a Bankruptcy Case (or Adversary Proceeding) (the "Subpoena") issued on December 9, 2021, and served on Mr. Fitzgerald on December 13, 2021.

As indicated in the Subpoena, a true and accurate copy of which is attached hereto as Exhibit A, the Trustee sought discovery from Marty Fitzgerald, one of the plaintiffs in the *Fitzgerald v. Osborn* matter, with regard to a finite set of documents: engagement or disengagement communications with the Debtor, engagement or disengagement

communications with Hagh Law, PLLC, engagement or disengagement communications with Manookian, PLLC, engagement or disengagement communications with Afsoon Hagh, and engagement or disengagement communications with Brian Manookian. The purpose of this Subpoena was to discover whether the Debtor actually notified Mr. Fitzgerald of its withdrawal, and whether any of the Defendants in this matter were ever formally engaged by the Fitzgerald plaintiffs. The Subpoena was served on Mr. Fitzgerald on December 13, 2021, as indicated on the return of service attached hereto as Exhibit B.

The Subpoena required production of the requested documents by January 10, 2022. On December 27, 2021, counsel for the Trustee received an email from Afsoon Hagh, attached hereto as Exhibit C, objecting to the Subpoena on behalf of Mr. Fitzgerald. The email indicated that separate counsel would reach out to the Trustee's counsel "to further discuss possibilities in reaching an agreement on materials, if any, subject to production." Neither the Trustee nor the Trustee's counsel have received any further communication from Mr. Fitzgerald or any counsel purporting to act on his behalf, and no documents have been produced as directed by the Subpoena.

The email from Afsoon Hagh raises three possible objections to the Subpoena: (1) privilege, (2) that the requested documents were not retained, and (3) that production of the documents would be an undue hardship on Mr. Fitzgerald. Regarding privilege, only communications between attorneys and clients that are substantive are subject to the attorney-client privilege; unless the engagement or disengagement letters contain advice or analysis of Mr. Fitzgerald's case, it would be subject to no such privilege. *Boyd v. Comdata Network*, 88 S.W.3d 203, 213 (Tenn. Ct. App. 2002) ("The attorney-client privilege is not absolute, nor does it cover all communications between a client and his or her attorney.

The communications must involve the subject matter of the representation and must be made with the intention that they will be kept confidential."). Even if the engagement letters and disengagement letters would be privileged, the Trustee is still entitled to know of their existence; the Defendants cannot simply say "we have a new engagement with the Fitzgerald plaintiffs" without submitting some proof of that allegation. Second, if documents were received but are no longer in Mr. Fitzgerald's possession, then he should provide a written and signed statement to the Trustee explaining what documents are missing. That matter is easily resolvable. Finally, the Subpoena was the least invasive means that the Trustee had at her disposal of gaining access to information essential to the resolution of this matter.[1] The Trustee is sensitive to the fact that Mr. Fitzgerald is involved in this matter only because he was a former client of the Debtor, and possibly one or more of the Defendants. The Trustee issued the Subpoena hoping that it would avoid her having to subpoena him to testify at a deposition, though that is beginning to appear inevitable based upon the Defendants' responses to this and all other discovery attempts. The Trustee and her counsel took great care to narrow the scope of the Subpoena to only documents that were (a) not privileged and (b) absolutely necessary for this matter. The documents requested in the Subpoena are very narrow and not burdensome in the least.

Wherefore, the Trustee requests that the Court compel Marty Fitzgerald to respond to the document requests made of him in the Subpoena.

Dated: February 1, 2022

---

[1] That is especially true because the Defendants have consistently refused to turn over this same information.

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:    615.465.6008
Fax:    615.807.3048
Email: phillip@thompsonburton.com

Special Counsel to Trustee

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF and/or United States Mail, first class, postage prepaid, to the following persons:

Afsoon Hagh
c/o Craig V. Gabbert, Jr.
Bass, Berry & Sims PLC
150 Third Ave. South, Suite 2800
Nashville, TN 37201

Marty Fitzgerald
8158 Golf Club Road
Mount Pleasant, TN 38474

This 1st day of February, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

# UNITED STATES BANKRUPTCY COURT

MIDDLE _____ District of TENNESSSEE _____

In re CUMMINGS MANOOKIAN, PLLC _____
Debtor

*(Complete if issued in an adversary proceeding)*

JEANNE ANN BURTON, TRUSTEE _____
Plaintiff

v.

HAGH LAW, PLLC et al. _____
Defendant

Case No. 3:19-bk-07235

Chapter 7 _____

Adv. Proc. No. 3:20-ap-90002 _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Marty Fitzgerald _____

*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: SEE ATTACHED DESCRIPTION

| PLACE Thompson Burton, PLLC; 6100 Tower Circle, Suite 200; Franklin, TN 37067 | DATE AND TIME January 10, 2022 @ 4:00 p.m. |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: December 9, 2021 _____

CLERK OF COURT

OR

_____          /s/ Phillip G. Young, Jr.
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Jeanne Ann Burton , who issues or requests this subpoena, are: Phillip G. Young, Jr.; Thompson Burton, PLLC; 6100 Tower Circle, Ste. 200; Franklin, TN 37067; (615) 465-6000; phillip@thompsonburton.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: Marty Fitzgerald

on *(date)*_____.

☐ I served the subpoena by delivering a copy to the named person as follows: Marty Fitzgerald; 8158 Golf Club Road; Mount Pleasant, TN 38474

_____on *(date)*_____; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $_____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

---

## ATTACHMENT TO MARTY FITZGERALD SUBPOENA

1) Produce all communications between you and any agent of **Cummings Manookian, PLLC** regarding or related to your **employment** of that firm, or the terms thereof, in *Fitzgerald v. Osborne*, Williamson County Circuit Court Case No. 2018-CV-311. This request includes, but is not limited to, letters, email correspondence, text messages, and notes from telephone calls.

2) Produce all communications between you and any agent of **Cummings Manookian, PLLC** regarding or related to Cummings Manookian, PLLC's **withdrawal** as counsel of record from *Fitzgerald v. Osborne*, Williamson County Circuit Court Case No. 2018-CV-311. This request includes, but is not limited to, letters, email correspondence, text messages, and notes from telephone calls.

3) Produce all communications between you and any agent of **Hagh Law, PLLC** regarding or related to your employment of that firm, or the terms thereof, in *Fitzgerald v. Osborne*, Williamson County Circuit Court Case No. 2018-CV-311. This request includes, but is not limited to, letters, email correspondence, text messages, and notes from telephone calls.

4) Produce all communications between you and any agent of **Manookian, PLLC** regarding or related to your employment of that firm, or the terms thereof, in *Fitzgerald v. Osborne*, Williamson County Circuit Court Case No. 2018-CV-311. This request includes, but is not limited to, letters, email correspondence, text messages, and notes from telephone calls.

5) Produce all communications between you and **Afsoon Hagh** regarding or related to your employment of her, as counsel of record, in *Fitzgerald v. Osborne*, Williamson County Circuit Court Case No. 2018-CV-311. This request includes, but is not limited to, letters, email correspondence, text messages, and notes from telephone calls.

6) Produce all communications between you and **Brian Manookian** regarding or related to your **employment** of him, as counsel of record, in *Fitzgerald v. Osborne*, Williamson County Circuit Court Case No. 2018-CV-311. This request includes, but is not limited to, letters, email correspondence, text messages, and notes from telephone calls.

7) Produce all communications between you and **Brian Manookian** regarding or related to his **withdrawal**, as counsel of record, in *Fitzgerald v. Osborne*, Williamson County Circuit Court Case No. 2018-CV-311. This request includes, but is not limited to, letters, email correspondence, text messages, and notes from telephone calls.

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: Marty Fitzgerald
on *(date)* 12/9/2021.

☑ I served the subpoena by delivering a copy to the named person as follows: Marty Fitzgerald; 8158 Golf Club Road; Mount Pleasant, TN 38474   at 3:32 PM.

_____ on *(date)* 12/13/2021 _____ ; or    (

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $ —— for travel and $ 85.00 for services, for a total of $ 85.00 .

I declare under penalty of perjury that this information is true and correct.

Date: 12/14/2021

_____
*Tom A. Clark*
Server's signature

_____
Tom A Clark, Server
Printed name and title

**Expedite**
5009 Stillwood Drive
Nashville, TN 37220
615-651-8601

Additional information concerning attempted service, etc.:

**From:** **Afsoon Hagh** afsoon@haghlaw.com
**Subject:** Subpoena to Marty Fitzgerald
**Date:** December 27, 2021 at 5:22 PM
**To:** Phillip Young phillip@thompsonburton.com

AH

Phillip,

As you know, I represent Marty Fitzgerald.  He is in receipt of the subpoena you issued in the Adversary Proceeding.  This email serves as his written objection to that subpoena.

Generally, Mr. Fitzgerald objects on the grounds that the materials called for are privileged; were not maintained or retained; or would create an excessive burden for him to locate and produce.

I've advised Mr. Fitzgerald that I would convey this written objection on his behalf in order to preserve his objection within the short timeframe contemplated by the Federal Rules of Civil Procedure; but that he would need to retain separate counsel to address any further requests.  My understanding is that he is in the process of doing so, and that separate counsel will reach out to you to further discuss possibilities in reaching an agreement on materials, if any, subject to production.

In the interim, this email serves as his written objection to the subpoena as currently composed.

Thank you,

Afsoon Hagh

Form hrgnot

# UNITED STATES BANKRUPTCY COURT

## MIDDLE DISTRICT OF TENNESSEE

701 Broadway Room 170
Nashville, TN 37203

Adversary Proceeding No. 3:20–ap–90002
Related Bankruptcy Proceeding No. 3:19–bk–07235

Judge Charles M Walker

In Re:

Plaintiff/Movant : Jeanne Ann Burton

    vs

Defendant/Respondent : Hagh Law PLLC

PLEASE TAKE NOTICE that a hearing will be held :

; via Zoom video; For details, please see www.tnmb.uscourts on 2/16/22 at 11:00 AM

to consider and act upon the following:

*114* – Motion and Notice to Compel Marty Fitzgerald to Comply with Subpoena for Production of Documents (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C)Certificate of Service mailed on 2/1/22. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP)

Dated: 2/1/22                     /s/ TERESA C. AZAN
                                    Clerk, U.S. Bankruptcy Court

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 2/1/2022



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **CUMMINGS MANOOKIAN, PLLC,** | ) **Case No. 3:19-bk-07235** |
| Debtor. | ) **Chapter** 7 |
| | ) **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) |
| **MANOOKIAN, PLLC; and FIRST-** | ) |
| **CITIZENS BANK & TRUST** | ) |
| **COMPANY,** | ) |
| Defendants. | ) |
| | ) **Adv. Proc. No. 3:20-ap-90002** |

# PROTECTIVE ORDER

Plaintiff Jeanne Ann Burton, Trustee and Defendants Hagh Law, PLLC, Afsoon Hagh, and Manookian, PLLC (each of the foregoing, a "Party," and collectively, the "Parties") anticipate that certain of their confidential business and/or client records, as well as those of non-parties, may be produced in discovery in the above-captioned action (the "Action") and that such confidential records must be protected from further disclosure. Pursuant to Federal Rule of Civil Procedure 26(c), made applicable to this matter by Bankruptcy Rule 7026, the Court finds good cause for entry of this Stipulated Protective Order ("Protective Order") to provide such protection according to the terms and conditions set forth below. To expedite the flow of discovery material and the litigation of this case, facilitate the prompt resolution of disputes over confidentiality, and adequately protect material entitled to be kept confidential, it is, by agreement of the Parties, STIPULATED and ORDERED that:

1.      Correspondence and communications between the law firm and lawyer parties to this case (Cummings Manookian PLLC, Hagh Law PLLC, Afsoon Hagh, and Manookian PLLC) and their clients shall be treated as confidential.  This provision specifically includes engagement agreements.  This provision additionally includes such communications between Brian Cummings and his clients as well as Brian Manookian and his clients.

2.      Documents subject to this Protective Order, when filed with the Court in this action for any reason, shall be filed under seal. The party wishing to file any such documents with the Court must first move to have the information filed under seal in accordance with the procedure mandated by the local rules.

3.      Nothing in this Protective Order shall affect the admissibility of any evidence at a trial or hearing in this case.

4.      This Protective Order may be modified by the Court at any time for good cause shown following notice to the Parties and an opportunity for them to be heard.

2

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

Submitted for entry:

Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr.
Bass, Berry & Sims, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: (615) 742-6277
cgabbert@bassberry.com

Counsel to Afsoon Hagh and Hagh Law, PLLC

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

Burton,

    Plaintiff

Hagh Law PLLC,

    Defendant

Adv. Proc. No. 20-90002-CMW

# CERTIFICATE OF NOTICE

| District/off: 0650-3 | User: leq0323 | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Jan 31, 2022 | Form ID: hrgnot | Total Noticed: 16 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Feb 02, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| aty | + | CRAIG VERNON GABBERT, JR, BASS, BERRY & SIMS PLC, 150 THIRD AVENUE SOUTH, SUITE 2800, NASHVILLE, TN 37201-2017 |
| aty | + | GLENN BENTON ROSE, BASS, BERRY & SIMS PLC, 150 THIRD AVENUE SOUTH, SUITE 2800, NASHVILLE, TN 37201-2017 |
| aty | + | JOHN T. SPRAGENS, SPRAGENS LAW PLC, 311 22ND AVE N, NASHVILLE, TN 37203-1843 |
| aty | + | PHILLIP G YOUNG, Thompson Burton PLLC, One Franklin Park, 6100 Tower Circle, Suite 200, FRANKLIN, TN 37067-1465 |
| ust | + | MADALYN GREENWOOD, OFFICE OF THE US TRUSTEE, 200 JEFFERSON AVE, SUITE 400, MEMPHIS, TN 38103-2374 |
| ust | + | NATALIE MARIE COX, US DEPARTMENT OF JUSTICE, OFFICE OF THE UNITED STATES TRUSTEE, 701 BROADWAY, SUITE 318 NASHVILLE, TN 37203-3966 |
| ust | | TestUST TNMB, UST, Ustrustee Office, Nashville, TN 37203 |
| ust | + | U.S. Trustee, Office of the U.S. Trustee, One Memphis Place, 200 Jefferson Avenue, Suite 400, Memphis, TN 38103-2383 |
| ust | + | United States Trustee, Historic U.S. Courthouse, 31 E. Eleventh Street, Fourth Floor, Chattanooga, TN 37402-4205 |
| dft | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Hagh Law PLLC, c/o Afsoon Hagh, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Manookian PLLC, c/o Brian Manookian, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |

TOTAL: 12

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| ust | Email/Text: ustpregion21.hr.ecf@usdoj.gov | Jan 31 2022 22:49:00 | MONSITA LECAROZ ARRIBAS, OFFICE OF THE US TRUSTEE (UST), OCHOA BUILDING, 500 TANCA STREET SUITE 301, SAN JUAN, PR 00901 |
| ust + | Email/Text: ustpregion09.gr.ecf@usdoj.gov | Jan 31 2022 22:49:00 | Michael V. Maggio, Trial Attorney, Office of the US Trustee, The Ledyard Building, 2nd Floor, 125 Ottawa NW, Suite 200R, Grand Rapids, MI 49503-2865 |
| ust | Email/Text: ustpregion08.na.ecf@usdoj.gov | Jan 31 2022 22:49:00 | US TRUSTEE, OFFICE OF THE UNITED STATES TRUSTEE, 701 BROADWAY STE 318, NASHVILLE, TN 37203-3966 |
| pla + | Email/Text: jeanne.burton@comcast.net | Jan 31 2022 22:49:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 4

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| ust | | [ *** NO NAME OR ADDRESS SUPPLIED *** ] |
| ust | | CARRIE |
| ust | | KALISIA SCHAEFFER, REVENUE ASSSURANCE PROFESSIONALS, 1350 CONCOURSE AVE SUITE 600 |

TOTAL: 3 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Feb 02, 2022                      Signature:        /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on January 31, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com  bankr@bassberry.com;delores.walker@bassberry.com |
| GLENN BENTON ROSE | on behalf of Defendant Hagh Law PLLC grose@bassberry.com  bankr@bassberry.com |
| JOHN T. SPRAGENS | on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM  spragenslaw@ecf.courtdrive.com |
| PHILLIP G YOUNG | on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com |

TOTAL: 4

Form hrgnot

# UNITED STATES BANKRUPTCY COURT

## MIDDLE DISTRICT OF TENNESSEE

701 Broadway Room 170
Nashville, TN 37203

Adversary Proceeding No.  3:20−ap−90002
Related Bankruptcy Proceeding No.  3:19−bk−07235

Judge  Charles M Walker

In Re:

Plaintiff/Movant : Jeanne Ann Burton

     vs

Defendant/Respondent : Hagh Law PLLC

---

PLEASE TAKE NOTICE that a hearing will be held :

; via Zoom video; For details, please see www.tnmb.uscourts on 2/16/22 at 11:00 AM

to consider and act upon the following:

*109 −* Manookian PLLC's Motion for Court to Determine Sufficiency of Plaintiffs Responses to Requests for Admission, or, Alternatively, to Deem Admitted. (Attachments: # 1 Exhibit RFA Responses # 2 Exhibit Meet and Confer Letter)Filed on the behalf of: Defendant Manookian PLLC. (SPRAGENS, JOHN)

Dated: 1/31/22

                                    /s/ TERESA C. AZAN
                                    Clerk, U.S. Bankruptcy Court

Burton,

    Plaintiff

Hagh Law PLLC,

    Defendant

Adv. Proc. No. 20-90002-CMW

# CERTIFICATE OF NOTICE

| District/off: 0650-3 | User: leq0323 | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Feb 01, 2022 | Form ID: hrgnot | Total Noticed: 16 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Feb 03, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| aty | + | CRAIG VERNON GABBERT, JR, BASS, BERRY & SIMS PLC, 150 THIRD AVENUE SOUTH, SUITE 2800, NASHVILLE, TN 37201-2017 |
| aty | + | GLENN BENTON ROSE, BASS, BERRY & SIMS PLC, 150 THIRD AVENUE SOUTH, SUITE 2800, NASHVILLE, TN 37201-2017 |
| aty | + | JOHN T. SPRAGENS, SPRAGENS LAW PLC, 311 22ND AVE N, NASHVILLE, TN 37203-1843 |
| aty | + | PHILLIP G YOUNG, Thompson Burton PLLC, One Franklin Park, 6100 Tower Circle, Suite 200, FRANKLIN, TN 37067-1465 |
| ust | + | MADALYN GREENWOOD, OFFICE OF THE US TRUSTEE, 200 JEFFERSON AVE, SUITE 400, MEMPHIS, TN 38103-2374 |
| ust | + | NATALIE MARIE COX, US DEPARTMENT OF JUSTICE, OFFICE OF THE UNITED STATES TRUSTEE, 701 BROADWAY, SUITE 318 NASHVILLE, TN 37203-3966 |
| ust | | TestUST TNMB, UST, Ustrustee Office, Nashville, TN 37203 |
| ust | + | U.S. Trustee, Office of the U.S. Trustee, One Memphis Place, 200 Jefferson Avenue, Suite 400, Memphis, TN 38103-2383 |
| ust | + | United States Trustee, Historic U.S. Courthouse, 31 E. Eleventh Street, Fourth Floor, Chattanooga, TN 37402-4205 |
| dft | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Hagh Law PLLC, c/o Afsoon Hagh, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Manookian PLLC, c/o Brian Manookian, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |

TOTAL: 12

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| ust | | Email/Text: ustpregion21.hr.ecf@usdoj.gov | | |
| | | | Feb 02 2022 03:00:00 | MONSITA LECAROZ ARRIBAS, OFFICE OF THE US TRUSTEE (UST), OCHOA BUILDING, 500 TANCA STREET SUITE 301, SAN JUAN, PR 00901 |
| ust | + | Email/Text: ustpregion09.gr.ecf@usdoj.gov | | |
| | | | Feb 02 2022 03:00:00 | Michael V. Maggio, Trial Attorney, Office of the US Trustee, The Ledyard Building, 2nd Floor, 125 Ottawa NW, Suite 200R, Grand Rapids, MI 49503-2865 |
| ust | | Email/Text: ustpregion08.na.ecf@usdoj.gov | | |
| | | | Feb 02 2022 03:00:00 | US TRUSTEE, OFFICE OF THE UNITED STATES TRUSTEE, 701 BROADWAY STE 318, NASHVILLE, TN 37203-3966 |
| pla | + | Email/Text: jeanne.burton@comcast.net | | |
| | | | Feb 02 2022 03:00:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 4

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| ust | | [ *** NO NAME OR ADDRESS SUPPLIED *** ] |
| ust | | CARRIE |
| ust | | KALISIA SCHAEFFER, REVENUE ASSSURANCE PROFESSIONALS, 1350 CONCOURSE AVE SUITE 600 |

TOTAL: 3 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Feb 03, 2022                Signature:      /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on February 1, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com  bankr@bassberry.com;delores.walker@bassberry.com |
| GLENN BENTON ROSE | on behalf of Defendant Hagh Law PLLC grose@bassberry.com  bankr@bassberry.com |
| JOHN T. SPRAGENS | on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM  spragenslaw@ecf.courtdrive.com |
| PHILLIP G YOUNG | on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com |

TOTAL: 4

# UNITED STATES BANKRUPTCY COURT

## MIDDLE DISTRICT OF TENNESSEE

701 Broadway Room 170
Nashville, TN 37203

Adversary Proceeding No.  3:20−ap−90002
Related Bankruptcy Proceeding No.  3:19−bk−07235

Judge  Charles M Walker

In Re:

Plaintiff/Movant : Jeanne Ann Burton

vs

Defendant/Respondent : Hagh Law PLLC

PLEASE TAKE NOTICE that a hearing will be held :

; via Zoom video; For details, please see www.tnmb.uscourts on 2/16/22 at 11:00 AM

to consider and act upon the following:

**114 −** Motion and Notice to Compel Marty Fitzgerald to Comply with Subpoena for Production of Documents (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C)Certificate of Service mailed on 2/1/22. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP)

Dated: 2/1/22                                      /s/ TERESA C. AZAN
                                                          Clerk, U.S. Bankruptcy Court

Burton,

     Plaintiff

Adv. Proc. No. 20-90002-CMW

Hagh Law PLLC,

     Defendant

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0650-3 | User: anm0611 | Page 1 of 2 |
| Date Rcvd: Feb 02, 2022 | Form ID: pdf001 | Total Noticed: 4 |

The following symbols are used throughout this certificate:

**Symbol**    **Definition**

+    Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Feb 04, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| dft | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Hagh Law PLLC, c/o Afsoon Hagh, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Manookian PLLC, c/o Brian Manookian, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |

TOTAL: 3

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| pla | + | Email/Text: jeanne.burton@comcast.net | Feb 03 2022 01:47:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Feb 04, 2022        Signature:     /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on February 2, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | |
| | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com bankr@bassberry.com;delores.walker@bassberry.com |
| GLENN BENTON ROSE | |
| | on behalf of Defendant Hagh Law PLLC grose@bassberry.com bankr@bassberry.com |

JOHN T. SPRAGENS

on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM  spragenslaw@ecf.courtdrive.com

PHILLIP G YOUNG

on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com

TOTAL: 4

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 2/1/2022



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **INRE:** | ) |
| | ) |
| **CUMMINGS MANOOKIAN, PLLC,** | ) **Case No. 3:19-bk-07235** |
| Debtor. | ) **Chapter** 7 |
| | ) **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) |
| Plaintiff, | ) |
| | ) |
| **v.** | ) |
| | ) |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) |
| **MANOOKIAN, PLLC; and FIRST-** | ) |
| **CITIZENS BANK & TRUST** | ) |
| **COMPANY,** | ) |
| Defendants. | ) |
| | ) **Adv. Proc. No. 3:20-ap-90002** |

# PROTECTIVE ORDER

Plaintiff Jeanne Ann Burton, Trustee and Defendants Hagh Law, PLLC, Afsoon Hagh, and Manookian, PLLC (each of the foregoing, a "Party," and collectively, the "Parties") anticipate that certain of their confidential business and/or client records, as well as those of non-parties, may be produced in discovery in the above-captioned action (the "Action") and that such confidential records must be protected from further disclosure. Pursuant to Federal Rule of Civil Procedure 26(c), made applicable to this matter by Bankruptcy Rule 7026, the Court finds good cause for entry of this Stipulated Protective Order ("Protective Order") to provide such protection according to the terms and conditions set forth below. To expedite the flow of discovery material and the litigation of this case, facilitate the prompt resolution of disputes over confidentiality, and adequately protect material entitled to be kept confidential, it is, by agreement of the Parties, STIPULATED and ORDERED that:

1.      Correspondence and communications between the law firm and lawyer parties to this case (Cummings Manookian PLLC, Hagh Law PLLC, Afsoon Hagh, and Manookian PLLC) and their clients shall be treated as confidential.  This provision specifically includes engagement agreements.  This provision additionally includes such communications between Brian Cummings and his clients as well as Brian Manookian and his clients.

2.      Documents subject to this Protective Order, when filed with the Court in this action for any reason, shall be filed under seal. The party wishing to file any such documents with the Court must first move to have the information filed under seal in accordance with the procedure mandated by the local rules.

3.      Nothing in this Protective Order shall affect the admissibility of any evidence at a trial or hearing in this case.

4.      This Protective Order may be modified by the Court at any time for good cause shown following notice to the Parties and an opportunity for them to be heard.

2

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

Submitted for entry:

Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr.
Bass, Berry & Sims, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: (615) 742-6277
cgabbert@bassberry.com

Counsel to Afsoon Hagh and Hagh Law, PLLC

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **CUMMINGS MANOOKIAN, PLLC,** | ) **Case No. 3:19-bk-07235** |
| Debtor. | ) **Chapter 7** |
| | ) **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **HAGH LAW, PLLC; AFSOON** | ) |
| **HAGH; MANOOKIAN, PLLC; and** | ) |
| **FIRST-CITIZENS BANK & TRUST** | ) |
| **COMPANY,** | ) |
| Defendants. | ) |
| | ) **Adv. Proc. No. 3:20-ap-90002** |
| | ) |

## TRUSTEE'S RESPONSE TO (i) DEFEFNDANT MANOOKIAN PLLC'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES FROM FIRST AND SECOND SET OF WRITTEN DISCOVERY AND (ii) DEFENDANT MANOOKIAN PLLC'S MOTION TO DETERMINE SUFFICIENCY OF RESPONSES TO REQUESTS FOR ADMISSION, OR, ALTERNATIVELY, TO DEEM ADMITTED

Comes now the Plaintiff, Jeanne Ann Burton, Trustee, (the "Plaintiff" or "Trustee")

by and through special counsel and files this Response (the "Response") to Defendant

Manookian PLLC's Motion to Compel Responses to Interrogatories from First and Second

Set of Written Discovery (Doc. 104) (the "Motion to Compel") and Defendant Manookian

PLLC's Motion to Determine Sufficiency of Responses to Requests for Admission, or,

Alternatively, to Deem Admitted (Doc. 109) (the "Motion to Determine") (collectively the

"Motions").

Brian Manookian, Afsoon Hagh, and their wholly owned entities (Cummings Manookian, PLC, Hagh Law, PLLC and Manookian, PLLC) have consistently refused to turnover highly relevant and salient information to the Trustee in response to her written discovery. Citing various excuses such as privilege (despite being offered a protective order), relevance, inability to understand a "vague" request, and/or scheduling times for in-person review of documents instead of simply producing them, Mr. Manookian, Ms. Hagh and their entities have resisted substantially all discovery efforts made by the Trustee, resulting in the Trustee's filing of motions to compel against Brian Manookian, Cummings Manookian, PLC, Manookian PLLC, Hagh Law PLLC and Afsoon Hagh. Against this backdrop, Manookian PLLC now asks the Court to compel the Trustee to disclose information that is exclusively within the possession of Manookian PLLC and its affiliates, defying all logic. This discovery gamesmanship needs to end so that this case can progress.

Manookian PLLC served the Trustee with eighty-five (85) requests for admission on January 26, 2021. That same day, Manookian PLLC served the Trustee with eighteen (18) written interrogatories. The next day, January 27, 2021, Manookian PLLC served the Trustee with an additional five (5) written interrogatories. The Trustee provided written responses to the requests for admission on February 25, 2021, and to the interrogatories on March 1, 2021. Copies of the Trustee's responses were attached as exhibits to the Motions. The Trustee fully and completely answered all interrogatories and requests for admission based on the information she has been able to gain in this case, and clearly noted that she would supplement any answer once she completed her discovery of the Defendants to this matter and other third parties.

On October 21, 2021, counsel for Manookian PLLC sent the Trustee's special counsel a "meet and confer letter" concerning the Trustee's discovery responses. A copy of that letter was attached to the Motions. The Trustee responded to that letter on November 5, 2021. A copy of the Trustee's response letter is attached hereto as Exhibit A. In the letter, the Trustee first explained a concept with which this Court is very familiar; that is, that a Chapter 7 Trustee typically has no first-hand knowledge of relevant facts but rather she depends upon disclosures by the debtor and discovery respondents to gain knowledge about the financial dealings of a debtor. The Trustee went on to explain that Mr. Manookian's and Ms. Hagh's refusal to respond to the Trustee's written discovery had severely hampered the Trustee's ability to ascertain relevant facts. She further explained that all allegations in the complaint filed against the Defendants came from publicly available documents, documents that were produced by Brian Manookian, and all reasonable inferences therefrom; accordingly, the Trustee had knowledge of no facts that were beyond the knowledge of Mr. Manookian and Ms. Hagh. Finally, the Trustee offered to supplement the discovery responses once Mr. Manookian, Ms. Hagh, and the entities they control fully and completely responded to her discovery requests.[1]

Despite the Trustee's written responses (which are as complete as possible given the information limitations caused by the Defendants) and the Trustee's thorough explanation of those limitations in the November 5, 2021 letter, Manookian PLLC filed the Motions two and a half months later to complain of a problem of its own making. However, the Motions are not well taken and should be denied. First, all of the information sought

---

[1] The November 5 letter also addressed Manookian PLLC's demands that the Trustee make herself available for two full days of depositions, which is contrary to the limitations established by the Federal Rules of Civil Procedure and completely unnecessary. The Trustee intends to address this issue with the Court at the pretrial conference on February 16, 2022.

in the Motions and the related discovery are not only more available to Mr. Manookian and Ms. Hagh, in most cases it is exclusively available to them. None of the questions asked of the Trustee were asked in order to discover unknown information; they were asked to cause the Trustee to expend unnecessary time and incur unnecessary legal expenses.[2] The Defendants to this action have, in their exclusive possession, facts and documents that answer most, if not all, of the interrogatories and requests at issue in the Motions.

Furthermore, despite the fact that the Defendants possess more information about the Debtor and its operations than does the Trustee at this juncture, the Trustee answered the interrogatories and requests to the best of her ability given the information she currently possesses. For example, after stating her objections to the interrogatories (including that the Defendants already possess, to the exclusion of the Trustee, the information that they request), the Trustee provided responses to the following interrogatories notwithstanding the objections: (First Set) 1, 2, 3, 5, 6, 9, 10, 11, 13, 14, 15, 16, 17, 18, (Second Set) 1, 2, 3, 4 and 5. The Trustee was only unable to provide answers to interrogatory numbers 4, 7, 8, and 12.

Regarding the Requests for Admission, the Trustee has been unable to answer roughly half of the eighty-five requests because the Debtor and its corporate representative, Brian Manookian, have failed to provide relevant information needed to fully respond to those requests (most of which deal with the Debtor's business operations). On August 19, 2020, the Court ordered the Debtor and Mr. Manookian to turnover a host of documents, including bank statements, credit card statements, tax returns, leases, disengagement

---

[2] Manookian PLLC states in its Motions that this information is needed in order to ascertain the nature of the Trustee's complaint. That simply is not true. Manookian PLLC neither filed a Motion to Dismiss nor a Motion for More Definite Statement; it responded to each and every allegation of the Complaint in its Answer.

4

letters, and proof of delivery of those disengagement letters. *See* 3:19-bk-07235, Doc. 93. From that list of documents that the Court ordered the Debtor and Mr. Manookian to produce, only one disengagement letter was actually produced.[3]  Again, the Trustee will gladly supplement her responses to the requests for admission once the parties to this action appropriately respond to outstanding discovery requests.  The Defendants and their controlling principals should not be allowed to refuse the turnover of information while simultaneously complaining because the Trustee cannot produce that same information.

For the foregoing reasons, the Court should deny Manookian PLLC's Motions and grant the Trustee's pending motions to compel so that this matter may proceed more smoothly to its conclusion.

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton,
Trustee

---

[3] The Trustee has not filed a motion for sanctions, choosing to instead focus on more important issues at the heart of this case.  She reserves her right to do so if the Defendants continue to insist on the Trustee's production of documents and information which are continuing to be withheld from her.

5

834

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served this 9th day of February, 2022, upon all parties of record requesting notice through the Court's electronic filing system, including the following:

John Spragens, counsel for Manookian PLLC
john@spragenslaw.com

/s/ Phillip G. Young
Phillip G. Young

# THOMPSON BURTON PLLC

A T T O R N E Y S   A T   L A W
A PROFESSIONAL LIMITED LIABILITY COMPANY

One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
www.thompsonburton.com

Phillip G. Young                                                          Direct Dial: 615-465-6008
phillip@thompsonburton.com

November 5, 2021

John Sprgens
Spragens Law
311 22nd Ave. N.
Nashville, TN 37203
john@spragenslaw.com

      RE:    **Burton v. Hagh et al.**

Dear John:

As you know, this firm represents Jeanne Ann Burton, Chapter 7 Trustee for Cummings Manookian, PLC (the "Trustee") in the Trustee's adversary proceeding against your client, Manookian PLC, as well as Afsoon Hagh and Hagh Law, PLC. Please consider this the Trustee's response to your letter dated October 21, 2021.

The Trustee has reviewed her responses to your discovery, dated February 25, 2021 and March 1, 2021, and stands by those responses as of this date. As you probably know, a chapter 7 trustee comes into a case with no first-hand knowledge of the Debtor, its assets, its liabilities, or its interactions with third parties. A trustee gains knowledge through disclosures by the debtor and discovery (both formal and informal). In this case, the Debtor (which is controlled by Brian Manookian, your client's principal) has failed to make appropriate disclosures of even the most basic information. Even after the Court issued an order compelling the production of certain documents those documents were not produced. Similarly, your client, as well as Ms. Hagh, and Hagh Law, PLC have provided insufficient discovery responses as detailed in my letter dated October 29, 2021. Your client, Hagh Law, PLC, and their principals have consistently evaded producing substantive information necessary for the administration of the Cummings Manookian, PLC bankruptcy estate, the pursuit of this adversary proceeding, and/or the proof (or disproof) of defenses raised in the answers to the complaint filed by the Trustee. Until the defendants cooperate with discovery efforts, and the Trustee has been afforded an opportunity to depose them, the Trustee will stand by her responses and objections to the written discovery as previously produced.

Furthermore, since you continue to raise allegations that the Trustee has no basis for the allegations made in the complaint, allow me to more fully explain the basis of those allegations. Every allegation in the complaint was born of (1) publicly available documents related to cases in which Cummings Manookian, PLC, Manookian, PLC, Hagh Law, PLC, Afsoon Hagh and/or Brian Manookian served as counsel; (2) documents produced to the Trustee by Brian Manookian and/or Cummings Manookian, PLC; and (3) all reasonable inferences therefrom. Therefore, your client has access to every fact and every document that form the basis of the Trustee's complaint. This is not uncommon in adversary proceedings brought by a chapter 7 trustee; in fact, this is the rule, not the exception. It is not unusual whatsoever for a trustee to respond to discovery by noting that the defendant is in possession of all facts and documents that the trustee possesses.

After receipt of proper discovery responses from your client and the Hagh defendants, and after having an opportunity to depose Mr. Manookian and Ms. Hagh, the Trustee will be glad to supplement her responses to this discovery as required by the Tennessee Rules of Civil Procedure (though, as stated above, your client already has ready access to all such facts and documents but has chosen to withhold them from the Trustee). Until that time, the Trustee deems her responses and stated objections appropriate.

Finally, regarding the deposition of the Trustee, we will provide you potential dates closer to the close of written discovery. At the request of your client and Ms. Hagh, written discovery closes on January 31, 2022, and depositions may be scheduled beginning February 1, 2022. It is premature at this time, three months prior to the earliest possible scheduling of a deposition, to calendar that deposition. This is especially true where written discovery could expand or lessen the potential topics for deposition testimony. Moreover, if your client is insistent on taking the Trustee's deposition for two full days, as your letter indicates, that is a matter that we should discuss with the Court at the February 2, 2022 pretrial conference. At the appropriate time the Trustee will provide available dates for a one-day deposition but will oppose a two-day deposition as that appears to be aimed at harassment, not discovery.

Very Truly Yours,

cc: Jeanne Ann Burton, Trustee

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

---

## REVISED PROTECTIVE ORDER

---

Plaintiff Jeanne Ann Burton, Trustee and Defendants Hagh Law, PLLC and Afsoon Hagh, (each of the foregoing, a "Party," and collectively, the "Parties") anticipate that certain of their confidential business and/or client records, as well as those of non-parties, may be produced in discovery in the above-captioned action (the "Action") and that such confidential records must be protected from further disclosure. Pursuant to Federal Rule of Civil Procedure 26(c), made applicable to this matter by Bankruptcy Rule 7026, the Court finds good cause for entry of this Stipulated Protective Order ("Protective Order") to provide such protection according to the terms and conditions set forth below. To expedite the flow of discovery material and the litigation of this

case, facilitate the prompt resolution of disputes over confidentiality, and adequately protect material entitled to be kept confidential, it is, by agreement of the Parties, STIPULATED and ORDERED that:

1.     This Protective Order shall apply to all documents, electronically stored information (ESI), materials, and information disclosed, filed or served in this Action pursuant to the Federal Rules of Civil Procedure or the Local Rules, including without limitation, documents and data produced by any Party or non-party, answers to interrogatories, responses to requests for production, responses to requests for admission, expert disclosures, and deposition testimony.

2.     As used in this Protective Order, "document" and "electronically stored information" are defined as provided in Federal Rule of Civil Procedure 34(a)(1)(A).

3.     As used in this Protective Order, "Confidential Information" is information that the designating Party or non-party believes in good faith is not in the public domain and which constitutes, contains or reflects confidential business, research, development, commercial, financial, or personal information, such as confidential business or client information.

4.     Any document that contains confidential, proprietary, or personal financial or health information may be designated as Confidential by stamping the term "CONFIDENTIAL" clearly and conspicuously on the face of each document containing such information or in the metadata of the document if produced in native format.  For a multi-page document, each page containing Confidential Information shall be stamped separately.

5.     All documents and materials produced in the Action shall be used solely for the purposes of preparing for and conducting pre-trial, trial, and post-trial proceedings in this Action, and not for any other purpose, and such documents shall not be disclosed to any person or entity except as provided in this Protective Order.

6. Documents containing Confidential Information shall not be disclosed without the consent of the producing Party or further Order of the Court, *except that* such information may be disclosed to:

    (i)     the Parties in this Action to the extent reasonably necessary to allow them to assist in the preparation or conduct of pre-trial, trial, and post-trial proceedings in this Action;

    (ii)    counsel of record for the Parties in this Action, and the personnel who are directly employed or retained by counsel of record for the purpose of assisting with, or working on, this Action;

    (iii)   expert witnesses and consultants, such as e-discovery vendors, who are retained in connection with this Action, to the extent such disclosure is necessary for preparation for trial or other proceedings in this Action;

    (iv)   the Court and its officers, including stenographic reporters and videographers engaged to transcribe or record court proceedings and sworn testimony in this Action; and

    (v)    other persons by written agreement of the Parties or by order of the Court.

7. Prior to disclosing any Confidential Information to any person listed above (other than counsel of record and their employees, court personnel, and stenographic reporters), counsel shall provide such person with a copy of this Protective Order and obtain from such person an executed copy of the Acknowledgement of Stipulated Protective Order attached hereto as Exhibit A, which states that he/she has read this Protective Order and agrees to be bound by its provisions. All such acknowledgments shall be retained by counsel and shall be subject to *in camera* review by the Court if good cause for review is demonstrated by opposing counsel.

8. Documents and other information produced by non-parties shall be treated as Confidential Information for fourteen (14) days after such documents and information are produced, during which time any Party may designate any document or information as Confidential Information by letter to all other Parties in the Action.

9. Deposition transcripts in this Action shall be treated as Confidential Information until thirty (30) days after receipt of a final copy of the transcript, during which time any Party (or non-party deponent) may designate any portion or all of any transcript as Confidential Information by letter to all other Parties in the Action. Additionally, any Party or non-party participating in a deposition may designate any portions of the transcript of the deposition as Confidential Information during the recording of such deposition. No person shall be present during portions of the depositions designated as "CONFIDENTIAL" unless such person is an authorized recipient of Confidential Information pursuant to this Protective Order.

10. A Party may object to the designation of particular Confidential Information by giving written notice to the Party designating the disputed information. The written notice shall identify the information to which the objection is made. If the Parties cannot consensually resolve the objection within ten (10) business days after the time the notice is received, it shall be the obligation of the Party objecting to the designation of the information as Confidential Information to file an appropriate motion requesting that the Court determine whether the disputed information should be subject to the terms of this Protective Order. If such a motion is timely filed, the disputed information shall be treated as Confidential Information under the terms of this Protective Order until the Court rules on the motion. In connection with a motion filed under this provision, the Party designating the information as Confidential Information shall bear the burden of establishing that good cause exists for the disputed information to be so treated.

11. All Confidential Information designated as such that is contained within any document, including without limitation pleadings, briefs, deposition transcripts, and deposition exhibits, shall, if possible and feasible, be redacted by the Party seeking to file such prior to filing the document with the Court or, in the alternative, filed under seal, unless the Parties otherwise

agree. In the event that any Confidential Information is filed with the Court by any Party, including pages from motions, briefs, memorandum, or other pleadings containing or referencing (in such manner that the Confidential Information may be revealed thereby), the Confidential Information shall be redacted by the filing Party or, upon motion and with leave of Court, filed under seal unless otherwise agreed by the Parties. If a Party believes Confidential Information has been mistakenly filed with or in a pleading, such Party may, at the Party's own cost and expense, move that it be filed under seal.

12. Except as provided in paragraph 11, material constituting or revealing Confidential Information, when filed with the Court in this action for any reason, shall be filed under seal. The Party wishing to file any Confidential Information with the Court must first move to have the information filed under seal in accordance with the procedure mandated by the local rules.

13. Upon termination or resolution of this Action, the Parties shall within sixty (60) days return to the producing Party all materials marked "CONFIDENTIAL" (and any copies thereof) or destroy them. Upon written request, counsel for each Party shall furnish a certificate of compliance that all Confidential Information produced to the Party, as well as all summaries, excerpts, or copies of such materials, have been returned or destroyed.

14. The termination of proceedings in this Action shall not relieve the Parties from the obligation of maintaining the confidentiality of all Confidential Information that is received or disclosed pursuant to this Protective Order.

15. The inadvertent production of any document protected from discovery by the attorney-client privilege, the work-product doctrine, or other applicable privilege or immunity shall not constitute a waiver of the privilege or protection, either as to the produced document or any other documents, or otherwise affect the right to withhold such document(s) from production

5

as privileged or otherwise protected from discovery. In the event that any privileged or protected document(s) is produced during discovery in this Action, the Party or non-party claiming the privilege or protection may notify all Parties in writing of the inadvertent disclosure and request the destruction of such document(s). If the Receiving Party discovers an obviously privileged document, in particular one containing counsel of record in this case as a sender or recipient, it will immediately notify the Producing Party of the document and return or destroy all copies of the document. If a request is made in good faith to return any such inadvertently produced document(s), the Party(ies) or non-party(ies) that received the document(s) shall within five (5) business days of receipt of such request, confirm in writing that it has destroyed all copies thereof and deleted any copy of the documents, or any portion thereof, from any word processing or data base tape or disk it maintains, and that it has destroyed any work product that incorporates such document or information. The status of the document(s) as privileged or otherwise protected from discovery shall be deemed to be restored upon the making of such a request. If, however, the Party claiming privilege either (i) expresses the intent to use such document (or information contained therein) at a hearing, deposition, or trial, or (ii) uses such document (or information contained therein) at a hearing, deposition, or trial, that Party's right to assert the privilege or protection and to request destruction of the document(s) shall be foreclosed. Compliance with this paragraph shall not be deemed to prejudice the rights of any other Party to seek an order from the Court directing production of the information or document on the ground that the claimed privilege, protection, or immunity is invalid; provided, however, that mere inadvertent production of the information or document in the course of this Action shall not be a ground for asserting waiver of the privilege, protection, or immunity.

6

16.     Nothing in this Protective Order shall affect the admissibility of any evidence at a trial or hearing in this case.

17.     This Protective Order may be modified by the Court at any time for good cause shown following notice to the Parties and an opportunity for them to be heard.

> **THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

**AGREED:**

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr.
Bass, Berry & Sims, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: (615) 742-6277
cgabbert@bassberry.com

Counsel to Afsoon Hagh and Hagh Law, PLLC

7

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **IN RE:** | **Case No. 3:19-bk-07235** |
| **CUMMINGS MANOOKIAN, PLLC** | **Chapter 7** |
| Debtor. | |
| **JEANNE ANN BURTON, TRUSTEE** | **Judge Walker** |
| Plaintiff, | **Adv. Proc. No. 3:20-ap-90002** |
| v. | |
| **HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,** | |
| Defendants. | |

## DEFENDANT MANOOKIAN PLLC'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO COMPEL AND MOTION TO DETERMINE THE SUFFIENCY OF RESPONSES TO REQUESTS FOR PRODUCTION

Manookian PLLC (the "AP Defendant" or "Defendant"), through counsel, replies as follows to Plaintiff's combined response to the AP Defendant's Motion to Compel and Motion to Determine the Sufficiency of Responses to Requests for Production.

### I.     INTRODUCTION

This is an adversary proceeding against, among others, Manookian PLLC.  Manookian PLLC is a law firm.  More than two years ago, the Plaintiff sued Manookian PLLC, making a host of generalized, ambiguous, and inflammatory allegations—sounding in fraud—that, in the time since, she refuses to either prosecute or subject to the slightest bit of scrutiny through discovery.

Over a year ago, the Defendant served its first and second sets of written discovery on the Plaintiff, seeking to determine any factual bases for the claims against it, as well as seeking basic information about the damages Plaintiff was attempting to recover from Manookian PLLC. Defendant additionally posed targeted Requests for Admission in an effort to narrow undisputed issues for trial.

Plaintiff responded by outright refusing to answer any of the pending Interrogatories, and lodging bogus, boilerplate objections to substantially all of the pending Requests for Admission. As detailed in Defendant's Motion to Compel and Motion to Determine Sufficiency, the discovery sought by Manookian PLLC was targeted directly toward the allegations made by the Plaintiff in her Complaint, in many cases citing the specific paragraph.

Because the Plaintiff's claims are factually unsupported, were made in violation of Fed. Rule Civ. Pro. 11, and are, in some cases, invented out of whole cloth, the Plaintiff simply refuses to answer discovery about them. To that end, the Plaintiff has for two years made excuse after non-substantive excuse as to why she cannot or will not explain her claims. The effect has been to grind this litigation to a halt.

Enough is enough. This Defendant has been subjected to years of extraordinarily expensive litigation where the individual responsible for initiating the lawsuit steadfastly refuses to answer even the most basic inquiries about her allegations and purported damages. Manookian PLLC is entitled to thorough and complete responses to its outstanding discovery so that it may defend itself and move this proceeding toward an orderly conclusion.

## II. THE PLAINTIFF'S RESPONSE DOES NOT ADDRESS EVEN A SINGLE ONE OF HER DEFICIENT OUTSTANDING DISCOVERY RESPONSES.

Defendant's Motion to Compel is seventeen pages long. It identifies each of the twenty-three separate Interrogatories that Plaintiff failed to answer, and explains, point-by-point, why each

Interrogatory is relevant to Plaintiff's claims or Manookian PLLC's defense. Defendant's Motion as to Plaintiff's deficient responses to Requests for Admission is similarly detailed.

The relevance and materiality of the discovery that Plaintiff refuses to answer is self-evident. For example, Interrogatory No. 3, seeks the identities of the "clients and vendors" that the Plaintiff has alleged Defendant "improperly utilized" in her Complaint. As explained in Defendant's Motion to Compel, Defendant needs to know who these people are before it can meaningfully defend itself—particularly because Defendant is not aware of having utilized ***any*** vendor, much less utilizing one "improperly" in an actionable manner giving rise to damages to the Plaintiff. Likewise, Defendant needs to know what damages Plaintiff is claiming Defendant caused Cummings Manookian. This is basic, fundamental information that a party to a lawsuit is entitled, but which the Plaintiff has continually refused to provide. Additional examples abound.

Instead, the Plaintiff doubles down in response to Defendant's Motion to Compel by now refusing to defend *or even address* any of her own interrogatory or request for admissions responses. This bears repeating. After the Defendant posed specific written discovery about Plaintiff's claims and purported damages—and after the Defendant met and conferred and then filed a Motion to Compel explaining, point by point, why each of the individual outstanding discovery inquiries were relevant and material—Plaintiff has, again, simply refused to engage. She does not dispute the relevance of any of the outstanding inquiries. She does not argue that her responses are complete. She does not raise any privilege that would permit her to ignore her discovery obligation. Instead, she simply declines to address even a single one of the inquiries posed to her.

In fact, Plaintiff realizes that providing honest and forthcoming responses to the outstanding written discovery would be devastating to, and dispositive of, her claims. Rather than

simply admitting the obvious—that she lacks factual support for her allegations—she continues to make vague, generalized excuses for her failure to participate in mandatory discovery in a lawsuit that she initiated and continues to maintain.

### III. THE PLAINTIFF'S BAD-FAITH, GENERAL, AND UNSPECIFIED "COMPLAINTS" ABOUT OTHER INDIVIDUALS AND ENTITIES HAS NO BEARING ON HER BURDEN OF ANSWERING DISCOVERY ABOUT PLAINTIFF'S OWN CLAIMS AND PURPORTED DAMAGES.

Rather than addressing any specific outstanding discovery requests for which the Defendant seeks a response, Plaintiff again reverts to general finger-pointing at individuals and entities other than Manookian PLLC for her own bad-faith failure to participate in discovery.

Indeed, Plaintiff's Response to Manookian PLLC's Motion to Compel and Motion to Determine Sufficiency of Responses to Requests for Admission consists of five pages generally reciting that some other person or company has not provided some unidentified thing to Plaintiff. This is both factually wrong and legally irrelevant.

The Plaintiff initiated this lawsuit. The Plaintiff made a number of scandalous allegations about the Defendant. The Plaintiff made those allegations with a concurrent obligation that she have factual support for each and every one of her claims. That factual support was required to be present *at the time of pleading*. She cannot now refuse to reveal that factual support—to the extent it ever existed—when faced with specific, targeted written discovery. Defendant is entitled to know the basis of Plaintiff's fraud-based allegations against it.

Stated alternatively, Plaintiff's excuse that she first needs to take some unidentified and unspecified discovery before she can reveal the factual support for a lawsuit that she herself initiated over two years ago is erroneous. Plaintiff is required to come forward with whatever evidence she possesses—or otherwise admit that she does not possess such.

## IV.    CONCLUSION

For the forgoing reasons, Defendant's Motion to Compel and Motion to Determine Sufficiency should be granted.  Additionally, Defendant should be awarded its costs and expenses in pursuing these motions.


Date:   February 14, 2022                              Respectfully submitted,


                                                       /s/ John Spragens
                                                       John Spragens (TN Bar No. 31445)
                                                       Spragens Law PLC
                                                       311 22nd Ave. N.
                                                       Nashville, TN 37203
                                                       T: (615) 983-8900
                                                       F: (615) 682-8533
                                                       john@spragenslaw.com

                                                       *Attorney for Manookian PLLC and Brian
                                                       Manookian*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed February 14, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.


                                                       /s/ John Spragens

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 2/15/2022



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## REVISED PROTECTIVE ORDER

Plaintiff Jeanne Ann Burton, Trustee and Defendants Hagh Law, PLLC and Afsoon Hagh, (each of the foregoing, a "Party," and collectively, the "Parties") anticipate that certain of their confidential business and/or client records, as well as those of non-parties, may be produced in discovery in the above-captioned action (the "Action") and that such confidential records must be protected from further disclosure. Pursuant to Federal Rule of Civil Procedure 26(c), made applicable to this matter by Bankruptcy Rule 7026, the Court finds good cause for entry of this Stipulated Protective Order ("Protective Order") to provide such protection according to the terms and conditions set forth below. To expedite the flow of discovery material and the litigation of this

case, facilitate the prompt resolution of disputes over confidentiality, and adequately protect material entitled to be kept confidential, it is, by agreement of the Parties, STIPULATED and ORDERED that:

1.       This Protective Order shall apply to all documents, electronically stored information (ESI), materials, and information disclosed, filed or served in this Action pursuant to the Federal Rules of Civil Procedure or the Local Rules, including without limitation, documents and data produced by any Party or non-party, answers to interrogatories, responses to requests for production, responses to requests for admission, expert disclosures, and deposition testimony.

2.       As used in this Protective Order, "document" and "electronically stored information" are defined as provided in Federal Rule of Civil Procedure 34(a)(1)(A).

3.       As used in this Protective Order, "Confidential Information" is information that the designating Party or non-party believes in good faith is not in the public domain and which constitutes, contains or reflects confidential business, research, development, commercial, financial, or personal information, such as confidential business or client information.

4.       Any document that contains confidential, proprietary, or personal financial or health information may be designated as Confidential by stamping the term "CONFIDENTIAL" clearly and conspicuously on the face of each document containing such information or in the metadata of the document if produced in native format.  For a multi-page document, each page containing Confidential Information shall be stamped separately.

5.       All documents and materials produced in the Action shall be used solely for the purposes of preparing for and conducting pre-trial, trial, and post-trial proceedings in this Action, and not for any other purpose, and such documents shall not be disclosed to any person or entity except as provided in this Protective Order.

6. Documents containing Confidential Information shall not be disclosed without the consent of the producing Party or further Order of the Court, *except that* such information may be disclosed to:

(i) the Parties in this Action to the extent reasonably necessary to allow them to assist in the preparation or conduct of pre-trial, trial, and post-trial proceedings in this Action;

(ii) counsel of record for the Parties in this Action, and the personnel who are directly employed or retained by counsel of record for the purpose of assisting with, or working on, this Action;

(iii) expert witnesses and consultants, such as e-discovery vendors, who are retained in connection with this Action, to the extent such disclosure is necessary for preparation for trial or other proceedings in this Action;

(iv) the Court and its officers, including stenographic reporters and videographers engaged to transcribe or record court proceedings and sworn testimony in this Action; and

(v) other persons by written agreement of the Parties or by order of the Court.

7. Prior to disclosing any Confidential Information to any person listed above (other than counsel of record and their employees, court personnel, and stenographic reporters), counsel shall provide such person with a copy of this Protective Order and obtain from such person an executed copy of the Acknowledgement of Stipulated Protective Order attached hereto as Exhibit A, which states that he/she has read this Protective Order and agrees to be bound by its provisions. All such acknowledgments shall be retained by counsel and shall be subject to *in camera* review by the Court if good cause for review is demonstrated by opposing counsel.

8. Documents and other information produced by non-parties shall be treated as Confidential Information for fourteen (14) days after such documents and information are produced, during which time any Party may designate any document or information as Confidential Information by letter to all other Parties in the Action.

3

9. Deposition transcripts in this Action shall be treated as Confidential Information until thirty (30) days after receipt of a final copy of the transcript, during which time any Party (or non-party deponent) may designate any portion or all of any transcript as Confidential Information by letter to all other Parties in the Action. Additionally, any Party or non-party participating in a deposition may designate any portions of the transcript of the deposition as Confidential Information during the recording of such deposition. No person shall be present during portions of the depositions designated as "CONFIDENTIAL" unless such person is an authorized recipient of Confidential Information pursuant to this Protective Order.

10. A Party may object to the designation of particular Confidential Information by giving written notice to the Party designating the disputed information. The written notice shall identify the information to which the objection is made. If the Parties cannot consensually resolve the objection within ten (10) business days after the time the notice is received, it shall be the obligation of the Party objecting to the designation of the information as Confidential Information to file an appropriate motion requesting that the Court determine whether the disputed information should be subject to the terms of this Protective Order. If such a motion is timely filed, the disputed information shall be treated as Confidential Information under the terms of this Protective Order until the Court rules on the motion. In connection with a motion filed under this provision, the Party designating the information as Confidential Information shall bear the burden of establishing that good cause exists for the disputed information to be so treated.

11. All Confidential Information designated as such that is contained within any document, including without limitation pleadings, briefs, deposition transcripts, and deposition exhibits, shall, if possible and feasible, be redacted by the Party seeking to file such prior to filing the document with the Court or, in the alternative, filed under seal, unless the Parties otherwise

agree.  In the event that any Confidential Information is filed with the Court by any Party, including pages from motions, briefs, memorandum, or other pleadings containing or referencing (in such manner that the Confidential Information may be revealed thereby), the Confidential Information shall be redacted by the filing Party or, upon motion and with leave of Court, filed under seal unless otherwise agreed by the Parties.  If a Party believes Confidential Information has been mistakenly filed with or in a pleading, such Party may, at the Party's own cost and expense, move that it be filed under seal.

12.     Except as provided in paragraph 11, material constituting or revealing Confidential Information, when filed with the Court in this action for any reason, shall be filed under seal. The Party wishing to file any Confidential Information with the Court must first move to have the information filed under seal in accordance with the procedure mandated by the local rules.

13.     Upon termination or resolution of this Action, the Parties shall within sixty (60) days return to the producing Party all materials marked "CONFIDENTIAL" (and any copies thereof) or destroy them.  Upon written request, counsel for each Party shall furnish a certificate of compliance that all Confidential Information produced to the Party, as well as all summaries, excerpts, or copies of such materials, have been returned or destroyed.

14.     The termination of proceedings in this Action shall not relieve the Parties from the obligation of maintaining the confidentiality of all Confidential Information that is received or disclosed pursuant to this Protective Order.

15.     The inadvertent production of any document protected from discovery by the attorney-client privilege, the work-product doctrine, or other applicable privilege or immunity shall not constitute a waiver of the privilege or protection, either as to the produced document or any other documents, or otherwise affect the right to withhold such document(s) from production

5

as privileged or otherwise protected from discovery. In the event that any privileged or protected document(s) is produced during discovery in this Action, the Party or non-party claiming the privilege or protection may notify all Parties in writing of the inadvertent disclosure and request the destruction of such document(s). If the Receiving Party discovers an obviously privileged document, in particular one containing counsel of record in this case as a sender or recipient, it will immediately notify the Producing Party of the document and return or destroy all copies of the document. If a request is made in good faith to return any such inadvertently produced document(s), the Party(ies) or non-party(ies) that received the document(s) shall within five (5) business days of receipt of such request, confirm in writing that it has destroyed all copies thereof and deleted any copy of the documents, or any portion thereof, from any word processing or data base tape or disk it maintains, and that it has destroyed any work product that incorporates such document or information. The status of the document(s) as privileged or otherwise protected from discovery shall be deemed to be restored upon the making of such a request. If, however, the Party claiming privilege either (i) expresses the intent to use such document (or information contained therein) at a hearing, deposition, or trial, or (ii) uses such document (or information contained therein) at a hearing, deposition, or trial, that Party's right to assert the privilege or protection and to request destruction of the document(s) shall be foreclosed. Compliance with this paragraph shall not be deemed to prejudice the rights of any other Party to seek an order from the Court directing production of the information or document on the ground that the claimed privilege, protection, or immunity is invalid; provided, however, that mere inadvertent production of the information or document in the course of this Action shall not be a ground for asserting waiver of the privilege, protection, or immunity.

6

16.     Nothing in this Protective Order shall affect the admissibility of any evidence at a trial or hearing in this case.

17.     This Protective Order may be modified by the Court at any time for good cause shown following notice to the Parties and an opportunity for them to be heard.

<div style="border:1px solid">

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

</div>

**AGREED:**

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr.
Bass, Berry & Sims, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: (615) 742-6277
cgabbert@bassberry.com

Counsel to Afsoon Hagh and Hagh Law, PLLC

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

7

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

<u>**ORDER CONTINUING HEARINGS AND PRETRIAL CONFERENCE**</u>

This matter came before the Court on February 16, 2022 for a pretrial conference and for

a hearing on the following motions:  Motion to Compel Discovery Responses from Manookian,

PLLC (Doc. 95) ("Motion to Compel Manookian"); Motion to Compel Discovery Responses from

Hagh Law, PLLC (Doc. 96) ("Motion to Compel Hagh Law"); Motion to Compel Discovery

Responses from Afsoon Hagh (Doc. 97) ("Motion to Compel Hagh"); Motion to Compel Marty

Fitzgerald to Comply with Subpoena for Production of Documents (Doc. 114) ("Motion to Compel

Fitzgerald"); Defendant Manookian PLLC's Motion to Compel Responses to Interrogatories from

First and Second Sets of Written Discovery (Doc. 104) ("Motion to Compel Trustee"); and Defendant Manookian, PLLC's Motion to Determine Sufficiency of Responses to Requests for Admission, or, Alternatively, to Deem Admitted (Doc. 109) ("RFA Sufficiency Motion"). Appearances at the hearing and pretrial conference were made by Phillip G. Young on behalf of the Trustee, Craig Gabbert on behalf of Afsoon Hagh and Hagh Law, PLLC, and John Spragens on behalf of Manookian, PLLC. Based upon the statements of counsel and arguments made at the February 16, 2021 hearing and pretrial conference;

IT IS HEREBY ORDERED that the hearing on the Motion to Compel Manookian, Motion to Compel Hagh Law, Motion to Compel Hagh, Motion to Compel Fitzgerald, Motion to Compel Trustee, and RFA Sufficiency Motion is hereby continued until March 17, 2022 at 8:30 a.m., via Zoom video for Nashville (for details please see www.tnmb.uscourts.gov).

IT IS FURTHER ORDERED that the pretrial conference in this matter is hereby continued until March 17, 2022 at 8:30 a.m., via Zoom video for Nashville (for details please see www.tnmb.uscourts.gov).

---

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

---

2

Submitted for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

United States Bankruptcy Court
Middle District of Tennessee

Burton,

    Plaintiff

Adv. Proc. No. 20-90002-CMW

Hagh Law PLLC,

    Defendant

# CERTIFICATE OF NOTICE

District/off: 0650-3          User: admin          Page 1 of 2

Date Rcvd: Feb 15, 2022          Form ID: pdf001          Total Noticed: 4

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Feb 17, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| dft | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Hagh Law PLLC, c/o Afsoon Hagh, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Manookian PLLC, c/o Brian Manookian, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |

TOTAL: 3

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| pla | + | Email/Text: jeanne.burton@comcast.net | Feb 15 2022 23:19:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Feb 17, 2022          Signature:          /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on February 15, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com  bankr@bassberry.com;delores.walker@bassberry.com |
| GLENN BENTON ROSE | on behalf of Defendant Hagh Law PLLC grose@bassberry.com  bankr@bassberry.com |

JOHN T. SPRAGENS

on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM  spragenslaw@ecf.courtdrive.com

PHILLIP G YOUNG

on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com


TOTAL: 4

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 2/15/2022



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

---

## REVISED PROTECTIVE ORDER

---

Plaintiff Jeanne Ann Burton, Trustee and Defendants Hagh Law, PLLC and Afsoon Hagh, (each of the foregoing, a "Party," and collectively, the "Parties") anticipate that certain of their confidential business and/or client records, as well as those of non-parties, may be produced in discovery in the above-captioned action (the "Action") and that such confidential records must be protected from further disclosure. Pursuant to Federal Rule of Civil Procedure 26(c), made applicable to this matter by Bankruptcy Rule 7026, the Court finds good cause for entry of this Stipulated Protective Order ("Protective Order") to provide such protection according to the terms and conditions set forth below. To expedite the flow of discovery material and the litigation of this

case, facilitate the prompt resolution of disputes over confidentiality, and adequately protect material entitled to be kept confidential, it is, by agreement of the Parties, STIPULATED and ORDERED that:

1. This Protective Order shall apply to all documents, electronically stored information (ESI), materials, and information disclosed, filed or served in this Action pursuant to the Federal Rules of Civil Procedure or the Local Rules, including without limitation, documents and data produced by any Party or non-party, answers to interrogatories, responses to requests for production, responses to requests for admission, expert disclosures, and deposition testimony.

2. As used in this Protective Order, "document" and "electronically stored information" are defined as provided in Federal Rule of Civil Procedure 34(a)(1)(A).

3. As used in this Protective Order, "Confidential Information" is information that the designating Party or non-party believes in good faith is not in the public domain and which constitutes, contains or reflects confidential business, research, development, commercial, financial, or personal information, such as confidential business or client information.

4. Any document that contains confidential, proprietary, or personal financial or health information may be designated as Confidential by stamping the term "CONFIDENTIAL" clearly and conspicuously on the face of each document containing such information or in the metadata of the document if produced in native format. For a multi-page document, each page containing Confidential Information shall be stamped separately.

5. All documents and materials produced in the Action shall be used solely for the purposes of preparing for and conducting pre-trial, trial, and post-trial proceedings in this Action, and not for any other purpose, and such documents shall not be disclosed to any person or entity except as provided in this Protective Order.

6. Documents containing Confidential Information shall not be disclosed without the consent of the producing Party or further Order of the Court, *except that* such information may be disclosed to:

(i) the Parties in this Action to the extent reasonably necessary to allow them to assist in the preparation or conduct of pre-trial, trial, and post-trial proceedings in this Action;

(ii) counsel of record for the Parties in this Action, and the personnel who are directly employed or retained by counsel of record for the purpose of assisting with, or working on, this Action;

(iii) expert witnesses and consultants, such as e-discovery vendors, who are retained in connection with this Action, to the extent such disclosure is necessary for preparation for trial or other proceedings in this Action;

(iv) the Court and its officers, including stenographic reporters and videographers engaged to transcribe or record court proceedings and sworn testimony in this Action; and

(v) other persons by written agreement of the Parties or by order of the Court.

7. Prior to disclosing any Confidential Information to any person listed above (other than counsel of record and their employees, court personnel, and stenographic reporters), counsel shall provide such person with a copy of this Protective Order and obtain from such person an executed copy of the Acknowledgement of Stipulated Protective Order attached hereto as Exhibit A, which states that he/she has read this Protective Order and agrees to be bound by its provisions. All such acknowledgments shall be retained by counsel and shall be subject to *in camera* review by the Court if good cause for review is demonstrated by opposing counsel.

8. Documents and other information produced by non-parties shall be treated as Confidential Information for fourteen (14) days after such documents and information are produced, during which time any Party may designate any document or information as Confidential Information by letter to all other Parties in the Action.

3

9.     Deposition transcripts in this Action shall be treated as Confidential Information until thirty (30) days after receipt of a final copy of the transcript, during which time any Party (or non-party deponent) may designate any portion or all of any transcript as Confidential Information by letter to all other Parties in the Action.  Additionally, any Party or non-party participating in a deposition may designate any portions of the transcript of the deposition as Confidential Information during the recording of such deposition.  No person shall be present during portions of the depositions designated as "CONFIDENTIAL" unless such person is an authorized recipient of Confidential Information pursuant to this Protective Order.

10.     A Party may object to the designation of particular Confidential Information by giving written notice to the Party designating the disputed information.  The written notice shall identify the information to which the objection is made.  If the Parties cannot consensually resolve the objection within ten (10) business days after the time the notice is received, it shall be the obligation of the Party objecting to the designation of the information as Confidential Information to file an appropriate motion requesting that the Court determine whether the disputed information should be subject to the terms of this Protective Order.  If such a motion is timely filed, the disputed information shall be treated as Confidential Information under the terms of this Protective Order until the Court rules on the motion.   In connection with a motion filed under this provision, the Party designating the information as Confidential Information shall bear the burden of establishing that good cause exists for the disputed information to be so treated.

11.     All Confidential Information designated as such that is contained within any document, including without limitation pleadings, briefs, deposition transcripts, and deposition exhibits, shall, if possible and feasible, be redacted by the Party seeking to file such prior to filing the document with the Court or, in the alternative, filed under seal, unless the Parties otherwise

agree. In the event that any Confidential Information is filed with the Court by any Party, including pages from motions, briefs, memorandum, or other pleadings containing or referencing (in such manner that the Confidential Information may be revealed thereby), the Confidential Information shall be redacted by the filing Party or, upon motion and with leave of Court, filed under seal unless otherwise agreed by the Parties. If a Party believes Confidential Information has been mistakenly filed with or in a pleading, such Party may, at the Party's own cost and expense, move that it be filed under seal.

12.     Except as provided in paragraph 11, material constituting or revealing Confidential Information, when filed with the Court in this action for any reason, shall be filed under seal. The Party wishing to file any Confidential Information with the Court must first move to have the information filed under seal in accordance with the procedure mandated by the local rules.

13.     Upon termination or resolution of this Action, the Parties shall within sixty (60) days return to the producing Party all materials marked "CONFIDENTIAL" (and any copies thereof) or destroy them. Upon written request, counsel for each Party shall furnish a certificate of compliance that all Confidential Information produced to the Party, as well as all summaries, excerpts, or copies of such materials, have been returned or destroyed.

14.     The termination of proceedings in this Action shall not relieve the Parties from the obligation of maintaining the confidentiality of all Confidential Information that is received or disclosed pursuant to this Protective Order.

15.     The inadvertent production of any document protected from discovery by the attorney-client privilege, the work-product doctrine, or other applicable privilege or immunity shall not constitute a waiver of the privilege or protection, either as to the produced document or any other documents, or otherwise affect the right to withhold such document(s) from production

5

as privileged or otherwise protected from discovery. In the event that any privileged or protected document(s) is produced during discovery in this Action, the Party or non-party claiming the privilege or protection may notify all Parties in writing of the inadvertent disclosure and request the destruction of such document(s). If the Receiving Party discovers an obviously privileged document, in particular one containing counsel of record in this case as a sender or recipient, it will immediately notify the Producing Party of the document and return or destroy all copies of the document. If a request is made in good faith to return any such inadvertently produced document(s), the Party(ies) or non-party(ies) that received the document(s) shall within five (5) business days of receipt of such request, confirm in writing that it has destroyed all copies thereof and deleted any copy of the documents, or any portion thereof, from any word processing or data base tape or disk it maintains, and that it has destroyed any work product that incorporates such document or information. The status of the document(s) as privileged or otherwise protected from discovery shall be deemed to be restored upon the making of such a request. If, however, the Party claiming privilege either (i) expresses the intent to use such document (or information contained therein) at a hearing, deposition, or trial, or (ii) uses such document (or information contained therein) at a hearing, deposition, or trial, that Party's right to assert the privilege or protection and to request destruction of the document(s) shall be foreclosed. Compliance with this paragraph shall not be deemed to prejudice the rights of any other Party to seek an order from the Court directing production of the information or document on the ground that the claimed privilege, protection, or immunity is invalid; provided, however, that mere inadvertent production of the information or document in the course of this Action shall not be a ground for asserting waiver of the privilege, protection, or immunity.

6

16.     Nothing in this Protective Order shall affect the admissibility of any evidence at a trial or hearing in this case.

17.     This Protective Order may be modified by the Court at any time for good cause shown following notice to the Parties and an opportunity for them to be heard.

> **THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

**AGREED:**

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr.
Bass, Berry & Sims, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: (615) 742-6277
cgabbert@bassberry.com

Counsel to Afsoon Hagh and Hagh Law, PLLC

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

7

Case 3:23-cv-00961     Document 6-1     Filed 10/04/23     Page 174 of 678 PageID #: 3090

868



Charles M. Walker
U.S. Bankruptcy Judge
Dated: 2/18/2022

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## ORDER CONTINUING HEARINGS AND PRETRIAL CONFERENCE

This matter came before the Court on February 16, 2022 for a pretrial conference and for

a hearing on the following motions:  Motion to Compel Discovery Responses from Manookian,

PLLC (Doc. 95) ("Motion to Compel Manookian"); Motion to Compel Discovery Responses from

Hagh Law, PLLC (Doc. 96) ("Motion to Compel Hagh Law"); Motion to Compel Discovery

Responses from Afsoon Hagh (Doc. 97) ("Motion to Compel Hagh"); Motion to Compel Marty

Fitzgerald to Comply with Subpoena for Production of Documents (Doc. 114) ("Motion to Compel

Fitzgerald"); Defendant Manookian PLLC's Motion to Compel Responses to Interrogatories from

First and Second Sets of Written Discovery (Doc. 104) ("Motion to Compel Trustee"); and Defendant Manookian, PLLC's Motion to Determine Sufficiency of Responses to Requests for Admission, or, Alternatively, to Deem Admitted (Doc. 109) ("RFA Sufficiency Motion"). Appearances at the hearing and pretrial conference were made by Phillip G. Young on behalf of the Trustee, Craig Gabbert on behalf of Afsoon Hagh and Hagh Law, PLLC, and John Spragens on behalf of Manookian, PLLC. Based upon the statements of counsel and arguments made at the February 16, 2021 hearing and pretrial conference;

IT IS HEREBY ORDERED that the hearing on the Motion to Compel Manookian, Motion to Compel Hagh Law, Motion to Compel Hagh, Motion to Compel Fitzgerald, Motion to Compel Trustee, and RFA Sufficiency Motion is hereby continued until March 17, 2022 at 8:30 a.m., ~~via~~ Courtroom 2, 2nd Floor Customs House, 701 Broadway, Nashville, TN 37203. ~~Zoom video for Nashville (for details please see www.tnmb.uscourts.gov).~~

Counsel is required to appear in person.

~~IT IS FURTHER ORDERED that the pretrial conference in this matter is hereby continued until March 17, 2022 at 8:30 a.m., via Zoom video for Nashville (for details please see www.tnmb.uscourts.gov).~~

---

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

---

Submitted for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

3

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

---

## PROTECTIVE ORDER

---

Plaintiff Jeanne Ann Burton, Trustee and Defendant Manookian, PLLC (each of the foregoing, a "Party," and collectively, the "Parties") anticipate that certain of their confidential business and/or client records, as well as those of non-parties, may be produced in discovery in the above-captioned action (the "Action") and that such confidential records must be protected from further disclosure. Pursuant to Federal Rule of Civil Procedure 26(c), made applicable to this matter by Bankruptcy Rule 7026, the Court finds good cause for entry of this Stipulated Protective Order ("Protective Order") to provide such protection according to the terms and conditions set forth below. To expedite the flow of discovery material and the litigation of this case, facilitate the

prompt resolution of disputes over confidentiality, and adequately protect material entitled to be kept confidential, it is, by agreement of the Parties, STIPULATED and ORDERED that:

1.      This Protective Order shall apply to all documents, electronically stored information (ESI), materials, and information disclosed, filed or served in this Action pursuant to the Federal Rules of Civil Procedure or the Local Rules, including without limitation, documents and data produced by any Party or non-party, answers to interrogatories, responses to requests for production, responses to requests for admission, expert disclosures, and deposition testimony.

2.      As used in this Protective Order, "document" and "electronically stored information" are defined as provided in Federal Rule of Civil Procedure 34(a)(1)(A).

3.      As used in this Protective Order, "Confidential Information" is information that the designating Party or non-party believes in good faith is not in the public domain and which constitutes, contains or reflects confidential business, research, development, commercial, financial, or personal information, such as confidential business or client information.

4.      Any document that contains confidential, proprietary, or personal financial or health information may be designated as Confidential by stamping the term "CONFIDENTIAL" clearly and conspicuously on the face of each document containing such information or in the metadata of the document if produced in native format.  For a multi-page document, each page containing Confidential Information shall be stamped separately.

5.      All documents and materials produced in the Action shall be used solely for the purposes of preparing for and conducting pre-trial, trial, and post-trial proceedings in this Action, and not for any other purpose, and such documents shall not be disclosed to any person or entity except as provided in this Protective Order.

2

6. Documents containing Confidential Information shall not be disclosed without the consent of the producing Party or further Order of the Court, *except that* such information may be disclosed to:

(i) the Parties in this Action to the extent reasonably necessary to allow them to assist in the preparation or conduct of pre-trial, trial, and post-trial proceedings in this Action;

(ii) counsel of record for the Parties in this Action, and the personnel who are directly employed or retained by counsel of record for the purpose of assisting with, or working on, this Action;

(iii) expert witnesses and consultants, such as e-discovery vendors, who are retained in connection with this Action, to the extent such disclosure is necessary for preparation for trial or other proceedings in this Action;

(iv) the Court and its officers, including stenographic reporters and videographers engaged to transcribe or record court proceedings and sworn testimony in this Action; and

(v) other persons by written agreement of the Parties or by order of the Court.

7. Prior to disclosing any Confidential Information to any person listed above (other than counsel of record and their employees, court personnel, and stenographic reporters), counsel shall provide such person with a copy of this Protective Order and obtain from such person an executed copy of the Acknowledgement of Stipulated Protective Order attached hereto as Exhibit A, which states that he/she has read this Protective Order and agrees to be bound by its provisions. All such acknowledgments shall be retained by counsel and shall be subject to *in camera* review by the Court if good cause for review is demonstrated by opposing counsel.

8. Documents and other information produced by non-parties shall be treated as Confidential Information for fourteen (14) days after such documents and information are produced, during which time any Party may designate any document or information as Confidential Information by letter to all other Parties in the Action.

9.      Deposition transcripts in this Action shall be treated as Confidential Information until thirty (30) days after receipt of a final copy of the transcript, during which time any Party (or non-party deponent) may designate any portion or all of any transcript as Confidential Information by letter to all other Parties in the Action.  Additionally, any Party or non-party participating in a deposition may designate any portions of the transcript of the deposition as Confidential Information during the recording of such deposition.  No person shall be present during portions of the depositions designated as "CONFIDENTIAL" unless such person is an authorized recipient of Confidential Information pursuant to this Protective Order.

10.     A Party may object to the designation of particular Confidential Information by giving written notice to the Party designating the disputed information.  The written notice shall identify the information to which the objection is made.  If the Parties cannot consensually resolve the objection within ten (10) business days after the time the notice is received, it shall be the obligation of the Party objecting to the designation of the information as Confidential Information to file an appropriate motion requesting that the Court determine whether the disputed information should be subject to the terms of this Protective Order.  If such a motion is timely filed, the disputed information shall be treated as Confidential Information under the terms of this Protective Order until the Court rules on the motion.   In connection with a motion filed under this provision, the Party designating the information as Confidential Information shall bear the burden of establishing that good cause exists for the disputed information to be so treated.

11.     All Confidential Information designated as such that is contained within any document, including without limitation pleadings, briefs, deposition transcripts, and deposition exhibits, shall, if possible and feasible, be redacted by the Party seeking to file such prior to filing the document with the Court or, in the alternative, filed under seal, unless the Parties otherwise

agree. In the event that any Confidential Information is filed with the Court by any Party, including pages from motions, briefs, memorandum, or other pleadings containing or referencing (in such manner that the Confidential Information may be revealed thereby), the Confidential Information shall be redacted by the filing Party or, upon motion and with leave of Court, filed under seal unless otherwise agreed by the Parties. If a Party believes Confidential Information has been mistakenly filed with or in a pleading, such Party may, at the Party's own cost and expense, move that it be filed under seal.

12.     Except as provided in paragraph 11, material constituting or revealing Confidential Information, when filed with the Court in this action for any reason, shall be filed under seal. The Party wishing to file any Confidential Information with the Court must first move to have the information filed under seal in accordance with the procedure mandated by the local rules.

13.     Upon termination or resolution of this Action, the Parties shall within sixty (60) days return to the producing Party all materials marked "CONFIDENTIAL" (and any copies thereof) or destroy them. Upon written request, counsel for each Party shall furnish a certificate of compliance that all Confidential Information produced to the Party, as well as all summaries, excerpts, or copies of such materials, have been returned or destroyed.

14.     The termination of proceedings in this Action shall not relieve the Parties from the obligation of maintaining the confidentiality of all Confidential Information that is received or disclosed pursuant to this Protective Order.

15.     The inadvertent production of any document protected from discovery by the attorney-client privilege, the work-product doctrine, or other applicable privilege or immunity shall not constitute a waiver of the privilege or protection, either as to the produced document or any other documents, or otherwise affect the right to withhold such document(s) from production

as privileged or otherwise protected from discovery. In the event that any privileged or protected document(s) is produced during discovery in this Action, the Party or non-party claiming the privilege or protection may notify all Parties in writing of the inadvertent disclosure and request the destruction of such document(s). If the Receiving Party discovers an obviously privileged document, in particular one containing counsel of record in this case as a sender or recipient, it will immediately notify the Producing Party of the document and return or destroy all copies of the document. If a request is made in good faith to return any such inadvertently produced document(s), the Party(ies) or non-party(ies) that received the document(s) shall within five (5) business days of receipt of such request, confirm in writing that it has destroyed all copies thereof and deleted any copy of the documents, or any portion thereof, from any word processing or data base tape or disk it maintains, and that it has destroyed any work product that incorporates such document or information. The status of the document(s) as privileged or otherwise protected from discovery shall be deemed to be restored upon the making of such a request. If, however, the Party claiming privilege either (i) expresses the intent to use such document (or information contained therein) at a hearing, deposition, or trial, or (ii) uses such document (or information contained therein) at a hearing, deposition, or trial, that Party's right to assert the privilege or protection and to request destruction of the document(s) shall be foreclosed. Compliance with this paragraph shall not be deemed to prejudice the rights of any other Party to seek an order from the Court directing production of the information or document on the ground that the claimed privilege, protection, or immunity is invalid; provided, however, that mere inadvertent production of the information or document in the course of this Action shall not be a ground for asserting waiver of the privilege, protection, or immunity.

6

16.     Nothing in this Protective Order shall affect the admissibility of any evidence at a trial or hearing in this case.

17.     This Protective Order may be modified by the Court at any time for good cause shown following notice to the Parties and an opportunity for them to be heard.

> **THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

**AGREED:**

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

/s/ John T. Spragens
John T. Spragens
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
Tel: (615) 983-8900
john@spragenslaw.com

Counsel to Manookian PLLC

7



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **CUMMINGS MANOOKIAN, PLLC,** | ) **Case No. 3:19-bk-07235** |
| Debtor. | ) **Chapter 7** |
| | ) **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) |
| **MANOOKIAN, PLLC; and FIRST-** | ) |
| **CITIZENS BANK & TRUST** | ) |
| **COMPANY,** | ) |
| Defendants. | ) |
| | ) **Adv. Proc. No. 3:20-ap-90002** |

## PROTECTIVE ORDER

Plaintiff Jeanne Ann Burton, Trustee and Defendant Manookian, PLLC (each of the foregoing, a "Party," and collectively, the "Parties") anticipate that certain of their confidential business and/or client records, as well as those of non-parties, may be produced in discovery in the above-captioned action (the "Action") and that such confidential records must be protected from further disclosure. Pursuant to Federal Rule of Civil Procedure 26(c), made applicable to this matter by Bankruptcy Rule 7026, the Court finds good cause for entry of this Stipulated Protective Order ("Protective Order") to provide such protection according to the terms and conditions set forth below. To expedite the flow of discovery material and the litigation of this case, facilitate the

prompt resolution of disputes over confidentiality, and adequately protect material entitled to be kept confidential, it is, by agreement of the Parties, STIPULATED and ORDERED that:

1.      This Protective Order shall apply to all documents, electronically stored information (ESI), materials, and information disclosed, filed or served in this Action pursuant to the Federal Rules of Civil Procedure or the Local Rules, including without limitation, documents and data produced by any Party or non-party, answers to interrogatories, responses to requests for production, responses to requests for admission, expert disclosures, and deposition testimony.

2.      As used in this Protective Order, "document" and "electronically stored information" are defined as provided in Federal Rule of Civil Procedure 34(a)(1)(A).

3.      As used in this Protective Order, "Confidential Information" is information that the designating Party or non-party believes in good faith is not in the public domain and which constitutes, contains or reflects confidential business, research, development, commercial, financial, or personal information, such as confidential business or client information.

4.      Any document that contains confidential, proprietary, or personal financial or health information may be designated as Confidential by stamping the term "CONFIDENTIAL" clearly and conspicuously on the face of each document containing such information or in the metadata of the document if produced in native format.  For a multi-page document, each page containing Confidential Information shall be stamped separately.

5.      All documents and materials produced in the Action shall be used solely for the purposes of preparing for and conducting pre-trial, trial, and post-trial proceedings in this Action, and not for any other purpose, and such documents shall not be disclosed to any person or entity except as provided in this Protective Order.

2

6.      Documents containing Confidential Information shall not be disclosed without the consent of the producing Party or further Order of the Court, *except that* such information may be disclosed to:

(i)      the Parties in this Action to the extent reasonably necessary to allow them to assist in the preparation or conduct of pre-trial, trial, and post-trial proceedings in this Action;

(ii)     counsel of record for the Parties in this Action, and the personnel who are directly employed or retained by counsel of record for the purpose of assisting with, or working on, this Action;

(iii)    expert witnesses and consultants, such as e-discovery vendors, who are retained in connection with this Action, to the extent such disclosure is necessary for preparation for trial or other proceedings in this Action;

(iv)     the Court and its officers, including stenographic reporters and videographers engaged to transcribe or record court proceedings and sworn testimony in this Action; and

(v)      other persons by written agreement of the Parties or by order of the Court.

7.      Prior to disclosing any Confidential Information to any person listed above (other than counsel of record and their employees, court personnel, and stenographic reporters), counsel shall provide such person with a copy of this Protective Order and obtain from such person an executed copy of the Acknowledgement of Stipulated Protective Order attached hereto as Exhibit A, which states that he/she has read this Protective Order and agrees to be bound by its provisions. All such acknowledgments shall be retained by counsel and shall be subject to *in camera* review by the Court if good cause for review is demonstrated by opposing counsel.

8.      Documents and other information produced by non-parties shall be treated as Confidential Information for fourteen (14) days after such documents and information are produced, during which time any Party may designate any document or information as Confidential Information by letter to all other Parties in the Action.

3

9.      Deposition transcripts in this Action shall be treated as Confidential Information until thirty (30) days after receipt of a final copy of the transcript, during which time any Party (or non-party deponent) may designate any portion or all of any transcript as Confidential Information by letter to all other Parties in the Action.  Additionally, any Party or non-party participating in a deposition may designate any portions of the transcript of the deposition as Confidential Information during the recording of such deposition.  No person shall be present during portions of the depositions designated as "CONFIDENTIAL" unless such person is an authorized recipient of Confidential Information pursuant to this Protective Order.

10.      A Party may object to the designation of particular Confidential Information by giving written notice to the Party designating the disputed information.  The written notice shall identify the information to which the objection is made.  If the Parties cannot consensually resolve the objection within ten (10) business days after the time the notice is received, it shall be the obligation of the Party objecting to the designation of the information as Confidential Information to file an appropriate motion requesting that the Court determine whether the disputed information should be subject to the terms of this Protective Order.  If such a motion is timely filed, the disputed information shall be treated as Confidential Information under the terms of this Protective Order until the Court rules on the motion.   In connection with a motion filed under this provision, the Party designating the information as Confidential Information shall bear the burden of establishing that good cause exists for the disputed information to be so treated.

11.      All Confidential Information designated as such that is contained within any document, including without limitation pleadings, briefs, deposition transcripts, and deposition exhibits, shall, if possible and feasible, be redacted by the Party seeking to file such prior to filing the document with the Court or, in the alternative, filed under seal, unless the Parties otherwise

agree. In the event that any Confidential Information is filed with the Court by any Party, including pages from motions, briefs, memorandum, or other pleadings containing or referencing (in such manner that the Confidential Information may be revealed thereby), the Confidential Information shall be redacted by the filing Party or, upon motion and with leave of Court, filed under seal unless otherwise agreed by the Parties. If a Party believes Confidential Information has been mistakenly filed with or in a pleading, such Party may, at the Party's own cost and expense, move that it be filed under seal.

12. Except as provided in paragraph 11, material constituting or revealing Confidential Information, when filed with the Court in this action for any reason, shall be filed under seal. The Party wishing to file any Confidential Information with the Court must first move to have the information filed under seal in accordance with the procedure mandated by the local rules.

13. Upon termination or resolution of this Action, the Parties shall within sixty (60) days return to the producing Party all materials marked "CONFIDENTIAL" (and any copies thereof) or destroy them. Upon written request, counsel for each Party shall furnish a certificate of compliance that all Confidential Information produced to the Party, as well as all summaries, excerpts, or copies of such materials, have been returned or destroyed.

14. The termination of proceedings in this Action shall not relieve the Parties from the obligation of maintaining the confidentiality of all Confidential Information that is received or disclosed pursuant to this Protective Order.

15. The inadvertent production of any document protected from discovery by the attorney-client privilege, the work-product doctrine, or other applicable privilege or immunity shall not constitute a waiver of the privilege or protection, either as to the produced document or any other documents, or otherwise affect the right to withhold such document(s) from production

as privileged or otherwise protected from discovery.  In the event that any privileged or protected document(s) is produced during discovery in this Action, the Party or non-party claiming the privilege or protection may notify all Parties in writing of the inadvertent disclosure and request the destruction of such document(s).  If the Receiving Party discovers an obviously privileged document, in particular one containing counsel of record in this case as a sender or recipient, it will immediately notify the Producing Party of the document and return or destroy all copies of the document.  If a request is made in good faith to return any such inadvertently produced document(s), the Party(ies) or non-party(ies) that received the document(s) shall within five (5) business days of receipt of such request, confirm in writing that it has destroyed all copies thereof and deleted any copy of the documents, or any portion thereof, from any word processing or data base tape or disk it maintains, and that it has destroyed any work product that incorporates such document or information.  The status of the document(s) as privileged or otherwise protected from discovery shall be deemed to be restored upon the making of such a request.  If, however, the Party claiming privilege either (i) expresses the intent to use such document (or information contained therein) at a hearing, deposition, or trial, or (ii) uses such document (or information contained therein) at a hearing, deposition, or trial, that Party's right to assert the privilege or protection and to request destruction of the document(s) shall be foreclosed.  Compliance with this paragraph shall not be deemed to prejudice the rights of any other Party to seek an order from the Court directing production of the information or document on the ground that the claimed privilege, protection, or immunity is invalid; provided, however, that mere inadvertent production of the information or document in the course of this Action shall not be a ground for asserting waiver of the privilege, protection, or immunity.

6

16.     Nothing in this Protective Order shall affect the admissibility of any evidence at a trial or hearing in this case.

17.     This Protective Order may be modified by the Court at any time for good cause shown following notice to the Parties and an opportunity for them to be heard.

> **THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

**AGREED:**

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

/s/ John T. Spragens
John T. Spragens
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
Tel: (615) 983-8900
john@spragenslaw.com

Counsel to Manookian PLLC

7

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| **HAGH LAW, PLLC; AFSOON** | ) | |
| **HAGH; MANOOKIAN, PLLC; and** | ) | |
| **FIRST-CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | |

### TRUSTEE'S STATUS REPORT IN ADVANCE OF MARCH 17 HEARING

COMES NOW Jeanne Ann Burton, Chapter 7 Trustee for Cummings Manookian PLC and Plaintiff herein (the "Trustee"), by and through counsel, and respectfully provides this Court the following status report in advance of the hearing scheduled in this matter for 8:30 a.m. on March 17, 2022 to consider the following matters: the Trustee's motions to compel as to Hagh Law, PLLC, Afsoon Hagh, Manookian, PLLC, and Marty Fitzgerald; and Manookian, PLLC's motions to compel as to the Trustee. The purpose of this report is to inform the Court of discovery communications between the parties since the February 16, 2022 and to highlight remaining deficiencies, so as to expedite the Court's consideration of the various motions at the upcoming hearing.

1.     Since the last hearing on this matter on February 16, 2022, there have been a number of written communications between the parties  This status report details and attaches all such communications.

2.      On February 18, 2022, undersigned counsel emailed John Spragens, counsel for Manookian, PLLC, asking that his client begin by fully responding to Interrogatory No. 5 (which asks Manookian, PLLC to state by dollar amount or percentage the interest it claims in the *Fitzgerald* and *Shoemaker* fees) as that might moot a number of other outstanding discovery issues.  Mr. Spragens briefly responded to that email on February 28, 2022, but the response did not include an answer to Interrogatory No. 5.  Instead, that email requested an in-person meeting between the Trustee, her counsel, Mr. Spragens, and his client.  The email also requested deposition dates, despite ongoing written discovery disputes.  This correspondence is attached hereto as Exhibit 1.

3.      On March 3, 2022, Mr. Spragens sent a letter to undersigned counsel addressing the existing discovery disputes.  The letter attached no revised discovery responses.  The letter asked the Trustee to enter into a protective order, and promised that "any remaining responsive documents can be produced the same day."  The letter also reiterated the request for a face-to-face meeting and the request for deposition dates.  This letter is attached hereto as Exhibit 2.

4.      The same day, March 3, 2022, Manookian, PLLC served the Trustee with an additional eighty-six (86) requests for admission, in addition to the eighty-five (85) requests for admission previously propounded.  The additional requests for admission (without attachments) are attached hereto as Exhibit 3.  The Trustee intends to discuss this issue with the Court at the hearing on March 17 as the requests for admission were served after the deadline for serving written discovery.

5.      The Trustee responded to Manookian, PLLC's March 3, 2022 letter on March 8, 2022. A copy of that letter is attached hereto as Exhibit 4.  That letter included a proposed protective order, which was entered by this Court on March 9, 2022.

6.      Similarly, on March 2, 2022, undersigned counsel emailed Craig Gabbert, counsel for Afsoon Hagh and Hagh Law, PLLC, inquiring about additional documents for which Ms. Hagh was

allegedly searching. While Ms. Hagh produced over 10,000 pages of documents in response to the Trustee's requests for production, the vast majority of those pages were pleadings that are contained in the public record of the *Shoemaker* case and invoices evidencing trial expenses in *Shoemaker* and *Fitzgerald.* While the production did include a 2021 engagement letter between Hagh Law, PLLC and the *Shoemaker* plaintiffs, it included no other engagement correspondence nor did it include any email correspondence on any matter. Mr. Gabbert responded to that email on March 3, 2022 and attached a letter dated March 1, 2022. The email correspondence between the parties is attached hereto as Exhibit 5, and the March 1 letter from Mr. Gabbert is attached hereto as Exhibit 6.

7.      The March 1 letter from Mr. Gabbert addressed three topics. First, it acted as a "meet and confer" letter with regard to the Trustee's responses to Hagh Law, PLLC's written discovery. Second, it asked the Trustee to withdraw her pending motions to compel as to Afsoon Hagh and Hagh Law, PLLC. Finally, it asked for deposition dates for the Trustee and undersigned counsel. The Trustee responded to this letter on March 8, 2022. A copy of that March 8 letter is attached hereto as Exhibit 7.

8.      The majority of relevant documents in the Trustee's possession were produced by Cummings Manookian, PLC, Brian Manookian, Afsoon Hagh, and Hagh Law, PLLC. The Trustee has not previously produced those documents because it is believed that the Defendants each have ready access to these documents. In keeping with the Court's instruction to re-examine prior productions and out of an abundance of caution, the Trustee decided to produce those documents even if they were otherwise readily available to the Defendants. However, substantially all documents that have been previously produced were designated as "confidential" by those parties. In order to avoid any claim that production of a document to Ms. Hagh that originated with Mr. Manookian was a breach of confidentiality, on March 11, 2022 undersigned counsel asked Mr. Spragens and Mr.

Gabbert to confirm that they had no objection to the Trustee producing these documents to their co-defendants. Mr. Spragens responded, asking for clarification, on March 12, 2022. The Trustee provided that clarification on March 13, 2022. A copy of this correspondence is attached hereto as Exhibit 8.

9. On March 13, 2022, the Trustee sent revised responses to the Hagh Law, PLLC written discovery, the first set of Manookian PLLC requests for admission, and the first set of Manookian PLLC written discovery. A copy of the clean and redline copies of each of those responses is attached hereto as collective Exhibit 9. With those responses, the Trustee produced some additional documents and offered to produce even more documents once the defendants confirmed that they would waive any confidentiality to allow a production of documents to their co-defendants. The defendants have not yet confirmed that, but the Trustee remains willing to produce those documents with written confirmation.

10. On March 14, 2022, Manookian, PLLC served Amended Responses to Plaintiff's First Interrogatories and Requests for Production. Those amended responses are attached hereto as Exhibit 10. With the amended responses, Manookian, PLLC produced two documents: an engagement agreement between Manookian, PLLC and the *Shoemaker* plaintiff and a motion to withdraw filed by Brian Manookian in the *Shoemaker* case. Both documents were marked confidential and are not attached for that reason.

11. There remain significant deficiencies with the discovery responses of all parties. Those deficiencies are as follows:

(a) **Marty Fitzgerald –** The Trustee has received no response to the subpoena for documents.

(b) **Manookian, PLLC –** Despite the amended responses, there remain several

deficiencies:

- Interrogatory No. 5 asks Manookian, PLLC to "[s]tate what amounts (by dollar amount or percentage of recovery) that the Defendant alleges it is entitled to from each of the CM Cases." Manookian, PLLC does not answer that interrogatory with respect to *Fitzgerald* or *Shoemaker*, instead simply answering that certain engagement agreements define the firm's rights. Manookian, PLLC should be compelled to provide an amount or percentage of recovery that it claims to the fees in those two cases.

- Request for Production No. 1 seeks production of any document or communication that supports its denials. Manookian, PLLC produces no documents, claiming that this request is too broad. However, in its previous motions Manookian, PLLC has cited certain documentation, including video from the Debtor's law offices and data regarding key swipes at the Debtor's law offices, that it claims disproves the Trustee's allegations. At a minimum, Manookian, PLLC should be compelled to produce that information that it has affirmatively cited as support for its denials.

- Request for Production No. 8 seeks copies of all documents and communications that relate or refer to the *Fitzgerald* case, including correspondence between Manookian, PLLC and counsel for the defendants in that matter. Manookian, PLLC should be compelled to produce, at a minimum, its email correspondence with opposing counsel and third parties in that case.

(c) **Hagh Law, PLLC –** The most glaring deficiency is that Hagh Law, PLLC has produced no engagement letter with the *Fitzgerald* plaintiffs (despite Manookian, PLLC's insistence

that such document exists) and it has produced no emails. A more complete listing of deficiencies includes:

- Interrogatory No. 8 asks Hagh Law to identify the legal and factual support for its claims to certain fees. Hagh Law has broadly answered this question by referring to "written engagement letters." Relatedly, Request for Production No. 3 asks for the production of those engagement letters. While Hagh Law has produced one engagement letter related to the *Shoemaker* matter it has indicated that it is still looking through files for any other responsive document. Hagh Law, PLLC should be compelled to specifically identify, by parties and date, all written engagement letters it has related to the *Fitzgerald* and *Shoemaker* matters and to produce those documents.

- Request for Production No. 1 seeks production of any document or communication that supports its denials. Hagh Law, PLLC produces no documents, claiming that this request is too broad. However, in its previous motions Hagh Law, PLLC has cited certain documentation, including video from the Debtor's law offices and data regarding key swipes at the Debtor's law offices, that it claims disproves the Trustee's allegations. At a minimum, Hagh Law, PLLC should be compelled to produce that information that it has affirmatively cited as support for its denials.

- Request for Production No. 5 seeks production of any document that supports its claims to fees in the *Fitzgerald* and *Shoemaker* cases. To the extent that Hagh Law contends that anything beyond the single engagement letter establishes its entitlement to fees, it should be required to produce any such documents.

- Request for Production No. 8 seeks the production of all documents and communications that relate or refer to the *Fitzgerald* case, including correspondence with defense counsel in that case. Hagh Law objects, noting that "[t]he entity Hagh Law did not correspond with counsel for the Defendants in the Fitzgerald matter." Hagh Law has repeatedly taken the position in this case that it, and not the Debtor, performed substantial services on behalf of the plaintiff in that matter. In order to prove or disprove that allegation, the Trustee is entitled to review all documents and communications between Hagh Law and counsel for the Defendants. Since Hagh Law was formed in March 2019, and the Fitzgerald matter was settled in August 2019, there should be a finite set of documents that are responsive to this request. Hagh Law should be compelled to produce all documents responsive to this request without drawing a false distinction between Hagh Law as an entity and Afsoon Hagh, its sole member.

(d) **Afsoon Hagh** – Like Hagh Law, PLLC, Ms. Hagh has produced no email correspondence in response to discovery requests. Other deficiencies include:

- Request for Production No. 1 seeks production of any document or communication that supports its denials. Afsoon Hagh produces no documents, claiming that this request is too broad. However, in its previous motions Ms. Hagh has cited certain documentation, including video from the Debtor's law offices and data regarding key swipes at the Debtor's law offices, that she claims disproves the Trustee's allegations. At a minimum, Afsoon Hagh should be compelled to produce that information that she has affirmatively cited as support for her denials.

- Request for Production No. 3 asks for the production of any document that evidences the creation of an attorney/client relationship with the *Fitzgerald* and/or *Shoemaker* plaintiffs, including engagement letters. While Ms. Hagh has produced one engagement letter related to the *Shoemaker* matter she has indicated that she is still looking through files for any other responsive document. Ms. Hagh should be compelled to specifically identify, by parties and date, all written engagement letters it has related to the *Fitzgerald* and *Shoemaker* matters and to produce those documents.

- Request for Production No. 5 seeks production of any document that supports Ms. Hagh's claims to fees in the *Fitzgerald* and *Shoemaker* cases. To the extent that Afsoon Hagh contends that anything beyond the single engagement letter establishes her entitlement to fees, she should be required to produce any such documents.

- Request for Production No. 8 seeks the production of all documents and communications that relate or refer to the *Fitzgerald v. Osborn* case, including correspondence with defense counsel in that case. Ms. Hagh has only produced a few filed pleadings and some invoices for expenses in response to this request. Ms. Hagh has repeatedly taken the position in this case that she and/or her law firm, and not the Debtor, performed substantial services on behalf of the plaintiff in that matter. In order to prove or disprove that allegation, the Trustee is entitled to review all documents and communications between Hagh and counsel for the Defendants. Ms. Hagh should be compelled to produce all documents responsive to this request, including all emails between defense

counsel and her.

Dated this 15th day of March, 2022.

Respectfully submitted,

*/s/ Phillip G. Young, Jr.*
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN  37067
(615) 465-6008 (phone)
phillip@thompsonburton.com

Special Counsel to Trustee

**From:** **John Spragens** john@spragenslaw.com
**Subject:** Re: Burton v. Hagh et al
**Date:** February 28, 2022 at 12:52 PM
**To:** Phillip Young phillip@thompsonburton.com

Phillip,

I have been in depositions for the last week. I will check with my client and get back to you promptly. Relatedly, my client has agreed to make someone available in-person to answer any questions you have about pending discovery in an effort to explain what materials exist and resolve any continuing concerns about production or responses. I will write you separately on this point, but basically, we are happy to come to your office and let you and the Trustee speak directly with a representative of Manookian PLC for as long as you need to identify any materials that you think exist that should be produced and have not been. Please be thinking about dates you and Ms. Burton are free, and whether you might concurrently make the Plaintiff available for a similar discussion about outstanding discovery.

Thanks,
John

On Fri, Feb 18, 2022 at 10:52 AM Phillip Young <phillip@thompsonburton.com> wrote:

John,

As a brief follow up to Wednesday's hearing, if Manookian PLLC's position is that it has disclaimed any claims to fees from the Fitzgerald case and the Shoemaker case, it would be beneficial if it would simply provide a written and signed supplement to its prior response to Interrogatory No. 5. That might moot a lot of the other issues concerning the Manookian PLLC discovery responses, considering a lot of that is interrelated. Please advise if your client intends to provide such an amendment, as it might streamline things in advance of March 17.

## Thompson Burton PLLC

*Redefining the Art of Law.*

—————————————————————

**Phillip Young**
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Direct Dial: (615) 465-6008
phillip@thompsonburton.com
www.thompsonburton.com

*Please refer to our email disclaimer page for important disclosures regarding this electronic communication.

--
John Spragens
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
(615) 983-8900

# SPRAGENSLAW PLC

March 3, 2022

**VIA EMAIL**
Phillip Young
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
phillip@thompsonburton.com

     **Re:**    **Discovery Deficiencies / Deposition Dates**

Phillip,

I am writing in advance of the upcoming hearing on March 17, 2022, on our clients' competing Motions to Compel. The purpose of this letter is to attempt to fully resolve any remaining discovery disputes so that those motions can be removed from the docket, and we can proceed toward an orderly completion of this case.

My proposals here are non-exclusive in the sense that if you have other suggestions, I fully welcome them. Again, the goal is to get you and the Plaintiff any information you believe you need from Manookian PLLC and also to receive full and complete responses to Manookian PLLC's outstanding discovery to the Plaintiff. I would ask that you consider these proposals in good-faith; discuss them with your client; and reconsider Plaintiff's previous "my way or the highway" attitude with respect to discovery.

## I.    Manookian PLLC's Discovery Responses

Plaintiff's Motion to Compel identifies two interrogatories and five requests for production for which it seeks supplemented responses. Each of these inquiries are discussed in detail in response to Plaintiff's Motion to Compel. It appears the vast majority of the disputed production can be made as soon as a protective order is entered. Please send me a copy of the protective order you recently entered in this case with Hagh Law. Let's get an identical or substantially identical one entered early next week to cover Manookian PLLC's production, and then any remaining responsive documents can be produced the same day.

To the extent there remains any confusion or dispute after you review those materials, I am specifically inviting you and the Plaintiff to meet in-person with a representative of

Manookian PLLC to directly discuss any lingering questions as to any outstanding discovery. This will allow you to question Manookian PLLC in real time about the universe of materials that exist to be produced as well as any ambiguities you might believe remain in Manookian PLLC's interrogatory responses. Essentially, you can just ask my client what documents exist and any other questions you might have about its discovery responses.

With respect to your inquiries regarding fees, I am not aware of Manookian PLLC "disclaiming" any fees as to any case. Manookian PLLC's position is that it is either entitled or not entitled to a fee from a client based upon the particular terms of its engagement agreement with that client. I can again reiterate that Manookian PLLC does not take the position that it is owed any fees from your client if that helps resolve any of your outstanding discovery issues.

## II.      Plaintiff's Discovery Responses

As I have expressed, Plaintiff's discovery responses are entirely deficient. Although I obviously cannot force you to do so, I would encourage you to make the Plaintiff available for the same type of in-person, direct discussion regarding her discovery responses. To date, your client has refused to answer any inquiries on the most basic elements of her claims. I, frankly, do not understand her objections or refusal, but I would welcome the opportunity to meet with her to discuss her discovery responses in advance of March 17, 2022.

My offer to make my client available for a meeting and questioning is not contingent upon you doing the same. A representative from Manookian PLLC is available to directly answer your questions about its discovery responses whether or not you choose to reciprocate. Again, my hope is that going directly to the source will allow us to resolve any remaining discovery disputes and withdraw our Motions to Compel.

## III.      Deposition Dates

I will need to depose both you and the Plaintiff. I suggest we set aside two days so that I can utilize seven hours for the Plaintiff and, likely, just a half-day for your testimony. I would like to get these on the calendar for early April if you don't mind providing me with available dates. If you would like to depose my client, please get me a list of topics and I will get you available dates for the deposition of Manookian PLLC.

I look forward to resolving our discovery disputes without court intervention and hope this letter will assist in that process.

Sincerely,

John Spragens
SPRAGENS LAW PLC

2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | |
| Debtor. | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE** | **Adv. Proc. No. 3:20-ap-90002** |
| Plaintiff, | |
| v. | |
| **HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,** | |
| Defendants. | |

## DEFENDANT MANOOKIAN PLLC'S SECOND SET OF REQUESTS FOR ADMISSION TO THE PLAINTIFF

Manookian PLLC, through counsel, and propounds the following Requests for Admission upon the Plaintiff.

## **REQUESTS FOR ADMISSION**

1.     Admit that Exhibit 1 is an attorney-client agreement between Cummings Manookian and Edward Goodwin and Brett Keefer.

**RESPONSE:**

1

2. Admit that Exhibit 1 is a genuine copy of an attorney-client agreement between Cummings Manookian and Edward Goodwin and Brett Keefer.

**RESPONSE:**

3. Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 1.

**RESPONSE:**

4. Admit that on April 19, 2017, Brian Cummings was a member of Cummings Manookian.

**RESPONSE:**

5. Admit that on April 1, 2017, Brian Cummings had the authority to enter into Exhibit 1 on behalf of Cummings Manookian.

**RESPONSE:**

6. Admit that on April 1, 2017, Cummings Manookian entered into an Agreement with Brett Keefer and Edward Goodwin whose terms are contained in Exhibit 1.

**RESPONSE:**

7. Admit that Exhibit 1 was drafted by Cummings Manookian.

**RESPONSE:**

2

8.     Admit that Exhibit 1 was drafted by Brian Cummings on behalf of Cummings Manookian.

**RESPONSE:**


9.     Admit that Exhibit 1 is a binding contract.

**RESPONSE:**


10.     Admit that Exhibit 1 is binding upon Brett Keefer.

**RESPONSE:**


11.     Admit that Exhibit 1 is binding upon Edward Goodwin.

**RESPONSE:**


12.     Admit that Exhibit 1 is binding upon Cummings Manookian.

**RESPONSE:**


13.     Admit that Cummings Manookian withdrew from representing Brett Keefer.

**RESPONSE:**


14.     Admit that Cummings Manookian withdrew from representing Edward Goodwin.

**RESPONSE:**


3

15.     Admit that Cummings Manookian withdrew from representing Brett Keefer prior to receiving a settlement for Mr. Keefer or Chesta Shoemaker's estate.

**RESPONSE:**

16.     Admit that Cummings Manookian withdrew from representing Edward Goodwin prior to receiving a settlement for Mr. Goodwin or Chesta Shoemaker's estate.

**RESPONSE:**

17.     Admit that Cummings Manookian did not pay any costs or expenses associated with any lawsuit filed on behalf of Brett Keefer, Edward Goodwin, or Chesta Shoemaker's estate.

**RESPONSE:**

18.     Admit that Exhibit 1 is the only written agreement between Cummings Manookian and Brett Keefer.

**RESPONSE:**

19.     Admit that Exhibit 1 is the only written agreement between Cummings Manookian and Edward Goodwin.

**RESPONSE:**

20.     Admit that Exhibit 1 is the only written agreement between Cummings Manookian and any representative of Chesta Shoemaker's estate.

4

**RESPONSE:**

21.     Admit that as of January 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

22.     Admit that as of February 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

23.     Admit that as of February 11, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

24.     Admit that as of March 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

25.     Admit that as of January 1, 2019, Cummings Manookian had no employees.

**RESPONSE:**

26.     Admit that as of February 1, 2019, Cummings Manookian had no employees.

5

**RESPONSE:**


27.     Admit that as of February 11, 2019, Cummings Manookian had no employees.

**RESPONSE:**


28.     Admit that as of March 1, 2019, Cummings Manookian had no employees.

**RESPONSE:**


29.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in December 2018.

**RESPONSE:**


30.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in January 2019.

**RESPONSE:**


31.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in February 2019.

**RESPONSE:**


32.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in March 2019.


6

**RESPONSE:**


33.    Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in April 2019.

**RESPONSE:**


34.    Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in May 2019.

**RESPONSE:**


35.    Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in June 2019.

**RESPONSE:**


36.    Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in July 2019.

**RESPONSE:**


37.    Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in August 2019.

**RESPONSE:**

7

38.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in September 2019.

**RESPONSE:**

39.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in October 2019.

**RESPONSE:**

40.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in November 2019.

**RESPONSE:**

41.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in December 2019.

**RESPONSE:**

42.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in 2020.

**RESPONSE:**

43.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in 2021.

8

**RESPONSE:**

44. Admit that Cummings Manookian has made no payments to any employee, as salary or otherwise, in 2022.

**RESPONSE:**

45. Admit that Brian Cummings never signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

46. Admit that Brian Manookian never signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

47. Admit that Afsoon Hagh never signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

9

48.     Admit that no attorney ever signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself or herself as working for or on behalf of Cummings Manookian.

**RESPONSE:**


49.     Admit that no attorney ever entered an appearance in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, that identified himself or herself as working for or on behalf of Cummings Manookian.

**RESPONSE:**


50.     Admit that Brian Cummings did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


51.     Admit that Brian Manookian did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


52.     Admit that Afsoon Hagh did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


10

53.     Admit that no attorney did any work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


54.     Admit that Cummings Manookian did not correspond or communicate with Brett Keefer or Edward Goodwin in 2019.

**RESPONSE:**


55.     Admit that Cummings Manookian did not correspond or communicate with Brett Keefer or Edward Goodwin in 2020.

**RESPONSE:**


56.     Admit that Cummings Manookian did not correspond or communicate with Brett Keefer or Edward Goodwin in 2021.

**RESPONSE:**


57.     Admit that Cummings Manookian was not involved in negotiating any final terms of settlement in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


58.     Admit that Cummings Manookian is aware of the terms of any settlement in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

11

**RESPONSE:**


59.     Admit that Exhibit 2 is an attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melissa Fitzgerald.

**RESPONSE:**


60.     Admit that Exhibit 2 is a genuine copy of an attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melissa Fitzgerald.

**RESPONSE:**


61.     Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 2.

**RESPONSE:**


62.     Admit that on May 23, 2018, Brian Manookian was a member of Cummings Manookian.

**RESPONSE:**


63.     Admit that on May 23, 2018, Brian Manookian had the authority to enter into Exhibit 2 on behalf of Cummings Manookian.

**RESPONSE:**


12

64.     Admit that on May 23. 2018, Cummings Manookian entered into an Agreement with Marty and Melissa Fitzgerald whose terms are contained in Exhibit 2.

**RESPONSE:**


65.     Admit that Exhibit 2 was drafted by Cummings Manookian.

**RESPONSE:**


66.     Admit that Exhibit 2 was drafted by Brian Manookian on behalf of Cummings Manookian.

**RESPONSE:**


67.     Admit that Exhibit 2 is a binding contract.

**RESPONSE:**


68.     Admit that Exhibit 2 is binding upon Marty and Melissa Fitzgerald

**RESPONSE:**


69.     Admit that Exhibit 2 is binding upon Cummings Manookian.

**RESPONSE:**


70.     Admit that Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald.

13

**RESPONSE:**

71.     Admit that Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald prior to receiving any settlement for them.

**RESPONSE:**

72.     Admit that Exhibit 2 is the only written agreement between Cummings Manookian and Marty and Melissa Fitzgerald.

**RESPONSE:**

73.     Admit that Exhibit 3 is a letter from Cummings Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**

74.     Admit that on December 7, 2018, Brian Manookian was a member or partner of Cummings Manookian.

**RESPONSE:**

75.     Admit that on December 7, 2018, Brian Manookian was the sole member of Cummings Manookian.

**RESPONSE:**

14

76.     Admit that on December 7, 2018, Brian Manookian was authorized to speak on behalf of Cummings Manookian.

**RESPONSE:**


77.     Admit that on December 7, 2018, Brian Manookian was authorized to speak to Marty and Melissa Fitzgerald on behalf of Cummings Manookian on the topic of his and Cummings Manookian's representation of the Fitzgeralds.

**RESPONSE:**


78.     Admit that Exhibit 3 is a letter from Brian Manookian on behalf of Cummings Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**


79.     Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 3.

**RESPONSE:**


80.     Admit that Exhibit 3 was sent by Brian Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**


81.     Admit that Exhibit 3 was received by Marty and Melissa Fitzgerald.

**RESPONSE:**

82.     Admit that Exhibit 3 states that Brian Manookian and Cummings Manookian are withdrawing from their representation of Marty and Melissa Fitzgerald.

**RESPONSE:**


83.     Admit that Exhibit 3 requests that Marty and Melissa Fitzgerald obtain another attorney or firm to represent them.

**RESPONSE:**


84.     Admit that Exhibit 3 states that because Cummings Manookian is withdrawing from the representation, it will not be entitled to any portion of an attorney's fee in the matter.

**RESPONSE:**


85.     Admit that Exhibit 3 states that Cummings Manookian specifically disclaims any attorney's fee in the Fitzgerald matter.

**RESPONSE:**


86.     Admit that Cummings Manookian disclaimed any attorney's fee in the Fitzgerald matter via written letter to the Fitzgeralds.

**RESPONSE:**


16

Date:   March 3, 2022

Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC and Brian Manookian*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served on Phillip Young as Counsel for the Plaintiff on March 3, 2022.

*/s/ John Spragens*

17

# THOMPSON BURTON PLLC

ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
www.thompsonburton.com

Phillip G. Young
phillip@thompsonburton.com                                        Direct Dial: 615-465-6008

March 8, 2022

John Spragens
Spragens Law, PLC
311 22nd Avenue, North
Nashville, TN 37203
john@spragenslaw.com

      Re:    *Burton v. Hagh Law PLLC et al.*
             **United States Bankruptcy Court for the Middle District of Tennessee**
             **Case No. 3:20-ap-90002**
             **Response to March 3, 2022 Letter**

Dear John:

      As you know, this firm represents Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff in the above-referenced matter. Please accept this letter as a response to your letter dated March 3, 2022. Your letter raised a number of issues regarding the ongoing discovery disputes between my client, the Trustee, and your client, Manookian PLLC. I will try to address each of those issues in this letter.

      First, you asked that the parties enter into a protective order to cover Manookian, PLLC's document production in this matter. We have offered to enter into a protective order several times in the past and at least twice have sent a proposed protective order identical to the one that was entered into by Afsoon Hagh and Hagh Law PLLC. Nevertheless, I am attaching another copy of that proposed protective order to this letter. You have my permission to sign my name to this order and submit it to the Court; alternatively, if you will email me permission to sign your name to this order I will be happy to submit it. Given the time constraints I suggest that we submit this as an expedited order so that it is entered quickly.

      Next, in your letter you suggest that we and our clients meet to discuss the outstanding discovery. Respectfully, the Trustee and I think that is unnecessary. We have issued *written* discovery to which *written* responses are required by the Federal Rules of Civil Procedure. Similarly, you have issued the Trustee written discovery to which written responses are required. The Trustee has attempted to answer all of those requests, in writing, to the best of her ability. While we are in the process of reviewing the prior responses per the Court's instructions (and will

1

be providing any supplements by this weekend), when the Trustee was unable to answer the requests for some reason, she clearly delineated those reasons in writing. There is no reason why Manookian PLLC cannot do the same. Prime evidence of why a written response is necessary in this case can be found within your March 3 letter itself. Both the Trustee and I clearly heard you tell the Court at our last hearing that Manookian PLLC had waived or disclaimed any right to receive fees from the *Fitzgerald* or *Shoemaker* matters. In fact, my response in that hearing was something like, "If your client would put that in a written and signed interrogatory response that might moot a lot of our other outstanding requests." However, in your March 3 letter you state, "I am not aware of Manookian PLLC 'disclaiming' any fees as to any case." You then went on to explain that Manookian PLLC's position is that its right to fees in any case is governed by its engagement letters with those clients – though no engagement letters with Manookian PLLC have been produced. This is a prime example of why oral responses to written discovery are not acceptable. We need written responses (or explanations why there can be no responses) to the written discovery.

In that same vein, I will note that your client has still refused to answer Interrogatory No. 5, which I explained could be pivotal in resolving all other discovery disputes with your client. Your statement in your letter that your client is not owed any fees from my client is not responsive to the interrogatory. Interrogatory No. 5 asks your client to state what dollar amount or percentage of fees to which it claims an interest with regard to several specific lawsuits. In the previous responses, your client answered "none" to all but two cases, *Fitzgerald* and *Shoemaker*. With regard to those two cases, it was indicated that Manookian PLLC's interest was yet to be determined. The *Fitzgerald* case has now been resolved for almost three years; the *Shoemaker* case has been resolved for over four months. We need your client to identify, in a signed writing as required by the Federal Rules of Civil Procedure, what interest it claims in the fees generated by each of those two cases. If your client claims an interest, other interrogatories then ask it to identify the basis for those claims. This is a very basic and forthright question that deserves an immediate response before all parties waste more time and effort on discovery disputes that might prove moot.

Finally, your letter requests dates for depositions for both the Trustee and me. As I indicated in the last pretrial conference, we intend to address the scheduling of all depositions once we have resolved these issues concerning written discovery. It profits no party to have depositions scheduled unless and until all parties have received adequate discovery responses. We will be prepared to discuss that scheduling on March 17 if the Trustee has received adequate discovery responses prior to that date.

2

I trust this addresses all of the issues outlined in your March 3 letter. I look forward to getting that protective order entered, receiving documents that are responsive to our requests for production, and receiving answers to the outstanding interrogatories, including Interrogatory No. 5.

Sincerely,

Phillip G. Young, Jr.

cc:     Jeanne Ann Burton, Trustee

3

**From:** **Gabbert, Craig V.** CGabbert@bassberry.com 
**Subject:** RE: Hagh Discovery Follow Up
**Date:** March 3, 2022 at 4:41 PM
**To:** Phillip Young phillip@thompsonburton.com
**Cc:** Rose, Glenn, B. GRose@bassberry.com

Phillip, I am checking with her about emails. Attached is a letter that addresses the follow up discovery and questions about deficiencies in your responses. Also, the attachment to your letter is what was covered of expenses I paid. I am checking with our client on the status of the additional production.

# BASS BERRY + SIMS

**Craig Gabbert**
Counsel

**Bass, Berry & Sims PLC**
150 Third Avenue South, Suite 2800 • Nashville, TN 37201
615-742-6277 phone • 615-742-0465 fax
cgabbert@bassberry.com • www.bassberry.com

This email may contain privileged and confidential information and is meant only for the use of the specific intended addressee(s). Your receipt is not intended to waive any applicable privilege. If you have received this email in error, please delete it and immediately notify the sender by separate email.

Unless specifically indicated otherwise, this email, including any attachments, was not intended and cannot be used for the purpose of (A) avoiding U.S. tax-related penalties or (B) promoting, marketing or recommending to another party any tax-related matter addressed herein.

**From:** Phillip Young <phillip@thompsonburton.com>
**Sent:** Wednesday, March 2, 2022 4:38 PM
**To:** Gabbert, Craig V. <CGabbert@bassberry.com>
**Cc:** Rose, Glenn, B. <GRose@bassberry.com>
**Subject:** Hagh Discovery Follow Up

Craig,

I'm following up on the discovery responses you sent the week before last. First, your prior email indicated that Ms. Hagh was continuing to look for and gather other responsive documents. Where does that stand? Are there going to be additional documents produced? I note, for example, that the production contained no emails.

Second, I want to confirm that the document that I've attached to this email is the list of invoices that Ms. Hagh paid with the $100,000 that was released to her from trust. That's my assumption since this list totals just shy of $100,000. Is that correct?

**Thompson Burton PLLC**
*Redefining the Art of Law.*

**Phillip Young**
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Direct Dial: (615) 465-6008
phillip@thompsonburton.com
www.thompsonburton.com

*Please refer to our email disclaimer page for important disclosures regarding this electronic communication.

**PDF**

2022.03.01
Letter t...es.PDF

**BASS BERRY + SIMS**rc

**Craig V. Gabbert, Jr.**
cgabbert@bassberry.com
(615) 742-6277

March 1, 2022

Phillip G. Young, Jr.
Partner (Attorney at Law)
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin TN 37067

    **Re:**    **Discovery Deficiencies, Hagh Production, Deposition Dates**

Dear Phillip:

    The Defendant has reviewed the Plaintiff's responses to Hagh Law's First Set of Interrogatories and Requests for Production ("Plaintiff's Discovery Responses"). Those responses were received on January 26, 2022, after at least one extension at your client's request.

    Regrettably, Plaintiff's Discovery Responses are deficient in every respect. Your client has objected to or refused to respond to all twenty-four (24) of the propounded Interrogatories. Likewise, the Plaintiff has refused to adequately respond to Requests for Production Nos. 4-40. Specifically, the Plaintiff repeatedly lodges bogus objections; maintains that the "Defendants already have access to the requested documents"; or states that she "does not currently possess any such documents."

    By this letter I am respectfully requesting that you immediately provide full and accurate responses to Interrogatories Nos. 1-24 as well as Requests for Production Nos. 4-40. Please produce all responsive documents regardless of whether you believe the Defendants have access to the documents (in most cases they do not; moreover, they are entitled to compare whatever documents your client possesses with any documents the Defendant possesses). For requests where the Plaintiff purportedly lacks responsive materials, please state that no such documents are within the Plaintiff's custody, control, or possession rather than simply stating that the Plaintiff "does not currently possess the documents;" which injects significant ambiguity into the response.

    If fully supplemented responses are not provided by March 11, 2022, we will be required to move to compel responses. If there are any specific inquiries where Defendant can provide guidance or clarify in order to assist you in providing a response and avoid motion practice, we are happy to do so. Likewise, if there are inquiries that you sincerely believe the Defendant cannot answer, let's discuss them, and see if we can come to an agreed upon response that does

not require court intervention. I will make myself available for a meeting to discuss this if need be. Just let me know.

I am also writing to confirm that the Hagh Defendants have now produced over 10,000 pages of materials in response to the Plaintiff's broad and generalized requests for production. That production includes all responsive materials except certain documents related to the Fitzgerald case. As you know, the Fitzgerald case was resolved and the case file was closed long before this action was instituted. The Hagh Defendants are attempting to retrieve additional responsive documents from a dormant drive. They have otherwise provided you everything within their custody, control, or possession. Please confirm that you are withdrawing any pending motion to compel against the Hagh Defendants.

Finally, upon receiving full responses to our outstanding written discovery, the Hagh Defendants need to depose you and Jeanne Anne Burton at the outset of depositions. I note that you and Ms. Burton are the first two witnesses identified by the Plaintiff as "individuals with personal knowledge of the facts alleged in the Complaint" in response to Defendants' Interrogatory No. 1. I would ask that you provide dates in early April with Ms. Burton's deposition to occur first.

Thank you for your attention to these matters.

Sincerely,

Craig V. Gabbert, Jr.

CVG:mrh


cc:     Afsoon Hagh

# THOMPSON BURTON PLLC

### A T T O R N E Y S   A T   L A W
#### A PROFESSIONAL LIMITED LIABILITY COMPANY

One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
www.thompsonburton.com

Phillip G. Young
phillip@thompsonburton.com

Direct Dial: 615-465-6008

March 8, 2022

Craig Gabbert
Bass, Berry & Sims PLC
150 Third Ave. South, Suite 2800
Nashville, TN 37201
cgabbert@bassberry.com

> **Re:**     ***Burton v. Hagh Law PLLC et al.***
> **United States Bankruptcy Court for the Middle District of Tennessee**
> **Case No. 3:20-ap-90002**
> **Response to March 1, 2022 Letter**

Dear Craig:

As you know, this firm represents Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff in the above-referenced matter. Please accept this letter as a response to your letter dated March 1, 2022. Your letter raised several issues regarding the ongoing discovery disputes between my client, the Trustee, and your clients, Afsoon Hagh and Hagh Law PLLC. I will try to address each of those issues in this letter.

First, you raised issues regarding certain alleged deficiencies in the Trustee's responses to your clients' written discovery. I note that these are largely the same issues raised by Manookian PLLC and that are subject to its motion to compel, set to be heard on March 17. Therefore, we will likely have a ruling on that issue by next week which will be equally applicable to your clients, however the Court rules. Nevertheless, the Trustee and I are in the process of re-examining her prior responses per the Court's instructions and anticipate providing any appropriate supplemental responses by this weekend.

Your letter also requests that the Trustee withdraw her pending motions to compel against Afsoon Hagh and Hagh Law, PLLC. I believe that request is premature, as I understand Ms. Hagh is still accessing an old server and reviewing emails for responsive documents. Despite your client's production of "over 10,000 pages of material," the vast majority of those pages are documents that are available in the public record of the *Shoemaker* case while other very meaningful documents have not yet been produced. As I have previously noted, for example, we have received no email correspondence on either the *Fitzgerald* or the *Shoemaker* cases, nor have

1

we received any engagement letters from Hagh Law PLLC relative to the *Fitzgerald* matter. Once your clients have confirmed that their production is complete, we will re-examine the motions to compel at that time.

Finally, your letter (like Manookian PLLC's letter that was received on the same date) requests dates for depositions for both the Trustee and me. As I indicated in the last pretrial conference, we intend to address the scheduling of all depositions once we have resolved these issues concerning written discovery. It profits no party to have depositions scheduled unless and until all parties have received adequate discovery responses. We will be prepared to discuss that scheduling on March 17 if the Trustee has received adequate discovery responses prior to that date.

I trust this addresses all of the issues outlined in your March 1 letter. Feel free to contact me with any other questions.

Sincerely,

Phillip G. Young, Jr.

cc: Jeanne Ann Burton, Trustee

2

**From:** **Phillip Young** phillip@thompsonburton.com
**Subject:** Re: Burton v. Hagh et al
**Date:** March 13, 2022 at 7:25 PM
**To:** John Spragens john@spragenslaw.com
**Cc:** Gabbert, Craig V. CGabbert@bassberry.com, Rose, Glenn, B. GRose@bassberry.com, stacia@spragenslaw.com
**Bcc:** Jeanne Burton jeanne.burton@comcast.net



John,

For clarification, here are the documents that the Trustee will produce to both you and Craig, subject to an agreement between your clients referenced in my March 11 email:

1) A 2018 tax return of Cummings Manookian PLC that was produced by Steve Lefkovitz.

2) Documents produced by Brian Manookian on March 9, 2020 in response to the Trustee's Motion for Turnover. These documents consist primarily of Cummings Manookian engagement letters for cases referenced in the Complaint in this matter, and invoices for expenses in those matters.

3) Documents produced to the Receiver by Brian Manookian in September 2019 during a meeting at the offices of Cummings Manookian. These documents also consist primarily of Cummings Manookian engagement letters for cases referenced in the Complaint in this matter, and invoices for expenses in those matters.

4) Documents produced by Afsoon Hagh/Hagh Law in February 2022 in response to the Trustee's requests for production of documents.

Shortly, I will be sending each of you revised discovery responses. By separate email, you will receive a link to a file containing responsive documents that are not confidential, as they were received from neither the Manookian nor Hagh parties. Once I receive written confirmation from each of you that it is acceptable to share these other documents, I will add those to the file.

## Thompson Burton PLLC
*Redefining the Art of Law.*

**Phillip Young**
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Direct Dial: (615) 465-6008
phillip@thompsonburton.com
www.thompsonburton.com

*Please refer to our email disclaimer page for important disclosures regarding this electronic communication.

On Mar 12, 2022, at 8:54 AM, John Spragens <john@spragenslaw.com> wrote:

Phillip,

I generally do not have a problem with your request but (1) I don't believe Manookian PLLC has designated any production as confidential such that it would fall within a protective order and (2) to the extent either Brian Manookian or Manookian PLLC has designated materials as confidential, I need you to identify what you seek to further disseminate before I can agree. We are dealing with a lot of potentially privileged materials that need to be evaluated on a case-by-case basis.

Thanks,
John

On Fri, Mar 11, 2022 at 7:52 AM Phillip Young <phillip@thompsonburton.com> wrote:
Craig & John:

The Trustee anticipates completing some amended discovery responses this weekend. With those amended responses, she intends to produce some additional documents. Those documents will include documents that have been previously produced by Brian Manookian, Manookian PLLC, Afsoon Hagh, and Hagh Law PLLC. Given the entry of the protective orders, I need each of you to confirm that it is acceptable to share with the co-defendant the documents that you have produced to us (i.e., that we can produce Manookian documents to Hagh's counsel and we can produce Hagh documents to Manookian's counsel).

I am out of the office today but, if you will confirm that you have no objection with us sharing these documents with your co-defendant, we will get those documents out to you this weekend.

Thanks,

Phillip

**Thompson Burton PLLC**
*Redefining the Art of Law.*

_____

**Phillip Young**
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Direct Dial: (615) 465-6008
phillip@thompsonburton.com
www.thompsonburton.com

*Please refer to our email disclaimer page for important disclosures regarding this electronic communication.

--
John Spragens
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
(615) 983-8900

# THOMPSON BURTON PLLC

### ATTORNEYS AT LAW
#### A PROFESSIONAL LIMITED LIABILITY COMPANY

One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
www.thompsonburton.com

Phillip G. Young
phillip@thompsonburton.com

Direct Dial: 615-465-6008

March 13, 2022

Craig V. Gabbert
Glenn Rose
Bass, Berry & Sims PLC
150 Third Ave. S, Suite 2800
Nashville, TN 37201
cgabbert@bassberry.com

RE: Burton v. Hagh Law, PLLC et al; Case No. 3:20-ap-90002 (Bankr. M.D. Tenn.)
Plaintiff's Amended Responses to Hagh Law PLLC's First Set of Interrogatories and
Requests for Production to Trustee Jeanne Ann Burton

Craig:

Pursuant to the Court's direction at the February 16 hearing, the Trustee has re-examined her prior responses to Hagh Law PLLC's First Set of Interrogatories and Requests for Production to Trustee Jeanne Ann Burton and has made some amendments. Please find enclosed the Trustee's Amended Responses to Hagh Law PLLC's First Set of Interrogatories and Requests for Production to Trustee Jeanne Ann Burton. I have also included a redline comparison for your convenience. Contemporaneous to this letter, I am also sending you a link to a file that contains some additional documents that might be responsive to these requests. As I indicated in my prior emails, we have some other documents to which we will grant you access once you and John agree in writing that it is acceptable to share documents produced by Brian Manookian/Cummings Manookian/Manookian PLLC with Afsoon Hagh/Hagh Law, and vice versa.

Sincerely,

Phillip G. Young, Jr.

Enclosure

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

IN RE:                                         )
                                               )    **Case No. 3:19-bk-07235**
CUMMINGS MANOOKIAN, PLLC,                      )    **Chapter 7**
                                               )    **Judge Walker**
            Debtor.                            )
                                               )
JEANNE ANN BURTON, TRUSTEE,                    )
                                               )
            Plaintiff,                         )
                                               )
v.                                             )    **Adv. Proc. No. 3:20-ap-90002**
                                               )
HAGH LAW, PLLC; AFSOON HAGH;                   )
MANOOKIAN, PLLC; and FIRST-                    )
CITIZENS BANK & TRUST COMPANY,                 )
                                               )
            Defendants.                        )

---

### PLAINTIFF'S AMENDED RESPONSES TO DEFENDANT HAGH LAW, PLLC'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO TRUSTEE JEANNE ANN BURTON

---

Comes Now, Plaintiff, Jeanne Ann Burton, Trustee ("Trustee"), and for her Amended Responses to Defendant Hagh Law, PLLC's First Set of Interrogatories and Requests for Production to Trustee Jeanne Ann Burton (the "Discovery"), states as follows:

### <u>GENERAL OBJECTIONS</u>

1.      Trustee's Responses to the Discovery shall not constitute a waiver of her objections as to admissibility.

2.      Trustee objects to the Discovery to the extent it exceeds the scope of permissible discovery.

3.      Trustee objects to the Discovery to the extent that the information sought is protected from discovery by the attorney-client privilege or the attorney work-product doctrine.

1

4.      Trustee objects to the Discovery to the extent that the information and documents sought are not in her possession, custody or control.

5.      Trustee objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Trustee objects to the Discovery to the extent that the information sought is equally available to Defendant as to Trustee.

7.      Trustee objects to the definitions and instructions to the extent Defendant seeks to impose any requirement in excess of those imposed by the Federal Rules of Civil Procedure. Additionally, Trustee is not required by the Federal Rules of Civil Procedure to adopt, follow or utilize Defendant's definitions and instructions, and Trustee's Responses are based upon the governing provisions of the applicable Rules, laws and the ordinary and usual meaning of the words used, except as otherwise noted in the Responses.

8.      Trustee reserves the right to supplement her Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.

## INTERROGATORIES

1.      Identify all individuals who have personal knowledge of the facts alleged in your Complaint.

**Response:**

Jeanne Ann Burton, Trustee; Phillip G. Young, Receiver; Brian Manookian; Afsoon Hagh; Brian Cummings; Mark Hammervold; Steve Meisner; Ronette McCarthy; Marty Fitzgerald; Melissa Fitzgerald; all plaintiffs in all lawsuits identified in Paragraph 23 of the Complaint; all defense counsel in all lawsuits identified in Paragraph 23 of the Complaint; all co-counsel in in all lawsuits identified in Paragraph 23 of the Complaint.

2

2.      Identify by client/plaintiff, defendant, case number, and jurisdiction any and all cases or potential cases for which Cummings Manookian was providing legal services in September 2018.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee also objects to this Interrogatory on the grounds that it seeks information that is available on public court dockets. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Paragraph 23 of the Complaint contains a listing of such cases to the best of the Trustee's knowledge.

3.      For each case you identified in response to Interrogatory 2, state the nature of the case, the ultimate resolution of the representation/case, and the date on which you claim Cummings Manookian ceased providing legal services in the case or for the client if no action was ever filed.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee also objects to this Interrogatory on the grounds that it seeks information that is available on public court dockets. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Cummings Manookian provided legal services in each case until the conclusion of each action or November 6, 2019, whichever occurred first.

4.      State with specificity the nature of the relationship, including without limitation the compensation arrangement, that plaintiff alleges existed between Afsoon Hagh and Cummings

3

Manookian. If plaintiff alleges that relationship changed over time, plaintiff should identify each relationship and the dates during which that each arrangement was in place..

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Afsoon Hagh held herself out to be an agent of Cummings Manookian through at least April 2019. The Trustee has been unable to identify the compensation arrangement between Ms. Hagh and Cummings Manookian as that information has been withheld from the Trustee, despite written discovery on that topic to Cummings Manookian and all parties to this action

5. Identify any and all members and/or partners of Cummings Manookian and state the dates for which each was a member and/or partner.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she is aware that Brian Cummings was a member of Cummings Manookian from January 1, 2015 through approximately September 1, 2018, and that she is aware that Brian Manookian was a member of Cummings Manookian from January 1, 2015 through its bankruptcy filing on November 6, 2019.

4

6.     Identify any individual who was a partner, member, or employee of Cummings Manookian who provided any legal services to any person or entity after December 1, 2018, and state with specificity the client for whom those services were provided, the nature of those legal services, and the last date on which services were provided for each client.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee also objects to this Interrogatory on the grounds that it seeks information that is available on public court dockets. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Brian Manookian and Afsoon Hagh provided legal services to clients of Cummings Manookian after December 1, 2018. Both Afsoon Hagh and Brian Manookian provided legal services to the plaintiffs in Fitzgerald v. Osborn after December 1, 2018 and through the conclusion of that matter in August 2019 or, in the alternative, at least through April 2019. Afsoon Hagh and Brian Manookian both provided legal services to the plaintiffs in Shoemaker v. Vanderbilt Medical after December 1, 2018 and through the conclusion of that matter in November 2021 or, in the alternative, at least through April 2019. Ms. Hagh and Mr. Manookian may have provided legal services in other matters after December 1, 2018, so the Trustee will supplement this response after receiving full and complete responses to her outstanding written discovery.

7.     If you identified Afsoon Hagh in response to the previous interrogatory; state the amount of compensation paid to her or owed to her for work allegedly performed after December 1, 2018 and the basis on which the amount of compensation due was calculated or determined.

**Response:**

5

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Afsoon Hagh has received in excess of $600,000 from settlement proceeds in Fitzgerald v. Osborn, and has received at least $100,000 from settlement proceeds in Shoemaker v. Vanderbilt. The Trustee disputes that Ms. Hagh was entitled to any compensation from the proceeds of either of those cases.

8.  You allege at Paragraph 17 of your Complaint that "Afsoon Hagh, now doing business as Hagh Law, continued utilizing CM's office space, CM's furnishings and equipment, CM's telephone numbers, and email address, all to work on CM's client files."

   a. Identify with specificity the office space you allege that Afsoon Hagh utilized, listing the dates on which you allege she was present or on the premises at such office space;

   b. Identify with specificity the precise "furnishings and equipment" you allege that Afsoon Hagh utilized, listing the dates on which you allege she utilized each specific furnishing or equipment;

   c. Identify with specificity the telephone numbers and email addresses that you claim Afsoon Hagh utilized, listing the dates on which you allege she utilized each telephone number or email address;

   d. Identify with specificity the "CM client files" you refer to in Paragraph 17 of your Complaint.

   **Response:**

6

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that:

(a) Afsoon Hagh continued utilizing the office spaces of Cummings Manookian located at 45 Music Sq. W, Nashville, Tennessee through May 14, 2021, the date on which the property was sold to a third party.

(b) Afsoon Hagh utilized all furnishings and equipment located in the office spaces of Cummings Manookian at 45 Music Sq. W, Nashville, Tennessee through May 14, 2021. The Trustee has sought, but has been denied, discovery concerning the specific equipment and furnishings in that space.

(c) Afsoon Hagh utilized the telephone number (615)266-3333 and the fax number (615)266-0250 through at least April 2019. She utilized the email address afsoon@cummingsmanookian.com through at least April 2019.

(d) The CM client files referenced in Paragraph 17 of the Complaint relate to all client files, whether electronic or paper, maintained by Cummings Manookian related to the cases listed in Paragraph 23 of the Complaint.

9.      Identify with specificity all "property" you refer to in Paragraphs 43 and 44 of your Complaint that you allege Afsoon Hagh or Hagh Law have wrongfully appropriated, exercised control over, or taken, and list the dates on which such property was wrongfully appropriated, exercised control over, or taken.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more

7

available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Paragraph 44 of the Complaint clearly defines the term "Property" to include the following assets of Cummings Manookian: "leased premises, furniture, equipment, intellectual property, attorneys' fees, and reimbursement of costs". "Leased premises" refers to real property located at 45 Music Sq. W, Nashville, Tennessee. "Furniture" and "equipment" refers to all furniture and equipment in Cummings Manookian's office spaces located at 45 Music Sq. W, Nashville, Tennessee. "Intellectual property" refers to the use of Cummings Manookian's firm name, its client lists and files, its website, its telephone number, its fax number and its email addresses. "Attorneys' fees" and "reimbursement of costs" refers to any compensation Afsoon Hagh and/or Hagh Law has received, or claims it is owed, from settlement proceeds paid in any case listed in Paragraph 23 of the Complaint. The Trustee is aware that Afsoon Hagh has received more than $600,000 from the Fitzgerald v. Osborn matter, and at least $100,000 from the Shoemaker v. Vanderbilt Medical Center matter.

10. Identify with specificity the "property" you refer to in Paragraphs 47 and 48 of your Complaint that you allege was wrongfully taken or received by Afsoon Hagh or Hagh Law and state the date on which you claim it was wrongfully taken or received.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Paragraph 44 of the Complaint clearly defines the term "Property" to include the following assets of Cummings Manookian: "leased premises, furniture, equipment,

8

intellectual property, attorneys' fees, and reimbursement of costs". "Leased premises" refers to real property located at 45 Music Sq. W, Nashville, Tennessee. "Furniture" and "equipment" refers to all furniture and equipment in Cummings Manookian's office spaces located at 45 Music Sq. W, Nashville, Tennessee. "Intellectual property" refers to the use of Cummings Manookian's firm name, its client lists and files, its website, its telephone number, its fax number and its email addresses. "Attorneys' fees" and "reimbursement of costs" refers to any compensation Afsoon Hagh and/or Hagh Law has received, or claims it is owed, from settlement proceeds paid in any case listed in Paragraph 23 of the Complaint. The Trustee is aware that Afsoon Hagh has received more than $600,000 from the Fitzgerald v. Osborn matter, and at least $100,000 from the Shoemaker v. Vanderbilt Medical Center matter.

11.    Identify with specificity by date and amount the "substantial transfers" you refer to in Paragraphs 51 and 52 of your Complaint that you allege were received by Afsoon Hagh or Hagh Law from Cummings Manookian.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that the "substantial transfers" referenced in Paragraphs 51 and of the Complaint relate to Afsoon Hagh and/or Hagh Law's use and receipt of "Property" as defined in Paragraph 44 of the Complaint. More specifically, Afsoon Hagh and Hagh Law were allowed to utilize, for no cost, the leased premises, furniture, equipment, and intellectual property of Cummings Manookian. Afsoon Hagh and/or Hagh Law have received more than $600,000 from the Fitzgerald v. Osborn matter and at least $100,000 from the Shoemaker v. Vanderbilt Medical Center matter.

9

12.     Identify with specificity all bank, brokerage, or deposit accounts of any kind held at any time by Cummings Manookian from which it made or received transfers.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she believes Cummings Manookian maintained one or more bank accounts at Insbank through Spring 2019. She has not been granted access to these bank record and therefore cannot verify bank account names or numbers.

13.     Identify by name each and every one of the "clients and vendors" of Cummings Manookian that you refer to in Paragraph 63 of your Complaint.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that all of Cummings Manookian's clients in matters identified in Paragraph 23 are responsive to this Interrogatory. The Trustee has yet to identify vendors, but that information is subject to outstanding discovery.

14.     Identify by make, brand, model, and serial number any and all "computers and equipment" that you refer to in Paragraph 65 of your Complaint. If you are unable to provide a serial number, describe with as much detail as possible the "computers and equipment" you refer to in Paragraph 65.

**Response:**

10

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Cummings Manookian and/or the parties to this action have refused to provide this information despite written discovery regarding this issue. However, the Trustee states that all computers and equipment located in the offices of Cummings Manookian as of December 2018 are referenced by the allegations in Paragraph 65.

15. Provide an estimate of the total number of hours of legal services provided by Cummings Manookian in the *Fitzgerald* matter and the *Shoemaker* matter and identify to the best of your ability what services were provided on which dates.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding these objections, the Trustee states that Cummings Manookian represented these clients pursuant to a written contingency agreement; as such, the Trustee doubts that any attorney or employee of Cummings Manookian kept track of the number of hours spent on these matters. Since Cummings Manookian never withdrew as counsel in either matter, all services provided by Brian Manookian and Afsoon Hagh constitute legal services provided by Cummings Manookian.

16. Identify all offers of settlement, including without limitation amount and date, received by Cummings Manookian in the *Shoemaker* matter and state medium in which the offer

11

was received (for example: orally, at mediation, by letter, by email) and the date on which it was received.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

17.     Identify all offers of settlement, including without limitation amount and date, received by Cummings Manookian in the *Fitzgerald* matter and state medium in which the offer was received (for example: orally, at mediation, by letter, by email) and the date on which it was received.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding these objections, the Trustee states that she has recently received, in response to a subpoena, email correspondence from Steve Mesiner that might contain settlement offers in the Fitzgerald matter. The Trustee has not had an opportunity to review these emails. These emails are produced herewith.

18.     Identify the date on which Brian Cummings withdrew as a member of Cummings Manookian.

**Response:**

12

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding these objections, it is the Trustee's understanding that Mr. Cummings withdrew as a member of Cummings Manookian on or about September 1, 2018.

19.     Identify the date on which Brian Manookian stopped (or was precluded as a result of his suspension) from providing legal services as a member of Cummings Manookian.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory on the grounds that the dates of Mr. Manookian's suspensions is publicly available to Afsoon Hagh and/or Hagh Law. Notwithstanding these objections, the Trustee believes that Brian Manookian continued providing legal services as a member of Cummings Manookian until its bankruptcy filing on November 6, 2019.

20.     State and describe in detail all legal work performed by Cummings Manookian in the *Fitzgerald* matter, including the date of the work, the time spent on each task, and individual who performed the work.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in

13

that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

21. State and describe in detail all legal work performed by Cummings Manookian in the *Shoemaker* matter, including the date of the work, the time spent on each task, and individual who performed the work.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

22. Identify and itemize by amount and date all expenses paid for by Cummings Manookian in the *Fitzgerald* matter and state whether or not Cummings Manookian has been reimbursed for that expense.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Brian Manookian provided certain invoices related to multiple matters including the Fitzgerald matter. Pursuant to Mr. Manookian's document productions, the Trustee understands that Cummings Manookian advanced the following expenses for which the estate has not been compensated:

Nashville Media Services, Inc.; November 6, 2018; $328.18

Ciox Health; June 8, 2018; $429.24

14

Williamson County Circuit Court; September 11, 2018; $18.00

Franklin Court Reporters; September 20, 2018; $425.00

23.    Identify and itemize by amount and date all expenses paid for by Cummings Manookian in the *Shoemaker* matter and state whether or not Cummings Manookian has been reimbursed for that expense.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that the only information she has been provided regarding the expenses in Shoemaker was produced by Afsoon Hagh and Hagh Law, PLLC.

24.    Identify by client/plaintiff, defendant, case number, and jurisdiction any and all cases or potential cases for which Cummings Manookian was providing legal services in January 2019.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee also objects to this Interrogatory on the grounds that it seeks information that is available on public court dockets. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Paragraph 23 of the Complaint contains a listing of such cases to the best of the Trustee's knowledge.

15

VERIFICATION

I, **Jeanne Ann Burton,** swear or affirm that the answers to the foregoing Interrogatories and are true, complete, and accurate. I also understand that it is my duty to properly notify my attorney should I later learn that any of these answers are incomplete, inaccurate, or misleading, or should I obtain further information relative to the answers provided herein.

Witness my hand this the ____ day of _____ ,2022.

_____
Jeanne Ann Burton

16

## REQUESTS FOR PRODUCTION

1.     Produce any and all communications between any creditor of Cummings Manookian, or creditor's counsel, and Jeanne Burton or her counsel that in any way relates to this adversary proceeding or the Trustee's alleged right to recover fees in any legal proceeding.

**Response:**

The Trustee objects to this Request on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, the Trustee states that the only communications that she or her counsel have had with creditors that are relevant to this adversary proceeding are communications with creditors Ronette McCarthy and John Konvalinka, which are attached hereto.

2.     Produce any and all communications between Brian Cummings and Jeanne Burton or her counsel.

**Response:**

The Trustee objects to this Request on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, the Trustee attaches hereto all communications between Jeanne Burton or her counsel and Brian Cummings that relate to this adversary proceeding.

3.     Produce any and all communications between Phillip North and Jeanne Burton or her counsel.

**Response:**

The Trustee objects to this Request on the grounds that it seeks information that is irrelevant,

17

immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, the Trustee states that the none of the communications between Jeanne Burton or her counsel and Phillip North have concerned this adversary proceeding.

4.    Produce any and all documents and communications reflecting any work done by Cummings Manookian in the matter of *Fitzgerald v. Osborne*.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee also objects to this Request on the grounds that it seeks documents that are available on public court dockets. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that the only documents and/or communications in her possession, custody or control reflecting any work done by Cummings Manookian in the Fitzgerald matter are (1) documents contained in the public record of that case; (2) emails between defense counsel in that matter and Afsoon Hagh and/or Brian Manookian, which are produced herewith and (3) the attached privilege log received from Ronette McCarthy pursuant to subpoena.

5.    Produce any and all documents and communications reflecting any work done by Cummings Manookian in the matter of *Shoemaker v. Vanderbilt University Medical Center*.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee also objects to this Request on the grounds that it seeks documents that are available on public court dockets. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that the only documents and/or communications

18

in her possession, custody or control reflecting any work done by Cummings Manookian in the Shoemaker matter are contained in the public record of that case.

6. Produce any and all documents and communication reflecting any legal work or legal services provided by Cummings Manookian after December 1, 2018.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee also objects to this Request on the grounds that it seeks documents that are available on public court dockets. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that the only documents and/or communications in her possession, custody or control reflecting any work done by Cummings Manookian after December 1, 2018 are (1) documents contained in the public record of each case; (2) emails between defense counsel in the Fitzgerald matter and Afsoon Hagh and/or Brian Manookian, which are produced herewith; and (3) emails between Ronette McCarthy and Afsoon Hagh and/or Brian Manookian, for which the Trustee has only a privilege log but the Defendants have access to the relevant emails.

7. Produce the employment or personnel file for any person employed by Cummings Manookian at any time.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding these objections, the Trustee states that

19

she currently has possession, custody or control of no such documents.

8.     Produce any records reflecting any payment of any kind, including salary, wages or compensation, by Cummings Manookian to Afsoon Hagh.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she currently has possession, custody or control of no such documents.

9.     Produce all records reflecting any payment of any kind, including salary, wages or compensation, by Cummings Manookian to Hagh Law.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she currently has possession, custody or control of no such documents.

10.     Produce all documents and communications reflecting the nature of the relationship between Cummings Manookian and Afsoon Hagh. Including without limitation any contract or written agreement of any kind between Cummings Manookian and Afsoon Hagh.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the

20

Trustee states that she currently has possession, custody or control of no such documents.

11.     Produce any contract or written agreement of any kind between Cummings Manookian and Hagh Law.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she currently has possession, custody or control of no such documents.

12.     Produce all communications between Cummings Manookian and Marty or Melissa Fitzgerald.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she has subpoenaed certain of these communications but the Trustee received an objection to the subpoena from Afsoon Hagh, purportedly on behalf of Marty Fitzgerald, and that no communications have been produced.

13.     Produce all communications between Cummings Manookian and Bretton Keefer.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery, to the extent they are not subject to

21

attorney-client privilege. Notwithstanding these objections, the Trustee produces herewith all such documents within her possession, custody or control.

14.     Produce any and all contracts with which you allege Afsoon Hagh or Hagh Law interfered.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee alleges that Afsoon Hagh interfered with Cummings Manookian's written engagement agreement with the Fitzgerald and Shoemaker plaintiffs, copies of which are produced herewith.

15.     Produce any engagement agreement entered into by Cummings Manookian after December 1, 2018.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she is aware of no such agreements.

16.     Produce any contract entered into by Cummings Manookian after December 1, 2018.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the

22

Trustee states that she is aware of no such contracts.

17.     Produce any and all records reflecting any expense paid by Cummings Manookian of any kind after December 1, 2018.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she is aware of no such records.

18.     Produce and any all records of any payment made by Cummings Manookian after December 1, 2018.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she is aware of no such records.

23

19.     Produce any all records of any payments received by Cummings Manookian after December 1, 2018.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, all such responsive records in the Trustee's possession, custody or control are attached.

20.     Produce any and all hourly bills or time entries for any work completed by Cummings Manookian in the *Fitzgerald* or *Shoemaker* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she believes no such documents exist since both matters were contingency fee arrangements.

21.     Produce any and all records, including receipts, of Cummings Manookian's ownership of any furniture, equipment, computers, phones, phone numbers, domain names, or email addresses.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she currently has possession, custody or control of no such documents.

24

22.    Produce any lease to which Cummings Manookian was ever a party.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she currently has possession, custody or control of no such documents.

23.    Produce any records reflecting any real property owned by Cummings Manookian.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she is unaware of any real property owned by Cummings Manookian.

24.    Produce records reflecting any payment by Cummings Manookian to any entity for rent or use of any real property.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she currently has possession, custody or control of no such documents.

25

25.    Produce any and all documents and communications, including emails, by any Cummings Manookian partner, member, or employee and any client reflecting the provision of legal services after December 1, 2018.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that emails between Afsoon Hagh, Brian Manookian and defense counsel for the defendant in Fitzgerald v. Osbourn after December 1, 2018 are responsive to this Request, and are produced herewith. The Trustee also states that emails between Afsoon Hagh, Brian Manookian and Ronette McCarthy after December 1, 2018 are responsive to this Request; the Trustee has attached the privilege log received from Ms. McCarthy via subpoena though the Defendants have access to the underlying emails referenced therein.

26.    Produce any and all documents reflecting expenses paid by Cummings Manookian in the *Fitzgerald* or *Shoemaker* matter at any time.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she possesses certain documents produced by Brian Manookian that evidence expenses incurred by Cummings Manookian in the Fitzgerald matter which are produced herewith.

27.    Produce any and all documents and communications reflecting any offer of settlement received by Cummings Manookian in the *Fitzgerald* case.

26

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she is in possession of emails between Afsoon Hagh, Brian Manookian and defense counsel in the Fitzgerald matter which are produced herewith.

28. Produce any and all documents and communications reflecting any offer of settlement received by Cummings Manookian in the *Shoemaker* case.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she currently has possession, custody or control of no such documents.

29. Produce any and all materials, records, or documents reflecting any financial transaction of any kind entered into by Cummings Manookian after December 1, 2018.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee is unaware of the existence of any such documents.

30. Produce any and all documents and communications reflecting Cummings Manookian's withdrawal from any matter, including but not limited to, correspondence and Motions to Withdraw.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. The Trustee also objects to this Request in that it seeks documents available in the public record. Notwithstanding these objections, the Trustee states that she is aware that Brian Manookian filed a motion to withdraw in the Fitzgerald matter, though no order was ever submitted nor was any other notice filed. That motion specifically indicated that Afsoon Hagh would continue representing the Fitzgeralds. The Trustee also states that she received a letter from Brian Manookian to Marty and Melissa Fitzgerald purporting to notify them of Cummings Manookian's withdrawal, though the Trustee has been unable to confirm the authenticity of this document and/or the delivery of this document to the Fitzgeralds. These documents are produced herewith.

31.     Produce any and all engagement agreements between Cummings Manookian and Marty or Melissa Fitzgerald.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that Brian Manookian produced one such engagement agreement, which is attached hereto; Ronette McCarthy produced a different engagement agreement which is also attached hereto.

32.     Produce any and all engagement agreements between Cummings Manookian and Bretton Keefer.

**Response:**

28

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that Brian Manookian produced one such engagement agreement, which is attached hereto.

33.     Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment of any mediation costs conducted in the *Shoemaker* or *Fitzgerald* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she has been provided no such documents.

34.     Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment of any expert witness fees in the *Shoemaker* or *Fitzgerald* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she has been provided no such documents.

35.     Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment for any transcript of any

deposition in the *Shoemaker* or *Fitzgerald* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she possesses certain documents produced by Brian Manookian that evidence deposition transcript expenses paid by Cummings Manookian in the Fitzgerald matter. These documents are attached hereto.

36. Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment for any transcript of any hearing in the *Shoemaker* or *Fitzgerald* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she has been provided no such documents.

37. Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment of any filing fees in the *Shoemaker* or *Fitzgerald* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the

30

Trustee states that she has been provided no such documents.

38.     Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment of any court costs in the *Shoemaker* or *Fitzgerald* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee.  The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she possesses certain documents produced by Brian Manookian that evidence certain costs paid by Cummings Manookian in the Fitzgerald matter.  These documents are attached hereto.

39.     Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment of any travel expenses in the *Shoemaker* or *Fitzgerald* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee.  The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she has been provided no such documents.

40.     Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment of any expense of any kind in the *Shoemaker* or *Fitzgerald* matters.

31

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she possesses certain documents produced by Brian Manookian that evidence expenses paid by Cummings Manookian in the Fitzgerald matter. These documents are attached hereto.

Respectfully submitted,

/s/ Phillip G. Young
Phillip G. Young (TN 021087)
THOMPSON BURTON, PLLC
6100 TOWER CIRCLE, SUITE 200
FRANKLIN, TENNESSEE 37067
(615)-465-6008
phillip@thompsonburton.com

*Special Counsel for Jeanne Ann Burton, Trustee*

33

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via United States Mail, first class, postage prepaid, and by electronic mail to the following persons:

Craig V. Gabbert
Bass, Berry & Sims PLC
150 Third Ave. S, Suite 2800
Nashville, TN 37201
cgabbert@bassberry.com

This 13th day of March, 2022.

*/s/ Phillip G. Young, Jr.*
Phillip G. Young, Jr.

34

# THOMPSON BURTON PLLC

### ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
www.thompsonburton.com

Phillip G. Young
phillip@thompsonburton.com

Direct Dial: 615-465-6008

March 13, 2021

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203
john@spragenslaw.com

      RE:    Burton v. Hagh Law, PLLC et al; Case No. 3:20-ap-90002 (Bankr. M.D. Tenn.)
               Plaintiff's Amended Responses to Manookian PLLC's First Set of Requests for Admission

John:

      Pursuant to the Court's direction at the February 16 hearing, the Trustee has re-examined her prior responses to Manookian PLLC's First Set of Requests for Admission and has made some amendments. Please find enclosed the Trustee's Amended Responses to Manookian PLLC's Requests for Admission. I have also included a redline comparison for your convenience.

                     Sincerely,

                     Phillip G. Young, Jr.

Enclosure

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN RE: )
) Case No. 3:19-bk-07235
CUMMINGS MANOOKIAN, PLLC, ) Chapter 7
) Judge Walker
Debtor. )
)
JEANNE ANN BURTON, TRUSTEE, )
)
Plaintiff, )
)
v. ) Adv. Proc. No. 3:20-ap-90002
)
HAGH LAW, PLLC; AFSOON HAGH; )
MANOOKIAN, PLLC; and FIRST- )
CITIZENS BANK & TRUST COMPANY, )
)
Defendant. )

---

### PLAINTIFF'S AMENDED RESPONSES TO MANOOKIAN PLLC'S FIRST SET OF REQUESTS FOR ADMISSION TO THE PLAINTIFF

Comes Now, Plaintiff, Jeanne Ann Burton, Trustee ("Trustee"), and for her Amended Responses to Manookian PLLC's First Set of Requests for Admission to Plaintiff (the "Discovery"), states as follows:

### GENERAL OBJECTIONS

1.      Trustee's Responses to the Discovery shall not constitute a waiver of her objections as to admissibility.

2.      Trustee objects to the Discovery to the extent it exceeds the scope of permissible discovery.

3.      Trustee objects to the Discovery to the extent that the information sought is protected from discovery by the attorney-client privilege or the attorney work-product doctrine.

1

4.      Trustee objects to the Discovery to the extent that the information and documents sought are not in her possession, custody or control.

5.      Trustee objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Trustee objects to the Discovery to the extent that the information sought is equally available to Defendant as to Trustee.

7.      Trustee objects to the definitions and instructions to the extent Defendant seeks to impose any requirement in excess of those imposed by the Federal Rules of Civil Procedure. Additionally, Trustee is not required by the Federal Rules of Civil Procedure to adopt, follow or utilize Defendant's definitions and instructions, and Trustee's Responses are based upon the governing provisions of the applicable Rules, laws and the ordinary and usual meaning of the words used, except as otherwise noted in the Responses.

8.      Trustee reserves the right to supplement her Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.

## REQUESTS FOR ADMISSION

1.      Admit that Afsoon Hagh was never an employee of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

2.      Admit that Cummings Manookian never identified Afsoon Hagh as an employee to

2

the Internal Revenue Service.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, including their failure to produce federal tax returns of the Debtor. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

3.     Admit that Cummings Manookian never identified Afsoon Hagh as an employee to

the Tennessee Department of Revenue.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

4.     Admit that Cummings Manookian never filed any documents with any state, local,

or federal agency identifying Afsoon Hagh as an employee of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

5.     Admit that Afsoon Hagh was never a member of Cummings Manookian.

**RESPONSE:**

Admitted.

3

6.     Admit that Afsoon Hagh was never a partner in Cummings Manookian.

**RESPONSE:**

Admitted.

7.     Admit that Afsoon Hagh never held an ownership interest in Cummings Manookian.

**RESPONSE:**

Admitted.

8.     Admit that Afsoon Hagh served as co-counsel with certain attorney members of Cummings Manookian in various legal cases.

**RESPONSE:**

Trustee admits that Afsoon Hagh made notices of appearance as counsel in several Cummings Manookian matters and later served as co-counsel with both Brian Manookian and Brian Cummings. Trustee is unable to admit or deny the remainder of this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

9.     Admit that Afsoon Hagh was never paid a salary by Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, including failure to produce any bank account statements. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

10.     Admit that Afsoon Hagh was never paid an hourly wage by Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or

4

Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, including failure to produce any bank account statements. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

11. Admit that Afsoon Hagh was never listed on Cummings Manookian's website.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

12. Admit that Afsoon Hagh was never paid any monies by Cummings Manookian.

**RESPONSE:**

Denied. Afsoon Hagh received funds from the settlement of the *Fitzgerald* matter that were otherwise owed to Cummings Manookian.

13. Admit that Cummings Manookian had two members.

**RESPONSE:**

Admitted that Cummings Manookian had to members from its formation through early September 2018; denied that Cummings Manookian always had two members.

14. Admit that the two members of Cummings Manookian were Brian Manookian and Brian Cummings.

**RESPONSE:**

Admitted that Brian Manookian and Brian Cummings were the two members of Cummings Manookian from its formation until early September 2018; denied that they were both members of Cummings Manookian for the entire duration of Cummings Manookian's existence.

15. Admit that Cummings Manookian was a professional limited liability company.

**RESPONSE:**

5

Admitted.

16.     Admit that Cummings Manookian was created to provide professional services in the form of legal services.

**RESPONSE:**

Admitted.

17.     Admit that Cummings Manookian specialized in representing plaintiffs in medical malpractice cases.

**RESPONSE:**

Admitted.

18.     Admit that Cummings Manookian primarily accepted cases on a contingency fee basis whereby Cummings Manookian was only paid if they recovered monies for their client.

**RESPONSE:**

Admitted.

19.     Admit that Cummings Manookian entered into engagement agreements with their clients.

**RESPONSE:**

Admitted that Cummings Manookian entered into engagement agreements with some clients. However, Trustee is unable to admit or deny whether Cummings Manookian entered into engagement letters with all of their clients because Trustee has not been given copies of all Cummings Manookian engagement agreements.

20.     Admit that Cummings Manookian entered into engagement agreements with their clients that laid out the duties and rights of both parties to the contract.

**RESPONSE:**

Admitted that Cummings Manookian entered into engagement agreements with some clients that laid out the duties and rights of both parties to the contract. Trustee is unable to admit

6

or deny whether Cummings Manookian entered into engagement letters with all of their clients because Trustee has not been given copies of all Cummings Manookian engagement agreements.

21.    Admit that Cummings Manookian utilized a standard form engagement agreement

whose content and terms with respect to the rights and duties of the parties generally did not vary

from case to case ("the Cummings Manookian Engagement Agreement).

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been given copies of all Cummings Manookian engagement agreements. Trustee has only been provided copies of certain engagement agreements, and has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee admits that most of the engagement agreements she has been provided appear to be based upon a standard form.

22.    Admit that the Cummings Manookian Engagement Agreement included terms

regarding the parties' rights in the event that the client terminated Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been given copies of all Cummings Manookian engagement agreements. Trustee has only been provided copies of certain engagement agreements, and has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee admits that the engagement agreements she has been provided include terms regarding the parties' right in the event the client terminated Cummings Manookian.

23.    Admit that the Cummings Manookian Engagement Agreement included terms

regarding the parties' rights in the event that Cummings Manookian withdrew from representing

the client.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been given copies of all Cummings Manookian engagement agreements. Trustee has only been provided copies of certain engagement agreements, and has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee admits that the engagement agreements she has been provided include terms regarding the parties' rights in the event that Cummings Manookian withdrew from representing the client.

7

24. Admit that the Cummings Manookian Engagement Agreement requires the client to pay Cummings Manookian an attorney's fee in the event the client terminates Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been given copies of all Cummings Manookian engagement agreements. Trustee has only been provided copies of certain engagement agreements, and has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.

25. Admit that the Cummings Manookian Engagement Agreement does not require the client to pay Cummings Manookian an attorney's fee in the event Cummings Manookian withdraws from the representation.

**RESPONSE:**

Denied. The Cummings Manookian engagement agreements provided to Trustee specifically requires the payment of advanced costs but is silent on payment of fees. Therefore, Trustee believes that Tennessee common law governs right to payment of attorney fees under this circumstance.

26. Admit that Cummings Manookian has never entered into a contract or written agreement with Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, the Trustee has been provided no contracts or written agreements with Afsoon Hagh.

27. Admit that Cummings Manookian has never entered into a contract or written agreement with Hagh Law PLLC.

**RESPONSE:**

8

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, the Trustee has been provided no contracts or written agreements with Hagh Law PLLC.

28.  Admit that Cummings Manookian has never entered into a contract or written

agreement with Manookian PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookiann PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. However, the Trustee has been provided no contracts or written agreements with Manookian PLLC.

29.  Admit that Cummings Manookian does not own, and has never owned, any real

property.

**RESPONSE:**

Trustee admits that Cummings Manookian does not currently own any real property. Trustee is unable to admit or deny whether Cummings Manookian owned any property prior to its bankruptcy filing.

30.  Admit that Cummings Manookian does not own, and has never owned, 45 Music

Square West, Nashville, Tennessee 37203.

**RESPONSE:**

Trustee admits that Cummings Manookian does not currently own 45 Music Square West, Nashville, Tennessee 37203. Trustee is unable to admit or deny whether Cummings Manookian owned any property prior to its bankruptcy filing.

31.  Admit that Cummings Manookian was a party to a lease for 45 Music Square West,

Nashville, Tennessee, 37203 ("the 45 MSW Lease).

9

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Cummings Manookian has represented, through its principal, that it had a written lease for 45 Music Square West. Trustee has specifically requested a copy of any such lease but none has been provided.

32.    Admit that Cummings Manookian was required to pay rent to 45 MSW Partners

under the terms of the 45 MSW Lease.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee has specifically requested a copy of any such lease but none has been provided.

33.    Admit that Cummings Manookian breached the 45 MSW Lease by failing to pay

rent to 45 MSW Partners beginning in November of 2018.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee has specifically requested a copy of any such lease but none has been provided.

34.    Admit that Cummings Manookian owns no furniture.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no furniture, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there was furniture in the offices where Cummings Manookian operated as of the Petition Date.

10

35.     Admit that Cummings Manookian has never owned any furniture.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian has never owned furniture, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there was furniture in the offices where Cummings Manookian operated as of the Petition Date.

36.     Admit that Cummings Manookian owns no computers.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no computers, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there were computers in the offices where Cummings Manookian operated as of the Petition Date.

37.     Admit that Cummings Manookian has never owned any computers.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian has never owned computers, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there were computers in the offices where Cummings Manookian operated as of the Petition Date..

38.     Admit that Cummings Manookian owns no telephones.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no telephones, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there were telephones in the offices where Cummings Manookian operated as of the Petition Date..

39.     Admit that Cummings Manookian has never owned any telephones.

**RESPONSE:**

11

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian has never owned telephones, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there were telephones in the offices where Cummings Manookian operated as of the Petition Date..

40.     Admit that the web domain cummingsmanookian.com was registered by Brian Cummings.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.

41.     Admit that the web domain cummingsmanookian.com is owned by Brian Cummings.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.

42.     Admit that Cummings Manookian has never owned any website.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. However, Trustee is aware that Cummings Manookian utilized a website at times during its operations.

43.     Admit that the Defendants have never utilized cummingsmanookian.com as a website.

**RESPONSE:**

Admitted.

Case 3:23-cv-00961     Document 6-1     Filed 10/04/23     Page 280 of 678 PageID #: 3196

974

44.     Admit that cummingsmanookian.com has not functioned as a website since at least October of 2018.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.

45.     Admit the telephone number 615-266-3333 was purchased individually by Brian Cummings prior to the formation of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. However, Trustee is aware that Cummings Manookian utilized that telephone number at times during its operations.

46.     Admit that all telephone numbers utilized by Cummings Manookian during its period of operation were privately purchased Brian Cummings prior to the formation of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. However, Trustee is aware that Cummings Manookian utilized certain telephone numbers at times during its operations.

47.     Admit that none of the Defendants have utilized a phone number owned by Cummings Manookian at any time.

13

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Afsoon Hagh listed a Cummings Manookian telephone number and email address in numerous court pleadings.

48.     Admit that none of the Defendants have utilized a phone number owned by

Cummings Manookian at any time after October 2018.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Afsoon Hagh listed a Cummings Manookian telephone number and email address in numerous court pleadings after October 2018.

49.     Admit that, under Tennessee law, a legal client's file is owned by the client.

**RESPONSE:**

Admitted that a client owns the contents of its legal file, but denied that a law firm does not own other valuable intellectual property associated with its clients (such as client lists, contact information, existing contracts, and accounts receivable).

50.     Admit that Cummings Manookian does not now, nor has it ever, owned a client's

case file.

**RESPONSE:**

Admitted that Cummings Manookian does not own the contents of clients' legal file, but denied that it does not own other valuable intellectual property associated with its clients (such as client lists, contact information, existing contracts, and accounts receivable).

51.     Admit that Cummings Manookian is and was required to return, destroy, or transfer

a client's case file upon that client's request.

**RESPONSE:**

14

Admitted.

52.     Admit that Cummings Manookian does not "own" a client's case.

**RESPONSE:**

Admitted that Cummings Manookian does not own the contents of clients' legal file or the right to a client's case, but denied that it does not own other valuable intellectual property associated with its clients (such as client lists, contact information, existing contracts, and accounts receivable).

53.     Admit that Cummings Manookian does not have an ownership interest in any case brought on behalf of a client.

**RESPONSE:**

Denied. Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

54.     Admit that any cause of action or right of recovery pursued by Cummings Manookian on behalf of a client belongs to the client.

**RESPONSE:**

Admitted that the cause of action belongs to the client, but denied that Cummings Manookian has no right to fees from a recovery.

55.     Admit that any cause of action or right of recovery pursued by Cummings Manookian on behalf of a client does not belong to Cummings Manookian.

**RESPONSE:**

Admitted that the cause of action belongs to the client, but denied that Cummings Manookian has no right to fees from a recovery.

56.     Admit that any Cummings Manookian client was empowered to terminate Cummings Manookian at any time and for any reason.

**RESPONSE:**

15

Admitted that any client had the right to terminate Cummings Manookian at any time and for any reason.

57.    Admit that Cummings Manookian provided no services to Manookian PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property.

58.    Admit that Cummings Manookian provided no goods to Manookian PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property.

59.    Admit that Cummings Manookian provided no services to Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property.

60.    Admit that Cummings Manookian provided no goods to Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property.

61.    Admit that Cummings Manookian provided no services to Afsoon Hagh.

16

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property.

62. Admit that Cummings Manookian provided no goods to Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property.

63. Admit that Cummings Manookian provided no services to Manookian PLLC in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

64. Admit that Cummings Manookian provided no goods to Manookian PLLC in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

65. Admit that Cummings Manookian provided no services to Hagh Law in the

17

Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

66.     Admit that Cummings Manookian provided no goods to Hagh Law in the Fitzgerald

case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

67.     Admit that Cummings Manookian provided no services to Afsoon Hagh in the

Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

68.     Admit that Cummings Manookian provided no goods to Afsoon Hagh in the

Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

18

69.     Admit that Cummings Manookian had an existing, enforceable contract with Marty and Melissa Fitzgerald covering the subject matter of Cummings Manookian's representation in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Admitted

70.     Admit that Cummings Manookian withdrew from representing the Fitzgeralds in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.   While Brian Manookian has produced a letter from Cummings Manookian that allegedly terminated the client relationship with the Fitzgeralds, no evidence has been produced that the letter was delivered to the Firtzgeralds, nor was any notice of withdrawal ever filed in that case.

71.     Admit that the Fitzgeralds did not terminate Cummings Manookian from representing them in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Admitted.

72.     Admit that Cummings Manookian never recovered any monies for the Fitzgerald in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.  Cummings Manookian recovered a substantial monetary settlement for the Fitzgeralds in that matter.

73.     Admit that Cummings Manookian never even secured an offer of settlement from the Defendants in the Fitzgerald v. Osborn matter.

**RESPONSE:**

19

Denied.  Cummings Manookian recovered a substantial monetary settlement for the Fitzgeralds in that matter.

74.     Admit that Cummings Manookian did minimal work on the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.  Cummings Manookian filed  a substantial number of pleadings in that case.

75.     Admit that none of the work performed by Cummings Manookian in the Fitzgerald v Osborn matter resulted in any settlement or payment to the Fitzgeralds.

**RESPONSE:**

Denied.  The work performed by Cummings Manookian in the matter directly caused the settlement payment.

76.     Admit that Manookian PLLC has never received a transfer of funds from Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.  However, according to its discovery responses, Manookian PLLC claims some unidentified interest in certain funds which Trustee believes to be property of this estate.

77.     Admit that Manookian PLLC has never received any funds from Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.  However, according to its discovery responses, Manookian PLLC claims some unidentified interest in certain funds which Trustee believes to be property of this estate.

78.     Admit that Manookian PLLC has never received any funds belonging to Cummings

20

Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, according to its discovery responses, Manookian PLLC claims some unidentified interest in certain funds which Trustee believes to be property of this estate.

79. Admit that Manookian PLLC has never received any monies from Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic.

80. Admit that Manookian PLLC has never received any monies from Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic.

81. Admit that Manookian PLLC has never received any monies from any person or any entity.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.

82. Admit that Manookian PLLC does not now, nor has it ever, held a bank account.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.

83. Admit that Hagh Law PLLC has never received any monies from Cummings Manookian.

**RESPONSE:**

Denied. Hagh Law PLLC received a distribution of a substantial sum of money from the

21

Fitzgerald settlement that was property of Cummings Manookian.

84.    Admit that Hagh Law has never received any monies from any person intended for Cummings Manookian.

**RESPONSE:**

Denied.  Hagh Law PLLC received a distribution of a substantial sum of money from the Fitzgerald settlement that was property of Cummings Manookian.

85.    Admit that no person or entity has ever provided Afsoon Hagh, Hagh Law, or Manookian PLLC with monies that such person or entity instructed to be delivered to Cummings Manookian.

**RESPONSE:**

Denied.  Afsoon Hagh and Hagh Law received a transfer of funds that the Chancery Court of Williamson County directed to be held in trust.  However, the money was unilaterally transferred into an account in the name of Hagh Law and Afsoon Hagh.

Respectfully submitted,

/s/ Phillip G. Young
Phillip G. Young (TN 021087)
THOMPSON BURTON, PLLC
6100 TOWER CIRCLE, SUITE 200
FRANKLIN, TENNESSEE 37067
(615)-465-6008
phillip@thompsonburton.com

*Attorneys for Jeanne Ann Burton, Trustee*

22

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via United States Mail, first class, postage prepaid, and by electronic mail to the following persons:

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203
john@spragenslaw.com

This 13th day of March, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

23

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 3:19-bk-07235 |
| CUMMINGS MANOOKIAN, PLLC, | ) | Chapter 7 |
| | ) | Judge Walker |
| Debtor. | ) | |
| | ) | |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:20-ap-90002 |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFF'S AMENDED RESPONSES TO MANOOKIAN PLLC'S FIRST SET OF
REQUESTS FOR ADMISSION TO THE PLAINTIFF**

---

Comes Now, Plaintiff, Jeanne Ann Burton, Trustee ("Trustee"), and for her Amended Responses to Manookian PLLC's First Set of Requests for Admission to Plaintiff (the "Discovery"), states as follows:

**GENERAL OBJECTIONS**

1.      Trustee's Responses to the Discovery shall not constitute a waiver of her objections as to admissibility.

2.      Trustee objects to the Discovery to the extent it exceeds the scope of permissible discovery.

3.      Trustee objects to the Discovery to the extent that the information sought is protected from discovery by the attorney-client privilege or the attorney work-product doctrine.

1

4.     Trustee objects to the Discovery to the extent that the information and documents sought are not in her possession, custody or control.

5.     Trustee objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6.     Trustee objects to the Discovery to the extent that the information sought is equally available to Defendant as to Trustee.

7.     Trustee objects to the definitions and instructions to the extent Defendant seeks to impose any requirement in excess of those imposed by the Federal Rules of Civil Procedure. Additionally, Trustee is not required by the Federal Rules of Civil Procedure to adopt, follow or utilize Defendant's definitions and instructions, and Trustee's Responses are based upon the governing provisions of the applicable Rules, laws and the ordinary and usual meaning of the words used, except as otherwise noted in the Responses.

8.     Trustee reserves the right to supplement her Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.

## REQUESTS FOR ADMISSION

1.     Admit that Afsoon Hagh was never an employee of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

2.     Admit that Cummings Manookian never identified Afsoon Hagh as an employee to

2

the Internal Revenue Service.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, including their failure to produce federal tax returns of the Debtor. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.



Deleted: .

3. Admit that Cummings Manookian never identified Afsoon Hagh as an employee to the Tennessee Department of Revenue.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

4. Admit that Cummings Manookian never filed any documents with any state, local, or federal agency identifying Afsoon Hagh as an employee of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

5. Admit that Afsoon Hagh was never a member of Cummings Manookian.

**RESPONSE:**

Admitted.



Deleted: Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.¶

3

6.  Admit that Afsoon Hagh was never a partner in Cummings Manookian.

**RESPONSE:**

Admitted.

7.  Admit that Afsoon Hagh never held an ownership interest in Cummings Manookian.

**RESPONSE:**

Admitted.

8.  Admit that Afsoon Hagh served as co-counsel with certain attorney members of Cummings Manookian in various legal cases.

**RESPONSE:**

Trustee admits that Afsoon Hagh made notices of appearance as counsel in several Cummings Manookian matters and later served as co-counsel with both Brian Manookian and Brian Cummings. Trustee is unable to admit or deny the remainder of this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

9.  Admit that Afsoon Hagh was never paid a salary by Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, including failure to produce any bank account statements. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

10.  Admit that Afsoon Hagh was never paid an hourly wage by Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or

4

**Deleted:** Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.¶

**Deleted:** Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.¶

**Deleted:** .

**Deleted:**

Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, including failure to produce any bank account statements. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

Deleted:

    11.    Admit that Afsoon Hagh was never listed on Cummings Manookian's website.

**RESPONSE:**

    Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

    12.    Admit that Afsoon Hagh was never paid any monies by Cummings Manookian.

**RESPONSE:**

    Denied. Afsoon Hagh received funds from the settlement of the *Fitzgerald* matter that were otherwise owed to Cummings Manookian.

    13.    Admit that Cummings Manookian had two members.

**RESPONSE:**

    Admitted that Cummings Manookian had to members from its formation through early September 2018; denied that Cummings Manookian always had two members.

Deleted: at least two members. Trustee is unable
Deleted: admit or deny any remaining elements of this request because
Deleted: , PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

    14.    Admit that the two members of Cummings Manookian were Brian Manookian and Brian Cummings.

**RESPONSE:**

    Admitted that Brian Manookian and Brian Cummings were the two members of Cummings Manookian from its formation until early September 2018; denied that they were both members of Cummings Manookian for the entire duration of Cummings Manookian's existence.

Deleted: Trustee is unable to admit or deny whether Mr.
Deleted: and Mr.
Deleted: were
Deleted: only members because Cummings Manookian, PLC and/or Afsoon Hagh have failed to appropriately or adequately respond to Trustee's outstanding discovery requests on this issue

    15.    Admit that Cummings Manookian was a professional limited liability company.

**RESPONSE:**

Admitted.

16.     Admit that Cummings Manookian was created to provide professional services in the form of legal services.

**RESPONSE:**

Admitted.

17.     Admit that Cummings Manookian specialized in representing plaintiffs in medical malpractice cases.

**RESPONSE:**

Admitted.

18.     Admit that Cummings Manookian primarily accepted cases on a contingency fee basis whereby Cummings Manookian was only paid if they recovered monies for their client.

**RESPONSE:**

Admitted.

19.     Admit that Cummings Manookian entered into engagement agreements with their clients.

**RESPONSE:**

Admitted that Cummings Manookian entered into engagement agreements with some clients.  However, Trustee is unable to admit or deny whether Cummings Manookian entered into engagement letters with all of their clients because Trustee has not been given copies of all Cummings Manookian engagement agreements.

20.     Admit that Cummings Manookian entered into engagement agreements with their clients that laid out the duties and rights of both parties to the contract.

**RESPONSE:**

Admitted that Cummings Manookian entered into engagement agreements with some clients that laid out the duties and rights of both parties to the contract.  Trustee is unable to admit

6

or deny whether Cummings Manookian entered into engagement letters with all of their clients because Trustee has not been given copies of all Cummings Manookian engagement agreements.

21.    Admit that Cummings Manookian utilized a standard form engagement agreement whose content and terms with respect to the rights and duties of the parties generally did not vary from case to case ("the Cummings Manookian Engagement Agreement).

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been given copies of all Cummings Manookian engagement agreements.  Trustee has only been provided copies of certain engagement agreements, and has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.  Trustee admits that most of the engagement agreements she has been provided appear to be based upon a standard form.

**Deleted:** , PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue.

22.    Admit that the Cummings Manookian Engagement Agreement included terms regarding the parties' rights in the event that the client terminated Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been given copies of all Cummings Manookian engagement agreements.  Trustee has only been provided copies of certain engagement agreements, and has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.  Trustee admits that the engagement agreements she has been provided include terms regarding the parties' right in the event the client terminated Cummings Manookian.

**Deleted:** , PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue.

**Deleted:** not

**Deleted:** all

23.    Admit that the Cummings Manookian Engagement Agreement included terms regarding the parties' rights in the event that Cummings Manookian withdrew from representing the client.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been given copies of all Cummings Manookian engagement agreements.  Trustee has only been provided copies of certain engagement agreements, and has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.  Trustee admits that the engagement agreements she has been provided include terms regarding the parties' rights in the event that Cummings Manookian withdrew from representing the client.

**Deleted:** , PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue.

**Deleted:** not

**Deleted:** all

7

24.   Admit that the Cummings Manookian Engagement Agreement requires the client to pay Cummings Manookian an attorney's fee in the event the client terminates Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been given copies of all Cummings Manookian engagement agreements.  Trustee has only been provided copies of certain engagement agreements, and has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.

25.   Admit that the Cummings Manookian Engagement Agreement does not require the client to pay Cummings Manookian an attorney's fee in the event Cummings Manookian withdraws from the representation.

**RESPONSE:**

Denied.  The Cummings Manookian engagement agreements provided to Trustee specifically requires the payment of advanced costs but is silent on payment of fees.  Therefore, Trustee believes that Tennessee common law governs right to payment of attorney fees under this circumstance.

26.   Admit that Cummings Manookian has never entered into a contract or written agreement with Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue.  Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.  However, the Trustee has been provided no contracts or written agreements with Afsoon Hagh.

27.   Admit that Cummings Manookian has never entered into a contract or written agreement with Hagh Law PLLC.

**RESPONSE:**

8

**Deleted:** , PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue.

**Deleted:** not

**Deleted:** all

**Deleted:** Trustee also objects to this request to the extent it calls for a legal conclusion.

**Deleted:** Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue.  Trustee has not been provided copies of all engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject.  Trustee also objects to this request to the extent it calls for a legal conclusion.

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, the Trustee has been provided no contracts or written agreements with Hagh Law PLLC.

28.     Admit that Cummings Manookian has never entered into a contract or written

agreement with Manookian PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookiann PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. However, the Trustee has been provided no contracts or written agreements with Manookian PLLC.

29.     Admit that Cummings Manookian does not own, and has never owned, any real

property.

**RESPONSE:**

Trustee admits that Cummings Manookian does not currently own any real property. Trustee is unable to admit or deny whether Cummings Manookian owned any property prior to its bankruptcy filing.

| Deleted: the remaining elements of this request because the Trustee has not been afforded an opportunity to depose Brian |
| Deleted: on this subject |

30.     Admit that Cummings Manookian does not own, and has never owned, 45 Music

Square West, Nashville, Tennessee 37203.

**RESPONSE:**

Trustee admits that Cummings Manookian does not currently own 45 Music Square West, Nashville, Tennessee 37203. Trustee is unable to admit or deny whether Cummings Manookian owned any property prior to its bankruptcy filing.

| Deleted: the remaining elements of this request because the Trustee has not been afforded an opportunity to depose Brian |
| Deleted: on this subject |

31.     Admit that Cummings Manookian was a party to a lease for 45 Music Square West,

Nashville, Tennessee, 37203 ("the 45 MSW Lease).

9

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Cummings Manookian has represented, through its principal, that it had a written lease for 45 Music Square West. Trustee has specifically requested a copy of any such lease but none has been provided.

**Deleted:** on this subject.

32.     Admit that Cummings Manookian was required to pay rent to 45 MSW Partners under the terms of the 45 MSW Lease.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee has specifically requested a copy of any such lease but none has been provided.

33.     Admit that Cummings Manookian breached the 45 MSW Lease by failing to pay rent to 45 MSW Partners beginning in November of 2018.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee has specifically requested a copy of any such lease but none has been provided.

34.     Admit that Cummings Manookian owns no furniture.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no furniture, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there was furniture in the offices where Cummings Manookian operated as of the Petition Date.

**Deleted:** is

10

35.     Admit that Cummings Manookian has never owned any furniture.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.  Trustee admits that Brian Manookian has alleged that Cummings Manookian has never owned furniture, but this allegation has not been tested.   However, upon information and belief, the Trustee believes that there was furniture in the offices where Cummings Manookian operated as of the Petition Date.

| Deleted: is |
| --- |

36.     Admit that Cummings Manookian owns no computers.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.  Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no computers, but this allegation has not been tested.  However, upon information and belief, the Trustee believes that there were computers in the offices where Cummings Manookian operated as of the Petition Date.

| Deleted: are |
| --- |

37.     Admit that Cummings Manookian has never owned any computers.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.  Trustee admits that Brian Manookian has alleged that Cummings Manookian has never owned computers, but this allegation has not been tested.   However, upon information and belief, the Trustee believes that there were computers in the offices where Cummings Manookian operated as of the Petition Date.

| Deleted: are |
| --- |
| Deleted: |

38.     Admit that Cummings Manookian owns no telephones.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.  Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no telephones, but this allegation has not been tested.  However, upon information and belief, the Trustee believes that there were telephones in the offices where Cummings Manookian operated as of the Petition Date..

| Deleted: are |
| --- |
| Deleted: |

39.     Admit that Cummings Manookian has never owned any telephones.

**RESPONSE:**

11

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian has never owned telephones, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there were telephones in the offices where Cummings Manookian operated as of the Petition Date.

Deleted: are

Deleted:

40. Admit that the web domain cummingsmanookian.com was registered by Brian Cummings.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.

41. Admit that the web domain cummingsmanookian.com is owned by Brian Cummings.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.

42. Admit that Cummings Manookian has never owned any website.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. However, Trustee is aware that Cummings Manookian utilized a website at times during its operations.

43. Admit that the Defendants have never utilized cummingsmanookian.com as a website.

**RESPONSE:**

Admitted.

Deleted: Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

12

44. Admit that cummingsmanookian.com has not functioned as a website since at least October of 2018.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject.

45. Admit the telephone number 615-266-3333 was purchased individually by Brian Cummings prior to the formation of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. However, Trustee is aware that Cummings Manookian utilized that telephone number at times during its operations.

46. Admit that all telephone numbers utilized by Cummings Manookian during its period of operation were privately purchased Brian Cummings prior to the formation of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Brian Cummings on this subject. However, Trustee is aware that Cummings Manookian utilized certain telephone numbers at times during its operations.

47. Admit that none of the Defendants have utilized a phone number owned by Cummings Manookian at any time.

13

**RESPONSE:**

      Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.   However, Afsoon Hagh listed a Cummings Manookian telephone number and email address in numerous court pleadings.

      48.    Admit that none of the Defendants have utilized a phone number owned by Cummings Manookian at any time after October 2018.

**RESPONSE:**

      Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.   However, Afsoon Hagh listed a Cummings Manookian telephone number and email address in numerous court pleadings after October 2018.

      49.    Admit that, under Tennessee law, a legal client's file is owned by the client.

**RESPONSE:**

      Admitted that a client owns the contents of its legal file, but denied that a law firm does not own other valuable intellectual property associated with its clients (such as client lists, contact information, existing contracts, and accounts receivable).

      50.    Admit that Cummings Manookian does not now, nor has it ever, owned a client's case file.

**RESPONSE:**

      Admitted that **Cummings** Manookian does not own the contents of clients' legal file, but denied that it does not own other valuable intellectual property associated with its clients (such as client lists, contact information, existing contracts, and accounts receivable).

      51.    Admit that Cummings Manookian is and was required to return, destroy, or transfer a client's case file upon that client's request.

**RESPONSE:**

14

| Deleted: Trustee objects to this request on the grounds |
| Deleted: it calls for a |
| Deleted: conclusion. However, Trustee affirmatively alleges |
| Deleted: may |
| Deleted: client |
| Deleted: associated with clients. |

| Deleted: Trustee is unable to admit or deny this request because |
| Deleted: , PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue.  Trustee also objects to this request to |
| Deleted: extent |
| Deleted: calls for a legal conclusion.  However, Trustee affirmatively alleges that Cummings Manookian did own |
| Deleted: client |
| Deleted: associated with clients. |

Admitted.

52.     Admit that Cummings Manookian does not "own" a client's case.

**RESPONSE:**

Admitted that Cummings Manookian does not own the contents of clients' legal file or the right to a client's case, but denied that it does not own other valuable intellectual property associated with its clients (such as client lists, contact information, existing contracts, and accounts receivable).

53.     Admit that Cummings Manookian does not have an ownership interest in any case brought on behalf of a client.

**RESPONSE:**

Denied. Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

54.     Admit that any cause of action or right of recovery pursued by Cummings Manookian on behalf of a client belongs to the client.

**RESPONSE:**

Admitted that the cause of action belongs to the client, but denied that Cummings Manookian has no right to fees from a recovery.

55.     Admit that any cause of action or right of recovery pursued by Cummings Manookian on behalf of a client does not belong to Cummings Manookian.

**RESPONSE:**

Admitted that the cause of action belongs to the client, but denied that Cummings Manookian has no right to fees from a recovery.

56.     Admit that any Cummings Manookian client was empowered to terminate Cummings Manookian at any time and for any reason.

**RESPONSE:**

15

**Deleted:** Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. Trustee further states that she has not been provided copies of certain disengagement letters that might govern Cummings Manookian's responsibilities to its clients. ¶

**Deleted:** Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

**Deleted:** Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. However,

**Deleted:** Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

**Deleted:** Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases. ¶

Admitted that any client had the right to terminate Cummings Manookian at any time and for any reason.

57. Admit that Cummings Manookian provided no services to Manookian PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property.

58. Admit that Cummings Manookian provided no goods to Manookian PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property.

59. Admit that Cummings Manookian provided no services to Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property.

60. Admit that Cummings Manookian provided no goods to Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property.

61. Admit that Cummings Manookian provided no services to Afsoon Hagh.

16

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property.

62.    Admit that Cummings Manookian provided no goods to Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property.

63.    Admit that Cummings Manookian provided no services to Manookian PLLC in the

Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

64.    Admit that Cummings Manookian provided no goods to Manookian PLLC in the

Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

65.    Admit that Cummings Manookian provided no services to Hagh Law in the

17

Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

66.     Admit that Cummings Manookian provided no goods to Hagh Law in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

67.     Admit that Cummings Manookian provided no services to Afsoon Hagh in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

68.     Admit that Cummings Manookian provided no goods to Afsoon Hagh in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

18

69. Admit that Cummings Manookian had an existing, enforceable contract with Marty and Melissa Fitzgerald covering the subject matter of Cummings Manookian's representation in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Admitted

70. Admit that Cummings Manookian withdrew from representing the Fitzgeralds in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied. While Brian Manookian has produced a letter from Cummings Manookian that allegedly terminated the client relationship with the Fitzgeralds, no evidence has been produced that the letter was delivered to the Firtzgeralds, nor was any notice of withdrawal ever filed in that case.

71. Admit that the Fitzgeralds did not terminate Cummings Manookian from representing them in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Admitted.

**Deleted:** Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue.

72. Admit that Cummings Manookian never recovered any monies for the Fitzgerald in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied. Cummings Manookian recovered a substantial monetary settlement for the Fitzgeralds in that matter.

73. Admit that Cummings Manookian never even secured an offer of settlement from the Defendants in the Fitzgerald v. Osborn matter.

**RESPONSE:**

19

Denied.  Cummings Manookian recovered a substantial monetary settlement for the Fitzgeralds in that matter.

74.     Admit that Cummings Manookian did minimal work on the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.  Cummings Manookian filed  a substantial number of pleadings in that case.

75.     Admit that none of the work performed by Cummings Manookian in the Fitzgerald v Osborn matter resulted in any settlement or payment to the Fitzgeralds.

**RESPONSE:**

Denied.  The work performed by Cummings Manookian in the matter directly caused the settlement payment.

76.     Admit that Manookian PLLC has never received a transfer of funds from Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.  However, according to its discovery responses, Manookian PLLC claims some unidentified interest in certain funds which Trustee believes to be property of this estate.

Deleted: an

77.     Admit that Manookian PLLC has never received any funds from Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.  However, according to its discovery responses, Manookian PLLC claims some unidentified interest in certain funds which Trustee believes to be property of this estate.

Deleted: an

78.     Admit that Manookian PLLC has never received any funds belonging to Cummings

20

Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, according to its discovery responses, Manookian PLLC claims some unidentified interest in certain funds which Trustee believes to be property of this estate.

| | |
|---|---|
| Deleted: an | |

79. Admit that Manookian PLLC has never received any monies from Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic.

80. Admit that Manookian PLLC has never received any monies from Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic.

81. Admit that Manookian PLLC has never received any monies from any person or

any entity.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.

82. Admit that Manookian PLLC does not now, nor has it ever, held a bank account.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.

83. Admit that Hagh Law PLLC has never received any monies from Cummings

Manookian.

**RESPONSE:**

Denied. Hagh Law PLLC received a distribution of a substantial sum of money from the

21

Fitzgerald settlement that was property of Cummings Manookian.

84. Admit that Hagh Law has never received any monies from any person intended for Cummings Manookian.

**RESPONSE:**

Denied. Hagh Law PLLC received a distribution of a substantial sum of money from the Fitzgerald settlement that was property of Cummings Manookian.

85. Admit that no person or entity has ever provided Afsoon Hagh, Hagh Law, or Manookian PLLC with monies that such person or entity instructed to be delivered to Cummings Manookian.

**RESPONSE:**

Denied. Afsoon Hagh and Hagh Law received a transfer of funds that the Chancery Court of Williamson County directed to be held in trust. However, the money was unilaterally transferred into an account in the name of Hagh Law and Afsoon Hagh.

Respectfully submitted,

/s/ Phillip G. Young
Phillip G. Young (TN 021087)
THOMPSON BURTON, PLLC
6100 TOWER CIRCLE, SUITE 200
FRANKLIN, TENNESSEE 37067
(615)-465-6008
phillip@thompsonburton.com

*Attorneys for Jeanne Ann Burton, Trustee*

22

**Certificate of Service**

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via United States Mail, first class, postage prepaid, and by electronic mail to the following persons:

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203
john@spragenslaw.com

Craig V. Gabbert
Bass, Berry & Sims PLC
150 Third Ave. S, Suite 2800
Nashville, TN 37201
cgabbert@bassberry.com

This 25th day of February, 2021.

*/s/ Phillip G. Young, Jr.*
Phillip G. Young, Jr.

23

# THOMPSON BURTON PLLC

**A T T O R N E Y S   A T   L A W**
A PROFESSIONAL LIMITED LIABILITY COMPANY

One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
www.thompsonburton.com

Phillip G. Young
phillip@thompsonburton.com

Direct Dial: 615-465-6008

March 13, 2022

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203
john@spragenslaw.com

> RE: Burton v. Hagh Law, PLLC et al; Case No. 3:20-ap-90002 (Bankr. M.D. Tenn.)
> Plaintiff's Amended Responses to Manookian PLLC's First Set of Written Discovery

John:

Pursuant to the Court's direction at the February 16 hearing, the Trustee has re-examined her prior responses to Manookian PLLC's First Set of Written Discovery and has made some amendments. Please find enclosed the Trustee's Amended Responses to Manookian PLLC's First Set of Written Discovery. I have also included a redline comparison for your convenience. Contemporaneous to this letter, I am also sending you a link to a file that contains some additional documents that might be responsive to these requests. As I indicated in my prior emails, we have some other documents to which we will grant you access once you and Craig agree in writing that it is acceptable to share documents produced by Brian Manookian/Cummings Manookian/Manookian PLLC with Afsoon Hagh/Hagh Law, and vice versa.

On a related note, the Trustee also reviewed Plaintiff's Responses to Manookian PLLC's Second Set of Written Discovery and found that no changes were needed to that document.

Sincerely,

Phillip G. Young, Jr.

Enclosure

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

IN RE:                                      )
                                            )   **Case No. 3:19-bk-07235**
**CUMMINGS MANOOKIAN, PLLC,**               )   **Chapter 7**
                                            )   **Judge Walker**
    Debtor.              )
                                            )
**JEANNE ANN BURTON, TRUSTEE,**             )
                                            )
    Plaintiff,           )
                                            )
v.                                          )   **Adv. Proc. No. 3:20-ap-90002**
                                            )
**HAGH LAW, PLLC; AFSOON HAGH;**            )
**MANOOKIAN, PLLC; and FIRST-**             )
**CITIZENS BANK & TRUST COMPANY,**          )
                                            )
    Defendant.           )

---

## PLAINTIFF'S AMENDED RESPONSES TO MANOOKIAN PLLC'S FIRST SET OF WRITTEN DISCOVERY TO THE PLAINTIFF

Comes Now, Plaintiff, Jeanne Ann Burton, Trustee ("Trustee"), and for her Amended Responses to Manookian PLLC's First Set of Written Discovery to the Plaintiff (the "Discovery"), states as follows:

## **GENERAL OBJECTIONS**

1.    Trustee's Responses to the Discovery shall not constitute a waiver of her objections as to admissibility.

2.    Trustee objects to the Discovery to the extent it exceeds the scope of permissible discovery.

3.    Trustee objects to the Discovery to the extent that the information sought is protected from discovery by the attorney-client privilege or the attorney work-product doctrine.

1

4.      Trustee objects to the Discovery to the extent that the information and documents sought are not in her possession, custody or control.

5.      Trustee objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Trustee objects to the Discovery to the extent that the information sought is equally available to Defendant as to Trustee.

7.      Trustee objects to the definitions and instructions to the extent Defendant seeks to impose any requirement in excess of those imposed by the Federal Rules of Civil Procedure. Additionally, Trustee is not required by the Federal Rules of Civil Procedure to adopt, follow or utilize Defendant's definitions and instructions, and Trustee's Responses are based upon the governing provisions of the applicable Rules, laws and the ordinary and usual meaning of the words used, except as otherwise noted in the Responses.

8.      Trustee reserves the right to supplement her Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.

## **INTERROGATORIES**

1.      Identify by case name every previously pending legal action in which Cummings Manookian withdrew, terminated their representation, or stopped providing legal services to any client from January 1, 2018 to the present. For each case, state the date on which Cummings Manookian withdrew, terminated their representation, or stopped providing legal services in a pending case from, January 1, 2018 to the present.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this

2

Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she is unaware of any case in which Cummings Manookian terminated its representation or stopped providing legal services from January 1, 2018 to the Petition Date. However, the Trustee has been provided a letter from Cummings Manookian to the Fitzgerald plaintiffs that allegedly served as a notice of withdrawal, though it remains unclear whether that letter was delivered or whether Cummings Manookian actually withdrew.

2. For every matter you listed in response to Interrogatory No. 1, identify by case, date, description, and attorney the last or most recent legal task or service completed by Cummings Manookian in the case (for example: Jones v. Johnson, take deposition of Dr. Johnson, 2/1/19, 3.5 hours, Brian Manookian)

**RESPONSE**:

No matter was listed in response to Interrogatory No. 1.

3. For any matter in which you allege Cummings Manookian is entitled to an attorney's fee, reimbursement of costs, or monies of any kind from Afsoon Hagh, Hagh Law PLLC, or Manookian PLLC:

    a. identify the case by style and docket number;

    b. state the date Cummings Manookian began representing the client and the date Cummings Manookian stopped providing legal services in the matter;

    c. identify and describe in detail all legal work performed by Cummings Manookian in the case (i.e., research, drafting motions, arguing motions, responding to discovery, taking depositions, etc.), including a description of the number of hours spent performing each task, the date the task was performed, and which attorney or attorneys performed the work;

    d. identify any and all offers of settlement obtained by Cummings Manookian during its period of representation in the case;

    e. identify any actual recovery of monies obtained by Cummings Manookian

3

in the matter, and;

    f.   identify and itemize any costs for which you allege Cummings Manookian

is due reimbursement.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she alleges that Cummings Manookian is entitled to fees and/or expenses in the following matters:

| Case Name | Docket No. | Court | Start Date | Stop Date |
|-----------|-----------|-------|-----------|-----------|
| Fitzgerald v. Osborne | 2018-cv-311 | Williamson Circuit | May 23, 2018 | Approx. September 2, 2019 |
| Shoemaker v. Vanderbilt University Medical Center | 19C358 | Davidson Circuit | April 19, 2017 | November 6, 2019 |

    4.    For any matter in which you allege Cummings Manookian is entitled to an attorney's fee, reimbursement of costs, or monies of any kind from Afsoon Hagh, Hagh Law PLLC, or Manookian PLLC provide the total number of hours Cummings Manookian spent working on the case, even if such number is an estimate (if the number is an estimate please so state).

    **RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery.

    5.    For every instance in which you allege a Defendant in this case committed "fraud," identify with specificity:

    a.   the precise content of purportedly false representation or the material

omission made by the Defendant;

    b.   the date of the purportedly false representation or material omission;

4

c. the identify of any individual or entity who relied upon the purportedly false representation or material omission; and

d. a detailed description of the damages suffered by the individual or entity as a result of their reliance on the purportedly false representation or material omission.

**RESPONSE**:

The Trustee alleges in her Complaint that all three defendants received *fraudulent transfers* under 11 U.S.C. §548 and/or T.C.A. § 66-3-301. Therefore, there are no "fraudulent representations" or "material omissions" alleged.

6. Identify with specificity the date upon which Cummings Manookian completely ceased, as an entity, providing legal services.

**RESPONSE**:

The Trustee states that Cummings Manookian ceased providing legal services on the Petition Date, November 6, 2019.

7. Identify each and every day since July 3, 2018 that Afsoon Hagh or any employee of Hagh Haw, PLLC was present at 45 Music Square West, Nashville, Tennessee.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The Trustee finally objects to this Interrogatory because it is irrelevant to the cause of action against Manookian PLLC.

8. Identify with specificity the "furnishings and equipment" you allege Afsoon Hagh or Hagh Law PLLC utilized in Paragraph 17 of your Complaint.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The

5

Trustee finally objects to this Interrogatory because it is irrelevant to the cause of action against Manookian PLLC.

9. Identify the "office space" and the specific "furnishings and equipment" you allege Brian Manookian or Manookian PLLC utilized in Paragraph 20 of your Complaint.

**RESPONSE**:

Premises located at 45 Music Square West, Nashville, Tennessee and all furnishings, equipment, and personal property located therein.

10. Identify any and all office space, real property, furnishings, equipment, telephone numbers, and email addresses that you allege were owned by Cummings Manookian PLLC in your Complaint.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states, upon information and belief, that Cummings Manookian PLLC had a leasehold interest in 45 Music Square West, Nashville, Tennessee, and had an interest in all furnishings and equipment located therein. The Trustee further states that Cummings Manookian PLLC had an interest in all telephone numbers and email addresses that appeared in any signature block listing the law firm of Cummings Manookian, PLLC, including those utilized by Afsoon Hagh and Brian Manookian.

11. Specifically identify the "property" and "client files" you allege were owned by Cummings Manookian and "use[d]" by Brian Manookian or Manookian PLLC as alleged in Paragraph 20 of your Complaint.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Manookian PLLC utilized office space located at 45 Music Square West, Nashville, Tennessee, all furnishings and equipment located therein, and utilized Cummings Manookian PLLC's client list and contact information to continue working on cases for which Cummings Manookian had an engagement agreement with the clients.

6

12.     Identify with specificity all work done by Cummings Manookian in the Fitzgerald Case, including, but not limited to, all pleadings drafted, all motions attended, all depositions attended, and specify the number of hours spent on each task, individually, including which attorney performed the work.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that all work done in the Fitzgerald Case was performed by Cummings Manookian, PLLC and its attorneys, and further states that pleadings of public record in that matter indicate on their face that substantial work was performed by Cummings Manookian, PLLC. The Trustee further states that the number of hours spent by Cummings Manookian, PLLC is irrelevant because it had a binding contingency agreement in that matter.

13.     Identify any and all offers of settlement obtained by Cummings Manookian for resolution of the Fitzgerald Case during any time you allege Cummings Manookian was involved in the Fitzgerald Case.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that any and all settlement offers in the Fitzgerald Case were obtained by Cummings Manookian.

14.     Identify the date on which Cummings Manookian stopped providing legal services in the Fitzgerald Case.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory to the extent it calls for a legal conclusion. Notwithstanding these objections, the Trustee states that Cummings Manookian, PLLC continued providing legal services in the Fitzgerald case through the conclusion of that matter.

7

15. Identify and itemize with specificity the "leased premises, furniture, equipment, intellectual property, attorneys' fees, and reimbursement of costs" you allege Afsoon Hagh, Hagh Law, or Manookian PLLC have taken from Cummings Manookian or exercised control over to the exclusion of Cummings Manookian as alleged in Paragraph 44 of your Complaint.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The Trustee finally objects to this Interrogatory because questions involving transfers to Afsoon Hagh and Hagh Law are irrelevant to the cause of action against Manookian PLLC. Notwithstanding these objections, the Trustee states that the Defendants used space located 45 Music Square West, Nashville, Tennessee, they used all furnishings and equipment therein, they utilized telephone numbers and email addresses that had been associated with Cummings Manookian, PLLC and listed on numerous court pleadings as the contact information for Cummings Manookian, PLLC, and have taken, have attempted to take, or have improperly asserted an interest in fees and expenses owing to Cummings Manookian, PLLC in the cases identified in the response to Interrogatory No. 3 above.

16. Do you contend that Cummings Manookian ever employed Afsoon Hagh? If so, please identify the start and end dates of her employment as well as the terms of her employment, including her duties, salary, hours, etc.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The Trustee finally objects to this Interrogatory because it is irrelevant to the cause of action against Manookian PLLC. Notwithstanding these objections, the Trustee states that she does not know whether Afsoon Hagh was ever a paid employee of Cummings Manookian, PLLC, but she was certainly its agent.

17. Do you contend that Cummings Manookian has ever entered into a contract or written agreement of any kind with Manookian PLC, Hagh Law, or Afsoon Hagh? If so, please provide the date of the contract and a detailed description of its content.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is

8

more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The Trustee finally objects to this Interrogatory because any question concerning agreement with Afsoon Hagh or Hagh Law is irrelevant to the cause of action against Manookian PLLC. Notwithstanding these objections, the Trustee states that she is not currently aware of any such contract or written agreement.

18.     Identify and itemize with specificity all economic damages Cummings Manookian claims to have suffered and is seeking from any Defendant in this action (for example: reimbursement of deposition transcript in Johnson case, reimbursement of expert witness fee in Johnson case, payment of attorney's fee in Johnson case).

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that this estate is entitled to some or all fees and expenses collected related to the cases listed in the response to Interrogatory No. 3 above.

9

VERIFICATION

    I, **Jeanne Ann Burton,** swear or affirm that the answers to the foregoing Interrogatories and are true, complete, and accurate. I also understand that it is my duty to properly notify my attorney should I later learn that any of these answers are incomplete, inaccurate, or misleading, or should I obtain further information relative to the answers provided herein.


Witness my hand this the 13    day of _March_ 2022.

                                  /s/ Jeanne Ann Burton
                                  Jeanne Ann Burton

STATE OF

COUNTYOF _____


    SWORN   TO   AND   SUBSCRIBED  before  me  this   _____  day  of _____ 2022.


                                    NOTARY PUBLIC

10

## REQUESTS FOR PRODUCTION

1.      Produce any and all documents evidencing any ownership interest in real property at any time by Cummings Manookian, including 45 Music Square West, Nashville, Tennessee 37203.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

2.      Produce any and all documents evidencing any rent payment by Cummings Manookian to the owner of 45 Music Square West from September 1, 2018 to the present.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

3.      Produce any and all documents evidencing or reflecting Cummings Manookian's performance of its obligations under the terms of any lease agreement from September 1, 2018 to the present.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

4.      Produce any and all documents evidencing or reflecting the ownership of any

11

fixtures or furniture located at 45 Music Square West, Nashville Tennessee 37203 at any time by

Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

     5.    Produce any and all documents evidencing the ownership of "intellectual property"

by Cummings Manookian that you reference in your Complaint.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

     6.    Produce any and all documents identifying the "intellectual property" that you

allege was improperly utilized by the Defendants in your Complaint.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that documents filed in the public record in cases identified in the response to Interrogatory No. 3 above list telephone numbers and email addresses that were associated with Cummings Manookian, PLLC and utilized by one or more Defendants.

     7.    Produce any and all documents evidencing the ownership of any telephone number

by Cummings Manookian.

**RESPONSE**:

12

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

8.      Produce and any all documents evidencing the ownership of any website or email address by Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

9.      Produce any and all documents reflecting, regarding, or evidencing any legal services provided by Cummings Manookian in the *Fitzgerald* matter.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, all pleadings filed in the Fitzgerald case are responsive to this request but are publicly available. All documents responsive to this Request that are within the Trustee's possession, custody or control are produced herewith.

10.     Produce any and all documents reflecting, regarding, or evidencing any legal services provided by Cummings Manookian in any lawsuit in which you allege Cummings Manookian is owed monies by Manookian PLC, Hagh Law, or Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that all pleadings filed in the Fitzgerald and Shoemaker matters are responsive to this request but are publicly available. All documents responsive to this Request that

13

are within the Trustee's possession, custody or control are produced herewith.

11. Produce any and all itemized statements reflecting work performed by Cummings Manookian in a lawsuit in which you allege Cummings Manookian is owed monies by Manookian PLC, Hagh Law, or Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

12. Produce any and all offers of settlement received by Cummings Manookian in any lawsuit in which you allege Cummings Manookian is owed monies by Manookian PLC, Hagh Law, or Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, all documents responsive to this Request that are within the Trustee's possession, custody or control are produced herewith..

13. Produce any and all communications or correspondence between Jeanne Burton or Phillip Young with any purported creditor of Cummings Manookian or any person acting on behalf of a purported creditor of Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is not relevant to this matter, as neither Jeanne Burton nor Phillip Young possess any communications or correspondence with creditors related to the allegations brought in this adversary proceeding. The Trustee further objects to this Request on the grounds that it is overly broad and unduly burdensome.

14

14.     Provide any and all contracts or written agreements between Cummings Manookian and Manookian PLC.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

15.     Provide any and all contracts or written agreements between Cummings Manookian and Hagh Law.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Maanookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

16.     Provide any and all contracts or written agreements between Cummings Manookian and Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Maanookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

17.     Provide and any all documents or materials evidencing or reflecting Afsoon Hagh's employment with Cummings Manookian to the extent you allege she was an employee of Cummings Manookian.

**RESPONSE**:

15

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Maanookian, PLLC. Notwithstanding these objections, the Trustee states that pleadings she filed in the public records of certain cases identified in the response to Interrogatory No. 3 above, including the Fitzgerald matter, indicate that she was an agent of Cummings Manookian, PLLC, though the Trustee possesses no documents that indicate she was a paid employee. The pleadings referenced above are publicly available.

18. Provide any and all documents evidencing or reflecting any salary paid to Afsoon Hagh by Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Maanookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

19. Provide any and all pay stubs evidencing or reflecting any payment of any kind by Cummings Manookian to Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Manookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

20. Provide any and all documents or materials reflecting any work done or legal services provided by Brian Cummings on the Fitzgerald case.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more

16

available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Manookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

21.     Produce any and all documents reflecting a false representation made by any

Defendant in this matter to Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant because her Complaint is not based upon any false representation. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

22.     Produce any and all documents reflecting a material omission committed by any

Defendant in this matter to the detriment of Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant because her Complaint is not based upon any material omission. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

23.     Produce any and all documents reflecting or evidencing any "fraud" perpetrated by

any Defendant in this matter as alleged in the Complaint.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is overly broad, as the Trustee does not know how to interpret the term "fraud". Notwithstanding these objections, the Trustee states all facts and documents

17

referenced herein support the claim that Cummings Manookian, PLLC made fraudulent transfers to the Defendants. All documents responsive to this Request that are within the Trustee's possession, custody or control are produced herewith.

Respectfully submitted,

/s/ Phillip G. Young
Phillip G. Young (TN 021087)
THOMPSON BURTON, PLLC
6100 TOWER CIRCLE, SUITE 200
FRANKLIN, TENNESSEE 37067
(615)-465-6008
phillip@thompsonburton.com

*Attorneys for Jeanne Ann Burton, Trustee*

18

**Certificate of Service**

The undersigned hereby certifies that a true and exact copy of the foregoing has been served

via United States Mail, first class, postage prepaid, and by electronic mail to the following persons:

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203
john@spragenslaw.com

This 13th day of March, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

19

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: | ) |
| | ) Case No. 3:19-bk-07235 |
| CUMMINGS MANOOKIAN, PLLC, | ) Chapter 7 |
| | ) Judge Walker |
| Debtor. | ) |
| | ) |
| JEANNE ANN BURTON, TRUSTEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. No. 3:20-ap-90002 |
| | ) |
| HAGH LAW, PLLC; AFSOON HAGH; | ) |
| MANOOKIAN, PLLC; and FIRST- | ) |
| CITIZENS BANK & TRUST COMPANY, | ) |
| | ) |
| Defendant. | ) |

---

**PLAINTIFF'S <u>AMENDED</u> RESPONSES TO MANOOKIAN PLLC'S FIRST SET OF
WRITTEN DISCOVERY TO THE PLAINTIFF**

---

Comes Now, Plaintiff, Jeanne Ann Burton, Trustee ("Trustee"), and for her <u>Amended</u> Responses to Manookian PLLC's First Set of Written Discovery to the Plaintiff (the "Discovery"), states as follows:

**<u>GENERAL OBJECTIONS</u>**

1. Trustee's Responses to the Discovery shall not constitute a waiver of her objections as to admissibility.

2. Trustee objects to the Discovery to the extent it exceeds the scope of permissible discovery.

3. Trustee objects to the Discovery to the extent that the information sought is protected from discovery by the attorney-client privilege or the attorney work-product doctrine.

1

4.      Trustee objects to the Discovery to the extent that the information and documents sought are not in her possession, custody or control.

5.      Trustee objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Trustee objects to the Discovery to the extent that the information sought is equally available to Defendant as to Trustee.

7.      Trustee objects to the definitions and instructions to the extent Defendant seeks to impose any requirement in excess of those imposed by the Federal Rules of Civil Procedure. Additionally, Trustee is not required by the Federal Rules of Civil Procedure to adopt, follow or utilize Defendant's definitions and instructions, and Trustee's Responses are based upon the governing provisions of the applicable Rules, laws and the ordinary and usual meaning of the words used, except as otherwise noted in the Responses.

8.      Trustee reserves the right to supplement her Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.

## **INTERROGATORIES**

1.      Identify by case name every previously pending legal action in which Cummings Manookian withdrew, terminated their representation, or stopped providing legal services to any client from January 1, 2018 to the present. For each case, state the date on which Cummings Manookian withdrew, terminated their representation, or stopped providing legal services in a pending case from, January 1, 2018 to the present.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee.  The Trustee further objects to this

2

Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she is unaware of any case in which Cummings Manookian terminated its representation or stopped providing legal services from January 1, 2018 to the Petition Date. However, the Trustee has been provided a letter from Cummings Manookian to the Fitzgerald plaintiffs that allegedly served as a notice of withdrawal, though it remains unclear whether that letter was delivered or whether Cummings Manookian actually withdrew.

2.      For every matter you listed in response to Interrogatory No. 1, identify by case, date, description, and attorney the last or most recent legal task or service completed by Cummings Manookian in the case (for example: Jones v. Johnson, take deposition of Dr. Johnson, 2/1/19, 3.5 hours, Brian Manookian)

**RESPONSE**:

No matter was listed in response to Interrogatory No. 1.

3.      For any matter in which you allege Cummings Manookian is entitled to an attorney's fee, reimbursement of costs, or monies of any kind from Afsoon Hagh, Hagh Law PLLC, or Manookian PLLC:

    a. identify the case by style and docket number;

    b. state the date Cummings Manookian began representing the client and the date Cummings Manookian stopped providing legal services in the matter;

    c. identify and describe in detail all legal work performed by Cummings Manookian in the case (i.e., research, drafting motions, arguing motions, responding to discovery, taking depositions, etc.), including a description of the number of hours spent performing each task, the date the task was performed, and which attorney or attorneys performed the work;

    d. identify any and all offers of settlement obtained by Cummings Manookian during its period of representation in the case;

    e. identify any actual recovery of monies obtained by Cummings Manookian

3

in the matter, and;

    f.   identify and itemize any costs for which you allege Cummings Manookian is due reimbursement.

**RESPONSE**:

    The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee.  The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery.  Notwithstanding these objections, the Trustee states that she alleges that Cummings Manookian is entitled to fees and/or expenses in the following matters:

| Case Name | Docket No. | Court | Start Date | Stop Date |
|---|---|---|---|---|
| Fitzgerald v. Osborne | 2018-cv-311 | Williamson Circuit | May 23, 2018 | Approx. September 2, 2019 |
| Shoemaker v. Vanderbilt University Medical Center | 19C358 | Davidson Circuit | April 19, 2017 | November 6, 2019 |

    4.    For any matter in which you allege Cummings Manookian is entitled to an attorney's fee, reimbursement of costs, or monies of any kind from Afsoon Hagh, Hagh Law PLLC, or Manookian PLLC provide the total number of hours Cummings Manookian spent working on the case, even if such number is an estimate (if the number is an estimate please so state).

**RESPONSE**:

    The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee.  The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery.

    5.    For every instance in which you allege a Defendant in this case committed "fraud," identify with specificity:

    a.   the precise content of purportedly false representation or the material omission made by the Defendant;

    b.   the date of the purportedly false representation or material omission;

4

Formatted: Header

Inserted Cells
Inserted Cells
Formatted: Font: Times New Roman, Font color: Text 1
Inserted Cells
Formatted: Font: Times New Roman, Font color: Text 1
Formatted: Body Text, Centered
Formatted: Body Text, Centered
Deleted: Bailey v. HCA
Inserted Cells
Inserted Cells
Formatted: Font: Times New Roman, Font color: Text 1
Inserted Cells
Formatted: Font: Times New Roman, Font color: Text 1
Formatted: Body Text
Deleted: Osborn
Formatted: Font: Times New Roman, Font color: Text 1
Deleted: Knapp v. Ripley
Formatted: Font: Times New Roman, Font color: Text 1
Inserted Cells
Formatted: Font: Times New Roman, Font color: Text 1
Formatted: Body Text
Inserted Cells
Inserted Cells
Formatted: Font: Times New Roman, Font color: Text 1
Formatted: Font: Times New Roman, Font color: Text 1
Deleted: Thompson v. Sidrys
Formatted: Font color: Text 1

    c.   the identify of any individual or entity who relied upon the purportedly false

        representation or material omission; and

    d.   a detailed description of the damages suffered by the individual or entity as

        a result of their reliance on the purportedly false representation or material

        omission.

**RESPONSE**:

    The Trustee alleges in her Complaint that all three defendants received *fraudulent transfers* under 11 U.S.C. §548 and/or T.C.A. § 66-3-301. Therefore, there are no "fraudulent representations" or "material omissions" alleged.

    6.     Identify with specificity the date upon which Cummings Manookian completely

ceased, as an entity, providing legal services.

**RESPONSE**:

    The Trustee states that Cummings Manookian ceased providing legal services on the Petition Date, November 6, 2019.

    7.     Identify each and every day since July 3, 2018 that Afsoon Hagh or any employee

of Hagh Haw, PLLC was present at 45 Music Square West, Nashville, Tennessee.

**RESPONSE**:

    The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The Trustee finally objects to this Interrogatory because it is irrelevant to the cause of action against Manookian PLLC.

    8.     Identify with specificity the "furnishings and equipment" you allege Afsoon Hagh

or Hagh Law PLLC utilized in Paragraph 17 of your Complaint.

**RESPONSE**:

    The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The

Deleted: objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory to the extent it calls for a legal conclusion. Notwithstanding these objections, the Trustee can state

Trustee finally objects to this Interrogatory because it is irrelevant to the cause of action against Manookian PLLC.

     9.     Identify the "office space" and the specific "furnishings and equipment" you allege

Brian Manookian or Manookian PLLC utilized in Paragraph 20 of your Complaint.

**RESPONSE**:

Premises located at 45 Music Square West, Nashville, Tennessee and all furnishings, equipment, and personal property located therein.

     10.     Identify any and all office space, real property, furnishings, equipment, telephone

numbers, and email addresses that you allege were owned by Cummings Manookian PLLC in your

Complaint.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states, upon information and belief, that Cummings Manookian PLLC had a leasehold interest in 45 Music Square West, Nashville, Tennessee, and had an interest in all furnishings and equipment located therein. The Trustee further states that Cummings Manookian PLLC had an interest in all telephone numbers and email addresses that appeared in any signature block listing the law firm of Cummings Manookian, PLLC, including those utilized by Afsoon Hagh and Brian Manookian.

     11.     Specifically identify the "property" and "client files" you allege were owned by

Cummings Manookian and "use[d]" by Brian Manookian or Manookian PLLC as alleged in

Paragraph 20 of your Complaint.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Manookian PLLC utilized office space located at 45 Music Square West, Nashville, Tennessee, all furnishings and equipment located therein, and utilized Cummings Manookian PLLC's client list and contact information to continue working on cases for which Cummings Manookian had an engagement agreement with the clients.

<div align="center">6</div>

12.    Identify with specificity all work done by Cummings Manookian in the Fitzgerald

Case, including, but not limited to, all pleadings drafted, all motions attended, all depositions

attended, and specify the number of hours spent on each task, individually, including which

attorney performed the work.

RESPONSE:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is
more available to the Defendant than to the Trustee. The Trustee further objects to this
Interrogatory in that it seeks information for which the Trustee is still seeking discovery.
Notwithstanding these objections, the Trustee states that all work done in the Fitzgerald Case was
performed by Cummings Manookian, PLLC and its attorneys, and further states that pleadings of
public record in that matter indicate on their face that substantial work was performed by
Cummings Manookian, PLLC. The Trustee further states that the number of hours spent by
Cummings Manookian, PLLC is irrelevant because it had a binding contingency agreement in that
matter.

13.    Identify any and all offers of settlement obtained by Cummings Manookian for

resolution of the Fitzgerald Case during any time you allege Cummings Manookian was involved

in the Fitzgerald Case.

RESPONSE:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is
more available to the Defendant than to the Trustee. The Trustee further objects to this
Interrogatory in that it seeks information for which the Trustee is still seeking discovery.
Notwithstanding these objections, the Trustee states that any and all settlement offers in the
Fitzgerald Case were obtained by Cummings Manookian.

14.    Identify the date on which Cummings Manookian stopped providing legal services

in the Fitzgerald Case.

RESPONSE:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is
more available to the Defendant than to the Trustee. The Trustee further objects to this
Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally,
the Trustee objects to this Interrogatory to the extent it calls for a legal conclusion. Notwithstanding
these objections, the Trustee states that Cummings Manookian, PLLC continued providing legal
services in the Fitzgerald case through the conclusion of that matter.

7

15.     Identify and itemize with specificity the "leased premises, furniture, equipment, intellectual property, attorneys' fees, and reimbursement of costs" you allege Afsoon Hagh, Hagh Law, or Manookian PLLC have taken from Cummings Manookian or exercised control over to the exclusion of Cummings Manookian as alleged in Paragraph 44 of your Complaint.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The Trustee finally objects to this Interrogatory because questions involving transfers to Afsoon Hagh and Hagh Law are irrelevant to the cause of action against Manookian PLLC. Notwithstanding these objections, the Trustee states that the Defendants used space located 45 Music Square West, Nashville, Tennessee, they used all furnishings and equipment therein, they utilized telephone numbers and email addresses that had been associated with Cummings Manookian, PLLC and listed on numerous court pleadings as the contact information for Cummings Manookian, PLLC, and have taken, have attempted to take, or have improperly asserted an interest in fees and expenses owing to Cummings Manookian, PLLC in the cases identified in the response to Interrogatory No. 3 above.

16.     Do you contend that Cummings Manookian ever employed Afsoon Hagh? If so, please identify the start and end dates of her employment as well as the terms of her employment, including her duties, salary, hours, etc.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The Trustee finally objects to this Interrogatory because it is irrelevant to the cause of action against Manookian PLLC. Notwithstanding these objections, the Trustee states that she does not know whether Afsoon Hagh was ever a paid employee of Cummings Manookian, PLLC, but she was certainly its agent.

17.     Do you contend that Cummings Manookian has ever entered into a contract or written agreement of any kind with Manookian PLC, Hagh Law, or Afsoon Hagh? If so, please provide the date of the contract and a detailed description of its content.

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is

more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. The Trustee finally objects to this Interrogatory because any question concerning agreement with Afsoon Hagh or Hagh Law is irrelevant to the cause of action against Manookian PLLC. Notwithstanding these objections, the Trustee states that she is not currently aware of any such contract or written agreement.

18.     Identify and itemize with specificity all economic damages Cummings Manookian claims to have suffered and is seeking from any Defendant in this action (for example: reimbursement of deposition transcript in Johnson case, reimbursement of expert witness fee in Johnson case, payment of attorney's fee in Johnson case).

**RESPONSE**:

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that this estate is entitled to some or all fees and expenses collected related to the cases listed in the response to Interrogatory No. 3 above.

9

Formatted: Header

VERIFICATION

    I, **Jeanne Ann Burton,** swear or affirm that the answers to the foregoing Interrogatories and are true, complete, and accurate. I also understand that it is my duty to properly notify my attorney should I later learn that any of these answers are incomplete, inaccurate, or misleading, or should I obtain further information relative to the answers provided herein.

Witness my hand this the ___ day of _____ 2022.

Deleted: 2021

_____
Jeanne Ann Burton

STATE OF

COUNTYOF _____

    SWORN  TO  AND  SUBSCRIBED  before  me  this  _____ day  of _____ 2022.

Deleted: 2021

_____
NOTARY PUBLIC

10

## REQUESTS FOR PRODUCTION

1. Produce any and all documents evidencing any ownership interest in real property at any time by Cummings Manookian, including 45 Music Square West, Nashville, Tennessee 37203.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

2. Produce any and all documents evidencing any rent payment by Cummings Manookian to the owner of 45 Music Square West from September 1, 2018 to the present.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

3. Produce any and all documents evidencing or reflecting Cummings Manookian's performance of its obligations under the terms of any lease agreement from September 1, 2018 to the present.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

4. Produce any and all documents evidencing or reflecting the ownership of any

11

fixtures or furniture located at 45 Music Square West, Nashville Tennessee 37203 at any time by

Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

5.      Produce any and all documents evidencing the ownership of "intellectual property"

by Cummings Manookian that you reference in your Complaint.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

6.      Produce any and all documents identifying the "intellectual property" that you

allege was improperly utilized by the Defendants in your Complaint.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that documents filed in the public record in cases identified in the response to Interrogatory No. 3 above list telephone numbers and email addresses that were associated with Cummings Manookian, PLLC and utilized by one or more Defendants.

7.      Produce any and all documents evidencing the ownership of any telephone number

by Cummings Manookian.

**RESPONSE**:

12

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

8.  Produce and any all documents evidencing the ownership of any website or email address by Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

9.  Produce any and all documents reflecting, regarding, or evidencing any legal services provided by Cummings Manookian in the *Fitzgerald* matter.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, all pleadings filed in the Fitzgerald case are responsive to this request but are publicly available. All documents responsive to this Request that are within the Trustee's possession, custody or control are produced herewith.

Deleted: Notwithstanding these objections, the Trustee states that an engagement letter between Cummings Manookian PLLC and the Fitzgerald Plaintiffs is responsive to this request, but is in the possession or control of the Defendant and needs not be produced. Further

10.  Produce any and all documents reflecting, regarding, or evidencing any legal services provided by Cummings Manookian in any lawsuit in which you allege Cummings Manookian is owed monies by Manookian PLC, Hagh Law, or Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that all pleadings filed in the Fitzgerald and Shoemaker matters are responsive to this request but are publicly available. All documents responsive to this Request that

Deleted: the engagement letter between Cummings Manookian PLLC and the Fitzgerald plaintiffs is responsive to this request, but that document in the possession or control of the Defendant and need not be produced. Further,

Deleted: matter

13

are within the Trustee's possession, custody or control are produced herewith.

     11.    Produce any and all itemized statements reflecting work performed by Cummings Manookian in a lawsuit in which you allege Cummings Manookian is owed monies by Manookian PLC, Hagh Law, or Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

     12.    Produce any and all offers of settlement received by Cummings Manookian in any lawsuit in which you allege Cummings Manookian is owed monies by Manookian PLC, Hagh Law, or Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, all documents responsive to this Request that are within the Trustee's possession, custody or control are produced herewith.

Deleted: the Trustee states
Deleted: she has
Deleted: of no such documents.

     13.    Produce any and all communications or correspondence between Jeanne Burton or Phillip Young with any purported creditor of Cummings Manookian or any person acting on behalf of a purported creditor of Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is not relevant to this matter, as neither Jeanne Burton nor Phillip Young possess any communications or correspondence with creditors related to the allegations brought in this adversary proceeding. The Trustee further objects to this Request on the grounds that it is overly broad and unduly burdensome.

14

14.     Provide any and all contracts or written agreements between Cummings Manookian and Manookian PLC.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

15.     Provide any and all contracts or written agreements between Cummings Manookian and Hagh Law.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Maanookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

16.     Provide any and all contracts or written agreements between Cummings Manookian and Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Maanookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

17.     Provide and any all documents or materials evidencing or reflecting Afsoon Hagh's employment with Cummings Manookian to the extent you allege she was an employee of Cummings Manookian.

**RESPONSE**:

15

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Maanookian, PLLC. Notwithstanding these objections, the Trustee states that pleadings she filed in the public records of certain cases identified in the response to Interrogatory No. 3 above, including the Fitzgerald matter, indicate that she was an agent of Cummings Manookian, PLLC, though the Trustee possesses no documents that indicate she was a paid employee. The pleadings referenced above are publicly available.

18.     Provide any and all documents evidencing or reflecting any salary paid to Afsoon

Hagh by Cummings Manookian.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Maanookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

19.     Provide any and all pay stubs evidencing or reflecting any payment of any kind by

Cummings Manookian to Afsoon Hagh.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Manookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

20.     Provide any and all documents or materials reflecting any work done or legal

services provided by Brian Cummings on the Fitzgerald case.

**RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more

16

available to the Defendant than to the Trustee.  The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery.  Finally, the Trustee objects to this Request on the grounds that it is irrelevant to the causes of action against Manookian, PLLC. Notwithstanding these objections, the Trustee states that she has possession of no such documents.

     21.    Produce any and all documents reflecting a false representation made by any

Defendant in this matter to Cummings Manookian.

    **RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee.  The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery.  Finally, the Trustee objects to this Request on the grounds that it is irrelevant because her Complaint is not based upon any false representation.  Notwithstanding these objections, the Trustee states that she has possession of no such documents.

     22.    Produce any and all documents reflecting a material omission committed by any

Defendant in this matter to the detriment of Cummings Manookian.

    **RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee.  The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery.  Finally, the Trustee objects to this Request on the grounds that it is irrelevant because her Complaint is not based upon any material omission.  Notwithstanding these objections, the Trustee states that she has possession of no such documents.

     23.    Produce any and all documents reflecting or evidencing any "fraud" perpetrated by

any Defendant in this matter as alleged in the Complaint.

    **RESPONSE**:

The Trustee objects to this Request on the grounds that it seeks information that is more available to the Defendant than to the Trustee.  The Trustee further objects to this Request in that it seeks information for which the Trustee is still seeking discovery.  Finally, the Trustee objects to this Request on the grounds that it is overly broad, as the Trustee does not know how to interpret the term "fraud".  Notwithstanding these objections, the Trustee states all facts and documents

17

referenced herein support the claim that Cummings Manookian, PLLC made fraudulent transfers to the Defendants. All documents responsive to this Request that are within the Trustee's possession, custody or control are produced herewith.

Respectfully submitted,

/s/ Phillip G. Young
Phillip G. Young (TN 021087)
THOMPSON BURTON, PLLC
6100 TOWER CIRCLE, SUITE 200
FRANKLIN, TENNESSEE 37067
(615)-465-6008
phillip@thompsonburton.com

*Attorneys for Jeanne Ann Burton, Trustee*

18

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served

via United States Mail, first class, postage prepaid, and by electronic mail to the following persons:

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203
john@spragenslaw.com

Craig V. Gabbert
Bass, Berry & Sims PLC
150 Third Ave. S, Suite 2800
Nashville, TN 37201
cgabbert@bassberry.com

This 13th day of March, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

Deleted: 1st
Deleted: 2021

19

| Page 4: [1] Deleted | Microsoft Office User | 3/10/22 8:58:00 PM |
| Page 4: [2] Deleted | Microsoft Office User | 3/10/22 8:58:00 PM |
| Page 4: [3] Deleted | Microsoft Office User | 3/10/22 8:58:00 PM |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 3:19-bk-07235 |
| CUMMINGS MANOOKIAN, PLLC, | ) | Chapter 7 |
| | ) | Judge Walker |
| Debtor. | ) | |
| | ) | |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:20-ap-90002 |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST-   | ) | |
| CITIZENS BANK & TRUST COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

---

**PLAINTIFF'S AMENDED RESPONSES TO DEFENDANT HAGH LAW, PLLC'S
FIRST SET OF INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO TRUSTEE JEANNE ANN BURTON**

Comes Now, Plaintiff, Jeanne Ann Burton, Trustee ("Trustee"), and for her Amended Responses to Defendant Hagh Law, PLLC's First Set of Interrogatories and Requests for Production to Trustee Jeanne Ann Burton (the "Discovery"), states as follows:

### GENERAL OBJECTIONS

1.       Trustee's Responses to the Discovery shall not constitute a waiver of her objections as to admissibility.

2.       Trustee objects to the Discovery to the extent it exceeds the scope of permissible discovery.

3.       Trustee objects to the Discovery to the extent that the information sought is protected from discovery by the attorney-client privilege or the attorney work-product doctrine.

1

4.     Trustee objects to the Discovery to the extent that the information and documents sought are not in her possession, custody or control.

5.     Trustee objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6.     Trustee objects to the Discovery to the extent that the information sought is equally available to Defendant as to Trustee.

7.     Trustee objects to the definitions and instructions to the extent Defendant seeks to impose any requirement in excess of those imposed by the Federal Rules of Civil Procedure. Additionally, Trustee is not required by the Federal Rules of Civil Procedure to adopt, follow or utilize Defendant's definitions and instructions, and Trustee's Responses are based upon the governing provisions of the applicable Rules, laws and the ordinary and usual meaning of the words used, except as otherwise noted in the Responses.

8.     Trustee reserves the right to supplement her Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.

**INTERROGATORIES**

1.     Identify all individuals who have personal knowledge of the facts alleged in your Complaint.

**Response:**

Jeanne Ann Burton, Trustee; Phillip G. Young, Receiver; Brian Manookian; Afsoon Hagh; Brian Cummings; Mark Hammervold; Steve Meisner; Ronette McCarthy; Marty Fitzgerald; Melissa Fitzgerald; all plaintiffs in all lawsuits identified in Paragraph 23 of the Complaint; all defense counsel in all lawsuits identified in Paragraph 23 of the Complaint; all co-counsel in in all lawsuits identified in Paragraph 23 of the Complaint.

2

2.     Identify by client/plaintiff, defendant, case number, and jurisdiction any and all cases or potential cases for which Cummings Manookian was providing legal services in September 2018.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee also objects to this Interrogatory on the grounds that it seeks information that is available on public court dockets. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Paragraph 23 of the Complaint contains a listing of such cases to the best of the Trustee's knowledge.

3.     For each case you identified in response to Interrogatory 2, state the nature of the case, the ultimate resolution of the representation/case, and the date on which you claim Cummings Manookian ceased providing legal services in the case or for the client if no action was ever filed.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee also objects to this Interrogatory on the grounds that it seeks information that is available on public court dockets. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Cummings Manookian provided legal services in each case until the conclusion of each action or November 6, 2019, whichever occurred first.

| | Deleted: , as Cummings Manookian never withdrew from any of the pending actions. |
|---|---|

4.     State with specificity the nature of the relationship, including without limitation the compensation arrangement, that plaintiff alleges existed between Afsoon Hagh and Cummings

3

Manookian. If plaintiff alleges that relationship changed over time, plaintiff should identify each relationship and the dates during which that each arrangement was in place..

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Afsoon Hagh held herself out to be an agent of Cummings Manookian through at least April 2019. The Trustee has been unable to identify the compensation arrangement between Ms. Hagh and Cummings Manookian as that information has been withheld from the Trustee, despite written discovery on that topic to Cummings Manookian and all parties to this action

5. Identify any and all members and/or partners of Cummings Manookian and state the dates for which each was a member and/or partner.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that she is aware that Brian Cummings was a member of Cummings Manookian from January 1, 2015 through approximately September 1, 2018, and that she is aware that Brian Manookian was a member of Cummings Manookian from January 1, 2015 through its bankruptcy filing on November 6, 2019.

4

6.      Identify any individual who was a partner, member, or employee of Cummings Manookian who provided any legal services to any person or entity after December 1, 2018, and state with specificity the client for whom those services were provided, the nature of those legal services, and the last date on which services were provided for each client.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee also objects to this Interrogatory on the grounds that it seeks information that is available on public court dockets. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Brian Manookian and Afsoon Hagh provided legal services to clients of Cummings Manookian after December 1, 2018. Both Afsoon Hagh and Brian Manookian provided legal services to the plaintiffs in Fitzgerald v. Osborn after December 1, 2018 and through the conclusion of that matter in August 2019 or, in the alternative, at least through April 2019. Afsoon Hagh and Brian Manookian both provided legal services to the plaintiffs in Shoemaker v. Vanderbilt Medical after December 1, 2018 and through the conclusion of that matter in November 2021 or, in the alternative, at least through April 2019. Ms. Hagh and Mr. Manookian may have provided legal services in other matters after December 1, 2018, so the Trustee will supplement this response after receiving full and complete responses to her outstanding written discovery.

7.      If you identified Afsoon Hagh in response to the previous interrogatory; state the amount of compensation paid to her or owed to her for work allegedly performed after December 1, 2018 and the basis on which the amount of compensation due was calculated or determined.

**Response:**

5

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Afsoon Hagh has received in excess of $600,000 from settlement proceeds in Fitzgerald v. Osborn, and has received at least $100,000 from settlement proceeds in Shoemaker v. Vanderbilt. The Trustee disputes that Ms. Hagh was entitled to any compensation from the proceeds of either of those cases.

       8.    You allege at Paragraph 17 of your Complaint that "Afsoon Hagh, now doing business as Hagh Law, continued utilizing CM's office space, CM's furnishings and equipment, CM's telephone numbers, and email address, all to work on CM's client files."

    a. Identify with specificity the office space you allege that Afsoon Hagh utilized, listing the dates on which you allege she was present or on the premises at such office space;

    b. Identify with specificity the precise "furnishings and equipment" you allege that Afsoon Hagh utilized, listing the dates on which you allege she utilized each specific furnishing or equipment;

    c. Identify with specificity the telephone numbers and email addresses that you claim Afsoon Hagh utilized, listing the dates on which you allege she utilized each telephone number or email address;

    d. Identify with specificity the "CM client files" you refer to in Paragraph 17 of your Complaint.

**Response:**

6

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that:

(a) Afsoon Hagh continued utilizing the office spaces of Cummings Manookian located at 45 Music Sq. W, Nashville, Tennessee through May 14, 2021, the date on which the property was sold to a third party.

(b) Afsoon Hagh utilized all furnishings and equipment located in the office spaces of Cummings Manookian at 45 Music Sq. W, Nashville, Tennessee through May 14, 2021. The Trustee has sought, but has been denied, discovery concerning the specific equipment and furnishings in that space.

(c) Afsoon Hagh utilized the telephone number (615)266-3333 and the fax number (615)266-0250 through at least April 2019. She utilized the email address afsoon@cummingsmanookian.com through at least April 2019.

(d) The CM client files referenced in Paragraph 17 of the Complaint relate to all client files, whether electronic or paper, maintained by Cummings Manookian related to the cases listed in Paragraph 23 of the Complaint.

9.  Identify with specificity all "property" you refer to in Paragraphs 43 and 44 of your Complaint that you allege Afsoon Hagh or Hagh Law have wrongfully appropriated, exercised control over, or taken, and list the dates on which such property was wrongfully appropriated, exercised control over, or taken.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more

7

available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Paragraph 44 of the Complaint clearly defines the term "Property" to include the following assets of Cummings Manookian: "leased premises, furniture, equipment, intellectual property, attorneys' fees, and reimbursement of costs". "Leased premises" refers to real property located at 45 Music Sq. W, Nashville, Tennessee. "Furniture" and "equipment" refers to all furniture and equipment in Cummings Manookian's office spaces located at 45 Music Sq. W, Nashville, Tennessee. "Intellectual property" refers to the use of Cummings Manookian's firm name, its client lists and files, its website, its telephone number, its fax number and its email addresses. "Attorneys' fees" and "reimbursement of costs" refers to any compensation Afsoon Hagh and/or Hagh Law has received, or claims it is owed, from settlement proceeds paid in any case listed in Paragraph 23 of the Complaint. The Trustee is aware that Afsoon Hagh has received more than $600,000 from the Fitzgerald v. Osborn matter, and at least $100,000 from the Shoemaker v. Vanderbilt Medical Center matter.

     10.    Identify with specificity the "property" you refer to in Paragraphs 47 and 48 of your Complaint that you allege was wrongfully taken or received by Afsoon Hagh or Hagh Law and state the date on which you claim it was wrongfully taken or received.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Paragraph 44 of the Complaint clearly defines the term "Property" to include the following assets of Cummings Manookian: "leased premises, furniture, equipment,

intellectual property, attorneys' fees, and reimbursement of costs". "Leased premises" refers to real property located at 45 Music Sq. W, Nashville, Tennessee. "Furniture" and "equipment" refers to all furniture and equipment in Cummings Manookian's office spaces located at 45 Music Sq. W, Nashville, Tennessee. "Intellectual property" refers to the use of Cummings Manookian's firm name, its client lists and files, its website, its telephone number, its fax number and its email addresses. "Attorneys' fees" and "reimbursement of costs" refers to any compensation Afsoon Hagh and/or Hagh Law has received, or claims it is owed, from settlement proceeds paid in any case listed in Paragraph 23 of the Complaint. The Trustee is aware that Afsoon Hagh has received more than $600,000 from the Fitzgerald v. Osborn matter, and at least $100,000 from the Shoemaker v. Vanderbilt Medical Center matter.

      11.    Identify with specificity by date and amount the "substantial transfers" you refer to in Paragraphs 51 and 52 of your Complaint that you allege were received by Afsoon Hagh or Hagh Law from Cummings Manookian.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that the "substantial transfers" referenced in Paragraphs 51 and of the Complaint relate to Afsoon Hagh and/or Hagh Law's use and receipt of "Property" as defined in Paragraph 44 of the Complaint. More specifically, Afsoon Hagh and Hagh Law were allowed to utilize, for no cost, the leased premises, furniture, equipment, and intellectual property of Cummings Manookian. Afsoon Hagh and/or Hagh Law have received more than $600,000 from the Fitzgerald v. Osborn matter and at least $100,000 from the Shoemaker v. Vanderbilt Medical Center matter.

9

12.     Identify with specificity all bank, brokerage, or deposit accounts of any kind held at any time by Cummings Manookian from which it made or received transfers.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee.  The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery.  Notwithstanding these objections, the Trustee states that she believes Cummings Manookian maintained one or more bank accounts at Insbank through Spring 2019.  She has not been granted access to these bank record and therefore cannot verify bank account names or numbers.

13.     Identify by name each and every one of the "clients and vendors" of Cummings Manookian that you refer to in Paragraph 63 of your Complaint.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee.  The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery.  Notwithstanding these objections, the Trustee states that all of Cummings Manookian's clients in matters identified in Paragraph 23 are responsive to this Interrogatory.  The Trustee has yet to identify vendors, but that information is subject to outstanding discovery.

14.     Identify by make, brand, model, and serial number any and all "computers and equipment" that you refer to in Paragraph 65 of your Complaint. If you are unable to provide a serial number, describe with as much detail as possible the "computers and equipment" you refer to in Paragraph 65.

**Response:**

10

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Cummings Manookian and/or the parties to this action have refused to provide this information despite written discovery regarding this issue. However, the Trustee states that all computers and equipment located in the offices of Cummings Manookian as of December 2018 are referenced by the allegations in Paragraph 65.

15. Provide an estimate of the total number of hours of legal services provided by Cummings Manookian in the *Fitzgerald* matter and the *Shoemaker* matter and identify to the best of your ability what services were provided on which dates.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding these objections, the Trustee states that Cummings Manookian represented these clients pursuant to a written contingency agreement; as such, the Trustee doubts that any attorney or employee of Cummings Manookian kept track of the number of hours spent on these matters. Since Cummings Manookian never withdrew as counsel in either matter, all services provided by Brian Manookian and Afsoon Hagh constitute legal services provided by Cummings Manookian.

16. Identify all offers of settlement, including without limitation amount and date, received by Cummings Manookian in the *Shoemaker* matter and state medium in which the offer

11

was received (for example: orally, at mediation, by letter, by email) and the date on which it was received.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

17. Identify all offers of settlement, including without limitation amount and date, received by Cummings Manookian in the *Fitzgerald* matter and state medium in which the offer was received (for example: orally, at mediation, by letter, by email) and the date on which it was received.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding these objections, the Trustee states that she has recently received, in response to a subpoena, email correspondence from Steve Mesiner that might contain settlement offers in the Fitzgerald matter. The Trustee has not had an opportunity to review these emails. These emails are produced herewith.

**Deleted:** However, these emails are available to the Defendants since they were original recipients of these emails...

18. Identify the date on which Brian Cummings withdrew as a member of Cummings Manookian.

**Response:**

12

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding these objections, it is the Trustee's understanding that Mr. Cummings withdrew as a member of Cummings Manookian on or about September 1, 2018.

19. Identify the date on which Brian Manookian stopped (or was precluded as a result of his suspension) from providing legal services as a member of Cummings Manookian.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory on the grounds that the dates of Mr. Manookian's suspensions is publicly available to Afsoon Hagh and/or Hagh Law. Notwithstanding these objections, the Trustee believes that Brian Manookian continued providing legal services as a member of Cummings Manookian until its bankruptcy filing on November 6, 2019.

,

20. State and describe in detail all legal work performed by Cummings Manookian in the *Fitzgerald* matter, including the date of the work, the time spent on each task, and individual who performed the work.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in

13

| Deleted: ¶ |

that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

21.     State and describe in detail all legal work performed by Cummings Manookian in the *Shoemaker* matter, including the date of the work, the time spent on each task, and individual who performed the work.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Finally, the Trustee objects to this Interrogatory on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

22.     Identify and itemize by amount and date all expenses paid for by Cummings Manookian in the *Fitzgerald* matter and state whether or not Cummings Manookian has been reimbursed for that expense.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee. The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery. Notwithstanding these objections, the Trustee states that Brian Manookian provided certain invoices related to multiple matters including the Fitzgerald matter. Pursuant to Mr. Manookian's document productions, the Trustee understands that Cummings Manookian advanced the following expenses for which the estate has not been compensated:

Nashville Media Services, Inc.; November 6, 2018; $328.18

Ciox Health; June 8, 2018; $429.24

14

Williamson County Circuit Court; September 11, 2018; $18.00

Franklin Court Reporters; September 20, 2018; $425.00

23.    Identify and itemize by amount and date all expenses paid for by Cummings Manookian in the *Shoemaker* matter and state whether or not Cummings Manookian has been reimbursed for that expense.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee.  The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery.  Notwithstanding these objections, the Trustee states that the only information she has been provided regarding the expenses in Shoemaker was produced by Afsoon Hagh and Hagh Law, PLLC.

**Deleted:** no information concerning

**Deleted:** expenses

24.    Identify by client/plaintiff, defendant, case number, and jurisdiction any and all cases or potential cases for which Cummings Manookian was providing legal services in January 2019.

**Response:**

The Trustee objects to this Interrogatory on the grounds that it seeks information that is more available to the Defendant than to the Trustee.  The Trustee also objects to this Interrogatory on the grounds that it seeks information that is available on public court dockets.  The Trustee further objects to this Interrogatory in that it seeks information for which the Trustee is still seeking discovery.  Notwithstanding these objections, the Trustee states that Paragraph 23 of the Complaint contains a listing of such cases to the best of the Trustee's knowledge.

15

VERIFICATION

I, **Jeanne Ann Burton,** swear or affirm that the answers to the foregoing Interrogatories and are true, complete, and accurate. I also understand that it is my duty to properly notify my attorney should I later learn that any of these answers are incomplete, inaccurate, or misleading, or should I obtain further information relative to the answers provided herein.

Witness my hand this the ___ day of _____ ,2022.

_____
Jeanne Ann Burton

16

## REQUESTS FOR PRODUCTION

1.     Produce any and all communications between any creditor of Cummings Manookian, or creditor's counsel, and Jeanne Burton or her counsel that in any way relates to this adversary proceeding or the Trustee's alleged right to recover fees in any legal proceeding.

**Response:**

The Trustee objects to this Request on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, the Trustee states that the only communications that she or her counsel have had with creditors that are relevant to this adversary proceeding are communications with creditors Ronette McCarthy and John Konvalinka, which are attached hereto.

2.     Produce any and all communications between Brian Cummings and Jeanne Burton or her counsel.

**Response:**

The Trustee objects to this Request on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, the Trustee attaches hereto all communications between Jeanne Burton or her counsel and Brian Cummings that relate to this adversary proceeding.

3.     Produce any and all communications between Phillip North and Jeanne Burton or her counsel.

**Response:**

The Trustee objects to this Request on the grounds that it seeks information that is irrelevant,

17

immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, the Trustee states that the none of the communications between Jeanne Burton or her counsel and Phillip North have concerned this adversary proceeding.

4.     Produce any and all documents and communications reflecting any work done by Cummings Manookian in the matter of *Fitzgerald v. Osborne*.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee also objects to this Request on the grounds that it seeks documents that are available on public court dockets. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that the only documents and/or communications in her possession, custody or control reflecting any work done by Cummings Manookian in the Fitzgerald matter are (1) documents contained in the public record of that case; (2) emails between defense counsel in that matter and Afsoon Hagh and/or Brian Manookian ,which are produced herewith and (3) the attached privilege log received from Ronette McCarthy pursuant to subpoena.

<div style="text-align:right;">

**Deleted:** to

**Deleted:** the Defendants have equal access;

</div>

5.     Produce any and all documents and communications reflecting any work done by Cummings Manookian in the matter of *Shoemaker v. Vanderbilt University Medical Center*.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee also objects to this Request on the grounds that it seeks documents that are available on public court dockets. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that the only documents and/or communications

18

in her possession, custody or control reflecting any work done by Cummings Manookian in the Shoemaker matter are contained in the public record of that case.

6.     Produce any and all documents and communication reflecting any legal work or legal services provided by Cummings Manookian after December 1, 2018.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee also objects to this Request on the grounds that it seeks documents that are available on public court dockets. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that the only documents and/or communications in her possession, custody or control reflecting any work done by Cummings Manookian after December 1, 2018 are (1) documents contained in the public record of each case; (2) emails between defense counsel in the Fitzgerald matter and Afsoon Hagh and/or Brian Manookian, which are produced herewith; and (3) emails between Ronette McCarthy and Afsoon Hagh and/or Brian Manookian, for which the Trustee has only a privilege log but the Defendants have access to the relevant emails.

| Deleted: to |
| --- |
| Deleted: the Defendants have equal access |

7.     Produce the employment or personnel file for any person employed by Cummings Manookian at any time.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request on the grounds that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding these objections, the Trustee states that

19

she currently has possession, custody or control of no such documents.

Deleted: possesses

8. Produce any records reflecting any payment of any kind, including salary, wages or compensation, by Cummings Manookian to Afsoon Hagh.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she currently has possession, custody or control of no such documents.

Deleted: possesses

Formatted: Font: Bold

9. Produce all records reflecting any payment of any kind, including salary, wages or compensation, by Cummings Manookian to Hagh Law.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she currently has possession, custody or control of no such documents.

Deleted: possesses

Formatted: Font: Bold

10. Produce all documents and communications reflecting the nature of the relationship between Cummings Manookian and Afsoon Hagh. Including without limitation any contract or written agreement of any kind between Cummings Manookian and Afsoon Hagh.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the

20

Trustee states that she currently has possession, custody or control of no such documents.

Deleted: possesses

Formatted: Font: Bold

11.     Produce any contract or written agreement of any kind between Cummings Manookian and Hagh Law.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she currently has possession, custody or control of no such documents.

Deleted: possesses

Formatted: Font: Bold

12.     Produce all communications between Cummings Manookian and Marty or Melissa Fitzgerald.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she has subpoenaed certain of these communications but the Trustee received an objection to the subpoena from Afsoon Hagh, purportedly on behalf of Marty Fitzgerald, and that no communications have been produced.

13.     Produce all communications between Cummings Manookian and Bretton Keefer.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery, to the extent they are not subject to

21

attorney-client privilege. Notwithstanding these objections, the Trustee produces herewith all such documents within her possession, custody or control.

> **Deleted:** states that she currently possesses no

      14.    Produce any and all contracts with which you allege Afsoon Hagh or Hagh Law interfered.

      **Response:**

      The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee alleges that Afsoon Hagh interfered with Cummings Manookian's written engagement agreement with the Fitzgerald and Shoemaker plaintiffs, copies of which are produced herewith.

> **Deleted:** possessed by the Defendants

      15.    Produce any engagement agreement entered into by Cummings Manookian after December 1, 2018.

      **Response:**

      The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she is aware of no such agreements.

      16.    Produce any contract entered into by Cummings Manookian after December 1, 2018.

      **Response:**

      The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the

22

Trustee states that she is aware of no such contracts.

17.   Produce any and all records reflecting any expense paid by Cummings Manookian of any kind after December 1, 2018.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee.  The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery.  Notwithstanding these objections, the Trustee states that she is aware of no such records.

18.   Produce and any all records of any payment made by Cummings Manookian after December 1, 2018.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee.  The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery.  Notwithstanding these objections, the Trustee states that she is aware of no such records.

23

19.    Produce any all records of any payments received by Cummings Manookian after December 1, 2018.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee.  The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery.  Notwithstanding these objections, all such responsive records in the Trustee's possession, custody or control are attached.

20.    Produce any and all hourly bills or time entries for any work completed by Cummings Manookian in the *Fitzgerald* or *Shoemaker* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee.  The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery.  Notwithstanding these objections, the Trustee states that she believes no such documents exist since both matters were contingency fee arrangements.

21.    Produce any and all records, including receipts, of Cummings Manookian's ownership of any furniture, equipment, computers, phones, phone numbers, domain names, or email addresses.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee.  The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery.  Notwithstanding these objections, the Trustee states that she currently has possession, custody or control of no such documents.

Deleted: possesses

24

22.     Produce any lease to which Cummings Manookian was ever a party.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she currently has possession, custody or control of no such documents.

23.     Produce any records reflecting any real property owned by Cummings Manookian.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she is unaware of any real property owned by Cummings Manookian.

24.     Produce records reflecting any payment by Cummings Manookian to any entity for rent or use of any real property.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she currently has possession, custody or control of no such documents.

| Deleted: possesses |
| --- |

| Deleted: possesses |
| --- |

25

25. Produce any and all documents and communications, including emails, by any Cummings Manookian partner, member, or employee and any client reflecting the provision of legal services after December 1, 2018.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that emails between Afsoon Hagh, Brian Manookian and defense counsel for the defendant in Fitzgerald v. Osbourn after December 1, 2018 are responsive to this Request, and are produced herewith. The Trustee also states that emails between Afsoon Hagh, Brian Manookian and Ronette McCarthy after December 1, 2018 are responsive to this Request; the Trustee has attached the privilege log received from Ms. McCarthy via subpoena though the Defendants have access to the underlying emails referenced therein.

Deleted: but the Defendants have equal or better access to those documents.

26. Produce any and all documents reflecting expenses paid by Cummings Manookian in the *Fitzgerald* or *Shoemaker* matter at any time.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she possesses certain documents produced by Brian Manookian that evidence expenses incurred by Cummings Manookian in the Fitzgerald matter, which are produced herewith.

Deleted: . Mr. Manookian requested that these documents be treated as privileged and confidential. The Trustee believes that the Defendants have access to these documents. If they do not, the Trustee will produce these documents upon entry of an appropriate protective order

27. Produce any and all documents and communications reflecting any offer of settlement received by Cummings Manookian in the *Fitzgerald* case.

26

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she is in possession of emails between Afsoon Hagh, Brian Manookian and defense counsel in the Fitzgerald matter which are produced herewith.

> **Deleted:** that might be responsive to this Request, but those emails are equally available to the Defendants.

28.     Produce any and all documents and communications reflecting any offer of settlement received by Cummings Manookian in the *Shoemaker* case.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she currently has possession, custody or control of no such documents.

> **Deleted:** possesses

29.     Produce any and all materials, records, or documents reflecting any financial transaction of any kind entered into by Cummings Manookian after December 1, 2018.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee is unaware of the existence of any such documents.

30.     Produce any and all documents and communications reflecting Cummings Manookian's withdrawal from any matter, including but not limited to, correspondence and Motions to Withdraw.

27

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. The Trustee also objects to this Request in that it seeks documents available in the public record. Notwithstanding these objections, the Trustee states that she is aware that Brian Manookian filed a motion to withdraw in the Fitzgerald matter, though no order was ever submitted nor was any other notice filed. That motion specifically indicated that Afsoon Hagh would continue representing the Fitzgeralds. The Trustee also states that she received a letter from Brian Manookian to Marty and Melissa Fitzgerald purporting to notify them of Cummings Manookian's withdrawal, though the Trustee has been unable to confirm the authenticity of this document and/or the delivery of this document to the Fitzgeralds. These documents are produced herewith.

31.    Produce any and all engagement agreements between Cummings Manookian and Marty or Melissa Fitzgerald.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that Brian Manookian produced one such engagement agreement, which is attached hereto; Ronette McCarthy produced a different engagement agreement which is also attached hereto.

32.    Produce any and all engagement agreements between Cummings Manookian and Bretton Keefer.

**Response:**

28

| | |
|---|---|
| **Deleted:** The Defendants have equal access to both of these | |

| | |
|---|---|
| **Deleted:** to | |
| **Deleted:** the Defendants have access | |

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that Brian Manookian produced one such engagement agreement, which is attached hereto.

Deleted: to

Deleted: the Defendants have access

33. Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment of any mediation costs conducted in the *Shoemaker* or *Fitzgerald* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she has been provided no such documents.

34. Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment of any expert witness fees in the *Shoemaker* or *Fitzgerald* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she has been provided no such documents.

35. Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment for any transcript of any

29

deposition in the *Shoemaker* or *Fitzgerald* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she possesses certain documents produced by Brian Manookian that evidence deposition transcript expenses paid by Cummings Manookian in the *Fitzgerald* matter. These documents are attached hereto.

> **Deleted:** Mr. Manookian requested that these documents be treated as privileged and confidential. The Trustee believes that the Defendants have access to these documents. If they do not, the Trustee will produce these documents upon entry of an appropriate protective order

36.    Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment for any transcript of any hearing in the *Shoemaker* or *Fitzgerald* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she has been provided no such documents.

37.    Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment of any filing fees in the *Shoemaker* or *Fitzgerald* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the

30

Trustee states that she has been provided no such documents.

38.  Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment of any court costs in the *Shoemaker* or *Fitzgerald* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she possesses certain documents produced by Brian Manookian that evidence certain costs paid by Cummings Manookian in the Fitzgerald matter. These documents are attached hereto.

<table>
<tr><td>**Deleted:** Mr. Manookian requested that these documents be treated as privileged and confidential. The Trustee believes that the Defendants have access to these documents. If they do not, the Trustee will produce these documents upon entry of an appropriate protective order</td></tr>
</table>

39.  Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment of any travel expenses in the *Shoemaker* or *Fitzgerald* matters.

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she has been provided no such documents.

40.  Produce any records, including bank statements or copies of any negotiated checks from Cummings Manookian, reflecting Cummings Manookian's payment of any expense of any kind in the *Shoemaker* or *Fitzgerald* matters.

31

**Response:**

The Trustee objects to this Request on the grounds that it seeks documents that are more available to the Defendant than to the Trustee. The Trustee further objects to this Request in that it seeks documents that the Trustee is still seeking in discovery. Notwithstanding these objections, the Trustee states that she possesses certain documents produced by Brian Manookian that evidence expenses paid by Cummings Manookian in the Fitzgerald matter. These documents are attached hereto.

**Deleted:** Mr. Manookian requested that these documents be treated as privileged and confidential. The Trustee believes that the Defendants have access to these documents. If they do not, the Trustee will produce these documents upon entry of an appropriate protective order

32

Respectfully submitted,

/s/ Phillip G. Young
Phillip G. Young (TN 021087)
THOMPSON BURTON, PLLC
6100 TOWER CIRCLE, SUITE 200
FRANKLIN, TENNESSEE 37067
(615)-465-6008
phillip@thompsonburton.com

*Special Counsel for Jeanne Ann Burton, Trustee*

33

**Certificate of Service**

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via United States Mail, first class, postage prepaid, and by electronic mail to the following persons:

Craig V. Gabbert
Bass, Berry & Sims PLC
150 Third Ave. S, Suite 2800
Nashville, TN 37201
cgabbert@bassberry.com

This 13th day of March, 2022.

<div style="text-align:right">

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

</div>

| Deleted: 26th |
| --- |
| Deleted: January |

34

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | Case No, 3:19-bk-07235 |
| | Chapter 7 |
| CUMMINGS MANOOKIAN, PLLC | Judge Walker |
| Debtor. | Adv. Proc. No. 3:20-ap-90002 |
| JEANNE ANN BURTON, TRUSTEE | |
| Plaintiff, | |
| v. | |
| HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC, | |
| Defendants. | |

### DEFENDANT MANOOKIAN PLLC'S AMENDED RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION

Defendant Manookian PLLC provides amended responses to Plaintiff's First Interrogatories Nos. 5 and 8 as well as Plaintiff's First Requests for Production 1, 3 – 5, and 8.

### MANOOKIAN PLLC'S AMENDED RESPONSES
### TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

5.      State what amounts (by dollar amount or percentage of recovery) that the Defendant alleges it is entitled to from each of the CM Cases.

1

**Response:** Manookian PLLC disputes that there are "CM Cases" to the extent the Plaintiff mistakenly believes that plaintiff's cases or plaintiff's rights of actions belong to law firms or lawyers as opposed to the client. To the extent Plaintiff is inquiring into Manookian PLLC's entitlement to payment from the sixteen (16) filed lawsuits listed in Plaintiff's Complaint, and which Plaintiff incorrectly refers to as "CM Cases," Manookian PLLC responds as follows.

    a. Bailey – None.

    b. Balay – None.

    c. Beckwith – None.

    d. Brooks – None.

    e. Dyer – None.

    f. Fitzgerald – Manookian PLLC's entitlement, if any, to payment from this matter is governed by the specific terms of a written agreement between the Fitzgeralds and Hagh Law PLLC. Manookian PLLC does not have a copy of the written agreement but understands that one is being produced contemporaneously by the client and/or Hagh Law PLLC. Pursuant to Federal Rule of Civil Procedure 33(d), Manookian PLLC relies on the terms of the written agreement in response to this inquiry.

    g. Knapp – None.

    h. Manookian – None.

    i. Miller – None.

    j. Ruffino – None.

2

k. **Salas – None.**

l. **Shoemaker – Manookian PLLC's entitlement, if any, to payment from this matter is governed by the specific terms of its written agreement with the clients. That agreement is a business record of Manookian PLLC. Pursuant to Federal Rule of Civil Procedure 33(d), Manookian PLLC produces the specific agreement for review and inspection by the Plaintiff.**

m. **Thompson – None.**

n. **Waldron – None.**

o. **Wheeler – None.**

p. **Wolf – None.**

8. State the legal and/or factual support for the Defendant's response to Interrogatory No. 5 including, without limitation, reference to any communication establishing the amounts to which the Defendant claims entitlement.

**Response: For the cases in which Defendant answered "none," Manookian PLLC as an entity has no contractual relationship with, or did no work for, the Plaintiff. For the remaining cases, any entitlement to any fee or reimbursement for expense would be governed by the individual engagement agreement entered into by the client which sets forth the terms under which Manookian PLLC was to provide services and potentially receive compensation.**

3

To elaborate, in the fourth quarter of 2018, Cummings Manookian lost both of its practicing attorney members. Brian Cummings withdrew from the firm, and Brian Manookian was suspended from the practice of law. Clients of Cummings Manookian were advised that they would need to transition their cases to new attorneys or law firms as Cummings Manookian was required to wind down its operations and withdraw, given that it could not operate as a professional corporation without any actively licensed professional members.

A number of clients chose to transition their cases to Brian Cummings and his newly formed law firm Cummings Injury Law. Separately, Brian Cummings chose not to accept certain cases as he either did not have the capacity or the inclination to work on those cases. A much smaller number of clients (less than 5) ultimately chose to transition their cases to Afsoon Hagh and her newly formed law firm Hagh Law. Some clients took their matters to other attorneys.

Manookian PLLC was formed following Brian Manookian's reinstatement to the practice of law in 2019. Manookian PLLC worked, to some degree, on the *Fitzgerald* and *Shoemaker* cases. In the *Fitzgerald* case, Manookian PLLC assisted pursuant to an engagement agreement between the Fitzgeralds and Hagh Law. That agreement would spell out any compensation owed Manookian PLLC. In the *Shoemaker* case, Manookian PLLC entered into a written agreement with the client, but was later required to withdraw from the case. The written agreement only provides for repayment of advanced expenses in the event of a withdrawal with no

additional fee.  Manookian PLLC did not advance any expenses in the *Shoemaker* case.  The written agreement is produced herewith pursuant to Federal Rule of Civil Procedure 33(d).

## MANOOKIAN PLLC'S AMENDED RESPONSES
## TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

1.      Please produce every Document or Communication that you allege supports your denials in the Answer.

**Response:  Rule 34 of the Federal Rules of Civil Procedure governs the use of Requests for Production.  It provides that any "request... must describe with reasonable particularity each item or category of items to be inspected."  Defendant objects on the grounds that this Request does not describe the materials it seeks with reasonable particularity but, rather, is impossibly overbroad.  For example, the allegations against Manookian PLLC include assertions that it "utilized" Cummings Manookian's phone number and email address.  Thus, every email ever sent by Manookian PLLC from its own email accounts would "support its denial" of that allegation.  Likewise, every record of every phone call ever made by Manookian PLLC – none of which were made from a phone number owned by Cummings Manookian – therefore "support its denials" in the Answer.**

**To the extent Plaintiff chooses to identify any specific denial for which it seeks documentary support, Defendant will evaluate and endeavor to**

5

produce any responsive, non-privileged materials – as Defendant has repeatedly offered, both in writing and orally.

3.     Please produce every Document or Communication that evidences the creation of an attorney / client relationship between Defendant and any party to the CM Cases, including but not limited to engagement letters.

**Response: Objection. This Request is overly broad in the sense that, taken literally, every piece of correspondence or pleading in a case in which Manookian PLLC was involved would "evidence the creation of an attorney / client relationship." To the extent Plaintiff's request is limited to written engagement agreements, Defendant produces and attaches all such agreements within its possession, custody, or control between Defendant and any person or entity (subject to the previously-entered protective order).**

4.     Please produce every Document or Communication that evidences the termination of an attorney / client relationship between Defendant and any party to the CM Cases, including but not limited to disengagement letters.

**Response: Please see attached.**

5.     Please produce every Document or Communication that supports your response to Interrogatory 5, served contemporaneously herewith.

**Response: Please see attached.**

6

8.    Please produce copies of all Documents and Communications that relate or refer to the *Fitzgerald v. Osborn* case in the Circuit Court for Williamson County, Tennessee, including but not limited to correspondence between you and counsel for the defendants in that matter.

**Response:  Rule 34 of the Federal Rules of Civil Procedure governs the use of Requests for Production.   It provides that any "request... must describe with reasonable particularity each item or category of items to be inspected."  Defendant objects on the grounds that this Request does not describe the materials it seeks with reasonable particularity but, rather, is impossibly overbroad by seeking "all Documents and Communications that relate or refer to" a multi-year wrongful death case.**

**Defendant does not even know what "every document" that *relates* to a lengthy wrongful death case would consist of, but certainly it would include hundreds of pages of attorney-client privileged materials for which the client, the Fitzgeralds, hold the privilege.**

**To the extent Plaintiff wishes to identify even general categories of materials she wants, Defendant is happy to attempt to locate and produce responsive documents.   As currently posed, however, this Request is not capable of meaningful response.    Again, if Plaintiff will identify with reasonable particularity any materials or categories of materials from the *Fitzgerald* matter, Defendant will evaluate and endeavor to produce any responsive, non-privileged materials – as Defendant has repeatedly offered, both in writing and orally.**

7

Date: March 14, 2022

Respectfully submitted,

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC and
Brian Manookian*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed March 14, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

/s/ John Spragens

# UNITED STATES BANKRUPTCY COURT
## - MIDDLE DISTRICT OF TENNESSEE -

## TRANSCRIPT REQUEST FORM

Please complete one form for each trial or hearing, attach payment (search fee only),
and deliver to Clerk's office at: 701 BROADWAY, ROOM 170, NASHVILLE, TN 37203
or file electronically through CM/ECF.

| 1. NAME OF PARTY REQUESTING TRANSCRIPT | 2. DATE OF ORDER |
|---|---|
| Hagh Law PLLC (John Spragens) | 3/21/2022 |

| 3. EMAIL ADDRESS | 4. PHONE NUMBER |
|---|---|
| stacia@spragenslaw.com | 615-983-8900 |

**5. MAILING ADDRESS**

Spragens Law PLC
311 22nd Avenue North
Nashville, TN 37203

| 6. CASE NUMBER | 7. CASE NAME | 8. JUDGE |
|---|---|---|
| 3:20-ap-90002 | Burton v. Hagh Law PLLC et al | Charles M. Walker |

**9. DATE(S) OF HEARING/TRIAL** (If hearing/trial was on multiple days, please fill in all days hearing/trial held)

**From** March 17, 2022    **to** March 17, 2022

**10. ORDER IS FOR**

☐APPEAL ☑BANKRUPTCY ☐ADVERSARY
☐OTHER:_____

**11. PORTIONS REQUESTED** (Indicate the portion of the hearing/trial requested)

☑Entire Hearing/Trial    ☐Court Ruling Only
☐Voir Dire    ☐Testimony of (Specify Name):
☐Opening Statement (Plaintiff)
☐Opening Statement (Defendant)    _____
☐Closing Statement (Plaintiff)    _____
☐Closing Statement (Defendant)    ☐Other: _____

**12. REQUESTED TURNAROUND TIME**

☐Daily (24-Hour)    ☑7-Day Expedited
☐14-Day Expedited    ☐Standard (30-Day)

**13. NUMBER OF COPIES REQUESTED** (Transcript request includes 1 copy for the Court)   1

*By signing below, I certify that I will pay all charges for the preparation of the transcript, including search fee, deposit, and any additional charges as specified by the assigned transcriptionist.*

/s/ John Spragens      03/21/2022

Signature of Person Ordering      Date

| FOR COURT USE ONLY | DATE | BY |
|---|---|---|
| ORDER RECEIVED BY INTAKE | | |
| SEARCH FEE PAID | | |
| FILE(S) UPLOADED | | |

```
              UNITED STATES BANKRUPTCY COURT
            MIDDLE DISTRICT OF TENNESSEE (NASHVILLE)


IN RE:                      .   Case No. 19-07235
                            .   Chapter 7
CUMMINGS MANOOKIAN, PLLC,   .
                            .
                            .
                 Debtor.    .
                            .
. . . . . . . . . . . . . . .
JEANNE ANN BURTON,          .   Adv. No. 20-90002
                            .
                 Plaintiff, .
                            .
      v.                    .
                            .
HAGH LAW, PLLC, et al.,     .   701 Broadway
                            .   Nashville, TN 37203
                 Defendants..
                            .   Thursday, March 17, 2022
. . . . . . . . . . . . . . .   8:48 a.m.


     TRANSCRIPT OF PRETRIAL CONFERENCE AND MOTION HEARING
          BEFORE THE HONORABLE CHARLES M. WALKER
            UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:


 For the Plaintiff:      Thompson Burton PLLC
                         By:  PHILLIP G. YOUNG, ESQ.
                         One Franklin Park
                         6100 Tower Circle, Suite 200
                         Franklin, TN 37067
                         (615) 465-6008



 APPEARANCES CONTINUED.



 Audio Operator:         Tanja Brewer, ECR



 Transcription Company:  Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

For Hagh Law PLLC and      Bass, Berry & Sims PLC
Afsoon Hagh:               By:  CRAIG VERNON GABBERT, JR., ESQ.
                           150 Third Avenue South, Suite 2800
                           Nashville, TN 37201
                           (615) 742-6277

For Manookian PLLC:        Spragens Law PLLC
                           By:  JOHN T. SPRAGENS, ESQ.
                           311 22nd Avenue North
                           Nashville, TN 37203
                           (615) 983-8900

1    (Proceedings commenced at 8:48 a.m.)

2         THE CLERK:  All rise.  The United States Bankruptcy

3   Court for the Middle District of Tennessee is now in session,

4   the Honorable Charles M. Walker presiding.

5         THE COURT:  Good morning.  Please take your seats.

6         THE CLERK:  Your Honor, we're here on Case Number

7   20-90002, Burton v. Hagh Law, PLLC.

8         There's several matters set.  There's a pretrial

9   conference, motion to compel discovery responses from Manookian

10  PLLC.  We have a motion and notice to compel discovery

11  responses from Hagh Law, PLLC, a motion and notice to compel

12  discovery responses from Afsoon Hagh.  Also set this morning is

13  Manookian, PLLC's motion and notice to compel Trustee Jeanne

14  Burton, to respond to interrogatories, Manookian PLLC's motion

15  for the Court to determine sufficiency of plaintiff's responses

16  to request for admission, or alternatively to be deemed

17  admitted.  And the last matter is motion and notice to compel

18  Marty Fitzgerald to comply with subpoena for production of

19  documents.

20        THE COURT:  All right.  Thank you.

21        Obviously, with that long laundry list of discovery

22  related matters that we're here to resolve, as promised, we're

23  going to be resolving all of them today.

24        And if it gets hot in here, so be it.  There's

25  something wrong with the air, so if it gets warm in here, too

1  bad.

2          We have a hard break at 10:45 today.  We'll recess

3  from 10:45 to 2 p.m.  And at 2 pm., we'll come back and resolve

4  anything, if necessary, that remains.  And we will stay until

5  everything's resolved.

6          Obviously, with the many provisions within the Rules

7  of Evidence deemed in making discovery easy, it's the

8  responsibility of good lawyers to resolve discovery.  For us to

9  be here on such a list means that somewhere someone has failed.

10  So part of what I want to do today, I will be assessing who may

11  be responsible, or how many parties may be responsible, for

12  this breakdown in what typically is an orderly discovery

13  process.  And rather than let the secured creditors pay, if

14  it's one of the other parties, they'll pay.  Or the Trustee may

15  pay.  It all depends on who is responsible for this breakdown

16  in what, in my years on the bench, I don't think I've ever seen

17  quite the mess with discovery on what is not a complicated

18  case, and a case involving lawyers, which even makes it more

19  frustrating that we're here today.  That all these good lawyers

20  in the room, and all of the parties are either lawyers or law

21  firms, and the fact that this is Bankruptcy Court where we

22  typically resolve things, because there are limited funds and

23  everyone knows that.

24          So I'm a little discouraged to be here today.  I'll

25  just put it that way.

1          So, Mr. Young, let's get started.  We're going line
2    by line.  Tell me what's remaining and the Court will rule
3    accordingly.

4          MR. YOUNG:  Yes, Your Honor.  And I'm happy to --
5    I'll put the screen up where it's appropriate, but I'd like to
6    just sort of talk globally a little bit if I can first.

7          THE COURT:  Okay.

8          MR. YOUNG:  I think on Tuesday afternoon, we filed a
9    report so that hopefully the Court was not coming in completely
10   cold.

11         THE COURT:  Right.  And just one note on the status
12   report.  Is everyone in agreement that the status report
13   contains all of the outstanding discovery issues?  That there
14   are no other issues that need to be discussed today?

15         MR. GABBERT:  The ones related to Hagh Law are fairly
16   specific and, basically, I think we respond to most of those
17   already.

18         THE COURT:  All right.

19         MR. YOUNG:  And that's, I guess that's the point.
20   That's why I filed the status report is, from the Trustee's
21   perspective, it's a fairly finite set of documents that we're
22   still looking for, and I'm happy to go through those.

23         If the Court will, I'd like to start, though, with
24   the Fitzgerald subpoena, because that's perhaps the easiest.

25         We issued a subpoena to Marty Fitzgerald, who's a

1   third party.  It was issued December 9th, served December 13th.
2   I assume Hagh emailed an objection on December 27th, said other
3   counsel would contact us.  We didn't get any other kind of
4   objection.

5          Mr. Spragens indicated to the Court last time that he
6   thought he could coordinate Mr. Fitzgerald's response, though
7   not making clear that he was not representing Mr. Fitzgerald,
8   so I'm not trying to hold him to that.

9          But we've received nothing.  Those documents were a
10  finite set of documents, just as the Court knows.  And I want
11  to explain what they are and why they're important.

12         What we sought there were any kind of communications
13  involving engagement or disengagement of Cummings Manookian,
14  Manookian, PLLC, Hagh Law, PLLC, Afsoon Hagh, or Brian
15  Manookian.  We've received from Mr. Manookian an engagement
16  letter from Cummings Manookian.  We've received from Mr.
17  Manookian, a letter that he purportedly sent to Mr. Fitzgerald
18  notifying him that he'd have to get other counsel.  I don't
19  know, frankly, whether that was delivered, whether that letter
20  was delivered or not.  And that was part of the reason that we
21  were seeking to see what Mr. Fitzgerald had in his files.  And
22  there's been some reference to a Hagh Law engagement letter
23  with the Fitzgeralds which we've not seen.

24         And so that's the purpose of the subpoena.  I tried
25  to keep it, he's a third party, he's not really involved in

1  this. I tried to keep it as finite as possible, as easy to

2  respond to as possible. It should just be a handful of

3  documents, but I've received nothing. And so we just ask the

4  Court to compel responses to that subpoena.

5          THE COURT: Granted.

6          MR. SPRAGENS: Your Honor, would you like an update

7  on the status of that?

8          THE COURT: Yes. Sure.

9          MR. SPRAGENS: As Mr. Young knows, I was out of town

10  until yesterday evening, and I inquired about that when I got

11  back, and I'm told that Mr. Fitzgerald will be providing

12  documents to me by tomorrow. I would like an opportunity to

13  look at them because I think that there may be attorney-client

14  communications in the documents that he provides. But then I'm

15  prepared to turn over whatever is given to me early next week.

16          THE COURT: All right.

17          MR. SPRAGENS: So I just wanted the Court to know

18  that I've looked into that matter.

19          THE COURT: All right. And one thing, let's go ahead

20  and get appearances. I kind of jumped into this before we got

21  to the basics.

22          So, if I can start on this side and work across the

23  room?

24          MR. YOUNG: Yes, Your Honor. Phillip Young, and

25  Jeanne Burton is with me, here on behalf of the Trustee.

1          MR. SPRAGENS:  John Spragens on behalf of Manookian,

2    PLLC.

3          MR. GABBERT:  Craig Gabbert on behalf of Afsoon Hagh,

4    Hagh Law, Bass, Berry & Sims.

5          THE COURT:  All right.  Thank you.

6          For the Fitzgerald subpoena the Court will grant the

7    relief with the condition that any production be provided no

8    later than the 25th.  That will give Mr. Spragens adequate time

9    to review.  And based on the representations of Counsel, please

10   add that to the order, that it specifically requires the

11   turnover in production of the requested documents to the

12   Trustee, Trustee's counsel, no later than March 25th.

13         MR. YOUNG:  Thank you, Your Honor.  I will.

14         The next matter I'd like to take up is the, if the

15   Court will, is the motion to compel against Manookian, PLLC.

16   There are actually only three remaining issues that we have and

17   I'll talk about them, and then if we need to bring them up I'll

18   bring them up on the screen.  I have them prepared.

19         But it's one interrogatory and two requests.  And

20   Manookian, PLLC did send us, on Tuesday, amended responses to

21   those.  And actually, I believe I attached that to my status

22   report, those amendments.  And those amendments did take care

23   of one of the four outstanding matters as of that time, but

24   there are still three outstanding matters and I tried to detail

25   the issues remaining in the status report.

1    The biggest one, Your Honor, is Interrogatory Number
2  5.  Interrogatory Number 5 asks, it has a list of particular
3  cases that Cummings Manookian had been involved in
4  pre-petition, and it asked Manookian, PLLC to say whether it
5  had an interest in the fees of any of those cases.  And if so,
6  state by dollar amount or percentage the interest in fees.

7    And we asked the same question of Hagh Law, and Hagh
8  Law answered that question correctly, the way we had asked.
9  But Manookian, PLLC has not responded to the question of the
10 dollar amount or percentage of the Fitzgerald or Shoemaker fees
11 to which it claims entitlement.

12   I want to explain to the Court why this question is
13 so critical to get an answer, because the answer so far has
14 essentially been, it's governed by -- it's governed by the
15 terms of some engagement letters and that's how it's going to
16 be decided, what percentage.

17   We need a percentage or a dollar amount for this
18 reason.  If Manookian, PLLC claims that they are entitled to
19 fees, to any portion of the fees, in either the Fitzgerald or
20 the Shoemaker case, that's inconsistent with the position
21 they've taken to this court so far.  That is that once a law
22 firm withdraws, it has waived its rights to fees.

23   So in that case, Mr. Manookian, when he was
24 suspended, withdrew in both of those cases.  So if they say
25 they are entitled to fees, there's an inconsistency.  If they

1  say they are entitled to no fees from either of those cases,

2  then I'm not sure they need to even be a party to this anymore,

3  because those are the only two remaining major assets of this

4  case.

5          And so either way, that's a significant outcome to

6  get a commitment in writing, not orally but in writing, as to

7  whether or not Manookian, PLLC claims an interest, a specific

8  interest, in those fees.  That's why that question is so

9  important, and that's why we've kept pushing on that.  It's why

10 I said that was the first and most important issue and that it

11 might moot all other issues as between the Trustee and

12 Manookian, PLLC.

13         So that's the only interrogatory that remains

14 unresponded to, or not satisfactory to the Trustee.

15         And then there are two other requests that we can get

16 to, but I'd like to deal with the interrogatory first, if the

17 Court will.

18         THE COURT:  All right.

19         Mr. Spragens?

20         MR. SPRAGENS:  Thank you, Your Honor.

21         As Your Honor probably saw in the correspondence that

22 was produced, well that was filed in support of the status

23 report, I have tried to figure out exactly the information that

24 Mr. Young has been looking for.  I have tried to make a

25 representative of the firm available to talk to Mr. Young to

1 try to get answers to these questions.

2        With respect to this specific interrogatory, we have

3 produced the written agreement itself. I think that Federal

4 Rule of Civil Procedure 33(d) entitles us to produce documents

5 in response to interrogatories, documents that are maintained

6 in the course, the ordinary course of business.

7        There is a legal question that's at issue there, and

8 the Trustee can draw her own conclusions from the face of the

9 representation agreement about whether there is any entitlement

10 to fees, that the agreement does not claim any entitlement to

11 fees. And I think the document speaks for itself.

12        So we have responded to that interrogatory. We've

13 given them the source document now. And in my view, this is

14 sort of a "gotcha" attempt to try to set up a heads I win,

15 tails you lose, situation by the Trustee. In fact, we've just

16 given them the document and the Trustee can formulate its own

17 legal position about the document.

18        So in my view, we fully responded under 33(d).

19        THE COURT: Just as someone who's practiced with

20 lawyers, for lawyers not to know how much money they think

21 they're going to make seems a little, frankly, ridiculous. But

22 I see your position.

23        Mr. Young, did Hagh Law respond in a fashion that

24 would give you the information?

25        MR. YOUNG: No, Your Honor. Hagh Law, in response to

1  that same question, we asked the same question of Hagh Law, and

2  they actually gave a percentage that they say they're entitled

3  to.  So that I can understand.  I know what to do with that.

4        I'll note that Manookian, PLLC did produce one

5  agreement in the Shoemaker case.  It did not produce an

6  agreement related to Fitzgerald, but said that any right to

7  fees in Fitzgerald were defined in a Hagh Law engagement letter

8  with the Fitzgeralds, and we've not seen a Hagh Law engagement

9  letter with the Fitzgeralds.  So I don't know what to do with

10 that.  To say there's some document that's floating out there

11 that defines our interest, but we've not seen it, so I just, I

12 don't know what it to do with that.

13       MR. GABBERT:  Your Honor, with respect to the

14 Fitzgerald case -- do you mind if I stand here, or should I

15 come to the podium?

16       THE COURT:  You can --

17       MR. GABBERT:  With respect to the Fitzgerald case, we

18 responded we don't have a copy of any agreement.  But, you

19 know, we think that any -- it says, "Manookian PLLC's

20 entitlement, if any, to payment is governed by the specific

21 terms of a written agreement between the Fitzgeralds and Hage

22 Law.  Manookian, PLLC does not have a copy of the written

23 agreement."  So we've done our best to answer that one.

24     Obviously there's outstanding discovery to the

25 Fitzgeralds, maybe that will turn up what he's looking for.

1  Maybe Hage Law has documents, although my understanding is they

2  produced documents.

3       So, you know, I think the Fitzgerald question is

4  resolved, from our perspective.  We've given him what we have,

5  which is no written agreement.  And we've told him that we

6  looked and we don't have one.

7       With respect to the Shoemaker case, we've given him

8  the written agreement, and I think that that should resolve the

9  question.

10       MR. YOUNG:  And, Your Honor, just briefly.  That

11  resolves the request for production on that point.  What I'm

12  asking is whether or not they claim any entitlement to fee

13  based on any of that.

14       THE COURT:  All right.  What the Court's going to

15  order is a definitive statement from Manookian, PLLC as to any

16  percentage or dollar amount they believe they are owed, period.

17       Again, we're dealing with attorneys, attorneys know

18  how much money.  This is not a calculus question.  Provide the

19  information.

20       MR. YOUNG:  Thank you, Your Honor.

21       I'm ready to move on to the request for production,

22  if the Court's ready.

23       Request for Production Number 1 asked for any

24  documents that supported any affirmative defense or denial that

25  was set out in the answer.

1          And I understand the issue about that's awfully
2    broad.  I've tried to define that in subsequent pleadings to
3    say what I'm really looking for here is Manookian, PLLC, and
4    the other defendants as well, we'll get there, but Manookian,
5    PLLC has raised affirmatively that they have proof that would
6    disprove some of the -- some of the Trustee's allegations.  And
7    things that they've mentioned in the past were they had proof
8    by video or keyswipe information that showed that Afsoon Hagh
9    never went through the premises, the law office, after July of
10   2018.

11         They have documents showing that somebody other than
12   Cummings Manookian owned the furniture, equipment, telephone
13   number, website domain.  That they had documents concerning
14   Cummings Manookian's rights to use the premises, or not use the
15   premises, at 45 Music Square West.  And some, I guess, vague
16   illusion to time records for the cases, time records that the
17   lawyers may have kept.  If those exist, we need them.

18         If they can disprove that this is not -- we don't
19   want to go on a wild goose chase.  We want to narrow down what
20   the real issues are.  And if they can disprove the Trustee's
21   allegations, then, by all means, we'd like the evidence to
22   disprove that so that we can narrow this down.

23         Those issues that I just -- we don't really know what
24   we don't know, frankly, in this case.  But those are issues
25   that I've seen referenced in pleadings before.  And to the

extent that sort of information exist, we think the Trustee's
entitled to receive it now.  And if we're not, then, Your
Honor, we'd ask that the Court say what's not produced by a
certain date can't be used.  I think it's that simple with
regard to that.

If video really doesn't exist, or key fob information
really doesn't exist, that's fine.  If was just puffery or
whatever, that's fine.  We just don't want something to come up
later, well after discovery is closed, and we have to deal with
it at that time.

So that's what request Number 1 with regard to
Manookian, PLLC involves, and that's really all we're looking
for, Your Honor.

THE COURT:  Okay.

And, Mr. Spragens, Mr. Young has enumerated specific
items or documents.  What is your objection to providing what,
based off whatever conversations he's had with you, may or may
not exist?

MR. SPRAGENS:  Well, with respect to certain
information, like he asked about key fobs and swipes, you know,
what dates is he asking about, for example.  Because producing
here's -- let me tell you from my perspective what has happened
in this discovery process.

First of all, asking for all documents that support
your affirmative defenses is a very broad, extremely broad,

 1   interrogatory.

 2            THE COURT:  The Court agrees.

 3            MR. SPRAGENS:  So that is a huge challenge for us to

 4   respond to.

 5            THE COURT:  Right.  There's no dispute with that.

 6            MR. SPRAGENS:  Compounding that challenge is the fact

 7   that the allegations in the complaint are sweeping allegations

 8   about the conversion of property, the misuse of office

 9   resources, furniture.  There's all this, you know, stuff in the

10   complaint, these very broad allegations.  And I think if you'll

11   indulge me just for a moment, what we have been trying to do in

12   discovery is understand the nature of those allegations so then

13   we could respond to them.

14            And we've tried it the formal way by saying, please

15   tell us what property are you talking about has been improperly

16   used by Hagh Law that is actually Cummings Manookian's

17   property, or has been used by Manookian, PLLC, that is actually

18   Cummings Manookinan's property.  On what dates was there access

19   to the premises at 45 Music Square West that was inappropriate?

20            So we're trying to get the information that is

21   underlying the allegations of the complaint so then we can

22   provide that information to the Trustee.  But as it stands

23   right now, just tell us everything about your involvement in

24   all these cases, that could turn up, you know, potentially

25   thousands of emails, a lot of which are attorney-client

1  privileged, and a lot of which are not relevant to the

2  allegations.

3          With respect to what property was used, what's our

4  defense.  We don't know what property they're saying was used

5  improperly.  So if it's that, you know, Ms. Hagh, or that

6  Cummings -- I mean, or that Manookian, PLLC was using 45 Music

7  Square West on certain dates, then we might be able to do a

8  search and respond to that.

9          And frankly, Your Honor, this is why I have offered,

10  time and time again, to make representatives of, you know,

11  Manookian, PLLC available to talk to Mr. Young so we can try to

12  figure out what's there and what exists and what is responsive

13  to their discovery requests.

14          But as it stands right now, they've made sweeping

15  allegations in the complaint.  They haven't told us much of

16  anything about the details behind those allegations.  I think,

17  as I've told the Court before, that those allegations couldn't

18  pass a Rule 9(b) scrutiny on these fraud allegations if we put

19  them to their burden.  But I just want to know what they're

20  asking for and we will make a good faith effort to respond.

21          I have never before offered to make a client

22  available to the attorney from the other side for effectively

23  an informal deposition, and I will do so here.  And I think the

24  fact that we're all lawyers, it would be a very productive

25  conversation, but he hasn't taken me up on that offer.

1          So if he could help me respond, I would respond.  As
2    it stands right now, it is extremely broad, sweeping discovery.
3    And, you know, I can't go through every piece of property at 45
4    Music Square West and talk about how it was acquired, on what
5    date, who used it.  I'd like a little bit more clarity in order
6    to respond.

7          THE COURT:  All right.  What the Court's going to
8    order on this one is, during our break I want the parties to
9    confer.

10          Mr. Young, I want you to provide time ranges, details
11    about what property you believe might be at issue.  And based
12    off the enumerated list of things that you mentioned, Mr.
13    Spragens, I want you to then say, okay, between this date range
14    and that date range, if there are videos, if there's swipe
15    records, we will provide X, Y, Z.  All right?

16          So that's your homework for the break.  Because
17    again, this one seems fairly easy to resolve.

18          As you've already admitted, Mr. Young, your original
19    request was overly broad.  You have some basis based off
20    representations from Manookian, PLLC as to what might be
21    available.  So any items that are in that list, or similar, or
22    were available and known once you get this date range, like any
23    other piece of discovery that isn't turned over, you run the
24    peril of at trial you're not able to use it.

25          I'm not making any ruling one way or the other,

1  because I think it would be a very fact specific finding,

2  since, again, there is an unknown universe out there.  But

3  obviously anything that was available and known that would meet

4  the request, once you get the date range and the specifics of

5  what property might be at issue, would be subject to being

6  excluded if you try to use it at trial.

7        So that one's an easy one to resolve, and I'll give

8  that as your homework for the break.

9        MR. GABBERT:  And does the Court know what time March

10  madness tips off today?

11        THE COURT:  No.  But again, this is a painful day --

12        MR. GABBERT:  I understand, Your Honor.

13        THE COURT:  -- for all involved.

14        MR. YOUNG:  Thank you, Your Honor.

15        The last issue with regard to Manookian, PLLC is

16  Request Number 8, which we were seeking documents and

17  correspondence related to the Fitzgerald case.  Specifically

18  what we're looking for is any email communication with third

19  parties between Manookian, PLLC and any third parties.

20        I'm not looking for client confidentiality.  I'm not

21  looking for that sort of thing.  What we're trying to establish

22  here, the parties, both Manookian, PLLC and Hagh Law, have

23  claimed that they, and not Cummings Manookian, did all the

24  work.  And so I think we can verify or deny that by seeing how

25  much work was done at different time periods by Manookian, PLLC

1  and by Hagh Law.

2          We've received no emails from Manookian, PLLC, and so

3  that's -- it's a finite universe and we're looking for emails

4  related to that case from Manookian, PLLC to any third parties,

5  not to clients, except to the extent that it's an engagement

6  communication, which we've already asked for.  But that's it on

7  Request Number 8.

8          THE COURT:  Okay.

9          MR. GABBERT:  Your Honor, on that one, which is, I

10  believe, Request Number 8, it requested all documents and

11  communications that relate or refer to the Fitzgerald case

12  including, but not limited to, correspondence between you and

13  counsel for the defendants in that matter.

14          What we have said is that it's a very broad universe

15  of documents.  It does include attorney-client privileged

16  documents.  It includes a lot of communications, frankly.  And

17  we said, if you can identify even general categories of

18  materials she wants, we will be happy to look for them.  But

19  right now, that is -- it is too broad.

20          So if what he is saying is, I'm looking only for

21  communications between Manookian, PLLC and opposing counsel or

22  third parties -- or I mean, I don't know what "third parties"

23  means, but if we can get some specificity, we will look and we

24  will try to produce those documents.  As it stands right now,

25  you know, it's thousands upon thousands of document requests.

1          THE COURT:  All right.

2          Mr. Young?

3          MR. YOUNG:  Yes, Your Honor.  I'll be as specific as

4   I can be.

5          What we are looking for are communications with

6   Defense Counsel, experts.  Anybody like that would not be

7   privileged.  I understand that there would be a number of

8   communications that are privileged.  We're looking for

9   non-privileged documents to establish whether or not, you know,

10  how involved Manookian, PLLC was in the trial of that case.

11         MR. GABBERT:  And, Your Honor, I would just note that

12  both of those categories could contain privileged

13  communications.  The expert communications, a lot of those

14  communications, may be privileged under the rules.  And when it

15  comes to correspondence with Defense Counsel, it depends on if

16  we're talking about negotiations towards settlement or not.

17         I know the Trustee has taken the position that

18  settlement negotiations are always completely protected, and

19  so, you know, we will look for those.  And if we have documents

20  that are responsive in those two categories that are

21  privileged, we'll produce a privilege log and he can evaluate.

22         MR. YOUNG:  And that's fine with me, Your Honor.

23         THE COURT:  All right.  Well, again, why are we here

24  on that one?  That should have been resolved amongst the

25  lawyers from day one.

1    So the Court will grant that request to make -- to
2  compel that production, because it is what it is.  And if there
3  are no responsive documents, there's no responsive documents.
4  Let's keep it moving.

5          MR. YOUNG:  Thank you, Your Honor.

6          That's all I have on the Manookian, PLLC motion to
7  compel.  If the Court would like me, I could take up the Hagh
8  Law and Hagh motions to compel next.

9          THE COURT:  Okay.

10         MR. YOUNG:  And those are related.  There's only one
11 distinction between those two, and I'll try to highlight that
12 first for the Court.  And then everything else -- everything
13 else is identical as between Hagh and Hagh Law.  The questions
14 were virtually identical, and the responses were virtually
15 identical.

16         The one exception, and this is Hagh Law Interrogatory
17 Number 8, and it asks to identify the basis for claiming the
18 percentages of interest that I referred to earlier in each
19 case.  And this is actually a pretty finite question here,
20 because there have been -- there have been engagement letters
21 produced that were between Cummings Manookian and the
22 Fitzgeralds, for example, and Cummings Manookian and the
23 Shoemaker plaintiffs.  And then there was one that was
24 Manookian, PLLC and the Shoemaker plaintiffs.  And then there
25 was one that was a much later one that was Hagh Law and the

1  Shoemaker plaintiffs.

2          What I would like in response to Interrogatory Number

3  8 is for Hagh Law to identify, by date and party, the

4  engagement letters it claims that -- the claims that gives it a

5  right to fees in Fitzgerald and Shoemaker.

6          So for example, if Hage Law is taking the position

7  that the Cummings Manookian engagement letter with the

8  Fitzgeralds is what gives rise to its claim for fees, I just

9  want to know that so that we know we have that document.  If

10 there's another document out there that they think gives rise

11 to the claim for fees, I just want to know what that document

12 is to know whether we have it or not.  Because, right now,

13 it's very difficult for me to ascertain.

14         So, for example, the only one I have in Fitzgerald so

15 far is an engagement letter between Cummings Manookian and the

16 Fitzgeralds.  And so I don't know if that's the engagement

17 letter upon which they base their client for a fee, or if

18 there's another one out there.

19         And so I'm looking just specifically for an

20 identification by date and party of the engagement letters that

21 they believe gives rise to a claim for fees in Fitzgerald and

22 Shoemaker, just in those two cases.  And that would resolve the

23 issue with Interrogatory Number 8 as to Hagh Law.

24         THE COURT:  Okay.

25         Mr. Gabbert?

1          MR. GABBERT:  Well, I think we sent seven -- we

2    resent six letters regarding fees this morning.  One of them I

3    think is on Manookian letterhead, but it says the attorneys are

4    Manookian and Hagh Law.  And I think I've sent that before, but

5    clearly that gives Hagh Law all the right to fees.  But, you

6    know, they're there, and she did all the work.

7          And Manookian couldn't get a fee because Manookian

8    didn't have a license, and she continued to represent all of

9    these plaintiffs and basically got the cases to conclusion.

10   And whether she had a fee agreement or not, quite frankly,

11   Manookian can't get a fee, Manookian has no license, and she

12   basically did all the work.

13         And we've already agreed, I agreed this morning -- my

14   client, I think you know, had a baby not too long ago, and

15   she's got the kids home on spring break this week.  Three kids.

16   I think the oldest may be 4.

17         But we've agreed to produce emails and everything

18   else by the Monday of the last week of the month.  I think it's

19   the 26th or 27th, or something like that.

20         But we produced the fee agreement.  I think we

21   produced them before, and I emailed them back to him again this

22   morning.

23         THE COURT:  All right.  So it's your understanding

24   there are no other agreements that would entitle Hagh Law to

25   fees?

1          MR. GABBERT:  Other than the ones I've sent him.

2          THE COURT:  All right.  So --

3          MR. GABBERT:  Well, wait a minute.  If she's doing

4    work on a case she's entitled to a fee.  Whatever agreement she

5    has, whether it's in writing or not, if she's working on a case

6    she's entitled to a fee.  She and the client may have done

7    that, and may have done it in writing, may have not done it in

8    writing, but that doesn't mean she's not entitled to a fee.

9          And Cummings, and Cummings Manookian, cannot get fees

10   because their named partner is disbarred, or basically, his

11   license is suspended.  And she didn't work for them, and she

12   never was a member of either one of those firms.  She had been

13   a contractor and she did work for them, but she was an

14   independent contractor.  But she was never a part of either one

15   of those firms.

16         So I don't know where he gets to that, quite frankly.

17   We'll talk about it another day.  That will be a legal issue.

18   But I think it's a fairly clear legal issue, based on what I

19   know as a as a prior disciplinary counsel, as well.

20         THE COURT:  Okay.

21         So, Mr. Young, it sounds like you've got the

22   information that is going to be responsive.  If you need to

23   actually pin it down with dates, I mean, Mr. Gabbert's

24   available right now.  During the break sit down and have him

25   answer any questions specific to the agreements.  And if

1  there's anything unanswered, he's available for you to ask, you

2  know, what does this really mean?

3         MR. YOUNG:  Well, Your Honor, here's the -- I just

4  looked through what was sent.  I had not looked through this

5  morning what was sent to me right before we started here, but I

6  just now looked through it.  And again, herein lies the issue.

7  I received one Fitzgerald engagement agreement, and that's a

8  Cummings Manookian Fitzgerald letter, a Cummings Manookian

9  engagement letter with Fitzgerald.

10         If there are none, I just wanted something in writing

11  that says, there are no more.  That's all we need in this case.

12  If this is it, if I've got the universe, a response to

13  Interrogatory Number 8 that says, you've now received

14  everything we have, is fine.

15         I just don't want to be facing a situation where

16  three months from now somebody finds another letter on a server

17  that hadn't been searched.  That's what I'm trying to void,

18  because I was -- I was told that she was still looking through

19  another server.

20         And so if that's it, then a written statement that

21  says that is fine.

22         THE COURT:  Okay.  Well, I think Mr. Gabbert made

23  that representation in open Court.

24         MR. GABBERT:  And this is just on the Fitzgerald

25  case, the question now that you're looking for?

```
 1              MR. YOUNG:  What's that?

 2              MR. GABBERT:  Just on the Fitzgerald case is all

 3  you're looking for?

 4              MR. YOUNG:  Yeah.  Unless there's -- I just want to

 5  know that we've received everything on Fitzgerald and Shoemaker

 6  that exists.  That's all I need.

 7              MR. GABBERT:  Well, you've, I mean, I sent you some

 8  on Shoemaker this morning.

 9              MR. YOUNG:  Yeah.  Yeah.  And I've seen that already

10  in the -- there was one for Cummings, or from Manookian, PLLC

11  and one for Hagh Law.

12              MR. GABBERT:  Well, the Manookian, PLLC lists Hagh

13  Law as a co-defendant.

14              MR. YOUNG:  Right.  I understand.  There's two of

15  them there, but --

16              MR. GABBERT:  Okay.

17              MR. YOUNG:  Right.  But just a statement that says we

18  received everything, is fine.

19              THE COURT:  All right.  So between now and when we

20  come back at two o'clock --

21              MR. GABBERT:  Well, I'm going to have to check with

22  my client on whether there's anything else on Fitzgerald other

23  than what I have here.  I'll confirm that.

24              THE COURT:  All right.

25              MR. YOUNG:  Yeah.  And that's why I just asked for
```

1  that in writing.

2          THE COURT:  All right.  I'll expect that confirmation

3  to be provided by two o'clock today.

4          MR. YOUNG:  Thank you, Your Honor.

5          The other issues are all requests for production, and

6  they apply equally to Hagh Law.  And I assume Hagh, the first

7  is Request Number 1, which is the exact same one we just went

8  through with regard to Manookian, PLLC.  That is, that is

9  whatever you've got to prove your affirmative defenses.  And I

10 would presume that we can work that out the same way the Court

11 told us to work out Request Number 1 with regard to Manookian,

12 PLLC.  So --

13         MR. GABBERT:  Well, on that one, Your Honor, please?

14 Hagh Law had no ownership or light lease or anything on the

15 agreement.  It has no access to anything related to the

16 building, on access to the building.  So that's an

17 inappropriate thing to ask Hage Law, because they did not

18 maintain offices in that building.

19         MR. YOUNG:  Your Honor, I just ask whatever they

20 have, just to --

21         THE COURT:  Right.  So your response is -- there's

22 your response, and you've responded accordingly.

23         MR. GABBERT:  We've responded.  Yeah.

24         THE COURT:  All right.

25         So anything else on that one, Mr. Young?

1          MR. YOUNG:  No.

2          THE COURT:  I think Mr. Gabbert stated clearly his

3   client's position.  And again, if something comes up later that

4   should have been known and should have been turned over, then

5   that's kind of how this works.  But based off of his

6   representation, if they had no ability or access to get videos

7   or swipe records or anything like that, then there's your

8   response.

9          MR. YOUNG:  Thank you, Your Honor.  That satisfies

10  me.

11          Request Number 3, copies of all engagement letters.

12  This is the same issue that we just talked about before.  And I

13  understand this will be resolved the same way, which is a

14  statement that says we produced all engagement letters that we

15  have, is fine.  I just don't want -- again, I just don't want

16  to find out later that there's another engagement letter that

17  we didn't know and we've chased the case this way only to find

18  out that there's something else out there.  So the same issue

19  as to Interrogatory Number 8 with regard to Request Number 3.

20  And I assume we'll handle that the same way?

21          THE COURT:  Yes.

22          MR. YOUNG:  Request Number 5.  And this is somewhat

23  related.  It asks for any document that supports its claims to

24  fees.  Again, that's going to be -- I assume that's going to be

25  the engagement letters.  But if there are anything else, like

1  time records, I've seen some reference to time records, if any

2  of the parties have, if Afsoon Hagh or Hagh Law have time

3  records I think that would be responsive to Request Number 5.

4          I've received none.  I don't know whether that means

5  there are none, but I just want to get that on the record that

6  if there are time records, we want them turned over.  Because

7  I've seen some reference to them, but we've not gotten

8  anything.

9          So I don't know if Mr. Gabbert knows whether his

10 client has time records or not, but --

11         MR. GABBERT:  These cases were contingent cases.  Time

12 was not an issue.

13         MR. YOUNG:  Fair enough.

14         And, Your Honor, the reason I bring that up is

15 because obviously there are two ways to get a fee.  One is by a

16 written engagement letter, and one is by equity.  And time

17 factors into an equitable analysis, which is why I've asked for

18 that question.

19         THE COURT:  All right.

20         MR. YOUNG:  But if there are none, we'll consider

21 that resolved.

22         THE COURT:  All right.

23         MR. YOUNG:  Request Number 8.  And this is what Mr.

24 Gabbert just alluded to, and he did send me an email last night

25 that said that they would produce any email correspondence

related to Fitzgerald or Shoemaker by that date that he
mentioned.

          MR. GABBERT:  The 28th.

          MR. YOUNG:  And so if we could just incorporate that
in an order?

          THE COURT:  Please.  And put that date, the 28th, or
whatever was agreed, between the two of you.

          MR. YOUNG:  That resolves the Trustee's issues.
Those are the only issues the Trustee had regarding outstanding
discovery.

          THE COURT:  All right.

          Mr. Spragens.

          MR. SPRAGENS:  See if I can use the technology
without showing you my brackets.  All right.  Are you able to
see that, Your Honor?

          THE COURT:  I can.

          MR. SPRAGENS:  Okay.  We may not need to refer to it,
but I at least wanted to have it there.

          As Your Honor is aware, this action was filed two
years ago, over two years ago.  There was a motion for turnover
expedited, there have been a lot of proceedings over the last
two years.  A year ago, we propounded this written discovery,
in January of 2021.

          And sorry, I jinxed it.

          And our motion deals with the fact that the Trustee

1   has still not been able to give us, even, responses to our
2   interrogatories, which are really taking the allegations in the
3   complaint and saying, what information do you have to back up
4   this allegation, or that allegation?  Questions like:  What
5   assets are you alleging were converted or fraudulently
6   converted?  What property are you alleging was misused, and
7   when?

8           And the Trustee's responses to each and every one of
9   these, we now have some amended responses to our
10  interrogatories, basically are, you know, you have the
11  information.  We don't have the information.  But there's
12  really no, there's no final statement that we don't know it's
13  the statements are -- they're very boiler plate objections,
14  Your Honor.

15          So I'm happy to go through each interrogatory one by
16  one and discuss them.  We have made repeated attempts to try to
17  get this information from the Trustee and we've met with
18  resistance every time.  So now we have essentially all of our
19  interrogatories that we've propounded, we haven't been given
20  the amount of damages that are being sought here, or how the
21  Trustee views damages.  What is the trustee's calculation of
22  damages?  We haven't been given the property, the assets that
23  were converted.  We haven't been given an itemization of the
24  real estate at the time that the real estate was improperly
25  used.

1   And so that's what our discovery is seeking.  Our

2 motion, which is docketed at 104, goes through each one and

3 lays out why we view the responses as deficient.  And I'm happy

4 to walk through each and every one with Your Honor.

5   I think once we get some guidance from the Court it

6 would be -- you know, that might help us meet and confer, which

7 we should have been able to do by now, I would think, and get

8 this resolved.

9   But it cannot be the case that the Trustee is allowed

10 to just make all these allegations, which sound like fraud and

11 are very specific and detailed, and then refuse to answer

12 discovery about, okay, well, what's the basis of these

13 allegations.  I would submit that we wouldn't have some of

14 these other issues with discovery that we've been talking about

15 this morning if we had gotten some basic information in

16 response to our interrogatories.

17   So, you know, if the Court would like, I could go

18 through these one by one.

19   THE COURT:  That's what we said we're going to do

20 today.  So start with Number 1.

21   MR. SPRAGENS:  All right.  Thank you, Your Honor.

22   Number 1 asks for case names of every previously

23 pending legal action in which Cummings Manookian withdrew,

24 terminated their representation, or stopped providing legal

25 services to any client from January 1st, 2018 to the present.

1    In other words, we are trying to find out in which
2 cases the Trustee's view as that the Cummings Manookian
3 withdrew.  The Trustee objected and refused to provide
4 information in response to that, other than citing a letter
5 that was sent to the Fitzgerald plaintiffs about notice of
6 withdrawal.

7    If that is the trustee's full response to
8 Interrogatory 1, and the Trustee is not going to be able to
9 supplement it, that's fine.  But I think the interrogatory
10 response needs to say that this is all we know.  Instead, it
11 says, this calls for information we're still seeking in
12 discovery.

13    So with each of these we're caught in this cycle of,
14 we ask a question and the response is, well, we don't know, you
15 tell us.  So that's our view on Interrogatory 1.

16    THE COURT:  So if I understand, Cummings Manookian
17 knows what cases and clients they were involved and during that
18 date range, knows when they withdrew, or if they withdrew, and
19 you want the Trustee, who stepped in the shoes with not all the
20 books and records, and certainly not all the information and
21 the knowledge of this, to answer that interrogatory?

22    MR. SPRAGENS:  I want the Trustee to answer what the
23 Trustee knew at the time she made these allegations in the
24 adversary proceeding.  And I think that's reasonable.  I don't
25 think you're entitled to make allegations of fraud in an

1 adversary proceeding, or any federal lawsuit for that matter,

2 and then say, well, I don't actually, I don't know the answer.

3 They just alleged fraud upon information and belief. I don't

4 think that is how it works.

5       I understand that bankruptcy is a different universe

6 and, one, frankly, as the Court knows, that I don't practice in

7 very often, but I still don't think the Trustee is entitled to

8 just say, I don't know what the basis for these allegations

9 was. But if that's the answer, the Trustee needs to say so.

10       THE COURT: Okay.

11       Mr. Young?

12       MR. YOUNG: I'm happy to address this one, Your

13 Honor, and I'm going to address it sort of in a global way.

14       As I think the Court knows, trustees have no

15 firsthand knowledge. Trustees come into a case cold and they

16 learn what they can get from third parties, from the debtor,

17 from defendants, from creditors, from whomever like that. And

18 in this case it's been incredibly challenging because nobody

19 will turn over the information without Court orders.

20       And even after Court orders, they still don't turn

21 over the information. In the case of the Cummings Manookian

22 motion to compel that was entered a year-and-a-half ago, still

23 haven't gotten most of that information.

24       And so the complaint, as the Court may recall, Mr.

25 Manookian wanted the complaint filed by a certain date. We

Case 3:23-cv-00961   Document 6-1   Filed 10/04/23   Page 432 of 678 PageID #: 3348

1  filed that complaint based on facts and reasonable inferences.
2  That's what the -- that's what the law allows, facts and
3  reasonable inferences.

4        We have a handful of facts.  We have stated where we
5  have facts.  Those facts, frankly, mostly come from pleadings,
6  and the few relevant documents that we've gotten from the
7  defendants and from Cummings Manookian, but a lot of it have
8  come from pleadings in other cases.  Everything else, at this
9  point, is just an assumption, really, based on the facts.  And
10 we've stated that where that's been the case.

11       It is a little bit like a game of hide the ball where
12 then the trustee's criticized for not knowing the color of the
13 ball that's being hidden.  We are doing the best we can to
14 respond.  After discovery I'm sure we can respond more fully,
15 and we will respond more fully, once we get all this
16 information.

17       But essentially, as the Court's noted, the parties
18 are asking us for information that's within their exclusive
19 control, that in a lot of respects they've withheld from the
20 Trustee, and then criticizing the Trustee because she doesn't
21 know information that's been withheld from her.

22       And I think the Court will -- if the Court will look
23 through our responses, you'll see that we filed objections, and
24 that in almost every case we said, notwithstanding the
25 objection, here's the best we know how to answer it at this

1  time.

2          I've never, I've represented trustee's for over 15

3  years, I've never gotten this sort of discovery to a trustee

4  because everybody understands the knowledge limitations of a

5  trustee, that a trustee goes out and gathers information, not

6  disperses information.  So I don't know what to say about it,

7  other than that.

8          But I think that our responses are very fair.  I

9  think that they're very complete under the circumstances.  If

10 there's something that we legitimately don't think is an issue,

11 we've said so.  If there is information that we have or

12 assumptions we're making, we've said so.

13         And so I don't really know how to better answer this.

14 I really tried.  I took the Court's admonition to heart.  The

15 Trustee and I spent a lot of time going back through these to

16 say, is there anything we can refine in these answers?  And

17 we've done that to the best of our ability.  But unfortunately,

18 we're still very early in discovery in this case.

19 Unfortunately, that's where we are.

20         And so until there's been some more thorough

21 discovery we can't possibly answer questions like -- and we'll

22 talk about this in a minute, but we just got another 86 request

23 for admission filed since the last -- served since the last

24 hearing that ask things like:  Admit that this engagement

25 letter is the authentic version.

1    The Trustee wasn't the author of that. She wasn't
2  there when it was signed. The only way she knows whether
3  something's authentic is whether the parties to that agreement
4  tell her it's authentic. That's just one example, but there's
5  a 100 examples along those same lines.

6    So that's our frustration in this case, and those are
7  our limitations. And if we need to handle this differently,
8  Your Honor, we're happy to. But we think that we've handled it
9  appropriately and done the best job that we could do as a
10  fiduciary to the estate.

11    MR. SPRAGENS: Your Honor, respectfully, two points
12  in response to that. You know, one is that fraud must be pled
13  with particularity, and I don't care who pleads fraud, I don't
14  care if it's a trustee or a plaintiff, personal injury
15  plaintiff, whatever, you have to plead it with particularity.
16  And when I ask for the particulars of your allegations of
17  fraud, which is what Interrogatory Number 5 asks for, you know,
18  what are the fraudulent actions that you have identified, you
19  know, time, place, date, give us the who, what, where, when,
20  why of the fraud, the Trustee says I don't have that
21  information.

22    Well, that is a pleading requirement for fraud. And
23  if the Trustee doesn't have that information, the Trustee needs
24  to say, I didn't know that at the time I filed it. I mean, the
25  representation today that these allegations in the adversary

1  proceeding are based on, quote, "assumptions and inferences,"

2  frankly, doesn't satisfy Rule 9 or Rule 8, I would submit, or

3  Rule 11 for that matter.

4         However, when we ask for things like what furnishings

5  or equipment are you saying were converted by Manookian, PLLC

6  or Hagh Law, we don't get any response.  But it would be useful

7  to know what we're accused of so then we can respond to it.

8         And, you know, I'm sympathetic to the fact that the

9  Trustee doesn't have all the information.

10        The other thing I would like to point out again is

11  that I have offered on multiple occasions to make a

12  representative, and specifically Mr. Manookian, available for

13  Mr. Young to talk to.  So if he wants to talk about, okay, you

14  know, I don't really know what property was there, tell me

15  about the desks and the office, tell me about the file

16  cabinets, tell me about the alarm system, we could have had

17  that conversation.  Instead, we are handcuffed by the discovery

18  process where we're trying to find out what's the nature of the

19  allegations against Manookian, PLLC so we can respond to it.

20  And that is the nature of every interrogatory that we are

21  moving to compel further responses to.

22        And the idea that, you know, I don't have it and I'm

23  just going to say it's in your possession, or something like

24  that, we at least need a definitive statement of what they have

25  and don't have at this time.  And at the time, frankly, two

1    years ago, when they brought this action.

2           I do have a separate issue to raise about the request

3    for admission, but, you know, for now, I'd like to talk about

4    the interrogatories.  And if we can go through other

5    categories, stealing telephone numbers, or email addresses.

6           Okay.  What telephone numbers or email addresses, I'm

7    referring to Interrogatory Number 10, are we being accused of

8    converting?  I think that's pretty basic, you know, based on

9    public records, I guess, pleadings.  As Mr. Young had said,

10   they should be able to respond to that.

11          When they talk about stealing client files,

12   Interrogatory Number 11, which client files are they saying

13   were improperly converted?

14          You know, when they talk about work on the Fitzgerald

15   case that's just, I mean, essentially that's been made up and

16   called an inference here, but we'd like to know if they have

17   any information about specific work that was done on the

18   Fitzgerald case that Manookian, PLLC is liable for in the

19   nature of fraudulent conversion or some other tortious

20   interference.

21          So, you know, each and every one of the allegations

22   that they made is a very serious allegation, and the fact that

23   the Trustee is the Trustee does not immunize her from complying

24   with Federal Rule 9 in the pleadings and then backing that up

25   in discovery.  So that's what we're asking for.

1          And if they don't have certain information, and they

2     didn't at the time that they filed the case, then that is the

3     appropriate response.  But just pointing the finger back at us,

4     in my view, doesn't satisfy their obligations under the rules.

5          THE COURT:  Well, under that analysis I can tell you

6     virtually every adversary proceeding that I've seen a trustee

7     file for preferences or any other thing would be thrown out

8     summarily by the Court under that standard, because the trustee

9     just doesn't have that information.

10         And your client filed this bankruptcy on behalf of --

11    or Mr. Manookian filed on behalf of Cummings Manookian, right?

12    There's a list of assets on the statements and schedules.

13    There's a list of cases and clients that are no -- that's in no

14    universe that Cummins Manookian has personal knowledge of.

15         The Trustee doesn't have personal knowledge of any of

16    this.  The Trustee is getting information from pleadings that

17    were filed under penalty of perjury and the discovery process

18    here.  So the Court understands your frustration if you're not

19    used to practicing in bankruptcy Court.

20         MR. SPRAGENS:  Sure, Your Honor.

21         THE COURT:  But this is not an IP case.  This is a

22    trustee who you got a complaint that was filed on a date

23    certain with the information available when it was filed.  And

24    you certainly had the ability to file a motion to dismiss, move

25    for summary judgment.  Whatever's available to you in the

1  litigation process is still available to you, based on if
2  you're not satisfied with the answers and you don't believe
3  that there's a cause of action that can be carried forward.

4          But to ask the Trustee to go and create something the
5  Trustee can't create is not possible.  And the Trustee doesn't
6  have personal knowledge, because it was the Debtor who created
7  the information and the circumstances.

8          MR. SPRAGENS:  I appreciate that, Your Honor.  If I
9  can just respond briefly?

10          To get from point A, which is filing your bankruptcy,
11  to point B, which was filing an adversary proceeding, including
12  a lot of serious allegations of fraud.  And as Your Honor
13  knows, this has some significant overlap with the receivership
14  action in State Court in Williamson County, and what we're
15  trying to figure out is how do we get from point A, which is a
16  bankruptcy with a schedule of debts and creditors and all that
17  stuff, to this very serious adversary preceding with these very
18  serious allegations, which are based on what?

19          And so I take your point, Your Honor.  We will avail
20  ourselves of the motion for summary judgment opportunity.
21  However, the Trustee is just going to come in and say, it's
22  premature because we can't respond to that.  So I'd at least
23  like to get some finality from the Trustee in terms of
24  discovery responses so then we can come in and file our motion.
25          THE COURT:  All right.  Well, let's do what we're

Case 3:23-cv-00961    Document 6-1    Filed 10/04/23    Page 439 of 678 PageID #: 3355

1    doing.  Let's go line by line and we will get finality while
2    all the parties are in the room.
3         MR. SPRAGENS:  Well, Your Honor, we had talked about
4    Interrogatory Number 1, which was the withdrawal dates for
5    Cummings Manookian, and what are the Trustee's allegations, or
6    what's the Trustee's information about Interrogatory Number 1.
7    I'm not sure that you've ruled on that one.
8         THE COURT:  The Court finds Trustee's response to be
9    acceptable.  And with the --
10        Mr. Young, is the Trustee in receipt of any
11   additional information based off of the subsequent items that
12   have been disclosed?
13        MR. YOUNG:  No, Your Honor.
14        THE COURT:  All right.
15        MR. SPRAGENS:  Interrogatory Number 2 relates to
16   Interrogatory Number 1, which is legal services after that
17   withdrawal date.  And essentially Trustee said, I didn't answer
18   1, so I'm not answering 2.
19        THE COURT:  And again, Mr. Young, you're now in
20   possession of various engagement letters that should encompass
21   the subsequent work by any other firms that are related to
22   these proceedings.  Do you have any responsive information in
23   addition to what has been given?
24        MR. YOUNG:  No, Your Honor.  Simply because there's a
25   we don't -- we have not been given anything that shows that

1  Cummings Manookian actually terminated its relationship with
2  anything.  So if it hasn't terminated as a relationship, then I
3  have nothing about what happened after a termination, so --
4           THE COURT:  Mr. Spragens?
5           MR. SPRAGENS:  I mean, in the response to Number 1,
6  there is the withdrawal letter in the Fitzgerald case.  So I
7  think that that would be one that they could respond to based
8  upon that.
9           THE COURT:  All right.
10          MR. YOUNG:  Your Honor, if I may address that?
11          A withdrawal letter doesn't mean that legal services
12  had stopped.  What has to happen is a withdrawal in the case,
13  and that didn't happen.  Cummings Manookian did not withdraw in
14  the case, and so --
15          THE COURT:  And here we go back to the argument of,
16  are you going to assert that you're owed money after the
17  withdrawal?  I mean, this thing is becoming a circular
18  argument.  Again, we're all lawyers here.  If that information
19  is necessary to prove a particular element of a cause of
20  action, it needs to be provided on what the Trustee is relying
21  on.
22          Now, it gets very circular in that we keep arguing
23  about, you know, is this the only agreement?  Was there
24  subsequent agreements?  The agreement stands for what it is.
25  At some point we just need to disclose the underlying, does

1  Cummings Manookian believe they're owed any money, and why.

2  Does the Trustee believe Cummings Manookian is owed any money,

3  and why.

4        I mean, that's the essence of what we're talking

5  about here.

6        MR. SPRAGENS:  And, Your Honor, and only the Trustee

7  can answer that question, because Cummings Manookian is not an

8  entity.  There's not even a lawyer associated with it.  So it

9  couldn't exist in the future, or right now, because Mr.

10 Manookian doesn't have a law license.

11       So, you know, the Trustee is the one who gets to make

12 that decision at this point.

13       THE COURT:  So I think that's the best way to frame

14 why we're here, right?  It's all about the money.  This is

15 Bankruptcy Court and every second we're here somebody's not

16 going to get a dollar, or in this case lots of dollars.

17 Because we're here talking about things that are obvious, and

18 should be for a bunch of lawyers who have resolved everybody

19 else's disputes for years and can't seem to get past the forest

20 for the trees on this dispute.

21       So let's keep going.

22       MR. SPRAGENS:  So Interrogatory Number 3 says, "If

23 the Trustee alleges that Cummings Manookian is entitled to

24 attorney's fees, or payment from Afsoon Hagh, Hagh Law, or

25 Manookian, PLLC, identify in which cases."

1    I mean, this is the theory of the case here, and so
2  that's all we're asking for.  And I, you know, I think that's a
3  reasonable thing to be requesting in your first set of
4  interrogatories.

5    MR. YOUNG:  And, Your Honor, if you'll look at the
6  response to Number 3, we did.  We cited every -- well, in the
7  amended responses we've actually cited the two remaining cases
8  to which are -- that are issues, and the dates that we
9  understand the start and we understand the stop.

10    But the questions about, you know, identify all
11  settlement offers obtained by Cummings Manookian, for example,
12  the Trustee has no way of knowing.  The Trustee hasn't been
13  given Cummings Manookian's case files.

14    You know, identify all legal work perform by Cummings
15  Manookian in the case such as research, drafting, number of
16  hours spent, there's no way for the Trustee to know that.  The
17  Trustee knows what cases, and the Trustee has done her best to
18  identify the start and stop dates.

19    THE COURT:  Okay.

20    MR. YOUNG:  The Trustee has come in and said that
21  Cummins Manookian is entitled to fees in these cases and we're
22  trying to figure out what's the basis for that allegation.  And
23  in fact, some of the cases, I mean, Cummins Manookian wasn't a
24  going concern during some of that time period, or at least --
25  and I haven't looked at these amended responses which just came

1  in earlier this week, but, you know, that's why we're trying to
2  find out what the Trustee's position is on this.

3      And if the Trustee's position is, you know, we think
4  that Cummings Manookian is entitled to some fee, but we can't
5  tell you on what basis that, you know, theory travels, whether
6  it's quantum meruit, or there was a settlement offer that was
7  turned down, and so Cummings Manookian has some entitlement to
8  that, that's all we're trying to learn here.

9      And now we have a list of two cases, and we've been
10 recently given an approximate start and stop date of Cummings
11 Manookian's involvement.  We still don't really know much about
12 why Cummings Manookian is entitled to a fee.

13     MR. YOUNG:  Your Honor, I can answer that question
14 right now.  The complaint answers it.  The answer to that
15 question is, because there are engagement letters between
16 Cummings Manookian and these plaintiffs that establish a legal
17 right to the fee.  That's the answer to why Cummings Manookian
18 is entitled to a fee this case.

19     THE COURT:  All right.  There's your answer.
20     MR. SPRAGENS:  Okay.  Well, that's the Trustee's
21 position about the engagement letter, I guess.

22     And the Trustee's position about withdrawal letters
23 is that they don't actually constitute withdrawals.  I mean,
24 we're learning, even today, about the theory of the case.  This
25 is not information that had been provided to me before today.

1          Number 4, ask for hours.  Again, same inquiry.  We're

2    just trying to find out what's the basis.

3          I assume the Trustee's answer is, we don't know how

4    many hours were worked by Cummings Manookian.  If that's the

5    answer, I would just like the Trustee to write that, rather

6    than objecting to what I think is a reasonable interrogatory.

7          THE COURT:  Mr. Young?

8          MR. YOUNG:  Your Honor, we don't know.  And we said

9    that we're still seeking discovery on that issue.  Maybe Mr.

10   Manookian knows that and will say something in his deposition.

11   I don't know.

12         THE COURT:  All right.

13         MR. YOUNG:  There's no way for the Trustee to know

14   that.

15         THE COURT:  When is Mr. Manookian's deposition?

16         MR. YOUNG:  It's not been scheduled, Your Honor.

17         THE COURT:  All right.  We're going to do that today,

18   by the way.

19         MR. SPRAGENS:  And I assume, also, the Trustee's

20   deposition and Mr. Young's deposition.

21         THE COURT:  We're going to -- we're going to -- we're

22   going to get all these discovery issues resolved.

23         It appears that all of these are ripe for further

24   discussion after the full and total depositions are taken.  And

25   at that point, any answers that are deemed unresponsive the

1  parties can confer.

2        Because it sounds like most of this is going to be
3  driven by additional information that's available, not to the
4  Trustee at this moment, but is locked away deep inside Mr.
5  Manookian's brain somewhere.  That while he's under oath he
6  will enlighten the Trustee and the other parties on exactly
7  what happened so that the Trustee does what trustees do all the
8  time, they amend complaints, they dismiss complaints.  They
9  move on if there's nothing there or it's not sustainable for
10 the original theory of the case based off of the original books
11 and records or whatever they used with the filing of the
12 pleading.

13       So that's kind of how this works.  And so for the
14 parties to resolve these, you need to work together with the
15 total discovery that Mr. Manookian holds the keys to the
16 kingdom.

17       MR. SPRAGENS:  Well, that's certainly the Trustee's
18 theory.

19       THE COURT:  It's not a theory, Mr. Spragens.  The
20 Trustee was not there.  The Trustee has no crystal ball.  The
21 Trustee steps in to save the estate for the benefit of
22 creditors based off the actions of the people who put it in
23 bankruptcy.

24       I don't know -- I don't know what you expect the
25 Trustee to come up with when the Trustee physically has no

1  personal knowledge and was not involved in any of the time

2  frames that you're seeking information.

3          MR. SPRAGENS:  Well, Your Honor, respectfully, I

4  mean, Number 5 is the next interrogatory.  That's the one about

5  fraud.  The Trustee made a bunch of allegations about fraud.

6          And so it's one thing to preserve an estate, and to

7  administer an estate, I certainly agree with Your Honor that

8  that's an important function.  But let's talk about the

9  adversary proceeding that we're here today on, which is the

10 Trustee made a bunch of allegations about false representations

11 or material omissions.  We've asked for more information about

12 those.  And again on Number 5 we get told, well, actually, you

13 know, we allege fraudulent transfers, but no fraudulent

14 representations or material omissions.

15         Can we get a little more information about that one?

16         THE COURT:  All right.

17         Mr. Young?

18         MR. YOUNG:  Your Honor, I don't know what to say

19 about that other than fraudulent transfers are not for all.

20 548 is not fraud.  That's a fraudulent transfer and it's

21 totally different.  And there are no material omissions, there

22 are no fraudulent misrepresentations, and we've said that.

23 We've said this is a 548 case, not a fraud case.

24         And so I don't know how to say that more clearly than

25 we've said that.

1          THE COURT:  And you're basing the fraudulent

2   transfers on what?

3          MR. YOUNG:  On transfers to or for the benefit of

4   another party for less than reasonably equivalent value at a

5   time that the estate was insolvent, or that the transfer made

6   the estate insolvent.  This is a pretty basic 548 argument,

7   Your Honor.

8          THE COURT:  Okay.

9          Mr. Spragens, with the limitation on its merely

10  transfers, what do you believe would be responsive beyond what

11  Mr. Young has represented is the Trustee's position?

12         MR. SPRAGENS:  Well, Your Honor, I think intentional

13  conversion of property falls into the nature of fraud.  I mean,

14  any sort of intentional misrepresentation that's being accused

15  in this complaint, which, I mean, the complaint is full of very

16  specific allegations -- well, I misstated that, but very --

17  well, let's say, allegations that Hagh Law or Manookian, PLLC

18  have taken premises, furniture, equipment, intellectual

19  property, attorney's fees.  I mean, have taken them, so this is

20  intentional misconduct, that's in the nature of a fraud.

21         And I can't speak to the Bankruptcy Code if the fraud

22  alleged here doesn't really mean a fraud, but the complaint is

23  full of allegations of conversion, and essentially theft, that

24  taking a property that one is not entitled to.

25         So we are asking:  What exactly are you alleging has

1  happened here?

2          And again, I think that's an appropriate inquiry.  If

3  you're a Trustee, or any other plaintiff, I think you should be

4  able to say, well, here's what we are alleging was taken, here

5  are the fees that we allege the law firm, Cummings Manookian,

6  is entitled to, that Manookian, PLLC, Afsoon Hagh, and Hagh Law

7  have essentially stolen.

8          MR. YOUNG:  And, Your Honor, we answered that in

9  response to Number 9, that question.

10          THE COURT:  What is your answer?

11          MR. YOUNG:  The question is, "Identify the office

12  space and specific furnishings and equipment you allege Brian

13  Manookian or Manookian, PLLC utilized in Paragraph 20 of your

14  complaint."

15          And the response is, "Premises located at 45 Music

16  Square West, Nashville, Tennessee, and all the furnishings,

17  equipment, and personal property located therein."

18          MR. SPRAGENS:  I don't know what furnishings or

19  equipment they're referring to.  I understand there --

20          THE COURT:  There are statements and schedules --

21          MR. SPRAGENS:  Uh-huh.

22          THE COURT:  -- that list everything that Cummings

23  Manookian owned.

24          MR. SPRAGENS:  And I don't think -- and I don't have

25  them in front of me, I don't think that those statements and

1 schedules even refer to property inside 45 Music Square West.
2 I don't think Cummings Manookian owned that property.  They
3 didn't own 45 Music Square West, for starters.  And I don't
4 think that they own the property inside 45 Music Square West.
5        But if that's what this is based on, then that's
6 great, Your Honor.  Can they just write that in their response
7 to our interrogatory?  I'd love to -- I'd love to know.
8        THE COURT:  Mr. Young, if you could amend --
9        MR. YOUNG:  Your Honor, I read it verbatim out of our
10 responses.
11        THE COURT:  To Interrogatory Number 9.
12        MR. YOUNG:  Correct.
13        THE COURT:  All right.  So we're talking about Number
14 5.
15        MR. YOUNG:  But Number 5 asks for instances of fraud
16 that we're not alleging any material omission or false
17 representation, that is the question.  There are no allegations
18 of that.
19        MR. SPRAGENS:  You all can correct me if fraud means
20 something different in bankruptcy court than it does everywhere
21 else.  My understanding of the Bankruptcy Rules and the Rules
22 of Civil Procedure are that fraud must be alleged with
23 particularity.  And I don't think that the response to Number 9
24 is sufficient, either.  "Premises located at 45 Music Square
25 West and all furnishings, equipment, and personal property

1 therein."

2      So if he is not alleging that there was wrongful
3 conduct, or if the Trustee is not alleging that there was
4 wrongful conduct, the taking of property that was not -- that
5 Afsoon Hagh, Hagh Law, and Manookian, PLLC were not entitled
6 to, then I guess I've misunderstood the nature of the adversary
7 proceeding.  I think that this complaint includes very detailed
8 allegations of fraud.

9      THE COURT:  And here we go in another circle.  The
10 Trustee has made allegations based off information and belief
11 and the knowledge present when this was filed.  Mr. Young has
12 just articulated it's based on use, misuse, continued use,
13 whatever it ends up being or not, of the property that was at
14 the address that Cummings Manookian owned.  If they didn't own
15 anything, well, guess what?  You got a pretty easy defense.

16      MR. SPRAGENS:  I don't disagree, Your Honor.

17      THE COURT:  Right?  So what are we arguing about?

18      MR. SPRAGENS:  Well, I --

19      THE COURT:  I mean, you've got a pretty easy defense.
20 If you say, we don't own any property there.  Okay.

21      MR. SPRAGENS:  Well --

22      THE COURT:  Your witness will testify to such.  The
23 Trustee will take the list of anything there and say, okay,
24 here's what I got, do you own any of it?

25      MR. SPRAGENS:  But Your Honor understands that what I

1  don't want them to show up later and say is, oh, well,

2  actually, we've got this other property, or some other thing.

3  I mean, that's why I'm trying to find out, the nature of the

4  allegations.  And certainly when we get into depositions, which

5  we've been asking for for a long time --

6          THE COURT:  Well, but --

7          MR. SPRAGENS:  -- further light can be shed on some

8  of those questions.  But I want to know is there going to be

9  some other property that they're now going to say was misused

10  or converted?

11          THE COURT:  So the Trustee's bound by the property

12  that's in the bankruptcy estate.  It's listed on statements and

13  schedules.  There's no zinger here.  And if there is a zinger,

14  guess what?  It's subject to the same thing.  If the Trustee

15  knew, or should have known, and disclosed that, at this time

16  the Trustee's not going to be able to use that.

17          I mean, this is, we got a finite universe of what

18  could be.

19          MR. SPRAGENS:  And I appreciate that, Your Honor.

20  And I'm encouraged to hear you say that they are going to be

21  bound by these responses that are -- if they had information

22  that was available to them prior to this time.  And we're

23  relying on these responses as we prepare our defense of this

24  case --

25          THE COURT:  Right.

1    MR. SPRAGENS:  -- I appreciate that.

2    THE COURT:  And you should have known that from the

3 beginning.  I shouldn't have to reiterate that, that that's how

4 these rules work.  That's why there's rules, because discovery

5 is a pain in the side of everyone, and we've standardized the

6 practice and the process to ensure that there aren't zingers at

7 trial where one party holds back or then changes their story at

8 the end of the day.

9    MR. SPRAGENS:  Well, Your Honor, in my view, every

10 one of their responses includes a caveat that basically says,

11 if I learn something later, I might change what I'm saying.

12    THE COURT:  And that's how bankruptcy works.

13    MR. SPRAGENS:  I appreciate what you're saying.

14    THE COURT:  The Trustee doesn't have the information.

15    I mean, again, under that standard there would never

16 be a single adversary proceeding that would proceed in

17 bankruptcy.  Every company that files bankruptcy, and then the

18 Trustee who has a timeline where they have to file these

19 actions, no action would ever get through any litigation

20 because the Trustee doesn't -- the Trustee wasn't there.  The

21 Trustee doesn't have personal knowledge.

22    It's only through the discovery process that they

23 understand what happened.  So they're bound by their answers,

24 which is why the answers say, if we find something else out,

25 we'll include it.  And that's why Trustee's routinely drop

1  counts, add counts, you know, amend, dismiss the complaint

2  entirely, because that's how it works.

3        And that's why the collaboration here is different

4  from other places, because they don't have the information.

5  The Trustee is duty bound as a fiduciary to try to maximize the

6  value of the estate with a time certain that they have to

7  investigate and find what causes of action may or may not be

8  present.

9        So I'm hearing what you're saying, but by the same

10 token, the Trustee is doing what the Trustee does in cases, in

11 all cases.

12        MR. SPRAGENS:  I understand, Your Honor.

13        Here's one that maybe we could get a little light

14 shed on today.  Number 16 is, "Do you contend that Cummings

15 Manookian ever employed Afsoon Hagh?"

16        We just heard some conversation about that earlier on

17 the prior motion to compel.  So far, we've gotten an objection

18 and I don't know, can we supplement that based on the written

19 discovery that they've now acquired?

20        THE COURT:  Well, Mr. Young, that's a fair one,

21 right?  So is there any evidence or information that leads you

22 to believe that Ms. Hagh was ever an employee of Cummings

23 Manookian?

24        MR. YOUNG:  No, Your Honor.  We have no information

25 at this time to believe that.  But we've not seen -- we've not

seen the Debtor's employee records, we've not seen any bank
account records, we've not seen -- we've not seen anything.
So can I say that she's not an employee?  No.  But I also can't
say that she was never an employee.  We just don't know that.

I mean, we do know that she was acting as an agent,
because she signed pleadings on behalf of the firm and she was
listed as the point of contact on some of the invoices that
they've sent us.  So we do know she was acting as an agent, but
I have no idea -- we had no idea what the term of that agency
was.  It may have been an independent contractor, we just don't
know.

We do know she wasn't, and we said so, we do know
that she wasn't a partner.  We do know that.  But beyond that,
we don't know what the scope of her agency was.

MR. SPRAGENS:  I'm not sure how they are willing to
know that she wasn't a partner, but they're not willing to know
that she was an independent contractor, which we've now heard
Mr. Gabbert say here, and that the documents support that.

So again, from my perspective, representing, you
know, this entity, in this case, the allegations are made.  We
are guilty until proven innocent and, you know, he doesn't
accept the representations that he doesn't like, and he might
accept the ones that he does.

So it is a very tough situation to be in, in
discovery when we don't understand the basis for the

1  allegations and we don't understand why --

2       THE COURT:  Well --

3       MR. SPRAGENS:  -- you know, he'll agree that she's

4  not a partner, but he won't agree that she was an independent

5  contractor.

6       THE COURT:  Again, unless I'm missing something, if

7  your position is she never worked for your client, pretty easy

8  defense if they make an allegation that she was, that she never

9  did, and here's the proof.

10      MR. SCHWARTZ:  At what point, Your Honor, does Mr.

11 Young comment -- I mean, so let's just point out he said, well,

12 I don't have the time records, so I don't know.  And we're

13 saying, there aren't time records, she wasn't an employee.

14      But he says Manookian, PLLC you're a fraudster and

15 you just haven't produced the time records.  I mean, at some

16 point, this has to end and we get the benefit of --

17      THE COURT:  Yeah.

18      MR. SPRAGENS:  -- I mean, fulsome --

19      THE COURT:  And again, you know, you've said a couple

20 things.  You've used "fraud" a lot, and you talk about guilty

21 until proven innocent.  Let's be realistic here, right?  A

22 complaint is a complaint.  It's not a judgment.  It's not a

23 ruling by the Court.  Every party gets to start off with what

24 they're alleging.

25      MR. SPRAGENS:  Well, Your Honor, respectfully,

1  there's $750,000 that's been impounded now for how long?  Two

2  years.

3           THE COURT:  Which is exactly why we need to move on.

4           MR. SPRAGENS:  I appreciate that, Your Honor.  But

5  from my client's perspective, and I assume from Ms. Hagh's

6  perspective, you know, there has been a burden over these last

7  two years.  There have been very serious allegations made and

8  there has been money impounded and here we are still trying to

9  find out the nature of the allegations.

10           So forgive me, please, Your Honor, if I seem a little

11  exasperated by this process where, as I say, it's heads I win,

12  tails you lose.  And we're here two years later, we've been

13  asking to take the Trustee's deposition for a long time to find

14  out some of this information, as well.

15           THE COURT:  Well, again, your client either hired or

16  didn't hire Ms. Hagh as an attorney.  Your client knows that

17  information.

18           MR. SPRAGENS:  Potentially.  I mean, Mr. Cummings was

19  also a principal of Cummings Manookian, and so, you know, that

20  might be another source of information for the Trustee.

21           THE COURT:  Okay.  Well, in any event, again, it's an

22  easy defense to say, no, and here's why.

23           MR. SPRAGENS:  I appreciate that, Your Honor.  As

24  long as they don't say, unless there's some other information

25  out there that we don't know.

Case 3:23-cv-00961    Document 6-1    Filed 10/04/23    Page 457 of 678 PageID #: 3373

1        THE COURT:  The information that would be either

2   provided by your client --

3        MR. SPRAGENS:  Uh-huh.

4        THE COURT:  -- Ms. Hagh, the law firms, the only

5   information they're going to get is information that you

6   provide.

7        MR. SPRAGENS:  Well, they have the ability to get

8   information from other sources, as well, including

9   Mr. Cummings.  They've now sought Mr. Fitzgerald, the client in

10  one of those matters, to produce information.  And so we're

11  just trying to find out what they have, what they know, and

12  what they're alleging.

13       For example, Number 18, economic damages, we've asked

14  what's the basis for your allegation, what damages do you claim

15  Cummings Manookian are owed?  And we are in the circular

16  situation again where they say, we don't know, entitled to some

17  damages.  And that's, again, what we're trying to find out.

18       And if the answer is, we don't know, we can't answer,

19  we don't have that information, then they should say that and

20  be bound by it, is my request, Your Honor.

21       THE COURT:  Okay.

22       MR. YOUNG:  Your Honor, we've answered that by saying

23  some or all of the fees and expenses collected in those cases,

24  that's the universe.  I don't know whether yet, because I

25  haven't finished discovery, whether the Trustee right now would

1  say the Trustee is entitled to 100 percent of the Fitzgerald

2  fees and 100 percent of what's remaining of the Shoemaker fees,

3  because we have a written engagement letter.  But they may have

4  proved that, hey, we added equitably and we're entitled to some

5  portion of that.

6          MR. SPRAGENS:  Well, again, it's good -- useful to

7  hear some of these things, to learn that the Trustee's position

8  is that she's entitled to 100 percent of those fees, not

9  withstanding the withdrawal letter that we talked about earlier

10 and all that stuff.  This is part of the discovery process.  I

11 agree, we shouldn't have to do it in front of the Court.

12          I would love to learn these things in discovery,

13 understand the nature of the allegations and the basis for

14 these, you know, assertions.

15          THE COURT:  All right.  So what I want to do on all

16 of these --

17          Mr. Gabbert, you look like you want say something.

18          MR. GABBERT:  I'm want to ask a -- I want put

19 something on the record before -- for the record, now I'd like

20 to say something first.

21          MR. SPRAGENS:  And, Your Honor, I also have -- the

22 RFA question can be resolved in one fell swoop, I think.  But I

23 don't mean to interrupt.

24          THE COURT:  All right.  Well, we've got about --

25 we've got about another 30 minutes before I was going to take a

1  break.  If you want to save it to the bitter end.

2          MR. GABBERT:  I can do it either way, Your Honor.

3          THE COURT:  All right.  Well, I want to hear from

4  you.

5          MR. GABBERT:  Okay.  Actually, I want --

6          MR. SPRAGENS:  He's trying to jump in the line of

7  fire. I appreciate that, Mr. Gabbert.

8          MR. GABBERT:  Based off what I've heard today, I want

9  to get some clarifications.

10          Is it the Trustee's position that if Brian Manookian

11  did not specifically file something in the court, withdrawn on

12  the record after he lost his license, as a sole member of both

13  of these entities, Cummings Manookian and Manookian, and could

14  not practice anymore, if he did not specifically file something

15  in court, when he really wasn't allowed to because he'd lost

16  his license, is it the Trustee's position that since he didn't

17  withdraw, even though he had no license, he's still entitled to

18  all the fees?

19          MR. YOUNG:  Your Honor, I mean, if we want to talk

20  about the substance of this, I'm happy to do that.

21          So here are the facts.  Mr. Manookian gets suspended.

22  The firm continues its existence.  Afsoon Hagh continues filing

23  pleadings on behalf of Cummings Manookian for months after the

24  suspension.  Cummings Manookian never files a notice of

25  withdrawal in the case.  Instead, what I assume, and in fact

1  there was a motion to withdraw filed by Mr. Manookian in the

2  case, no order was submitted.

3      The motion specifically -- I'm talking about the

4  Fitzgerald case right now.  The motion specifically says Afsoon

5  Hagh will continue representing the plaintiffs in this case.

6  She continued filing pleadings under the name of Cummings

7  Manookian for a number of months until such time as she finally

8  just dropped the moniker, Cummings Manookian, and kept

9  everything else the same.  Didn't file a new -- a substitution

10 of counsel or a notice of new address or anything, and we're

11 supposed to say that that somehow was the transition to a new

12 code.  I think the Court can understand our reservations about

13 that.

14     So to answer the question.  Yes, a licensed attorney

15 continued filing pleadings on behalf of Cummings Manookian.  It

16 does not matter that it was not Mr. Manookian, it was a

17 licensed attorney filing on behalf of the law firm.

18     And Mr. Manookian didn't lose his license; he was

19 suspended.  He was still a licensed attorney.  He could still

20 run a PLLC, he was just suspended.

21     MR. GABBERT:  Okay.  I just wanted clarification on

22 where we were.

23     THE COURT:  All right.

24     Oh, Mr. Spragens.

25     MR. SPRAGENS:  We'll step away from the

1    interrogatories at this time and talk about the requests for

2    admission, if that's okay, Your Honor?

3              THE COURT:  Okay.

4              MR. SPRAGENS:  And then I'm sure you'll have

5    direction for us on the interrogatories.

6              The request for admission, you know, the rule states

7    that you have to respond.  If you don't have sufficient

8    information, you have to say you've made a diligent search.

9    It's pretty mechanical.  I agree that it's a bit of a

10   technicality, but it is what the rule says.  And it's important

11   to us that the Trustee in responding to requests for admission

12   follow the rule and certify that she made a diligent effort to

13   find all information that was available to her.

14             So it's a copy and paste that can be made to all of

15   their responses to the RFAs that we've propounded in this case.

16             And if she doesn't have the information, she's

17   entitled to say that.  That is part of the RFA response

18   process, but she needs to certify that she's made a diligent

19   effort to find those documents.

20             So that's it on the, RFAs, Your Honor.

21             THE COURT:  All right.  And I would assume you agree

22   that diligent effort is an ongoing effort based off the

23   Trustee's unique position in the continuing discovery, the lack

24   of depositions, that there will be other information that might

25   change a response?

1    MR. SPRAGENS:  I agree with this much, Your Honor,
2 which is that the parties have an obligation to supplement
3 their discovery responses throughout the process.
4         THE COURT:  Okay.
5         MR. SPRAGENS:  So if she -- if something changes her
6 response and she serves supplemental responses to the requests,
7 you know, so be it.
8         THE COURT:  All right.
9         Mr. Young, I mean, that's kind of how it works,
10 right?
11         MR. YOUNG:  Yeah.
12         THE COURT:  So you answer based off of what you know.
13         MR. YOUNG:  And we've done that, Your Honor.  If what
14 he's looking for is a sentence in every one of these that says
15 we certify that we made a diligent effort to find information,
16 I can supplement it and add that sentence to every response, if
17 that's what he's looking for.
18         But we've, I mean, where we didn't know, we said why
19 we didn't know.
20         THE COURT:  Okay.
21    MS. DOWNING:  If the Court would just have them add that
22 sentence, I think that'll dispose of that issue.
23         THE COURT:  All right.  The Court's more than
24 happy --
25         MR. YOUNG:  No objection.

1          THE COURT:  All right.

2          MR. SPRAGENS:  And, Your Honor, if I could just say

3 one more thing?  In general, you know, I'm sensitive to the

4 Court's perception.  I don't want to put words in your mouth

5 that I'm some lawyer from a different practice who's come in

6 here and dumbed up the works here, and I assure you that's not

7 been my intention.

8          THE COURT:  Mr. Spragens, if I at all alluded to

9 that, that's not the case.  I think you've represented your

10 client and yourself very well in front of this Court, and the

11 Court has no negative inference, connotation, belief, or

12 assumption.

13          MR. SPRAGENS:  Well, I appreciate that.

14          I just wanted to say, you know, I do think that there

15 is good faith.  You know, I don't -- I hope the Court won't

16 find that either side has been acting in bad faith.  I mean, I

17 guess I hope the Court might find that they're not responding,

18 but I'm not going to win that one anyway.

19          So, you know, in my view, we have been trying to

20 operate in good faith here.  I have been trying to make Mr.

21 Manookian available to talk to them.  And, you know, I think

22 that I've got a good basis for the request for more information

23 and response to our interrogatories.  But if the Court says we

24 need to move on with depositions, I'm eager to do that.  And

25 we've been seeking depositions on the plaintiff's side for some

1  time now.

2          So that's all I'll say.  I'm sure you can tell us

3  where to go from here.

4          THE COURT:  All right.

5          And let's just go ahead and talk about depositions

6  real quick.

7          So I keep reading about one-on-one meetings.  Is that

8  separate from a deposition, or is that in reference to part of

9  the deposition?

10          MR. SPRAGENS:  No, Your Honor, that was part of the

11  meet and confer process that we were offering.  So to obviate

12  the need for this extremely pleasant hearing today I thought

13  that we could have an informal conversation to get a little

14  clarity about what each side was shooting at here, but then

15  there will be depositions obviously.  And we've been seeking a

16  deposition of the Trustee, and now Mr. Young has been

17  identified as a witness in their discovery responses, and so

18  we're going to seek to take a short deposition of him to find

19  out what he knows.  So that's where we are.

20          And in my view, you know, the Trustee should go

21  first.  She's the person who made the allegations and she has

22  the burden, and that's the practice that I'm familiar with, is

23  that the plaintiff goes first in these things.

24          THE COURT:  Okay.  Mr. Young?

25          MR. YOUNG:  Your Honor, we don't care if the Trustee

1 goes first, as long as everybody understands the Trustee, as
2 evidence by these discovery responses here, the Trustee knows
3 very little right now. And that's going to be the Trustee's
4 response at this point, is she knows the information that she's
5 gotten from other parties, which, frankly, isn't a lot.

6 We have no objection if they want to take her
7 deposition first, that's fine. But what we don't want to do is
8 have an eight-hour deposition, as they've suggested, only for
9 them to find out that she didn't really know that much.
10 And then say, after we've taken all these other depositions,
11 come back and say, now we want to depose the Trustee again.

12 But I'm open. It doesn't matter to us.

13 I will say this. I do want talk about scope,
14 specifically with regard to my deposition, because we did
15 identify the question was, anybody who had knowledge of
16 anything in the complaint. I have not -- I was the receiver in
17 the case and I have knowledge of the references to what
18 happened in the receivership. Frankly, all that's moot now,
19 because really all that had to do with was the movement of the
20 $750,000. But if they want to take my deposition with regard
21 to anything prior to this bankruptcy, that's fine.

22 I want to make sure that we're all on the same page
23 that they're not going to ask me questions about what's
24 happened since the bankruptcy, since I've been operating as
25 counsel to the Trustee. But I'm fine to tell them whatever I

1  know is, or knew, as the receiver.  That's fine.

2         But, you know, we're fine.  We would like a couple of

3  weeks to be able to look through anything that is going to come

4  in over the next couple of weeks.  The Trustee would like a

5  couple of weeks to look through all that before she gives a

6  deposition so that she can at least be as knowledgeable as

7  possible.  But beyond that, it's fine.

8         THE COURT:  All right.

9         MR. SPRAGENS:  I think we're mostly on the same page

10  there, Your Honor.  With respect to the -- I would not agree to

11  a specific time limitation on Mr. Young, on the questions to

12  Mr. Young, but I'm sensitive to the fact that if he has

13  confidential communications with his client we're not going to

14  be asking about those, or at least expecting any answers to

15  those.

16         If he has -- if there are things that he's done as

17  counsel to the Trustee involving third parties that are somehow

18  relevant to the claims, or the resolution of the claims, we may

19  want to get into that as well in the deposition.  But, you

20  know, this may be something that is not a live issue and we can

21  just think about it and come back if we foresee an issue.

22         THE COURT:  All right.  So between now and two

23  o'clock, by the end of this day, I want the parties to have

24  conferred and reached a schedule for depositions, and within

25  the order, a detailed scope of those depositions and any

1  specifics that are necessary to be fully disclosed within the
2  order.

3          And also, to address the request for admissions
4  issue.  It's fairly early in the process for admissions, given
5  all that needs to happen.  So please address that with some
6  formality once the formal discovery to include the depositions
7  are done, when the amendments for the admissions should be
8  propounded on the other side.

9          MR. YOUNG:  And, Your Honor, just as a formal matter
10  on our motions to compel further interrogatory responses.  What
11  I think I heard the Court saying was, after the depositions we
12  could expect to get more information from the Trustee.  But I
13  just want to know what the ruling is on our motion, I guess.

14          THE COURT:  So same with date certain.  After
15  conclusion of all depositions, that there would be amendments
16  provided and certification that each answer is still valid so
17  that there's no confusion of what the Trustee's position is.

18          And then, of course, you're postured to take whatever
19  next step you feel your client can take, whether it's an
20  outright motion to dismiss for failure to state a cause, or,
21  you know, one or -- one count or another that no longer is
22  sustainable, whatever you feel.  That's the appropriate time to
23  tee it up for further action from the Court.

24          MR. SPRAGENS:  Your Honor, may I address one other
25  thing?  I mentioned this, that since our last hearing we

1  received another 86 request for admission from Manookian, PLLC.
2  Could we include in that order -- because we could go through
3  this whole thing again and the Trustee is still saying, we
4  don't know, we don't know, we don't know, or we could simply
5  say that those responses will be due at the conclusion of
6  discovery and save everybody a lot of time and trouble on that
7  second set of requests for admission.

8          THE COURT:  Yeah.  And well, the Court has a
9  threshold question of, why were the requests propounded late,
10  or after the deadline in the original order?

11          MR. SPRAGENS:  I confess, Your Honor, that I did not
12  understand the order to apply to RFAs, which I think of as a
13  tool to sharpen the issues as the case proceeds.  So I
14  apologize if we violated the Court's order on written
15  discovery, that was not my intent.

16          In general, my view is that the RFAs help sharpen the
17  case.  And we can understand if the Trustee agrees that, okay,
18  this is the actual agreement.  And, you know, we're not going
19  to have debates about the authenticity of evidence and stuff
20  like that.  So that's the thought process behind them.

21          And I personally would prefer to have the responses
22  before the deposition so at least we can cross some things off
23  the list before we ask questions.  But, you know, the Court
24  will do what it will do.

25          MR. YOUNG:  And we're not going to know the answers

 1  to all the authenticity questions until after depositions, Your

 2  Honor.

 3          THE COURT:  All right.  Let's keep them after

 4  depositions, on the same time frame as all the other written

 5  discovery that's going to be amended or supplemented.

 6          And I think the parties should both bear in mind that

 7  there's a dispositive motion deadline of June 24th.  So keep

 8  that in mind when you propose something to the Court this

 9  afternoon on the timing so that you don't back yourself into a

10  corner on the deadlines that are yet to come.

11          All right.  And although a little bit early, this is

12  probably a good time to take a break.  You've got your homework

13  for the next couple hours.  And I'll just say, the Court

14  understands that the parties are representing their clients,

15  and trying to zealously represent their clients, and as we've

16  seen today, I mean, I haven't seen either party be

17  unreasonable.  I have seen some discussions that had to happen

18  in order to get to the actual issues, but the Court believes

19  the parties are trying to be reasonable.

20          What the Court doesn't believe is happening is that

21  there's adequate communication going on.  So this is your

22  opportunity to communicate and effectively work through some of

23  these barriers so that we can press forward and resolve this

24  case, finally, so that you don't have to keep coming over here.

25          And the tip off is at 11:15, by the way.

1         So, you know, the Court wants to make sure that the

2  parties understand the Court's here to help you if needed.  But

3  there's enough smart lawyers in this room that self-help is the

4  best help, and, you know, let's try to resolve these things,

5  communicate, figure out where the issues are.

6         Understand that bankruptcy proceedings are a little

7  less certain at the beginning because the Trustee doesn't have

8  a lot of information.  But the reality is, at the end of the

9  day, it's a federal court proceeding subject to the same rules

10  and the same law as any other adversary proceeding.

11         So keep that in mind, that we're trying to minimize

12  the cost to the estate.  Because, ultimately, that costs

13  somebody else money.  The unsecured creditors are paying for

14  it, or, you know, if this is an excess case, Mr. Manookian was

15  paying for it.  I mean, somebody is paying for having three

16  lawyers and a Trustee sitting in a room.

17         It sounds like the beginning of a bad joke, but, you

18  know, that's where we are.

19         So please take the next couple hours.  I'll be back

20  on the bench at two o'clock.  If there's any other discovery

21  issues that haven't been addressed that we need to address --

22  is there anything else out there besides what we've already

23  talked about?

24         MR. SPRAGENS:  Not from my perspective, Your Honor.

25         MR. YOUNG:  I don't think so, Your Honor.

 1            MR. GABBERT:  Your Honor, please, if I may?  I think

 2   the only thing I'm looking for is any other Fitzgerald

 3   agreement.  Other than, I don't have anything else on this

 4   sheet, do I?

 5            MR. SPRAGENS:  I think that's right.

 6            MR. GABBERT:  So if I could just provided him a

 7   statement regarding that, do I have to come back?  Because I'm

 8   not involved in all this other stuff.

 9            MS. YOUNG:  He's trying to save -- trying to save

10   money.

11            MR. SPRAGENS:  Your Honor, I --

12            THE COURT:  Mr. Gabbert, the Court's -- if all issues

13   are resolved, the Court's happy to send you on your way.

14            MR. GABBERT:  Well, he can -- he can advise that I

15   have responded by what the rules are.

16            MR. SPRAGENS:  I'll make that representation for

17   Mr. Gabbert.

18            THE COURT:  All right.  Good enough.

19            All right.  Court will be adjourned until -- or in

20   recess till two o'clock this afternoon.

21            THE CLERK:  All rise.

22        (Recess taken at 10:28 a.m.)

23        (Proceedings resumed at 2:08 p.m.)

24            THE CLERK:  All rise.

25            THE COURT:  Please take your seats.

1          All right.  Mr. Young?

2          MR. YOUNG:  Your Honor, Phillip Young on behalf of

3    the Trustee.

4          I think we've made some progress on most things.  I

5    think there are still a few things that we'd like the Court's

6    input on.  Let me start with the things that I think that we've

7    agreed upon.  This is really just for the record.  This will

8    kind of be incorporated into the order we'll submit.

9          But Mr. Gabbert is going to confirm, by March 25th,

10   that's the only Fitzgerald letter.  We had referenced that.

11         THE COURT:  Okay.

12         MR. YOUNG:  I think he was unable to get in touch

13   with his client this afternoon.  So he's just agreed that by

14   March 25th, he'll do that.

15         We're also going to provide that Manookian, PLLC will

16   amend its response to Interrogatory Number 5, as the Court

17   instructed by March 25th, by that same date.

18         And then, as the Court suggested, we've given more

19   specific information on the Request for Production Number 1,

20   that's the one about defenses.  We provided more specific, kind

21   of bullet point things, that we're looking for to Manookian,

22   PLLC.  And so they're going to respond accordingly.

23         We've agreed that we're going to amend our response

24   to Interrogatory Number 1 by March 25th.  That's the one that

25   asks for what individuals have knowledge.

1       And the reason being, so the Court understands why
2   that is.  You know, the scope of the complaint when filed was
3   16 cases, there were 16.  Now we're talking about two case.  So
4   obviously that really funnels down what actually is in dispute.
5   And so that the parties don't waste time worrying about, you
6   know, depositions on parties that really don't matter anymore,
7   we're going to amend that to make that clear.

8       We already mentioned this, that I was going to add
9   the certification language to the request for admissions that
10  Mr. Spragens had requested.

11      We've agreed that by June 1 all parties will amend
12  interrogatory responses, requests for admission responses, that
13  we'll respond to those second -- that second set of requests
14  for admission by June 1.

15      We've also agreed that topics for depositions will be
16  identified in the deposition notices so that all the parties
17  will have notice of that.

18      And then we've agreed on a deposition schedule for, I
19  guess, the four primary depositions.  And that is Jeanne
20  Burton, me as receiver, Brian Manookian, and Afsoon Hagh.  And
21  those dates are, Jeanne Burton's will be April 20th at 10 a.m.,
22  mine will be April 21st at 10 a.m., Mr. Manookian, who the
23  notice will be for Manookian, PLLC, Cummings Manookian, and
24  Brian Manookian, we'll notice them all up on the same day, May
25  9th at 10.  And then Afsoon Hagh and Hagh Law at May 10th at

1  ten o'clock.

2           And so we'll put all that in the order.

3           MR. SPRAGENS:  Mr. Young, can I just add?

4           MR. YOUNG:  Yeah.  Go ahead.

5           MR. SPRAGENS:  Mr. Gabbert, I don't think, has agreed

6  on the deposition schedule.  And so when I spoke to him he had

7  a preference for having the Trustee at the end, which I

8  understand is a more conventional practice in bankruptcy court.

9  My client has a preference for having the Trustee at the

10 beginning.  And so as I said in the email to you, that's an

11 issue that is still sticky.  But we agree with the scheduling

12 that you just announced.

13          MR. YOUNG:  And I do want to address that issue,

14 because we want to avoid these repeat depositions.  We don't

15 want to have to go through a deposition where the Trustee says,

16 you know, I don't know that yet, I don't know that yet, I don't

17 know that yet, and then go through another deposition at the

18 end to ask essentially the same questions.

19          We don't care if the parties want to take Ms.

20 Burton's deposition early, that's fine.  What we don't want to

21 do is to have repeat depositions.  To have, you know, one April

22 20th and one May 30th.  And so we had a disagreement about

23 that.

24          And as Mr Spragens said, Mr. Gabbert, I think, has a

25 preference toward taking it towards the end, and Mr. Spragens

1  has a preference toward taking it toward the beginning.  But we

2  only want the Trustee to sit for one, eight-hour deposition.

3  We don't want to have to, you know, spread this out.  And so

4  that was --

5             THE COURT:  Well --

6             MR. YOUNG:  -- one of the issues that we were going

7  to see --

8             THE COURT:  I'll make a statement that if there is a

9  second deposition, the party requesting it may end up paying

10 for it.  I'll leave it at that.  If Mr. Manookian drives this

11 such that what is probably the course of action that makes the

12 least amount of sense in this scenario, then if there is a

13 second deposition, he may be paying for that time to take that

14 deposition.  But I'll let the parties -- if the parties are

15 agreeable to that schedule, we'll go forward with that

16 schedule.

17            MR. SPRAGENS:  Right.

18            THE COURT:  But know that the nature of this

19 proceeding, it doesn't make a bit of sense to do the Trustee

20 first.

21            MR. YOUNG:  I hear you loud and clear, Your Honor.

22            THE COURT:  So --

23            MR. YOUNG:  Yeah.  The one thing I was going to say

24 is, I was always trying to split the hairs between the two

25 parties on our side of the table here.  I thought about if we

1  tried to take her deposition and reserved some of the time for

2  later -- I mean, one of the issues here is because the Court is

3  not going to require anybody to supplement their

4  interrogatories until after through depositions have been

5  taken, there is room for some serious changes in the written

6  discovery at that time, and that's what we want to sort of

7  guard against is that all of a sudden there's a new theory that

8  we couldn't anticipate, or new information that we couldn't

9  anticipate, that comes out.

10          I take your point though, that if a second deposition

11  is needed, and if the Court finds that it's not warranted or

12  whatever, Mr. Manookian would be paying for it.

13          THE COURT:  Yeah.  And again, it's bankruptcy, right?

14  We got limited number of theories that are going to be out

15  there.  Let's be real.  These are attorneys, everybody knows

16  what the theories are probably going to be, and the information

17  that's going to come out is going to drive that one way or the

18  other.  So let's not make it harder than it really is.  This is

19  not a new or novel concept.  These are not issues that are

20  first impression.

21          This is what happens here in bankruptcy court every

22  day.  You have a company that is no longer operating, there are

23  books and records, there's still effectively accounts

24  receivable out there that need to be collected, and the Trustee

25  is trying to collect those accounts receivable and look back as

1   to whether there's any transfers or transactions that can be

2   set aside.  I mean, it's not that hard, so --

3          MR. YOUNG:  And the Trustee does view this, for the

4   record, as an accounts receivable case.  That's what we view

5   this as, is as an accounts receivable case, primarily.  And

6   that's the way we've been proceeding, but --

7          THE COURT:  Yeah.

8          And I get it, Mr. Spragens, that -- and again, you

9   know, you're representing your client zealously, and the

10  Court's making no determination one way or the other.  You

11  know, your strategy and your client's strategy is what it is.

12  But know that, you know, this Court's seen these cases a

13  thousand times and is not going to be surprised or hoodwinked

14  by anything and is well capable of dealing with any "gotcha"

15  moments as they come, and will deal with them fairly harshly on

16  whichever side they come out, just given the fact that we're

17  wasting a day here to go over discovery requests.

18         So I'm taking copious notes on what's said here.  I'm

19  going to listen to this transcript again.  And if we get to a

20  trial situation where there's something that needs to be

21  addressed, it will not end well for whichever side is the cause

22  of it, period.

23         MR. SPRAGENS:  Thank you, Your Honor.

24         MR. YOUNG:  Your Honor, one other -- one other thing

25  about which we've been unable to reach an agreement is the

1  location of the depositions.  The Trustee suggested that these

2  four in-person depositions take place here in the Court, in the

3  courthouse.  There's lots of reasons for that.  It's a

4  centralized location, it has security, the Court's more

5  available if there becomes a problem.  We hope there's not a

6  problem, but --

7         THE COURT:  We're having the depositions here.

8         MR. SPRAGENS:  That's fine, Your Honor.  And just for

9  the record, I'll preserve my objection to that.  And I heard

10  Mr. Gabbert object to it earlier, as well.

11         THE COURT:  Okay.  Well, if the parties can't agree,

12  you know, you still have the opportunity to agree on a

13  location.

14         MR. SPRAGENS:  Sure.

15         THE COURT:  But in the absence of agreement, we'll

16  hold a hearing.  I'll be in my chambers or available by video.

17  If the there's a problem, we'll address it on the spot.  So,

18  you know, I don't know of any other way to do this, if we can't

19  agree on something as simple as location.

20         MR. SPRAGENS:  Well, I thought the normal rule was

21  you produce the witness at the witness's place of business or

22  convenience, basically.  So I was surprised to hear this

23  proposal, that all the depositions would be conducted here.

24         This parking lot out back is $40 a day I noted, as I

25  tried to dodge parking tickets today.  And so I was thinking

1  there might be a more convenient reason.  I don't buy that
2  there's a security issue in this case.  The Court is available,
3  I appreciate that, by telephone, video, or all the other ways
4  that we can get access to the Court.  So to me, it's overkill
5  to have them at the courthouse.

6          THE COURT:  I agree.

7          MR. SPRAGENS:  And I -- so this wasn't our proposal,
8  and I think it's a departure from the ordinary course and I
9  don't understand the basis for it.

10         THE COURT:  Okay.

11         MR. SPRAGENS:  So I --

12         THE COURT:  So, Mr. Young, let's articulate a basis
13 on the record.

14         MR. YOUNG:  Sure.  First of all, I think the Court
15 knows that this is not -- it's not unusual for a Trustee to
16 conduct depositions at the courthouse.  That's fairly common
17 for trustee's to do.

18         Secondly, you know, it's more centralized than having
19 parties come to my office in Williamson County, for example.
20 This is a lot more central location.

21         And third, we do think that there's a security issue
22 here.  There's already been a restraining order put down
23 against Mr. Manookian by one of the creditor's lawyers in this
24 case, and I don't take that lightly on behalf of my client.

25         So those are the reasons.

1          MR. SPRAGENS:  Well, and, you know, my office is just

2   down the street and parking is free.

3          There's no security issue.  I don't think that

4   there's any record that would support that there is a security

5   issue in this ordinary bankruptcy case involving professional

6   lawyers on all sides.

7          So this proposal was presented to me.  I said I

8   disagreed with it.  And Mr. Young said, well, we'll take it up

9   with the Court.  So, you know, in my view, this is the

10  departure from the norm, not the other way around.

11         THE COURT:  Okay.

12         And, Mr. Young, you're going to represent that you're

13  uncomfortable doing depositions in Mr. Spragens' office?

14         MR. YOUNG:  Yes, Your Honor.

15         THE COURT:  All right.  And then I'll just address

16  the 100 pound gorilla in the room on that issue.

17         To be candid, Mr. Spragens, I mean, your client's

18  past behavior before the tribunals, and I've had at least two

19  lawyers call the Court and say they don't feel comfortable if

20  your client is going to appear, and, you know, the Court takes

21  those concerns very seriously and makes no conclusion on

22  whether they are valid, they are perceptions which drive

23  behaviors of other parties.  And to eliminate any of those

24  perceptions, and to protect everyone against any allegations of

25  bad behavior, misbehavior, or perceived misbehavior, it makes

1  sense to do them here in an environment where no one can get

2  your client further down a rabbit hole of he did this or he did

3  that, that we're in a neutral environment, which affords

4  certain protections.  And if nothing else, in terms of

5  everybody's on their best behavior.

6        And so the Court's going to make that determination,

7  that the depositions, unless the parties can agree, will be

8  held here in the courthouse.  And as a matter of fact, again,

9  there will be some method available to reach the Court if

10  during those depositions we have further in issues with

11  discovery.

12        MR. YOUNG:  Thank you, Your Honor.

13        I think the last issue that we needed, unless Mr.

14  Spragens has something else that I've forgotten.  The last

15  issue that I have on my list that we needed some input from the

16  Court on is the scope of my deposition.

17        There was a question that was asked in the

18  interrogatories about, list all parties who had knowledge of

19  any element of the complaint, you know, any of the complaint.

20  The complaint originally, if the Court will recall, had a fair,

21  a substantial amount about the $715,000 and about the transfer

22  of that and about the genesis of that in the receivership.

23        Obviously, as the former receiver in that case I had

24  knowledge about that.  That part's not so relevant anymore

25  because the money's frozen and now we're really talking about

1 two cases.  Nevertheless, I'm happy to sit for a deposition.

2 However, I do think that the Court needs to define the scope of

3 that.

4    I would suggest that the scope of that has to do only

5 with the allegations that are in the complaint and only with

6 regard to things up to the petition date.

7    I will represent to the Court that after the petition

8 date my role in this case has been as special counsel to the

9 Trustee.  Mr. Sprague has specifically mentioned, and this is

10 something that came up before, and I'm happy to address it

11 straight on if the Court wants to talk about it today, but this

12 allegation of some sort of a kickback that the Trustee allowed

13 or reduced, allowed a reduced claim to the Chase parties

14 because the Chase parties entered into an order that provided

15 that any remaining receivership, outstanding receivership fees,

16 be paid by the Chase party.

17    First of all, I wasn't involved in that order.

18    Second of all, it's not been paid, so this is a

19 complete non-issue.  Nonetheless, it keeps coming up, but it's

20 not related to this adversary proceeding.  That's related to,

21 if at all, it's related to the claims allowance and

22 disallowance.  That's not related to this adversary proceeding

23 at all.

24    And so I would just like the Court's guidance on what

25 the allowable scope is of a deposition, you know, of me

1  specifically, because that seems to be where some tension is

2          THE COURT:  All right.  Mr. Spragens?

3          MR. SPRAGENS:  In my experience, at least, it is

4  unorthodox, to say the least, to have a case in which an

5  attorney is negotiating the scope of his own deposition as a

6  fact witness in the case.  So we are in a weird posture here.

7  And I think that does speak to the potential for, you know,

8  what we will want to ask Mr. Young about.

9          He represented to me in the conference room that it's

10  really just about the $750,000 or whatever, that 715,000,

11  excuse me, in the receivership.  You know, I want to know what

12  he knows about what's in the complaint.  He's disclosed himself

13  effectively as a fact witness here.  I want to know how he's

14  being compensated for things, because I think that goes to his

15  bias.

16          And I think that is a permissible area of inquiry is,

17  do you stand to gain if you testify a certain way in this case

18  or not?  And I think that's reasonable, both about the knowing

19  about the Chase case and about his role here.

20          I don't need to go into any confidential attorney-

21  client communications, and I don't intend to.  But I do think

22  that, you know, we started this case, frankly, before I was

23  involved, talking about a potential need for disqualification

24  of Mr. Young.  And I do think that the fact that he's now

25  disclosed himself as a witness, which surprised us, opens him

1 up to inquiry on that. And so certainly whatever he tells us
2 he knows about that's in the case right now is going to be the
3 bulk of what we talk about.

4        But I do want to probe for bias. I want to probe for
5 any sort of improper motive. It's awkward to do to a fellow
6 member of the bar. You know, we were just talking about our
7 vacations and our hiking interests and all that stuff. But I
8 think that's part of the job, and if he's going to be a witness
9 and the lawyer here, I should be allowed to ask some of those
10 questions.

11        So I would urge the Court not to set a strict date
12 cutoff, but, you know, admonish us to only stay within the
13 boundaries of what's acceptable as we try to prepare an
14 adversary trial in this court.

15        THE COURT: All right.

16        And, Mr. Young, I think it is reasonable to probe
17 into any of those issues that Mr. Spragens has articulated.
18 So I will not bound the deposition to such limited scope that
19 he can't inquire about your motive, motivation, or compensation
20 in any way.

21        Again I will caution that it better be relevant and
22 stay relevant. And as you've articulated today, that's within
23 the fair bounds of what we do as lawyers is answer questions
24 about why we're here, if we're ever in the position of being a
25 witness, and it goes to credibility, it goes to motivation.

1  And so that's perfectly permissible.

2          But what I do not want is an attempt to deviate in a
3  way that's not going to be productive for anyone and just waste
4  everybody's time.  Because, again, if we're going to waste
5  people's time, that person wasting time will pay for that time.
6  And I can't express how serious I am about charging back to the
7  party who is causing the unnecessary delay or being
8  unreasonable.

9          Again, these are attorneys talking about attorneys
10  and law firms.  And even Mr. Young, if he is a witness, he's
11  another attorney.  So everyone involved in this case is a
12  member of the bar in some form or fashion, and I expect a
13  little bit of common sense and not to take the Court for not
14  understanding what's going on if it deviates from that.  And so
15  just keep that in mind, all the parties that --

16          Again, this is not rocket science.  This is the
17  couple of thousand adversaries since I've been on the bench,
18  and there's nothing in this case that I haven't seen before
19  that surprises me or that I need to look up in WestLaw or
20  Google to figure out how this is going to go.  These are all
21  issues that are fairly routine.

22          I've got a Trustee over here who's been on the panel
23  for more than 20 years and has handled thousands of cases and
24  brought this adversary proceeding in the course of
25  administering it as an estate, that's not unique or novel.

1          So I understand we are all representing clients

2     zealously, but by the same token, you're wasting your time on

3     this forum that's going to be before a judge, not a jury,

4     that's seen this a thousand times before, where we routinely

5     stipulate to all the relevant facts, we proffer evidence more

6     likely than we present witnesses.

7     .          This Court is able to resolve these issues

8     expeditiously if given the opportunity.  And so let's drive

9     towards that opportunity for the Court to do what this Court

10    does in fairly efficient fashion.

11         MR. SPRAGENS:  We're eager to get to that point.  And

12    there aren't side shows on our side.  We intend to get to the

13    point where we can get an adjudication in this.

14         THE COURT:  Okay.

15         MR. SPRAGENS:  So I hear you.

16         MR. YOUNG:  Your Honor, with that, I believe those

17    are the only issues that we had open as far as the -- I think

18    every thing else was agreed upon.  And we understood the

19    Court's direction on everything else, as far as putting

20    together an order.

21         THE COURT:  All right.

22         MR. YOUNG:  And I'm going to circulate it to Mr.

23    Spragens before we submit it to the Court to make sure that --

24         THE COURT:  All right.

25         MR. YOUNG:  -- that everything is accurate.

1          THE COURT:  And the only thing, I've got a couple
2   things.  On the depositions the order should detail the scope,
3   because I don't want any surprises from any party who later
4   says, well, I didn't know that's what was going to be asked.
5   So within this order there needs to be some detail as to the
6   scope of the depositions.

7          MR. SPRAGENS:  We can do that, Your Honor.

8          THE COURT:  All right.

9          And as far as length of depositions, is it correct
10  that you're anticipating an eight-hour deposition for the
11  Trustee?

12         MR. SPRAGENS:  No Your Honor.  I mean, I think that
13  the rules only allow seven hours, and I hope not to even need
14  all seven hours.  I never want to take a seven-hour deposition.

15         THE COURT:  Okay.

16         MR. SPRAGENS:  But I do think that the rules allow it
17  if we need it, and hopefully we won't.

18         THE COURT:  All right.

19         And obviously with the contentious nature, make sure
20  that that order specifically details the time in which the
21  Trustee and all the other witnesses will be available for their
22  deposition.  And if it's the full seven hours for each witness,
23  so be it.  But I don't want any other issues related to
24  discovery, so let's make sure that that order adequately
25  details everything.

1    And I'd like it to be an agreed order.  So rather
2  than just circulate it to Mr. Spragens, I want he and Mr.
3  Gabbert to sign off on the order in its entirety.

4          MR. SPRAGENS:  Yes, Your Honor.

5          MR. YOUNG:  And, Your Honor, as I look at the biggest
6  area of, sort of outstanding question marks about the order,
7  it's what to do about this deposition.  I mean, we have
8  different positions on my side here about when the Trustee's
9  deposition should be taken.  So I'm looking for little
10  guidance, probably, on what we should put in the order that
11  says if there is a second deposition it will come at the
12  requester's expense, unless good cause is shown, or something
13  like that.

14          Is that an appropriate way to phrase that?  I suppose
15  that's what I'm asking.

16          THE COURT:  Yeah. I'll leave it to you all to come up
17  with the exact language.  But the intent is that the parties
18  are agreeing to this.  We need to be efficient and effective.
19  I'm not going to get into the weeds on who goes first, because
20  if I have to do that, then I might as well be trying and
21  representing your clients for you.

22          But I am going to say that common sense needs to
23  prevail here.  That, again, this isn't an IP case.

24          MR. SPRAGENS:  Thank God.

25          THE COURT:  I echo that sentiment.

1        You know, the Trustee needs -- you know, the goal
2   should be to maximize the Trustee's ability to answer the
3   questions.  And if taking the Trustee's deposition first is
4   going to be a waste of time, which I would bet my money to a
5   large extent it will be, then why are we doing it that way?

6        And if you choose to go down that road, the party who
7   made that choice is going to pay for that time for the
8   attorney, or attorneys, that have to sit there for seven, eight
9   hours, or however long it is, for the Trustee to then be in a
10  position to answer those questions.

11       So craft the language so that it's clear that -- I'm
12  going to leave it to the parties to cause a train wreck if you
13  want to.  But, you know, the party that led that train off the
14  tracks is going to be the one that's going to compensate the
15  other side for the time that it takes to actually do it right.

16       You know, and unfortunately, the Trustee gets
17  compensated based off of a formula and not actual time.  But,
18  you know, again, I'm not interested in wasting the Trustee's
19  time twice, as well, on when they, you know, she could move on
20  to other cases that are probably equally as frustrating and
21  difficult to get resolution to.

22       So those are the reasons why if you go down the wrong
23  road you're going to, you know, whichever party drives it is
24  going to be the one that compensates everyone in the room for
25  their time.

1        MR. SPRAGENS:  Thank you, Your Honor.

2        THE COURT:  Okay.

3        MR. YOUNG:  Your Honor, I don't think we had any

4  other questions or comments about the order, unless the Court

5  has some other question for the Trustee.

6        THE COURT:  No other questions.  But again, make sure

7  it needs to be an agreed order, that it fully addresses

8  everything we've talked about today.

9        If there's any questions related to the dates that

10  are already in the scheduling order, such as the dispositive

11  motions or trial dates, we have not changed those.  And I need

12  to know now if the parties believe they're going to be unable

13  to comply with those dates.  So within that order each party

14  needs to certify that the remaining dates are still good to go.

15        MR. SPRAGENS:  Yes, Your Honor.

16        THE COURT:  All right.  And I think -- I think that's

17  all I have.

18        Anything else?

19        MR. YOUNG:  Nothing from the Trustee, Your Honor.

20        MR. SPRAGENS:  No, Your Honor.

21        THE COURT:  All right.  Again, thank you for your

22  time and attention.  And hopefully we'll get through this one

23  in a more expeditious fashion going forward.

24        But if there are issues, the Court is obviously

25  available to address those issues.  But I still hold out

1  confidence that with the good lawyers involved in this case
2  they'll be able to communicate a little bit better so that we
3  cannot be here on St. Patrick's Day in 2023, perhaps.
4          So with that said, the Court will be adjourned.
5          THE CLERK:  All rise.
6      (Proceedings concluded at 2:35 p.m.)
7                      * * * * *
8
9
10
11
12
13
14              **C E R T I F I C A T I O N**
15
16          I, Alicia Jarrett, court-approved transcriber, hereby
17  certify that the foregoing is a correct transcript from the
18  official electronic sound recording of the proceedings in the
19  above-entitled matter.
20
21
22
23  _____
24  ALICIA JARRETT, AAERT NO. 428      DATE: March 23, 2022
25  ACCESS TRANSCRIPTS, LLC

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

IN RE:                                    )
                                          )
CUMMINGS MANOOKIAN, PLLC,                 )    **Case No. 3:19-bk-07235**
    Debtor.             )    **Chapter 7**
                                          )    **Judge Walker**
JEANNE ANN BURTON, TRUSTEE,               )
    Plaintiff,          )
                                          )
v.                                        )
                                          )
HAGH LAW, PLLC; AFSOON HAGH;              )
MANOOKIAN, PLLC; and FIRST-               )
CITIZENS BANK & TRUST                     )
COMPANY,                                  )
    Defendants.         )
                                          )    **Adv. Proc. No. 3:20-ap-90002**

## <u>NOTICE REGARDING MOTIONS TO COMPEL ORDER</u>

Comes now Jeanne Ann Burton, Trustee and Plaintiff herein (the "Trustee"), by and through special counsel, and hereby files this notice regarding a proposed order concerning the pending motions to compel.

On March 17, 2022, the Court held an extensive hearing to consider a multitude of discovery disputes between the parties. The Court articulated specific findings and rulings from the bench, and asked special counsel for the Trustee and counsel for the Defendants to submit an agreed order reflecting those findings and rulings. Special counsel for the Trustee drafted a proposed agreed order and circulated it to counsel for the Defendants on Tuesday, March 22, 2022. Special counsel for the Trustee asked the Defendants' counsel for feedback and/or authorization to sign and submit the order on their behalf. Having received neither permission to submit the agreed order nor any proposed changes by the evening of Thursday, March 24, 2022, special counsel for the Trustee emailed Defendants' counsel and informed them that the Trustee would be

submitting the order without their signature by noon on Friday unless comments were received prior to that time.

On the morning of Friday, March 25, 2022, Craig Gabbert, counsel for Afsoon Hagh and Hagh Law, PLLC, responded and indicated that his clients would not agree to depositions at the courthouse and would not agree to take the Trustee's deposition at the beginning of the time for depositions. John Spragens, counsel for Manookian, PLLC, also responded by email on the morning of Friday, March 25, 2022. Mr. Spragens' email first asked that the deadline for Marty Fitzgerald's compliance with the subpoena issued him be extended to Monday, March 28, 2022. The Trustee agreed to that request and made a corresponding change in the proposed order. Mr. Spragens' email further indicated that he was in court and could not fully respond, that Manookian PLLC would not waive its objections to the Court's rulings, but that it "may" be able to agree that the form of the order prepared by the Trustee accurately reflected the Court's rulings.

Since the Court's order included certain items that were to be addressed by no later than Friday, March 25, 2022, and since it appears that it is not going to be possible to submit an agreed order as the Court requested, the Trustee felt it necessary to submit an order for the Court's consideration without approval from the Defendants. The Trustee will defer to the Court regarding whether it wishes to sign the order proposed by the Trustee, schedule a conference with all counsel to discuss the order, or take some other action.

Dated:  March 25, 2022

Respectfully Submitted,

/s/Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN  37067
Tel: 615-465-6008
phillip@thompsonburton.com

Special Counsel for Trustee

3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## ORDER REGARDING MOTIONS TO COMPEL DISCOVERY RESPONSES

This matter came before the Court on March 17, 2022 for a hearing on the following matters: Trustee's Motion to Compel Discovery Responses from Manookian, PLLC (Doc. 95) ("Motion to Compel Manookian, PLLC"); Trustee's Motion to Compel Discovery Responses from Hagh Law, PLLC (Doc. 96) ("Motion to Compel Hagh Law"); Trustee's Motion to Compel Discovery Responses from Afsoon Hagh (Doc. 97) ("Motion to Compel Hagh"); Trustee's Motion to Compel Marty Fitzgerald to Comply with Subpoena for Production of Documents (Doc. 114) ("Motion to Compel Fitzgerald"); Defendant Manookian, PLLC's Motion to Compel Responses to Interrogatories from First and Second Sets of Written Discovery (Doc. 104) ("Motion to Compel

Trustee"); and Defendant Manookian, PLLC's Motion to Determine Sufficiency of Responses to Requests for Admission, or, Alternatively, to Deem Admitted (Doc. 109) ("Trustee RFA Motion") (Motion to Compel Manookian, PLLC, Motion to Compel Hagh Law, Motion to Compel Hagh, Motion to Compel Fitzgerald, Motion to Compel Trustee and Trustee FRA Motion, collectively, the "Motions"). Appearing at the hearing on the Motions were Phillip Young, on behalf of Jeanne Ann Burton, Trustee; John Spragens on behalf of Manookian, PLLC; and Craig Gabbert on behalf of Afsoon Hagh and Hagh Law, PLLC. Having considered all arguments contained in the Motions and the Responses thereto, and having considered all arguments of counsel made at the hearing on the Motions on March 17, 2022;

IT IS HEREBY FOUND:

A.  Pursuant to Federal Bankruptcy Rule 7052, the Court hereby incorporates and adopts all findings and conclusions stated orally at the hearing on March 17, 2022.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.  The Motion to Compel Fitzgerald is granted and Marty Fitzgerald is hereby ordered to fully respond to the subpoena issued to him by no later than March 28, 2022.

2.  Manookian, PLLC is hereby ordered to provide, by March 28, 2022, a written statement in response to Interrogatory Number 5 regarding the percentage or dollar amount to which Manookian, PLLC alleges it is entitled with regard to fees generated by the *Fitzgerald* and *Shoemaker* matters. Manookian, PLLC is further ordered to respond, by March 28, 2022, to the Trustee's amended Request for Production Number 1 pursuant to the limitations on the request provided by the Trustee at the March 17, 2022 hearing, to the extent any Defendant intends to rely upon any responsive documents in the trial of this matter. Manookian, PLLC is further ordered to produce to the Trustee,

2

by March 28, 2022, all correspondence with third parties responsive to the Trustee's Request for Production Number 8, including a privilege log as necessary.

3. Hagh Law, PLLC and Afsoon Hagh are hereby ordered to confirm in writing, by no later than March 25, 2022, that they have produced to the Trustee all engagement letters in their possession, custody or control that relate to the *Fitzgerald and Shoemaker* matters. To the extent that Hagh Law, PLLC and/or Afsoon Hagh have possession, custody or control of any other engagement letters related to the *Fitzgerald* and/or *Shoemaker* matters, they are ordered to produce those letters to the Trustee by no later than March 28, 2022. Hagh Law, PLLC and Afsoon Hagh are further ordered to produce to the Trustee, by March 28, 2022, all correspondence with third parties related to the *Fitzgerald* and *Shoemaker* matters, including a privilege log as necessary.

4. The Trustee is ordered to supplement, by March 28, 2022, her responses to Manookian, PLLC's First Set of Requests for Admission to certify that the Trustee made a diligent effort to find information necessary to respond to any request for admission for which she could not respond. The Trustee is further ordered to supplement, by March 25, 2022, her response to Hagh Law, PLLC's Interrogatory Number 1 to indicate which parties have knowledge of facts that remain an issue in this adversary proceeding at this juncture.

5. The Trustee shall respond to Manookian, PLLC's Second Set of Requests for Admission by no later than June 1, 2022.

6. All parties shall provide amendments to all interrogatories, requests for production, and requests for admission, should any be required after the completion of discovery, by

3

June 1, 2022.  If no amendments are necessary, each party shall certify that its prior responses remain valid.

7. The following depositions shall occur on the following dates, each to be conducted at the United States Bankruptcy Court for the Middle District of Tennessee, Customs House, 701 Broadway, Nashville, Tennessee:

    a. Jeanne Ann Burton, Trustee – April 20, 2022 from 10:00 am – 5:00 pm;

    b. Phillip Young, Receiver – April 21, 2022 from 10:00 am – 5:00 pm;

    c. Brian Manookian, Manookian, PLLC and Cummings Manookian, PLC – May 9, 2022 from 10:00 am – 5:00 pm; and

    d. Afsoon Hagh and Hagh Law, PLC – May 10, 2022 from 10:00 am – 5:00 pm.

8. Each deposition detailed in Paragraph 7 herein shall be in person unless the parties agree otherwise or unless the Court orders otherwise.  A notice of deposition stating the scope of each such deposition shall be filed at least fourteen (14) days in advance of each deposition.  Should any party object to the proposed scope of deposition, and that dispute cannot be resolved by the parties, the objecting party shall file a motion with this Court to resolve the dispute regarding the proposed scope.

9. All third party depositions shall be scheduled by the parties at dates convenient to all parties and may take place by Zoom unless otherwise ordered by this Court.

10. It is anticipated that the depositions listed in Paragraph 7 will be the only scheduled depositions of each party.  Should any party wish to take a second day of depositions of any of the parties listed in Paragraph 7, that party should seek relief from this Court

4

to do so.  The Court, at its sole discretion, may charge the attorneys' fees for any second

day of depositions to the party requesting the additional deposition.

11. This Court reserves the right to interpret and amend this Order as necessary.

| THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE |
| --- |

Submitted for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

5

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 3/28/2022



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## ORDER REGARDING MOTIONS TO COMPEL DISCOVERY RESPONSES

This matter came before the Court on March 17, 2022 for a hearing on the following

matters: Trustee's Motion to Compel Discovery Responses from Manookian, PLLC (Doc. 95)

("Motion to Compel Manookian, PLLC"); Trustee's Motion to Compel Discovery Responses from

Hagh Law, PLLC (Doc. 96) ("Motion to Compel Hagh Law"); Trustee's Motion to Compel

Discovery Responses from Afsoon Hagh (Doc. 97) ("Motion to Compel Hagh"); Trustee's Motion

to Compel Marty Fitzgerald to Comply with Subpoena for Production of Documents (Doc. 114)

("Motion to Compel Fitzgerald"); Defendant Manookian, PLLC's Motion to Compel Responses

to Interrogatories from First and Second Sets of Written Discovery (Doc. 104) ("Motion to Compel

Trustee"); and Defendant Manookian, PLLC's Motion to Determine Sufficiency of Responses to Requests for Admission, or, Alternatively, to Deem Admitted (Doc. 109) ("Trustee RFA Motion") (Motion to Compel Manookian, PLLC, Motion to Compel Hagh Law, Motion to Compel Hagh, Motion to Compel Fitzgerald, Motion to Compel Trustee and Trustee FRA Motion, collectively, the "Motions"). Appearing at the hearing on the Motions were Phillip Young, on behalf of Jeanne Ann Burton, Trustee; John Spragens on behalf of Manookian, PLLC; and Craig Gabbert on behalf of Afsoon Hagh and Hagh Law, PLLC. Having considered all arguments contained in the Motions and the Responses thereto, and having considered all arguments of counsel made at the hearing on the Motions on March 17, 2022;

IT IS HEREBY FOUND:

A.    Pursuant to Federal Bankruptcy Rule 7052, the Court hereby incorporates and adopts all findings and conclusions stated orally at the hearing on March 17, 2022.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.    The Motion to Compel Fitzgerald is granted and Marty Fitzgerald is hereby ordered to fully respond to the subpoena issued to him by no later than ~~March 28, 2022.~~ April 1, 2022.

2.    Manookian, PLLC is hereby ordered to provide, by ~~March 28, 2022~~ April 1, 2022 a written statement in response to Interrogatory Number 5 regarding the percentage or dollar amount to which Manookian, PLLC alleges it is entitled with regard to fees generated by the *Fitzgerald* and *Shoemaker* matters. Manookian, PLLC is further ordered to respond, by ~~March 28, 2022~~ April 1, 2022, to the Trustee's amended Request for Production Number 1 pursuant to the limitations on the request provided by the Trustee at the March 17, 2022 hearing, to the extent any Defendant intends to rely upon any responsive documents in the trial of this matter. Manookian, PLLC is further ordered to produce to the Trustee,

2

by ~~March 28, 2022,~~ April 1, 2022 all correspondence with third parties responsive to the Trustee's Request for Production Number 8, including a privilege log as necessary.

3. Hagh Law, PLLC and Afsoon Hagh are hereby ordered to confirm in writing, by no later than ~~March 25, 2022,~~ March 30, 2022 that they have produced to the Trustee all engagement letters in their possession, custody or control that relate to the *Fitzgerald and Shoemaker* matters. To the extent that Hagh Law, PLLC and/or Afsoon Hagh have possession, custody or control of any other engagement letters related to the *Fitzgerald* and/or *Shoemaker* matters, they are ordered to produce those letters to the Trustee by no later than ~~March 28, 2022.~~ April 1, 2022 Hagh Law, PLLC and Afsoon Hagh are further ordered to produce to the Trustee, by ~~March 28, 2022,~~ April 1, 2022 all correspondence with third parties related to the *Fitzgerald* and *Shoemaker* matters, including a privilege log as necessary.

4. The Trustee is ordered to supplement, by ~~March 28, 2022,~~ April 1, 2022 her responses to Manookian, PLLC's First Set of Requests for Admission to certify that the Trustee made a diligent effort to find information necessary to respond to any request for admission for which she could not respond. The Trustee is further ordered to supplement, by ~~March 25,~~ March 30, 2022 ~~2022,~~ her response to Hagh Law, PLLC's Interrogatory Number 1 to indicate which parties have knowledge of facts that remain an issue in this adversary proceeding at this juncture.

5. The Trustee shall respond to Manookian, PLLC's Second Set of Requests for Admission by no later than June 1, 2022.

6. All parties shall provide amendments to all interrogatories, requests for production, and requests for admission, should any be required after the completion of discovery, by

3

June 1, 2022.  If no amendments are necessary, each party shall certify that its prior responses remain valid.

7. The following depositions shall occur on the following dates, each to be conducted at the United States Bankruptcy Court for the Middle District of Tennessee, Customs House, 701 Broadway, Nashville, Tennessee:

    a. Jeanne Ann Burton, Trustee – April 20, 2022 from 10:00 am – 5:00 pm;

    b. Phillip Young, Receiver – April 21, 2022 from 10:00 am – 5:00 pm;

    c. Brian Manookian, Manookian, PLLC and Cummings Manookian, PLC – May 9, 2022 from 10:00 am – 5:00 pm; and

    d. Afsoon Hagh and Hagh Law, PLC – May 10, 2022 from 10:00 am – 5:00 pm.

8. Each deposition detailed in Paragraph 7 herein shall be in person unless the parties agree otherwise or unless the Court orders otherwise.  A notice of deposition stating the scope of each such deposition shall be filed at least fourteen (14) days in advance of each deposition.  Should any party object to the proposed scope of deposition, and that dispute cannot be resolved by the parties, the objecting party shall file a motion with this Court to resolve the dispute regarding the proposed scope.

9. All third party depositions shall be scheduled by the parties at dates convenient to all parties and may take place by Zoom unless otherwise ordered by this Court.

10. It is anticipated that the depositions listed in Paragraph 7 will be the only scheduled depositions of each party.  Should any party wish to take a second day of depositions of any of the parties listed in Paragraph 7, that party should seek relief from this Court

to do so.  The Court, at its sole discretion, may charge the attorneys' fees for any second

day of depositions to the party requesting the additional deposition.

11. This Court reserves the right to interpret and amend this Order as necessary.

<div style="border:1px solid black; text-align:center;">

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

</div>

Submitted for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

5

This Order has been electronically signed.  The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Burton,

    Plaintiff                                                Adv. Proc. No. 20-90002-CMW

Hagh Law PLLC,

    Defendant

# CERTIFICATE OF NOTICE

| District/off: 0650-3 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Mar 28, 2022 | Form ID: pdf001 | Total Noticed: 4 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Mar 30, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| dft | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Hagh Law PLLC, c/o Afsoon Hagh, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Manookian PLLC, c/o Brian Manookian, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |

TOTAL: 3

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| pla | + | Email/Text: jeanne.burton@comcast.net | Mar 28 2022 23:14:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Mar 30, 2022               Signature:       /s/Joseph Speetjens

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on March 28, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | |
| | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com  bankr@bassberry.com;delores.walker@bassberry.com |
| GLENN BENTON ROSE | |
| | on behalf of Defendant Hagh Law PLLC grose@bassberry.com  bankr@bassberry.com |

District/off: 0650-3

Date Rcvd: Mar 28, 2022

User: admin

Form ID: pdf001

Page 2 of 2

Total Noticed: 4

JOHN T. SPRAGENS

on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM spragenslaw@ecf.courtdrive.com

PHILLIP G YOUNG

on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com

TOTAL: 4

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 3/28/2022



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## ORDER REGARDING MOTIONS TO COMPEL DISCOVERY RESPONSES

This matter came before the Court on March 17, 2022 for a hearing on the following

matters: Trustee's Motion to Compel Discovery Responses from Manookian, PLLC (Doc. 95)

("Motion to Compel Manookian, PLLC"); Trustee's Motion to Compel Discovery Responses from

Hagh Law, PLLC (Doc. 96) ("Motion to Compel Hagh Law"); Trustee's Motion to Compel

Discovery Responses from Afsoon Hagh (Doc. 97) ("Motion to Compel Hagh"); Trustee's Motion

to Compel Marty Fitzgerald to Comply with Subpoena for Production of Documents (Doc. 114)

("Motion to Compel Fitzgerald"); Defendant Manookian, PLLC's Motion to Compel Responses

to Interrogatories from First and Second Sets of Written Discovery (Doc. 104) ("Motion to Compel

Trustee"); and Defendant Manookian, PLLC's Motion to Determine Sufficiency of Responses to Requests for Admission, or, Alternatively, to Deem Admitted (Doc. 109) ("Trustee RFA Motion") (Motion to Compel Manookian, PLLC, Motion to Compel Hagh Law, Motion to Compel Hagh, Motion to Compel Fitzgerald, Motion to Compel Trustee and Trustee FRA Motion, collectively, the "Motions").  Appearing at the hearing on the Motions were Phillip Young, on behalf of Jeanne Ann Burton, Trustee; John Spragens on behalf of Manookian, PLLC; and Craig Gabbert on behalf of Afsoon Hagh and Hagh Law, PLLC.  Having considered all arguments contained in the Motions and the Responses thereto, and having considered all arguments of counsel made at the hearing on the Motions on March 17, 2022;

IT IS HEREBY FOUND:

A.      Pursuant to Federal Bankruptcy Rule 7052, the Court hereby incorporates and adopts all findings and conclusions stated orally at the hearing on March 17, 2022.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.  The Motion to Compel Fitzgerald is granted and Marty Fitzgerald is hereby ordered to fully respond to the subpoena issued to him by no later than ~~March 28, 2022.~~ April 1, 2022.

2.  Manookian, PLLC is hereby ordered to provide, by ~~March 28, 2022~~ April 1, 2022 a written statement in response to Interrogatory Number 5 regarding the percentage or dollar amount to which Manookian, PLLC alleges it is entitled with regard to fees generated by the *Fitzgerald* and *Shoemaker* matters.  Manookian, PLLC is further ordered to respond, by ~~March 28, 2022~~ April 1, 2022, to the Trustee's amended Request for Production Number 1 pursuant to the limitations on the request provided by the Trustee at the March 17, 2022 hearing, to the extent any Defendant intends to rely upon any responsive documents in the trial of this matter.  Manookian, PLLC is further ordered to produce to the Trustee,

2

by ~~March 28, 2022,~~ *April 1, 2022* all correspondence with third parties responsive to the Trustee's Request for Production Number 8, including a privilege log as necessary.

3. Hagh Law, PLLC and Afsoon Hagh are hereby ordered to confirm in writing, by no later than ~~March 25, 2022,~~ *March 30, 2022* that they have produced to the Trustee all engagement letters in their possession, custody or control that relate to the *Fitzgerald and Shoemaker* matters. To the extent that Hagh Law, PLLC and/or Afsoon Hagh have possession, custody or control of any other engagement letters related to the *Fitzgerald* and/or *Shoemaker* matters, they are ordered to produce those letters to the Trustee by no later than ~~March 28, 2022.~~ *April 1, 2022*. Hagh Law, PLLC and Afsoon Hagh are further ordered to produce to the Trustee, by ~~March 28, 2022,~~ *April 1, 2022* all correspondence with third parties related to the *Fitzgerald* and *Shoemaker* matters, including a privilege log as necessary.

4. The Trustee is ordered to supplement, by ~~March 28, 2022,~~ *April 1, 2022* her responses to Manookian, PLLC's First Set of Requests for Admission to certify that the Trustee made a diligent effort to find information necessary to respond to any request for admission for which she could not respond. The Trustee is further ordered to supplement, by ~~March 25, 2022,~~ *March 30, 2022* her response to Hagh Law, PLLC's Interrogatory Number 1 to indicate which parties have knowledge of facts that remain an issue in this adversary proceeding at this juncture.

5. The Trustee shall respond to Manookian, PLLC's Second Set of Requests for Admission by no later than June 1, 2022.

6. All parties shall provide amendments to all interrogatories, requests for production, and requests for admission, should any be required after the completion of discovery, by

3

June 1, 2022.  If no amendments are necessary, each party shall certify that its prior responses remain valid.

7. The following depositions shall occur on the following dates, each to be conducted at the United States Bankruptcy Court for the Middle District of Tennessee, Customs House, 701 Broadway, Nashville, Tennessee:

   a. Jeanne Ann Burton, Trustee – April 20, 2022 from 10:00 am – 5:00 pm;

   b. Phillip Young, Receiver – April 21, 2022 from 10:00 am – 5:00 pm;

   c. Brian Manookian, Manookian, PLLC and Cummings Manookian, PLC – May 9, 2022 from 10:00 am – 5:00 pm; and

   d. Afsoon Hagh and Hagh Law, PLC – May 10, 2022 from 10:00 am – 5:00 pm.

8. Each deposition detailed in Paragraph 7 herein shall be in person unless the parties agree otherwise or unless the Court orders otherwise.  A notice of deposition stating the scope of each such deposition shall be filed at least fourteen (14) days in advance of each deposition.  Should any party object to the proposed scope of deposition, and that dispute cannot be resolved by the parties, the objecting party shall file a motion with this Court to resolve the dispute regarding the proposed scope.

9. All third party depositions shall be scheduled by the parties at dates convenient to all parties and may take place by Zoom unless otherwise ordered by this Court.

10. It is anticipated that the depositions listed in Paragraph 7 will be the only scheduled depositions of each party.  Should any party wish to take a second day of depositions of any of the parties listed in Paragraph 7, that party should seek relief from this Court

4

to do so.  The Court, at its sole discretion, may charge the attorneys' fees for any second

day of depositions to the party requesting the additional deposition.

11. This Court reserves the right to interpret and amend this Order as necessary.

> **THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

Submitted for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

5

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235** |
|  | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| Debtor. | **Adv. Proc. No. 3:20-ap-90002** |
| **JEANNE ANN BURTON, TRUSTEE** |  |
| Plaintiff, |  |
| v. |  |
| **HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,** |  |
| Defendants. |  |

## DEFENDANT MANOOKIAN PLLC'S NOTICE OF DEPOSITION OF JEANNE ANN BURTON AND PHILLIP YOUNG

Manookian PLLC, through counsel, gives notice of the depositions of Jeanne Ann Burton and Phillip Young, to be conducted at the time and place ordered by the Court in its March 8, 2022 Order, Document Number 143 at Paragraph 7.

The depositions will be taken before a person authorized by law to administer oaths and will continue from day-to-day until the examination is complete. The depositions will each be recorded by any means authorized by Fed. R. Civ. P. 30(b)(3), pursuant to Fed. Fed. R. Bankr. P. 7030, including audiovisually and stenographically.

The scope of both examinations will be any and all nonprivileged matters that are relevant to any party's claim or defense.

1

Date: April 8, 2022                    Respectfully submitted,

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC and
Brian Manookian*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed April 8, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

/s/ John Spragens

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

|  |  |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235** |
|  | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| **Debtor.** | **Adv. Proc. No. 3:20-ap-90002** |
| **JEANNE ANN BURTON, TRUSTEE** | |
| **Plaintiff,** | |
| **v.** | |
| **HAGH LAW, PLLC; AFSOON HAGH;**<br>**and MANOOKIAN PLLC,** | |
| **Defendants.** | |

**DEFENDANT HAGH LAW, PLLC'S NOTICE OF DEPOSITION OF JEANNE ANN BURTON AND PHILLIP YOUNG**

Hagh Law, PLLC, through counsel, gives notice of the depositions of Jeanne Ann Burton and Phillip Young, to be conducted at the time and place ordered by the Court in its March 8, 2022 Order, Document Number 143 at Paragraph 7.

The scope of both examinations will be as set forth in Rule 7026(b)(1) of the Bankruptcy Rules and may include any nonprivileged matters that are relevant to any party's claim or defense.

1

Date: April 8, 2022                          Respectfully submitted,


                                             /s/ Craig V. Gabbert, Jr.
                                             Craig V. Gabbert, Jr. (BPR 004702)
                                             Glenn B. Rose (BPR 10598)
                                             Bass, Berry & Sims PLC
                                             150 Third Ave. S., Suite 2800
                                             Nashville, TN 37201
                                             (615) 742-6200
                                             cgabbert@bassberry.com
                                             grose@bassberry.com

                                             *Attorney for Afsoon Hagh and*
                                             *Hagh Law, PLLC*


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served via email and the Court's ecf system on the 8th day of April, 2022 on parties receiving notice in this adversary proceeding, including the following:

Phillip G. Young, Jr.
Thompson Burton, PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067



                                             /s/ *Craig V. Gabbert, Jr.*
                                                  Craig V. Gabbert, Jr.

2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

---

## EXPEDITED MOTION TO SCHEDULE PRETRIAL CONFERENCE
## AND TO CONTINUE DEPOSITIONS AND OTHER DEADLINES

---

Comes now Jeanne Ann Burton, Trustee and Plaintiff in this matter (the "Trustee"), who respectfully moves in an expedited fashion to schedule a pretrial conference in this matter on or before April 15, 2022 and to continue certain depositions and pretrial deadlines. As grounds for this Motion, the Trustee states that:

<u>NECESSITY FOR EXPEDITED RELIEF</u>

1.    By this Expedited Motion and pursuant to Local Rule 9075-1, the Trustee seeks entry of an Order or Notice setting an expedited pretrial conference on or before April 15, 2022.

2.    The Trustee seeks to have the Motion decided on an expedited basis because depositions currently scheduled to be conducted on April 20, 2022 and April 21, 2022 are impacted by these issues.

3.      Notice of this Motion is being provided via the Court's electronic case filing system to all parties having filed a notice in this matter. The Trustee submits that the notice of the Motion as provided for herein constitutes good and adequate notice under these circumstances.

4.      The Trustee asks that the Court schedule an expedited pretrial conference on or before April 15, 2022 to consider these matters.

<div align="center">MOTION TO SCHEDULE PRETRIAL CONFERENCE<br>AND TO CONTINUE DEPOSITIONS AND OTHER DEADLINES</div>

1.      On March 17, 2022, the Court held a hearing to consider multiple motions to compel and to address a number of outstanding discovery issues.  At that hearing, the Court stated an intent to deal with all discovery issues so that the parties would have clarity and so that this matter could proceed more smoothly.  The Court asked the parties to submit an agreed proposed order.  However, the proposed order was submitted only on behalf of the Trustee because the Defendants refused to sign the proposed order containing the Court's findings and orders, which were announced orally at the March 17 hearing.

2.      On March 28, 2022, the Court entered an Order (the "Order") addressing these discovery issues.  The Order set out a number of deadlines, including a deadline of April 1, 2022[1] for all Defendants (and one third party) to submit certain discovery responses and/or to produce certain documents.

3.      At 5:15 p.m. on April 1, 2022, counsel for Manookian, PLLC emailed the Trustee's special counsel and asked for an extension of the April 1, 2022 deadline until Monday, April 4, 2022.  While the email did not state on whose behalf the request was being made, the Trustee

---

[1] Due to the timing of the signing of the Order, this April 1 deadline already gave the defendants an additional five (5) days from the deadline stated orally by the Court.

assumed that it was being made on behalf of all Defendants and of third party Marty Fitzgerald. The Trustee agreed to the requested extension until Monday, April 4, 2022.

4. On the afternoon of Monday, April 4, 2022, counsel for Afsoon Hagh and Hagh Law, PLLC emailed special counsel for the Trustee to notify the Trustee that the Hagh document production was in process, but that it would not be completed by the end of the day on April 4. Afsoon Hagh and Hagh Law, PLLC subsequently produced a number of documents on April 5, 2022.

5. At approximately 11:00 p.m. on Monday, April 4, 2022, John Spragens, on behalf of third party Marty Fitzgerald, produced certain responsive documents. No mention was made of the discovery supplements required of Manookian, PLLC.

6. On April 6, 2022, Mr. Spragens emailed the Trustee's counsel with the following statements, which purported to be Manookian, PLLC's required discovery supplement:

> **In the Shoemaker case, Manookian PLLC is entitled to 33.33% of any recovery to the extent Manookian PLLC secured that recovery in accordance with the terms of its engagement agreement with the client.**
>
> **In the Fitzgerald case, Manookian PLLC has never made any claim to any portion of any recovery; however, Brian Manookian may individually be entitled to some portion of any attorney fee.**
>
> **With respect to emails, Manookian PLLC has never owned, operated, or maintained any email server or domain, nor has it ever paid for or subscribed to email services. It does not have or maintain emails, nor has it ever. Its individual member Brian Manookian has used various email accounts from 2015 to the present, but those accounts belong to Mr. Manookian, and, as such, Manookian PLLC has no authority or access to those accounts. Manookian PLLC has no emails within its custody, control, or possession that are responsive to the Plaintiff's request.**

7. The Trustee considers this supplemental response insufficient for three reasons. First, with respect to the response regarding Manookian, PLLC's claim to fees in the Shoemaker case, the response still does not make clear the percentage of fees being sought. The qualifying statement "to the extent Manookian PLLC secured that recovery in accordance with the terms of its engagement agreement with the client" is not appropriate. The Shoemaker case has been concluded since October 2021; Manookian, PLLC should be required to state whether or not it

claims that it "secured the recovery" in that matter. With the addition of this qualifying language, it does no more to clarify Manookian, PLLC's answer than did its former "see engagement letter" response that the Court directed it to supplement. Second, the distinction between the access to information by Brian Manookian versus Manookian, PLLC is completely false. Brian Manookian was the sole member of Manookian, PLLC and Manookian, PLLC was administratively dissolved on October 6, 2020. Access by Brian Manookian *is* access by Manookian, PLLC and production should be required of any responsive documents within the possession, custody or control of either the individual or the LLC. Finally, these statements were not signed, as required for interrogatory responses. Either before or after conducting a pretrial conference in this matter, the Court should direct Manookian, PLLC to correct these deficiencies.

8. Additionally, and perhaps most importantly, the Court's Order included a provision requiring the parties to file a notice of deposition at least fourteen (14) days in advance of any deposition that clearly states the anticipated scope of deposition. The Order also details a specific process by which an opposing party can seek to limit the proposed scope; a fourteen day window was built in for that process and to allow parties to properly prepare for upcoming depositions. Currently, the Defendants are scheduled to depose the Trustee on April 20, 2022 and her special counsel (the former receiver) on April 21, 2022. Pursuant to the terms of the Order, notices that define the anticipated scope of those depositions were due on April 6, 2022 and April 7, 2022, respectively. Special counsel for the Trustee emailed the Defendants' counsel on the morning of April 8, 2022 asking that those notices be filed by 5:00 pm that day in order to avoid any further delay. The Defendants filed bare-bones notices around 5:00 pm on April 8, 2022. *See* Doc. 145 and 146.

9. The notices do not contain an anticipated scope of deposition with any level of specificity. The notices filed by both defendants (which relate to both the deposition of the Trustee and her special counsel) contains the same broad language: "The scope of both examinations will be any and all nonprivileged matters that are relevant to any party's claim or defense."[2] This language is not helpful in the preparation to make these depositions meaningful, it opens the door for a myriad disputes during the depositions, and it violates at least the spirit, if not the actual substance, of the Court's Order.

10. The Trustee respectfully requests that the Court schedule a pretrial conference in this matter on or before April 15, 2022 for the purposes of (1) discussing the scope of the depositions of the Trustee and her special counsel, (2) discussing the adequacy or inadequacy of the discovery responses of Manookian, PLLC, and (3) discussing alterations to the pretrial schedule in this case. With regard to scheduling, the Trustee would request that depositions be rescheduled to dates that are at least fourteen (14) days beyond when Manookian, PLLC is required to produce adequate discovery responses and at least fourteen (14) days beyond the scope of the depositions of both the Trustee and her special counsel being clearly defined. This will allow appropriate preparation time, as was included in the Court's Order, so that the depositions are as fruitful as possible.

11. The Trustee would also suggest that other pretrial deadlines (such as conclusion of depositions, supplements to discovery responses, and deadlines related to motions for summary judgment) be adjusted given the aforementioned violations of the schedule contained in the Court's

---

[2] The language in Hagh's notice reads slightly differently: "The scope of both examinations will be as set forth in 7026(b)(1) of the Bankruptcy Rules and may include any nonprivileged matters that are relevant to any party's claim or defense."

Order.  As stated in court by the Trustee's special counsel, the schedule was already tight but has been made tighter by the issues raised in this motion.

12.     Given the above considerations, the Trustee respectfully requests that the Court schedule a pretrial conference on or before April 15, 2022 to discuss these matters or, alternatively, to enter its own pretrial order that addresses these issues.

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been sent to all parties requesting notice via CM/ECF Electronic Filing on the 11th day of April, 2022.

/s/ Phillip G. Young, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
|     Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
|     Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## ORDER SETTING EXPEDITED PRETRIAL CONFERENCE

This matter came before the Court upon the Expedited Motion to Schedule Pretrial Conference and to Continue Depositions and Other Deadlines (the "Motion") filed by Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff herein (the "Trustee"); it appearing that good cause exists for conducting an expedited pretrial conference; and it appearing that the relief requested is in the best interests of all parties in interest; and after due deliberation and sufficient cause appearing therefore, it is hereby ORDERED:

A pretrial conference in this matter shall be conducted on _____, 2022 at

_____ __.m. prevailing Central Time via _____.

| This order was signed and entered electronically as indicated at the top of the first page. |
| --- |

Approved for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
615-465-6008
phillip@thompsonburton.com

Special Counsel for Trustee

Charles M. Walker
U.S. Bankruptcy Judge
    Dated: 4/14/2022



## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

IN RE:                                    )
                                          )    Case No; 3:19-bk-07235
CUMMINGS MANOOKIAN, PLLC,                 )    Chapter 7
                                          )    Honorable Charles M. Walker
        Debtor.                           )
_____ )
                                          )
Jeanne Ann Burton, in her capacity as     )
Chapter 7 Trustee,                        )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )    Adv. No: 3:20-ap-90002
                                          )
Hagh Law, PLLC, Afsoon Hagh,              )
Manookian PLLC,                           )
                                          )
        Defendants.                       )
_____ )

## ORDER REGARDING DISCOVERY MATTERS
## AND DENYING PLAINTIFF'S
## EXPEDITED MOTION FOR PRETRIAL CONFERENCE
## AND TO CONTINUE DEPOSITIONS AND OTHER DEADLINES

        This adversary proceeding was filed on January 8, 2020, and the parties are just now

getting to discovery. Justice is an impatient fellow, and this case exemplifies the reasons Rules[1]

exist to govern the expeditious manner in which parties and the court carry out the pursuit of

justice.

        This matter is before the Court on what is now the eighth motion regarding discovery

disputes, for which this Court has previously entered six Orders.  Now, the Court will take the

time to enter the seventh Order and will use this opportunity to emphasize the parties'

---

[1] Any reference to Rules refers to the Federal Rules of Civil Procedure (made applicable to this proceeding through the Federal Rules of Bankruptcy Procedure) unless otherwise noted.

1

obligations to abide by the applicable Rules and Orders of this Court. The Court will also draw a clear picture of the consequences that loom on the horizon for the party or parties unwilling to comply with those Rules and Orders.

The motion before the Court is that of the Plaintiff (Dkt.147) seeking a hearing regarding what appears to be the basics of discovery: scope and relevance. As it appears to be necessary, the Court will provide the guidance of various courts on this rudimentary subject, without the necessity of a hearing:

The purpose of discovery is to "uncover facts about the claims and defenses set forth in the pleadings ..." *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015) (citations omitted). *See also In re Cary*, 167 B.R. 163, 166 (Bankr. W.D. Mo. 1994) (citing *U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed.2d 1077 (1958) (additional citations omitted)) ("Discovery rules are to be broadly and liberally construed in order to fulfill discovery's purpose of providing *both parties* with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement.") (additional citations omitted)(emphasis added).

Any claims and defenses are raised in the parties' pleadings, with the Rules providing that a party is obligated to make a "short and plain statement of the claim" and their "defenses to each claim asserted ..." Fed. R. Civ. P. 8(a)/(b). By conditioning relevancy therefore on the claim and/or defense of a party, any controversy regarding its existence must necessarily focus on those claims and defenses raised by the parties in their pleadings. *Thompson v. H.U.D.,* 219 F.R.D. 93, 97 (D.Md.2003) (fact must be germane to a claim or defense alleged in the pleading for information concerning it to be a proper subject of discovery). *In re Great Lakes Factors, Inc.*, 331 B.R. 347, 350 (Bankr. N.D. Ohio 2005).

Rule 37, allows for a broad range of sanctions against counsel and parties for failure to comply with discovery orders. Rule 37 is written "in mandatory terms, and 'is designed to provide a strong inducement for disclosure of Rule 26(a) material.'" *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995) (*quoting Harlow v. Eli Lilly & Co.*, 1995 WL 319728 at *2 (N.D. Ill. May 25, 1995)).

When the "discovery violation involves a failure to obey a court order compelling discovery", the court may use " 'as many and as varied sanctions as are necessary to hold the scales of justice,' including the most severe sanction of dismissal." *In re Tutu Wells Contamination Litig.*, 162 F.R.D. 46, 63 (D.V.I. 1995).

If a party fails to obey a discovery Order issued by this Court, the Court may take any of the following actions:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purpose of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2), *In re Feldman*, 608 B.R. 426, 435–37 (Bankr. E.D. Pa. 2019)

Moreover, this Court has "broad discretion" in all discovery matters. *United States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017); *see also Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841 (5th Cir. 2000); *Newman*, 60 F.3d at 156 (3d Cir. 1995). *See also Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863 (3d Cir. 1984) (Third Circuit upheld *sua sponte* dismissal

3

of complaint with prejudice for failure to meet discovery deadlines). As the court stated in *Thomas v. Victoria's Secret Stores,* 141 F.R.D. 456, 458–59 (S.D.Ohio 1992), "where a party demonstrates bad faith by failing to meet dates set by the Court for compliance with discovery, despite being warned about possible sanctions, the Court does not abuse its discretion in finding that such 'callous disregard' of discovery orders justifies dismissal." *Bass v. Jostens, Inc.,* 71 F.3d 237, 243 (6th Cir. 1995).

It is important for the parties to note that the Court has advised them of the basic principles of discovery, as well as this Court's power to provide sanctions where it sees the need for deterrence and punishment. The Court will not look favorably upon failures to disclose, willful concealment of relevant information, gamesmanship, disruption of the schedule or any party that disregards the deadlines that have been established by the Rules or Orders of this Court. The Court will provide one last warning to counsel, the parties, and representatives of the parties, if for some reason anyone participating in the discovery process does not fully understand the Court's expectations with respect to discovery.

The prior admonishments by the Court, which put the parties on notice that the possibility of monetary sanctions exists for failure to comply with the discovery requirements, has not impacted the ability of the parties to cooperate and conduct discovery in this extremely routine and uncomplicated matter. As a result, in addition to monetary sanctions, the Court is prepared to exercise its discretion up to and including entry of dispositive sanctions if it finds such sanctions appropriate based on an analysis of "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the noncompliant party had been warned of the consequences of noncompliance. *Martinez v. City of New York*, 2018 WL 604019 at *22 (E.D.N.Y. Jan. 24,

4

2018) (citing *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (citation and quotation marks omitted)).

Additionally, if any party's actions result in "real prejudice" to another party, the Court may impose sanctions which could include dispositive relief. The Court is disturbed that this litigation is bogged down in such petty and unprofessional bickering since this litigation is by lawyers, for lawyers and about lawyers. Enough is enough! Stop the shenanigans or face consequences! This Court expects the discovery process to continue without any further delay or disruption to the timeline in place, and stands at the ready to enforce those Rules and Orders and, if necessary, to exercise its sanctioning powers including but not limited to monetary sanction, litigation sanction, and any fashioned sanction to promote deterrence and impose punishment on an offending party including imposition of dispositive sanctions.

THEREFORE, IT IS HEREBY ORDERED that

1) The Plaintiff's Expedited Motion (Dkt. #147) is **DENIED**;

2) The applicable Rules and Orders of this Court regarding discovery are in full force and effect.

3) The parties will appear for depositions as scheduled at the United States Bankruptcy Court, 701 Broadway, Nashville, TN in Courtroom 2 pursuant to the notices filed in the case, and pursuant to the prior Order of the Court entered on March 28, 2022 (Dkt. 143). At that time, the Court will provide conference rooms for each party and the parties shall conduct the depositions in an assigned conference room. If there are disputes, the parties shall contact chambers staff and the Court will hear and resolve any disputes.

*THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS
INDICATED AT THE TOP OF THE FIRST PAGE*

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

5

United States Bankruptcy Court
Middle District of Tennessee

Burton,
    Plaintiff

Adv. Proc. No. 20-90002-CMW

Hagh Law PLLC,
    Defendant

# CERTIFICATE OF NOTICE

| District/off: 0650-3 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Apr 14, 2022 | Form ID: pdf001 | Total Noticed: 5 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Apr 16, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| dft | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Hagh Law PLLC, c/o Afsoon Hagh, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Manookian PLLC, c/o Brian Manookian, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |

TOTAL: 3

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| ust | | Email/Text: ustpregion08.na.ecf@usdoj.gov | Apr 14 2022 23:08:00 | US TRUSTEE, OFFICE OF THE UNITED STATES TRUSTEE, 701 BROADWAY STE 318, NASHVILLE, TN 37203-3966 |
| pla | + | Email/Text: jeanne.burton@comcast.net | Apr 14 2022 23:08:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 2

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 16, 2022          Signature:      /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on April 14, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | |
| | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com bankr@bassberry.com;delores.walker@bassberry.com |

GLENN BENTON ROSE

on behalf of Defendant Hagh Law PLLC grose@bassberry.com bankr@bassberry.com

JOHN T. SPRAGENS

on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM spragenslaw@ecf.courtdrive.com

PHILLIP G YOUNG

on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com

TOTAL: 4

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 4/14/2022



## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No; 3:19-bk-07235 |
| CUMMINGS MANOOKIAN, PLLC, | ) | Chapter 7 |
| | ) | Honorable Charles M. Walker |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Jeanne Ann Burton, in her capacity as | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No: 3:20-ap-90002 |
| | ) | |
| Hagh Law, PLLC, Afsoon Hagh, | ) | |
| Manookian PLLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### ORDER REGARDING DISCOVERY MATTERS
### AND DENYING PLAINTIFF'S
### EXPEDITED MOTION FOR PRETRIAL CONFERENCE
### AND TO CONTINUE DEPOSITIONS AND OTHER DEADLINES

This adversary proceeding was filed on January 8, 2020, and the parties are just now

getting to discovery. Justice is an impatient fellow, and this case exemplifies the reasons Rules[1]

exist to govern the expeditious manner in which parties and the court carry out the pursuit of

justice.

This matter is before the Court on what is now the eighth motion regarding discovery

disputes, for which this Court has previously entered six Orders.  Now, the Court will take the

time to enter the seventh Order and will use this opportunity to emphasize the parties'

_____

[1] Any reference to Rules refers to the Federal Rules of Civil Procedure (made applicable to this proceeding through
the Federal Rules of Bankruptcy Procedure) unless otherwise noted.

1

obligations to abide by the applicable Rules and Orders of this Court. The Court will also draw a clear picture of the consequences that loom on the horizon for the party or parties unwilling to comply with those Rules and Orders.

The motion before the Court is that of the Plaintiff (Dkt.147) seeking a hearing regarding what appears to be the basics of discovery: scope and relevance. As it appears to be necessary, the Court will provide the guidance of various courts on this rudimentary subject, without the necessity of a hearing:

The purpose of discovery is to "uncover facts about the claims and defenses set forth in the pleadings ..." *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015) (citations omitted). *See also In re Cary*, 167 B.R. 163, 166 (Bankr. W.D. Mo. 1994) (citing *U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed.2d 1077 (1958) (additional citations omitted)) ("Discovery rules are to be broadly and liberally construed in order to fulfill discovery's purpose of providing *both parties* with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement.") (additional citations omitted)(emphasis added).

Any claims and defenses are raised in the parties' pleadings, with the Rules providing that a party is obligated to make a "short and plain statement of the claim" and their "defenses to each claim asserted ..."  Fed. R. Civ. P. 8(a)/(b). By conditioning relevancy therefore on the claim and/or defense of a party, any controversy regarding its existence must necessarily focus on those claims and defenses raised by the parties in their pleadings. *Thompson v. H.U.D.,* 219 F.R.D. 93, 97 (D.Md.2003) (fact must be germane to a claim or defense alleged in the pleading for information concerning it to be a proper subject of discovery). *In re Great Lakes Factors, Inc.*, 331 B.R. 347, 350 (Bankr. N.D. Ohio 2005).

Rule 37, allows for a broad range of sanctions against counsel and parties for failure to comply with discovery orders. Rule 37 is written "in mandatory terms, and 'is designed to provide a strong inducement for disclosure of Rule 26(a) material.'" *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.,* 60 F.3d 153, 156 (3d Cir. 1995) (*quoting Harlow v. Eli Lilly & Co.,* 1995 WL 319728 at *2 (N.D. Ill. May 25, 1995)).

When the "discovery violation involves a failure to obey a court order compelling discovery", the court may use " 'as many and as varied sanctions as are necessary to hold the scales of justice,' including the most severe sanction of dismissal." *In re Tutu Wells Contamination Litig.,* 162 F.R.D. 46, 63 (D.V.I. 1995).

If a party fails to obey a discovery Order issued by this Court, the Court may take any of the following actions:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purpose of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2), *In re Feldman*, 608 B.R. 426, 435–37 (Bankr. E.D. Pa. 2019)

Moreover, this Court has "broad discretion" in all discovery matters. *United States v. Washington,* 869 F.3d 193, 220 (3d Cir. 2017); *see also Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841 (5th Cir. 2000); *Newman,* 60 F.3d at 156 (3d Cir. 1995). *See also Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863 (3d Cir. 1984) (Third Circuit upheld *sua sponte* dismissal

3

of complaint with prejudice for failure to meet discovery deadlines). As the court stated in *Thomas v. Victoria's Secret Stores,* 141 F.R.D. 456, 458–59 (S.D.Ohio 1992), "where a party demonstrates bad faith by failing to meet dates set by the Court for compliance with discovery, despite being warned about possible sanctions, the Court does not abuse its discretion in finding that such 'callous disregard' of discovery orders justifies dismissal." *Bass v. Jostens, Inc.*, 71 F.3d 237, 243 (6th Cir. 1995).

It is important for the parties to note that the Court has advised them of the basic principles of discovery, as well as this Court's power to provide sanctions where it sees the need for deterrence and punishment.  The Court will not look favorably upon failures to disclose, willful concealment of relevant information, gamesmanship, disruption of the schedule or any party that disregards the deadlines that have been established by the Rules or Orders of this Court.  The Court will provide one last warning to counsel, the parties, and representatives of the parties, if for some reason anyone participating in the discovery process does not fully understand the Court's expectations with respect to discovery.

The prior admonishments by the Court, which put the parties on notice that the possibility of monetary sanctions exists for failure to comply with the discovery requirements, has not impacted the ability of the parties to cooperate and conduct discovery in this extremely routine and uncomplicated matter. As a result, in addition to monetary sanctions, the Court is prepared to exercise its discretion up to and including entry of dispositive sanctions if it finds such sanctions appropriate based on an analysis of "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the noncompliant party had been warned of the consequences of noncompliance. *Martinez v. City of New York*, 2018 WL 604019 at *22 (E.D.N.Y. Jan. 24,

4

2018) (citing *Agiwal v. Mid Island Mortg. Corp.,* 555 F.3d 298, 302 (2d Cir. 2009) (citation and quotation marks omitted)).

Additionally, if any party's actions result in "real prejudice" to another party, the Court may impose sanctions which could include dispositive relief. The Court is disturbed that this litigation is bogged down in such petty and unprofessional bickering since this litigation is by lawyers, for lawyers and about lawyers. Enough is enough! Stop the shenanigans or face consequences! This Court expects the discovery process to continue without any further delay or disruption to the timeline in place, and stands at the ready to enforce those Rules and Orders and, if necessary, to exercise its sanctioning powers including but not limited to monetary sanction, litigation sanction, and any fashioned sanction to promote deterrence and impose punishment on an offending party including imposition of dispositive sanctions.

THEREFORE, IT IS HEREBY ORDERED that

1) The Plaintiff's Expedited Motion (Dkt. #147) is **DENIED**;

2) The applicable Rules and Orders of this Court regarding discovery are in full force and effect.

3) The parties will appear for depositions as scheduled at the United States Bankruptcy Court, 701 Broadway, Nashville, TN in Courtroom 2 pursuant to the notices filed in the case, and pursuant to the prior Order of the Court entered on March 28, 2022 (Dkt. 143). At that time, the Court will provide conference rooms for each party and the parties shall conduct the depositions in an assigned conference room. If there are disputes, the parties shall contact chambers staff and the Court will hear and resolve any disputes.

*THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE*

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **HAGH LAW, PLLC; AFSOON** | ) | |
| **HAGH; MANOOKIAN, PLLC; and** | ) | |
| **FIRST-CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

---

## NOTICE OF DEPOSITION OF AFSOON HAGH AND HAGH LAW, PLLC

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7030 Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff in this action, respectfully gives notice that she will take the deposition of Afsoon Hagh, individually and as the corporate representative of Hagh Law, PLLC, on May 9, 2022[1], beginning at 10:00 a.m. Central time in Courtroom Two, 701 Broadway, Nashville, Tennessee 37203, pursuant to the terms of the Court's Order dated March 28, 2022. The deposition will be recorded by stenographic and/or

---

[1] The Defendants previously asked to switch the dates of the Afsoon Hagh and Brian Manookian depositions, such that Ms. Hagh would be deposed on May 9 and Mr. Manookian on May 10. The Trustee agreed. Subsequently, on April 20, 2022, the Defendants asked again to reschedule Ms. Hagh's deposition. The Trustee provided alternate dates to the Defendants that would be acceptable to the Trustee for Ms. Hagh's deposition, subject to Court approval. The Defendants have not selected an alternate date; therefore, the Trustee currently intends to depose Ms. Hagh on May 9, 2022, absent an amended notice and/or entry of an agreed order by the Court.

videographic means.  The topics to be addressed in the deposition are any nonprivileged matters relevant to any party's claims or defenses, pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure made applicable to this matter by Rule 7026 of the Federal Rules of Bankruptcy Procedure.  The Trustee anticipates addressing the following topics:

**Afsoon Hagh, individually:**

- Background of Ms. Hagh's law practice

- Ms. Hagh's relationship with the Debtor

- Ms. Hagh's knowledge of the operations of the Debtor

- Work performed by Ms. Hagh and/or any other attorneys on the *Fitzgerald* case

- The settlement of the *Fitzgerald* case and distribution of settlement proceeds

- Work performed by Ms. Hagh and/or any other attorneys on the *Shoemaker* case

- Expenses advanced by and/or reimbursed to Ms. Hagh in the *Shoemaker* case

- Work performed by Ms. Hagh on any other case listed in Paragraph 23 of the Complaint in this matter

**Afsoon Hagh, as representative of Hagh Law, PLLC:**

- The founding and operations of Hagh Law, PLLC

- Work performed by Hagh Law, PLLC and/or any other attorneys on the *Fitzgerald* case

- The settlement of the *Fitzgerald* case and distribution of settlement proceeds

- Work performed by Hagh Law, PLLC and/or any other attorneys on the *Shoemaker* case

- Expenses advanced by and/or reimbursed to Hagh Law, PLLC in the *Shoemaker* case

- Work performed by Hagh Law, PLLC on any other case listed in Paragraph 23 of the Complaint in this matter

Dated: April 25, 2022

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:    615.465.6008
Fax:    615.807.3048
Email: phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee

**Certificate of Service**

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF on all parties having made an appearance herein.

This 25th day of March, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **CUMMINGS MANOOKIAN, PLLC,** | ) **Case No. 3:19-bk-07235** |
| Debtor. | ) **Chapter 7** |
| | ) **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **HAGH LAW, PLLC; AFSOON** | ) |
| **HAGH; MANOOKIAN, PLLC; and** | ) |
| **FIRST-CITIZENS BANK & TRUST** | ) |
| **COMPANY,** | ) |
| Defendants. | ) |
| | ) **Adv. Proc. No. 3:20-ap-90002** |

## NOTICE OF DEPOSITION OF BRIAN MANOOKIAN, MANOOKIAN, PLLC AND CUMMINGS MANOOKIAN, PLC

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7030 Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff in this action, respectfully gives notice that she will take the deposition of Brian Manookian, individually and as the corporate representative of Manookian, PLLC and Cummings Manookian, PLC, on May 10, 2022[1], beginning at 10:00 a.m. Central time in Courtroom Two, 701 Broadway, Nashville, Tennessee 37203, pursuant to the terms of the Court's Order dated March 28, 2022. The deposition will be recorded by stenographic and/or videographic means. The topics to be addressed in the deposition are any nonprivileged matters relevant to any party's claims or defenses,

---

[1] The Defendants previously asked to switch the dates of the Afsoon Hagh and Brian Manookian depositions, such that Ms. Hagh would be deposed on May 9 and Mr. Manookian on May 10. The Trustee agreed.

pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure made applicable to this matter by Rule 7026 of the Federal Rules of Bankruptcy Procedure. The Trustee anticipates addressing the following topics:

**Brian Manookian, individually:**

- Background of Mr. Manookian's law practice

- Mr. Manookian's relationship with the Debtor

- Mr. Manookian's knowledge of the operations of the Debtor

- Work performed by Mr. Manookian and/or any other attorneys on the *Fitzgerald* case

- The settlement of the *Fitzgerald* case and distribution of settlement proceeds

- Work performed by Mr. Manookian and/or any other attorneys on the *Shoemaker* case

- Expenses advanced by and/or reimbursed to Mr. Manookian in the *Shoemaker* case

- Waiver of fees executed by Mr. Manookian in the *Shoemaker* case

- Work performed by Mr. Manookian on any other case listed in Paragraph 23 of the Complaint in this matter

**Brian Manookian, as representative of Manookian, PLLC:**

- The founding and operations of Manookian, PLLC

- Work performed by Manookian, PLLC and/or any other attorneys on the *Fitzgerald* case

- The settlement of the *Fitzgerald* case and distribution of settlement proceeds

- Work performed by Manookian, PLLC and/or any other attorneys on the *Shoemaker* case

2

- Expenses advanced by and/or reimbursed to Manookian, PLLC in the *Shoemaker* case

- Work performed by Manookian, PLLC on any other case listed in Paragraph 23 of the Complaint in this matter

**Brian Manookian, as representative of Cummings Manookian, PLC:**

- The founding and operations of Cummings Manookian, PLC

- Work performed by Cummings Manookian, PLC and/or any other attorneys on the *Fitzgerald* case

- Work performed by Cummings Manookian, PLC and/or any other attorneys on the *Shoemaker* case

- Expenses advanced by Cummings Manookian, PLC in the *Fitzgerald* and/or *Shoemaker* cases

- Work performed by Cummings Manookian, PLC on any other case listed in Paragraph 23 of the Complaint in this matter

Dated: April 25, 2022

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:    615.465.6008
Fax:    615.807.3048
Email: phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee

**Certificate of Service**

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF on all parties having made an appearance herein.

This 25th day of March, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

---

## JOINT MOTION TO RESCHEDULE DEPOSITION
## OF AFSOON HAGH AND HAGH LAW, PLLC

---

Come now Jeanne Ann Burton, Trustee (the "Trustee") and Afsoon Hagh and Hagh Law, PLLC (collectively, the "Hagh Parties"), by and through counsel, and jointly request to reschedule the deposition of Afsoon Hagh and Hagh Law, PLLC. In support for this request, the parties state as follows:

1.     On March 28, 2022, the Court entered an Order Regarding Motions to Compel Discovery Responses (Doc. 143) (the "Order"). Among the provisions of the Order was that Afsoon Hagh and Hagh Law, PLLC would be deposed on May 10, 2022, beginning at 10:00 a.m.

2.     The parties had previously agreed to move the Hagh Parties' deposition to May 9, 2022, effectively switching it with the deposition of Brian Manookian. Mr. Manookian's deposition will now occur on May 10, 2022.

3.     The Hagh Parties have recently made the Trustee aware of a scheduling conflict that will prevent Ms. Hagh from appearing for deposition on May 9, 2022.  The Hagh Parties and the Trustee have agreed that the deposition of the Hagh Parties should be rescheduled for May 18, 2022, beginning at 10:00 a.m. and concluding at 5:00 p.m., if that date is acceptable to the Court. Counsel for the Hagh Parties has consulted with counsel for Manookian, PLLC who has no objection to the rescheduling of this deposition.

4.     The Hagh Parties and the Trustee agree that the rescheduling of this deposition should not impact any other deadlines set in this case.

Wherefore, the Trustee and the Hagh Parties request that the deposition of the Hagh Parties be rescheduled for May 18, 2022, from 10:00 a.m. until 5:00 p.m.

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr.
Bass, Berry & Sims, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: (615) 742-6277
cgabbert@bassberry.com

Counsel to Afsoon Hagh and Hagh Law, PLLC

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **CUMMINGS MANOOKIAN, PLLC,** | ) Case No. 3:19-bk-07235 |
| Debtor. | ) Chapter 7 |
| | ) Judge Walker |
| **JEANNE ANN BURTON, TRUSTEE,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) |
| **MANOOKIAN, PLLC; and FIRST-** | ) |
| **CITIZENS BANK & TRUST** | ) |
| **COMPANY,** | ) |
| Defendants. | ) |
| | ) Adv. Proc. No. 3:20-ap-90002 |

## AGREED ORDER RESCHEDULING DEPOSITION
## OF AFSOON HAGH AND HAGH LAW, PLLC

Upon the Joint Motion to Reschedule Deposition of Afsoon Hagh and Hagh Law, PLLC (the "Motion") filed jointly by Jeanne Ann Burton, Trustee and Plaintiff ("Trustee") and Afsoon Hagh and Hagh Law, PLLC (the "Hagh Parties"), and by agreement of the parties as indicated by the signatures of counsel below, and good cause having been shown,

IT IS HEREBY ORDERED that the Court's Order Regarding Motions to Compel Discovery Responses (Doc. 143) (the "Order") dated March 28, 2022 is amended to provide that

the deposition of Afsoon Hagh and Hagh Law, PLLC will occur on May 18, 2022, from 10:00

a.m. to 5:00 p.m.  All other provisions of the Order remain unaffected.

> **THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

Submitted for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr.
Bass, Berry & Sims, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: (615) 742-6277
cgabbert@bassberry.com

Counsel to Afsoon Hagh and Hagh Law, PLLC

2

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 4/29/2022



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **CUMMINGS MANOOKIAN, PLLC,** | ) **Case No. 3:19-bk-07235** |
| Debtor. | ) **Chapter 7** |
| | ) **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) |
| **MANOOKIAN, PLLC; and FIRST-** | ) |
| **CITIZENS BANK & TRUST** | ) |
| **COMPANY,** | ) |
| Defendants. | ) |
| | ) **Adv. Proc. No. 3:20-ap-90002** |

## AGREED ORDER RESCHEDULING DEPOSITION
## OF AFSOON HAGH AND HAGH LAW, PLLC

Upon the Joint Motion to Reschedule Deposition of Afsoon Hagh and Hagh Law, PLLC (the "Motion") filed jointly by Jeanne Ann Burton, Trustee and Plaintiff ("Trustee") and Afsoon Hagh and Hagh Law, PLLC (the "Hagh Parties"), and by agreement of the parties as indicated by the signatures of counsel below, and good cause having been shown,

IT IS HEREBY ORDERED that the Court's Order Regarding Motions to Compel Discovery Responses (Doc. 143) (the "Order") dated March 28, 2022 is amended to provide that

the deposition of Afsoon Hagh and Hagh Law, PLLC will occur on May 18, 2022, from 10:00

a.m. to 5:00 p.m.  All other provisions of the Order remain unaffected.

> **THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

Submitted for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr.
Bass, Berry & Sims, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: (615) 742-6277
cgabbert@bassberry.com

Counsel to Afsoon Hagh and Hagh Law, PLLC

2

This Order has been electronically signed.  The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON | ) | |
| HAGH; MANOOKIAN, PLLC; and | ) | |
| FIRST-CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## REVISED NOTICE OF DEPOSITION
## OF AFSOON HAGH AND HAGH LAW, PLLC

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7030 Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff in this action, respectfully gives notice that she will take the deposition of Afsoon Hagh, individually and as the corporate representative of Hagh Law, PLLC, on May 18, 2022, beginning at 10:00 a.m. Central time in Courtroom Two, 701 Broadway, Nashville, Tennessee 37203, pursuant to the terms of the Court's Orders dated March 28, 2022 and April 29, 2022. The deposition will be recorded by stenographic and/or videographic means. The topics to be addressed in the deposition are any nonprivileged matters relevant to any party's claims or defenses, pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure made applicable to this matter by Rule 7026 of the Federal Rules of Bankruptcy Procedure. The Trustee anticipates addressing the following topics:

**Afsoon Hagh, individually:**

- Background of Ms. Hagh's law practice

- Ms. Hagh's relationship with the Debtor

- Ms. Hagh's knowledge of the operations of the Debtor

- Work performed by Ms. Hagh and/or any other attorneys on the *Fitzgerald* case

- The settlement of the *Fitzgerald* case and distribution of settlement proceeds

- Work performed by Ms. Hagh and/or any other attorneys on the *Shoemaker* case

- Expenses advanced by and/or reimbursed to Ms. Hagh in the *Shoemaker* case

- Work performed by Ms. Hagh on any other case listed in Paragraph 23 of the Complaint in this matter

**Afsoon Hagh, as representative of Hagh Law, PLLC:**

- The founding and operations of Hagh Law, PLLC

- Work performed by Hagh Law, PLLC and/or any other attorneys on the *Fitzgerald* case

- The settlement of the *Fitzgerald* case and distribution of settlement proceeds

- Work performed by Hagh Law, PLLC and/or any other attorneys on the *Shoemaker* case

- Expenses advanced by and/or reimbursed to Hagh Law, PLLC in the *Shoemaker* case

- Work performed by Hagh Law, PLLC on any other case listed in Paragraph 23 of the Complaint in this matter

Dated: April 30, 2022

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:    615.465.6008
Fax:    615.807.3048
Email: phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton,
Trustee

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has

been served via electronic notice/ECF on all parties having made an appearance herein.

This 30th day of April, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

United States Bankruptcy Court
Middle District of Tennessee

Burton,
    Plaintiff

Adv. Proc. No. 20-90002-CMW

Hagh Law PLLC,
    Defendant

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0650-3 | User: admin | Page 1 of 2 |
| Date Rcvd: Apr 29, 2022 | Form ID: pdf001 | Total Noticed: 4 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on May 01, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| dft | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Hagh Law PLLC, c/o Afsoon Hagh, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Manookian PLLC, c/o Brian Manookian, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |

TOTAL: 3

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| pla | + | Email/Text: jeanne.burton@comcast.net | Apr 29 2022 23:11:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: May 01, 2022          Signature:      /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on April 29, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com bankr@bassberry.com;delores.walker@bassberry.com |
| GLENN BENTON ROSE | on behalf of Defendant Hagh Law PLLC grose@bassberry.com bankr@bassberry.com |
| JOHN T. SPRAGENS | |

on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM  spragenslaw@ecf.courtdrive.com

PHILLIP G YOUNG

on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com

TOTAL: 4

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 4/29/2022



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **CUMMINGS MANOOKIAN, PLLC,** | ) **Case No. 3:19-bk-07235** |
| Debtor. | ) **Chapter 7** |
| | ) **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) |
| **MANOOKIAN, PLLC; and FIRST-** | ) |
| **CITIZENS BANK & TRUST** | ) |
| **COMPANY,** | ) |
| Defendants. | ) |
| | ) **Adv. Proc. No. 3:20-ap-90002** |

## AGREED ORDER RESCHEDULING DEPOSITION
## OF AFSOON HAGH AND HAGH LAW, PLLC

Upon the Joint Motion to Reschedule Deposition of Afsoon Hagh and Hagh Law, PLLC (the "Motion") filed jointly by Jeanne Ann Burton, Trustee and Plaintiff ("Trustee") and Afsoon Hagh and Hagh Law, PLLC (the "Hagh Parties"), and by agreement of the parties as indicated by the signatures of counsel below, and good cause having been shown,

IT IS HEREBY ORDERED that the Court's Order Regarding Motions to Compel Discovery Responses (Doc. 143) (the "Order") dated March 28, 2022 is amended to provide that

the deposition of Afsoon Hagh and Hagh Law, PLLC will occur on May 18, 2022, from 10:00

a.m. to 5:00 p.m.  All other provisions of the Order remain unaffected.

```
┌─────────────────────────────────────────────────────────────────┐
│        THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS        │
│             INDICATED AT THE TOP OF THE FIRST PAGE                │
└─────────────────────────────────────────────────────────────────┘
```

Submitted for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr.
Bass, Berry & Sims, PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: (615) 742-6277
cgabbert@bassberry.com

Counsel to Afsoon Hagh and Hagh Law, PLLC

2

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON | ) | |
| HAGH; MANOOKIAN, PLLC; and | ) | |
| FIRST-CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## NOTICE OF DEPOSITION OF RONETTE MCCARTHY

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7030 Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff in this action, respectfully gives notice that she will take the deposition of Ronette McCarthy, on May 25, 2022, beginning at 10:00 a.m. Central time via Zoom Video Conference. A link to the conference will be sent to counsel for all parties and to the witness; any other party wishing to participate in the deposition should contact undersigned counsel. The deposition will be recorded by stenographic and/or videographic means. The topics to be addressed in the deposition are any nonprivileged matters relevant to any party's claims or defenses, pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure made applicable to this matter by Rule 7026 of the Federal Rules of Bankruptcy Procedure. The Trustee anticipates addressing the following topics:

- Ms. McCarthy's knowledge of the *Fitzgerald* case, including her knowledge of the participation of each of the defendants and of the Debtor in that matter

Dated: May 5, 2022

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:     615.465.6008
Fax:    615.807.3048
Email: phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee

**Certificate of Service**

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF on all parties having made an appearance herein.

This 5th day of May, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
|     Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON | ) | |
| HAGH; MANOOKIAN, PLLC; and | ) | |
| FIRST-CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
|     Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## NOTICE OF DEPOSITION OF BRIAN CUMMINGS

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7030 Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff in this action, respectfully gives notice that she will take the deposition of Brian Cummings, on May 26, 2022, beginning at 10:00 a.m. Central time via Zoom Video Conference. A link to the conference will be sent to counsel for all parties and to the witness; any other party wishing to participate in the deposition should contact undersigned counsel. The deposition will be recorded by stenographic and/or videographic means. The topics to be addressed in the deposition are any nonprivileged matters relevant to any party's claims or defenses, pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure made applicable to this matter by Rule 7026 of the Federal Rules of Bankruptcy Procedure. The Trustee anticipates addressing the following topics:

- The founding of the Debtor and its business operations; and

- Mr. Cummings' involvement in the *Shoemaker* case and his knowledge of the involvement of each of the defendants in the *Shoemaker* matter.

Dated: May 5, 2022

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:    615.465.6008
Fax:    615.807.3048
Email: phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF on all parties having made an appearance herein.

This 5th day of May, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
|     Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON | ) | |
| HAGH; MANOOKIAN, PLLC; and | ) | |
| FIRST-CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
|     Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## NOTICE OF DEPOSITION OF MARTY FITZGERALD

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7030 Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff in this action, respectfully gives notice that she will take the deposition of Marty Fitzgerald, on May 27, 2022, beginning at 10:00 a.m. Central time via Zoom Video Conference. A link to the conference will be sent to counsel for all parties and to the witness; any other party wishing to participate in the deposition should contact undersigned counsel. The deposition will be recorded by stenographic and/or videographic means. The topics to be addressed in the deposition are any nonprivileged matters relevant to any party's claims or defenses, pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure made applicable to this matter by Rule 7026 of the Federal Rules of Bankruptcy Procedure. The Trustee anticipates addressing the following topics:

- The representation of Mr. Fitzgerald by the Debtor and by each of the Defendants

- Mr. Fitzgerald's written and oral communications with the Debtor and each of the Defendants

Dated: May 5, 2022

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:    615.465.6008
Fax:    615.807.3048
Email: phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF on all parties having made an appearance herein.

This 5th day of May, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | Case No, 3:19-bk-07235 |
| | Chapter 7 |
| CUMMINGS MANOOKIAN, PLLC | Judge Walker |
| Debtor. | Adv. Proc. No. 3:20-ap-90002 |
| JEANNE ANN BURTON, TRUSTEE | |
| Plaintiff, | |
| v. | |
| HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC, | |
| Defendants. | |

## BRIAN MANOOKIAN AND MANOOKIAN PLLC'S MOTION TO DISQUALIFY BANKRUPTCY JUDGE CHARLES WALKER

Brian Manookian and Manookian PLLC ("the Manookian Parties") respectfully ask the Court to recuse itself from further consideration of this matter, pursuant to 28 U.S.C. §§ 455(a), (b)(1), and the Code of Conduct for Federal Judges.

The Court is required to disqualify itself from this matter because it engaged in multiple prohibited *ex parte* communications about Brian Manookian[1] and this proceeding with "at least two [unidentified] lawyers" while this action has been pending.[2]

---

[1] Brian Manookian is the sole member of the Debtor, Cummings Manookian, and the Sole Member of the Defendant, Manookian PLLC.

[2] Ex. 1, Transcript of Pretrial Conference and Motion Hearing, March 17, 2022, at 84:15-85:11. On April 21, 2022, the Manookian Parties learned that the Trustee, through her

The Court then failed to promptly notify the parties of its repeated *ex parte* conversations as required by the Code of Conduct for United States Judges.[3] Instead, the Court only disclosed their occurrence much later, and only then to justify the Court's order that depositions in this matter be conducted at a secure courthouse location. In doing so, the Court attributed its order to unarticulated "concerns" about Brian Manookian which were communicated directly to the Court by undisclosed attorneys in various *ex parte* phone calls — buttressed by other information the Court gleaned from extrajudicial research — calls that neither the Court nor those attorneys disclosed to the Manookian Parties at the time.

As a result, the Manookian Parties were never able to respond to the *ex parte* representations, or even make a record regarding those improper communications and independent research for review by a superior court. To this day, potentially years after the *ex parte* communications in this still-pending case, the Manookian Parties thus remain in the dark as to the substance of those prohibited communications, although their corrosive effect on the Court has recently become clear.

The Court and the as-yet unidentified attorneys have, intentionally or not, engaged in conduct that violates multiple provisions of the Code of Conduct for United States Judges as well as the Rules of Professional Conduct governing attorneys licensed in Tennessee.[4] Recusal is required by statute. *See* 28 U.S.C. § 455(a) & (b)(1).

---

Special Counsel, has had at least one improper *ex parte* communication with the Court about Mr. Manookian. Ex. 2, Deposition of Phillip Young, at 43:15-45:25.

[3] Code of Conduct for United States Judges, Canon 3(A)(4).

[4] *Id. See also* Tennessee Supreme Court Rule 8, Rule of Professional Conduct 3.5, Impartiality and Decorum of the Tribunal ("A lawyer shall not: (a) seek to influence a judge, juror, prospective juror, or other official by means prohibited by law; [or] (b) communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order.").

2

This is not a close call. The Court is required to immediately disqualify itself from this case. The Court should additionally submit a sworn declaration detailing the dates, substance of, and parties to each of its *ex parte* communications so that the Manookian Parties may: (1) determine which orders of this Court occurred after the improper communications; (2) ascertain whether the Court is now a witness to party or creditor statements such that depositions of the *ex parte* participants is necessary; and (3) report any improper conduct to the appropriate licensing and oversight authorities.

## I. LEGAL STANDARD

Canon Three of the Code of Conduct for Federal Judges provides that the Court shall not permit *ex parte* communications, except in limited circumstances, and if such a communication is received, the Court must give all parties prompt notice of the communication and an opportunity to respond:

> Except as set out below, <u>a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers</u>. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, <u>the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested</u>. A judge may:
>
> (a) initiate, permit, or consider ex parte communications as authorized by law;
>
> (b) when circumstances require it, permit ex parte communication for scheduling, administrative, or emergency purposes, but only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication;
>
> (c) obtain the written advice of a disinterested expert on the law, but only after giving advance notice to the parties of the

person to be consulted and the subject matter of the advice and affording the parties reasonable opportunity to object and respond to the notice and to the advice received; or

(d) with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.

(emphasis added).

The Tennessee Rules of Professional Conduct are likewise clear that attorneys may not engage in *ex parte* communications with the Court. Rule 3.5 states that, "A lawyer shall not seek to influence a judge, juror, prospective juror, or other official by means prohibited by law; [or] communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order."

Finally, federal law mandates that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This includes but is not limited to situations "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Id.* § 455(b)(1). Receiving, failing to disclose, and then ruling based upon improper *ex parte* communications and extrajudicial information in violation of the Federal Code of Conduct for Judges is, definitionally, conduct resulting in a judge's impartiality reasonably being questioned.

## II.  FACTUAL BACKGROUND

On March 17, 2022, counsel to the Trustee, Phillip Young, announced in a hearing that he sought to conduct depositions in this case exclusively at a "secured" location at the courthouse, because of a heretofore unrevealed "security issue" about Brian Manookian,

4

the sole member of the Debtor Cummings Manookian and the Adversary Defendant, Manookian PLLC.[5]  Counsel for Mr. Manookian and Manookian PLLC, John Spragens, immediately opposed the request, as did counsel for Adversary Defendants Afsoon Hagh and Hagh Law.[6]

Rather than permit briefing or argument on the issue, the Court gratuitously and *sua sponte* began holding forth on what it described as the "100 pound gorilla in the room on that issue," despite no such issue never having been previously addressed to the Court by any party (at least not properly or on the record).  First, the Court – after undersigned counsel said he would preserve his objection to this departure from the ordinary course of proceedings for appeal – undertook to create an evidentiary record in support of his ruling.[7]  Next, the Court solicited a representation from the Trustee's counsel to the effect that the Trustee's counsel was "uncomfortable doing depositions in [defense counsel's] office."  Finally, the Court described *ex parte* communications and offered its own view, based upon undisclosed information not in the record, purporting to justify that Mr. Manookian's unspecified "past behavior" in front of "the tribunals" posed an undefined security threat:

---

[5] Ex. 1, Transcript of Pretrial Conference, March 17, 2022, at 83:21-25.
[6] *Id.*, at Page 82:8-10.
[7] *Id.*, at Page 82:8-83:13 (The Court: "So, Mr. Young, let's articulate a basis on the record.").

```
11          THE COURT:  Okay.
12          And, Mr. Young, you're going to represent that you're
13  uncomfortable doing depositions in Mr. Spragens' office?
14          MR. YOUNG:  Yes, Your Honor.
15          THE COURT:  All right.  And then I'll just address
16  the 100 pound gorilla in the room on that issue.
17          To be candid, Mr. Spragens, I mean, your client's
18  past behavior before the tribunals, and I've had at least two
19  lawyers call the Court and say they don't feel comfortable if
20  your client is going to appear, and, you know, the Court takes
21  those concerns very seriously and makes no conclusion on
22  whether they are valid, they are perceptions which drive
23  behaviors of other parties.  And to eliminate any of those
```

Ex. 1, Transcript of Pretrial Conference, at 84:11-23.

In addition to admitting having participated in multiple *ex parte* conversations in this case, the Court additionally made reference to "[Brian Manookian's] past behavior before the tribunals" when it ordered that depositions be conducted at the Courthouse over "security concerns" about Mr. Manookian.  But the Court did not disclose what it believed that "past behavior" to include, or where it acquired such information.

To be clear, Mr. Manookian has conducted or attended hundreds of depositions over the course of his career, including as a witness on multiple occasions.  No court has ever found that he acted even remotely inappropriately, much less in a physically threatening manner, during a deposition — nor, crucially, does the record in this case support such a finding.  The Court's ruling could have only been based upon its *ex parte* communications and extrajudicial research – and its view was so deeply held that it

offered it *sua sponte* based upon an extrajudicial record the Court itself endeavored to create.

## III. ARGUMENT

28 U.S.C. § 455(a) states that "[a]ny . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This recusal standard is objective: the relevant inquiry is whether a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 800 (5th Cir. 1986) (internal quotation marks omitted), *aff'd*, 486 U.S. 847 (1988); *see Air Line Pilots Ass'n, Int'l v. Continental Airlines, Inc. (In re Continental Airlines Corp.)*, 901 F.2d 1259, 1262 (5th Cir. 1990); *In re Faulkner*, 856 F.2d 716, 720-21 (5th Cir. 1988).

"Ex parte contacts are improper where, given all the circumstances, they could cause a reasonable person to question that judge's impartiality." *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014). And "decisions made by the district court in reliance on any undisclosed ex parte communications are inappropriate." *United States v. Lanier*, 748 F. App'x 674, 678 (6th Cir. 2018) (citing *United States v. Hayes*, 171 F.3d 389, 390–91 (6th Cir. 1999)). "If any such communications do occur . . . the district court should endeavor to disclose, as appropriate, the ex parte communication to the parties as soon as possible." *Id.* at 678.

"Extrajudicial knowledge," meanwhile, is knowledge that the judge acquires "outside a courthouse." *Edgar v. K.L.*, 93 F.3d 256, 259 (7th Cir. 1996) (citations omitted). "The point of distinguishing between 'personal knowledge' and knowledge gained in a judicial capacity is that information from the latter source enters the record and may be controverted or tested by the tools of the adversary process. Knowledge

received in other ways, which can be neither accurately stated nor fully tested, is 'extrajudicial.' " *Id.*

The Court's repeated *ex parte* communications with practicing attorneys regarding this case and the parties to it – which were not disclosed at the time and only revealed by the Court to support a subsequent ruling, when the Court spontaneously revealed its concern about the "100 pound gorilla in the room on that issue" – require recusal. Indeed, the Court's ruling requiring that depositions be conducted in the courthouse was expressly premised upon concerns the Court developed based upon (1) *ex parte* communications about Mr. Manookian that Mr. Manookian had no knowledge of, nor any opportunity to rebut, and (2) the Court's views about "Mr. Manookian's past behavior before the tribunals" – again unspecified, and again, based upon information outside the record in this case. [8]

A reasonable observer would conclude that the Court has developed views of a litigant, based upon improper *ex parte* communications and information outside the record in this case, and – however unintentionally – has made a ruling based on those concerns. On any objective basis, recusal is appropriate and required, and is the course of action that best promotes respect for the rule of law.

The Court's statements confirm that it has entertained *ex parte* communications, failed to disclose those communications to the impacted parties, conducted its own

---

[8] The Court's views were so strongly – and mistakenly – held that it took a second unusual step, not just requiring that the depositions be held in the courthouse but also leaving instructions for the participants and setting a time for hearings on objections (a copy of which is attached as Exhibit 3). The depositions were predictably uneventful and conducted professionally by all parties, and no objections were brought to the Court. But the Court's overreaction to an ill-defined threat of misconduct based on not even a scintilla of record evidence, considered by a reasonable observer, further demonstrates that recusal is warranted here.

independent investigation into a litigant in this case, and has – most troublingly – formed impressions and opinions based upon the information gained in those improper exercises, relying on them in its rulings and approach to this case.

Of particular concern, the Court's multiple *ex parte* communications pertained to the character of a witness that, in the Court's view, "holds the keys to the kingdom," because – as the Court put it in partially denying the Manookian Parties' motion to compel discovery responses from the Trustee – the key knowledge in the case concerning the Trustee's allegations "is locked away deep inside Mr. Manookian's brain somewhere."[9] The Court emphasized Mr. Manookian's centrality to the case, volunteering that "while he's under oath he will enlighten the Trustee and the other parties on exactly what happened," enabling the Trustee to learn details about the allegations in her Complaint.[10] When in response to the Court, undersigned counsel stated that it was "certainly the Trustee's theory" that Mr. Manookian holds the "keys to the kingdom," the Court corrected counsel, stating, "It's not a theory, Mr. Spragens," and explaining that the Trustee could not be expected to provide further information about her adversary proceeding allegations because she merely stepped into "save the estate for the benefit of creditors based off the actions of the people who put it in bankruptcy."[11]

Taken together, these comments indicate that the Court has developed "concerns" that it takes "very seriously" about whether Mr. Manookian can attend a deposition at counsel's office without some unspecified harm occurring. The Court has formed the view that Mr. Manookian is the key witness whose testimony will unlock the case when he is

---

[9] Ex. 1, Transcript of Pretrial Conference, at 49:2-16.
[10] *Id.*
[11] *Id.*

put under oath, and it has also determined that he poses a threat to other individuals or the orderly proceeding of the case, such that he cannot be trusted to attend or give a deposition at counsel's office. Those concerns are based exclusively upon *ex parte* communications and the Court's own investigation into, and extrajudicial impressions formed about, this key witness in the case. Under these circumstances, where the Court is both law-giver and factfinder, the Court should, consistent with principles of fair dealing and judicial neutrality, recuse itself so another judge can preside over this case.

The Court's undisclosed *ex parte* communications and consideration of extrinsic information, all of which explicitly formed the basis of its ruling, are not the kinds of innocuous *ex parte* communications allowed under the Federal Rules. *See, e.g.*, *Blixseth*, 742 F.3d 1215 at 1219-20 (permitting *ex parte* communications regarding scheduling and a non-public bankruptcy auction). Instead, the communications and extrinsic evidence are relevant to the material disputed issues in the case and its forthcoming findings about the credibility of a material witness whom the Court believes holds the "keys to the kingdom" in this case.

In short, the Court's failure to promptly disclose the occurrence of *ex parte* communications, lack of disclosure about the total substance of, and participants to, those conversations, undertaking of an independent investigation into this matter, and reliance upon both *ex parte* communications and extrajudicial research require immediate recusal. It further requires full disclosure of the circumstances and substance of the *ex parte* communications and extrajudicial materials considered by the Court.

## IV. CONCLUSION

For all these reasons, the Court is required to immediately disqualify itself. Moreover, the Court should promptly submit a sworn declaration detailing the dates,

substance of, and parties to each of its *ex parte* communications as well as the particulars of its independent investigation.

Date: May 5, 2022                         Respectfully submitted,

                                          */s/ John Spragens*
                                          John Spragens (TN Bar No. 31445)
                                          Spragens Law PLC
                                          311 22nd Ave. N.
                                          Nashville, TN 37203
                                          T: (615) 983-8900
                                          F: (615) 682-8533
                                          john@spragenslaw.com

                                          *Attorney for Manookian PLLC and*
                                          *Brian Manookian*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed May 5, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

                                          */s/ John Spragens*

# EXHIBIT 1

```
                 UNITED STATES BANKRUPTCY COURT
              MIDDLE DISTRICT OF TENNESSEE (NASHVILLE)


IN RE:                      .    Case No. 19-07235
                            .    Chapter 7
CUMMINGS MANOOKIAN, PLLC,   .
                            .
                            .
              Debtor.       .
                            .
. . . . . . . . . . . . . . .
                            .
JEANNE ANN BURTON,          .    Adv. No. 20-90002
                            .
              Plaintiff,    .
                            .
       v.                   .
                            .
HAGH LAW, PLLC, et al.,     .    701 Broadway
                            .    Nashville, TN 37203
              Defendants.   .
                            .    Thursday, March 17, 2022
. . . . . . . . . . . . . . .    8:48 a.m.


     TRANSCRIPT OF PRETRIAL CONFERENCE AND MOTION HEARING
          BEFORE THE HONORABLE CHARLES M. WALKER
            UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

 For the Plaintiff:      Thompson Burton PLLC
                         By:  PHILLIP G. YOUNG, ESQ.
                         One Franklin Park
                         6100 Tower Circle, Suite 200
                         Franklin, TN 37067
                         (615) 465-6008



 APPEARANCES CONTINUED.



 Audio Operator:         Tanja Brewer, ECR



 Transcription Company:  Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

```
For Hagh Law PLLC and     Bass, Berry & Sims PLC
Afsoon Hagh:              By:  CRAIG VERNON GABBERT, JR., ESQ.
                          150 Third Avenue South, Suite 2800
                          Nashville, TN 37201
                          (615) 742-6277

For Manookian PLLC:       Spragens Law PLLC
                          By:  JOHN T. SPRAGENS, ESQ.
                          311 22nd Avenue North
                          Nashville, TN 37203
                          (615) 983-8900
```

1    (Proceedings commenced at 8:48 a.m.)

2         THE CLERK:  All rise.  The United States Bankruptcy

3    Court for the Middle District of Tennessee is now in session,

4    the Honorable Charles M. Walker presiding.

5         THE COURT:  Good morning.  Please take your seats.

6         THE CLERK:  Your Honor, we're here on Case Number

7    20-90002, Burton v. Hagh Law, PLLC.

8         There's several matters set.  There's a pretrial

9    conference, motion to compel discovery responses from Manookian

10   PLLC.  We have a motion and notice to compel discovery

11   responses from Hagh Law, PLLC, a motion and notice to compel

12   discovery responses from Afsoon Hagh.  Also set this morning is

13   Manookian, PLLC's motion and notice to compel Trustee Jeanne

14   Burton, to respond to interrogatories, Manookian PLLC's motion

15   for the Court to determine sufficiency of plaintiff's responses

16   to request for admission, or alternatively to be deemed

17   admitted.  And the last matter is motion and notice to compel

18   Marty Fitzgerald to comply with subpoena for production of

19   documents.

20        THE COURT:  All right.  Thank you.

21        Obviously, with that long laundry list of discovery

22   related matters that we're here to resolve, as promised, we're

23   going to be resolving all of them today.

24        And if it gets hot in here, so be it.  There's

25   something wrong with the air, so if it gets warm in here, too

1  bad.

2       We have a hard break at 10:45 today.  We'll recess

3  from 10:45 to 2 p.m.  And at 2 pm., we'll come back and resolve

4  anything, if necessary, that remains.  And we will stay until

5  everything's resolved.

6       Obviously, with the many provisions within the Rules

7  of Evidence deemed in making discovery easy, it's the

8  responsibility of good lawyers to resolve discovery.  For us to

9  be here on such a list means that somewhere someone has failed.

10  So part of what I want to do today, I will be assessing who may

11  be responsible, or how many parties may be responsible, for

12  this breakdown in what typically is an orderly discovery

13  process.  And rather than let the secured creditors pay, if

14  it's one of the other parties, they'll pay.  Or the Trustee may

15  pay.  It all depends on who is responsible for this breakdown

16  in what, in my years on the bench, I don't think I've ever seen

17  quite the mess with discovery on what is not a complicated

18  case, and a case involving lawyers, which even makes it more

19  frustrating that we're here today.  That all these good lawyers

20  in the room, and all of the parties are either lawyers or law

21  firms, and the fact that this is Bankruptcy Court where we

22  typically resolve things, because there are limited funds and

23  everyone knows that.

24       So I'm a little discouraged to be here today.  I'll

25  just put it that way.

1          So, Mr. Young, let's get started.  We're going line
2   by line.  Tell me what's remaining and the Court will rule
3   accordingly.
4          MR. YOUNG:  Yes, Your Honor.  And I'm happy to --
5   I'll put the screen up where it's appropriate, but I'd like to
6   just sort of talk globally a little bit if I can first.
7          THE COURT:  Okay.
8          MR. YOUNG:  I think on Tuesday afternoon, we filed a
9   report so that hopefully the Court was not coming in completely
10  cold.
11         THE COURT:  Right.  And just one note on the status
12  report.  Is everyone in agreement that the status report
13  contains all of the outstanding discovery issues?  That there
14  are no other issues that need to be discussed today?
15         MR. GABBERT:  The ones related to Hagh Law are fairly
16  specific and, basically, I think we respond to most of those
17  already.
18         THE COURT:  All right.
19         MR. YOUNG:  And that's, I guess that's the point.
20  That's why I filed the status report is, from the Trustee's
21  perspective, it's a fairly finite set of documents that we're
22  still looking for, and I'm happy to go through those.
23         If the Court will, I'd like to start, though, with
24  the Fitzgerald subpoena, because that's perhaps the easiest.
25         We issued a subpoena to Marty Fitzgerald, who's a

1  third party. It was issued December 9th, served December 13th.

2  I assume Hagh emailed an objection on December 27th, said other

3  counsel would contact us. We didn't get any other kind of

4  objection.

5         Mr. Spragens indicated to the Court last time that he

6  thought he could coordinate Mr. Fitzgerald's response, though

7  not making clear that he was not representing Mr. Fitzgerald,

8  so I'm not trying to hold him to that.

9         But we've received nothing. Those documents were a

10  finite set of documents, just as the Court knows. And I want

11  to explain what they are and why they're important.

12         What we sought there were any kind of communications

13  involving engagement or disengagement of Cummings Manookian,

14  Manookian, PLLC, Hagh Law, PLLC, Afsoon Hagh, or Brian

15  Manookian. We've received from Mr. Manookian an engagement

16  letter from Cummings Manookian. We've received from Mr.

17  Manookian, a letter that he purportedly sent to Mr. Fitzgerald

18  notifying him that he'd have to get other counsel. I don't

19  know, frankly, whether that was delivered, whether that letter

20  was delivered or not. And that was part of the reason that we

21  were seeking to see what Mr. Fitzgerald had in his files. And

22  there's been some reference to a Hagh Law engagement letter

23  with the Fitzgeralds which we've not seen.

24         And so that's the purpose of the subpoena. I tried

25  to keep it, he's a third party, he's not really involved in

1  this. I tried to keep it as finite as possible, as easy to

2  respond to as possible. It should just be a handful of

3  documents, but I've received nothing. And so we just ask the

4  Court to compel responses to that subpoena.

5          THE COURT: Granted.

6          MR. SPRAGENS: Your Honor, would you like an update

7  on the status of that?

8          THE COURT: Yes. Sure.

9          MR. SPRAGENS: As Mr. Young knows, I was out of town

10 until yesterday evening, and I inquired about that when I got

11 back, and I'm told that Mr. Fitzgerald will be providing

12 documents to me by tomorrow. I would like an opportunity to

13 look at them because I think that there may be attorney-client

14 communications in the documents that he provides. But then I'm

15 prepared to turn over whatever is given to me early next week.

16         THE COURT: All right.

17         MR. SPRAGENS: So I just wanted the Court to know

18 that I've looked into that matter.

19         THE COURT: All right. And one thing, let's go ahead

20 and get appearances. I kind of jumped into this before we got

21 to the basics.

22         So, if I can start on this side and work across the

23 room?

24         MR. YOUNG: Yes, Your Honor. Phillip Young, and

25 Jeanne Burton is with me, here on behalf of the Trustee.

1          MR. SPRAGENS:  John Spragens on behalf of Manookian,

2    PLLC.

3          MR. GABBERT:  Craig Gabbert on behalf of Afsoon Hagh,

4    Hagh Law, Bass, Berry & Sims.

5          THE COURT:  All right.  Thank you.

6          For the Fitzgerald subpoena the Court will grant the

7    relief with the condition that any production be provided no

8    later than the 25th.  That will give Mr. Spragens adequate time

9    to review.  And based on the representations of Counsel, please

10   add that to the order, that it specifically requires the

11   turnover in production of the requested documents to the

12   Trustee, Trustee's counsel, no later than March 25th.

13         MR. YOUNG:  Thank you, Your Honor.  I will.

14         The next matter I'd like to take up is the, if the

15   Court will, is the motion to compel against Manookian, PLLC.

16   There are actually only three remaining issues that we have and

17   I'll talk about them, and then if we need to bring them up I'll

18   bring them up on the screen.  I have them prepared.

19         But it's one interrogatory and two requests.  And

20   Manookian, PLLC did send us, on Tuesday, amended responses to

21   those.  And actually, I believe I attached that to my status

22   report, those amendments.  And those amendments did take care

23   of one of the four outstanding matters as of that time, but

24   there are still three outstanding matters and I tried to detail

25   the issues remaining in the status report.

1          The biggest one, Your Honor, is Interrogatory Number

2  5.  Interrogatory Number 5 asks, it has a list of particular

3  cases that Cummings Manookian had been involved in

4  pre-petition, and it asked Manookian, PLLC to say whether it

5  had an interest in the fees of any of those cases.  And if so,

6  state by dollar amount or percentage the interest in fees.

7          And we asked the same question of Hagh Law, and Hagh

8  Law answered that question correctly, the way we had asked.

9  But Manookian, PLLC has not responded to the question of the

10 dollar amount or percentage of the Fitzgerald or Shoemaker fees

11 to which it claims entitlement.

12          I want to explain to the Court why this question is

13 so critical to get an answer, because the answer so far has

14 essentially been, it's governed by -- it's governed by the

15 terms of some engagement letters and that's how it's going to

16 be decided, what percentage.

17          We need a percentage or a dollar amount for this

18 reason.  If Manookian, PLLC claims that they are entitled to

19 fees, to any portion of the fees, in either the Fitzgerald or

20 the Shoemaker case, that's inconsistent with the position

21 they've taken to this court so far.  That is that once a law

22 firm withdraws, it has waived its rights to fees.

23          So in that case, Mr. Manookian, when he was

24 suspended, withdrew in both of those cases.  So if they say

25 they are entitled to fees, there's an inconsistency.  If they

1  say they are entitled to no fees from either of those cases,

2  then I'm not sure they need to even be a party to this anymore,

3  because those are the only two remaining major assets of this

4  case.

5        And so either way, that's a significant outcome to

6  get a commitment in writing, not orally but in writing, as to

7  whether or not Manookian, PLLC claims an interest, a specific

8  interest, in those fees.  That's why that question is so

9  important, and that's why we've kept pushing on that.  It's why

10  I said that was the first and most important issue and that it

11  might moot all other issues as between the Trustee and

12  Manookian, PLLC.

13        So that's the only interrogatory that remains

14  unresponded to, or not satisfactory to the Trustee.

15        And then there are two other requests that we can get

16  to, but I'd like to deal with the interrogatory first, if the

17  Court will.

18        THE COURT:  All right.

19        Mr. Spragens?

20        MR. SPRAGENS:  Thank you, Your Honor.

21        As Your Honor probably saw in the correspondence that

22  was produced, well that was filed in support of the status

23  report, I have tried to figure out exactly the information that

24  Mr. Young has been looking for.  I have tried to make a

25  representative of the firm available to talk to Mr. Young to

1  try to get answers to these questions.

2         With respect to this specific interrogatory, we have

3  produced the written agreement itself.  I think that ==Federal==

4  ==Rule of Civil Procedure 33(d)== entitles us to produce documents

5  in response to interrogatories, documents that are maintained

6  in the course, the ordinary course of business.

7         There is a legal question that's at issue there, and

8  the Trustee can draw her own conclusions from the face of the

9  representation agreement about whether there is any entitlement

10  to fees, that the agreement does not claim any entitlement to

11  fees.  And I think the document speaks for itself.

12         So we have responded to that interrogatory.  We've

13  given them the source document now.  And in my view, this is

14  sort of a "gotcha" attempt to try to set up a heads I win,

15  tails you lose, situation by the Trustee.  In fact, we've just

16  given them the document and the Trustee can formulate its own

17  legal position about the document.

18         So in my view, we fully responded under 33(d).

19         THE COURT:  Just as someone who's practiced with

20  lawyers, for lawyers not to know how much money they think

21  they're going to make seems a little, frankly, ridiculous.  But

22  I see your position.

23         Mr. Young, did Hagh Law respond in a fashion that

24  would give you the information?

25         MR. YOUNG:  No, Your Honor.  Hagh Law, in response to

1  that same question, we asked the same question of Hagh Law, and

2  they actually gave a percentage that they say they're entitled

3  to.  So that I can understand.  I know what to do with that.

4          I'll note that Manookian, PLLC did produce one

5  agreement in the Shoemaker case.  It did not produce an

6  agreement related to Fitzgerald, but said that any right to

7  fees in Fitzgerald were defined in a Hagh Law engagement letter

8  with the Fitzgeralds, and we've not seen a Hagh Law engagement

9  letter with the Fitzgeralds.  So I don't know what to do with

10 that.  To say there's some document that's floating out there

11 that defines our interest, but we've not seen it, so I just, I

12 don't know what it to do with that.

13         MR. GABBERT:  Your Honor, with respect to the

14 Fitzgerald case -- do you mind if I stand here, or should I

15 come to the podium?

16         THE COURT:  You can --

17         MR. GABBERT:  With respect to the Fitzgerald case, we

18 responded we don't have a copy of any agreement.  But, you

19 know, we think that any -- it says, "Manookian PLLC's

20 entitlement, if any, to payment is governed by the specific

21 terms of a written agreement between the Fitzgeralds and Hage

22 Law.  Manookian, PLLC does not have a copy of the written

23 agreement."  So we've done our best to answer that one.

24     Obviously there's outstanding discovery to the

25 Fitzgeralds, maybe that will turn up what he's looking for.

1  Maybe Hage Law has documents, although my understanding is they
2  produced documents.

3          So, you know, I think the Fitzgerald question is
4  resolved, from our perspective.  We've given him what we have,
5  which is no written agreement.  And we've told him that we
6  looked and we don't have one.

7          With respect to the Shoemaker case, we've given him
8  the written agreement, and I think that that should resolve the
9  question.

10          MR. YOUNG:  And, Your Honor, just briefly.  That
11  resolves the request for production on that point.  What I'm
12  asking is whether or not they claim any entitlement to fee
13  based on any of that.

14          THE COURT:  All right.  What the Court's going to
15  order is a definitive statement from Manookian, PLLC as to any
16  percentage or dollar amount they believe they are owed, period.

17          Again, we're dealing with attorneys, attorneys know
18  how much money.  This is not a calculus question.  Provide the
19  information.

20          MR. YOUNG:  Thank you, Your Honor.

21          I'm ready to move on to the request for production,
22  if the Court's ready.

23          Request for Production Number 1 asked for any
24  documents that supported any affirmative defense or denial that
25  was set out in the answer.

1      And I understand the issue about that's awfully
2  broad.  I've tried to define that in subsequent pleadings to
3  say what I'm really looking for here is Manookian, PLLC, and
4  the other defendants as well, we'll get there, but Manookian,
5  PLLC has raised affirmatively that they have proof that would
6  disprove some of the -- some of the Trustee's allegations.  And
7  things that they've mentioned in the past were they had proof
8  by video or keyswipe information that showed that Afsoon Hagh
9  never went through the premises, the law office, after July of
10 2018.

11     They have documents showing that somebody other than
12 Cummings Manookian owned the furniture, equipment, telephone
13 number, website domain.  That they had documents concerning
14 Cummings Manookian's rights to use the premises, or not use the
15 premises, at 45 Music Square West.  And some, I guess, vague
16 illusion to time records for the cases, time records that the
17 lawyers may have kept.  If those exist, we need them.

18     If they can disprove that this is not -- we don't
19 want to go on a wild goose chase.  We want to narrow down what
20 the real issues are.  And if they can disprove the Trustee's
21 allegations, then, by all means, we'd like the evidence to
22 disprove that so that we can narrow this down.

23     Those issues that I just -- we don't really know what
24 we don't know, frankly, in this case.  But those are issues
25 that I've seen referenced in pleadings before.  And to the

extent that sort of information exist, we think the Trustee's entitled to receive it now. And if we're not, then, Your Honor, we'd ask that the Court say what's not produced by a certain date can't be used. I think it's that simple with regard to that.

If video really doesn't exist, or key fob information really doesn't exist, that's fine. If was just puffery or whatever, that's fine. We just don't want something to come up later, well after discovery is closed, and we have to deal with it at that time.

So that's what request Number 1 with regard to Manookian, PLLC involves, and that's really all we're looking for, Your Honor.

THE COURT: Okay.

And, Mr. Spragens, Mr. Young has enumerated specific items or documents. What is your objection to providing what, based off whatever conversations he's had with you, may or may not exist?

MR. SPRAGENS: Well, with respect to certain information, like he asked about key fobs and swipes, you know, what dates is he asking about, for example. Because producing here's -- let me tell you from my perspective what has happened in this discovery process.

First of all, asking for all documents that support your affirmative defenses is a very broad, extremely broad,

1  interrogatory.

2            THE COURT:  The Court agrees.

3            MR. SPRAGENS:  So that is a huge challenge for us to

4  respond to.

5            THE COURT:  Right.  There's no dispute with that.

6            MR. SPRAGENS:  Compounding that challenge is the fact

7  that the allegations in the complaint are sweeping allegations

8  about the conversion of property, the misuse of office

9  resources, furniture.  There's all this, you know, stuff in the

10 complaint, these very broad allegations.  And I think if you'll

11 indulge me just for a moment, what we have been trying to do in

12 discovery is understand the nature of those allegations so then

13 we could respond to them.

14            And we've tried it the formal way by saying, please

15 tell us what property are you talking about has been improperly

16 used by Hagh Law that is actually Cummings Manookian's

17 property, or has been used by Manookian, PLLC, that is actually

18 Cummings Manookinan's property.  On what dates was there access

19 to the premises at 45 Music Square West that was inappropriate?

20            So we're trying to get the information that is

21 underlying the allegations of the complaint so then we can

22 provide that information to the Trustee.  But as it stands

23 right now, just tell us everything about your involvement in

24 all these cases, that could turn up, you know, potentially

25 thousands of emails, a lot of which are attorney-client

privileged, and a lot of which are not relevant to the
allegations.

With respect to what property was used, what's our
defense. We don't know what property they're saying was used
improperly. So if it's that, you know, Ms. Hagh, or that
Cummings -- I mean, or that Manookian, PLLC was using 45 Music
Square West on certain dates, then we might be able to do a
search and respond to that.

And frankly, Your Honor, this is why I have offered,
time and time again, to make representatives of, you know,
Manookian, PLLC available to talk to Mr. Young so we can try to
figure out what's there and what exists and what is responsive
to their discovery requests.

But as it stands right now, they've made sweeping
allegations in the complaint. They haven't told us much of
anything about the details behind those allegations. I think,
as I've told the Court before, that those allegations couldn't
pass a Rule 9(b) scrutiny on these fraud allegations if we put
them to their burden. But I just want to know what they're
asking for and we will make a good faith effort to respond.

I have never before offered to make a client
available to the attorney from the other side for effectively
an informal deposition, and I will do so here. And I think the
fact that we're all lawyers, it would be a very productive
conversation, but he hasn't taken me up on that offer.

1          So if he could help me respond, I would respond.  As
2  it stands right now, it is extremely broad, sweeping discovery.
3  And, you know, I can't go through every piece of property at 45
4  Music Square West and talk about how it was acquired, on what
5  date, who used it.  I'd like a little bit more clarity in order
6  to respond.

7          THE COURT:  All right.  What the Court's going to
8  order on this one is, during our break I want the parties to
9  confer.

10          Mr. Young, I want you to provide time ranges, details
11  about what property you believe might be at issue.  And based
12  off the enumerated list of things that you mentioned, Mr.
13  Spragens, I want you to then say, okay, between this date range
14  and that date range, if there are videos, if there's swipe
15  records, we will provide X, Y, Z.  All right?

16          So that's your homework for the break.  Because
17  again, this one seems fairly easy to resolve.

18          As you've already admitted, Mr. Young, your original
19  request was overly broad.  You have some basis based off
20  representations from Manookian, PLLC as to what might be
21  available.  So any items that are in that list, or similar, or
22  were available and known once you get this date range, like any
23  other piece of discovery that isn't turned over, you run the
24  peril of at trial you're not able to use it.

25          I'm not making any ruling one way or the other,

because I think it would be a very fact specific finding, since, again, there is an unknown universe out there. But obviously anything that was available and known that would meet the request, once you get the date range and the specifics of what property might be at issue, would be subject to being excluded if you try to use it at trial.

So that one's an easy one to resolve, and I'll give that as your homework for the break.

MR. GABBERT: And does the Court know what time March madness tips off today?

THE COURT: No. But again, this is a painful day --

MR. GABBERT: I understand, Your Honor.

THE COURT: -- for all involved.

MR. YOUNG: Thank you, Your Honor.

The last issue with regard to Manookian, PLLC is Request Number 8, which we were seeking documents and correspondence related to the Fitzgerald case. Specifically what we're looking for is any email communication with third parties between Manookian, PLLC and any third parties.

I'm not looking for client confidentiality. I'm not looking for that sort of thing. What we're trying to establish here, the parties, both Manookian, PLLC and Hagh Law, have claimed that they, and not Cummings Manookian, did all the work. And so I think we can verify or deny that by seeing how much work was done at different time periods by Manookian, PLLC

1  and by Hagh Law.

2         We've received no emails from Manookian, PLLC, and so

3  that's -- it's a finite universe and we're looking for emails

4  related to that case from Manookian, PLLC to any third parties,

5  not to clients, except to the extent that it's an engagement

6  communication, which we've already asked for.  But that's it on

7  Request Number 8.

8         THE COURT:  Okay.

9         MR. GABBERT:  Your Honor, on that one, which is, I

10 believe, Request Number 8, it requested all documents and

11 communications that relate or refer to the Fitzgerald case

12 including, but not limited to, correspondence between you and

13 counsel for the defendants in that matter.

14         What we have said is that it's a very broad universe

15 of documents.  It does include attorney-client privileged

16 documents.  It includes a lot of communications, frankly.  And

17 we said, if you can identify even general categories of

18 materials she wants, we will be happy to look for them.  But

19 right now, that is -- it is too broad.

20         So if what he is saying is, I'm looking only for

21 communications between Manookian, PLLC and opposing counsel or

22 third parties -- or I mean, I don't know what "third parties"

23 means, but if we can get some specificity, we will look and we

24 will try to produce those documents.  As it stands right now,

25 you know, it's thousands upon thousands of document requests.

1          THE COURT:  All right.

2          Mr. Young?

3          MR. YOUNG:  Yes, Your Honor.  I'll be as specific as

4   I can be.

5          What we are looking for are communications with

6   Defense Counsel, experts.  Anybody like that would not be

7   privileged.  I understand that there would be a number of

8   communications that are privileged.  We're looking for

9   non-privileged documents to establish whether or not, you know,

10  how involved Manookian, PLLC was in the trial of that case.

11         MR. GABBERT:  And, Your Honor, I would just note that

12  both of those categories could contain privileged

13  communications.  The expert communications, a lot of those

14  communications, may be privileged under the rules.  And when it

15  comes to correspondence with Defense Counsel, it depends on if

16  we're talking about negotiations towards settlement or not.

17         I know the Trustee has taken the position that

18  settlement negotiations are always completely protected, and

19  so, you know, we will look for those.  And if we have documents

20  that are responsive in those two categories that are

21  privileged, we'll produce a privilege log and he can evaluate.

22         MR. YOUNG:  And that's fine with me, Your Honor.

23         THE COURT:  All right.  Well, again, why are we here

24  on that one?  That should have been resolved amongst the

25  lawyers from day one.

1    So the Court will grant that request to make -- to

2 compel that production, because it is what it is.  And if there

3 are no responsive documents, there's no responsive documents.

4 Let's keep it moving.

5    MR. YOUNG:  Thank you, Your Honor.

6    That's all I have on the Manookian, PLLC motion to

7 compel.  If the Court would like me, I could take up the Hagh

8 Law and Hagh motions to compel next.

9    THE COURT:  Okay.

10    MR. YOUNG:  And those are related.  There's only one

11 distinction between those two, and I'll try to highlight that

12 first for the Court.  And then everything else -- everything

13 else is identical as between Hagh and Hagh Law.  The questions

14 were virtually identical, and the responses were virtually

15 identical.

16    The one exception, and this is Hagh Law Interrogatory

17 Number 8, and it asks to identify the basis for claiming the

18 percentages of interest that I referred to earlier in each

19 case.  And this is actually a pretty finite question here,

20 because there have been -- there have been engagement letters

21 produced that were between Cummings Manookian and the

22 Fitzgeralds, for example, and Cummings Manookian and the

23 Shoemaker plaintiffs.  And then there was one that was

24 Manookian, PLLC and the Shoemaker plaintiffs.  And then there

25 was one that was a much later one that was Hagh Law and the

1  Shoemaker plaintiffs.

2          What I would like in response to Interrogatory Number

3  8 is for Hagh Law to identify, by date and party, the

4  engagement letters it claims that -- the claims that gives it a

5  right to fees in Fitzgerald and Shoemaker.

6          So for example, if Hage Law is taking the position

7  that the Cummings Manookian engagement letter with the

8  Fitzgeralds is what gives rise to its claim for fees, I just

9  want to know that so that we know we have that document.  If

10 there's another document out there that they think gives rise

11 to the claim for fees, I just want to know what that document

12 is to know whether we have it or not.  Because, right now,

13 it's very difficult for me to ascertain.

14         So, for example, the only one I have in Fitzgerald so

15 far is an engagement letter between Cummings Manookian and the

16 Fitzgeralds.  And so I don't know if that's the engagement

17 letter upon which they base their client for a fee, or if

18 there's another one out there.

19         And so I'm looking just specifically for an

20 identification by date and party of the engagement letters that

21 they believe gives rise to a claim for fees in Fitzgerald and

22 Shoemaker, just in those two cases.  And that would resolve the

23 issue with Interrogatory Number 8 as to Hagh Law.

24         THE COURT:  Okay.

25         Mr. Gabbert?

1          MR. GABBERT:  Well, I think we sent seven -- we
2     resent six letters regarding fees this morning.  One of them I
3     think is on Manookian letterhead, but it says the attorneys are
4     Manookian and Hagh Law.  And I think I've sent that before, but
5     clearly that gives Hagh Law all the right to fees.  But, you
6     know, they're there, and she did all the work.

7          And Manookian couldn't get a fee because Manookian
8     didn't have a license, and she continued to represent all of
9     these plaintiffs and basically got the cases to conclusion.
10    And whether she had a fee agreement or not, quite frankly,
11    Manookian can't get a fee, Manookian has no license, and she
12    basically did all the work.

13         And we've already agreed, I agreed this morning -- my
14    client, I think you know, had a baby not too long ago, and
15    she's got the kids home on spring break this week.  Three kids.
16    I think the oldest may be 4.

17         But we've agreed to produce emails and everything
18    else by the Monday of the last week of the month.  I think it's
19    the 26th or 27th, or something like that.

20         But we produced the fee agreement.  I think we
21    produced them before, and I emailed them back to him again this
22    morning.

23         THE COURT:  All right.  So it's your understanding
24    there are no other agreements that would entitle Hagh Law to
25    fees?

1          MR. GABBERT:  Other than the ones I've sent him.

2          THE COURT:  All right.  So --

3          MR. GABBERT:  Well, wait a minute.  If she's doing

4    work on a case she's entitled to a fee.  Whatever agreement she

5    has, whether it's in writing or not, if she's working on a case

6    she's entitled to a fee.  She and the client may have done

7    that, and may have done it in writing, may have not done it in

8    writing, but that doesn't mean she's not entitled to a fee.

9          And Cummings, and Cummings Manookian, cannot get fees

10   because their named partner is disbarred, or basically, his

11   license is suspended.  And she didn't work for them, and she

12   never was a member of either one of those firms.  She had been

13   a contractor and she did work for them, but she was an

14   independent contractor.  But she was never a part of either one

15   of those firms.

16         So I don't know where he gets to that, quite frankly.

17   We'll talk about it another day.  That will be a legal issue.

18   But I think it's a fairly clear legal issue, based on what I

19   know as a as a prior disciplinary counselor, as well.

20         THE COURT:  Okay.

21         So, Mr. Young, it sounds like you've got the

22   information that is going to be responsive.  If you need to

23   actually pin it down with dates, I mean, Mr. Gabbert's

24   available right now.  During the break sit down and have him

25   answer any questions specific to the agreements.  And if

there's anything unanswered, he's available for you to ask, you

know, what does this really mean?

MR. YOUNG: Well, Your Honor, here's the -- I just

looked through what was sent. I had not looked through this

morning what was sent to me right before we started here, but I

just now looked through it. And again, herein lies the issue.

I received one Fitzgerald engagement agreement, and that's a

Cummings Manookian Fitzgerald letter, a Cummings Manookian

engagement letter with Fitzgerald.

If there are none, I just wanted something in writing

that says, there are no more. That's all we need in this case.

If this is it, if I've got the universe, a response to

Interrogatory Number 8 that says, you've now received

everything we have, is fine.

I just don't want to be facing a situation where

three months from now somebody finds another letter on a server

that hadn't been searched. That's what I'm trying to void,

because I was -- I was told that she was still looking through

another server.

And so if that's it, then a written statement that

says that is fine.

THE COURT: Okay. Well, I think Mr. Gabbert made

that representation in open Court.

MR. GABBERT: And this is just on the Fitzgerald

case, the question now that you're looking for?

1        MR. YOUNG:  What's that?

2        MR. GABBERT:  Just on the Fitzgerald case is all

3 you're looking for?

4        MR. YOUNG:  Yeah.  Unless there's -- I just want to

5 know that we've received everything on Fitzgerald and Shoemaker

6 that exists.  That's all I need.

7        MR. GABBERT:  Well, you've, I mean, I sent you some

8 on Shoemaker this morning.

9        MR. YOUNG:  Yeah.  Yeah.  And I've seen that already

10 in the -- there was one for Cummings, or from Manookian, PLLC

11 and one for Hagh Law.

12        MR. GABBERT:  Well, the Manookian, PLLC lists Hagh

13 Law as a co-defendant.

14        MR. YOUNG:  Right.  I understand.  There's two of

15 them there, but --

16        MR. GABBERT:  Okay.

17        MR. YOUNG:  Right.  But just a statement that says we

18 received everything, is fine.

19        THE COURT:  All right.  So between now and when we

20 come back at two o'clock --

21        MR. GABBERT:  Well, I'm going to have to check with

22 my client on whether there's anything else on Fitzgerald other

23 than what I have here.  I'll confirm that.

24        THE COURT:  All right.

25        MR. YOUNG:  Yeah.  And that's why I just asked for

1  that in writing.

2          THE COURT:  All right.  I'll expect that confirmation

3  to be provided by two o'clock today.

4          MR. YOUNG:  Thank you, Your Honor.

5          The other issues are all requests for production, and

6  they apply equally to Hagh Law.  And I assume Hagh, the first

7  is Request Number 1, which is the exact same one we just went

8  through with regard to Manookian, PLLC.  That is, that is

9  whatever you've got to prove your affirmative defenses.  And I

10 would presume that we can work that out the same way the Court

11 told us to work out Request Number 1 with regard to Manookian,

12 PLLC.  So --

13         MR. GABBERT:  Well, on that one, Your Honor, please?

14 Hagh Law had no ownership or light lease or anything on the

15 agreement.  It has no access to anything related to the

16 building, on access to the building.  So that's an

17 inappropriate thing to ask Hage Law, because they did not

18 maintain offices in that building.

19         MR. YOUNG:  Your Honor, I just ask whatever they

20 have, just to --

21         THE COURT:  Right.  So your response is -- there's

22 your response, and you've responded accordingly.

23         MR. GABBERT:  We've responded.  Yeah.

24         THE COURT:  All right.

25         So anything else on that one, Mr. Young?

1          MR. YOUNG:  No.

2          THE COURT:  I think Mr. Gabbert stated clearly his

3    client's position.  And again, if something comes up later that

4    should have been known and should have been turned over, then

5    that's kind of how this works.  But based off of his

6    representation, if they had no ability or access to get videos

7    or swipe records or anything like that, then there's your

8    response.

9          MR. YOUNG:  Thank you, Your Honor.  That satisfies

10   me.

11         Request Number 3, copies of all engagement letters.

12   This is the same issue that we just talked about before.  And I

13   understand this will be resolved the same way, which is a

14   statement that says we produced all engagement letters that we

15   have, is fine.  I just don't want -- again, I just don't want

16   to find out later that there's another engagement letter that

17   we didn't know and we've chased the case this way only to find

18   out that there's something else out there.  So the same issue

19   as to Interrogatory Number 8 with regard to Request Number 3.

20   And I assume we'll handle that the same way?

21         THE COURT:  Yes.

22         MR. YOUNG:  Request Number 5.  And this is somewhat

23   related.  It asks for any document that supports its claims to

24   fees.  Again, that's going to be -- I assume that's going to be

25   the engagement letters.  But if there are anything else, like

1  time records, I've seen some reference to time records, if any

2  of the parties have, if Afsoon Hagh or Hagh Law have time

3  records I think that would be responsive to Request Number 5.

4         I've received none.  I don't know whether that means

5  there are none, but I just want to get that on the record that

6  if there are time records, we want them turned over.  Because

7  I've seen some reference to them, but we've not gotten

8  anything.

9         So I don't know if Mr. Gabbert knows whether his

10 client has time records or not, but --

11        MR. GABBERT:  These cases were contingent cases.  Time

12 was not an issue.

13        MR. YOUNG:  Fair enough.

14        And, Your Honor, the reason I bring that up is

15 because obviously there are two ways to get a fee.  One is by a

16 written engagement letter, and one is by equity.  And time

17 factors into an equitable analysis, which is why I've asked for

18 that question.

19        THE COURT:  All right.

20        MR. YOUNG:  But if there are none, we'll consider

21 that resolved.

22        THE COURT:  All right.

23        MR. YOUNG:  Request Number 8.  And this is what Mr.

24 Gabbert just alluded to, and he did send me an email last night

25 that said that they would produce any email correspondence

1  related to Fitzgerald or Shoemaker by that date that he

2  mentioned.

3          MR. GABBERT:  The 28th.

4          MR. YOUNG:  And so if we could just incorporate that

5  in an order?

6          THE COURT:  Please.  And put that date, the 28th, or

7  whatever was agreed, between the two of you.

8          MR. YOUNG:  That resolves the Trustee's issues.

9  Those are the only issues the Trustee had regarding outstanding

10 discovery.

11         THE COURT:  All right.

12         Mr. Spragens.

13         MR. SPRAGENS:  See if I can use the technology

14 without showing you my brackets.  All right.  Are you able to

15 see that, Your Honor?

16         THE COURT:  I can.

17         MR. SPRAGENS:  Okay.  We may not need to refer to it,

18 but I at least wanted to have it there.

19         As Your Honor is aware, this action was filed two

20 years ago, over two years ago.  There was a motion for turnover

21 expedited, there have been a lot of proceedings over the last

22 two years.  A year ago, we propounded this written discovery,

23 in January of 2021.

24         And sorry, I jinxed it.

25         And our motion deals with the fact that the Trustee

1  has still not been able to give us, even, responses to our

2  interrogatories, which are really taking the allegations in the

3  complaint and saying, what information do you have to back up

4  this allegation, or that allegation?  Questions like:  What

5  assets are you alleging were converted or fraudulently

6  converted?  What property are you alleging was misused, and

7  when?

8         And the Trustee's responses to each and every one of

9  these, we now have some amended responses to our

10 interrogatories, basically are, you know, you have the

11 information.  We don't have the information.  But there's

12 really no, there's no final statement that we don't know it's

13 the statements are -- they're very boiler plate objections,

14 Your Honor.

15        So I'm happy to go through each interrogatory one by

16 one and discuss them.  We have made repeated attempts to try to

17 get this information from the Trustee and we've met with

18 resistance every time.  So now we have essentially all of our

19 interrogatories that we've propounded, we haven't been given

20 the amount of damages that are being sought here, or how the

21 Trustee views damages.  What is the trustee's calculation of

22 damages?  We haven't been given the property, the assets that

23 were converted.  We haven't been given an itemization of the

24 real estate at the time that the real estate was improperly

25 used.

1      And so that's what our discovery is seeking.  Our

2  motion, which is docketed at 104, goes through each one and

3  lays out why we view the responses as deficient.  And I'm happy

4  to walk through each and every one with Your Honor.

5      I think once we get some guidance from the Court it

6  would be -- you know, that might help us meet and confer, which

7  we should have been able to do by now, I would think, and get

8  this resolved.

9      But it cannot be the case that the Trustee is allowed

10  to just make all these allegations, which sound like fraud and

11  are very specific and detailed, and then refuse to answer

12  discovery about, okay, well, what's the basis of these

13  allegations.  I would submit that we wouldn't have some of

14  these other issues with discovery that we've been talking about

15  this morning if we had gotten some basic information in

16  response to our interrogatories.

17      So, you know, if the Court would like, I could go

18  through these one by one.

19      THE COURT:  That's what we said we're going to do

20  today.  So start with Number 1.

21      MR. SPRAGENS:  All right.  Thank you, Your Honor.

22      Number 1 asks for case names of every previously

23  pending legal action in which Cummings Manookian withdrew,

24  terminated their representation, or stopped providing legal

25  services to any client from January 1st, 2018 to the present.

1          In other words, we are trying to find out in which

2    cases the Trustee's view as that the Cummings Manookian

3    withdrew.  The Trustee objected and refused to provide

4    information in response to that, other than citing a letter

5    that was sent to the Fitzgerald plaintiffs about notice of

6    withdrawal.

7          If that is the trustee's full response to

8    Interrogatory 1, and the Trustee is not going to be able to

9    supplement it, that's fine.  But I think the interrogatory

10   response needs to say that this is all we know.  Instead, it

11   says, this calls for information we're still seeking in

12   discovery.

13         So with each of these we're caught in this cycle of,

14   we ask a question and the response is, well, we don't know, you

15   tell us.  So that's our view on Interrogatory 1.

16         THE COURT:  So if I understand, Cummings Manookian

17   knows what cases and clients they were involved and during that

18   date range, knows when they withdrew, or if they withdrew, and

19   you want the Trustee, who stepped in the shoes with not all the

20   books and records, and certainly not all the information and

21   the knowledge of this, to answer that interrogatory?

22         MR. SPRAGENS:  I want the Trustee to answer what the

23   Trustee knew at the time she made these allegations in the

24   adversary proceeding.  And I think that's reasonable.  I don't

25   think you're entitled to make allegations of fraud in an

1 adversary proceeding, or any federal lawsuit for that matter,
2 and then say, well, I don't actually, I don't know the answer.
3 They just alleged fraud upon information and belief. I don't
4 think that is how it works.

5          I understand that bankruptcy is a different universe
6 and, one, frankly, as the Court knows, that I don't practice in
7 very often, but I still don't think the Trustee is entitled to
8 just say, I don't know what the basis for these allegations
9 was. But if that's the answer, the Trustee needs to say so.

10          THE COURT: Okay.

11          Mr. Young?

12          MR. YOUNG: I'm happy to address this one, Your
13 Honor, and I'm going to address it sort of in a global way.

14          As I think the Court knows, trustees have no
15 firsthand knowledge. Trustees come into a case cold and they
16 learn what they can get from third parties, from the debtor,
17 from defendants, from creditors, from whomever like that. And
18 in this case it's been incredibly challenging because nobody
19 will turn over the information without Court orders.

20          And even after Court orders, they still don't turn
21 over the information. In the case of the Cummings Manookian
22 motion to compel that was entered a year-and-a-half ago, still
23 haven't gotten most of that information.

24          And so the complaint, as the Court may recall, Mr.
25 Manookian wanted the complaint filed by a certain date. We

filed that complaint based on facts and reasonable inferences. That's what the -- that's what the law allows, facts and reasonable inferences.

We have a handful of facts. We have stated where we have facts. Those facts, frankly, mostly come from pleadings, and the few relevant documents that we've gotten from the defendants and from Cummings Manookian, but a lot of it have come from pleadings in other cases. Everything else, at this point, is just an assumption, really, based on the facts. And we've stated that where that's been the case.

It is a little bit like a game of hide the ball where then the trustee's criticized for not knowing the color of the ball that's being hidden. We are doing the best we can to respond. After discovery I'm sure we can respond more fully, and we will respond more fully, once we get all this information.

But essentially, as the Court's noted, the parties are asking us for information that's within their exclusive control, that in a lot of respects they've withheld from the Trustee, and then criticizing the Trustee because she doesn't know information that's been withheld from her.

And I think the Court will -- if the Court will look through our responses, you'll see that we filed objections, and that in almost every case we said, notwithstanding the objection, here's the best we know how to answer it at this

1  time.

2          I've never, I've represented trustee's for over 15

3  years, I've never gotten this sort of discovery to a trustee

4  because everybody understands the knowledge limitations of a

5  trustee, that a trustee goes out and gathers information, not

6  disperses information.  So I don't know what to say about it,

7  other than that.

8          But I think that our responses are very fair.  I

9  think that they're very complete under the circumstances.  If

10 there's something that we legitimately don't think is an issue,

11 we've said so.  If there is information that we have or

12 assumptions we're making, we've said so.

13         And so I don't really know how to better answer this.

14 I really tried.  I took the Court's admonition to heart.  The

15 Trustee and I spent a lot of time going back through these to

16 say, is there anything we can refine in these answers?  And

17 we've done that to the best of our ability.  But unfortunately,

18 we're still very early in discovery in this case.

19 Unfortunately, that's where we are.

20         And so until there's been some more thorough

21 discovery we can't possibly answer questions like -- and we'll

22 talk about this in a minute, but we just got another 86 request

23 for admission filed since the last -- served since the last

24 hearing that ask things like:  Admit that this engagement

25 letter is the authentic version.

1    The Trustee wasn't the author of that.  She wasn't

2 there when it was signed.  The only way she knows whether

3 something's authentic is whether the parties to that agreement

4 tell her it's authentic.  That's just one example, but there's

5 a 100 examples along those same lines.

6    So that's our frustration in this case, and those are

7 our limitations.  And if we need to handle this differently,

8 Your Honor, we're happy to.  But we think that we've handled it

9 appropriately and done the best job that we could do as a

10 fiduciary to the estate.

11    MR. SPRAGENS:  Your Honor, respectfully, two points

12 in response to that.  You know, one is that fraud must be pled

13 with particularity, and I don't care who pleads fraud, I don't

14 care if it's a trustee or a plaintiff, personal injury

15 plaintiff, whatever, you have to plead it with particularity.

16 And when I ask for the particulars of your allegations of

17 fraud, which is what Interrogatory Number 5 asks for, you know,

18 what are the fraudulent actions that you have identified, you

19 know, time, place, date, give us the who, what, where, when,

20 why of the fraud, the Trustee says I don't have that

21 information.

22    Well, that is a pleading requirement for fraud.  And

23 if the Trustee doesn't have that information, the Trustee needs

24 to say, I didn't know that at the time I filed it.  I mean, the

25 representation today that these allegations in the adversary

1  proceeding are based on, quote, "assumptions and inferences,"

2  frankly, doesn't satisfy Rule 9 or Rule 8, I would submit, or

3  Rule 11 for that matter.

4         However, when we ask for things like what furnishings

5  or equipment are you saying were converted by Manookian, PLLC

6  or Hagh Law, we don't get any response.  But it would be useful

7  to know what we're accused of so then we can respond to it.

8         And, you know, I'm sympathetic to the fact that the

9  Trustee doesn't have all the information.

10        The other thing I would like to point out again is

11 that I have offered on multiple occasions to make a

12 representative, and specifically Mr. Manookian, available for

13 Mr. Young to talk to.  So if he wants to talk about, okay, you

14 know, I don't really know what property was there, tell me

15 about the desks and the office, tell me about the file

16 cabinets, tell me about the alarm system, we could have had

17 that conversation.  Instead, we are handcuffed by the discovery

18 process where we're trying to find out what's the nature of the

19 allegations against Manookian, PLLC so we can respond to it.

20 And that is the nature of every interrogatory that we are

21 moving to compel further responses to.

22        And the idea that, you know, I don't have it and I'm

23 just going to say it's in your possession, or something like

24 that, we at least need a definitive statement of what they have

25 and don't have at this time.  And at the time, frankly, two

1  years ago, when they brought this action.

2         I do have a separate issue to raise about the request

3  for admission, but, you know, for now, I'd like to talk about

4  the interrogatories.  And if we can go through other

5  categories, stealing telephone numbers, or email addresses.

6         Okay.  What telephone numbers or email addresses, I'm

7  referring to Interrogatory Number 10, are we being accused of

8  converting?  I think that's pretty basic, you know, based on

9  public records, I guess, pleadings.  As Mr. Young had said,

10  they should be able to respond to that.

11         When they talk about stealing client files,

12  Interrogatory Number 11, which client files are they saying

13  were improperly converted?

14         You know, when they talk about work on the Fitzgerald

15  case that's just, I mean, essentially that's been made up and

16  called an inference here, but we'd like to know if they have

17  any information about specific work that was done on the

18  Fitzgerald case that Manookian, PLLC is liable for in the

19  nature of fraudulent conversion or some other tortious

20  interference.

21         So, you know, each and every one of the allegations

22  that they made is a very serious allegation, and the fact that

23  the Trustee is the Trustee does not immunize her from complying

24  with Federal Rule 9 in the pleadings and then backing that up

25  in discovery.  So that's what we're asking for.

1          And if they don't have certain information, and they

2    didn't at the time that they filed the case, then that is the

3    appropriate response.  But just pointing the finger back at us,

4    in my view, doesn't satisfy their obligations under the rules.

5          THE COURT:  Well, under that analysis I can tell you

6    virtually every adversary proceeding that I've seen a trustee

7    file for preferences or any other thing would be thrown out

8    summarily by the Court under that standard, because the trustee

9    just doesn't have that information.

10         And your client filed this bankruptcy on behalf of --

11   or Mr. Manookian filed on behalf of Cummings Manookian, right?

12   There's a list of assets on the statements and schedules.

13   There's a list of cases and clients that are no -- that's in no

14   universe that Cummins Manookian has personal knowledge of.

15         The Trustee doesn't have personal knowledge of any of

16   this.  The Trustee is getting information from pleadings that

17   were filed under penalty of perjury and the discovery process

18   here.  So the Court understands your frustration if you're not

19   used to practicing in bankruptcy Court.

20         MR. SPRAGENS:  Sure, Your Honor.

21         THE COURT:  But this is not an IP case.  This is a

22   trustee who you got a complaint that was filed on a date

23   certain with the information available when it was filed.  And

24   you certainly had the ability to file a motion to dismiss, move

25   for summary judgment.  Whatever's available to you in the

1   litigation process is still available to you, based on if
2   you're not satisfied with the answers and you don't believe
3   that there's a cause of action that can be carried forward.

4          But to ask the Trustee to go and create something the
5   Trustee can't create is not possible.  And the Trustee doesn't
6   have personal knowledge, because it was the Debtor who created
7   the information and the circumstances.

8          MR. SPRAGENS:  I appreciate that, Your Honor.  If I
9   can just respond briefly?

10         To get from point A, which is filing your bankruptcy,
11  to point B, which was filing an adversary proceeding, including
12  a lot of serious allegations of fraud.  And as Your Honor
13  knows, this has some significant overlap with the receivership
14  action in State Court in Williamson County, and what we're
15  trying to figure out is how do we get from point A, which is a
16  bankruptcy with a schedule of debts and creditors and all that
17  stuff, to this very serious adversary preceding with these very
18  serious allegations, which are based on what?

19         And so I take your point, Your Honor.  We will avail
20  ourselves of the motion for summary judgment opportunity.
21  However, the Trustee is just going to come in and say, it's
22  premature because we can't respond to that.  So I'd at least
23  like to get some finality from the Trustee in terms of
24  discovery responses so then we can come in and file our motion.

25         THE COURT:  All right.  Well, let's do what we're

Case 3:23-cv-00961    Document 6-1    Filed 10/04/23    Page 616 of 678 PageID #: 3532

1  doing.  Let's go line by line and we will get finality while
2  all the parties are in the room.

3      MR. SPRAGENS:  Well, Your Honor, we had talked about
4  Interrogatory Number 1, which was the withdrawal dates for
5  Cummings Manookian, and what are the Trustee's allegations, or
6  what's the Trustee's information about Interrogatory Number 1.
7  I'm not sure that you've ruled on that one.

8      THE COURT:  The Court finds Trustee's response to be
9  acceptable.  And with the --

10      Mr. Young, is the Trustee in receipt of any
11  additional information based off of the subsequent items that
12  have been disclosed?

13      MR. YOUNG:  No, Your Honor.

14      THE COURT:  All right.

15      MR. SPRAGENS:  Interrogatory Number 2 relates to
16  Interrogatory Number 1, which is legal services after that
17  withdrawal date.  And essentially Trustee said, I didn't answer
18  1, so I'm not answering 2.

19      THE COURT:  And again, Mr. Young, you're now in
20  possession of various engagement letters that should encompass
21  the subsequent work by any other firms that are related to
22  these proceedings.  Do you have any responsive information in
23  addition to what has been given?

24      MR. YOUNG:  No, Your Honor.  Simply because there's a
25  we don't -- we have not been given anything that shows that

 1  Cummings Manookian actually terminated its relationship with

 2  anything.  So if it hasn't terminated as a relationship, then I

 3  have nothing about what happened after a termination, so --

 4          THE COURT:  Mr. Spragens?

 5          MR. SPRAGENS:  I mean, in the response to Number 1,

 6  there is the withdrawal letter in the Fitzgerald case.  So I

 7  think that that would be one that they could respond to based

 8  upon that.

 9          THE COURT:  All right.

10          MR. YOUNG:  Your Honor, if I may address that?

11          A withdrawal letter doesn't mean that legal services

12  had stopped.  What has to happen is a withdrawal in the case,

13  and that didn't happen.  Cummings Manookian did not withdraw in

14  the case, and so --

15          THE COURT:  And here we go back to the argument of,

16  are you going to assert that you're owed money after the

17  withdrawal?  I mean, this thing is becoming a circular

18  argument.  Again, we're all lawyers here.  If that information

19  is necessary to prove a particular element of a cause of

20  action, it needs to be provided on what the Trustee is relying

21  on.

22          Now, it gets very circular in that we keep arguing

23  about, you know, is this the only agreement?  Was there

24  subsequent agreements?  The agreement stands for what it is.

25  At some point we just need to disclose the underlying, does

1  Cummings Manookian believe they're owed any money, and why.

2  Does the Trustee believe Cummings Manookian is owed any money,

3  and why.

4          I mean, that's the essence of what we're talking

5  about here.

6          MR. SPRAGENS:  And, Your Honor, and only the Trustee

7  can answer that question, because Cummings Manookian is not an

8  entity.  There's not even a lawyer associated with it.  So it

9  couldn't exist in the future, or right now, because Mr.

10 Manookian doesn't have a law license.

11         So, you know, the Trustee is the one who gets to make

12 that decision at this point.

13         THE COURT:  So I think that's the best way to frame

14 why we're here, right?  It's all about the money.  This is

15 Bankruptcy Court and every second we're here somebody's not

16 going to get a dollar, or in this case lots of dollars.

17 Because we're here talking about things that are obvious, and

18 should be for a bunch of lawyers who have resolved everybody

19 else's disputes for years and can't seem to get past the forest

20 for the trees on this dispute.

21         So let's keep going.

22         MR. SPRAGENS:  So Interrogatory Number 3 says, "If

23 the Trustee alleges that Cummings Manookian is entitled to

24 attorney's fees, or payment from Afsoon Hagh, Hagh Law, or

25 Manookian, PLLC, identify in which cases."

 1          I mean, this is the theory of the case here, and so
 2   that's all we're asking for.  And I, you know, I think that's a
 3   reasonable thing to be requesting in your first set of
 4   interrogatories.
 5          MR. YOUNG:  And, Your Honor, if you'll look at the
 6   response to Number 3, we did.  We cited every -- well, in the
 7   amended responses we've actually cited the two remaining cases
 8   to which are -- that are issues, and the dates that we
 9   understand the start and we understand the stop.
10          But the questions about, you know, identify all
11   settlement offers obtained by Cummings Manookian, for example,
12   the Trustee has no way of knowing.  The Trustee hasn't been
13   given Cummings Manookian's case files.
14          You know, identify all legal work perform by Cummings
15   Manookian in the case such as research, drafting, number of
16   hours spent, there's no way for the Trustee to know that.  The
17   Trustee knows what cases, and the Trustee has done her best to
18   identify the start and stop dates.
19          THE COURT:  Okay.
20          MR. YOUNG:  The Trustee has come in and said that
21   Cummins Manookian is entitled to fees in these cases and we're
22   trying to figure out what's the basis for that allegation.  And
23   in fact, some of the cases, I mean, Cummins Manookian wasn't a
24   going concern during some of that time period, or at least --
25   and I haven't looked at these amended responses which just came

1  in earlier this week, but, you know, that's why we're trying to

2  find out what the Trustee's position is on this.

3          And if the Trustee's position is, you know, we think

4  that Cummings Manookian is entitled to some fee, but we can't

5  tell you on what basis that, you know, theory travels, whether

6  it's quantum meruit, or there was a settlement offer that was

7  turned down, and so Cummings Manookian has some entitlement to

8  that, that's all we're trying to learn here.

9          And now we have a list of two cases, and we've been

10 recently given an approximate start and stop date of Cummings

11 Manookian's involvement.  We still don't really know much about

12 why Cummings Manookian is entitled to a fee.

13         MR. YOUNG:  Your Honor, I can answer that question

14 right now.  The complaint answers it.  The answer to that

15 question is, because there are engagement letters between

16 Cummings Manookian and these plaintiffs that establish a legal

17 right to the fee.  That's the answer to why Cummings Manookian

18 is entitled to a fee this case.

19         THE COURT:  All right.  There's your answer.

20         MR. SPRAGENS:  Okay.  Well, that's the Trustee's

21 position about the engagement letter, I guess.

22         And the Trustee's position about withdrawal letters

23 is that they don't actually constitute withdrawals.  I mean,

24 we're learning, even today, about the theory of the case.  This

25 is not information that had been provided to me before today.

1          Number 4, ask for hours.  Again, same inquiry.  We're

2     just trying to find out what's the basis.

3          I assume the Trustee's answer is, we don't know how

4     many hours were worked by Cummings Manookian.  If that's the

5     answer, I would just like the Trustee to write that, rather

6     than objecting to what I think is a reasonable interrogatory.

7          THE COURT:  Mr. Young?

8          MR. YOUNG:  Your Honor, we don't know.  And we said

9     that we're still seeking discovery on that issue.  Maybe Mr.

10    Manookian knows that and will say something in his deposition.

11    I don't know.

12         THE COURT:  All right.

13         MR. YOUNG:  There's no way for the Trustee to know

14    that.

15         THE COURT:  When is Mr. Manookian's deposition?

16         MR. YOUNG:  It's not been scheduled, Your Honor.

17         THE COURT:  All right.  We're going to do that today,

18    by the way.

19         MR. SPRAGENS:  And I assume, also, the Trustee's

20    deposition and Mr. Young's deposition.

21         THE COURT:  We're going to -- we're going to -- we're

22    going to get all these discovery issues resolved.

23         It appears that all of these are ripe for further

24    discussion after the full and total depositions are taken.  And

25    at that point, any answers that are deemed unresponsive the

1  parties can confer.

2        Because it sounds like most of this is going to be
3  driven by additional information that's available, not to the
4  Trustee at this moment, but is locked away deep inside Mr.
5  Manookian's brain somewhere.  That while he's under oath he
6  will enlighten the Trustee and the other parties on exactly
7  what happened so that the Trustee does what trustees do all the
8  time, they amend complaints, they dismiss complaints.  They
9  move on if there's nothing there or it's not sustainable for
10 the original theory of the case based off of the original books
11 and records or whatever they used with the filing of the
12 pleading.

13       So that's kind of how this works.  And so for the
14 parties to resolve these, you need to work together with the
15 total discovery that Mr. Manookian holds the keys to the
16 kingdom.

17       MR. SPRAGENS:  Well, that's certainly the Trustee's
18 theory.

19       THE COURT:  It's not a theory, Mr. Spragens.  The
20 Trustee was not there.  The Trustee has no crystal ball.  The
21 Trustee steps in to save the estate for the benefit of
22 creditors based off the actions of the people who put it in
23 bankruptcy.

24       I don't know -- I don't know what you expect the
25 Trustee to come up with when the Trustee physically has no

1  personal knowledge and was not involved in any of the time
2  frames that you're seeking information.

3         MR. SPRAGENS:  Well, Your Honor, respectfully, I
4  mean, Number 5 is the next interrogatory.  That's the one about
5  fraud.  The Trustee made a bunch of allegations about fraud.

6         And so it's one thing to preserve an estate, and to
7  administer an estate, I certainly agree with Your Honor that
8  that's an important function.  But let's talk about the
9  adversary proceeding that we're here today on, which is the
10 Trustee made a bunch of allegations about false representations
11 or material omissions.  We've asked for more information about
12 those.  And again on Number 5 we get told, well, actually, you
13 know, we allege fraudulent transfers, but no fraudulent
14 representations or material omissions.

15        Can we get a little more information about that one?

16        THE COURT:  All right.

17        Mr. Young?

18        MR. YOUNG:  Your Honor, I don't know what to say
19 about that other than fraudulent transfers are not for all.
20 548 is not fraud.  That's a fraudulent transfer and it's
21 totally different.  And there are no material omissions, there
22 are no fraudulent misrepresentations, and we've said that.
23 We've said this is a 548 case, not a fraud case.

24        And so I don't know how to say that more clearly than
25 we've said that.

1          THE COURT:  And you're basing the fraudulent

2    transfers on what?

3          MR. YOUNG:  On transfers to or for the benefit of

4    another party for less than reasonably equivalent value at a

5    time that the estate was insolvent, or that the transfer made

6    the estate insolvent.  This is a pretty basic 548 argument,

7    Your Honor.

8          THE COURT:  Okay.

9          Mr. Spragens, with the limitation on its merely

10   transfers, what do you believe would be responsive beyond what

11   Mr. Young has represented is the Trustee's position?

12         MR. SPRAGENS:  Well, Your Honor, I think intentional

13   conversion of property falls into the nature of fraud.  I mean,

14   any sort of intentional misrepresentation that's being accused

15   in this complaint, which, I mean, the complaint is full of very

16   specific allegations -- well, I misstated that, but very --

17   well, let's say, allegations that Hagh Law or Manookian, PLLC

18   have taken premises, furniture, equipment, intellectual

19   property, attorney's fees.  I mean, have taken them, so this is

20   intentional misconduct, that's in the nature of a fraud.

21         And I can't speak to the Bankruptcy Code if the fraud

22   alleged here doesn't really mean a fraud, but the complaint is

23   full of allegations of conversion, and essentially theft, that

24   taking a property that one is not entitled to.

25         So we are asking:  What exactly are you alleging has

1  happened here?

2          And again, I think that's an appropriate inquiry.  If

3  you're a Trustee, or any other plaintiff, I think you should be

4  able to say, well, here's what we are alleging was taken, here

5  are the fees that we allege the law firm, Cummings Manookian,

6  is entitled to, that Manookian, PLLC, Afsoon Hagh, and Hagh Law

7  have essentially stolen.

8          MR. YOUNG:  And, Your Honor, we answered that in

9  response to Number 9, that question.

10          THE COURT:  What is your answer?

11          MR. YOUNG:  The question is, "Identify the office

12  space and specific furnishings and equipment you allege Brian

13  Manookian or Manookian, PLLC utilized in Paragraph 20 of your

14  complaint."

15          And the response is, "Premises located at 45 Music

16  Square West, Nashville, Tennessee, and all the furnishings,

17  equipment, and personal property located therein."

18          MR. SPRAGENS:  I don't know what furnishings or

19  equipment they're referring to.  I understand there --

20          THE COURT:  There are statements and schedules --

21          MR. SPRAGENS:  Uh-huh.

22          THE COURT:  -- that list everything that Cummings

23  Manookian owned.

24          MR. SPRAGENS:  And I don't think -- and I don't have

25  them in front of me, I don't think that those statements and

1    schedules even refer to property inside 45 Music Square West.
2    I don't think Cummings Manookian owned that property.  They
3    didn't own 45 Music Square West, for starters.  And I don't
4    think that they own the property inside 45 Music Square West.
5            But if that's what this is based on, then that's
6    great, Your Honor.  Can they just write that in their response
7    to our interrogatory?  I'd love to -- I'd love to know.
8            THE COURT:  Mr. Young, if you could amend --
9            MR. YOUNG:  Your Honor, I read it verbatim out of our
10   responses.
11           THE COURT:  To Interrogatory Number 9.
12           MR. YOUNG:  Correct.
13           THE COURT:  All right.  So we're talking about Number
14   5.
15           MR. YOUNG:  But Number 5 asks for instances of fraud
16   that we're not alleging any material omission or false
17   representation, that is the question.  There are no allegations
18   of that.
19           MR. SPRAGENS:  You all can correct me if fraud means
20   something different in bankruptcy court than it does everywhere
21   else.  My understanding of the Bankruptcy Rules and the Rules
22   of Civil Procedure are that fraud must be alleged with
23   particularity.  And I don't think that the response to Number 9
24   is sufficient, either.  "Premises located at 45 Music Square
25   West and all furnishings, equipment, and personal property

1  therein."

2          So if he is not alleging that there was wrongful

3  conduct, or if the Trustee is not alleging that there was

4  wrongful conduct, the taking of property that was not -- that

5  Afsoon Hagh, Hagh Law, and Manookian, PLLC were not entitled

6  to, then I guess I've misunderstood the nature of the adversary

7  proceeding.  I think that this complaint includes very detailed

8  allegations of fraud.

9          THE COURT:  And here we go in another circle.  The

10  Trustee has made allegations based off information and belief

11  and the knowledge present when this was filed.  Mr. Young has

12  just articulated it's based on use, misuse, continued use,

13  whatever it ends up being or not, of the property that was at

14  the address that Cummings Manookian owned.  If they didn't own

15  anything, well, guess what?  You got a pretty easy defense.

16          MR. SPRAGENS:  I don't disagree, Your Honor.

17          THE COURT:  Right?  So what are we arguing about?

18          MR. SPRAGENS:  Well, I --

19          THE COURT:  I mean, you've got a pretty easy defense.

20  If you say, we don't own any property there.  Okay.

21          MR. SPRAGENS:  Well --

22          THE COURT:  Your witness will testify to such.  The

23  Trustee will take the list of anything there and say, okay,

24  here's what I got, do you own any of it?

25          MR. SPRAGENS:  But Your Honor understands that what I

1  don't want them to show up later and say is, oh, well,

2  actually, we've got this other property, or some other thing.

3  I mean, that's why I'm trying to find out, the nature of the

4  allegations.  And certainly when we get into depositions, which

5  we've been asking for for a long time --

6           THE COURT:  Well, but --

7           MR. SPRAGENS:  -- further light can be shed on some

8  of those questions.  But I want to know is there going to be

9  some other property that they're now going to say was misused

10 or converted?

11          THE COURT:  So the Trustee's bound by the property

12 that's in the bankruptcy estate.  It's listed on statements and

13 schedules.  There's no zinger here.  And if there is a zinger,

14 guess what?  It's subject to the same thing.  If the Trustee

15 knew, or should have known, and disclosed that, at this time

16 the Trustee's not going to be able to use that.

17          I mean, this is, we got a finite universe of what

18 could be.

19          MR. SPRAGENS:  And I appreciate that, Your Honor.

20 And I'm encouraged to hear you say that they are going to be

21 bound by these responses that are -- if they had information

22 that was available to them prior to this time.  And we're

23 relying on these responses as we prepare our defense of this

24 case --

25          THE COURT:  Right.

1    MR. SPRAGENS:  -- I appreciate that.

2    THE COURT:  And you should have known that from the

3  beginning.  I shouldn't have to reiterate that, that that's how

4  these rules work.  That's why there's rules, because discovery

5  is a pain in the side of everyone, and we've standardized the

6  practice and the process to ensure that there aren't zingers at

7  trial where one party holds back or then changes their story at

8  the end of the day.

9    MR. SPRAGENS:  Well, Your Honor, in my view, every

10  one of their responses includes a caveat that basically says,

11  if I learn something later, I might change what I'm saying.

12    THE COURT:  And that's how bankruptcy works.

13    MR. SPRAGENS:  I appreciate what you're saying.

14    THE COURT:  The Trustee doesn't have the information.

15    I mean, again, under that standard there would never

16  be a single adversary proceeding that would proceed in

17  bankruptcy.  Every company that files bankruptcy, and then the

18  Trustee who has a timeline where they have to file these

19  actions, no action would ever get through any litigation

20  because the Trustee doesn't -- the Trustee wasn't there.  The

21  Trustee doesn't have personal knowledge.

22    It's only through the discovery process that they

23  understand what happened.  So they're bound by their answers,

24  which is why the answers say, if we find something else out,

25  we'll include it.  And that's why Trustee's routinely drop

1  counts, add counts, you know, amend, dismiss the complaint

2  entirely, because that's how it works.

3          And that's why the collaboration here is different

4  from other places, because they don't have the information.

5  The Trustee is duty bound as a fiduciary to try to maximize the

6  value of the estate with a time certain that they have to

7  investigate and find what causes of action may or may not be

8  present.

9          So I'm hearing what you're saying, but by the same

10 token, the Trustee is doing what the Trustee does in cases, in

11 all cases.

12         MR. SPRAGENS:  I understand, Your Honor.

13         Here's one that maybe we could get a little light

14 shed on today.  Number 16 is, "Do you contend that Cummings

15 Manookian ever employed Afsoon Hagh?"

16         We just heard some conversation about that earlier on

17 the prior motion to compel.  So far, we've gotten an objection

18 and I don't know, can we supplement that based on the written

19 discovery that they've now acquired?

20         THE COURT:  Well, Mr. Young, that's a fair one,

21 right?  So is there any evidence or information that leads you

22 to believe that Ms. Hagh was ever an employee of Cummings

23 Manookian?

24         MR. YOUNG:  No, Your Honor.  We have no information

25 at this time to believe that.  But we've not seen -- we've not

seen the Debtor's employee records, we've not seen any bank
account records, we've not seen -- we've not seen anything.
So can I say that she's not an employee?  No.  But I also can't
say that she was never an employee.  We just don't know that.

I mean, we do know that she was acting as an agent,
because she signed pleadings on behalf of the firm and she was
listed as the point of contact on some of the invoices that
they've sent us.  So we do know she was acting as an agent, but
I have no idea -- we had no idea what the term of that agency
was.  It may have been an independent contractor, we just don't
know.

We do know she wasn't, and we said so, we do know
that she wasn't a partner.  We do know that.  But beyond that,
we don't know what the scope of her agency was.

MR. SPRAGENS:  I'm not sure how they are willing to
know that she wasn't a partner, but they're not willing to know
that she was an independent contractor, which we've now heard
Mr. Gabbert say here, and that the documents support that.

So again, from my perspective, representing, you
know, this entity, in this case, the allegations are made.  We
are guilty until proven innocent and, you know, he doesn't
accept the representations that he doesn't like, and he might
accept the ones that he does.

So it is a very tough situation to be in, in
discovery when we don't understand the basis for the

1 allegations and we don't understand why --

2         THE COURT: Well --

3         MR. SPRAGENS: -- you know, he'll agree that she's

4 not a partner, but he won't agree that she was an independent

5 contractor.

6         THE COURT: Again, unless I'm missing something, if

7 your position is she never worked for your client, pretty easy

8 defense if they make an allegation that she was, that she never

9 did, and here's the proof.

10         MR. SCHWARTZ: At what point, Your Honor, does Mr.

11 Young comment -- I mean, so let's just point out he said, well,

12 I don't have the time records, so I don't know. And we're

13 saying, there aren't time records, she wasn't an employee.

14         But he says Manookian, PLLC you're a fraudster and

15 you just haven't produced the time records. I mean, at some

16 point, this has to end and we get the benefit of --

17         THE COURT: Yeah.

18         MR. SPRAGENS: -- I mean, fulsome --

19         THE COURT: And again, you know, you've said a couple

20 things. You've used "fraud" a lot, and you talk about guilty

21 until proven innocent. Let's be realistic here, right? A

22 complaint is a complaint. It's not a judgment. It's not a

23 ruling by the Court. Every party gets to start off with what

24 they're alleging.

25         MR. SPRAGENS: Well, Your Honor, respectfully,

1   there's $750,000 that's been impounded now for how long?  Two

2   years.

3           THE COURT:  Which is exactly why we need to move on.

4           MR. SPRAGENS:  I appreciate that, Your Honor.  But

5   from my client's perspective, and I assume from Ms. Hagh's

6   perspective, you know, there has been a burden over these last

7   two years.  There have been very serious allegations made and

8   there has been money impounded and here we are still trying to

9   find out the nature of the allegations.

10          So forgive me, please, Your Honor, if I seem a little

11  exasperated by this process where, as I say, it's heads I win,

12  tails you lose.  And we're here two years later, we've been

13  asking to take the Trustee's deposition for a long time to find

14  out some of this information, as well.

15          THE COURT:  Well, again, your client either hired or

16  didn't hire Ms. Hagh as an attorney.  Your client knows that

17  information.

18          MR. SPRAGENS:  Potentially.  I mean, Mr. Cummings was

19  also a principal of Cummings Manookian, and so, you know, that

20  might be another source of information for the Trustee.

21          THE COURT:  Okay.  Well, in any event, again, it's an

22  easy defense to say, no, and here's why.

23          MR. SPRAGENS:  I appreciate that, Your Honor.  As

24  long as they don't say, unless there's some other information

25  out there that we don't know.

```
1              THE COURT:  The information that would be either
2   provided by your client --
3              MR. SPRAGENS:  Uh-huh.
4              THE COURT:  -- Ms. Hagh, the law firms, the only
5   information they're going to get is information that you
6   provide.
7              MR. SPRAGENS:  Well, they have the ability to get
8   information from other sources, as well, including
9   Mr. Cummings.  They've now sought Mr. Fitzgerald, the client in
10  one of those matters, to produce information.  And so we're
11  just trying to find out what they have, what they know, and
12  what they're alleging.
13             For example, Number 18, economic damages, we've asked
14  what's the basis for your allegation, what damages do you claim
15  Cummings Manookian are owed?  And we are in the circular
16  situation again where they say, we don't know, entitled to some
17  damages.  And that's, again, what we're trying to find out.
18             And if the answer is, we don't know, we can't answer,
19  we don't have that information, then they should say that and
20  be bound by it, is my request, Your Honor.
21             THE COURT:  Okay.
22             MR. YOUNG:  Your Honor, we've answered that by saying
23  some or all of the fees and expenses collected in those cases,
24  that's the universe.  I don't know whether yet, because I
25  haven't finished discovery, whether the Trustee right now would
```

1  say the Trustee is entitled to 100 percent of the Fitzgerald

2  fees and 100 percent of what's remaining of the Shoemaker fees,

3  because we have a written engagement letter.  But they may have

4  proved that, hey, we added equitably and we're entitled to some

5  portion of that.

6       MR. SPRAGENS:  Well, again, it's good -- useful to

7  hear some of these things, to learn that the Trustee's position

8  is that she's entitled to 100 percent of those fees, not

9  withstanding the withdrawal letter that we talked about earlier

10  and all that stuff.  This is part of the discovery process.  I

11  agree, we shouldn't have to do it in front of the Court.

12       I would love to learn these things in discovery,

13  understand the nature of the allegations and the basis for

14  these, you know, assertions.

15       THE COURT:  All right.  So what I want to do on all

16  of these --

17       Mr. Gabbert, you look like you want say something.

18       MR. GABBERT:  I'm want to ask a -- I want put

19  something on the record before -- for the record, now I'd like

20  to say something first.

21       MR. SPRAGENS:  And, Your Honor, I also have -- the

22  RFA question can be resolved in one fell swoop, I think.  But I

23  don't mean to interrupt.

24       THE COURT:  All right.  Well, we've got about --

25  we've got about another 30 minutes before I was going to take a

1 | break. If you want to save it to the bitter end.

2 | MR. GABBERT: I can do it either way, Your Honor.

3 | THE COURT: All right. Well, I want to hear from
4 | you.

5 | MR. GABBERT: Okay. Actually, I want --

6 | MR. SPRAGENS: He's trying to jump in the line of
7 | fire. I appreciate that, Mr. Gabbert.

8 | MR. GABBERT: Based off what I've heard today, I want
9 | to get some clarifications.

10 | Is it the Trustee's position that if Brian Manookian
11 | did not specifically file something in the court, withdrawn on
12 | the record after he lost his license, as a sole member of both
13 | of these entities, Cummings Manookian and Manookian, and could
14 | not practice anymore, if he did not specifically file something
15 | in court, when he really wasn't allowed to because he'd lost
16 | his license, is it the Trustee's position that since he didn't
17 | withdraw, even though he had no license, he's still entitled to
18 | all the fees?

19 | MR. YOUNG: Your Honor, I mean, if we want to talk
20 | about the substance of this, I'm happy to do that.

21 | So here are the facts. Mr. Manookian gets suspended.
22 | The firm continues its existence. Afsoon Hagh continues filing
23 | pleadings on behalf of Cummings Manookian for months after the
24 | suspension. Cummings Manookian never files a notice of
25 | withdrawal in the case. Instead, what I assume, and in fact

ACCESS TRANSCRIPTS, LLC     1-855-USE-ACCESS (873-2223)

1  there was a motion to withdraw filed by Mr. Manookian in the

2  case, no order was submitted.

3          The motion specifically -- I'm talking about the

4  Fitzgerald case right now.  The motion specifically says Afsoon

5  Hagh will continue representing the plaintiffs in this case.

6  She continued filing pleadings under the name of Cummings

7  Manookian for a number of months until such time as she finally

8  just dropped the moniker, Cummings Manookian, and kept

9  everything else the same.  Didn't file a new -- a substitution

10 of counsel or a notice of new address or anything, and we're

11 supposed to say that that somehow was the transition to a new

12 code.  I think the Court can understand our reservations about

13 that.

14          So to answer the question.  Yes, a licensed attorney

15 continued filing pleadings on behalf of Cummings Manookian.  It

16 does not matter that it was not Mr. Manookian, it was a

17 licensed attorney filing on behalf of the law firm.

18          And Mr. Manookian didn't lose his license; he was

19 suspended.  He was still a licensed attorney.  He could still

20 run a PLLC, he was just suspended.

21          MR. GABBERT:  Okay.  I just wanted clarification on

22 where we were.

23          THE COURT:  All right.

24          Oh, Mr. Spragens.

25          MR. SPRAGENS:  We'll step away from the

1  interrogatories at this time and talk about the requests for

2  admission, if that's okay, Your Honor?

3           THE COURT:  Okay.

4           MR. SPRAGENS:  And then I'm sure you'll have

5  direction for us on the interrogatories.

6           The request for admission, you know, the rule states

7  that you have to respond.  If you don't have sufficient

8  information, you have to say you've made a diligent search.

9  It's pretty mechanical.  I agree that it's a bit of a

10  technicality, but it is what the rule says.  And it's important

11  to us that the Trustee in responding to requests for admission

12  follow the rule and certify that she made a diligent effort to

13  find all information that was available to her.

14           So it's a copy and paste that can be made to all of

15  their responses to the RFAs that we've propounded in this case.

16           And if she doesn't have the information, she's

17  entitled to say that.  That is part of the RFA response

18  process, but she needs to certify that she's made a diligent

19  effort to find those documents.

20           So that's it on the, RFAs, Your Honor.

21           THE COURT:  All right.  And I would assume you agree

22  that diligent effort is an ongoing effort based off the

23  Trustee's unique position in the continuing discovery, the lack

24  of depositions, that there will be other information that might

25  change a response?

1          MR. SPRAGENS:  I agree with this much, Your Honor,

2    which is that the parties have an obligation to supplement

3    their discovery responses throughout the process.

4          THE COURT:  Okay.

5          MR. SPRAGENS:  So if she -- if something changes her

6    response and she serves supplemental responses to the requests,

7    you know, so be it.

8          THE COURT:  All right.

9          Mr. Young, I mean, that's kind of how it works,

10   right?

11         MR. YOUNG:  Yeah.

12         THE COURT:  So you answer based off of what you know.

13         MR. YOUNG:  And we've done that, Your Honor.  If what

14   he's looking for is a sentence in every one of these that says

15   we certify that we made a diligent effort to find information,

16   I can supplement it and add that sentence to every response, if

17   that's what he's looking for.

18         But we've, I mean, where we didn't know, we said why

19   we didn't know.

20         THE COURT:  Okay.

21        MS. DOWNING:  If the Court would just have them add that

22   sentence, I think that'll dispose of that issue.

23         THE COURT:  All right.  The Court's more than

24   happy --

25         MR. YOUNG:  No objection.

1          THE COURT:  All right.

2          MR. SPRAGENS:  And, Your Honor, if I could just say

3     one more thing?  In general, you know, I'm sensitive to the

4     Court's perception.  I don't want to put words in your mouth

5     that I'm some lawyer from a different practice who's come in

6     here and dumbed up the works here, and I assure you that's not

7     been my intention.

8          THE COURT:  Mr. Spragens, if I at all alluded to

9     that, that's not the case.  I think you've represented your

10    client and yourself very well in front of this Court, and the

11    Court has no negative inference, connotation, belief, or

12    assumption.

13         MR. SPRAGENS:  Well, I appreciate that.

14         I just wanted to say, you know, I do think that there

15    is good faith.  You know, I don't -- I hope the Court won't

16    find that either side has been acting in bad faith.  I mean, I

17    guess I hope the Court might find that they're not responding,

18    but I'm not going to win that one anyway.

19         So, you know, in my view, we have been trying to

20    operate in good faith here.  I have been trying to make Mr.

21    Manookian available to talk to them.  And, you know, I think

22    that I've got a good basis for the request for more information

23    and response to our interrogatories.  But if the Court says we

24    need to move on with depositions, I'm eager to do that.  And

25    we've been seeking depositions on the plaintiff's side for some

1  time now.

2         So that's all I'll say.  I'm sure you can tell us

3  where to go from here.

4         THE COURT:  All right.

5         And let's just go ahead and talk about depositions

6  real quick.

7         So I keep reading about one-on-one meetings.  Is that

8  separate from a deposition, or is that in reference to part of

9  the deposition?

10         MR. SPRAGENS:  No, Your Honor, that was part of the

11  meet and confer process that we were offering.  So to obviate

12  the need for this extremely pleasant hearing today I thought

13  that we could have an informal conversation to get a little

14  clarity about what each side was shooting at here, but then

15  there will be depositions obviously.  And we've been seeking a

16  deposition of the Trustee, and now Mr. Young has been

17  identified as a witness in their discovery responses, and so

18  we're going to seek to take a short deposition of him to find

19  out what he knows.  So that's where we are.

20         And in my view, you know, the Trustee should go

21  first.  She's the person who made the allegations and she has

22  the burden, and that's the practice that I'm familiar with, is

23  that the plaintiff goes first in these things.

24         THE COURT:  Okay.  Mr. Young?

25         MR. YOUNG:  Your Honor, we don't care if the Trustee

1  goes first, as long as everybody understands the Trustee, as
2  evidence by these discovery responses here, the Trustee knows
3  very little right now.  And that's going to be the Trustee's
4  response at this point, is she knows the information that she's
5  gotten from other parties, which, frankly, isn't a lot.

6          We have no objection if they want to take her
7  deposition first, that's fine.  But what we don't want to do is
8  have an eight-hour deposition, as they've suggested, only for
9  them to find out that she didn't really know that much.
10 And then say, after we've taken all these other depositions,
11 come back and say, now we want to depose the Trustee again.

12         But I'm open.  It doesn't matter to us.

13         I will say this.  I do want talk about scope,
14 specifically with regard to my deposition, because we did
15 identify the question was, anybody who had knowledge of
16 anything in the complaint.  I have not -- I was the receiver in
17 the case and I have knowledge of the references to what
18 happened in the receivership.  Frankly, all that's moot now,
19 because really all that had to do with was the movement of the
20 $750,000.  But if they want to take my deposition with regard
21 to anything prior to this bankruptcy, that's fine.

22         I want to make sure that we're all on the same page
23 that they're not going to ask me questions about what's
24 happened since the bankruptcy, since I've been operating as
25 counsel to the Trustee.  But I'm fine to tell them whatever I

1  know is, or knew, as the receiver.  That's fine.

2         But, you know, we're fine.  We would like a couple of

3  weeks to be able to look through anything that is going to come

4  in over the next couple of weeks.  The Trustee would like a

5  couple of weeks to look through all that before she gives a

6  deposition so that she can at least be as knowledgeable as

7  possible.  But beyond that, it's fine.

8         THE COURT:  All right.

9         MR. SPRAGENS:  I think we're mostly on the same page

10 there, Your Honor.  With respect to the -- I would not agree to

11 a specific time limitation on Mr. Young, on the questions to

12 Mr. Young, but I'm sensitive to the fact that if he has

13 confidential communications with his client we're not going to

14 be asking about those, or at least expecting any answers to

15 those.

16        If he has -- if there are things that he's done as

17 counsel to the Trustee involving third parties that are somehow

18 relevant to the claims, or the resolution of the claims, we may

19 want to get into that as well in the deposition.  But, you

20 know, this may be something that is not a live issue and we can

21 just think about it and come back if we foresee an issue.

22        THE COURT:  All right.  So between now and two

23 o'clock, by the end of this day, I want the parties to have

24 conferred and reached a schedule for depositions, and within

25 the order, a detailed scope of those depositions and any

1  specifics that are necessary to be fully disclosed within the

2  order.

3          And also, to address the request for admissions

4  issue.  It's fairly early in the process for admissions, given

5  all that needs to happen.  So please address that with some

6  formality once the formal discovery to include the depositions

7  are done, when the amendments for the admissions should be

8  propounded on the other side.

9          MR. YOUNG:  And, Your Honor, just as a formal matter

10 on our motions to compel further interrogatory responses.  What

11 I think I heard the Court saying was, after the depositions we

12 could expect to get more information from the Trustee.  But I

13 just want to know what the ruling is on our motion, I guess.

14         THE COURT:  So same with date certain.  After

15 conclusion of all depositions, that there would be amendments

16 provided and certification that each answer is still valid so

17 that there's no confusion of what the Trustee's position is.

18         And then, of course, you're postured to take whatever

19 next step you feel your client can take, whether it's an

20 outright motion to dismiss for failure to state a cause, or,

21 you know, one or -- one count or another that no longer is

22 sustainable, whatever you feel.  That's the appropriate time to

23 tee it up for further action from the Court.

24         MR. SPRAGENS:  Your Honor, may I address one other

25 thing?  I mentioned this, that since our last hearing we

1  received another 86 request for admission from Manookian, PLLC.

2  Could we include in that order -- because we could go through

3  this whole thing again and the Trustee is still saying, we

4  don't know, we don't know, we don't know, or we could simply

5  say that those responses will be due at the conclusion of

6  discovery and save everybody a lot of time and trouble on that

7  second set of requests for admission.

8           THE COURT:  Yeah.  And well, the Court has a

9  threshold question of, why were the requests propounded late,

10 or after the deadline in the original order?

11          MR. SPRAGENS:  I confess, Your Honor, that I did not

12 understand the order to apply to RFAs, which I think of as a

13 tool to sharpen the issues as the case proceeds.  So I

14 apologize if we violated the Court's order on written

15 discovery, that was not my intent.

16          In general, my view is that the RFAs help sharpen the

17 case.  And we can understand if the Trustee agrees that, okay,

18 this is the actual agreement.  And, you know, we're not going

19 to have debates about the authenticity of evidence and stuff

20 like that.  So that's the thought process behind them.

21          And I personally would prefer to have the responses

22 before the deposition so at least we can cross some things off

23 the list before we ask questions.  But, you know, the Court

24 will do what it will do.

25          MR. YOUNG:  And we're not going to know the answers

1  to all the authenticity questions until after depositions, Your

2  Honor.

3          THE COURT:  All right.  Let's keep them after

4  depositions, on the same time frame as all the other written

5  discovery that's going to be amended or supplemented.

6          And I think the parties should both bear in mind that

7  there's a dispositive motion deadline of June 24th.  So keep

8  that in mind when you propose something to the Court this

9  afternoon on the timing so that you don't back yourself into a

10 corner on the deadlines that are yet to come.

11         All right.  And although a little bit early, this is

12 probably a good time to take a break.  You've got your homework

13 for the next couple hours.  And I'll just say, the Court

14 understands that the parties are representing their clients,

15 and trying to zealously represent their clients, and as we've

16 seen today, I mean, I haven't seen either party be

17 unreasonable.  I have seen some discussions that had to happen

18 in order to get to the actual issues, but the Court believes

19 the parties are trying to be reasonable.

20         What the Court doesn't believe is happening is that

21 there's adequate communication going on.  So this is your

22 opportunity to communicate and effectively work through some of

23 these barriers so that we can press forward and resolve this

24 case, finally, so that you don't have to keep coming over here.

25         And the tip off is at 11:15, by the way.

1   So, you know, the Court wants to make sure that the
2   parties understand the Court's here to help you if needed.  But
3   there's enough smart lawyers in this room that self-help is the
4   best help, and, you know, let's try to resolve these things,
5   communicate, figure out where the issues are.

6   Understand that bankruptcy proceedings are a little
7   less certain at the beginning because the Trustee doesn't have
8   a lot of information.  But the reality is, at the end of the
9   day, it's a federal court proceeding subject to the same rules
10  and the same law as any other adversary proceeding.

11  So keep that in mind, that we're trying to minimize
12  the cost to the estate.  Because, ultimately, that costs
13  somebody else money.  The unsecured creditors are paying for
14  it, or, you know, if this is an excess case, Mr. Manookian was
15  paying for it.  I mean, somebody is paying for having three
16  lawyers and a Trustee sitting in a room.

17  It sounds like the beginning of a bad joke, but, you
18  know, that's where we are.

19  So please take the next couple hours.  I'll be back
20  on the bench at two o'clock.  If there's any other discovery
21  issues that haven't been addressed that we need to address --
22  is there anything else out there besides what we've already
23  talked about?

24  MR. SPRAGENS:  Not from my perspective, Your Honor.
25  MR. YOUNG:  I don't think so, Your Honor.

1           MR. GABBERT:  Your Honor, please, if I may?  I think

2   the only thing I'm looking for is any other Fitzgerald

3   agreement.  Other than, I don't have anything else on this

4   sheet, do I?

5           MR. SPRAGENS:  I think that's right.

6           MR. GABBERT:  So if I could just provided him a

7   statement regarding that, do I have to come back?  Because I'm

8   not involved in all this other stuff.

9           MS. YOUNG:  He's trying to save -- trying to save

10  money.

11          MR. SPRAGENS:  Your Honor, I --

12          THE COURT:  Mr. Gabbert, the Court's -- if all issues

13  are resolved, the Court's happy to send you on your way.

14          MR. GABBERT:  Well, he can -- he can advise that I

15  have responded by what the rules are.

16          MR. SPRAGENS:  I'll make that representation for

17  Mr. Gabbert.

18          THE COURT:  All right.  Good enough.

19          All right.  Court will be adjourned until -- or in

20  recess till two o'clock this afternoon.

21          THE CLERK:  All rise.

22      (Recess taken at 10:28 a.m.)

23      (Proceedings resumed at 2:08 p.m.)

24          THE CLERK:  All rise.

25          THE COURT:  Please take your seats.

1          All right.  Mr. Young?

2          MR. YOUNG:  Your Honor, Phillip Young on behalf of

3   the Trustee.

4          I think we've made some progress on most things.  I

5   think there are still a few things that we'd like the Court's

6   input on.  Let me start with the things that I think that we've

7   agreed upon.  This is really just for the record.  This will

8   kind of be incorporated into the order we'll submit.

9          But Mr. Gabbert is going to confirm, by March 25th,

10  that's the only Fitzgerald letter.  We had referenced that.

11         THE COURT:  Okay.

12         MR. YOUNG:  I think he was unable to get in touch

13  with his client this afternoon.  So he's just agreed that by

14  March 25th, he'll do that.

15         We're also going to provide that Manookian, PLLC will

16  amend its response to Interrogatory Number 5, as the Court

17  instructed by March 25th, by that same date.

18         And then, as the Court suggested, we've given more

19  specific information on the Request for Production Number 1,

20  that's the one about defenses.  We provided more specific, kind

21  of bullet point things, that we're looking for to Manookian,

22  PLLC.  And so they're going to respond accordingly.

23         We've agreed that we're going to amend our response

24  to Interrogatory Number 1 by March 25th.  That's the one that

25  asks for what individuals have knowledge.

1       And the reason being, so the Court understands why

2   that is.  You know, the scope of the complaint when filed was

3   16 cases, there were 16.  Now we're talking about two case.  So

4   obviously that really funnels down what actually is in dispute.

5   And so that the parties don't waste time worrying about, you

6   know, depositions on parties that really don't matter anymore,

7   we're going to amend that to make that clear.

8       We already mentioned this, that I was going to add

9   the certification language to the request for admissions that

10  Mr. Spragens had requested.

11      We've agreed that by June 1 all parties will amend

12  interrogatory responses, requests for admission responses, that

13  we'll respond to those second -- that second set of requests

14  for admission by June 1.

15      We've also agreed that topics for depositions will be

16  identified in the deposition notices so that all the parties

17  will have notice of that.

18      And then we've agreed on a deposition schedule for, I

19  guess, the four primary depositions.  And that is Jeanne

20  Burton, me as receiver, Brian Manookian, and Afsoon Hagh.  And

21  those dates are, Jeanne Burton's will be April 20th at 10 a.m.,

22  mine will be April 21st at 10 a.m., Mr. Manookian, who the

23  notice will be for Manookian, PLLC, Cummings Manookian, and

24  Brian Manookian, we'll notice them all up on the same day, May

25  9th at 10.  And then Afsoon Hagh and Hagh Law at May 10th at

1 ten o'clock.

2 And so we'll put all that in the order.

3 MR. SPRAGENS: Mr. Young, can I just add?

4 MR. YOUNG: Yeah. Go ahead.

5 MR. SPRAGENS: Mr. Gabbert, I don't think, has agreed

6 on the deposition schedule. And so when I spoke to him he had

7 a preference for having the Trustee at the end, which I

8 understand is a more conventional practice in bankruptcy court.

9 My client has a preference for having the Trustee at the

10 beginning. And so as I said in the email to you, that's an

11 issue that is still sticky. But we agree with the scheduling

12 that you just announced.

13 MR. YOUNG: And I do want to address that issue,

14 because we want to avoid these repeat depositions. We don't

15 want to have to go through a deposition where the Trustee says,

16 you know, I don't know that yet, I don't know that yet, I don't

17 know that yet, and then go through another deposition at the

18 end to ask essentially the same questions.

19 We don't care if the parties want to take Ms.

20 Burton's deposition early, that's fine. What we don't want to

21 do is to have repeat depositions. To have, you know, one April

22 20th and one May 30th. And so we had a disagreement about

23 that.

24 And as Mr Spragens said, Mr. Gabbert, I think, has a

25 preference toward taking it towards the end, and Mr. Spragens

1 has a preference toward taking it toward the beginning.  But we
2 only want the Trustee to sit for one, eight-hour deposition.
3 We don't want to have to, you know, spread this out.  And so
4 that was --
5          THE COURT:  Well --
6          MR. YOUNG:  -- one of the issues that we were going
7 to see --
8          THE COURT:  I'll make a statement that if there is a
9 second deposition, the party requesting it may end up paying
10 for it.  I'll leave it at that.  If Mr. Manookian drives this
11 such that what is probably the course of action that makes the
12 least amount of sense in this scenario, then if there is a
13 second deposition, he may be paying for that time to take that
14 deposition.  But I'll let the parties -- if the parties are
15 agreeable to that schedule, we'll go forward with that
16 schedule.
17          MR. SPRAGENS:  Right.
18          THE COURT:  But know that the nature of this
19 proceeding, it doesn't make a bit of sense to do the Trustee
20 first.
21          MR. YOUNG:  I hear you loud and clear, Your Honor.
22          THE COURT:  So --
23          MR. YOUNG:  Yeah.  The one thing I was going to say
24 is, I was always trying to split the hairs between the two
25 parties on our side of the table here.  I thought about if we

tried to take her deposition and reserved some of the time for later -- I mean, one of the issues here is because the Court is not going to require anybody to supplement their interrogatories until after through depositions have been taken, there is room for some serious changes in the written discovery at that time, and that's what we want to sort of guard against is that all of a sudden there's a new theory that we couldn't anticipate, or new information that we couldn't anticipate, that comes out.

I take your point though, that if a second deposition is needed, and if the Court finds that it's not warranted or whatever, Mr. Manookian would be paying for it.

THE COURT: Yeah. And again, it's bankruptcy, right? We got limited number of theories that are going to be out there. Let's be real. These are attorneys, everybody knows what the theories are probably going to be, and the information that's going to come out is going to drive that one way or the other. So let's not make it harder than it really is. This is not a new or novel concept. These are not issues that are first impression.

This is what happens here in bankruptcy court every day. You have a company that is no longer operating, there are books and records, there's still effectively accounts receivable out there that need to be collected, and the Trustee is trying to collect those accounts receivable and look back as

1  to whether there's any transfers or transactions that can be

2  set aside.  I mean, it's not that hard, so --

3        MR. YOUNG:  And the Trustee does view this, for the

4  record, as an accounts receivable case.  That's what we view

5  this as, is as an accounts receivable case, primarily.  And

6  that's the way we've been proceeding, but --

7        THE COURT:  Yeah.

8        And I get it, Mr. Spragens, that -- and again, you

9  know, you're representing your client zealously, and the

10 Court's making no determination one way or the other.  You

11 know, your strategy and your client's strategy is what it is.

12 But know that, you know, this Court's seen these cases a

13 thousand times and is not going to be surprised or hoodwinked

14 by anything and is well capable of dealing with any "gotcha"

15 moments as they come, and will deal with them fairly harshly on

16 whichever side they come out, just given the fact that we're

17 wasting a day here to go over discovery requests.

18       So I'm taking copious notes on what's said here.  I'm

19 going to listen to this transcript again.  And if we get to a

20 trial situation where there's something that needs to be

21 addressed, it will not end well for whichever side is the cause

22 of it, period.

23       MR. SPRAGENS:  Thank you, Your Honor.

24       MR. YOUNG:  Your Honor, one other -- one other thing

25 about which we've been unable to reach an agreement is the

1  location of the depositions.  The Trustee suggested that these

2  four in-person depositions take place here in the Court, in the

3  courthouse.  There's lots of reasons for that.  It's a

4  centralized location, it has security, the Court's more

5  available if there becomes a problem.  We hope there's not a

6  problem, but --

7           THE COURT:  We're having the depositions here.

8           MR. SPRAGENS:  That's fine, Your Honor.  And just for

9  the record, I'll preserve my objection to that.  And I heard

10 Mr. Gabbert object to it earlier, as well.

11          THE COURT:  Okay.  Well, if the parties can't agree,

12 you know, you still have the opportunity to agree on a

13 location.

14          MR. SPRAGENS:  Sure.

15          THE COURT:  But in the absence of agreement, we'll

16 hold a hearing.  I'll be in my chambers or available by video.

17 If the there's a problem, we'll address it on the spot.  So,

18 you know, I don't know of any other way to do this, if we can't

19 agree on something as simple as location.

20          MR. SPRAGENS:  Well, I thought the normal rule was

21 you produce the witness at the witness's place of business or

22 convenience, basically.  So I was surprised to hear this

23 proposal, that all the depositions would be conducted here.

24          This parking lot out back is $40 a day I noted, as I

25 tried to dodge parking tickets today.  And so I was thinking

1  there might be a more convenient reason.  I don't buy that

2  there's a security issue in this case.  The Court is available,

3  I appreciate that, by telephone, video, or all the other ways

4  that we can get access to the Court.  So to me, it's overkill

5  to have them at the courthouse.

6          THE COURT:  I agree.

7          MR. SPRAGENS:  And I -- so this wasn't our proposal,

8  and I think it's a departure from the ordinary course and I

9  don't understand the basis for it.

10          THE COURT:  Okay.

11          MR. SPRAGENS:  So I --

12          THE COURT:  So, Mr. Young, let's articulate a basis

13  on the record.

14          MR. YOUNG:  Sure.  First of all, I think the Court

15  knows that this is not -- it's not unusual for a Trustee to

16  conduct depositions at the courthouse.  That's fairly common

17  for trustee's to do.

18          Secondly, you know, it's more centralized than having

19  parties come to my office in Williamson County, for example.

20  This is a lot more central location.

21          And third, we do think that there's a security issue

22  here.  There's already been a restraining order put down

23  against Mr. Manookian by one of the creditor's lawyers in this

24  case, and I don't take that lightly on behalf of my client.

25          So those are the reasons.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

1          MR. SPRAGENS:  Well, and, you know, my office is just

2     down the street and parking is free.

3          There's no security issue.  I don't think that

4     there's any record that would support that there is a security

5     issue in this ordinary bankruptcy case involving professional

6     lawyers on all sides.

7          So this proposal was presented to me.  I said I

8     disagreed with it.  And Mr. Young said, well, we'll take it up

9     with the Court.  So, you know, in my view, this is the

10    departure from the norm, not the other way around.

11         THE COURT:  Okay.

12         And, Mr. Young, you're going to represent that you're

13    uncomfortable doing depositions in Mr. Spragens' office?

14         MR. YOUNG:  Yes, Your Honor.

15         THE COURT:  All right.  And then I'll just address

16    the 100 pound gorilla in the room on that issue.

17         To be candid, Mr. Spragens, I mean, your client's

18    past behavior before the tribunals, and I've had at least two

19    lawyers call the Court and say they don't feel comfortable if

20    your client is going to appear, and, you know, the Court takes

21    those concerns very seriously and makes no conclusion on

22    whether they are valid, they are perceptions which drive

23    behaviors of other parties.  And to eliminate any of those

24    perceptions, and to protect everyone against any allegations of

25    bad behavior, misbehavior, or perceived misbehavior, it makes

1 sense to do them here in an environment where no one can get

2 your client further down a rabbit hole of he did this or he did

3 that, that we're in a neutral environment, which affords

4 certain protections.  And if nothing else, in terms of

5 everybody's on their best behavior.

6         And so the Court's going to make that determination,

7 that the depositions, unless the parties can agree, will be

8 held here in the courthouse.  And as a matter of fact, again,

9 there will be some method available to reach the Court if

10 during those depositions we have further in issues with

11 discovery.

12         MR. YOUNG:  Thank you, Your Honor.

13         I think the last issue that we needed, unless Mr.

14 Spragens has something else that I've forgotten.  The last

15 issue that I have on my list that we needed some input from the

16 Court on is the scope of my deposition.

17         There was a question that was asked in the

18 interrogatories about, list all parties who had knowledge of

19 any element of the complaint, you know, any of the complaint.

20 The complaint originally, if the Court will recall, had a fair,

21 a substantial amount about the $715,000 and about the transfer

22 of that and about the genesis of that in the receivership.

23         Obviously, as the former receiver in that case I had

24 knowledge about that.  That part's not so relevant anymore

25 because the money's frozen and now we're really talking about

1   two cases.  Nevertheless, I'm happy to sit for a deposition.
2   However, I do think that the Court needs to define the scope of
3   that.

4           I would suggest that the scope of that has to do only
5   with the allegations that are in the complaint and only with
6   regard to things up to the petition date.

7           I will represent to the Court that after the petition
8   date my role in this case has been as special counsel to the
9   Trustee.  Mr. Sprague has specifically mentioned, and this is
10  something that came up before, and I'm happy to address it
11  straight on if the Court wants to talk about it today, but this
12  allegation of some sort of a kickback that the Trustee allowed
13  or reduced, allowed a reduced claim to the Chase parties
14  because the Chase parties entered into an order that provided
15  that any remaining receivership, outstanding receivership fees,
16  be paid by the Chase party.

17          First of all, I wasn't involved in that order.

18          Second of all, it's not been paid, so this is a
19  complete non-issue.  Nonetheless, it keeps coming up, but it's
20  not related to this adversary proceeding.  That's related to,
21  if at all, it's related to the claims allowance and
22  disallowance.  That's not related to this adversary proceeding
23  at all.

24          And so I would just like the Court's guidance on what
25  the allowable scope is of a deposition, you know, of me

1  specifically, because that seems to be where some tension is

2         THE COURT:  All right.  Mr. Spragens?

3         MR. SPRAGENS:  In my experience, at least, it is

4  unorthodox, to say the least, to have a case in which an

5  attorney is negotiating the scope of his own deposition as a

6  fact witness in the case.  So we are in a weird posture here.

7  And I think that does speak to the potential for, you know,

8  what we will want to ask Mr. Young about.

9         He represented to me in the conference room that it's

10  really just about the $750,000 or whatever, that 715,000,

11  excuse me, in the receivership.  You know, I want to know what

12  he knows about what's in the complaint.  He's disclosed himself

13  effectively as a fact witness here.  I want to know how he's

14  being compensated for things, because I think that goes to his

15  bias.

16         And I think that is a permissible area of inquiry is,

17  do you stand to gain if you testify a certain way in this case

18  or not?  And I think that's reasonable, both about the knowing

19  about the Chase case and about his role here.

20         I don't need to go into any confidential attorney-

21  client communications, and I don't intend to.  But I do think

22  that, you know, we started this case, frankly, before I was

23  involved, talking about a potential need for disqualification

24  of Mr. Young.  And I do think that the fact that he's now

25  disclosed himself as a witness, which surprised us, opens him

1  up to inquiry on that. And so certainly whatever he tells us
2  he knows about that's in the case right now is going to be the
3  bulk of what we talk about.

4        But I do want to probe for bias. I want to probe for
5  any sort of improper motive. It's awkward to do to a fellow
6  member of the bar. You know, we were just talking about our
7  vacations and our hiking interests and all that stuff. But I
8  think that's part of the job, and if he's going to be a witness
9  and the lawyer here, I should be allowed to ask some of those
10 questions.

11       So I would urge the Court not to set a strict date
12 cutoff, but, you know, admonish us to only stay within the
13 boundaries of what's acceptable as we try to prepare an
14 adversary trial in this court.

15       THE COURT: All right.

16       And, Mr. Young, I think it is reasonable to probe
17 into any of those issues that Mr. Spragens has articulated.
18 So I will not bound the deposition to such limited scope that
19 he can't inquire about your motive, motivation, or compensation
20 in any way.

21       Again I will caution that it better be relevant and
22 stay relevant. And as you've articulated today, that's within
23 the fair bounds of what we do as lawyers is answer questions
24 about why we're here, if we're ever in the position of being a
25 witness, and it goes to credibility, it goes to motivation.

1  And so that's perfectly permissible.

2          But what I do not want is an attempt to deviate in a

3  way that's not going to be productive for anyone and just waste

4  everybody's time.  Because, again, if we're going to waste

5  people's time, that person wasting time will pay for that time.

6  And I can't express how serious I am about charging back to the

7  party who is causing the unnecessary delay or being

8  unreasonable.

9          Again, these are attorneys talking about attorneys

10 and law firms.  And even Mr. Young, if he is a witness, he's

11 another attorney.  So everyone involved in this case is a

12 member of the bar in some form or fashion, and I expect a

13 little bit of common sense and not to take the Court for not

14 understanding what's going on if it deviates from that.  And so

15 just keep that in mind, all the parties that --

16         Again, this is not rocket science.  This is the

17 couple of thousand adversaries since I've been on the bench,

18 and there's nothing in this case that I haven't seen before

19 that surprises me or that I need to look up in WestLaw or

20 Google to figure out how this is going to go.  These are all

21 issues that are fairly routine.

22         I've got a Trustee over here who's been on the panel

23 for more than 20 years and has handled thousands of cases and

24 brought this adversary proceeding in the course of

25 administering it as an estate, that's not unique or novel.

1        So I understand we are all representing clients

2   zealously, but by the same token, you're wasting your time on

3   this forum that's going to be before a judge, not a jury,

4   that's seen this a thousand times before, where we routinely

5   stipulate to all the relevant facts, we proffer evidence more

6   likely than we present witnesses.

7   .        This Court is able to resolve these issues

8   expeditiously if given the opportunity.  And so let's drive

9   towards that opportunity for the Court to do what this Court

10  does in fairly efficient fashion.

11          MR. SPRAGENS:  We're eager to get to that point.  And

12  there aren't side shows on our side.  We intend to get to the

13  point where we can get an adjudication in this.

14          THE COURT:  Okay.

15          MR. SPRAGENS:  So I hear you.

16          MR. YOUNG:  Your Honor, with that, I believe those

17  are the only issues that we had open as far as the -- I think

18  every thing else was agreed upon.  And we understood the

19  Court's direction on everything else, as far as putting

20  together an order.

21          THE COURT:  All right.

22          MR. YOUNG:  And I'm going to circulate it to Mr.

23  Spragens before we submit it to the Court to make sure that --

24          THE COURT:  All right.

25          MR. YOUNG:  -- that everything is accurate.

1        THE COURT:  And the only thing, I've got a couple

2   things.  On the depositions the order should detail the scope,

3   because I don't want any surprises from any party who later

4   says, well, I didn't know that's what was going to be asked.

5   So within this order there needs to be some detail as to the

6   scope of the depositions.

7        MR. SPRAGENS:  We can do that, Your Honor.

8        THE COURT:  All right.

9        And as far as length of depositions, is it correct

10  that you're anticipating an eight-hour deposition for the

11  Trustee?

12       MR. SPRAGENS:  No Your Honor.  I mean, I think that

13  the rules only allow seven hours, and I hope not to even need

14  all seven hours.  I never want to take a seven-hour deposition.

15       THE COURT:  Okay.

16       MR. SPRAGENS:  But I do think that the rules allow it

17  if we need it, and hopefully we won't.

18       THE COURT:  All right.

19       And obviously with the contentious nature, make sure

20  that that order specifically details the time in which the

21  Trustee and all the other witnesses will be available for their

22  deposition.  And if it's the full seven hours for each witness,

23  so be it.  But I don't want any other issues related to

24  discovery, so let's make sure that that order adequately

25  details everything.

1          And I'd like it to be an agreed order.  So rather

2     than just circulate it to Mr. Spragens, I want he and Mr.

3     Gabbert to sign off on the order in its entirety.

4          MR. SPRAGENS:  Yes, Your Honor.

5          MR. YOUNG:  And, Your Honor, as I look at the biggest

6     area of, sort of outstanding question marks about the order,

7     it's what to do about this deposition.  I mean, we have

8     different positions on my side here about when the Trustee's

9     deposition should be taken.  So I'm looking for little

10    guidance, probably, on what we should put in the order that

11    says if there is a second deposition it will come at the

12    requester's expense, unless good cause is shown, or something

13    like that.

14         Is that an appropriate way to phrase that?  I suppose

15    that's what I'm asking.

16         THE COURT:  Yeah. I'll leave it to you all to come up

17    with the exact language.  But the intent is that the parties

18    are agreeing to this.  We need to be efficient and effective.

19    I'm not going to get into the weeds on who goes first, because

20    if I have to do that, then I might as well be trying and

21    representing your clients for you.

22         But I am going to say that common sense needs to

23    prevail here.  That, again, this isn't an IP case.

24         MR. SPRAGENS:  Thank God.

25         THE COURT:  I echo that sentiment.

1    You know, the Trustee needs -- you know, the goal
2  should be to maximize the Trustee's ability to answer the
3  questions.  And if taking the Trustee's deposition first is
4  going to be a waste of time, which I would bet my money to a
5  large extent it will be, then why are we doing it that way?

6    And if you choose to go down that road, the party who
7  made that choice is going to pay for that time for the
8  attorney, or attorneys, that have to sit there for seven, eight
9  hours, or however long it is, for the Trustee to then be in a
10  position to answer those questions.

11    So craft the language so that it's clear that -- I'm
12  going to leave it to the parties to cause a train wreck if you
13  want to.  But, you know, the party that led that train off the
14  tracks is going to be the one that's going to compensate the
15  other side for the time that it takes to actually do it right.

16    You know, and unfortunately, the Trustee gets
17  compensated based off of a formula and not actual time.  But,
18  you know, again, I'm not interested in wasting the Trustee's
19  time twice, as well, on when they, you know, she could move on
20  to other cases that are probably equally as frustrating and
21  difficult to get resolution to.

22    So those are the reasons why if you go down the wrong
23  road you're going to, you know, whichever party drives it is
24  going to be the one that compensates everyone in the room for
25  their time.

```
 1              MR. SPRAGENS:  Thank you, Your Honor.
 2              THE COURT:  Okay.
 3              MR. YOUNG:  Your Honor, I don't think we had any
 4    other questions or comments about the order, unless the Court
 5    has some other question for the Trustee.
 6              THE COURT:  No other questions.  But again, make sure
 7    it needs to be an agreed order, that it fully addresses
 8    everything we've talked about today.
 9              If there's any questions related to the dates that
10    are already in the scheduling order, such as the dispositive
11    motions or trial dates, we have not changed those.  And I need
12    to know now if the parties believe they're going to be unable
13    to comply with those dates.  So within that order each party
14    needs to certify that the remaining dates are still good to go.
15              MR. SPRAGENS:  Yes, Your Honor.
16              THE COURT:  All right.  And I think -- I think that's
17    all I have.
18              Anything else?
19              MR. YOUNG:  Nothing from the Trustee, Your Honor.
20              MR. SPRAGENS:  No, Your Honor.
21              THE COURT:  All right.  Again, thank you for your
22    time and attention.  And hopefully we'll get through this one
23    in a more expeditious fashion going forward.
24              But if there are issues, the Court is obviously
25    available to address those issues.  But I still hold out
```

1  confidence that with the good lawyers involved in this case

2  they'll be able to communicate a little bit better so that we

3  cannot be here on St. Patrick's Day in 2023, perhaps.

4        So with that said, the Court will be adjourned.

5        THE CLERK:  All rise.

6     (Proceedings concluded at 2:35 p.m.)

7               * * * * *

8

9

10

11

12

13

14               **C E R T I F I C A T I O N**

15

16        I, Alicia Jarrett, court-approved transcriber, hereby

17  certify that the foregoing is a correct transcript from the

18  official electronic sound recording of the proceedings in the

19  above-entitled matter.

20

21

22

23  

24  ALICIA JARRETT, AAERT NO. 428    DATE: March 23, 2022

25  ACCESS TRANSCRIPTS, LLC

# EXHIBIT 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) Case No: |
| | ) 3:19-bk-07235 |
| CUMMINGS MANOOKIAN, PLLC, | ) Chapter 7 |
| | ) |
| Debtor, | ) Honorable Charles |
| _____ | ) M. Walker |
| | ) |
| Jeanne Ann Burton, in her | ) |
| capacity as Chapter 7 | ) |
| Trustee, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. No: |
| | ) 3:20-ap-90002 |
| Hagh Law, PLLC, Afsoon Hagh, | ) |
| Manookian PLLC, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Deposition of

PHILLIP YOUNG

Taken on behalf of the Defendants

Commencing at 10:14 a.m.

April 21, 2022


Reported by:

Harpeth Court Reporters
Franklin, Tennessee
Sabrina L. Schneider, LCR No. 455

```
 1   APPEARANCES:

 2   For the Witness:

 3         JUSTIN CAMPBELL, ESQ.
           Thompson Burton, PLLC
 4         One Franklin Park
           6100 Tower Circle, Suite 200
 5         Franklin, Tennessee 37067
           (615) 465-6008
 6         justin@thompsonburton.com

 7   For the Defendant HAGH LAW, PLLC, and AFSOON HAGH:

 8         CRAIG V. GABBERT, JR., ESQ.
           Bass Berry & Sims
 9         150 Third Avenue South, Suite 2800
           Nashville, Tennessee 37201
10         (615) 742-6277
           cgabbert@bassberry.com

11

     For the Defendant MANOOKIAN, PLLC:

12
           JOHN SPRAGENS, ESQ.
13         Spragens Law, PLC
           311 22nd Avenue North
14         Nashville, Tennessee 37203
           (615) 983-8900
15         john@spragenslaw.com

16   Also Present:

17         Jeanne Ann Burton, Trustee
           Brian Manookian
18

19

20

21

22

23

24

25
```

1                           I N D E X

2                    INDEX OF  EXAMINATIONS
                                                    Page
3
    By Mr.  Spragens...................................5
4

5
                     INDEX OF  EXHIBITS
6
    None were marked
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       The deposition of PHILLIP YOUNG, was taken

2   on behalf of the Defendants on the 21st day of April,

3   2022, in the offices of the U.S. Customs House, 701

4   Broadway, Nashville, Tennessee, for all purposes under

5   the Federal Rules of Civil Procedure.

6       The formalities as to notice, caption,

7   certificate, et cetera, are waived.  All objections,

8   except as to the form of the questions, are reserved

9   to the hearing.

10      It is agreed that Sabrina L. Schneider, being

11  a Notary Public and Court Reporter for the State of

12  Tennessee, may swear the witness, and that the reading

13  and signing of the completed deposition by the witness

14  are reserved.

15

16

17

18

19

20                          *  *  *

21

22

23

24

25

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-1   Filed 10/04/23   Page 674 of 678 PageID #: 3590

4

1368

1    It was well after my involvement in the state court

2    action.

3    Q.    At this point in the receivership, there is

4    not a chose in action that needs to be collected?

5    A.    That's correct.

6    Q.    Fair to say?

7    A.    Yes.

8    Q.    I'm talking to you about things you know

9    better than I do, which is always the challenge being

10   a lawyer.

11            MR. SPRAGENS:  Let's take a little break.

12   We don't have a whole lot more.

13            (Recess observed.)

14   BY MR. SPRAGENS:

15   Q.    Mr. Young, have you ever spoken with Judge

16   Walker in person or on the phone, outside the presence

17   of opposing counsel, about any party or issue in this

18   case?

19   A.    No.

20   Q.    You heard Judge Walker say that an attorney

21   had called him expressing concerns about being in the

22   same room with Mr. Manookian.  Did you hear him say

23   that at the hearing?

24   A.    I heard him say that, that somebody had

25   called --

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-1    Filed 10/04/23    Page 675 of 678 PageID #: 3591
43
1369

1          MR. CAMPBELL:  Objection.  Relevance.

2          THE WITNESS:  I heard him say that

3    somebody called chambers.

4    BY MR. SPRAGENS:

5    Q.      And do you know anything about an attorney

6    calling chambers about Mr. Manookian?

7    A.      The only thing that I know about it is the

8    very, very first hearing we had in this case, I called

9    his courtroom deputy to alert her to the fact that a

10   creditor's lawyer had an order of protection.  And I

11   didn't know how that was going to work logistically

12   when you have a lawyer who's representing a creditor

13   in the bankruptcy and the debtor's representatives

14   and there was an order of protection down.  And so I

15   called to alert them to that so they would know how to

16   handle that.  But I don't know if anybody else called.

17   Q.      And which creditor are you referring to?

18   A.      Chase.

19   Q.      And who's the lawyer?

20   A.      Dan Puryear.

21   Q.      And do you know if Mr. Puryear contacted

22   chambers too about that?

23   A.      I don't know.

24   Q.      But you contacted chambers to let them know

25   that the Chase parties and Mr. Manookian couldn't be

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-1    Filed 10/04/23    Page 676 of 678 PageID #: 3592

44

1370

1  in the same space; is that correct?

2  A.     I just told them that I knew there was an

3  order of protection, so logistically I thought that

4  was a potential problem.

5              MR. CAMPBELL: Objection. Relevance.

6  BY MR. SPRAGENS:

7  Q.     And did you make any comments about

8  Mr. Manookian posing a risk to any person in the

9  courthouse?

10 A.     No.

11 Q.     Do you know who in the chambers you talked to?

12 A.     It would have been his courtroom deputy. I

13 think it was the person before Lauren. Lauren is the

14 current courtroom deputy, but I think it was the

15 person before her.

16 Q.     Did you consider filing a motion to point out

17 whatever that concern was rather than calling chambers

18 ex parte?

19 A.     No.

20 Q.     And why not?

21 A.     Because it was just a logistical issue and we

22 always handle that through the courtroom deputies.

23 Q.     Well, it was a logistical issue that

24 implicated bodily safety; is that fair?

25             MR. CAMPBELL: Objection. Relevance.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-1   Filed 10/04/23   Page 677 of 678 PageID #: 3593
45
1371

# EXHIBIT 3