## DEPOSITION INSTRUCTIONS

Judge Walker has noted the following procedures regarding all depositions scheduled in this case to take place at the Customs House, 701 Broadway, 2nd Floor, Nashville, Tennessee:

All applicable Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure and Orders of this Court will be strictly enforced.

The parties are expected to exercise appropriate professionalism and decorum, remembering that this Court and the above referenced applicable rules and orders govern these matters.

Room Assignments

1) The depositions will take place in Conference Room 231.
2) The Plaintiff will have access to Conference Room 254 for use during the depositions.
3) Defendant, Manookian PLLC will have access to Conference Room 233 during the depositions.
4) Defendant, Afsoon Hagh and Hagh Law, PLLC will have access to Conference Room 234 while depositions are taking place.

All objections will be heard by the Court at 3:00 p.m. in Courtroom 2.

Any questions or concerns regarding these procedures should be addressed to Judge Walker's Staff in Chambers #260.

# UNITED STATES BANKRUPTCY COURT

Middle _____ District of _____ Tennessee

In re Cummings Manookian, PLLC
_____
Debtor

*(Complete if issued in an adversary proceeding)*

Jeanne Ann Burton, Trustee
_____
Plaintiff

v.

Hagh Law, PLLC et al.
_____
Defendant

Case No.   3:19-bk-07235

Chapter   7

Adv. Proc. No.   3:20-ap-90002

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  Ronette McCarthy
_____
*(Name of person to whom the subpoena is directed)*

☒ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:  *See Attachment A*

| PLACE | DATE AND TIME |
|---|---|
| Via Zoom - See Attached Instructions | 05/25/22     10:00 am |

The deposition will be recorded by this method:  Stenographic and videographic means, including Zoom recording

☐ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _5/5/22_

CLERK OF COURT

OR

_____          /s/ Phillip G. Young, Jr.
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Jeanne Ann Burton, Trustee _____ , who issues or requests this subpoena, are:
Philip Young, 6100 Tower Circle, Suite 200, Franklin, TN 37067, phillip@thompsonburton.com, (615) 465-6008

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☒ I served the subpoena by delivering a copy to the named person as follows: Ronette McCarthy _____
via electronic mail per agreement

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____40.00_____ .

My fees are $ ___40.00___ for travel and $_____ for services, for a total of $ ___40.00___ .

I declare under penalty of perjury that this information is true and correct.

Date: ___05/05/22___

_____
*Server's signature*

Phillip G. Young
_____
*Printed name and title*

6100 Tower Circle, Suite 200; Franklin, TN 37067
_____
*Server's address*

Additional information concerning attempted service, etc.:
Fee check mailed to witness

# UNITED STATES BANKRUPTCY COURT

| Middle | District of | Tennessee |
|---|---|---|

In re Cummings Manookian, PLLC
_____
Debtor

*(Complete if issued in an adversary proceeding)*

Jeanne Ann Burton, Trustee
_____
Plaintiff
v.
Hagh Law, PLLC et al.
_____
Defendant

Case No.   3:19-bk-07235

Chapter   7

Adv. Proc. No.   3:20-ap-90002

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:   Brian Cummings
_____
*(Name of person to whom the subpoena is directed)*

■ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: *See Attachment A*

| PLACE | DATE AND TIME |
|---|---|
| Via Zoom - See Attached Instructions | 05/26/22        10:00 am |

The deposition will be recorded by this method: Stenographic and videographic means, including Zoom recording

☐ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

_____

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   5/5/22

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

/s/ Phillip G. Young, Jr.
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Jeanne Ann Burton, Trustee   , who issues or requests this subpoena, are:
Philip Young, 6100 Tower Circle, Suite 200, Franklin, TN 37067, phillip@thompsonburton.com, (615) 465-6008

#### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☑ I served the subpoena by delivering a copy to the named person as follows: Brian Cummings; c/o James Price
via electronic mail per agreement
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____40.00_____ .

My fees are $ __40.00__ for travel and $ _____ for services, for a total of $ __40.00__ .

I declare under penalty of perjury that this information is true and correct.

Date: __05/05/22__

_____
*Server's signature*

Phillip G. Young
_____
*Printed name and title*

6100 Tower Circle, Suite 200; Franklin, TN 37067
_____
*Server's address*

Additional information concerning attempted service, etc.:
Fee check mailed to James Price

# UNITED STATES BANKRUPTCY COURT

_____Middle_____ District of _____Tennessee_____

In re Cummings Manookian, PLLC
_____
Debtor

_(Complete if issued in an adversary proceeding)_

Jeanne Ann Burton, Trustee
_____
Plaintiff

v.

Hagh Law, PLLC et al.
_____
Defendant

Case No. ___3:19-bk-07235___

Chapter ___7___

Adv. Proc. No. ___3:20-ap-90002___

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Marty Fitzgerald
_____
_(Name of person to whom the subpoena is directed)_

☑ _Testimony:_ **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: _See Attachment A_

| PLACE<br>Via Zoom - See Attached Instructions | DATE AND TIME<br>05/27/22          10:00 am |
|---|---|

The deposition will be recorded by this method: Stenographic and videographic means, including Zoom recording

☐ _Production:_ You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: ___5/5/22___

CLERK OF COURT

OR

_____          /s/ Phillip G. Young, Jr.
Signature of Clerk or Deputy Clerk          _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
Jeanne Ann Burton, Trustee , who issues or requests this subpoena, are:
Philip Young, 6100 Tower Circle, Suite 200, Franklin, TN 37067, phillip@thompsonburton.com, (615) 465-6008

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person as required by Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☑ I served the subpoena by delivering a copy to the named person as follows: Marty Fitzgerald; 8158 Golf Club Road;
Mount Pleasant, TN 38474 _Via_ _personal_ _service_ _at_ _4:12_ _PM._
_____ on *(date)* 5/7/2022 ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ 40.00 _____ .

My fees are $ ___40.00___ for travel and $_____ for services, for a total of $ ___40.00___ .

I declare under penalty of perjury that this information is true and correct.

Date: 5/9/2022 _____

_Tom a. Clark_
Server's signature

_Tom A Clark, server_
Printed name and title

**Expedite**
5009 Stillwood Drive
Nashville, TN 37220
Server's address
615-651-8601

Additional information concerning attempted service, etc.:
Fee check mailed to James Price



Charles M. Walker
U.S. Bankruptcy Judge
Dated: 5/11/2022

## IN THE UNITED STATTES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) Case No: 3:19-bk-07235 |
| Cummings Manookian, PLLC, | ) Chapter 7 |
| | ) Honorable Charles M. Walker |
| Debtor. | ) |
| _____ | ) |
| | ) |
| Jeanne Ann Burton, Trustee, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proceeding: 3:20-ap-90002 |
| | ) |
| Hagh Law, PLLC; Afsoon Hagh; and | ) |
| Manookian PLLC, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

### ORDER SETTING RESPONSE/OBJECTION DEADLINE
### AND SCHEDULING HEARING
### ON MOTION TO DISQUALIFY BANKRUPTCY JUDGE

THIS MATTER is before the Court on the motion to disqualify filed on May 5, 2022, located at Docket Entry #161. The Court being duly advised,

IT IS HEREBY ORDERED that:

(1) All responses/objections and filings related to the motion shall be filed no later than May 27, 2022.

(2) An evidentiary hearing is set for presentation of the motion on <u>June 29, 2022, at 1:00 p.m.</u>

(3) All parties and/or counsel must appear in person at the above scheduled date and time at Courtroom 2, Second Floor, Customs House, 701 Broadway, Nashville, Tennessee.

(4) Presentation of evidence is subject to applicable Federal and Local Rules.

*THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS*
*INDICATED AT THE TOP OF THE FIRST PAGE*

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON | ) | |
| HAGH; MANOOKIAN, PLLC; and | ) | |
| FIRST-CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## SECOND REVISED NOTICE OF DEPOSITION
## OF AFSOON HAGH AND HAGH LAW, PLLC

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7030 Jeanne Ann

Burton, Chapter 7 Trustee and Plaintiff in this action, respectfully gives notice that she will

take the deposition of Afsoon Hagh, individually and as the corporate representative of

Hagh Law, PLLC, on May 18, 2022, beginning at 10:00 a.m. Central time via Zoom Video

Conference.[1]  A link to the conference will be sent to counsel for all parties and to the

witness; any other party wishing to participate in the deposition should contact undersigned

counsel.  The deposition will be recorded by stenographic and/or videographic means.  The

topics to be addressed in the deposition are any nonprivileged matters relevant to any

---

[1] On May 16, 2022, counsel for Afsoon Hagh raised certain childcare concerns that
would prevent her from attending a deposition at the courthouse but offered to make his
client available for the deposition via Zoom.  Rather than continuing the deposition
further, the Trustee elected to proceed with the deposition via Zoom.

party's claims or defenses, pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure made applicable to this matter by Rule 7026 of the Federal Rules of Bankruptcy Procedure. The Trustee anticipates addressing the following topics:

**Afsoon Hagh, individually:**

- Background of Ms. Hagh's law practice

- Ms. Hagh's relationship with the Debtor

- Ms. Hagh's knowledge of the operations of the Debtor

- Work performed by Ms. Hagh and/or any other attorneys on the *Fitzgerald* case

- The settlement of the *Fitzgerald* case and distribution of settlement proceeds

- Work performed by Ms. Hagh and/or any other attorneys on the *Shoemaker* case

- Expenses advanced by and/or reimbursed to Ms. Hagh in the *Shoemaker* case

- Work performed by Ms. Hagh on any other case listed in Paragraph 23 of the Complaint in this matter

**Afsoon Hagh, as representative of Hagh Law, PLLC:**

- The founding and operations of Hagh Law, PLLC

- Work performed by Hagh Law, PLLC and/or any other attorneys on the *Fitzgerald* case

- The settlement of the *Fitzgerald* case and distribution of settlement proceeds

- Work performed by Hagh Law, PLLC and/or any other attorneys on the *Shoemaker* case

- Expenses advanced by and/or reimbursed to Hagh Law, PLLC in the *Shoemaker* case

2

- Work performed by Hagh Law, PLLC on any other case listed in Paragraph 23 of the Complaint in this matter

Dated: May 17, 2022

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:     615.465.6008
Fax:     615.807.3048
Email: phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF on all parties having made an appearance herein.

This 17th day of May, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

---

### DEFENDANTS' UNOPPOSED MOTION TO CONTINUE THIRD PARTY DEPOSITIONS AND RESET CERTAIN OTHER DEADLINES

---

Come now Defendants Hagh Law, PLLC ("Hagh Law"), Afsoon Hagh ("Ms. Hagh") and Mannokian, PLLC ("Manookian", collectively "Defendants"), by and through counsel, and respectfully move to continue three third party depositions scheduled for the week of May 23-27, 2022. (DNs 158 (notice for Ronette McCarthy, 5/25); 159 (notice for Brian Cummings, 5/26); 160 (Marty Fitzgerald, 5/27); 162–64 (subpoenas for same deponents).) As grounds for this Motion, the Defendants state that the principals of Defendants' firms have a previously scheduled trip next week for which they have already paid. Rescheduling these depositions will necessitate moving certain other deadlines, and the Trustee and Defendants have cooperated to reach an agreement on those revisions as memorialized in the attached proposed order. This Motion and Proposed Order were drafted in consultation with counsel for the Trustee.

Respectfully submitted,

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr. (BPR 004702)
Glenn B. Rose (BPR 10598)
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

*Attorney for Afsoon Hagh and*
*Hagh Law, PLLC*

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed May 19, 2022, and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

/s/ Craig V. Gabbert, Jr.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION TO CONTINUE
THIRD PARTY DEPOSITIONS AND RESETTING CERTAIN OTHER DEADLINES**

Upon the Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Certain Other Deadlines filed by Defendants Hagh Law, PLLC, Afsoon Hagh and Manookian, PLLC ("Defendants"), and good cause shown,

IT IS HEREBY ORDERED:

1. The third party depositions of Ronette McCarthy, Brian Cummings, and Marty Fitzgerald, previously scheduled for the week of May 23, 2022, may be re-set by agreement of the parties.

2. The discovery cutoff is hereby extended to June 30, 2022.

3. The deadline for any party to supplement its discovery responses is hereby extended to July 1, 2022.

4. The deadline for filing dispositive motions is hereby extended to July 29, 2022.

   a. The deadline for filing responses to dispositive motions is hereby extended to August 12, 2022.

   b. The deadline for replies to responses to dispositive motions is hereby extended to August 19, 2022.

<div align="center">

THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.

</div>

Submitted for entry by:

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr. (BPR 004702)
Glenn B. Rose (BPR 010598)
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

*Attorneys for Afsoon Hagh and
Hagh Law, PLLC*

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed May 19, 2022, and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

/s/ Craig V. Gabbert, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST-CITIZENS BANK & TRUST COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION TO CONTINUE THIRD PARTY DEPOSITIONS AND RESETTING CERTAIN OTHER DEADLINES

Upon the Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Certain Other Deadlines filed by Defendants Hagh Law, PLLC, Afsoon Hagh and Manookian, PLLC ("Defendants"), and good cause shown,

IT IS HEREBY ORDERED:

1. The third party depositions of Ronette McCarthy, Brian Cummings, and Marty Fitzgerald, previously scheduled for the week of May 23, 2022, may be re-set by agreement of the parties.

2. The discovery cutoff is hereby extended to June 30, 2022.

3. The deadline for any party to supplement its discovery responses is hereby extended to July 1, 2022.

4. The deadline for filing dispositive motions is hereby extended to July 29, 2022.

   a. The deadline for filing responses to dispositive motions is hereby extended to August 12, 2022.

   b. The deadline for replies to responses to dispositive motions is hereby extended to August 19, 2022.

<div align="center">THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY<br>AS INDICATED AT THE TOP OF THE FIRST PAGE.</div>

Submitted for entry by:

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr. (BPR 004702)
Glenn B. Rose (BPR 010598)
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

*Attorneys for Afsoon Hagh and*
*Hagh Law, PLLC*

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC*

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that the foregoing was filed May 19, 2022, and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

<div align="right">

/s/ Craig V. Gabbert, Jr.   

</div>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

---

## EXPEDITED MOTION TO SET TELEPHONIC HEARING ON DEFENDANTS' UNOPPOSED MOTION TO CONTINUE THIRD PARTY DEPOSITIONS AND RESET CERTAIN OTHER DEADLINES

Come now Defendants Hagh Law, PLLC ("Hagh Law"), Afsoon Hagh ("Ms. Hagh") and Mannokian, PLLC ("Manookian", collectively "Defendants"), by and through counsel, and respectfully move the Court to set an expedited hearing to rule on the Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Other Deadlines (DN 167) ("Motion") which was filed on May 19, 2022. In support of this Motion, and in compliance with Local Rule 9075-1(b), Defendants respectfully state as follows:

1. Defendants request expedited relief in in the Court's ruling on their Motion in order to enable rescheduling of three third party depositions.

2. These third party depositions are scheduled for this week, the first of which is set for today, May 25, 2022.

3.      Notice of this expedited motion has been given to Plaintiff's counsel via e-mail on May 25, 2022 and Trustee's counsel consents to this expedited motion and the expedited hearing.

4.      Defendants requests that a telephonic hearing be held on this Motion today or as soon as possible and can be available for hearing today at 1:00 p.m. or 2:00 p.m.

5.      In the alternative, Defendants request that the Court enter the Proposed Order Granting Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Other Deadlines (DN 168).

Respectfully submitted,

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr. (BPR 004702)
Glenn B. Rose (BPR 10598)
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

*Attorney for Afsoon Hagh and Hagh Law, PLLC*

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com
*Attorney for Manookian PLLC*

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed May 25, 2022, and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

/s/ Craig V. Gabbert, Jr.

**PROPOSED ORDER**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST COMPANY,** | ) | |
| | ) | |
| Defendants. | ) | |

---

## EXPEDITED ORDER ON MOTION TO SET TELEPHONIC HEARING ON DEFENDANTS' UNOPPOSED MOTION TO CONTINUE THIRD PARTY DEPOSITIONS AND RESET CERTAIN OTHER DEADLINES

Upon the Motion to Set Telephonic Hearing on the Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Other Deadlines ("Motion"), and for good cause shown, the Court hereby schedules a telephonic hearing on the Motion for _____, 2022 at _____ ___.m.

THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.

Submitted for entry by:

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr. (BPR 004702)
Glenn B. Rose (BPR 010598)
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

*Attorneys for Afsoon Hagh and*
*Hagh Law, PLLC*

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST COMPANY,** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>EXPEDITED ORDER ON MOTION TO SET TELEPHONIC HEARING ON DEFENDANTS' UNOPPOSED MOTION TO CONTINUE THIRD PARTY DEPOSITIONS AND RESET CERTAIN OTHER DEADLINES</u>

Upon the Motion to Set Telephonic Hearing on the Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Other Deadlines ("Motion"), and for good cause shown, the Court hereby schedules a telephonic hearing on the Motion for _____, 2022 at _____ ___.m.

### THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.

Submitted for entry by:

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr. (BPR 004702)
Glenn B. Rose (BPR 010598)
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

*Attorneys for Afsoon Hagh and
Hagh Law, PLLC*

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC*

Form vorder

# UNITED STATES BANKRUPTCY COURT

## MIDDLE DISTRICT OF TENNESSEE

701 Broadway Room 170
Nashville, TN 37203

Adversary Proceeding No.:  3:20–ap–90002
Related Bankruptcy Proceeding No.:  3:19–bk–07235

Judge:  Charles M Walker

In Re:

Plaintiff/Movant : Jeanne Ann Burton

    vs

Defendant/Respondent : Hagh Law PLLC

---

## ORDER

ORDER by Judge Walker : With regard to docket entry # 168, The Submitted Order located at Dkt. #168 will not be entered by the Court as the related motion at Dkt. #168 is DENIED. The Courts previous order entered March 28, 2022 at Dkt. #143 paragraph 9 renders the motion as unnecessary and therefore, is moot. (RE: related document(s) 168) (leq)

Dated: 5/25/22

                    /s/ Charles M Walker
                    UNITED STATES BANKRUPTCY JUDGE

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 5/25/2022



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST COMPANY,** | ) | |
| | ) | |
| Defendants. | ) | |

## EXPEDITED ORDER ON MOTION TO SET TELEPHONIC HEARING ON DEFENDANTS' UNOPPOSED MOTION TO CONTINUE THIRD PARTY DEPOSITIONS AND RESET CERTAIN OTHER DEADLINES

Upon the Motion to Set Telephonic Hearing on the Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Other Deadlines ("Motion"), and for good cause shown, the Court hereby schedules a telephonic hearing on the Motion for _May 25_, 2022 at _1:00_ p.m. The Zoom Call-In Number is 833-568-8864. The Meeting ID is 160 8635 7633.

THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.

Submitted for entry by:

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr. (BPR 004702)
Glenn B. Rose (BPR 010598)
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

*Attorneys for Afsoon Hagh and
Hagh Law, PLLC*

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC*

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS AFSOON HAGH AND HAGH LAW, PLLC'S RESPONSE TO MANOOKIAN'S MOTION TO DISQUALIFY

---

Come now Defendants Hagh Law, PLLC ("Hagh Law") and Afsoon Hagh ("Ms. Hagh") (collectively, "Hagh"), by and through counsel, and hereby join Manookian's Motion to Disqualify (the "Motion"). (D.E. 161.) Hagh supports the Motion because she lacks sufficient information to be confident that the Court remains impartial. If the Court has specific concerns regarding the security or safety of any deponent, party, or non-party, then the bases for those concerns should have been made clear to the parties on the record instead of being referred to in the abstract. Explicitly setting forth the facts of the ex parte contacts giving rise to the Court's concerns could have afforded everyone with an opportunity to evaluate those concerns. "Special" conditions for certain litigants (like deposition locations or security conditions) to keep them on "best behavior,"

(D.E. 161-1 at 86:5), are suspect without an articulated basis, especially when based on specific ex parte communications that the Court did not disclose on the record.

Hagh also questions the basis for the Court's order setting this Motion for an evidentiary hearing. (D.E. 165.) It appears from the face of the Motion and from the hearing transcript that the person holding the most pertinent factual information to resolve this motion is the Court, in terms of the contents of the ex parte communications bearing on safety issues. Thus, it is not clear to Hagh what evidence Manookian could solicit on this subject that will not come directly from the Court.

Under these circumstances, Hagh asserts that it is appropriate for the Court to recuse itself in this matter to avoid any appearance of impartiality in this adversary proceeding.

Respectfully submitted,

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr. (BPR 004702)
Glenn B. Rose (BPR 10598)
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

*Attorney for Afsoon Hagh and*
*Hagh Law, PLLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed May 27, 2022, and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

/s/ Craig V. Gabbert, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **IN RE:** )<br>)<br>**CUMMINGS MANOOKIAN, PLLC,** )<br>   Debtor. )<br>)<br>**JEANNE ANN BURTON, TRUSTEE,** )<br>   Plaintiff, )<br>)<br>**v.** )<br>)<br>**HAGH LAW, PLLC; AFSOON** )<br>**HAGH; MANOOKIAN, PLLC; and** )<br>**FIRST-CITIZENS BANK & TRUST** )<br>**COMPANY,** )<br>   Defendants. )<br>) | **Case No. 3:19-bk-07235**<br>**Chapter 7**<br>**Judge Walker**<br><br><br><br><br><br><br><br><br><br><br><br><br>**Adv. Proc. No. 3:20-ap-90002** |

### PLAINTIFF'S RESPONSE TO BRIAN MANOOKIAN AND MANOOKIAN PLLC'S MOTION TO DISQUALIFY BANKRUPTCY JUDGE CHARLES WALKER

Comes now the Plaintiff, Jeanne Ann Burton, Trustee, (the "Plaintiff" or "Trustee") by and through special counsel and files this response (the "Response") to Brian Manookian and Manookian, PLLC's Motion to Disqualify Bankruptcy Judge Charles Walker (the "Motion"). While the Trustee believes that the Court is certainly capable of determining whether it should recuse itself in this matter, the Trustee believes that certain facts and legal standards cited in the Motion are incorrect. The Motion alleges that the Court has been biased as a result of "*ex parte* communications and extrajudicial research." *See* Motion, p. 6. The Trustee has knowledge and information concerning only one communication that the Motion alleges is the basis for recusal. The Trustee files this

Response for the purpose of clarifying both the facts and the applicable law as it relates to that one communication.

## FACTS

The Motion contains a number of factual errors, omissions, and/or incorrect inferences that should be clarified for the record in this matter. First, the Motion intimates that the Trustee's special counsel contacted Judge Charles Walker; that is an incorrect inference. In fact, as detailed in sworn testimony taken in this case, the Trustee's special counsel had a brief telephone conversation with the Court's courtroom deputy, not the judge himself. *See* Deposition Transcript of Phillip Young ("Young Transcript) (A full copy of which is attached hereto as Exhibit 1), pp. 43-44.

Not only was the communication not with Judge Walker, the communication did not involve any substantive issue. Special Counsel for the Trustee explained that the call to the Court's courtroom deputy was to address a "logistical issue", namely that counsel for the largest scheduled creditor (Dan Puryear) had a protective order against the Debtor's representative (Brian Manookian). Young Transcript, pp. 44-46. The fact that a protective order had been issued against Mr. Manookian was a matter of public record, and was only brought to the attention of the courtroom staff to avoid "a potential problem." *See id.* Far from intending the communication to be some sort of a smear campaign against Mr. Manookian, as the Movants seem to allege, the Trustee and her special counsel considered this to be nothing more than an administrative issue. In fact, special counsel for the Trustee testified that he said nothing about Mr. Manookian posing an actual physical risk to any person. *See id.*

2

The Motion also implies that the only reason for the Trustee's request to conduct depositions at the courthouse was one of security. That is likewise incorrect. As special counsel for the Trustee explained at the hearing, the Trustee preferred to take all in-person depositions at the courthouse not just because of security but also because conducting depositions at the courthouse is not outside the normal course for a trustee, the courthouse provided a centralized location, and conducting the depositions at the courthouse provided the litigants easy access to the Court in case of discovery disputes. *See* Hearing Transcript (Attached to the Motion as Exhibit 1), pp. 82-83. In fact, the Trustee's primary reason for seeking to conduct depositions at the courthouse was the availability of the Court to rule on discovery disputes, since there had already been multiple cross motions to compel discovery. Discovery was (and is) a significant, ongoing problem in this matter; in fact, the hearing conducted in this matter that is the source of the Motion was to resolve discovery disputes.

Finally, the Motion incorrectly states that the Court's decision on the procedural issue of where to conduct depositions displays some bias against Brian Manookian (who is not even a party to this matter). In fact, the Court's statements at the hearing illustrate the contrary:

> To be candid, Mr. Spragens, I mean, your client's past behavior before the tribunals, and I've had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear, and, you know, the Court takes those concerns very seriously and makes no conclusion on whether they are valid, they are perceptions which drive behaviors of other parties. And to eliminate any of those perceptions, and to protect everyone against any allegations of bad behavior, misbehavior, or perceived misbehavior, it makes sense to do them here in an environment where no one can get your client further down a rabbit hole of he did this or he did that, that we're in a neutral environment, which affords certain protections. And if nothing else, in terms of everybody's on their best behavior.

Hearing Transcript (Attached to the Motion as Exhibit 1), pp. 84-85 (emphasis added). Far from pre-judging Mr. Manookian or his motives, the Court was drawing no conclusions about Mr. Manookian and ordered that depositions be conducted at the courthouse to avoid any allegations of bad behavior, whether real or perceived.

While the Court undoubtedly knows the actual facts relevant to the Motion considering many of them concern the Court's own rulings and its reasons therefore, the Trustee felt it important to clarify these facts for the record in this case.

## LAW

The Motion also misstates, or understates, the applicable legal authority that should be considered by the Court in determining whether to recuse itself. The basis of the Motion is 28 U.S.C. § 455. That section states in relevant part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

In evaluating a motion brought under § 455, a judge is not required "to accept all allegations by the moving party as true" because "[i]f a party could force recusal of a judge by factual allegations, the result would be virtual open season for recusal." *In re Gibson*, 2010 WL 744572, at *2 (Bankr. C.D. Ill. 2010); *see also Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214, 222-23 (9th Cir. BAP 1996) (finding that the court is not required to take all factual allegations as true in a recusal motion). Rather, disqualification "should be viewed as an extraordinary occurrence," and "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty not to sit where disqualified." *In re Stroller*, 374

B.R. 618, 621 (Bankr. N.D. Ill. 2007) (quoting *Laird v. Tatum*, 209 U.S. 824, 837 (1972)). "Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, because a change of umpire in mid-contest may require a great deal of work to be redone . . . and facilitate judge-shopping." *In re Nat'l Union Fire Ins. Co.*, 839 F.2d 1226, 1229 (7th Cir. 1988) (citations omitted).

The party moving for recusal has a burden of proving doubts about the judge's impartiality. *In re* Pansier, 2019 Bankr. LEXIS 2431, at *2-3 (Bankr. E.D. Wisc. 2019); *Stroller*, 374 B.R. at 622. A judge is required to recuse himself only where (a) a *reasonable* person might question his impartiality, or (b) where the judge is subjectively biased toward a party.[1] The first is an objective test that asks the court to consider how things might appear from a reasonable and rational party's perspective, not a "hypersensitive, unduly suspicious person." *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996). "That an unreasonable person focusing on only one aspect of the story might perceive a risk of bias is irrelevant." *In re Sherwin-Williams Co.*, 607 F.3d 474, 477 (7th Cir. 2010). The second test is a subjective test; "[t]his test is highly personal in nature and requires each judge in such situation to set aside emotion and thoughtfully examine his ability to impartially 'administer justice without respect to persons.'" *United States v. Holland*, 519 F.3d 909, 915 (9th Cir. 2008) (quoting 28 U.S.C. § 453).

The occurrence of an *ex parte* communication with the court or its staff does not automatically necessitate recusal. "While *ex parte* communications are discouraged, they aren't always improper and don't necessarily call for recusal." *Blixseth v. Yellowstone Mt. Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2013) (citing *Reed v. Rhodes*, 179 F.3d 453, 468-

---

[1] Only the Court can answer whether it is subjectively biased toward a party though the Trustee would point out that Brian Manookian is not a party hereto.

69 (6th Cir. 1999); *United States v. Van Griffin,* 874 F.2d 634, 637 (9th Cir. 1989); *Willenbring v. United States,* 306 F.2d 944, 946 (9th Cir. 1962)). The fact that an *ex parte* communication occurred, on its own, does not require recusal. *In re Allen,* 2009 LEXIS 4431, at *26 (Bankr. Idaho 2009); *see also Willenbring,* 306 F.2d at 946. *Ex parte* communications are only the basis for recusal when the substance of those communications might cause a reasonable person to question the judge's impartiality. *Blixseth,* 742 F.3d at 1219; *United States v. Wecht,* 484 F.3d 194, 214-15 (3d Cir. 2007).

The ultimate question presented by the Motion is whether an objective, reasonable person might question the impartiality of the Court based upon a telephone conversation between the Trustee's special counsel and the Court's courtroom deputy. The law seems clear that the conversation detailed above, and about which special counsel testified, would not lead a reasonable person to question the Court's impartiality and does not warrant recusal.

First, special counsel described the purpose of the telephone call to the courtroom deputy as an administrative matter, or "a logistical issue" as he referred to it in his testimony. A number of courts have held that discussions between a party's counsel and a court concerning administrative matters does not constitute an impermissible *ex parte* communication that would warrant recusal. *See, e.g., Metcalf v. Golden (In re Adbox, Inc.),* 234 Fed. Appx. 420, 420 (9th Cir. 2007) ("Although the Metcalfs have identified several *ex parte* contacts between the bankruptcy judge, his law clerk and counsel for appellees, those communications related to purely procedural matters."); *In re Beard,* 811 F.2d 818, 829-30 (4th Cir. 1987) (meeting between a district court judge and debtor's counsel to discuss "a procedural order to govern the administration of a complex Chapter 11

proceeding" was no basis for recusal); *In re Casco Bay Lines, Inc.,* 17 B.R. 946, 956 (1st Cir. BAP 1982) (communications between bankruptcy judge and Chapter 11 Trustee concerning administrative, rather than substantive, issues did not require disqualification); *Blixseth,* 742 F.3d at 1220 ("*Ex parte* communications with judicial staff concerning routine administrative matters do not raise any inference of bias."); *Allen,* 2009 Bankr. LEXIS at *26-30 (a telephone call between a judge and counsel to discuss scheduling of an emergency hearing did not warrant recusal). This is even more true where the communication was between counsel and the judge's staff, as opposed to the judge himself. *In re Parson,* 2018 Bankr. LEXIS 830, at *12 (Bankr. N.D. Tex. 2018) ("Importantly, the Court's courtroom deputy and the intake staff at the clerk's office have been the only means of communication between the Court, [counsel], and the Debtor.").

Moreover, even if the purpose of the communication from the Trustee's counsel to the Court's staff had been to express a security concern about Mr. Manookian, or if the Court's staff interpreted such conversation as expressing a security concern, that communication would not warrant recusal. The United States Bankruptcy Appellate Panel considered and rejected a nearly identical argument in *Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214 (9th Cir. BAP 1996). Among the reasons cited for recusal by the movant in *Seidel* was that "the judge admitted that his secretary had received calls from persons attending the proceedings who expressed concerns about their safety." *Seidel*, 194 B.R. at 224. However, the appellate court concluded: "There is no merit to the contention that the judge should be disqualified because of phone calls to his secretary regarding security. The judge has an obvious administrative responsibility concerning the security of the courtroom. This includes protecting not only the judge personally, but also the parties, the

attorneys, the witnesses, and the spectators." *Id.* The 9th Circuit BAP elaborated: "Here the expressions of concern were made to the judge's secretary, and not to the judge personally. The security imposed was hardly exceptional. These facts would not cause a reasonable person to question the judge's impartiality." *Id.[2]*

Thus, whether the Court and its staff considered the telephone call from the Trustee's special counsel to be merely an administrative function, as counsel believed, or whether they considered it to be a statement of concern for security, as the Movants allege, it was not an *ex parte* communication that any reasonable person would believe could taint the judge's impartiality. It involved an administrative matter and its impact upon the Court, if any, was regarding an administrative matter, *i.e.* the physical location for depositions. The Court has expressly stated that it has formed no opinion about the veracity of any security concern, much less any substantive matter.

## CONCLUSION

Having clarified the facts for the record and provided a more thorough analysis of the applicable legal standard, the Trustee defers to the Court to determine whether subjectively it is biased against any party or whether a reasonable and objective person would find that the Court's impartiality might be questioned in this matter.

---

[2] In the *Seidel* case the Court's initial security measure was simply to post a United States Marshal in the courtroom for each hearing.

8

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton,
Trustee

*Jeanne Ann Burton*

vs

*Hagh Law*

Deposition of

**PHILLIP YOUNG**

*April 21, 2022*



HARPETH
COURT REPORTERS

(615) 933-6786
www.harpethcourtreporters.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) Case No: |
| | ) 3:19-bk-07235 |
| CUMMINGS MANOOKIAN, PLLC, | ) Chapter 7 |
| | ) |
| Debtor, | ) Honorable Charles |
| _____ | ) M. Walker |
| | ) |
| Jeanne Ann Burton, in her | ) |
| capacity as Chapter 7 | ) |
| Trustee, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. No: |
| | ) 3:20-ap-90002 |
| Hagh Law, PLLC, Afsoon Hagh, | ) |
| Manookian PLLC, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Deposition of

PHILLIP YOUNG

Taken on behalf of the Defendants

Commencing at 10:14 a.m.

April 21, 2022

Reported by:

Harpeth Court Reporters
Franklin, Tennessee
Sabrina L. Schneider, LCR No. 455

1   APPEARANCES:

2   For the Witness:

3       JUSTIN CAMPBELL, ESQ.
      Thompson Burton, PLLC
4       One Franklin Park
      6100 Tower Circle, Suite 200
5       Franklin, Tennessee 37067
      (615) 465-6008
6       justin@thompsonburton.com

7   For the Defendant HAGH LAW, PLLC, and AFSOON HAGH:

8       CRAIG V. GABBERT, JR., ESQ.
      Bass Berry & Sims
9       150 Third Avenue South, Suite 2800
      Nashville, Tennessee 37201
10      (615) 742-6277
      cgabbert@bassberry.com

11

12   For the Defendant MANOOKIAN, PLLC:

      JOHN SPRAGENS, ESQ.
13      Spragens Law, PLC
      311 22nd Avenue North
14      Nashville, Tennessee 37203
      (615) 983-8900
15      john@spragenslaw.com

16   Also Present:

17      Jeanne Ann Burton, Trustee
      Brian Manookian
18

19

20

21

22

23

24

25

1                          I N D E X

2                   INDEX OF EXAMINATIONS
                                                    Page

3   By Mr. Spragens...................................5

4

5                   INDEX OF EXHIBITS

6   None were marked

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 46 of 662 PageID #: 3640
3
1418

1        The deposition of PHILLIP YOUNG, was taken

2   on behalf of the Defendants on the 21st day of April,

3   2022, in the offices of the U.S. Customs House, 701

4   Broadway, Nashville, Tennessee, for all purposes under

5   the Federal Rules of Civil Procedure.

6        The formalities as to notice, caption,

7   certificate, et cetera, are waived.  All objections,

8   except as to the form of the questions, are reserved

9   to the hearing.

10        It is agreed that Sabrina L. Schneider, being

11   a Notary Public and Court Reporter for the State of

12   Tennessee, may swear the witness, and that the reading

13   and signing of the completed deposition by the witness

14   are reserved.

15

16

17

18

19

20                        *  *  *

21

22

23

24

25

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 47 of 662 PageID #: 3641
4
1419

1          PHILLIP YOUNG

2  was called as a witness, and after having been first

3  duly sworn, testified as follows:

4          E X A M I N A T I O N

5  BY MR. SPRAGENS:

6  Q.      Mr. Young, my name's John Spragens.  I assume

7  that you know the rules of a deposition; is that fair?

8  A.      I do.

9  Q.      You're represented by counsel, Mr. Thompson?

10  Sorry.

11  A.      Mr. Campbell.

12  Q.      Mr. Campbell of Thompson Burton?

13  A.      Yes.

14  Q.      Can you give me a little bit of background

15  about yourself in terms of law licensure and the

16  history of your career?

17  A.      Yeah.  Licensed in 2000.  Practiced at Bass,

18  Berry & Sims from 2000 to August 2008.  Was on my

19  own from August 2008 through January 2010.  Formed

20  Garfinkle, McLemore & Young in 2010, practiced there

21  until March of 2014, and have been with Thompson

22  Burton since that time.

23  Q.      Let's see.  So you went to Bass, Berry & Sims

24  straight after law school?

25  A.      Yeah.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 48 of 662 PageID #: 3642
5
1420

1    Q.      And then you left there in 2008?

2    A.      Right.

3    Q.      With respect to your separation from Bass,

4    Berry & Sims, was that your decision or the firm's

5    decision or a mutual decision?

6    A.      My decision.

7    Q.      And were there any ethical issues raised in

8    terms of your integrity or your ethical practice of

9    law at that time?

10   A.      None.

11   Q.      Then you were in solo practice for two or

12   three years; is that right?

13   A.      About a year and a half, I think.

14   Q.      And then you were at the Garfinkle firm from

15   '10 to '14?

16   A.      Correct.

17   Q.      Was it your decision to separate from the

18   Garfinkle firm or was it the firm's decision?

19   A.      My decision.

20   Q.      Were you a partner at that firm?

21   A.      Yes.

22   Q.      And you had a membership interest in the firm?

23   A.      I did.

24   Q.      With respect to -- okay.  At Bass, I'm

25   assuming you were not a partner; is that right?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 49 of 662 PageID #: 3643

6

1421

1   A.      I had not yet been a partner.  They told me I
2   was making partner.
3   Q.      So you were expecting to make partner at the
4   time you left Bass?
5   A.      Correct.
6   Q.      Any reason why you didn't stick around and
7   make partner?
8   A.      Sure.  Because I was working too much, had
9   small children.
10  Q.      What was the corporate form of your solo
11  practice?
12  A.      Just an LLC -- or PLLC.
13  Q.      PLLC?
14  A.      Yeah.
15  Q.      What, if you recall, was the Garfinkle firm's
16  corporate entity status?
17  A.      It was either a PLC or PLLC.  I don't
18  remember.
19  Q.      And you said it was your decision to leave the
20  Garfinkle firm.
21  A.      Correct.
22  Q.      And then you went to Thompson Burton.
23  A.      Right.
24  Q.      What's the corporate form of Thompson Burton?
25  A.      PLLC.

1    Q.       And I assume that at all times that you were

2    whether solo at Garfinkle or at Thompson Burton,

3    there's been a licensed attorney who's a member -- at

4    least one licensed attorney who's a member of each of

5    those firms?

6    A.       I assume so at Bass Berry.  Since I wasn't a

7    member there, I can't speak to that directly, but I

8    assume so.  But I can speak directly to the others.

9    Yes.

10    Q.       Your client identified you as having personal

11    knowledge about some of the allegations in the

12    complaint in this case; is that correct?

13    A.       Yes.

14    Q.       And that was in her sworn interrogatory

15    responses to Ms. Hagh's interrogatories; is that

16    right?

17    A.       Correct.

18    Q.       What is the subject matter or the -- what are

19    the topics about which you have personal knowledge in

20    this case?

21    A.       Things that happened -- any of the allegations

22    in the complaint that related to the receivership,

23    because there was a separate receivership section, and

24    then certain of the facts under the heading of the

25    Fitzgerald case to the extent that those things

1    happened prior to the bankruptcy, so, for example,

2    discussions about movement of the money and things

3    like that.

4    Q.      The bankruptcy was filed in -- is it November

5    or December of 2019?

6    A.      November.

7    Q.      November 2019.  So with respect to the

8    Fitzgerald case, before that date would be what you

9    have personal knowledge about?

10   A.      Correct.

11   Q.      And the receivership allegations, those

12   would be the ones that appear under the heading the

13   Receivership, and that starts on Page 5 and goes

14   through Page 6 of the complaint.  Does that sound

15   right to you?

16   A.      I guess.  It's under a heading that says

17   Receivership.  And obviously some of those things are

18   taken directly from pleadings.  But you'll see in

19   there that the receiver made demand or the receiver

20   asked or things like that.  Those are the things that

21   I would have personal knowledge of.

22   Q.      And with respect to the Fitzgerald case

23   allegations, that's the next section of the complaint,

24   and those are the ones that your knowledge -- your

25   personal knowledge continues through the time of the

1 filing of the bankruptcy?

2 A.      Right.  I think that -- I think my involvement

3 in the Fitzgerald matter really ended in -- well, I

4 guess -- yeah, I guess that's right, because there

5 were continuing to be hearings up through the time of

6 the bankruptcy, so -- about the money that was

7 deposited with the state court, so...

8 Q.      That's right.  And some of those hearings

9 would have occurred after the bankruptcy was filed

10 and, though, at the time you were still functioning as

11 the receiver in the state court case; is that right?

12 A.      Yes.  This was not a typical receivership.

13 I was not receiver of Cummings Manookian.  This was

14 a receivership that was just to collect choses in

15 action.  So it was a receivership just to collect A/R,

16 but to the extent A/R was still outstanding up until

17 the time of the bankruptcy.  Once the bankruptcy was

18 filed, I no longer had authority to collect the A/R.

19 Q.      But you were still involved in the -- as the

20 receiver after the bankruptcy was filed but before the

21 adversary proceeding was filed, correct?

22 A.      In name.  There was just nothing to do.

23 Q.      Didn't we both attend a hearing together in

24 December of 2019?  And my understanding, and correct

25 me if I'm wrong, was that you were there as the

(615) 933-6786
www.harpethcourtreporters.com
10
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 53 of 662 PageID #: 3647
1425

1   receiver.

2   A.      That's right.  Yeah, that's right.

3   Q.      And that was in Lawrenceburg in front of Judge

4   Allen.

5   A.      Allen.

6   Q.      You were appointed receiver on June 20th,

7   2019; is that right?

8   A.      That sounds right.  I thought it was early

9   July, but it may have been late June.

10  Q.      I'll just -- rather than trying to show

11  you a bunch of documents today, out of respect for

12  everyone's time, I'll represent to you that Paragraph

13  22 of the complaint says, "On June 20th, 2019,

14  the Williamson County Circuit Court granted the

15  receivership and entered an order appointing Phillip

16  G. Young as receiver for purposes of collecting the

17  Cummings Manookian and Hammervold, PLC, choses in

18  action."

19  A.      That would be more accurate than my memory

20  today, so yes.

21  Q.      With respect to your knowledge or the

22  materials in the complaint that you have personal

23  knowledge about, is there anything in the complaint

24  that you now believe is inaccurate?

25  A.      That I have personal knowledge of?  No.

1  Q.      Was an order ever entered terminating the

2  receivership in the state court case?

3  A.      No, I don't think so.

4  Q.      So as of today you are still the receiver by

5  that court appointment?

6  A.      I suppose in name, but there's nothing to do,

7  because, like I said, there's no choses in action.

8  Those all belong to the bankruptcy estate.

9  Q.      But whether or not there's anything to do, you

10 were appointed receiver and the Court has not

11 terminated that appointment?

12 A.      To my knowledge, they haven't terminated.

13 Q.      What was your first awareness of a dispute

14 between Mr. Manookian or his then law firm and the

15 Chase parties?  Essentially, how did you get involved

16 as receiver in that case?

17 A.      I received a call from Dan Puryear a month or

18 two, maybe, before my appointment to ask if I was

19 willing to serve as a receiver in a case.

20 Q.      And had you known him previously?

21 A.      Dan Puryear?  I'd worked with him in other

22 cases.

23 Q.      Had you ever served as a receiver in a case in

24 which he was representing a party?

25 A.      I don't think so.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 55 of 662 PageID #: 3649
12
1427

1  Q.      Had you ever served as a receiver before in

2  other state court cases?

3  A.      Yes.

4  Q.      So I'll represent to you that the complaint

5  says that they filed the receivership motion on April

6  25th of 2019.  Does that sound right to you?

7  A.      That sounds right.

8  Q.      Do you believe that you were contacted by

9  Mr. Puryear before that motion was filed?

10  A.      I think so, but I'm not certain.  I think so.

11  Q.      Do you recall whether that motion asked the

12  Court to appoint you specifically as receiver or just

13  a receiver?

14  A.      I don't recall.

15  Q.      Do you recall reviewing that motion before it

16  was filed?

17  A.      No.  I recall reviewing an order before an

18  order was submitted, but I don't recall reviewing a

19  motion.

20  Q.      And when Mr. Puryear contacted you, what in

21  sum or substance did he say?

22  A.      That he was representing a party that had a

23  large judgment against a default -- a defunct law firm

24  or against a law firm that was being wound down or

25  something and that he needed somebody to collect the

(615) 933-6786
www.harpethcourtreporters.com
13
Case 3:23-cv-00961     Document 6-2     Filed 10/04/23     Page 56 of 662 PageID #: 3650
1428

1   accounts receivables.

2   Q.      So at the time that he first contacted you, he

3   told you that Cummings Manookian was being wound down?

4   A.      Let me think of when that was.  Yes, I think

5   he did.

6   Q.      And what did you say to him?  I assume you had

7   to run a conflicts check and go through the usual

8   process?

9   A.      I did.

10  Q.      Did you say -- what's your recollection of how

11  you responded to his --

12  A.      Well, obviously I said yes at some point.  I

13  don't remember -- I don't remember whether I -- you

14  know, whether that took two weeks or two days.  I

15  don't remember.

16  Q.      Had you had any previous dealings with

17  Cummings Manookian or Mr. Manookian as of the time

18  Mr. Puryear called you?

19  A.      No.  I'd never heard of either of them.

20  Q.      And so, essentially, at that time you agreed

21  that you would serve as receiver if the Court

22  appointed you, and attempt to collect that

23  approximately $750,000; is that right?

24  A.      That's right.

25  Q.      And that $750,000 was a sanctions award that

(615) 933-6786
www.harpethcourtreporters.com
14
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 57 of 662 PageID #: 3651
1429

1    Judge Binkley had entered in Williamson County court

2    against Mr. Manookian; is that right?

3    A.    I think it was against Mr. Manookian, Cummings

4    Manookian, Mark Hammervold, and Mark Hammervold's law

5    firm.

6    Q.    Did you attend the hearing on that motion?

7    A.    Yes.

8    Q.    So presumably that motion probably named you;

9    is that right?

10   A.    Certainly by the time -- by the time it was

11   being heard, I was proposed.  I don't remember whether

12   the motion named me or whether that was later.  I just

13   don't recall.  But certainly I knew by the time that

14   there was a hearing that I was being proposed.

15   Q.    What did you do -- what was your first act as

16   receiver after you got that appointment?

17   A.    What I recall is that I attempted to contact

18   Mr. Manookian, Mr. Hammervold, and maybe Mr. Cummings

19   -- definitely Mr. Cummings at some point, I don't know

20   whether that was later, but to get a list of cases

21   that were still active for Cummings Manookian,

22   Hammervold, either of those two firms.

23   Q.    And that would have been in the summer of

24   2019?

25   A.    That's right.

1  Q.      Did you get that list from any or all of them?

2  A.      I think I got lists from all of them.  They

3  were all slightly different, as I recall, but I

4  believe I got lists from all of them.

5  Q.      And then what did you do after you got that

6  list or those lists?

7  A.      Filed attorneys liens in those cases.

8  Q.      And you listed those cases in the complaint on

9  Page 6, the list that we talked about yesterday with

10  Ms. Burton; is that right?

11  A.      That's correct.

12  Q.      And then at some point did you begin

13  attempting to collect fees in those cases on behalf of

14  the Chase parties?

15  A.      Yes.  Well, on behalf of the Court.  The Court

16  would ultimately decide what happened to the funds,

17  but on behalf of the Court.

18  Q.      Sure.  Do you remember -- do you recall which

19  cases you successfully were collecting fees in during

20  that time period?

21  A.      I don't.  I know there were a couple, and I

22  think they're listed in the complaint, actually, but I

23  don't remember which of those cases we actually

24  collected funds from.

25  Q.      And then at some point Mr. Cummings continued

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 59 of 662 PageID #: 3653
16
1431

1    to make some payments to you as cases continued to

2    settle; is that right?

3    A.     Yes.

4    Q.     Was that all in 2019 or did that bleed into

5    2020 after the bankruptcy?

6    A.     That would be a question for the trustee,

7    but I -- I believe the trustee collected some fees

8    from Mr. Cummings, as well, post bankruptcy.  I know I

9    did as receiver pre bankruptcy in maybe two or three

10   cases.

11   Q.     When did you get copies of any engagement

12   letters?  When, if ever, did you get copies of any

13   engagement letters between Cummings Manookian and its

14   clients?

15   A.     As receiver, I got copies of engagement

16   letters in -- from Mr. Manookian in, I believe it was,

17   September 2019.

18   Q.     How did you get those?  Were they emailed to

19   you or did you meet in person?  What were the

20   circumstances of getting those?

21   A.     I met at 45 Music Square West, met

22   Mr. Manookian there, and he gave me copies there.

23   Q.     Was anybody else at that building, as far as

24   you knew, during that meeting?

25   A.     I didn't see anyone else.

(615) 933-6786
www.harpethcourtreporters.com
17
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 60 of 662 PageID #: 3654
1432

1    Q.      So Ms. Hagh certainly wasn't there?

2    A.      Not that I know of.

3    Q.      And is it fair to say that in your time as

4    receiver, you did not ever see Ms. Hagh at 45 Music

5    Square West?

6    A.      I've never met Ms. Hagh, so no.

7    Q.      Is that the only time that you've been to

8    45 Music Square West, that September 2019 meeting?

9    A.      Yes.

10   Q.      Tell me what happened during that meeting.

11   A.      It was pretty uneventful.  I showed up and

12   rang the doorbell.  It took -- I remember it took a

13   while for somebody to come to the door because I was

14   thinking, you know, "Am I at the wrong place?"  But

15   Mr. Manookian came to the door.

16           We went upstairs to a conference room, sat

17   down.  He had the letters laid out and some other

18   things.  Like, I know there were some notices about

19   his temporary suspension that he gave me at that

20   meeting and there were some -- maybe some case

21   invoices related to the Fitzgerald case that he gave

22   me.  It was mostly engagement letters for the various

23   matters I'd asked for.

24   Q.      At that meeting, did you receive a copy of the

25   December 2018 withdrawal letter that we looked at

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 61 of 662 PageID #: 3655
18
1433

1    yesterday with Ms. Burton?

2    A.      I did.

3    Q.      Any other withdrawal letters that you received

4    during that meeting?

5    A.      No.

6    Q.      When you were at 45 Music Square West, did you

7    see anyone -- did you see any indicia of law practice

8    going on while you were there?

9    A.      I didn't see anyone there, if that's what

10   you're asking.

11   Q.      When you were up on the second floor, you were

12   in just a nondescript conference room; is that right?

13   A.      Yeah, was just in a conference room.

14   Q.      Was anybody using any of the other offices on

15   that floor?

16   A.      I don't remember seeing any other offices.

17   What I recall is that we went straight into a

18   conference room.  I wasn't looking, though.  I wasn't

19   looking for people.

20   Q.      At some point, did you learn that Ms. Hagh had

21   formed Hagh Law in March of 2019?

22   A.      Yes.

23   Q.      And do you recall how you learned that?

24   A.      I think that the way I recall that is that in

25   the process of attempting to secure the Fitzgerald

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961     Document 6-2     Filed 10/04/23     Page 62 of 662 PageID #: 3656

19

1434

1  fees, Mr. Manookian represented -- well, first, I
2  found out from Mr. Meisner, who was the defense lawyer
3  in that case, that he was instructed to remit those
4  fees to Afsoon Hagh at Hagh Law.  I think that may
5  have been the first time I'd heard about Hagh Law at
6  that point.  And I think maybe I went to the secretary
7  of state's office, you know, to the website, to pull
8  it up at that point.
9  Q.     What, if anything else, did Mr. Meisner tell
10  you other than that he was instructed to remit the
11  fees to Hagh Law?
12  A.     That that's what the settlement agreement said
13  and that that's what he intended to do.
14  Q.     Did he suggest to you that there was anything
15  untoward or unusual about sending those fees to Hagh
16  Law?
17  A.     No.
18  Q.     Did you develop an impression at that time
19  that there was something untoward or improper about
20  those fees being submitted to Hagh Law?
21  A.     I don't know if it was at that time or later,
22  but I certainly, at some point during that time prior
23  to the bankruptcy, knew that the complaint had been
24  filed by Cummings Manookian and that even after the
25  December 2018 letter from Mr. Manookian that purported

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 63 of 662 PageID #: 3657

20

1435

1   to terminate the relationship, that Ms. Hagh continued

2   filing pleadings in the Fitzgerald case on behalf of

3   Cummings Manookian.

4   Q.      And how did you learn that, that she had

5   continued to file pleadings, as you say, on behalf of

6   Cummings Manookian?

7   A.      From the court file.

8   Q.      So you went and looked at the docket to try to

9   figure out everything that's been going on in the

10  Fitzgerald case at that time?

11  A.      I don't remember if that was -- it was

12  somewhere in August or September of 2019.

13  Q.      You are aware that when an attorney or a law

14  firm seeks to withdraw from a case, they have to make

15  some efforts to ensure that the client is continued to

16  be represented in that case; is that right?

17  A.      Yes, unless the Court excuses them from that

18  and allows the client to proceed pro se, yes.

19  Q.      So there's nothing unusual about seeing a

20  motion to withdraw that assures the Court that the

21  client will continue to be represented by another

22  attorney, is there?

23  A.      No.  I thought it was unusual that there was

24  no order allowing the withdrawal, but -- what was

25  unusual about that, though, is it was -- it was not

(615) 933-6786
www.harpethcourtreporters.com
21
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 64 of 662 PageID #: 3658
1436

1  Cummings Manookian's withdrawal, it was Brian

2  Manookian's withdrawal, and then it said Afsoon Hagh

3  will continue representing the client.

4  Q.      And what was the significance, in your mind,

5  of not seeing an order regarding the withdrawal?

6  A.      I've just never -- I mean, it's a hanging

7  motion that's not resolved if there's no order that

8  grants the motion or denies the motion.

9  Q.      And that's really as a result of the Court's

10  action, not the litigant's action, right?

11  A.      I mean, if you don't submit a proposed order,

12  there's not going to be one granted.

13          MR. GABBERT:  Unless you've lost your

14  license and you can't submit a proposed order.

15          MR. MANOOKIAN:  Unless the Tennessee

16  Supreme Court has already submitted it on your behalf.

17  BY MR. SPRAGENS:

18  Q.      You're aware that Mr. Manookian became

19  suspended from the practice of law at some point in

20  2018, right?

21  A.      Yes.

22  Q.      And was it your understanding that that action

23  was taken by the Tennessee Supreme Court and the Board

24  of Professional Responsibility?

25  A.      As far as I know.

1   Q.      And there's nothing that any trial court has

2   to do to effectuate suspension of a law license, is

3   there?

4   A.      Not that I know of.

5   Q.      Do you have a view on whether Cummings

6   Manookian could have filed a notice of withdrawal as

7   opposed to a motion to withdraw in the Fitzgerald

8   case?

9   A.      I don't know.

10  Q.      If they had filed a notice of withdrawal,

11  how would that impact your view of whether Cummings

12  Manookian continued to represent the Fitzgerald

13  family?

14  A.      If Cummings Manookian had filed a notice or if

15  Brian Manookian had filed a notice?

16  Q.      Let's start with Cummings Manookian.

17  A.      If Cummings Manookian had filed a notice, then

18  presumably there would be a substitution of counsel

19  right behind it for the reasons that you've just

20  expressed, that the Court doesn't want them

21  unrepresented, and then -- so that would be

22  understandable.

23  Q.      What if Brian Manookian, who you knew to be --

24  let me ask you this.  Did you know at that time that

25  Brian Manookian was the sole member of Cummings

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 66 of 662 PageID #: 3660
23
1438

1    Manookian?

2    A.      No.

3    Q.      When did you learn that he was the sole member

4    of Cummings Manookian?

5    A.      Sometime after the bankruptcy was filed.

6    Q.      At what point did you first have dealings with

7    Brian Cummings?

8    A.      Within a few weeks after the receivership,

9    like I said, I reached out to him to try to get a list

10   of cases he was aware of that Cummings Manookian or

11   Hammervold Law was involved in.

12   Q.      And as of that time, you knew that he had been

13   a named partner at Cummings Manookian?

14   A.      Yes.

15   Q.      And a member for purposes of the PLLC?

16   A.      Yes.

17   Q.      Did you seek to get a copy of the operating

18   agreement at that time?

19   A.      No.

20   Q.      At what point did you seek to get a copy of

21   the Cummings Manookian operating agreement?

22   A.      I never did.  The trustee did.

23   Q.      So that would have been after the bankruptcy

24   was filed?

25   A.      Correct.

1  Q.      Is that how you came to learn that as of

2  December 2018 and early 2019, that Mr. Manookian was

3  the sole member of Cummings Manookian?

4  A.      No.  I think I discovered that after the

5  bankruptcy, but I think it was a combination of things

6  between what the trustee told me about the meeting of

7  creditors and then looking up secretary of state

8  information on Cummings Manookian.

9  Q.      In 2019, before the bankruptcy was filed, did

10 you have any view on who else was or may have been a

11 member of Cummings Manookian?

12 A.      I didn't know whether Afsoon Hagh was a

13 member.

14 Q.      Did you ask Mr. Manookian that question?

15 A.      I did not.

16 Q.      Did you ask Ms. Hagh that question via email

17 or telephone or any other way?

18 A.      I did not.

19 Q.      Did you take any steps in 2019 to determine

20 who all the members of Cummings Manookian were?

21 A.      No.

22 Q.      And is there any reason that you didn't do

23 that?

24 A.      It wasn't relevant at that time.

25 Q.      In your role as receiver, did you have any

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 68 of 662 PageID #: 3662
25
1440

1  view on whether a PLLC that did not have a member with

2  an active law license could continue to represent

3  clients?

4  A.      No.

5  Q.      Do you have any view on that now?

6  A.      Yes.

7  Q.      Are you prepared to share that view?

8  A.      Sure.  Mr. Manookian had a suspended license.

9  He still had a license, he was not disbarred, and so I

10  believe he could still own a PLC.  In fact, he formed

11  Manookian, PLLC, while he was suspended.

12  Q.      So it's your view that if a lawyer has

13  a suspended license, they can form and operate a

14  professional LLC engaged in the practice of law, they

15  just can't personally practice law?

16  A.      Right.

17  Q.      You are aware that the terms of his

18  suspension, which he reviewed, prohibited

19  Mr. Manookian from being in the same building as

20  anyone practicing law?

21  A.      I was aware of that.

22  Q.      And that doesn't change your view about

23  whether a PLLC with a suspended sole member can

24  continue to practice law?

25  A.      It doesn't.  I mean, you can have associates.

(615) 933-6786
www.harpethcourtreporters.com
26
Case 3:23-cv-00961     Document 6-2     Filed 10/04/23     Page 69 of 662 PageID #: 3663
1441

1  Q.      Is it your view that Mr. Manookian could hire

2  associates today and run a law firm where they are

3  engaged in the practice of law?

4  A.      I don't know.  You'd have to ask the BPR that.

5  Q.      And have you taken any steps to ask the BPR

6  that?

7  A.      No.

8  Q.      Have you taken any steps to consult with an

9  expert on legal ethics about whether that's

10  permissible or not?

11  A.      No.

12  Q.      And have you taken any steps to consult with

13  an expert on corporate formation and entities such as

14  a PLLC about whether that is allowable under the PLLC

15  statute?

16  A.      No.  I mean, I've looked at the PLLC statute.

17  Have I consulted with an expert?  No.

18  Q.      That's your view of the statute, though?

19  A.      Yes.  That's what you asked me, was my view.

20  Q.      At what point -- well, let me ask you this.

21  Did you at some point develop the view that Ms. Hagh

22  was continuing to practice law on behalf of Cummings

23  Manookian after December 2018?

24  A.      Yes.

25  Q.      How did you develop that view?

(615) 933-6786
www.harpethcourtreporters.com
27
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 70 of 662 PageID #: 3664
1442

1    A.      I'm sorry.  Ask me the question again.

2    Q.      I think that you had just said that you did

3    develop the view at some point that Ms. Hagh was

4    continuing to practice law on behalf of Cummings

5    Manookian after December 2018.  And my question is:

6    How did you come to develop that view?

7    A.      Okay.  From looking at the pleadings in the

8    Fitzgerald case where she continued filing pleadings

9    on behalf of Cummings Manookian.

10   Q.      And you developed that view in the summer or

11   fall of 2019?

12   A.      It would have been -- it would have been the

13   fall of 2019.

14   Q.      And when did Ms. Hagh, in your view as

15   receiver, stop practicing law on behalf of Cummings

16   Manookian?

17   A.      I don't know that I formed an opinion, as

18   receiver, of that.

19   Q.      In your role as receiver, did you share

20   Ms. Burton's view that when Ms. Hagh filed pleadings

21   that stated Cummings Manookian, she was working on

22   behalf of Cummings Manookian, and when she filed

23   pleadings that stated Hagh Law, she was working on

24   behalf of Hagh Law?

25           MR. CAMPBELL:  Object to the form.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 71 of 662 PageID #: 3665

28

1443

1          THE WITNESS:  I don't know that I formed

2   an opinion either way about that.

3   BY MR. SPRAGENS:

4   Q.      As receiver, did you form an opinion that

5   Ms. Hagh was -- that all of Ms. Hagh's work in the

6   Fitzgerald case in 2019 was performed on behalf of

7   Cummings Manookian?

8   A.      Again, I don't know that I formed an opinion

9   about that.  What I was tasked to do by the Court was

10  to collect $750,000, and I knew that I had a very good

11  argument, based on the engagement letter, that the

12  firm was entitled to at least that much, and that was

13  sort of the end of it.

14  Q.      Well, let's talk about the engagement letter

15  for a minute.  You're aware that the engagement letter

16  entitles Cummings Manookian to collect a reasonable

17  attorney's fee in the event it's discharged by its

18  client, right?

19  A.      That's what it says, right.

20  Q.      And in the next paragraph, it talks about if

21  the firm withdraws from the representation, and it

22  says, "Cummings Manookian is entitled to collect its

23  advanced costs," correct?

24  A.      That's what it says, right.

25  Q.      And it does not say anything in that paragraph

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 72 of 662 PageID #: 3666

29

1444

1  about collecting any fees from the client; is that

2  correct?

3  A.      It does not.

4  Q.      You would agree that the Fitzgeralds never

5  discharged Cummings Manookian as their counsel,

6  correct?

7  A.      Not to my knowledge.

8  Q.      And you've seen the December 2018 letter in

9  which Cummings Manookian tells the Fitzgeralds that it

10 is withdrawing from the case, correct?

11 A.      Yes.  And then there's subsequent pleadings

12 that were continued to be filed on behalf of Cummings

13 Manookian.

14 Q.      But you have seen that letter that we looked

15 at yesterday with Ms. Burton?

16 A.      Yes.

17 Q.      And when you withdraw from a representation,

18 is it unusual, in your view, that there might be a

19 transition period in which a couple of additional

20 pleadings are filed?

21 A.      Yes, that would be unusual in my opinion.

22 Q.      Your reading of the engagement letter between

23 Cummings Manookian and the Fitzgeralds is that it is

24 silent on the question of whether Cummings Manookian

25 is entitled to attorney's fees in the event that it

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 73 of 662 PageID #: 3667

30

1445

1  withdraws?

2  A.     Are you asking me as receiver or counsel for

3  the trustee?

4  Q.     I'm asking you as receiver when you got that

5  letter.

6  A.     As receiver, I had no opinion about that.

7  Q.     Well, you just told me that you thought that

8  you had a good argument as receiver that Cummings

9  Manookian was entitled to that money in the Fitzgerald

10 case.  So what's the basis of that good argument?

11 A.     Because there was a signed engagement letter

12 with Cummings Manookian, and I was unaware of any

13 other signed engagement letters.

14 Q.     But you were aware, as of summer 2019, that

15 this December 2018 withdrawal letter existed, right?

16 A.     Yes.

17 Q.     How did that impact your good argument?

18 A.     It didn't.

19 Q.     And why is that?

20 A.     Because I think that's an attempted withdrawal

21 that was never followed through.  I think it was a

22 notice to the client that there was an attempt to

23 withdraw and then there was never a withdrawal.

24 Q.     So it's your view -- or it was your view as

25 receiver that notwithstanding the suspension of the

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 74 of 662 PageID #: 3668
31
1446

1  law license and the statement to the client that "I

2  am required to withdraw as counsel in this matter,

3  Cummings Manookian is additionally required to

4  withdraw as Brian Cummings has recently left the

5  firm and I am in the process of winding up its

6  affairs" -- notwithstanding that language, you do

7  not believe that there was an effective withdrawal

8  by Cummings Manookian in the Fitzgerald matter?

9  A.      That's correct.

10  Q.      And the statement in the December 2018 letter,

11  "I am in the process of winding up its affairs,"

12  that's consistent with what Mr. Puryear told you when

13  he called you about serving as receiver, correct?

14  A.      I think it is, yeah.

15  Q.      Cummings Manookian was winding down because

16  Manookian had been suspended from the practice of law

17  and so he couldn't continue anymore?

18  A.      I don't know if he said that, but I do think

19  he said they were winding down.  I do believe that.

20  Q.      And so this letter that was signed by Brian

21  Manookian in December of 2018 is entirely consistent

22  with what Mr. Puryear told you when you got involved

23  in the case?

24  A.      With regard to the winding down, yes.

25  Q.      So how would Cummings Manookian continue to

(615) 933-6786
www.harpethcourtreporters.com
32
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 75 of 662 PageID #: 3669
1447

1  represent the Fitzgeralds after sending this letter

2  and filing a motion for withdrawal in the Fitzgerald

3  case?

4  A.    Well, Cummings Manookian didn't file a motion

5  to withdraw.  It was Brian Manookian's motion to

6  withdraw.  So Afsoon Hagh could continue representing

7  Cummings Manookian in that case.

8  Q.    And it was your view as receiver she could do

9  that, notwithstanding the fact that the principal of

10  Cummings Manookian sent a letter telling the client

11  that the firm would no longer represent the client or

12  even be engaged in the business of practicing law?

13  A.    Yes.

14            MR. CAMPBELL:  Mr. Spragens, are you

15  going to make that an exhibit to his depo?

16            MR. SPRAGENS:  I wasn't planning to,

17  because we did it yesterday.

18            MR. CAMPBELL:  If it's in the record from

19  yesterday, that's fine.

20            MR. SPRAGENS:  It is the December 7th,

21  2018, letter.

22            THE WITNESS:  I know what letter you're

23  talking about.

24  BY MR. SPRAGENS:

25  Q.    In your view, were Marty and Melissa

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 76 of 662 PageID #: 3670
33
1448

1  Fitzgerald entitled to rely on the representation

2  from Mr. Manookian in December 2018 that the firm was

3  withdrawing and, in fact, winding up its affairs?

4  A.     I don't even know if they received that

5  letter, so I can't answer that question.

6  Q.     If they did receive that letter, would they be

7  entitled to rely on that representation?

8            MR. CAMPBELL:  Object to the form.

9            THE WITNESS:  I don't know.

10  BY MR. SPRAGENS:

11  Q.     You didn't have a view on that as receiver?

12  A.     No.

13  Q.     At the time that Mr. Manookian gave you a copy

14  of this letter in 2019, did you doubt that it had been

15  sent to the client?

16  A.     Yes.

17  Q.     And what was the basis of that?

18  A.     Because Mr. Manookian couldn't produce -- or

19  Cummings Manookian couldn't produce the green card,

20  because he says it was sent certified.

21  Q.     Any other reason you doubted the authenticity

22  of this letter?

23  A.     That's it.

24  Q.     If Mr. Fitzgerald testifies that he received

25  this letter, would that be sufficient, in your mind,

(615) 933-6786
www.harpethcourtreporters.com
34
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 77 of 662 PageID #: 3671
1449

1  to demonstrate that he did receive this letter?

2  A.      As receiver, it doesn't matter to me anymore.

3  So...

4  Q.      And when you were receiver, did you contact

5  Mr. Fitzgerald to ask if he received this letter?

6  A.      No.

7  Q.      Did you develop your suspicion about its

8  authenticity immediately upon receiving it?  In other

9  words -- let me ask you this:  When did you ask for

10  the green card?

11  A.      Before the bankruptcy.  It was while I was

12  serving as receiver, but I don't remember when.

13  Q.      Was it during that meeting at 45 Music Square

14  West?

15  A.      It could have been, or it could have been

16  after that.  I don't remember.

17  Q.      Do you have any correspondence where you asked

18  for the green card?

19  A.      I don't know.

20  Q.      Do you recall if you did it orally or in

21  writing?

22  A.      I don't.

23  Q.      Is that material that you could search through

24  and obtain in this case if we asked you to?

25  A.      I could if it's relevant, yes.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 78 of 662 PageID #: 3672
35
1450

1  Q.      Is there any chance that you didn't ask for

2  the green card?

3  A.      No.  I asked for the green card.

4  Q.      You just don't remember when or how?

5  A.      I don't remember how or when.  I remember

6  being told that the file that that was kept in had

7  been corrupted, the computer file, that it had been

8  scanned in and been corrupted.

9  Q.      Do you recall hearing anything about a server

10 that was no longer able to be accessed?

11 A.      No.

12 Q.      You don't recall Mr. Manookian ever telling

13 you about that?

14 A.      No.

15 Q.      And when you say you heard about a file that

16 had been corrupted, when did you hear about that?

17 A.      It would have been the same time I asked for

18 the green card.

19 Q.      That was a conversation between you and

20 Mr. Manookian?

21 A.      Yes.  I don't remember whether it was by email

22 or orally.  I don't remember.

23 Q.      But you two were the only parties to that

24 conversation?

25 A.      As far as I remember, yes.

1  Q.      And whatever conversation you-all had in

2  person at 45 Music Square West, you-all were the only

3  parties to that conversation as well?

4  A.      Yes.  It was a brief conversation.  It was

5  really, "Here are the documents."

6  Q.      And to the best of your recollection, at that

7  meeting you did not ask for the green card?

8  A.      I don't remember.  I don't remember if it was

9  that meeting or later.

10  Q.      Is there something that led you to believe you

11  needed to see the green card in order to understand

12  that this letter got sent?

13  A.      I don't remember.  I don't remember why I

14  asked for the green card.

15  Q.      Because my point is, you know, a lot of times

16  letters say via U.S. mail, via email, but you don't go

17  ask every time you get a letter to see the proof that

18  it was sent, correct?

19  A.      Right.

20  Q.      So what was it about this letter that made you

21  need to see the green card?

22  A.      I think just the fact that then there were

23  filings that Afsoon Hagh later had on behalf of

24  Cummings Manookian.

25  Q.      Well, that was your legal view as the

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 80 of 662 PageID #: 3674
37
1452

1   receiver, correct?

2   A.      Right.

3   Q.      That was a conclusion you drew?

4   A.      Right.

5   Q.      So isn't it possible that you drew a

6   conclusion that was just not supported by the record

7   of what actually happened in the case?

8   A.      Yeah.  Of course that's possible.

9   Q.      Do you have any information about what the

10  Fitzgeralds did after receiving this letter, if, in

11  fact, they received this letter?

12  A.      No.

13  Q.      Do you know if they attempted to interview any

14  other attorneys to represent them?

15  A.      I don't.

16  Q.      And you didn't contact them to ask about

17  that --

18  A.      No.

19  Q.      -- when you were serving as receiver?

20  A.      I did not.

21  Q.      Upon your appointment as receiver, at some

22  point you filed motions that were adverse to Cummings

23  Manookian; is that correct?  And by "adverse" I mean

24  seeking to collect funds from Cummings Manookian.

25  A.      No, I don't think so.  I don't think I was

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 81 of 662 PageID #: 3675

38

1453

1  ever seeking -- I was seeking to recover the funds

2  that belonged to Cummings Manookian.

3  Q.      Did you ever file a motion seeking contempt

4  against Cummings Manookian?

5  A.      In the receivership?

6  Q.      When you were serving as receiver.

7  A.      I may have, but I don't remember.

8  Q.      Did you file a motion seeking sanctions

9  against Cummings Manookian as receiver?

10 A.      I may have.  I don't remember.

11 Q.      Do you recall that the substance of the

12 December 2019 hearing involved allegations by you as

13 receiver that Ms. Hagh had moved money improperly in

14 bank accounts?

15 A.      Yes.

16 Q.      And those allegations are actually

17 memorialized in the complaint that Ms. Burton filed,

18 correct?

19 A.      That's correct.

20 Q.      Do you recall seeking monetary sanctions

21 against Ms. Hagh or Hagh Law?

22 A.      I don't, but I could have.  I just don't

23 remember.

24 Q.      Do you recall seeking monetary sanctions

25 against Cummings Manookian?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 82 of 662 PageID #: 3676
39
1454

1    A.      I don't, but I could have.  I mean, the

2    pleadings would be the best evidence of that.  I just

3    don't remember.

4    Q.      So whatever the pleadings say, you stand by

5    those pleadings?

6    A.      That's right.

7    Q.      Do you agree with me that if you filed a

8    motion seeking sanctions and -- monetary sanctions

9    and/or contempt against Cummings Manookian, that that

10   would make you adverse to Cummings Manookian?

11           MR. CAMPBELL:  Object to the form.

12           THE WITNESS:  I don't know.  I don't

13   remember the context of that, so I can't answer that

14   question.

15   BY MR. SPRAGENS:

16   Q.      Do you understand what I mean when I talk

17   about adversity in a legal sense?

18   A.      Yeah.  Sure.

19   Q.      So if you alleged improper conduct by Cummings

20   Manookian or its principals, do you agree with me that

21   that would make you adverse to Cummings Manookian?

22   A.      Or its principals, yes.

23   Q.      You don't disagree with me that seeking

24   monetary sanctions against a party makes you adverse

25   to that party?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 83 of 662 PageID #: 3677

40

1455

1    A.      I'd say that's generally right, yeah.

2    Q.      You have paid yourself, with court

3    authorization, from funds that you collected as

4    receiver from Cummings Manookian, correct?

5    A.      From Cummings Manookian and Hammervold

6    receivables, yeah, that's right.

7    Q.      And do you know as of the time the adversary

8    proceeding was filed -- do you know how much you had

9    paid yourself, at that time, from those funds?

10   A.      I don't, but the receivership reports would

11   show that.

12   Q.      Do you have any time or fees in the

13   receivership action that have not been paid as of this

14   date?

15   A.      I think so, yes.

16   Q.      And what's the date range of that work?

17   A.      I don't recall.

18   Q.      Do you have any -- do you recall what work you

19   haven't been paid for in the receivership?

20   A.      I think it was all pre-petition time, if

21   that's what you're asking.

22   Q.      So your recollection is that work you haven't

23   been paid for in the receivership predates the filing

24   of the bankruptcy?

25   A.      That's my recollection, but the receivership

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 84 of 662 PageID #: 3678
41
1456

1  reports would show that.

2  Q.      Have you been paid for your work in December

3  of 2019 in which you filed motions for a temporary

4  restraining order seeking some sort of collection of

5  funds from Hagh Law in front of Judge Allen?

6  A.      I don't know.

7  Q.      So you're not sure if you've been paid for the

8  December 2019 work you did?

9  A.      I don't know.

10  Q.      That would be after the filing of the

11  bankruptcy?

12  A.      That's right.

13  Q.      Is Cummings Manookian obligated to pay your

14  unpaid fees in the receivership?

15  A.      No.

16  Q.      And why not?

17  A.      I think there's a court order that directs

18  that any unpaid receiverships be paid by the

19  petitioning party, which would be the Chases.

20  Q.      And that's because the $750,000 that you were

21  seeking to collect as receiver has been vacated as of

22  this date; that order has been vacated by the

23  Tennessee Court of Appeals?

24  A.      I'm not sure that that's why, but what you

25  said is accurate, that that order has been vacated.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 85 of 662 PageID #: 3679

42

1457

```
1    It was well after my involvement in the state court

2    action.

3    Q.      At this point in the receivership, there is

4    not a chose in action that needs to be collected?

5    A.      That's correct.

6    Q.      Fair to say?

7    A.      Yes.

8    Q.      I'm talking to you about things you know

9    better than I do, which is always the challenge being

10   a lawyer.

11           MR. SPRAGENS:  Let's take a little break.

12   We don't have a whole lot more.

13           (Recess observed.)

14   BY MR. SPRAGENS:

15   Q.      Mr. Young, have you ever spoken with Judge

16   Walker in person or on the phone, outside the presence

17   of opposing counsel, about any party or issue in this

18   case?

19   A.      No.

20   Q.      You heard Judge Walker say that an attorney

21   had called him expressing concerns about being in the

22   same room with Mr. Manookian.  Did you hear him say

23   that at the hearing?

24   A.      I heard him say that, that somebody had

25   called --
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 86 of 662 PageID #: 3680

43

1458

1          MR. CAMPBELL:  Objection.  Relevance.

2          THE WITNESS:  I heard him say that

3   somebody called chambers.

4   BY MR. SPRAGENS:

5   Q.      And do you know anything about an attorney

6   calling chambers about Mr. Manookian?

7   A.      The only thing that I know about it is the

8   very, very first hearing we had in this case, I called

9   his courtroom deputy to alert her to the fact that a

10  creditor's lawyer had an order of protection.  And I

11  didn't know how that was going to work logistically

12  when you have a lawyer who's representing a creditor

13  in the bankruptcy and the debtor's representatives

14  and there was an order of protection down.  And so I

15  called to alert them to that so they would know how to

16  handle that.  But I don't know if anybody else called.

17  Q.      And which creditor are you referring to?

18  A.      Chase.

19  Q.      And who's the lawyer?

20  A.      Dan Puryear.

21  Q.      And do you know if Mr. Puryear contacted

22  chambers too about that?

23  A.      I don't know.

24  Q.      But you contacted chambers to let them know

25  that the Chase parties and Mr. Manookian couldn't be

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 87 of 662 PageID #: 3681
44
1459

1  in the same space; is that correct?

2  A.     I just told them that I knew there was an

3  order of protection, so logistically I thought that

4  was a potential problem.

5              MR. CAMPBELL:  Objection.  Relevance.

6  BY MR. SPRAGENS:

7  Q.     And did you make any comments about

8  Mr. Manookian posing a risk to any person in the

9  courthouse?

10 A.     No.

11 Q.     Do you know who in the chambers you talked to?

12 A.     It would have been his courtroom deputy.  I

13 think it was the person before Lauren.  Lauren is the

14 current courtroom deputy, but I think it was the

15 person before her.

16 Q.     Did you consider filing a motion to point out

17 whatever that concern was rather than calling chambers

18 ex parte?

19 A.     No.

20 Q.     And why not?

21 A.     Because it was just a logistical issue and we

22 always handle that through the courtroom deputies.

23 Q.     Well, it was a logistical issue that

24 implicated bodily safety; is that fair?

25             MR. CAMPBELL:  Objection.  Relevance.

(615) 933-6786
www.harpethcourtreporters.com
45
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 88 of 662 PageID #: 3682
1460

1          THE WITNESS:  No, I don't think that's

2    fair.

3    BY MR. SPRAGENS:

4    Q.      Did you say anything about Mr. Manookian

5    posing a risk to any person?

6    A.      No.

7    Q.      Do you know who was operating Cummings

8    Manookian during the period December 2018 through

9    March 2019?

10   A.      No.

11   Q.      You know it wasn't Mr. Cummings, though,

12   correct?

13   A.      I wasn't involved in the case during that

14   time, so I don't know.  I assume it wasn't, because he

15   had withdrawn.

16   Q.      And started his own firm?

17   A.      Correct.

18   Q.      And you learned all that as receiver?

19   A.      Right.

20   Q.      So as receiver, did you develop any view on

21   who was operating Cummings Manookian during that time

22   period between December 2018 and March 2019?

23   A.      No.

24   Q.      But I guess you testified earlier that you

25   thought that -- at that time you thought that Ms. Hagh

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 89 of 662 PageID #: 3683

46

1461

1  might be a partner operating a firm?

2  A.      I didn't know what she was.  I just know she

3  was signing pleadings on behalf of Cummings Manookian.

4  Q.      And you know she's a licensed attorney just

5  like you and I are, correct?

6  A.      Right.

7  Q.      And she's had other law firm jobs other than

8  Hagh Law.  Are you aware of that?

9  A.      No.

10  Q.      You're aware that she's -- are you aware that

11  she has litigated and tried cases in court?

12  A.      I think somebody has mentioned that, but I'm

13  not personally aware of where that was or anything.

14  Q.      I guess I'm just trying to understand why you

15  developed the assumption that she was not, you know,

16  able to start her own law firm and represent clients

17  in her own capacity at Hagh Law.

18  A.      Is that a question?

19  Q.      Yeah.  Can you shed any light on that?

20  A.      I don't think I developed the theory that she

21  wasn't able to.  I think I developed the theory that

22  she didn't because she continued filing things on

23  behalf of Cummings Manookian.

24  Q.      As of March 2019, when she formed Hagh Law, do

25  you contend that Cummings Manookian still represented

(615) 933-6786
www.harpethcourtreporters.com
47
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 90 of 662 PageID #: 3684
1462

1  the Fitzgeralds starting in March 2019?

2  A.      I don't think I had an opinion on that as

3  receiver.

4  Q.      As receiver, did you develop an opinion on the

5  last action that Ms. Hagh took on behalf of Cummings

6  Manookian in the Fitzgerald case?

7  A.      I didn't have an opinion about that.

8  Q.      As receiver, do you hold the opinion that

9  Cummings Manookian was entitled to 100 percent of the

10  fee in the Fitzgerald case?

11  A.      I never fully developed that opinion, so the

12  answer to that is no, I didn't have an opinion on

13  that.  I felt confident that Cummings Manookian was

14  entitled to at least the 760 that was in court.

15  Q.      And you're aware now that your client's view

16  is that Cummings Manookian is entitled to 100 percent

17  of the fee in the Fitzgerald case?

18  A.      Yes.

19  Q.      But that is not a view that you had formed as

20  receiver?

21  A.      Not at that time.

22  Q.      I'm not going to mark the complaint as an

23  exhibit, but I'm going to hand you a copy of the

24  adversary proceeding complaint.  And my question is:

25  Looking through Paragraphs 10 through 41, which are

1    all the factual materials in the case, those were all

2    facts that were developed within your knowledge as

3    receiver; is that fair to say?

4    A.      (Reviewing document.) No.

5    Q.      Okay. Which facts were not within your

6    personal knowledge as receiver?

7    A.      I don't think I knew the date or the year in

8    which Cummings Manookian was formed.

9    Q.      So that would be a fact in Paragraph 10?

10    A.      Uh-huh. Yes.

11    Q.      And just for the record, you're reviewing

12    these paragraphs in the complaint, and you'll let me

13    know if you see facts that were not developed in your

14    role as receiver.

15    A.      Yes. And so in Paragraph 13, for example,

16    I mean, these were things I knew as receiver, but

17    actually, the actual pleadings are the best evidence

18    of that.

19    Q.      Fair enough.

20    A.      Paragraph 13.

21    Q.      But you had personal knowledge as receiver of

22    the facts in Paragraph 13, even though the pleadings

23    may be the best evidence of what was in those

24    pleadings?

25    A.      Right. I knew of those pleadings and I knew

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 92 of 662 PageID #: 3686
49
1464

1  that they represented what it says in Paragraph 13.

2  Same on Paragraph 14, and same on Paragraph 15.  I

3  mean, obviously the secretary of state's website is

4  where that information came from.

5  Q.      That's right.  But you --

6  A.      But I knew of that information, yes.

7  Q.      I think you testified earlier that you went

8  and looked that up on the secretary of state's website

9  when you were receiver.

10  A.      I think I did.

11          And the same thing on 16.  That comes from

12  pleadings, but I knew.

13          Now, 17 I did not have personal knowledge of

14  as receiver.

15  Q.      You heard Ms. Burton testify that the basis

16  for the allegation in 17 that appears in some other

17  places in the complaint is the use of 45 Music Square

18  West by Ms. Hagh on pleadings; is that right?

19  A.      That's right.

20  Q.      And you did have personal knowledge of that at

21  the time?

22  A.      That's right.

23  Q.      And you're not aware of any other facts that

24  support Paragraph 17 that were developed in your time

25  as receiver, are you?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 93 of 662 PageID #: 3687
50
1465

1  A.      No.  18, again, it was from the secretary

2  of state's office.  I'm actually not sure that as

3  receiver I knew the date that Manookian, PLLC, was

4  formed.

5  Q.      So you don't have a recollection, when you

6  were serving as receiver, looking up Manookian, PLLC?

7  A.      I don't.  And the same response to Number 19.

8  I'm not sure that I looked into Manookian, PLLC, as

9  receiver.

10  Q.      Any reason why Manookian, PLLC, was not

11  important to you when you were serving as receiver?

12  A.      Because it wasn't holding any funds.  It

13  wasn't making claims to any funds.  And, again, I was

14  just trying to collect a receivable, and it wasn't

15  making a claim to a receivable.  And same answer to

16  20.

17  Q.      Okay.  So those paragraphs with respect to

18  Manookian, PLLC, are not information that you learned

19  or developed as receiver?

20  A.      That's right.

21  Q.      And then I think we've talked about the next

22  section, which is Paragraphs 21 through 24.

23  A.      Yes.  That would all be -- I would have had --

24  again, some of these, I mean, are just reciting things

25  that are in the record, but I would have had knowledge

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 94 of 662 PageID #: 3688

51

1466

1  of all this that was in the record, being 21 through

2  24.

3  Q.      And you were participating in the hearings in

4  that case during that time period?

5  A.      That's right.

6  Q.      Paragraph 25 through 41 is about the

7  Fitzgerald case.  We talked about it a little bit

8  earlier, but is it fair to say that these are facts

9  that you developed or came to learn of in your time as

10  receiver?

11  A.      Let me look through them again.

12  Q.      Sure.

13  A.      It's been a while since I've seen this.  I

14  mean, we looked at it yesterday, but I was not looking

15  at it through this lens.

16          And, again, just to be clear, a lot of these

17  things I learned from documents, from pleadings, from

18  the engagement letter, things like that.  But I knew

19  about those things, if that's the question.  And then,

20  obviously, like Paragraph 28 is actual -- I had

21  personal knowledge of that.

22  Q.      Right.  And, for example, the things you

23  learned about from documents in this section, which

24  could be, you know, Paragraph 27, Paragraph --

25  A.      26.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 95 of 662 PageID #: 3689
52
1467

1   Q.        -- 26, Paragraph 29, those are things you

2   learned from documents in the course and scope of your

3   duties as receiver?

4   A.        That's correct.

5   Q.        Okay.  Otherwise, you'd probably tell me this

6   was work product and you couldn't tell me how you know

7   about this.

8   A.        That's right.  Yeah, that's right.

9             But yes, I had personal knowledge of all those

10  facts.

11  Q.        So that gets us through Paragraph 41.

12  A.        Right.

13  Q.        And then the remainder of the complaint are

14  the claims for relief, correct --

15  A.        Right.

16  Q.        -- and the prayers for relief?

17            You can set that aside.  Thank you.

18            Have you submitted all of your bills for your

19  work as receiver, or are there some invoices that you

20  haven't submitted?

21  A.        I don't know.  I'm not sure.  I think I've

22  submitted them all.

23  Q.        So you think that you've submitted invoices

24  that haven't been paid?

25  A.        I think so.

1  Q.      And when you submit those, do you send those

2  to the court?

3  A.      I file them with the court.

4  Q.      And that's filed in the Williamson County

5  court, circuit court; is that correct?

6  A.      Williamson County Circuit Court.

7  Q.      I get confused because Judge Allen got

8  involved, so I don't know where you file things in

9  that case.

10  A.      You file at the Williamson County Circuit

11  Court.

12  Q.      So as best you know as you sit here today,

13  you've filed all of your invoices for your work as

14  receiver?

15  A.      As best I know, yes.

16  Q.      But you don't think you've been paid on all of

17  those invoices?

18  A.      I think that's right.

19  Q.      At some point, did the Chase parties become

20  responsible for payment of your outstanding fees in

21  the receivership?

22  A.      My understanding is that the Court put down an

23  order that made them responsible.

24  Q.      And did you have any discussions with them

25  about that before the Court put down that order?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 97 of 662 PageID #: 3691

54

1469

1    A.      No.

2    Q.      Is it your understanding that the Chase

3    parties agreed to pay your outstanding fees in the

4    receivership?

5    A.      I saw it for the first time in a motion where

6    they said that they would, and that had something to

7    do with Mark Hammervold, I think.

8    Q.      And no one acting on behalf of the Chase

9    parties had contacted you before that motion was

10   filed?

11   A.      They did not.  That was the first time I

12   learned about it, when I saw it in the motion.

13   Q.      It's rare that you get to receive a copy of

14   the motion and learn that you're going to get paid.

15   A.      I was not surprised by it because that's what

16   Tennessee law says is that the petitioning party is

17   responsible for a receiver's fees to the extent the

18   estate is insufficient.  So it didn't surprise me, but

19   no, I had not had a conversation.

20   Q.      But that was not pursuant to any agreement or

21   negotiation --

22   A.      It was not.

23   Q.      -- as far as you're aware?

24   A.      It was not.

25   Q.      You testified earlier about the meeting

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 98 of 662 PageID #: 3692

55

1470

1   between you and Mr. Manookian at 45 Music Square West.

2   Do you recall that?

3   A.      Yes.

4   Q.      Is it fair to say that that meeting lasted

5   over an hour?

6   A.      I don't remember it being that long.

7   Q.      Would you agree with me that during that

8   meeting, you and Mr. Manookian discussed Cummings

9   Manookian cases?

10  A.      I do think that's right.

11  Q.      Do you recall that he told you, with respect

12  to each Cummings Manookian case, what he expected the

13  attorney's fee would be in that case?

14  A.      I don't know if we went over every case, but

15  we certainly went over some.

16  Q.      So it is fair to say it was a substantive

17  conversation about the pending cases that Cummings

18  Manookian had and the amount that could be expected to

19  be recovered in each case?

20  A.      Again, I'm not sure if we talked about each

21  case, but we had discussions about what he expected

22  out of some of the cases for sure.

23  Q.      And the topic of that discussion was Cummings

24  Manookian's entitlement to fees in those cases which

25  are the same cases that are listed in the adversary

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 99 of 662 PageID #: 3693
56
1471

1  complaint, correct?

2  A.      Yeah.  He expressed his opinion about that,

3  right.

4              MR. SPRAGENS:  I think I'm going to see

5  if Mr. Gabbert has any questions.

6              MR. GABBERT:  No questions.

7              FURTHER DEPONENT SAITH NOT.

8              (Proceedings concluded at 11:31 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    REPORTER'S CERTIFICATE

2

3              I, Sabrina L. Schneider, Notary Public and

4    Licensed Court Reporter, do hereby certify that I

5    recorded to the best of my skill and ability by

6    machine shorthand all the proceedings in the foregoing

7    transcript, and that said transcript is a true,

8    accurate, and complete transcript to the best of my

9    ability.

10             I further certify that I am not an attorney

11   or counsel of any of the parties, nor a relative or

12   employee of any attorney or counsel connected with the

13   action, nor financially interested in the action.

14

15             SIGNED this 4th day of May, 2022

16

17

18   *Sabrina Schneider*
     Sabrina L. Schneider, LCR

19   Notary Public, State of Tennessee
     My Commission Expires: 5/9/2022

20
     Tennessee LCR No. 455

21   Expires: 6/30/2020

22

23

24

25

1          E R R A T A

2

    I, PHILLIP YOUNG, having read the foregoing
3   deposition, Pages 1 through 57, taken April 21, 2022,
    do hereby certify said testimony is a true and
4   accurate transcript, with the following changes (if
    any):

5

    PAGE LINE      SHOULD HAVE BEEN
6

7   _____ _____    _____

8   _____ _____    _____

9   _____ _____    _____

10  _____ _____    _____

11  _____ _____    _____

12  _____ _____    _____

13  _____ _____    _____

14  _____ _____    _____

15  _____ _____    _____

16  _____ _____    _____

17  _____ _____    _____

18  _____ _____    _____

19
                   _____
20                 PHILLIP YOUNG

21

22

23

24  _____
    Notary Public
25  My Commission Expires:_____

**$**

**$750,000** 14:23, 25 29:10 42:20

**1**

**10** 6:15 48:25 49:9

**100** 48:9,16

**11:31** 57:8

**13** 49:15,20,22 50:1

**14** 6:15 50:2

**15** 50:2

**16** 50:11

**17** 50:13,16,24

**18** 51:1

**19** 51:7

**2**

**20** 51:16

**2000** 5:17,18

**2008** 5:18,19 6:1

**2010** 5:19,20

**2014** 5:21

**2018** 18:25 20:25 22:20 25:2 27:23 28:5 30:8 31:15 32:10,21 33:21 34:2 46:8,22

**2019** 9:5,7 10:24 11:7,13 13:6 15:24 17:4,17 18:8 19:21 21:12 25:2,9,19 28:11, 13 29:6 31:14 34:14 39:12 42:3, 8 46:9,22 47:24 48:1

**2020** 17:5

**20th** 11:6,13

**21** 51:22 52:1

**22** 11:13

**24** 51:22 52:2

**25** 52:6

**25th** 13:6

**26** 52:25 53:1

**27** 52:24

**28** 52:20

**29** 53:1

**4**

**41** 48:25 52:6 53:11

**45** 17:21 18:4,8 19:6 35:13 37:2 50:17 56:1

**5**

**5** 9:13

**6**

**6** 9:14 16:9

**7**

**760** 48:14

**7th** 33:20

**A**

**a.m.** 57:8

**A/r** 10:15,16,18

**accessed** 36:10

**accounts** 14:1 39:14

**accurate** 11:19 42:25

**act** 15:15

**acting** 55:8

**action** 10:15 11:18 12:7 22:10, 22 41:13 43:2,4 48:5

**active** 15:21 26:2

**actual** 49:17 52:20

**additional** 30:19

**additionally** 32:3

**advanced** 29:23

**adversary** 10:21 41:7 48:24 56:25

**adverse** 38:22, 23 40:10,21,24

**adversity** 40:17

**affairs** 32:6,11 34:3

**Afsoon** 20:4 22:2 25:12 33:6 37:23

**agree** 30:4 40:7, 20 56:7

**agreed** 14:20 55:3

**agreement** 20:12 24:18,21 55:20

**alert** 44:9,15

**allegation** 50:16

**allegations** 8:11, 21 9:11,23 39:12, 16

**alleged** 40:19

**Allen** 11:4,5 42:5 54:7

**allowable** 27:14

**allowing** 21:24

**amount** 56:18

**and/or** 40:9

**anymore** 32:17 35:2

**Appeals** 42:23

**appears** 50:16

**appoint** 13:12

**appointed** 11:6 12:10 14:22

**appointing** 11:15

**appointment** 12:5,11,18 15:16 38:21

**approximately** 14:23

**April** 13:5

**argument** 29:11 31:8,10,17

**associates** 26:25 27:2

**assume** 5:6 8:1, 6,8 14:6 46:14

**assuming** 6:25

**assumption** 47:15

**assures** 21:20

**attempt** 14:22 31:22

**attempted** 15:17 31:20 38:13

**attempting** 16:13 19:25

**attend** 10:23 15:6

**attorney** 8:3,4 21:13,22 43:20 44:5 47:4

**attorney's** 29:17 30:25 56:13

**attorneys** 16:7 38:14

**August** 5:18,19 21:12

**authenticity** 34:21 35:8

**authority** 10:18

**authorization** 41:3

**award** 14:25

**aware** 21:13 22:18 24:10 26:17,21 29:15 31:14 47:8,10,13 48:15 50:23 55:23

**awareness** 12:13

**B**

**background** 5:14

**bank** 39:14

**bankruptcy** 9:1, 4 10:1,6,9,17,20 12:8 17:5,8,9 20:23 24:5,23 25:5,9 35:11 41:24 42:11 44:13

**based** 29:11

**basis** 31:10 34:17 50:15

**Bass** 5:17,23 6:3, 24 7:4 8:6

**begin** 16:12

**behalf** 16:13,15, 17 21:2,5 22:16 27:22 28:4,9,15, 22,24 29:6 30:12 37:23 47:3,23 48:5 55:8

**belong** 12:8

**belonged** 39:2

**Berry** 5:18,23 6:4 8:6

**bills** 53:18

**Binkley** 15:1

**bit** 5:14 52:7

**bleed** 17:4

**Board** 22:23

**bodily** 45:24

**BPR** 27:4,5

**break** 43:11

**Brian** 22:1 23:15, 23,25 24:7 32:4, 20 33:5

**building** 17:23 26:19

**bunch** 11:11

**Burton** 5:12,22 7:22,24 8:2 16:10 19:1 30:15 39:17 50:15

**Burton's** 28:20

**business** 33:12

___

**C**

**call** 12:17

**called** 5:2 14:18 32:13 43:21,25 44:3,8,15,16

**calling** 44:6 45:17

**Campbell** 5:11, 12 28:25 33:14, 18 34:8 40:11 44:1 45:5,25

**capacity** 47:17

**card** 34:19 35:10, 18 36:2,3,18 37:7,11,14,21

**career** 5:16

**case** 8:12,20,25 9:8,22 10:11 12:2,16,19,23 18:20,21 20:3 21:2,10,14,16 23:8 28:8 29:6 30:10 31:10 32:33 33:3,7 35:24 38:7 43:18 44:8 46:13 48:6,

10,17 49:1 52:4,7 54:9 56:12,13,14, 19,21

**cases** 12:22 13:2 15:20 16:7,8,13, 19,23 17:1,10 24:10 47:11 56:9, 17,22,24,25

**certified** 34:20

**challenge** 43:9

**chambers** 44:3, 6,22,24 45:11,17

**chance** 36:1

**change** 26:22

**Chase** 12:15 16:14 44:18,25 54:19 55:2,8

**Chases** 42:19

**check** 14:7

**children** 7:9

**chose** 43:4

**choses** 10:14 11:17 12:7

**circuit** 11:14 54:5,6,10

**circumstances** 17:20

**claim** 51:15

**claims** 51:13 53:14

**clear** 52:16

**client** 8:10 21:15, 18,21 22:3 29:18 30:1 31:22 32:1 33:10,11 34:15

**client's** 48:15

**clients** 17:14 26:3 47:16

**collect** 10:14,15, 18 13:25 14:22 16:13 29:10,16, 22 38:24 42:21 51:14

**collected** 16:24 17:7 41:3 43:4

**collecting** 11:16 16:19 30:1

**collection** 42:4

**combination** 25:5

**comments** 45:7

**complaint** 8:12, 22 9:14,23 11:13, 22,23 13:4 16:8, 22 20:23 39:17 48:22,24 49:12 50:17 53:13 57:1

**computer** 36:7

**concern** 45:17

**concerns** 43:21

**concluded** 57:8

**conclusion** 38:3,6

**conduct** 40:19

**conference** 18:16 19:12,13, 18

**confident** 48:13

**conflicts** 14:7

**confused** 54:7

**consistent** 32:12,21

**consult** 27:8,12

**consulted** 27:17

**contact** 15:17 35:4 38:16

**contacted** 13:8, 20 14:2 44:21,24 55:9

**contempt** 39:3 40:9

**contend** 47:25

**context** 40:13

**continue** 21:21 22:3 26:2,24

32:17,25 33:6

**continued** 16:25 17:1 21:1,5,15 23:12 28:8 30:12 47:22

**continues** 9:25

**continuing** 10:5 27:22 28:4

**conversation** 36:19,24 37:1,3,4 55:19 56:17

**copies** 17:11,12, 15,22

**copy** 18:24 24:17,20 34:13 48:23 55:13

**corporate** 7:10, 16,24 27:13

**correct** 6:16 7:5, 21 8:12,17 9:10 10:21,24 16:11 24:25 29:23 30:2, 6,10 32:9,13 37:18 38:1,23 39:18,19 41:4 43:5 45:1 46:12, 17 47:5 53:4,14 54:5 57:1

**correspondence** 35:17

**corrupted** 36:7, 8,16

**costs** 29:23

**counsel** 5:9 23:18 30:5 31:2 32:2 43:17

**County** 11:14 15:1 54:4,6,10

**couple** 16:21 30:19

**court** 10:7,11 11:14 12:2,5,10 13:2,12 14:21 15:1 16:15,17 21:7,17,20 22:16, 23 23:1,20 29:9 41:2 42:17,23

43:1 47:11 48:14 54:2,3,5,6,11,22, 25

**Court's** 22:9

**courthouse** 45:9

**courtroom** 44:9 45:12,14,22

**creditor** 44:12,17

**creditor's** 44:10

**creditors** 25:7

**Cummings** 10:13 11:17 14:3, 17 15:3,18,19,21 16:25 17:8,13 20:24 21:3,6 22:1 23:5,11,14,16,17, 25 24:4,7,10,13, 21 25:3,8,11,20 27:22 28:4,9,15, 21,22 29:7,16,22 30:5,9,12,23,24 31:8,12 32:3,4,8, 15,25 33:4,7,10 34:19 37:24 38:22,24 39:2,4, 9,25 40:9,10,19, 21 41:4,5 42:13 46:7,11,21 47:3, 23,25 48:5,9,13, 16 49:8 56:8,12, 17,23

**current** 45:14

___

**D**

**Dan** 12:17,21 44:20

**date** 9:8 41:14,16 42:22 49:7 51:3

**days** 14:14

**dealings** 14:16 24:6

**debtor's** 44:13

**December** 9:5 10:24 18:25 20:25 25:2 27:23 28:5 30:8 31:15

32:10,21 33:20 34:2 39:12 42:2,8 46:8,22

**decide** 16:16

**decision** 6:4,5,6, 17,18,19 7:19

**default** 13:23

**defense** 20:2

**defunct** 13:23

**demand** 9:19

**demonstrate** 35:1

**denies** 22:8

**depo** 33:15

**DEPONENT** 57:7

**deposited** 10:7

**deposition** 5:7

**deputies** 45:22

**deputy** 44:9 45:12,14

**determine** 25:19

**develop** 20:18 27:21,25 28:3,6 35:7 46:20 48:4

**developed** 28:10 47:15,20,21 48:11 49:2,13 50:24 51:19 52:9

**directly** 8:7,8 9:18

**directs** 42:17

**disagree** 40:23

**disbarred** 26:9

**discharged** 29:17 30:5

**discovered** 25:4

**discussed** 56:8

**discussion** 56:23

**discussions** 9:2 54:24 56:21

**dispute** 12:13

**docket** 21:8

**document** 49:4

**documents** 11:11 37:5 52:17, 23 53:2

**door** 18:13,15

**doorbell** 18:12

**doubt** 34:14

**doubted** 34:21

**drew** 38:3,5

**duly** 5:3

**duties** 53:3

___

**E**

**earlier** 46:24 50:7 52:8 55:25

**early** 11:8 25:2

**effective** 32:7

**effectuate** 23:2

**efforts** 21:15

**email** 25:16 36:21 37:16

**emailed** 17:18

**end** 29:13

**ended** 10:3

**engaged** 26:14 27:3 33:12

**engagement** 17:11,13,15 18:22 29:11,14, 15 30:22 31:11, 13 52:18

**ensure** 21:15

**entered** 11:15 12:1 15:1

**entities** 27:13

**entitled** 29:12,22 30:25 31:9 34:1,7 48:9,14,16

**entitlement** 56:24

**entitles** 29:16

**entity** 7:16

**essentially** 12:15 14:20

**estate** 12:8 55:18

**ethical** 6:7,8

**ethics** 27:9

**event** 29:17 30:25

**everyone's** 11:12

**evidence** 40:2 49:17,23

**excuses** 21:17

**exhibit** 33:15 48:23

**existed** 31:15

**expected** 56:12, 18,21

**expecting** 7:3

**expert** 27:9,13, 17

**expressed** 23:20 57:2

**expressing** 43:21

**extent** 8:25 10:16 55:17

___

**F**

**fact** 26:10 33:9 34:3 37:22 38:11 44:9 49:9

**facts** 8:24 49:2,5, 13,22 50:23 52:8 53:10

**factual** 49:1

**fair** 5:7 18:3 43:6 45:24 46:2 49:3, 19 52:8 56:4,16

**fall** 28:11,13

**family** 23:13

**fee** 29:17 48:10, 17 56:13

**fees** 16:13,19 17:7 20:1,4,11, 15,20 30:1,25 41:12 42:14 54:20 55:3,17 56:24

**felt** 48:13

**figure** 21:9

**file** 21:5,7 33:4 36:6,7,15 39:3,8 54:3,8,10

**filed** 9:4 10:9,18, 20,21 13:5,9,16 16:7 20:24 23:6, 10,14,15,17 24:5, 24 25:9 28:20,22 30:12,20 38:22 39:17 40:7 41:8 42:3 54:4,13 55:10

**filing** 10:1 21:2 28:8 33:2 41:23 42:10 45:16 47:22

**filings** 37:23

**fine** 33:19

**firm** 6:14,18,20, 22 7:20 12:14 13:23,24 15:5 21:14 27:2 29:12, 21 32:5 33:11 34:2 46:16 47:1, 7,16

**firm's** 6:4,18 7:15

**firms** 8:5 15:22

**Fitzgerald** 8:25 9:8,22 10:3 18:21 19:25 21:2,10

23:7,12 28:8 29:6 31:9 32:8 33:2 34:1,24 35:5 48:6,10,17 52:7

**Fitzgeralds** 30:4,9,23 33:1 38:10 48:1

**floor** 19:11,15

**form** 7:10,24 26:13 28:25 29:4 34:8 40:11

**formation** 27:13

**formed** 5:19 19:21 26:10 28:17 29:1,8 47:24 48:19 49:8 51:4

**found** 20:2

**front** 11:3 42:5

**fully** 48:11

**functioning** 10:10

**funds** 16:16,24 38:24 39:1 41:3,9 42:5 51:12,13

___

**G**

**Gabbert** 22:13 57:5,6

**Garfinkle** 5:20 6:14,18 7:15,20 8:2

**gave** 17:22 18:19,21 34:13

**generally** 41:1

**give** 5:14

**good** 29:10 31:8, 10,17

**granted** 11:14 22:12

**grants** 22:8

**green** 34:19 35:10,18 36:2,3,

18 37:7,11,14,21

**guess** 9:16 10:4
46:24 47:14

――――――――

**H**

――――――――

**Hagh** 18:1,4,6
19:20,21 20:4,5,
11,15,20 21:1
22:2 25:12,16
27:21 28:3,14,20,
23,24 29:5 33:6
37:23 39:13,21
42:5 46:25 47:8,
17,24 48:5 50:18

**Hagh's** 8:15 29:5

**half** 6:13

**Hammervold**
11:17 15:4,18,22
24:11 41:5 55:7

**Hammervold's**
15:4

**hand** 48:23

**handle** 44:16
45:22

**hanging** 22:6

**happened** 8:21
9:1 16:16 18:10
38:7

**heading** 8:24
9:12,16

**hear** 36:16 43:22

**heard** 14:19
15:11 20:5 36:15
43:20,24 44:2
50:15

**hearing** 10:23
15:6,14 36:9
39:12 43:23 44:8

**hearings** 10:5,8
52:3

**hire** 27:1

**history** 5:16

**hold** 48:8

**holding** 51:12

**hour** 56:5

――――――――

**I**

――――――――

**identified** 8:10

**immediately**
35:8

**impact** 23:11
31:17

**implicated** 45:24

**important** 51:11

**impression**
20:18

**improper** 20:19
40:19

**improperly**
39:13

**inaccurate**
11:24

**indicia** 19:7

**information**
25:8 38:9 50:4,6
51:18

**instructed** 20:3,
10

**insufficient**
55:18

**integrity** 6:8

**intended** 20:13

**interest** 6:22

**interrogatories**
8:15

**interrogatory**
8:14

**interview** 38:13

**invoices** 18:21
53:19,23 54:13,
17

**involved** 10:19
12:15 24:11
32:22 39:12
46:13 54:8

**involvement**
10:2 43:1

**issue** 43:17
45:21,23

**issues** 6:7

――――――――

**J**

――――――――

**January** 5:19

**jobs** 47:7

**John** 5:6

**Judge** 11:3 15:1
42:5 43:15,20
54:7

**judgment** 13:23

**July** 11:9

**June** 11:6,9,13

――――――――

**K**

――――――――

**knew** 15:13
17:24 20:23
23:23 24:12
29:10 45:2 49:7,
16,25 50:6,12
51:3 52:18

**knowledge** 8:11,
19 9:9,21,24,25
11:21,23,25
12:12 30:7 49:2,
6,21 50:13,20
51:25 52:21 53:9

――――――――

**L**

――――――――

**laid** 18:17

**language** 32:6

**large** 13:23

**lasted** 56:4

**late** 11:9

**Lauren** 45:13

**law** 5:15,24 6:9
12:14 13:23,24
15:4 19:7,21

20:4,5,11,16,20
21:13 22:19 23:2
24:11 26:2,14,15,
20,24 27:2,3,22
28:4,15,23,24
32:1,16 33:12
39:21 42:5 47:7,
8,16,17,24 55:16

**Lawrenceburg**
11:3

**lawyer** 20:2
26:12 43:10
44:10,12,19

**learn** 19:20 21:4
24:3 25:1 52:9
55:14

**learned** 19:23
46:18 51:18
52:17,23 53:2
55:12

**leave** 7:19

**led** 37:10

**left** 6:1 7:4 32:4

**legal** 27:9 37:25
40:17

**lens** 52:15

**letter** 18:25 20:25
29:11,14,15 30:8,
14,22 31:5,11,15
32:10,20 33:1,10,
21,22 34:5,6,14,
22,25 35:1,5
37:12,17,20
38:10,11 52:18

**letters** 17:12,13,
16 18:17,22 19:3
31:13 37:16

**license** 22:14
23:2 26:2,8,9,13
32:1

**licensed** 5:17
8:3,4 47:4

**licensure** 5:15

**liens** 16:7

**light** 47:19

**list** 15:20 16:1,6,9
24:9

**listed** 16:8,22
56:25

**lists** 16:2,4,6

**litigant's** 22:10

**litigated** 47:11

**LLC** 7:12 26:14

**logistical** 45:21,
23

**logistically**
44:11 45:3

**long** 56:6

**longer** 10:18
33:11 36:10

**looked** 18:25
21:8 27:16 30:14
50:8 51:8 52:14

**lost** 22:13

**lot** 37:15 43:12
52:16

――――――――

**M**

――――――――

**made** 9:19 37:20
54:23

**mail** 37:16

**make** 7:3,7 17:1
21:14 33:15
40:10,21 45:7

**makes** 40:24

**making** 7:2
51:13,15

**Manookian**
10:13 11:17
12:14 14:3,17
15:2,3,4,18,21
17:13,16,22
18:15 20:1,24,25
21:3,6 22:15,18
23:6,12,14,15,16,
17,23,25 24:1,4,
10,13,21 25:2,3,
8,11,14,20 26:8,
11,19 27:1,23

28:5,9,16,21,22
29:7,16,22 30:5,
9,13,23,24 31:9,
12 32:3,8,15,16,
21,25 33:4,7,10
34:2,13,18,19
36:12,20 37:24
38:23,24 39:2,4,
9,25 40:9,10,20,
21 41:4,5 42:13
43:22 44:6,25
45:8 46:4,8,21
47:3,23,25 48:6,
9,13,16 49:8
51:3,6,8,10,18
56:1,8,9,12,18

**Manookian's**
22:1,2 33:5 56:24

**March** 5:21 19:21
46:9,22 47:24
48:1

**mark** 15:4 48:22
55:7

**Marty** 33:25

**material** 35:23

**materials** 11:22
49:1

**matter** 8:18 10:3
32:2,8 35:2

**matters** 18:23

**Mclemore** 5:20

**meet** 17:19

**meeting** 17:24
18:8,10,20,24
19:4 25:6 35:13
37:7,9 55:25
56:4,8

**Meisner** 20:2,9

**Melissa** 33:25

**member** 8:3,4,7
23:25 24:3,15
25:3,11,13 26:1,
23

**members** 25:20

**membership**
6:22

**memorialized**
39:17

**memory** 11:19

**mentioned**
47:12

**met** 17:21 18:6

**mind** 22:4 34:25

**minute** 29:15

**monetary** 39:20,
24 40:8,24

**money** 9:2 10:6
31:9 39:13

**month** 12:17

**motion** 13:5,9,
11,15,19 15:6,8,
12 21:20 22:7,8
23:7 33:2,4,5
39:3,8 40:8 45:16
55:5,9,12,14

**motions** 38:22
42:3

**moved** 39:13

**movement** 9:2

**Music** 17:21
18:4,8 19:6 35:13
37:2 50:17 56:1

**mutual** 6:5

### N

**name's** 5:6

**named** 15:8,12
24:13

**needed** 13:25
37:11

**negotiation**
55:21

**nondescript**
19:12

**notice** 23:6,10,
14,15,17 31:22

**notices** 18:18

**notwithstanding**
31:25 32:6 33:9

**November** 9:4,6,
7

**Number** 51:7

### O

**Object** 28:25
34:8 40:11

**Objection** 44:1
45:5,25

**obligated** 42:13

**observed** 43:13

**obtain** 35:24

**occurred** 10:9

**office** 20:7 51:2

**offices** 19:14,16

**operate** 26:13

**operating** 24:17,
21 46:7,21 47:1

**opinion** 28:17
29:2,4,8 30:21
31:6 48:2,4,7,8,
11,12 57:2

**opposed** 23:7

**opposing** 43:17

**orally** 35:20
36:22

**order** 11:15 12:1
13:17,18 21:24
22:5,7,11,14
37:11 42:4,17,22,
25 44:10,14 45:3
54:23,25

**outstanding**
10:16 54:20 55:3

### P

**paid** 41:2,9,13,
19,23 42:2,7,18
53:24 54:16
55:14

**paragraph** 11:12
29:20,25 49:9,15,
20,22 50:1,2,24
52:6,20,24 53:1,
11

**paragraphs**
48:25 49:12
51:17,22

**parte** 45:18

**participating**
52:3

**parties** 12:15
16:14 36:23 37:3
44:25 54:19 55:3,
9

**partner** 6:20,25
7:1,2,3,7 24:13
47:1

**party** 12:24 13:22
40:24,25 42:19
43:17 55:16

**pay** 42:13 55:3

**payment** 54:20

**payments** 17:1

**pending** 56:17

**people** 19:19

**percent** 48:9,16

**performed** 29:6

**period** 16:20
30:19 46:8,22
52:4

**permissible**
27:10

**person** 17:19
37:2 43:16 45:8,
13,15 46:5

**personal** 8:10,19
9:9,21,25 11:22,
25 49:6,21 50:13,
20 52:21 53:9

**personally**
26:15 47:13

**petitioning**
42:19 55:16

**Phillip** 5:1 11:15

**phone** 43:16

**place** 18:14

**places** 50:17

**planning** 33:16

**PLC** 7:17 11:17
26:10

**pleadings** 9:18
21:2,5 28:7,8,20,
23 30:11,20 40:2,
4,5 47:3 49:17,
22,24,25 50:12,
18 52:17

**PLLC** 7:12,13,17,
25 24:15 26:1,11,
23 27:14,16 51:3,
6,8,10,18

**point** 14:12 15:19
16:12,25 19:20
20:6,8,22 22:19
24:6,20 27:20,21
28:3 37:15 38:22
43:3 45:16 54:19

**posing** 45:8 46:5

**post** 17:8

**potential** 45:4

**practice** 6:8,11
7:11 19:7 22:19
26:14,15,24 27:3,
22 28:4 32:16

**practiced** 5:17,
20

**practicing** 26:20
28:15 33:12

**prayers** 53:16

**pre** 17:9

**pre-petition**
41:20

**predates** 41:23

**prepared** 26:7

**presence** 43:16

**pretty** 18:11

**previous** 14:16

**previously** 12:20

**principal** 33:9

**principals** 40:20, 22

**prior** 9:1 20:22

**pro** 21:18

**problem** 45:4

**proceed** 21:18

**proceeding** 10:21 41:8 48:24

**proceedings** 57:8

**process** 14:8 19:25 32:5,11

**produce** 34:18, 19

**product** 53:6

**professional** 22:24 26:14

**prohibited** 26:18

**proof** 37:17

**proposed** 15:11, 14 22:11,14

**protection** 44:10,14 45:3

**pull** 20:7

**purported** 20:25

**purposes** 11:16 24:15

**pursuant** 55:20

**Puryear** 12:17,21 13:9,20 14:18 32:12,22 44:20, 21

**put** 54:22,25

——————

**Q**

——————

**question** 17:6 25:14,16 28:1,5 30:24 34:5 40:14

47:18 48:24 52:19

**questions** 57:5,6

——————

**R**

——————

**raised** 6:7

**rang** 18:12

**range** 41:16

**rare** 55:13

**reached** 24:9

**reading** 30:22

**reason** 7:6 25:22 34:21 51:10

**reasonable** 29:16

**reasons** 23:19

**recall** 7:15 13:11, 14,15,17,18 15:13,17 16:3,18 19:17,23,24 35:20 36:9,12 39:11,20,24 41:17,18 56:2,11

**receivable** 51:14,15

**receivables** 14:1 41:6

**receive** 18:24 34:6 35:1 55:13

**received** 12:17 19:3 34:4,24 35:5 38:11

**receiver** 9:19 10:11,13,20 11:1, 6,16 12:4,10,16, 19,23 13:1,12,13 14:21 15:16 17:9, 15 18:4 25:25 28:15,18,19 29:4 31:2,4,6,8,25 32:13 33:8 34:11 35:2,4,12 38:1, 19,21 39:6,9,13 41:4 42:21 46:18, 20 48:3,4,8,20

49:3,6,14,16,21 50:9,14,25 51:3, 6,9,11,19 52:10 53:3,19 54:14

**receiver's** 55:17

**receivership** 8:22,23 9:11,13, 17 10:12,14,15 11:15 12:2 13:5 24:8 39:5 41:10, 13,19,23,25 42:14 43:3 54:21 55:4

**receiverships** 42:18

**receiving** 35:8 38:10

**recently** 32:4

**recess** 43:13

**reciting** 51:24

**recollection** 14:10 37:6 41:22, 25 51:5

**record** 33:18 38:6 49:11 51:25 52:1

**recover** 39:1

**recovered** 56:19

**referring** 44:17

**regard** 32:24

**related** 8:22 18:21

**relationship** 21:1

**Relevance** 44:1 45:5,25

**relevant** 25:24 35:25

**relief** 53:14,16

**rely** 34:1,7

**remainder** 53:13

**remember** 7:18 14:13,15 15:11 16:18,23 18:12

19:16 21:11 35:12,16 36:4,5, 21,22,25 37:8,13 39:7,10,23 40:3, 13 56:6

**remit** 20:3,10

**reports** 41:10 42:1

**represent** 11:12 13:4 23:12 26:2 33:1,11 38:14 47:16

**representation** 29:21 30:17 34:1, 7

**representatives** 44:13

**represented** 5:9 20:1 21:16,21 47:25 50:1

**representing** 12:24 13:22 22:3 33:6 44:12

**required** 32:2,3

**resolved** 22:7

**respect** 6:3,24 9:7,22 11:11,21 51:17 56:11

**responded** 14:11

**response** 51:7

**responses** 8:15

**Responsibility** 22:24

**responsible** 54:20,23 55:17

**restraining** 42:4

**result** 22:9

**reviewed** 26:18

**reviewing** 13:15, 17,18 49:4,11

**risk** 45:8 46:5

**role** 25:25 28:19 49:14

**room** 18:16 19:12,13,18 43:22

**rules** 5:7

**run** 14:7 27:2

——————

**S**

——————

**safety** 45:24

**SAITH** 57:7

**sanctions** 14:25 39:8,20,24 40:8, 24

**sat** 18:16

**scanned** 36:8

**school** 5:24

**scope** 53:2

**search** 35:23

**secretary** 20:6 25:7 50:3,8 51:1

**section** 8:23 9:23 51:22 52:23

**secure** 19:25

**seek** 24:17,20

**seeking** 38:24 39:1,3,8,20,24 40:8,23 42:4,21

**seeks** 21:14

**send** 54:1

**sending** 20:15 33:1

**sense** 40:17

**separate** 6:17 8:23

**separation** 6:3

**September** 17:17 18:8 21:12

**serve** 12:19 14:21

**served** 12:23 13:1

**server** 36:9

**serving** 32:13 35:12 38:19 39:6 51:6,11

**set** 53:17

**settle** 17:2

**settlement** 20:12

**share** 26:7 28:19

**shed** 47:19

**show** 11:10 41:11 42:1

**showed** 18:11

**signed** 31:11,13 32:20

**significance** 22:4

**signing** 47:3

**silent** 30:24

**Sims** 5:18,23 6:4

**sit** 54:12

**slightly** 16:3

**small** 7:9

**sole** 23:25 24:3 25:3 26:23

**solo** 6:11 7:10 8:2

**sort** 29:13 42:4

**sound** 9:14 13:6

**sounds** 11:8 13:7

**space** 45:1

**speak** 8:7,8

**specifically** 13:12

**spoken** 43:15

**Spragens** 5:5,6 22:17 29:3 33:14, 16,20,24 34:10 40:15 43:11,14 44:4 45:6 46:3

57:4

**Square** 17:21 18:5,8 19:6 35:13 37:2 50:17 56:1

**stand** 40:4

**start** 23:16 47:16

**started** 46:16

**starting** 48:1

**starts** 9:13

**state** 10:7,11 12:2 13:2 25:7 43:1

**state's** 20:7 50:3, 8 51:2

**stated** 28:21,23

**statement** 32:1, 10

**status** 7:16

**statute** 27:15,16, 18

**steps** 25:19 27:5, 8,12

**stick** 7:6

**stop** 28:15

**straight** 5:24 19:17

**subject** 8:18

**submit** 22:11,14 54:1

**submitted** 13:18 20:20 22:16 53:18,20,22,23

**subsequent** 30:11

**substance** 13:21 39:11

**substantive** 56:16

**substitution** 23:18

**successfully** 16:19

**sufficient** 34:25

**suggest** 20:14

**sum** 13:21

**summer** 15:23 28:10 31:14

**support** 50:24

**supported** 38:6

**suppose** 12:6

**Supreme** 22:16, 23

**surprise** 55:18

**surprised** 55:15

**suspended** 22:19 26:8,11,13, 23 32:16

**suspension** 18:19 23:2 26:18 31:25

**suspicion** 35:7

**sworn** 5:3 8:14

_____

**T**

**talk** 29:14 40:16

**talked** 16:9 45:11 51:21 52:7 56:20

**talking** 33:23 43:8

**talks** 29:20

**tasked** 29:9

**telephone** 25:17

**telling** 33:10 36:12

**tells** 30:9

**temporary** 18:19 42:3

**Tennessee** 22:15,23 42:23 55:16

**terminate** 21:1

**terminated**

12:11,12

**terminating** 12:1

**terms** 5:15 6:8 26:17

**testified** 5:3 46:24 50:7 55:25

**testifies** 34:24

**testify** 50:15

**theory** 47:20,21

**thing** 44:7 50:11

**things** 8:21,25 9:2,17,20 18:18 25:5 43:8 47:22 49:16 51:24 52:17,18,19,22 53:1 54:8

**thinking** 18:14

**Thompson** 5:9, 12,21 7:22,24 8:2

**thought** 11:8 21:23 31:7 45:3 46:25

**time** 5:22 6:9 7:4 9:25 10:5,10,17 11:12 14:2,17,20 15:10,13 16:20 18:3,7 20:5,18, 21,22 21:10 23:24 24:12,18 25:24 34:13 36:17 37:17 41:7, 9,12,20 46:14,21, 25 48:21 50:21, 24 52:4,9 55:5,11

**times** 8:1 37:15

**today** 11:11,20 12:4 27:2 54:12

**told** 7:1 14:3 25:6 31:7 32:12,22 36:6 45:2 56:11

**topic** 56:23

**topics** 8:19

**transition** 30:19

**trial** 23:1

**trustee** 17:6,7 24:22 25:6 31:3

**typical** 10:12

_____

**U**

**U.S.** 37:16

**Uh-huh** 49:10

**ultimately** 16:16

**unaware** 31:12

**understand** 37:11 40:16 47:14

**understandable** 23:22

**understanding** 10:24 22:22 54:22 55:2

**uneventful** 18:11

**unpaid** 42:14,18

**unrepresented** 23:21

**untoward** 20:15, 19

**unusual** 20:15 21:19,23,25 30:18,21

**upstairs** 18:16

**usual** 14:7

_____

**V**

**vacated** 42:21, 22,25

**view** 23:5,11 25:10 26:1,5,7, 12,22 27:1,18,19, 21,25 28:3,6,10, 14,20 30:18 31:24 33:8,25 34:11 37:25 46:20 48:15,19

## W

**Walker** 43:16,20

**website** 20:7
50:3,8

**weeks** 14:14
24:8

**West** 17:21 18:5,
8 19:6 35:14 37:2
50:18 56:1

**Williamson**
11:14 15:1 54:4,
6,10

**winding** 32:5,11,
15,19,24 34:3

**withdraw** 21:14,
20 23:7 30:17
31:23 32:2,4
33:5,6

**withdrawal**
18:25 19:3 21:24
22:1,2,5 23:6,10
31:15,20,23 32:7
33:2

**withdrawing**
30:10 34:3

**withdrawn** 46:15

**withdraws** 29:21
31:1

**words** 35:9

**work** 29:5 41:16,
18,22 42:2,8
44:11 53:6,19
54:13

**worked** 12:21

**working** 7:8
28:21,23

**wound** 13:24
14:3

**writing** 35:21

**wrong** 10:25
18:14

## Y

**year** 6:13 49:7

**years** 6:12

**yesterday** 16:9
19:1 30:15 33:17,
19 52:14

**you-all** 37:1,2

**Young** 5:1,6,20
11:16 43:15

United States Bankruptcy Court

Middle District of Tennessee

Burton,

     Plaintiff

Adv. Proc. No. 20-90002-CMW

Hagh Law PLLC,

     Defendant

# CERTIFICATE OF NOTICE

| District/off: 0650-3 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: May 25, 2022 | Form ID: pdf001 | Total Noticed: 5 |

The following symbols are used throughout this certificate:

**Symbol**    **Definition**

+    Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on May 27, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| dft | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Hagh Law PLLC, c/o Afsoon Hagh, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Manookian PLLC, c/o Brian Manookian, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |

TOTAL: 3

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| ust | | Email/Text: ustpregion08.na.ecf@usdoj.gov | May 25 2022 23:19:00 | US TRUSTEE, OFFICE OF THE UNITED STATES TRUSTEE, 701 BROADWAY STE 318, NASHVILLE, TN 37203-3966 |
| pla | + | Email/Text: jeanne.burton@comcast.net | May 25 2022 23:19:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 2

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: May 27, 2022        Signature:     /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on May 25, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com bankr@bassberry.com;delores.walker@bassberry.com |

GLENN BENTON ROSE

on behalf of Defendant Hagh Law PLLC grose@bassberry.com bankr@bassberry.com

JOHN T. SPRAGENS

on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM spragenslaw@ecf.courtdrive.com

PHILLIP G YOUNG

on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com


TOTAL: 4

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 5/25/2022



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## EXPEDITED ORDER ON MOTION TO SET TELEPHONIC HEARING ON DEFENDANTS' UNOPPOSED MOTION TO CONTINUE THIRD PARTY DEPOSITIONS AND RESET CERTAIN OTHER DEADLINES

Upon the Motion to Set Telephonic Hearing on the Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Other Deadlines ("Motion"), and for good cause shown, the Court hereby schedules a telephonic hearing on the Motion for  May 25 , 2022 at  1:00  p .m.  The Zoom Call-In Number is 833-568-8864. The Meeting ID is 160 8635 7633.

THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.

Submitted for entry by:

/s/ Craig V. Gabbert, Jr.
Craig V. Gabbert, Jr. (BPR 004702)
Glenn B. Rose (BPR 010598)
Bass, Berry & Sims PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
cgabbert@bassberry.com
grose@bassberry.com

*Attorneys for Afsoon Hagh and*
*Hagh Law, PLLC*

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC*

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

United States Bankruptcy Court
Middle District of Tennessee

Burton,
    Plaintiff

Adv. Proc. No. 20-90002-CMW

Hagh Law PLLC,
    Defendant

# CERTIFICATE OF NOTICE

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on May 27, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| aty | + | CRAIG VERNON GABBERT, JR, BASS, BERRY & SIMS PLC, 150 THIRD AVENUE SOUTH, SUITE 2800, NASHVILLE, TN 37201-2017 |
| aty | + | GLENN BENTON ROSE, BASS, BERRY & SIMS PLC, 150 THIRD AVENUE SOUTH, SUITE 2800, NASHVILLE, TN 37201-2017 |
| aty | + | JOHN T. SPRAGENS, SPRAGENS LAW PLC, 311 22ND AVE N, NASHVILLE, TN 37203-1843 |
| aty | + | PHILLIP G YOUNG, Thompson Burton PLLC, One Franklin Park, 6100 Tower Circle, Suite 200, FRANKLIN, TN 37067-1465 |
| dft | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Hagh Law PLLC, c/o Afsoon Hagh, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Manookian PLLC, c/o Brian Manookian, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |

TOTAL: 7

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| pla | + | Email/Text: jeanne.burton@comcast.net | May 25 2022 23:19:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: May 27, 2022     Signature:     /s/Gustava Winters

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on May 25, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | |

on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com  bankr@bassberry.com;delores.walker@bassberry.com

GLENN BENTON ROSE

on behalf of Defendant Hagh Law PLLC grose@bassberry.com  bankr@bassberry.com

JOHN T. SPRAGENS

on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM  spragenslaw@ecf.courtdrive.com

PHILLIP G YOUNG

on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com

TOTAL: 4

# UNITED STATES BANKRUPTCY COURT

## MIDDLE DISTRICT OF TENNESSEE

701 Broadway Room 170
Nashville, TN 37203

Adversary Proceeding No.: 3:20−ap−90002
Related Bankruptcy Proceeding No.: 3:19−bk−07235

Judge: Charles M Walker

In Re:

Plaintiff/Movant : Jeanne Ann Burton

vs

Defendant/Respondent : Hagh Law PLLC

## ORDER

ORDER by Judge Walker : With regard to docket entry # 168, The Submitted Order located at Dkt. #168 will not be entered by the Court as the related motion at Dkt. #168 is DENIED. The Courts previous order entered March 28, 2022 at Dkt. #143 paragraph 9 renders the motion as unnecessary and therefore, is moot. (RE: related document(s) 168) (leq)

Dated: 5/25/22

/s/ Charles M Walker
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235** |
|  | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| Debtor. | **Adv. Proc. No. 3:20-ap-90002** |
| **JEANNE ANN BURTON, TRUSTEE** |  |
| Plaintiff, |  |
| **v.** |  |
| **HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,** |  |
| Defendants. |  |

## NOTICE OF DEPOSITION OF JUDGE CHARLES M. WALKER

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7030, Manookian PLLC, by and through the undersigned counsel, respectfully gives notices that it will take the deposition of Judge Charles M. Walker on June 15, beginning at 10:00 a.m. Central time at 701 Broadway, Suite 260 Nashville, TN 37203. The deposition will be taken before a person authorized by law to administer oaths and will continue from day-to-day until the examination is complete. The depositions will be recorded by any means authorized by Fed. R. Civ. P. 30(b)(3), pursuant to Fed. Fed. R. Bankr. P. 7030, including audiovisually and stenographically.

The topics to be addressed are all non-privileged, relevant information; including, but not limited to, (1) Judge Walker and his staff's communications about this matter with third parties outside of court proceedings and (2) Judge Walker and his staff's investigation into this matter, the parties, or witnesses outside of the Court record.

Date: May 31, 2022                           Respectfully submitted,


                                             */s/ John Spragens*
                                             John Spragens (TN Bar No. 31445)
                                             Spragens Law PLC
                                             311 22nd Ave. N.
                                             Nashville, TN 37203
                                             T: (615) 983-8900
                                             F: (615) 682-8533
                                             john@spragenslaw.com

                                             *Attorney for Manookian PLLC and*
                                             *Brian Manookian*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed May 31, 2022 and served electronically via upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.


                                             */s/ John Spragens*

2

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 6/1/2022



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN RE:                                   )
                                         ) Case No: 3:19-bk-07235
    Cummings Manookian, PLLC,     ) Chapter 7
                                         ) Honorable Charles M. Walker
        Debtor.                   )
_____)
                                         )
    Jeanne Ann Burton, Trustee,   )
                                         )
        Plaintiff,                )
                                         )
    v.                            ) Adv. Proc: 3:20-ap-90002
                                         )
    Hagh Law, PLLC; Afsoon Hagh;  )
    AND Manookian, PLLC,          )
                                         )
        Defendants.               )
_____)

**ORDER QUASHING NOTICE OF DEPOSITION**

THIS MATTER is before the Court regarding the Notice of Deposition ("Notice") of

Judge Charles M. Walker (Dkt. #177). For the following reasons, and under the noted authority,

the Notice is hereby quashed and thereby, unenforceable.

In a legal proceeding, a request for testimony from personnel of the federal judiciary is

governed by those regulations as set forth in Volume 20, Chapter 8 of the Guide to Judiciary

Policy ("Guide")[1] as established by the Director of the Administrative Office of United States

Courts. *U.S. v. Galvez*, 2019 WL 3927443, at *1 (S.D. Ohio Aug. 20, 2019). Federal judicial

---

[1] Guide to Judiciary Policy, available at https://jnet.ao.dcn/policy-guidance/guide-judiciary-policy/volume-20-administrative-claims-and-litigation/ch-8-testimony-and-production-records

1

personnel may not provide testimony of the type requested in the Notice of Deposition except as authorized by the provisions of the Guide. See *Guide at* § 820(a)[2].

The Guide is persuasive authority as it codifies the policies promulgated by the Director of the Administrative Office and "approved by the Judicial Conference of the United States." *In re Sony BMG Music Entm't*, 564 F.3d 1, 7 (1st Cir. 2009); see *also Kitzmiller v. Dover Area Sch. Dist.*, 388 F. Supp. 2d 484, 486-87 (M.D. Pa. 2005). It provides the "official medium by which direction as to courtroom procedures and other information are provided to the Federal Judiciary in support of its day-to-day operations." *In re Sony*, 564 F.3d at 7 (quoting *Kitzmiller*, 388 F. Supp. at 486-87). *Mackin v. Om Sai Corp*, 2021 WL 5937589, at *1 (D.N.M. Dec. 16, 2021).

The Notice requests testimony from Judge Charles M. Walker. Accordingly, the Guide controls in consideration of the request contained in the Notice.  According to § 810.30 of the Guide, the following definitions apply:

 "Information and records" is defined as follows:

 All information, records, documents, or materials of any kind, however stored, that are in the custody or control of the federal judiciary or were acquired by federal judicial personnel in the performance of their official duties or because of their official status.

"Judicial personnel" is defined as:

All present and former officers and employees of the federal judiciary and any other individuals who are or have been appointed by, or subject to the supervision, jurisdiction, or control of, the federal judiciary, including individuals hired through contractual agreements by or on behalf of the federal judiciary, or performing services under such agreements for the federal judiciary, such as consultants, contractors, subcontractors, and their employees and personnel. This phrase also includes alternative dispute resolution neutrals or mediators, special masters, individuals who have served and are serving on any advisory committee or in any advisory capacity, and any similar personnel performing services for the federal judiciary.

---

[2] Any reference to Section refers to a provision of the Guide unless otherwise noted.

"Legal Proceedings" means:

All pretrial, trial, and post-trial stages of all existing or anticipated judicial or administrative actions, hearings, investigations, cases, controversies, or similar proceedings, including grand jury proceedings, before courts, agencies, commissions, boards or other tribunals, foreign and domestic, or all legislative proceedings pending before any state or local body or agency, other than those specified in § 810.40(b).

"Request" is defined as:

An order, subpoena, or other demand of a court, or administrative or other authority, of competent jurisdiction, under color of law, or any other request by whatever method, for the production, disclosure, or release of information or records by the federal judiciary, or for the appearance and testimony of federal judicial personnel as witnesses as to matters arising out of the performance of their official duties, in legal proceedings. This definition includes requests for voluntary production or testimony in the absence of any legal process.

And "testimony" means:

Any written or oral statement in any form by a witness arising out of the performance of the witness' official duties, including personal appearances and statements in court or at a hearing or trial, depositions, answers to interrogatories, affidavits, declarations, interviews, telephonic, televised, or videotaped remarks, or any other response during discovery or similar proceedings that would involve more than production of documents.

Judicial personnel may not provide testimony in legal proceedings without the prior approval of a "determining officer." See *Guide* at § 840(a). In relevant part, the Guide provides the definition of "determining officer" as follows:

(b) The determining officer authorized to make determinations under these regulations will be as follows:
(1) In the case of a request directed to a federal court of appeals judge, district judge, Court of International Trade judge, Court of Federal Claims judge, bankruptcy judge, or magistrate judge, or directed to a current or former member of such a judge's personal staff (such as a judge's secretary, law clerk), the determining officer will be the federal court of appeals judge, district judge, Court of International Trade judge, Court of Federal Claims judge, bankruptcy judge, or magistrate judge himself or herself.

*Guide* at 840(b)(1).

3

The request as directed in the Notice is subject to the approval of the judge – in this case, Judge Charles M. Walker – as the determining officer.

The determining officer is authorized to determine whether the federal judicial personnel may be deposed, as well as whether federal judicial records may be produced, and "what, if any conditions will be imposed upon such interview, contact, testimony, or production of records." *Guide* at § 850(a). The determining officer may also deny a request if the request does not meet any requirement imposed by these regulations. *Guide* at § 850(a).

Section 850(a) requires the determining officer to consider the following factors when deciding the effect in the case, as well as future cases generally, which testifying or producing records will have on the ability of the federal judiciary or federal judicial personnel to perform their official duties. These factors are:

1. The need to avoid spending the resources of the United States for private purposes, to conserve the time of federal judicial personnel for the performance of official duties, and to minimize the federal judiciary's involvement in issues unrelated to its mission.

2. Whether the testimony or production of records would assist the federal judiciary in the performance of official duties.

3. Whether the testimony or production of records is necessary to prevent the perpetration of fraud or injustice in the case or matter in question.

4. Whether the request is unduly burdensome or is inappropriate under applicable court or administrative rules.

5. Whether the testimony or production of records is appropriate or necessary under the rules of procedure governing the case or matter in which the request arises, or under the relevant substantive law of privilege.

4

6.  Whether the request is within the proper authority of the party making it.

7.  Whether the request meets the requirements of these regulations.

8.  Whether the request was properly served under applicable court, administrative, or other rules.

9.  Whether the testimony or production of records would violate a statute, regulation, or ethical rule.

10. Whether the testimony or production of records would disclose information regarding the exercise of judicial or quasi-judicial responsibilities by federal judicial personnel in the decisional or deliberative process.

11. Whether the testimony or production of records would disclose confidential information from or pertaining to a presentence investigation report or pertaining to an individual's probation, parole, or supervised release, or would disclose any other information that is confidential under any applicable statute or regulation.

12. Whether the testimony or production of records reasonably could be expected to result in the appearance of the federal judiciary favoring one litigant over another or endorsing or supporting a position advocated by a litigant.

13. Whether the request seeks testimony, records or documents available from other sources.

14. Whether the request seeks testimony of federal judicial personnel as expert witnesses.

15. Whether the request seeks personnel files, records or documents pertaining to a current or former federal judicial officer or employee, and

    (A) the personnel files, records or documents sought by the request may be obtained

    from the current or former federal judicial officer or employee in question, or

5

(B) the personnel files, records or documents sought by the request would be made available to the requester with the written consent or authorization of the current or former federal judicial officer or employee in question.

16. Any other consideration that the determining officer designated in § 840(b) may consider germane to the decision.

As to the first consideration, the Court finds that the Notice serves no purpose other than to waste the resources of the United States for private purposes, and act to expend time of federal judicial personnel better used in the performance of official duties. Moreover, such involvement of the federal judiciary in issues unrelated to its mission serves no party and is a misuse of the resources available in order to avail oneself of the justice provided by the bankruptcy system.

Secondly, the Notice requests testimony that serves no purpose and has no relation to the merits of the case. Thirdly, the party seeking the testimony under the Notice – Manookian, PLLC - has alleged no specific instance of fraud or injustice. The request is inappropriate as the request for testimony from the sitting judge serves no purpose other than to taint the proceedings before the Court. The request is not appropriate or necessary under the rules of procedure or under substantive laws of privilege and is not within the proper authority of the party making the request.

Moreover, the Court, as determining officer, will not permit the testimony as requested because the Notice was not issued in accordance with the requirements established in the Guide. The Notice did not set forth, or contain an affidavit setting forth, an explanation of the nature of the testimony sought, the relevance of the testimony sought to the legal proceedings, and the reasons why the testimony sought, or the information contained therein, are not readily available from other sources or by other means. *Guide* at § 830(a). *U.S. v. Robinson*, 2018 WL 6322146, at *2 (S.D. Ohio Dec. 4, 2018). Furthermore, § 830(b) requires that the request be "provided to the

6

federal judicial personnel from whom testimony or production of records is sought at least fifteen (15) working days in advance of the time by which the testimony or production or records is to be required. Failure to meet this requirement will provide a sufficient basis for denial of the request." *Guide* at § 830(b). The request was not properly served under any applicable rules and such testimony would violate ethical rules as promulgated by the Judicial Conference and the Administrative Office of United States Courts. *Id*.

The request for testimony of the judge sitting on the case is sought in order to contaminate the exercise of judicial and quasi-judicial responsibilities by federal judicial personnel.

The eleventh factor is not applicable to these proceedings. For the twelfth and thirteenth factors, deposing the judge on a case is a manipulation of the judicial system in an effort to taint the proceedings. There is no expectation that any such testimony would serve any legitimate purpose.

The fourteenth and fifteenth factors are not applicable. As to the last factor, any other consideration that may be germane to the decision of this determining officer, it is important to note that the request to depose Judge Walker was made by a party that has made no specific accusation of bias linked to any ruling in the case. Moreover, two years after its inception, the case is merely at the discovery stage. No dispositive rulings have been issued. The request to depose the sitting judge has no basis in law or fact. Honoring such request would only serve to obstruct the justice administered through the bankruptcy system.

If, after considering the factors and the other requirements set forth in the Guide, the determining officer decides that the judicial personnel should not comply with the request, the judicial personnel should notify the requester of the Guide's procedures and respectfully decline to comply with the request. *Guide* at § 850(b). As the determining officer, having considered all

7

compulsory factors and other requirements set forth in the Guide, and after such deliberate consideration, it is my determination that, for the reasons stated above, the Notice is quashed and this Order serves as notice pursuant to the Guide at § 850(b).

Therefore, the Notice is hereby quashed as inappropriate and unenforceable pursuant to the findings made above and the requirements of the Guide.

*THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS
INDICATED AT THE TOP OF THE FIRST PAGE*

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

8

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
|     Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON | ) | |
| HAGH; MANOOKIAN, PLLC; and | ) | |
| FIRST-CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
|     Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## REVISED NOTICE OF DEPOSITION OF RONETTE MCCARTHY

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7030 Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff in this action, respectfully gives notice that she will take the deposition of Ronette McCarthy, on June 8, 2022, beginning at 10:00 a.m. Central time via Zoom Video Conference. A link to the conference will be sent to counsel for all parties and to the witness; any other party wishing to participate in the deposition should contact undersigned counsel. The deposition will be recorded by stenographic and/or videographic means. The topics to be addressed in the deposition are any nonprivileged matters relevant to any party's claims or defenses, pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure made applicable to this matter by Rule 7026 of the Federal Rules of Bankruptcy Procedure. The Trustee anticipates addressing the following topics:

- Ms. McCarthy's knowledge of the *Fitzgerald* case, including her knowledge of the participation of each of the defendants and of the Debtor in that matter

Dated: June 2, 2022

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:    615.465.6008
Fax:    615.807.3048
Email: phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee

**Certificate of Service**

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF on all parties having made an appearance herein.

This 2nd day of June, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON | ) | |
| HAGH; MANOOKIAN, PLLC; and | ) | |
| FIRST-CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## <u>REVISED NOTICE OF DEPOSITION OF BRIAN CUMMINGS</u>

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7030 Jeanne Ann

Burton, Chapter 7 Trustee and Plaintiff in this action, respectfully gives notice that she will

take the deposition of Brian Cummings, on June 9, 2022, beginning at 1:00 p.m. Central

time via Zoom Video Conference.  A link to the conference will be sent to counsel for all

parties and to the witness; any other party wishing to participate in the deposition should

contact undersigned counsel.  The deposition will be recorded by stenographic and/or

videographic means.  The topics to be addressed in the deposition are any nonprivileged

matters relevant to any party's claims or defenses, pursuant to Rule 26(b)(1) of the Federal

Rules of Civil Procedure made applicable to this matter by Rule 7026 of the Federal Rules

of Bankruptcy Procedure.  The Trustee anticipates addressing the following topics:

- The founding of the Debtor and its business operations; and

- Mr. Cummings' involvement in the *Shoemaker* case and his knowledge of the involvement of each of the defendants in the *Shoemaker* matter.

Dated: June 3, 2022

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:    615.465.6008
Fax:    615.807.3048
Email:  phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF on all parties having made an appearance herein.

This 3rd day of June, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

2

Burton,

    Plaintiff                                                          Adv. Proc. No. 20-90002-CMW

Hagh Law PLLC,

    Defendant

# CERTIFICATE OF NOTICE

| District/off: 0650-3 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Jun 02, 2022 | Form ID: pdf001 | Total Noticed: 5 |

The following symbols are used throughout this certificate:

**Symbol**     **Definition**

+                Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jun 04, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| dft | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Hagh Law PLLC, c/o Afsoon Hagh, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Manookian PLLC, c/o Brian Manookian, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |

TOTAL: 3

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**

Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| ust | | Email/Text: ustpregion08.na.ecf@usdoj.gov | | |
| | | | Jun 02 2022 23:31:00 | US TRUSTEE, OFFICE OF THE UNITED STATES TRUSTEE, 701 BROADWAY STE 318, NASHVILLE, TN 37203-3966 |
| pla | + | Email/Text: jeanne.burton@comcast.net | | |
| | | | Jun 02 2022 23:31:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 2

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jun 04, 2022                Signature:       /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on June 1, 2022 at the address(es) listed below:**

**Name**                **Email Address**

CRAIG VERNON GABBERT, JR

                    on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com  bankr@bassberry.com;delores.walker@bassberry.com

GLENN BENTON ROSE

on behalf of Defendant Hagh Law PLLC grose@bassberry.com  bankr@bassberry.com

JOHN T. SPRAGENS

on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM  spragenslaw@ecf.courtdrive.com

PHILLIP G YOUNG

on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com


TOTAL: 4

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 6/1/2022



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) Case No: 3:19-bk-07235 |
| Cummings Manookian, PLLC, | ) Chapter 7 |
| | ) Honorable Charles M. Walker |
| Debtor. | ) |
| —————————————————— | ) |
| | ) |
| Jeanne Ann Burton, Trustee, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc: 3:20-ap-90002 |
| | ) |
| Hagh Law, PLLC; Afsoon Hagh; | ) |
| AND Manookian, PLLC, | ) |
| | ) |
| Defendants. | ) |
| —————————————————— | ) |

**ORDER QUASHING NOTICE OF DEPOSITION**

THIS MATTER is before the Court regarding the Notice of Deposition ("Notice") of

Judge Charles M. Walker (Dkt. #177). For the following reasons, and under the noted authority,

the Notice is hereby quashed and thereby, unenforceable.

In a legal proceeding, a request for testimony from personnel of the federal judiciary is

governed by those regulations as set forth in Volume 20, Chapter 8 of the Guide to Judiciary

Policy ("Guide")[1] as established by the Director of the Administrative Office of United States

Courts. *U.S. v. Galvez*, 2019 WL 3927443, at *1 (S.D. Ohio Aug. 20, 2019). Federal judicial

---

[1] Guide to Judiciary Policy, available at https://jnet.ao.dcn/policy-guidance/guide-judiciary-policy/volume-20-administrative-claims-and-litigation/ch-8-testimony-and-production-records

1

personnel may not provide testimony of the type requested in the Notice of Deposition except as authorized by the provisions of the Guide. See *Guide at* § 820(a)[2].

The Guide is persuasive authority as it codifies the policies promulgated by the Director of the Administrative Office and "approved by the Judicial Conference of the United States." *In re Sony BMG Music Entm't*, 564 F.3d 1, 7 (1st Cir. 2009); see *also Kitzmiller v. Dover Area Sch. Dist.*, 388 F. Supp. 2d 484, 486-87 (M.D. Pa. 2005). It provides the "official medium by which direction as to courtroom procedures and other information are provided to the Federal Judiciary in support of its day-to-day operations." *In re Sony*, 564 F.3d at 7 (quoting *Kitzmiller*, 388 F. Supp. at 486-87). *Mackin v. Om Sai Corp*, 2021 WL 5937589, at *1 (D.N.M. Dec. 16, 2021).

The Notice requests testimony from Judge Charles M. Walker. Accordingly, the Guide controls in consideration of the request contained in the Notice. According to § 810.30 of the Guide, the following definitions apply:

"Information and records" is defined as follows:

All information, records, documents, or materials of any kind, however stored, that are in the custody or control of the federal judiciary or were acquired by federal judicial personnel in the performance of their official duties or because of their official status.

"Judicial personnel" is defined as:

All present and former officers and employees of the federal judiciary and any other individuals who are or have been appointed by, or subject to the supervision, jurisdiction, or control of, the federal judiciary, including individuals hired through contractual agreements by or on behalf of the federal judiciary, or performing services under such agreements for the federal judiciary, such as consultants, contractors, subcontractors, and their employees and personnel. This phrase also includes alternative dispute resolution neutrals or mediators, special masters, individuals who have served and are serving on any advisory committee or in any advisory capacity, and any similar personnel performing services for the federal judiciary.

---

[2] Any reference to Section refers to a provision of the Guide unless otherwise noted.

2

"Legal Proceedings" means:

All pretrial, trial, and post-trial stages of all existing or anticipated judicial or administrative actions, hearings, investigations, cases, controversies, or similar proceedings, including grand jury proceedings, before courts, agencies, commissions, boards or other tribunals, foreign and domestic, or all legislative proceedings pending before any state or local body or agency, other than those specified in § 810.40(b).

"Request" is defined as:

An order, subpoena, or other demand of a court, or administrative or other authority, of competent jurisdiction, under color of law, or any other request by whatever method, for the production, disclosure, or release of information or records by the federal judiciary, or for the appearance and testimony of federal judicial personnel as witnesses as to matters arising out of the performance of their official duties, in legal proceedings. This definition includes requests for voluntary production or testimony in the absence of any legal process.

And "testimony" means:

Any written or oral statement in any form by a witness arising out of the performance of the witness' official duties, including personal appearances and statements in court or at a hearing or trial, depositions, answers to interrogatories, affidavits, declarations, interviews, telephonic, televised, or videotaped remarks, or any other response during discovery or similar proceedings that would involve more than production of documents.

Judicial personnel may not provide testimony in legal proceedings without the prior approval of a "determining officer." See *Guide* at § 840(a). In relevant part, the Guide provides the definition of "determining officer" as follows:

(b) The determining officer authorized to make determinations under these regulations will be as follows:
(1) In the case of a request directed to a federal court of appeals judge, district judge, Court of International Trade judge, Court of Federal Claims judge, bankruptcy judge, or magistrate judge, or directed to a current or former member of such a judge's personal staff (such as a judge's secretary, law clerk), the determining officer will be the federal court of appeals judge, district judge, Court of International Trade judge, Court of Federal Claims judge, bankruptcy judge, or magistrate judge himself or herself.

*Guide* at 840(b)(1).

3

The request as directed in the Notice is subject to the approval of the judge – in this case, Judge Charles M. Walker – as the determining officer.

The determining officer is authorized to determine whether the federal judicial personnel may be deposed, as well as whether federal judicial records may be produced, and "what, if any conditions will be imposed upon such interview, contact, testimony, or production of records." *Guide* at § 850(a). The determining officer may also deny a request if the request does not meet any requirement imposed by these regulations. *Guide* at § 850(a).

Section 850(a) requires the determining officer to consider the following factors when deciding the effect in the case, as well as future cases generally, which testifying or producing records will have on the ability of the federal judiciary or federal judicial personnel to perform their official duties. These factors are:

1. The need to avoid spending the resources of the United States for private purposes, to conserve the time of federal judicial personnel for the performance of official duties, and to minimize the federal judiciary's involvement in issues unrelated to its mission.

2. Whether the testimony or production of records would assist the federal judiciary in the performance of official duties.

3. Whether the testimony or production of records is necessary to prevent the perpetration of fraud or injustice in the case or matter in question.

4. Whether the request is unduly burdensome or is inappropriate under applicable court or administrative rules.

5. Whether the testimony or production of records is appropriate or necessary under the rules of procedure governing the case or matter in which the request arises, or under the relevant substantive law of privilege.

4

6. Whether the request is within the proper authority of the party making it.

7. Whether the request meets the requirements of these regulations.

8. Whether the request was properly served under applicable court, administrative, or other rules.

9. Whether the testimony or production of records would violate a statute, regulation, or ethical rule.

10. Whether the testimony or production of records would disclose information regarding the exercise of judicial or quasi-judicial responsibilities by federal judicial personnel in the decisional or deliberative process.

11. Whether the testimony or production of records would disclose confidential information from or pertaining to a presentence investigation report or pertaining to an individual's probation, parole, or supervised release, or would disclose any other information that is confidential under any applicable statute or regulation.

12. Whether the testimony or production of records reasonably could be expected to result in the appearance of the federal judiciary favoring one litigant over another or endorsing or supporting a position advocated by a litigant.

13. Whether the request seeks testimony, records or documents available from other sources.

14. Whether the request seeks testimony of federal judicial personnel as expert witnesses.

15. Whether the request seeks personnel files, records or documents pertaining to a current or former federal judicial officer or employee, and

      (A) the personnel files, records or documents sought by the request may be obtained from the current or former federal judicial officer or employee in question, or

5

(B) the personnel files, records or documents sought by the request would be made

available to the requester with the written consent or authorization of the current or

former federal judicial officer or employee in question.

16. Any other consideration that the determining officer designated in § 840(b) may consider

germane to the decision.

As to the first consideration, the Court finds that the Notice serves no purpose other than

to waste the resources of the United States for private purposes, and act to expend time of federal

judicial personnel better used in the performance of official duties. Moreover, such involvement

of the federal judiciary in issues unrelated to its mission serves no party and is a misuse of the

resources available in order to avail oneself of the justice provided by the bankruptcy system.

Secondly, the Notice requests testimony that serves no purpose and has no relation to the

merits of the case. Thirdly, the party seeking the testimony under the Notice – Manookian, PLLC

- has alleged no specific instance of fraud or injustice. The request is inappropriate as the request

for testimony from the sitting judge serves no purpose other than to taint the proceedings before

the Court. The request is not appropriate or necessary under the rules of procedure or under

substantive laws of privilege and is not within the proper authority of the party making the request.

Moreover, the Court, as determining officer, will not permit the testimony as requested

because the Notice was not issued in accordance with the requirements established in the Guide.

The Notice did not set forth, or contain an affidavit setting forth, an explanation of the nature of

the testimony sought, the relevance of the testimony sought to the legal proceedings, and the

reasons why the testimony sought, or the information contained therein, are not readily available

from other sources or by other means. *Guide* at § 830(a). *U.S. v. Robinson*, 2018 WL 6322146, at

*2 (S.D. Ohio Dec. 4, 2018). Furthermore, § 830(b) requires that the request be "provided to the

6

federal judicial personnel from whom testimony or production of records is sought at least fifteen (15) working days in advance of the time by which the testimony or production or records is to be required. Failure to meet this requirement will provide a sufficient basis for denial of the request." *Guide* at § 830(b). The request was not properly served under any applicable rules and such testimony would violate ethical rules as promulgated by the Judicial Conference and the Administrative Office of United States Courts. *Id*.

The request for testimony of the judge sitting on the case is sought in order to contaminate the exercise of judicial and quasi-judicial responsibilities by federal judicial personnel.

The eleventh factor is not applicable to these proceedings. For the twelfth and thirteenth factors, deposing the judge on a case is a manipulation of the judicial system in an effort to taint the proceedings. There is no expectation that any such testimony would serve any legitimate purpose.

The fourteenth and fifteenth factors are not applicable. As to the last factor, any other consideration that may be germane to the decision of this determining officer, it is important to note that the request to depose Judge Walker was made by a party that has made no specific accusation of bias linked to any ruling in the case. Moreover, two years after its inception, the case is merely at the discovery stage. No dispositive rulings have been issued. The request to depose the sitting judge has no basis in law or fact. Honoring such request would only serve to obstruct the justice administered through the bankruptcy system.

If, after considering the factors and the other requirements set forth in the Guide, the determining officer decides that the judicial personnel should not comply with the request, the judicial personnel should notify the requester of the Guide's procedures and respectfully decline to comply with the request. *Guide* at § 850(b). As the determining officer, having considered all

7

compulsory factors and other requirements set forth in the Guide, and after such deliberate

consideration, it is my determination that, for the reasons stated above, the Notice is quashed and

this Order serves as notice pursuant to the Guide at § 850(b).

Therefore, the Notice is hereby quashed as inappropriate and unenforceable pursuant to the

findings made above and the requirements of the Guide.

***THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS
INDICATED AT THE TOP OF THE FIRST PAGE***

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the 8
first page.
United States Bankruptcy Court.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON | ) | |
| HAGH; MANOOKIAN, PLLC; and | ) | |
| FIRST-CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## <u>AMENDED NOTICE OF DEPOSITION OF MARTY FITZGERALD</u>

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7030 Jeanne Ann

Burton, Chapter 7 Trustee and Plaintiff in this action, respectfully gives notice that she will

take the deposition of Marty Fitzgerald, on June 24, 2022, beginning at 10:00 a.m. Central

time via Zoom Video Conference. A link to the conference will be sent to counsel for all

parties and to the witness; any other party wishing to participate in the deposition should

contact undersigned counsel. The deposition will be recorded by stenographic and/or

videographic means. The topics to be addressed in the deposition are any nonprivileged

matters relevant to any party's claims or defenses, pursuant to Rule 26(b)(1) of the Federal

Rules of Civil Procedure made applicable to this matter by Rule 7026 of the Federal Rules

of Bankruptcy Procedure. The Trustee anticipates addressing the following topics:

- The representation of Mr. Fitzgerald by the Debtor and by each of the Defendants

- Mr. Fitzgerald's written and oral communications with the Debtor and each of the Defendants

Dated: June 6, 2022

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:    615.465.6008
Fax:    615.807.3048
Email: phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton, Trustee

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF on all parties having made an appearance herein.

This 6th day of June, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

# UNITED STATES BANKRUPTCY COURT

_____ Middle _____ District of _____ Tennessee _____

In re Cummings Manookian, PLLC
_____
Debtor

*(Complete if issued in an adversary proceeding)*

Jeanne Ann Burton, Trustee
_____
Plaintiff

v.

Hagh Law. PLLC et al.
_____
Defendant

Case No. 3:19-bk-07235

Chapter 7

Adv. Proc. No. 3:20-ap-90002

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Marty Fitzgerald
_____

*(Name of person to whom the subpoena is directed)*

☒ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: *See Attachment A*

| PLACE | DATE AND TIME |
|---|---|
| Via Zoom - Instruction to be emailed to marty.fitzgerald17@gmail.com | 06/24/22    10:00 am |

The deposition will be recorded by this method: Stenographic and videographic means, including Zoom recording

☐ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 6/6/22

CLERK OF COURT

OR

_____          /s/ Phillip G. Young, Jr.
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Jeanne Ann Burton, Trustee , who issues or requests this subpoena, are:
Philip Young, 6100 Tower Circle, Suite 200, Franklin, TN 37067, phillip@thompsonburton.com, (615) 465-6008

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☑ I served the subpoena by delivering a copy to the named person as follows: Marty Fitzgerald; 8158 Golf Club Road;
Mount Pleasant, TN 38474   via personal service at 4:53 PM.
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ 40.00 _____ .

My fees are $ ___ 40.00 ___ for travel and $ _____ for services, for a total of $ ___ 40.00 ___ .

I declare under penalty of perjury that this information is true and correct.

Date: 6/7/2022

_____
Tom A. Clark
*Server's signature*

Tim A. Clark, Server
*Printed name and title*

**Expedite**
5009 Stillwood Drive
Nashville, TN 37220
615-881-0001
*Server's address*

Additional information concerning attempted service, etc.:
Fee check previously tendered

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>**CUMMINGS MANOOKIAN, PLLC**<br><br>　　　Debtor.<br><br>**JEANNE ANN BURTON, TRUSTEE**<br><br>　　　Plaintiff,<br><br>v.<br><br>**HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,**<br><br>　　　Defendants. | Case No, 3:19-bk-07235<br>Chapter 7<br>Judge Walker<br><br>Adv. Proc. No. 3:20-ap-90002 |

## BRIAN MANOOKIAN AND MANOOKIAN PLLC'S
## NOTICE OF APPEAL AND STATEMENT OF ELECTION

Manookian PLLC and Brian Manookian, through counsel, gives notice of his appeal from the Bankruptcy Court's June 1, 2022 Order (Doc 178). In furtherance of the same, Mr. Manookian states as follows.

**Part 1: Identity of Appellant**

1.　　　The names of the appellants are Brian Manookian and Manookian, PLLC. Mr. Manookian is the sole owner and member of the Debtor, Cummings Manookian, PLLC as well as the sole owner and member of Adversary Proceeding Defendant, Manookian, PLLC.

1

**Part 2: Subject of the Appeal**

2.     Mr. Manookian appeals from the Court's Order Quashing Notice of Deposition (Doc. 178).  The Order was entered on June 1, 2021.

**Part 3: Parties to the Appeal**

3.     The names of the Parties to the Order appealed from as well as the contact information for their attorneys are:

    a.  Debtor Cummings Manookian,
        Jay R. Lefkovitz
        Lefkovitz & Lefkovitz, PLLC
        312 East Broad Street, Suite A
        Cookeville, TN 38501
        (931) 528-5297 (T)
        931-526-6244 (F)
        JLefkovitz@lefkovitz.com

    b.  Trustee Jeanne Anne Burton
        Phillip Young
        One Franklin Park
        6100 Tower Circle, Suite 200
        Franklin, TN 37067
        (615) 465-6008 (T)
        phillip@thompsonburton.com

    c.  Creditor Grant, Konvalinka & Harrison, P.C.,
        John P. Konvalinka
        Grant, Konvalinka & Harrison, P.C.
        633 Chestnut Street Suite 900 Republic Centre
        Chattanooga, TN  37450-0900
        (423) 756-8400 (T)
        (423) 756-6518 (F)
        jkonvalinka@gkhpc.com

    d.  Creditor D.F. Chase, Inc.
        Daniel Puryear
        Puryear Law Group
        104 Woodmont Boulevard, Suite 201
        Nashville, TN 37205
        (615) 255-4859 (T)
        (615) 630-6602 (F)
        dpuryear@puryearlawgroup.com

2

**Part 4: Election to have appeal heard by District Court**

     4.     Mr. Manookian elects to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

Date:  June 14, 2022               Respectfully submitted,

                                   */s/ John Spragens*
                                   John Spragens (TN Bar No. 31445)
                                   Spragens Law PLC
                                   311 22nd Ave. N.
                                   Nashville, TN 37203
                                   T: (615) 983-8900
                                   F: (615) 682-8533
                                   john@spragenslaw.com

                                   *Attorney for Manookian PLLC and Brian Manookian*

**CERTIFICATE OF SERVICE**

     The undersigned hereby certifies that the foregoing was filed June 14, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

                                   */s/ John Spragens*

# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE:

CUMMINGS MANOOKIAN, PLLC

      Debtor.

Case No. 3:19-bk-07235

_____

JEANNE ANN BURTON

      Plaintiff,

v.

HAGH LAW, PLLC,
AFSOON HAGH,
MANOOKIAN PLLC

      Defendants.

Adversary Case No. 20-ap-90002

_____

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2022, the Notice of Appeal, document 184 on the record of the above case, was served by first class mail postage prepaid (or hand delivered as indicated below) to the following recipients:

      **Debtor Cummings Manookian,**
      **Jay R. Lefkovitz**
      **Lefkovitz & Lefkovitz, PLLC**
      312 East Broad Street, Suite A
      Cookeville, TN 38501

      **Trustee Jeanne Anne Burton**
      **Phillip Young**
      One Franklin Park
      6100 Tower Circle, Suite 200
      Franklin, TN 37067

      **Creditor Grant, Konvalinka & Harrison P.C.**
      **John P. Konvalinka**
      **Grant, Konvalinka & Harrison, P.C.**
      633 Chestnut Street, Suite 900 Republic Centre
      Chattanooga, TN 37450-0900

      **Creditor D.F. Chase. Inc.**
      **Daniel Puryear**
      **Puryear Law Group**
      104 Woodmont Boulevard, Suite 201

Nashville, TN 37205

**John Spragens**
**Spragens Law PLC**
311 22nd Ave. N.
Nashville, TN 37203

**MEGAN SELIBER**
U.S. TRUSTEE
701 Broadway, Room 318
Nashville, TN  37203
(HAND DELIVERED)

Dated: June 24, 2022                    /s/ Teresa C. Azan, Clerk of Court

LQ

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **IN RE:** | **Case No. 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| Debtor. | |
| | **Adv. Proc. No. 3:20-ap-90002** |
| **JEANNE ANN BURTON, TRUSTEE** | |
| Plaintiff, | |
| **v.** | |
| **HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,** | |
| Defendants. | |

**DEFENDANTS AFSOON HAGH, HAGH LAW, PLLC, AND
MANOOKIAN PLLC'S JOINT MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Fed. R. Civ. P. 56, Afsoon Hagh, Hagh Law, PLLC, and Manookian

PLLC move for summary judgment on all claims in this matter.

## I.     INTRODUCTION

This is an ill-advised, factually unsupported, and legally baseless adversary

proceeding initiated by a Trustee who now admits her lawsuit was filed "under a time

crunch" and without the slightest shred of investigation.[1]

---

[1] *See, e.g.,* Deposition of Trustee Jeanne Ann Burton, Page 91:2-8, 71:1-7; 72:10-13;
107:13-108:1 (conceding, for example, that the Trustee has reviewed a single pleading in

1

Case 3:23-cv-00961     Document 6-2     Filed 10/04/23     Page 151 of 662 PageID #: 3745

1523

Jeanne Ann Burton is the Trustee for Cummings Manookian PLLC ("Cummings Manookian" or "CM"). Following her appointment as such, Ms. Burton immediately filed this adversary proceeding against two law firms and one lawyer alleging all manner of scandalous and improper conduct, including fraud and conversion, but did so in entirely skeletal, vague, and non-specific terms.

The crux of the Trustee's Complaint is her belief that these Defendants should pay Cummings Manookian, a short-lived and now-defunct law firm, attorney's fees in two cases where Cummings Manookian abruptly withdrew from representation and specifically disclaimed any right to such fees. Ms. Burton also makes serial, non-specific allegations that these Defendants have misappropriated or otherwise improperly utilized property she claims belongs to Cummings Manookian.

The Trustee's claims are, and have always been, baseless both factually and legally. Ms. Burton was forced to admit the same, at length, during her deposition. The Defendants have nevertheless been required to endure two and a half years of expensive litigation to confirm what they already knew: the Trustee's claims were made up out of whole cloth. For all of the following reasons, the Adversary Defendants are entitled to summary judgment on each of the counts contained in the Trustee's complaint.

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of "summary judgment procedure is to

---

a case with over 723 pleadings, but for which the Trustee has alleged entitlement to attorney's fees for work performed.)

pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee's note. A genuine issue of material fact exists only where a reasonably jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Mere allegations of a factual dispute between the parties will not suffice to defeat a properly supported summary judgment motion. *Id.*

Moreover, "[t]he party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). The moving party satisfies this burden "by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." *Id.* (citation and internal quotation marks omitted).

When the moving party meets this burden, the party that opposes the motion must come forth with sufficient proof to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986). In ruling on a motion for summary judgment, the court must review the facts and reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   STATEMENT OF FACTS

### A. Cummings Manookian

Cummings Manookian is a now-defunct law firm that was formed as a professional limited liability company.[2]   It was comprised of two members—Brian Cummings and Brian Manookian—and it specialized in representing Plaintiffs in medical malpractice actions.[3]   The firm primarily accepted cases on a contingency fee basis whereby Cummings Manookian would only be paid if it recovered money for its client.[4]

As part of its operations, Cummings Manookian entered into written engagement agreements with its clients that laid out the duties and rights of both parties to the contract.[5]  Those contracts took a standard form and generally did not vary from cases to case ("the CM Engagement Agreement").[6]

Representations by Cummings Manookian did not always proceed to completion of a case, and the CM Engagement Agreement included terms laying out the parties' rights in the event that the client terminated Cummings Manookian, as well as for instances where Cummings Manookian withdrew from the engagement.[7]   In the event that the client fired Cummings Manookian, the firm would be contractually entitled to its expenses as well as a portion of any ultimate attorney's fee.[8]  In cases where Cummings Manookian withdrew, the firm would only be entitled to recover its advanced costs, and the client would not be required to pay Cummings Manookian an attorney's fee.[9]

---

[2] Joint Statement of Undisputed Material Facts, ¶ 1.
[3] *Id.* at ¶ 2-3.
[4] *Id.* at ¶ 4.
[5] *Id.* at ¶ 5.
[6] *Id.* at ¶ 6.
[7] *Id.* at ¶ 7.
[8] *Id.* at ¶ 8.
[9] *Id.* at ¶ 9.

4

The firm was relatively short-lived. It was founded in 2015.[10] Brian Cummings withdrew from the firm in September of 2018.[11] Brian Manookian was suspended from the practice of law in December of the same year.[12] By January 1, 2019, Cummings Manookian had no employees and no members or partners with an active license to practice law.[13]

## B. The Fitzgerald Case

On May 23, 2018, Cummings Manookian entered into an engagement agreement to represent Marty and Melissa Fitzgerald in an action against a truck driver who struck their daughter causing her death ("the Fitzgerald Engagement Agreement").[14] The agreement was signed by Brian Manookian who had the authority to enter into the contract on behalf of Cummings Manookian.[15]

The Fitzgerald Engagement Agreement was drafted by Cummings Manookian and it bound the firm, as well as Marty and Melissa Fitzgerald, to its terms.[16] Importantly for purposes of this adversary proceeding, the contract stated that if the Fitzgeralds terminated Cummings Manookian, the firm would be entitled to a portion of any recovered settlement in the form of an attorney's fee.[17] Conversely, if Cummings Manookian withdrew from the representation, it would only be entitled to repayment of advanced expenses.[18]

---

[10] Deposition of Trustee Jeanne Anne Burton, Page 20:12-15.
[11] Joint Statement of Undisputed Material Facts, ¶ 10.
[12] *Id.* at ¶ 11.
[13] *Id.* at ¶ 12.
[14] *Id.* at ¶ 13; Fitzgerald Engagement Agreement, **Exhibit 2.**
[15] Joint Statement of Undisputed Material Facts, ¶ 15-16.
[16] *Id.* at ¶ 17-18.
[17] *Id.* at ¶ 20.
[18] *Id.* at ¶ 21-22.

5

On December 7, 2018, Brian Manookian wrote to the Fitzgeralds advising them that as a result of his recent suspension he and Cummings Manookian were required to withdraw from the representation (Brian Cummings had left the firm by that time).[19]  Mr. Manookian requested that the Fitzgeralds obtain another attorney or firm to represent them, and confirmed that because the firm was withdrawing it would not be entitled to any portion of an attorney's fee in the matter.[20]  The letter itself stated that Cummings Manookian expressly and specifically disclaimed any attorney's fee arising out of the Fitzgerald lawsuit.[21]

Thus, on December 7, 2021, Cummings Manookian withdrew from its representation prior to obtaining any recovery for the Fitzgeralds, and the firm acknowledged the contractual provision barring it from receiving an attorney's fee.[22]  The Trustee herself has conceded as much under oath and in response to Requests for Admission.[23]

### C. The Shoemaker Case

On April 19, 2017, Cummings Manookian entered into an engagement agreement to represent Brett Keefer, as next of kin and administrator to Chesta Shoemaker's estate, in a medical malpractice action arising out of Ms. Shoemaker's death at Vanderbilt University Medical Center ("the Shoemaker Engagement Agreement").[24]  The Shoemaker

---

[19] *Id*. at ¶ 23-28; Fitzgerald Withdrawal Letter, **Exhibit 3**.
[20] Joint Statement of Undisputed Material Facts, ¶ 29, 32.
[21] *Id*. at ¶ 33-34.
[22] *Id*. at ¶ 30-31.
[23] *Id*. at ¶ 32-34.
[24] *Id*. at ¶ 35-36; Shoemaker Engagement Agreement, **Exhibit 1**.

Engagement Agreement was drafted by Cummings Manookian and it bound both the firm and Mr. Keefer to its terms.[25]

In identical language as the Fitzgerald Agreement, the contract with Mr. Keefer provided for the repayment of costs and division of attorney's fees in the event that the relationship ended prior to the conclusion of the lawsuit.[26] In the event that Brett Keefer terminated Cummings Manookian, the firm would be entitled to an attorney's fee in addition to its advanced expenses.[27] If Cummings Manookian withdrew, on the other hand, it would only receive back the money it had paid to prosecute the matter with no additional payment in the form of an attorney's fee.[28]

Cummings Manookian withdrew from representing Mr. Keefer before the lawsuit was filed as a result of Mr. Cummings' departure from the firm and Mr. Manookian's suspension from the practice of law.[29] Indeed, the Complaint in the matter was ultimately filed by Mr. Cummings' successor firm, Cummings Law, on February 11, 2019.[30] By that time, Cummings Manookian had no members or partners who were permitted to practice law, and it had no employees.[31]

As a result, Cummings Manookian never advanced a penny in furtherance of the matter such that it would be entitled to repayment.[32] Likewise, no attorney ever entered an appearance in the Shoemaker case on behalf of Cummings Manookian;[33] no attorney

---

[25] Joint Statement of Undisputed Material Facts, ¶ 37-38.
[26] *Id.* at ¶ 40-41; Shoemaker Engagement Agreement, **Exhibit 1**.
[27] Joint Statement of Undisputed Material Facts, ¶ 40.
[28] *Id.* at ¶ 41, 43.
[29] *Id.* at ¶ 44, 48-51.
[30] *Id.* at ¶ 48, 51.
[31] *Id.* at ¶ 49-50.
[32] *Id.* at ¶ 42.
[33] *Id.* at ¶ 52.

ever signed a pleading in the Shoemaker case on behalf of Cummings Manookian;[34] and no attorney did any work in the Shoemaker case on behalf of Cummings Manookian.[35]

The Shoemaker case ultimately settled years later in 2021.[36]  Cummings Manookian had no role in litigating the matter or negotiating the settlement.[37]  To the contrary, the lawsuit was filed in 2019 and Cummings Manookian never again corresponded or communicated with the client, Brett Keefer, after 2018.[38]

### D. Cummings Manookian's General Property Claims Asserted by the Trustee

The Trustee has made a number of allegations in which she variously asserts that Cummings Manookian owned client files, causes of action, furnishings, equipment, or property of other kinds.[39]  The Trustee has likewise alleged that the Defendants used, utilized, or took improper control over that property.[40]  The Trustee has additionally accused the Defendants of tortiously interfering with Cummings Manookian's business relationships.[41]

In the cases where Cummings Manookian represented clients it did not own the client file, and it did not own cause of action.[42]  Cummings Manookian never owned any

---

[34] *Id.* at ¶ 53.
[35] *Id.* at ¶ 54.
[36] *Id.* at ¶ 55.
[37] *Id.* at ¶ 44, 48-51; 56.
[38] *Id.* at ¶ 57.
[39] *See, e.g.*, Complaint, at ¶ 43.
[40] *See, e.g.*, Complaint, at ¶ 47.
[41] *See, e.g.*, Complaint, at ¶ 59.
[42] *Id.* at ¶ 58.

real property, and it did not own the office property at 45 Music Square West where it operated for a period of time.[43]

### i. Manookian PLLC

Defendant Manookian PLLC has never received any property of any kind belonging to Cummings Manookian, and Cummings Manookian has never transferred any property of any kind to Manookian PLLC.[44] Likewise, Manookian PLLC has never caused Cummings Manookian to make or incur a transfer of property of any kind.[45]

Manookian PLLC has never caused any person or entity to terminate any contract or business relationship with Cummings Manookian.[46] Manookian PLLC is not and has never been in possession, custody, or control of any property belonging to Cummings Manookian.[47] Manookian PLLC does not and has never owed a debt that is property of Cummings Manookian.[48] Finally, Manookian PLLC has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.[49]

### ii. Afsoon Hagh and Hagh Law PLLC

Neither Afsoon Hagh or Hagh Law ("the Hagh Parties") has ever received any property of any kind belonging to Cummings Manookian.[50] Cummings Manookian has

---

[43] *Id.* at ¶ 59.
[44] *Id.* at ¶ 60-61.
[45] *Id.* at ¶ 62.
[46] *Id.* at ¶ 63.
[47] *Id.* at ¶ 64.
[48] *Id.* at ¶ 65.
[49] *Id.* at ¶ 66.
[50] *Id.* at ¶ 67.

never transferred any property of any kind to the Hagh Parties.[51]  The Hagh Parties have never caused Cummings Manookian to make or incur a transfer of property of any kind.[52]

The Hagh Parties are not and have never been in possession, custody, or control of any property belonging to Cummings Manookian.[53]  The Hagh Parties do not and have never owed a debt that is property of Cummings Manookian.[54]  Hagh Law has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.[55]

## IV.   ARGUMENT

### A. Cummings Manookian is not entitled to any portion of the Fitzgerald Fee and certainly not from these Defendants.  Defendants are entitled to summary judgment on any such claims.

The undisputed material facts establish that Cummings Manookian entered into a contract with the Fitzgeralds that laid out the rights and responsibilities of the parties in the event that the relationship ended prior to the conclusion of a lawsuit.  The contract provided that the relationship was terminated by the Fitzgeralds, Cummings Manookian would be entitled to some portion of an attorney's fee in addition to repayment of advanced expenses.  Conversely, if Cummings Manookian were to withdraw from the representation, the law firm would only receive back the money it had paid to prosecute the case without any further payment of an attorney's fee.

The Fitzgeralds did not terminate Cummings Manookian.  Rather, Cummings Manookian withdrew from the representation prior to its conclusion and without securing

---

[51] *Id.* at ¶ 68.
[52] *Id.* at ¶ 70.
[53] *Id.* at ¶ 71.
[54] *Id.* at ¶ 72.
[55] *Id.* at ¶ 73.

any recovery for its clients. This fact is not subject to interpretation. Mr. Manookian, on behalf of Cummings Manookian, wrote the Fitzgeralds on December 7, 2018 advising them that he and Cummings Manookian, specifically, were withdrawing from the representation. He expressly and unambiguously disclaimed any payment of an attorney's fee to Cummings Manookian, and he advised the Fitzgeralds they would need to obtain another lawyer and law firm to represent them. The Trustee concedes all of these facts, and, moreover, she concedes Mr. Manookian had the authority to speak on behalf of Cummings Manookian as its sole remaining member.

Cummings Manookian's withdrawal alone is dispositive as to its attempt to steal away an attorney's fee in that case. Mr. Manookian's December 7, 2018 letter waiving and disclaiming any fee – nearly a year prior to Cummings Manookian's petition for bankruptcy – is doubly so.

The undisputed material facts confirm that Cummings Manookian is not entitled to any attorney's fee from the Fitzgeralds under the very terms of the contract the firm itself drafted. But the Trustee's claims are even more baseless as applied to these Defendants. The Adversary Defendants have no contract with Cummings Manookian, and there is simply no cognizable theory of recovery consistent with the undisputed facts of this matter that would allow Cummings Manookian to recover an attorney's fee from them where Cummings Manookian is prohibited contractually from recovering one from the Fitzgeralds. Stated alternatively, if Cummings Manookian sought to actually pursue an attorney's fee arising out its work for the Fitzgeralds, it should have done so by suing the Fitzgeralds—not these Defendants, who have no colorable obligation to Cummings Manookian.

11

Cummings Manookian drafted and entered into a contract that by its own terms does not provide an attorney's fee where the law firm withdraws. Cummings Manookian then withdrew and announced, in writing, its waiver and disclaimer of any attorney's fee. The Trustee's attempt now, years later, to recover monies to which she is not entitled and which were expressly disclaimed is frivolous in the extreme—and, frankly, sanctionable. *See* Fed. R. Civ. P. 11(b) & (c). There is no genuine issue of disputed material fact on this topic. Defendants are entitled to summary judgment as to any and all of Trustee's claims seeking any portion of the Fitzgerald recovery.

### B. Cummings Manookian is not entitled to any portion of the Shoemaker Fee, and certainly not from these Defendants. Defendants are entitled to summary judgment on any such claims.

The same undisputed facts preclude Cummings Manookian from receiving any portion of the Shoemaker recovery. The law firm entered into an engagement agreement, which it drafted, that specifically lays out the division of expenses and attorney's fees in the event that the relationship did not endure to the conclusion of the action. That contract expressly provides that where the client terminates Cummings Manookian, the firm would be entitled to an attorney's fee in addition to repayment of its expenses. If Cummings Manookian were to withdraw, however, it would only receive repayment of the money it advanced to prosecute the case. Once again, Cummings Manookian withdrew from the representation.

The undisputed facts highlight the egregiousness of the Trustee's claims with respect to the Shoemaker claim. *By the time the lawsuit was filed, Cummings Manookian no longer had any members or partners who could practice law, and it had no employees.* Indeed, Cummings Manookian had fully stopped communicating with the

client months prior to the initiation of the suit, and it never again corresponded with the client during the years the matter was being litigated.

Without belaboring the point, Cummings Manookian is not entitled to a fee from the client, and, therefore, cannot be entitled to a fee from these Defendants who have no obligation, contractual or otherwise, to that firm. Again, if Cummings Manookian believed it had any specter of a claim to an attorney's fee arising out of the Shoemaker case, that claim is properly directed toward the party with which it contracted: the client. The undisputed facts demonstrate that Cummings Manookian is not entitled to any portion of a fee in that case, under the very terms it drafted, and certainly not from these Defendants. The Court should grant summary judgment to the Adversary Defendants as to any recovery by the Plaintiff from the Shoemaker recovery.

### C. Defendants are entitled to summary judgment on the Trustee's Claims of Conversion.

To prevail on a claim of conversion, the Plaintiff must prove "[1] the appropriation of another's property to one's own use and benefit, [2] by the intentional exercise of dominion over it, [3] in defiance of the true owner's rights." *Kinnard v. Shoney's, Inc.*, 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000).

There is no genuine issue of material fact as to the Trustee's claims for conversion. The Trustee herself has now conceded that she has no evidence or bases for her allegations. The entirety of those allegations are contained at Paragraphs 43 and 44 of her Complaint, and they are entirely contradicted by the Trustee's own testimony. The Complaint alleges, in relevant part, as follows:

> 43. Afsoon Hagh, Hagh Law and Manookian PLLC wrongfully appropriated property of CM, exercised control over that property, and committed the tort of conversion.
>
> 44. More specifically, Afsoon Hagh, Hagh Law and/or Manookian PLLC have taken leased premises, furniture, equipment, intellectual property, attorneys' fees, and reimbursement of costs (the "Property") in excess of $1,350,000, and exercised control over that property to the exclusion of CM.

These Defendants have testified they have never received, appropriated, or exercised control over any property belonging to Cummings Manookian, and the Trustee has now admitted the same. Manookian PLLC, for its part, has never utilized any leased premises, furniture, equipment, or intellectual property whatsoever, and has never even had a bank account such that it could receive attorney's fees or reimbursed expenses. And the Trustee has refused to specifically identify any such property.

With respect to the Hagh Parties, the Trustee admits she has no evidence that the Hagh Parties ever received a payment of any kind from Cummings Manookian.[56] The Trustee admits that she has no evidence that the Hagh Parties ever set foot on the premises of the property where Cummings Manookian once operated at 45 Music Square West.[57] The Trustee admits that she has no evidence that the Hagh Parties ever used office space at the property where Cummings Manookian once operated at 45 Music Square West.[58] The Trustee admits that she has no evidence that the Hagh Parties used office space, furnishings, or equipment located at 45 Music Square West.[59] The Trustee

---

[56] Deposition of Trustee Jeanne Ann Burton, Page 121:10-13.
[57] Deposition of Trustee Jeanne Ann Burton, Page 29:25-30:2.
[58] Deposition of Trustee Jeanne Ann Burton, Page 119:25-120:3.
[59] Deposition of Trustee Jeanne Ann Burton, Page 30:20-31:16.

admits that she cannot identify any specific furnishings or equipment that the Hagh Parties used at 45 Music Square West.[60]  The Trustee concedes that she does not even know who owns or owned the furniture at 45 Music Square West.[61]  And The Trustee concedes that she cannot identify any damages that Cummings Manookian experienced as a result of any person using 45 Music Square West or the email addresses or phone numbers she claimed were wrongfully utilized in her Complaint.[62]

Finally, and entirely dispositively as to her claim of conversion against the Hagh Parties, <u>the Trustee admits that she has no evidence that the Hagh Parties have ever taken any property of any kind belonging to Cummings Manookian</u>.[63]

The Trustee's claims of conversion are totally false, completely contrived, and unsupported by any evidence *according to the Trustee herself.*  As such, there is no genuine issue of disputed fact as the Adversary Defendants are entitled to summary judgment.

### D. Defendants are entitled to summary judgment on the Trustee's Claims of Fraudulent Transfer.

The Trustee has additionally alleged a state law claim of fraudulent conversion. She has done so in the most vague and non-specific way possible, declining to even identify the property she alleges was transferred.  Her allegations from the Complaint are contained entirely in Paragraphs 47 and 48, which are reproduced here in full.

---

[60] Deposition of Trustee Jeanne Ann Burton, Page 31:14-16.
[61] Deposition of Trustee Jeanne Ann Burton, Page 37:17-25.
[62] Deposition of Trustee Jeanne Ann Burton, Page 123:22-124:5.
[63] Deposition of Trustee Jeanne Ann Burton, Page 117:5-8.

47. Afsoon Hagh, Hagh Law and Manookian PLLC wrongfully took the Property of CM in an attempt to hinder, delay and defraud creditors of CM.

48. Afsoon Hagh, Hagh Law and Manookian PLLC received substantial Property of CM without giving reasonably equivalent value, and such transfers caused or were during the insolvency of CM, rendered CM insolvent or unable to pay its debts when due, or were taken when CM was engaged in or about to be engaged in transactions for which CM had unreasonably small capital.

The Tennessee Uniform Fraudulent Transfers Act is contained at Tenn. Code Ann. § 66-3-305 which provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor… if the debtor made the transfer or incurred the obligation: with actual intent to hinder, delay, or defraud any creditor of the debtor; or without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor."

Here, none of the Defendants have made or incurred a transfer on behalf of Cummings Manookian, nor has the Trustee ever articulated with even the slightest specificity what property was transferred, when, or by whom. Defendants have negated an essential element of the Trustees' claim through the Declarations of Brian Manookian and Afsoon Hagh which establish that none of the Defendants have ever received a transfer from Cummings Manookian or made a transfer to Cummings Manookian. The Defendants are thus entitled to summary judgment.

### E. Defendants are entitled to summary judgment on the Trustee's Claims of Avoidance and Recovery of Fraudulent Transfer.

The Trustee has additionally alleged a skeletal claim of Avoidance and Recovery of Fraudulent Transfer entirely upon information and belief.

> 51.   Afsoon Hagh, Hagh Law and/or Manookian PLLC received substantial transfers from CM for the purposes of hindering, delaying, and defrauding creditors.
>
> 52.   Further, on information and belief, Afsoon Hagh, Hagh Law and/or Manookian PLLC received substantial transfers form CM without giving reasonably equivalent value, and such transfers caused or were during the insolvency of CM, rendered CM insolvent or unable to pay its debts when due, or were taken when CM was engaged in or about to be engaged in transactions for which CM had unreasonably small capital.

In the ensuing years since the filing of her Complaint, the Trustee has declined to disclose the bases for such information and belief. As with her duplicative claim of fraudulent transfer, an essential element of Trustee's claim is negated by the Declarations of Brian Manookian and Afsoon Hagh. Simply put, none of the Defendants have ever made a transfer to Cummings Manookian, received a transfer from Cummings Manookian, or transferred any property belonging to Cummings Manookian. Having made no transfer of any kind, the Defendants have certainly not made a fraudulent transfer. The undisputed facts require entry of summary judgment on this claim.

**F. Defendants are entitled to summary judgment on the Trustee's Claims of Tortious Interference with Contract.**

Tortious interference with contract requires five elements: (1) a prospective relationship with an identifiable class of third persons; (2) that Defendant knew of the relationship; (3) that Defendant intended to cause the termination of the business relationship; (4) that Defendant acted with "improper motives" or employed "improper means"; and (5) damages caused by the interference." *Louisiana-Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, 335 F. Supp. 3d 1002, 1019–20 (M.D. Tenn. 2018).

The Trustee's claim of tortious interference with contract is similarly deficient on its face and made "upon information and belief." The allegations are contained at Paragraphs 58 and 59 of the Complaint and state, in their entirety:

> 58. CM had a binding contractual relationship with the plaintiffs in the Fitzgerald Case. More specifically, CM had an engagement agreement with the plaintiffs in which CM agreed to represent the plaintiffs in the Fitzgerald Case in exchange for one-third of the monetary recovery.
>
> 59. Upon information and belief, Afsoon Hagh and Hagh Law had actual knowledge of the engagement agreement between the Fitzgerald Case plaintiffs and CM, intended to interfere with CM's contractual rights pursuant to that engagement agreement, and actually interfered with CM's contractual rights by coercing the Fitzgerald Case defendants from remitting to CM $1,350,000 in attorneys' fees.

But the undisputed facts, as laid out exhaustively in the Factual section above, show that Cummings Manookian *terminated its own contract* with the Fitzgeralds by withdrawing from the representation and expressly disclaiming any attorney's fee. The Trustee's allegation "upon information and belief" that the Defendants "coerced" the

Fitzgeralds from remitting a fee that Cummings Manookian itself disclaimed in writing is both nonsensical and made in transparent bad faith. It is axiomatic that a party cannot interfere with a contract that has already been terminated and no longer exists. Defendants are entitled to summary judgment on Trustee's claim for tortious interference with contract.

### G. Defendants are entitled to summary judgment on the Trustee's Claims of Successor Liability and Alter Ego.

Under Tennessee law, a successor entity is a mere continuation if: "1) the predecessor transferred its assets to the successor, 2) the successor company pays less than adequate consideration for the assets, 3) the successor company continues the predecessor's business, 4) both companies share one common officer who was instrumental in the transfer, and 5) the predecessor company is left incapable of paying its creditors." *RXAR Co., LLC v. Rheumatology Assoc.*, P.A., 2017 U.S. Dist. LEXIS 64354 (M.D. Tenn. 2017).

Here, the undisputed facts, as testified to and conceded by the Trustee, establish that there simply was no transfer of any asset from Cummings Manookian to any of the Defendants; moreover, the Trustee has disclaimed even the general allegations comprising her claim of successor liability as stated in its entirety in Paragraph 65 of her Complaint.

> 65. Hagh Law and/or Manookian PLLC provide services to many of the same clients as CM and use the same vendors as CM. They occupy the same leased real estate as CM (without a new lease), utilize the same computers and equipment as CM, and utilize some of the same telephone numbers as CM.

The Trustee has now conceded that Cummings Manookian does not own "client files" or causes of action. With respect to Manookian PLLC, that entity has never utilized any leased premises, furniture, or equipment.

With respect to the Hagh Parties, the Trustee now admits that she has no evidence that the Hagh Parties ever set foot on the premises of the property where Cummings Manookian once operated at 45 Music Square West.[64] The Trustee concedes that she has no evidence that the Hagh Parties ever used office space at the property where Cummings Manookian once operated at 45 Music Square West.[65]

Entirely contrary to her allegations in the Complaint, the Trustee has admitted that she has no evidence that the Hagh Parties used office space, furnishings, or equipment located at 45 Music Square West.[66] The Trustee admits that she cannot identify any specific furnishings or equipment that the Hagh Parties used at 45 Music Square West.[67] In fact, the Trustee concedes that she does not even know who owns or owned the furniture at 45 Music Square West.[68] And The Trustee concedes that she cannot identify any damages that Cummings Manookian experienced as a result of any person using 45 Music Square West or the email addresses or phone numbers she claimed were wrongfully utilized in her Complaint.[69] Finally, the Trustee admits that she has no evidence that the Hagh Parties have ever taken any property of any kind belonging to Cummings Manookian.[70]

---

[64] Deposition of Trustee Jeanne Ann Burton, Page 29:25-30:2.
[65] Deposition of Trustee Jeanne Ann Burton, Page 119:25-120:3.
[66] Deposition of Trustee Jeanne Ann Burton, Page 30:20-31:16.
[67] Deposition of Trustee Jeanne Ann Burton, Page 31:14-16.
[68] Deposition of Trustee Jeanne Ann Burton, Page 37:17-25.
[69] Deposition of Trustee Jeanne Ann Burton, Page 123:22-124:5.
[70] Deposition of Trustee Jeanne Ann Burton, Page 117:5-8.

Defendants are again entitled to summary judgment having negated the essential elements of the Trustee's claim for successor liability and alter ego.

## V. CONCLUSION

For all of the foregoing reasons, Defendants request entry of summary judgment on each and all of the claims against them.

Date:  June 24, 2022                    Respectfully submitted,


*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC and Brian Manookian*

*Co-counsel for Afsoon Hagh and Hagh Law PLLC for purposes of Summary Judgment only*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed June 24, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.


*/s/ John Spragens*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>**CUMMINGS MANOOKIAN, PLLC**<br><br>　　　Debtor.<br><br>**JEANNE ANN BURTON, TRUSTEE**<br><br>　　　Plaintiff,<br><br>v.<br><br>**HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,**<br><br>　　　Defendants. | **Case No. 3:19-bk-07235**<br>**Chapter 7**<br>**Judge Walker**<br><br>**Adv. Proc. No. 3:20-ap-90002** |

## DEFENDANTS AFSOON HAGH, HAGH LAW, PLLC, AND MANOOKIAN PLLC'S JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Fed. R. Civ. P. 56, Afsoon Hagh, Hagh Law, PLLC, and Manookian PLLC submit this Statement of Undisputed Material Facts in Support of their joint Motion for Summary Judgment.

1

<u>UNDISPUTED MATERIAL FACTS</u>

<u>"CUMMINGS MANOOKIAN"</u>

1.      Cummings Manookian was formed as a professional limited liability company to provide legal services.

**SOURCE: Declaration of Brian Manookian, ¶ 2;[1] Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 15-16;[2] Deposition of Trustee Jeanne Ann Burton, Page 5:13-15.[3]**

**RESPONSE:**

2.      Cummings Manookian was comprised of two members: Brian Cummings and Brian Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 3; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 13-14.**

**RESPONSE:**

3.      Cummings Manookian specialized in representing Plaintiffs in medical malpractice cases.

**SOURCE: Declaration of Brian Manookian, ¶ 4; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 17.**

**RESPONSE:**

---

[1] Attached as Exhibit 7.
[2] Attached as Exhibit 5.
[3] Attached as Exhibit 6.

4.      Cummings Manookian primarily accepted cases on a contingency fee basis whereby Cummings Manookian was only paid if it recovered monies for their client.

**SOURCE: Declaration of Brian Manookian, ¶ 5; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 18.**

**RESPONSE:**


5.      Cummings Manookian entered into engagement agreements with its clients that laid out the duties and rights of both parties to the contract.

**SOURCE: Declaration of Brian Manookian, ¶ 6; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 21[4] (admitting the same as to "some clients" and claiming an inability to admit or deny as "all of Cummings Manookian's clients").**

**RESPONSE:**


6.      Cummings Manookian utilized a standard form engagement agreement whose content and terms with respect to the rights and duties of the parties generally did not vary from case to case ("the CM Engagement Agreement").

**SOURCE: Declaration of Brian Manookian, ¶ 7; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 24 (claiming an inability to admit or deny, but admitting that "most of the engagement agreements provided to Trustee appear to be based on upon a standard form").**

**RESPONSE:**


7.      The CM Engagement Agreement included terms regarding the parties' rights in the event that the client terminated Cummings Manookian, as well as terms

---

[4] Attached as Exhibit 4.

defining the parties' rights in the event that Cummings Manookian withdrew from the engagement.

**SOURCE: Declaration of Brian Manookian, ¶ 8; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 22-23.**

**RESPONSE:**


8.      The CM Engagement Agreement required the client to pay Cummings Manookian an attorney's fee in the event that the client terminated Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 9; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 24.**

**RESPONSE:**


9.      The CM Engagement Agreement did not require the client to pay Cummings Manookian an attorney's fee in the event Cummings Manookian withdrew from the representation.

**SOURCE: Declaration of Brian Manookian, ¶ 10; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 25 (stating that the Trustee is unable to admit or deny and identifying Brian Manookian as the individual with knowledge on the issue).**

**RESPONSE:**


10.     Brian Cummings withdrew from Cummings Manookian effective September of 2018.

**SOURCE: Declaration of Brian Manookian, ¶ 11.**

**RESPONSE:**

11.     Brian Manookian was suspended from the practice of law effective December of 2018.

**SOURCE: Declaration of Brian Manookian, ¶ 12.  Deposition of Trustee Jeanne Ann Burton, Page 16:8-10.**

**RESPONSE:**

12.     By January 1, 2019, Cummings Manookian had no employees and no members or partners with an active license to practice law.

**Declaration of Brian Manookian, ¶ 13; Manookian PLLC Second Set of Requests for Admission, No. 21, 25 (admitted pursuant to Fed. R. Civ. P. 36(3)(a); Deposition of Trustee Jeanne Ann Burton, Page 20:16-21:1.**
**RESPONSE:**

<u>"THE FITZGERALD CASE"</u>

13.     On May 23, 2018, Cummings Manookian entered into an Agreement with Marty and Melissa Fitzgerald whose terms are contained in Exhibit 2 ("the Fitzgerald Engagement Agreement").

**SOURCE: Declaration of Brian Manookian, ¶ 14; Manookian PLLC Second Set of Requests for Admission, No. 64 (admitted pursuant to Fed. R. Civ. P. 36(3)(a); Deposition of Trustee Jeanne Ann Burton, Page 45:2-15.**

**RESPONSE:**

14.     Exhibit 2 is a genuine copy of the attorney-client agreement between

Cummings Manookian and Marty Fitzgerald and Melisa Fitzgerald.[5]

**SOURCE: Declaration of Brian Manookian, ¶ 15; Manookian PLLC Second Set of Requests for Admission, No. 59, 60 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)).**

**RESPONSE:**


15.    On May 23, 2018 Brian Manookian was a member of Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 16; Manookian PLLC Second Set of Requests for Admission, No. 62 (admitted pursuant to Fed. R. Civ. P. 36(3)(a); Deposition of Trustee Jeanne Ann Burton, Page 45:2-15.**

**RESPONSE:**


16.    On May 23, 2018, Brian Manookian had the authority to enter into the Fitzgerald Engagement Agreement with Marty and Melissa Fitzgerald on behalf of Cummings Manookian.


**SOURCE: Declaration of Brian Manookian, ¶ 17; Manookian PLLC Second Set of Requests for Admission, No. 63 (admitted pursuant to Fed. R. Civ. P. 36(3)(a); Deposition of Trustee Jeanne Ann Burton, Page 45:2-15.**

**RESPONSE:**


17.    The Fitzgerald Engagement Agreement was drafted by Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 18; Manookian PLLC Second**

---

[5] Attached as Exhibit 2.

**Set of Requests for Admission, No. 65 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>).**

**RESPONSE:**


18. The Fitzgerald Engagement Agreement is a binding contract upon Cummings Manookian, Marty Fitzgerald, and Melissa Fitzgerald.

**SOURCE: Declaration of Brian Manookian, ¶ 19; Manookian PLLC Second Set of Requests for Admission, No. 67-69 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>).**

**RESPONSE:**


19. The Fitzgerald Engagement Agreement is the only written agreement between Cummings Manookian and Marty and Melissa Fitzgerald.

**SOURCE: Declaration of Brian Manookian, ¶ 20; Manookian PLLC Second Set of Requests for Admission, No. 72 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>).**

**RESPONSE:**


20. The Fitzgerald Engagement Agreement states that if the Fitzgeralds terminate Cummings Manookian as their lawyers, Cummings Manookian will be entitled to some portion of any recovered attorney's fee.

**SOURCE: Declaration of Brian Manookian, ¶ 21; Exhibit 2, Fitzgerald Engagement Agreement.[6]**

**RESPONSE:**

---

[6] Attached as Exhibit 2.

7

21.     The Fitzgerald Engagement Agreement states that if Cummings Manookian withdraws from representing the Fitzgeralds, Cummings Manookian will be entitled to advanced expenses.

**SOURCE: Declaration of Brian Manookian, ¶ 22; Exhibit 2, Fitzgerald Engagement Agreement.**

**RESPONSE:**

22.     The Fitzgerald Engagement Agreement does not provide for, or require, the payment of an attorney's fee to Cummings Manookian in the event Cummings Manookian withdraws from representing the Fitzgeralds.

**SOURCE: Declaration of Brian Manookian, ¶ 23; Exhibit 2, Fitzgerald Engagement Agreement.**

**RESPONSE:**

23.     On December 7, 2018, Brian Manookian was the sole member of Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 24; Manookian PLLC Second Set of Requests for Admission, No. 74-75 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)).**

**RESPONSE:**

24.     On December 7, 2018, Brian Manookian was authorized to speak to Marty and Melissa Fitzgerald on behalf of Cummings Manookian on the topic of his and Cummings Manookian's representation of the Fitzgeralds.

**SOURCE: Declaration of Brian Manookian, ¶ 25; Manookian PLLC Second Set of Requests for Admission, No. 77 (admitted pursuant to Fed. R. Civ. P.**

**36(3)(a)**; Deposition of Trustee Jeanne Ann Burton, Pages 54:7-10; 55:10-16.

**RESPONSE:**

25.     Exhibit 3 ("the Fitzgerald Withdrawal Letter")[7] is a letter from Cummings Manookian to Marty and Melissa Fitzgerald dated December 7, 2018.

**SOURCE: Declaration of Brian Manookian, ¶ 26; Manookian PLLC Second Set of Requests for Admission, No. 73 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)Deposition of Trustee Jeanne Ann Burton, Pages 54:7-10; 55:10-16.**

**RESPONSE:**

26.     The Fitzgerald Withdrawal Letter was sent by Brian Manookian to Marty and Melissa Fitzgerald.

**SOURCE: Declaration of Brian Manookian, ¶ 27; Manookian PLLC Second Set of Requests for Admission, No. 80 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)Deposition of Trustee Jeanne Ann Burton, Pages 54:7-10; 55:10-16.**

**RESPONSE:**

27.     The Fitzgerald Withdrawal Letter was received by Marty and Melissa Fitzgerald.

**SOURCE: Declaration of Brian Manookian, ¶ 28; Manookian PLLC Second Set of Requests for Admission, No. 81 (admitted pursuant to Fed. R. Civ. P. 36(3)(a).**

**RESPONSE:**

---

[7] Attached as Exhibit 3.

9

28.     The Fitzgerald Withdrawal Letter states that Brian Manookian and Cummings Manookian are withdrawing from their representation of Marty and Melissa Fitzgerald.

**SOURCE: Declaration of Brian Manookian, ¶ 29; Manookian PLLC Second Set of Requests for Admission, No. 82 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>).**

**RESPONSE:**


29.     The Fitzgerald Withdrawal Letter requests that Marty and Melissa Fitzgerald obtain another attorney or firm to represent them.

**SOURCE: Declaration of Brian Manookian, ¶ 30; Manookian PLLC Second Set of Requests for Admission, No. 83 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>).**

**RESPONSE:**


30.     Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald.


**SOURCE: Declaration of Brian Manookian, ¶ 31; Manookian PLLC Second Set of Requests for Admission, No. 70 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>).**

**RESPONSE:**


31.     Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald prior to receiving any settlement for them.

**SOURCE: Declaration of Brian Manookian, ¶ 32; Manookian PLLC Second**

Set of Requests for Admission, No. 71 (admitted pursuant to **Fed. R. Civ. P. 36(3)(a))**.

**RESPONSE:**

32.     The Fitzgerald Withdrawal Letter states that because Cummings Manookian is withdrawing from the representation, it will not be entitled to any portion of an attorney's fee in the matter.

**SOURCE: Declaration of Brian Manookian, ¶ 33; Manookian PLLC Second Set of Requests for Admission, No. 84 (admitted pursuant to Fed. R. Civ. P. 36(3)(a); Deposition of Trustee Jeanne Ann Burton, Pages 54:7-10; 55:10-16.**

**RESPONSE:**

33.     The Fitzgerald Withdrawal Letter states that Cummings Manookian specifically disclaims any attorney's fee in the Fitzgerald matter.

**SOURCE: Declaration of Brian Manookian, ¶ 34; Manookian PLLC Second Set of Requests for Admission, No. 85 (admitted pursuant to Fed. R. Civ. P. 36(3)(a); Deposition of Trustee Jeanne Ann Burton, Pages 54:7-10; 55:10-16.**

**RESPONSE:**

34.     Cummings Manookian disclaimed any attorney's fee in the Fitzgerald matter via written letter to the Fitzgeralds dated December 7, 2018.

**SOURCE: Declaration of Brian Manookian, ¶ 35; Manookian PLLC Second Set of Requests for Admission, No. 86 (admitted pursuant to Fed. R. Civ. P. 36(3)(a); Deposition of Trustee Jeanne Ann Burton, Pages 54:7-10; 55:10-16.**

**RESPONSE:**

35.     On April 19, 2017, Cummings Manookian entered into an Agreement with Brett Keefer whose terms are contained in Exhibit 1 ("the Shoemaker Engagement Agreement.")[8]

**SOURCE: Declaration of Brian Manookian, ¶ 36; Manookian PLLC Second Set of Requests for Admission, No. 1 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)).**

**RESPONSE:**

36.     Exhibit 1 is a genuine copy of the attorney-client agreement between Cummings Manookian and Brett Keefer.

**SOURCE: Declaration of Brian Manookian, ¶ 37; Manookian PLLC Second Set of Requests for Admission, No. 2 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)).**

**RESPONSE:**

37.     The Shoemaker Engagement Agreement was drafted by Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 38; Manookian PLLC Second Set of Requests for Admission, No. 7 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)).**

**RESPONSE:**

38.     The Shoemaker Engagement Agreement is a binding contract upon

---

[8] Attached as Exhibit 1.

Cummings Manookian and Brett Keefer.

**SOURCE: Declaration of Brian Manookian, ¶ 39; Manookian PLLC Second Set of Requests for Admission, No. 9-10, 11 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>.**

**RESPONSE:**

39.    The Shoemaker Engagement Agreement is the only written agreement between Cummings Manookian and Brett Keefer or any representative of the Shoemaker Estate.

**SOURCE: Declaration of Brian Manookian, ¶ 40; Manookian PLLC Second Set of Requests for Admission, No. 18, 20 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>.**

**RESPONSE:**

40.    The Shoemaker Engagement Agreement states that if Brett Keefer terminates Cummings Manookian as his lawyers, Cummings Manookian will be entitled to some portion of any recovered attorney's fee.

**SOURCE: Declaration of Brian Manookian, ¶ 41; Exhibit 1, Shoemaker Engagement Agreement.**

**RESPONSE:**

41.    The Shoemaker Engagement Agreement states that if Cummings Manookian withdraws from representing Brett Keefer, Cummings Manookian will be entitled to advanced expenses.

**SOURCE: Declaration of Brian Manookian, ¶ 42; Exhibit 1, Shoemaker Engagement Agreement.**

**RESPONSE:**

42.     Cummings Manookian did not pay any costs or advance any expenses associated with any lawsuit filed on behalf of Brett Keefer or the Shoemaker Estate.

**SOURCE: Declaration of Brian Manookian, ¶ 43; Manookian PLLC Second Set of Requests for Admission, No. 17 (admitted pursuant to Fed. R. Civ. P. 36(3)(a).**

**RESPONSE:**


43.     The Shoemaker Engagement Agreement does not provide for, or require, the payment of an attorney's fee to Cummings Manookian in the event Cummings Manookian withdraws from representing Brett Keefer.

**SOURCE: Declaration of Brian Manookian, ¶ 44; Exhibit 1, Shoemaker Engagement Agreement.**

**RESPONSE:**


44.     Cummings Manookian withdrew from representing Brett Keefer.

**SOURCE: Declaration of Brian Manookian, ¶ 45; Manookian PLLC Second Set of Requests for Admission, No. 13 (admitted pursuant to Fed. R. Civ. P. 36(3)(a); Deposition of Trustee Jeanne Ann Burton, Page 84:6-14.**

**RESPONSE:**


45.     Cummings Manookian withdrew from representing Brett Keefer prior to receiving a settlement for Mr. Keefer or the Shoemaker Estate.

**SOURCE: Declaration of Brian Manookian, ¶ 46; Manookian PLLC Second Set of Requests for Admission, No. 15 (admitted pursuant to Fed. R. Civ. P. 36(3)(a).**

**RESPONSE:**

46.     As of January 1, 2019, Cummings Manookian had no members or partners

with active licenses to practice law.

**SOURCE: Declaration of Brian Manookian, ¶ 47; Manookian PLLC Second Set of Requests for Admission, No. 21 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>; Deposition of Trustee Jeanne Ann Burton, Page 20:16-21:1, 25:17-25.**

**RESPONSE:**


47.     As of January 1, 2019, Cummings Manookian had no employees.

**SOURCE: Declaration of Brian Manookian, ¶ 48; Manookian PLLC Second Set of Requests for Admission, No. 25 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>.**

**RESPONSE:**


48.     The lawsuit in the Shoemaker matter was filed on February 11, 2019.

**SOURCE: Declaration of Brian Manookian, ¶ 49.**

**RESPONSE:**


49.     On February 11, 2019, Cummings Manookian had no members or partners

with active licenses to practice law.

**SOURCE: Declaration of Brian Manookian, ¶ 50; Manookian PLLC Second Set of Requests for Admission, No. 23 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>.**

**RESPONSE:**


50.     On February 11, 2019, Cummings Manookian had no employees.

**SOURCE: Declaration of Brian Manookian, ¶ 51; Manookian PLLC Second Set of Requests for Admission, No. 27 (admitted pursuant to Fed. R. Civ. P. 36(3)(a).**

**RESPONSE:**

51.     The Shoemaker lawsuit was filed by Brian Cummings on behalf of Cummings Law.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 15:24-16:7.**

**RESPONSE:**

52.     No attorney ever entered an appearance in the Shoemaker case that identified himself or herself as working for or on behalf of Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 52; Manookian PLLC Second Set of Requests for Admission, No. 49 (admitted pursuant to Fed. R. Civ. P. 36(3)(a).**

**RESPONSE:**

53.     No attorney ever signed a pleading in the Shoemaker case that identified himself or herself as working for or on behalf of Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 53; Manookian PLLC Second Set of Requests for Admission, No. 48 (admitted pursuant to Fed. R. Civ. P. 36(3)(a).**

**RESPONSE:**

54.     No attorney did any work for or on behalf of Cummings Manookian in the *Shoemaker v. VUMC*, Davidson County Circuit Court Case No. 19C358.

**SOURCE: Manookian PLLC Second Set of Requests for Admission, No. 53**

**(admitted pursuant to Fed. R. Civ. P. 36(3)(a).**

**RESPONSE:**


55.     The Shoemaker Case ultimately settled in 2021.

**SOURCE: Declaration of Afsoon Hagh, ¶ 2.[9]**

**RESPONSE:**


56.     Cummings Manookian was not involved in negotiating the settlement in the

Shoemaker matter.

**SOURCE: Manookian PLLC Second Set of Requests for Admission, No. 57 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)); Deposition of Trustee Jeanne Ann Burton, Page 98:16-23.**


**RESPONSE:**


57.     Cummings Manookian did not even correspond or communicate with Brett

Keefer in 2019, 2020, or 2021.

**SOURCE: Declaration of Brian Manookian, ¶ 54; Manookian PLLC Second Set of Requests for Admission, No. 54-56 (admitted pursuant to Fed. R. Civ. P. 36(3)(a).**

**RESPONSE:**


"THE TRUSTEE'S CLAIMS REGARDING THE DEBTOR'S PURPORTED PROPERTY"


58.     In the cases in which Cummings Manookian represented clients, Cummings

---

[9] Attached as Exhibit 8.

Manookian did not own the client file or the cause of action.

**SOURCE: Declaration of Brian Manookian, ¶ 55; Deposition of Trustee Jeanne Ann Burton, Page 34:10-13.**

**RESPONSE:**


59.    Cummings Manookian never owned any real property and did not own the

office property at 45 Music Square West where it operated for a period of time.

**SOURCE: Declaration of Brian Manookian, ¶ 56; Deposition of Trustee Jeanne Ann Burton, Page 35:10-22; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 29.**

60.    Manookian PLLC has never received any property of any kind belonging to

Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 57.**

**RESPONSE:**


61.    Cummings Manookian has never transferred any property of any kind to

Manookian PLLC.

**SOURCE: Declaration of Brian Manookian, ¶ 58.**

**RESPONSE:**


62.    Manookian PLLC has never caused Cummings Manookian to make or incur

a transfer of property of any kind.

**SOURCE: Declaration of Brian Manookian, ¶ 59.**

**RESPONSE:**

63.     Manookian PLLC has never caused any person or entity to terminate any contract or business relationship with Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 60.**

**RESPONSE:**


64.     Manookian PLLC is not and has never been in possession, custody, or control of any property belonging to Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 61.**

**RESPONSE:**


65.     Manookian PLLC does not and has never owed a debt that is property of Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 62.**

**RESPONSE:**


66.     Manookian PLLC has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 63.**

**RESPONSE:**


67.     Neither Afsoon Hagh or Hagh Law ("the Hagh Parties") has ever received any property of any kind belonging to Cummings Manookian.

**SOURCE: Declaration of Afsoon Hagh, ¶ 3.**

**RESPONSE:**

68.     Cummings Manookian has never transferred any property of any kind to the Hagh Parties.

**SOURCE: Declaration of Afsoon Hagh, ¶ 4.**

**RESPONSE:**


69.     The Trustee admits she has no evidence that the Hagh Parties ever received a payment of any kind from Cummings Manookian.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 121:10-13.**

**RESPONSE:**


70.     The Hagh Parties have never caused Cummings Manookian to make or incur a transfer of property of any kind.

**SOURCE: Declaration of Afsoon Hagh, ¶ 5.**

**RESPONSE:**


71.     The Hagh Parties are not and have never been in possession, custody, or control of any property belonging to Cummings Manookian.

**SOURCE: Declaration of Afsoon Hagh, ¶ 6.**

**RESPONSE:**


72.     The Hagh Parties do not and have never owed a debt that is property of Cummings Manookian.

**SOURCE: Declaration of Afsoon Hagh, ¶ 7.**

**RESPONSE:**

73.     Hagh Law has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.

**SOURCE: Declaration of Afsoon Hagh, ¶ 8.**

**RESPONSE:**

74.     The Trustee admits that she has no evidence that the Hagh Parties have ever taken any property of any kind belonging to Cummings Manookian.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 117:5-8.**

**RESPONSE:**

75.     The Trustee admits that she has no evidence that the Hagh Parties ever set foot on the premises of the property where Cummings Manookian once operated at 45 Music Square West.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 29:25-30:2.**

**RESPONSE:**

76.     The Trustee admits that she has no evidence that the Hagh Parties ever used office space at the property where Cummings Manookian once operated at 45 Music Square West.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 119:25-120:3.**

21

**RESPONSE:**

77.     The Trustee admits that she has no evidence that the Hagh Parties used office space, furnishings, or equipment located at 45 Music Square West.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 30:20-31:16**

**RESPONSE:**

78.     The Trustee admits that she cannot identify any specific furnishings or equipment that the Hagh Parties used at 45 Music Square West.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 31:14-16.**

**RESPONSE:**

79.     The Trustee concedes that she does not even know who owns or owned the furniture at 45 Music Square West.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 37:17-25.**

**RESPONSE:**

80.     The Trustee concedes that she cannot identify any damages that Cummings Manookian experienced as a result of any person using 45 Music Square West or the email addresses or phone numbers she claimed were wrongfully utilized in her Complaint.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 123:22-124:5.**

**RESPONSE:**

Date:  June 24, 2022                    Respectfully submitted,


                                        */s/ John Spragens*
                                        John Spragens (TN Bar No. 31445)
                                        Spragens Law PLC
                                        311 22nd Ave. N.
                                        Nashville, TN 37203
                                        T: (615) 983-8900
                                        F: (615) 682-8533
                                        john@spragenslaw.com

                                        *Attorney for Manookian PLLC and
                                        Brian Manookian*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed June 24, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.


                                        */s/ John Spragens*

# CUMMINGS MANOOKIAN

April 19, 2017

**EXHIBIT**

**1**

**BRIAN CUMMINGS**
Licensed to practice in
Tennessee, Georgia,
Florida, California, and
Hawaii

**Via E-Mail: chimme_chunga@yahoo.com**
Edward Goodwin
Brett Keefer

   Re:   **Legal Representation and Engagement**

Dear Edward and Brett:

   It is our firm's practice to enter into written engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you. Please read it carefully.

**BRIAN MANOOKIAN**
Licensed to practice in
Tennessee

   Once you have reviewed this letter and are in agreement with its terms, please sign a copy in the space provided below and return it to our office. We reserve the right to not begin work on your case, or to stop existing work, until a signed copy is received. If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

## Client and Scope of Representation

www.cmtriallawyers.com

   Our clients will be you as the surviving spouse and surviving child regarding the April 14, 2017 death of Chesta Shoemaker at Vanderbilt University Medical Center.

   All work on this matter by Cummings Manookian, our firm, will be done by Brian Cummings or Brian Manookian. Our office phone number is (615) 266-3333. We can be reached on that line during normal business hours.

   Should you have any questions or concerns about any person in our firm who is working on this matter, or any work being performed by us on your behalf, please do not hesitate to contact us. We are happy to discuss those items with you at any time.

## Contingency Fee

45 Music Square West
Nashville, TN 37203
T: (615) 266-3333
F: (615) 266-0250

   Our fees for work on this case will be on a contingency basis. This means that you only pay us a fee if you receive a settlement, judgment, or

1

award in this matter. If you do not receive a settlement, judgment, or award we do not receive a fee. The contingency fee rate is 33.33%.

## Costs and Expenses

There will likely be costs and expenses involved in pursuing this matter. They may include items such as obtaining records, court filing fees, expert witness fees, court reporter fees, and deposition transcripts, among other things. We will advance those costs and expenses, arranging for them to be paid directly by our firm during the pendency of the matter. You remain ultimately responsible for the costs and expenses. At the conclusion of the matter, the costs and expenses that we advanced will be reimbursed to our firm by those expenses being deducted from the amount you receive after the contingency fee is allocated.

We specifically do not charge you for, or collect at the end of matter, expenses for general office copies, faxes, postage, courier services, long-distance phone calls, or mileage. In the potential and unlikely event that you lose in litigation via the Defendant getting dismissed via a Motion to Dismiss being granted in favor of the Defendant (which is very unlikely), you may also be responsible for the opposing party's attorneys' fees and costs.

## Review and Waiver of Conflicts

We have evaluated potential conflicts of interest with respect to our representation of you. We are not currently aware of any conflicts in connection with this matter.

## Your Responsibilities

We cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with us and to promptly provide all information known or available to you that is relevant to our representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing us of changes in your address and telephone numbers.

## Settlement or Compromise

This is your case. Prior to any settlement, we will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding.

## Termination of Professional Relationship

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you

2

terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

## Mediation and Binding Arbitration of Any Attorney-Client Disputes

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (bcummings@cummingsmanookian.com), fax (615-266-0250), or mail.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me.

Sincerely,

Brian Cummings
CUMMINGS MANOOKIAN PLC

3

I have read and consent to the terms in this letter.

_____  4-19-17
Edward Goodwin                    DATE

_____  4-19-17
Brett Keefer                      DATE

4

**CUMMINGS MANOOKIAN**  ATTORNEY-CLIENT AGREEMENT

**BRIAN CUMMINGS**
Licensed to practice in
TN, GA, FL, CA and HI

**BRIAN MANOOKIAN**
Licensed to practice in TN

May 23, 2018

**EXHIBIT 2**

**VIA HAND DELIVERY**
Marty Fitzgerald
Melissa Fitzgerald
1376 Hunter Road
Franklin, Tennessee 37064

Re:    Legal Representation and Engagement

Dear Mr. and Mrs. Fitzgerald:

It is our firm's practice to enter into engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you. Please read it carefully.

Once you have reviewed this letter and are in agreement with its terms, please sign a copy in the space provided below and return it to our office. We reserve the right to not begin work on your case, or stop existing work, until a signed copy is received. If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

**Client and Scope of Representation**

Our clients will be your deceased daughter, Megan Fitzgerald, with you both acting as her legal representatives, as well as each of you in your individual capacities. We will represent you concerning the incident on May 10, 2018 that resulted in Megan's death.

All work on this matter will be done by Brian Manookian, Brian Cummings, or Afsoon Hagh. Our office phone number is (615) 266-3333. My direct line is (615) 266-0226. I can be reached on that line during normal business hours. If you have an after-hours urgent matter regarding your case, you may call Brian Manookian on his cell phone at (615) 979-6440. You may also text message or email me at bmanookian@cummingsmanookian.com at any time.

BFM

45 Music Square West
Nashville, TN 37203
T  615.266.3333
F  615.266.0250

Pauahi Tower
1003 Bishop St.
Suite 2710
Honolulu, HI 96813
T  808.444.4800
F  808.444.4888

www.cmtriallawyers.com

1

Should you have any questions or concerns about any person in our firm who is working on this matter, or any work being performed by us on your behalf, please do not hesitate to contact us. We are happy to discuss those items with you at any time.

## Contingency Fee

Our fees for work on this case will be on a contingency basis. This means that you only pay us a fee if you receive a settlement, judgment, or award in this matter. If you do not receive a settlement, judgment, or award we do not receive a fee. The contingency fee rate is 33.33%.

We may work with other attorneys in this matter. You understand and consent that a portion of the contingency fee may be shared with other attorneys in accordance with the rules governing the practice of law in Tennessee. In no event, however, shall you incur any additional legal fees or costs by virtue of the sharing of any portion of the contingency fee with another attorney or attorneys.

## Costs and Expenses

There will likely be costs and expenses involved in pursuing this case. They may include items such as court filing fees, expert witness fees, court reporter fees, and deposition transcripts among other things. We will advance those costs and expenses, arranging for them to be paid directly by our firm during the pendency of the matter. You remain responsible for the costs and expenses. At the conclusion of the matter, the costs and expenses that we advanced will be deducted from the amount you receive after the contingency fee is allocated.

We specifically do not charge you for, or collect at the end of matter, expenses for general office copies, faxes, postage, courier services, long-distance phone calls, or mileage. In the event that you lose in litigation, you may also be responsible for the opposing party's attorneys' fees and costs.

## Review and Waiver of Conflicts

We have evaluated potential conflicts of interest with respect to our representation of you. We are not currently aware of any conflicts in connection with this matter.

## Your Responsibilities

We cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with us and to promptly provide all information known or available to you that is relevant to our representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing us of changes in your address and telephone numbers.

2

**Settlement or Compromise**

This is your case. Prior to any settlement, we will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding upon you.

**Termination of Professional Relationship**

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

If any of the terms stated in this letter is not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email, fax, or mail.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to call me.

Sincerely,

Brian Manookian
CUMMINGS MANOOKIAN PLC

I have read and consent to the terms in this letter.

CLIENT     Melissa L Fitzgerald     DATE  5/23/2018

3

**CUMMINGS** MANOOKIAN

BRIAN MANOOKIAN
Licensed to practice in TN

December 7, 2018

**EXHIBIT**

**3**

**VIA CERTIFIED MAIL**
Marty Fitzgerald
Melissa Fitzgerald
1376 Hunter Road
Franklin, Tennessee 37064

> **Re:** *Fitzgerald v. Osborn, et al. / Withdrawal by Brian Manookian and Cummings Manookian*

Marty and Melissa,

The Tennessee Supreme Court recently lifted the stay of the temporary suspension of my license to practice law. As a result, and as we have discussed, I am required to withdraw as counsel in this matter. Cummings Manookian is additionally required to withdraw as Brian Cummings has recently left the firm, and I am in the process of winding up its affairs. I am writing to notify you of the withdrawal, and to request, that you obtain another attorney or firm to represent you.

Pursuant to our Legal Representation and Engagement Agreement, Cummings Manookian is entitled to reimbursement of certain advanced costs and expenses in this case. I estimate those costs and expenses to be less than $3000. Because Cummings Manookian is withdrawing from this matter, it will not be entitled to any portion of an attorney's fee and specifically disclaims the same under the terms of our prior engagement agreement. You may provide this letter to any future attorneys representing you in this case as confirmation of the same.

45 Music Square West
Nashville, TN 37203
T 615.266.3333
F 615.266.0250

Sincerely,

Brian Manookian

www.cmtriallawyers.com

**EXHIBIT**

**4**
_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| IN RE:<br><br>**CUMMINGS MANOOKIAN, PLLC**<br><br>    Debtor.<br><br>**JEANNE ANN BURTON, TRUSTEE**<br><br>     Plaintiff,<br><br>v.<br><br>**HAGH LAW, PLLC; AFSOON HAGH;<br>and MANOOKIAN PLLC,**<br><br>    Defendants. | **Case No, 3:19-bk-07235**<br>**Chapter 7**<br><br>**Judge Walker**<br><br>**Adv. Proc. No. 3:20-ap-90002** |

**DEFENDANT MANOOKIAN PLLC'S SECOND SET OF
REQUESTS FOR ADMISSION TO THE PLAINTIFF**

Manookian PLLC, through counsel, and propounds the following Requests for Admission upon the Plaintiff.

**REQUESTS FOR ADMISSION**

1.    Admit that Exhibit 1 is an attorney-client agreement between Cummings Manookian and Edward Goodwin and Brett Keefer.

**RESPONSE:**

1

2.    Admit that Exhibit 1 is a genuine copy of an attorney-client agreement between Cummings Manookian and Edward Goodwin and Brett Keefer.

**RESPONSE:**


3.    Pursuant to <mark>Fed. R. Civ. P. 36(a)(1)(B)</mark>, admit the genuineness of Exhibit 1.

**RESPONSE:**


4.    Admit that on April 19, 2017, Brian Cummings was a member of Cummings Manookian.

**RESPONSE:**


5.    Admit that on April 1, 2017, Brian Cummings had the authority to enter into Exhibit 1 on behalf of Cummings Manookian.

**RESPONSE:**


6.    Admit that on April 1, 2017, Cummings Manookian entered into an Agreement with Brett Keefer and Edward Goodwin whose terms are contained in Exhibit 1.

**RESPONSE:**


7.    Admit that Exhibit 1 was drafted by Cummings Manookian.

**RESPONSE:**

8.      Admit that Exhibit 1 was drafted by Brian Cummings on behalf of Cummings Manookian.

**RESPONSE:**


9.      Admit that Exhibit 1 is a binding contract.

**RESPONSE:**


10.     Admit that Exhibit 1 is binding upon Brett Keefer.

**RESPONSE:**


11.     Admit that Exhibit 1 is binding upon Edward Goodwin.

**RESPONSE:**


12.     Admit that Exhibit 1 is binding upon Cummings Manookian.

**RESPONSE:**


13.     Admit that Cummings Manookian withdrew from representing Brett Keefer.

**RESPONSE:**


14.     Admit that Cummings Manookian withdrew from representing Edward Goodwin.

**RESPONSE:**

15.     Admit that Cummings Manookian withdrew from representing Brett Keefer prior to receiving a settlement for Mr. Keefer or Chesta Shoemaker's estate.

**RESPONSE:**

16.     Admit that Cummings Manookian withdrew from representing Edward Goodwin prior to receiving a settlement for Mr. Goodwin or Chesta Shoemaker's estate.

**RESPONSE:**

17.     Admit that Cummings Manookian did not pay any costs or expenses associated with any lawsuit filed on behalf of Brett Keefer, Edward Goodwin, or Chesta Shoemaker's estate.

**RESPONSE:**

18.     Admit that Exhibit 1 is the only written agreement between Cummings Manookian and Brett Keefer.

**RESPONSE:**

19.     Admit that Exhibit 1 is the only written agreement between Cummings Manookian and Edward Goodwin.

**RESPONSE:**

20.     Admit that Exhibit 1 is the only written agreement between Cummings Manookian and any representative of Chesta Shoemaker's estate.

4

**RESPONSE:**

21.     Admit that as of January 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

22.     Admit that as of February 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

23.     Admit that as of February 11, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

24.     Admit that as of March 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

25.     Admit that as of January 1, 2019, Cummings Manookian had no employees.

**RESPONSE:**

26.     Admit that as of February 1, 2019, Cummings Manookian had no employees.

5

**RESPONSE:**

27. Admit that as of February 11, 2019, Cummings Manookian had no employees.

**RESPONSE:**

28. Admit that as of March 1, 2019, Cummings Manookian had no employees.

**RESPONSE:**

29. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in December 2018.

**RESPONSE:**

30. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in January 2019.

**RESPONSE:**

31. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in February 2019.

**RESPONSE:**

32. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in March 2019.

**RESPONSE:**

33.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in April 2019.

**RESPONSE:**

34.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in May 2019.

**RESPONSE:**

35.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in June 2019.

**RESPONSE:**

36.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in July 2019.

**RESPONSE:**

37.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in August 2019.

**RESPONSE:**

38.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in September 2019.

**RESPONSE:**

39.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in October 2019.

**RESPONSE:**

40.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in November 2019.

**RESPONSE:**

41.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in December 2019.

**RESPONSE:**

42.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in 2020.

**RESPONSE:**

43.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in 2021.

**RESPONSE:**


44.    Admit that Cummings Manookian has made no payments to any employee, as salary or otherwise, in 2022.

**RESPONSE:**


45.    Admit that Brian Cummings never signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**


46.    Admit that Brian Manookian never signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**


47.    Admit that Afsoon Hagh never signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

48. Admit that no attorney ever signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself or herself as working for or on behalf of Cummings Manookian.

**RESPONSE:**


49. Admit that no attorney ever entered an appearance in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, that identified himself or herself as working for or on behalf of Cummings Manookian.

**RESPONSE:**


50. Admit that Brian Cummings did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


51. Admit that Brian Manookian did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


52. Admit that Afsoon Hagh did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

53.     Admit that no attorney did any work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


54.     Admit that Cummings Manookian did not correspond or communicate with Brett Keefer or Edward Goodwin in 2019.

**RESPONSE:**


55.     Admit that Cummings Manookian did not correspond or communicate with Brett Keefer or Edward Goodwin in 2020.

**RESPONSE:**


56.     Admit that Cummings Manookian did not correspond or communicate with Brett Keefer or Edward Goodwin in 2021.

**RESPONSE:**


57.     Admit that Cummings Manookian was not involved in negotiating any final terms of settlement in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


58.     Admit that Cummings Manookian is aware of the terms of any settlement in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

59.     Admit that Exhibit 2 is an attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melissa Fitzgerald.

**RESPONSE:**

60.     Admit that Exhibit 2 is a genuine copy of an attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melissa Fitzgerald.

**RESPONSE:**

61.     Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 2.

**RESPONSE:**

62.     Admit that on May 23, 2018, Brian Manookian was a member of Cummings Manookian.

**RESPONSE:**

63.     Admit that on May 23, 2018, Brian Manookian had the authority to enter into Exhibit 2 on behalf of Cummings Manookian.

**RESPONSE:**

64.     Admit that on May 23. 2018, Cummings Manookian entered into an Agreement with Marty and Melissa Fitzgerald whose terms are contained in Exhibit 2.

**RESPONSE:**


65.     Admit that Exhibit 2 was drafted by Cummings Manookian.

**RESPONSE:**


66.     Admit that Exhibit 2 was drafted by Brian Manookian on behalf of Cummings Manookian.

**RESPONSE:**


67.     Admit that Exhibit 2 is a binding contract.

**RESPONSE:**


68.     Admit that Exhibit 2 is binding upon Marty and Melissa Fitzgerald

**RESPONSE:**


69.     Admit that Exhibit 2 is binding upon Cummings Manookian.

**RESPONSE:**


70.     Admit that Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald.

**RESPONSE:**


71.    Admit that Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald prior to receiving any settlement for them.

**RESPONSE:**


72.    Admit that Exhibit 2 is the only written agreement between Cummings Manookian and Marty and Melissa Fitzgerald.

**RESPONSE:**


73.    Admit that Exhibit 3 is a letter from Cummings Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**


74.    Admit that on December 7, 2018, Brian Manookian was a member or partner of Cummings Manookian.

**RESPONSE:**


75.    Admit that on December 7, 2018, Brian Manookian was the sole member of Cummings Manookian.

**RESPONSE:**

76.     Admit that on December 7, 2018, Brian Manookian was authorized to speak on behalf of Cummings Manookian.

**RESPONSE:**

77.     Admit that on December 7, 2018, Brian Manookian was authorized to speak to Marty and Melissa Fitzgerald on behalf of Cummings Manookian on the topic of his and Cummings Manookian's representation of the Fitzgeralds.

**RESPONSE:**

78.     Admit that Exhibit 3 is a letter from Brian Manookian on behalf of Cummings Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**

79.     Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 3.

**RESPONSE:**

80.     Admit that Exhibit 3 was sent by Brian Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**

81.     Admit that Exhibit 3 was received by Marty and Melissa Fitzgerald.

**RESPONSE:**

82.     Admit that Exhibit 3 states that Brian Manookian and Cummings Manookian are withdrawing from their representation of Marty and Melissa Fitzgerald.

**RESPONSE:**


83.     Admit that Exhibit 3 requests that Marty and Melissa Fitzgerald obtain another attorney or firm to represent them.

**RESPONSE:**


84.     Admit that Exhibit 3 states that because Cummings Manookian is withdrawing from the representation, it will not be entitled to any portion of an attorney's fee in the matter.

**RESPONSE:**


85.     Admit that Exhibit 3 states that Cummings Manookian specifically disclaims any attorney's fee in the Fitzgerald matter.

**RESPONSE:**


86.     Admit that Cummings Manookian disclaimed any attorney's fee in the Fitzgerald matter via written letter to the Fitzgeralds.

**RESPONSE:**

Date:   March 3, 2022                    Respectfully submitted,


                                         */s/ John Spragens*
                                         John Spragens (TN Bar No. 31445)
                                         Spragens Law PLC
                                         311 22nd Ave. N.
                                         Nashville, TN 37203
                                         T: (615) 983-8900
                                         F: (615) 682-8533
                                         john@spragenslaw.com

                                         *Attorney for Manookian PLLC and Brian*
                                         *Manookian*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served on Phillip Young as Counsel for the Plaintiff on March 3, 2022.


                                         */s/ John Spragens*

EXHIBIT

5

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 3:19-bk-07235** |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| Debtor. | ) | |
| | ) | |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSES TO MANOOKIAN PLLC'S FIRST SET OF REQUESTS
FOR ADMISSION TO THE PLAINTIFF**

Comes Now, Plaintiff, Jeanne Ann Burton, Trustee ("Trustee"), and for her Responses to Manookian PLLC's First Set of Requests for Admission to Plaintiff (the "Discovery"), states as follows:

**<u>GENERAL OBJECTIONS</u>**

1.      Trustee's Responses to the Discovery shall not constitute a waiver of her objections as to admissibility.

2.      Trustee objects to the Discovery to the extent it exceeds the scope of permissible discovery.

3.      Trustee objects to the Discovery to the extent that the information sought is protected from discovery by the attorney-client privilege or the attorney work-product doctrine.

1

4.      Trustee objects to the Discovery to the extent that the information and documents sought are not in her possession, custody or control.

5.      Trustee objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6.      Trustee objects to the Discovery to the extent that the information sought is equally available to Defendant as to Trustee.

7.      Trustee objects to the definitions and instructions to the extent Defendant seeks to impose any requirement in excess of those imposed by the Federal Rules of Civil Procedure. Additionally, Trustee is not required by the Federal Rules of Civil Procedure to adopt, follow or utilize Defendant's definitions and instructions, and Trustee's Responses are based upon the governing provisions of the applicable Rules, laws and the ordinary and usual meaning of the words used, except as otherwise noted in the Responses.

8.      Trustee reserves the right to supplement her Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.


## REQUESTS FOR ADMISSION

1.      Admit that Afsoon Hagh was never an employee of Cummings Manookian.

### RESPONSE:

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue.  Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.  However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block.  Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

2.      Admit that Cummings Manookian never identified Afsoon Hagh as an employee to

2

the Internal Revenue Service.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

3. Admit that Cummings Manookian never identified Afsoon Hagh as an employee to the Tennessee Department of Revenue.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

4. Admit that Cummings Manookian never filed any documents with any state, local, or federal agency identifying Afsoon Hagh as an employee of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

5. Admit that Afsoon Hagh was never a member of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this

3

issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

      6.     Admit that Afsoon Hagh was never a partner in Cummings Manookian.

**<u>RESPONSE:</u>**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

      7.     Admit that Afsoon Hagh never held an ownership interest in Cummings

Manookian.

**<u>RESPONSE:</u>**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

      8.     Admit that Afsoon Hagh served as co-counsel with certain attorney members of

Cummings Manookian in various legal cases.

**<u>RESPONSE:</u>**

Trustee admits that Afsoon Hagh made notices of appearance as counsel in several Cummings Manookian matters. Trustee is unable to admit or deny the remainder of this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject. However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

9.      Admit that Afsoon Hagh was never paid a salary by Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue.  Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

10.     Admit that Afsoon Hagh was never paid an hourly wage by Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue.  Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

11.     Admit that Afsoon Hagh was never listed on Cummings Manookian's website.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue.  Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.  However, Trustee states that Afsoon Hagh held herself out as an employee or agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block.   Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

12.     Admit that Afsoon Hagh was never paid any monies by Cummings Manookian.

**RESPONSE:**

Denied.  Afsoon Hagh received funds from the settlement of the *Fitzgerald* matter that were otherwise owed to Cummings Manookian.

13.     Admit that Cummings Manookian had two members.

**RESPONSE:**

Admitted that Cummings Manookian had at least two members.  Trustee is unable to

admit or deny any remaining elements of this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

      14.    Admit that the two members of Cummings Manookian were Brian Manookian and Brian Cummings.

**RESPONSE:**

    Admitted that Brian Manookian and Brian Cummings were members of Cummings Manookian. Trustee is unable to admit or deny whether Mr. Cummings and Mr. Manookian were Cummings Manookian's only members because Cummings Manookian, PLC and/or Afsoon Hagh have failed to appropriately or adequately respond to Trustee's outstanding discovery requests on this issue.

      15.    Admit that Cummings Manookian was a professional limited liability company.

**RESPONSE:**

    Admitted.

      16.    Admit that Cummings Manookian was created to provide professional services in the form of legal services.

**RESPONSE:**

    Admitted.

      17.    Admit that Cummings Manookian specialized in representing plaintiffs in medical malpractice cases.

**RESPONSE:**

    Admitted.

      18.    Admit that Cummings Manookian primarily accepted cases on a contingency fee basis whereby Cummings Manookian was only paid if they recovered monies for their client.

**RESPONSE:**

6

Admitted.

19.　Admit that Cummings Manookian entered into engagement agreements with their clients.

**RESPONSE:**

Admitted that Cummings Manookian entered into engagement agreements with some clients. However, Trustee is unable to admit or deny whether Cummings Manookian entered into engagement letters with all of their clients because Trustee has not been given copies of all Cummings Manookian engagement agreements.

20.　Admit that Cummings Manookian entered into engagement agreements with their clients that laid out the duties and rights of both parties to the contract.

**RESPONSE:**

Admitted that Cummings Manookian entered into engagement agreements with some clients that laid out the duties and rights of both parties to the contract. Trustee is unable to admit or deny whether Cummings Manookian entered into engagement letters with all of their clients because Trustee has not been given copies of all Cummings Manookian engagement agreements.

21.　Admit that Cummings Manookian utilized a standard form engagement agreement whose content and terms with respect to the rights and duties of the parties generally did not vary from case to case ("the Cummings Manookian Engagement Agreement).

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee has only been provided copies of certain engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that most of the engagement agreements she has been provided appear to be based upon a standard form.

22.　Admit that the Cummings Manookian Engagement Agreement included terms regarding the parties' rights in the event that the client terminated Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee has not been provided copies of all engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that the engagement agreements she has been provided include terms regarding the parties' right in the event the client terminated Cummings Manookian.

23. Admit that the Cummings Manookian Engagement Agreement included terms regarding the parties' rights in the event that Cummings Manookian withdrew from representing the client.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee has not been provided copies of all engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that the engagement agreements she has been provided include terms regarding the parties' rights in the event that Cummings Manookian withdrew from representing the client.

24. Admit that the Cummings Manookian Engagement Agreement requires the client to pay Cummings Manookian an attorney's fee in the event the client terminates Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee has not been provided copies of all engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee also objects to this request to the extent it calls for a legal conclusion.

25. Admit that the Cummings Manookian Engagement Agreement does not require the client to pay Cummings Manookian an attorney's fee in the event Cummings Manookian withdraws from the representation.

**RESPONSE:**

8

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee has not been provided copies of all engagement agreements, and has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee also objects to this request to the extent it calls for a legal conclusion.

26.     Admit that Cummings Manookian has never entered into a contract or written agreement with Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

27.     Admit that Cummings Manookian has never entered into a contract or written agreement with Hagh Law PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.

28.     Admit that Cummings Manookian has never entered into a contract or written agreement with Manookian PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookiann PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue. Also, the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

29.     Admit that Cummings Manookian does not own, and has never owned, any real property.

9

**RESPONSE:**

Trustee admits that Cummings Manookian does not currently own any real property. Trustee is unable to admit or deny the remaining elements of this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

30.     Admit that Cummings Manookian does not own, and has never owned, 45 Music

Square West, Nashville, Tennessee 37203.

**RESPONSE:**

Trustee admits that Cummings Manookian does not currently own 45 Music Square West, Nashville, Tennessee 37203. Trustee is unable to admit or deny the remaining elements of this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

31.     Admit that Cummings Manookian was a party to a lease for 45 Music Square West,

Nashville, Tennessee, 37203 ("the 45 MSW Lease).

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee has specifically requested a copy of any such lease but none has been provided.

32.     Admit that Cummings Manookian was required to pay rent to 45 MSW Partners

under the terms of the 45 MSW Lease.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee has specifically requested a copy of any such lease but none has been provided.

33.     Admit that Cummings Manookian breached the 45 MSW Lease by failing to pay

rent to 45 MSW Partners beginning in November of 2018.

10

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee has specifically requested a copy of any such lease but none has been provided.

34. Admit that Cummings Manookian owns no furniture.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no furniture, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there is furniture in the offices where Cummings Manookian operated.

35. Admit that Cummings Manookian has never owned any furniture.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian has never owned furniture, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there is furniture in the offices where Cummings Manookian operated.

36. Admit that Cummings Manookian owns no computers.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no computers, but this allegation has not been tested. However, upon information and belief, the Trustee believes that there are computers in the offices where Cummings Manookian operated.

37. Admit that Cummings Manookian has never owned any computers.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. Trustee admits that Brian Manookian has

11

alleged that Cummings Manookian has never owned computers, but this allegation has not been tested.  However, upon information and belief, the Trustee believes that there are computers in the offices where Cummings Manookian operated.

38.     Admit that Cummings Manookian owns no telephones.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.  Trustee admits that Brian Manookian has alleged that Cummings Manookian owns no telephones, but this allegation has not been tested.  However, upon information and belief, the Trustee believes that there are telephones in the offices where Cummings Manookian operated.

39.     Admit that Cummings Manookian has never owned any telephones.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.  Trustee admits that Brian Manookian has alleged that Cummings Manookian has never owned telephones, but this allegation has not been tested.   However, upon information and belief, the Trustee believes that there are telephones in the offices where Cummings Manookian operated.

40.     Admit that the web domain cummingsmanookian.com was registered by Brian Cummings.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

41.     Admit that the web domain cummingsmanookian.com is owned by Brian Cummings.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.

12

42.     Admit that Cummings Manookian has never owned any website.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.  However, Trustee is aware that Cummings Manookian utilized a website at times during its operations.


43.     Admit that the Defendants have never utilized cummingsmanookian.com as a website.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.


44.     Admit that cummingsmanookian.com has not functioned as a website since at least October of 2018.

**RESPONSE:**

Trustee is unable to admit or deny this request because Trustee has not been afforded an opportunity to depose Brian Manookian on this subject.


45.     Admit the telephone number 615-266-3333 was purchased individually by Brian Cummings prior to the formation of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. However, Trustee is aware that Cummings Manookian utilized that telephone number at times during its operations.

13

46.     Admit that all telephone numbers utilized by Cummings Manookian during its period of operation were privately purchased Brian Cummings prior to the formation of Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this subject. However, Trustee is aware that Cummings Manookian utilized certain telephone numbers at times during its operations.

47.     Admit that none of the Defendants have utilized a phone number owned by Cummings Manookian at any time.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.   However, Afsoon Hagh listed a Cummings Manookian telephone number and email address in numerous court pleadings.

48.     Admit that none of the Defendants have utilized a phone number owned by Cummings Manookian at any time after October 2018.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this subject.   However, Afsoon Hagh listed a Cummings Manookian telephone number and email address in numerous court pleadings after October 2018.

49.     Admit that, under Tennessee law, a legal client's file is owned by the client.

**RESPONSE:**

14

Trustee objects to this request on the grounds that it calls for a legal conclusion. However, Trustee affirmatively alleges that a law firm may own client lists, client contact information, and accounts receivable associated with clients.

50.     Admit that Cummings Manookian does not now, nor has it ever, owned a client's

case file.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue. Trustee also objects to this request to the extent that it calls for a legal conclusion. However, Trustee affirmatively alleges that Cummings Manookian did own client lists, client contact information, and accounts receivable associated with clients.

51.     Admit that Cummings Manookian is and was required to return, destroy, or transfer

a client's case file upon that client's request.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. Trustee further states that she has not been provided copies of certain disengagement letters that might govern Cummings Manookian's responsibilities to its clients.

52.     Admit that Cummings Manookian does not "own" a client's case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion. However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

53.     Admit that Cummings Manookian does not have an ownership interest in any case

brought on behalf of a client.

**RESPONSE:**

15

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. Trustee also objects to this request to the extent that it calls for a legal conclusion.   However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

54.    Admit that any cause of action or right of recovery pursued by Cummings

Manookian on behalf of a client belongs to the client.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.  Trustee also objects to this request to the extent that it calls for a legal conclusion.   However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

55.    Admit that any cause of action or right of recovery pursued by Cummings

Manookian on behalf of a client does not belong to Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC, has failed to adequately respond to Trustee's outstanding discovery requests on this issue, and Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.  Trustee also objects to this request to the extent that it calls for a legal conclusion.   However, Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

56.    Admit that any Cummings Manookian client was empowered to terminate

Cummings Manookian at any time and for any reason.

**RESPONSE:**

Admitted that any client had the right to terminate Cummings Manookian at any time and for any reason.

57.    Admit that Cummings Manookian provided no services to Manookian PLLC.

16

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property.

58. Admit that Cummings Manookian provided no goods to Manookian PLLC.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property.

59. Admit that Cummings Manookian provided no services to Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property.

60. Admit that Cummings Manookian provided no goods to Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property.

61. Admit that Cummings Manookian provided no services to Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh

17

to utilize its leased premises and certain personal property.

62.     Admit that Cummings Manookian provided no goods to Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic.  However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property.

63.     Admit that Cummings Manookian provided no services to Manookian PLLC in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.   However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

64.     Admit that Cummings Manookian provided no goods to Manookian PLLC in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Manookian PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.   However, Trustee believes that Cummings Manookian allowed Manookian PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

65.     Admit that Cummings Manookian provided no services to Hagh Law in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on

18

this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

66. Admit that Cummings Manookian provided no goods to Hagh Law in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Hagh Law PLLC have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Hagh Law PLLC to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

67. Admit that Cummings Manookian provided no services to Afsoon Hagh in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

68. Admit that Cummings Manookian provided no goods to Afsoon Hagh in the Fitzgerald case.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC and/or Afsoon Hagh have failed to adequately respond to Trustee's outstanding discovery requests on this issue, and the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic. However, Trustee believes that Cummings Manookian allowed Afsoon Hagh to utilize its leased premises and certain personal property in conjunction with the Fitzgerald case.

69. Admit that Cummings Manookian had an existing, enforceable contract with Marty and Melissa Fitzgerald covering the subject matter of Cummings Manookian's representation in

19

the Fitzgerald v. Osborn matter.

**RESPONSE:**

Admitted

70.     Admit that Cummings Manookian withdrew from representing the Fitzgeralds in

the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.   While Brian Manookian has produced a letter from Cummings Manookian that allegedly terminated the client relationship with the Fitzgeralds, no evidence has been produced that the letter was delivered to the Firtzgeralds, nor was any notice of withdrawal ever filed in that case.

71.     Admit that the Fitzgeralds did not terminate Cummings Manookian from

representing them in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Trustee is unable to admit or deny this request because Cummings Manookian, PLC has failed to adequately respond to Trustee's outstanding discovery requests on this issue.

72.     Admit that Cummings Manookian never recovered any monies for the Fitzgerald

in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.  Cummings Manookian recovered a substantial monetary settlement for the Fitzgeralds in that matter.

73.     Admit that Cummings Manookian never even secured an offer of settlement from

the Defendants in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.  Cummings Manookian recovered a substantial monetary settlement for the Fitzgeralds in that matter.

74. Admit that Cummings Manookian did minimal work on the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied. Cummings Manookian filed a substantial number of pleadings in that case.

75. Admit that none of the work performed by Cummings Manookian in the Fitzgerald v Osborn matter resulted in any settlement or payment to the Fitzgeralds.

**RESPONSE:**

Denied. The work performed by Cummings Manookian in the matter directly caused the settlement payment.

76. Admit that Manookian PLLC has never received a transfer of funds from Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, according to its discovery responses, Manookian PLLC claims an interest in certain funds which Trustee believes to be property of this estate.

77. Admit that Manookian PLLC has never received any funds from Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, according to its discovery responses, Manookian PLLC claims an interest in certain funds which Trustee believes to be property of this estate.

78. Admit that Manookian PLLC has never received any funds belonging to Cummings Manookian.

**RESPONSE:**

21

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic. However, according to its discovery responses, Manookian PLLC claims an interest in certain funds which Trustee believes to be property of this estate.

79.     Admit that Manookian PLLC has never received any monies from Hagh Law.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic.

80.     Admit that Manookian PLLC has never received any monies from Afsoon Hagh.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian or Afsoon Hagh on this topic.

81.     Admit that Manookian PLLC has never received any monies from any person or any entity.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.

82.     Admit that Manookian PLLC does not now, nor has it ever, held a bank account.

**RESPONSE:**

Trustee is unable to admit or deny this request because the Trustee has not been afforded an opportunity to depose Brian Manookian on this topic.

83.     Admit that Hagh Law PLLC has never received any monies from Cummings Manookian.

**RESPONSE:**

Denied. Hagh Law PLLC received a distribution of a substantial sum of money from the Fitzgerald settlement that was property of Cummings Manookian.

22

84.     Admit that Hagh Law has never received any monies from any person intended for Cummings Manookian.

**RESPONSE:**

Denied.  Hagh Law PLLC received a distribution of a substantial sum of money from the Fitzgerald settlement that was property of Cummings Manookian.

85.     Admit that no person or entity has ever provided Afsoon Hagh, Hagh Law, or Manookian PLLC with monies that such person or entity instructed to be delivered to Cummings Manookian.

**RESPONSE:**

Denied.  Afsoon Hagh and Hagh Law received a transfer of funds that the Chancery Court of Williamson County directed to be held in trust.  However, the money was unilaterally transferred into an account in the name of Hagh Law and Afsoon Hagh.

Respectfully submitted,

/s/ Phillip G. Young
Phillip G. Young (TN 021087)
THOMPSON BURTON, PLLC
6100 TOWER CIRCLE, SUITE 200
FRANKLIN, TENNESSEE 37067
(615)-465-6008
phillip@thompsonburton.com

*Attorneys for Jeanne Ann Burton, Trustee*

23

**Certificate of Service**

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via United States Mail, first class, postage prepaid, and by electronic mail to the following persons:

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203
john@spragenslaw.com

Craig V. Gabbert
Bass, Berry & Sims PLC
150 Third Ave. S, Suite 2800
Nashville, TN 37201
cgabbert@bassberry.com

This 25th day of February, 2021.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

**EXHIBIT**

6



HARPETH
COURT REPORTERS

(615) 933-6786
www.harpethcourtreporters.com

```
 1            IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE MIDDLE DISTRICT OF TENNESSEE
 2                    NASHVILLE DIVISION

 3
   IN RE:                          ) Case No:
 4                                 ) 3:19-bk-07235
        CUMMINGS MANOOKIAN, PLLC,  ) Chapter 7
 5                                 )
                Debtor,            ) Honorable Charles
 6   _____) M. Walker
                                   )
 7   Jeanne Ann Burton, in her     )
     capacity as Chapter 7         )
 8   Trustee,                      )
                                   )
 9            Plaintiff,           )
                                   )
10   v.                            ) Adv. No:
                                   ) 3:20-ap-90002
11   Hagh Law, PLLC, Afsoon Hagh,  )
     Manookian PLLC,               )
12                                 )
                Defendants.        )
13   _____)

14

15

16                   Deposition of

17           JEANNE ANN BURTON, TRUSTEE

18        Taken on behalf of the Defendants

19           Commencing at 10:09 a.m.

20                 April 20, 2022

21

22

23                  Reported by:

24            Harpeth Court Reporters
                 Franklin, Tennessee
25        Sabrina L. Schneider, LCR No. 455
```

```
1   APPEARANCES:

2   For the Plaintiff:

3        PHILLIP YOUNG, ESQ.
         Thompson Burton, PLLC
4        One Franklin Park
         6100 Tower Circle, Suite 200
5        Franklin, Tennessee 37067
         (615) 465-6008
6        phillip@thompsonburton.com

7   For the Defendant HAGH LAW, PLLC, and AFSOON HAGH:

8        CRAIG V. GABBERT, JR., ESQ.
         Bass Berry & Sims
9        150 Third Avenue South, Suite 2800
         Nashville, Tennessee 37201
10       (615) 742-6277
         cgabbert@bassberry.com

11  For the Defendant MANOOKIAN, PLLC:

12
         JOHN SPRAGENS, ESQ.
13       Spragens Law, PLC
         311 22nd Avenue North
14       Nashville, Tennessee 37203
         (615) 983-8900
15       john@spragenslaw.com

16  Also Present:

17       Brian Manookian

18

19

20

21

22

23

24

25
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 246 of 662 PageID #: 3840
1618

```
               I N D E X

          INDEX OF EXAMINATIONS
                                        Page

By Mr. Spragens...................................5

By Mr. Gabbert.................................116

By Mr. Spragens...............................122


          INDEX OF EXHIBITS

Exhibit        Description              Page

No. 1  5/23/18 letter in re: Fitzgerald new
       Legal Representation and Engagement......45
No. 2  12/7/18 letter in re: Fitzgerald
       Withdrawal by Brian Manookian and
       Cummings Manookian......................50
No. 3  Plaintiff's Responses to Manookian
       PLLC's First Set of Written Discovery
       to the Plaintiff........................81
No. 4  4/19/17 letter in re: Goodwin/Keefer
       Legal Representation and Engagement......81
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 247 of 662 PageID #: 3841

1619

```
 1          The deposition of JEANNE ANN BURTON, TRUSTEE,
 2    was taken on behalf of the Defendants on the 20th day
 3    of April, 2022, in the offices of the U.S. Customs
 4    House, 701 Broadway, Nashville, Tennessee, for all
 5    purposes under the Federal Rules of Civil Procedure.
 6          The formalities as to notice, caption,
 7    certificate, et cetera, are waived.  All objections,
 8    except as to the form of the questions, are reserved
 9    to the hearing.
10          It is agreed that Sabrina L. Schneider, being
11    a Notary Public and Court Reporter for the State of
12    Tennessee, may swear the witness, and that the reading
13    and signing of the completed deposition by the witness
14    are reserved.
15
16
17
18
19
20                        *  *  *
21
22
23
24
25
```

```
 1                JEANNE ANN BURTON, TRUSTEE
 2   was called as a witness, and after having been first
 3   duly sworn, testified as follows:
 4                 E X A M I N A T I O N
 5   BY MR. SPRAGENS:
 6   Q.      Good morning, Ms. Burton.
 7   A.      Good morning.
 8   Q.      I'm John Spragens.  We've met before.  And you
 9   understand that you're here today to give a deposition
10   in the adversary proceeding that you filed as trustee
11   for Cummings Manookian, PLLC?
12   A.      Yes.
13   Q.      What is Cummings Manookian, PLLC?
14   A.      It was a professional limited liability
15   company, a law business, a law practice.
16   Q.      And is it currently in operation?
17   A.      No.
18   Q.      When did it cease operations?
19   A.      The date of the filing of the bankruptcy
20   petition.
21   Q.      And do you know what date that was?
22   A.      November 6, 2019.
23   Q.      Are you aware of what operations it was
24   conducting prior to November 6, 2019?
25   A.      Other than a general law practice, the
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 249 of 662 PageID #: 3843
1621

```
 1   practice of law.
 2   Q.      Let's take, for example, October of 2019.
 3   What operations was Cummings Manookian, PLLC,
 4   conducting during that time?
 5   A.      I think at that time the Shoemaker case was
 6   ongoing.  I don't think that case had been settled at
 7   that time.
 8   Q.      Had that case been filed as of October 2019?
 9   A.      Yes.
10   Q.      And that's the Shoemaker case you're talking
11   about?
12   A.      Yes.
13   Q.      When was that case filed?
14   A.      It's either February 2019 or February 2018,
15   but I think it was 2019.
16   Q.      And in October of 2019, what -- let me just
17   stop right now.  When I say "Cummings Manookian,"
18   you'll know that I mean Cummings Manookian, PLLC; is
19   that right?
20   A.      Yes.
21   Q.      What was Cummings Manookian doing in October
22   of 2019 on the Shoemaker case?
23   A.      I don't -- I do not know.  Let me think about
24   that.
25   Q.      Sure.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 250 of 662 PageID #: 3844
1622

A.     I don't know.  I know we recently got some
discovery on that, but I don't know specifically what
was going on in that case at that time.

Q.     Who was working for Cummings Manookian in
October of 2019?

A.     Afsoon Hagh was working on that case, and I
can't -- are you asking me for Cummings Manookian or
all of the lawyers that were working on that case at
that time?

Q.     Right now I'm just talking about Cummings
Manookian.

A.     Afsoon Hagh.  And without the date of
Mr. Manookian's suspension in front of me -- it was in
October of 2019.  I'm sorry.  I get confused on these
dates.  Unless Mr. Manookian was suspended at that
time, I believe he would have been working on that
case.

Q.     So as you sit here today, your best
recollection is that in October 2019, Mr. Manookian
was working for Cummings Manookian?

A.     He may have -- he may have already formed
Manookian, PLLC, but it's our position that --
well, it gets a little -- I know that Mr. Manookian,
Manookian, PLLC, as of -- was it August?  Without the
dates in front of me -- there is a recently produced

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 251 of 662 PageID #: 3845
1623

1    engagement letter that shows that Manookian, PLLC,

2    had a engagement letter with the plaintiff in the

3    Shoemaker case, and so I think there's still a

4    question about whether or not that ended Cummings

5    Manookian's representation in the case or whether it

6    continued on after that engagement letter.

7    Q.    In October 2019, who was employed by Cummings

8    Manookian?

9    A.    Well, it's one of our theories of the case

10    that even though Mr. Manookian was practicing under

11    the name of Manookian, PLLC, and Afsoon Hagh may have

12    been practicing under the name of Hagh Law, that they

13    were still conducting the business of Cummings

14    Manookian.

15    Q.    In October 2019, did Cummings Manookian make

16    any payments to Afsoon Hagh or Hagh Law?

17    A.    I do not know.

18    Q.    In October 2019, did Cummings Manookian make

19    any payments to Manookian, PLLC?

20    A.    I do not know.  I don't have bank records.

21    Q.    In October 2019, did Cummings Manookian make

22    any payments to Brian Manookian?

23    A.    I do not know.  I don't have bank records.

24    Q.    Do you have any information that Cummings

25    Manookian made any payments to Afsoon Hagh in 2019?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 252 of 662 PageID #: 3846

1624

A.      I know that Afsoon Hagh, and forgive me if
I mispronounce her name, she -- in 2019, she received
payment of a portion of the attorney fee in the
Fitzgerald case.

        At the meeting of creditors, I believe that
Mr. Manookian testified that Ms. Hagh -- Hagh?

Q.      That's how I say it.

A.      Okay.  Ms. Hagh worked in the firm but that
she was not compensated.

Q.      So it's your belief as you sit here today that
in 2019, prior to November 6, Afsoon Hagh was employed
by Cummings Manookian?

A.      Yes.

Q.      Do you have any records to suggest that Afsoon
Hagh was employed by Cummings Manookian in 2019?

A.      No.

Q.      Have you endeavored to obtain employment
records from the State of Tennessee with respect to
Cummings Manookian?

A.      No.

Q.      Do you know if those records are available?

A.      What -- I don't understand what type of
records you're referencing.

Q.      Well, you're aware that employers pay certain
taxes on behalf of employees; is that right?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 253 of 662 PageID #: 3847
1625

```
1    A.      Correct.

2    Q.      And they may pay workers' compensation, they

3    may obtain insurance on behalf of employees as well;

4    is that right?

5    A.      Correct.  They can.

6    Q.      Have you checked with the State of Tennessee

7    to determine whether Cummings Manookian was paying

8    taxes on behalf of any employees in 2019?

9    A.      I have not.

10   Q.      When was Manookian, PLLC, formed?

11   A.      I believe it was 2015, 2017.

12   Q.      Are you giving me two different --

13   A.      Yeah.  I don't remember without looking.  I

14   checked that, but -- and I know I asked Mr. Manookian

15   at the meeting of creditors, but I can't remember if

16   it was in '15 or '17.

17   Q.      A couple of times you've mentioned that you

18   would need to look at something.  What would you look

19   at to refresh your recollection of these dates?

20   A.      The -- what you pull from the secretary of

21   state for -- when you do the business search, that

22   information there, and also the -- I think the meeting

23   of creditors tape or notes.  It's recorded.

24   Q.      Back to Cummings Manookian.  In October of

25   2019, did Cummings Manookian file any cases in that
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 254 of 662 PageID #: 3848

1626

```
1    month?
2    A.       I do not know.
3    Q.       You don't have any evidence that it filed any
4    cases at that time?
5    A.       No.
6    Q.       Did Cummings Manookian send any correspondence
7    in October of 2019?
8    A.       There may have been correspondence sent in
9    the Shoemaker case, but no, I don't know that.  I
10   don't know if Cummings Manookian -- if you're talking
11   about on Cummings Manookian letterhead, if it sent
12   correspondence, I don't know that.
13   Q.       Do you have any evidence of any bank
14   transactions by Cummings Manookian in October of 2019?
15   A.       I do not.  I don't have bank records.
16   Q.       Did Cummings Manookian maintain a website in
17   October of 2019?
18   A.       I do not know that.
19   Q.       Did Cummings Manookian accept any new cases in
20   October of 2019?
21   A.       I do not know.
22   Q.       Did Cummings Manookian purchase anything in
23   October of 2019?
24   A.       I do not know.
25   Q.       Did Cummings Manookian file anything in court
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961     Document 6-2     Filed 10/04/23     Page 255 of 662 PageID #: 3849

1627

1  in October of 2019?

2  A.      I do not know.

3  Q.      What attorneys were working for Cummings

4  Manookian in October of 2019?

5  A.      Afsoon Hagh and Brian Manookian, if it was

6  during a period when he wasn't suspended, under other

7  firm names.

8  Q.      I'm a little confused about when you say that

9  they worked for Cummings Manookian but under other

10  firm names.  Can you explain what you mean by that?

11  A.      Yeah.  That may be more of a legal argument,

12  but one of the causes of action in the complaint is

13  successor liability or just continuation of the

14  business of Cummings Manookian with the same people,

15  same location, same cases, different names.

16  Q.      Was Brian Cummings still involved in Cummings

17  Manookian in October of 2019?

18  A.      If he was not suspended, I would say yes.

19  Q.      I asked about Brian Cummings.

20  A.      Oh, I'm sorry.  No.  I think he withdrew and

21  formed Cummings Law in -- he withdrew and formed

22  Cummings Law, I believe, sometime in 2018.

23  Q.      And you alleged in the complaint that that was

24  in September of 2018.  Does that sound correct to you?

25  A.      I don't know.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 256 of 662 PageID #: 3850
1628

```
 1   Q.      So after Mr. Cummings withdrew from Cummings
 2   Manookian, he formed a different corporate entity; is
 3   that correct?
 4   A.      That's correct.
 5   Q.      And do you know the name of that entity?
 6   A.      I believe it's Cummings Law.
 7   Q.      And did Mr. Cummings continue to work on
 8   behalf of Cummings Manookian, even though he had
 9   formed Cummings Law?
10   A.      I don't -- no, I don't think so, because there
11   were cases that he took with him when he left Cummings
12   Manookian.  And when those cases -- as those cases
13   settled, then there was a portion -- at least during
14   the receivership, there was a portion of the fees that
15   were paid to Cummings Manookian, fees and expenses.
16   Q.      Was Cummings Law a continuation of Cummings
17   Manookian in your view?
18   A.      No.
19   Q.      Why not?
20   A.      Because he always used Cummings Law after --
21   and I can only speak to the cases that were pending
22   during the receivership.  There was a list of about
23   15 cases.  And he took some of those cases and worked
24   on those and -- again, as I said, as they settled out.
25          On the Shoemaker case, when that case was
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 257 of 662 PageID #: 3851

1629

```
 1   filed, he was listed as Brian Cummings of Cummings
 2   Law and -- or whatever, the name of his firm, and
 3   Afsoon Hagh was as an attorney for Cummings Manookian.
 4   He wasn't operating out of the same office space.
 5   Everything was separate at that point.  And I think
 6   there was some type of withdrawal letter or email from
 7   the firm.
 8   Q.      So in your mind the distinction between Hagh
 9   Law and Manookian, PLLC, when they started their own
10   entities, versus Cummings Law is that they did not --
11   well, let's say one distinction is that they did not
12   send any notice to clients that they were starting
13   their own entities?
14   A.      I don't know whether they did that or not.  I
15   don't know that they did that.
16   Q.      And then it's also your position that they
17   used the same office space as distinct from Cummings
18   Law; is that right?
19   A.      Correct.
20   Q.      And then you made a reference to Ms. Hagh
21   filing something on behalf of Cummings Manookian; is
22   that right?
23   A.      Correct.
24   Q.      Do you know if she filed that or if Brian
25   Cummings filed that?
```

A.      Both of their names were on that Shoemaker
complaint.

Q.      And who signed that complaint?

A.      I don't recall.

Q.      Is it possible that Brian Cummings signed that
complaint?

A.      It's possible.

Q.      And would you expect that if he signed that
complaint, that he wrote Ms. Hagh's name on that
complaint?

A.      I would think he -- I don't know.  I don't
know who would have prepared the complaint and who
reviewed it before it was filed.  I would think they
both would, but I don't know that.

Q.      But you understand that when someone signs a
complaint, they are the person or entity making the
representation to the Court, correct?

A.      Yes.

Q.      And so if Mr. Cummings signed the complaint
and listed Afsoon Hagh at Cummings Manookian, that
would have been his representation to the Court, not
her representation, right?

A.      Correct.

Q.      And at the time that that complaint was filed,
Mr. Cummings was no longer involved in Cummings

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 259 of 662 PageID #: 3853
1631

Manookian, right?

A.      I think that's right.  I think that Shoemaker complaint was filed in 2019, and he withdrew in '18, 2018.

Q.      And so when he filed that, he was acting on behalf of Cummings Law; is that right?

A.      Correct.

Q.      Mr. Manookian's law license was suspended in December 2018; is that correct?

A.      Correct.

Q.      So as of --

A.      What happened in -- I'm not sure about that. Ask me that again.

Q.      Mr. Manookian's law license was temporarily suspended in December 2018; is that correct?  And I'm not trying to hide the ball.  I'm reading from Paragraph 10 of your complaint.

A.      Okay.  Yes.

Q.      So as of that time, Mr. Manookian was no longer acting on behalf of Cummings Manookian; is that right?

A.      He would have been suspended from the practice of law and should not have been.

Q.      And you don't have any evidence that Mr. Manookian was continuing to act on behalf of

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 260 of 662 PageID #: 3854
1632

```
 1    Cummings Manookian at that time, do you?
 2    A.      There's a privilege log that Ronette McCarthy
 3    produced that lists communications between her and
 4    Brian Manookian after that date, during the period
 5    where he was suspended, but obviously we don't have
 6    the -- haven't taken her deposition and don't have
 7    email addresses or other contact information.
 8    Q.      Right.  So you don't have any evidence that he
 9    continued to practice law after December 2018, do you?
10    A.      Other than what that privilege log may
11    represent.
12    Q.      And you're aware that when someone is
13    suspended from the practice of law, the Board of
14    Professional Responsibility allows them to transition
15    their files to other attorneys, correct?
16    A.      Yes.
17    Q.      So just because Mr. Manookian had
18    conversations about a case with somebody, that doesn't
19    mean he was engaged in the unauthorized practice of
20    law, does it?
21    A.      I don't -- I don't know.  I don't know.
22    Q.      But it wouldn't be your position in this
23    litigation that he was engaged in the unauthorized
24    practice of law simply because he had a conversation
25    about a case that he had to withdraw from?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 261 of 662 PageID #: 3855

1633

A.      Correct.

Q.      And he did, in fact, withdraw as counsel on
December 13th, 2018, from the Fitzgerald case, didn't
he?

A.      He did.  Well, he filed a motion that he was
withdrawing, but there was never an order submitted.

Q.      Did the Tennessee Supreme Court submit an
order that withdrew Mr. Manookian from all of his
cases?

A.      I do not know.

Q.      Have you made any effort to look at the
Supreme Court order dealing with Mr. Manookian's law
license?

A.      I've read the -- I'm trying to think if I've
read the actual order or just the -- I guess what you
would call the notice or the summary.

Q.      But, I mean, you don't dispute that there is a
court order that withdrew Mr. Manookian from his
cases, do you?

A.      I do not know that.

Q.      What's the significance -- I guess the first
question is:  So then you don't dispute that, do you?

A.      Dispute?

Q.      That there was a court order that withdrew
Mr. Manookian from his cases by operation of the

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 262 of 662 PageID #: 3856
1634

1    Tennessee Supreme Court?

2    A.      I don't know.

3    Q.      Is it your position that because you allege

4    he did not submit a proposed order that he somehow

5    continued to represent clients after December 13,

6    2018?

7    A.      There's one argument that Cummings Manookian

8    didn't withdraw, but in that same -- it's more like --

9    it's entitled a motion.  I think of it more as a

10   notice since there wasn't any order.  But it said that

11   Afsoon Hagh -- Hagh -- excuse me -- would continue to

12   represent the plaintiffs, and in the signature line it

13   had both -- Cummings Manookian and both of their

14   names.

15   Q.      On March 25th, 2019, Ms. Hagh formed Hagh Law;

16   is that correct?

17   A.      Correct.  Well, I'm not sure about that exact

18   date, but I think that's correct.

19   Q.      And she was the sole member of Hagh Law; is

20   that correct?

21   A.      I do not -- I think so, but I don't know that.

22   I don't know that.

23   Q.      Just as a general matter, you're aware that a

24   PLLC has to be formed by professionals; is that right?

25   A.      Correct.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 263 of 662 PageID #: 3857
1635

```
1   Q.      And in this context that would be attorneys?
2   A.      Correct.
3   Q.      And only attorneys can be the members of a
4   PLLC that is engaged in the practice of law; is that
5   right?
6   A.      Ask me that again, please.
7   Q.      I'll try to phrase it better.  The only people
8   who can be members of a PLLC engaged in the practice
9   of law are attorneys; is that right?
10  A.      I don't know that, but I would say that's
11  correct.
12  Q.      When was Cummings Manookian originally formed?
13  A.      It was either 2015 or 2017.  I want to say --
14  I want to say '15, but it could have been -- I think
15  it's '15, but, again, I'm not sure.
16  Q.      As of January 1, 2019, do you agree with me
17  that Cummings Manookian had no members who could
18  practice law?
19  A.      January 1, 2019?  Mr. Manookian was suspended
20  in December of 2019?
21  Q.      '18.
22  A.      '18.  I'm sorry.  And your question is January
23  2019?
24  Q.      Yes, ma'am.
25  A.      And Mr. Cummings had already withdrawn.  No
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 264 of 662 PageID #: 3858
1636

members.  I would say that's correct.

Q.     And so would you agree with me that without
any member authorized to practice law, Cummings
Manookian, PLLC, could not have been engaged in the
practice of law at that time?

A.     I don't -- I don't know the answer to that.  I
don't know.  I don't know if the associate in the firm
could continue the practice there.

Q.     And what associate are you thinking of?

A.     Or agent.  Afsoon Hagh or Hagh.

Q.     And what's the basis for your understanding
that her title was associate?

A.     That was just my impression at the meeting of
creditors, that she was an associate, that she worked
on cases in the firm, that she was the wife of
Mr. Manookian, but she was not compensated.

Q.     And do you have any evidence that she's ever
been a member of Cummings Manookian?

A.     No.

Q.     In fact, the only people who have ever been
members of Cummings Manookian are Brian Cummings and
Brian Manookian, correct?

A.     To my knowledge.  I don't know that 100
percent sure, but to my knowledge, I think that's
correct.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 265 of 662 PageID #: 3859
1637

```
 1   Q.      So you mentioned that you got an impression at
 2   the meeting of creditors that Ms. Hagh was functioning
 3   as an associate for Cummings Manookian; is that
 4   correct?
 5   A.      Yes, that she worked in the firm.
 6   Q.      And what gave you that impression?
 7   A.      That's just my recollection of the testimony
 8   at the meeting of creditors.
 9   Q.      When was the meeting of creditors?
10   A.      It was December -- early December 2019.  It's
11   usually about a month after the petition's filed.
12   Q.      And you're aware that Ms. Hagh formed Hagh
13   Law, PLLC, in March of 2019?
14   A.      I think that's correct.
15   Q.      And you're aware that as of March 2019, she
16   was signing pleadings with the signature block Hagh
17   Law, PLLC?
18   A.      I think maybe sometime in April she was.  I
19   think there were some other pleadings that may have
20   just -- may not have said Afsoon Hagh, but -- it
21   didn't say Cummings Manookian but just Afsoon Hagh
22   and the same address and telephone number as Cummings
23   Manookian.
24   Q.      And what address is that?
25   A.      It's 45 -- I can't remember the entire
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 266 of 662 PageID #: 3860
1638

```
 1   address.  It's 45-something.
 2   Q.      Is it 45 Music Square West?
 3   A.      Yes.
 4   Q.      Do you have any evidence that Ms. Hagh worked
 5   at 45 Music Square West?
 6   A.      That's the address that she used.
 7   Q.      So other than putting that address on filings,
 8   do you have any evidence that she maintained a
 9   physical presence there?
10   A.      I've never seen her there.  My recollection
11   from the meeting of creditors was that she worked at
12   Cummings Manookian, and Cummings Manookian practiced
13   law in that building, that 45 Music.
14   Q.      And your recollection of the meeting of
15   creditors is that someone testified that Ms. Hagh
16   worked at Cummings Manookian?
17   A.      That's my recollection.  Mr. Manookian was
18   the -- was the representative.  I remember he said
19   there was a paralegal and that Ms. Hagh practiced in
20   the firm, worked in the firm, worked on cases.  I
21   can't remember the exact testimony on that.  But that
22   she was not compensated.
23   Q.      And at the time that you heard that testimony,
24   was that describing current events or was it a time in
25   the past?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 267 of 662 PageID #: 3861
1639

A.     I don't recall.  I think we were going through
the history of the -- I don't recall.  We were going
through the history of the firm, like when it was
started, who the members were, how many employees did
it have, does it have.

Q.     And you've never heard anyone say that in 2019
Ms. Hagh worked for Cummings Manookian, have you?

A.     2019?  I think the receiver -- Phillip Young,
as receiver, felt that Ms. Hagh was continuing the
practice or working -- working on Cummings Manookian
cases.

Q.     And what's the basis for your understanding
that Mr. Young had that view?

A.     Because he had filed attorneys liens on the
recoveries in those -- in those cases.

Q.     And did you have any understanding as to why
Mr. Young, as receiver, believed that Ms. Hagh was
acting on behalf of Cummings Manookian in 2019?

A.     Well, Cummings Manookian was the only firm
that had an engagement letter.  There weren't any
other engagement letters.  The motion or the notice
that was filed in court said that Afsoon Hagh would
be -- would continue working on the case.

       There were pleadings that were filed by Afsoon
Hagh that either used Cummings Manookian or some --

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 268 of 662 PageID #: 3862
1640

or, you know, just her name and the address and
telephone number and maybe email addresses for
Cummings Manookian.

Q.      And is everything that you just testified
about with regard to 2019?

A.      I think it may be that in March or April of
2019 that Ms. Hagh started using Hagh Law on her
letterhead, sometime around -- around that time, maybe
in April.

Q.      And in the period between --

A.      Excuse me.  I'm sorry.  I didn't mean to
interrupt you.  And that had to do with the Fitzgerald
case with respect to the -- yeah.  I'm sorry.  That's
right.  That was the Fitzgerald case.  I was trying to
remember what might have been going on in the
Shoemaker case around that time.

Q.      In the period between December 13, 2018, and
March or April 2019, there were no attorney members of
Cummings Manookian who were authorized to practice
law; is that right?

A.      Between what dates?

Q.      December 13, 2018, and March or April of 2019.

A.      Members?

Q.      Yes, ma'am.

A.      Correct.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 269 of 662 PageID #: 3863
1641

```
 1   Q.     Did Cummings Manookian have a contract with
 2   Ms. Hagh to work for a certain period of time?
 3   A.     I do not know.
 4   Q.     Do you know if there was any written agreement
 5   between Cummings Manookian and Ms. Hagh regarding
 6   employment or contract work?
 7   A.     I do not know.
 8   Q.     Is it your position that everything that
 9   Ms. Hagh did in 2019 with respect to the practice of
10   law was on behalf of Cummings Manookian?
11   A.     I think that's a legal conclusion.  But
12   certainly Cummings Manookian had the only engagement
13   letter.  So if Ms. Hagh is going to claim that she did
14   any work on the case apart from Cummings Manookian,
15   it's my understanding that she has to -- that would be
16   some type of equitable argument and she would have to
17   produce time records, which I don't think there are
18   time records, or show the value of her services.
19          And, again, it's -- I think it's more to be
20   revealed by, you know, other discovery in the case and
21   whether or not there was successor liability or just
22   continuation of Cummings Manookian beyond that March
23   -- I think you were talking about a March or April
24   2019 date.
25   Q.     And it's your position that Ms. Hagh and
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 270 of 662 PageID #: 3864
1642

```
 1   Hagh Law, PLLC, are not entitled to the benefit of a
 2   separate corporate identity after March 25th, 2019; is
 3   that correct?
 4   A.      I don't know what you mean by they're not
 5   entitled to the benefit.
 6   Q.      Well, you would agree with me that PLLC or an
 7   LLC is a legal entity that has certain protections
 8   under the law?
 9   A.      Yes.
10   Q.      And you agree with me that Ms. Hagh formed a
11   PLLC in March of 2019?
12   A.      Correct.
13   Q.      But notwithstanding that, in your view, she's
14   not entitled to the legal protections of a separate
15   corporate entity at that time?
16   A.      And I don't know what you mean by legal
17   protections, but she certainly had the right to form a
18   PLLC.
19   Q.      And she did so?
20   A.      She did.
21   Q.      But you allege that the work that she did
22   during that time period was not on behalf of her PLLC
23   but it was on behalf of Cummings Manookian?
24   A.      Yeah, I think that's the -- that's the
25   question.  She didn't have a separate engagement
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 271 of 662 PageID #: 3865
1643

1    letter with the Fitzgeralds.

2    Q.      And you know that?

3    A.      It's the only one that's been produced to

4    us.  I think there was a -- I think in the Fitzgerald

5    discovery there was an unsigned engagement letter with

6    Hagh Law.

7    Q.      And that was on Hagh Law letterhead?

8    A.      I think it was.  It was just -- you know, that

9    discovery production was recent, and I'm still going

10   through, but I believe -- I believe that's correct.

11   Q.      In Paragraph 17 of your complaint, you state,

12   "Upon information and belief, Afsoon Hagh, now doing

13   business as Hagh Law, continued utilizing Cummings

14   Manookian's office space, Cummings Manookian's

15   furnishings and equipment, Cummings Manookian's

16   telephone numbers and email addresses all to work on

17   Cummings Manookian's files."

18           What's the basis for that allegation?

19   A.      I think that's just facts.  I don't understand

20   your question.

21   Q.      Well, how do you know that she continued using

22   Cummings Manookian's office space, for example?

23   A.      Well, there were pleadings that were being

24   filed, correspondence that listed that as her address.

25   And I think it's a reasonable assumption that if she's

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 272 of 662 PageID #: 3866

1644

```
 1   using that as her address, then that is where she's
 2   practicing law.
 3   Q.     Well, that's a mailing address, correct?
 4   A.     It's a physical address, law office address.
 5   Q.     Well, if she had listed a PO Box, you would
 6   not have assumed that she worked at the post office,
 7   correct?
 8   A.     Correct.
 9   Q.     So just because someone uses an address to
10   receive pleadings doesn't mean that they necessarily
11   work at that address, does it?
12   A.     If it was just a mailing address.  But I know
13   that a law firm operated out of that.
14   Q.     I'm sorry.  Go ahead.
15   A.     I forgot the -- I'm sorry.  Mr. Manookian
16   interrupted, so I lost my train of thought there.  Can
17   you repeat the question?
18   Q.     Sure.  Just for the record, he was whispering
19   to me, and I'm sorry if it distracted you.
20   A.     It was.
21   Q.     She used a mailing address that you were
22   aware that Cummings Manookian had, at which Cummings
23   Manookian had existed.  Is that what you're saying?
24   A.     Correct.
25   Q.     But you don't know that she ever set foot in
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 273 of 662 PageID #: 3867
1645

```
 1   that building, do you?
 2   A.      I do not.
 3   Q.      And you're aware that other attorneys use that
 4   same mailing address to receive mail?
 5   A.      I don't know that.
 6   Q.      Have you ever seen Rocky McElhaney's name
 7   associated with 45 Music Square West?
 8   A.      No.
 9   Q.      But the basis for your allegation that she
10   continued utilizing Cummings Manookian's office space
11   is solely that she put that address on documents
12   submitted to the Court?
13   A.      Correct.
14   Q.      What's the basis --
15   A.      At this point.  At this point.
16   Q.      And as you sit here today, you haven't
17   identified any other evidence to support that
18   allegation, about her continued use of office space?
19   A.      Other than what we've talked about.
20   Q.      What about your allegation that she continued
21   using Cummings Manookian's furnishings and equipment?
22   What's the basis for that allegation?
23   A.      The same assumption; that if she's using that
24   office space, then there is -- it's an assumption that
25   there's furniture, furnishings, computers, equipment,
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961     Document 6-2     Filed 10/04/23     Page 274 of 662 PageID #: 3868
1646

that sort of thing in there.  And the receiver --

Phillip Young, the receiver, actually went to that

office address.

Q.      And did he see Ms. Hagh at that office?

A.      I do not know.

Q.      So like the allegation that she continued

using that office space, the allegation that she

continued using furnishings and equipment is derived

solely from your knowledge that she listed 45 Music

Square West on pleadings?

A.      Correct.

Q.      No other knowledge?

A.      Correct.

Q.      Can you identify any specific furnishings and

equipment that she used at 45 Music Square West?

A.      No.

Q.      Can you identify the dates that she was using

the furnishings and equipment at 45 Music Square West?

A.      I don't know when she started working at

Cummings Manookian, but I know the building was sold

in May of '20 or '21.  '21?  Maybe '21.  So I would

think after that date.

Q.      But as you sit here today, you don't know that

she ever set foot at 45 Music Square West, do you?

A.      No.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 275 of 662 PageID #: 3869
1647

```
 1   Q.      The allegation that Ms. Hagh used Cummings
 2   Manookian's telephone numbers and email addresses,
 3   what's your basis for that allegation?
 4   A.      Pleadings and correspondence, emails.
 5   Q.      What email addresses are you referring to
 6   there?
 7   A.      I think it's -- is it afsoon@cm -- I don't
 8   remember.  There's one at cmtriallawyers or something.
 9   I don't remember specifically, but I have seen those
10   email addresses associated with her name that
11   contained some identification of Cummings Manookian in
12   it, CM.
13   Q.      Have you seen her use any other email
14   addresses?
15   A.      Probably, but I don't know that.
16   Q.      Did she have a Hagh Law email address?
17   A.      I would think so.  I think so.
18   Q.      Did she have a tennesseetriallawyers.com email
19   address?
20   A.      I know that I have seen a
21   tennesseetriallawyers but don't know who that's
22   connected to.
23   Q.      And your best recollection of the Cummings
24   Manookian email domain is cmtriallawyers.com; is that
25   correct?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 276 of 662 PageID #: 3870

1648

A.      That's one of them, but there may have been

afsoon@ -- I'm sorry.  I just don't recall.

Q.      Where would you look for that information,

about which email addresses she was using, pursuant to

your allegation in Paragraph 17?

A.      Pleadings and emails.

Q.      And do you know what telephone number Ms. Hagh

was using that you associated with Cummings Manookian?

A.      I can't recite the number to you, but it would

be one of -- it was the same number that was on the

Cummings Manookian letterhead.

Q.      And what dates was she using Cummings

Manookian telephone numbers and email addresses?

A.      I would -- my recollection is at least up

until April -- March/April of 2019.  And, again, I

haven't been through all of the discovery.

Q.      And the significance of that date in your mind

is that's when she started Hagh Law, PLLC?

A.      That, and I think after that point there are

some -- there are documents that show the Hagh Law and

maybe -- but the same address, same telephone number

for a while, and then I do think maybe the telephone

number changed.  And I can't recall if that was the

number that was still associated in some way with

Cummings Manookian.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 277 of 662 PageID #: 3871
1649

```
 1    Q.      And then you refer in Paragraph 17 to Cummings
 2  Manookian's client files.  Were those also Cummings
 3  Law's client files, or were some of them also Cummings
 4  Law's client files?
 5  A.      They were -- that referred to that list of
 6  15 or 16 cases at the time the complaint was filed and
 7  cases in which Cummings Manookian had an interest.
 8    Q.      And were those also Hagh Law's client files?
 9  A.      I don't believe so.
10    Q.      Did those files belong to the law firms or to
11  the client?
12  A.      Well, the file belongs to the client.  The
13  cause of action belongs to the client.
14    Q.      You alleged in Paragraph 17 that neither
15  Afsoon Hagh or Hagh Law compensated Cummings Manookian
16  for use of Cummings Manookian property or client
17  files; is that correct?
18  A.      Yes.  Now, client files are -- I'm referring
19  to the attorney fees and expenses that were due, not
20  the -- like, the file itself.
21    Q.      So your view is that the funds that went to
22  Hagh Law should have been paid to Cummings Manookian?
23  A.      Yes.
24    Q.      And then when you refer to property in
25  that paragraph, you're referring to office space,
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 278 of 662 PageID #: 3872

1650

```
 1   furnishings and equipment, telephone numbers and email
 2   addresses?
 3   A.      Correct.
 4   Q.      And we just discussed what you know about
 5   that.
 6   A.      Yes, sir.
 7   Q.      Has Cummings Manookian ever owned office
 8   space?
 9   A.      I don't know if it's ever owned office space.
10   Q.      Who owned 45 Music Square West?
11   A.      That's a good question.  It was a little
12   convoluted.  It seems like it was two trusts or two
13   other partnerships that were comprised of Brian
14   Manookian and Brian Cummings, is the best of my
15   recollection.  But I was never -- I never was provided
16   with a copy of the lease to see who the landlord was.
17   But it's some type of -- I don't even remember now the
18   name that's on the tax assessor's records as the
19   owner.
20   Q.      You agree that Cummings Manookian didn't own
21   that building, though?
22   A.      That is correct.
23   Q.      And there's nothing improper or unethical
24   about forming a corporation to own a building, is
25   there?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 279 of 662 PageID #: 3873
1651

```
 1   A.      No.
 2   Q.      It's pretty common, in fact?
 3   A.      I don't know if it's common, but there's
 4   nothing wrong with it.
 5   Q.      You don't take issue with the fact that there
 6   was a different corporate entity that owned 45 Music
 7   Square West?
 8   A.      Correct.
 9   Q.      Do you know if there was a lease between the
10   owner of 45 Music Square West and Cummings Manookian?
11   A.      Mr. Manookian said there was.
12   Q.      Do you know if there was a lease between 45
13   Music Square West and any other entity?
14   A.      No, I do not know that.
15   Q.      You don't have any information that Ms. Hagh
16   ever signed a lease at that building, do you?
17   A.      I do not.
18   Q.      Since you haven't seen the lease, you can't
19   say that Cummings Manookian was entitled to the
20   exclusive use of that property, can you?
21   A.      No, but my recollection is that Mr. Manookian
22   said they had the entire building at the meeting of
23   creditors.
24   Q.      Do you know how many floors that building is?
25   A.      I do not.  I know it's more than one story.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 280 of 662 PageID #: 3874
1652

```
 1   I've seen a picture of it.
 2   Q.      And I guess you never visited the building
 3   yourself?
 4   A.      No.
 5   Q.      But Mr. Young has?
 6   A.      Correct.
 7               MR. SPRAGENS:  We're at a good stopping
 8   point if you want to take a five-minute break, if you
 9   don't mind.
10               MR. YOUNG:  That's fine.
11               (Recess observed.)
12   BY MR. SPRAGENS:
13   Q.      Ms. Burton, we were talking earlier about the
14   furniture at 45 Music Square West.  Do you recall
15   that?
16   A.      Correct.
17   Q.      Do you know who owned the furniture at
18   45 Music Square West?
19   A.      No.  I assumed that the law firm owned it, but
20   I don't know.
21   Q.      You don't have any information telling you --
22   A.      No invoices, anything like that, no.
23   Q.      Do you know whether 45 MSW Partners owned that
24   furniture?
25   A.      I do not know.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 281 of 662 PageID #: 3875
1653

```
1   Q.      You mentioned Mr. Young's role as receiver in
2   the, sort of, predecessor to this case.  Do you recall
3   that?
4   A.      Correct.
5   Q.      Did you have any interactions with Mr. Young
6   when he was the receiver?
7   A.      No.
8   Q.      When did you decide to bring this adversary
9   proceeding?
10  A.      When we were -- and I say "we."  The hearing
11  that I -- after the case was filed and there was a
12  hearing in Lawrenceburg, and I forgot before -- what
13  that judge's name is, but there was an injunction
14  about the monies that the Court had frozen.  And so
15  there was discussion about -- between me and you and
16  Mr. Young and Brian Manookian -- I think Ron Stein was
17  there, but I don't know if he was in the room with us.
18          But we talked about now that the bankruptcy
19  court -- the bankruptcy had been filed, the bankruptcy
20  case would be the proper forum to settle that or make
21  that determination.  And so we negotiated, I guess, on
22  when the state court injunction would expire, and the
23  judge put that in an order.  And we had to get that
24  adversary proceeding filed before that injunction went
25  down in the -- in the adversary and the component of
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 282 of 662 PageID #: 3876

1654

```
 1    it for a turnover of the funds before that injunction
 2    expired.
 3    Q.      At the time of that state court hearing, had
 4    you already engaged Mr. Young as your attorney?
 5    A.      No.
 6    Q.      At what point did you do that?
 7    A.      It was before the adversary was filed, but I
 8    don't remember -- I don't remember the date, but I
 9    don't think it was -- I don't think it was before that
10    hearing in Lawrenceburg.
11    Q.      Do you have a written engagement agreement
12    with Mr. Young?
13    A.      No.
14    Q.      What sets out the terms under which he's
15    representing you in terms of his payment?
16    A.      The motion that's filed with the Court sets
17    out the compensation.
18    Q.      And was it solely your decision to bring it,
19    the adversary proceeding?
20    A.      Yes.
21    Q.      When did you make that decision?
22              MR. YOUNG:  Objection.  Asked and
23    answered.
24    BY MR. SPRAGENS:
25    Q.      You can answer.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 283 of 662 PageID #: 3877
1655

A.      When did I make the decision to -- after that
court hearing and I knew that the adversary needed to
be brought before that injunction expired.

Q.      And sometime between that hearing and when the
adversary proceeding was filed, you hired Mr. Young as
special counsel and sought court approval of that?

A.      Correct.

Q.      Prior to this case, did you ever work in the
same office as Judge Walker prior to his service as a
judge?

A.      No.  He was in the -- he was in the U.S.
Trustee's office.  And the panel trustees are, I guess
you would call, private or independent contractors.
We're not employees of the U.S. Trustee's office.

Q.      Did you have dealings with him when he worked
in the U.S. Trustee's office?

A.      Occasionally.  He was not -- each trustee is
kind of assigned an attorney that oversees them or
looks at their cases, you know, and -- but he was
not mine.  Maybe every once in a while, if he'd been
involved in a Chapter 11 case that got converted to
a Chapter 7 case and he'd been the U.S. attorney --
U.S. Trustee attorney on that case, then we might have
some communication about things that went on in the
Chapter 11.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 284 of 662 PageID #: 3878
1656

```
 1    Q.      Did you hear Judge Walker at our last hearing
 2    make a reference to being contacted by members of the
 3    bar about security concerns with respect to
 4    Mr. Manookian?
 5                    MR. YOUNG:  Objection.  Relevance.
 6                    THE WITNESS:  Yes.
 7    BY MR. SPRAGENS:
 8    Q.      Do you know anything about who contacted Judge
 9    Walker?
10    A.      I do not.
11                    MR. YOUNG:  Objection.  Relevance.
12                    THE WITNESS:  I'm sorry.  I do not.
13    BY MR. SPRAGENS:
14    Q.      You identified yourself as someone with
15    personal knowledge of facts in this case; is that
16    correct?
17    A.      As trustee, yes.
18    Q.      And just in broad strokes, can you give me
19    what areas of the case you have personal knowledge
20    about?
21    A.      Just records and matters that are presented
22    to me:  the petition; testimony at the meeting of the
23    creditors; conversations with -- specifically with
24    respect to that adversary proceeding; conversations
25    with the receiver, Mr. Young.  I mean, everything that
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 285 of 662 PageID #: 3879
1657

```
 1   I know comes to me secondhand.
 2         And we do some -- I won't call that
 3   investigating in our office, but if we get a business,
 4   we may look at the Secretary of State's records to see
 5   if it was active when it was dissolved, who the
 6   members were.  So it's really just what comes to me
 7   once a case is filed.
 8   Q.      When you say "conversations with the receiver,
 9   Mr. Young," what conversations are you talking about?
10   A.      When the case was filed and I was appointed
11   as trustee, the receiver, you know, contacted me and
12   said:  There's this receivership and, you know, this
13   is what's going on.  Any records that I have, I'll be
14   glad to give those to you.  There's money that's being
15   -- that will be collected that will now come to you in
16   the bankruptcy case, just because that was pretty much
17   going to stop everything in the receivership.
18   Q.      And that was prior to the December 2019
19   hearing in Lawrenceburg that you had those
20   conversations?
21   A.      Correct.
22   Q.      And you found out about the receivership
23   because Mr. Young called you?
24   A.      Correct.
25   Q.      Did he make any suggestions to you about a
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 286 of 662 PageID #: 3880
1658

1    course of action that you might want to pursue?

2    A.      No.  No.  Just kind of informing me.  I mean,

3    I get -- it's not unusual to get those kinds of cases

4    when you get appointed.  No, just that there was a

5    receivership and kind of what the status of that

6    receivership was.

7    Q.      How did you decide to attend the hearing in

8    Lawrenceburg?

9    A.      Well, the automatic stay was in effect, so I

10   wanted to make sure nobody was doing anything that

11   violated the automatic stay, but I was -- I viewed

12   that as a proceeding that was going to safeguard

13   potential assets of the bankruptcy estate.  And I'm

14   okay with that.  You know, sometimes secure creditors

15   will take possession of a vehicle or they'll secure a

16   piece of real estate or whatever.

17          So I just wanted to go to that hearing to --

18   basically to see what was going on, what the judge was

19   going to do.  And I knew a subject of that was going

20   to be the funds that the Court had ordered be held,

21   and I think there was a question of whether that

22   needed to be paid into the court or not.  So I had an

23   interest in seeing what happened to those funds.

24   Q.      Did there come a time when Mr. Young stopped

25   acting as receiver in the state court case?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 287 of 662 PageID #: 3881
1659

```
 1   A.      I think once the bankruptcy -- I would say
 2   once the bankruptcy case was filed and certainly when
 3   he became employed as attorney for the trustee.
 4   Q.      Who appointed Mr. Young as the receiver?
 5   A.      I think the Court did, the state court.
 6   Q.      Do you know which court?
 7   A.      No, I don't.  I don't know what judge that
 8   was.
 9   Q.      Is it your understanding that there was an
10   order appointing him receiver?
11   A.      Correct.
12   Q.      Was there ever an order ending the
13   receivership?
14   A.      I don't know if there is or not.
15   Q.      Did Mr. Young file anything to withdraw his
16   role as receiver or to terminate his role as receiver?
17   A.      I don't -- I don't know.  I don't know that.
18   I think there -- I don't know.
19   Q.      But it's your belief or understanding, at
20   least, that he stopped functioning as receiver when he
21   became special counsel to the trustee?
22   A.      Right.  Or before that, before that date.
23   Q.      And I'm sorry if I asked this already, but was
24   it your idea to hire Mr. Young or did he suggest to
25   you that you might want to hire him?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 288 of 662 PageID #: 3882

1660

A.      No.  Mine.  My idea.

Q.      With respect to your knowledge, which is what got us on to this topic, you don't have any firsthand knowledge of the facts that are at issue in this case prior to December of 2019, do you?

A.      Ask me that again, please.

Q.      You don't have any firsthand knowledge or personal knowledge of the facts in this case prior to your getting involved in December of 2019, do you?

A.      Correct.  Prior to the bankruptcy filing, I was not involved in any way.

Q.      So your knowledge is derivative of what Mr. Young told you as receiver, plus the materials and evidence that's been produced in this case so far?

A.      Right.  The petition that was filed in the case and the testimony at the meeting of creditors.

Q.      I'm going to hand you a letter with the date of May 23rd, 2018, at the top.  And there's an exhibit sticker on it, but that exhibit sticker is not actually relevant to this deposition.

                MR. SPRAGENS:  So we'll mark that as Exhibit 1.

                (Marked Exhibit No. 1.)

BY MR. SPRAGENS:

Q.      Have you seen that letter before?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 289 of 662 PageID #: 3883
1661

1    A.      I have.

2    Q.      And what is that letter?

3    A.      It's an engagement letter between Cummings

4    Manookian and Marty and Melissa Fitzgerald.

5    Q.      And you don't have any reason to doubt the

6    authenticity of this letter, do you?

7    A.      Well, I have seen another engagement letter

8    where the first page is the same and I believe the

9    third page is the same, where the second page, second

10   paragraph under Contingency Fees, mentions Ronette

11   McCarthy and her being paid a fee in the case.

12   Q.      And does that mean that you doubt the

13   authenticity of this letter?

14   A.      No.  I believe there was an engagement letter.

15   Q.      Is the other letter that you just described

16   also dated May 23rd, 2018?

17   A.      It is.  It has the same change in the date and

18   initial, and the signatures look the same.  The date's

19   the same.

20   Q.      So the other version of the letter that you've

21   seen has a different Page 2?

22   A.      Correct.

23   Q.      But both versions of that letter have the same

24   paragraphs on Page 3 under Termination of Professional

25   Relationship, correct?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 290 of 662 PageID #: 3884
1662

```
1    A.      I believe so.

2    Q.      And this letter is an agreement between

3    Cummings Manookian and Marty and Melissa Fitzgerald?

4    A.      Correct.

5    Q.      And on May 23rd of 2018, Mr. Manookian had the

6    authority to enter into this agreement on behalf of

7    Cummings Manookian, correct?

8    A.      Correct.

9    Q.      And as of that date, he was a member of

10   Cummings Manookian?

11   A.      Correct.

12   Q.      And you agree that that letter is a binding

13   contract between Cummings Manookian and the

14   Fitzgeralds?

15   A.      Correct.

16   Q.      And in the second paragraph on Page 3 of

17   this letter, it says, "You have the right to change

18   attorneys to another attorney or firm at any time by

19   sending us a letter to that effect.  This right to

20   discharge this firm as your representative requires

21   that you remain responsible for all costs and expenses

22   incurred prior to receipt of your letter.

23          "If you terminate the representation before

24   the conclusion of the matter, we will additionally be

25   entitled to receive, from the proceeds of any
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 291 of 662 PageID #: 3885

1663

```
 1   recovery, a reasonable fee for the work we have
 2   performed based upon the amount of time required, the
 3   complexity of the matter, the time frame within which
 4   the work was performed, our experience, ability,
 5   reputation, the responsibility involved, and the
 6   results obtained."
 7          Did I read that paragraph correctly?
 8   A.     Yes.
 9   Q.     And then the next paragraph says, "We may
10   choose to withdraw from representing you and request
11   in writing that you obtain another attorney or firm to
12   represent you.  A withdrawal by this firm does not
13   relieve you of the responsibility to pay advanced
14   costs."
15          Did I read that correctly?
16   A.     Yes.
17   Q.     So you would agree with me that this letter
18   states that in the event Cummings Manookian withdraws
19   from a representation -- or from this representation
20   with the Fitzgeralds, it is entitled to recover its
21   costs; is that correct?
22              MR. YOUNG:  Objection to the extent it
23   calls for a legal conclusion, but you can answer.
24              THE WITNESS:  I do think its entitled to
25   costs, but I think it's silent -- I think where you're
```

```
 1   going is about the fees, and I think it's silent as
 2   to that.  And also where it says, "We say choose to
 3   withdraw from representing you," I don't know that --
 4   the facts under which Brian Manookian withdrew were
 5   not of his own choosing.  And it's our position, my
 6   position, that Afsoon Hagh continued to represent the
 7   Fitzgeralds.
 8   Q.      You agree with me that the first paragraph
 9   that I read entitles Cummings Manookian to receive an
10   attorney's fee in the event the Fitzgeralds terminate
11   the relationship, right?
12              MR. YOUNG:  Object to the extent it calls
13   for a legal conclusion.
14              THE WITNESS:  Correct.
15   BY MR. SPRAGENS:
16   Q.      But that language does not appear in the next
17   paragraph which spells out the parties' rights in the
18   event Cummings Manookian chooses to withdraw; is that
19   correct?
20   A.      Correct.
21   Q.      You don't dispute that this letter was binding
22   on Cummings Manookian at the time that the agreement
23   was entered into, do you?
24   A.      No, I don't dispute that.
25   Q.      Let's look at another exhibit.  I just handed
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 293 of 662 PageID #: 3887
1665

```
1    you a letter dated December 17, 2018, which we will
2    mark as Exhibit 2 to this deposition.  Do you see
3    that?
4    A.      Yes.
5                  (Marked Exhibit No. 2.)
6    BY MR. SPRAGENS:
7    Q.      This is a letter sent by Mr. Manookian on
8    behalf of Cummings Manookian to the Fitzgeralds; is
9    that correct?
10   A.      That's what it purports to be, yes.
11   Q.      And this letter was produced to the receiver
12   prior to the bankruptcy being filed; is that correct?
13   A.      I think so.  I don't know about that.  I know
14   Mr. Manookian gave me a copy of this.
15   Q.      Are you aware whether Mr. Young had a copy of
16   this letter when he was serving as receiver?
17   A.      I think so, but I'm not sure.
18   Q.      And this letter -- well, do you dispute that
19   this letter was sent to Mr. and Mrs. Fitzgerald?
20   A.      I don't know if it was or not.
21   Q.      Do you see that it has Mr. Manookian's
22   signature on it?
23   A.      Correct.
24   Q.      And in this letter he informs the Fitzgeralds
25   that he's been suspended from the practice of law
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 294 of 662 PageID #: 3888
1666

```
 1   and that he and Cummings Manookian are required to
 2   withdraw from the representation; is that correct?
 3   A.      That's what it says, yes.
 4   Q.      And that's because Brian Cummings was no
 5   longer with Cummings Manookian and Brian Manookian was
 6   suspended from the practice of law, right?
 7   A.      I don't know why.  I'm sorry.  Ask that
 8   question again.
 9   Q.      Well, is it your understanding that as of
10   December 7th, 2018, Cummings Manookian would be
11   required to withdraw from representing the Fitzgeralds
12   because there were no members of Cummings Manookian
13   with an active law license?
14              MR. YOUNG:  Object to the extent it calls
15   for a legal conclusion.
16              THE WITNESS:  And I don't know about
17   that.  I know that Brian Manookian had to withdraw.
18   Whether Cummings Manookian had to withdraw, I'm not --
19   I don't know.  And I think they must have thought they
20   didn't because Afsoon Hagh continued representation of
21   the Fitzgeralds.
22   BY MR. SPRAGENS:
23   Q.      You don't dispute that as of December 7th,
24   2018, Mr. Manookian had the authority to bind Cummings
25   Manookian, do you?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 295 of 662 PageID #: 3889
1667

```
 1   A.      I don't know.
 2   Q.      Well, you know that in December of 2018 he was
 3   a member of Cummings Manookian, right?
 4   A.      Yes, sir, he was.  He was.  I don't remember
 5   what his actual suspension date was, but I know that
 6   he was required to inform clients of his suspension.
 7   Q.      And my question is:  Wouldn't you agree
 8   with me that Mr. Manookian, as a member of Cummings
 9   Manookian, was able to bind Cummings Manookian to an
10   agreement as of December 2018?
11   A.      I don't know the answer to that.
12   Q.      And why not?
13   A.      Because I don't know the answer to that.
14   Q.      Well, a minute ago we talked about the May
15   2018 letter in which you agreed Mr. Manookian could
16   enter into an agreement on behalf of Cummings
17   Manookian, right?
18   A.      Right.
19   Q.      So here we are on December 7, 2018.  He's sent
20   a letter.  And he has the authority to bind Cummings
21   Manookian as of that date, too, doesn't he?
22   A.      I don't know.  He was the only member of
23   Cummings Manookian at that -- at that time.
24   Q.      And you would agree with me that a member can
25   bind a PLLC?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 296 of 662 PageID #: 3890

1668

```
 1    A.       Yes.   Yes.

 2    Q.       So in December of 2018, as the sole member of

 3    Cummings Manookian, Mr. Manookian had the capacity to

 4    make agreements on behalf of Cummings Manookian; is

 5    that right?

 6    A.       I think he was.   I don't know that this was an

 7    agreement.

 8    Q.       Well, you see here, the second paragraph

 9    of this letter says, "Pursuant to our legal

10    representation and engagement agreement" -- do you

11    understand that to refer to the May 23rd, 2018,

12    letter?

13    A.       Yes.

14    Q.       -- "Cummings Manookian is entitled to

15    reimbursement of certain advanced costs and expenses

16    in this case.   I estimate those costs and expenses to

17    be less than $3,000.   Because Cummings Manookian is

18    withdrawing from this matter, it will not be entitled

19    to any portion of an attorney's fee and specifically

20    disclaims the same under the terms of our prior

21    engagement agreement.   You may provide this letter to

22    any future attorneys representing you in this case as

23    confirmation of the same."

24             Did I read that correctly?

25    A.       Yes.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 297 of 662 PageID #: 3891
1669

Q.    And so this letter is invoking the last
provisions of the May 23rd, 2018, attorney-client
agreement; is that right?

A.    Well, I think that client agreement was silent
on whether or not Cummings Manookian would be entitled
to a fee.

Q.    I understand that that's your position.  But
Cummings Manookian said it wasn't entitled to a fee in
2018, correct?

A.    Correct.

Q.    And Mr. Manookian had the authority to make
that decision on behalf of Cummings Manookian in
December of 2018, did he not?

A.    Correct.

Q.    So as of December 7th, 2018, Cummings
Manookian disclaimed any entitlement to fees in the
Fitzgerald matter, correct?

A.    That's what the letter states.  I never was
furnished with any proof that the Fitzgeralds received
this letter.

Q.    So if Mr. Fitzgerald testifies that he
received this letter, would that satisfy you that
Cummings Manookian claimed any fee in the Fitzgerald
case on December 7, 2018?

A.    I don't know.  It will depend on what

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 298 of 662 PageID #: 3892
1670

```
 1  Mr. Fitzgerald has to say about that.  I would like to
 2  see the certified -- signed, certified mail receipt.
 3  And regardless of what the letter says, the motion
 4  that was filed with the court said that Brian
 5  Manookian was withdrawing but that Afsoon Hagh was
 6  going to continue to represent the plaintiffs, and
 7  that was signed by Mr. Manookian and it had Afsoon
 8  Hagh's name on it and the Cummings Manookian
 9  information and name.
10  Q.      But you don't disagree with me that in
11  December 2018, Cummings Manookian wrote that it
12  disclaimed any fee in the Fitzgerald case?
13  A.      Brian Manookian did, yes.
14  Q.      And Brian Manookian spoke for Cummings
15  Manookian when he did that, correct?
16  A.      Correct.
17  Q.      And shortly after that date, there were no
18  licensed attorneys as member of Cummings Manookian,
19  correct?
20  A.      No.  Well, I would say that -- well, no,
21  that's not correct, I don't think, because I think
22  Brian Manookian was still a member of Cummings
23  Manookian.  He was just suspended temporarily, and
24  then later he was reinstated.  But I think he remained
25  a member of Cummings Manookian, but he was suspended.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 299 of 662 PageID #: 3893
1671

```
 1   His law license was suspended.

 2   Q.      Right.  So he did not have an active law

 3   license at that time?

 4   A.      Correct.

 5   Q.      And therefore, soon after this letter was

 6   sent, there were no members of Cummings Manookian with

 7   an active law license?

 8   A.      Active, correct.

 9   Q.      But it's your position in this case that

10   Cummings Manookian did not withdraw from representing

11   the Fitzgeralds in December 2018?

12   A.      Correct.

13   Q.      You'd agree with me, based on the way you

14   described the notice of withdrawal mentioning that

15   Ms. Hagh was going to continue to work on it, that it

16   was silent about the firm that she was affiliated

17   with?

18   A.      The signature block on that pleading was

19   Cummings Manookian.

20   Q.      And was that pleading Cummings Manookian's

21   withdrawal?

22   A.      It was Brian Manookian's withdrawal.

23              MR. SPRAGENS:  I think we can put that

24   the exhibit aside now.

25   BY MR. SPRAGENS:
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 300 of 662 PageID #: 3894

1672

```
 1   Q.       With respect to the allegations in your
 2   complaint, you allege that Afsoon Hagh, Hagh Law, and
 3   Manookian, PLLC, converted property; is that right?
 4   A.       Correct.  That was -- yes.
 5   Q.       And what's the property that you allege was
 6   converted or wrongfully appropriated?
 7   A.       Office space, furnishings, intellectual
 8   property like emails, telephone numbers, and then
 9   fees that were -- I don't know that that would be
10   considered under the property part, but the fees that
11   I claim are due to Cummings Manookian.
12   Q.       And the sole source of information for that
13   allegation is the pleadings that Ms. Hagh signed?
14   A.       Correct.
15   Q.       Did Manookian, PLLC, have a bank account?
16   A.       Yes.  Yes.
17            I'm sorry.  Manookian, PLLC?
18   Q.       Yes, ma'am.
19   A.       I don't know.
20   Q.       Who do you anticipate will have more
21   information about the facts that underlie your claim
22   for conversion?
23   A.       Brian Manookian, Afsoon Hagh, Brian Cummings.
24   And my attorney may have an idea that there are more,
25   but those are the ones that I can think of.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 301 of 662 PageID #: 3895

1673

```
1   Q.      And before you filed this complaint, did you
2   attempt to talk with anybody who might have more
3   information about the conversion to get that
4   information?
5   A.      Only the receiver -- or the person who had
6   served as receiver.
7   Q.      So the receiver, Mr. Young, is the source of
8   all your knowledge about the first claim in your
9   complaint?
10              MR. YOUNG:  Objection.  I don't think
11  that's what she testified to.
12              THE WITNESS:  What was the question
13  again?
14  BY MR. SPRAGENS:
15  Q.      The receiver, Mr. Young, was the source of all
16  the factual information that underlies the conversion
17  claim in your complaint?
18  A.      That, and the petition and the testimony at
19  the meeting of creditors.
20  Q.      Do you know if Mr. Young tried to get that
21  information from Mr. Manookian, Mr. Cummings or
22  Ms. Hagh when he was serving as receiver?
23  A.      I know that during the receivership he had
24  conversations with Mr. Manookian and Mr. Cummings,
25  maybe even Mr. Hammervold, but that wouldn't -- that
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 302 of 662 PageID #: 3896
1674

1  probably wouldn't have anything to do with this, but I
2  don't know about Afsoon Hagh.
3  Q.    And it was Mr. Young, when serving as
4  receiver, who developed this understanding that there
5  had been some conversion that had taken place; is that
6  right?
7  A.    Yes.
8  Q.    And did he tell you that in the conversations
9  that you had after you were appointed trustee?
10 A.    Yes.  And when I had employed him as special
11 counsel and we were discussing filing the complaint
12 and what would be in the -- you know, what our
13 possible causes of action were.
14 Q.    But in that first conversation where he called
15 you up and he said, I'm the court-appointed receiver
16 in this case and here's what's gone on, he basically,
17 more or less, told you that there had been this
18 conversion that had taken place?
19 A.    We really didn't talk about anything in detail
20 about that, just that the case was filed and I was
21 appointed the trustee.  He had information because he
22 was receiver in a case that involved the debtor.
23 Q.    At what point did he tell you that he believed
24 that Ms. Hagh was continuing to practice law on behalf
25 of Cummings Manookian?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 303 of 662 PageID #: 3897
1675

```
 1   A.      After the case was filed, when we were
 2   discussing the complaint, the receivership proceeding
 3   and the complaint.
 4   Q.      And he drafted the complaint, right?
 5   A.      He did.
 6   Q.      With respect to the second claim for relief,
 7   State Law and Fraudulent Transfer, you allege that
 8   Ms. Hagh, Hagh Law, and Manookian, PLLC, wrongfully
 9   took the property of Cummings Manookian in attempt to
10   hinder, delay, and defraud creditors of Cummings
11   Manookian; is that right?
12   A.      Right.
13   Q.      And the property that you're talking about
14   there is the property that you discussed earlier,
15   specifically intellectual property, furniture, case
16   files.  What else?
17   A.      Correct.
18   Q.      Office space?
19   A.      Correct.
20   Q.      Anything different about the property in that
21   count from what we discussed earlier?
22   A.      No.
23   Q.      And, again, with respect to this count, you
24   don't have independent knowledge, other than from
25   Mr. Young, about the facts in this -- that underlie
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 304 of 662 PageID #: 3898
1676

the fraudulent transfer claim, do you?

A.     I know that the settlement funds from the Fitzgerald case were transferred to Afsoon Hagh or were paid out to Hagh Law -- I'm sorry I keep mispronouncing that -- Hagh Law, and I know that from the receivership pleadings that I was looking at before that hearing in Lawrenceburg.

Q.     And those would be pleadings that Mr. Young drafted?

A.     Correct.  And the responses to those.

Q.     And it's Mr. Young who decided what claims would be brought in this case?

A.     We discussed those.  I mean, some of them are -- you know, yes, that's the purpose of having an attorney, you know, what the facts bear out and what the causes of action would be, but I could see that there was potentially a fraudulent conveyance action.

Q.     Based on what?

A.     That there were funds to which -- or accounts receivable to which Cummings Manookian was entitled that were transferred or conveyed to another -- another party.  And that doesn't necessarily mean that the recipient did anything wrong or illegal.  It's just that that's a provision of the bankruptcy fraudulent transfers.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 305 of 662 PageID #: 3899
1677

```
 1    Q.      But you developed the understanding that

 2    Cummings Manookian was entitled to those funds from

 3    Mr. Young?

 4               MR. YOUNG:  Objection.  Attorney-client

 5    privilege.  We're getting awfully close now.  She's

 6    talked about -- I was already retained when this

 7    complaint was drafted.  So I'm saying attorney-client

 8    privilege and instruct her not to answer.

 9    BY MR. SPRAGENS:

10    Q.      Okay.  Don't tell me anything that Mr. Young

11    told you as your attorney, but in those conversations

12    that you had with Mr. Young prior to becoming your

13    attorney, you developed an understanding that Cummings

14    Manookian was entitled to these funds?

15    A.      Yes.  In talking to Steve Lefkovitz, who was

16    the debtor's bankruptcy attorney, I asked about those

17    funds, and that's when I was told that those funds

18    weren't property of the bankruptcy estate, and

19    Mr. Manookian also told me that, what his position

20    was.

21    Q.      So Mr. Manookian, as the sole member of

22    Cummings Manookian, and Mr. Lefkovitz, as the attorney

23    for Cummings Manookian, both told you that that was

24    not Cummings Manookian's property, correct?

25    A.      That's what they were claiming.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 306 of 662 PageID #: 3900

1678

```
 1   Q.      That's what they told you?

 2   A.      Yes.  Yes.

 3   Q.      And Mr. Young, as receiver, said it was

 4   Cummings Manookian's property?

 5   A.      He believed it was.

 6   Q.      With respect to the state law and federal

 7   fraudulent transfer claims, what are the fraudulent

 8   transfers that are at issue?

 9   A.      Specifically at the -- well, at the time that

10   that complaint was filed, the Fitzgerald funds and

11   then also the Shoemaker funds.  There were other --

12   yeah, those.  Because the other cases, I believe

13   Mr. Cummings was handling those and had paid either --

14   well, for the ones that are in the complaint, would

15   be handing Cummings Manookian's portion over to the

16   trustee.

17   Q.      And that was with respect to Fitzgerald at

18   the time the complaint was filed and subsequently

19   Shoemaker?

20   A.      Right.  I knew Shoemaker was out there that

21   hadn't been settled.  I knew those two cases were out

22   there that were originally Cummings Manookian cases

23   that had not been settled.

24   Q.      The fourth claim for relief is Tortious

25   Interference with Contract.  Tell me your
```

```
 1   understanding of that allegation, please.
 2   A.      That to the extent that -- or Cummings
 3   Manookian was entitled to the attorney fees, and
 4   specifically I think that was speaking to the
 5   Fitzgerald case -- were entitled to the fees by virtue
 6   of the engagement letter, and to the extent that
 7   Brian Manookian or Afsoon Hagh interfered with that
 8   contractual agreement to breach or to break that
 9   contract or make others think that there was no longer
10   an agreement.
11   Q.      So, you know, Brian Manookian is not a party
12   to this case, right?
13   A.      No, he is not.
14   Q.      And, in fact, you didn't bring this claim
15   against Manookian, PLLC, only against Afsoon Hagh and
16   Hagh Law, correct?
17   A.      No.  Manookian, PLLC, is listed as a
18   defendant.
19   Q.      Right.  But the tortious interference with
20   contract claim is just against Afsoon Hagh and Hagh
21   Law, right?
22   A.      That may be right.  I think it's listed
23   underneath each count.
24   Q.      And you say that "Afsoon Hagh and Hagh Law
25   coerced the Fitzgerald case defendants from remitting
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 308 of 662 PageID #: 3902
1680

1  to Cummings Manookian $1.35 million in attorney's

2  fees."

3  A.      When that case settled, I think there was

4  discussion about the payment of those -- of the

5  settlement proceeds.  And those proceeds ended up

6  being paid to -- were instructed -- I think the order,

7  the settlement order was changed to show Afsoon Hagh,

8  Hagh Law, as the attorney for the plaintiff, and the

9  settlement proceeds were to be paid or were paid to

10  Afsoon Hagh.

11  Q.      When you say the order was changed, you're not

12  saying that there was funny business/meddling with the

13  Court order?

14  A.      No, no.  Mr. Meisner, I believe, was

15  instructed to change the order.

16  Q.      Because Mr. Meisner, as far as you know,

17  thought that Ms. Hagh and Hagh Law were representing

18  the Fitzgeralds, right?

19  A.      Apparently not.  And, again, this is discovery

20  that I'm just seeing, but there was an email where --

21  and I think it was Brian Manookian who emailed and

22  said the order looks fine but it needs to be changed

23  to show that Afsoon Hagh is attorney for the

24  plaintiffs.  And I haven't seen the order, so --

25  before or after, so I don't -- I don't know what it

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 309 of 662 PageID #: 3903
1681

```
 1   said before.  I don't know what it said before.
 2   Q.      Over a year before you filed this complaint,
 3   Mr. Manookian, on behalf of Cummings Manookian, had
 4   withdrawn the firm from that representation, correct?
 5   A.      I'm sorry.  Ask me that again.
 6   Q.      Over a year before you filed this complaint,
 7   Mr. Manookian had sent that letter withdrawing
 8   Cummings Manookian from representing the Fitzgeralds,
 9   correct?
10   A.      I don't know if he sent that letter, but there
11   is -- I've seen the letter.
12   Q.      And at the time you filed this case, you knew
13   about that letter, did you not?
14   A.      Yes.
15   Q.      So at the time you filed this case, you were
16   aware that Mr. Manookian had written a December 2018
17   letter withdrawing Cummings Manookian from
18   representing the Fitzgeralds?
19   A.      I knew there was a letter and I knew when it
20   was dated, but I don't know anything beyond that.
21   Q.      When you referred to the engagement agreement
22   in Paragraphs 57 to 61 of the complaint, which are the
23   tortious interference paragraphs, you're referring to
24   what we looked at earlier today as Exhibit 1, correct?
25   A.      I'm sorry.  Ask me that again.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 310 of 662 PageID #: 3904
1682

Q.      When you use the term "the engagement
agreement" with the Fitzgerald plaintiffs, you're
referring to what we looked at earlier in this
deposition, Exhibit 1?

A.      Correct, the engagement letter with the
Fitzgeralds, yes.

Q.      But you don't mention the December letter in
this complaint anywhere, do you?

A.      No.

Q.      Does Ms. Hagh represent any clients through
Hagh Law, in your view, or has all of Hagh Law's work
been done on behalf of Cummings Manookian?

A.      I think we have alternative theories on that.
Are you -- and you're talking about the Fitzgeralds or
the -- or the Shoemaker case?  Is that what you're --

Q.      I just mean in general.  Generally speaking,
is 100 percent of Hagh Law's work on behalf of
Cummings Manookian?

A.      I would say no.

Q.      And how do you know --

A.      And I don't know that because -- I guess I'll
say I don't know that because I don't know what other
cases she's had or worked on.

Q.      And how do you determine what work by Hagh Law
is on behalf of Cummings Manookian and what is on

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 311 of 662 PageID #: 3905
1683

behal of Hagh Law?

A.      I think that's what we're in the process
of determining.  You know, there's -- there are
engagement letters for both of those cases with
Cummings Manookian.  And at some point Afsoon Hagh
did form a PLLC -- I think it's been administratively
dissolved now -- and in some pleading -- and at some
point started using "Hagh Law" on her signature lines
and emails.  But sometime prior to that, maybe after
that, it was just Afsoon Hagh with the Cummings
Manookian address and information.

Q.      So in your mind when Ms. Hagh uses "Hagh Law"
on a pleading, that's on behalf of Hagh Law?

A.      Yes.

Q.      And then when she is silent about her
affiliation, you believe that there she's working on
behalf of Cummings Manookian?

A.      It could be, yes.

Q.      It could be?

A.      Yes, in those cases.

Q.      When you say "those cases," what do you mean?

A.      Fitzgerald case and the Shoemaker case is the
only cases I know about.

Q.      So if Ms. Hagh went back and forth between
using no affiliation and then using Hagh Law and then

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 312 of 662 PageID #: 3906
1684

```
 1   using no affiliation again, in your view she was
 2   wearing different hats at that time?
 3   A.      It's very confusing.  Yes.
 4   Q.      But yes, that's your view?
 5   A.      Yes.
 6               MR. SPRAGENS:  Let's take another quick
 7   break and hopefully we won't need to be here all day.
 8               (Recess observed.)
 9   BY MR. SPRAGENS:
10   Q.      Ms. Burton, in Paragraph 23 of your complaint,
11   there's a list of cases.  Do you remember that list?
12   A.      Correct.
13   Q.      Are you still seeking fees in all of these
14   cases on behalf of Cummings Manookian?
15   A.      I think I've received -- I've received funds
16   -- besides Fitzgerald and Shoemaker, I've received
17   funds, I think, in five of those cases through
18   Mr. Cummings.  There's a couple that did not produce
19   anything, and there are three -- I don't remember
20   which three, but there are three that I'm checking on
21   now to see if there are going to be any fees out of
22   that case.
23   Q.      Do you need a copy of this list?
24   A.      Sure.
25   Q.      There's the complaint, Paragraph 23.  Can you
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 313 of 662 PageID #: 3907
1685

identify which cases Cummings Manookian is owed money
in from the defendants?

A.      The Fitzgerald case and the Shoemaker case.
And there are three other cases, but I couldn't tell
you, without looking at my Form-1 that I keep in the
bankruptcy case, what other three that I haven't
received money in or that I haven't marked that
there's no money to be pursued in those cases.  I
do think in Manookian versus Pennsylvania Higher
Education, et al., I've marked that one off of my
list.

Q.      There were no money damages in that case to
begin with, were there?

A.      I don't remember.  This was on the list of
cases that were being pursued in the receivership.
I think this list was provided by Mr. Cummings and
Mr. Manookian.  I think there were other cases, maybe,
in that receivership that were Hammervold cases, but
obviously none of those -- or -- I won't say none of
those, but the ones that were strictly Hammervold
cases were not included in that list.

Q.      Well, this is a list that Mr. Young gave you,
correct?

A.      That's correct.  And that -- Mr. Cummings, I
believe, also had a list of that, of those cases.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 314 of 662 PageID #: 3908
1686

Q.      Did you do any independent investigation,
other than accepting the list from Mr. Young, to
determine what cases Cummings Manookian was owed a fee
in?

A.      No, other than looking at the bankruptcy
petition and questioning Mr. Manookian at the meeting
of creditors.

Q.      Did you ask Mr. Manookian about these cases in
Paragraph 23 at that hearing?

A.      No.  I didn't specifically have the -- I don't
think I had the list at that time.

Q.      But Mr. Young had that list, right?

A.      Correct.

Q.      And you had already talked to Mr. Young at
that time?

A.      At the time that the complaint was filed, when
I employed him.

Q.      And you had also --

A.      But I knew that he had been collecting cases.

Q.      In the Manookian v. Pennsylvania Higher
Education case, what do you believe that Cummings
Manookian was owed in that case?

A.      I think now I don't -- there wasn't anything
owed in that case.  It was on -- it was on the list
that I received.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 315 of 662 PageID #: 3909
1687

```
 1   Q.      And this is the list from Mr. Young?
 2   A.      Correct.
 3   Q.      But that Manookian case should not be on that
 4   list anymore?
 5   A.      I'd have to look at my form, at my Form-1 and
 6   what my notes say about that, but it's possible that
 7   that -- there was no recovery in that case, or it
 8   wasn't worth pursuing any longer or -- I mean, I just
 9   don't recall.
10   Q.      Did you do any investigation to determine
11   whether Cummings Manookian was entitled to a fee in
12   these cases?
13   A.      Not any independent investigation.
14   Q.      You just relied on Mr. Young?
15   A.      Right.  And Mr. Cummings.
16   Q.      So it's not your testimony that Mr. Cummings
17   identified all of these cases?
18   A.      No.  No.
19   Q.      And you cannot remember which three cases,
20   other than Shoemaker and Fitzgerald, you're continuing
21   to seek fees in?
22   A.      I do not.
23   Q.      Is that something that you could tell us after
24   this deposition?
25   A.      Yes.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 316 of 662 PageID #: 3910
1688

```
1    Q.      And will Mr. Young have that information when
2    we take his deposition?
3    A.      I don't think so.  I think I'll have to follow
4    up with Mr. Cummings.
5    Q.      To determine which three cases you're still
6    seeking fees in?
7    A.      Right.  Right.  I think those are cases that
8    he is handling to which Cummings Manookian is entitled
9    to some portion of the fees or expenses.
10   Q.      Was Mr. Cummings involved in that Manookian v.
11   Pennsylvania Higher Education case?
12   A.      I do not know.
13   Q.      When did you realize that that Manookian v.
14   Pennsylvania Higher Education case should not be
15   included in the list of cases that the trustee is
16   seeking to recover in?
17   A.      I don't know without -- I don't know.
18   Q.      What do you know about the Bailey v. HCA case?
19   A.      Not anything, other than it's a case -- and
20   I don't even know if I received money in that case
21   without looking at my Form-1.  But to answer you
22   generally, and if you want to go through each one of
23   them -- I mean, obviously the majority of those, my
24   understanding is that they're medical malpractice or
25   personal injury cases.  I know Lattimore, Black,
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 317 of 662 PageID #: 3911
1689

1  Morgan & Cain is an accounting firm.  But these were
2  the list of existing cases that Cummings Manookian had
3  an interest in.
4        And that's what you do as a trustee.  You
5  investigate the assets, and sometimes you pursue
6  certain assets, sometimes you don't pursue them,
7  whether because there's not anything there or it's not
8  financially worth it.
9  Q.     But these are cases that Mr. Young asserted
10 Cummings Manookian had an interest in when he was the
11 receiver; is that correct?
12 A.     This was -- I believe this was his -- you'd
13 have to ask Mr. Young about that, but they were the
14 cases in which I think the receiver was investigating.
15 They include cases where attorney liens had been
16 filed.
17 Q.     Do you know what Cummings -- what was Cummings
18 Manookian's entitlement to fees in the Wheeler Bonding
19 Company case?
20 A.     I do not know.
21 Q.     All right.  Let me hand you Exhibit 3, which
22 are your interrogatory responses in this case.
23 A.     Yes, sir.
24 Q.     Can you turn to the last page and verify that
25 that's your signature.  Sorry.  It's not quite the

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 318 of 662 PageID #: 3912
1690

1    last page.

2    A.    Page 10.  Yes, that is my signature.

3    Q.    And did you provide the information that was

4    used to respond to these interrogatories?

5    A.    I did.  I discussed these with my attorney.

6    Q.    Well, I don't want to know any attorney-client

7    communications, but if you look at Interrogatory

8    Number 3, it asks you to identify any matter in which

9    you allege Cummings Manookian is entitled to an

10   attorney's fee, cost or monies of any kind.  And you

11   responded with an objection and then by reproducing

12   that same list that appears in the complaint; is that

13   correct?

14   A.    Correct.

15   Q.    But it's now your position that Cummings

16   Manookian is not entitled to a fee in all of these

17   cases; is that right?

18   A.    At the time that the complaint was filed,

19   there was reason to believe that Cummings Manookian

20   was.

21   Q.    What was that reason?

22   A.    They were being pursued by the receiver in the

23   receivership.

24   Q.    So the sole basis for this information in your

25   interrogatory response is that when Mr. Young was

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 319 of 662 PageID #: 3913

1691

1    serving as receiver, he asserted an entitlement to
2    fees on behalf of Cummings Manookian in these cases?
3    A.      Correct.  And we went over those, and I have a
4    spreadsheet that talks about what the cases were about
5    and who the attorneys were.
6    Q.      So is it --
7    A.      And it may be, I think, on my Form-1 -- when
8    Mr. Manookian is saying that one of these cases was
9    a Hammervold case, I believe now that the Form-1 that
10   contains this list says there's no value to that.
11          And there may even be a note that says that
12   was a Hammervold case, but I'm not sure about that.
13   Or there may be ones that were on the receiver's list
14   that we didn't put into the complaint because Cummings
15   Manookian wasn't involved.
16          But to the best of my information at the time
17   that the complaint was filed, these were the causes of
18   action that it was believed that Cummings Manookian
19   could have an interest in.
20   Q.      But at the time that you responded to this
21   interrogatory, you knew that it didn't have an
22   interest in Wheeler Bonding Company v. Parts, didn't
23   you?
24   A.      Again, I'll just have to look at my Form-1 to
25   see.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 320 of 662 PageID #: 3914
1692

```
 1   Q.      Fair to say that in responding to this
 2   interrogatory, you just copied and pasted the same
 3   list that's been put into the complaint?
 4   A.      I won't say that.  I know we talked about
 5   these.
 6   Q.      You would agree with me it's the same font in
 7   the complaint and in your interrogatory responses,
 8   which is not a Times New Roman font like the rest of
 9   the material?
10   A.      I don't know.  It looks a little smaller and
11   darker, but it's the same list.  That is the same
12   list.
13   Q.      And, in fact, it was copied and pasted
14   probably from a spreadsheet, right?
15   A.      I don't know.
16   Q.      Did you do it?
17   A.      I didn't prepare the responses.  We talked
18   about it.  The responses were prepared, and I reviewed
19   it and asked questions and made changes.
20   Q.      When you say that there was a case that was a
21   Hammervold case, you're referring to Mr. Hammervold
22   who had his own law firm; is that right?
23   A.      That's correct.  I believe that.
24   Q.      And that was Hammervold, PLC, I believe?
25   A.      I think that -- I don't know.  Hammervold Law,
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 321 of 662 PageID #: 3915
1693

Hammervold, PLC.  I'm not sure.

Q.      And you don't allege that Hammervold, PLC, was
a continuation of Cummings Manookian or an alterego of
Cummings Manookian, do you?

A.      No.

Q.      And why not?

A.      I don't believe he was ever an employee or
member of Cummings Manookian.  I think they worked on
cases together.

Q.      And you agree with me that Afsoon Hagh was not
an employee of Cummings Manookian either?

A.      I don't know that.

Q.      What percentage of the fees are you seeking in
the cases in which you're seeking fees on behalf of
Cummings Manookian?

A.      In the Fitzgerald case, 100 percent of the
fees.  In the Shoemaker case, you know, based on the
recent discovery, I don't know that -- I don't think
it's 100 percent in the Shoemaker case because there
were other engagement letters in that -- in that case.
I guess we'll formulate or decide that when discovery
is complete.

Q.      So what are you referring to that makes the
Shoemaker case different from the Fitzgerald case?

A.      There's only -- only Cummings Manookian has a

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 322 of 662 PageID #: 3916
1694

1  engagement letter in the Cummings Manookian -- in the
2  Fitzgerald case.
3  Q.    And only Cummings Manookian has a withdrawal
4  letter in the Fitzgerald case, too, correct?
5  A.    A withdrawal letter?  I think that's -- there
6  is -- I've seen the letter, yes.  Yes.
7  Q.    What do you need to do to determine what
8  percentage of the Shoemaker fee that Cummings
9  Manookian is entitled to?
10  A.    Well, there could be a number of ways, I
11  guess.  There could be a simple -- simple -- well, I
12  don't think it would be simple, but a computation of
13  the number of months that the case was with Cummings
14  Manookian before another attorney took that case.
15       I think it will depend a lot on the
16  depositions and what Mr. Manookian and Ms. Hagh's
17  testimony is, and possibly John Edwards, about their
18  engagement and what they have to support -- well, they
19  do have engagement letters.
20  Q.    So you're going to be relying on the testimony
21  of Mr. Manookian, Ms. Hagh, and possibly John Edwards
22  to determine what percentage of the fee Cummings
23  Manookian is entitled to in the Shoemaker case?
24  A.    And I would have to consult with my attorney,
25  but the counsel for the defense in that case.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 323 of 662 PageID #: 3917
1695

```
 1   Q.      What role did they play in deciding allocating
 2   a fee among plaintiffs' firms?
 3   A.      Well, we may want to ask them about who --
 4   just like we did with Meisner, you know, who were the
 5   communications with, who was working on the case.
 6   Q.      As between Mr. Edwards and Ms. Hagh?
 7   A.      And Brian Cummings.  Mr. Manookian, maybe.  I
 8   think he worked on that case at some point.
 9   Q.      The fees that you're entitled to or that
10   you're asserting an entitlement to, those are monies
11   that the client has recovered, correct?
12   A.      Ask me that again.  I think that's a real
13   simple answer, but --
14   Q.      Yeah, that's right.  It's just as simple as it
15   can be.
16   A.      Yeah.  A contingent fee.
17   Q.      Right.  But that money that you're seeking
18   to recover from Cummings Manookian, from a legal
19   standpoint, it's the client's money that they have
20   signed an agreement with their attorneys to pay?
21   A.      Right.  Right.
22   Q.      Do you have any written contracts between
23   Cummings Manookian and any of the defendants in this
24   case?
25   A.      I'm sorry.  Ask me that again.
```

```
 1   Q.      Do you have any written contracts between
 2   Cummings Manookian and Manookian, PLLC, Hagh Law or
 3   Afsoon Hagh?
 4   A.      No.
 5   Q.      And the contracts on which you base Cummings
 6   Manookian's entitlement to fees are contracts between
 7   Cummings Manookian and the clients; is that right?
 8   A.      Correct.
 9   Q.      And the clients can agree to pay other
10   attorneys as well, if they so choose?
11   A.      Yes.
12   Q.      Let me show you a letter dated April 19, 2017.
13              MR. SPRAGENS:  Let's mark the
14   interrogatories Exhibit 3.
15              And we'll mark as Exhibit 4 the April 19,
16   2017, letter.
17                 (Marked Exhibit No. 3.)
18                 (Marked Exhibit No. 4.)
19   BY MR. SPRAGENS:
20   Q.      Do you see that?
21   A.      Yes.
22   Q.      And that is an attorney-client agreement
23   between Cummings Manookian and Mr. Goodwin and
24   Mr. Keefer; is that correct?
25   A.      Yes.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 325 of 662 PageID #: 3919
1697

```
 1   Q.      And that agreement is signed by Brian
 2   Cummings; is that correct?
 3   A.      Yes, on behalf of Cummings Manookian.
 4   Q.      So at the time that this agreement was signed,
 5   Mr. Cummings had the authority to bind Cummings
 6   Manookian, correct?
 7   A.      Yes.
 8   Q.      And much like the representation agreement we
 9   looked at earlier, this is a representation agreement
10   between clients and the law firm of Cummings
11   Manookian, correct?
12   A.      Yes.
13   Q.      Do you know which matter this representation
14   agreement relates to?
15   A.      Shoemaker versus Vanderbilt.
16   Q.      Do you know the amount -- do you know if
17   there's been a settlement reached in that case?
18   A.      Yes, there has been a settlement.
19   Q.      Do you know the amount of that settlement?
20   A.      I do not.
21   Q.      Under the Client and Scope of Representation
22   section on Page 1, the second paragraph says, "All
23   work on this matter by Cummings Manookian, our firm,
24   will be done by Brian Cummings or Brian Manookian."
25           Did I read that correctly?
```

1    A.       Yes.

2    Q.       And that is part of the agreement between

3    Cummings Manookian and Mr. Goodwin and Mr. Keefer?

4    A.       Yes.

5    Q.       There's no mention of Afsoon Hagh in that

6    paragraph, is there?

7    A.       No.

8    Q.       And if Afsoon Hagh did work on behalf of

9    Cummings Manookian, that would have violated that

10   agreement, correct?

11   A.       If she was an associate or an employee of the

12   firm and worked on it, I don't know if that would be

13   seen as a violation.  I guess that's a legal

14   conclusion.

15   Q.       Well, you agree with me that it says, "All

16   work on this matter by our firm, Cummings Manookian,

17   will be done by Brian Cummings or Brian Manookian,"

18   correct?

19   A.       Yes.

20   Q.       So if she did work on the matter, that would

21   be inconsistent with that representation, correct?

22   A.       Not that I know how all firms work, but

23   normally the engagement letter will list the primary

24   attorneys that are going to be responsible for the

25   case.  But, I mean, it says what it says.  I don't

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 327 of 662 PageID #: 3921
1699

```
 1   know what that -- beyond that.
 2   Q.      And what it says is that all the work on the
 3   case will be done by Brian Cummings or Brian
 4   Manookian, correct?
 5   A.      Yes.
 6   Q.      Did there come a time that Cummings Manookian
 7   withdrew from representing Mr. Keefer and Mr. Goodwin?
 8   A.      I think there is some motion for withdrawal in
 9   that case maybe by Mr. Manookian.  I think I've seen
10   something on that recently.
11   Q.      And Mr. Cummings withdrew previously, correct?
12   A.      Yes, yes.  That's correct.
13   Q.      And Mr. Manookian also withdrew?
14   A.      I think that's correct.
15   Q.      And Cummings Manookian itself withdrew from
16   representing them, correct?
17   A.      I don't remember what the withdrawal on that
18   case said.
19   Q.      But if there was no attorney with an active
20   law license, Cummings Manookian could not, as a matter
21   of law, continue to represent these clients, correct?
22   A.      I would say that that's correct.  I think
23   there were engagement letters with other lawyers that
24   did not include the Cummings Manookian lawyers.
25   Q.      Are you aware of any other written contract
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 328 of 662 PageID #: 3922

1700

```
 1    between Cummings Manookian and Mr. Goodwin and
 2    Mr. Keefer?
 3    A.      Cummings Manookian and -- no.
 4    Q.      And is this April 2017 letter the basis for
 5    your claim that Cummings Manookian is entitled to fees
 6    in the Fitzgerald case -- excuse me -- Shoemaker case?
 7    A.      Yes.
 8    Q.      And that's the sole basis for the entitlement
 9    fees?
10    A.      Yes.  Unless there's some equitable right to
11    fees.
12    Q.      But with respect to the claims that you've
13    made in this case, they all spring from this April
14    2017 agreement?
15    A.      Correct.  Yes, sir.
16    Q.      Okay.  So this letter sets forth Cummings
17    Manookian's entitlement to funds from the client; is
18    that correct?
19    A.      From the client, if they receive a settlement,
20    judgment or an award.
21    Q.      That's right.  So this is an agreement wherein
22    the law firm agrees to perform services for the client
23    and the client agrees to pay the law firm a portion of
24    the funds that get recovered; is that right?
25    A.      Correct.  Correct.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 329 of 662 PageID #: 3923
1701

```
 1    Q.      And those are the only two parties to this
 2    agreement; it's Cummings Manookian and -- I suppose
 3    three parties -- Mr. Goodwin and Mr. Keefer, correct?
 4    A.      Yes.
 5    Q.      Looking at Page 3 of this letter, do you see
 6    the last section where it says, "Mediation and binding
 7    arbitration of any attorney-client disputes"?
 8    A.      Yes.
 9    Q.      And do you agree with me that the paragraph
10    under that heading states that "In order to resolve
11    any dispute under this agreement, you must first go to
12    mediation for a good-faith attempt at resolving the
13    dispute"?
14    A.      I see that paragraph, yes.
15    Q.      And then "If mediation does not resolve the
16    dispute, any ongoing disputed issues must be submitted
17    for final disposition by an agreed-to arbitrator for
18    binding arbitration."  Is that correct?
19    A.      Correct.
20    Q.      And so the last sentence says, "Consequently,
21    neither the client nor the attorneys in this
22    attorney-client relationship can file litigation over
23    or about any alleged or real dispute within the
24    attorney-client relationship and the forum for any
25    such dispute must first be a good-faith mediation and
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 330 of 662 PageID #: 3924
1702

```
 1   then binding arbitration."
 2          Did I read that correctly?
 3   A.     Yes.
 4   Q.     Have you, on behalf of Cummings Manookian,
 5   attempted to engage in a good-faith mediation about
 6   this contract?
 7   A.     A mediation, no.
 8   Q.     And have you, on behalf of Cummings Manookian,
 9   submitted any dispute arising from this contract to an
10   arbitrator?
11   A.     No.
12   Q.     Why haven't you done that?
13   A.     Well, I don't think we're in a dispute with
14   Mr. Keefer about the -- what fees Cummings Manookian
15   are entitled to.
16   Q.     The nature of your claims in this case is that
17   Mr. Keefer should be paying Cummings Manookian funds
18   rather than paying another entity funds, correct?
19   A.     Funds have already been paid.  Well, no.  Let
20   me think about that.  I'm listening to Mr. Manookian
21   over here.  I know that -- yeah, that's right.  The
22   funds have been paid.  They have been paid.
23   Q.     But you are seeking, on behalf of Cummings
24   Manookian, to -- you're attempting to lay claim to
25   some of Mr. Keefer's money, correct?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 331 of 662 PageID #: 3925

1703

A.    Some of the attorney fee portion of the
settlement, yes.

Q.    And that attorney's fee portion of the
settlement is determined by this contract, correct?

A.    Correct.

Q.    And under the terms of this contract, any
dispute arising from the contract has to be taken to
mediation and then arbitration, correct?

A.    I still think this has to do with a dispute
between the client and the attorney.  And this dispute
is between attorney firms, law firms.

Q.    Have you ever made any demand on Mr. Keefer?

A.    No.

Q.    Why haven't you done that?

A.    Well, the settlement in this was only
recently, I understand, and the monies had already
been paid by the time I knew anything about that.  I
think they had already been paid to Mr. Edwards, I
believe.

Q.    What about in the Fitzgerald case?  Have you
made any demand on Mr. Fitzgerald for a portion of the
fee?

A.    No.

Q.    And if Mr. Fitzgerald directed that a portion
of the fee be paid to Cummings Manookian, would that

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 332 of 662 PageID #: 3926
1704

resolve your dispute in the Fitzgerald case?

A.      I guess it would depend on what portion of the
fees he directed to be paid to Cummings Manookian.

Q.      But you would agree with me that neither
Mr. Fitzgerald nor Mr. Keefer have approved any
payment to Cummings Manookian, would you not?

A.      I have -- I don't know.  I have seen -- I
haven't seen any distribution signed by Mr. Keefer for
the Shoemaker case.  I know Cummings Manookian wasn't
paid any money.  On the Fitzgerald case, I believe the
funds were -- Mr. Manookian instructed Mr. Meisner to
pay those funds to Hagh Law and that the order should
state that.

        But I have seen a -- what I would call a
distribution statement signed by Mr. -- I don't know
if it was just -- I guess both the Fitzgeralds -- I'm
not sure -- I can't remember -- authorizing that the
funds be paid to Hagh Law.  But I think that may have
been after the funds had already been distributed.
But I'm still looking at all of that.

Q.      In any event, that was after the December 2018
withdrawal letter that we looked at earlier today,
correct?

A.      Yes.

Q.      You've asserted that Cummings Manookian is

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 333 of 662 PageID #: 3927
1705

1  entitled to 100 percent of the fee in the Fitzgerald

2  case; is that right?

3  A.    Yes.

4  Q.    And so you allege that all of the legal work

5  that was done in that case was done by Cummings

6  Manookian?

7  A.    Yes.

8  Q.    And then with respect to the Shoemaker case,

9  what work did Cummings Manookian do on the Shoemaker

10 case?

11 A.    I don't know specifically what work they did.

12 I know the complaint was filed by Brian Cummings and

13 Afsoon Hagh -- Afsoon Hagh for Cummings Manookian.

14 Q.    And is that the pleading we talked about

15 earlier where we agreed that Mr. Cummings drafted that

16 complaint?

17 A.    I don't think we agreed he drafted that

18 complaint.  He signed the complaint.

19 Q.    Do you know who drafted the complaint?

20 A.    I do not.

21 Q.    Will you be asking Ms. Hagh if she drafted the

22 complaint?

23 A.    I assume so.

24 Q.    Have you asked Mr. Cummings about that?

25 A.    No.  I assume he'll be asked that in his

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 334 of 662 PageID #: 3928
1706

```
 1  deposition.
 2  Q.      And before you filed this adversary
 3  proceeding, did you contact Mr. Cummings to find out
 4  who had done what work in that case?
 5  A.      No.
 6  Q.      Why not?
 7  A.      Well, we were under a time crunch, for one
 8  thing, but I -- I don't think there was any -- I
 9  assumed there was not any dispute with Mr. Cummings
10  about whether Cummings Manookian was entitled to any
11  fees in the Shoemaker case.
12  Q.      But if you wanted to figure out how much of
13  the fee in Shoemaker Cummings Mankookian was entitled
14  to, wouldn't you want to talk to the attorney who did
15  work on behalf of Cummings Manookian?
16  A.      Well, once the adversary proceeding was filed,
17  then I'm relying on working with my attorney, and I
18  don't know if I can say anymore about that.
19  Q.      But to your knowledge, Mr. Young has not
20  called Mr. Cummings to try to find out what percentage
21  of the fee Cummings Manookian should be entitled to in
22  Shoemaker?
23  A.      I believe that Mr. Cummings is working off --
24  and I may be wrong about this -- is working off the
25  original Cummings Manookian engagement letter.  And we
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 335 of 662 PageID #: 3929
1707

had an agreement with Mr. Cummings that any cases that
he worked on, we would decide the fee.

        The percentage fees would be decided according
to the agreement that the members had.  At Cummings
Manookian, there was a formula for what the fees would
be, and that's the way the fees were determined that
I've received from Mr. Cummings in the bankruptcy
case.

Q.      And have you used that formula in the
Fitzgerald case?

A.      No.

Q.      Why haven't you done that?

A.      I don't think that Mr. Cummings -- that's a
good question.  I don't think Mr. Cummings claims any
fees in the Fitzgerald case.  I'm not aware that he
does.

Q.      What about in the Shoemaker case?

A.      Yes, he does.

Q.      And did you use that formula in the Shoemaker
case?

A.      Use the formula how?  I haven't made a full
decision on how much Cummings Manookian should be
entitled to in the Shoemaker case, but, you know, it
would -- it just depends.

Q.      And what is going to determine how much you

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 336 of 662 PageID #: 3930
1708

```
1   claim Cummings Manookian is entitled to in the
2   Shoemaker case?
3   A.      After we complete discovery and I discuss it
4   with my attorney, then I'll make a decision.
5   Q.      And is it based on the number of hours that
6   were done -- put into the case by attorneys at the
7   various firms?
8   A.      No.  I think it would be part of a contingency
9   based on the original -- on the Cummings Manookian
10  engagement letter and how long Cummings Manookian was
11  attorney for the plaintiffs in the case before another
12  attorney firm took over representation.
13  Q.      So in your view it's based on the length of
14  time that Cummings Manookian was representing them
15  before another firm came in to represent them?
16  A.      Based on the -- based on the engagement letter
17  and my understanding of how that works.
18  Q.      Does it impact your view of how much Cummings
19  Manookian is entitled to whether no work was done over
20  a period of time?  Meaning, isn't it more than just
21  how long they represent them but also what work is
22  done during that representation?
23  A.      I think -- well, I know that that is if you're
24  seeking equitable right to a fee, then I believe it's
25  the value of the services, but I think it does -- the
```

1   number of hours figure into that somehow.

2   Q.      Do you have personal experience with

3   contingency fee litigation?

4   A.      Not where I've represented.  I'm trying to

5   think.  No.  I mean, obviously I have bankruptcy

6   cases where debtors have causes of action, and they've

7   already employed attorneys or I employ those attorneys

8   or employ new attorneys to represent the estate on the

9   same contingency fee basis.

10  Q.      With respect to this April 2017 engagement

11  letter with Mr. Goodwin and Mr. Keefer, this has the

12  same termination of professional relationship language

13  in it that the Fitzgerald engagement letter has,

14  correct?

15  A.      What date did you say?  April -- you said

16  April 17th?

17  Q.      I'm looking at the April 2017 letter that's in

18  front of you.

19  A.      Oh, April of 2017.  April 19, 2017.  Yes.

20  Q.      Yes.  And at the bottom of Page 2 and top

21  of Page 3, you'll agree that this has the same

22  termination of professional relationship clause that

23  the Fitzgerald agreement has?

24  A.      Yes.

25  Q.      And that's the one where it informs the client

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 338 of 662 PageID #: 3932
1710

```
 1   that if the client fires them, the attorneys may be
 2   able to seek some portion of the attorney's fee, and
 3   then it says if we withdraw, we will seek our costs,
 4   we will recover our costs, correct?
 5   A.     It just says -- it's silent on that, but it
 6   does say it doesn't relieve you of the responsibility
 7   to pay costs.
 8   Q.     Right.  And it doesn't say anything about fees
 9   there.
10   A.     No.
11   Q.     But your position on behalf of Cummings
12   Manookian is that even though these clauses are silent
13   about fees, that Cummings Manookian has the right to
14   take fees from its clients, even though it didn't say
15   anything about that in the contract?
16   A.     I think it may depend on the situation.  And
17   even in Shoemaker, I don't think we know all of the --
18   all of the workings of that, as to what the client --
19   why the client chose to enter into a engagement letter
20   with Manookian, PLLC, and then with John Edwards.
21   Q.     Well, you understand, ma'am, that one of the
22   reasons for the requirement of a written engagement
23   letter in a contingency fee case is a concern that
24   lawyers may take advantage of clients who are not
25   sophisticated and so they need to memorialize the
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 339 of 662 PageID #: 3933
1711

```
 1   agreement in writing and spell everything out and have
 2   it signed by the client, correct?
 3   A.      Correct.
 4   Q.      And the position you're taking in this case,
 5   on behalf of a law firm, is that even though there's
 6   no reference to attorney's fees in the Shoemaker or
 7   Fitzgerald engagement agreement, that a law firm is
 8   entitled to take attorney's fees out of a settlement,
 9   correct?
10   A.      I'm sorry.  Ask me that question again.
11   Q.      The position that you're taking in this case,
12   on behalf of a law firm, is that even though the
13   engagement letter is silent about the ability to
14   collect attorney's fees from a client in the event of
15   a withdrawal, that the law firm is entitled to take
16   those fees out of the client's settlement.  That's
17   your position?
18   A.      There may be a dispute that arises about that,
19   but I think depending on the situation of why they
20   withdrew -- you know, say if there was some misconduct
21   on the part of the client or that sort of thing, but I
22   think it would just depend on why there was a
23   withdrawal.
24   Q.      But, I mean, the position you're taking in
25   this case is that after a withdrawal, you're asserting
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 340 of 662 PageID #: 3934
1712

1  that Cummings Manookian has the ability to claim
2  attorney's fees in these two cases, correct?
3  A.     I think for the time that they represented --
4  or because they had an engagement letter and they
5  represented the plaintiff, I think they would have a
6  right to attorney fees -- a portion of the attorney
7  fees.
8  Q.     Even though they didn't put that language in
9  the engagement agreement, correct?
10 A.     (Pause.)
11 Q.     I'm sorry.  Correct?
12 A.     I'm sorry.  I got distracted by Mr. Manookian
13 so I forgot what your question was.
14 Q.     My question is:  You're taking the position in
15 this case that even though the engagement agreement
16 between Cummings Manookian and the clients in
17 Fitzgerald and Shoemaker does not specify, in contrast
18 to the prior paragraph, that the firm may collect
19 attorney's fees in the event it withdraws, the
20 position you're taking is that it is entitled to do
21 that, right?
22 A.     I think it could, depending on the situation.
23 Q.     Have you done anything to look into whether
24 the position you're taking in this case is consistent
25 with the rules of professional conduct governing

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 341 of 662 PageID #: 3935
1713

```
1    lawyers?
2    A.      No.
3    Q.      Are you going to do that?
4    A.      I will.
5    Q.      So you will commit to retaining an expert to
6    see if the position you're taking in this case is an
7    ethical position for a lawyer to take?
8    A.      If that's what I need to do, I will do that.
9    Q.      Do you think that's what you need to do?
10   A.      I don't know without consulting with my
11   attorney.
12           MR. GABBERT:  Is that Exhibit 4?  Did we
13   list that Exhibit 4?
14           MR. SPRAGENS:  Yes, that's Exhibit 4.
15   BY MR. SPRAGENS:
16   Q.      With respect to the Shoemaker settlement --
17   and we can set aside that exhibit for now -- were you
18   involved in the settlement negotiations that ended the
19   Shoemaker case?
20   A.      No.
21   Q.      Was Cummings Manookian involved in that
22   conversation at all?
23   A.      I do not think so, no.
24   Q.      So it's fair to say that Cummings Manookian
25   did not secure the settlement in the Shoemaker case,
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 342 of 662 PageID #: 3936
1714

```
 1   is it not?
 2   A.      Well, I think that depends on -- they weren't
 3   involved when there was the settlement, but I would
 4   think that from the beginning to the ending of the
 5   case, everybody's working toward some result, whether
 6   it's a settlement or a trial.
 7   Q.      There came a time where Cummings Manookian no
 8   longer had any attorneys and didn't participate in any
 9   settlement discussion, correct?
10   A.      I think that's correct.
11   Q.      And then Mr. Edwards got involved in the case?
12   A.      Correct.
13   Q.      And do you know what the highest offer in the
14   Shoemaker case was while Cummings Manookian was
15   involved in the case?
16   A.      I do not.
17   Q.      Have you asked Mr. Cummings about that?
18   A.      No.
19   Q.      Do you know if Mr. Young has done that?
20   A.      I don't know.
21   Q.      Well, is knowing what the highest offer that
22   was on the table when Cummings Manookian was involved
23   in the case, is that relevant to your decision about
24   what portion of the fee in Shoemaker Cummings
25   Manookian is entitled to?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 343 of 662 PageID #: 3937
1715

```
 1    A.     I haven't evaluated that yet, so I don't know.
 2    Q.     Are you going to try to find out that
 3    information?
 4    A.     Yes.  We've still got depositions, other
 5    depositions to take.
 6    Q.     So you'll be asking what the best offer that
 7    was on the table when Cummings Manookian was involved
 8    in the Shoemaker case was?
 9    A.     If that's relevant to deciding what fee that
10    Cummings Manookian is entitled to.
11    Q.     And do you think that that's relevant as the
12    trustee for Cummings Manookian?
13                 MR. YOUNG:  Objection to the extent it
14    calls for a legal conclusion.
15                 THE WITNESS:  I don't know.
16    BY MR. SPRAGENS:
17    Q.     You're a lawyer, right?
18    A.     That's correct.
19                 MR. SPRAGENS:  Let's just take a
20    five-minute break, if you don't mind.  I might be
21    nearing the end here.
22                 (Recess observed.)
23    BY MR. SPRAGENS:
24    Q.     Ms. Burton, I wanted to talk a little bit
25    about the Shoemaker case with you.  Do you recall
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 344 of 662 PageID #: 3938
1716

```
 1   whether Mr. Cummings signed that complaint on behalf
 2   of Cummings Law or Cummings Manookian?
 3   A.      The Shoemaker complaint?
 4   Q.      Uh-huh.
 5   A.      I think it was -- the Shoemaker complaint, I
 6   think, was -- he signed on behalf of Cummings Law or
 7   whatever his other law firm was.
 8   Q.      It was after he had left Cummings Manookian?
 9   A.      Correct.
10   Q.      And the work he did at Cummings Law was not on
11   behalf of Cummings Manookian, correct?
12   A.      Correct.  Correct.
13   Q.      There's no alterego or continuation theory
14   with respect to what Mr. Cummings was doing at
15   Cummings Law, correct?
16   A.      No.
17   Q.      And then your basis for asserting that
18   Ms. Hagh was acting on behalf of Cummings Manookian is
19   that on the complaint it does not list -- or it lists
20   her as associate with Cummings Manookian; is that
21   correct?
22   A.      It lists her and Cummings Manookian, being at
23   Cummings Manookian, or however you would say that.
24   Q.      Well, when you say "being at Cummings
25   Manookian," do you mean that it said Cummings
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 345 of 662 PageID #: 3939

1717

```
 1   Manookian under her name or --
 2   A.      I believe that's right.  I believe that's
 3   correct.
 4   Q.      Do you know if Cummings Manookian paid the
 5   filing fee in that case?
 6   A.      I think they paid the -- I think the filing
 7   fee was paid.
 8   Q.      By Cummings Manookian?
 9   A.      I don't -- I don't know who paid the filing
10   fee.
11   Q.      Do you know if Cummings Manookian advanced any
12   costs in that case?
13   A.      In which case?
14   Q.      In the Shoemaker case.
15   A.      I do not know.  No, I don't know.
16   Q.      Would you agree with me that the costs in that
17   case were over $100,000?
18   A.      That's what I was told.
19   Q.      By whom?
20   A.      Mr. Young through -- there was $100,000
21   that was paid, I think, to Afsoon Hagh out of the
22   settlement to pay expenses.  We were informed of that
23   by Mr. Gabbert, and we asked for evidence of what was
24   paid.
25   Q.      And Cummings Manookian did not advance any of
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 346 of 662 PageID #: 3940
1718

```
 1   those $100,000, did they?
 2   A.      I don't know.  But it didn't receive any
 3   reimbursement of any fees.
 4   Q.      And you're not claiming any on its behalf, are
 5   you?
 6   A.      I don't know.  I don't think we have records
 7   to see what -- we don't have bank records for Cummings
 8   Manookian to know.
 9   Q.      As far as you know, sitting here today, the
10   over $100,000 that was paid was paid by Hagh Law out
11   of a Hagh Law bank account?
12   A.      I don't know that.  I just know that there
13   were $100,000 worth of expenses that we were informed
14   -- that 100,000 of the proceeds that Mr. Gabbert was
15   holding was going to be paid to Afsoon Hagh to pay
16   expenses in Shoemaker.
17   Q.      And did some portion of the expenses in that
18   case go to Brian Cummings?
19   A.      I don't know.  I don't know.
20   Q.      You have control over Cummings Manookian's
21   accounts right now; is that right?
22   A.      I have control over the Cummings Manookian
23   bankruptcy bank account.
24   Q.      You did not authorize any advanced costs in
25   the Shoemaker case on behalf of Cummings Manookian,
```

```
 1   did you?
 2   A.      No.
 3   Q.      And you're not -- therefore, you're not
 4   seeking recovery of any costs that you've authorized,
 5   correct?
 6   A.      That the bankruptcy estate made, no.
 7   Q.      And the rest of the costs, to your knowledge,
 8   were advanced either by Hagh Law or Cummings Law; is
 9   that correct?
10   A.      I don't know.  I don't know, like, at the
11   beginning of the case who advanced what, what costs.
12   Q.      In your time as the trustee for Cummings
13   Manookian, did you offer to pay any expenses in the
14   Shoemaker case?
15   A.      No.
16   Q.      Why didn't you do that?
17   A.      Well, I think there was a dispute about
18   whether Cummings Manookian was entitled to -- I mean,
19   from the very beginning, Mr. Manookian has taken the
20   position that Cummings Manookian isn't entitled to any
21   fees.  But we weren't requested -- the bankruptcy
22   estate didn't receive any requests to advance any
23   expenses.
24   Q.      But fair to say that since you've been the
25   trustee for Cummings Manookian, you have not -- the
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 348 of 662 PageID #: 3942
1720

```
 1  firm has not participated in the Shoemaker case during
 2  that time period, has it?
 3  A.      The bankruptcy estate?
 4  Q.      Yes.
 5  A.      Correct.
 6  Q.      And Cummings Manookian hasn't done anything in
 7  the Shoemaker case since the time you've been the
 8  trustee of the bankruptcy estate?
 9  A.      Correct.
10  Q.      What was the last act that Cummings Manookian
11  did in the Shoemaker case?
12  A.      I don't know.
13  Q.      Do you know any work that Cummings Manookian
14  did in the Shoemaker case?
15  A.      I know that the -- obviously, the -- of
16  course, I'm assuming from the engagement letter to the
17  filing of the complaint, that there was work done on
18  that by Cummings Manookian.  Cummings Manookian, based
19  on the signature on that complaint, was involved in
20  the complaint.
21         Beyond that, I know we've gotten, recently,
22  some discovery and I'm still going through that.  But
23  other than that, I don't know anything.  I don't think
24  I know anything specifically.
25  Q.      On what date was the Shoemaker case filed, as
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 349 of 662 PageID #: 3943
1721

```
 1   best you recall?
 2   A.      I think it was in -- is it 2018?  It was after
 3   Mr. Manookian was suspended the first time, I believe,
 4   so it was after that date.  I can't remember if that
 5   was '18 or '19.  But yeah.
 6   Q.      Maybe I can help you jog your memory a little.
 7   Do you recall that he sent that withdrawal letter
 8   December of 2018?  And so I'll suggest to you that I
 9   think that case was filed February 2019.
10   A.      That's correct.
11   Q.      At that time, there were no members of
12   Cummings Manookian that had an active license to
13   practice law, correct?
14   A.      Correct.
15   Q.      Because Mr. Manookian, at that point, was the
16   only member of Cummings Manookian, and he did not have
17   an active law license?
18   A.      Correct.
19   Q.      Do you recall whether the Court ordered an
20   amended complaint be filed in the Shoemaker case?
21   A.      I don't know.
22   Q.      So you don't know if the operative complaint
23   in the case was the same one that you're describing
24   that Mr. Cummings and Ms. Hagh filed?
25   A.      I do not know.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 350 of 662 PageID #: 3944
1722

Q.      You would agree that at the time the Shoemaker case was settled, it was settled based on the then operative complaint, not a prior complaint, right?

A.      I would say so, yes, unless those two were taken together.  I don't know.  But I would say the amended complaint.

Q.      So the case that was settled was the case that was filed in the amended complaint?

A.      I don't know.

Q.      But you would agree that whatever the operative complaint was, that was the case that was settled, correct?

A.      I don't know what all was included in that amended complaint, if it added or dropped or -- I don't know -- restated.  It may say in there -- sometimes they say we adopt and restate.  I just don't know.  I don't think I've seen that.

Q.      Have you read all of the pleadings in the Shoemaker case?

A.      No, I have not.

Q.      Have you read any of the pleadings in the Shoemaker case?

A.      Yes.

Q.      Which ones?

A.      I believe I've read the complaint in the

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 351 of 662 PageID #: 3945
1723

Shoemaker case.

Q.    And was that the initial complaint that you've been talking about earlier that Mr. Cummings and Ms. Hagh filed?

A.    I don't recall whether it said amended or not. I'd have to go back and look.

Q.    And it had Mr. Cummings' signature on it, right?

A.    It did.

Q.    Have you read anything other than that complaint in the Shoemaker case?

A.    I don't think so.

Q.    Do you know how many depositions were taken in that case?

A.    I do not.

Q.    Have you read any of the deposition transcripts in that case?

A.    I have not.  I don't know that we've been provided with any of those.

Q.    Have you gone on to CaseLink to look at the file for that case?

A.    No.

Q.    Do you know how many pleadings there -- or how many entries there are in the docket?

A.    No.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 352 of 662 PageID #: 3946
1724

```
 1    Q.      Any reason that you haven't tried to educate
 2    yourself about the Shoemaker case?
 3    A.      No.
 4    Q.      It's fair to say that you, on behalf of
 5    Cummings Manookian, were not actively participating in
 6    the Shoemaker case?
 7    A.      Correct.
 8    Q.      And you don't know what, if any, work Cummings
 9    Manookian did on that case at the beginning, do you?
10    A.      No.
11    Q.      You know that they signed up the client and
12    then, at some point, Mr. Cummings and Ms. Hagh filed a
13    complaint?
14    A.      Correct.
15    Q.      And that's the substance and extent of your
16    knowledge on the Shoemaker case?
17    A.      Yes, unless there were other pleadings that
18    Ms. Hagh signed that had the Cummings Manookian
19    information on it, but I don't recall if there were
20    any.
21    Q.      Is it possible that the only pleadings that
22    you would be reading in that case are the ones that
23    Ms. Hagh filed that you allege supports your theory of
24    the case?
25    A.      Ask me -- I'm sorry.  Ask me that question
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 353 of 662 PageID #: 3947
1725

1   again.

2   Q.      Is it possible that the only pleadings that

3   you have been reading in Shoemaker are the ones that

4   in your view or Mr. Young's view support your alterego

5   or continuation liability theory in this case?

6   A.      I don't know what Mr. Young thinks about that,

7   but, you know, for me it was a case in which Cummings

8   Manookian had a engagement letter and worked on for

9   some period of time and -- before another firm had

10  an engagement letter.  And based on that, it's my

11  understanding that Cummings Manookian has a right to a

12  fee in that case.

13  Q.      But the work that you did -- the work that

14  you're aware of in that case is strictly signing up

15  the client in terms of what Cummings Manookian did,

16  correct?

17  A.      I don't know what all is included.  I'm the

18  bankruptcy trustee.  But I don't know.

19  Q.      You know that they signed up the client and

20  then time passed, and you're assuming that they did

21  some work during that time period on the case?

22  A.      I would think they had to before the complaint

23  was filed.

24  Q.      But you don't know that Cummings Manookian

25  drafted the complaint, do you?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 354 of 662 PageID #: 3948
1726

A.      Drafted the complaint?  No.

Q.      Right.  And you do agree that at the time the
case settled, Cummings Manookian was no longer
representing the client in that Shoemaker case?

        MR. YOUNG:  Objection.  Asked and
answered.

        THE WITNESS:  I believe that's correct,
because I think it was settled after the bankruptcy
petition was filed.

BY MR. SPRAGENS:

Q.      And as you sit here today, you're not prepared
to testify what portion of the Shoemaker fee Cummings
Manookian is entitled to?

A.      No.

Q.      And are you seeking to recover some funds from
Manookian, PLLC, with respect to the Shoemaker fee?

A.      I don't know that they've -- I don't know that
they've received any of the settlement proceeds in the
-- it's my understanding that Mr. -- I'm sorry.  Back
up.

        I don't know that Manookian, PLLC, has
received any funds from the settlement of that case.
It's my understanding that after John Edwards was
paid some amount, the funds were being held in
Mr. Gabbert's trust account.  But I think it's still

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 355 of 662 PageID #: 3949
1727

```
 1   up in the air about whether or not Manookian, PLLC,
 2   claims a portion of that for attorney fees in that
 3   case.
 4   Q.      And as it stands right now, that fee is still
 5   -- it's still the client's money; isn't that the case?
 6   A.      I don't know how that is considered.  It's
 7   been -- it's paid.  The clients don't have it.  The
 8   attorneys -- Mr. Gabbert has the fees.  And the
 9   attorneys are -- you know, Mr. Cummings is claiming
10   the interest in those fees.  So I think it's a matter
11   between the attorneys now.
12   Q.      And you agree that with respect to the
13   Shoemaker case, Hagh Law is entitled to some portion
14   of that fee?
15   A.      I think that's correct.  Well, I know that
16   there is a Manookian, PLLC, engagement letter that in
17   that first paragraph, it says that you're represented
18   by Manookian, PLLC.  But in the paragraph that usually
19   says, within that firm, who's working on the cases, it
20   says Brian Manookian and Afsoon Hagh, and I think it
21   mentions both of the law firm names.
22   Q.      So it says Hagh Law in that --
23   A.      In that letter.  Somewhere in that letter it
24   does.  And in the contingency -- yeah, the contingency
25   part in that letter it mentions Cummings Law, Brian
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 356 of 662 PageID #: 3950
1728

```
1   Cummings.
2   Q.      So based on that letter with the
3   representation about Hagh Law in it, do you agree that
4   Hagh Law is entitled to some portion of the Shoemaker
5   fee?
6   A.      I don't know, but I would say -- well, yes.
7   Yes.  I was going to say I don't know, but I know Hagh
8   Law claims an interest in those -- those fees, and I
9   don't know whether it can be argued that she did or
10  didn't have an engagement letter, but she is -- her
11  firm is mentioned in that letter.
12  Q.      And do you recall that there was another
13  engagement letter in that case, the one that
14  Mr. Edwards signed along with Ms. Hagh?
15  A.      Yes.  And Mr. Manookian also signed that, but
16  I think it's a waiver or something.
17  Q.      So that letter governs the distribution of the
18  attorney's fee in that case, correct?
19  A.      That's the question, isn't it?  But yes,
20  that's another engagement letter.
21  Q.      And you don't disagree that Afsoon Hagh and
22  Hagh Law did perform substantial work on the Shoemaker
23  case?
24  A.      I don't know about substantial work, but they
25  were lawyers in the firm -- in that firm.
```

1  Q.      If you went on CaseLink and looked through the

2  docket and you saw a bunch of pleadings by Ms. Hagh

3  and were aware of court appearances by Ms. Hagh, would

4  that satisfy you that Ms. Hagh and Hagh Law did

5  substantial work in that case?

6  A.      I think that and her deposition, what she says

7  in her deposition.

8  Q.      With respect to the Fitzgerald case, do you

9  agree that Afsoon Hagh personally performed

10  substantial work on that case?

11  A.      I don't -- I don't know.

12  Q.      But you are aware that she sent letters and

13  signed pleadings and did work on that case, aren't

14  you?

15  A.      I have signed pleadings.  I don't know that I

16  have letters.

17  Q.      Do you know whether Ms. Hagh drafted and

18  argued the motion for summary judgment in that case?

19  A.      My recollection is there is a motion for

20  summary judgment in that case that was filed by Afsoon

21  Hagh but with Cummings Manookian.

22  Q.      Okay.  And do you know, regardless of the

23  entity -- I'm not really concerned about that at this

24  moment.  Do you know whether she went and argued that

25  motion in court?

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 358 of 662 PageID #: 3952

1730

```
 1   A.      I do not know.
 2   Q.      Do you have any reason to dispute that she
 3   personally invested a lot of time and energy working
 4   on the Fitzgerald matter?
 5   A.      I don't know.
 6   Q.      But if she testifies that she did, you'll --
 7   you'll believe that?
 8   A.      Yes, unless -- yes.
 9   Q.      But you're asserting 100 percent fee
10   entitlement by Cummings Manookian in that case,
11   correct?
12   A.      Correct.
13   Q.      So are you going to pay Ms. Hagh for the time
14   she spent working, you allege, on behalf of Cummings
15   Manookian?
16   A.      I haven't thought about that.
17   Q.      I mean, somehow she's got to get paid for the
18   work she did, right?
19   A.      I guess she would have to file a claim in the
20   bankruptcy court.
21   Q.      As the employee, in your view, of the debtor?
22   A.      Possibly.  I just haven't thought about that.
23   Q.      And under your reading of the situation, the
24   only way that Ms. Hagh gets paid for the work she did
25   is if she files a claim as an employee of Cummings
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 359 of 662 PageID #: 3953
1731

```
 1  Manookian to get paid; is that right?
 2  A.      Well, if the fee belongs to Cummings
 3  Manookian.  I guess it just depends on what her
 4  compensation was when she was employed by Cummings
 5  Manookian.
 6  Q.      And do you know whether she was ever
 7  compensated by Cummings Manookian?
 8  A.      Mr. Manookian said she was not, that she was
 9  not.
10  Q.      So your view of the situation is that Ms. Hagh
11  did a lot of free work, legal work, for Cummings
12  Manookian and never got paid and you're going to keep
13  not paying her?
14  A.      I don't know that.  I don't know if she did
15  free work.
16  Q.      Isn't it possible that she just ran her own
17  law firm and it was called Hagh Law and she is
18  entitled to part of that fee?
19  A.      It could be.
20          MR. SPRAGENS:  All right.  I don't have
21  anything further right now.  I don't know if
22  Mr. Gabbert has any questions.
23                E X A M I N A T I O N
24  BY MR. GABBERT:
25  Q.      Do you have any evidence whatsoever that --
```

```
 1   and I'm going to talk about Ms. Hagh.  And when I
 2   refer to Ms. Hagh, I'm talking about Hagh, and Hagh
 3   Law.  Okay?
 4   A.      Okay.
 5   Q.      Do you have any evidence whatsoever that Hagh
 6   or Hagh Law took any furniture, property of any kind
 7   whatsoever, from the debtor?
 8   A.      No.
 9   Q.      Do you have any evidence that she was ever a
10   member of the debtor?
11   A.      No.
12   Q.      Do you have evidence that she performed work
13   on behalf of the debtor after Mr. Manookian's
14   suspension?
15   A.      In --
16   Q.      On behalf of the debtor, I'm talking about.
17   A.      She was listed as the attorney in the
18   complaint, the Shoemaker complaint that was filed.
19   Q.      As part of Cummings Manookian or her
20   separately?
21   A.      Part of Cummings Manookian.  And then in the
22   Fitzgerald case -- I have to get that back in my head
23   about when Mr. Manookian was suspended.  October of --
24            MR. MANOOKIAN:  I'll just put on the
25   record, I wrote the letter to the Fitzgeralds.  My
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 361 of 662 PageID #: 3955

1733

```
 1   recollection is I waited until the very last day.
 2   The Tennessee Supreme Court -- I was temporarily
 3   suspended.  They then stayed the suspension for some
 4   period of time and then lifted the stay.  And so by
 5   December 7th of 2018, I was effectively suspended from
 6   the practice of law.
 7                THE WITNESS:  After December of '18,
 8   there was the pleading that was filed that said
 9   Mr. Manookian was withdrawing from the case but Afsoon
10   Hagh would continue representing the plaintiffs.
11                I believe there was -- there may have
12   been some communication with Ronette McCarthy during
13   the pendency of the Fitzgerald case, and then we
14   already talked about -- and I think there may have
15   been other pleadings in the Fitzgerald case that
16   either stated Cummings Manookian or Afsoon Hagh with
17   the Cummings Manookian address, telephone, all of
18   that.  And then we talked about the filing of the
19   Shoemaker complaint, that she was listed as an
20   attorney with the --
21   BY MR. GABBERT:
22   Q.     But she wasn't a signatory on that?
23   A.     Pardon me?
24   Q.     But she wasn't a signatory on that?
25   A.     I don't think so.  I think Cummings Manookian
```

1  -- I mean -- I'm sorry -- Brian Cummings signed that
2  pleading.
3  Q.      After the filing of bankruptcy, Cummings
4  Manookian had nothing -- no involvement whatsoever in
5  any of those cases, right?
6  A.      Correct.
7  Q.      Okay.  And you have no evidence of what
8  Cummings Manookian did prior to the filing of
9  bankruptcy in these cases?
10 A.      The pleadings that I've seen and the emails
11 and document preparation.  But personally, do I know?
12 No.
13 Q.      Okay.  So you don't know -- I mean, you're
14 just talking about these documents you're talking
15 about, right?
16 A.      Right.
17 Q.      Okay.  The work that was done on these cases
18 prior to the bankruptcy, do you have evidence of what
19 work she did prior to that and what her relationship
20 was, whatsoever, with the firm, the debtor?
21 A.      I think we have some through discovery, what
22 we've received in discovery.
23 Q.      Okay.  But nothing separate from that?
24 A.      No.
25 Q.      Do you have any evidence whatsoever that she

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 363 of 662 PageID #: 3957
1735

```
 1   basically has ever used the offices on that address
 2   other than as a mailing address?
 3   A.      No.
 4   Q.      Okay.
 5   A.      I think there can be a reasonable inference or
 6   an assumption, but I think Mr. --
 7   Q.      That's all you have?  That's all you have?
 8   A.      Yes, sir.  Yes, sir.
 9   Q.      You are assuming that she used it?
10   A.      Yes.
11   Q.      Do you consider Cummings, LLC, to be in any
12   way related to the debtor, other than the fact that he
13   was a member of both?
14   A.      No.
15   Q.      Do you have any claim whatsoever that Hagh Law
16   is in any way associated with the debtor?
17   A.      Unless under the theory that it was just a
18   continuation of the debtor.  But Hagh Law was a
19   separate LLC.  It was formed.
20   Q.      What do you mean by "continuation of the
21   debtor"?
22   A.      The successor liability where the -- Brian
23   Manookian and Afsoon Hagh, and I think you're just
24   asking me about her, basically continued doing the
25   same work for the same clients at the same.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 364 of 662 PageID #: 3958

1736

```
 1   Q.      Everybody practices law, right?

 2   A.      Pardon me?

 3   Q.      Everybody practices law, all of these people

 4   practice law?

 5   A.      Yes.

 6   Q.      So if they continue practicing law, then

 7   that's related to the debtor?

 8   A.      In some instances with that -- with those

 9   cases.

10   Q.      Do you have any evidence that she ever

11   received any payment whatsoever from the debtor?

12   A.      I do not.  We were never furnished with bank

13   records that we requested.

14   Q.      Do you have any --

15   A.      Well, I take that -- well, I don't know that

16   you would consider that from the debtor, but she did

17   receive settlement proceeds, part of the settlement

18   proceeds, attorney fee, in the Fitzgerald case.

19   Q.      Uh-huh.  And she was involved in the

20   Fitzgerald case, right?

21   A.      Yes.

22   Q.      So whatever relationship she had, if she had

23   an entitlement to it as part of the fee, she could

24   have the fee for whatever work she did, right?

25   A.      I'm sorry.  Ask me that --
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 365 of 662 PageID #: 3959

1737

```
1    Q.      Whatever her percentage was, her agreement was
2    with the debtor if she got that part of the fee?
3    A.      I think the reason she got that part of the
4    fee in the Fitzgerald matter was the receiver only
5    needed a certain amount to pay the creditor for which
6    he had been appointed receiver, so anything in excess
7    of that, at that time, was -- there wasn't a claim for
8    Cummings Manookian.
9    Q.      And that receiver is in the room today, right?
10   A.      Yes.
11   Q.      Okay.
12           MR. YOUNG:  I don't think I have anything
13   else right now.
14           MR. SPRAGENS:  I just have a couple of
15   quick follow-ups.
16                E X A M I N A T I O N
17   BY MR. SPRAGENS:
18   Q.      Ms. Burton, what damages did Cummings
19   Manookian experience as a result of any defendant
20   using a phone number or email address that belonged to
21   Cummings Manookian?
22   A.      Ask me that again.
23   Q.      What damages did Cummings Manookian suffer as
24   a result of any defendant using a phone number or an
25   email address or a mailing address that, according to
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 366 of 662 PageID #: 3960
1738

```
 1  your allegation at least, associated with Cummings
 2  Manookian?
 3  A.      Well, at some point, if they were using
 4  Cummings Manookian's space, phone numbers, email
 5  addresses, if they weren't paying the bills or
 6  compensating for the use of those, but I do not know a
 7  dollar amount.
 8  Q.      And that's all, if they were using the space,
 9  for example, and they were not authorized to?
10  A.      Or even if they were -- they had permission to
11  if Cummings Manookian was paying.  And I don't think
12  they actually paid the lease payments.  I think they
13  paid the mortgage.  They paid the mortgage payments.
14  Q.      Cummings Manookian paid the mortgage payments
15  on behalf of 45 MSW Partners?
16  A.      I think Mr. Manookian testified that in
17  lieu of paying the rent to the landlord, who was
18  Mr. Manookian and Mr. Cummings in different positions,
19  and then them paying the mortgage, they made payments
20  directly to the mortgage company.  That's my
21  recollection.
22  Q.      So as you sit here today, you can't identify
23  any damages that Cummings Manookian actually
24  experienced as a result of the use of the address,
25  email address, phone number?
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 367 of 662 PageID #: 3961
1739

```
 1    A.      No, unless that's somehow related to the
 2    attorney fees that they should have been entitled to
 3    that they didn't get paid.  But just the use of the --
 4    you know, of the space, I don't know.  I don't know
 5    the amount of any damages.
 6    Q.      And with respect to the Shoemaker case,
 7    Cummings Manookian didn't have any lawyers on staff at
 8    the time that case was filed, did it?
 9    A.      I believe it did because the case listed --
10    the complaint listed Afsoon Hagh being at Cummings
11    Manookian.
12    Q.      So you believe she was an employee of Cummings
13    Manookian at the time this was filed?
14    A.      She was at Cummings Manookian in some
15    capacity.
16    Q.      And your basis for that is that she used that
17    address?
18    A.      And her name was on the complaint.
19    Q.      You've mentioned, by the way, a few times
20    the initial creditors meeting in this case when
21    Mr. Manookian spoke.
22    A.      Yes.
23    Q.      Do you have a transcript of that meeting?
24    A.      I don't have a transcript, but there is a --
25    they record those, and the U.S. trustees maintain the
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 368 of 662 PageID #: 3962
1740

1  recording.

2  Q.     And when was the last time you listened to the

3  recording of that meeting?

4  A.     Long enough that my Dropbox has -- because

5  I wanted to go back and listen to it again in

6  preparation for this, and it's already expired, so I

7  would have to request it again.

8  Q.     Would that be back when the complaint was

9  filed?  Is that when you think you listened to it

10  last?

11  A.     I don't know that I would have listened to

12  it -- I don't know when I last listened to it, because

13  that was pretty close -- the complaint was filed

14  pretty close in time to the meeting of creditors.  So

15  I don't know that I would have gone back and listened

16  to that in preparation for the complaint.

17  Q.     Do you have a recollection of actually

18  listening to it sometime other than when you heard it

19  in person?

20  A.     Yes.

21  Q.     But you don't know when that is?

22  A.     I don't.  I don't.

23  Q.     The Shoemaker case went on for a couple of

24  years after it was filed, correct?

25  A.     Correct.

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 369 of 662 PageID #: 3963
1741

```
 1   Q.      And throughout that time, even you would
 2   concede that Ms. Hagh was signing pleadings using
 3   "Hagh Law."
 4   A.      I believe that's correct.  We just recently
 5   received the discovery.  But yes, I think that's
 6   correct.
 7   Q.      But you didn't hire any lawyers to work for
 8   Cummings Manookian in that case, did you?
 9   A.      No.
10   Q.      Any reason why not?
11   A.      Because there were already -- I think Cummings
12   Manookian was out of that case by the time that the
13   bankruptcy petition was filed, and it couldn't, any
14   longer, operate.
15   Q.      Why couldn't it operate?
16   A.      It wasn't an operating Chapter 7 and wasn't
17   filed that way.  And Mr. Manookian says that it was
18   not operating at the date, petition date.
19   Q.      And without a lawyer as a member, it couldn't
20   even be a PLLC in good standing, could it?
21   A.      I don't know.
22   Q.      Have you read the statute about professional
23   limited liability corporations, companies?
24   A.      Not recently, no.
25   Q.      All right.  But Cummings Manookian couldn't
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 370 of 662 PageID #: 3964

1742

```
 1  participate in the Shoemaker case because it didn't
 2  have any lawyers after those first couple of filings
 3  that you contend were --
 4  A.      If it didn't have any lawyers, then obviously
 5  it wasn't participating.
 6  Q.      When was the last time that you or Mr. Young,
 7  to your knowledge, spoke to Brian Cummings about the
 8  matters that have to do with this case?
 9  A.      It's been a while since I have talked to
10  Mr. Cummings, because it's back when we -- I'm trying
11  to think how long I received any money.  But it's been
12  a while since I've talked to Mr. Cummings.
13  Q.      Do you know if Mr. Young has talked to him
14  since you have?
15  A.      I think he has.
16  Q.      Do you know when that was?
17  A.      No.
18  Q.      Was it in the last three months, do you think?
19  A.      I think they have talked, because there's a --
20  you know, a dispute about what Mr. Cummings is
21  claiming out of the Shoemaker fees.
22  Q.      As trustee for Cummings Manookian, what's your
23  position on what Mr. Cummings and his firm are
24  entitled to in the Shoemaker case?
25  A.      I don't know at this point.
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 371 of 662 PageID #: 3965
1743

```
 1  Q.      Will it be an equivalent amount to what you
 2  say Cummings Manookian is entitled to, or will it be
 3  more or less?
 4  A.      Well, he had left -- he had withdrawn and left
 5  Cummings Manookian, and the complaint -- he filed --
 6  was involved in the filing of the complaint.  I guess
 7  it depends on if we look at that percentage, you know,
 8  that there was an agreement of how the percentage was
 9  claimed, and I guess up until he withdrew.  He
10  withdrew from that case.
11  Q.      And you go by the passage of time when you try
12  to figure out how much the various firms are entitled
13  to?
14  A.      I think that's what the member agreement --
15  that was the formula or however you would -- the
16  process for if one partner withdrew and, depending on
17  who took the case, when there was a recovery in that
18  case, how the fee would be split among those lawyers.
19  Q.      Do you have a copy of the operating agreement?
20  A.      I think we do because we filed a motion in the
21  bankruptcy case asking as the cases that Mr. Cummings
22  was working on -- as those were being settled, we were
23  using that formula, and we asked the Court to approve,
24  so we didn't have to go in each time, just approve how
25  the attorney fees that were awarded, how they would be
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 372 of 662 PageID #: 3966
1744

```
 1  split between Cummings Manookian and Cummings Law.
 2  Q.      If that agreement wasn't filed on the docket
 3  and you haven't produced it to us yet, would you
 4  produce it to us?
 5  A.      Yes.  I think -- yes.
 6              MR. SPRAGENS:  That's all I have right
 7  now.  Thank you very much for your time.
 8              MR. GABBERT:  I'm fine.
 9              FURTHER DEPONENT SAITH NOT.
10              (Proceedings concluded at 2:20 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    REPORTER'S CERTIFICATE

 2

 3            I, Sabrina L. Schneider, Notary Public and

 4    Licensed Court Reporter, do hereby certify that I

 5    recorded to the best of my skill and ability by

 6    machine shorthand all the proceedings in the foregoing

 7    transcript, and that said transcript is a true,

 8    accurate, and complete transcript to the best of my

 9    ability.

10            I further certify that I am not an attorney

11    or counsel of any of the parties, nor a relative or

12    employee of any attorney or counsel connected with the

13    action, nor financially interested in the action.

14

15            SIGNED this 4th day of May, 2022

16

17

18            Sabrina Schneider
              Sabrina L. Schneider, LCR
19            Notary Public, State of Tennessee
              My Commission Expires: 5/9/2022
20
      Tennessee LCR No. 455
21    Expires: 6/30/2022

22

23

24

25
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 374 of 662 PageID #: 3968
1746

```
1                    E R R A T A

2
       I, JEANNE ANN BURTON, TRUSTEE, having read the
3    foregoing deposition, Pages 1 through 129, taken April
     20, 2022, do hereby certify said testimony is a true
4    and accurate transcript, with the following changes
     (if any):
5
     PAGE LINE      SHOULD HAVE BEEN
6
7    ____ ____      _____

8    ____ ____      _____

9    ____ ____      _____

10   ____ ____      _____

11   ____ ____      _____

12   ____ ____      _____

13   ____ ____      _____

14   ____ ____      _____

15   ____ ____      _____

16   ____ ____      _____

17   ____ ____      _____

18   ____ ____      _____

19
                    _____
20                  JEANNE ANN BURTON, TRUSTEE

21

22

23

24   _____
     Notary Public
25   My Commission Expires:_____
```

(615) 933-6786
www.harpethcourtreporters.com
Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 375 of 662 PageID #: 3969
1747





(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 384 of 662 PageID #: 3978

1756



(615) 933-6786
www.harpethcourtreporters.com



Case 3:23-cv-00961    Document 6-2    Filed 10/04/23    Page 386 of 662 PageID #: 3980

1758



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com



(615) 933-6786
www.harpethcourtreporters.com

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | Case No, 3:19-bk-07235 |
| | Chapter 7 |
| CUMMINGS MANOOKIAN, PLLC | Judge Walker |
| Debtor. | Adv. Proc. No. 3:20-ap-90002 |
| JEANNE ANN BURTON, TRUSTEE | |
| Plaintiff, | |
| v. | |
| HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC, | |
| Defendants. | |

## DECLARATION OF BRIAN MANOOKIAN

Pursuant to 28 U.S. Code § 1746, I, Brian Manookian, declare as follows:

1.      I am an adult over the age of eighteen and am competent to make this declaration.  I have personal knowledge of the matters stated herein.

2.      Cummings Manookian was formed as a professional limited liability company to provide legal services.

3.      Cummings Manookian was comprised of two members: Brian Cummings and Brian Manookian.

4.      Cummings Manookian specialized in representing Plaintiffs in medical malpractice cases.

1

5.     Cummings Manookian primarily accepted cases on a contingency fee basis whereby Cummings Manookian was only paid if they recovered monies for their client.

6.     Cummings Manookian entered into engagement agreements with their clients that laid out the duties and rights of both parties to the contract.

7.     Cummings Manookian utilized a standard form engagement agreement whose content and terms with respect to the rights and duties of the parties generally did not vary from case to case ("the CM Engagement Agreement").

8.     The CM Engagement Agreement included terms regarding the parties' rights in the event that the client terminated Cummings Manookian, as well as terms defining the parties' rights in the event that Cummings Manookian withdrew from the engagement.

9.     The CM Engagement Agreement required the client to pay Cummings Manookian an attorney's fee in the event that the client terminated Cummings Manookian.

10.    The CM Engagement Agreement did not require the client to pay Cummings Manookian an attorney's fee in the event Cummings Manookian withdrew from the representation.

11.    Brian Cummings withdrew from Cummings Manookian effective September of 2018.

12.    Brian Manookian was suspended from the practice of law effective December of 2018.

13.    By January 1, 2019, Cummings Manookian had no employees and no members or partners with an active license to practice law.

2

14. On May 23, 2018, Cummings Manookian entered into an Agreement with Marty and Melissa Fitzgerald whose terms are contained in Exhibit 2 ("the Fitzgerald Engagement Agreement").

15. Exhibit 2 is a genuine copy of the attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melisa Fitzgerald.

16. On May 23, 2018 Brian Manookian was a member of Cummings Manookian.

17. On May 23, 2018, Brian Manookian had the authority to enter into the Fitzgerald Engagement Agreement with Marty and Melissa Fitzgerald on behalf of Cummings Manookian.

18. The Fitzgerald Engagement Agreement was drafted by Cummings Manookian.

19. The Fitzgerald Engagement Agreement is a binding contract upon Cummings Manookian, Marty Fitzgerald, and Melissa Fitzgerald.

20. The Fitzgerald Engagement Agreement is the only written agreement between Cummings Manookian and Marty and Melissa Fitzgerald.

21. The Fitzgerald Engagement Agreement states that if the Fitzgeralds terminate Cummings Manookian as their lawyers, Cummings Manookian will be entitled to some portion of any recovered attorney's fee.

22. The Fitzgerald Engagement Agreement states that if Cummings Manookian withdraws from representing the Fitzgeralds, Cummings Manookian will be entitled to advanced expenses.

3

23.     The Fitzgerald Engagement Agreement does not provide for, or require, the payment of an attorney's fee to Cummings Manookian in the event Cummings Manookian withdraws from representing the Fitzgeralds.

24.     On December 7, 2018, Brian Manookian was the sole member of Cummings Manookian.

25.     On December 7, 2018, Brian Manookian was authorized to speak to Marty and Melissa Fitzgerald on behalf of Cummings Manookian on the topic of his and Cummings Manookian's representation of the Fitzgeralds.

26.     Exhibit 3 ("the Fitzgerald Withdrawal Letter") is a letter from Cummings Manookian to Marty and Melissa Fitzgerald dated December 7, 2018.

27.     The Fitzgerald Withdrawal Letter was sent by Brian Manookian to Marty and Melissa Fitzgerald.

28.     The Fitzgerald Withdrawal Letter was received by Marty and Melissa Fitzgerald.

29.     The Fitzgerald Withdrawal Letter states that Brian Manookian and Cummings Manookian are withdrawing from their representation of Marty and Melissa Fitzgerald.

30.     The Fitzgerald Withdrawal Letter requests that Marty and Melissa Fitzgerald obtain another attorney or firm to represent them.

31.     Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald.

32.     Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald prior to receiving any settlement for them.

4

33. The Fitzgerald Withdrawal Letter states that because Cummings Manookian is withdrawing from the representation, it will not be entitled to any portion of an attorney's fee in the matter.

34. The Fitzgerald Withdrawal Letter states that Cummings Manookian specifically disclaims any attorney's fee in the Fitzgerald matter.

35. Cummings Manookian disclaimed any attorney's fee in the Fitzgerald matter via written letter to the Fitzgeralds dated December 7, 2018.

36. On April 19, 2017, Cummings Manookian entered into an Agreement with Brett Keefer whose terms are contained in Exhibit 1 ("the Shoemaker Engagement Agreement.")

37. Exhibit 1 is a genuine copy of the attorney-client agreement between Cummings Manookian and Brett Keefer.

38. The Shoemaker Engagement Agreement was drafted by Cummings Manookian.

39. The Shoemaker Engagement Agreement is a binding contract upon Cummings Manookian and Brett Keefer.

40. The Shoemaker Engagement Agreement is the only written agreement between Cummings Manookian and Brett Keefer or any representative of the Shoemaker Estate.

41. The Shoemaker Engagement Agreement states that if Brett Keefer terminates Cummings Manookian as his lawyers, Cummings Manookian will be entitled to some portion of any recovered attorney's fee.

5

42.     The Shoemaker Engagement Agreement states that if Cummings Manookian withdraws from representing Brett Keefer, Cummings Manookian will be entitled to advanced expenses.

43.     Cummings Manookian did not pay any costs or advance any expenses associated with any lawsuit filed on behalf of Brett Keefer or the Shoemaker Estate.

44.     The Shoemaker Engagement Agreement does not provide for, or require, the payment of an attorney's fee to Cummings Manookian in the event Cummings Manookian withdraws from representing Brett Keefer.

45.     Cummings Manookian withdrew from representing Brett Keefer.

46.     Cummings Manookian withdrew from representing Brett Keefer prior to receiving a settlement for Mr. Keefer or the Shoemaker Estate.

47.     As of January 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

48.     As of January 1, 2019, Cummings Manookian had no employees.

49.     The lawsuit in the Shoemaker matter was filed on February 11, 2019.

50.     On February 11, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

51.     On February 11, 2019, Cummings Manookian had no employees.

52.     No attorney ever entered an appearance in the Shoemaker case that identified himself or herself as working for or on behalf of Cummings Manookian.

53.     No attorney ever signed a pleading in the Shoemaker case that identified himself or herself as working for or on behalf of Cummings Manookian.

54.     Cummings Manookian did not even correspond or communicate with Brett Keefer in 2019, 2020, or 2021.

55. In the cases in which Cummings Manookian represented clients, Cummings Manookian did not own the client file or the cause of action.

56. Cummings Manookian never owned any real property and did not own the office property at 45 Music Square West where it operated for a period of time.

57. Manookian PLLC has never received any property of any kind belonging to Cummings Manookian.

58. Cummings Manookian has never transferred any property of any kind to Manookian PLLC.

59. Manookian PLLC has never caused Cummings Manookian to make or incur a transfer of property of any kind.

60. Manookian PLLC has never caused any person or entity to terminate any contract or business relationship with Cummings Manookian.

61. Manookian PLLC is not and has never been in possession, custody, or control of any property belonging to Cummings Manookian.

62. Manookian PLLC does not and has never owed a debt that is property of Cummings Manookian.

63. Manookian PLLC has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.

I declare under penalty of perjury that the foregoing to true and correct. Executed on June 24, 2022

_____
Brian Manookian

7

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| Debtor. | **Adv. Proc. No. 3:20-ap-90002** |
| **JEANNE ANN BURTON, TRUSTEE** | |
| Plaintiff, | |
| v. | |
| **HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,** | |
| Defendants. | |

## DECLARATION OF AFSOON HAGH

Pursuant to 28 U.S. Code § 1746, I, Afsoon Hagh, declare as follows:

1.    I am an adult over the age of eighteen and am competent to make this declaration. I have personal knowledge of the matters stated herein.

2.    The Shoemaker Case ultimately settled in 2021.

3.    Neither Afsoon Hagh or Hagh Law ("the Hagh Parties") has ever received any property of any kind belonging to Cummings Manookian.

4.    Cummings Manookian has never transferred any property of any kind to the Hagh Parties.

1

5. The Hagh Parties have never caused Cummings Manookian to make or incur a transfer of property of any kind.

6. The Hagh Parties are not and have never been in possession, custody, or control of any property belonging to Cummings Manookian.

7. The Hagh Parties do not and have never owed a debt that is property of Cummings Manookian.

8. Hagh Law never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.

I declare under penalty of perjury that the foregoing to true and correct. Executed on June 24, 2022

**Afsoon Hagh**

2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## EXPEDITED MOTION TO SCHEDULE STATUS CONFERENCE

Comes now Jeanne Ann Burton, Trustee and Plaintiff in this matter (the "Trustee"), who respectfully moves in an expedited fashion to schedule a status conference in this matter on June 29, 2022 at 1:00 p.m., to coincide with a previously scheduled hearing in this case. As grounds for this Motion, the Trustee states that:

### NECESSITY FOR EXPEDITED RELIEF

1. By this Expedited Motion and pursuant to Local Rule 9075-1, the Trustee seeks entry of an Order or Notice setting an expedited status conference on June 29, 2022 at 1:00 p.m.

2. The Trustee seeks to have the Motion decided on an expedited basis because the Plaintiff needs clarification from the Court on certain pretrial scheduling matters, including whether the Defendants have properly filed a motion for summary judgment, when the Court expects the Plaintiff to respond to that motion for summary judgment, when the Court expects the

parties to answer and/or supplement prior answers to written discovery, and when the Court expects any party to file dispositive motions.

3.      Notice of this Motion is being provided via the Court's electronic case filing system to all parties having filed a notice in this matter. The Trustee submits that the notice of the Motion as provided for herein constitutes good and adequate notice under these circumstances.

4.      The Trustee asks that the Court schedule an expedited pretrial conference on June 29, 2022, at 1:00 p.m., to consider these matters.

## MOTION TO SCHEDULE STATUS CONFERENCE

1.      The Trustee deeply regrets having to petition the Court to resolve pretrial scheduling issues but, in this instance, it is necessary and important.

2.      On October 29, 2021, the Court entered a Pretrial Order (Doc. 93) setting forth certain deadlines applicable in this matter.  Among the relevant deadlines established in that Pretrial Order was a deadline of May 31, 2022 for completing depositions, a deadline of June 24, 2022 for filing dispositive motions, a deadline of July 8, 2022 for responding to dispositive motions, and a deadline of July 15, 2022 for filing replies related to the dispositive motions.

3.      Subsequently, on March 28, 2022, the Court entered an Order Regarding Motions to Compel Discovery Responses (Doc. 143) which, among other things, set other pretrial dates including:  a deadline of June 1, 2022 to respond to Manookian, PLLC's Second Set of Requests for Admission; a deadline of June 1, 2022 (after the close of depositions) for all parties to supplement prior written discovery responses; a deposition of Jeanne Ann Burton, Trustee on April 20, 2022; a deposition of Phillip Young, Receiver on April 21, 2022; a deposition of Brian Manookian, Manookian, PLLC and Cummings Manookian, PCL on May 9, 2022; and a deposition of Afsoon Hagh and Hagh Law, PLC on May 10, 2022.

4.      Both Jeanne Ann Burton, Trustee and Phillip Young, Receiver appeared, and were deposed, on the dates set forth in the March 28, 2022 order.  However, Defendants' counsel repeatedly asked for alterations to the scheduled depositions of Brian Manookian and Afsoon Hagh.  First, Defendants' counsel asked to switch the depositions of Brian Manookian and Afsoon Hagh such that Ms. Hagh would be deposed on May 9 and Mr. Manookian on May 10.  The Trustee consented.  Then, Ms. Hagh's counsel asked the Trustee to reschedule the Hagh deposition for May 18, 2022.  The Trustee consented.  On May 16, 2022 (two days before the twice rescheduled deposition of Afsoon Hagh), Ms. Hagh's counsel contacted the Trustee's counsel and indicated that Ms. Hagh was not willing to proceed with a deposition at the courthouse from 10:00 am – 5:00 pm.   Trustee's counsel offered to limit the deposition to a window of a few hours to accommodate Ms. Hagh's concerns.  After consultation with his client, Ms. Hagh's counsel responded by notifying Trustee's counsel that the only way Ms. Hagh was willing to proceed with the deposition on May 18, 2022 is if the Trustee were willing to conduct the deposition via Zoom.  In an attempt to keep this matter on schedule and to reduce the secondary discovery squabbles, the Trustee reluctantly agreed to conduct the Hagh deposition via Zoom on May 18, 2022.

5.      Meanwhile, in order to timely complete depositions by the May 31, 2022 deadline established by the Court, the Trustee filed notices of deposition and issued subpoenas for deposition testimony of three third-party witnesses on May 5, 2022. *See* Doc. Nos. 158, 159, 160, 162, 163 and 164.  Pursuant to those notices and subpoenas, the Trustee was to depose Ronette McCarthy on May 25, Brian Cummings on May 26, and Marty Fitzgerald on May 27.  The subpoenas were all served and no timely objections were lodged.  On May 17, 2022, the week before the scheduled depositions, counsel for Afsoon Hagh and Hagh Law, PLLC again contacted the Trustee's counsel asking for scheduling accommodations.  This time, according to counsel,

Ms. Hagh and Mr. Manookian were going to be out of state the entire week of May 23, 2022 and unable to participate in the third-party Zoom depositions. In a spirit of cooperation, the Trustee offered to continue the third-party depositions but only if the Defendants would agree to continue all other related deadlines, including the deposition cutoff, the deadline for responding to Manookian, PLLC's second set of requests for admission, the deadline for supplementing written discovery responses, and the deadlines for filing and responding to dispositive motions.

6.      As an inducement to the rescheduling of the third-party depositions, the Defendants agreed to continue all pretrial deadlines in the case. On May 19, 2022, the Defendants filed Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Certain Other Deadlines (Doc. 167) and submitted an unopposed order granting that relief (Doc. 168). This unopposed, proposed order provided the following: (1) that the third-party depositions would be reset by agreement; (2) that the discovery cutoff would be extended from May 31, 2022 to June 30, 2022; (3) that the deadline for all parties to supplement written discovery responses would be extended from June 1, 2022 to July 1, 2022; (4) that the deadline for filing dispositive motions would be extended from June 24, 2022 to July 29, 2022; (5) that responses to any dispositive motions would be due August 12, 2022; and (6) that replies related to any dispositive motions would be due August 19, 2022. Both the motion and order accurately represented that the Trustee did not oppose the relief sought in the motion or the proposed order.

7.      On May 25, 2022 , the Court entered an Order (Doc. 171) denying the Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Certain Other Deadlines as moot, citing Paragraph 9 of the Court's March 28, 2022 Order. Paragraph 9 of that prior Order gave the parties deference to set third party depositions as needed. The Court expanded on this Order during an emergency telephone conference conducted on May 25, 2022 when it indicated

that the Court would not stand in the way of any pretrial schedule alterations upon which the parties could agree.

8.      In reliance upon the Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Certain Other Deadlines and the proposed order granting that motion (both of which were signed by all Defendants' counsel), and in light of the Court's admonition that it would allow the parties to work out the pretrial scheduling, the Trustee rescheduled the deposition of Ronette McCarthy for June 8, 2022, Brian Cummings for June 9, 2022, and Marty Fitzgerald for June 24, 2022.  The Trustee would have never agreed to reschedule these depositions after the discovery cutoff, after the date for responding to and supplementing responses to written discovery, and mere days prior to the dispositive motion deadline but for the Defendants' counsel's agreement, as represented by Docket entries 167 and 168, to continue *all* pretrial deadlines.

9.      The depositions of Ronette McCarthy and Brian Cummings were conducted as rescheduled by Zoom.  Interestingly, despite demanding that these depositions be rescheduled due to the Defendants' unavailability during the week of May 23, none of the Defendants appeared on either of the depositions.  Only the Defendants' counsel, who were available the week of May 23, appeared at these depositions.

10.      On June 21, 2022, John Spragens, counsel for Manookian, PLLC in this matter, emailed the Trustee's counsel on behalf of third-party Marty Fitzgerald to lodge objections to the reissued subpoena requiring his appearance at deposition on June 24, 2022 – the deposition that was rescheduled at the request of the Defendants.  In his email, Mr. Spragens stated that Mr. Fitzgerald was unavailable until after July 8, 2022, that he believed most or all of the testimony would be subject to the attorney-client privilege, and that "[Mr. Fitzgerald] believes the entire proceeding is a farce that will only re-traumatize him for the benefit of lawyers who are attempting

to claim entitlement to funds." Despite Mr. Fitzgerald having not objected to the original subpoena, and despite the Trustee believing these objections to be invalid, the Trustee acknowledged the objections communicated by Mr. Spragens pursuant to FRCP 45(d) and canceled the June 24 deposition of Marty Fitzgerald.[1]

11.     At 10:50 p.m. on June 24, 2022, the Defendants filed a joint motion for summary judgment, along with a joint statement of undisputed facts. There were several oddities about this filing. First, the motion was filed on June 24, 2022 despite the agreement of the parties that the deadline for filing dispositive motions would be continued from June 24, 2022 to July 29, 2022. Second, the accompanying statement of undisputed facts relied heavily upon statements from Manookian, PLLC's Second Set of Requests for Admission, which the statement of undisputed facts repeatedly alleged were "admitted pursuant to Fed. R. Civ. P. 36(3)(a)"; this despite the parties' agreement that the Trustee would have until July 1, 2022 to respond to all outstanding written discovery. Finally, the motion and the statement of undisputed facts were filed only by John Spragens as "Attorney for Manookian PLLC and Brian Manookian" and "Co-counsel for Afsoon Hagh and Hagh Law PLLC for purposes of Summary Judgment only." Neither Craig Gabbert nor Glenn Rose, counsel for Afsoon Hagh and Hagh Law PLLC, signed the joint motion or the joint statement of facts, nor did John Spragens enter a notice of appearance or notice of substitution of counsel for Ms. Hagh and Hagh Law.

12.     It is clear from the joint motion for summary judgment and the joint statement of undisputed facts that the Defendants are ignoring their agreement to continue all pretrial deadlines in this case and seeking to play "gotcha" with regard to the deadlines in this case.

_____

[1] The Trustee continues to evaluate her options regarding this deposition, i.e., whether to file a motion to compel Mr. Fitzgerald's testimony or whether to attempt to depose Mr. Fitzgerald by written questions as requested by Mr. Spragens.

13.     The Trustee seeks to schedule a status conference in this matter on June 29, 2022 at 1:00 p.m., following the previously scheduled hearing in this matter, to discuss the following topics: (1) whether the Court will enforce the parties' agreement concerning continued deadlines, as reflected in the motion and order docketed at Doc. Nos. 167 and 168; and (2) whether John Spragens has properly filed a motion for summary judgment on behalf of both his client, Manookian, PLLC, and two clients which are represented by other counsel in this matter, Afsoon Hagh and Hagh Law, PLLC.

14.     The Trustee needs guidance from the Court on the scheduling issues, preferably by way of an order memorializing the revised deadlines about which the parties previously agreed. Which deadlines will be enforced by the Court will govern the timing of the Trustee's response to the pending motion for summary judgment, when the Trustee files her own motion for summary judgment, whether the Trustee files a motion under FRCP 60(b) for relief from the original scheduling order, and whether the Trustee files a motion under FRCP 36(b) to allow her responses to the late-filed requests for admission by Manookian, PLLC. This guidance is especially important given that the Trustee and her counsel built their respective calendars (in this case and other cases) for the months of July and August around the deadlines agreed upon and documented in Doc. Nos. 167 and 168.

15.     The Trustee would also respectfully request the Court to address whether John Spragens has authority to file a motion for summary judgment on behalf of Afsoon Hagh and Hagh Law, PLLC, or whether that is the sole responsibility of her counsel in this case. As it stands, the Trustee and her counsel are at a loss as to who is currently representing those two defendants.

16.     Given the above considerations, the Trustee respectfully requests that the Court schedule a status conference on June 29, 2022 at 1:00 p.m. to discuss these matters or, alternatively, to enter its own order that addresses these issues.

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing has been sent to all parties requesting notice via CM/ECF Electronic Filing on the 28th day of June, 2022.

/s/ Phillip G. Young, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

IN RE: )
)
CUMMINGS MANOOKIAN, PLLC, ) Case No. 3:19-bk-07235
    Debtor. ) Chapter 7
) Judge Walker
JEANNE ANN BURTON, TRUSTEE, )
    Plaintiff, )
)
v. )
)
HAGH LAW, PLLC; AFSOON HAGH; )
MANOOKIAN, PLLC; and FIRST- )
CITIZENS BANK & TRUST )
COMPANY, )
    Defendants. )
) Adv. Proc. No. 3:20-ap-90002

---

## ORDER SETTING EXPEDITED STATUS CONFERENCE

---

This matter came before the Court upon the Expedited Motion to Schedule Status
Conference (the "Motion") filed by Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff herein
(the "Trustee"); it appearing that good cause exists for conducting a status conference; and it
appearing that the relief requested is in the best interests of all parties in interest; and after due
deliberation and sufficient cause appearing therefore, it is hereby ORDERED:

A pretrial conference in this matter shall be conducted on _____, 2022 at
_____ .m. prevailing Central Time in The United States Bankruptcy Court for the Middle
District of Tennessee, Courtroom Two, 701 Broadway, Nashville, Tennessee.

This order was signed and entered electronically as indicated at the top of the first page.

Approved for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
615-465-6008
phillip@thompsonburton.com

Special Counsel for Trustee

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 6/28/2022



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## ORDER SETTING EXPEDITED STATUS CONFERENCE

This matter came before the Court upon the Expedited Motion to Schedule Status

Conference (the "Motion") filed by Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff herein

(the "Trustee"); it appearing that good cause exists for conducting a status conference; and it

appearing that the relief requested is in the best interests of all parties in interest; and after due

deliberation and sufficient cause appearing therefore, it is hereby ORDERED:

Response due by July 7, 2022.

A pretrial conference in this matter shall be conducted on <u>July 13</u>, 2022 at

<u>11:00</u> <u>a</u>.m. prevailing Central Time in The United States Bankruptcy Court for the Middle

District of Tennessee, Courtroom Two, 701 Broadway, Nashville, Tennessee.

| This order was signed and entered electronically as indicated at the top of the first page. |
| --- |

Approved for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
615-465-6008
phillip@thompsonburton.com

Special Counsel for Trustee

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

# UNITED STATES BANKRUPTCY COURT
## - MIDDLE DISTRICT OF TENNESSEE -

## AUDIO CD REQUEST FORM

Please complete one form for each trial or hearing, attach payment (search fee only),
and deliver to Clerk's office at 701 BROADWAY, ROOM 170, NASHVILLE, TN 37203
or file electronically through CM/ECF.

| 1. NAME OF PARTY REQUESTING CD | 2. DATE OF ORDER |
|---|---|
| Jeanne Ann Burton, Trustee | 6/29/2022 |

| 3. EMAIL ADDRESS | 4. PHONE NUMBER |
|---|---|
| phillip@thompsonburton.com | 615-465-6000 |

**5. MAILING ADDRESS**

6100 Tower Circle, Suite 200
Franklin, TN 37067

| 6. CASE NUMBER | 7. CASE NAME | 8. JUDGE |
|---|---|---|
| 3:20-ap-90002 | Burton v. Hagh et al. | Walker |

**9. DATE(S) OF HEARING/TRIAL** (If hearing/trial was on multiple days, please fill in all days hearing/trial held)

From  6/29/22  to  _____

**10. ORDER IS FOR**
☐ APPEAL  ☐ BANKRUPTCY  ☑ ADVERSARY
☐ OTHER: _____

**11. NUMBER OF COPIES REQUESTED**  1
(Note:  Complete one copy of this form for each hearing/trial date requested.)

**12. PICK-UP/DELIVERY**
Requesting Party:
☐ Will wait while the audio CD is prepared.
☑ Will return to pick-up the audio CD.
☐ Has provided a self-addressed, postage-paid mailing envelope.

| FOR COURT USE ONLY | DATE | BY | CD PICKED-UP OR DELIVERED TO: | |
|---|---|---|---|---|
| ORDER RECEIVED BY INTAKE | | | INITIALS | |
| SEARCH FEE PAID | | | DATE | |
| CD CREATED/DELIVERED | | | | |

jjk 2/2017

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **IN RE:** ) | |
| ) | **Case No. 3:22-cv-00474** |
| **CUMMINGS MANOOKIAN, PLLC,** ) | |
| ) | **Judge Aleta A. Trauger** |
| **Debtor.** ) | |
| ) | |

---

**APPELLANTS MANOOKIAN PLLC AND BRIAN MANOOKIAN'S STATEMENT OF
THE ISSUES TO BE PRESENTED AND DESIGNATION OF ITEMS TO BE
INCLUDED IN APPELLATE RECORD**

---

Pursuant to Federal Rule of Bankruptcy Procedure 8009, Appellants Manookian PLLC and

Brian Manookian ("Appellants") hereby files this Statement of the Issues to be Presented and

Designation of Items to be Included in Appellate Record.

**<u>Issues To Be Presented</u>**

Whether the Bankruptcy Court erred in failing to recuse itself, scheduling an evidentiary

hearing, and *sua sponte* quashing a subpoena after engaging in material *ex parte* communications

about Appellants, details of which it has not disclosed to the parties.

**<u>Designation of Items To Be Included in Appellate Record</u>**

The appellate record consists of the following:

- All docket entries in the bankruptcy proceeding (No. 3:19-bk-07235) and related adversary

  proceeding (No. 3:20-ap-90002), specifically including adversary proceeding docket

  entries 161, 165, 173, 174, 177, and 178, and all attachments thereto.

- Transcript (forthcoming) of June 29, 2022 adversary proceeding hearing on motion to

  disqualify.

Date:   June 29, 2022                    Respectfully submitted,


                                         */s/ John Spragens*
                                         John Spragens (TN Bar No. 31445)
                                         Spragens Law PLC
                                         311 22nd Ave. N.
                                         Nashville, TN 37203
                                         T: (615) 983-8900
                                         F: (615) 682-8533
                                         john@spragenslaw.com

                                         *Attorney for Manookian PLLC and Brian*
                                         *Manookian*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Statement of the Issues to be Presented and Designation of Items to be Included in Appellate Record was filed June 29, 2022, and served electronically upon the following parties in interest as indicated on the receipt issued by the Court's electronic filing system:

Phillip Young
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
(615) 465-6008 (T)
phillip@thompsonburton.com

*Counsel for Trustee Jeanne Anne Burton*

Craig Vernon Gabbert, Jr
Glenn Benton Rose
Bass, Berry & Sims PLC
150 Third Avenue South
Suite 2800
Nashville, TN 37201
615-742-6277
Fax : 615-742-0465
cgabbert@bassberry.com
grose@bassberry.com

*Counsel for Defendant Hagh Law PLLC*


*/s/ John Spragens*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HAGH LAW, PLLC; AFSOON** | ) | |
| **HAGH; MANOOKIAN, PLLC; and** | ) | |
| **FIRST-CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

## NOTICE REGARDING DEPOSITION OF MARTY FITZGERALD

Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff in this action, respectfully gives notice that, despite the timely issuance of two subpoenas, the Trustee has not been afforded an opportunity to depose Marty Fitzgerald via Zoom, as requested in the subpoenas. The deadline for completing discovery is currently June 30, 2022. In light of the Court's oral statement on June 29, 2022 concerning its limited jurisdiction in this matter, the Trustee will not be filing a motion to compel the testimony of Mr. Fitzgerald until the conclusion of the pending appeal in this matter. However, the Trustee reserves the right to file such a motion in the future.

Dated: June 30, 2022

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:    615.465.6008
Fax:    615.807.3048
Email: phillip@thompsonburton.com

Special Counsel for Jeanne Ann Burton,
Trustee

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has

been served via electronic notice/ECF on all parties having made an appearance herein.

This 30th day of June, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

IN RE:                                      )
                                            )
CUMMINGS MANOOKIAN, PLLC,                   )     Case No. 3:19-bk-07235
    Debtor.                               )     Chapter 7
                                            )     Judge Walker
JEANNE ANN BURTON, TRUSTEE,                 )
    Plaintiff,                            )
                                            )
v.                                          )
                                            )
HAGH LAW, PLLC; AFSOON HAGH;                )
MANOOKIAN, PLLC; and FIRST-                 )
CITIZENS BANK & TRUST                       )
COMPANY,                                    )
    Defendants.                           )
                                            )     Adv. Proc. No. 3:20-ap-90002

---

## MOTION TO WITHDRAW EXPEDITED MOTION TO SCHEDULE STATUS CONFERENCE AND TO CANCEL STATUS CONFERENCE

---

Comes now Jeanne Ann Burton, Trustee and Plaintiff in this matter (the "Trustee"), and moves to withdraw her Expedited Motion to Schedule Status Conference (Doc. 189) (the "Motion") and to cancel the status conference set by the Court in its June 28, 2022 Order (Doc. 191) (the "Order") which was requested by the Motion. In support hereof, the Trustee states that the primary purpose of her Motion was to seek immediate guidance from the Court concerning the application of certain deadlines to this case. In light of the Court's oral statement made in open court on June 29, 2022 regarding its jurisdiction pending appeal, it appears that the relief sought in the Motion is premature and/or moot. Wherefore, the Trustee respectfully requests that she be allowed to withdraw the Motion, and that the Court cancel the status conference set for July 13, 2022 pursuant to the Order. The Trustee reserves the right to request a status conference in this matter upon the resolution of the pending appeal in this matter.

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been sent to all parties requesting notice via CM/ECF Electronic Filing on the 30th day of June, 2022.

/s/ Phillip G. Young, Jr.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | Case No. 3:19-bk-07235 |
| Debtor. | ) | Chapter 7 |
| | ) | Judge Walker |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |
| | ) | Adv. Proc. No. 3:20-ap-90002 |

## ORDER CANCELLING STATUS CONFERENCE

This matter came before the Court upon the Motion to Withdraw Expedited Motion to

Schedule Status Conference (the "Motion") filed by Jeanne Ann Burton, Chapter 7 Trustee and

Plaintiff herein (the "Trustee"); it appearing that the Trustee has the right to withdraw her prior

request for a status conference; and it appearing that the status conference is now premature

and/or moot in light of the Court's statement on June 29, 2022 regarding its jurisdiction pending

the appeal of other issues in this matter; and it appearing that the relief requested is in the best

interests of all parties in interest; and after due deliberation and sufficient cause appearing

therefore, it is hereby ORDERED:

The status conference previously scheduled in this matter for July 13, 2022 is cancelled.

This order was signed and entered electronically as indicated at the top of the first page.

Approved for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
615-465-6008
phillip@thompsonburton.com

Special Counsel for Trustee

United States Bankruptcy Court
Middle District of Tennessee

Burton,
　　　Plaintiff

Hagh Law PLLC,
　　　Defendant

Adv. Proc. No. 20-90002-CMW

# CERTIFICATE OF NOTICE

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jun 30, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| dft | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| intp | + | BRIAN MANOOKIAN, 45 MUSIC SQUARE WEST, NASHVILLE, TN 37203-3205 |
| dft | + | Hagh Law PLLC, c/o Afsoon Hagh, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Manookian PLLC, c/o Brian Manookian, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |

TOTAL: 4

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| pla | + | Email/Text: jeanne.burton@comcast.net | Jun 28 2022 23:26:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jun 30, 2022　　　　　　　　Signature:　　　/s/Gustava Winters

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on June 28, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com  bankr@bassberry.com;delores.walker@bassberry.com |
| GLENN BENTON ROSE | on behalf of Defendant Hagh Law PLLC grose@bassberry.com  bankr@bassberry.com |

JOHN T. SPRAGENS

on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM  spragenslaw@ecf.courtdrive.com

PHILLIP G YOUNG

on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com


TOTAL: 4

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 6/28/2022



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **CUMMINGS MANOOKIAN, PLLC,** | ) **Case No. 3:19-bk-07235** |
| Debtor. | ) **Chapter 7** |
| | ) **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) |
| **MANOOKIAN, PLLC; and FIRST-** | ) |
| **CITIZENS BANK & TRUST** | ) |
| **COMPANY,** | ) |
| Defendants. | ) |
| | ) **Adv. Proc. No. 3:20-ap-90002** |

## ORDER SETTING EXPEDITED STATUS CONFERENCE

This matter came before the Court upon the Expedited Motion to Schedule Status

Conference (the "Motion") filed by Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff herein

(the "Trustee"); it appearing that good cause exists for conducting a status conference; and it

appearing that the relief requested is in the best interests of all parties in interest; and after due

deliberation and sufficient cause appearing therefore, it is hereby ORDERED:

Response due by July 7, 2022.

A pretrial conference in this matter shall be conducted on ___July 13___, 2022 at

__11:00__ a.m. prevailing Central Time in The United States Bankruptcy Court for the Middle

District of Tennessee, Courtroom Two, 701 Broadway, Nashville, Tennessee.

1

This order was signed and entered electronically as indicated at the top of the first page.

Approved for entry:

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
615-465-6008
phillip@thompsonburton.com

Special Counsel for Trustee

This Order has been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

2

Form vorder

# UNITED STATES BANKRUPTCY COURT

## MIDDLE DISTRICT OF TENNESSEE

701 Broadway Room 170
Nashville, TN 37203

---

Adversary Proceeding No.: 3:20−ap−90002
Related Bankruptcy Proceeding No.: 3:19−bk−07235

Judge: Charles M Walker

In Re:

Plaintiff/Movant : Jeanne Ann Burton

   vs

Defendant/Respondent : Hagh Law PLLC

---

### ORDER

ORDER by Judge Walker : With regard to docket entry # 198, The Court will take no action regarding the Submitted Order at Dkt. #198 as a motion is properly withdrawn via Notice. (RE: related document(s) 198) (leq)

Dated: 7/1/22

/s/ Charles M Walker
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

---

## NOTICE OF WITHDRAWAL OF
## EXPEDITED MOTION TO SCHEDULE STATUS CONFERENCE

---

Comes now Jeanne Ann Burton, Trustee and Plaintiff in this matter (the "Trustee"), and gives notice of her withdrawal of the Expedited Motion to Schedule Status Conference (Doc. 189) (the "Motion") previously filed in this case.[1]  In light of the Court's oral statement made in open court on June 29, 2022 regarding its jurisdiction pending appeal (and, more specifically, its comment that all proceedings in this matter are stayed pending the appeal), it appears that most of the relief sought in the Motion is premature and/or moot.  Accordingly, the Trustee hereby withdraws the Motion and requests that the scheduled status conference be canceled.  The Trustee reserves the right to request a status conference in this matter upon the resolution of the pending appeal in this matter and/or to

---

[1] On June 30, 2022, the Trustee filed a Motion to Withdraw Expedited Motion to Schedule Status Conference and to Cancel Status Conference (Doc. 198).  The Trustee originally filed a motion to withdraw, rather than a notice of withdrawal, because the Court had already granted the Motion and entered an Order establishing a status conference. In light of the Court's order of July 1, 2022 (Doc. 200), the Trustee submits this Notice instead of the motion to withdraw.

seek other relief similar to that sought in the Motion.

Dated: July 1, 2022.

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr. (Bar No. 21078)
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:    615.465.6000
Fax:    615.807.3048
Email: phillip@thompsonburton.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been sent to all parties requesting notice via CM/ECF Electronic Filing on the 1st day of July, 2022.

/s/ Phillip G. Young, Jr.

United States Bankruptcy Court
Middle District of Tennessee

Burton,
    Plaintiff

Adv. Proc. No. 20-90002-CMW

Hagh Law PLLC,
    Defendant

# CERTIFICATE OF NOTICE

| District/off: 0650-3 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Jul 01, 2022 | Form ID: vorder | Total Noticed: 8 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jul 03, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| aty | + | CRAIG VERNON GABBERT, JR, BASS, BERRY & SIMS PLC, 150 THIRD AVENUE SOUTH, SUITE 2800, NASHVILLE, TN 37201-2017 |
| aty | + | GLENN BENTON ROSE, BASS, BERRY & SIMS PLC, 150 THIRD AVENUE SOUTH, SUITE 2800, NASHVILLE, TN 37201-2017 |
| aty | + | JOHN T. SPRAGENS, SPRAGENS LAW PLC, 311 22ND AVE N, NASHVILLE, TN 37203-1843 |
| aty | + | PHILLIP G YOUNG, Thompson Burton PLLC, One Franklin Park, 6100 Tower Circle, Suite 200, FRANKLIN, TN 37067-1465 |
| dft | + | Afsoon Hagh, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Hagh Law PLLC, c/o Afsoon Hagh, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |
| dft | + | Manookian PLLC, c/o Brian Manookian, Managing Member, 45 Music Square W, Nashville, TN 37203-3205 |

TOTAL: 7

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| pla | + | Email/Text: jeanne.burton@comcast.net | Jul 01 2022 23:13:00 | Jeanne Ann Burton, 95 White Bridge Road, Ste 512, Nashville, TN 37205-1490 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jul 03, 2022          Signature:      /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on July 1, 2022 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| CRAIG VERNON GABBERT, JR | |

on behalf of Defendant Hagh Law PLLC cgabbert@bassberry.com  bankr@bassberry.com;delores.walker@bassberry.com

GLENN BENTON ROSE

on behalf of Defendant Hagh Law PLLC grose@bassberry.com  bankr@bassberry.com

JOHN T. SPRAGENS

on behalf of Defendant Hagh Law PLLC JOHN@SPRAGENSLAW.COM  spragenslaw@ecf.courtdrive.com

PHILLIP G YOUNG

on behalf of Plaintiff Jeanne Ann Burton phillip@thompsonburton.com

TOTAL: 4

Form vorder

# UNITED STATES BANKRUPTCY COURT

## MIDDLE DISTRICT OF TENNESSEE

701 Broadway Room 170
Nashville, TN 37203

Adversary Proceeding No.: 3:20−ap−90002
Related Bankruptcy Proceeding No.: 3:19−bk−07235

Judge: Charles M Walker

In Re:

Plaintiff/Movant : Jeanne Ann Burton

    vs

Defendant/Respondent : Hagh Law PLLC

ORDER

ORDER by Judge Walker : With regard to docket entry # 198, The Court will take no action regarding the Submitted Order at Dkt. #198 as a motion is properly withdrawn via Notice. (RE: related document(s) 198) (leq)

Dated: 7/1/22

/s/ Charles M Walker
UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
|     Debtor. | **Adv. Proc. No. 3:20-ap-90002** |
| **JEANNE ANN BURTON, TRUSTEE** | |
|     **Plaintiff,** | |
| **v.** | |
| **HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,** | |
|     **Defendants.** | |

## DEFENDANTS' MOTION FOR ENTRY OF UNOPPOSED
## SUMMARY JUDGMENT ON ALL CLAIMS AND
## NOTICE OF FILING PROPOSED ORDER

Defendants Hagh Law, PLLC, Afsoon Hagh, and Manookian, PLLC (collectively the "AP Defendants") move for entry of unopposed summary judgment in their favor and provide notice of filing their proposed order effectuating the same. As grounds for their motion, Defendants state as follows.

### I.    INTRODUCTION AND PROCEDURAL HISTORY

This is an adversary proceeding brought by Trustee Jeanne Ann Burton (the "Trustee" or "Ms. Burton") on behalf of Cummings Manookian PLC ("CM" or "Cummings

Manookian"). Cummings Manookian was a law firm that filed for Chapter 7 Bankruptcy in 2019.

On January 8, 2020, the Trustee instituted this action against Hagh Law, PLLC, Afsoon Hagh, and Manookian PLLC (collectively, the "AP Defendants") asserting seven separate claims for relief: conversion; state law fraudulent transfer; avoidance and recovery of fraudulent transfer; tortious interference with contract; successor liability and alter ego; turnover; and declaratory judgment. D.E. 1.

On October 29, 2021, the Court entered a Pretrial Order setting written discovery and deposition deadlines, as well as dates by which dispositive motions, responses to dispositive motions, and replies to dispositive motions were to be filed. D.E. 93. The Order required that "all dispositive motions shall be filed no later than June 24, 2022. All responses to the dispositive motions are to be filed no later than July 8, 2022. All replies are to be filed no later than July 15, 2022." *Id*. at Paras. 3-5.

On March 3, 2022, Manookian PLLC served its Second Set of Requests for Admission on the Trustee containing eighty-three separate factual matters requiring the Trustee to admit or deny the truthfulness thereof.

On March 28, 2022, the Court entered an order on Defendant Manookian PLLC's Motion to Compel Responses to Requests for Admission. D.E. 143. The Court ruled that "[t]he Trustee shall respond to Manookian, PLLC's Second Set of Requests for Admission no later than June 1, 2022." *Id*. at Para 5. Thus, the Trustee was afforded a full 90 days in which to respond rather than the 30 days provided by Fed. R. Civ. Pro. 36(a)(3).

On April 11, 2022, the Trustee filed her first motion to continue depositions and other discovery deadlines. D.E. 147. The Trustee requested an expedited hearing "on or before April 15, 2022 to continue certain depositions and pretrial deadlines."

On April 14, 2022, the Court denied the Trustee's first motion seeking to alter discovery and pretrial deadlines. D.E. 149. The Court explicitly held that "the applicable Rules and Orders of this Court regarding discovery are in full force and effect." *Id.* at Para. 2.

On May 19, 2022, the Defendants filed an unopposed motion to extend the deadlines for three specific third-party depositions. D.E. 167. The Defendants further stated that "[r]escheduling these depositions will necessitate moving certain other deadlines, and the Trustee and Defendants have cooperated to reach an agreement on those revisions as memorialized in the attached proposed order." *Id.* at Page 1. The Parties submitted a proposed order attempting to extend the discovery deadline until June 30, 2022, as well as attempting to continue the dispositive motion, response, and reply deadlines to July 29, 2022; August 12, 2022; and August 19, 2022, respectively. D.E. 168.

On May 25, 2022, the Court, via docket order, directed the Parties to a prior order which already permitted parties to make limited scheduling changes to third-party depositions. D.E. 171. The Court then specifically denied the Parties' Motion to move the discovery cut-off and declined to alter the deadlines relative to dispositive motions, stating that "the Submitted order at Docket Number 168 will not be entered by the Court as the related motion is denied." *Id.* Thus, the dispositive motion and reply deadlines of June 24, 2022 and July 8, 2022, were again affirmed and emphasized by the Court.

On June 1, 2022, the Trustee failed to respond to Manookian, PLLC's Second Set of Requests for Admission as required by Court Order dated March 28, 2022 at D.E. 143. Pursuant to Fed. R. Civ. Pro. 36(a)(3), all of the matters posed within the Second Set of Requests for Admission were therefore conclusively admitted. Although Fed. R. Civ. Pro.

36(b) permits withdrawal or amendment of admissions in certain circumstances and upon motion to the Court, the Trustee never filed any such motion to withdraw or amend her admissions.

On June 24, 2022, the AP Defendants collectively moved for summary judgment on all claims asserted by the Trustee in this matter. D.E. 188-1. Defendants' Motion was accompanied by a comprehensive Memorandum of Law and a detailed twenty-three-page Statement of Undisputed Material Facts, comprised of eighty (80) separate factual assertions, each of which was accompanied by citation to the record. D.E. 188-2. The Trustee did not file any dispositive motion, herself, by the June 24, 2022 deadline.

On June 28, 2022, following Defendants' filing of their Motion for Summary Judgment, the Trustee filed an "Expedited Motion to Schedule Status Conference." D.E. 189. The grounds for the Motion, according to the Trustee, were that:

> "[T]he Plaintiff needs clarification from the Court on certain pretrial scheduling matters, including whether the Defendants have properly filed a motion for summary judgment, when the Court expects the Plaintiff to respond to that motion for summary judgment, when the Court expects the parties to answer and/or supplement prior answers to written discovery, and when the Court expects any party to file dispositive motions." *Id.* at Para. 2.

The Trustee's "Expedited Motion to Schedule Status Conference" was filed despite the existing Pretrial Order clearly laying out all such deadlines, and despite multiple orders from the Court declining to alter those deadlines. *See, e.g.,* D.E. 93 (setting comprehensive pretrial deadlines for written discovery, depositions, dispositive motions, responses to dispositive motions, and replies to responses to dispositive motions); D.E. 149 (denying the Trustee's first attempt to modify pretrial deadlines, including those

related to dispositive motions); D.E. 171 (rejecting the Parties' joint attempt to modify pretrial deadlines, including those related to dispositive motions, responses and replies).

On June 28, 2022, the Court entered an Order granting the Trustee's Motion to Schedule an Expedited Status Conference and setting the requested pretrial conference for July 13, 2022. D.E. 191.

On June 29, 2022, during a hearing in this matter, the Court reiterated that it would entertain the Trustee's request for an expedited pretrial conference notwithstanding a pending motion to disqualify the judge.

On June 30, 2022, and despite the Court's willingness to schedule a hearing in order to provide "clarification" on pretrial deadlines, the Trustee withdrew her Expedited Motion to Schedule Status Conference, and further requested that the Court cancel the pretrial conference set for July 13, 2022. D.E. 197.

On July 1, 2022, the Court entered a Docket Entry noting that the Plaintiff's motion for an expedited status conference to "clarify" the existing pretrial deadlines had been "properly withdrawn via Notice." D.E. 200.

On July 8, 2022, the deadline for responses to dispositive motions, the Trustee failed to file any response to the Defendants' Motion for Summary Judgment on All Claims. The Trustee failed to respond to any of the factual assertions in Defendants' Statement of Undisputed Material Facts. And the Trustee failed to file any motion under Fed. R. Civ. Pro. 56(d) showing by affidavit or declaration that, for specified reasons, she was unable to present facts essential to justify opposition to Defendants' Motion for Summary Judgment.

Defendants' Motion for Summary Judgment on All Claims is thus unopposed, and the material facts specified by Defendants are undisputed.

## II.  **LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The purpose of "summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 Advisory Committee's Note.  A genuine issue of material fact exists only where a reasonably jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Mere allegations of a factual dispute between the parties will not suffice to defeat a properly supported summary judgment motion. *Id.*

"The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). The moving party satisfies this burden "by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." *Id.* (citation and internal quotation marks omitted).

When the moving party meets this burden, the party that opposes the motion must come forth with sufficient proof to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986).  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)

"The Sixth Circuit has consistently explained that '[f]ailure by a [party] to respond to a motion for summary judgment constitutes a forfeiture of the claims to which the motion is addressed.'" *Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718, 775 (S.D. Ohio 2021), reconsideration denied, No. 1:17-CV-406, 2021 WL 913103 (S.D. Ohio Mar. 10, 2021). "Because [the non-moving party] failed to designate specific facts creating a material issue in response to [the moving party's] motion, the district court properly granted [the moving party's] summary judgment motion." *Reed v. City of Memphis, Tennessee*, 735 F. App'x 192, 201 (6th Cir. 2018). Moreover, Local Rule 56.01(f) of the Middle District of Tennessee expressly provides that, "[i]f a timely response to a moving party's statement of material facts, or a non-moving party's statement of additional facts, is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment."

## III.   ARGUMENT

The Defendants have demonstrated that there is no genuine dispute as to any material fact as to all of Trustee's claims, and that the Defendants are entitled to a judgment as a matter of law. Moreover, Plaintiff Trustee has failed to oppose, in any form, Defendants' Motion for Summary Judgment or dispute, in any manner, the material facts set forth by the Defendants.

As a result, each of the factual assertions contained in Defendants' Statement of Undisputed Material Fact is undisputed for purposes of summary judgment. Consequently, there is no genuine issue of material fact as to any of the Plaintiff's claims, and the Defendants are entitled to entry of unopposed summary judgment in their favor.

## IV.   CONCLUSION

For all of the foregoing reasons, Defendants request that the Court enter the proposed order attached as an Exhibit to this Motion and Notice and thereby grant their unopposed Motion for Summary Judgment on All Claims.

Date:  July 15, 2022                    Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian, PLLC, Brian Manookian, Afsoon Hagh, and Hagh Law, PLLC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed July 15, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*

8

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| Debtor. | **Adv. Proc. No. 3:20-ap-90002** |
| **JEANNE ANN BURTON, TRUSTEE** | |
| Plaintiff, | |
| v. | |
| **HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,** | |
| Defendants. | |

**[PROPOSED] ORDER GRANTING SUMMARY JUDGMENT TO
DEFENDANTS ON ALL CLAIMS**

Defendants' Motion for Summary Judgment on all claims is before the Court. For the reasons stated below, Defendants' Motion is granted in its entirety.

## I.     INTRODUCTION AND PROCEDURAL HISTORY

This is an adversary proceeding brought by Trustee Jeanne Ann Burton (the "Trustee" or "Ms. Burton") on behalf of Cummings Manookian PLC ("CM" or "Cummings Manookian"). Cummings Manookian was a law firm that filed for Chapter 7 Bankruptcy in 2019.

On January 8, 2020, the Trustee instituted this action against Hagh Law, PLLC, Afsoon Hagh, and Manookian PLLC (collectively, the "AP Defendants") asserting seven

separate claims for relief: conversion; state law fraudulent transfer; avoidance and recovery of fraudulent transfer; tortious interference with contract; successor liability and alter ego; turnover; and declaratory judgment.  D.E. 1.

On October 29, 2021, the Court entered a Pretrial Order setting written discovery and deposition deadlines, as well as dates by which dispositive motions, responses to dispositive motions, and replies to dispositive motions were to be filed.  D.E. 93.  The Order required that "all dispositive motions shall be filed no later than June 24, 2022.  All responses to the dispositive motions are to be filed no later than July 8, 2022.  All replies are to be filed no later than July 15, 2022."  *Id*. at Paras. 3-5.

On March 3, 2022, Manookian PLLC served its Second Set of Requests for Admission on the Trustee containing eighty-three separate factual matters requiring the Trustee to admit or deny the truthfulness thereof.

On March 28, 2022, the Court entered an order on Defendant Manookian PLLC's Motion to Compel Responses to Requests for Admission.  D.E. 143.  The Court ruled that "[t]he Trustee shall respond to Manookian, PLLC's Second Set of Requests for Admission no later than June 1, 2022."  *Id*. at Para 5.  Thus, the Trustee was afforded a full 90 days in which to respond rather than the 30 days provided by Fed. R. Civ. Pro. 36(a)(3).

On April 11, 2022, the Trustee filed her first motion to continue depositions and other discovery deadlines.  D.E. 147.  The Trustee requested an expedited hearing "on or before April 15, 2022 to continue certain depositions and pretrial deadlines."

On April 14, 2022, the Court denied the Trustee's first motion seeking to alter discovery and pretrial deadlines.  D.E. 149.  The Court explicitly held that "the applicable Rules and Orders of this Court regarding discovery are in full force and effect."  *Id*. at Para. 2.

On May 19, 2022, the Defendants filed an unopposed motion to extend the deadlines for three specific third-party depositions. D.E. 167. The Defendants further stated that "[r]escheduling these depositions will necessitate moving certain other deadlines, and the Trustee and Defendants have cooperated to reach an agreement on those revisions as memorialized in the attached proposed order." *Id.* at Page 1. The Parties submitted a proposed order attempting to extend the discovery deadline until June 30, 2022, as well as attempting to continue the dispositive motion, response, and reply deadlines to July 29, 2022; August 12, 2022; and August 19, 2022, respectively. D.E. 168.

On May 25, 2022, the Court, via docket order, directed the Parties to a prior order which already permitted parties to make limited scheduling changes to third-party depositions. D.E. 171. The Court then specifically denied the Parties' Motion to move the discovery cut-off and declined to alter the deadlines relative to dispositive motions, stating that "the Submitted order at Docket Number 168 will not be entered by the Court as the related motion is denied." *Id.* Thus, the dispositive motion and reply deadlines of June 24, 2022 and July 8, 2022, were again affirmed and emphasized by the Court.

On June 1, 2022, the Trustee failed to respond to Manookian, PLLC's Second Set of Requests for Admission as required by Court Order dated March 28, 2022 at D.E. 143. Pursuant to Fed. R. Civ. Pro. 36(a)(3), all of the matters posed within the Second Set of Requests for Admission were therefore conclusively admitted. Although Fed. R. Civ. Pro. 36(b) permits withdrawal or amendment of admissions in certain circumstances and upon motion to the Court, the Trustee never filed any such motion to withdraw or amend her admissions.

On June 24, 2022, the AP Defendants collectively moved for summary judgment on all claims asserted by the Trustee in this matter. D.E. 188-1. Defendants' Motion was accompanied by a comprehensive Memorandum of Law and a detailed twenty-three-page Statement of Undisputed Material Facts, comprised of eighty (80) separate factual assertions, each of which was accompanied by citation to the record. D.E. 188-2. The Trustee did not file any dispositive motion, herself, by the June 24, 2022 deadline.

On June 28, 2022, following Defendants' filing of their Motion for Summary Judgment, the Trustee filed an "Expedited Motion to Schedule Status Conference." D.E. 189. The grounds for the Motion, according to the Trustee, were that:

> "[T]he Plaintiff needs clarification from the Court on certain pretrial scheduling matters, including whether the Defendants have properly filed a motion for summary judgment, when the Court expects the Plaintiff to respond to that motion for summary judgment, when the Court expects the parties to answer and/or supplement prior answers to written discovery, and when the Court expects any party to file dispositive motions." *Id.* at Para. 2.

The Trustee's "Expedited Motion to Schedule Status Conference" was filed despite the existing Pretrial Order clearly laying out all such deadlines, and despite multiple orders from the Court declining to alter those deadlines. *See, e.g.,* D.E. 93 (setting comprehensive pretrial deadlines for written discovery, depositions, dispositive motions, responses to dispositive motions, and replies to responses to dispositive motions); D.E. 149 (denying the Trustee's first attempt to modify pretrial deadlines, including those related to dispositive motions); D.E. 171 (rejecting the Parties' joint attempt to modify pretrial deadlines, including those related to dispositive motions, responses and replies).

On June 28, 2022, the Court entered an Order granting the Trustee's Motion to Schedule an Expedited Status Conference and setting the requested pretrial conference for July 13, 2022. D.E. 191.

On June 29, 2022, during a hearing in this matter, the Court reiterated that it would entertain the Trustee's request for an expedited pretrial conference to notwithstanding a pending motion to disqualify the judge.

On June 30, 2022, and despite the Court's willingness to schedule a hearing in order to provide "clarification" on pretrial deadlines, the Trustee withdrew her Expedited Motion to Schedule Status Conference, and further requested that the Court cancel the pretrial conference set for July 13, 2022. D.E. 197.

On July 1, 2022, the Court entered a Docket Entry noting that the Plaintiff's motion for an expedited status conference to "clarify" the existing pretrial deadlines had been "properly withdrawn via Notice." D.E. 200.

On July 8, 2022, the deadline for responses to dispositive motions, the Trustee failed to file any response to the Defendants' Motion for Summary Judgment on All Claims. The Trustee failed to respond to any of the factual assertions in Defendants' Statement of Undisputed Material Facts. And the Trustee failed to file any motion under Fed. R. Civ. Pro. 56(d) showing by affidavit or declaration that, for specified reasons, she was unable to present facts essential to justify opposition to Defendants' Motion for Summary Judgment.

Defendants' Motion for Summary Judgment on All Claims is thus unopposed, and the material facts specified by Defendants are undisputed.

5

## II.    LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The purpose of "summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 Advisory Committee's Note.  A genuine issue of material fact exists only where a reasonably jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Mere allegations of a factual dispute between the parties will not suffice to defeat a properly supported summary judgment motion. *Id.*

"The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). The moving party satisfies this burden "by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." *Id.* (citation and internal quotation marks omitted).

When the moving party meets this burden, the party that opposes the motion must come forth with sufficient proof to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986).  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)

"The Sixth Circuit has consistently explained that '[f]ailure by a [party] to respond to a motion for summary judgment constitutes a forfeiture of the claims to which the motion is addressed.'" *Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718, 775 (S.D. Ohio 2021), reconsideration denied, No. 1:17-CV-406, 2021 WL 913103 (S.D. Ohio Mar. 10, 2021). "Because [the non-moving party] failed to designate specific facts creating a material issue in response to [the moving party's] motion, the district court properly granted [the moving party's] summary judgment motion." *Reed v. City of Memphis, Tennessee*, 735 F. App'x 192, 201 (6th Cir. 2018). Moreover, Local Rule 56.01(f) of the Middle District of Tennessee expressly provides that, "[i]f a timely response to a moving party's statement of material facts, or a non-moving party's statement of additional facts, is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment."

## III.   **FINDINGS OF FACT**

The Court makes the following findings of fact, all of which are contained within Defendants' unopposed Statement of Undisputed Material Facts and which are cited to the record in this matter.

### A. Cummings Manookian

Cummings Manookian is a now-defunct law firm that was formed as a professional limited liability company.[1]  It was comprised of two members: Brian Cummings and Brian Manookian, and it specialized in representing Plaintiffs in medical malpractice actions.[2]

---

[1] Defendants' Joint Statement of Undisputed Material Facts, ¶ 1.
[2] *Id.* at ¶ 2-3.

The firm primarily accepted cases on a contingency fee basis whereby Cummings Manookian would only be paid if it recovered money for its client.[3]

As part of its operations, Cummings Manookian entered into written engagement agreements with its clients that laid out the duties and rights of both parties to the contract.[4]  Those contracts took a standard form and generally did not vary from cases to case ("the CM Engagement Agreement").[5]

Representations by Cummings Manookian did not always proceed to completion of a case, and the CM Engagement Agreement included terms laying out the parties' rights in the event that the client terminated Cummings Manookian, as well as for instances where Cummings Manookian withdrew from the engagement.[6]  In the event that the client fired Cummings Manookian, the firm would be contractually entitled to its expenses as well as a portion of any ultimate attorney's fee.[7]  In cases where Cummings Manookian withdrew, the firm would only be entitled to recover its advanced costs, and the client would not be required to pay Cummings Manookian an attorney's fee.[8]

The firm was relatively short-lived.  It was founded in 2015.[9]  Brian Cummings withdrew from the firm in September of 2018.[10]  Brian Manookian was suspended from the practice of law in December of the same year.[11]  By January 1, 2019, Cummings

---

[3] *Id.* at ¶ 4.
[4] *Id.* at ¶ 5.
[5] *Id.* at ¶ 6.
[6] *Id.* at ¶ 7.
[7] *Id.* at ¶ 8.
[8] *Id.* at ¶ 9.
[9] Deposition of Trustee Jeanne Anne Burton, Page 20:12-15.
[10] Joint Statement of Undisputed Material Facts, ¶ 10.
[11] *Id.* at ¶ 11.

Manookian had no employees and no members or partners with an active license to practice law.[12]

## B. The Fitzgerald Case

On May 23, 2018, Cummings Manookian entered into an engagement agreement to represent Marty and Melissa Fitzgerald in an action against a truck driver who struck their daughter causing her death ("the Fitzgerald Engagement Agreement").[13] The agreement was signed by Brian Manookian who had the authority to enter into the contract on behalf of Cummings Manookian.[14]

The Fitzgerald Engagement Agreement was drafted by Cummings Manookian and it bound the firm, as well as Marty and Melissa Fitzgerald, to its terms.[15] The contract stated that if the Fitzgeralds terminated Cummings Manookian, the firm would be entitled to a portion of any recovered settlement in the form of an attorney's fee.[16] Conversely, if Cummings Manookian withdrew from the representation, it would only be entitled to repayment of advanced expenses.[17]

On December 7, 2018, Brian Manookian wrote to the Fitzgeralds advising them that as a result of his recent suspension he and Cummings Manookian were required to withdraw from the representation (Brian Cummings had left the firm by that time).[18] Mr. Manookian requested that the Fitzgeralds obtain another attorney or firm to represent them, and confirmed that because the firm was withdrawing it would not be entitled to

---

[12] *Id.* at ¶ 12.
[13] *Id.* at ¶ 13; Fitzgerald Engagement Agreement.
[14] Joint Statement of Undisputed Material Facts, ¶ 15-16.
[15] *Id.* at ¶ 17-18.
[16] *Id.* at ¶ 20.
[17] *Id.* at ¶ 21-22.
[18] *Id.* at ¶ 23-28; Fitzgerald Withdrawal Letter.

any portion of an attorney's fee in the matter.[19]  The letter itself stated that Cummings Manookian expressly and specifically disclaimed any attorney's fee arising out of the Fitzgerald lawsuit.[20]

Thus, on December 7, 2021, Cummings Manookian withdrew from its representation prior to obtaining any recovery for the Fitzgeralds, and the firm acknowledged the contractual provision barring it from receiving an attorney's fee.[21]  The Trustee herself conceded this fact under oath and in response to Requests for Admission.[22]

### C. The Shoemaker Case

On April 19, 2017, Cummings Manookian entered into an engagement agreement to represent Brett Keefer, as next of kin and administrator to Chesta Shoemaker's estate, in a medical malpractice action arising out of Ms. Shoemaker's death at Vanderbilt University Medical Center ("the Shoemaker Engagement Agreement").[23]  The Shoemaker Engagement Agreement was drafted by Cummings Manookian and it bound both the firm and Mr. Keefer to its terms.[24]

In identical language as the Fitzgerald Agreement, the contract with Mr. Keefer provided for the repayment of costs and division of attorney's fees in the event that the relationship ended prior to the conclusion of the lawsuit.[25]  In the event that Brett Keefer terminated Cummings Manookian, the firm would be entitled to an attorney's fee in

---

[19] Joint Statement of Undisputed Material Facts, ¶ 29, 32.
[20] *Id.* at ¶ 33-34.
[21] *Id.* at ¶ 30-31.
[22] *Id.* at ¶ 32-34.
[23] *Id.* at ¶ 35-36; Shoemaker Engagement Agreement.
[24] Joint Statement of Undisputed Material Facts, ¶ 37-38.
[25] *Id.* at ¶ 40-41; Shoemaker Engagement Agreement.

addition to its advanced expenses.[26]  If Cummings Manookian withdrew, on the other hand, it would only receive back the money it had paid to prosecute the matter with no additional payment in the form of an attorney's fee.[27]

Cummings Manookian withdrew from representing Mr. Keefer before the lawsuit was filed as a result of Mr. Cummings' departure from the firm and Mr. Manookian's suspension from the practice of law.[28]  Indeed, the Complaint in the matter was ultimately filed by Mr. Cummings' successor firm, Cummings Law, on February 11, 2019.[29]  By that time, Cummings Manookian had no members or partners who were permitted to practice law, and it had no employees.[30]

As a result, Cummings Manookian never advanced a penny in furtherance of the matter such that it would be entitled to repayment.[31]  Likewise, no attorney ever entered an appearance in the Shoemaker case on behalf of Cummings Manookian;[32] no attorney ever signed a pleading in the Shoemaker case on behalf of Cummings Manookian;[33] and no attorney did any work in the Shoemaker case on behalf of Cummings Manookian.[34]

The Shoemaker case ultimately settled years later in 2021.[35]  Cummings Manookian had no role in litigating the matter or negotiating the settlement.[36]  To the

---

[26] Joint Statement of Undisputed Material Facts, ¶ 40.
[27] *Id.* at ¶ 41, 43.
[28] *Id.* at ¶ 44, 48-51.
[29] *Id.* at ¶ 48, 51.
[30] *Id.* at ¶ 49-50.
[31] *Id.* at ¶ 42.
[32] *Id.* at ¶ 52.
[33] *Id.* at ¶ 53.
[34] *Id.* at ¶ 54.
[35] *Id.* at ¶ 55.
[36] *Id.* at ¶ 44, 48-51; 56.

contrary, the lawsuit was filed in 2019 and Cummings Manookian never again corresponded or communicated with the client, Brett Keefer, after 2018.[37]

### D. Cummings Manookian's General Property Claims Asserted by the Trustee

The Trustee has made a number of allegations in which she variously asserts that Cummings Manookian owned client files, causes of action, furnishings, equipment, or property of other kinds.[38]  The Trustee has likewise alleged that the Defendants used, utilized, or took improper control over that property.[39]  The Trustee has additionally accused the Defendants of tortiously interfering with Cummings Manookian's business relationships.[40]

In the cases where Cummings Manookian represented clients it did not own the client file, and it did not own cause of action.[41]  Cummings Manookian never owned any real property, and it did not own the office property at 45 Music Square West where it operated for a period of time.[42]

### i. Manookian PLLC

Defendant Manookian PLLC has never received any property of any kind belonging to Cummings Manookian, and Cummings Manookian has never transferred any property of any kind to Manookian PLLC.[43]  Likewise, Manookian PLLC has never caused Cummings Manookian to make or incur a transfer of property of any kind.[44]

---

[37] *Id.* at ¶ 57.
[38] *See, e.g.*, Complaint, at ¶ 43.
[39] *See, e.g.*, Complaint, at ¶ 47.
[40] *See, e.g.*, Complaint, at ¶ 59.
[41] *Id.* at ¶ 58.
[42] *Id.* at ¶ 59.
[43] *Id.* at ¶ 60-61.
[44] *Id.* at ¶ 62.

Manookian PLLC has never caused any person or entity to terminate any contract or business relationship with Cummings Manookian.[45] Manookian PLLC is not and has never been in possession, custody, or control of any property belonging to Cummings Manookian.[46] Manookian PLLC does not and has never owed a debt that is property of Cummings Manookian.[47] Finally, Manookian PLLC has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.[48]

ii. *Afsoon Hagh and Hagh Law PLLC*

Neither Afsoon Hagh nor Hagh Law ("the Hagh Parties") has ever received any property of any kind belonging to Cummings Manookian.[49] Cummings Manookian has never transferred any property of any kind to the Hagh Parties.[50] The Hagh Parties have never caused Cummings Manookian to make or incur a transfer of property of any kind.[51]

The Hagh Parties are not and have never been in possession, custody, or control of any property belonging to Cummings Manookian.[52] The Hagh Parties do not and have never owed a debt that is property of Cummings Manookian.[53] Hagh Law has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.[54]

---

[45] *Id.* at ¶ 63.
[46] *Id.* at ¶ 64.
[47] *Id.* at ¶ 65.
[48] *Id.* at ¶ 66.
[49] *Id.* at ¶ 67.
[50] *Id.* at ¶ 68.
[51] *Id.* at ¶ 70.
[52] *Id.* at ¶ 71.
[53] *Id.* at ¶ 72.
[54] *Id.* at ¶ 73.

## IV.  CONCLUSIONS OF LAW

### A. Cummings Manookian is not entitled to any portion of the Fitzgerald Fee and certainly not from these Defendants.  Defendants are entitled to summary judgment on any such claims.

The undisputed material facts establish that Cummings Manookian entered into a contract with the Fitzgeralds that laid out the rights and responsibilities of the parties in the event that the relationship ended prior to the conclusion of a lawsuit.  The contract provided that the relationship was terminated by the Fitzgeralds, Cummings Manookian would be entitled to some portion of an attorney's fee in addition to repayment of advanced expenses.  Conversely, if Cummings Manookian were to withdraw from the representation, the law firm would only receive back the money it had paid to prosecute the case without any further payment of an attorney's fee.

The Fitzgeralds did not terminate Cummings Manookian.  Rather, Cummings Manookian withdrew from the representation prior to its conclusion and without securing any recovery for its clients.  Mr. Manookian, on behalf of Cummings Manookian, wrote the Fitzgeralds on December 7, 2018 advising them that he and Cummings Manookian, specifically, were withdrawing from the representation.  He expressly and unambiguously disclaimed any payment of an attorney's fee to Cummings Manookian, and he advised the Fitzgeralds they would need to obtain another lawyer and law firm to represent them.  The Trustee concedes all of these facts, and, moreover, she concedes Mr. Manookian had the authority to speak on behalf of Cummings Manookian as its sole remaining member.

Cummings Manookian's withdrawal alone is dispositive as to its attempt to recover an attorney's fee in that case.  Mr. Manookian's December 7, 2018 letter waiving and disclaiming any fee – nearly a year prior to Cummings Manookian's petition for bankruptcy – is doubly so.

The undisputed material facts confirm that Cummings Manookian is not entitled to any attorney's fee from the Fitzgeralds under the very terms of the contract the firm itself drafted. Moreover, the Adversary Defendants have no contract with Cummings Manookian, and there is simply no cognizable theory of recovery consistent with the undisputed facts of this matter that would allow Cummings Manookian to recover an attorney's fee from the Defendants where Cummings Manookian is prohibited contractually from recovering one from the Fitzgeralds.

Cummings Manookian drafted and entered into a contract that by its own terms does not provide an attorney's fee where the law firm withdraws. Cummings Manookian then withdrew and announced, in writing, its waiver and disclaimer of any attorney's fee. The Trustee's attempt now, years later, to recover monies to which she is not entitled and which were expressly disclaimed is without merit. There is no genuine issue of disputed material fact on this topic. Defendants are entitled to summary judgment as to any and all of Trustee's claims seeking any portion of the Fitzgerald recovery.

### B. Cummings Manookian is not entitled to any portion of the Shoemaker Fee, and certainly not from these Defendants. Defendants are entitled to summary judgment on any such claims.

The same undisputed facts preclude Cummings Manookian from receiving any portion of the Shoemaker recovery. The law firm entered into an engagement agreement, which it drafted, that specifically lays out the division of expenses and attorney's fees in the event that the relationship did not endure to the conclusion of the action. That contract expressly provides that where the client terminates Cummings Manookian, the firm would be entitled to an attorney's fee in addition to repayment of its expenses. If Cummings Manookian were to withdraw, however, it would only receive repayment of the

money it advanced to prosecute the case.  Once again, Cummings Manookian withdrew from the representation.

The undisputed facts highlight the egregiousness of the Trustee's claims with respect to the Shoemaker claim.  *By the time the lawsuit was filed, Cummings Manookian no longer had any members or partners who could practice law, and it had no employees.*  Indeed, Cummings Manookian had fully stopped communicating with the client months prior to the initiation of the suit, and it never again corresponded with the client during the years the matter was being litigated.

Cummings Manookian is not entitled to a fee from the client, and, therefore, cannot be entitled to a fee from these Defendants who have no obligation, contractual or otherwise, to that firm.  The undisputed facts demonstrate that Cummings Manookian is not entitled to any portion of a fee in the Shoemaker case, under the very terms it drafted, and certainly not from these Defendants.  Defendants are entitled to summary judgment as to any and all of Trustee's claims seeking any portion of the Shoemaker recovery.

## C. Defendants are entitled to summary judgment on the Trustee's Claims of Conversion.

To prevail on a claim of conversion, the Plaintiff must prove "[1] the appropriation of another's property to one's own use and benefit, [2] by the intentional exercise of dominion over it, [3] in defiance of the true owner's rights." *Kinnard v. Shoney's, Inc.*, 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000).

There is no genuine issue of material fact as to the Trustee's claims for conversion. The Trustee herself has now conceded that she has no evidence or bases for her allegations.  The entirety of those allegations is contained at Paragraphs 43 and 44 of her

Complaint, and they are entirely contradicted by the Trustee's own testimony. The Complaint alleges, in relevant part, as follows:

> 43. Afsoon Hagh, Hagh Law and Manookian PLLC wrongfully appropriated property of CM, exercised control over that property, and committed the tort of conversion.
>
> 44. More specifically, Afsoon Hagh, Hagh Law and/or Manookian PLLC have taken leased premises, furniture, equipment, intellectual property, attorneys' fees, and reimbursement of costs (the "Property") in excess of $1,350,000, and exercised control over that property to the exclusion of CM.

These Defendants have testified they have never received, appropriated, or exercised control over any property belonging to Cummings Manookian; and the Trustee has now admitted the same. Manookian PLLC, for its part, has never utilized any leased premises, furniture, equipment, or intellectual property whatsoever, and has never even had a bank account such that it could receive attorney's fees or reimbursed expenses. And the Trustee has refused to specifically identify any such property.

With respect to the Hagh Parties, the Trustee admits she has no evidence that the Hagh Parties ever received a payment of any kind from Cummings Manookian.[55] The Trustee admits that she has no evidence that the Hagh Parties ever set foot on the premises of the property where Cummings Manookian once operated at 45 Music Square West.[56] The Trustee admits that she has no evidence that the Hagh Parties ever used office space at the property where Cummings Manookian once operated at 45 Music

---

[55] Deposition of Trustee Jeanne Ann Burton, Page 121:10-13.
[56] Deposition of Trustee Jeanne Ann Burton, Page 29:25-30:2.

Square West.[57]  The Trustee admits that she has no evidence that the Hagh Parties used office space, furnishings, or equipment located at 45 Music Square West.[58]  The Trustee admits that she cannot identify any specific furnishings or equipment that the Hagh Parties used at 45 Music Square West.[59]  The Trustee concedes that she does not even know who owns or owned the furniture at 45 Music Square West.[60]  And The Trustee concedes that she cannot identify any damages that Cummings Manookian experienced as a result of any person using 45 Music Square West or the email addresses or phone numbers she claimed were wrongfully utilized in her Complaint.[61]

Finally, and entirely dispositively as to her claim of conversion against the Hagh Parties, the Trustee admits that she has no evidence that the Hagh Parties have ever taken any property of any kind belonging to Cummings Manookian.[62]  As such, there is no genuine issue of disputed fact as the Adversary Defendants are entitled to summary judgment on Trustee's claim of conversion.

### D. Defendants are entitled to summary judgment on the Trustee's Claims of Fraudulent Transfer.

The Trustee has additionally alleged a state law claim of fraudulent conversion. She has done so in the most vague and non-specific way possible, declining to even identify the property she alleges was transferred.  Her allegations from the Complaint are contained entirely in Paragraphs 47 and 48, which are reproduced here in full.

---

[57] Deposition of Trustee Jeanne Ann Burton, Page 119:25-120:3.
[58] Deposition of Trustee Jeanne Ann Burton, Page 30:20-31:16.
[59] Deposition of Trustee Jeanne Ann Burton, Page 31:14-16.
[60] Deposition of Trustee Jeanne Ann Burton, Page 37:17-25.
[61] Deposition of Trustee Jeanne Ann Burton, Page 123:22-124:5.
[62] Deposition of Trustee Jeanne Ann Burton, Page 117:5-8.

18

47. Afsoon Hagh, Hagh Law and Manookian PLLC wrongfully took the Property of CM in an attempt to hinder, delay and defraud creditors of CM.

48. Afsoon Hagh, Hagh Law and Manookian PLLC received substantial Property of CM without giving reasonably equivalent value, and such transfers caused or were during the insolvency of CM, rendered CM insolvent or unable to pay its debts when due, or were taken when CM was engaged in or about to be engaged in transactions for which CM had unreasonably small capital.

The Tennessee Uniform Fraudulent Transfers Act is contained at Tenn. Code Ann. § 66-3-305 which provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor... if the debtor made the transfer or incurred the obligation: with actual intent to hinder, delay, or defraud any creditor of the debtor; or without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor."

Here, none of the Defendants have made or incurred a transfer on behalf of Cummings Manookian, nor has the Trustee ever articulated with even the slightest specificity what property was transferred, when, or by whom. Defendants have negated an essential element of the Trustees' claim through the Declarations of Brian Manookian and Afsoon Hagh which establish that none of the Defendants have ever received a transfer from Cummings Manookian or made a transfer to Cummings Manookian. The Defendants are thus entitled to summary judgment.

### E. Defendants are entitled to summary judgment on the Trustee's Claims of Avoidance and Recovery of Fraudulent Transfer.

The Trustee has additionally alleged a skeletal claim of Avoidance and Recovery of Fraudulent Transfer entirely upon information and belief.

> 51.     Afsoon Hagh, Hagh Law and/or Manookian PLLC received substantial transfers from CM for the purposes of hindering, delaying, and defrauding creditors.
>
> 52.     Further, on information and belief, Afsoon Hagh, Hagh Law and/or Manookian PLLC received substantial transfers form CM without giving reasonably equivalent value, and such transfers caused or were during the insolvency of CM, rendered CM insolvent or unable to pay its debts when due, or were taken when CM was engaged in or about to be engaged in transactions for which CM had unreasonably small capital.

In the ensuing years since the filing of her Complaint, the Trustee has declined to disclose the bases for such information and belief.  As with her duplicative claim of fraudulent transfer, an essential element of Trustee's claim is negated by the Declarations of Brian Manookian and Afsoon Hagh.  Simply put, none of the Defendants have ever made a transfer to Cummings Manookian, received a transfer from Cummings Manookian, or transferred any property belonging to Cummings Manookian.  Having made no transfer of any kind, the Defendants have certainly not made a fraudulent transfer.  The undisputed facts require entry of summary judgment on this claim.

### F. Defendants are entitled to summary judgment on the Trustee's Claims of Tortious Interference with Contract.

Tortious interference with contract requires five elements: (1) a prospective relationship with an identifiable class of third persons; (2) that Defendant knew of the relationship; (3) that Defendant intended to cause the termination of the business relationship; (4) that Defendant acted with "improper motives" or employed "improper means"; and (5) damages caused by the interference." *Louisiana-Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, 335 F. Supp. 3d 1002, 1019–20 (M.D. Tenn. 2018).

The Trustee's claim of tortious interference with contract is similarly deficient on its face and made "upon information and belief." The allegations are contained at Paragraphs 58 and 59 of the Complaint and state, in their entirety:

> 58.    CM had a binding contractual relationship with the plaintiffs in the Fitzgerald Case. More specifically, CM had an engagement agreement with the plaintiffs in which CM agreed to represent the plaintiffs in the Fitzgerald Case in exchange for one-third of the monetary recovery.
>
> 59.    Upon information and belief, Afsoon Hagh and Hagh Law had actual knowledge of the engagement agreement between the Fitzgerald Case plaintiffs and CM, intended to interfere with CM's contractual rights pursuant to that engagement agreement, and actually interfered with CM's contractual rights by coercing the Fitzgerald Case defendants from remitting to CM $1,350,000 in attorneys' fees.

But the undisputed facts, as laid out exhaustively in the Factual section above, show that Cummings Manookian *terminated its own contract* with the Fitzgeralds by withdrawing from the representation and expressly disclaiming any attorney's fee. The Trustee's allegation "upon information and belief" that the Defendants "coerced" the

Fitzgeralds from remitting a fee that Cummings Manookian itself disclaimed in writing is both nonsensical and made in utter bad-faith. It is axiomatic that a party cannot interfere with a contract that has already been terminated and no longer exists. Defendants are entitled to summary judgment on Trustee's claim for tortious interference with contract.

## G. Defendants are entitled to summary judgment on the Trustee's Claims of Successor Liability and Alter Ego.

Under Tennessee law, a successor entity is a mere continuation if: "1) the predecessor transferred its assets to the successor, 2) the successor company pays less than adequate consideration for the assets, 3) the successor company continues the predecessor's business, 4) both companies share one common officer who was instrumental in the transfer, and 5) the predecessor company is left incapable of paying its creditors" *RXAR Co., LLC v. Rheumatology Assoc.,* P.A., 2017 U.S. Dist. LEXIS 64354 (M.D. Tenn. 2017).

Here, the undisputed facts, as testified to and conceded by the Trustee establish that there simply was no transfer of any asset from Cummings Manookian to any of the Defendants; moreover, the Trustee has disclaimed even the general allegations comprising her claim of successor liability as stated in its entirety in Paragraph 65 of her Complaint.

> 65.    Hagh Law and/or Manookian PLLC provide services to many of the same clients as CM and use the same vendors as CM. They occupy the same leased real estate as CM (without a new lease), utilize the same computers and equipment as CM, and utilize some of the same telephone numbers as CM.

The Trustee has now conceded that Cummings Manookian does not own "client files" or causes of action. With respect to Manookian PLLC, that entity has never utilized any leased premises, furniture, or equipment.

With respect to the Hagh Parties, the Trustee now admits that she has no evidence that the Hagh Parties ever set foot on the premises of the property where Cummings Manookian once operated at 45 Music Square West.[63] The Trustee concedes that she has no evidence that the Hagh Parties ever used office space at the property where Cummings Manookian once operated at 45 Music Square West.[64]

Entirely contrary to her allegations in the Complaint, the Trustee has admitted that she has no evidence that the Hagh Parties used office space, furnishings, or equipment located at 45 Music Square West.[65] The Trustee admits that she cannot identify any specific furnishings or equipment that the Hagh Parties used at 45 Music Square West.[66] In fact, the Trustee concedes that she does not even know who owns or owned the furniture at 45 Music Square West.[67] And The Trustee concedes that she cannot identify any damages that Cummings Manookian experienced as a result of any person using 45 Music Square West or the email addresses or phone numbers she claimed were wrongfully utilized in her Complaint.[68] Finally, <u>the Trustee admits that she has no evidence that the Hagh Parties have ever taken any property of any kind belonging to Cummings Manookian.</u>[69]

---

[63] Deposition of Trustee Jeanne Ann Burton, Page 29:25-30:2.
[64] Deposition of Trustee Jeanne Ann Burton, Page 119:25-120:3.
[65] Deposition of Trustee Jeanne Ann Burton, Page 30:20-31:16.
[66] Deposition of Trustee Jeanne Ann Burton, Page 31:14-16.
[67] Deposition of Trustee Jeanne Ann Burton, Page 37:17-25.
[68] Deposition of Trustee Jeanne Ann Burton, Page 123:22-124:5.
[69] Deposition of Trustee Jeanne Ann Burton, Page 117:5-8.

23

Defendants are again entitled to summary judgment having negated the essential elements of the Trustee's claim for successor liability and alter ego.

## V.    ORDER

The Defendants have demonstrated that there is no genuine dispute as to any material fact as to all of Trustee's claims, and that the Defendants are entitled to a judgment as a matter of law. Moreover, Plaintiff Trustee has failed to oppose, in any form, Defendants' Motion for Summary Judgment or dispute, in any manner, the material facts set forth by the Defendants.

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment on All Claims in this matter is **GRANTED, IN FULL**.

Date:  July 15, 2022                    Submitted for entry by:

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC, Brian Manookian, Hagh Law, PLLC, and Afsoon Hagh*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed July 15, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | Case No. 3:19-bk-07235 |
| Debtor. | ) | Chapter 7 |
| | ) | Judge Walker |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON HAGH; | ) | Adv. Proc. No. 3:20-ap-90002 |
| MANOOKIAN, PLLC; and FIRST- | ) | |
| CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR ENTRY OF UNOPPOSED SUMMARY JUDGMENT ON ALL CLAIMS AND NOTICE OF FILING PROPOSED ORDER

Comes now Jeanne Ann Burton, Trustee and Plaintiff in this matter (the "Trustee"), and files her response objecting to *Defendants' Motion for Entry of Unopposed Summary Judgment on All Claims and Notice of Filing Proposed Order* (the "Motion"). As grounds for her objection, the Trustee states that:

1. The Trustee vehemently opposes the Motion as the parties had previously agreed to an extension of time to file and respond to motions for summary judgment in this adversary proceeding. Given the agreement of the parties to extend the deadlines, the Motion is untimely as the deadline to respond has not expired.

2. As a result of the appeal filed by Mr. Manookian (Docket Entry 184), this Court has stayed all matters in this adversary proceeding until such time as the United States District

Court for the Middle District of Tennessee renders a decision. Therefore, there is no response deadline to the Motion and the Motion should be denied.

3. Finally, summary judgment is entirely improper at this junction as discovery is still ongoing and Trustee needs to complete discovery to formulate its response to summary judgment. The Trustee will file a more detailed and thorough response at the appropriate time.

WHEREFORE, premises considered, the Trustee respectfully requests that this Court enter and order denying the Motion and for such other and further relief as may be warranted.

Respectfully submitted,

/s/ Ronald G. Steen, Jr.
Phillip G. Young, Jr.
Ronald G. Steen, Jr. (BPR No. 20536)
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com
ronn.steen@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been sent to all parties requesting notice via CM/ECF Electronic Filing on the 15th day of July, 2022.

/s/ Ronald G. Steen, Jr.
Ronald G. Steen, Jr.

# UNITED STATES BANKRUPTCY COURT

## - MIDDLE DISTRICT OF TENNESSEE -

### TRANSCRIPT REQUEST FORM

Please complete one form for each trial or hearing, attach payment (search fee only),

and deliver to Clerk's office at: 701 BROADWAY, ROOM 170, NASHVILLE, TN 37203

or file electronically through CM/ECF.

| **1. NAME OF PARTY REQUESTING TRANSCRIPT**<br><br>Manookian PLLC | **2. DATE OF ORDER**<br><br>07/19/2022 |
|---|---|
| **3. EMAIL ADDRESS**<br>john@spragenslaw.com | **4. PHONE NUMBER**<br>615-983-8900 |
| **5. MAILING ADDRESS**<br><br>311 22nd Avenue North<br>Nashville, TN 37203<br>Nashville, TN 37203 | |

| **6. CASE NUMBER**<br>3:20-ap-90002 | **7. CASE NAME**<br>Burton v. Hagh et al. | **8. JUDGE**<br>Charles M. Walker |
|---|---|---|

**9. DATE(S) OF HEARING/TRIAL** (If hearing/trial was on multiple days, please fill in all days hearing/trial held)

**From** 06/29/2022      to 06/29/2022

**10. ORDER IS FOR**

☐APPEAL      ☐BANKRUPTCY      ☑ADVERSARY

☐OTHER:_____

**11. PORTIONS REQUESTED** (Indicate the portion of the hearing/trial requested)

☑Entire Hearing/Trial      ☐Court Ruling Only

☐Voir Dire      ☐Testimony of (Specify Name):

☐Opening Statement (Plaintiff)      _____

☐Opening Statement (Defendant)      _____

☐Closing Statement (Plaintiff)      _____

☐Closing Statement (Defendant)      ☐Other: _____

**12. REQUESTED TURNAROUND TIME**

☑Daily (24-Hour)      ☐7-Day Expedited

☐14-Day Expedited      ☐Standard (30-Day)

**13. NUMBER OF COPIES REQUESTED** (Transcript request includes 1 copy for the Court)    1

*By signing below, I certify that I will pay all charges for the preparation of the transcript, including search fee, deposit, and any additional charges as specified by the assigned transcriptionist.*

/s/ John Spragens          07/19/2022

Signature of Person Ordering          Date

| FOR COURT USE ONLY | DATE | BY |
|---|---|---|
| ORDER RECEIVED BY INTAKE | | |
| SEARCH FEE PAID | | |
| FILE(S) UPLOADED | | |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | |

---

## MOTION TO STAY ALL DEADLINES PENDING RESOLUTION OF APPEAL

---

Comes now Jeanne Ann Burton, Trustee and Plaintiff in this matter (the "Trustee"), who respectfully moves to stay all deadlines in this matter pending the resolution of Manookian, PLLC and Brian Manookian's appeal concerning the Defendants' subpoena of Judge Charles M. Walker. As grounds for this Motion, the Trustee states that:

1.        The purpose of this Motion is (1) to seek clarity and finality as to the Court's prior oral rulings concerning its jurisdiction over certain matters and the impact that those jurisdictional issues have on the Court's prior scheduling order; (2) to promote judicial economy by preventing the filing of motions that are frivolous and/or premature; and (3) to avoid prejudicing the Trustee by allowing her to complete discovery prior to the filing of and/or responding to motions for summary judgment.

2.  On October 29, 2021, the Court entered a Pretrial Order (Doc. 93) setting forth certain deadlines applicable in this matter.  Among the relevant deadlines established in that Pretrial Order was a deadline of May 31, 2022 for completing depositions, a deadline of June 24, 2022 for filing dispositive motions, a deadline of July 8, 2022 for responding to dispositive motions, and a deadline of July 15, 2022 for filing replies related to the dispositive motions.

3.  Subsequently, on March 28, 2022, the Court entered an Order Regarding Motions to Compel Discovery Responses (Doc. 143) which, among other things, set other pretrial dates including:  a deadline of June 1, 2022 to respond to Manookian, PLLC's Second Set of Requests for Admission; a deadline of June 1, 2022 (after the close of depositions) for all parties to supplement prior written discovery responses; a deposition of Jeanne Ann Burton, Trustee on April 20, 2022; a deposition of Phillip Young, Receiver on April 21, 2022; a deposition of Brian Manookian, Manookian, PLLC and Cummings Manookian, PLC on May 9, 2022; and a deposition of Afsoon Hagh and Hagh Law, PLC on May 10, 2022.

4.  Both Jeanne Ann Burton, Trustee and Phillip Young, Receiver appeared, and were deposed, on the dates set forth in the March 28, 2022 order.  However, Defendants' counsel repeatedly asked for alterations to the scheduled depositions of Brian Manookian and Afsoon Hagh.  First, Defendants' counsel asked to switch the depositions of Brian Manookian and Afsoon Hagh such that Ms. Hagh would be deposed on May 9 and Mr. Manookian on May 10.  The Trustee consented.  Then, Ms. Hagh's counsel asked the Trustee to reschedule the Hagh deposition for May 18, 2022.  The Trustee consented.  On May 16, 2022 (two days before the twice rescheduled deposition of Afsoon Hagh), Ms. Hagh's counsel contacted the Trustee's counsel and indicated that Ms. Hagh was not willing to proceed with a deposition at the courthouse from 10:00 am – 5:00 pm.  Trustee's counsel offered to limit the deposition to a window of a few hours to

accommodate Ms. Hagh's concerns. After consultation with his client, Ms. Hagh's counsel responded by notifying Trustee's counsel that the only way Ms. Hagh was willing to proceed with the deposition on May 18, 2022 was if the Trustee were willing to conduct the deposition via Zoom. In an attempt to keep this matter on schedule and to reduce the secondary discovery squabbles, the Trustee reluctantly agreed to conduct the Hagh deposition via Zoom on May 18, 2022.

5. Meanwhile, in order to timely complete depositions by the May 31, 2022 deadline established by the Court, the Trustee filed notices of deposition and issued subpoenas for deposition testimony of three third-party witnesses on May 5, 2022. *See* Doc. Nos. 158, 159, 160, 162, 163 and 164. Pursuant to those notices and subpoenas, the Trustee was to depose Ronette McCarthy on May 25, Brian Cummings on May 26, and Marty Fitzgerald on May 27. The subpoenas were all served and no timely objections were lodged. On May 17, 2022, the week before the scheduled depositions, counsel for Afsoon Hagh and Hagh Law, PLLC again contacted the Trustee's counsel asking for scheduling accommodations. This time, according to counsel, Ms. Hagh and Mr. Manookian were going to be out of state the entire week of May 23, 2022 and unable to participate in the third-party Zoom depositions. In a spirit of cooperation, the Trustee offered to continue the third-party depositions but only if the Defendants would agree to continue all other related deadlines, including the deposition cutoff, the deadline for responding to Manookian, PLLC's second set of requests for admission, the deadline for supplementing written discovery responses, and the deadlines for filing and responding to dispositive motions.

6. As an inducement to the rescheduling of the third-party depositions, the Defendants agreed to continue all pretrial deadlines in the case. On May 19, 2022, the Defendants filed Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Certain Other

Deadlines (Doc. 167) and submitted an unopposed order granting that relief (Doc. 168). This unopposed, proposed order provided the following: (1) that the third-party depositions would be reset by agreement; (2) that the discovery cutoff would be extended from May 31, 2022 to June 30, 2022; (3) that the deadline for all parties to supplement written discovery responses would be extended from June 1, 2022 to July 1, 2022; (4) that the deadline for filing dispositive motions would be extended from June 24, 2022 to July 29, 2022; (5) that responses to any dispositive motions would be due August 12, 2022; and (6) that replies related to any dispositive motions would be due August 19, 2022. Both the motion and order accurately represented that the Trustee did not oppose the relief sought in the motion or the proposed order.

7.      On May 25, 2022 , the Court entered an Order (Doc. 171) denying the Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Certain Other Deadlines as moot, citing Paragraph 9 of the Court's March 28, 2022 Order (Doc. 143). Paragraph 9 of that prior Order gave the parties deference to set third party depositions as needed. The Court expanded on this Order during an emergency telephone conference conducted on May 25, 2022 when it indicated that the Court would not stand in the way of any pretrial schedule alterations upon which the parties could agree.

8.      In reliance upon the Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Certain Other Deadlines and the proposed order granting that motion (both of which were signed by all Defendants' counsel), and in light of the Court's admonition that it would allow the parties to work out the pretrial scheduling, the Trustee rescheduled the deposition of Ronette McCarthy for June 8, 2022, Brian Cummings for June 9, 2022, and Marty Fitzgerald for June 24, 2022. The Trustee would have never agreed to reschedule these depositions after the discovery cutoff, after the date for responding to and supplementing responses to written

discovery, and mere days prior to the dispositive motion deadline but for the Defendants' counsel's agreement, as represented by Docket entries 167 and 168, to continue *all* pretrial deadlines.

9.        The depositions of Ronette McCarthy and Brian Cummings were conducted as rescheduled by Zoom.  Interestingly, despite demanding that these depositions be rescheduled due to the Defendants' unavailability during the week of May 23, none of the Defendants appeared on either of the depositions.  Only the Defendants' counsel, who were available the week of May 23, appeared at these depositions.

10.        On June 21, 2022, John Spragens, counsel for Manookian, PLLC in this matter, emailed the Trustee's counsel on behalf of third-party Marty Fitzgerald to lodge objections to the reissued subpoena requiring his appearance at deposition on June 24, 2022 – the deposition that was rescheduled at the request of the Defendants.  In his email, Mr. Spragens stated that Mr. Fitzgerald was unavailable until after July 8, 2022, that he believed most or all of the testimony would be subject to the attorney-client privilege, and that "[Mr. Fitzgerald] believes the entire proceeding is a farce that will only re-traumatize him for the benefit of lawyers who are attempting to claim entitlement to funds."  Despite Mr. Fitzgerald having not objected to the original subpoena, and despite the Trustee believing these objections to be invalid, the Trustee acknowledged the objections communicated by Mr. Spragens pursuant to FRCP 45(d) and canceled the June 24 deposition of Marty Fitzgerald.

11.        At 10:50 p.m. on June 24, 2022, the Defendants filed a joint motion for summary judgment, along with a joint statement of undisputed facts.  There were several oddities about this filing.  First, the motion was filed on June 24, 2022 despite the agreement of the parties that the deadline for filing dispositive motions would be continued from June 24, 2022 to July 29, 2022.  Second, the accompanying statement of undisputed facts relied heavily upon statements from

Manookian, PLLC's Second Set of Requests for Admission, which the statement of undisputed facts repeatedly alleged were "admitted pursuant to Fed. R. Civ. P. 36(3)(a)"; this despite the parties' agreement that the Trustee would have until July 1, 2022 to respond to all outstanding written discovery.[1]  Finally, the motion and the statement of undisputed facts were filed only by John Spragens as "Attorney for Manookian PLLC and Brian Manookian" and "Co-counsel for Afsoon Hagh and Hagh Law PLLC for purposes of Summary Judgment only."  Neither Craig Gabbert nor Glenn Rose, counsel for Afsoon Hagh and Hagh Law PLLC, signed the joint motion or the joint statement of facts, nor did John Spragens enter a notice of appearance or notice of substitution of counsel for Ms. Hagh and Hagh Law.

12.    The Court scheduled a hearing for June 29, 2022 to consider Brian Manookian and Manookian PLLC's Motion to Disqualify Bankruptcy Judge Charles Walker (Doc. 161), which Defendants Afsoon Hagh and Hagh Law, PLLC joined (Doc. 173).  At the June 29, 2022 hearing, the Court announced that it would not rule on the Motion to Disqualify, or any other substantive issues in the case (including, specifically, motions for summary judgment and discovery disputes), in light of the appeal filed by Brian Manookian and Manookian PLLC of the Court's Order Quashing Notice of Deposition (Doc. 178).  Although the Court stated that it lacked jurisdiction and would consider no substantive issues related to the case, the Court noted that all prior orders of the Court remained in effect.  Given that statement, it appears that the deadlines established in the Court's October 29, 2021 Pretrial Order, as altered by the parties' subsequent agreement, remain in effect.

13.    The day before the June 29, 2022 hearing, the Trustee filed an Expedited Motion to Schedule Status Conference (Doc. 189), in which she asked the Court to conduct a pretrial

---

[1] The Trustee timely responded to these Requests for Admission on July 1, 2022.

conference on June 29, 2022 to clarify that all deadlines in its October 29, 2021 Pretrial Order were altered pursuant to the agreement of the parties on May 19, 2022. The Court set a pretrial conference to discuss those matters on July 13, 2022, when the Trustee's counsel would be out of the country. In discussing a possible continuance of that pretrial conference with counsel for the Defendants, it became clear that the pretrial conference could not be conducted until mid-August given all counsel's vacation schedules. After reconsidering the expedited request for a pretrial conference in light of the Court's statement that it would not consider any substantive issue in the case pending the resolution of the ongoing appeal, and considering that it was unlikely that the pretrial conference could be scheduled until after the expiration of all deadlines in the October 29, 2021 Pretrial Order (as amended by agreement of the parties), the Trustee determined that the relief she had sought in the Motion to Schedule Status Conference was moot or premature. The relief sought in the motion was at least premature because the Court stated it was going to take no immediate action on any motion for summary judgment, and it certainly did not need expedited consideration. Accordingly, she withdrew the motion.

14. While the relief sought in the Expedited Motion to Schedule Status Conference is now moot in light of the Court's oral statement of June 29, 2022, it has become evident to the Trustee that other relief is necessary and appropriate. More specifically, because the Court has stated that it will not rule on substantive issues such as discovery disputes and motions for summary judgment, the Trustee believes that the Court should enter an order staying all deadlines in its October 29, 2021 Pretrial Order. Such an order will provide clarity, promote judicial economy, and prevent prejudice to the Trustee.

15. An order staying all deadlines will provide clarity and promote judicial economy in that the Court will not have to entertain motions by the Defendants that it has clearly stated that

it will not entertain at this time. On July 15, 2022, the Defendants filed a Motion for Entry of Unopposed Summary Judgment on All Claims and Notice of Filing Proposed Order (Doc. 203). This motion was filed despite the Court's clear instruction that it would take no action on any motion for summary judgment, and was filed in contravention of the Defendants' agreement with the Trustee to continue all deadlines related to the motions for summary judgment, including the response deadlines. If the Court were to enter an order holding all deadlines in abeyance pending the resolution of the appeal, it would make clear, in a written order, that the Court will not consider such motions at this time.

16.     An order formally holding all deadlines in abeyance will also prevent prejudice to the Trustee. John Spragens, who represents Manookian, PLLC and Brian Manookian (and who has purported to file a motion on behalf of Afsoon Hagh and Hagh Law, PLLC, who are represented by other counsel) lodged an objection to a deposition on behalf of third-party Marty Fitzgerald (though the objection stated that Mr. Spragens does not represent Mr. Fitzgerald). The Trustee believes that it is necessary to depose Mr. Fitzgerald concerning communications he had with Cummings Manookian, PLC, Brian Manookian, and Afsoon Hagh. These matters could have a significant bearing on the Trustee's planned motion for summary judgment as well as her response to the Defendants' motion for summary judgment. The Trustee intends to file a motion to compel Mr. Fitzgerald to appear for a deposition, though she understands that the Court will not entertain that motion until the conclusion of the pending appeal. If the Trustee were required to file a motion for summary judgment and respond to the Defendants' motion for summary judgment pursuant to the deadlines established in the pretrial order, while not being able to complete discovery according to the schedule anticipated in the pretrial order, it would work an extreme prejudice and injustice upon the Trustee and this bankruptcy estate. It is only logical that the

parties be allowed to complete all discovery prior to filing and/or responding to motions for summary judgment. Since the Court has stated it has no jurisdiction to consider a motion to compel discovery, all matters should be stayed until it regains jurisdiction to consider all matters, including discovery disputes.

17.     While a stay of all deadlines promotes judicial efficiency and prevents prejudice as to the Trustee and the bankruptcy estate, a stay would not otherwise prejudice any other party to this matter. The Court has already articulated that it would not consider any motion for summary judgment at this time. Since the Court will not consider any such motions at this time, there is no advantage to requiring the parties to file such motions at this time (especially in light of the fact that discovery is incomplete). The filing of motions for summary judgment now will not bring about the conclusion of this matter any quicker, given that the pending appeal might take months to resolve.

18.     Given these facts and considerations, the Trustee respectfully requests that the Court enter an order staying all deadlines in this case, including those outlined in its October 29, 2021 Pretrial Order, until the appeal filed by Manookian, PLLC and Brian Manookian has been resolved and jurisdiction has been restored to this Court. The Trustee suggests that any such order provide that the Court will schedule a pretrial conference upon the conclusion of the appeal to set a hearing date on the motion to compel the testimony of Marty Fitzgerald, and to set deadlines for motions for summary judgment based upon the deposition date for Mr. Fitzgerald.

19.     The Trustee respectfully suggests that the Court can simply enter an order staying the deadlines in its prior pretrial order without further hearing.[2] A court has broad discretion to

---

[2] The Trustee also submits that an order staying the deadlines established in the Court's prior pretrial order is an administrative function and does not substantively alter the rights of the parties. As such, the pending appeal would not prevent the Court from entering an order staying all deadlines.

set its own deadlines in order to promote efficiency and equity. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). In this instance, staying the deadlines previously set by the Court's pretrial order prejudices no party, while declining to stay the deadlines would be inequitable to the interests of the Trustee and the bankruptcy estate she serves.

20.     Finally, the Trustee respectfully requests that the Court consider the relief sought in the Motion as expeditiously as possible. Pursuant to the agreement of the parties (as outlined in the unopposed motion found at Docket Entry 167), motions for summary judgment are currently due to be filed by July 29, 2022 and responses to those motions must be filed by August 12, 2022. The Trustee respectfully requests that the Court enter an order regarding these proposed deadlines prior to July 29, 2022 in order to prevent potential prejudice to the Trustee and the estate.

WHEREFORE, the Trustee respectfully requests that this Court enter an order (a) staying all deadlines in this case, including those established in the October 29, 2021 Pretrial Order, pending the resolution of Brian Manookian and Manookian PLLC's appeal of the Court's Order Quashing Notice of Deposition, and (b) granting such other and further relief as the Court deems equitable and appropriate under the circumstances.

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing has been sent to all parties requesting notice via CM/ECF Electronic Filing on the 22nd day of July, 2022.

/s/ Phillip G. Young, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| JEANNE ANN BURTON, TRUSTEE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAGH LAW, PLLC; AFSOON | ) | |
| HAGH; MANOOKIAN, PLLC; and | ) | |
| FIRST-CITIZENS BANK & TRUST | ) | |
| COMPANY, | ) | |
| Defendants. | ) | |
| | ) | **Adv. Proc. No. 3:20-ap-90002** |

---

## MOTION TO COMPEL MARTY FITZGERALD TO COMPLY WITH SUBPOENA FOR TESTIMONY

Pursuant to Federal Rules of Bankruptcy Procedure 9016 and Federal Rule of Civil Procedure 45, Jeanne Ann Burton, Chapter 7 Trustee and Plaintiff herein (the "Trustee"), respectfully moves to compel Marty Fitzgerald ("Fitzgerald") to comply with a Subpoena to Testify at a Deposition in a Bankruptcy Case (or Adversary Proceeding) (the "Subpoena") issued on June 6, 2022, served on Mr. Fitzgerald on June 7, 2022, and requiring Mr. Fitzgerald's attendance at a deposition on June 24, 2022.[1]

As indicated in the Subpoena, a true and accurate copy of which is attached hereto as Exhibit A, the Trustee sought to depose Marty Fitzgerald, one of the plaintiffs in the

---

[1] The Trustee understands that the Court is unlikely to consider this motion until the conclusion of a pending appeal; this Motion is being filed so that it is considered immediately upon the resolution of that appeal.

*Fitzgerald v. Osborn* matter, regarding his discussions with Brian Manookian, Afsoon Hagh, and/or Cummings Manookian, PLLC about their representation of him in a lawsuit or their purported withdrawal from that representation. The Subpoena was served on Mr. Fitzgerald on June 7, 2022, as indicated on the return of service attached hereto as Exhibit B.

The Subpoena required Mr. Fitzgerald's appearance at a deposition via Zoom on June 24, 2022. On June 21, 2022, Attorney John Spragens sent an email to undersigned counsel objecting to the subpoena on behalf of Mr. Fitzgerald.[2] A copy of the email is hereto as Exhibit C. The email from John Spragens raised three possible objections to the Subpoena: (1) scheduling of the deposition, (2) privilege, and (3) that the testimony would be painful for him. The scheduling issue is moot, since he stated that he was unavailable until July 8, 2022, which we are now well past.

Regarding privilege, only communications between attorneys and clients that are substantive are subject to the attorney-client privilege; unless the conversations between him and his counsel consist of legal advice or analysis of Mr. Fitzgerald's case, they would be subject to no such privilege. *Boyd v. Comdata Network*, 88 S.W.3d 203, 213 (Tenn. Ct. App. 2002) ("The attorney-client privilege is not absolute, nor does it cover all communications between a client and his or her attorney. The communications must involve the subject matter of the representation and must be made with the intention that

_____

[2] This objection was to a second, revised subpoena. Originally, on May 5, 2022, the Trustee issued a subpoena for Mr. Fitzgerald's testimony on May 27, 2022. No timely objection was filed to that first subpoena. The week before that deposition was to occur, counsel for the Defendants asked the Trustee to reschedule all third-party depositions, including Mr. Fitzgerald's, because Brian Manookian and Afsoon Hagh were scheduled to be out of state. As an accommodation, the Trustee agreed to reschedule the depositions so long as other pretrial deadlines were likewise rescheduled. The Defendants agreed, and Mr. Spragens subsequently objected to the subpoena for the rescheduled deposition, which was set at the Defendants' request.

they will be kept confidential.").  Even if the discussions would otherwise be privileged, both Brian Manookian and Afsoon Hagh have testified regarding those conversations, alleging that they advised Mr. Fitzgerald that Cummings Manookian, PLC would be withdrawing from the representation and that he must seek other counsel.  Therefore, any privilege has been waived by their testimony.

Finally, the Trustee is sensitive to the fact that Mr. Fitzgerald lost his daughter in a tragic accident and that he is involved in this matter only because he was a former client of the Debtor, and possibly one or more of the Defendants.  However, the Defendants have alleged that they notified Mr. Fitzgerald that Cummings Manookian, PLC must withdraw from representing him, and that they advised him to seek new counsel.  It is the Defendants, not the Trustee, who have made Mr. Fitzgerald's testimony relevant.  The Trustee is entitled to inquire further of Mr. Fitzgerald concerning those alleged communications, rather than relying solely on the testimony of the Defendants to this action.

Wherefore, the Trustee requests that the Court compel Marty Fitzgerald to appear for a deposition pursuant to the Subpoena.

Dated: July 22, 2022

<div style="margin-left:40%">

Respectfully Submitted,

*/s/ Phillip G. Young, Jr.*
Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel:    615.465.6008
Fax:    615.807.3048
Email: phillip@thompsonburton.com

Special Counsel to Trustee

</div>

3

**<u>Certificate of Service</u>**

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF and/or United States Mail, first class, postage prepaid, to the following persons:

John Spragens (via ECF only)

Marty Fitzgerald
8158 Golf Club Road
Mount Pleasant, TN 38474

This 22nd day of July, 2022.

*/s/ Phillip G. Young, Jr.*
Phillip G. Young, Jr.

# UNITED STATES BANKRUPTCY COURT

_____ Middle _____ District of _____ Tennessee _____

In re Cummings Manookian, PLLC
_____
Debtor

_(Complete if issued in an adversary proceeding)_

Jeanne Ann Burton, Trustee
_____
Plaintiff

v.

Hagh Law, PLLC et al.
_____
Defendant

Case No. ___ 3:19-bk-07235 ___

Chapter _____ 7 _____

Adv. Proc. No. ___ 3:20-ap-90002 ___

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Marty Fitzgerald
_____
_(Name of person to whom the subpoena is directed)_

☑ _Testimony_: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: _See Attachment A_

| PLACE | DATE AND TIME |
|---|---|
| Via Zoom - Instruction to be emailed to marty.fitzgerald17@gmail.com | 06/24/22     10:00 am |

The deposition will be recorded by this method: Stenographic and videographic means, including Zoom recording

☐ _Production_: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: ___ 6/6/22 ___

CLERK OF COURT

OR

_____          /s/ Phillip G. Young, Jr.
_Signature of Clerk or Deputy Clerk_                _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
_ Jeanne Ann Burton, Trustee _ , who issues or requests this subpoena, are:
Philip Young, 6100 Tower Circle, Suite 200, Franklin, TN 37067, phillip@thompsonburton.com, (615) 465-6008

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☑ I served the subpoena by delivering a copy to the named person as follows: Marty Fitzgerald; 8158 Golf Club Road;
Mount Pleasant, TN 38474
_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ 40.00 _____ .

My fees are $ ___ 40.00 ___ for travel and $_____ for services, for a total of $___ 40.00 ___ .


I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:
Fee check previously tendered

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# UNITED STATES BANKRUPTCY COURT

_____ Middle _____ District of _____ Tennessee _____

In re Cummings Manookian, PLLC
_____
Debtor

_(Complete if issued in an adversary proceeding)_

Jeanne Ann Burton, Trustee
_____
Plaintiff

v.

Hagh Law. PLLC et al.
_____
Defendant

Case No. 3:19-bk-07235

Chapter 7

Adv. Proc. No. 3:20-ap-90002

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Marty Fitzgerald
_____
_(Name of person to whom the subpoena is directed)_

☑ _Testimony_: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: _See Attachment A_

| PLACE | DATE AND TIME |
|---|---|
| Via Zoom - Instruction to be emailed to marty.fitzgerald17@gmail.com | 06/24/22          10:00 am |

The deposition will be recorded by this method: Stenographic and videographic means, including Zoom recording

☐ _Production_: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 6/6/22

CLERK OF COURT

OR

_____
Signature of Clerk or Deputy Clerk

/s/ Phillip G. Young, Jr.
_Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
Jeanne Ann Burton, Trustee , who issues or requests this subpoena, are:
Philip Young, 6100 Tower Circle, Suite 200, Franklin, TN 37067, phillip@thompsonburton.com, (615) 465-6008

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☑ I served the subpoena by delivering a copy to the named person as follows: Marty Fitzgerald; 8158 Golf Club Road; Mount Pleasant, TN 38474    via personal service at 4:53 PM.

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ 40.00 _____ .

My fees are $ ___40.00___ for travel and $_____ for services, for a total of $ ___40.00___ .

I declare under penalty of perjury that this information is true and correct.

Date: 6/7/2022

Tom A. Clark
*Server's signature*

Tim A. Clark, Server
*Printed name and title*

**Expedite**
5009 Stillwood Drive
Nashville, TN 37220
615-681-8001
*Server's address*

Additional information concerning attempted service, etc.:
Fee check previously tendered

From: John Spragens <john@spragenslaw.com>
Subject: Re: Marty Fitzgerald Subpoena
Date: June 21, 2022 at 3:50:29 PM CDT
To: Phillip Young <phillip@thompsonburton.com>
Cc: "Gabbert, Craig V." <cgabbert@bassberry.com>

Phillip,

As we discussed yesterday, Mr. Fitzgerald expressed a number of objections to the deposition to me. He mentioned again that the last deposition was not possible since it arose on or near the anniversary of his daughter's untimely death, an emotionally difficult time for him.

I have summarized his objections as best I can below, although I defer to him on any details I have failed to capture or have inadvertently misrepresented.

1. He, a veteran, is involved in a veteran suicide proposal to the VA. That will not be concluded for a few weeks. He cannot afford the time this week or anytime before the July 8 deadline to give a deposition in the case.

2. He believes most of the testimony you are seeking involves attorney-client communications, and he does not intend to waive attorney-client privilege over those communications. So he questions what value his deposition would even bring to this case.

3. It is painful and excruciating for him to relive the details of his daughter's death and the resulting litigation, and he believes this entire proceeding is a farce that will only re-traumatize him for the benefit of lawyers who are attempting to claim entitlement to funds. It hurts and angers him to be subpoenaed under such circumstances.

I hope that captures it. I told him you might be open to propounding written questions, as you told me you thought would work. Let's do that for the good of everyone involved. This is, after all, about money, not someone's daughter's life.

Thanks,
John

On Mon, Jun 20, 2022 at 1:58 PM Phillip Young <phillip@thompsonburton.com> wrote:
John,

Thanks for your call regarding the Marty Fitzgerald subpoena and deposition scheduled for Friday. The Trustee would like to see Mr. Fitzgerald's objections in writing and then she will determine how to proceed from that point. We are in agreement that, with today being a federal holiday, those objections are not due

until tomorrow.

**Thompson Burton PLLC**
*Redefining the Art of Law*.
_____

**Phillip Young**
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
Direct Dial: (615) 465-6008
phillip@thompsonburton.com
www.thompsonburton.com

*Please refer to our email disclaimer page for important disclosures regarding this electronic communication.

--
John Spragens
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
(615) 983-8900

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: | Case No, 3:19-bk-07235 |
| | Chapter 7 |
| **CUMMINGS MANOOKIAN, PLLC** | Judge Walker |
| Debtor. | Adv. Proc. No. 3:20-ap-90002 |
| **JEANNE ANN BURTON, TRUSTEE** | |
| Plaintiff, | |
| v. | |
| **HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC,** | |
| Defendants. | |

**DEFENDANTS' NOTICE OF OPPOSITION TO PLAINTIFF'S
REQUEST FOR IMMEDIATE *EX PARTE* RULING ON PLAINTIFF'S
INCORRECTLY-STYLED "MOTION TO STAY"**

The Plaintiff has, this morning, filed an improperly-styled "Motion to Stay Deadlines" which, in fact, does not ask the Court to stay deadlines, but rather to retroactively relieve her of various already-expired deadlines in this matter. Specifically, Plaintiff asks the Court to retroactively change the date for her to respond to Defendants' Motion to Summary Judgment <u>after she failed to oppose that motion by the July 8, 2022 deadline, which was set over nine months ago</u>.

Plaintiff's erroneously-styled "Motion to Stay" contains serial misrepresentations of fact and law, and, presumably for that reason, the Plaintiff simultaneously seeks an

1

immediate ruling prior to the Defendants being afforded an opportunity to respond. *See*, Plaintiff's Motion at Para. 19.

Defendants give notice that they will file a comprehensive response and memorandum in opposition to Plaintiff's request, and will do so within three (3) business days of Plaintiff's filing, by Wednesday, July 27, 2022.

Defendants respectfully request that the Court decline Plaintiff's invitation to rule on a substantive and prejudicial motion from the Plaintiff seeking a one-way reprieve from long-established and long-expired deadlines before Defendants have an opportunity to respond.

Date:  July 22, 2022                                    Respectfully submitted,

                                            */s/ John Spragens*
                                            John Spragens (TN Bar No. 31445)
                                            Spragens Law PLC
                                            311 22nd Ave. N.
                                            Nashville, TN 37203
                                            T: (615) 983-8900
                                            F: (615) 682-8533
                                            john@spragenslaw.com

                                            *Attorney for Manookian PLLC, Hagh Law, PLLC, Afsoon Hagh, and Brian Manookian*

2

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that the foregoing was filed July 22, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

<div align="center">

*/s/ John Spragens*  

</div>

```
                UNITED STATES BANKRUPTCY COURT
              MIDDLE DISTRICT OF TENNESSEE (NASHVILLE)


IN RE:                        .   Case No. 3:19-bk-07235
                              .   Chapter 7
CUMMINGS MANOOKIAN, PLLC,     .
                              .
                              .
                Debtor.       .
                              .
. . . . . . . . . . . . . .   .
JEANNE ANN BURTON,            .   Adv. No. 3:20-ap-90002
                              .
                Plaintiff,    .
                              .
     v.                       .
                              .
HAGH LAW PLLC, et al.,        .   701 Broadway
                              .   Nashville, TN 37203
                Defendants.   .
                              .   Wednesday, June 29, 2022
. . . . . . . . . . . . . .   .   1:00 p.m.



                    TRANSCRIPT OF HEARING
          BEFORE THE HONORABLE CHARLES M. WALKER
          UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:


For the Debtor:           Spragens Law PLC
                          By:  JOHN T. SPRAGENS, ESQ.
                          311 22nd Avenue North
                          Nashville, TN 37203
                          (615) 983-8900

For Hagh Law PLLC and     Bass, Berry & Sims PLC
Afsoon Hagh:              By:  CRAIG V. GABBERT, JR., ESQ.
                          150 Third Avenue South, Suite 2800
                          Nashville, TN 37201
                          (615) 742-6277

Audio Operator:           Tanja Brewer, ECR

Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46048
                          (855) 873-2223
                          www.accesstranscripts.com



     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

     For the Chapter 7        Thompson Burton PLLC
     Trustee:                 By:  PHILLIP G. YOUNG, ESQ.
                              One Franklin Park
                              6100 Tower Circle, Suite 200
                              Franklin, TN 37067
                              (615) 465-6008

1          (Proceedings commence at 1:00 p.m.)

2          THE COURTROOM DEPUTY:  All rise.  The United States

3     Bankruptcy Court for the Middle District of Tennessee is now in

4     session, the Honorable Charles M.  Walker presiding.

5          THE COURT:  Afternoon.  Please take your seats.

6          THE COURTROOM DEPUTY:  Your Honor, we're here on Case

7     Number 20-90002, <u>Burton v. Hagh Law PLLC</u>.

8          THE COURT:  All right, Counsel.  If I can get

9     appearances.

10          MR. SPRAGENS:  Your Honor, John Spragens on behalf of

11     Manookian, PLLC.

12          MR. GABBERT:  Craig Gabbert, Bass, Berry & Sims, on

13     behalf of Hagh and Hagh Law.

14          MR. YOUNG:  Good afternoon, Your Honor.  Phillip

15     Young on behalf of the trustee, Jeanne Burton.

16          THE COURT:  All right.  And at this time, the Court

17     will read the statement for today's hearing.  Counsel can be

18     seated.

19          On July 14, 2022, Defendant Manookian PLLC and a

20     member of that defendant, a non-party to this proceeding, Brian

21     Manookian, filed a notice of appeal and statement of election

22     from this court's June 1st, 2022 order, quashing the Notice of

23     Deposition of Charles M. Walker, the judge assigned to this

24     adversary following the filing of a motion to disqualify the

25     bankruptcy judge assigned this case.  Based on the pendency of

the appeal in the United States District Court for the Middle
District of Tennessee, this Court is divested of jurisdiction
over aspects of the case subject to the appeal.  Here, the
appeal is from an order quashing a deposition request in
furtherance of a motion for disqualifying the judge.  The
appeal is directly related to the issue of the judge's ability
to render judgment in this case.

> "On the filing of a timely notice of appeal, the
> lower court is divested of its control over those
> aspects of the case involved in the appeal, and the
> appellate court assumes jurisdiction."  See Griggs v.
> Provident Consumer Discount at 459 U.S. 56.

"Once the appeal has been filed, the court cannot
take any action that would alter the status of the case as it
rests before the court of appeals," per Knutson v. AG
Processing Inc. at 302 F.Supp.2d 1023 (N.D. Iowa 2004), which
is citing Dayton Independent School District v. U.S. Mineral
Products, 906 F.2d 1059 (5th Cir.)

The defendants have filed a motion for summary
judgment.  Summary judgment is considered among those actions
that are impermissible for a lower court to adjudicate as it
would disturb the case before the appellate court.  Considering
that the defendants seek a ruling on summary judgment on all
claims, it follows that any ruling on such motion would disturb
the case as it sits before the appellate court, citing Allan

1  Ides, "The Authority of Federal District Court to Proceed After
2  a Notice of Appeal has been filed," 153 F.R.D. 307 [sic], and
3  also <u>Landman v. Mitchell</u> at 445 F.2d 274 (5th Cir.), which
4  upheld a district court's decision to enter no order on a
5  motion for summary judgment that was filed three weeks after a
6  notice of appeal due to lack of jurisdiction.

7          The plaintiffs have filed an expedited motion for
8  status conference, and this Court has entered an order setting
9  that conference, as well as deadline to apply to the motion.
10 Although the Court lacks jurisdiction to entertain any
11 proceedings in this case that implicate the issues presented by
12 the pending appeal, the Court retains limited authority to
13 address ministerial affairs, such as the evidentiary
14 housekeeping issues present by the pending motion for status
15 conference, which have no bearing on the disposition of the
16 appeal.

17         The filing of a notice of appeal is an event of
18 judicial significance.  It confers jurisdiction on the court of
19 appeals and divests the district court of its control over
20 those aspects of the case involved in the appeal, citing <u>Griggs</u>
21 case at Page 58.

22         It is generally understood that a federal district
23 court and a federal court of appeals should not attempt to
24 assert jurisdiction over a case simultaneously, again citing to
25 <u>Griggs</u>.

1    However, in certain circumstances, limited power is

2  retained to address aspects of the case not involved in the

3  appeal when the court's action does not threaten the orderly

4  disposition of the interlocutory appeal.  See Sanford v.

5  Russell, 2019 WL 12074092 (E.D. Mi.)

6    This Court, therefore, may issue the scheduling of

7  evidentiary matters, but will not rule on those issues pending

8  the appeal process.  As such, scheduling will not affect any

9  rights at stake in the pending appeal.  Pretrial and status

10  conference are set for July 13, 2022 at 11 a.m., in person in

11  this courtroom.

12    Therefore given the issue on appeal, all matters

13  before this quarter stayed pending the appeal.  Ruling on

14  discovery issues is stayed as well, except that the scheduled

15  order entered regarding the motion for status conference

16  remains in effect.  Moreover, the Court notes that the appeal

17  is from one order of this Court and does not serve to disturb

18  orders previously entered in this case.

19    THE COURTROOM DEPUTY:  Your Honor, that completes the

20  call of the one o'clock docket.

21    THE COURT:  All right.  Thank you, Gentlemen.  Court

22  is adjourned.

23    MR. YOUNG:  Your Honor, may I address one issue?

24    THE COURTROOM DEPUTY:  All rise.

25    MR. YOUNG:  Only that -- sorry, Philip Young on

1  behalf of the trustee.  I'm actually going to be out of the

2  country on July 13th, and given the Court's ruling and seems

3  like things are not going to progress anytime soon, I was

4  wondering whether the Court would consider moving that back to

5  sometime later in July.

6            THE COURT:  All right.  Just file the appropriate

7  paper --

8            MR. YOUNG:  I will.

9            THE COURT:  -- giving the dates in which you're

10  available, and the Court will entertain it as appropriate.

11            MR. YOUNG:  Thank you, Your Honor.

12            MR. GABBERT:  While I'm here, on that same basis,

13  I'll be out from the 16th until the first.

14            THE COURT:  All right.  So the Court will ask parties

15  to confer, submit one document to the Court on availability,

16  and the Court will pick from those available dates.

17            MR. YOUNG:  I will.  Thank you, Your Honor.

18            THE COURT:  Thank you.

19            THE COURTROOM DEPUTY:  All rise.

20       (Proceedings concluded at 1:07 p.m.)

21                         *  *  *  *  *

22

23

24

25

1    **C E R T I F I C A T I O N**

2

3         I, Alicia Jarrett, court-approved transcriber, hereby

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8

9    _____

10   ALICIA JARRETT, AAERT NO. 428     DATE: July 22, 2022

11   ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25



Charles M. Walker
U.S. Bankruptcy Judge
Dated: 7/25/2022

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No: 3:19-bk-07235 |
| Cummings Manookian, PLLC, | ) | Chapter 7 |
| Debtor | ) | Honorable Charles M. Walker |
| _____ | ) | |
| | ) | |
| Jeanne Ann Burton, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adversary: 3:20-ap-90002 |
| | ) | |
| Hagh Law, PLLC, | ) | |
| Afsoon Hagh, | ) | |
| Manookian, PLLC, and | ) | |
| Defendants | ) | |
| _____ | ) | |

## ORDER DENYING DEFENDANTS' MOTION FOR ENTRY OF UNOPPOSED SUMMARY JUDGMENT ON ALL CLAIMS

Defendants, Hagh Law, PLLC, Afsoon Hagh, and Manookian, PLLC, have moved this

Court for entry of unopposed summary judgment in their favor (See Dkt. #203, hereinafter

"Motion") as to all claims contained in the adversary complaint in advancement of their motion

for summary judgment (Dkt. #188) filed June 24, 2022. For the reasons stated below, the Motion

is DENIED.

### Procedural Posture

This adversary proceeding was filed on January 8, 2020, by Jeanne Ann Burton, the

Chapter 7 Trustee in the underlying bankruptcy proceeding of Debtor Cummings Manookian,

PLLC, a now defunct law firm. (Dkt. #1). The complaint filed by the trustee put forward seven

claims for relief; conversion, state law fraudulent transfer, avoidance and recovery of fraudulent

1

transfers, tortious interference with contract, successor liability and alter ego, turnover, and declaratory judgement.

On May 5, 2022, Manookian, PLLC and Brian Manookian, a non-party to this proceeding, entered a Motion to Disqualify Bankruptcy Judge Charles M. Walker. (Dkt. # 161). In support of this motion, Defendant Manookian, PLLC entered a Notice of Deposition of Judge Charles M. Walker seeking testimony related to the circumstances alleged to provide grounds for recusal. (Dkt. #177). The Court entered an Order Quashing Notice of Deposition on June 1, 2022. (Dkt. #178). Brian Manookian and Manookian, PLLC appealed this Order to the United States District Court on June 14, 2022. (Dkt. #184). The matter currently remains pending on appeal.

On June 24, 2022, subsequent to the filing of the appeal, Defendants filed the aforementioned Motion for Summary Judgment, seeking summary judgment on all seven claims. (Dkt. #188). To date, the Plaintiff has filed no response to the Motion for Summary Judgment. The Motion for Recusal was set for hearing on June 29, 2022. At that time, the Court read a statement into the record wherein the effect of the appeal on the jurisdiction of this Court was acknowledged:

> Based on the pendency of the appeal in the United States District Court for the Middle District of Tennessee, this Court is divested of jurisdiction over aspects of the case subject to the appeal. Here, the appeal is from an Order Quashing a Deposition request in furtherance of a Motion to Disqualify the judge. The appeal is directly related to the issue of this judge's ability to render judgement in this case.
>
> *Statement of the Honorable Charles M. Walker read into the record on June 29, 2022, at hearing (See Exhibit A incorporated herein).*

On July 15, 2022, Defendants filed the instant Motion for Entry of Summary Judgement on All Claims and a proposed order.

2

## Discussion

"A federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).

"This transfer of power, however, does not effect a total divestiture of jurisdiction from the district court: it retains jurisdiction to enforce its judgment, to proceed with matters that will aid the appellate process, and to adjudicate matter unrelated to the issues on appeal." *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 626 (6th Cir. 2013) (citations omitted). The limited jurisdiction which a district court retains to take actions in aid of an appeal is a "narrowly defined" class of actions, which "does not include actions that alter the case on appeal". *United States v. Carman*, 933 F.3d 614, 617 (6th Cir. 2019) (internal quotations omitted). See also *United States v. Gallion*, 534 Fed. Appx. 303, 310 (6th Cir. 2013) ("[T]he test of whether an issue is collateral to a claim on appeal, and therefore whether a district court may retain jurisdiction . . . considers whether the action by the district court would alter the status of the case as it rests before the Court of Appeals".)(citation omitted) "Any action of the district court pertaining to matters involved in the appeal is null and void and will be vacated". *Kelley v. St. Paul Fire & Marine Ins. Co.*, No. 87-1639, 1988 U.S. App. LEXIS 11765 at *8 (6th Cir. Aug. 29, 1988).

It is well settled law that entry or alteration of a judgment, including summary judgment, alters the status of a case such that it disturbs a matter on appeal. See *Knutson v. AG Processing, Inc.*, 302 F.Supp.2d 1023, 1030 (N.D. Iowa 2004)(citing *Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990))(*rev'd on other grounds, Knutson v. AG Processing, Inc.*, 394 F.3d 1074 (8th Cir. 2005)). See also *Landman v. Mitchell*, 445 F.2d 274, 275 (5th Cir. 1971) (observing that a party's filing of an appeal divested the district court of jurisdiction to enter any order on that party's subsequent motion for summary judgment); *United States v.*

3

*Brown*, 17 Fed. Appx. 367, 368–69 (6th Cir. 2001) (declaring that a district court did not have jurisdiction to address a motion to dismiss an indictment pending an appeal); *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1013 (6th Cir. 2003) (emphasizing a distinction "between actions that merely aid the appellate process and actions that alter the case on appeal"); *United States v. Holloway*, 740 F.2d 1373, 1382 (6th Cir. 1984) (declaring that a district court lacked jurisdiction to alter the status of a sentence while an appeal was pending). *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987) ("[A] district court may not alter or enlarge the scope of its judgment pending appeal"); *United States v. Harvey*, 996 F.3d 310, 313 (6th Cir. 2021) (determining that a district court could not issue an opinion after an appeal had been filed); *United States v. Sutton*, 573 Fed. Appx. 560, 562 (6th Cir. 2014) (filing of an appeal removed the district court's jurisdiction to enter a judgment); *Washington v. Kelly*, No. 1:05-CV-577, 2009 WL 233711 at *3 (N.D. Ohio Jan. 30, 2009) (declaring that a pending appeal removed the court's jurisdiction to consider either a motion for default judgment or a motion to disqualify the judge).

The appeal in this case is directly related to the ability of this Court to continue adjudication of this matter, and an entry of summary judgment would clearly alter the status of matters involved in the appeal. Therefore, because this Court lacks jurisdiction at this time to adjudicate the relief requested in the Motion and for the reasons stated in this Court's statement read into the record at the June 29, 2022, hearing (See attached Exhibit A incorporated herein), the Motion for Entry of Unopposed Summary Judgment on All Claims (Dkt. #203) is DENIED.

*THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE*

4

# EXHIBIT A

**Statement Read Into the Record June 29, 2022**

On June 14, 2022, Defendant, Manookian PLLC and a member of that Defendant – a non-party to this proceeding - Brian Manookian, filed a Notice of Appeal and Statement of Election from this Court's June 1, 2022, Order Quashing the Notice of Deposition of Charles M. Walker, the judge assigned to the adversary, following the filing of a Motion to Disqualify the bankruptcy judge assigned this case.

Based on the pendency of the appeal in the United States District Court for the Middle District of Tennessee, this Court is divested of jurisdiction over aspects of the case subject to the appeal. Here, the appeal is from an Order Quashing a Deposition request in furtherance of a Motion for Disqualify the judge. The appeal is directly related to the issue of this judge's ability to render judgment in this case.

On the filing of a timely notice of appeal, the lower court is "[divested] of its control over those aspects of the case involved in the appeal" and the appellate court assumes jurisdiction. *Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982).* Once the appeal has been filed the court cannot take any action that would "alter the status of the case as it rests before the Court of Appeals". *Knutson v. AG Processing, Inc.,* 302 F.Supp.2d 1023, 1029 (N.D. Iowa 2004) (citing *Dayton Indep. Sch. Dist. V. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990))(*rev'd on other grounds*, *Knutson v. AG Processing, Inc.,* 394 F.3d 1074 (8th Cir. 2005)).

The Defendants have filed a Motion for Summary Judgment. Summary Judgement is considered among those action that are impermissible for a lower court to adjudicate as it would disturb the case before the appellate court. Considering that the Defendants seek a ruling on summary judgement on all claims, it follows that any ruling on such a motion would disturb the

6

case as it sits before the appellate court. Allan Ides, *The Authority of a Federal District Court to Proceed After a Notice of Appeal has Been Filed*, 143 F.R.D. 307, 308 (1992). *See also*, *Landman v. Mitchell*, 445 F.2d 274, 275 (5th Cir. 1971)(upholding a District Court's decision to enter no order on a motion for summary judgement that was filed three weeks after a notice of appeal due to lack of jurisdiction).

The Plaintiffs have filed an Expedited Motion for Status Conference and this Court has entered an Order setting that Conference, as well as a deadline to reply to the motion. Although the Court lacks jurisdiction to entertain any proceedings in this case that implicate the issues presented by the pending appeal, the Court retains limited authority to address ministerial affairs such as the evidentiary housekeeping issues present by the pending motion for a status conference, which has no bearing on the disposition of the appeal. "The filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Citing the *Griggs* case at P.58. "It is generally understood that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Ibid*. However, in certain circumstances limited power is retained to address aspects of the case not involved in the appeal, when the court's action "do[es] not threaten the orderly disposition of the interlocutory appeal." *Sanford v. Russell*, 2019 WL 12074092, at *1 (E.D. Mich. June 4, 2019) (citations omitted). This Court therefore, may issue the scheduling of evidentiary motions, but will not rule on those issues pending the appellate process as such scheduling will not affect any rights at stake in the pending appeal. Pretrial and Status Conference are set for July 13, 2022, at 11:00 a.m. in person in this Courtroom.

Therefore, given the issue on appeal, all matters before this Court are stayed pending the appeal. Ruling on discovery issues is stayed as well, except that the scheduling order entered regarding the Motion for Status Conference remains in effect. Moreover, the Court notes that the appeal is from one order of this Court and does not serve to disturb orders previously entered in this case.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

8

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | Case No, 3:19-bk-07235 |
| | Chapter 7 |
| CUMMINGS MANOOKIAN, PLLC | Judge Walker |
| Debtor. | Adv. Proc. No. 3:20-ap-90002 |
| JEANNE ANN BURTON, TRUSTEE | |
| Plaintiff, | |
| v. | |
| HAGH LAW, PLLC; AFSOON HAGH; and MANOOKIAN PLLC, | |
| Defendants. | |

---

## DEFENDANTS' RESPONSE TO PLAINTIFF'S UNTIMELY MOTION TO STAY ALREADY EXPIRED DEADLINES

Having failed to respond to Defendants' Motion for Summary Judgment by a deadline established *nine months ago*, Plaintiff Jeanne Ann Burton now asks the Court to "stay" that same deadline; *after the deadline has long since passed.* But, one cannot "stay" a deadline that has already expired. Rather, the Plaintiff is actually asking the Court to retroactively exempt her from deadlines she failed to meet, and thereby reinstate claims that she has forfeited.

This request is just the latest in a long line of bad-faith gymnastics by the Trustee and her Special Counsel directed at keeping alive a frivolous adversary proceeding which the Trustee now admits she never had evidence to bring in the first place. Confronted

with a properly supported Motion for Summary Judgment, and unable to come forward with a *any* admissible evidence to support her own claims (after three years of litigation), the Trustee asks to be relieved of expired deadlines: deadlines that the Defendants she dragged into this proceeding have met.

The Court should deny the Plaintiff's erroneously styled "Motion to Stay." An Order of the Bankruptcy Court is currently on appeal to the District Court and a Motion to Recuse the Bankruptcy Judge is pending, divesting this Court of jurisdiction to grant Plaintiff's request. But even if the Court were empowered to consider Plaintiff's attempt at reviving her now-forfeited claims, Ms. Burton's request would require rejection.

Plaintiff's Motion is, in fact, a motion to be relieved of expired deadlines and, thus, is subject to an excusable neglect standard that Ms. Burton has not alleged or addressed, much less met. Moreover, Plaintiff's request is futile as Ms. Burton has separately and additionally failed to respond to scores of Requests for Admission whose facts are dispositive and now conclusively established. Finally, this Court previously denied Defendants' *unopposed* motion to alter these same deadlines which was submitted *prior to the deadlines' expiration*. Granting the Plaintiff's *opposed* motion, *after the deadlines have passed* would be fundamentally unjust and highly prejudicial to the Defendants who have conscientiously adhered to this Court's orders.

## I.     <u>INTRODUCTION AND PROCEDURAL HISTORY</u>

This is an adversary proceeding brought by Trustee Jeanne Ann Burton (the "Trustee" or "Ms. Burton") on behalf of Cummings Manookian PLC ("CM" or "Cummings Manookian"). Cummings Manookian was a law firm that filed for Chapter 7 Bankruptcy in 2019.

2

On January 8, 2020, the Trustee instituted this action against Hagh Law, PLLC, Afsoon Hagh, and Manookian PLLC (collectively, the "AP Defendants") asserting seven separate claims for relief: conversion; state law fraudulent transfer; avoidance and recovery of fraudulent transfer; tortious interference with contract; successor liability and alter ego; turnover; and declaratory judgment.  D.E. 1.

On October 29, 2021, the Court entered a Pretrial Order setting written discovery and deposition deadlines, as well as dates by which dispositive motions, responses to dispositive motions, and replies to dispositive motions were to be filed.  D.E. 93.  The Order required that "all dispositive motions shall be filed no later than June 24, 2022.  All responses to the dispositive motions are to be filed no later than July 8, 2022.  All replies are to be filed no later than July 15, 2022."  *Id.* at Paras. 3-5.  Emphasis added.

On April 11, 2022, the Trustee filed her first motion to continue depositions and other discovery deadlines.  D.E. 147.  The Trustee requested an expedited hearing "on or before April 15, 2022 to continue certain depositions and pretrial deadlines."

On April 14, 2022, the Court denied the Trustee's first motion seeking to alter discovery and pretrial deadlines.  D.E. 149.  The Court explicitly held that "the applicable Rules and Orders of this Court regarding discovery are in full force and effect."  *Id.* at Para. 2.  Emphasis added.

On May 19, 2022, the Defendants filed an unopposed motion to extend the deadlines for three specific third-party depositions.  D.E. 167.  The Defendants further stated that "[r]escheduling these depositions will necessitate moving certain other deadlines, and the Trustee and Defendants have cooperated to reach an agreement on those revisions as memorialized in the attached proposed order."  *Id.* at Page 1.  The Parties submitted a proposed order attempting to extend the discovery deadline until

June 30, 2022, as well as attempting to continue the dispositive motion, response, and reply deadlines to July 29, 2022; August 12, 2022; and August 19, 2022, respectively. D.E. 168.

On May 25, 2022, the Court, via docket order, directed the Parties to a prior order which already permitted parties to make limited scheduling changes to third-party depositions. D.E. 171. The Court then specifically denied the Parties' Motion to move the discovery cut-off and declined to alter the deadlines relative to dispositive motions, stating that "the Submitted order at Docket Number 168 will not be entered by the Court as the related motion is denied." *Id.* Emphasis added. Thus, the dispositive motion and reply deadlines of June 24, 2022 and July 8, 2022, were again affirmed and emphasized by the Court.

On June 1, 2022, the Trustee failed to respond to Manookian, PLLC's Second Set of Requests for Admission as required by Court Order dated March 28, 2022 at D.E. 143. Pursuant to Fed. R. Civ. Pro. 36(a)(3), all of the matters posed within the Second Set of Requests for Admission were therefor conclusively admitted. Although Fed. R. Civ. Pro. 36(b) permits withdrawal or amendment of admissions in certain circumstances and upon motion to the Court, the Trustee never filed any such motion to withdraw or amend her admissions.

On June 24, 2022, the AP Defendants collectively moved for summary judgment on all claims asserted by the Trustee in this matter. D.E. 188-1. Defendants' Motion was accompanied by a comprehensive Memorandum of Law and a detailed twenty-three-page Statement of Undisputed Material Facts, comprised of eighty (80) separate factual assertions, each of which was accompanied by citation to the record. D.E. 188-2. The Trustee did not file any dispositive motion, herself, by the June 24, 2022 deadline.

4

On June 28, 2022, following Defendants' filing of their Motion for Summary Judgment, the Trustee filed an "Expedited Motion to Schedule Status Conference." D.E. 189. The grounds for the Motion, according to the Trustee, were that:

> "[T]he Plaintiff needs clarification from the Court on certain pretrial scheduling matters, including whether the Defendants have properly filed a motion for summary judgment, when the Court expects the Plaintiff to respond to that motion for summary judgment, when the Court expects the parties to answer and/or supplement prior answers to written discovery, and when the Court expects any party to file dispositive motions." *Id.* at Para. 2.

The Trustee's "Expedited Motion to Schedule Status Conference" was filed despite the existing Pretrial Order clearly laying out all such deadlines, and despite multiple orders from the Court declining to alter those deadlines. *See, e.g.,* D.E. 93 (setting comprehensive pretrial deadlines for written discovery, depositions, dispositive motions, responses to dispositive motions, and replies to responses to dispositive motions); D.E. 149 (denying the Trustee's first attempt to modify pretrial deadlines, including those related to dispositive motions); D.E. 171 (rejecting the Parties' joint attempt to modify pretrial deadlines, including those related to dispositive motions, responses and replies).

On June 28, 2022, the Court entered an Order granting the Trustee's Motion to Schedule an Expedited Status Conference and setting the requested pretrial conference for July 13, 2022. D.E. 191.

On June 29, 2022, during a hearing in this matter, the Court reiterated that it would entertain the Trustee's request for an expedited pretrial conference notwithstanding an appeal and pending motion to disqualify the judge. D.E. 123 at Exhibit A, Page 8. The Court specifically emphasized, however, that all prior orders,

including the scheduling order setting dispositive deadlines remained in effect. ("[T]he Court notes that the appeal is from one order of this Court <u>and does not serve to disturb orders previously entered in this case</u>." *Id*. Emphasis added.)

On June 30, 2022, and despite the Court's willingness to schedule a hearing in order to provide "clarification" on pretrial deadlines, the Trustee withdrew her Expedited Motion to Schedule Status Conference, and further requested that the Court cancel the pretrial conference set for July 13, 2022. D.E. 197.

On July 1, 2022, the Court entered a Docket Entry noting that the Plaintiff's motion for an expedited status conference to "clarify" the existing pretrial deadlines had been "properly withdrawn via Notice." D.E. 200.

On July 8, 2022, the deadline for responses to dispositive motions, the Trustee **failed to file any response** to the Defendants' Motion for Summary Judgment on All Claims. The Trustee **failed to respond to any of the factual assertions** in Defendants' Statement of Undisputed Material Facts. And the Trustee **failed to file any motion under Fed. R. Civ. Pro. 56(d)** showing by affidavit or declaration that, for specified reasons, she was unable to present facts essential to justify opposition to Defendants' Motion for Summary Judgment.

## II. PLAINTIFF IS SEEKING RADICAL, SUBSTANTIVE, AND CASE-ALTERING RELIEF FOR WHICH THE COURT HAS MADE CLEAR IT WILL NOT RULE.

At midnight on July 9, 2022, the Plaintiff forfeited her claims against these Defendants. "The Sixth Circuit has consistently explained that '[f]ailure by a [party] to respond to a motion for summary judgment constitutes a forfeiture of the claims to which the motion is addressed.'" *Navarro v. Procter & Gamble Co*., 515 F. Supp. 3d 718, 775

(S.D. Ohio 2021), <u>reconsideration denied</u>, No. 1:17-CV-406, 2021 WL 913103 (S.D. Ohio Mar. 10, 2021). "Because [the non-moving party] failed to designate specific facts creating a material issue in response to [the moving party's] motion, the district court properly granted [the moving party's] summary judgment motion." *Reed v. City of Memphis, Tennessee*, 735 F. App'x 192, 201 (6th Cir. 2018). Moreover, Local Rule 56.01(f) of the Middle District of Tennessee expressly provides that, "[i]f a timely response to a moving party's statement of material facts, or a non-moving party's statement of additional facts, is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment."

<u>Plaintiff's motion is thus asking the Bankruptcy Court to reinstate her now-forfeited claims by retroactively changing the expired deadline for her response to Defendants' Motion for Summary Judgment</u>. This is, by definition, substantive relief that alters the case and positions of the parties. *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1013 (6th Cir. 2003) (emphasizing a distinction "between actions that merely aid the appellate process and actions that alter the case on appeal").

An order of the Bankruptcy Court is currently on appeal to the District Court and a Motion to Recuse the Bankruptcy Judge is pending. *See e.g.*, Order, D.E. 123, Pages 1-2 (detailing the current procedural posture of this case). As a result, this Court has acknowledged that it lacks jurisdiction to adjudicate any request that could affect or alter the case on appeal. *Id.* Plaintiff's request for the Court to retroactively change expired dispositive deadlines, and thereby reinstate her claims, is substantive relief that affects and alters the posture of the case. *Id.* at Pages 2-4 (citing various federal cases confirming that a pending appeal divests the trial court of jurisdiction).

Two days ago, on July 25, 2022, this Court denied the Defendants' Motion for Entry of Unopposed Summary Judgment on the grounds that this matter is on appeal. This Court must now do the same for Plaintiff's Motion which seeks to reinstate her forfeited claims by retroactively changing dispositive deadlines she failed to meet.

## III. EVEN IF THE COURT COULD RULE UPON PLAINTIFF'S UNTIMELY MOTION, MS. BURTON'S REQUEST TO BE EXEMPTED FROM EXPIRED DISPOSITIVE DEADLINES WOULD REQUIRE DENIAL.

The deadline for Plaintiff to respond in opposition to Defendants' Motion for Summary Judgment on all claims has expired. Her request to alter that deadline has only now been made after its passage, as opposed to during the nine (9) month window that the deadline was set but not foreclosed. Her motion is therefore governed by an excusable neglect standard that she neglects to address, much less meet. This alone requires rejection of her request. Moreover, this Court has already rejected an identical *unopposed* request by the Defendants' which was timely submitted prior to the expiration of the deadline. Granting a one-way reprieve to the Plaintiff would be fundamentally unjust. It would also be futile. The Plaintiff's additional failure to respond to scores of Requests for Admission posed by the Defendants by an entirely separate court-ordered deadline has left no material fact in dispute for adjudication.

### A. The Deadline for Dispositive Motion Responses Has Expired.

The deadline for Plaintiff to respond to Defendants' Motion for Summary Judgment on All Claims was July 8, 2022. D.E. 93 at Para. 4 ("All responses to dispositive motions are to be filed no later than July 8, 2022"). That deadline was set over nine (9) months ago and was repeatedly reiterated by the Court, most recently during an in-person

hearing on June 29, 2022.  Order, D.E. 123, Exhibit A at Page 8.  Despite repeated warnings, Plaintiff *chose* not to respond to Defendants' Motion for Summary Judgment on All Claims within the time allotted by Court Order.

Plaintiff's "Motion to Stay Deadlines" was filed July 22, 2022, well after the deadline it seeks to change had already expired.  Plaintiff's request is, therefore, not a motion to stay, but rather a motion for relief from an order.  Such motions are governed by Rule 6 of the Federal Rules of Civil Procedure.

## B. Plaintiff Has Not Alleged, Much Less Met, the Heavy Burden Required for the Relief She Requests.

"[W]hen the Court establishes deadlines, the parties are obliged to follow them. If a party attempts to file an untimely motion, the Court will not blithely [evaluate] it without considering the reasons for the delay." *Century Indem. Co. v. Begley Co.*, 2018 WL 272576, at *1 (E.D. Ky. Jan. 3, 2018).  Specifically, under Rule 6, as to an expired deadline, the Court "may" extend the time "for good cause," but only "on motion made after the time has expired if the party failed to act because of excusable neglect." *See*, Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . (B) on motion made after the time has expired if the party failed to act because of excusable neglect.").

Excusable neglect is an equitable balance of five factors: (1) prejudice to the nonmoving party; (2) length of delay and potential impact on judicial proceedings; (3) reason for the delay; (4) whether the delay was within the reasonable control of the moving party; and (5) whether the late-filing party acted in good faith. *See Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 113 S. Ct. 1489 (1993*)); see also, e.g., Howard v.*

*Nationwide Prop. & Cas. Ins. Co.,* 306 F. App'x 265, 266-67 (6th Cir. 2009) ("The determination of excusable neglect is an equitable one, taking account of all relevant circumstances surrounding the party's omission.")    Here, Ms. Burton has not alleged or addressed – much less met – the excusable neglect standard.

## C. The Court Previously Denied Plaintiff Unopposed Motion to Alter the Same Deadlines Which was Filed Prior to the Deadlines' Expiration.

On May 19, 2022, the Defendants filed an unopposed motion to extend the deadlines for three specific third-party depositions.  D.E. 167.  The Defendants further stated that "[r]escheduling these depositions will necessitate moving certain other deadlines, and the Trustee and Defendants have cooperated to reach an agreement on those revisions as memorialized in the attached proposed order."   *Id.* at Page 1. Defendants submitted a proposed order attempting to extend the discovery deadline until June 30, 2022, as well as attempting to continue the dispositive motion, response, and reply deadlines to July 29, 2022; August 12, 2022; and August 19, 2022, respectively.  D.E. 168.

On May 25, 2022, the Court, via docket order, specifically denied the Defendants' Motion to move the discovery cut-off and declined to alter the deadlines relative to dispositive motions, stating that "the Submitted order at Docket Number 168 will not be entered by the Court as the related motion is denied."  *Id.*

Thus, this Court expressly rejected Defendants' unopposed motion to alter these same deadlines when that request was made prior to the expiration of the deadlines. Plaintiff is asking the Court to reverse that decision now that the Defendants complied with the deadlines, but Plaintiff did not.  Doing so would be fundamentally unjust and highly prejudicial to the parties who sought relief from the deadlines prior to their

expiration, and then complied with the Court's ruling which declined to alter the deadlines.

It is additionally worth noting here that, in an effort to avoid the stringent excusable neglect standard, Ms. Burton repeatedly misrepresents the actual dispositive deadlines throughout her "Motion to Stay." Toward that end, Ms. Burton states that the deadlines are sometime in the future pursuant to "the parties' agreement." This is false as the Trustee is well aware.

In fact, the Trustee appears to be referring to the proposed deadlines that were *rejected* by the Court as part of Defendants' previous unopposed motion. There has never been an "agreement" to move the dispositive deadlines that was accepted or entered by the Court. Rather, Ms. Burton simply did not oppose the proposed deadlines that the Defendants suggested: modified deadlines which were summarily rejected by the Court. The actual dispositive deadlines have never been modified by the Court since their entry over nine (9) months ago. Ms. Burton's representations to the contrary (and what will undoubtedly become claims to have been confused on that point) are transparently false, cynical, and, frankly, sanctionable.

Putting aside the fact that the Plaintiff has failed to even address the excusable neglect standard appliable to her request, the Court should not endorse Ms. Burton's *opposed* attempt at retroactive reprieve from deadlines *that have already expired*, when it previously rejected the same *unopposed* request from the Defendants which was made *prior to the expiration of the deadlines*. Doing so would be fundamentally unjust to the parties who were diligent and conscientious of this Court's orders.

**D.  Plaintiff's Request is Futile, In Any Event.**

Even if the Plaintiff could meet the excusable neglect standard, and even if the same unopposed request had not already been rejected by this Court, granting Plaintiff a retroactive reprieve from the expired deadlines would be futile because all of the material facts in this matter have already been conclusively established in Defendants' favor.

On March 3, 2022, Manookian PLLC served its Second Set of Requests for Admission on the Trustee containing eighty-three separate factual matters requiring the Trustee to admit or deny the truthfulness thereof. On March 28, 2022, the Court ruled that "[t]he Trustee shall respond to Manookian, PLLC's Second Set of Requests for Admission no later than June 1, 2022." D.E. 143 at Para 5. Thus, the Trustee was afforded a full 90 days in which to respond rather than the 30 days provided by Fed. R. Civ. Pro. 36(a)(3).

On June 1, 2022, the Trustee **failed to respond in any fashion** to Manookian, PLLC's Second Set of Requests for Admission as required by the Court. Pursuant to Fed. R. Civ. Pro. 36(a)(3), all of the matters posed within the Second Set of Requests for Admission were therefor conclusively admitted. Although Fed. R. Civ. Pro. 36(b) permits withdrawal or amendment of admissions in certain circumstances and upon motion to the Court, the Trustee never filed any such motion to withdraw or amend her admissions.

Those Requests are attached as Exhibit 1 to this Response, and, taken individually and in their entirety, they completely dispose of Plaintiff's claims. Following Plaintiff's decision not to respond to those Requests by the Court-ordered deadline there simply is nothing left in dispute for the Court to adjudicate. As a result, granting Plaintiff a reprieve

from the previously-expired dispositive motion response deadline would be futile as all of the material facts in this matter have already been established in Defendants' favor.[1]

## IV.   CONCLUSION

For all of the foregoing reasons, the Court should deny Plaintiff's improperly-styled "Motion to Stay."

Date:  July 28, 2022                              Respectfully submitted,

                                                  /s/ John Spragens
                                                  John Spragens (TN Bar No. 31445)
                                                  Spragens Law PLC
                                                  311 22nd Ave. N.
                                                  Nashville, TN 37203
                                                  T: (615) 983-8900
                                                  F: (615) 682-8533
                                                  john@spragenslaw.com

                                                  *Attorney for Manookian PLLC and*
                                                  *Brian Manookian*

---

[1] Plaintiff additionally, variously, and generally asserts that she needs to take more discovery in order to respond to Defendants' Motion for Summary Judgment.  Putting aside the fact that the discovery deadline has expired, the mechanism for such a request is found in Fed. R. Civ. Pro 56(d), which requires a nonmovant making such an assertion to "show by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Unsurprisingly, Ms. Burton has failed to submit any such declaration or affidavit prior to the deadline for doing so, or at any time since.

13

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed July 28, 2022 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*

**EXHIBIT**

**1**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: | Case No, 3:19-bk-07235 |
| | Chapter 7 |
| CUMMINGS MANOOKIAN, PLLC | |
| | Judge Walker |
|     Debtor. | |
| | Adv. Proc. No. 3:20-ap-90002 |
| JEANNE ANN BURTON, TRUSTEE | |
| | |
|     Plaintiff, | |
| | |
| v. | |
| | |
| HAGH LAW, PLLC; AFSOON HAGH; | |
| and MANOOKIAN PLLC, | |
| | |
|     Defendants. | |

**DEFENDANT MANOOKIAN PLLC'S SECOND SET OF
REQUESTS FOR ADMISSION TO THE PLAINTIFF**

Manookian PLLC, through counsel, and propounds the following Requests for Admission upon the Plaintiff.

**<u>REQUESTS FOR ADMISSION</u>**

1.    Admit that Exhibit 1 is an attorney-client agreement between Cummings Manookian and Edward Goodwin and Brett Keefer.

**<u>RESPONSE:</u>**

2.     Admit that Exhibit 1 is a genuine copy of an attorney-client agreement between Cummings Manookian and Edward Goodwin and Brett Keefer.

**<u>RESPONSE:</u>**


3.     Pursuant to <mark>Fed. R. Civ. P. 36(a)(1)(B)</mark>, admit the genuineness of Exhibit 1.

**<u>RESPONSE:</u>**


4.     Admit that on April 19, 2017, Brian Cummings was a member of Cummings Manookian.

**<u>RESPONSE:</u>**


5.     Admit that on April 1, 2017, Brian Cummings had the authority to enter into Exhibit 1 on behalf of Cummings Manookian.

**<u>RESPONSE:</u>**


6.     Admit that on April 1, 2017, Cummings Manookian entered into an Agreement with Brett Keefer and Edward Goodwin whose terms are contained in Exhibit 1.

**<u>RESPONSE:</u>**


7.     Admit that Exhibit 1 was drafted by Cummings Manookian.

**<u>RESPONSE:</u>**

8.     Admit that Exhibit 1 was drafted by Brian Cummings on behalf of Cummings Manookian.

**<u>RESPONSE:</u>**


9.     Admit that Exhibit 1 is a binding contract.

**<u>RESPONSE:</u>**


10.     Admit that Exhibit 1 is binding upon Brett Keefer.

**<u>RESPONSE:</u>**


11.     Admit that Exhibit 1 is binding upon Edward Goodwin.

**<u>RESPONSE:</u>**


12.     Admit that Exhibit 1 is binding upon Cummings Manookian.

**<u>RESPONSE:</u>**


13.     Admit that Cummings Manookian withdrew from representing Brett Keefer.

**<u>RESPONSE:</u>**


14.     Admit that Cummings Manookian withdrew from representing Edward Goodwin.

**<u>RESPONSE:</u>**

3

Case 3:23-cv-00961   Document 6-2   Filed 10/04/23   Page 525 of 662 PageID #: 4119

1897

15.     Admit that Cummings Manookian withdrew from representing Brett Keefer prior to receiving a settlement for Mr. Keefer or Chesta Shoemaker's estate.

**RESPONSE:**


16.     Admit that Cummings Manookian withdrew from representing Edward Goodwin prior to receiving a settlement for Mr. Goodwin or Chesta Shoemaker's estate.

**RESPONSE:**


17.     Admit that Cummings Manookian did not pay any costs or expenses associated with any lawsuit filed on behalf of Brett Keefer, Edward Goodwin, or Chesta Shoemaker's estate.

**RESPONSE:**


18.     Admit that Exhibit 1 is the only written agreement between Cummings Manookian and Brett Keefer.

**RESPONSE:**


19.     Admit that Exhibit 1 is the only written agreement between Cummings Manookian and Edward Goodwin.

**RESPONSE:**


20.     Admit that Exhibit 1 is the only written agreement between Cummings Manookian and any representative of Chesta Shoemaker's estate.

4

**RESPONSE:**

21.     Admit that as of January 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

22.     Admit that as of February 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

23.     Admit that as of February 11, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

24.     Admit that as of March 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

25.     Admit that as of January 1, 2019, Cummings Manookian had no employees.

**RESPONSE:**

26.     Admit that as of February 1, 2019, Cummings Manookian had no employees.

**RESPONSE:**

27.     Admit that as of February 11, 2019, Cummings Manookian had no employees.

**RESPONSE:**

28.     Admit that as of March 1, 2019, Cummings Manookian had no employees.

**RESPONSE:**

29.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in December 2018.

**RESPONSE:**

30.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in January 2019.

**RESPONSE:**

31.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in February 2019.

**RESPONSE:**

32.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in March 2019.

**RESPONSE:**

33.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in April 2019.

**RESPONSE:**

34.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in May 2019.

**RESPONSE:**

35.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in June 2019.

**RESPONSE:**

36.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in July 2019.

**RESPONSE:**

37.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in August 2019.

**RESPONSE:**

7

38. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in September 2019.

**RESPONSE:**

39. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in October 2019.

**RESPONSE:**

40. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in November 2019.

**RESPONSE:**

41. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in December 2019.

**RESPONSE:**

42. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in 2020.

**RESPONSE:**

43. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in 2021.

8

**RESPONSE:**


44.     Admit that Cummings Manookian has made no payments to any employee, as salary or otherwise, in 2022.

**RESPONSE:**


45.     Admit that Brian Cummings never signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**


46.     Admit that Brian Manookian never signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**


47.     Admit that Afsoon Hagh never signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

48.     Admit that no attorney ever signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself or herself as working for or on behalf of Cummings Manookian.

**RESPONSE:**


49.     Admit that no attorney ever entered an appearance in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, that identified himself or herself as working for or on behalf of Cummings Manookian.

**RESPONSE:**


50.     Admit that Brian Cummings did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


51.     Admit that Brian Manookian did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


52.     Admit that Afsoon Hagh did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

53.     Admit that no attorney did any work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


54.     Admit that Cummings Manookian did not correspond or communicate with Brett Keefer or Edward Goodwin in 2019.

**RESPONSE:**


55.     Admit that Cummings Manookian did not correspond or communicate with Brett Keefer or Edward Goodwin in 2020.

**RESPONSE:**


56.     Admit that Cummings Manookian did not correspond or communicate with Brett Keefer or Edward Goodwin in 2021.

**RESPONSE:**


57.     Admit that Cummings Manookian was not involved in negotiating any final terms of settlement in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


58.     Admit that Cummings Manookian is aware of the terms of any settlement in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**


59.     Admit that Exhibit 2 is an attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melissa Fitzgerald.

**RESPONSE:**


60.     Admit that Exhibit 2 is a genuine copy of an attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melissa Fitzgerald.

**RESPONSE:**


61.     Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 2.

**RESPONSE:**


62.     Admit that on May 23, 2018, Brian Manookian was a member of Cummings Manookian.

**RESPONSE:**


63.     Admit that on May 23, 2018, Brian Manookian had the authority to enter into Exhibit 2 on behalf of Cummings Manookian.

**RESPONSE:**

64.     Admit that on May 23. 2018, Cummings Manookian entered into an Agreement with Marty and Melissa Fitzgerald whose terms are contained in Exhibit 2.

**RESPONSE:**

65.     Admit that Exhibit 2 was drafted by Cummings Manookian.

**RESPONSE:**

66.     Admit that Exhibit 2 was drafted by Brian Manookian on behalf of Cummings Manookian.

**RESPONSE:**

67.     Admit that Exhibit 2 is a binding contract.

**RESPONSE:**

68.     Admit that Exhibit 2 is binding upon Marty and Melissa Fitzgerald

**RESPONSE:**

69.     Admit that Exhibit 2 is binding upon Cummings Manookian.

**RESPONSE:**

70.     Admit that Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald.

13

**RESPONSE:**

71.     Admit that Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald prior to receiving any settlement for them.

**RESPONSE:**

72.     Admit that Exhibit 2 is the only written agreement between Cummings Manookian and Marty and Melissa Fitzgerald.

**RESPONSE:**

73.     Admit that Exhibit 3 is a letter from Cummings Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**

74.     Admit that on December 7, 2018, Brian Manookian was a member or partner of Cummings Manookian.

**RESPONSE:**

75.     Admit that on December 7, 2018, Brian Manookian was the sole member of Cummings Manookian.

**RESPONSE:**

76.     Admit that on December 7, 2018, Brian Manookian was authorized to speak on behalf of Cummings Manookian.

**<u>RESPONSE:</u>**


77.     Admit that on December 7, 2018, Brian Manookian was authorized to speak to Marty and Melissa Fitzgerald on behalf of Cummings Manookian on the topic of his and Cummings Manookian's representation of the Fitzgeralds.

**<u>RESPONSE:</u>**


78.     Admit that Exhibit 3 is a letter from Brian Manookian on behalf of Cummings Manookian to Marty and Melissa Fitzgerald.

**<u>RESPONSE:</u>**


79.     Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 3.

**<u>RESPONSE:</u>**


80.     Admit that Exhibit 3 was sent by Brian Manookian to Marty and Melissa Fitzgerald.

**<u>RESPONSE:</u>**


81.     Admit that Exhibit 3 was received by Marty and Melissa Fitzgerald.

**<u>RESPONSE:</u>**

82.     Admit that Exhibit 3 states that Brian Manookian and Cummings Manookian are withdrawing from their representation of Marty and Melissa Fitzgerald.

**RESPONSE:**

83.     Admit that Exhibit 3 requests that Marty and Melissa Fitzgerald obtain another attorney or firm to represent them.

**RESPONSE:**

84.     Admit that Exhibit 3 states that because Cummings Manookian is withdrawing from the representation, it will not be entitled to any portion of an attorney's fee in the matter.

**RESPONSE:**

85.     Admit that Exhibit 3 states that Cummings Manookian specifically disclaims any attorney's fee in the Fitzgerald matter.

**RESPONSE:**

86.     Admit that Cummings Manookian disclaimed any attorney's fee in the Fitzgerald matter via written letter to the Fitzgeralds.

**RESPONSE:**

Date: March 3, 2022                    Respectfully submitted,


                                       _/s/ John Spragens_____
                                       John Spragens (TN Bar No. 31445)
                                       Spragens Law PLC
                                       311 22nd Ave. N.
                                       Nashville, TN 37203
                                       T: (615) 983-8900
                                       F: (615) 682-8533
                                       john@spragenslaw.com

                                       *Attorney for Manookian PLLC and Brian Manookian*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served on Phillip Young as Counsel for the Plaintiff on March 3, 2022.


                                       _/s/ John Spragens_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | |

## REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S UNTIMELY MOTION TO STAY ALREADY EXPIRED DEADLINES

While the Trustee wishes to avoid a back-and-forth with Defendant Manookian, PLLC and non-party Brian Manookian, the lack of candor demonstrated in the Defendants' Response to Plaintiff's Untimely Motion to Stay Already Expired Deadlines (Doc. 214) (the "Response") requires some brief reply. It is obvious that the crux of this disagreement relates to the Defendants' refusal to acknowledge that they agreed to extend all deadlines related to discovery and dispositive motions, which the Court made clear on a conference call with the parties was left to the parties' discretion. As thoroughly explained in the Trustee's Motion to Stay All Deadlines Pending Resolution of Appeal (Doc. 209) (the "Motion"), it was the Defendants who requested that deadlines be extended to accommodate their schedule and the Trustee consented based upon their agreement to continue all deadlines. Now, after getting the scheduling accommodations they requested, the Defendants want to act as if they never agreed to the rescheduled deadlines outlined

in their own motion. Their position today simply cannot be reconciled with their prior statements to the Court in filed pleadings and statements made on the record, upon which the Trustee relied.

The Trustee believes that her Motion addresses all of these issues in such a way that the Court can make a decision regarding its Scheduling Order and the propriety of staying all deadlines pending resolution of the appeal. However, the Defendants' statement in the Response that, "[o]n June 1, 2022, the Trustee failed to respond in any fashion to Manookian, PLLC's Second Set of Requests for Admission" requires response. While the Defendants attach to their Response the referenced Second Set of Requests for Admission, the Response fails to disclose that the Trustee answered those requests for admission on July 1, 2022, the revised deadline upon which the parties agreed. The Trustee attaches hereto a copy of those responses as Exhibit A. Moreover, in response to the email attaching the Plaintiff's Responses to Defendant Manookian PLLC's Second Set of Requests for Admission to the Plaintiff, Attorney John Spragens certified that the Defendants' prior discovery responses were still accurate. *See* July 1, 2022 email attached hereto as Exhibit B. This is significant as the Court's prior order required that certification be made by June 1, 2022, but the parties agreed that this deadline would be extended to July 1, 2022. Mr. Spragens' email is further evidence that the Defendants and their counsel knew that they had agreed to continue all deadlines consistent with their representations to the Trustee and the Court.

Respectfully submitted,


/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing has been sent to all parties requesting notice via CM/ECF Electronic Filing on the 28th day of July, 2022.

/s/ Phillip G. Young, Jr.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>CUMMINGS MANOOKIAN, PLLC<br><br>    Debtor.<br><br>JEANNE ANN BURTON, TRUSTEE<br><br>    Plaintiff,<br><br>v.<br><br>HAGH LAW, PLLC; AFSOON HAGH;<br>and MANOOKIAN PLLC,<br><br>    Defendants. | Case No, 3:19-bk-07235<br>Chapter 7<br><br>Judge Walker<br><br>Adv. Proc. No. 3:20-ap-90002 |

**PLAINTIFF'S RESPONSES TO DEFENDANT MANOOKIAN PLLC'S
SECOND SET OF REQUESTS FOR ADMISSION TO THE PLAINTIFF**

Comes Now, Plaintiff, Jeanne Ann Burton, Trustee ("Trustee"), and for her Responses to Defendant Manookian PLLC's Second Set of Requests for Admission to Plaintiff (the "Discovery"), states as follows:

**GENERAL OBJECTIONS**

1.    Trustee's Responses to the Discovery shall not constitute a waiver of her objections as to admissibility.

2.    Trustee objects to the Discovery to the extent it exceeds the scope of permissible discovery.

1

3.      Trustee objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

4.      Trustee objects to the Discovery to the extent that it seeks information about which discovery is ongoing, and Trustee reserves the right to supplement her Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.

<u>**REQUESTS FOR ADMISSION**</u>

1.      Admit that Exhibit 1 is an attorney-client agreement between Cummings Manookian and Edward Goodwin and Brett Keefer.

<u>**RESPONSE:**</u>

Admitted.

2.      Admit that Exhibit 1 is a genuine copy of an attorney-client agreement between Cummings Manookian and Edward Goodwin and Brett Keefer.

<u>**RESPONSE:**</u>

Admitted.

3.      Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 1.

<u>**RESPONSE:**</u>

Admitted.

4.      Admit that on April 19, 2017, Brian Cummings was a member of Cummings Manookian.

<u>**RESPONSE:**</u>

Admitted.

5.    Admit that on April 1, 2017, Brian Cummings had the authority to enter into Exhibit 1 on behalf of Cummings Manookian.

**RESPONSE:**

Admitted.

6.    Admit that on April 1, 2017, Cummings Manookian entered into an Agreement with Brett Keefer and Edward Goodwin whose terms are contained in Exhibit 1.

**RESPONSE:**

Admitted.

7.    Admit that Exhibit 1 was drafted by Cummings Manookian.

**RESPONSE:**

Admitted.

8.    Admit that Exhibit 1 was drafted by Brian Cummings on behalf of Cummings Manookian.

**RESPONSE:**

Admitted.

9.    Admit that Exhibit 1 is a binding contract.

**RESPONSE:**

Admitted.

10.    Admit that Exhibit 1 is binding upon Brett Keefer.

**RESPONSE:**

Admitted.

11.    Admit that Exhibit 1 is binding upon Edward Goodwin.

**RESPONSE:**

3

Admitted.

12.     Admit that Exhibit 1 is binding upon Cummings Manookian.

**RESPONSE:**

Admitted.

13.     Admit that Cummings Manookian withdrew from representing Brett Keefer.

**RESPONSE:**

Denied.  While a complaint was filed on behalf of Brett Keefer by Cummings Manookian, it never filed a motion to withdraw as Brett Keefer's counsel nor notified the Court in any way that it was withdrawing.  Moreover, the Trustee has never seen any written correspondence in which Cummings Manookian allegedly notified Brett Keefer of its withdrawal.

14.     Admit that Cummings Manookian withdrew from representing Edward Goodwin.

**RESPONSE:**

Denied.  The Trustee has never seen any written correspondence in which Cummings Manookian allegedly notified Brett Keefer of its withdrawal.

15.     Admit that Cummings Manookian withdrew from representing Brett Keefer prior

to receiving a settlement for Mr. Keefer or Chesta Shoemaker's estate.

**RESPONSE:**

Denied for the same reasons as explained in response to Request 13 above.

16.     Admit that Cummings Manookian withdrew from representing Edward Goodwin

prior to receiving a settlement for Mr. Goodwin or Chesta Shoemaker's estate.

**RESPONSE:**

Denied for the same reasons as explained in response to Request 14 above.

17.     Admit that Cummings Manookian did not pay any costs or expenses associated

with any lawsuit filed on behalf of Brett Keefer, Edward Goodwin, or Chesta Shoemaker's estate.

**RESPONSE:**

4

Admitted.

18.     Admit that Exhibit 1 is the only written agreement between Cummings Manookian and Brett Keefer.

**RESPONSE:**

Admitted.

19.     Admit that Exhibit 1 is the only written agreement between Cummings Manookian and Edward Goodwin.

**RESPONSE:**

Admitted.

20.     Admit that Exhibit 1 is the only written agreement between Cummings Manookian and any representative of Chesta Shoemaker's estate.

**RESPONSE:**

Admitted.

21.     Admit that as of January 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

Admitted.

22.     Admit that as of February 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

Admitted.

23.     Admit that as of February 11, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

Admitted.

24.     Admit that as of March 1, 2019, Cummings Manookian had no members or partners

with active licenses to practice law.

**RESPONSE:**

Admitted.

25.     Admit that as of January 1, 2019, Cummings Manookian had no employees.

**RESPONSE:**

The Trustee objects to this Request on the basis that she cannot determine the Request's definition
of "employee".  To the extent "employee" means salaried employees, the Trustee admits that this
Request is accurate.  To the extent that "employee" means agent, the Trustee denies that this
Request is accurate as Afsoon Hagh was an employee and/or agent of Cummings Manookian,
inasmuch as she received insurance and healthcare benefits from Cummings Manookian, she was
filing pleadings on behalf of Cummings Manookian, receiving mail at Cummings Manookian's
offices, using a Cummings Manookian email address, using a Cummings Manookian telephone
number, working on behalf of clients subject to Cummings Manookian engagement agreements,
and had full access to Cummings Manookian's electronic files.

26.     Admit that as of February 1, 2019, Cummings Manookian had no employees.

**RESPONSE:**

The Trustee objects to this Request on the basis that she cannot determine the Request's definition
of "employee".  To the extent "employee" means salaried employees, the Trustee admits that this
Request is accurate.  To the extent that "employee" means agent, the Trustee denies that this
Request is accurate as Afsoon Hagh was an employee and/or agent of Cummings Manookian,
inasmuch as she received insurance and healthcare benefits from Cummings Manookian, she was
filing pleadings on behalf of Cummings Manookian, receiving mail at Cummings Manookian's
offices, using a Cummings Manookian email address, using a Cummings Manookian telephone
number, working on behalf of clients subject to Cummings Manookian engagement agreements,
and had full access to Cummings Manookian's electronic files.

27.     Admit that as of February 11, 2019, Cummings Manookian had no employees.

**RESPONSE:**

The Trustee objects to this Request on the basis that she cannot determine the Request's definition
of "employee".  To the extent "employee" means salaried employees, the Trustee admits that this
Request is accurate.  To the extent that "employee" means agent, the Trustee denies that this

Request is accurate as Afsoon Hagh was an employee and/or agent of Cummings Manookian, inasmuch as she received insurance and healthcare benefits from Cummings Manookian, she was filing pleadings on behalf of Cummings Manookian, receiving mail at Cummings Manookian's offices, using a Cummings Manookian email address, using a Cummings Manookian telephone number, working on behalf of clients subject to Cummings Manookian engagement agreements, and had full access to Cummings Manookian's electronic files.

28.     Admit that as of March 1, 2019, Cummings Manookian had no employees.

**RESPONSE:**

The Trustee objects to this Request on the basis that she cannot determine the Request's definition of "employee". To the extent "employee" means salaried employees, the Trustee admits that this Request is accurate. To the extent that "employee" means agent, the Trustee denies that this Request is accurate as Afsoon Hagh was an employee and/or agent of Cummings Manookian, inasmuch as she received insurance and healthcare benefits from Cummings Manookian, she was filing pleadings on behalf of Cummings Manookian, receiving mail at Cummings Manookian's offices, using a Cummings Manookian email address, using a Cummings Manookian telephone number, working on behalf of clients subject to Cummings Manookian engagement agreements, and had full access to Cummings Manookian's electronic files.

29.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in December 2018.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

30.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in January 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

31.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in February 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

32.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in March 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

33.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in April 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

34.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in May 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

35.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in June 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

36.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in July 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that

it did not pay for benefits for its agents.

37. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in August 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

38. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in September 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

39. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in October 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

40. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in November 2019.

**RESPONSE:**

Admitted.

41. Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in December 2019.

**RESPONSE:**

Admitted.

42. Admit that Cummings Manookian made no payments to any employee, as salary

or otherwise, in 2020.

**RESPONSE:**

Admitted.

43.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in 2021.

**RESPONSE:**

Admitted.

44.     Admit that Cummings Manookian has made no payments to any employee, as salary or otherwise, in 2022.

**RESPONSE:**

Admitted.

45.     Admit that Brian Cummings never signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

The Trustee objects to this Request as it is not relevant to the action against Manookian, PLLC. Notwithstanding this objection, this Request is admitted.

46.     Admit that Brian Manookian never signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

Admitted.

47.     Admit that Afsoon Hagh never signed a pleading in *Shoemaker v. VUMC*, Davidson

County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

The Trustee objects to this Request as it is not relevant to the action against Manookian, PLLC. Notwithstanding this objection, it is admitted that Afsoon Hagh never "signed" a pleading in the *Shoemaker* case identifying herself as working for or on behalf of Cummings Manookian, but denied inasmuch as Afsoon Hagh's signature block in that case identified her as working on behalf of Cummings Manookian through March 2019, though all pleadings were "signed" by Brian Cummings.

48.     Admit that no attorney ever signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself or herself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

Denied for the reasons stated in response to Request 47 above.

49.     Admit that no attorney ever entered an appearance in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, that identified himself or herself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

Denied for the reasons stated in response to Request 47 above.

50.     Admit that Brian Cummings did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

The Trustee objects to this Request as it is not relevant to the action against Manookian, PLLC. Notwithstanding this objection, this Request is denied. Brian Cummings testified at his deposition that he did work on the *Shoemaker* case as a member of Cummings Manookian.

51.     Admit that Brian Manookian did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

Denied. Brian Cummings and Brian Manookian each testified that they did work on the *Shoemaker* case as members of Cummings Manookian.

52.     Admit that Afsoon Hagh did no work for or on behalf of Cummings Manookian in

*Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

The Trustee objects to this Request as it is not relevant to the action against Manookian, PLLC. Notwithstanding this objection, this Request is denied. Her signature block in the *Shoemaker* case identified her as a representative of Cummings Manookian through at least March 2019.

53.     Admit that no attorney did any work for or on behalf of Cummings Manookian in

*Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

Denied for the reasons stated in response to Requests 49-52 above.

54.     Admit that Cummings Manookian did not correspond or communicate with Brett

Keefer or Edward Goodwin in 2019.

**RESPONSE:**

Admitted that it did not correspond with Brett Keefer or Edward Goodwin in 2019. The Trustee cannot admit or deny whether it communicated verbally with either of them in 2019.

55.     Admit that Cummings Manookian did not correspond or communicate with Brett

Keefer or Edward Goodwin in 2020.

**RESPONSE:**

Admitted.

56.     Admit that Cummings Manookian did not correspond or communicate with Brett

Keefer or Edward Goodwin in 2021.

**RESPONSE:**

Admitted.

57.     Admit that Cummings Manookian was not involved in negotiating any final terms of settlement in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

Admitted.

58.     Admit that Cummings Manookian is aware of the terms of any settlement in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

Denied to the extent that "Cummings Manookian" refers to the Trustee's knowledge, as the fiduciary representative for the estate of Cummings Manookian. The Trustee is not aware of the terms of any settlement in the *Shoemaker* case.

59.     Admit that Exhibit 2 is an attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melissa Fitzgerald.

**RESPONSE:**

Denied. Brian Manookian testified that the letter attached as Exhibit 2 was never signed by either Marty or Melissa Fitzgerald; rather, a previous version of an attorney-client agreement was signed by the Fitzgeralds.

60.     Admit that Exhibit 2 is a genuine copy of an attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melissa Fitzgerald.

**RESPONSE:**

Denied. Brian Manookian testified that the letter attached as Exhibit 2 was never signed by either Marty or Melissa Fitzgerald; rather, a previous version of an attorney-client agreement was signed by the Fitzgeralds.

61.     Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 2.

**RESPONSE:**

Denied. Brian Manookian testified that the letter attached as Exhibit 2 was never signed by either Marty or Melissa Fitzgerald; rather, a previous version of an attorney-client agreement was signed by the Fitzgeralds.

13

62.     Admit that on May 23, 2018, Brian Manookian was a member of Cummings Manookian.

**RESPONSE:**

Admitted.

63.     Admit that on May 23, 2018, Brian Manookian had the authority to enter into Exhibit 2 on behalf of Cummings Manookian.

**RESPONSE:**

Admitted, though the Trustee denies that Exhibit 2 is the controlling document for the aforementioned reasons.

64.     Admit that on May 23. 2018, Cummings Manookian entered into an Agreement with Marty and Melissa Fitzgerald whose terms are contained in Exhibit 2.

**RESPONSE:**

Denied as stated.  Brian Manookian testified that the letter attached as Exhibit 2 was never signed by either Marty or Melissa Fitzgerald; rather, a previous version of an attorney-client agreement was signed by the Fitzgeralds.  It is, however, admitted that the terms of the controlling Agreement are identical to the terms included in Exhibit 2 except for provisions regarding fee sharing (Paragraph 2 of the "Contingency Fee" section).

65.     Admit that Exhibit 2 was drafted by Cummings Manookian.

**RESPONSE:**

Admitted.

66.     Admit that Exhibit 2 was drafted by Brian Manookian on behalf of Cummings Manookian.

**RESPONSE:**

Admitted.

67.     Admit that Exhibit 2 is a binding contract.

**RESPONSE:**

14

Denied. Brian Manookian testified that the letter attached as Exhibit 2 was never signed by either Marty or Melissa Fitzgerald; rather, a previous version of an attorney-client agreement was signed by the Fitzgeralds

68.    Admit that Exhibit 2 is binding upon Marty and Melissa Fitzgerald

**RESPONSE:**

Denied. Brian Manookian testified that the letter attached as Exhibit 2 was never signed by either Marty or Melissa Fitzgerald; rather, a previous version of an attorney-client agreement was signed by the Fitzgeralds

69.    Admit that Exhibit 2 is binding upon Cummings Manookian.

**RESPONSE:**

Denied. Brian Manookian testified that the letter attached as Exhibit 2 was never signed by either Marty or Melissa Fitzgerald; rather, a previous version of an attorney-client agreement was signed by the Fitzgeralds

70.    Admit that Cummings Manookian withdrew from representing Marty and Melissa

Fitzgerald.

**RESPONSE:**

Denied. Cummings Manookian filed a complaint on behalf of the Fitzgeralds, never filed a notice of withdrawal in that matter, never filed a notice of substitution of counsel in that matter, and never took any other step to notify the Court that Cummings Manookian had withdrawn.

71.    Admit that Cummings Manookian withdrew from representing Marty and Melissa

Fitzgerald prior to receiving any settlement for them.

**RESPONSE:**

Denied. Cummings Manookian filed a complaint on behalf of the Fitzgeralds, never filed a notice of withdrawal in that matter, never filed a notice of substitution of counsel in that matter, and never took any other step to notify the Court that Cummings Manookian had withdrawn.

72.    Admit that Exhibit 2 is the only written agreement between Cummings Manookian

and Marty and Melissa Fitzgerald.

**RESPONSE:**

Denied. The original written agreement, which was not attached to these Requests, is the only written agreement between Cummings Manookian and the Fitzgeralds.

73.     Admit that Exhibit 3 is a letter from Cummings Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**

Admitted.

74.     Admit that on December 7, 2018, Brian Manookian was a member or partner of Cummings Manookian.

**RESPONSE:**

Admitted.

75.     Admit that on December 7, 2018, Brian Manookian was the sole member of Cummings Manookian.

**RESPONSE:**

Admitted.

76.     Admit that on December 7, 2018, Brian Manookian was authorized to speak on behalf of Cummings Manookian.

**RESPONSE:**

Admitted.

77.     Admit that on December 7, 2018, Brian Manookian was authorized to speak to Marty and Melissa Fitzgerald on behalf of Cummings Manookian on the topic of his and Cummings Manookian's representation of the Fitzgeralds.

**RESPONSE:**

Admitted.

78.     Admit that Exhibit 3 is a letter from Brian Manookian on behalf of Cummings Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**

Admitted.

79.     Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 3.

**RESPONSE:**

Admitted.

80.     Admit that Exhibit 3 was sent by Brian Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**

Admitted.

81.     Admit that Exhibit 3 was received by Marty and Melissa Fitzgerald.

**RESPONSE:**

The Trustee can neither admit nor deny Request 81.  She has attempted to depose Marty Fitzgerald on this and other topics, having twice issued subpoenas for Mr. Fitzgerald's testimony.  The first time the deposition was rescheduled at the request of the Defendants' counsel due to their alleged unavailability to attend the deposition.  The second time Mr. Fitzgerald, through John Spragens (counsel for Manookian, PLLC), lodged certain objections to the subpoena.  The Trustee is currently working to procure Mr. Fitzgerald's testimony on this issue.

82.     Admit that Exhibit 3 states that Brian Manookian and Cummings Manookian are withdrawing from their representation of Marty and Melissa Fitzgerald.

**RESPONSE:**

Admitted.

83.     Admit that Exhibit 3 requests that Marty and Melissa Fitzgerald obtain another attorney or firm to represent them.

**RESPONSE:**

Admitted.

84.     Admit that Exhibit 3 states that because Cummings Manookian is withdrawing from the representation, it will not be entitled to any portion of an attorney's fee in the matter.

**RESPONSE:**

Admitted.

85.     Admit that Exhibit 3 states that Cummings Manookian specifically disclaims any attorney's fee in the Fitzgerald matter.

**RESPONSE:**

Admitted.

86.     Admit that Cummings Manookian disclaimed any attorney's fee in the Fitzgerald matter via written letter to the Fitzgeralds.

**RESPONSE:**

Admitted that Exhibit 3 states that Cummings Manookian was disclaiming any attorney's fees, but denied that Exhibit 3 has any actual legal impact on whether or not Cummings Manookian is entitled to legal fees in the Fitzgerald matter.

Respectfully submitted,

/s/ Phillip G. Young
Phillip G. Young (TN 021087)
THOMPSON BURTON, PLLC
6100 TOWER CIRCLE, SUITE 200
FRANKLIN, TENNESSEE 37067
(615)-465-6008
phillip@thompsonburton.com

*Special Counsel for Jeanne Ann Burton, Trustee*

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served

via United States Mail, first class, postage prepaid, and by electronic mail to the following persons:

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203
john@spragenslaw.com

This 1st day of July, 2022.

*/s/ Phillip G. Young, Jr.*
Phillip G. Young, Jr.

19

**From:** **John Spragens** john@spragenslaw.com
**Subject:** Re: Burton v. Hagh et al. - Discovery Responses
**Date:** July 1, 2022 at 6:56 PM
**To:** Phillip Young phillip@thompsonburton.com

JS

Phillip,

As you were previously advised, the Defendants certify that their prior discovery responses are accurate.

Best,
John

On Fri, Jul 1, 2022 at 4:27 PM Phillip Young <phillip@thompsonburton.com> wrote:

> John,
>
> Please see attached.
>
>
>
> ## Thompson Burton PLLC
> *Redefining the Art of Law.*
>
> _____
>
> **Phillip Young**
> One Franklin Park
> 6100 Tower Circle, Suite 200
> Franklin, TN 37067
> Direct Dial: (615) 465-6008
> phillip@thompsonburton.com
> www.thompsonburton.com
>
> *Please refer to our email disclaimer page for important disclosures regarding this electronic communication.

--
John Spragens
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
(615) 983-8900

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:20-ap-90002** |
| | ) | |
| **HAGH LAW, PLLC; AFSOON HAGH;** | ) | |
| **MANOOKIAN, PLLC; and FIRST-** | ) | |
| **CITIZENS BANK & TRUST** | ) | |
| **COMPANY,** | ) | |
| Defendants. | ) | |
| | ) | |

### NOTICE OF INTENT TO FILE MOTION FOR PARTIAL SUMMARY JUDGMENT

Jeanne Ann Burton, chapter 7 trustee herein (the "Trustee"), hereby gives notice that she intends to file a motion for partial summary judgment upon conclusion of discovery in this case. As thoroughly outlined in the Trustee's Motion to Stay All Deadlines Pending Resolution of Appeal (Doc. 209) (the "Motion to Stay"), the parties agreed to extend the deadline for filing motions for summary judgment until July 29, 2022, and the deadline for responding to those motions until August 12, 2022. However, as discussed in the Motion to Stay and in the Motion to Compel Marty Fitzgerald to Comply with Subpoena for Testimony (Doc. 2010) (the "Motion to Compel"), discovery has not been completed and the Court has indicated that it would not consider any discovery disputes until the conclusion of a pending appeal. Therefore, the Trustee hereby notifies the Court and all parties in interest that she intends to file a motion for partial

summary judgment in this matter once discovery has been completed as contemplated by all pretrial orders filed in this matter.

Dated: July 29, 2022

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
Email: phillip@thompsonburton.com

Special Counsel for Truste

2

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was served via the Court's electronic filing system upon all parties having entered appearances therein on this the 29th day of July, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **CUMMINGS MANOOKIAN, PLLC,** | )    **Case No. 3:19-bk-07235** |
|      Debtor. | )    **Chapter 7** |
| | )    **Judge Walker** |
| **JEANNE ANN BURTON, TRUSTEE,** | ) |
|      Plaintiff, | ) |
| | ) |
| v. | )    **Adv. Proc. No. 3:20-ap-90002** |
| | ) |
| **HAGH LAW, PLLC; AFSOON** | ) |
| **HAGH; MANOOKIAN, PLLC; and** | ) |
| **FIRST-CITIZENS BANK & TRUST** | ) |
| **COMPANY,** | ) |
|      Defendants. | ) |
| | ) |

## PLAINTIFF'S OBJECTION TO DEFENDANTS AFSOON HAGH, HAGH LAW, PLLC AND MANOOKIAN PLLC'S JOINT MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF

Comes now Jeanne Ann Burton, Chapter 7 Trustee for Cummings Manookian, PLC and Plaintiff herein ("Trustee" or "Plaintiff"), and for her objection to Defendants Afsoon Hagh, Hagh Law, PLLC and Manookian PLLC's Joint Motion for Summary Judgment and Memorandum in Support Thereof (the "Motion") (Doc. 188), states as follows:

## INTRODUCTION

The Motion is both premature and unsupported. It is premature because it was filed before the conclusion of discovery. As has been well documented by other pleadings filed in this case (including a pending Motion to Compel), the Defendants by and through counsel John Spragens (who purports in the Motion to represent all Defendants, contrary

to filed notices of appearance in this case) sought to delay and ultimately prevent discovery in this case. Every pretrial order issued by this Court in this case set deadlines for filing and responding to motions for summary judgment *after* the close of discovery. Discovery has yet to be completed in this case and, thus, the Motion is premature.

The Motion is also unsupported, both procedurally and factually. The Motion was purportedly filed on behalf of all Defendants (Afsoon Hagh, Hagh Law, PLLC and Manookian PLLC) by John Spragens, who has entered a notice of appearance and has repeatedly appeared on behalf of Manookian PLLC in this matter. Afsoon Hagh and Hagh Law, PLLC are represented by separate counsel – Craig Gabbert, who has filed a notice of appearance and made numerous appearances on their behalf. Mr. Gabbert did not sign the Motion, he did not file a statement joining in the Motion, nor was Mr. Spragens substituted as counsel for Afsoon Hagh and Hagh Law, PLLC prior to the filing of the Motion. As such, the Motion cannot be deemed a proper request on behalf of represented parties Afsoon Hagh and Hagh Law, PLLC.

Neither is the Motion factually supported. The Motion rests primarily upon: (1) requests for admission which the Defendants ask the Court to deem admitted, despite timely denials by the Trustee; and (2) conclusory statements made in affidavits of Brian Manookian and Afsoon Hagh which are largely contradicted by other evidence discovered in this case. In fact, the evidence produced in this case to date (though discovery is incomplete) shows that the Trustee, not the Defendants, is entitled to summary judgment on several counts in the Complaint.[1] The uncontroverted evidence not only fails to support the Defendants' Motion, it affirmatively proves that the Motion must be denied.

---

[1] As indicated in a notice filed by the Trustee on July 29, 2022 (Doc. 216), the Trustee expects to file a motion for partial summary judgment at the conclusion of discovery in this matter.

## **FACTS**

In support of their Motion, the Defendants rely upon a number of "undisputed" facts that are, in reality, very much in dispute. The Defendants filed this Motion before the Trustee had responded to Manookian PLLC's Second Set of Requests for Admission to the Plaintiff ("Second RFA"), and before she had revised her responses to Manookian PLLC's First Set of Requests for Admission to the Plaintiff ("First RFA").[2] Accordingly, the Defendants' reliance on many allegedly "undisputed" facts is misplaced.

Attached hereto as Exhibit 1 are the Trustee's responses to the Defendants' Joint Statement of Undisputed Facts, which illustrate that many of the facts upon which the Defendants rely are disputed. Attached as Exhibit 2 and Exhibit 3, respectively, are the Plaintiff's Second Amended Responses to Manookian PLLC's First Set of Requests for Admission to the Plaintiff ("Responses to First RFA") and the Plaintiff's Responses to Defendant Manookian PLLC's Second Set of Requests for Admission to the Plaintiff ("Responses to Second RFA"), both of which were served on Manookian PLLC on July 1, 2022.

As demonstrated by the Trustee's responses to the Statement of Undisputed Facts and her Responses to First RFA and Responses to Second RFA, many material facts upon which the Motion is based are disputed. For example:

- The Motion states: "In cases where Cummings Manookian withdrew, the firm would only be entitled to recover its advanced costs, and the client

---

[2] As extensively briefed elsewhere in this case and no doubt well known to the Court by this point, the parties agreed to extend the date by which the Trustee was to respond to the Second Set of Requests for Admission and was to update her discovery from June 1, 2022 to July 1, 2022. This was done as an accommodation to the Defendants, who asked that certain depositions be postponed due to their travel.

3

would not be required to pay Cummings Manookian an attorney's fee." Motion, p. 4. The Motion more specifically claims that the Fitzgerald and Shoemaker engagement letters provided that Cummings Manookian was not entitled to fees if it withdrew. Motion, pp. 5, 7. For these statements, the Defendants rely upon a declaration of Brian Manookian, Responses to First RFA 25, the Fitzgerald Engagement Agreement, and the Shoemaker Engagement Agreement. However, the Trustee's Responses to First RFA deny these assertions, citing to the provisions in the engagement letters themselves. The engagement letters between the Debtor and the Fitzgerald and Shoemaker clients, which are attached hereto as collective ==Exhibit 4,== show that the engagement letters are silent on payment of fees when Cummings Manookian withdrew from representation. Further, as discussed below, the Trustee disputes that the Debtor actually withdrew from any representation.

- The Motion states, "By January 1, 2019, Cummings Manookian had no employees and no members or partners with an active license to practice law." Motion, p.5. It reiterates that statement, later alleging that the Debtor had no members with an active law license and no employees on February 11, 2019. Motion, p. 7. For that statement, the Defendants rely upon a declaration of Brian Manookian, Responses to Second RFA 21, 23, 25, and 27, and a portion of the Trustee's deposition. While the Trustee admitted in Responses to Second RFA 21 and 25 that the Debtor had no partners or members with an active law license as of January 1, 2019 and that it had no

salaried employees as of that date, she denied that it had no employees to the extent that word means "agent" of the firm. The proof shows that Afsoon Hagh was an employee or agent of the Debtor in that she received healthcare insurance and malpractice insurance benefits from the Debtor and she had full access to the Debtors' confidential electronic files, which only employees had. Transcript of Deposition of Brian Cummings, attached hereto as Exhibit 5, pp. 42:21-43:1; 44:10-44:20; 92:25-94:5. After January 1, 2019, the proof shows that Ms. Hagh filed pleadings on behalf of the Debtor; she used the Debtor's mailing address, telephone number, and email address after that date; and she continued working on behalf of clients pursuant to the terms of the Debtor's engagement letters with those clients. See selected pleadings from the Fitzgerald matter, attached hereto as Exhibit 6 and selected pleadings from the Shoemaker matter, attached hereto as Exhibit 7. See also Transcript of the Deposition of Afsoon Hagh, attached hereto as Exhibit 8[3], p. 44:14-44:17 (admitting that Hagh Law, PLLC had no signed engagement letter with the Fitzgeralds); 2021 engagement letter between Hagh Law, PLLC and Shoemaker plaintiffs, attached hereto as Exhibit 12[4] (showing that Afsoon Hagh and Hagh Law,

---

[3] The Trustee will be filing a motion to file the Deposition of Afsoon Hagh under seal. The Defendants asked that the deposition transcript be marked "confidential". It is the Trustee's understanding that the Defendants' position is that some of her testimony may be subject to attorney-client and/or work product privilege. The Defendants have a copy of this transcript and are not prejudiced by the request to late-file this exhibit under seal.

[4] Exhibit 12 is a letter dated April 26, 2021 to Brett Keefer on Hagh Law letterhead, that contains the "Re" line: Updated Legal Representation and Engagement. This document has been marked as confidential by the Defendants. As such, the Trustee will be filing a motion to file this exhibit under seal. The Defendants have a copy of this letter and are not prejudiced by the request to late-file this exhibit under seal.

5

PLLC operated under the terms of the Cummings Manookian engagement letter between 2018-2021).

- The Motion states, "Thus, on December 7, 2021, Cummings Manookian withdrew from its representation prior to obtaining any recovery for the Fitzgeralds, and the firm acknowledged the contractual provision barring it from receiving an attorney's fee." Motion, p. 6. The Motion further claims that the Trustee has admitted that fact. Id. For support, the Defendants rely upon the declaration of Brian Manookian, Responses to Second RFA 70, 71, 84, 85, and 86, and excepts from the Trustee's deposition. The proof shows otherwise. While the Trustee admits that Mr. Manookian (on behalf of the Debtor) drafted a letter to the Fitzgeralds on December 7, 2018 evidencing an intent to withdraw and purportedly waiving rights to the payment of fees, the Responses to Second RFA 70 and 71 deny that the Debtor in fact withdrew. In fact, documents filed by both Brian Manookian and Afsoon Hagh after December 7, 2018 in the Fitzgerald case demonstrate that the Debtor never withdrew as the Fitzgeralds' counsel. Attached hereto as collective Exhibit 6 are selected pleadings from that case that show that Brian Manookian represented to the court that Afsoon Hagh, whom he listed as a Cummings Manookian attorney, would continue representing the Fitzgeralds and the Ms. Hagh did, in fact, continue to represent the Fitzgeralds after December 7, 2018 on behalf of Cummings Manookian (as demonstrated by her signature block). Furthermore, without the testimony of Mr. Fitzgerald, the Trustee cannot say whether the December 7, 2018

letter was ever delivered to him nor whether there were subsequent conversations with Mr. Fitzgerald clarifying or negating the message of the letter.

- Likewise, with regard to the Shoemaker case, the Defendants allege that the Debtor withdrew from representing the plaintiffs at an early stage. The Motion states, "Cummings Manookian withdrew from representing Mr. Keefer before the lawsuit was filed as a result of Mr. Cummings' departure from the firm and Mr. Manookian's suspension from the practice of law." Motion, p. 7. It goes on, "[n]o attorney ever entered an appearance in the Shoemaker case on behalf of Cummings Manookian; no attorney ever signed a pleading in the Shoemaker case on behalf of Cummings Manookian; and no attorney did any work in the Shoemaker case on behalf of Cummings Manookian." Id. at pp. 7-8. To support these statements, the Defendants rely upon the declaration of Brian Manookian, Responses to Second RFA 13, 23, 27, 48, 49, and 53, along with a brief portion of the transcript from the Trustee's deposition. In the Responses to Second RFA 23, 27, 48, 49 and 53, the Trustee denies all relevant portions of these allegations. In fact, the pleadings filed in the Shoemaker case itself shows that Afsoon Hagh made an appearance on behalf of the plaintiffs in the Shoemaker case, as an attorney of Cummings Manookian. Attached hereto as Exhibit 7 is a copy of the complaint filed in the Shoemaker case, in which Afsoon Hagh's Cummings Manookian signature block plainly appears. Moreover, none of the Defendants have ever produced any correspondence

with the Shoemaker plaintiffs in which Cummings Manookian allegedly notified them of the firm's withdrawal.

- The Motion next makes some claims about Manookian PLLC's use of the Debtor's property which are very much disputed: "Manookian PLLC is not and has never been in possession, custody, or control of any property belonging to Cummings Manookian." Motion, p. 9 (citing only the declaration of Brian Manookian as support). "Manookian PLLC has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian." Id. (citing the declaration of Brian Manookian as support). The evidence proves these statements to be untrue. Manookian PLLC utilized the office space located at 45 Music Square West, Nashville, Tennessee (the former location of the Debtor) as evidenced by its letterhead, shown in the letter attached hereto as Exhibit 9. In its use of the office space at 45 Music Square West, Manookian PLLC also used the office furniture and equipment owned by the Debtor. Brian Cummings testified that Cummings Manookian made substantial purchases of office furnishings (see Brian Cummings Deposition Transcript, Exhibit 5, pp. 25:1-25:25; 102:11-103:16), which is verified by the personalty tax returns of Cummings Manookian (see attached Exhibit 10) and by invoices supplied by Brian Cummings as a late-filed exhibit to his deposition. See attached Exhibit 11. Those exhibits show that Cummings Manookian owned approximately $75,000 of personal property, which were utilized by Manookian PLLC when it occupied the office space at 45 Music Square

West.  Manookian PLLC also used the telephone numbers 615-266-3333 and 615-266-0250 (as seen in Exhibit 9[5]), that Brian Cummings testified were Cummings Manookian telephone numbers and for which he thought Cummings Manookian paid the telephone bill.  Brian Cummings Deposition Transcript, Exhibit 5, pp. 34:19-36:7.

- Similarly, the Motion makes statements about the use of certain property by Afsoon Hagh and Hagh Law, PLLC which are controverted by the evidence. The Defendants contend: "Neither Afsoon Hagh or Hagh Law ("the Hagh Parties") has ever received any property of any kind belonging to Cummings Manookian."  Complaint, p. 9.  "The Hagh Parties are not and have never been in possession, custody, or control of any property belonging to Cummings Manookian."  Id at p. 10.  "Hagh Law has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian."[6]  Id.  The Defendants rely exclusively upon the declaration of Afsoon Hagh as support for these statements.  The evidence, however, contradicts each of these statements.  Afsoon Hagh (individually and on behalf of Hagh Law) received at least $590,000.00 in proceeds from the Fitzgerald settlement which the Trustee believes belongs to the Debtor's estate.  See Exhibit H to Docket No. 2, showing that Afson

---

[5] Exhibit 9 is a letter dated August 23, 2019 to Brett Keefer on Manookian PLLC letterhead, that contains the "Re" line: Updated Legal Representation and Engagement.  This document has been marked as confidential by the Defendants.  As such, the Trustee will be filing a motion to file this exhibit under seal. The Defendants have a copy of this letter and are not prejudiced by the request to late-file this exhibit under seal.

[6] Interestingly, the Motion alleges only that "Hagh Law" (as opposed to the "Hagh Parties") never used the Debtor's property.  Apparently, even the Defendants do not contend that Afsoon Hagh never used property belonging to the Debtors.

Hagh and Hagh Law were ordered to hold in trust only $760,000 of the $1,350,000 received from the Fitzgerald settlement. The pleadings filed by Ms. Hagh after the suspension of Mr. Manookian's law license demonstrate that she was using office space (at least as a mailing address), telephone numbers, and email addresses that belonged to the Debtor. See Exhibits 6 and 7. Hagh Law, PLLC likewise used office space (at least for a mailing address) that belonged to the Debtor, as demonstrated by its letterhead. See Exhibit 12. Thus, each of these statements contained in the Motion are refuted by the evidence.

In addition to its mischaracterization of facts and its misrepresentation of which of those facts are uncontested, the Motion also omits a number of highly relevant facts that were discovered during the formal discovery that has taken place to date. Following the withdrawal of Brian Cummings from the Debtor's membership, Brian Manookian and Afsoon Hagh continued the Debtor's operations. While the Defendants claim that Afsoon Hagh was never an "employee" of the Debtor, the evidence clearly and unequivocally shows that she was an agent of the firm. The Debtor's engagement letters held Ms. Hagh out as one of Cummings Manookian's attorneys (see Fitzgerald Engagement Letter, Exhibit 6); the Debtor held Ms. Hagh out as "Senior Attorney" in its marketing efforts (see Lawyers.com Listing, attached hereto as Exhibit 13); Ms. Hagh was granted unlimited access to the firm's confidential electronic files (see Exhibit 5, Brian Cummings Deposition Transcript, pp. 92:25-94:5); and she received health insurance benefits and malpractice insurance benefits (see id, pp. 42:21-43:1; 44:10-44:20).

10

When Mr. Manookian was suspended from the practice of law in December 2018, the Debtor's business continued on unfettered. Ms. Hagh continued using the Debtor's name, email address, mailing address and telephone number (Exhibits 6 and 7), and she continued filing pleadings in cases on behalf of Cummings Manookian (Id). In fact, other than pro bono clients, Ms. Hagh to this day has not filed a complaint for a client that originated from any source other than Cummings Manookian. (Exhibit 8, Hagh Deposition Transcript pp. 25:24-26:16). Ms. Hagh even continued operating under the terms of the engagement letters executed with Cummings Manookian through at least 2021. Deposition Transcript of Afsoon Hagh, Exhibit 8, p. 44:14-44:17; Exhibit 12. Ronette McCarthy, who was the referring attorney in the Fitzgerald case, testified that the Fitzgerald plaintiffs were told that it would be business as usual despite Mr. Manookian's suspension. See Ronette McCarthy Deposition Transcript, attached hereto as Exhibit 14, pp. 54:21-55:2.

Thus, after Mr. Manookian was suspended from the practice of law, Afsoon Hagh continued representing Cummings Manookian's clients, from Cummings Manookian's offices, utilizing Cummings Manookian's email address and telephone numbers, pursuant to the terms of Cummings Manookian's engagement agreements. A few months later, she formed Hagh Law PLLC and Mr. Manookian formed Manookian PLLC, but nothing changed: same lawyers, same clients, same offices, same furniture and equipment, and same telephone numbers (but with new law firm names).

### STANDARD FOR SUMMARY JUDGMENT

A court may grant summary judgment on a matter only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." *Fed. R. Civ. P 56(a)*. Fed. R. Civ. P. 56 is made applicable in these proceedings pursuant to Fed. R. Bankr. P. 7056.

At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Hargrave v. Radbill*, 2013 Bankr. LEXIS 2883 (Bankr. N.J. 2013) (citing *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## APPLICATION

The Court should deny the Defendants' Motion for three reasons: (1) the Trustee cannot present facts essential for a complete and thorough opposition to the Motion until she has been given time to complete discovery; (2) Afsoon Hagh and Hagh Law, PLLC have not properly moved the Court for summary judgment; and (3) the uncontroverted facts of this case do not support the Defendants' request for summary judgment.

### A.  The Court Should Dismiss the Motion Pursuant to FRCP 56(d).

Federal Rule of Civil Procedure 56, made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides in part:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. Pro. 56(d).  Attached hereto as Exhibit 15 is the affidavit of Jeanne Ann Burton, Trustee and Plaintiff in this matter.  As demonstrated by the affidavit, it is necessary for the Trustee to depose Marty Fitzgerald in order to appropriately respond to

the Defendants' Motion.  Burton Affidavit ¶ 3.  The Trustee explains in her affidavit why

Mr. Fitzgerald's testimony is essential to responding to the Motion:

> More specifically, this deposition is necessary for me to discover whether Mr. Fitzgerald was informed by any of the Defendants (in writing or orally) that Cummings Manookian, PLC intended to withdraw from representing him and his wife in a wrongful death suit, whether any of the Defendants instructed him to hire new counsel, whether he in fact interviewed new counsel, and what (if anything) he was told about the future involvement of Cummings Manookian, PLC, Afsoon Hagh, Hagh Law, PLLC and/or Manookian PLC in his lawsuit. These facts are potentially relevant in responding to portions of the Motion.  Moreover, this deposition is necessary in order for me to respond to Paragraph 27 of the Defendants' Joint Statement of Undisputed Material Facts.

Burton Affidavit ¶ 4.

Ms. Burton further explained the good faith steps she took to conduct this

deposition prior to the filing of the Motion:

> I took every reasonable step possible to take Mr. Fitzgerald's deposition prior to the July 29, 2022 deadline for filing motions for summary judgment and before the August 12, 2022 deadline for filing responses thereto.  On May 5, 2022, my counsel issued a subpoena for Mr. Fitzgerald's testimony on May 27, 2022 at my request.  No timely objection was filed to that first subpoena.  The week before that deposition was to occur, counsel for the Defendants asked me to reschedule all third-party depositions, including Mr. Fitzgerald's, because Brian Manookian and Afsoon Hagh were scheduled to be out of state.  As an accommodation, I agreed to reschedule the depositions so long as other pretrial deadlines were likewise rescheduled.  The Defendants agreed.  I then directed my counsel to issue another subpoena for Mr. Fitzgerald's testimony, which was served on Mr. Fitzgerald on June 7, 2022.   That subpoena required Mr. Fitzgerald's appearance at a rescheduled deposition via Zoom on June 24, 2022.  On June 21, 2022, Attorney John Spragens sent an email to my counsel objecting to the subpoena on behalf of Mr. Fitzgerald.  On July 22, 2022, I filed a motion to compel Mr. Fitzgerald's compliance with the subpoena. The Court has not set a hearing to consider the motion to compel.

Burton Affidavit ¶¶ 5-7.

The Trustee's affidavit is sworn before a notary public, signed under penalty of perjury, sets forth the reason why Mr. Fitzgerald's deposition is needed in order to respond to this Motion, and details the steps taken by the Trustee to timely take that deposition. The affidavit meets all requirements of Rule 56(d) and the cases interpreting it. *See CareToLive v. FDA,* 631, F.3d 336, 345 (6th Cir. 2011). Having produced an affidavit that satisfied Rule 56(d), the Court may: (1) deny the Motion; (2) defer ruling on the Motion; (3) allow the Trustee adequate time to complete discovery; or (4) issue any other appropriate order. Because the deposition of Marty Fitzgerald was delayed, and ultimately blocked, with the assistance of Defendants and their counsel, the Trustee would ask the Court to simply deny the Motion. Alternatively, the Trustee would ask that Court to set the deadline for responding to the Motion, thereby allowing the Trustee to amend this Objection, approximately thirty days after the close of discovery (which is a date yet to be determined).

**B. Afsoon Hagh and Hagh Law, PLLC are not Proper Parties to the Motion.**

The Motion was not properly filed by Afsoon Hagh and/or Hagh Law, PLLC and the Court should therefore deny those parties' request for summary judgment. The Motion is styled "Defendants Afsoon Hagh, Hagh Law, PLLC, and Manookian PLLC's Joint Motion for Summary Judgment and Memorandum in Support Thereof". Doc. 188, p.1. The first sentence of the Motion reads, "Pursuant to Fed. R. Civ. P. 56, Afsoon Hagh, Hagh Law, PLLC, and Manookian PLLC move for summary judgment on all claims in this matter." Id. The pleading was signed by attorney John Spragens as follows:

Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC and*
*Brian Manookian*

*Co-counsel for Afsoon Hagh and Hagh*
*Law PLLC for purposes of Summary*
*Judgment only*

Id at p. 21. The joint statement of facts filed contemporaneously with the Motion was styled, "Defendants Afsoon Hagh, Hagh Law, PLLC, and Manookian PLLC's Joint Statement of Undisputed Facts". Doc. 188-1, p. 1. Its first sentence reads, "Pursuant to Fed. R. Civ. P. 56, Afsoon Hagh, Hagh Law, PLLC, and Manookian PLLC submit this Statement of Undisputed Material Facts in Support of their Joint Motion for Summary Judgment." Id. In John Spragens' signature on the Joint Statement of Undisputed Facts, he did not purport to be representing either Afsoon Hagh or Hagh Law, PLLC:

Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC and*
*Brian Manookian*

Id at p. 23.

John Spragens has appeared on multiple occasions on behalf of Defendant Manookian PLLC (and more recently has alleged to appear on behalf of Brian Manookian, who has no standing in this adversary proceeding). Craig Gabbert has filed a notice of appearance, and has continuously signed pleadings and made court appearances, on behalf of both Afsoon Hagh and Hagh Law, PLLC. *See* Doc. 28. While Mr. Spragens purports to have filed the Motion as "Co-counsel for Afsoon Hagh and Hagh Law, PLLC for purposes of Summary Judgment only", he has not substituted himself as counsel in place of Mr. Gabbert. Mr. Gabbert did not sign the Motion on behalf of Afsoon Hagh and Hagh Law, PLLC, nor did Mr. Gabbert file a joinder on their behalf.

Fed. R. Civ. P. 11(a) states that, "Every pleading, written motion, and other paper must be **signed by at least one attorney of record in the attorney's name**—or by a party personally if the party is unrepresented. . . The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." (emphasis added). This rule is mandatory and "courts must strike unsigned documents unless the filing party promptly corrects them." *Marcure v. Lynn*, 992 F.3d 625, 627 (7th Cir. 2021). Furthermore, the purpose of the signature requirement is "to hold [the] attorney of record who signs his individual name to strict accountability." *United States use of Foster Wheeler Corp. v. American Surety Co.*, 25 F. Supp. 225, (D.N.Y. 1938).

When there are multiple parties involved in the litigation it is vital that each party signs the pleadings and motions submitted to the court. "In pro se action involving several individual plaintiffs, each individual plaintiff was required to sign complaint, and needed to represent and appear on behalf of themselves in case; **plaintiffs were each required to sign all pleadings and papers submitted to court, in manner consistent with their**

**obligations under Fed. R. Civ. P. 11**." G4 Concept Mktg. v. Mastercard Int'l, 670 F. Supp. 2d 197, 2009 U.S. Dist. LEXIS 109212 (W.D.N.Y. 2009) (emphasis added).

Here, because Afsoon Hagh or Hagh Law, PLLC have separate counsel of record, Mr. Spragens lacked authority to submit a motion on behalf of those parties under FRCP 11(a). Accordingly, the Court should disregard the Motion as it pertains to Afsoon Hagh and Hagh Law, PLLC. Alternatively, because Mr. Spragens did not purport to represent Afsoon Hagh and Hagh Law, PLLC in the filing of the Statement of Undisputed Facts, the Court should strike that pleading as to Afsoon Hagh and Hagh Law, PLLC, leaving their portions of the Motion without factual support.

### C. The Undisputed Facts of this Case do not Warrant Summary Judgment in Favor of the Defendants.

Even if the Court were to consider the Motion at this time, despite Rule 56(d) and Rule 11(a), the Defendants are not entitled to summary judgment. At best for the Defendants, there are disputed facts that require a trial to determine their validity and relevance; at worst for the Defendants, the undisputed facts actually point to summary judgment in favor of the Trustee.

As noted above, the Defendants' Motion is highly dependent on alleged "admissions" by the Trustee which were not admitted. The Defendants also conspicuously avoid state court pleadings that they themselves filed, documents they maintained, their own testimony, and the testimony of Brian Cummings, a former partner in the Debtor's business. When given access to a full view of the facts, instead of the Defendants' mischaracterized "facts", it is obvious that the Defendants are not entitled to summary judgment on any count in the Trustee's Complaint.

1. <u>The facts show that the Trustee does have a claim to the Fitzgerald fees.</u>

Cummings Manookian had a valid engagement letter with Mr. and Ms. Fitzgerald to represent them in a wrongful death suit. ==Exhibit 4.== In fact, Cummings Manookian had the *only* valid engagement letter to represent them in that suit. Transcript of Deposition of Afsoon Hagh, ==Exhibit 8==, p. 44:14-44:17.

Tennessee Supreme Court Rule 8, Rule 1.5 requires that, for a lawyer or law firm to collect a contingency fee in the state of Tennesse, the "contingent fee agreement **shall be in a writing signed by the client** and shall state the method by which the fee is to be determined." Tenn. Sup. Ct. R. 8, Rule 1.5(c) (emphasis added). The Fitzgerald plaintiffs signed only one contingency fee agreement – one with the Debtor, Cummings Manookian. Therefore, only the Debtor has a legal claim to a contingency fee in the case; any other party claiming a portion of the fee must prove that they are equitably entitled to a portion of the fee payable to the Debtor based upon the reasonable value of their services. *See Johnson v. Hunter,* 2001 Tenn. App. LEXIS 795, *9, *18-19 (Tenn. Ct. App. 2001).

Further, the pleadings in the Fitzgerald case itself clearly demonstrate that Cummings Manookian provided services to the plaintiffs in that case. The case was filed by Cummings Manookian and, when Brian Manookian's license was suspended, he notified the court that Afsoon Hagh would continue representing the plaintiffs. ==Exhibit 6== That notice was signed by Brian Manookian, but included Afsoon Hagh's name in the signature block as an attorney with Cummings Manookian. Id. In fact, Afsoon Hagh continued filing documents in the name of Cummings Manookian, utilizing Cummings Manookian's email address, mailing address, and telephone number. Id. At some point,

Afsoon Hagh dropped the Cummings Manookian firm name but never filed a notice of substitution of counsel, address change, nor did she obtain a new engagement agreement with the Fitzgeralds. Transcript of Deposition of Afsoon Hagh, Exhibit 8, pp. 44:14-44:17; 66:10-66:25.

These facts are more than sufficient to support the claim that the Trustee is entitled to recover the Fitzgerald legal fees.

2. The facts show that the Trustee does have a claim to the Shoemaker fees.

Similarly, the Trustee is entitled to recover some portion of the Shoemaker fees, but the Court must conduct a hearing to determine what amount is owing to the Debtor's estate. Like the Fitzgerald case, the Shoemaker plaintiffs signed a written engagement letter with Cummings Manookian. Exhibit 4. Months later, they signed an engagement letter with Manookian PLLC, though Manookian PLLC has disclaimed any interest in those fees. Exhibits 9 and 12. Years later, they signed an engagement letter with Hagh Law, PLLC, apparently at the behest of John Edwards, the newly retained co-counsel for the Shoemaker plaintiffs. Exhibit 12.

Like the Fitzgerald case, the complaint lists Cummings Manookian as counsel of record. Exhibit 7. Again, Afsoon Hagh used Cummings Manookian's name, mailing address, email address, and telephone number for some time and never filed a notice of substitution of counsel or even an address change. Id.

On these facts, the Court must determine what fees are payable to the Debtor, versus what fees may be payable to co-counsel Hagh Law, Cummings Law, and John Edwards. However, there are ample disputed facts to warrant a hearing on that matter.

3.   The facts support the Trustee's claim for conversion.

There are simple facts that create a triable cause of action for conversion.   For example, without any payment, Afsoon Hagh, Hagh Law, PLLC and Manookian PLLC used, to the exclusion of other parties, the office space, furniture and equipment, telephone numbers, and email addresses of the Debtor.   In fact, none of these assets have been turned over to the Trustee.   Furthermore, with respect to Afsoon Hagh and Hagh Law, PLLC, they have received at least $590,000 in funds from the Fitzgerald case settlement that legally and rightfully belongs to Cummings Manookian's estate pursuant to the written and signed engagement letter.   Summary judgment is also inappropriate as to this cause of action.

4.   The facts support the Trustee's claim for fraudulent transfer under both state and bankruptcy law.

The evidence supporting the Trustee's claims for fraudulent transfer is substantially similar to the evidence that supports her cause of action for conversion.   All of the assets detailed in the paragraph above were taken at a time when Cummings Manookian was insolvent, or the transfer of those assets rendered it insolvent.   Furthermore, the timing of the transfer, the formation of the new firm entities, and the imposition of sanctions against Cummings Manookian (as evidenced by the documents attached to Claim No. 5 in this Court's file) are sufficient to create a triable question regarding the Defendants' intent to hinder, delay or defraud creditors.

5.   The Trustee agrees to dismiss the claim for tortious interreference with contract.

The Trustee does not intend to pursue her the fourth claim for relief in her Complaint, a claim for tortious interference.   Based upon the discovery completed to date,

20

and as more fully explained elsewhere herein, the evidence shows that the agreement between the Debtor and the Fitzgerald plaintiffs was never terminated. Brian Manookian and Afsoon Hagh continued providing services (albeit allegedly through their new entities, Manookian PLLC and Hagh Law, PLLC) consistent with the engagement letter between the Fitzgerald parties; that engagement agreement was never cancelled nor was a new engagement agreement entered into between the Fitzgeralds and Manookian PLLC or Hagh Law, PLLC. Manookian PLLC and Hagh Law, PLLC were mere continuations of the Debtor; they serviced the same clients as the Debtor, with the same attorneys, from the same location, with the same telephone numbers, with the same email addresses, utilizing the same furniture and equipment. After discovery, the Trustee has determined that those new entities did not necessarily "interfere" with the Debtor's contract with the Fitzgeralds; rather, they simply fulfilled the Debtor's duties to the Fitzgeralds as a continuation of the Debtor. Accordingly, the Trustee abandons this cause of action and agrees to its dismissal.

      6.   <u>The facts support the Trustee's claims for successor liability and alter ego.</u>

      The Trustee believes that all of her causes of action have validity, but this is perhaps the strongest of them. Tennessee recognizes the traditional rule that when one company transfers some or all of its assets to another company the successor is not liable for the debts of the predecessor except under certain enumerated circumstances. *Johnson v. Tanner-Peck, L.L.C.*, No. W2009-02454-COA-R3CV, 2011 WL 1330777, at 13 (Tenn. Ct. App. Apr. 8, 2011). Under the traditional rule, the circumstances under which a successor corporation may be held liable for the debts of the predecessor are: (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is

merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts....(5) the absence of adequate consideration for the sale or transfer. *Johnson v. Tanner-Peck, L.L.C.*, No. W2009-02454-COA-R3CV, 2011 WL 1330777, at 13 (Tenn. Ct. App. Apr. 8, 2011).

In this case, Manookian PLLC and Hagh Law, PLLC were the <u>mere continuation</u> of the Debtor, thus creating successor liability. A corporation will be deemed a mere continuation of the previous corporation and, therefore, liable for the previous corporation's obligations if: (1) a corporation transfers its assets; (2) the acquiring corporation pays less than adequate consideration for the assets; (3) the acquiring corporation continues the previous corporations business; (4) both corporations share at least one common officer who was instrumental in the transfer; and (5) the previous corporation is left incapable of paying its creditors. *Precision Gears, Inc. v. Safari Enterprises, LLC*, No. 3:22-MC-00005, 2022 WL 2654231, at 4 (M.D. Tenn. July 8, 2022).   Each of these factors is met in this case.

Manookian PLLC and Hagh Law, PLLC are also the alter egos of the Debtor.  In Tennessee, a corporation is presumptively treated as a distinct entity, separate from its shareholders, officers, and directors; however, a corporation's separate identity may be disregarded or pierced "upon a showing that it is a sham or a dummy or where necessary to accomplish justice." *S. Steel & Concrete, Inc. v. S. Steel & Constr., LLC*, No. W202000475COAR3CV, 2022 WL 1115033, at 8 (Tenn. Ct. App. Apr. 14, 2022). Furthermore, the determination of whether to disregard the corporate fiction depends on the special circumstances of each case, and the matter is particularly within the discretion

of the trial court. *Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn. 1985).

No one factor is conclusive in determining whether to disregard a corporate entity; rather, Tennessee courts rely upon a combination of factors ("Allen Factors") in deciding to disregard the corporate veil. *S. Steel & Concrete, Inc.* at 8. These factors are: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the non-issuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms-length relationships among related entities. *Id.* at 8; *FDIC v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984).

In *S. Steel & Concrete, Inc.*, the court found that two construction companies were the alter-egos of each other. 2022 WL 1115033 at 11. In applying the *Allen* factors, the court found that the companies used the same location as a workspace and contact address. *Id.* at 10. The companies also used the same bank and insurance company (describing the use of the same office or business location"). *Id.* Next, when SS Construction ultimately stopped doing business in 2016, SS Concrete assumed the remaining work on the FedEx Project and used the equipment, employees, and supervision

previously used by SS Construction (describing the employment of the same employees or attorneys). *Id.* Additionally, the court also noted that the companies had a subcontract agreement where SS Concrete would subcontract back to SS Construction. *Id.* Moreover, both companies shared a "key employee" who made the significant management and contracting decisions for both companies, and even simultaneously served in his managerial role for both companies for a period of time (describing the use of the corporation as an instrumentality or business conduit for an individual or another corporation). *Id.* Accordingly, the court concluded that the two companies were one and the same, and therefore were alter egos. *Id.* at 11.

In this case, Brian Manookian and Afsoon Hagh were the two key employees of the Debtor; they are also the key employees (and, indeed, the only employees) of Manookian PLLC and Hagh Law, PLLC. The Debtor operated at 45 Music Square West, Nashville, Tennessee, as did Manookian PLLC and Hagh Law, PLLC. The new firm worked on the Debtor's cases, with Afsoon Hagh even admitting that her only paying litigation cases were those that originated with the Debtor. For at least some period of time, Manookian PLLC and Hagh Law, PLLC utilized the Debtor's telephone numbers and email addresses. Neither Manookian PLLC nor Hagh Law, PLLC gave any consideration to the Debtor for the use of its property. Finally, the two new firms even operated under the terms of the Debtor's engagement letters in some cases.

Far beyond being entitled to summary judgment, the undisputed facts of this case establish presumptively that Hagh Law, PLLC and Manookian PLLC are the mere continuation and the alter ego of Cummings Manookian, PLC.

## CONCLUSION

For the reasons set forth herein, the Trustee prays that this Court deny the Defendants' Motion and grant any other further relief that the Court deems equitable and appropriate under the circumstances.

Dated this 12th day of August, 2022

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr. (Tn. Bar No. 21078)
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
Phone: 615-465-6015
phillip@thompsonburton.com

Special Counsel for the Trustee

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF on all parties having made an appearance herein, including counsel for the Defendants.

This 12th day of August, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

25

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

IN RE: )
)
CUMMINGS MANOOKIAN, PLLC, ) Case No. 3:19-bk-07235
    Debtor. ) Chapter 7
) Judge Walker
JEANNE ANN BURTON, TRUSTEE, )
    Plaintiff, )
)
v. ) Adv. Proc. No. 3:20-ap-90002
)
HAGH LAW, PLLC; AFSOON HAGH; )
MANOOKIAN, PLLC; and FIRST- )
CITIZENS BANK & TRUST )
COMPANY, )
    Defendants. )
)

## PLAINTIFF'S RESPONSE TO DEFENDANTS AFSOON HAGH, HAGH LAW, PLLC AND MANOOKIAN PLLC'S JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS

Comes now Jeanne Ann Burton, Chapter 7 Trustee for Cummings Manookian, PLC and Plaintiff herein ("Trustee" or "Plaintiff"), by and through special counsel, and submits the following responses to the statement of undisputed facts (Doc. 188-1) (the "Defendants' Statement of Undisputed Facts") submitted by the Defendants:

    1.    Cummings Manookian was formed as a professional limited liability company to provide legal services.

**SOURCE: Declaration of Brian Manookian, ¶ 2; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 15-16; Deposition of Trustee Jeanne Ann Burton, Page 5:13-15.**

**RESPONSE:**

    Admitted

2. Cummings Manookian was comprised of two members: Brian Cummings and Brian Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 3; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 13-14.**

**RESPONSE:**

Admitted

3. Cummings Manookian specialized in representing Plaintiffs in medical malpractice cases.

**SOURCE: Declaration of Brian Manookian, ¶ 4; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 17.**

**RESPONSE:**

Admitted

4. Cummings Manookian primarily accepted cases on a contingency fee basis whereby Cummings Manookian was only paid if it recovered monies for their client.

**SOURCE: Declaration of Brian Manookian, ¶ 5; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 18.**

**RESPONSE:**

Admitted

5. Cummings Manookian entered into engagement agreements with its clients that laid out the duties and rights of both parties to the contract.

**SOURCE: Declaration of Brian Manookian, ¶ 6; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 21 (admitting the same as to "some clients" and claiming an inability to admit or deny as "all of Cummings Manookian's clients").**

**RESPONSE:**

Admitted

6.     Cummings Manookian utilized a standard form engagement agreement whose content and terms with respect to the rights and duties of the parties generally did not vary from case to case ("the CM Engagement Agreement").

**SOURCE: Declaration of Brian Manookian, ¶ 7; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 24 (claiming an inability to admit or deny, but admitting that "most of the engagement agreements provided to Trustee appear to be based on upon a standard form").**

**RESPONSE:**

Admitted for purposes of this Motion only.

7.     The CM Engagement Agreement included terms regarding the parties' rights in the event that the client terminated Cummings Manookian, as well as terms defining the parties' rights in the event that Cummings Manookian withdrew from the engagement.

**SOURCE: Declaration of Brian Manookian, ¶ 8; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 22-23.**

**RESPONSE:**

Admitted

8.     The CM Engagement Agreement required the client to pay Cummings Manookian an attorney's fee in the event that the client terminated Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 9; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 24.**

**RESPONSE:**

Admitted

9.     The CM Engagement Agreement did not require the client to pay Cummings

3

Manookian an attorney's fee in the event Cummings Manookian withdrew from the representation.

**SOURCE: Declaration of Brian Manookian, ¶ 10; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 25 (stating that the Trustee is unable to admit or deny and identifying Brian Manookian as the individual with knowledge on the issue).**

**RESPONSE:**

Denied. As stated in the Plaintiff's Second Amended Responses to Manookian PLLC's First Set of Requests for Admission to the Plaintiff ("First RFA Responses"), Exhibit 2,[1] Paragraph 25, the Cummings Manookian engagement agreements provided to the Trustee require the payment of advanced costs but are silent on payment of fees. See Exhibit 4. The Trustee believes that Tennessee common law governs the right to payment of attorney fees under this circumstance.

10. Brian Cummings withdrew from Cummings Manookian effective September of 2018.

**SOURCE: Declaration of Brian Manookian, ¶ 11.**

**RESPONSE:**

Admitted

11. Brian Manookian was suspended from the practice of law effective December of 2018.

**SOURCE: Declaration of Brian Manookian, ¶ 12. Deposition of Trustee Jeanne Ann Burton, Page 16:8-10.**

**RESPONSE:**

Admitted

12. By January 1, 2019, Cummings Manookian had no employees and no members or

---

[1] Unless otherwise noted, all references to Exhibits shall refer to exhibits to the Plaintiff's Objection to Defendants Afsoon Hagh, Hagh Law, PLLC and Manookian PLLC's Joint Motion for Summary Judgment and Memorandum in Support Thereof (the "Objection"), filed contemporaneously herewith.

4

partners with an active license to practice law.

**Declaration of Brian Manookian, ¶ 13; Manookian PLLC Second Set of Requests for Admission, No. 21, 25 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>; Deposition of Trustee Jeanne Ann Burton, Page 20:16-21:1.**

**RESPONSE:**

It is admitted that Cummings Manookian had no members or partners with an active license to practice law by January 1, 2019. For the reasons stated in Paragraph 25 of the Plaintiff's Responses to Defendant Manookian PLLC's Second Set of Requests for Admission to the Plaintiff (the "Second RFA Responses"), Exhibit 3, Paragraph 25, the Trustee denies that Cummings Manookian had no employees by January 1, 2019. Afsoon Hagh was an employee and/or agent of Cummings Manookian, inasmuch as she received malpractice insurance and healthcare benefits from Cummings Manookian, she was filing pleadings on behalf of Cummings Manookian, receiving mail at Cummings Manookian's offices, using a Cummings Manookian email address, using a Cummings Manookian telephone number, working on behalf of clients subject to Cummings Manookian engagement agreements, and had full access to Cummings Manookian's electronic files. See Exhibits 5 (pp. 42:21-43:1; 44:10-44:20; 92:25-94:5), 6, 7 and 8 (p.44:14-44:17).

13.      On May 23, 2018, Cummings Manookian entered into an Agreement with Marty and Melissa Fitzgerald whose terms are contained in Exhibit 2 ("the Fitzgerald Engagement Agreement").

**SOURCE: Declaration of Brian Manookian, ¶ 14; Manookian PLLC Second Set of Requests for Admission, No. 64 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>; Deposition of Trustee Jeanne Ann Burton, Page 45:2-15.**

**RESPONSE:**

Admitted for purposes of this Motion only.

14.      Exhibit 2 is a genuine copy of the attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melisa Fitzgerald.

**SOURCE: Declaration of Brian Manookian, ¶ 15; Manookian PLLC Second Set of Requests for Admission, No. 59, 60 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>).**

**RESPONSE:**

Admitted for purposes of this Motion only.

15.     On May 23, 2018 Brian Manookian was a member of Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 16; Manookian PLLC Second Set of Requests for Admission, No. 62 (admitted pursuant to Fed. R. Civ. P. 36(3)(a); Deposition of Trustee Jeanne Ann Burton, Page 45:2-15.**

**RESPONSE:**

Admitted

16.     On May 23, 2018, Brian Manookian had the authority to enter into the Fitzgerald

Engagement Agreement with Marty and Melissa Fitzgerald on behalf of Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 17; Manookian PLLC Second Set of Requests for Admission, No. 63 (admitted pursuant to Fed. R. Civ. P. 36(3)(a); Deposition of Trustee Jeanne Ann Burton, Page 45:2-15.**

**RESPONSE:**

Admitted

17.     The Fitzgerald Engagement Agreement was drafted by Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 18; Manookian PLLC Second Set of Requests for Admission, No. 65 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)).**

**RESPONSE:**

Admitted

18.     The Fitzgerald Engagement Agreement is a binding contract upon Cummings

Manookian, Marty Fitzgerald, and Melissa Fitzgerald.

**SOURCE: Declaration of Brian Manookian, ¶ 19; Manookian PLLC Second Set of Requests for Admission, No. 67-69 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)).**

**RESPONSE:**

Admitted

19. The Fitzgerald Engagement Agreement is the only written agreement between Cummings Manookian and Marty and Melissa Fitzgerald.

**SOURCE: Declaration of Brian Manookian, ¶ 20; Manookian PLLC Second Set of Requests for Admission, No. 72 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>).**

**RESPONSE:**

Admitted for purposes of this Motion only.

20. The Fitzgerald Engagement Agreement states that if the Fitzgeralds terminate Cummings Manookian as their lawyers, Cummings Manookian will be entitled to some portion of any recovered attorney's fee.

**SOURCE: Declaration of Brian Manookian, ¶ 21; Exhibit 2, Fitzgerald Engagement Agreement.**

**RESPONSE:**

Admitted

21. The Fitzgerald Engagement Agreement states that if Cummings Manookian withdraws from representing the Fitzgeralds, Cummings Manookian will be entitled to advanced expenses.

**SOURCE: Declaration of Brian Manookian, ¶ 22; Exhibit 2, Fitzgerald Engagement Agreement.**

**RESPONSE:**

Admitted

22. The Fitzgerald Engagement Agreement does not provide for, or require, the payment of an attorney's fee to Cummings Manookian in the event Cummings Manookian withdraws from representing the Fitzgeralds.

7

**SOURCE: Declaration of Brian Manookian, ¶ 23; Exhibit 2, Fitzgerald Engagement Agreement.**

**RESPONSE:**

Denied. As stated in the Plaintiff's Second Amended Responses to Manookian PLLC's First Set of Requests for Admission to the Plaintiff ("First RFA Responses"), Exhibit 2, Paragraph 25, the Cummings Manookian engagement agreements provided to the Trustee require the payment of advanced costs but are silent on payment of fees. See Exhibit 4. The Trustee believes that Tennessee common law governs the right to payment of attorney fees under this circumstance.

23. On December 7, 2018, Brian Manookian was the sole member of Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 24; Manookian PLLC Second Set of Requests for Admission, No. 74-75 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)).**

**RESPONSE:**

Admitted

24. On December 7, 2018, Brian Manookian was authorized to speak to Marty and Melissa Fitzgerald on behalf of Cummings Manookian on the topic of his and Cummings Manookian's representation of the Fitzgeralds.

**SOURCE: Declaration of Brian Manookian, ¶ 25; Manookian PLLC Second Set of Requests for Admission, No. 77 (admitted pursuant to Fed. R. Civ. P. 36(3)(a); Deposition of Trustee Jeanne Ann Burton, Pages 54:7-10; 55:10- 16.**

**RESPONSE:**

Admitted

25. Exhibit 3 ("the Fitzgerald Withdrawal Letter") is a letter from Cummings Manookian to Marty and Melissa Fitzgerald dated December 7, 2018.

**SOURCE: Declaration of Brian Manookian, ¶ 26; Manookian PLLC Second Set of Requests for Admission, No. 73 (admitted pursuant to Fed.**

**R. Civ. P. 36(3)(a)** Deposition of Trustee Jeanne Ann Burton, Pages 54:7-10; 55:10-16.

**RESPONSE:**

    Admitted

26.     The Fitzgerald Withdrawal Letter was sent by Brian Manookian to Marty and Melissa Fitzgerald.

**SOURCE: Declaration of Brian Manookian, ¶ 27; Manookian PLLC Second Set of Requests for Admission, No. 80 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)** Deposition of Trustee Jeanne Ann Burton, Pages 54:7-10; 55:10-16.

**RESPONSE:**

    Admitted

27.     The Fitzgerald Withdrawal Letter was received by Marty and Melissa Fitzgerald.

**SOURCE: Declaration of Brian Manookian, ¶ 28; Manookian PLLC Second Set of Requests for Admission, No. 81 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)).**

**RESPONSE:**

    The Trustee can neither admit nor deny this statement until she has had an opportunity to depose Marty Fitzgerald.

28.     The Fitzgerald Withdrawal Letter states that Brian Manookian and Cummings Manookian are withdrawing from their representation of Marty and Melissa Fitzgerald.

**SOURCE: Declaration of Brian Manookian, ¶ 29; Manookian PLLC Second Set of Requests for Admission, No. 82 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)).**

**RESPONSE:**

    Admitted

29.     The Fitzgerald Withdrawal Letter requests that Marty and Melissa Fitzgerald obtain another attorney or firm to represent them.

**SOURCE: Declaration of Brian Manookian, ¶ 30; Manookian PLLC Second Set of Requests for Admission, No. 83 (admitted pursuant to** ==**Fed. R. Civ. P. 36(3)(a)**==**).**

**RESPONSE:**

Admitted

30.     Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald.

**SOURCE: Declaration of Brian Manookian, ¶ 31; Manookian PLLC Second Set of Requests for Admission, No. 70 (admitted pursuant to** ==**Fed. R. Civ. P. 36(3)(a)**==**).**

**RESPONSE:**

Denied.  As stated in Second RFA Responses, Exhibit 3, Paragraph 70, Cummings Manookian filed a complaint on behalf of the Fitzgeralds, never filed a notice of withdrawal in that matter, never filed a notice of substitution of counsel in that matter, and never took any other step to notify the Court that Cummings Manookian had withdrawn.  See also Exhibits 6 and 8 (pp. 44:14-44:17; 66:10-66:25).

31.     Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald prior to receiving any settlement for them.

**SOURCE: Declaration of Brian Manookian, ¶ 32; Manookian PLLC Second Set of Requests for Admission, No. 71 (admitted pursuant to** ==**Fed. R. Civ. P. 36(3)(a)**==**).**

**RESPONSE:**

Denied.  As stated in Second RFA Responses, Exhibit 3, Paragraph 71, Cummings Manookian filed a complaint on behalf of the Fitzgeralds, never filed a notice of withdrawal in that matter, never filed a notice of substitution of counsel in that matter, and never took any other step to notify the Court that Cummings Manookian had withdrawn.   See also Exhibits 6 and 8 (pp. 44:14-44:17; 66:10-66:25).

32.     The Fitzgerald Withdrawal Letter states that because Cummings Manookian is

withdrawing from the representation, it will not be entitled to any portion of an attorney's fee in the matter.

**SOURCE: Declaration of Brian Manookian, ¶ 33; Manookian PLLC Second Set of Requests for Admission, No. 84 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>; Deposition of Trustee Jeanne Ann Burton, Pages 54:7-10; 55:10-16.**

**RESPONSE:**

Admitted

33.    The Fitzgerald Withdrawal Letter states that Cummings Manookian specifically disclaims any attorney's fee in the Fitzgerald matter.

**SOURCE: Declaration of Brian Manookian, ¶ 34; Manookian PLLC Second Set of Requests for Admission, No. 85 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>; Deposition of Trustee Jeanne Ann Burton, Pages 54:7-10; 55:10-16.**

**RESPONSE:**

Admitted

34.    Cummings Manookian disclaimed any attorney's fee in the Fitzgerald matter via written letter to the Fitzgeralds dated December 7, 2018.

**SOURCE: Declaration of Brian Manookian, ¶ 35; Manookian PLLC Second Set of Requests for Admission, No. 86 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>; Deposition of Trustee Jeanne Ann Burton, Pages 54:7-10; 55:10-16.**

**RESPONSE:**

As stated in Second RFA Responses, Exhibit 3, Paragraph 86, the Trustee admits that the December 7, 2018 letter states that Cummings Manookian was disclaiming any attorney's fees, but denies that such letter has any actual legal impact on whether or not Cummings Manookian is entitled to legal fees in the Fitzgerald matter because Cummings Manookian did not, in fact, withdraw.  See also Exhibits 6 and 8 (pp. 44:14-44:17; 66:10-66:25).

35.    On April 19, 2017, Cummings Manookian entered into an Agreement with Brett

Keefer whose terms are contained in Exhibit 1 ("the Shoemaker Engagement Agreement.")

**SOURCE: Declaration of Brian Manookian, ¶ 36; Manookian PLLC Second Set of Requests for Admission, No. 1 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)).**

**RESPONSE:**

Admitted

36.     Exhibit 1 is a genuine copy of the attorney-client agreement between Cummings Manookian and Brett Keefer.

**SOURCE: Declaration of Brian Manookian, ¶ 37; Manookian PLLC Second Set of Requests for Admission, No. 2 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)).**

**RESPONSE:**

Admitted

37.     The Shoemaker Engagement Agreement was drafted by Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 38; Manookian PLLC Second Set of Requests for Admission, No. 7 (admitted pursuant to Fed. R. Civ. P. 36(3)(a)).**

**RESPONSE:**

Admitted

38.     The Shoemaker Engagement Agreement is a binding contract upon

Cummings Manookian and Brett Keefer.

**SOURCE: Declaration of Brian Manookian, ¶ 39; Manookian PLLC Second Set of Requests for Admission, No. 9-10, 11  (admitted pursuant to Fed. R. Civ. P. 36(3)(a).**

**RESPONSE:**

Admitted

39.     The Shoemaker Engagement Agreement is the only written agreement between

Cummings Manookian and Brett Keefer or any representative of the Shoemaker Estate.

**SOURCE: Declaration of Brian Manookian, ¶ 40; Manookian PLLC Second Set of Requests for Admission, No. 18, 20 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>.**

**RESPONSE:**

Admitted

40.     The Shoemaker Engagement Agreement states that if Brett Keefer terminates Cummings Manookian as his lawyers, Cummings Manookian will be entitled to some portion of any recovered attorney's fee.

**SOURCE: Declaration of Brian Manookian, ¶ 41; Exhibit 1, Shoemaker Engagement Agreement.**

**RESPONSE:**

Admitted

41.     The Shoemaker Engagement Agreement states that if Cummings Manookian withdraws from representing Brett Keefer, Cummings Manookian will be entitled to advanced expenses.

**SOURCE: Declaration of Brian Manookian, ¶ 42; Exhibit 1, Shoemaker Engagement Agreement.**

**RESPONSE:**

Admitted

42.     Cummings Manookian did not pay any costs or advance any expenses associated with any lawsuit filed on behalf of Brett Keefer or the Shoemaker Estate.

**SOURCE: Declaration of Brian Manookian, ¶ 43; Manookian PLLC Second Set of Requests for Admission, No. 17 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>.**

**RESPONSE:**

Admitted

13

43. The Shoemaker Engagement Agreement does not provide for, or require, the payment of an attorney's fee to Cummings Manookian in the event Cummings Manookian withdraws from representing Brett Keefer.

**SOURCE: Declaration of Brian Manookian, ¶ 44; Exhibit 1, Shoemaker Engagement Agreement.**

**RESPONSE:**

Denied. As stated in the First RFA Responses, Exhibit 2, Paragraph 25, the Cummings Manookian engagement agreements provided to the Trustee require the payment of advanced costs but are silent on payment of fees. See Exhibit 4. The Trustee believes that Tennessee common law governs the right to payment of attorney fees under this circumstance.

44. Cummings Manookian withdrew from representing Brett Keefer.

**SOURCE: Declaration of Brian Manookian, ¶ 45; Manookian PLLC Second Set of Requests for Admission, No. 13 (admitted pursuant to Fed. R. Civ. P. 36(3)(a); Deposition of Trustee Jeanne Ann Burton, Page 84:6-14.**

**RESPONSE:**

Denied. As stated in Second RFA Responses, Exhibit 3, Paragraph 13, a complaint was filed on behalf of Brett Keefer by Cummings Manookian, it never filed a motion to withdraw as Brett Keefer's counsel nor notified the Court in any way that it was withdrawing. Moreover, the Trustee has never seen any written correspondence in which Cummings Manookian allegedly notified Brett Keefer of its withdrawal. See also Exhibits 7 and 8 (pp. 44:14-44:17; 66:10-66:25).

45. Cummings Manookian withdrew from representing Brett Keefer prior to receiving a settlement for Mr. Keefer or the Shoemaker Estate.

**SOURCE: Declaration of Brian Manookian, ¶ 46; Manookian PLLC Second Set of Requests for Admission, No. 15 (admitted pursuant to Fed. R. Civ. P. 36(3)(a).**

**RESPONSE:**

Denied. As stated in Second RFA Responses, Exhibit 3, Paragraphs 13 and 15, a complaint was filed on behalf of Brett Keefer by Cummings Manookian, it never filed a motion to withdraw as Brett Keefer's counsel nor notified the Court in any way that it was withdrawing. Moreover, the Trustee has never seen any written correspondence in which Cummings Manookian allegedly

notified Brett Keefer of its withdrawal.  See also Exhibits 7 and 8 (pp. 44:14-44:17; 66:10-66:25).

46.     As of January 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**SOURCE: Declaration of Brian Manookian, ¶ 47; Manookian PLLC Second Set of Requests for Admission, No. 21 (admitted pursuant to ==Fed. R. Civ. P. 36(3)(a)==; Deposition of Trustee Jeanne Ann Burton, Page 20:16-21:1, 25:17-25.**

**RESPONSE:**

Admitted

47.     As of January 1, 2019, Cummings Manookian had no employees.

**SOURCE: Declaration of Brian Manookian, ¶ 48; Manookian PLLC Second Set of Requests for Admission, No. 25 (admitted pursuant to ==Fed. R. Civ. P. 36(3)(a).==**

**RESPONSE:**

For the reasons stated in Paragraph 25 of the Second RFA Responses Exhibit 3, the Trustee denies that Cummings Manookian had no employees by January 1, 2019.  Afsoon Hagh was an employee and/or agent of Cummings Manookian, inasmuch as she received malpractice insurance and healthcare benefits from Cummings Manookian, she was filing pleadings on behalf of Cummings Manookian, receiving mail at Cummings Manookian's offices, using a Cummings Manookian email address, using a Cummings Manookian telephone number, working on behalf of clients subject to Cummings Manookian engagement agreements, and had full access to Cummings Manookian's electronic files.  See Exhibits 5 (pp. 42:21-43:1; 44:10-44:20; 92:25-94:5), 6, 7 and 8 (p.44:14-44:17).

48.     The lawsuit in the Shoemaker matter was filed on February 11, 2019.

**SOURCE: Declaration of Brian Manookian, ¶ 49.**

**RESPONSE:**

Admitted

49.     On February 11, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

15

**SOURCE: Declaration of Brian Manookian, ¶ 50; Manookian PLLC Second Set of Requests for Admission, No. 23 (admitted pursuant to Fed. R. Civ. P. 36(3)(a).**

**RESPONSE:**

    Admitted

    50.    On February 11, 2019, Cummings Manookian had no employees.

**SOURCE: Declaration of Brian Manookian, ¶ 51; Manookian PLLC Second Set of Requests for Admission, No. 27 (admitted pursuant to Fed. R. Civ. P. 36(3)(a).**

**RESPONSE:**

    For the reasons stated in Paragraph 27 of the Second RFA Responses Exhibit 3, Paragraph 25, the Trustee denies that Cummings Manookian had no employees by February 11, 2019.  Afsoon Hagh was an employee and/or agent of Cummings Manookian, inasmuch as she received malpractice insurance and healthcare benefits from Cummings Manookian, she was filing pleadings on behalf of Cummings Manookian, receiving mail at Cummings Manookian's offices, using a Cummings Manookian email address, using a Cummings Manookian telephone number, working on behalf of clients subject to Cummings Manookian engagement agreements, and had full access to Cummings Manookian's electronic files.  See Exhibits 5 (pp. 42:21-43:1; 44:10-44:20; 92:25-94:5), 6, 7 and 8 (p.44:14-44:17).

    51.    The Shoemaker lawsuit was filed by Brian Cummings on behalf of Cummings Law.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 15:24-16:7.**

**RESPONSE:**

    Admitted

    52.    No attorney ever entered an appearance in the Shoemaker case that identified himself or herself as working for or on behalf of Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 52; Manookian PLLC Second Set of Requests for Admission, No. 49 (admitted pursuant to Fed. R. Civ. P. 36(3)(a).**

**RESPONSE:**

    Denied for the reasons stated in Paragraphs 47 and 49 of the Second RFA Responses Exhibit 3.  While it is admitted that Afsoon Hagh never "signed" a pleading in the  Shoemaker case identifying herself as working for or on behalf of Cummings Manookian, Afsoon Hagh's

16

signature block in that case identified her as working on behalf of Cummings Manookian through March 2019, though all pleadings were "signed" by Brian Cummings. See Exhibit 7.

53. No attorney ever signed a pleading in the Shoemaker case that identified himself or herself as working for or on behalf of Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 53; Manookian PLLC Second Set of Requests for Admission, No. 48 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>.**

**RESPONSE:**

Denied for the reasons stated in Paragraphs 47 and 48 of the Second RFA Responses Exhibit 3. While it is admitted that Afsoon Hagh never "signed" a pleading in the Shoemaker case identifying herself as working for or on behalf of Cummings Manookian, Afsoon Hagh's signature block in that case identified her as working on behalf of Cummings Manookian through March 2019, though all pleadings were "signed" by Brian Cummings. See Exhibit 7.

54. No attorney did any work for or on behalf of Cummings Manookian in the *Shoemaker v. VUMC*, Davidson County Circuit Court Case No. 19C358.

**SOURCE: Manookian PLLC Second Set of Requests for Admission, No. 53 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a)</mark>.**

**RESPONSE:**

Denied for the reasons stated in Paragraphs 47-53 of the Second RFA Responses Exhibit 3. Cummings Manookian was a signatory to the Complaint initiating the Shoemaker case. See Exhibit 7.

55. The Shoemaker Case ultimately settled in 2021.

**SOURCE: Declaration of Afsoon Hagh, ¶ 2.**

**RESPONSE:**

Admitted

56. Cummings Manookian was not involved in negotiating the settlement in the Shoemaker matter.

**SOURCE: Manookian PLLC Second Set of Requests for Admission, No. 57 (admitted pursuant to <mark>Fed. R. Civ. P. 36(3)(a))</mark>; Deposition of Trustee Jeanne Ann Burton, Page 98:16-**

**23.**

**RESPONSE:**

    Admitted

    57.    Cummings Manookian did not even correspond or communicate with Brett Keefer in 2019, 2020, or 2021.

**SOURCE: Declaration of Brian Manookian, ¶ 54; Manookian PLLC Second Set of Requests for Admission, No. 54-56 (admitted pursuant to Fed. R. Civ. P. 36(3)(a).**

**RESPONSE:**

    Admitted for purposes of this Motion only.

    58.    In the cases in which Cummings Manookian represented clients, Cummings Manookian did not own the client file or the cause of action.

**SOURCE: Declaration of Brian Manookian, ¶ 55; Deposition of Trustee Jeanne Ann Burton, Page 34:10-13.**

**RESPONSE:**

    Admitted

    59.    Cummings Manookian never owned any real property and did not own the office property at 45 Music Square West where it operated for a period of time.

**SOURCE: Declaration of Brian Manookian, ¶ 56; Deposition of Trustee Jeanne Ann Burton, Page 35:10-22; Trustee's Responses to Manookian PLLC First Set of Requests for Admission, No. 29.**

**RESPONSE:**

    Admitted

    60.    Manookian PLLC has never received any property of any kind belonging to Cummings Manookian.

18

**SOURCE: Declaration of Brian Manookian, ¶ 57.**

**RESPONSE:**

Denied. Manookian PLLC utilized telephone numbers, email addresses and furniture and equipment belonging to Cummings Manookian. Exhibits 5 (pp. 25:1-25:25; 102:11-103:16) and 9.

61. Cummings Manookian has never transferred any property of any kind to Manookian PLLC.

**SOURCE: Declaration of Brian Manookian, ¶ 58.**

**RESPONSE:**

Denied. Manookian PLLC utilized telephone numbers, email addresses and furniture and equipment belonging to Cummings Manookian. Exhibits 5 (pp. 25:1-25:25; 102:11-103:16) and 9.

62. Manookian PLLC has never caused Cummings Manookian to make or incur a transfer of property of any kind.

**SOURCE: Declaration of Brian Manookian, ¶ 59.**

**RESPONSE:**

Denied. Manookian PLLC utilized telephone numbers, email addresses and furniture and equipment belonging to Cummings Manookian. Exhibits 5 (pp. 25:1-25:25; 102:11-103:16) and 9.

63. Manookian PLLC has never caused any person or entity to terminate any contract or business relationship with Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 60.**

19

**RESPONSE:**

Admitted for purposes of this Motion only.

64.     Manookian PLLC is not and has never been in possession, custody, or control of any property belonging to Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 61.**

**RESPONSE:**

Denied.  Manookian PLLC utilized telephone numbers, email addresses and furniture and equipment belonging to Cummings Manookian.  Exhibits 5 (pp. 25:1-25:25; 102:11-103:16) and 9.

65.     Manookian PLLC does not and has never owed a debt that is property of Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 62.**

**RESPONSE:**

Admitted

66.     Manookian PLLC has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.

**SOURCE: Declaration of Brian Manookian, ¶ 63.**

**RESPONSE:**

Denied.  Manookian PLLC utilized telephone numbers, office space, email addresses and furniture and equipment belonging to Cummings Manookian.  Exhibits 5 (pp. 25:1-25:25; 102:11-103:16) and 9.

67.     Neither Afsoon Hagh or Hagh Law ("the Hagh Parties") has ever received any

property of any kind belonging to Cummings Manookian.

**SOURCE: Declaration of Afsoon Hagh, ¶ 3.**

**RESPONSE:**

Denied.  Afsoon Hagh and Hagh Law utilized telephone numbers, email addresses and furniture and equipment belonging to Cummings Manookian.  Exhibits 5 (pp. 25:1-25:25; 102:11-103:16), 6, 7 and 12.  They also received at least $590,000 from the Fitzgerald settlement that was property of Cummings Manookian. See Exhibit H to ==Docket No. 2==.

68.     Cummings Manookian has never transferred any property of any kind to the Hagh Parties.

**SOURCE: Declaration of Afsoon Hagh, ¶ 4.**

**RESPONSE:**

Denied.  Afsoon Hagh and Hagh Law utilized telephone numbers, email addresses and furniture and equipment belonging to Cummings Manookian.  Exhibits 5 (pp. 25:1-25:25; 102:11-103:16), 6, 7 and 12.  They also received at least $590,000 from the Fitzgerald settlement that was property of Cummings Manookian. See Exhibit H to ==Docket No. 2==.

69.     The Trustee admits she has no evidence that the Hagh Parties ever received a payment of any kind from Cummings Manookian.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 121:10-13.**

**RESPONSE:**

Admitted that the Hagh Parties never received a payment of any kind *directly* from Cummings Manookian.

70.     The Hagh Parties have never caused Cummings Manookian to make or incur a transfer of property of any kind.

**SOURCE: Declaration of Afsoon Hagh, ¶ 5.**

**RESPONSE:**

Denied.  Afsoon Hagh and Hagh Law utilized telephone numbers, email addresses and furniture and equipment belonging to Cummings Manookian.  Exhibits 5 (pp. 25:1-25:25; 102:11-103:16), 6, 7 and 12.  They also received at least $590,000 from the Fitzgerald settlement that was property of Cummings Manookian. See Exhibit H to Docket No. 2.

71.     The Hagh Parties are not and have never been in possession, custody, or  control of any property belonging to Cummings Manookian.

**SOURCE: Declaration of Afsoon Hagh, ¶ 6.**

**RESPONSE:**

Denied.  Afsoon Hagh and Hagh Law utilized telephone numbers, email addresses and furniture and equipment belonging to Cummings Manookian.  Exhibits 5 (pp. 25:1-25:25; 102:11-103:16), 6, 7 and 12.  They also received at least $590,000 from the Fitzgerald settlement that was property of Cummings Manookian. See Exhibit H to Docket No. 2.

72.     The Hagh Parties do not and have never owed a debt that is property of Cummings Manookian.

**SOURCE: Declaration of Afsoon Hagh, ¶ 7.**

**RESPONSE:**

Admitted

73.     Hagh Law has never used any real property, intellectual property, or property of any kind belonging to Cummings Manookian.

**SOURCE: Declaration of Afsoon Hagh, ¶ 8.**

**RESPONSE:**

Denied.  Afsoon Hagh and Hagh Law utilized telephone numbers, email addresses, office space, and furniture and equipment belonging to Cummings Manookian.  Exhibits 5 (pp. 25:1-25:25; 102:11-103:16), 6, 7 and 12.  They also received at least $590,000 from the Fitzgerald settlement that was property of Cummings Manookian. See Exhibit H to <mark>Docket No. 2</mark>.

74.     The Trustee admits that she has no evidence that the Hagh Parties have ever taken any property of any kind belonging to Cummings Manookian.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 117:5-8.**

**RESPONSE:**

Denied.  The Trustee was deposed on April 20, 2022.  Since that deposition, the Trustee has discovered evidence that Afsoon Hagh and Hagh Law utilized telephone numbers, email addresses and furniture and equipment belonging to Cummings Manookian. Exhibits 5 (pp. 25:1-25:25; 102:11-103:16), 6, 7 and 12.  They also received at least $590,000 from the Fitzgerald settlement that was property of Cummings Manookian. See Exhibit H to <mark>Docket No. 2</mark>.

75.     The Trustee admits that she has no evidence that the Hagh Parties ever set foot on the premises of the property where Cummings Manookian once operated at 45 Music Square West.

23

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 29:25-30:2.**

**RESPONSE:**

Denied. The Trustee was deposed on April 20, 2022. Since that deposition, the Trustee has discovered evidence that Afsoon Hagh maintained an office at 45 Music Square West. Exhibit 5, p. 44:21-44:23.

76.     The Trustee admits that she has no evidence that the Hagh Parties ever used office space at the property where Cummings Manookian once operated at 45 Music Square West.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 119:25-120:3.**

**RESPONSE:**

Denied. The Trustee was deposed on April 20, 2022. Since that deposition, the Trustee has discovered evidence that Afsoon Hagh maintained an office at 45 Music Square West. Exhibit 5, p. 44:21-44:23.

77.     The Trustee admits that she has no evidence that the Hagh Parties used office space, furnishings, or equipment located at 45 Music Square West.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 30:20-31:16**

**RESPONSE:**

Denied. The Trustee was deposed on April 20, 2022. Since that deposition, the Trustee has discovered evidence that Afsoon Hagh maintained an office at 45 Music Square West and that Afsoon Hagh and Hagh Law utilized telephone numbers, email addresses and furniture and equipment belonging to Cummings Manookian. Exhibits 5 (pp. 25:1-25:25; 44:21-44:23; 102:11-103:16), 6, 7 and 12.

24

78.     The Trustee admits that she cannot identify any specific furnishings or equipment that the Hagh Parties used at 45 Music Square West.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 31:14-16.**

**RESPONSE:**

Admitted

79.     The Trustee concedes that she does not even know who owns or owned the furniture at 45 Music Square West.

**SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 37:17-25.**

**RESPONSE:**

Denied.  The Trustee was deposed on April 20, 2022.  Since that deposition, the Trustee has discovered evidence that Cummings Manookian purchased furniture that was used at 45 Music Square West.  Exhibits 5 (pp. 25:1-25:25; 102:11-103:16), 10, and 11.

80.     The Trustee concedes that she cannot identify any damages that Cummings Manookian experienced as a result of any person using 45 Music Square West or the email addresses or phone numbers she claimed were wrongfully utilized in her Complaint. **SOURCE: Deposition of Trustee Jeanne Ann Burton, Page 123:22-124:5.**

**RESPONSE:**

Denied.  The Trustee identified fees that belonged to Cummings Manookian as a measure of damages in the cited portion of her deposition.

Dated this 12th day of August, 2022

Respectfully Submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr. (Tn. Bar No. 21078)
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
Phone: 615-465-6015
phillip@thompsonburton.com

Special Counsel for the Trustee

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served via electronic notice/ECF on all parties having made an appearance herein, including counsel for the Defendants.

This 12th day of August, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) Case No. 3:19-bk-07235 |
| CUMMINGS MANOOKIAN, PLLC, | ) Chapter 7 |
| | ) Judge Walker |
| Debtor. | ) |
| | ) |
| JEANNE ANN BURTON, TRUSTEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. No. 3:20-ap-90002 |
| | ) |
| HAGH LAW, PLLC; AFSOON HAGH; | ) |
| MANOOKIAN, PLLC; and FIRST- | ) |
| CITIZENS BANK & TRUST COMPANY, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S SECOND AMENDED RESPONSES TO MANOOKIAN PLLC'S FIRST SET OF REQUESTS FOR ADMISSION TO THE PLAINTIFF

Comes Now, Plaintiff, Jeanne Ann Burton, Trustee ("Trustee"), and for her Second Amended Responses to Manookian PLLC's First Set of Requests for Admission to Plaintiff (the "Discovery"), states as follows:

### GENERAL OBJECTIONS

1.      Trustee's Responses to the Discovery shall not constitute a waiver of her objections as to admissibility.

2.      Trustee objects to the Discovery to the extent it exceeds the scope of permissible discovery.

3.      Trustee objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

1

4.      Trustee objects to the Discovery to the extent that it seeks information about which discovery is ongoing, and Trustee reserves the right to supplement her Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.

## REQUESTS FOR ADMISSION

1.      Admit that Afsoon Hagh was never an employee of Cummings Manookian.

**RESPONSE:**

The Trustee objects to this Request on the basis that she cannot determine the Request's definition of "employee".  The Trustee further objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC.  Notwithstanding these objections, to the extent "employee" means salaried employees, the Trustee admits that this Request is accurate.  To the extent that "employee" means agent, the Trustee denies that this Request is accurate as Afsoon Hagh was an agent of Cummings Manookian, inasmuch as she received insurance and healthcare benefits from Cummings Manookian, she was filing pleadings on behalf of Cummings Manookian, receiving mail at Cummings Manookian's offices, using a Cummings Manookian email address, using a Cummings Manookian telephone number, working on behalf of clients subject to Cummings Manookian engagement agreements, certain engagement letters identified Afsoon Hagh as one of Cummings Manookian's attorneys, and Afsoon Hagh had unlimited access to the electronic files of Cummings Manookian just as its owners had.

2.      Admit that Cummings Manookian never identified Afsoon Hagh as an employee to the Internal Revenue Service.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC.  Notwithstanding this objection, this Request is admitted.

3.      Admit that Cummings Manookian never identified Afsoon Hagh as an employee to the Tennessee Department of Revenue.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC.  Notwithstanding this objection, this Request is admitted.

4.      Admit that Cummings Manookian never filed any documents with any state, local,

2

or federal agency identifying Afsoon Hagh as an employee of Cummings Manookian.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC. Notwithstanding this objection, this Request is admitted.

5. Admit that Afsoon Hagh was never a member of Cummings Manookian.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC. Notwithstanding this objection, this Request is admitted.

6. Admit that Afsoon Hagh was never a partner in Cummings Manookian.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC. Notwithstanding this objection, this Request is admitted.

7. Admit that Afsoon Hagh never held an ownership interest in Cummings

Manookian.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC. Notwithstanding this objection, this Request is admitted.

8. Admit that Afsoon Hagh served as co-counsel with certain attorney members of

Cummings Manookian in various legal cases.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC. Notwithstanding this objection, the Trustee admits that Afsoon Hagh made notices of appearance as counsel in several Cummings Manookian matters and later served as co-counsel with both Brian Manookian and Brian Cummings. The Trustee denies this Request to the extent that it implies that Afsoon Hage was not an agent of Cummings Manookian. Afsoon Hagh held herself out as an agent of Cummings Manookian by repeatedly signing pleadings with a Cummings Manookian signature block. Further, certain engagement letters identified Afsoon Hagh as one of Cumming Manookian's attorneys.

3

9.      Admit that Afsoon Hagh was never paid a salary by Cummings Manookian.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC.  Notwithstanding this objection, this Request is admitted.

10.     Admit that Afsoon Hagh was never paid an hourly wage by Cummings Manookian.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC.  Notwithstanding this objection, this Request is admitted.

11.     Admit that Afsoon Hagh was never listed on Cummings Manookian's website.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC.  Notwithstanding this objection, this Request is admitted.

12.     Admit that Afsoon Hagh was never paid any monies by Cummings Manookian.

**RESPONSE:**

Denied.  Afsoon Hagh received funds from the settlement of the *Fitzgerald* matter that were otherwise owed to Cummings Manookian.

13.     Admit that Cummings Manookian had two members.

**RESPONSE:**

Admitted that Cummings Manookian had to members from its formation through early September 2018; denied that Cummings Manookian always had two members.

14.     Admit that the two members of Cummings Manookian were Brian Manookian and

Brian Cummings.

**RESPONSE:**

Admitted that Brian Manookian and Brian Cummings were the two members of Cummings Manookian from its formation until early September 2018; denied that they were both members of Cummings Manookian for the entire duration of Cummings Manookian's existence.

4

15.     Admit that Cummings Manookian was a professional limited liability company.

**RESPONSE:**

Admitted.

16.     Admit that Cummings Manookian was created to provide professional services in the form of legal services.

**RESPONSE:**

Admitted.

17.     Admit that Cummings Manookian specialized in representing plaintiffs in medical malpractice cases.

**RESPONSE:**

Admitted.

18.     Admit that Cummings Manookian primarily accepted cases on a contingency fee basis whereby Cummings Manookian was only paid if they recovered monies for their client.

**RESPONSE:**

Admitted.

19.     Admit that Cummings Manookian entered into engagement agreements with their clients.

**RESPONSE:**

Admitted that Cummings Manookian entered into engagement agreements with some clients. However, Trustee is unable to admit or deny whether Cummings Manookian entered into engagement letters with all of their clients because Trustee has not been given copies of all Cummings Manookian engagement agreements.

20.     Admit that Cummings Manookian entered into engagement agreements with their clients that laid out the duties and rights of both parties to the contract.

5

**RESPONSE:**

Admitted that Cummings Manookian entered into engagement agreements with some clients that laid out the duties and rights of both parties to the contract. Trustee is unable to admit or deny whether Cummings Manookian entered into engagement letters with all of their clients because Trustee has not been given copies of all Cummings Manookian engagement agreements.

21. Admit that Cummings Manookian utilized a standard form engagement agreement whose content and terms with respect to the rights and duties of the parties generally did not vary from case to case ("the Cummings Manookian Engagement Agreement).

**RESPONSE:**

Trustee is unable to admit or deny this request as stated because Trustee has not been given copies of all Cummings Manookian engagement agreements. Trustee has only been provided copies of certain engagement agreements. Trustee admits that most of the engagement agreements she has been provided appear to be based upon a standard form.

22. Admit that the Cummings Manookian Engagement Agreement included terms regarding the parties' rights in the event that the client terminated Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request as stated because Trustee has not been given copies of all Cummings Manookian engagement agreements. Trustee has only been provided copies of certain engagement agreements. Trustee admits that the engagement agreements she has been provided include terms regarding the parties' right in the event the client terminated Cummings Manookian.

23. Admit that the Cummings Manookian Engagement Agreement included terms regarding the parties' rights in the event that Cummings Manookian withdrew from representing the client.

**RESPONSE:**

Trustee is unable to admit or deny this request as stated because Trustee has not been given copies of all Cummings Manookian engagement agreements. Trustee has only been provided copies of certain engagement agreements. Trustee admits that the engagement agreements she has been provided include terms regarding the parties' rights in the event that Cummings Manookian

6

withdrew from representing the client.

24. Admit that the Cummings Manookian Engagement Agreement requires the client to pay Cummings Manookian an attorney's fee in the event the client terminates Cummings Manookian.

**RESPONSE:**

Trustee is unable to admit or deny this request as stated because Trustee has not been given copies of all Cummings Manookian engagement agreements. Trustee has only been provided copies of certain engagement agreements. Trustee admits that the engagement agreements she has been provided include terms requiring the client to pay Cummings Manookian an attorney's fee in the event the client terminates Cummings Manookian.

25. Admit that the Cummings Manookian Engagement Agreement does not require the client to pay Cummings Manookian an attorney's fee in the event Cummings Manookian withdraws from the representation.

**RESPONSE:**

Denied. The Cummings Manookian engagement agreements provided to Trustee specifically requires the payment of advanced costs but is silent on payment of fees. Therefore, Trustee believes that Tennessee common law governs right to payment of attorney fees under this circumstance.

26. Admit that Cummings Manookian has never entered into a contract or written agreement with Afsoon Hagh.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC. Notwithstanding this objection, this Request is admitted.

27. Admit that Cummings Manookian has never entered into a contract or written agreement with Hagh Law PLLC.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of

7

action against Manookian, PLLC. Notwithstanding this objection, this Request is admitted.

28.     Admit that Cummings Manookian has never entered into a contract or written agreement with Manookian PLLC.

**RESPONSE:**

Admitted.

29.     Admit that Cummings Manookian does not own, and has never owned, any real property.

**RESPONSE:**

Admitted.

30.     Admit that Cummings Manookian does not own, and has never owned, 45 Music Square West, Nashville, Tennessee 37203.

**RESPONSE:**

Admitted.

31.     Admit that Cummings Manookian was a party to a lease for 45 Music Square West, Nashville, Tennessee, 37203 ("the 45 MSW Lease).

**RESPONSE:**

Admitted.

32.     Admit that Cummings Manookian was required to pay rent to 45 MSW Partners under the terms of the 45 MSW Lease.

**RESPONSE:**

Admitted.

33.     Admit that Cummings Manookian breached the 45 MSW Lease by failing to pay

8

rent to 45 MSW Partners beginning in November of 2018.

**RESPONSE:**

Trustee is unable to admit or deny this request because neither Brian Manookian nor Brian Cummings testified regarding when Cummings Manookian ceased paying rent.

34.     Admit that Cummings Manookian owns no furniture.

**RESPONSE:**

Denied.  Brian Cummings testified that Cummings Manookian owns furniture, tax returns indicated that Cummings Manookian owns furniture, and receipts show that Cummings Manookian purchased furniture.

35.     Admit that Cummings Manookian has never owned any furniture.

**RESPONSE:**

Denied.  Brian Cummings testified that Cummings Manookian owns furniture, tax returns indicated that Cummings Manookian owns furniture, and receipts show that Cummings Manookian purchased furniture.

36.     Admit that Cummings Manookian owns no computers.

**RESPONSE:**

Denied.  Brian Cummings testified that Cummings Manookian purchased and owned computers and computer equipment.

37.     Admit that Cummings Manookian has never owned any computers.

**RESPONSE:**

Denied.  Brian Cummings testified that Cummings Manookian purchased and owned computers.

38.     Admit that Cummings Manookian owns no telephones.

**RESPONSE:**

Denied.  Brian Cummings testified that Cummings Manookian owned telephones.

9

39.     Admit that Cummings Manookian has never owned any telephones.

**<u>RESPONSE:</u>**

Denied.  Brian Cummings testified that Cummings Manookian owned telephones.


40.     Admit that the web domain cummingsmanookian.com was registered by Brian

Cummings.

**<u>RESPONSE:</u>**

Admitted that Brian Cummings registered that domain, but Cummings Manookian paid for its registration and renewal.

41.     Admit that the web domain cummingsmanookian.com is owned by Brian

Cummings.

**<u>RESPONSE:</u>**

Admitted that the domain was in Brian Cummings' name, but Cummings Manookian paid for its registration and renewal.


42.     Admit that Cummings Manookian has never owned any website.

**<u>RESPONSE:</u>**

Denied.  Brian Cummings testified that Cummings Manookian owned and operated a website at cummingsmanookian.com.


43.     Admit that the Defendants have never utilized cummingsmanookian.com as a

website.

**<u>RESPONSE:</u>**

Admitted.


44.     Admit that cummingsmanookian.com has not functioned as a website since at least

October of 2018.

10

**RESPONSE:**

Admitted.

45.     Admit the telephone number 615-266-3333 was purchased individually by Brian Cummings prior to the formation of Cummings Manookian.

**RESPONSE:**

Denied.  While he could not recall in whose name the telephone number was listed, Brian Cummings testified that Cummings Manookian paid for all telephone bills associated with that telephone number.

46.     Admit that all telephone numbers utilized by Cummings Manookian during its period of operation were privately purchased Brian Cummings prior to the formation of Cummings Manookian.

**RESPONSE:**

Denied.  While he could not recall in whose name the telephone numbers were listed, Brian Cummings testified that Cummings Manookian paid for all telephone bills associated with Cummings Manookian's telephone numbers.

47.     Admit that none of the Defendants have utilized a phone number owned by Cummings Manookian at any time.

**RESPONSE:**

Denied.  All three defendants utilized 615-266-3333, which was a phone number belonging to Cummings Manookian.

48.     Admit that none of the Defendants have utilized a phone number owned by Cummings Manookian at any time after October 2018.

**RESPONSE:**

Denied.  All three defendants utilized 615-266-3333, which was a phone number belonging to Cummings Manookian at various times after October 2018.

11

49.     Admit that, under Tennessee law, a legal client's file is owned by the client.

**RESPONSE:**

Admitted that a client owns the contents of its legal file, but denied that a law firm does not own other valuable intellectual property associated with its clients (such as client lists, contact information, existing contracts, and accounts receivable).

50.     Admit that Cummings Manookian does not now, nor has it ever, owned a client's case file.

**RESPONSE:**

Admitted that Cummings Manookian does not own the contents of clients' legal file, but denied that it does not own other valuable intellectual property associated with its clients (such as client lists, contact information, existing contracts, and accounts receivable).

51.     Admit that Cummings Manookian is and was required to return, destroy, or transfer a client's case file upon that client's request.

**RESPONSE:**

Admitted.

52.     Admit that Cummings Manookian does not "own" a client's case.

**RESPONSE:**

Admitted that Cummings Manookian does not own the contents of clients' legal file or the right to a client's case, but denied that it does not own other valuable intellectual property associated with its clients (such as client lists, contact information, existing contracts, and accounts receivable).

53.     Admit that Cummings Manookian does not have an ownership interest in any case brought on behalf of a client.

**RESPONSE:**

Denied. Trustee affirmatively alleges that Cummings Manookian did own client lists and contact information, and that it owns rights to recovery in certain cases.

12

54.     Admit that any cause of action or right of recovery pursued by Cummings

Manookian on behalf of a client belongs to the client.

**RESPONSE:**

Admitted that the cause of action belongs to the client, but denied that Cummings
Manookian has no right to fees from a recovery.

55.     Admit that any cause of action or right of recovery pursued by Cummings

Manookian on behalf of a client does not belong to Cummings Manookian.

**RESPONSE:**

Admitted that the cause of action belongs to the client, but denied that Cummings
Manookian has no right to fees from a recovery.

56.     Admit that any Cummings Manookian client was empowered to terminate

Cummings Manookian at any time and for any reason.

**RESPONSE:**

Admitted that any client had the right to terminate Cummings Manookian at any time and
for any reason.

57.     Admit that Cummings Manookian provided no services to Manookian PLLC.

**RESPONSE:**

Admitted.

58.     Admit that Cummings Manookian provided no goods to Manookian PLLC.

**RESPONSE:**

Admitted that it sold no goods to Manookian, PLLC, but denied insomuch as Manookian
PLLC utilized property belonging to Cummings Manookian.

59.     Admit that Cummings Manookian provided no services to Hagh Law.

**RESPONSE:**

13

Admitted.

60. Admit that Cummings Manookian provided no goods to Hagh Law.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC. Notwithstanding this objection, it is admitted that Cummings Manookian sold no goods to Hagh Law, but denied insomuch as Hagh Law utilized property belonging to Cummings Manookian.

61. Admit that Cummings Manookian provided no services to Afsoon Hagh.

**RESPONSE:**

Denied. Cummings Manookian provided health insurance and malpractice insurance for Afsoon Hagh.

62. Admit that Cummings Manookian provided no goods to Afsoon Hagh.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC. Notwithstanding this objection, it is admitted that Cummings Manookian sold no goods to Afsoon Hagh, but denied insomuch as Afsoon Hagh utilized property belonging to Cummings Manookian.

63. Admit that Cummings Manookian provided no services to Manookian PLLC in the

Fitzgerald case.

**RESPONSE:**

Admitted.

64. Admit that Cummings Manookian provided no goods to Manookian PLLC in the

Fitzgerald case.

**RESPONSE:**

Admitted that it sold no goods to Manookian, PLLC, but denied insomuch as Manookian PLLC utilized property belonging to Cummings Manookian.

65. Admit that Cummings Manookian provided no services to Hagh Law in the

14

Fitzgerald case.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC. Notwithstanding this objection, this Request is admitted.

66. Admit that Cummings Manookian provided no goods to Hagh Law in the Fitzgerald

case.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC. Notwithstanding this objection, it is admitted that Cummings Manookian sold no goods to Hagh Law, but denied insomuch as Hagh Law utilized property belonging to Cummings Manookian.

67. Admit that Cummings Manookian provided no services to Afsoon Hagh in the

Fitzgerald case.

**RESPONSE:**

Denied. Cummings Manookian provided health insurance and malpractice insurance for Afsoon Hagh.

68. Admit that Cummings Manookian provided no goods to Afsoon Hagh in the

Fitzgerald case.

**RESPONSE:**

The Trustee objects to this Request on the grounds that it is irrelevant as to the cause of action against Manookian, PLLC. Notwithstanding this objection, it is admitted that Cummings Manookian sold no goods to Afsoon Hagh, but denied insomuch as Afsoon Hagh utilized property belonging to Cummings Manookian..

69. Admit that Cummings Manookian had an existing, enforceable contract with Marty

and Melissa Fitzgerald covering the subject matter of Cummings Manookian's representation in

the Fitzgerald v. Osborn matter.

**RESPONSE:**

15

Admitted

70.  Admit that Cummings Manookian withdrew from representing the Fitzgeralds in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.  While Brian Manookian has produced a letter from Cummings Manookian that allegedly terminated the client relationship with the Fitzgeralds, no evidence has been produced that the letter was received by the Firtzgeralds, nor was any notice of withdrawal ever filed in that case.

71.  Admit that the Fitzgeralds did not terminate Cummings Manookian from representing them in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Admitted.

72.  Admit that Cummings Manookian never recovered any monies for the Fitzgerald in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.  Cummings Manookian recovered a substantial monetary settlement for the Fitzgeralds in that matter.

73.  Admit that Cummings Manookian never even secured an offer of settlement from the Defendants in the Fitzgerald v. Osborn matter.

**RESPONSE:**

Denied.  Cummings Manookian recovered a substantial monetary settlement for the Fitzgeralds in that matter.

74.  Admit that Cummings Manookian did minimal work on the Fitzgerald v. Osborn matter.

16

**RESPONSE:**

Denied.  Cummings Manookian filed  a substantial number of pleadings in that case.

75.     Admit that none of the work performed by Cummings Manookian in the Fitzgerald

v Osborn matter resulted in any settlement or payment to the Fitzgeralds.

**RESPONSE:**

Denied.  The work performed by Cummings Manookian in the matter directly caused the settlement payment.

76.     Admit that Manookian PLLC has never received a transfer of funds from

Cummings Manookian.

**RESPONSE:**

Admitted.

77.     Admit that Manookian PLLC has never received any funds from Cummings

Manookian.

**RESPONSE:**

Admitted.

78.     Admit that Manookian PLLC has never received any funds belonging to Cummings

Manookian.

**RESPONSE:**

Admitted.

79.     Admit that Manookian PLLC has never received any monies from Hagh Law.

**RESPONSE:**

Admitted.

80.     Admit that Manookian PLLC has never received any monies from Afsoon Hagh.

17

**RESPONSE:**

Admitted.

81.    Admit that Manookian PLLC has never received any monies from any person or any entity.

**RESPONSE:**

Admitted.

82.    Admit that Manookian PLLC does not now, nor has it ever, held a bank account.

**RESPONSE:**

Admitted.

83.    Admit that Hagh Law PLLC has never received any monies from Cummings Manookian.

**RESPONSE:**

Denied.  Hagh Law PLLC received a distribution of a substantial sum of money from the Fitzgerald settlement that was property of Cummings Manookian.

84.    Admit that Hagh Law has never received any monies from any person intended for Cummings Manookian.

**RESPONSE:**

Denied.  Hagh Law PLLC received a distribution of a substantial sum of money from the Fitzgerald settlement that was property of Cummings Manookian.

85.    Admit that no person or entity has ever provided Afsoon Hagh, Hagh Law, or Manookian PLLC with monies that such person or entity instructed to be delivered to Cummings Manookian.

**RESPONSE:**

Denied.  Afsoon Hagh and Hagh Law received a transfer of funds that the Chancery Court

18

of Williamson County directed to be held in trust. However, the money was unilaterally transferred into an account in the name of Hagh Law and Afsoon Hagh.

Respectfully submitted,

/s/ Phillip G. Young
Phillip G. Young (TN 021087)
THOMPSON BURTON, PLLC
6100 TOWER CIRCLE, SUITE 200
FRANKLIN, TENNESSEE 37067
(615)-465-6008
phillip@thompsonburton.com

*Attorneys for Jeanne Ann Burton, Trustee*

19

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served

via United States Mail, first class, postage prepaid, and by electronic mail to the following persons:

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203
john@spragenslaw.com

This 1st day of July, 2022.

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

20

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |
|---|---|
| IN RE:<br><br>CUMMINGS MANOOKIAN, PLLC<br><br>    Debtor.<br><br>JEANNE ANN BURTON, TRUSTEE<br><br>    Plaintiff,<br><br>v.<br><br>HAGH LAW, PLLC; AFSOON HAGH;<br>and MANOOKIAN PLLC,<br><br>    Defendants. | Case No, 3:19-bk-07235<br>Chapter 7<br><br>Judge Walker<br><br>Adv. Proc. No. 3:20-ap-90002 |

## PLAINTIFF'S RESPONSES TO DEFENDANT MANOOKIAN PLLC'S SECOND SET OF REQUESTS FOR ADMISSION TO THE PLAINTIFF

Comes Now, Plaintiff, Jeanne Ann Burton, Trustee ("Trustee"), and for her Responses to Defendant Manookian PLLC's Second Set of Requests for Admission to Plaintiff (the "Discovery"), states as follows:

## GENERAL OBJECTIONS

1.    Trustee's Responses to the Discovery shall not constitute a waiver of her objections as to admissibility.

2.    Trustee objects to the Discovery to the extent it exceeds the scope of permissible discovery.

3.     Trustee objects to the Discovery to the extent that the information sought is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

4.     Trustee objects to the Discovery to the extent that it seeks information about which discovery is ongoing, and Trustee reserves the right to supplement her Responses to the Discovery based upon subsequently acquired information as permitted by the Federal Rules of Civil Procedure.

<u>**REQUESTS FOR ADMISSION**</u>

1.     Admit that Exhibit 1 is an attorney-client agreement between Cummings Manookian and Edward Goodwin and Brett Keefer.

<u>**RESPONSE:**</u>

Admitted.

2.     Admit that Exhibit 1 is a genuine copy of an attorney-client agreement between Cummings Manookian and Edward Goodwin and Brett Keefer.

<u>**RESPONSE:**</u>

Admitted.

3.     Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 1.

<u>**RESPONSE:**</u>

Admitted.

4.     Admit that on April 19, 2017, Brian Cummings was a member of Cummings Manookian.

<u>**RESPONSE:**</u>

Admitted.

2

5.      Admit that on April 1, 2017, Brian Cummings had the authority to enter into Exhibit 1 on behalf of Cummings Manookian.

**<u>RESPONSE:</u>**

Admitted.

6.      Admit that on April 1, 2017, Cummings Manookian entered into an Agreement with Brett Keefer and Edward Goodwin whose terms are contained in Exhibit 1.

**<u>RESPONSE:</u>**

Admitted.

7.      Admit that Exhibit 1 was drafted by Cummings Manookian.

**<u>RESPONSE:</u>**

Admitted.

8.      Admit that Exhibit 1 was drafted by Brian Cummings on behalf of Cummings Manookian.

**<u>RESPONSE:</u>**

Admitted.

9.      Admit that Exhibit 1 is a binding contract.

**<u>RESPONSE:</u>**

Admitted.

10.     Admit that Exhibit 1 is binding upon Brett Keefer.

**<u>RESPONSE:</u>**

Admitted.

11.     Admit that Exhibit 1 is binding upon Edward Goodwin.

**<u>RESPONSE:</u>**

Admitted.

      12.     Admit that Exhibit 1 is binding upon Cummings Manookian.

**RESPONSE:**

Admitted.

      13.     Admit that Cummings Manookian withdrew from representing Brett Keefer.

**RESPONSE:**

Denied. While a complaint was filed on behalf of Brett Keefer by Cummings Manookian, it never filed a motion to withdraw as Brett Keefer's counsel nor notified the Court in any way that it was withdrawing. Moreover, the Trustee has never seen any written correspondence in which Cummings Manookian allegedly notified Brett Keefer of its withdrawal.

      14.     Admit that Cummings Manookian withdrew from representing Edward Goodwin.

**RESPONSE:**

Denied. The Trustee has never seen any written correspondence in which Cummings Manookian allegedly notified Brett Keefer of its withdrawal.

      15.     Admit that Cummings Manookian withdrew from representing Brett Keefer prior to receiving a settlement for Mr. Keefer or Chesta Shoemaker's estate.

**RESPONSE:**

Denied for the same reasons as explained in response to Request 13 above.

      16.     Admit that Cummings Manookian withdrew from representing Edward Goodwin prior to receiving a settlement for Mr. Goodwin or Chesta Shoemaker's estate.

**RESPONSE:**

Denied for the same reasons as explained in response to Request 14 above.

      17.     Admit that Cummings Manookian did not pay any costs or expenses associated with any lawsuit filed on behalf of Brett Keefer, Edward Goodwin, or Chesta Shoemaker's estate.

**RESPONSE:**

4

Admitted.

18.    Admit that Exhibit 1 is the only written agreement between Cummings Manookian and Brett Keefer.

**RESPONSE:**

Admitted.

19.    Admit that Exhibit 1 is the only written agreement between Cummings Manookian and Edward Goodwin.

**RESPONSE:**

Admitted.

20.    Admit that Exhibit 1 is the only written agreement between Cummings Manookian and any representative of Chesta Shoemaker's estate.

**RESPONSE:**

Admitted.

21.    Admit that as of January 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

Admitted.

22.    Admit that as of February 1, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

Admitted.

23.    Admit that as of February 11, 2019, Cummings Manookian had no members or partners with active licenses to practice law.

**RESPONSE:**

Admitted.

24.     Admit that as of March 1, 2019, Cummings Manookian had no members or partners

with active licenses to practice law.

**RESPONSE:**

Admitted.

25.     Admit that as of January 1, 2019, Cummings Manookian had no employees.

**RESPONSE:**

The Trustee objects to this Request on the basis that she cannot determine the Request's definition of "employee". To the extent "employee" means salaried employees, the Trustee admits that this Request is accurate. To the extent that "employee" means agent, the Trustee denies that this Request is accurate as Afsoon Hagh was an employee and/or agent of Cummings Manookian, inasmuch as she received insurance and healthcare benefits from Cummings Manookian, she was filing pleadings on behalf of Cummings Manookian, receiving mail at Cummings Manookian's offices, using a Cummings Manookian email address, using a Cummings Manookian telephone number, working on behalf of clients subject to Cummings Manookian engagement agreements, and had full access to Cummings Manookian's electronic files.

26.     Admit that as of February 1, 2019, Cummings Manookian had no employees.
**RESPONSE:**

The Trustee objects to this Request on the basis that she cannot determine the Request's definition of "employee". To the extent "employee" means salaried employees, the Trustee admits that this Request is accurate. To the extent that "employee" means agent, the Trustee denies that this Request is accurate as Afsoon Hagh was an employee and/or agent of Cummings Manookian, inasmuch as she received insurance and healthcare benefits from Cummings Manookian, she was filing pleadings on behalf of Cummings Manookian, receiving mail at Cummings Manookian's offices, using a Cummings Manookian email address, using a Cummings Manookian telephone number, working on behalf of clients subject to Cummings Manookian engagement agreements, and had full access to Cummings Manookian's electronic files.

27.     Admit that as of February 11, 2019, Cummings Manookian had no employees.

**RESPONSE:**

The Trustee objects to this Request on the basis that she cannot determine the Request's definition of "employee". To the extent "employee" means salaried employees, the Trustee admits that this Request is accurate. To the extent that "employee" means agent, the Trustee denies that this

6

Request is accurate as Afsoon Hagh was an employee and/or agent of Cummings Manookian, inasmuch as she received insurance and healthcare benefits from Cummings Manookian, she was filing pleadings on behalf of Cummings Manookian, receiving mail at Cummings Manookian's offices, using a Cummings Manookian email address, using a Cummings Manookian telephone number, working on behalf of clients subject to Cummings Manookian engagement agreements, and had full access to Cummings Manookian's electronic files.

      28.     Admit that as of March 1, 2019, Cummings Manookian had no employees.

**RESPONSE:**

The Trustee objects to this Request on the basis that she cannot determine the Request's definition of "employee". To the extent "employee" means salaried employees, the Trustee admits that this Request is accurate. To the extent that "employee" means agent, the Trustee denies that this Request is accurate as Afsoon Hagh was an employee and/or agent of Cummings Manookian, inasmuch as she received insurance and healthcare benefits from Cummings Manookian, she was filing pleadings on behalf of Cummings Manookian, receiving mail at Cummings Manookian's offices, using a Cummings Manookian email address, using a Cummings Manookian telephone number, working on behalf of clients subject to Cummings Manookian engagement agreements, and had full access to Cummings Manookian's electronic files.

      29.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in December 2018.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

      30.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in January 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

      31.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in February 2019.

**RESPONSE:**

7

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

32.    Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in March 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

33.    Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in April 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

34.    Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in May 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

35.    Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in June 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

36.    Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in July 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that

it did not pay for benefits for its agents.

      37.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in August 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

      38.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in September 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

      39.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in October 2019.

**RESPONSE:**

Admitted that Cummings Manookian made no payments directly to any employee, but denied that it did not pay for benefits for its agents.

      40.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in November 2019.

**RESPONSE:**

Admitted.

      41.     Admit that Cummings Manookian made no payments to any employee, as salary or otherwise, in December 2019.

**RESPONSE:**

Admitted.

      42.     Admit that Cummings Manookian made no payments to any employee, as salary

9

or otherwise, in 2020.

**<u>RESPONSE:</u>**

Admitted.


43.     Admit that Cummings Manookian made no payments to any employee, as salary

or otherwise, in 2021.

**<u>RESPONSE:</u>**

Admitted.

44.     Admit that Cummings Manookian has made no payments to any employee, as

salary or otherwise, in 2022.

**<u>RESPONSE:</u>**

Admitted.


45.     Admit that Brian Cummings never signed a pleading in *Shoemaker v. VUMC*,

Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of

Cummings Manookian.

**<u>RESPONSE:</u>**

The Trustee objects to this Request as it is not relevant to the action against Manookian, PLLC.
Notwithstanding this objection, this Request is admitted.

46.     Admit that Brian Manookian never signed a pleading in *Shoemaker v. VUMC*,

Davidson County Circuit Court No. 19C358, identifying himself as working for or on behalf of

Cummings Manookian.


**<u>RESPONSE:</u>**

Admitted.


47.     Admit that Afsoon Hagh never signed a pleading in *Shoemaker v. VUMC*, Davidson

County Circuit Court No. 19C358, identifying himself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

The Trustee objects to this Request as it is not relevant to the action against Manookian, PLLC. Notwithstanding this objection, it is admitted that Afsoon Hagh never "signed" a pleading in the *Shoemaker* case identifying herself as working for or on behalf of Cummings Manookian, but denied inasmuch as Afsoon Hagh's signature block in that case identified her as working on behalf of Cummings Manookian through March 2019, though all pleadings were "signed" by Brian Cummings.

48.     Admit that no attorney ever signed a pleading in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, identifying himself or herself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

Denied for the reasons stated in response to Request 47 above.

49.     Admit that no attorney ever entered an appearance in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358, that identified himself or herself as working for or on behalf of Cummings Manookian.

**RESPONSE:**

Denied for the reasons stated in response to Request 47 above.

50.     Admit that Brian Cummings did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

The Trustee objects to this Request as it is not relevant to the action against Manookian, PLLC. Notwithstanding this objection, this Request is denied. Brian Cummings testified at his deposition that he did work on the *Shoemaker* case as a member of Cummings Manookian.

51.     Admit that Brian Manookian did no work for or on behalf of Cummings Manookian in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

Case 3:23-cv-00961     Document 6-2     Filed 10/04/23     Page 647 of 662 PageID #: 4241

2019

Denied. Brian Cummings and Brian Manookian each testified that they did work on the *Shoemaker* case as members of Cummings Manookian.

52.     Admit that Afsoon Hagh did no work for or on behalf of Cummings Manookian in

*Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

The Trustee objects to this Request as it is not relevant to the action against Manookian, PLLC. Notwithstanding this objection, this Request is denied. Her signature block in the *Shoemaker* case identified her as a representative of Cummings Manookian through at least March 2019.

53.     Admit that no attorney did any work for or on behalf of Cummings Manookian in

*Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

Denied for the reasons stated in response to Requests 49-52 above.

54.     Admit that Cummings Manookian did not correspond or communicate with Brett

Keefer or Edward Goodwin in 2019.

**RESPONSE:**

Admitted that it did not correspond with Brett Keefer or Edward Goodwin in 2019. The Trustee cannot admit or deny whether it communicated verbally with either of them in 2019.

55.     Admit that Cummings Manookian did not correspond or communicate with Brett

Keefer or Edward Goodwin in 2020.

**RESPONSE:**

Admitted.

56.     Admit that Cummings Manookian did not correspond or communicate with Brett

Keefer or Edward Goodwin in 2021.

**RESPONSE:**

Admitted.

57.     Admit that Cummings Manookian was not involved in negotiating any final terms of settlement in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

Admitted.

58.     Admit that Cummings Manookian is aware of the terms of any settlement in *Shoemaker v. VUMC*, Davidson County Circuit Court No. 19C358.

**RESPONSE:**

Denied to the extent that "Cummings Manookian" refers to the Trustee's knowledge, as the fiduciary representative for the estate of Cummings Manookian. The Trustee is not aware of the terms of any settlement in the *Shoemaker* case.

59.     Admit that Exhibit 2 is an attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melissa Fitzgerald.

**RESPONSE:**

Denied. Brian Manookian testified that the letter attached as Exhibit 2 was never signed by either Marty or Melissa Fitzgerald; rather, a previous version of an attorney-client agreement was signed by the Fitzgeralds.

60.     Admit that Exhibit 2 is a genuine copy of an attorney-client agreement between Cummings Manookian and Marty Fitzgerald and Melissa Fitzgerald.

**RESPONSE:**

Denied. Brian Manookian testified that the letter attached as Exhibit 2 was never signed by either Marty or Melissa Fitzgerald; rather, a previous version of an attorney-client agreement was signed by the Fitzgeralds.

61.     Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 2.

**RESPONSE:**

Denied. Brian Manookian testified that the letter attached as Exhibit 2 was never signed by either Marty or Melissa Fitzgerald; rather, a previous version of an attorney-client agreement was signed by the Fitzgeralds.

13

62.     Admit that on May 23, 2018, Brian Manookian was a member of Cummings Manookian.

**<u>RESPONSE:</u>**

Admitted.

63.     Admit that on May 23, 2018, Brian Manookian had the authority to enter into Exhibit 2 on behalf of Cummings Manookian.

**<u>RESPONSE:</u>**

Admitted, though the Trustee denies that Exhibit 2 is the controlling document for the aforementioned reasons.

64.     Admit that on May 23. 2018, Cummings Manookian entered into an Agreement with Marty and Melissa Fitzgerald whose terms are contained in Exhibit 2.

**<u>RESPONSE:</u>**

Denied as stated.  Brian Manookian testified that the letter attached as Exhibit 2 was never signed by either Marty or Melissa Fitzgerald; rather, a previous version of an attorney-client agreement was signed by the Fitzgeralds.  It is, however, admitted that the terms of the controlling Agreement are identical to the terms included in Exhibit 2 except for provisions regarding fee sharing (Paragraph 2 of the "Contingency Fee" section).

65.     Admit that Exhibit 2 was drafted by Cummings Manookian.

**<u>RESPONSE:</u>**

Admitted.

66.     Admit that Exhibit 2 was drafted by Brian Manookian on behalf of Cummings Manookian.

**<u>RESPONSE:</u>**

Admitted.

67.     Admit that Exhibit 2 is a binding contract.

**<u>RESPONSE:</u>**

14

Denied. Brian Manookian testified that the letter attached as Exhibit 2 was never signed by either Marty or Melissa Fitzgerald; rather, a previous version of an attorney-client agreement was signed by the Fitzgeralds

68. Admit that Exhibit 2 is binding upon Marty and Melissa Fitzgerald

**RESPONSE:**

Denied. Brian Manookian testified that the letter attached as Exhibit 2 was never signed by either Marty or Melissa Fitzgerald; rather, a previous version of an attorney-client agreement was signed by the Fitzgeralds

69. Admit that Exhibit 2 is binding upon Cummings Manookian.

**RESPONSE:**

Denied. Brian Manookian testified that the letter attached as Exhibit 2 was never signed by either Marty or Melissa Fitzgerald; rather, a previous version of an attorney-client agreement was signed by the Fitzgeralds

70. Admit that Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald.

**RESPONSE:**

Denied. Cummings Manookian filed a complaint on behalf of the Fitzgeralds, never filed a notice of withdrawal in that matter, never filed a notice of substitution of counsel in that matter, and never took any other step to notify the Court that Cummings Manookian had withdrawn.

71. Admit that Cummings Manookian withdrew from representing Marty and Melissa Fitzgerald prior to receiving any settlement for them.

**RESPONSE:**

Denied. Cummings Manookian filed a complaint on behalf of the Fitzgeralds, never filed a notice of withdrawal in that matter, never filed a notice of substitution of counsel in that matter, and never took any other step to notify the Court that Cummings Manookian had withdrawn.

72. Admit that Exhibit 2 is the only written agreement between Cummings Manookian and Marty and Melissa Fitzgerald.

**RESPONSE:**

Denied.  The original written agreement, which was not attached to these Requests, is the only written agreement between Cummings Manookian and the Fitzgeralds.

73.     Admit that Exhibit 3 is a letter from Cummings Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**

Admitted.

74.     Admit that on December 7, 2018, Brian Manookian was a member or partner of Cummings Manookian.

**RESPONSE:**

Admitted.

75.     Admit that on December 7, 2018, Brian Manookian was the sole member of Cummings Manookian.

**RESPONSE:**

Admitted.

76.     Admit that on December 7, 2018, Brian Manookian was authorized to speak on behalf of Cummings Manookian.

**RESPONSE:**

Admitted.

77.     Admit that on December 7, 2018, Brian Manookian was authorized to speak to Marty and Melissa Fitzgerald on behalf of Cummings Manookian on the topic of his and Cummings Manookian's representation of the Fitzgeralds.

**RESPONSE:**

Admitted.

78.     Admit that Exhibit 3 is a letter from Brian Manookian on behalf of Cummings Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**

Admitted.


79.     Pursuant to Fed. R. Civ. P. 36(a)(1)(B), admit the genuineness of Exhibit 3.

**RESPONSE:**

Admitted.

80.     Admit that Exhibit 3 was sent by Brian Manookian to Marty and Melissa Fitzgerald.

**RESPONSE:**

Admitted.

81.     Admit that Exhibit 3 was received by Marty and Melissa Fitzgerald.

**RESPONSE:**

The Trustee can neither admit nor deny Request 81.  She has attempted to depose Marty Fitzgerald on this and other topics, having twice issued subpoenas for Mr. Fitzgerald's testimony.  The first time the deposition was rescheduled at the request of the Defendants' counsel due to their alleged unavailability to attend the deposition.  The second time Mr. Fitzgerald, through John Spragens (counsel for Manookian, PLLC), lodged certain objections to the subpoena.  The Trustee is currently working to procure Mr. Fitzgerald's testimony on this issue.

82.     Admit that Exhibit 3 states that Brian Manookian and Cummings Manookian are withdrawing from their representation of Marty and Melissa Fitzgerald.

**RESPONSE:**

Admitted.

83.     Admit that Exhibit 3 requests that Marty and Melissa Fitzgerald obtain another attorney or firm to represent them.

**RESPONSE:**

Admitted.

     84.    Admit that Exhibit 3 states that because Cummings Manookian is withdrawing from the representation, it will not be entitled to any portion of an attorney's fee in the matter.

**RESPONSE:**

Admitted.

     85.    Admit that Exhibit 3 states that Cummings Manookian specifically disclaims any attorney's fee in the Fitzgerald matter.

**RESPONSE:**

Admitted.

     86.    Admit that Cummings Manookian disclaimed any attorney's fee in the Fitzgerald matter via written letter to the Fitzgeralds.

**RESPONSE:**

Admitted that Exhibit 3 states that Cummings Manookian was disclaiming any attorney's fees, but denied that Exhibit 3 has any actual legal impact on whether or not Cummings Manookian is entitled to legal fees in the Fitzgerald matter.

Respectfully submitted,

/s/ Phillip G. Young
Phillip G. Young (TN 021087)
THOMPSON BURTON, PLLC
6100 TOWER CIRCLE, SUITE 200
FRANKLIN, TENNESSEE 37067
(615)-465-6008
phillip@thompsonburton.com

*Special Counsel for Jeanne Ann Burton, Trustee*

## Certificate of Service

The undersigned hereby certifies that a true and exact copy of the foregoing has been served

via United States Mail, first class, postage prepaid, and by electronic mail to the following persons:

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203
john@spragenslaw.com

This 1st day of July, 2022.

*/s/ Phillip G. Young, Jr.*
Phillip G. Young, Jr.

19



**ATTORNEY-CLIENT AGREEMENT**

**BRIAN CUMMINGS**
Licensed to practice in
TN, GA, FL, CA and HI

**BRIAN MANOOKIAN**
Licensed to practice in TN

May 23, 2018

**VIA HAND DELIVERY**
Marty Fitzgerald
Melissa Fitzgerald
1376 Hunter Road
Franklin, Tennessee 37064

     Re:    **Legal Representation and Engagement**

Dear Mr. and Mrs. Fitzgerald:

It is our firm's practice to enter into engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you. Please read it carefully.

Once you have reviewed this letter and are in agreement with its terms, please sign a copy in the space provided below and return it to our office. We reserve the right to not begin work on your case, or stop existing work, until a signed copy is received. If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

**Client and Scope of Representation**

Our clients will be your deceased daughter, Megan Fitzgerald, with you both acting as her legal representatives, as well as each of you in your individual capacities. We will represent you concerning the incident on May 10, 2018 that resulted in Megan's death.

All work on this matter will be done by Brian Manookian, Brian Cummings, or Afsoon Hagh. Our office phone number is (615) 266-3333. My direct line is (615) 266-0226. I can be reached on that line during normal business hours. If you have an after-hours urgent matter regarding your case, you may call Brian Manookian on his cell phone at (615) 979-6440. You may also text message or email me at bmanookian@cummingsmanookian.com at any time.

RJM

45 Music Square West
Nashville, TN 37203
T 615.266.3333
F 615.266.0250

Pauahi Tower
1003 Bishop St.
Suite 2710
Honolulu, HI 96813
T 808.444.4800
F 808.444.4888

www.cmtriallawyers.com

1

Should you have any questions or concerns about any person in our firm who is working on this matter, or any work being performed by us on your behalf, please do not hesitate to contact us. We are happy to discuss those items with you at any time.

## Contingency Fee

- Our fees for work on this case will be on a contingency basis. This means that you only pay us a fee if you receive a settlement, judgment, or award in this matter. If you do not receive a settlement, judgment, or award we do not receive a fee. The contingency fee rate is 33.33%.

We may work with other attorneys in this matter. You understand and consent that a portion of the contingency fee may be shared with other attorneys in accordance with the rules governing the practice of law in Tennessee. In no event, however, shall you incur any additional legal fees or costs by virtue of the sharing of any portion of the contingency fee with another attorney or attorneys.

## Costs and Expenses

There will likely be costs and expenses involved in pursuing this case. They may include items such as court filing fees, expert witness fees, court reporter fees, and deposition transcripts among other things. We will advance those costs and expenses, arranging for them to be paid directly by our firm during the pendency of the matter. You remain responsible for the costs and expenses. At the conclusion of the matter, the costs and expenses that we advanced will be deducted from the amount you receive after the contingency fee is allocated.

We specifically do not charge you for, or collect at the end of matter, expenses for general office copies, faxes, postage, courier services, long-distance phone calls, or mileage. In the event that you lose in litigation, you may also be responsible for the opposing party's attorneys' fees and costs.

## Review and Waiver of Conflicts

We have evaluated potential conflicts of interest with respect to our representation of you. We are not currently aware of any conflicts in connection with this matter.

## Your Responsibilities

We cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with us and to promptly provide all information known or available to you that is relevant to our representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing us of changes in your address and telephone numbers.

2

**Settlement or Compromise**

This is your case. Prior to any settlement, we will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding upon you.

**Termination of Professional Relationship**

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

If any of the terms stated in this letter is not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email, fax, or mail.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to call me.

Sincerely,

Brian Manookian
CUMMINGS MANOOKIAN PLC

I have read and consent to the terms in this letter.

CLIENT
Melissa L Fitzgerald

DATE 5/23/2018

3

2030

# CUMMINGS MANOOKIAN ATTORNEY-CLIENT AGREEMENT

**BRIAN CUMMINGS**
Licensed to practice in
Tennessee, Georgia,
Florida, California, and
Hawaii

**BRIAN MANOOKIAN**
Licensed to practice in
Tennessee

www.cmtriallawyers.com

45 Music Square West
Nashville, TN 37203
T: (615) 266-3333
F: (615) 266-0250

April 19, 2017

**Via E-Mail: chimne_chunga@yahoo.com**
Edward Goodwin
Brett Keefer

    **Re:   Legal Representation and Engagement**

Dear Edward and Brett:

    It is our firm's practice to enter into written engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you. <u>Please read it carefully.</u>

    Once you have reviewed this letter and are in agreement with its terms, please sign a copy in the space provided below and return it to our office. We reserve the right to not begin work on your case, or to stop existing work, until a signed copy is received. If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

## Client and Scope of Representation

    Our clients will be you as the surviving spouse and surviving child regarding the April 14, 2017 death of Chesta Shoemaker at Vanderbilt University Medical Center.

    All work on this matter by Cummings Manookian, our firm, will be done by Brian Cummings or Brian Manookian. Our office phone number is (615) 266-3333. We can be reached on that line during normal business hours.

    Should you have any questions or concerns about any person in our firm who is working on this matter, or any work being performed by us on your behalf, please do not hesitate to contact us. We are happy to discuss those items with you at any time.

## Contingency Fee

    Our fees for work on this case will be on a contingency basis. This means that you only pay us a fee if you receive a settlement, judgment, or

1

award in this matter. If you do not receive a settlement, judgment, or award we do not receive a fee. The contingency fee rate is 33.33%.

## Costs and Expenses

There will likely be costs and expenses involved in pursuing this matter. They may include items such as obtaining records, court filing fees, expert witness fees, court reporter fees, and deposition transcripts, among other things. We will advance those costs and expenses, arranging for them to be paid directly by our firm during the pendency of the matter. You remain ultimately responsible for the costs and expenses. At the conclusion of the matter, the costs and expenses that we advanced will be reimbursed to our firm by those expenses being deducted from the amount you receive after the contingency fee is allocated.

We specifically do not charge you for, or collect at the end of matter, expenses for general office copies, faxes, postage, courier services, long-distance phone calls, or mileage. In the potential and unlikely event that you lose in litigation via the Defendant getting dismissed via a Motion to Dismiss being granted in favor of the Defendant (which is very unlikely), you may also be responsible for the opposing party's attorneys' fees and costs.

## Review and Waiver of Conflicts

We have evaluated potential conflicts of interest with respect to our representation of you. We are not currently aware of any conflicts in connection with this matter.

## Your Responsibilities

We cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with us and to promptly provide all information known or available to you that is relevant to our representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing us of changes in your address and telephone numbers.

## Settlement or Compromise

This is your case. Prior to any settlement, we will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding.

## Termination of Professional Relationship

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you

2

terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

## Mediation and Binding Arbitration of Any Attorney-Client Disputes

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

*******************

If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (bcummings@cummingsmanookian.com), fax (615-266-0250), or mail.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me.

Sincerely,

Brian Cummings
CUMMINGS MANOOKIAN PLC

3

2033

I have read and consent to the terms in this letter.

_____   4-19-17
Edward Goodwin                     DATE

_____   4-19-17
Brett Keefer                       DATE

4