EFILED  10/29/21 11:03 AM  CASE NO. 19C358  Richard R. Rooker, Clerk

**Information to identify the case:**

| Debtor | **CUMMINGS MANOOKIAN, PLLC** | EIN ▮▮▮▮ |
|---|---|---|
| | Name | |

| United States Bankruptcy Court   **MIDDLE DISTRICT OF TENNESSEE** | |
|---|---|
| Case number:  **3:19-bk-07235** | Date case filed for chapter  7  **11/6/19** |

## Official Form 309C (For Corporations or Partnerships)

## Notice of Chapter 7 Bankruptcy Case — No Proof of Claim Deadline    12/15

For the debtor listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered. This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines.

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at www.pacer.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

Do not file this notice with any proof of claim or other filing in the case.

| 1. **Debtor's full name** | CUMMINGS MANOOKIAN, PLLC | |
|---|---|---|
| 2. **All other names used in the last 8 years** | | |
| 3. **Address** | 45 MUSIC SQUARE WEST NASHVILLE, TN 37203 | |
| 4. **Debtor's attorney** Name and address | LEFKOVITZ AND LEFKOVITZ, PLLC 618 CHURCH ST STE 410 NASHVILLE, TN 37219 | Contact phone: 615 256-8300  Email: slefkovitz@lefkovitz.com |
| 5. **Bankruptcy trustee** Name and address | JEANNE ANN BURTON Jeanne Ann Burton PLLC 4117 Hillsboro Pk Suite 103–116 NASHVILLE, TN 37215 | Contact phone: 615 678-6960  Email: None |
| 6. **Bankruptcy clerk's office** Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov. | 701 Broadway Room 170 Nashville, TN 37203 | Hours open: 8:00AM–4:00PM Monday–Friday  Contact phone: 615-736-5584  Date: 11/6/19 |
| 7. **Meeting of creditors** The debtor's representative must attend the meeting to be questioned under oath. Creditors may attend, but are not required to do so. | December 2, 2019 at 10:00 AM  The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket.  *** Valid photo identification required *** | Location:  **Customs House, 701 Broadway, Room 100, Nashville, TN 37203** |
| 8. **Proof of claim** Please do not file a proof of claim unless you receive a notice to do so. | No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now.  If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline. | |
| 9. **Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |

Official Form 309C (For Corporations or Partnerships) **Notice of Chapter 7 Bankruptcy Case — No Proof of Claim Deadline**

# Exhibit 3

EFILED  12/16/21 09:57 AM  CASE NO. 19C358  Richard R. Rooker, Clerk

## IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

|  |  |  |
|---|---|---|
| **BRETTON KEEFER, as surviving adult** | ) | |
| **Son and next-of-kin of his deceased** | ) | |
| **Mother, CHESTA SHOEMAKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 19C358** |
| | ) | |
| **VANDERBILT UNIVERSITY MEDICAL** | ) | |
| **CENTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## AMENDED ORDER OF DISMISSAL WITH PREJUDICE

IT IS HEREBY ORDERED that Defendant Vanderbilt University Medical Center is dismissed from the case with prejudice.  The Court will retain jurisdiction over the lien asserted by former Plaintiff's counsel, Brian Cummings, and the lien asserted by Phillip Young, Special Counsel for Jeanne Ann Burton, Bankruptcy Trust for the bankruptcy filed by the debtor Cummings Manookian, PLLC in the United States Bankruptcy Court for the Middle District of Tennessee, Case No. 3:19-bk-07235.  Vanderbilt University Medical Center will be assessed any unpaid court costs that exist as of the date of this Order.

ENTERED this _____ day of December, 2021.

_____
CIRCUIT COURT JUDGE
JOSEPH BINKLEY

**WISEMAN ASHWORTH LAW GROUP, PLC**

/s/ Bradley M. Dowd
THOMAS A. WISEMAN, III, #11738
tom@wisemanashworth.com
BRADLEY M. DOWD, #37207
brad@wisemanashworth.com
511 Union Street, Suite 800
Nashville, Tennessee 37219
(615) 254-1877

*Attorneys for the Defendant*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true copy of the foregoing has been electronically served via the Court's electronic case filing system on the 10th day of December, 2021 to the following:

Afsoon Hagh
Hagh Law PLC
47 Music Square West
Nashville, TN 37203
afsoon@haghlaw.com

John Edwards
William B. Bystrynski
Edwards Kirby LLP
3201 Glenwood Ave., Suite 100
Raleigh, NC 27612
jedwards@edwardskirby.com
bbystrynski@edwardskirby.com

/s/ Bradley M. Dowd
BRADLEY M. DOWD

2

254

EFILED  12/16/21 09:57 AM  CASE NO. 19C358  Richard R. Rooker, Clerk



**Case Title:**    KEEFER V VANDERBILT UNIVERSITY MEDICAL CENTER

**Case Number:**    19C358

**Type:**    FINAL ORDER

The foregoing is hereby ORDERED, ADJUDGED AND DECREED:

Judge Joe Binkley, Jr., Fifth Circuit

# Exhibit 4

## IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| **BRETTON KEEFER, as a surviving adult** )<br>**Son and next-of-kin of his deceased** )<br>**Mother, CHESTA SHOEMAKER,** )<br> )<br>  **Plaintiff,** )<br> )<br>**v.** )<br> )<br>**VANDERBILT UNIVERSITY MEDICAL** )<br>**CENTER,** )<br> )<br>  **Defendant.** ) | **No.: 19C358** |

### MOTION FOR STATUS CONFERENCE

Brian Cummings, former counsel for Plaintiff and attorney fee lien-holder, respectfully

moves the Court for a status conference concerning a hearing on the award of attorney's fees.

Respectfully submitted,

/s/  James W. Price, Jr.
James W. Price, Jr., #3538
Attorney for Brian Cummings
201 4th Avenue North, Suite 1800
Nashville, TN  37219
(615) 244-5772
jprice@pricehillkolarich.com

**THIS MOTION IS SET TO BE HEARD ON THE
14th DAY OF JANUARY, 2022, AT 9:00 A.M.**

## CERTIFICATE OF SERVICE

I certify that I have place a true and exact copy of the foregoing document in the United

States Mail, postage prepaid, addressed to:

> Afsoon Hagh
> Hagh Law PLC
> 47 Music Square West
> Nashville, TN 37203
>
> John Edwards
> William B. Bystrynski
> Edwards Kirby LLP
> 3201 Glenwood Ave., Suite 100
> Raleigh, NC 27612

This the 16th day of December, 2021.

/s/   James W. Price, Jr.
James W. Price, Jr.

# Exhibit 5

## IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

|  |  |
|---|---|
| **BRETTON KEEFER, on behalf of his deceased mother, CHESTA SHOEMAKER**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**VANDERBILT UNIVERSITY MEDICAL CENTER**<br><br>    **Defendant.** | **NO. 19C-358**<br><br>**JURY DEMAND** |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO BRIAN CUMMINGS' MOTION FOR STATUS CONFERENCE

The Plaintiff opposes Brian Cummings' "Motion for Status Conference." In his one-sentence Motion, Mr. Cummings asserts that he is an "attorney fee lien-holder" and requests that the Court set a status conference "concerning a hearing on the award of attorney's fees." He declines to cite any support for his belief that he is a lien holder, or that his otherwise unspecified lien should be adjudicated at some indeterminate hearing by this particular Court in this particular action.

Mr. Cummings request should be denied. As demonstrated by the Tennessee Supreme Court's holding in *Schmitt v. Smith*, Mr. Cummings is confused both as to his own status, as well as the procedure for adjudicating a purported attorney's lien. 118 S.W.3d 348 (Tenn. 2003).

1

### I.   Mr. Cummings is not entitled to any portion of the proceeds of this now-concluded case.

Even if Mr. Cummings had instituted a lien dispute in the correct manner (he has not), he would not be entitled to any portion of the proceeds in this concluded case. Mr. Cummings had a written contract with the client, Brett Keefer, laying out the terms of his engagement. That engagement agreement provided that <u>if the client fired the attorney</u>, the attorney would be entitled to a portion of the ultimate recovery as well as repayment of any advanced expenses. **Exhibit 1**. Conversely, the engagement agreement provides that <u>if the attorney quit the case</u>, the attorney would only be entitled to repayment of his advanced expenses.

Mr. Cummings abruptly and without notice quit this case on October 2, 2020 after the client declined to revise the terms of Mr. Cummings' engagement agreement to increase Mr. Cummings' percentage of the recovery. Pursuant to the terms of the previous contract which Mr. Cummings dictated and signed, Mr. Cummings was and is only due repayment of his advanced expenses.

Those expenses (approximately $60,000) were the very first funds distributed when the settlement proceeds were received. Mr. Cummings has been paid in full under the terms of his own engagement agreement. His own choices and conduct preclude him from receiving additional funds, regardless of whatever he wishes he had now done in hindsight.

## II.     To the extent he believes he is entitled to any attorney fee, Mr. Cummings must institute a separate proceeding

Importantly, to the extent Mr. Cummings actually believes he is entitled to any additional payment beyond recouping his expenses, he must institute a separate proceeding. This is the case because: (1) Mr. Cummings is not a party to this proceeding; (2) Mr. Cummings must put the Defendant on notice of his claims as well as what relief Mr. Cummings is seeking by filing an actual, written Complaint which pleads particular facts and allegations; and because (3) the Defendant must then be afforded the opportunity to raise defenses to those claims.

The Tennessee Supreme Court addressed this reality in 2003 in the case of *Schmitt v. Smith*, finding that:

> While a charging lien serves to secure an attorney's fees, <u>it does not function as an adjudication of the rights between the lawyer and his or her client</u>. Thus, <u>"[a] trial court may declare the existence of an attorney's lien in the suit out of which the dispute regarding the attorney's fee arose, but ordinarily an attorney, not being a party to the proceeding, may not obtain a judgment with respect to his or her fee in that action</u>.
>
> *Schmitt v. Smith,* 118 S.W.3d 348, 353-354 (Tenn. 2003)

Examples of specific defenses to an assertion of an attorney's fee include that the attorney has contractually disclaimed more than a certain amount of payment, or that an attorney committed professional malpractice in the representation of the

3

262

client. If Mr. Cummings ultimately decides to institute a separate proceeding, those and other defenses will be specifically raised and must be litigated.[1]

Finally, Mr. Cummings' own engagement agreement with the client includes a mediation and arbitration clause that precludes Mr. Cummings from asserting any claims for fees outside of a mediation and arbitration. **Exhibit 1**. To the extent Mr. Cummings ever institutes a separate proceeding in a trial court, any Defendant would be entitled to seek its dismissal based upon that provision.

### III. Conclusion

Mr. Cummings request to schedule "a status conference concerning a hearing on the award of attorney's fees" should be denied. That is not the procedure for adjudicating an attorney's fee lien. Mr. Cummings must first institute a separate proceeding, and it appears he has already waived his ability to do so in this or any other Court via a self-imposed arbitration clause.

One fact is crystal clear: Mr. Cummings may not simply file a one-sentence

---

[1] For example, Mr. Cummings unquestionably committed malpractice on multiple occasions. Mr. Cummings disclosed a critical physician "expert," despite the fact that the physician had never been licensed in Tennessee or a contiguous state, and such fact was apparent on the physician's resume which was sent to Mr. Cummings.

Likewise, the only two major tasks for which Mr. Cummings took responsibility were ultimately ordered to be redone by the Court in their entirety. Finally, the manner in which Mr. Cummings withdrew, days before the start of expert depositions scheduled around Mr. Cummings' own calendar was textbook client abandonment and professional negligence. In sum, the client would testify, if called to, that Mr. Cummings' participation in the matter was a net, and major, detriment.

4

motion *in this action* asking to schedule "a hearing on the award of attorney's fees."

As explained by the Tennessee Supreme Court, this Court is simply not in a position

to adjudicate such a controversy; nor is any as-yet unnamed Defendant in a position

to respond to Mr. Cummings as-yet unarticulated claims. The Court should enter an

Order denying Mr. Cummings' request and holding that no such further requests be

made in this particular action.

Respectfully submitted,

s/ AFSOON HAGH

**Afsoon Hagh, #28393**
Hagh Law PLLC
(615) 566-0937 (phone)
(615) 266-3655 (fax)
afsoon@haghlaw.com

*Attorney for the Plaintiff*

5

## **CERTIFICATE OF SERVICE**

I certify that on December 3, 2021 a true and correct copy of this pleading was provided by the Court's Electronic Filing System to the following:

Tom Wiseman
Brad Dowd
Wiseman Ashworth
511 Union Street, Suite 800
Nashville, Tennessee 37219
Tom@wisemanashworth.com
Brad@wisemanashworth.com
*Attorneys for the Defendant*

James W. Price, Jr.
201 4th Avenue North, Suite 1800
Nashville, TN 37219
jprice@pricehillkolarich.com
*Attorney for Brian Cummings*

s/ AFSOON HAGH

_____

AFSOON HAGH

6

# Exhibit 6

## IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

**BRETTON KEEFER, on behalf** )
**of his deceased mother,** )
**CHESTA SHOEMAKER,** )
)
    **Plaintiff,** )
)
**vs.** )   **Docket No: 19C-358**
)   **JURY DEMAND**
**VANDERBILT UNIVERSITY** )
**MEDICAL CENTER,** )
)
    **Defendant.** )

## BRIAN CUMMINGS CORRECTED REPLY TO
## PLAINTIFF'S RESPONSE TO MOTION FOR STATUS CONFERENCE

The case in which this attorney fee issue arises was a wrongful death case of a patient at

Vanderbilt University Medical Center. Mr. Cummings initiated this case by initial contact with

the client, Brett Keefer, in April of 2017. He worked regularly as lead counsel in this matter until

his withdrawl in October of 2020. Because this case was settled in October of 2021, Mr.

Cummings was actively involved as lead counsel for forty-two (42) of the fifty-four (54) months

of the case.

Mr. Cummings performed all aspects of the intake of this matter, including receiving

initial intake information, contacting the client after the death of his mother, reviewing the

medical information pertinent to the cause of the patient's death. Mr. Cummings performed a

detailed comprehensive review of the Vanderbilt records and prepared a detailed summary letter

that became the basis of the Complaint. This letter was sent to all of the expert witnesses. Mr.

Cummings attended the pre-suit mediation as the only attorney on behalf of the Plaintiff. Mr.

Cummings prepared and filed the 550 paragraph, 65 page Complaint without help from any other

attorney. Mr. Cummings prepared the written discovery which was propounded to the Defendant

and contacted and retained all the Rule 26 witnesses, including nine medical experts and an

expert economist. Mr. Cummings was the only attorney involved with retaining and working

with the Rule 26 witnesses prior to the Rule 26 disclosure being served and was the only attorney

on the Plaintiff's side of the case making any contact with any of the Rule 26 witnesses until after

he withdrew from the case. Mr. Cummings prepared the 85 page Rule 26 disclosures which were

provided to the parties. Until his withdrawal in October of 2020, Mr. Cummings prepared and

conducted one-half of the depositions taken. The remaining depositions were taken by Ryan

Manookian, his then partner. Mr. Cummings prepared the Plaintiff and the patient's fiancé for

their depositions. Mr. Cummings attended these witnesses depositions with no other counsel for

the Plaintiff involved.

Because of an ethical dispute between Mr. Cummings and the Plaintiff's new counsel,

Afsoon Hagh, Mr. Cummings withdrew from the case in October of 2020.

## DISCUSSION:

This Court is the proper forum to determine the disposition of the attorneys' fees in the

case of *Keefer v. Vanderbilt University Medical Center*. Afsoon Hagh, one of the attorneys for

the Plaintiff in the underlying case, has asserted in the Response the Motion that this Court is not

the proper form to resolve the attorney fee issue and states that Mr. Cummings should have filed

a separate adversary proceeding in another court.

Ms. Hagh, in her Response, relies on the case of *Schmitt v. Smith*, 118 S.W.3d 348 (Tenn.

2003), for that proposition. That case, however, does not support Ms. Hagh's argument and, in

-2-

fact, stands for the proposition that this Court is the proper forum to determine the award and division of attorneys' fees.

The *Schmitt* case was a divorce action in which the attorney seeking to enforce an attorney fee lien was the second attorney and came in after the first attorney withdrew. At the conclusion of the case, the attorney filed an attorney's lien pursuant to the statute. Although it appears that the attorney filed the lien under the wrong subsection of the statute, filing her lien under the provision for an attorney who was involved with the case from the beginning instead of the second section which involves a replacement attorney. The objection to enforce the lien was, as Plaintiff's counsel claims in this case, that the attorney should have filed a separate proceeding to enforce the lien, and second, that the attorney's lien should have incorporated into the final decree of judgment. The court quickly disposed of each of these matters holding that the lien was properly filed, and it was unnecessary to include it in the final decree and, most important for this case, that because of judicial economy, it was proper for the court which heard the underlying case to hear the issue of attorneys' fees. The court stated:

> Finally, we note that it is in the interest of judicial economy to allow the same court to hear all matters regarding the property in question. Forcing the parties to proceed in a separate action with a judge unfamiliar with the underlying facts of the (divorce) action would cause both parties to incur additional attorney's fees, costs, and litigation expenses. *Schmitt* @ p. 355

Mr. Cummings properly filed his lien on November 27, 2020, and served both Thomas Wiseman, attorney for the Defendant, and Afsoon Hagh, attorney for the Plaintiff. He also mailed a copy to the Plaintiff, Brett Keefer. Accordingly, the lien is properly filed and before this Court for disposition.

Ms. Hagh has raised a number of other issues in the Response which are not relevant to the issue of whether or not this Court has jurisdiction to dispose of the case but, if relevant at all, would be raised at the hearing on the disposition of attorneys' fees.  However, in order to not let these allegations remain unanswered, Mr. Cummings would state that Ms. Hagh incorrectly argues that under the existing Attorney/Fee Agreements, Mr. Cummings was only entitled to expenses if he were to withdraw.  Not only does this argument not comport with the law, it is also a misstatement of the actual agreement.

In the initial Attorney/Fee Agreement, Mr. Cummings and his firm agreed to advance costs. The paragraph stated by Ms. Hagh only acknowledges that by withdrawing from the case, the Plaintiff or attorney were not abandoning their right to be reimbursed for the costs advanced as set forth in the agreement.  It does not waive the right to an attorney fee which stated in the Agreement that Plaintiff's attorneys would be entitled to one-third (1/3) of all recovery, in addition to the advanced costs.  The paragraph cited by Ms. Hagh does not, in any way, negate the Plaintiff's right to attorney's fees which the Court has already approved in the minor settlement.

In Ms. Hagh's footnotes in the Response, she makes allegations which are unfounded and unsupported regarding Mr. Cummings alleged malpractice for failure to perform.  Mr. Cummings has addressed his part generally in the introduction of this Response but certainly denies that malpractice and will address that fully at the final hearing this attorney fee hearing.

-4-

270

Respectfully submitted,

/s James W. Price, Jr.
James W. Price, Jr., #3538
Attorney for Brian Cummings
Price, Hill & Kolarich
Suite 1800, 201 4th Avenue North
Nashville, TN 37219
(615) 244-5772

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing document was delivered by electronic court filing on this the 13th day of January, 2022, to:

> Afsoon Hagh
> Hagh Law, PLLC
> afsoon@haghlaw.com
>
> Tom Wiseman
> Brad Dowd
> Wiseman Ashworth
> 511 Union Street, Suite 800
> Nashville, TN 37219

/s    James W. Price, Jr.
James W. Price, Jr.

-5-

271

# Exhibit 7

## IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| **BRETTON KEEFER, on behalf of his deceased mother, CHESTA SHOEMAKER**<br><br>**Plaintiff,**<br><br>v.<br><br>**VANDERBILT UNIVERSITY MEDICAL CENTER**<br><br>**Defendant.** | **NO. 19C-358**<br><br>**JURY DEMAND** |

### PLAINTIFF'S SUR-REPLY IN OPPOSITION TO BRIAN CUMMINGS' MOTION FOR STATUS CONFERENCE

Brian Cummings has filed a reply mischaracterizing the Tennessee Supreme Court's holding in *Schmitt v. Smith*. 118 S.W.3d 348 (Tenn. 2003). This brief sur-reply corrects his misstatement of the law applicable to attorney's liens.

### I.    *Schmitt v. Smith*

Mr. Cummings states that *Schmitt* stands for the proposition that an attorney's lien should be adjudicated in the underlying case. That is false. In fact, *Schmitt* repeatedly states the opposite, and only draws one narrow exception – which does not exist here – where the disputed property is under the trial court's direct control.

*Schmitt* was a divorce case in which the prior attorney asserted a lien for work

1

previously performed.  In deciding the case, the Tennessee Supreme Court began by discussing the two types of attorney's liens: charging liens and retaining liens.  A retaining lien applies in a case where the attorney is in possession of client property.  A charging lien, however, attaches to proceeds of a judgment.  The Court made clear that:

> While a charging lien serves to secure an attorney's fees, <u>it does not function as an adjudication of the rights between the lawyer and his or her client</u>.  Thus, a trial court may declare the existence of an attorney's lien in the suit out of which the dispute regarding the attorney's fee arose, but ordinarily <u>an attorney, not being a party to the proceeding, may not obtain a judgment with respect to his or her fee in that action</u>.  *Schmitt v. Smith*, 118 S.W.3d 348, 353-54 (Tenn. 2003)

The Court then explained the narrow exception to the general rule that an attorney must initiate a separate action in order to adjudicate an attorney's lien.

> Although <u>an attorney must generally commence a separate proceeding to enforce his or her contractual right to a fee</u>, an exception has been carved out in which the trial court may exert jurisdiction where the money or property that is the subject of the lien comes within the control of the court in the case in which the services were rendered.  *Schmitt v. Smith*, 118 S.W.3d 348, 354 (Tenn. 2003)

The Tennessee Supreme Court then went on to find that the *Schmitt* case fell within the narrow exception permitting an attorney to obtain a judgment in the

2

underlying action because the Court exercised direct control over the disputed property.

> We have here a divorce action in which the trial court adjudicated the distribution of the marital property owned by Schmitt and Smith. The residence that was the subject of McCrary's lien was included in the marital property ultimately divided by the trial court. As such, the property upon which the lien was to be enforced, the house, was within the control of the trial court.
>
> *Id*.

Thus, *Schmitt* reiterates the longstanding rule that an attorney must file a separate proceeding for adjudication of an attorney's lien in all but the narrow circumstances where the disputed property is actually held by, or controlled by, the Court.

That exception does not exist in this case. This is a post-judgment dispute as to settlement proceeds that were previously paid to the Plaintiff and which have never been deposited to the Court or come under the Court's control. This case is governed by the general rule, and, in that way is analogous to the Tennessee Court of Appeal's holding in *Starks v. Bart Durham Injury Law*.

## II.   *Starks v. Bart Durham Injury Law*

The *Starks* case involved a law firm's efforts to enforce an attorney's lien on the proceeds of a personal injury settlement. In that case, the Plaintiff had replaced

3

her initial lawyer after becoming dissatisfied with the law firm's efforts at securing a settlement. After a later settlement was reached, the trial court attempted to adjudicate the dispute as part of the underlying action. The Court of Appeals reversed those efforts, summarizing its holding as follows:

> Ms. Starks' second argument is that... the mere establishment of the lien does not amount to an adjudication of the rights between her and the Bart Durham Law Offices. She asserts that the attorney's lien was merely a charge against the settlement proceeds and that the trial court lacked authority to execute on the lien or to enter a judgment in the Bart Durham Law Offices' favor. We agree.
> *Starks v. Browning*, 20 S.W.3d 645, 652 (Tenn. Ct. App. 1999)

In reaching its conclusion, the Court of Appeals, laid out the same general rule and narrow exception repeatedly relied upon by the appellate courts of this state for over one hundred fifty (150) years.[1]

> After a court has declared an attorney's lien, the lawyer may then commence a separate proceeding in a court of competent jurisdiction to enforce his or her contractual right to a fee. In this separate suit, the issues relating to the attorney's entitlement to the fee and costs secured by the lien and to the attorney's professional negligence may be

---

[1] *See* Keith v. Fitzhugh, 83 Tenn. 49, 50 (1885); McCamy v. Key, 71 Tenn. 247, 250-51 (1879); Brown & Reid v. Bigley, 3 Tenn. Ch. at 626; Fain v. Inman, 53 Tenn. (6 Heisk.) 5, 12 (1871).

4

276

litigated.   This separate proceeding offers the client, now in the posture
of a defendant, an opportunity to present defenses to the attorney's
claim for a fee, including defenses that the attorney is not entitled to a
fee because of professional negligence or some other basis…

*Starks v. Browning*, 20 S.W.3d 645, 652-653 (Tenn. Ct. App. 1999)

Accordingly, because the settlement proceeds were never brought
under the control of the trial court during the underlying litigation, the
Bart Durham Law Offices should have filed a separate action against
Ms. Starks for its fee rather than attempting to obtain it in this case.

*Starks v. Browning*, 20 S.W.3d 645, 653 (Tenn. Ct. App. 1999)

The obligation to bring a separate action is not discretionary.  It functions to

require the attorney to specify the "who, what, where, when, and why" of his claim,

and to allow the defendant to raise defenses and counterclaims.  As the Court of

Appeals in *Starks* noted:

Both retaining and charging lien rights may be waived or forfeited in a
variety of ways.   They may be lost if a lawyer fails to represent his or
her client's interests faithfully, honestly, and consistently or fails to
discharge his or her duties with the utmost faith.   Accordingly, a client
may assert an affirmative defense or counterclaim based on
professional negligence in response to a lawyer's action to enforce a
charging lien.

*Starks v. Browning*, 20 S.W.3d 645, 651 (Tenn. Ct. App. 1999)

5

277

The requirement that a separate proceeding be instituted is mandatory. It affords the client both notice and the opportunity to receive notice of the claims and to assert affirmative defenses and counterclaims.

### III. Conclusion

The law is clear. In all but one narrow circumstance, the rule in Tennessee (for over one hundred fifty years) requires any attorney asserting a charging lien to commence a separate action if he or she wishes to have the claim adjudicated. That circumstance does not exist here, and Mr. Cummings makes no allegation to the contrary. Rather, it is undisputed that the settlement proceeds are not in the custody of the Trial Court, nor have they ever been.

Accordingly, Mr. Cummings' request for a scheduling order should be denied simply because there is nothing to schedule. This case is over. It has been settled. If Mr. Cummings wishes to adjudicate a separate dispute over an attorney's lien, he must first file a separate proceeding. If and when he does that, a scheduling order very well may be appropriate.

6

Respectfully submitted,

s/ AFSOON HAGH

_____

**Afsoon Hagh, #28393**
Hagh Law PLLC
(615) 566-0937 (phone)
(615) 266-3655 (fax)
afsoon@haghlaw.com

*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on January 13, 2021 a true and correct copy of this pleading was provided by the Court's Electronic Filing System to the following:

Tom Wiseman
Brad Dowd
Wiseman Ashworth
511 Union Street, Suite 800
Nashville, Tennessee 37219
Tom@wisemanashworth.com
Brad@wisemanashworth.com
*Attorneys for the Defendant*

James W. Price, Jr.
201 4th Avenue North, Suite 1800
Nashville, TN 37219
jprice@pricehillkolarich.com
*Attorney for Brian Cummings*

s/ AFSOON HAGH

_____

AFSOON HAGH

7

279

# Exhibit 8

IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

BRETTON KEEFER, as surviving adult )
son and next-of-kin of his deceased )
Mother, CHESTA SHOEMAKER, )
                                    )
      Plaintiff, )
                                    )
VS. )           No. 19C358
                                    )
VANDERBILT UNIVERSITY MEDICAL )
CENTER, )
                                    )
      Defendant. )

## COURT'S ORDER ALTERING AND AMENDING THIS COURT'S ORDER OF DECEMBER 16, 2021

This cause came on to be heard on the 14th day of January, 2022, on motion by counsel for

Attorney Brian Cummings for this Court to conduct a status conference regarding a hearing on

Attorney Brian Cummings' request for attorney fees. Counsel for the named Plaintiffs in this case

filed a response in opposition to this Motion.

On December 16, 2021, an Amended Order of Dismissal With Prejudice was signed and

entered for this case.

T.C.A. Section 23-2-102 states as follows:

> "Attorneys and solicitors of record who begin a suit shall have a lien upon
>
> the plaintiff's or complainant's right of action from the date of the filing of
>
> the suit."

The case of *Joan C. Schmitt v. James Charles Smith*, 118 S.W.3d 353, 354 (2003) states as

follows:

> "Thus, '[a] trial court may declare the existence of an attorney's lien in the suit
>
> out of which the dispute regarding the attorney's fee arose, but ordinarily an

1

attorney, not being a party to the proceeding, may not obtain a judgment with respect to his or her fee in that action.' (internal citations omitted)

Although an attorney must generally commence a separate proceeding to enforce his or her contractual right to a fee, an exception has been carved out in which the trial court may exert jurisdiction where the money or property that is the subject of the lien 'comes within the control of the court in the case in which the services were rendered.'  *Starks v. Browning*, 20 S.W.3d 645, 653 (Tenn.Ct.App.1999)"

This healthcare liability case was compromised and settled prior to the trial date, and since this Court never had control of the money which is the subject of the claimed lien by Attorney Brian Cummings, the above-stated exception does not apply.

The Court finds that this Court's Order of December 16, 2021 should be altered and amended as per TRCP 59.04 to provide that as per T.C.A. Section 23-2-102, since Attorney Brian Cummings was one of the attorneys of record for the Plaintiff who began this lawsuit, the Court declares the potential existence of an attorney's lien.  The existence of an attorney's lien in behalf of Attorney Brian Cummings in this case is contested, and that issue must be determined by a separate proceeding.

"Once the Court has declared an attorney's lien, the lawyer may then commence a **separate proceeding** in a court of competent jurisdiction to enforce his or her contractual right to a fee".  *Starks v. Browning*, 20 S.W.3d 645, 652 (Tenn.Ct.App.1999)  (emphasis added)

IT IS SO ORDERED.

JUDGE JOE P. BINKLEY, JR.

2

282

<u>Certificate of Service</u>

I hereby certify that a true and correct copy of the foregoing has been mailed, postage prepaid, to:

Thomas A. Wiseman, Esq.
Bradley M. Dowd, Esq.
WISEMAN ASHWORTH LAW GROUP, PLC
511 Union Street, Suite 800
Nashville, TN 37219

Afsoon Hagh, Esq.
HAGH LAW, PLC
47 Music Square West
Nashville, TN 37203

John Edwards, Esq.
William B. Bystrynski, Esq.
Edwards Kirby, LLP
3201 Glenwood Ave., Suite 100
Raleigh, NC  27612

James W. Price, Jr.,
201 4th Avenue, North, Suite 1800
Nashville, TN 37219

on this the 18th day of January, 2022.

_____
Deputy Clerk

3

# Exhibit 9

## IN THE GENERAL SESSIONS COURT FOR DAVIDSON COUNTY, TENNESSEE

**SHAROK SHAHGOLI,**                )

**Plaintiff,**                      )

                                    )        **NO. 22GC8438**

**v.**                              )

                                    )

**CARCAS AGNOLY-MOTIEL,**           )

                                    )

**Defendant.**                      )

---

### ORDER OF VOLUNTARY DISMISSAL WITH PREJUDICE

---

The Plaintiff, having given notice of Voluntary Dismissal pursuant to Rule 41.01(1) of the Tennessee Rules of Civil Procedure, it is,

ORDERED, that this action is hereby dismissed *with prejudice*. Costs shall be taxed to the Plaintiff, in care of Hagh Law, PLLC, at the address below.

_____

**JUDGE**

APPROVED FOR ENTRY BY:

_____

**Afsoon Hagh, No. 28393**
Hagh Law PLLC
226 Pelham Drive
Brentwood, Tennessee 37027
afsoon@haghlaw.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on September 21, 2022 a true and correct copy of this document was provided by electronic mail to:

Ms. Jacquelyn Hughes
The General
6000 American Parkway
Madison, WI 53783-0001
Phone: 800-280-1466  ext 4259
Fax: (800) 544-9021
jhughes@thegeneral.com
claims@thegeneral.com

_____

**Afsoon Hagh**

EFILED  09/22/22 08:28 AM  CASE NO. 22GC8438  Joseph P. Day, Clerk



**Case Title:**        SHAROK SHAHGOLI V CARCAS AGNOLY-MOTIEL

**Case Number:**    22GC8438

**Type:**              CIVIL WARRANT JUDGMENT (NON-GENERATED)

The foregoing is hereby ORDERED,
ADJUDGED, AND DECREED:

Judge Sam Coleman, Division X - General
Sessions

Electronically signed on 09/22/2022 08:28 AM     page 3 of 3

# Exhibit 10

## IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| **THOMAS LINTHICUM and** )<br>**DIANA SANABRIA,** )<br> )<br> **Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**BATTLE OF FRANKLIN TRUST, INC.** )<br>**d/b/a CARNTON PLANTATION d/b/a** )<br>**CARNTON HOUSE d/b/a CARNTON,** )<br>**BRIGHT EVENT PRODUCTIONS, INC.,** )<br> )<br> **Defendants.** ) | **NO. _____**<br><br>**JURY DEMAND** |

## COMPLAINT

The Plaintiffs respectfully state to the Court and Jury the following:

### PARTIES, VENUE, AND JURISDICTION

1.     The Plaintiffs, Thomas Linthicum and Diana Sanabria, are citizens and residents of Davidson County, Tennessee.

2.     The Defendant, Battle of Franklin Trust, Inc., ("BOFT") is a 501(c)(3) organization registered in the State of Tennessee with its principal office located at 1345 Eastern Flank Circle, Franklin, Tennessee 37064.  BOFT does business, alternatively, as "Carnton," "Carnton House," and "Carnton Plantation." Throughout 2019 and 2020, BOFT solicited business in Davidson County, Tennessee and from residents of Davidson County, Tennessee.  BOFT may be

1

served with process at 1345 Eastern Flank Circle, Franklin, Tennessee 37064.

3.      The Defendant, Bright Event Productions, Inc, ("Bright Event") is a Tennessee Corporation with its principal office located in Davidson County, Tennessee at 500 Brick Church Park Drive, Nashville, Tennessee 37207.  It may be served at that address through its registered agent Charles Clinton Pilkinton.

4.      Venue is proper in Davidson County Circuit Court pursuant to Tenn. Code Ann. § 20-4-104(2).

5.      This Court has jurisdiction pursuant to Tenn. Code Ann. § 16-10-101.

## STATEMENT OF FACTS

6.      Carnton or Carnton Plantation is a historic property consisting of an Antibellum-era mansion and its surrounding grounds located at 1345 Eastern Flank Circle in Franklin, Tennessee.

7.      At all times relevant to this lawsuit, and from 2019 through 2021, Defendant BOFT operated Carnton Plantation.  BOFT utilized Carnton to host paid events, including weddings and wedding receptions, in order to generate revenue for the use and enrichment of BOFT.

8.      From 2019 through 2021, BOFT held itself and Carnton out to the public as a premier wedding and wedding reception host and venue, including by advertising itself as such throughout Middle Tennessee.

9.      Defendant Bright Event Productions is a for-profit business operating

2

in Davidson County providing lighting, sound, electricity, and production for events. From 2019 through 2021, Bright Event Productions was the exclusive vendor for lighting, sound, and electricity for weddings and wedding receptions taking place at Carnton Plantation.  During that time period, couples who contracted to have their wedding take place at Carnton were required by BOFT to use Bright Event Productions for lighting, sound, and electricity.

10.     Plaintiffs Thomas Linthicum and Diana Sanabria became engaged in May 2019.  In September of 2019, the Plaintiffs entered into an agreement with BOFT to host their outdoor evening wedding and outdoor night wedding reception at Carnton. *See*, **Exhibit 1.**

11.     As part of the agreement, BOFT required that generator and electric power services be obtained and provided by Bright Event Productions.  BOFT warranted to Plaintiffs that Bright Event Productions could and would provide suitable generator and electricity services to power the lighting, sound, heat, and electricity necessary to conduct the wedding and wedding reception.

12.     On October 16, 2021, Plaintiffs held their wedding and wedding reception at Carnton for 163 guests, including 87 guests from out-of-town.  Per BOFT's requirements and the Parties' Agreement, Bright Event Productions was to provide a generator or generators capable of providing sufficient power to operate the lighting, heat, and sound for the outdoor reception.

13.     Bright Event Productions instead provided a substandard generator that was entirely incapable of providing even the minimum power necessary to service the wedding reception.

14.     The event progressed into disaster as the night outdoor reception failed to receive adequate power, electricity, or heat.  Temperatures dropped into the low 50's inside the tent-space forcing many guests to leave.  The lighting went out.  The band was required to perform large portions of its set without electricity and in a darkened space to the remaining guests.

15.     As the disaster unfolded, BOFT and Bright Events refused to rectify the situation by providing a suitable generator, and further attempted to conceal their malfeasance by repeatedly and fraudulently representing that one or more food trucks at the venue was causing the loss in power.  When advised that the food trucks were powered by their own separate generators, Defendants continued to refuse to address the situation, resulting in the wedding reception effectively ending with the mass departure of guests who could not tolerate the cold venue, which lacked suitable light or even the ability to provide the paid-for entertainment.

16.     The Plaintiffs' wedding and reception were ruined as a result of Defendants' conduct.  Because of Defendants' actions as well as the fundamental nature of a wedding, the years of planning required, and the logistics involved in gathering the families and guests from around the country, Plaintiffs are forever

deprived of enjoying or experiencing the momentous event that should have been one of the pinnacles and happiest moments of their lives. Their wedding day, and memories of the same, have been irretrievably spoiled.

## COUNT ONE: BREACH OF CONTRACT
## (ALL DEFENDANTS)

17.     The Defendants contracted and agreed to provide Plaintiffs with sufficient electrical, sound, and lighting services to power Plaintiffs' wedding reception through the provision of a suitable generator.

18.     Defendants' agreement was material and fundamental to Plaintiffs' ability to hold their wedding reception.

19.     Defendants breached their agreement by failing to provide Plaintiffs with sufficient electrical, sound, and lighting services to power Plaintiffs' wedding reception through the provision of a suitable generator.

20.     Defendants' breach caused damages, monetary and otherwise, to Plaintiffs.

## COUNT TWO: VIOLATIONS OF
## TENNESSEE CONSUMER PROTECTION ACT
## (ALL DEFENDANTS)

21.     Defendants' acts and conduct in passing off Bright Events' services and generators as suitable for providing electricity, sound, and lighting for Plaintiffs' outdoor, night wedding reception were unfair and deceptive under the Tennessee Consumer Protection Act of 1977.

5

22.     Specifically, Defendants represented that the generators and services had qualities and characteristics as well uses and benefits, that they did not have. Namely, Defendants represented that Bright Events services and generators were suitable and sufficient for providing power to Plaintiffs' wedding reception.

23.     Defendants additionally represented that Bright Events' services and generators were or a particular standard, quality, and grade which was suitable and capable of powering Plaintiffs' event, when those services and generators were not.

24.     Plaintiffs suffered a loss of money and things of value as a result of Defendants unfair and deceptive acts.

## COUNT THREE: AGENCY
## (BRIGHT EVENTS AS THE AGENT OF BOFT)

25.     At all times relevant to the facts alleged in this Complaint, Bright Events was the actual and apparent agent of BOFT.

26.     BOFT held out Bright Events as its exclusive provider of lighting, electricity, and sound services for events at Carnton. BOFT further required that Plaintiff utilize the services of Bright Events.

27.     BOFT had the authority, and exercised the authority, to control them means and manner in which Bright Events provided services to the Plaintiffs while on the premises of Carnton, including in providing lighting, electricity, and sound to Plaintiffs' wedding reception.

## COUNT FOUR: MISREPRESENTATION
## AND BREACH OF WARRANTIES
## (ALL DEFENDANTS)

28.    Defendants represented that the services and generators provided by Bright Events were of a quality and character sufficient to suitably power the Plaintiff's wedding receptions.

29.    Defendants further warranted that the generator and services provided by Bright Events as expressly required by BOFT's agreement with Plaintiff were fit for the particular purpose of providing electricity, sound, and lighting to an outdoor, night wedding reception of 150 to 200 guests.

30.    The Defendants' representation was not merely opinion but was made to the Plaintiffs who were expected to use Defendants' services and generators.

31.    The Defendants' representations were not true.

32.    The Plaintiffs justifiably relied upon the representations of the Defendants and were not aware that the representations were false.

33.    The Plaintiffs' reliance of Defendants' representations was a substantial factor in causing Plaintiffs' damages.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for the following relief:

1.    That proper process issue and be served upon the Defendants and

the Defendants be required to appear and answer this Complaint

7

within the time required by law;

2.      That the Plaintiff be awarded fair and reasonable compensatory damages not to exceed $250,000;

3.      That the Plaintiffs be awarded treble damages under the Tennessee Consumer Protection Act;

4.      That the Plaintiffs be awarded punitive damages to punish Defendants and deter future similar wrongful conduct;

5.      That the Plaintiffs be awarded the costs of trying this action, including their attorney's fees;

6.      That this action be heard by a jury;

7.      That costs of this action be taxed to the Defendants;

8.      That prejudgment interest be awarded to the Plaintiffs for economic damages;

9.      That the Plaintiffs be awarded all and any such other and further relief as the Court deems proper; and,

10.     That Plaintiffs' right to amend this Complaint to conform to the evidence be reserved.

Respectfully submitted,

Afsoon Hagh, #28393
226 Pelham Drive
Brentwood, Tennessee 37027
Hagh Law PLLC
(615) 566-0937

9


Caution

As of: November 16, 2022 5:17 PM Z

## *Ali v. Mid-Atlantic Settlement Servs.*

United States District Court for the District of Columbia

January 6, 2006, Decided

Civil Action No. 02-2271 (RWR)

### Reporter

233 F.R.D. 32 *; 2006 U.S. Dist. LEXIS 582 **

BETTY GENE ALI, Plaintiff, v. MID-ATLANTIC SETTLEMENT SERVICES, INC. et al.,

**Subsequent History:** Reconsideration granted by, Sanctions allowed by *Ali v. Mid-Atlantic Settlement Servs., 235 F.R.D. 1, 2006 U.S. Dist. LEXIS 13305 (D.D.C., Mar. 10, 2006)*

Motion granted by, in part, Motion denied by, in part *Ali v. Mid-Atlantic Settlement Servs., 2007 U.S. Dist. LEXIS 116424 (D.D.C., Apr. 12, 2007)*

Motion granted by, in part, Motion denied by, in part *Ali v. Mid-Atlantic Settlement Servs., 2007 U.S. Dist. LEXIS 116422 (D.D.C., Apr. 12, 2007)*

## Core Terms

papers, effective, process server, summons, door, residing, service of process, usual place of abode, actual notice, entry of default, existing law, motion for sanctions, reasonable inquiry, sanctions, dwelling house, permanent, notice, personal service, circumstances, assertions, default, copy of the summons, factual contention, legal contention, adult

## Case Summary

### Procedural Posture

Plaintiff sued defendant and another for their roles in an alleged scheme that swindled her in the sale of her home to defendant. Plaintiff filed a motion for default judgment. Defendant responded by filing a motion to set aside the entry of default, arguing that service had never been effected. Plaintiff also filed a motion for sanctions under *Fed. R. Civ. P. 11*, contending that defendant's motion to set aside entry of default was frivolous.

### Overview

Defendant was a law student. A process server left a copy of the summons and complaint with a woman identified as defendant's mother at defendant's permanent residence. Thereafter, another process server left a copy of the summons and complaint with the concierge at the apartment where defendant was living. Still later, after speaking with defendant on the telephone and receiving instructions, another process server left a copy of the summons and complaint at the door of another apartment where defendant was then living. Defendant did not respond to any of these summons and moved to set aside the entry of default, contending that he was not properly served. The court granted plaintiff's default judgment motion. Valid service had been effected on defendant on each of the three occasions. Defendant had actual knowledge of the lawsuit and could not avoid personal jurisdiction by his attempts to wilfully evade service. In addition, the court granted plaintiff's motion for sanctions in part. Defendant's claim that he was not served was not warranted under existing law. Reasonable inquiry by defendant's counsel was required prior to filing the instant motion on defendant's behalf.

### Outcome

The court granted plaintiff's default judgment motion and ordered the entry of a judgment of default against defendant unless he filed an answer on or before a certain date. The court granted plaintiff's motion for sanctions insofar as defendant's counsel was admonished for his failure to make a reasonable inquiry into defendant's assertions that he was not served with process. Plaintiff's motion for sanctions was denied in all other respects.

## LexisNexis® Headnotes

Civil Procedure > ... > Service of Process > Methods of Service > General Overview

Civil Procedure > ... > Service of Process > Methods of Service > Personal Delivery

Civil Procedure > ... > Service of Process > Methods of Service > Residential Service

## HN1[⬇]  Service of Process, Methods of Service

The Federal Rules of Civil Procedure endorse multiple ways to achieve service of a summons and complaint upon a party. Service of process may be effected by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, *Fed. R. Civ. P. 4(e)(2)*, or pursuant to the law of the state in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the state. *Fed. R. Civ. P. 4(e)(1)*.

Civil Procedure > ... > Pleadings > Service of Process > General Overview

## HN2[⬇]  Pleadings, Service of Process

Whether service is effective turns on the facts and circumstances of each case. Where service complies precisely with the requirements of *Fed. R. Civ. P. 4(e)*, it will be effective for personal jurisdiction, even if the individual did not receive actual notice. Where defendant has received actual notice of the action, the provisions of *Rule 4(e)* should be liberally construed to effectuate service and uphold the jurisdiction of the court. The rules governing service of process are not designed to create an obstacle course for plaintiffs to navigate, or a cat-and-mouse game for defendants who are otherwise subject to a court's jurisdiction. The rules governing service of process are utilized for the purpose of providing a likelihood of bringing actual notice to the intended recipient, and actual notice satisfies the due process notice requirement and provides the court with personal jurisdiction. Where a defendant receives actual notice and the plaintiff makes a good faith effort to serve the defendant pursuant to the federal rule, service of process has been effective. Good faith efforts at service are effective particularly where the defendant has engaged in evasion, deception, or trickery to avoid being served.

Civil Procedure > ... > Service of Process > Methods of Service > General Overview

## HN3[⬇]  Service of Process, Methods of Service

The service of process is not a game of hide and seek. Where

service is repeatedly effected in accordance with the applicable rules of civil procedure and in a manner reasonably calculated to notify the defendant of the institution of an action against him, the defendant cannot claim that a court has no authority to act when he has willfully evaded the service of process.

Civil Procedure > ... > Service of Process > Methods of Service > Personal Delivery

## HN4[⬇]  Methods of Service, Personal Delivery

Personal service of process under *Fed. R. Civ. P. 4(e)(2)*, permitting service by delivering a copy of the papers to an individual personally, does not require an "in hand" delivery and acceptance of the papers. Service is effective when a process server has found a defendant at his dwelling house and announces her business but the defendant refuses to accept personal service, and the process server leaves papers under the door mat.

Civil Procedure > ... > Service of Process > Methods of Service > Personal Delivery

## HN5[⬇]  Methods of Service, Personal Delivery

Personal service of process should not become a game of wiles and tricks and a defendant should not be able to defeat service simply by refusing to accept the papers or instructing others to reject service. Even though a defendant refuses physical acceptance of a summons, service is complete if a defendant is in close proximity to a process server under such circumstances that a reasonable person would be convinced that personal service of the summons is being attempted. Delivery of a summons to the person to be served may be accomplished by leaving it in his general vicinity, such as on the floor inside the residence near such person, informing him that the process server is so doing. A process server may leave the summons outside the door of a structure, informing the defendant he is so doing, where the defendant interposes the door between himself and the process server.

Civil Procedure > ... > Service of Process > Methods of Service > Personal Delivery

## HN6[⬇]  Methods of Service, Personal Delivery

A defendant's refusal to open the door does not invalidate the plaintiff's service. Personal service need not be face to face or

233 F.R.D. 32, *32; 2006 U.S. Dist. LEXIS 582, **582

hand to hand. When a person refuses to accept service, service may be effected by leaving the papers at a location, such as on a table or on the floor, near that person.

Civil Procedure > ... > Service of Process > Methods of Service > Residential Service

**HN7**[🔽]  **Methods of Service, Residential Service**

Service may be effected by leaving copies of the papers at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. *Fed. R. Civ. P. 4(e)(2)*. For purposes of service under this provision, an individual may have more than one "dwelling house or usual place of abode," provided each contains sufficient indicia of permanence. An individual need not be living in that place at that time in order for it to qualify as his usual place of abode for purposes of *Rule 4(e)*. A usual place of abode may be a college student's permanent home address while the college student is away at college. When a defendant does not have a permanent place of residence, a court will consider whether he intended to return to the place of service in order to determine whether it can be characterized as his usual place of abode. An intention to return to the usual place of abode is not critical to effective service when the individual has received actual notice.

Civil Procedure > ... > Service of Process > Methods of Service > Personal Delivery

Civil Procedure > ... > Service of Process > Methods of Service > Residential Service

**HN8**[🔽]  **Methods of Service, Personal Delivery**

The validity of the service attempts can be determined by Pennsylvania law under *Fed. R. Civ. P. 4(e)(1)*. Service in Pennsylvania may be effected by handing a copy of the papers to the defendant. Pa. R. Civ. P. 402(a)(1). Alternatively, service may be effected by handing a copy of the papers (i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or (ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides. Pa. R. Civ. P. 402(a)(2).

Civil Procedure > ... > Service of Process > Methods of

Service > Residential Service

**HN9**[🔽]  **Methods of Service, Residential Service**

Pennsylvania allows service by handing a copy of the papers at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides. Pa. R. Civ. P. 402(a)(2)(ii).

Civil Procedure > ... > Service of Process > Methods of Service > General Overview

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

**HN10**[🔽]  **Service of Process, Methods of Service**

As long as a method of service is reasonably calculated to give notice to a defendant that an action is pending against him, the fact that such defendant fails to receive actual notice does not invalidate service on due process grounds.

Civil Procedure > ... > Service of Process > Proof of Service > General Overview

Evidence > Inferences & Presumptions > Presumptions > Rebuttal of Presumptions

**HN11**[🔽]  **Service of Process, Proof of Service**

A naked refutation of a process server's affidavit is insufficient to rebut the presumption of effective service that a process server's affidavit establishes.

Civil Procedure > ... > Service of Process > Methods of Service > Personal Delivery

**HN12**[🔽]  **Methods of Service, Personal Delivery**

Where a defendant has actual knowledge that a lawsuit has been commenced against him, he cannot assert a post-judgment defense of lack of personal jurisdiction after willfully evading repeated attempts at service.

Civil Procedure > ... > Service of Process > Methods of Service > General Overview

**HN13**[🔽]  **Service of Process, Methods of Service**

233 F.R.D. 32, *32; 2006 U.S. Dist. LEXIS 582, **582

The Pennsylvania Supreme Court has held that service is effective if there is a sufficient connection between the person served and the defendant to demonstrate that service was reasonably calculated to give the defendant notice of the action against it.

Civil Procedure > Sanctions > Baseless Filings > Certification Requirements

Civil Procedure > Sanctions > Baseless Filings > Signature Requirements

*HN14*[🔻]  **Baseless Filings, Certification Requirements**

*Fed. R. Civ. P. 11* deems that a signature on any paper presented to a court certifies that to the best of the person's knowledge, information or belief, formed after an inquiry reasonable under the circumstances, that the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and the allegations and other factual contentions have evidentiary support and the denials of factual contentions are warranted on the evidence. *Fed. R. Civ. P. 11(b)*. The rule emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable.

Civil Procedure > Sanctions > Baseless Filings > Frivolous Lawsuits

*HN15*[🔻]  **Baseless Filings, Frivolous Lawsuits**

Whether an attorney has conducted a reasonable inquiry under *Fed. R. Civ. P. 11* is determined by an objective test, that is, whether a reasonable inquiry would have revealed there was no basis in law or fact for an asserted claim. A court must determine if the actions in question were reasonable under the circumstances.

Civil Procedure > Sanctions > Baseless Filings > General Overview

*HN16*[🔻]  **Sanctions, Baseless Filings**

Sanctions for failure to comply with the requirements of *Fed. R. Civ. P. 11* should be imposed on the persons responsible for the failure, whether it is the party or the attorney. *Fed. R. Civ. P. 11(b)*. A district court is accorded broad discretion to

determine whether sanctions are warranted and what form they should take to balance between equity, deterrence, and compensation. A court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure.

Civil Procedure > Sanctions > Baseless Filings > Bad Faith Motions

*HN17*[🔻]  **Baseless Filings, Bad Faith Motions**

Sanctions may be imposed on an attorney who interposes defenses on behalf of a client that are not warranted by existing law. *Fed. R. Civ. P. 11(b)(2)*, *(c)*.

Civil Procedure > Sanctions > Baseless Filings > Bad Faith Motions

*HN18*[🔻]  **Baseless Filings, Bad Faith Motions**

Counsel may be sanctioned for failure to conduct a reasonable inquiry of his client's factual contentions. *Fed. R. Civ. P. 11(b)(3)*, *(b)(4)*, *(c)*. The rule requires counsel to do more than simply rest upon a client's evasive and incomplete statements of fact. A reasonable inquiry would provide counsel with either supporting evidence or a reason to decline to repeat a client's assertion.

**Counsel:  [**1]**  For BETTY GENE ALI, Plaintiff: Thomas C Willcox, Washington, DC.

For MID-ATLANTIC SETTLEMENT SERVICES, INC., Defendant: Ross Kellas, PERRY & ASSOCIATES, Fairfax, VA.

For ANTHONY G. NOBLE, Defendant: Stephen Jerome Williams, Riverdale, MD.

For WELLS FARGO HOME MORTGAGE, INC., Defendant: Gary C. Tepper, ARENT FOX, PLLC, Washington, DC; Scott S Ward, ARENT FOX KINTNER PLOTKIN & KAHN, PLLC, Washington, DC.

For BRANCH BANKING AND TRUST COMPANY, Indispensable Party, Defendant: Jordan M Spivok, PROTAS, SPIVOK & COLLINS, LLC, Bethesda, MD.

**Judges:** RICHARD W. ROBERTS, United States District Judge.

**Opinion by:** RICHARD W. ROBERTS

233 F.R.D. 32, *32; 2006 U.S. Dist. LEXIS 582, **1

# Opinion

[*34] *MEMORANDUM OPINION AND ORDER*

Plaintiff Betty Gene Ali filed a motion for default judgment as to defendant Anthony Noble to which Noble responded by filing a motion to set aside entry of default, arguing that service had never been effected. Ali also filed a motion for sanctions under *Rule 11, Fed. R. Civ. P.*, for having to respond to Noble's motion to set aside entry of default which Ali deemed frivolous. Because service on Noble was effective, Ali's default judgment motion will be granted and a judgment [**2] of default will be entered if Noble does not file an answer on or before January 17, 2006. Because some of Noble's factual contentions betray a failure by his counsel to conduct a reasonable prior inquiry and some of his legal contentions are not warranted by existing law, Ali's motion for sanctions will be granted in part.

*BACKGROUND*

Ali, an ailing widow, has sued Noble and his step-father, Richard L. Tolbert, [1] for their parts in an alleged scheme that swindled her in the sale of her Southeast Washington, D.C. home to Noble. Ali seeks to have the sale rescinded.

Plaintiff's process servers delivered the summons and complaint multiple times in an effort to serve Noble, a law student attending the University of Pennsylvania at the time, but Noble never answered and asserts that service was never effected. During the 2002-2003 academic year, Noble lived in an apartment at 3131 Walnut Street, Philadelphia, Pennsylvania. In June [**3] 2003, Noble's listing on the University of Pennsylvania internet directory was changed to an address on Cree Drive in Forest Heights, Maryland. For the 2003-2004 academic year, Noble lived at 1624 Spruce Street, Apt. 1R in Philadelphia, the address to which his school directory listing was changed in the fall of 2003. That listing included Noble's telephone number which Ali's counsel furnished to process servers at Best Legal Services in Philadelphia.

On November 13, 2002, process server Maurice Liggins left a copy of the summons and complaint with an adult woman who identified herself as Paula Noble, Noble's mother, at 113 Cree Drive, Forest Heights, Maryland. Liggins' affidavit dated November 15, 2002 states that Paula Noble "admitted to

living there with and is the mother/co-occupant of the defendant." Noble did not respond to the summons. On May 13, 2003, a process server left a copy of the summons and complaint with Edward Bowman, the concierge at the 3131 Walnut Street apartment house where Noble was then living while in school. Bowman later told Ali's counsel that Bowman accepted the papers from the process server, called Noble in his apartment, and then "focused on placing [**4] the documents . . . into the hands of Mr. Noble as soon as possible." Noble did not respond to the summons. Then, on September 23, 2003, process server Russell DaLonzo, Jr. from Best Legal Services went to the 1624 Spruce Street apartment where Noble was residing at that time. DaLonzo's October 1, 2003 affidavit of service says "spoke to Mr. Nobles over the phone and he stated put paper in the door and he'll get it." Noble still did not respond to the summons.

Ali sought and obtained an entry of default by the clerk, and filed a motion for default judgment. In response to an August 13, 2004 order directing Noble to show cause why Ali's motion should not be granted, Noble filed a motion to set aside entry of default, arguing that he was never properly [*35] served. Noble's motion was denied without prejudice in an order that explained:

> As a motion to vacate the entry of default, the motion is deficient since it is not accompanied by a verified answer as is required by Local Civil Rule 7(g). As a response to the show cause order, the filing fails to address with factual particularity the affidavits by Maurice Liggins on November 15, 2002 and Russell Dalonzo, Jr. on October 1, 2003 showing [**5] service of process upon both Noble and his mother. Asserting the legal conclusion that Noble "was not personally served and therefore not placed on legal notice" . . . does not suffice to rebut the facts in sworn affidavits supporting entry of default or show good cause why the entry of default should be vacated.

Order, Nov. 24, 2004, at 1-2 (citations omitted). The order directed Noble to file in further response to the August 13, 2004 show cause order, a memorandum and supporting affidavits that answered all factual assertions advanced by plaintiff concerning service of process upon him in Maryland and Pennsylvania.

Noble responded by filing a memorandum along with his affidavit, the Liggins affidavit, the DaLonzo affidavit and the process server workcard describing the delivery of process on May 13, 2003 to Bowman, the apartment concierge, attached as exhibits. Noble's affidavit consisted of the following statements:

> 1. I have personal knowledge of the matters set forth in this affidavit.

---

[1] Three other defendants have been voluntarily dismissed from the case.

233 F.R.D. 32, *35; 2006 U.S. Dist. LEXIS 582, **5

2. I currently reside at 1624 Spruce Street, Philadelphia, PA 19104 and have lived there for the last year. Prior to my current residence, I resided in Tokyo, Japan (July [**6] 2003 - August 2003) and 3131 Walnut Street, Apt. 237 Philadelphia, PA 19104 and [sic] (June 2002 - July 2003).

3. I have never been served with a summons or a complaint in the case - Betty Gene Ali v Mid-Atlantic Services, Inc. et al., Civil Action No. 02cv02271.

4. I, categorically, deny ever having been served by Maurice S. Liggins, Edward Bowman or Russell Dalzone [sic] in the above-referenced case.

(Def.'s Notice of Filing Lengthy Exhibits, Ex. 5.)

Shortly thereafter, Ali filed a motion for sanctions against Noble and his counsel seeking reimbursement for the costs incurred in responding to Noble's motion to set aside entry of default and in preparing and pursuing the motion for sanctions. She argues that Noble's representations that he was never served and had no legal notice of this litigation were made in bad faith, and that his motion to set aside default was frivolous. Noble responded to the motion for sanctions one month later only after a show cause order was issued against him for failure to file any timely response.

### DISCUSSION

I. SERVICE OF PROCESS

*HN1*[⬆] The Federal Rules of Civil Procedure endorse multiple ways to achieve service of a [**7] summons and complaint upon a party. Service of process may be effected "by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein[,]" *Fed. R. Civ. P. 4(e)(2)*, or "pursuant to the law of the state . . . in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State[.]" *Fed. R. Civ. P. 4(e)(1)*. *HN2*[⬆] Whether service is effective turns on the facts and circumstances of each case. Where service complies precisely with the requirements of *Rule 4(e)*, it will be effective for personal jurisdiction, even if the individual did not receive actual notice. *Smith v. Kincaid, 249 F.2d 243, 244 (6th Cir. 1957)*; *Capitol Life Ins. Co. v. Rosen, 69 F.R.D. 83, 88 n.3 (E.D. Pa. 1975)*. On the other hand, where the defendant has received actual notice of the action, "the provisions of *Rule 4(e)* should be liberally construed to [**8] effectuate service and uphold the jurisdiction of the court." *Karlsson v. Rabinowitz, 318 F.2d 666 (4th Cir. 1963)*; *Rovinski v. Rowe, 131 F.2d 687, 689 (6th Cir. 1942)* (same). "The rules governing service of process are not designed to create an

obstacle course for [*36] plaintiffs to navigate, or a cat-and-mouse game for defendants who are otherwise subject to the court's jurisdiction." *TRW, Inc. v. Derbyshire, 157 F.R.D. 59, 60 (D. Col. 1994)*. Rather, "the rules governing service of process are utilized for the purpose of providing a likelihood of bringing actual notice to the intended recipient," *Minnesota Mining & Mfr'g Co. v. Kirkevold, 87 F.R.D. 317, 324 (D. Minn. 1980)*, and actual notice satisfies the due process notice requirement and provides the court with personal jurisdiction. *Frank Keevan & Son, Inc. v. Callier Steel Pipe & Tube, Inc., 107 F.R.D. 665, 671 (S.D. Fla. 1985)*. Where the defendant receives actual notice and the plaintiff makes a good faith effort to serve the defendant pursuant to the federal rule, service of process has been effective. *Id*. Good faith efforts at service are effective [**9] particularly where the defendant has engaged in evasion, deception, or trickery to avoid being served. *Id*.

*HN3*[⬆] The service of process is not a game of hide and seek. Where service is repeatedly effected in accordance with the applicable rules of civil procedure and in a manner reasonably calculated to notify the defendant of the institution of an action against him, the defendant cannot claim that the court has no authority to act when he has willfully evaded the service of process.

*Electronics Boutique Holdings Corp. v. Zuccarini, 2001 U.S. Dist. LEXIS 765, No. Civ. A. 00-4055, 2001 WL 83388, at *9 (E.D. Pa. Jan. 25, 2001)*.

*HN4*[⬆] Personal service of process under *Rule 4(e)(2)*, permitting service by "delivering a copy of the . . . [papers] to the individual personally," does not require an "in hand" delivery and acceptance of the papers. *Gambone v. Lite-Rock Drywall Corp., 2003 U.S. Dist. LEXIS 13916, No. Civ. A. 01-1071, 2003 WL 21891584, at *4 (E.D. Pa. Aug. 7, 2003)* (finding service effective when process server found defendant at his dwelling house and announced her business but defendant refused to accept personal service, and process server left papers [**10] under the door mat). *HN5*[⬆] Personal service of process

should not become a game of wiles and tricks and a defendant should not be able to defeat service simply by refusing to accept the papers or instructing others to reject service. Even though a defendant refuses physical acceptance of a summons, service is complete if a defendant is in close proximity to a process server under such circumstances that a reasonable person would be convinced that personal service of the summons is being attempted. Delivery of a summons to the person to be served may be accomplished by leaving it in his general vicinity, such as on the floor inside the residence near such person, informing him that the process server is so

233 F.R.D. 32, *36; 2006 U.S. Dist. LEXIS 582, **10

doing. A process server may leave the summons outside the door of a structure, informing the defendant he is so doing, where the defendant interposes the door between himself and the process server.

*Id.* **HN6**[↑] A defendant's "refusal to open the door does not invalidate plaintiff's service. Personal service need not be face to face or hand to hand." *Villanova v. Solow, 1998 U.S. Dist. LEXIS 14686, No. Civ. A. 97-6684, 1998 WL 643686, at *2 (E.D. Pa. Sept. 18, 1998)* (deciding that personal [**11] service was effective where the defendant refused to open the door of his dwelling and the process server put the papers through the mail slot in the front door); *see also Novak v. World Bank, 227 U.S. App. D.C. 83, 703 F.2d 1305, 1310 n. 14 (D.C. Cir. 1983)* ("When a person refuses to accept service, service may be effected by leaving the papers at a location, such as on a table or on the floor, near that person.").

**HN7**[↑] Service also may be effected by leaving copies of the papers "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein[.]" *Fed. R. Civ. P. 4(e)(2)*. For purposes of service under this provision, an individual may have more than one "' dwelling house or usual place of abode,' provided each contains sufficient indicia of permanence." *Nat'l Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 257 (2d Cir. 1991)*. An individual need not be living in that place at that time in order for it to qualify as his usual place of abode for purposes of *Rule 4(e)*. A usual place of abode may be a college student's permanent home address while the college [**12] student is away at college. *See Hubbard v. Brinton, 26 F.R.D. 564, 565 [*37] (E.D. Pa. 1961)*; *see also Derbyshire, 157 F.R.D. at 60* (finding service effective when left with an adult at the dwelling house at the address to which defendant instructed his mail to be forwarded). "When a Defendant does not have a permanent place of residence, a Court will consider whether he intended to return to the place of service in order to determine whether it can be characterized as his usual place of abode[.]" *Blue Cross and Blue Shield of Michigan v. Chang, 109 F.R.D. 669 (E.D. Mich. 1986)*. On the other hand, an intention to return to the usual place of abode is not critical to effective service when the individual has received actual notice. *See Karlsson, 318 F.2d at 668*.

**HN8**[↑] The validity of the service attempts in Philadelphia also can be determined by Pennsylvania law under *Rule 4(e)(1)*. Service in Pennsylvania may be effected by handing a copy of the papers to the defendant. *Pa. R. Civ. P. 402(a)(1)*. Alternatively, service may be effected by handing a copy of the papers "(i) at the residence of the defendant to an adult member of [**13] the family with whom he resides; but if no adult member of the family is found, then to an adult person

in charge of such residence; or (ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides." *Pa. R. Civ. P. 402(a)(2)*.

A. *Service at 113 Cree Drive*

The affidavit of service filed by Liggins shows that at 8:30 p.m. on November 13, 2002, Liggins left a copy of the summons, complaint and exhibits with Paula Noble, Noble's mother, at 113 Cree Drive, Forest Heights, Maryland. According to Liggins's affidavit, Paula Noble confirmed that she resided at 113 Cree Drive, and "admitted to living there with and is the mother/co-occupant of the Defendant." The information in the affidavit establishes that the service complied with the rule provision permitting service by leaving copies "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." *Fed. R. Civ. P. 4(e)(2)*.

Noble does not deny, either through his affidavit or any other factual support, that 113 Cree Drive was his permanent [**14] residence while he was attending law school in Philadelphia. Noble has offered no affidavit controverting the Liggins affidavit in any respect. The uncontroverted facts in the record - - Paula Noble's confirmation on November 13, 2002 that Noble resided at 113 Cree Drive with her, and Noble's Cree Drive address listing on the University of Pennsylvania internet directory - - establish that 113 Cree Drive was Noble's permanent residence while he was away at school. [2] Nor does Noble's affidavit deny that his mother accepted the papers from the process server, or that he received them via his mother, or that he received actual notice of the litigation. In the absence of any claim that he never received actual notice, the rules of service are to be liberally construed. Accordingly, the Cree Drive service in November 2002 was effective under *Rule 4(e)(2)*.

B. *Service at 3131 Walnut Street*

On May 13, 2003, a process server left a copy [**15] of the summons and complaint with Bowman, the concierge of Noble's apartment building in Philadelphia. Bowman called Noble after accepting the papers and then Bowman "focused on" delivering the papers to Noble as soon as possible. While Bowman did not say he recalled actually delivering the papers to Noble, Noble's affidavit does not attest that he did not receive the papers from Bowman or from another clerk or manager of the apartment building. Nor does Noble present

---

[2] Noble also had a motor vehicle registered in his name at that address.

233 F.R.D. 32, *37; 2006 U.S. Dist. LEXIS 582, **15

any evidence disputing that Bowman received the papers.

HN9[↑] Pennsylvania allows service by handing a copy of the papers "at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides." *Pa. R. Civ. P. 402(a)(2)(ii)*. Pennsylvania's intermediate appellate court has held that a receptionist at the front desk of a Catholic mission where a priest was residing fell within the category of "clerk of the . . . place of lodging" for purposes of *Pa. R. Civ. P. 402(a)(2)(ii)* [*38] , even where the record did not establish that the receptionist regularly received mail on behalf of the residents of the mission. *See Aquilino v. Philadelphia Catholic Archdiocese, 2005 PA Super 339, 884 A.2d 1269, 1282-83 (Pa. Super. Ct. 2005)* [**16] (affirming the lower court's entry of default judgment against the priest where there was no indication that the receptionist was not the person who received mail on behalf of the mission's residents). Noble does not argue or establish that Bowman was not a clerk for purposes of service under the Pennsylvania rule. In the absence of other evidence, there is no apparent difference between the receptionist at the mission in *Aquilino* and the concierge at 3131 Walnut Street for purposes of service under the Pennsylvania rule. The evidence submitted establishes that the 3131 Walnut Street service complied precisely with the *Pennsylvania Rule of Civil Procedure 402(a)(2)(ii)*. Accordingly, regardless of whether actual notice resulted, service on Noble at 3131 Walnut Street on May 13, 2003 was effective. *Noetzel v. Glasgow, 338 Pa. Super. 458, 487 A.2d 1372, 1377-78 (Pa. Super. Ct. 1985)* (HN10[↑] "As long as a method of service is reasonably calculated to give notice to a defendant that an action is pending against him, the fact that such defendant fails to receive actual notice does not invalidate service on due process grounds.").

C. *Service at 724 Spruce Drive*

On September 23, 2003, DaLonzo [**17] went to Noble's new Philadelphia residence at 1624 Spruce Street, Apt. 1R. DaLonzo's uncontradicted factual assertion in his affidavit is that he spoke to Noble over the telephone and delivered the summons and complaint when Noble told DaLonzo to put the papers in the door and he, Noble, would get them. Noble's claimed lack of recall of a conversation with DaLonzo does not rebut DaLonzo's assertion, nor does realleging the legal conclusion that DaLonzo did not "serve" him. HN11[↑] A naked refutation of a process server's affidavit is insufficient to rebut the presumption of effective service that a process server's affidavit establishes. *See FROF, Inc. v. Harris, 695 F. Supp. 827, 829 (E.D. Pa. 1988)*. Noble presents no evidence or sworn factual assertions that DaLonzo did not speak with Noble, that Noble did not instruct DaLonzo to put the papers in the door, that DaLonzo did not put the papers in the door,

or even that Noble never received the papers that DaLonzo reported leaving. Under these circumstances, a liberal construction of *Rule 4(e)(2)* is warranted.

The facts submitted demonstrate that service was effective under *Rule 4(e)(2)*'s provision for personal service. Even [**18] though Noble did not open the door to take the papers from the process server, personal service was effected nonetheless. *See Villanova, 1998 U.S. Dist. LEXIS 14686, 1998 WL 634686, at *2* (noting that "refusal to open the door does not invalidate plaintiff's service"); *Gambone, 2003 U.S. Dist. LEXIS 13916, 2003 WL 21891584, at *4* (same); *see also Electronics Boutique Holdings Corp., 2001 U.S. Dist. LEXIS 765 at *31, [WL] at *9* (stating that HN12[↑] "where a defendant has actual knowledge that a lawsuit has been commenced against him, he cannot assert a post-judgment defense of lack of personal jurisdiction after willfully evading repeated attempts at service"). [3]

[**19] [*39] II. SANCTIONS UNDER *RULE 11*

---

[3] Noble has argued that service is ineffective because DaLonzo has no idea to whom he spoke over the telephone at Noble's residence. Even if DaLonzo spoke to someone other than Noble who answered Noble's residence telephone, service would not necessarily be ineffective. While Federal *Rule 4(e)(2)* requires that papers be left with a suitable adult residing in Noble's dwelling house, and there is no evidence here that a person other than Noble was residing in Noble's apartment, Pennsylvania *Rule 402(a)(2)(i)* permits leaving the papers with an adult person "in charge of" the residence. In interpreting a parallel "in charge of" requirement for service at a defendant's usual place of business, HN13[↑] "the Pennsylvania Supreme Court has held that service is effective if there is 'a sufficient connection between the person served and the defendant to demonstrate that service was reasonably calculated to give the defendant notice of the action against it.'" *DirecTV, Inc. v. Baratta, 2004 U.S. Dist. LEXIS 6430, No. Civ. A. 03-3265, 2004 WL 875541, at *2 (E.D. Pa. Mar. 22, 2004)* (quoting *Cintas Corp. v. Lee's Cleaning Services, Inc., 549 Pa. 84, 700 A.2d 915, 920 (Pa. 1997)* (interpreting the forerunner of current *Pa. R. Civ. P. 402(a)(2)(iii)*). Applying the sufficient connection standard to service at a defendant's residence, a court found service effective when the summons and complaint were left with an unrelated adult who answered the residence door and told the process server that the defendant was out of town and would be returning in a few days. *DirecTV, 2004 U.S. Dist. LEXIS 6430, 2004 WL 875541, at *2* (finding service effective under *Pa. R. Civ. P. 402(a)(2)(i)* and denying motion to quash service). Here, where a man answered Noble's residence telephone as Noble and gave instructions to leave the papers in the door so he could get them, the evidence establishes a similarly sufficient connection. This service was reasonably calculated to give Noble notice of the action against him, and Noble has offered no evidence to the contrary.

Case 3:22-cv-00301   Document 43-11   Filed 11/16/22   Page 9 of 10 PageID #: 251

Page 9 of 10

233 F.R.D. 32, *39; 2006 U.S. Dist. LEXIS 582, **19

*HN14*[ ] *Rule 11 of the Federal Rules of Civil Procedure* deems that a signature on any paper presented to a court certifies that

> to the best of the person's knowledge, information or belief, formed after an inquiry reasonable under the circumstances, . . . that the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or other establishment of new law; [and] the allegations and other factual contentions have evidentiary support . . . [and] the denials of factual contentions are warranted on the evidence . . . .

*Fed. R. Civ. P. 11(b)*. The rule "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable." *Fed. R. Civ. P. 11(b)* advisory committee notes; *see also Reynolds v. The U.S. Capitol Police Board, 357 F. Supp. 2d 19, 24 (D.D.C. 2004)* (finding *Rule 11* violated where plaintiff and counsel resubmitted the same claims after having been put "on notice **[**20]** that the factual allegations pled . . . were not sufficient").

*HN15*[ ] Whether an attorney has conducted a reasonable inquiry under *Rule 11* is determined by an objective test, "' that is, whether a reasonable inquiry would have revealed there was no basis in law or fact for the asserted claim.'" *Id. at 23* (quoting *Washington Bancorporation v. Said, 812 F. Supp. 1256, 1275 (D.D.C. 1993))*. Furthermore, the court must determine if "the actions in question were 'reasonable under the circumstances.'" *Saunders v. Lucy Webb Haynes-Nat'l Training Sch. for Deaconesses and Missionaries, 124 F.R.D. 3, 7-8 (D.D.C. 1989)* (quoting *Westmoreland v. CBS, Inc., 248 U.S. App. D.C. 255, 770 F.2d 1168, 1177 (D.C. Cir. 1985))*.

*HN16*[ ] Sanctions for failure to comply with the requirements of *Rule 11* should be imposed on the persons responsible for the failure, whether it is the party or the attorney. *Fed. R. Civ. P. 11(b)*. The district court is accorded broad discretion to determine whether sanctions are warranted, *Allen v. Utley, 129 F.R.D. 1, 3 (D.D.C. 1990)*, on whom they should be imposed, *Geller v. Randi, 309 U.S. App. D.C. 269, 40 F.3d 1300, 1304 (D.C. Cir. 1995)*, **[**21]** and what form they should take to "balance between equity, deterrence, and compensation." *Reynolds, 357 F. Supp. 2d at 26* (quoting *Hilton Hotels Corp. v. Banov, 283 U.S. App. D.C. 232, 899 F.2d 40, 46 (D.C. Cir. 1990))*; *see also Fed. R. Civ. P. 11(b)* advisory committee notes ("The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand or censure . . . .").

*HN17*[ ] Sanctions may be imposed on an attorney who interposes defenses on behalf of a client that are not warranted by existing law. *Fed. R. Civ. P. 11(b)(2)*, *(c)*. Existing law leaves no doubt that: (1) a person may have more than one dwelling house or usual place of abode for purposes of *Rule 4(e)(2)* and that a college student's permanent home address may well be his usual place of abode; (2) a clerk or apartment manager in Pennsylvania may accept service for a resident who dwells within the apartment house; and (3) personal service does not require hand-to-hand or face-to-face interaction and that a refusal to open the door does **[**22]** not invalidate service. Noble's legal contention that none of Ali's attempts at service were effective is not warranted by existing law.

*HN18*[ ] Counsel may also be sanctioned for failure to conduct a reasonable inquiry of his client's factual contentions. *Fed. R. Civ. P. 11(b)(3)*, *(b)(4)*, *(c)*. The rule requires counsel to do more than simply rest upon a client's evasive and incomplete statements of fact. A reasonable inquiry would provide counsel with either supporting evidence or a reason to decline to repeat a client's assertion. Under the circumstances here, it appears that counsel did not make reasonable inquiries at minimum about whether Cree Drive was Noble's permanent home address in November 2002, and whether his mother received papers from Liggins there. Counsel was on notice from the November 24, 2004 order that bare **[***40]** legal assertions of inadequate service were insufficient and that he was required to respond with factual particularity to all of the process servers' factual contentions. Yet, counsel submitted an affidavit from Noble that was almost contemptuously noncompliant, reciting spare and selective facts about his nonpermanent residences **[**23]** and paroting the legal position that he was never served.

The holes in Noble's position and the studied ambiguity in his affidavit beg for factual explanations. Counsel was obligated to conduct sufficient inquiry to assure that fact-based legal contentions are well-grounded in fact and warranted by existing law. The evidence shows that Noble has played a cat and mouse game in order to evade the jurisdiction of the court. Counsel's exact role in Noble's conduct is not plain from the submissions, but it necessarily amounts at least to a failure to conduct the required reasonable inquiry under the circumstances and a failure to restrict legal contentions to those warranted by existing law. *Fed. R. Civ. P. 11(b)*. [4]

---

[4] Wholly aside from whether Noble did help swindle an ailing widow out of her home, it is a dangerous and ignominious start to a legal career for Noble to engage in such disingenuous and ultimately ineffective evasion of service. His counsel, as an officer of this Court, should be chary to abet Noble's continuing wily behavior in litigation pending before a Court.

 **[\*\*24]**  Ali has incurred unnecessary costs and prejudicial delay from Noble's insupportable failure to respond as required to the service of the summons and complaint. Accordingly, Ali's motion for sanctions will be granted in part and Noble's counsel will be admonished. Noble and his counsel are warned that any further delays attributable in whole or in part to any continued baseless assertion that Noble was not served may result in the imposition of monetary sanctions.

### CONCLUSION AND ORDER

Ali effected service on Noble three times - - first in November 2002, again in May 2003, and again in September 2003. Noble has failed to answer the complaint. Accordingly, a judgment of default and order for rescission of the sale of the Southeast Washington D.C. property, will be entered unless Noble files an answer in compliance with Local Civil Rule 7(g) on or before January 17, 2006. It is further

ORDERED that plaintiff's motion for sanctions [# 51] be, and hereby is, GRANTED in part and DENIED in part. Noble's counsel, Stephen J. Williams, is hereby admonished for his role in Noble's failure to respond as required after Noble was served with the summons and complaint by making factual **[\*\*25]** assertions that were not based on a reasonable inquiry or supported by the evidence, and by making fact-based legal arguments that were not based on a reasonable inquiry into the facts and not warranted by existing law. Plaintiff's motion for sanctions is DENIED in all other respects.

SIGNED this 6th day of January, 2006.

/s/

RICHARD W. ROBERTS

United States District Judge

---

End of Document

 Neutral
As of: October 28, 2022 11:25 PM Z

# Boles v. Lewis

United States District Court for the Western District of Michigan, Southern Division

January 14, 2008, Decided; January 14, 2008, Filed

Case No. 1:07-CV-277

**Reporter**

2008 U.S. Dist. LEXIS 2701 *

ROBERT BOLES, Plaintiff, v. GARY LEWIS, et al., Defendants.

**Subsequent History:** Motion denied by *Boles v. Lewis, 2008 U.S. Dist. LEXIS 2711 (W.D. Mich., Jan. 14, 2008)*

## Core Terms

effect service, mail, copy of the summons, delivery, effected, service of process, delivering, return receipt requested, certified mail, registered, Asserting, carrier, fault, terms, twice

**Counsel:** [*1] Robert Lee Boles # 156632, Jr., named as Robert Boles # 156632, plaintiff, Pro se, Detroit, MI.

For Gary Lewis, in his official capacity, Daniel Case, in his individual capacity, J. Christiansen, in his individual capacity, M. Richardson, in his individual capacity, Unknown Teft, in his individual capacity, B. Haynie, in his individual capacity, Lorenzo Lowery, in his individual capacity, defendants: Christine M Campbell, MI Dept Attorney General (Corrections), Corrections Division, Lansing, MI.

For Robert Migliorino, in his individual capacity, defendant: Michael D. Kennedy, Law Offices of Thomas J. Trenta, PLLC, Bloomfield Hills, MI.

**Judges:** Richard Alan Enslen, SENIOR UNITED STATES DISTRICT JUDGE.

**Opinion by:** Richard Alan Enslen

## Opinion

### ORDER

This matter is before the Court on Defendant Dr. Robert Migliorino's Motion to Dismiss Plaintiff's Complaint. For the reasons discussed herein, Defendant's motion is denied.

Pursuant to *Federal Rule of Civil Procedure 4(e)*, service can be properly effected upon an individual: (1) pursuant to the law of the state in which the district court is located; or (2) by delivering a copy of the summons and complaint to the individual personally or by leaving copies thereof at the individual's [*2] residence with a person of suitable age and discretion or by delivering a copy of the summons and complaint to an agent authorized to accept service of process.

Michigan law provides that service can be effected upon an individual by: (1) delivering a copy of the summons and complaint to the defendant personally; or (2) sending a summons and copy of the complaint "by registered or certified mail, return receipt requested, and delivery restricted to the addressee." *MCR 2.105(A)*. Rule 2.105(A)(2) further provides that "[s]ervice is made when the defendant acknowledges receipt of the mail" and that "[a] copy of the return receipt signed by the defendant must be attached to proof showing service under subrule (A)(2)."

Plaintiff has twice attempted to effect service on Defendant Migliorino via the United States mail service. On each occasion Plaintiff has mailed the material by registered and certified mail, return receipt requested, with delivery restricted to Defendant Migliorino. (Dkt. Nos. 21, 43). Notwithstanding Plaintiff's request for restricted delivery, the mail carrier has permitted "Peggy Wood" to sign for the material in question. *Id.* Defendant claims that Wood lacks the authority [*3] to accept service on his behalf. Asserting that he has not been properly served with a copy of the Summons and Complaint in this manner, Defendant seeks the dismissal of Plaintiff's Complaint.

Defendant Migliorino makes this request despite having actually received a copy of Plaintiff's Complaint, as evidenced by the Answer Defendant recently submitted. (Dkt. No. 52). The Court further notes that Defendant Migliorino has participated in discovery activity, having agreed to the terms of a recently entered protective order. (Dkt. No. 42). Defendant is not asserting that Plaintiff's failure to properly effect service in this matter implicates his constitutional right

2008 U.S. Dist. LEXIS 2701, *3

to due process or the Court's ability to exercise jurisdiction over his person. Instead, Defendant Migliorino has merely identified a technical flaw in Plaintiff's attempts to effect service upon him.

While Defendant certainly enjoys the right to have service effected upon him in a manner consistent with the applicable laws and rules, see *Friedman v. Estate of Presser, 929 F.2d 1151, 1155-56 (6th Cir. 1991)*, he is not permitted to willfully evade service of process. *See Adams v. Allied Signal Gen. Aviation Avionics, 74 F.3d 882, 886 (8th Cir. 1996)*; **[*4]** *Mfrrs.' Indus. Relations Ass'n v. East Akron Casting Co., 58 F.3d 204, 206-07 (6th Cir. 1995)*.

As noted above, Plaintiff has twice attempted to properly effect service on Defendant. Plaintiff can hardly be faulted for a mail carrier's refusal to comply with Plaintiff's instruction that delivery be restricted to Defendant Migliorino. The Court finds, therefore, that good cause exists to extend the time period within which Plaintiff must properly effect service on Defendant Migliorino. Specifically, Plaintiff shall be given until April 25, 2008, to properly effect service on Defendant Migliorino. Accordingly, Defendant Migliorino's Motion to Dismiss is **denied.**

As noted above, Plaintiff's attempts to effect service on Defendant Migliorino via the United States Postal Service have been unsuccessful through no fault attributable to Plaintiff. In an attempt, therefore, to facilitate proper service on Defendant Migliorino and prevent further waste of the Court's limited resources, within ten (10) days of the entry of this Order Defendant Migliorino shall perform one of the following: (1) waive the technical defect in service identified above; (2) provide Plaintiff with an alternative address **[*5]** at which service via the United States mail service can be properly effected; (3) authorize an appropriate individual to accept service of process on his behalf and provide the identity and address of such person to Plaintiff; or (4) provide Plaintiff with his home address so that service may be attempted there. Failure by Defendant Migliorino to comply with the terms of this Order shall result in the entry of default against Defendant Migliorino.

**THEREFORE, IT IS HEREBY ORDERED** that Defendant Migliorino's Motion to Dismiss (Dkt. No. 31) is **DENIED.**

DATED in Kalamazoo, MI:

January 14, 2008

/s/ Richard Alan Enslen

RICHARD ALAN ENSLEN

SENIOR UNITED STATES DISTRICT JUDGE

**End of Document**


Positive
As of: October 30, 2022 7:52 PM Z

## *Dixie Rests., Inc. v. Philips Consumer Elecs. Co.*

United States District Court for the Western District of Tennessee, Western Division

February 18, 2005, Decided ; February 18, 2005, Filed

Case No. 02-2461 D/A JURY DEMAND, Case No. 03-2506 D/A JURY DEMAND

**Reporter**
2005 U.S. Dist. LEXIS 44078 *

DIXIE RESTAURANTS, INC. d/b/a DIXIE CAFE, Plaintiff, v. PHILIPS CONSUMER ELECTRONICS COMPANY, a Division of Philips Electronics North American Corporation, BILL SCHROEPPEL d/b/a SOUTHERN CREATIONS, and LONGWELL COMPANY a/k/a and d/b/a LONGWELL ELECTRONICS, INC., Defendants. THE ST. PAUL PROPERTY AND LIABILITY INSURANCE COMPANY As Subrogee of MBB Licensee of THE LEARNING HOUSE, Plaintiff, v. PHILIPS CONSUMER ELECTRONICS COMPANY, a Division of PHILIPS ELECTRONICS NORTH AMERICA CORP., BILL SCHROEPPEL d/b/a SOUTHERN CREATIONS, LONGWELL COMPANY a/k/a and d/b/a LONGWELL ELECTRONICS, INC., Defendants.

## Core Terms

service of process, asserts, defense motion, good cause

**Counsel:** **[*1]** For Jimmy Moore, Miscellaneous, Pro se, CIRCUIT COURT, 30TH JUDICIAL DISTRICT, Memphis, TN.

For Dixie Restaurants, Inc., doing business as Dixie Cafe, Plaintiff: Joe L. Wyatt, LEAD ATTORNEY, McWHIRTER, WYATT, & ELDER, Memphis, TN.

For St. Paul Property and Liability Insurance Company, As Subrogee of MBB Licensee of the Learing House, Plaintiff: Sam R. Marney, III, LEAD ATTORNEY, STEWART & WILKINSON, PLLC, Germantown, TN.

For Philips Consumer Electronics Company, a Division of PHILIPS ELECTRONICS NORTH AMERICAN CORPORATION, Defendant: Joe D. Spicer, Minton Philip Mayer, SPICER FLYNN & RUDSTROM, Memphis, TN.

For Bill Schroeppel, doing business as Southern Creations, Defendant: John D. Richardson, LEAD ATTORNEY, THE RICHARDSON LAW FIRM, Memphis, TN.

For Longwell Company, ThirdParty Defendant: Minton Philip Mayer, SPICER FLYNN & RUDSTROM, Memphis, TN.

**Judges:** BERNICE BOUIE DONALD, UNITED STATES

DISTRICT JUDGE.

**Opinion by:** Bernice B. Donald

## Opinion

ORDER DENYING DEFENDANT LONGWELL ELECTRONICS, INC.'S MOTION TO DISMISS AMENDED COMPLAINT OF PLAINTIFF DIXIE RESTAURANTS, INC.

This matter is before the Court on the motion of Defendant Longwell Electronics, Inc. ("Defendant") to **[*2]** dismiss the amended complaint of Plaintiff, Dixie Restaurants, Inc. ("Plaintiff") pursuant to *Rules 12(b)(5)* and *12(b)(4) of the Federal Rules of Civil Procedure*. For the following reasons, the Court DENIES Defendant's motion to dismiss.

### I. Factual Background [1]

The following facts are presumed to be true for purposes of the instant motion only. On or about January 8, 2001, a fire started in Defendant Southern Creations ("Southern Creations") located next door to Plaintiff. At some time prior to the fire. Plaintiff alleges that Defendant manufactured an electrical power cord which was sold to Defendant Philips Consumer Electronics Company ("Philips"). Philips then used the electrical cord in manufacturing a security monitoring system, which they sold to and/or installed for Southern Creations. The system was allegedly defective and dangerous. Plaintiff asserts that the system was dangerous because **[*3]** of the faulty manufacturing of the equipment by Defendant and Philips. Plaintiff further alleges that the equipment manufactured, sold, and installed by Defendant and/or Philips did not provide adequate warnings of danger. The fire at Southern Creation damaged Plaintiff's property.

Plaintiff brought an action against Philips and Southern

---

[1] The factual allegations are taken from Plaintiffs' complaint.

Creations in the Shelby County Circuit Court on May 6, 2002. Philips removed the case to federal court on June 10, 2002. Plaintiff filed an amended complaint adding Defendant on January 5, 2004. Defendant asserts that Plaintiff served Defendant on June 10, 2004. On November 2, 2004, Defendant filed the instant motion to dismiss, asserting that Plaintiff's service of process was improper, pursuant to *Federal Rules of Civil Procedure 12(b)(5)*; process was insufficient, pursuant to *Federal Rules of Civil Procedure 12(b)(4)*; and that the Court lacks personal jurisdiction over Defendant, pursuant to *Federal Rules of Civil Procedure 12(b)(2)*. However, Defendant filed an amendment to its motion to dismiss on January 25, 2005, withdrawing **[\*4]** the issue of personal jurisdiction.

## II. Analysis

Defendant first argues that Plaintiff's complaint should be dismissed pursuant to *Rule 12(b)(5) of the Federal Rules of Civil Procedure* because Plaintiff did not meet the 120-day requirement under *Rule 4(m)* and because Plaintiff served a non-authorized agent under *Rule 4(e)*. *Rule 12(b)(5)* enables a defendant to file a motion to dismiss for a plaintiff's failure to effect service of process. *Rule 4 of the Federal Rules of Civil Procedure* outlines the service requirements. Courts construe provisions of *Rule 4* liberally in order to uphold service, requiring only "substantial compliance." *Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir. 1982)*.

*Rule 4(m)* governs the length of time permitted for service of process. *Rule 4(m)* states in pertinent part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that **[\*5]** service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

*Fed. R. Civ. P. 4(m)*. Defendant argues that Plaintiff did not meet the *Rule 4(m)* requirement of service of process within 120 days, and, thus, the complaint should be dismissed.

When a plaintiff fails to perfect service within 120 days after filing a complaint, the plain meaning of the rule gives a district court the discretion to dismiss a complaint or to allow service to be perfected within a specified time, regardless of whether the plaintiff has demonstrated good cause. *See Henderson v. United States, 517 U.S. 654, 662, 116 S. Ct.*

*1638, 134 L. Ed. 2d 880 (1996)*; *Osborne v. First Union Nat. Bank of Delaware, 217 F.R.D. 405, 406 (S.D. Ohio 2003)*. The Advisory Committee notes following *Rule 4(m)* state:

> The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an **[\*6]** application of this subdivision even if there is no good cause shown.

*Fed. R. Civ. P. 4*, Advisory Committee Notes, *Rule 4, subdivision (m)*. Furthermore, in *Henderson,* the United States Supreme Court noted that the 1993 amendments to the Rules afford courts discretion to expand the 120-day period, even if the plaintiff does not show good cause. *517 U.S. at 662.* 'The Federal Rules thus convey a clear message: Complaints are not to be dismissed if served within 120 days, or within such additional time as the court may allow." *Id. at 663*.

Plaintiff does not argue that it had good cause for the delay in service of process. Therefore, as Plaintiff correctly notes, the choices available to the Court are to dismiss without prejudice or to allow for the extra time it took for Plaintiff to effect service of process on Defendant. As the Plaintiff contends, it would be nonsensical to dismiss the action without prejudice so that Plaintiff could bring the action again with timely service. As actual service has been effected, the Court exercises its discretion and extends the time allowable for service, thus finding **[\*7]** that service was timely under the requirements of *Rule 4(m)*.

Defendant further submits that it was improperly served by Plaintiff because a non-authorized individual, Kevin Fang ("Fang"), accepted service when Vincent Chen ("Chen") is the registered agent for service of process. Thus, Defendant asserts, the complaint should be dismissed for improper service, pursuant to *Federal Rule of Civil Procedure 4(e)(2)*.

*Rule 4(e)(2)* states in pertinent part that service may be effected "by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process." *Fed. R. Civ. P. 4(e)(2)*.

Plaintiff maintains that it mailed service of process to Defendant with a restricted delivery requirement limiting delivery to Chen, the registered agent. Because Defendant admits that Chen is the registered agent and Plaintiff directed delivery to Chen, the Court finds that Defendant cannot defeat service by allowing Fang, who is not the registered agent, to accept service. Therefore, the Court holds that service of process was not improper. The Court, therefore, denies **[\*8]** Defendant's motion to dismiss based on improper service

2005 U.S. Dist. LEXIS 44078, *8

pursuant to *Rule 12(b)(5)*.

Defendant next argues that process was insufficient under *Rule 12(b)(4) of the Federal Rules of Civil Procedure*. *Rule 12(b)(4)* permits a defendant to file a motion to dismiss for insufficiency of process. In this case, Defendant asserts that Plaintiff served the wrong defendant. It contends that the Longwell Company of Taiwan is the proper defendant, instead of Longwell Electronics, Inc. of Brea, California, whom Plaintiff served.

Plaintiff asserts that because the complaint names the Longwell Company a/k/a and d/b/a Longwell Electronics, Inc., the Defendant is properly named and served. Although Defendant alleges that the two companies are separate, it also admits that they are related. The Court holds that this is a question of fact that has not yet been resolved. Accordingly, Defendant's motion to dismiss for insufficiency of process is denied.

## III. Conclusion

For the aforementioned reasons, the Court **DENIES** Defendant's motion to dismiss.

**IT IS SO ORDERED** this 18 day of February, 2005.

**BERNICE BOUIE DONALD**

**UNITED STATES [*9]  DISTRICT JUDGE**

End of Document

No *Shepard's* Signal™
As of: October 30, 2022 9:00 PM Z

# *United States v. Granger*

United States District Court for the Eastern District of Tennessee

April 3, 2018, Filed

Case No. 2:17-cv-222

**Reporter**
2018 U.S. Dist. LEXIS 159287 *; 122 A.F.T.R.2d (RIA) 2018-5698

UNITED STATES OF AMERICA, Petitioner, v. WILLIAM R. GRANGER, Respondent.

## Core Terms

personal jurisdiction, summons, papers, motion to dismiss, district court, show cause, door

**Counsel:** **[*1]** For United States of America, Petitioner: Loretta S Harber, LEAD ATTORNEY, Leah Walker McClanahan, U S Department of Justice (Knox USAO), Office of U S Attorney, Knoxville, TN.

William R. Granger, Respondent, Pro se, Bristol, TN.

**Judges:** TRAVIS R. MCDONOUGH, UNITED STATES DISTRICT JUDGE. Magistrate Judge Clifton L. Corker.

**Opinion by:** TRAVIS R. MCDONOUGH

## Opinion

**MEMORANDUM AND ORDER**

Before the Court is Respondent William R. Granger's *pro se* motion to dismiss for lack of personal jurisdiction (Doc. 9). For the following reasons, Respondent's motion will be **DENIED**.

**I. BACKGROUND**

According to Petitioner the United States of America, the Internal Revenue Service ("IRS") is investigating Respondent's potential federal income-tax liability for the years 2004 through 2007. (Doc. 1, at 1-2.) The IRS, through its Revenue Officer, Shane Murray, served upon Respondent an IRS summons (the "IRS Summons") to appear before it and produce certain records. (*Id.* at 2.) Petitioner alleges that, although Respondent appeared for the scheduled meeting, he

has not produced the requested records and, therefore, has not complied with the IRS Summons. (*Id.*)

Petitioner filed the instant petition on December 8, 2017, pursuant to 26 U.S.C. §§ 7402(b) and 7604(a), seeking judicial [*2] enforcement of the IRS Summons. (Doc. 1.) The United States Marshals Service attempted to serve Respondent at his residence three separate times with a copy of the court summons and petition. (Doc. 7.) The Deputy Marshal did not make contact with Respondent on his first two attempts, but instead left his business card along with an instruction to call him. (*Id.* at 4.) On December 27, 2017, during his third attempt, the Deputy Marshal made contact with an individual who stated he was Respondent. (*Id.* at 5.) Respondent refused to open the door or take the papers from the Deputy Marshal. (*Id.*) The Deputy Marshal placed a copy of the court summons and petition "between the door handle and door frame" and drove away. (*Id.*) Petitioner filed proof of service upon Respondent on January 4, 2017. (Doc. 7.)

Respondent, proceeding *pro se*, filed a document entitled "Notice Via Special Visitation By An Alien to the Court of FRCP Rule 12(b) Motion to Dismiss for Lack of Personal Jurisdiction" (Doc. 9), which the Court construes as a motion to dismiss for lack of personal jurisdiction. That motion is now ripe for the Court's review.

**II. STANDARD OF LAW**

In the context of a motion to dismiss for lack of personal jurisdiction pursuant [*3] to Rule 12(b)(2), the plaintiff bears the burden of establishing the existence of personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007)*. In determining whether the plaintiff has met his burden, the Court must construe all of the facts in the light most favorable to the plaintiff. *Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 449 (6th Cir. 2012)*. Where the district court resolves the motion without an evidentiary hearing and instead relies solely on written submissions and affidavits, as here, the plaintiff's burden is "relatively slight," and a *prima facie* showing of jurisdiction will suffice. *Id.*

Nonetheless, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* (quoting *Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991)).*

"When a federal court's subject-matter jurisdiction is based on a federal question, the court's exercise of personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the *Due Process Clause of the Fourteenth Amendment.*" *AlixPartners, LLP v. Brewington, 836 F.3d 543, 549 (6th Cir. 2016).* Tennessee's long-arm statute, *Tennessee Code Annotated § 20-2-214*, expands the jurisdiction of Tennessee courts to the full limit permitted by the *Due Process Clause. Gordon v. Greenview Hosp., Inc., 300 S.W.3d 635, 645-46 (Tenn. 2009).* When a state's long-arm statute reaches as far as the limits of the *Due Process Clause*, the two inquiries merge, and the Court need only determine [*4] whether the exercise of personal jurisdiction violates constitutional due process. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd., 138 F.3d 624, 627 (6th Cir. 1998).*

"Due process requires that a defendant have 'minimum contacts . . . with the forum State . . . such that he should reasonably anticipate being haled into court there.'" *Schneider v. Hardesty, 669 F.3d 693, 701 (6th Cir. 2012)* (quoting *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).* A forum state will have personal jurisdiction over an individual where that individual is a citizen of that state or is domiciled there. *J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 880, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011).* Additionally, where an individual is personally served within the forum state, that state may exercise personal jurisdiction. *Id.; see also Fed. R. Civ. P. 4(k)(1)* ("Servicing a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . .").

### III. ANALYSIS

Respondent argues that the Court lacks personal jurisdiction over him because he neither "resides" nor is "found at" the address "104 Carolyn Circle, Bristol, TN 37620," as alleged by Petitioner. (Doc. 9, at 2.) Instead, according to Respondent, "[his] dwelling place is situated on private land without the United States, and within the external geographical boundaries of the union state Tennessee." (*Id.*) Respondent disclaims [*5] the zip code provided by Petitioner, as well as the signifier "TN," because those

"identify federal territory."[1] (*Id.* at 3.)

The Court can exercise personal jurisdiction over Respondent by two methods. First, because Respondent is a citizen of the State of Tennessee and is domiciled here, the Court retains personal jurisdiction over him. *J. McIntyre Machinery, 564 U.S. at 880.* Although Respondent disclaims his zip code and the abbreviation "TN," he acknowledges that his "dwelling place" is "within the external geographical boundaries of the union state Tennessee." (Doc. 9, at 2-3.) Courts "routinely reject[ ]" arguments made by tax protesters who claim to be citizens of a state, but not of the United States. *See Maxwell v. I.R.S., Civil Case No. 3090308, 2009 U.S. Dist. LEXIS 39854, 2009 WL 920533, at *2 (M.D. Tenn. Apr. 1, 2009)* (citing *Upton v. I.R.S., 104 F.3d 543, 545 (2d Cir. 1997); United States v. Hilgeford, 7 F.3d 1340, 1342 (7th Cir. 1993); United States v. Jagim, 978 F.2d 1032, 1036 (8th Cir. 1992)).* Accordingly, because Respondent is a citizen of and is domiciled in the State of Tennessee, this Court may properly personal jurisdiction over Respondent.

The Court may also exercise personal jurisdiction because Respondent was personally served in Tennessee. *J. McIntyre Machinery, 564 U.S. at 880; see also Fed. R. Civ. P. 4(k)(1); see also United States v. Bichara, 826 F.2d 1037, 1039 (11th Cir. 1987)* ("The district court could . . . acquire personal jurisdiction over [the respondent] by the service of the show cause order and the petition for enforcement of the summons."). The Federal Rules of Civil Procedure provide that an individual [*6] may be served by "delivering a copy of the summons and of the complaint to the individual personally . . . ." *Fed. R. Civ. P. 4(e)(2)(A).* Where an individual has received actual notice of a lawsuit, as here, the rules of service should be liberally construed. *Project X Enter., Inc. v. Karam, Nos. 14-cv-10761, 14-cv-10769, 2014 U.S. Dist. LEXIS 93518, 2014 WL 3385101, at *3 (E.D. Mich. July 10, 2014)* (citing *Rovinski v. Rowe, 131 F.2d 687 (6th Cir. 1942)).* "[P]ersonal service does not require 'in hand' delivery and acceptance of the papers.'" *2014 U.S. Dist. LEXIS 93518, [WL] at *2* (citations omitted). "[W]here a defendant attempts to avoid service *e.g.* by refusing to take the papers, it is sufficient if the server is in close proximity to the defendant, clearly communicates intent to serve court documents, and makes reasonable efforts to leave the papers with the defendant." *Id.* (quoting *Travelers Cas. & Sur. Co. of Am. v. Brenneke, 551 F.3d 1132, 1136 (9th Cir. 2009)).*

---

[1] Respondent makes similar arguments in a letter addressed to the Clerk of the Court in which he attempts to refuse service of process. (*See* Doc. 6.) To the extent it could be construed as a motion, the Court will consider Respondent's letter along with the instant motion to dismiss.

Here, the Deputy Marshal spoke to an individual who identified himself as Respondent. (Doc. 7, at 5.) The Deputy Marshal attempted to hand him the papers, but Respondent refused them. (*Id.*) As a result, the Deputy Marshal placed a copy of the summons and petition "between the door handle and door frame," making a reasonable effort to leave the papers with Respondent. (*Id.*) These actions are sufficient to constitute personal service upon Respondent. Accordingly, because Respondent was **[\*7]** personally served at his residence, located in Tennessee, the Court may exercise personal jurisdiction over him.

Respondent also "demand[s] [his] right to have the issue of personal jurisdiction decided by a jury of [his] peers . . . ." (Doc. 9, at 2.) However, "[t]he decision to exercise personal jurisdiction is a question of law based on the *Due Process Clause of the Constitution*." *Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 477 (6th Cir. 2003)* (internal quotation omitted). As such, personal jurisdiction is a question to be determined by the Court, not by a jury.

Finally, to the extent Respondent challenges this Court's subject-matter jurisdiction, *Title 26, Section 7402 of the United States Code* provides:

> If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

*See also 26 U.S.C. § 7604* (same). As explained above, Petitioner filed this petition seeking enforcement of an IRS summons, and Respondent resides in Tennessee. Accordingly, this Court is properly vested with subject-matter jurisdiction over this action. Respondent's motion to dismiss will, **[\*8]** therefore, be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Respondent's motion to dismiss (Doc. 9) is **DENIED**. The Court will issue a separate order to show cause.

**SO ORDERED**.

*/s/ Travis R. McDonough*

**TRAVIS R. MCDONOUGH**

**UNITED STATES DISTRICT JUDGE**

## ORDER TO SHOW CAUSE

Upon the petition to enforce the Internal Revenue Service ("IRS") summons (Doc. 1) and the exhibits attached thereto, including the Declaration of Revenue Officer Shane Murray, it is hereby **ORDERED**:

1. That Respondent, William R. Granger, appear before the United States District Court for the Eastern District of Tennessee, for a hearing to commence on **Thursday, June 21, 2018**, at **10:00 a.m.**, before the undersigned in the United States Courthouse, 900 Georgia Avenue, Courtroom 1A, Chattanooga, Tennessee, to show cause why he should not be compelled to obey the IRS summons served upon him on June 23, 2017.

2. That, at the hearing, Respondent show cause why he should not be required to give testimony to the IRS, as well as produce and permit the copying of all documents responsive to the requests set forth in the summons served upon him on June 23, 2017.

3. That a copy of this order to show cause, together with the petition, exhibits, **[\*9]** and declaration attached thereto, be personally served upon Respondent by the United States Marshal at least **thirty days** prior to the date assigned for the hearing.

4. That within **ten days** of the service of copies of this order, the petition, exhibits, and declaration, Respondent shall file and serve a written response to the petition, supported by appropriate affidavits, as well as any motions Respondent desires to make. Only those issues raised by motion or brought into controversy by the responsive pleadings, and supported by affidavit(s), will be considered. Any uncontested allegation in the petition will be considered admitted.

**SO ORDERED**

*/s/ Travis R. McDonough*

**TRAVIS R. MCDONOUGH**

**UNITED STATES DISTRICT JUDGE**

---

END OF DOCUMENT

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRIAN CUMMINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 3:22-cv-00301** |
| | ) | |
| **BRETTON KEEFER, on behalf of the** | ) | **Chief Judge Waverly D. Crenshaw, Jr.** |
| **deceased CHESTA SHOEMAKER,** | ) | **Magistrate Judge Alistair E. Newbern** |
| **AFSOON HAGH, and** | ) | |
| **JEANNE BURTON, Trustee on behalf** | ) | |
| **of CUMMINGS MANOOKIAN, PLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DECLARATION OF ELIZABETH S. TIPPING

I, Elizabeth S. Tipping, state that the following facts are true based upon my personal knowledge:

1. I am counsel of record for the above-named Plaintiff, Brian Cummings.

2. On October 28, 2022, I spoke with Deputy U.S. Marshal Robert Capus regarding his attempted service of process upon Defendant Afsoon Hagh at 226 Pelham Drive in Brentwood, Tennessee.

3. During our telephone conversation, Deputy U.S. Marshal Capus viewed a photograph of Brian Manookian on the internet, and stated that Mr. Manookian is the individual identified as "#2 Male" in the Return of Service document filed October 25, 2022. Deputy U.S. Marshal Capus confirmed that Mr. Manookian was at 226 Pelham Drive, Brentwood, Tennessee, on October 11, 2022. Deputy U.S. Marshal Capus further confirmed that Mr. Manookian was the individual described in the Return of Service document who told him to leave, threw the summons