on the ground, and then picked the summons up and threw it into Deputy U.S. Marshal Capus's car.

4.      I have submitted a Touhy request to the Office of General Counsel, asking that Deputy U.S. Marshal Capus provide additional details in writing concerning his interactions with "#2 Male" at 226 Pelham Drive, Brentwood, Tennessee, on October 11, 2022. In particular, I have requested that Deputy U.S. Marshal Capus confirm for the Court, in a Declaration or other written form, that he has identified Mr. Manookian as the individual described as "#2 Male" who told Deputy U.S. Marshal Capus to leave, threw the summons on the ground, and then threw it into Deputy U.S. Marshal Capus's vehicle. This request is currently in process.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on *November 16*, 2022.

Elizabeth S. Tipping

Respectfully Submitted,

**COUNTERPOINT LEGAL, PLC**

By: _____

Elizabeth S. Tipping, No. 023066
Kristen M. Shields, No. 036438

2689 Union Hill Road
Joelton, TN  37080
(615) 426-5566
liz@counterpointlaw.com
kristen@counterpointlaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on this the 16th day of November, 2022, via the Court's electronic filing system on the following:

Phillip G. Young, Jr.
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN  37203
phillip@thompsonburton.com

and via United States First Class mail, postage prepaid on the following:

Bretton Keefer
5554 Pumpkintown Lane
Lafayette, TN  37083

Afsoon Hagh
Hagh Law PLC
226 Pelham Drive
Brentwood, Tennessee 37027-4237

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BRIAN CUMMINGS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-cv-00301 |
| | ) | |
| BRETTON KEEFER, on behalf of the | ) | Chief Judge Waverly D. Crenshaw, Jr. |
| deceased CHESTA SHOEMAKER, | ) | Magistrate Judge Alistair E. Newbern |
| AFSOON HAGH, and | ) | |
| JEANNE BURTON, Trustee on behalf | ) | |
| of CUMMINGS MANOOKIAN, PLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF ROBERT CAPUS

I, Robert Capus, state that the following facts are true based upon my personal knowledge:

1.     I am a Deputy U.S. Marshal with the U.S. Marshals Service based out of the Middle District of Tennessee.

2.     On October 11, 2022, I attempted to effect service of process upon Defendant Afsoon Hagh at 226 Pelham Drive in Brentwood, Tennessee.

3.     At 226 Pelham Drive, a dark sedan pulled into the driveway. An adult male exited the vehicle, and I advised him that I was there to serve papers on Afsoon Hagh. The individual informed me that Ms. Hagh was his niece and that she had not lived there since June.

4.     As I was speaking with the individual in the driveway, a second male arrived at the property in a silver SUV. The second individual refused to identify himself. Attorney Ms. Tipping requested U.S. Marshals Service to review a photograph for the above case. At the direction of my supervisor, Ms. Tipping provided the name Brian Manookian through telephonic communications and I viewed a photograph of Mr. Manookian on the website thenationaltriallawyers.org. After

319

viewing this photograph of Brian Manookian on the website thenationaltriallawyers.org, I confirmed that Mr. Manookian was the second individual who I interacted with at 226 Pelham Drive.

5.  Mr. Manookian was irate when he arrived. As I recall, he swatted the summons from the trunk of the dark sedan causing it to fall on the ground. Mr. Manookian told me I was trespassing, and I had to leave. Based on Mr. Manookian's behavior, I was concerned that he would escalate our interaction to a physical confrontation, so I walked away to leave the premises. Mr. Manookian took out his cell phone and started video recording as I walked to my vehicle. As I recall, Mr. Manookian obstructed me from closing my car door and threw the summons into my vehicle.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___November 23___, 2022.

_____
Deputy U.S. Marshal Robert Capus

320

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRIAN CUMMINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00301** |
| | ) | |
| **BRETTON KEEFER, on behalf of the** | ) | **Chief Judge Waverly D. Crenshaw, Jr.** |
| **deceased CHESTA SHOEMAKER,** | ) | **Magistrate Judge Alistair E. Newbern** |
| **AFSOON HAGH, and** | ) | |
| **JEANNE BURTON, Trustee on behalf** | ) | |
| **of CUMMINGS MANOOKIAN, PLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Declaration of Robert Capus has been served on this the 25th day of November, 2022, via the Court's electronic filing system on the following:

Phillip G. Young, Jr.
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN  37203
phillip@thompsonburton.com

and via United States First Class mail, postage prepaid on the following:

Bretton Keefer
5554 Pumpkintown Lane
Lafayette, TN  37083

Afsoon Hagh
Hagh Law PLC
226 Pelham Drive
Brentwood, TN  37027-4237

Respectfully Submitted,

**COUNTERPOINT LEGAL, PLC**

By:    /s/ Elizabeth S. Tipping
      Elizabeth S. Tipping, No. 023066
      Kristen M. Shields, No. 036438

2689 Union Hill Road
Joelton, TN  37080
(615) 426-5566
liz@counterpointlaw.com
kristen@counterpointlaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRIAN CUMMINGS, | |
|     Plaintiff, | Case No. 3:22-cv-00301 |
| v. | Chief Judge Waverly D. Crenshaw, Jr. |
| | Magistrate Judge Alistair E. Newbern |
| BRETTON KEEFER et al., | |
|     Defendants. | |

## **ORDER**

Plaintiff Brian Cummings has filed a "motion to deem service effective" on Defendant Afsoon Hagh, asking the Court to find that the U.S. Marshals Service effected service of process on Hagh on Cummings's behalf on October 11, 2022. (Doc. No. 43.) Cummings has filed several declarations and exhibits in support of his argument that the Marshals Service served Hagh in substantial compliance with Federal Rule of Civil Procedure 4. (Doc. Nos. 43-1–43-10, 44, 45.)

The Federal Rules do not provide for the filing of motions to deem service effective. Rather, the kinds of arguments and evidence that Cummings presents are typically raised in the context of a motion for entry of default under Federal Rule of Civil Procedure 55(a). *See* Fed. R. Civ. P. 55(a).

Accordingly, Cummings's motion to deem service effective (Doc. No. 43) is DENIED WITHOUT PREJUDICE. Cummings may file a motion for entry of default under Rule 55(a) for the Clerk of Court's consideration or another motion authorized by the Federal Rules. Any such

motion should be supported by a memorandum of law and should include as appended exhibits any evidence Cummings wants the Court to consider in resolving the motion.

It is so ORDERED.

ALISTAIR D. NEWBERN
United States Magistrate Judge

2

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRIAN CUMMINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00301** |
| | ) | |
| **BRETTON KEEFER, on behalf of the** | ) | **Chief Judge Waverly D. Crenshaw, Jr.** |
| **deceased CHESTA SHOEMAKER,** | ) | **Magistrate Judge Alistair E. Newbern** |
| **AFSOON HAGH, and** | ) | |
| **JEANNE BURTON, Trustee on behalf** | ) | |
| **of CUMMINGS MANOOKIAN, PLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MOTION FOR ENTRY OF DEFAULT
AGAINST DEFENDANT BRETTON KEEFER**

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, Plaintiff Brian Cummings respectfully requests that the Clerk enter a default against Defendant Bretton Keefer. As grounds for this Motion, Plaintiff states as follows:

1.      On March 22, 2022, Plaintiff filed this action in the Circuit Court for Davidson County, Tennessee. (Doc. No. 1, PageID# 4-14.)

2.      On March 29, 2022, Plaintiff filed an Amended Complaint in the Circuit Court for Davidson County, Tennessee. (Doc. No. 1, PageID# 20-32.)

3.      On April 26, 2022, Defendant Jeanne Burton, Chapter 7 Trustee for Cummings Manookian, PLC removed Plaintiff's action to this Court. (Doc. No. 1.)

4.      This Court entered two Orders granting Plaintiff's requests to extend the time in which to serve Defendant Keefer, ultimately extending the date to November 28, 2022. (Doc. No. 20; Doc. No. 35, PageID# 163.)

1

5.      Defendant Keefer was personally served with a copy of the Summons and Amended Complaint on November 1, 2022, and proof of service was filed with this Court on November 4, 2022. (Doc. No. 41.)

6.      More than 21 days have passed since Defendant Keefer was served with the Summons and Amended Complaint; however, Defendant Keefer has not filed a responsive pleading.

For these reasons, Plaintiff asks the Clerk to enter a default against Defendant Keefer in this matter. Plaintiff is filing herewith the unsworn declaration required by L.R. 55.01 in support of this Motion.

Respectfully Submitted,

**COUNTERPOINT LEGAL, PLC**

By:    /s/ Elizabeth S. Tipping
       Elizabeth S. Tipping, No. 023066
       Kristen M. Shields, No. 036438

2689 Union Hill Road
Joelton, TN  37080
(615) 426-5566
liz@counterpointlaw.com
kristen@counterpointlaw.com
*Attorneys for Plaintiff*

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on this the 10th day of February, 2023, via the Court's electronic filing system on the following:

Phillip G. Young, Jr.
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN  37203
phillip@thompsonburton.com

and via United States First Class mail, postage prepaid on the following:

Bretton Keefer
5554 Pumpkintown Lane
Lafayette, TN  37083

Afsoon Hagh
Hagh Law PLC
226 Pelham Drive
Brentwood, TN  37027-4237

_/s/ Elizabeth S. Tipping_____

3

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BRIAN CUMMINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-cv-00301 |
| | ) | |
| BRETTON KEEFER, on behalf of the | ) | Chief Judge Waverly D. Crenshaw, Jr. |
| deceased CHESTA SHOEMAKER, | ) | Magistrate Judge Alistair E. Newbern |
| AFSOON HAGH, and | ) | |
| JEANNE BURTON, Trustee on behalf | ) | |
| of CUMMINGS MANOOKIAN, PLC, | ) | |
| | ) | |
| Defendants. | ) | |

DECLARATION OF ELIZABETH S. TIPPING
IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT
AGAINST DEFENDANT BRETTON KEEFER

I, Elizabeth S. Tipping, declare under penalty of perjury that the following facts are true and correct to the best of my information and belief:

1.      I am counsel of record for the above-named Plaintiff, Brian Cummings.

2.      On November 1, 2022, Defendant Bretton Keefer was personally served with a copy of the Summons and Amended Complaint by private process server Roger Clemons, and proof of service was filed with this Court on November 4, 2022. (Doc. No. 41.)

3.      Since service on November 1, 2022, more than 21 days have elapsed and Defendant Keefer has failed to file a responsive pleading or otherwise defend Plaintiff's Amended Complaint.

4.      Defendant Keefer is not a minor, and, to the best of my information and belief, Defendant Keefer is not incompetent.

1

5.      Defendant Keefer is not in the military service, as evidenced by the certificate issued by the Department of Defense Manpower Data Center on February 7, 2023, which is attached hereto as Exhibit 1.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _February 10_, 2023.

 

Elizabeth S. Tipping

2

Respectfully Submitted,

**COUNTERPOINT LEGAL, PLC**

By:   /s/ Elizabeth S. Tipping
       Elizabeth S. Tipping, No. 023066
       Kristen M. Shields, No. 036438

2689 Union Hill Road
Joelton, TN  37080
(615) 426-5566
liz@counterpointlaw.com
kristen@counterpointlaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on this the 10th day of February, 2023, via the Court's electronic filing system on the following:

Phillip G. Young, Jr.
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN  37203
phillip@thompsonburton.com

and via United States First Class mail, postage prepaid on the following:

Bretton Keefer
5554 Pumpkintown Lane
Lafayette, TN  37083

Afsoon Hagh
Hagh Law PLC
226 Pelham Drive
Brentwood, TN  37027-4237

       /s/ Elizabeth S. Tipping

3

# Exhibit 1

Department of Defense Manpower Data Center

Results as of : Feb-07-2023 05:58:11 PM

SCRA 5.15



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:
Birth Date:         Nov-XX-1992
Last Name:        KEEFER
First Name:        BRETTON
Middle Name:
Status As Of:      Feb-07-2023
Certificate ID:      5ZT8SYNMLMGK5Q3

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods.  Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRIAN CUMMINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00301** |
| | ) | |
| **BRETTON KEEFER, on behalf of the** | ) | **Chief Judge Waverly D. Crenshaw, Jr.** |
| **deceased CHESTA SHOEMAKER,** | ) | **Magistrate Judge Alistair E. Newbern** |
| **AFSOON HAGH, and** | ) | |
| **JEANNE BURTON, Trustee on behalf** | ) | |
| **of CUMMINGS MANOOKIAN, PLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MOTION FOR ENTRY OF DEFAULT
## AGAINST DEFENDANT AFSOON HAGH

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, Plaintiff Brian Cummings respectfully requests that the Clerk enter a default against Defendant Afsoon Hagh. As grounds for this Motion, Plaintiff states as follows:

1.      On March 22, 2022, Plaintiff filed this action in the Circuit Court for Davidson County, Tennessee. (Doc. No. 1, PageID# 4-14.)

2.      On March 29, 2022, Plaintiff filed an Amended Complaint in the Circuit Court for Davidson County, Tennessee. (Doc. No. 1, PageID# 20-32.)

3.      On April 26, 2022, Defendant Jeanne Burton, Chapter 7 Trustee for Cummings Manookian, PLC removed Plaintiff's action to this Court. (Doc. No. 1.)

4.      This Court entered two Orders granting Plaintiff's requests to extend the time in which to serve Defendant Hagh, ultimately extending the date to November 28, 2022. (Doc. No. 20; Doc. No. 35, PageID# 163.)

1

5.      Repeated attempts to serve Defendant Hagh were unsuccessful due to Defendant Hagh's active evasion of service of process, as described in Plaintiff's Notice Regarding Service Efforts and in Attorney Price's declarations filed with this Court. (Doc. Nos. 19, 25, 28, 32, 33.)

6.      On September 30, 2022, this Court directed the U.S. Marshals Service to effect service of process on Defendant Hagh at 226 Pelham Drive in Brentwood, Tennessee, and directed the Clerk of Court to issue a Summons to Defendant Hagh at this address for service by the U.S. Marshals Service. (Doc. No. 35, PageID# 163.)

7.      On October 11, 2022, the U.S. Marshals Service traveled to 226 Pelham Drive in Brentwood, Tennessee to effect service on Defendant Hagh. These efforts were met by the obstructionist and threatening behavior of Defendant Hagh's husband, as described in the return of service and in the Declaration of Deputy U.S. Marshal Robert Capus. (Doc. Nos. 39, 45.)

8.      As discussed in the accompanying Memorandum of Law filed herewith, the efforts of the U.S. Marshals Service and the deliberate interference by Defendant Hagh's husband are sufficient to meet the standards required to effect service in this case. As such, Defendant Hagh was served on October 11, 2022.

9.      More than 21 days have passed since Defendant Hagh was served with the Summons and Amended Complaint; however, Defendant Hagh has not filed a responsive pleading.

For these reasons, Plaintiff asks the Clerk to enter a default against Defendant Hagh in this matter. Plaintiff is filing herewith the unsworn declaration required by L.R. 55.01 in support of this Motion.

2

Respectfully Submitted,

**COUNTERPOINT LEGAL, PLC**

By:    /s/ Elizabeth S. Tipping
       Elizabeth S. Tipping, No. 023066
       Kristen M. Shields, No. 036438

2689 Union Hill Road
Joelton, TN  37080
(615) 426-5566
liz@counterpointlaw.com
kristen@counterpointlaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on this the 10th day of February, 2023, via the Court's electronic filing system on the following:

Phillip G. Young, Jr.
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN  37203
phillip@thompsonburton.com

and via United States First Class mail, postage prepaid on the following:

Bretton Keefer
5554 Pumpkintown Lane
Lafayette, TN  37083

Afsoon Hagh
Hagh Law PLC
226 Pelham Drive
Brentwood, TN  37027-4237

                          /s/ Elizabeth S. Tipping

3

## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRIAN CUMMINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00301** |
| | ) | |
| **BRETTON KEEFER, on behalf of the** | ) | **Chief Judge Waverly D. Crenshaw, Jr.** |
| **deceased CHESTA SHOEMAKER,** | ) | **Magistrate Judge Alistair E. Newbern** |
| **AFSOON HAGH, and** | ) | |
| **JEANNE BURTON, Trustee on behalf** | ) | |
| **of CUMMINGS MANOOKIAN, PLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION FOR ENTRY OF DEFAULT
### AGAINST DEFENDANT AFSOON HAGH

As directed by the Court in its December 27, 2022 Order, Plaintiff Brian Cummings submits this Memorandum of Law in Support of his Motion for Entry of Default against Defendant Afsoon Hagh. As discussed below, service of process has been effected upon Defendant Hagh as required by law, and a default should be entered against her due to her failure to plead or defend within 21 days of service.

### PROCEDURAL HISTORY

This is a dispute concerning the division of a legal fee earned in a wrongful death action that was resolved at mediation nearly one and a half years ago. The plaintiff in the underlying action, Defendant Bretton Keefer, was initially represented by three attorneys: Plaintiff Cummings, Defendant Hagh, and Defendant Hagh's husband, Brian Manookian.[1] (Doc. No. 1-1,

---

[1] The marital relationship between Defendant Hagh and Mr. Manookian was confirmed in a Joint Pretrial Statement filed by both Defendant Hagh and Mr. Manookian with the Bankruptcy Court for the Middle District of Tennessee on August 17, 2020. (See Joint Pretrial Statement, Adv. Proc. No. 3:20-ap-90002, Doc. No. 61, p. 1-2.)

1

PageID# 20-22.) The three attorneys originally represented Defendant Keefer while practicing together at Cummings Manookian, PLC. (Id.) In September 2018, Plaintiff left Cummings Manookian and began practicing at Cummings Law. (Id.) From that time until October 2020, Plaintiff at Cummings Law and Defendant Hagh at Cummings Manookian jointly represented Defendant Keefer (Mr. Manookian was suspended from the practice of law for the majority of the time that Defendant Keefer's underlying lawsuit was pending). (Id.; see Declaration of Elizabeth S. Tipping in Support of Motion for Entry of Default Against Defendant Afsoon Hagh, filed herewith ("Tipping Decl. #3"), at Exhibit B)). On November 27, 2020, Plaintiff Cummings filed a Notice of Attorney's Lien in the underlying action. (Tipping Decl. #3 at Exhibit C.)

Defendant Hagh successfully demanded that the state court require Plaintiff to file this separate action to resolve the issues surrounding the division of legal fees in the underlying lawsuit.[2] However, after convincing the state court that a separate lawsuit was required, Defendant Hagh actively evaded service of process in this case. As described in Plaintiff Cummings' previous filings and summarized in his Motion to Deem Service Effective (Doc. No. 43, PageID# 181), Plaintiff attempted to serve Defendant Hagh via Certified Mail, via private process server, through counsel, and he also requested a waiver of service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. (Doc. Nos. 19, 25, 28, 32, 33.) The Rule 4(d) request for waiver of service was successfully delivered to Defendant Hagh at two different addresses—the address she registered with the Tennessee Board of Professional Responsibility and her last known home address. (Doc. No. 25, PageID# 112 at ¶ 1; Doc. No. 28, PageID# 122 at ¶ 11; Doc. No. 32, PageID# 142.)

---

[2] After the settlement of the underlying action, Plaintiff Cummings filed a Motion for Status Conference concerning his lien. (See Tipping Decl. #3 at Exhibit D.) Defendant Hagh, as counsel for Mr. Keefer, vigorously opposed this request, insisting that Plaintiff was required to seek relief in a separate action. (See id. at Exhibits E, F, G.) The trial court entered an Order on January 18, 2022, finding that Plaintiff was required to address his attorney's lien in a separate proceeding. (See id. at Exhibit H.) This lawsuit followed.

Following these unsuccessful attempts to serve Defendant Hagh, Plaintiff asked this Court to order the U.S. Marshals Service to serve Defendant. (Doc. No. 29.) This Court found that ordering the Marshals Service to effect service of process was a reasonable next step and granted Plaintiff's request. (Doc. No. 35, PageID# 163-64.) The Court took judicial notice that Defendant Hagh's publicly available address on file with the Board of Professional Responsibility of the Supreme Court of Tennessee is 226 Pelham Drive, Brentwood, Tennessee 37027-4237, and directed the Marshals Service to effect service of process on Defendant Hagh in person at that address. (Id.)

On October 11, 2022, Deputy U.S. Marshal Robert Capus traveled to 226 Pelham Drive in Brentwood to serve Defendant Hagh as directed by the Court. (Doc. No. 45, PageID# 264 at ¶ 2.). Deputy U.S. Marshal Capus informed an adult male at the property that he was there to serve papers on Defendant Hagh.[3] (Id. at ¶ 3.) As Deputy U.S. Marshal Capus was speaking with this first individual, Defendant Hagh's husband, Mr. Manookian, arrived. (Id. at ¶ 4.) Mr. Manookian was irate when he arrived, and his behavior caused Deputy U.S. Marshal Capus to believe that Mr. Manookian would escalate their interaction to a physical confrontation. (Id. at ¶ 5.) Mr. Manookian initially swatted the summons from where it sat on a vehicle's trunk, causing it to fall on the ground, and then obstructed Deputy U.S. Marshal Capus from closing his car door so that Mr. Manookian could throw the summons into the Deputy's car.[4] (Id.)

---

[3] Although the individual identified by Deputy U.S. Marshal Capus as "#1 Male" claimed that Defendant Hagh had not lived at the Pelham Drive address since June, Defendant Hagh continues to use that address as her law firm's address in court filings, including in a complaint filed five days after Deputy U.S. Marshal Capus attempted service. (See, e.g., Tipping Decl. #3 at Exhibits I, J.) The Pelham Drive address remains Defendant Hagh's publicly available address on file with the Board of Professional Responsibility. (See id. at Exhibit K.) If Defendant Hagh had in fact changed her address, she would have been required to update her address with the Board of Professional Responsibility within thirty days and use her current address on court filings. See Tenn. Sup. Ct. R. 9, § 10.1; Tenn. R. Civ. P. 11.01.

[4] This is not the first time Mr. Manookian has engaged in threatening or aggressive behavior. On October 4, 2021, the Chancery Court for Davidson County upheld the decision of the Hearing Panel of the Board of Professional Responsibility ordering that Mr. Manookian be suspended from the practice of law for a period of twenty-four months and attend at least twelve hours of anger management training following a series of written communications from Mr.

3

## DISCUSSION

The efforts of the U.S. Marshals Service and the deliberate interference by Defendant Hagh's husband are sufficient to meet the standards required to effect service in this case. As such, Defendant Hagh was served on October 11, 2022, and a default should be entered due to her failure to timely respond.

### A. Rule 4 of the Federal Rules of Civil Procedure Requires Only "Substantial Compliance" When a Defendant is Actively Attempting to Evade Service.

Federal Rule 4(e) provides the standards for when service is effected on a defendant. The Sixth Circuit has explained that "Rule 4 is a flexible rule which principally requires sufficient notice to the party of claims brought against it." Gottfried v. Frankel, 818 F.2d 485, 492-92 (6th Cir. 1987); see also Nashville Cmty. Bail Fund v. Gentry, 446 F. Supp. 3d 282, 299-300 (M.D. Tenn. 2020) (citing Gottfried and applying flexible interpretation to Rule 4(j)(2)(A) to find service effective); Dixie Rests., Inc. v. Philips Consumer Elecs. Co., Nos. 02-2461, 03-2506, 2005 U.S. Dist. LEXIS 44078, at *4 (W.D. Tenn. Feb. 18, 2005) (recognizing that "Courts construe provisions of Rule 4 liberally in order to uphold service, requiring only 'substantial compliance'").

Personal service does not require "in hand" delivery and acceptance of the papers. U.S. v. Granger, No. 2:17-cv-222, 2018 U.S. Dist. LEXIS 159287, at *6 (E.D. Tenn. Apr. 3, 2018). "Where a defendant attempts to avoid service *e.g.* by refusing to take the papers, it is sufficient if the server is in close proximity to the defendant, clearly communicates intent to serve court documents, and makes reasonable efforts to leave the papers with the defendant." Id. The District Court for the District of Columbia has noted that service of process should not become "a cat-and-

---

Manookian that the Court found were "abusive, intimidating, threatening, and untrue" and "made with a sinister motive." (See Tipping Decl. #3 at Exhibit L, at 3-4, 28-31.) Mr. Manookian's appeal of the Chancery Court's Order is currently pending before the Supreme Court. Two weeks after the entry of the Chancery Court's Order, the Supreme Court of Tennessee issued an order temporarily suspending Mr. Manookian from the practice of law based on two new incidents of intimidating and threatening emails sent by Mr. Manookian. (See Tipping Decl. #3 at Exhibit M.)

4

mouse game," "a game of hide and seek," or "a game of wiles and tricks and a defendant should not be able to defeat service simply by refusing to accept the papers or instructing others to reject service." Ali v. Mid-Atlantic Settlement Servs., Inc., 233 F.R.D. 32, 35-36 (D.D.C. 2006).

**B. Defendant Hagh's Obstructionist and Evasive Behavior Cannot Defeat Service.**

Although Defendant Hagh and her husband and former co-counsel, Mr. Manookian, have improperly turned the rules of service of process into a game of hide and seek, the interaction between the U.S. Marshals Service and Defendant Hagh's husband was sufficient to meet the "substantial compliance" standard required to complete service.

First, it is important to note that Defendant Hagh has actual notice of this lawsuit. Not only did she insist that Plaintiff file this lawsuit, but she has received at least two copies of the Complaint through the Rule 4(d) requests for waiver of service. (Doc. No. 25, PageID# 112 at ¶ 1; Doc. No. 28, PageID# 122 at ¶ 11.) See Am. Clothing Express, Inc. v. Cloudflare, Inc., No. 2:20-cv-2007, 2022 U.S. Dist. LEXIS 72814, at *7 (W.D. Tenn. Apr. 15, 2022) (quoting Rovinski v. Rowe, 131 F.2d 687, 689 (6th Cir. 1942)) (deeming service effective despite plaintiffs' technical non-compliance with Rule 4, explaining "'Civil Procedure Rule 4(d)(1) should be construed liberally [] to effectuate service where actual notice of suit has been received by the defendant.'") Defendant Hagh also has constructive notice of this case, as Plaintiff's counsel discussed this action with the attorney representing Defendant Hagh and her law firm in the pending bankruptcy proceeding for Cummings Manookian, PLC. (Doc. No. 19, PageID# 97 at ¶ 8.)

Second, prior to the interaction between the U.S. Marshals Service and Defendant Hagh's husband, Defendant Hagh repeatedly evaded service despite the Plaintiff's diligent and repeated attempts to serve her.[5] When Plaintiff's counsel engaged a private process server, no one would

---

[5] In ordering the Marshals Service to effect service of process on Defendant Hagh, this Court described Plaintiff's previous efforts to serve Defendants Keefer and Hagh as "diligent." (Doc. No. 35, PageID# 162.)

answer the door at Defendant Hagh's residence. (Doc. No. 19, PageID# 97 at ¶ 7; Doc. No. 32, PageID# 142.) When Plaintiff's counsel sought consent to serve Defendant Hagh through her attorney, Defendant Hagh's attorney advised that he was not authorized to accept service. (Doc. No. 19, PageID# 97 at ¶ 8; Doc. No. 32, PageID# 142.) And when Plaintiff's counsel mailed requests for waiver of service to two different addresses, Defendant again failed to respond despite having received the requests. (Doc. No. 25, PageID# 112 at ¶ 1; Doc. No. 28, PageID# 122 at ¶ 11; Doc. No. 32, PageID# 142.) Plaintiff's counsel also attempted to call and email Defendant Hagh, but his voice messages were not returned and Defendant Hagh blocked his emails. (Doc. No. 28, PageID# 121 at ¶ 9; Doc. No. 35, PageID# 163). Plaintiff's reasonable and diligent efforts provide reason for a flexible application of Rule 4. See, e.g., Habib v. GMC, 15 F.3d 72, 75 (6th Cir. 1994) (finding good cause existed to excuse late service under a prior version of Rule 4 because of plaintiff's "reasonable and diligent efforts to complete service").

Finally, when the U.S. Marshals Service traveled to Defendant Hagh's address to serve Defendant Hagh, her husband, Mr. Manookian, intervened. According to Deputy U.S. Marshal Capus, Mr. Manookian was "irate," swatting the summons to the ground and demanding that Deputy U.S. Marshal Capus leave the premises. (Doc. No. 45, Page ID# 265 at ¶ 5.) Deputy U.S. Marshal Capus was concerned that Mr. Manookian would cause a physical confrontation. (Id.) As Deputy U.S. Marshal Capus was attempting to leave, Mr. Manookian prevented him from closing the car door and threw the summons into the vehicle. (Id.) In other words, near the conclusion of their interaction, Defendant Hagh's husband had physical possession of the service papers, but threw them into Deputy U.S. Marshal Capus' vehicle in yet another attempt to reject service.

Despite Mr. Manookian's aggressive attempt to impede service, in light of Defendant Hagh's actual notice of the lawsuit and her repeated efforts to evade service, the interaction

between Deputy U.S. Marshal Capus and Mr. Manookian was sufficient to effect service upon Defendant Hagh. While a defendant has the right to have service effected in a lawful manner, "he is not permitted to willfully evade service of process." Boles v. Lewis, No. 1:07-cv-277, 2008 U.S. Dist. LEXIS 2701, at *3-4 (W.D. Mich. Jan 14, 2008) (citing Friedman v. Estate of Presser, 929 F.2d 1151, 1155-56 (6th Cir. 1991) and Mfrs.' Indus. Relations Ass'n. v. E. Akron Casting Co., 58 F.3d 204, 206-07 (6th Cir. 1995)); see also Willie McCormick & Assocs. v. Lakeshore Eng'g Servs., No. 12-15460, 2022 U.S. Dist. LEXIS 162196, at *23-24 (E.D. Mich. Sept. 8, 2022) (citing plaintiff's refusal to accept delivery of case filings and upholding default and default judgment against him). Indeed, the First Circuit has recognized that a default judgment "provides a useful remedy when a litigant is confronted by an obstructionist adversary, and plays a constructive role in maintaining the orderly and efficient administration of justice." KPS & Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 13 (1st Cir. 2003).[6]

## CONCLUSION

The behavior of Defendant Hagh and her husband Brian Manookian creates precisely the type of situation that warrants a flexible application of Rule 4 and a finding of substantial compliance with the service obligations of Rule 4(e). As such, Defendant Hagh was served on October 11, 2022, when her husband received a copy of the service papers from Deputy U.S. Marshal Capus. More than 21 days have passed since service was completed, and Defendant Hagh

---

[6] In an older case from the Eastern District of Tennessee, the court denied the defendants' motion to set aside default and default judgment where the Marshals Service left a copy of the summons and complaint with the defendant's wife while the defendant was incarcerated. U.S. v. Knox, 79 F. Supp. 714 (E.D. Tenn. 1948). According to the court: "the Marshal's return, together with the whole record, reflects that the Marshal delivered a copy of the summons and of the complaint to Knox's wife at his dwelling place and that this meets the requirements of the Rules which provide that service may be had by leaving copies of such papers at a defendant's usual place of abode with some person of suitable age and discretion then residing therein." Id.

7

has not filed a responsive pleading or defense. The Clerk should enter a default against Defendant

Hagh.

Respectfully Submitted,

**COUNTERPOINT LEGAL, PLC**

By:   /s/ Elizabeth S. Tipping
           Elizabeth S. Tipping, No. 023066
           Kristen M. Shields, No. 036438

2689 Union Hill Road
Joelton, TN  37080
(615) 426-5566
liz@counterpointlaw.com
kristen@counterpointlaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on this the 10th day of February, 2023, via the Court's electronic filing system on the following:

Phillip G. Young, Jr.
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN  37203
phillip@thompsonburton.com

and via United States First Class mail, postage prepaid on the following:

Bretton Keefer
5554 Pumpkintown Lane
Lafayette, TN  37083

Afsoon Hagh
Hagh Law PLC
226 Pelham Drive
Brentwood, TN  37027-4237

          /s/ Elizabeth S. Tipping

Ali v. Mid-Atlantic Settlement Services, Inc., 233 F.R.D. 32 (2006)

---

KeyCite Yellow Flag - Negative Treatment

Amended on Reconsideration by   Ali v. Mid-Atlantic Settlement Services, Inc.,   D.D.C.,   March 10, 2006

233 F.R.D. 32

United States District Court,

District of Columbia.

Betty Gene ALI, Plaintiff,

v.

MID–ATLANTIC SETTLEMENT

SERVICES, INC. et al.

No. CIV.A.02–2271(RWR).

|

Jan. 6, 2006.

**Synopsis**

**Background:** Plaintiff moved for default judgment, after defendant did not respond to summons and complaint allegedly served on three different occasions, and also moved for sanctions.

**Holdings:** The District Court, Roberts, J., held that:

[1] service was effective when papers were left with defendant's mother;

[2] service was effective when left with doorman of building where defendant resided;

[3] service was accomplished when server left papers in door of another apartment occupied by defendant, at defendant's instruction; and

[4] sanctions against defendant's attorney were appropriate, for not responding to summon and complaint and for challenging adequacy of service.

Ordered accordingly.

**West Headnotes (8)**

**[1]    Process**    Mode and sufficiency of service

Service of process will be deemed effective where defendant has actual notice of suit, and plaintiff has made good faith effort to comply with service requirements of federal procedure rules. Fed.Rules Civ.Proc.Rule 4(e), 28 U.S.C.A.

16 Cases that cite this headnote

**[2]    Process**    Acceptance or acknowledgment of service

Even though a defendant refuses physical acceptance of a summons, service is complete if a defendant is in close proximity to a process server under such circumstances that a reasonable person would be convinced that personal service of the summons is being attempted. Fed.Rules Civ.Proc.Rule 4(e)(2), 28 U.S.C.A.

4 Cases that cite this headnote

**[3]    Process**    Acceptance or acknowledgment of service

A defendant's refusal to open the door to his residence, to allow process server to hand him summons and complaint, does not invalidate plaintiff's service. Fed.Rules Civ.Proc.Rule 4(e)(2), 28 U.S.C.A.

2 Cases that cite this headnote

**[4]    Process**    Leaving copy at residence or other place

A defendant need not be living at location at time when personal service of summons is attempted, in order for service of process to be achieved by leaving copies of papers "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then

Ali v. Mid-Atlantic Settlement Services, Inc., 233 F.R.D. 32 (2006)

residing therein." Fed.Rules Civ.Proc.Rule 4(e) (2), 28 U.S.C.A.

12 Cases that cite this headnote

**[5]     Process**  🔑  Leaving copy at residence or other place

**Process**  🔑  Leaving copy with member of family or other person

There was effective service of process on defendant, who was attending law school in Pennsylvania, under federal procedure rule provision allowing papers to left at defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, when server left papers at address shown for student in law school directory, with woman who identified herself as defendant's mother, and who stated that defendant lived with her. Fed.Rules Civ.Proc.Rule 4(e)(2), 28 U.S.C.A.

12 Cases that cite this headnote

**[6]     Process**  🔑  Mode and sufficiency of service

Defendant was served with process under Pennsylvania law, which resulted in satisfaction of requirements under federal procedure rule, when process server left papers with doorman of apartment building where defendant resided, and doorman promised to promptly give papers to defendant. Fed.Rules Civ.Proc.Rule 4(e)(1), 28 U.S.C.A; Rules Civ.Proc., Rule 402(a)(2)(ii), 42 Pa.C.S.A.

3 Cases that cite this headnote

**[7]     Process**  🔑  Mode and sufficiency of service

**Process**  🔑  Acceptance or acknowledgment of service

Personal service of defendant was accomplished, under federal procedure rule, when defendant, speaking to process server over telephone, instructed him to place papers in door of defendant's apartment, and stated that he would

get them. Fed.Rules Civ.Proc.Rule 4(e)(2), 28 U.S.C.A.

1 Cases that cite this headnote

**[8]     Costs, Fees, and Sanctions**  🔑  Defensive pleadings;  answers and replies

Attorney for defendant would be sanctioned, under Rule 11, for not responding to summons and complaint, and for asserting that service was not validly accomplished, when reasonable inquiry would have shown that there were three instances of successful service, one on his mother at home address, one with doorman of apartment building where he resided at time, and one by leaving documents in door of another apartment where defendant lived, at defendant's instruction. Fed.Rules Civ.Proc.Rule 11(b)(3, 4), (c), 28 U.S.C.A.

1 Cases that cite this headnote

### Attorneys and Law Firms

**\*34**  Thomas C. Willcox, Washington, DC, for Plaintiff.

Ross Kellas, Perry & Associates, Fairfax, VA, Stephen Jerome Williams, Riverdale, MD, Gary C. Tepper, Scott S. Ward, Arent Fox Kintner Plotkin & Kahn, PLLC, Washington, DC, Jordan M. Spivok, Protas, Spivok & Collins, LLC, Bethesda, MD, for Mid-Atlantic Settlement Services, Inc.

### *MEMORANDUM OPINION AND ORDER*

ROBERTS, District Judge.

Plaintiff Betty Gene Ali filed a motion for default judgment as to defendant Anthony Noble to which Noble responded by filing a motion to set aside entry of default, arguing that service had never been effected. Ali also filed a motion for sanctions under Rule 11, Fed.R.Civ.P., for having to respond to Noble's motion to set aside entry of default which Ali deemed frivolous. Because service on Noble was effective,

Nawrocki, Alejandra 10/21/2022
For Educational Use Only

Ali's default judgment motion will be granted and a judgment of default will be entered if Noble does not file an answer on or before January 17, 2006. Because some of Noble's factual contentions betray a failure by his counsel to conduct a reasonable prior inquiry and some of his legal contentions are not warranted by existing law, Ali's motion for sanctions will be granted in part.

### BACKGROUND

Ali, an ailing widow, has sued Noble and his step-father, Richard L. Tolbert, [1] for their parts in an alleged scheme that swindled her in the sale of her Southeast Washington, D.C. home to Noble. Ali seeks to have the sale rescinded.

Plaintiff's process servers delivered the summons and complaint multiple times in an effort to serve Noble, a law student attending the University of Pennsylvania at the time, but Noble never answered and asserts that service was never effected. During the 2002–2003 academic year, Noble lived in an apartment at 3131 Walnut Street, Philadelphia, Pennsylvania. In June 2003, Noble's listing on the University of Pennsylvania internet directory was changed to an address on Cree Drive in Forest Heights, Maryland. For the 2003–2004 academic year, Noble lived at 1624 Spruce Street, Apt. 1R in Philadelphia, the address to which his school directory listing was changed in the fall of 2003. That listing included Noble's telephone number which Ali's counsel furnished to process servers at Best Legal Services in Philadelphia.

On November 13, 2002, process server Maurice Liggins left a copy of the summons and complaint with an adult woman who identified herself as Paula Noble, Noble's mother, at 113 Cree Drive, Forest Heights, Maryland. Liggins' affidavit dated November 15, 2002 states that Paula Noble "admitted to living there with and is the mother/co-occupant of the defendant." Noble did not respond to the summons. On May 13, 2003, a process server left a copy of the summons and complaint with Edward Bowman, the concierge at the 3131 Walnut Street apartment house where Noble was then living while in school. Bowman later told Ali's counsel that Bowman accepted the papers from the process server, called Noble in his apartment, and then "focused on placing the documents ... into the hands of Mr. Noble as soon as possible." Noble did not respond to the summons. Then, on September 23, 2003,

process server Russell DaLonzo, Jr. from Best Legal Services went to the 1624 Spruce Street apartment where Noble was residing at that time. DaLonzo's October 1, 2003 affidavit of service says "spoke to Mr. Nobles over the phone and he stated put paper in the door and he'll get it." Noble still did not respond to the summons.

Ali sought and obtained an entry of default by the clerk, and filed a motion for default judgment. In response to an August 13, 2004 order directing Noble to show cause why Ali's motion should not be granted, Noble filed a motion to set aside entry of default, arguing that he was never properly **\*35** served. Noble's motion was denied without prejudice in an order that explained:

> As a motion to vacate the entry of default, the motion is deficient since it is not accompanied by a verified answer as is required by 🚩 Local Civil Rule 7(g). As a response to the show cause order, the filing fails to address with factual particularity the affidavits by Maurice Liggins on November 15, 2002 and Russell Dalonzo, Jr. on October 1, 2003 showing service of process upon both Noble and his mother. Asserting the legal conclusion that Noble "was not personally served and therefore not placed on legal notice" ... does not suffice to rebut the facts in sworn affidavits supporting entry of default or show good cause why the entry of default should be vacated.

Order, Nov. 24, 2004, at 1–2 (citations omitted). The order directed Noble to file in further response to the August 13, 2004 show cause order, a memorandum and supporting affidavits that answered all factual assertions advanced by plaintiff concerning service of process upon him in Maryland and Pennsylvania.

Noble responded by filing a memorandum along with his affidavit, the Liggins affidavit, the DaLonzo affidavit and the process server workcard describing the delivery of process on May 13, 2003 to Bowman, the apartment concierge, attached as exhibits. Noble's affidavit consisted of the following statements:

> 1. I have personal knowledge of the matters set forth in this affidavit.
>
> 2. I currently reside at 1624 Spruce Street, Philadelphia, PA 19104 and have lived there for the last year. Prior

Nawrocki, Alejandra 10/21/2022
For Educational Use Only

Ali v. Mid-Atlantic Settlement Services, Inc., 233 F.R.D. 32 (2006)

to my current residence, I resided in Tokyo, Japan (July 2003—August 2003) and 3131 Walnut Street, Apt. 237 Philadelphia, PA 19104 and [sic] (June 2002—July 2003).

3. I have never been served with a summons or a complaint in the case—Betty Gene Ali v Mid–Atlantic Services, Inc. et al., Civil Action No. 02 cv02271.

4. I, categorically, deny ever having been served by Maurice S. Liggins, Edward Bowman or Russell Dalzone [sic] in the above-referenced case.

(Def.'s Notice of Filing Lengthy Exhibits, Ex. 5.)

Shortly thereafter, Ali filed a motion for sanctions against Noble and his counsel seeking reimbursement for the costs incurred in responding to Noble's motion to set aside entry of default and in preparing and pursuing the motion for sanctions. She argues that Noble's representations that he was never served and had no legal notice of this litigation were made in bad faith, and that his motion to set aside default was frivolous. Noble responded to the motion for sanctions one month later only after a show cause order was issued against him for failure to file any timely response.

### *DISCUSSION*

I. SERVICE OF PROCESS

 [1]    The Federal Rules of Civil Procedure endorse multiple ways to achieve service of a summons and complaint upon a party. Service of process may be effected "by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein[,]" Fed.R.Civ.P. 4(e)(2), or "pursuant to the law of the state ... in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State[.]" Fed.R.Civ.P. 4(e)(1). Whether service is effective turns on the facts and circumstances of each case. Where service complies precisely with the requirements of Rule 4(e), it will be effective for personal jurisdiction, even if the individual did not receive actual notice. *Smith v. Kincaid,* 249 F.2d 243, 244 (6th Cir.1957); *Capitol Life Ins. Co. v. Rosen,* 69 F.R.D. 83, 88 n. 3 (E.D.Pa.1975). On the other hand, where the defendant

has received actual notice of the action, "the provisions of Rule 4(e) should be liberally construed to effectuate service and uphold the jurisdiction of the court." *Karlsson v. Rabinowitz,* 318 F.2d 666 (4th Cir.1963); *Rovinski v. Rowe,* 131 F.2d 687, 689 (6th Cir.1942) (same). "The rules governing service of process are not designed to create an obstacle course for **\*36** plaintiffs to navigate, or a cat-and-mouse game for defendants who are otherwise subject to the court's jurisdiction." *TRW, Inc. v. Derbyshire,* 157 F.R.D. 59, 60 (D.Col.1994). Rather, "the rules governing service of process are utilized for the purpose of providing a likelihood of bringing actual notice to the intended recipient," *Minnesota Mining & Mfr'g Co. v. Kirkevold,* 87 F.R.D. 317, 324 (D.Minn.1980), and actual notice satisfies the due process notice requirement and provides the court with personal jurisdiction. *Frank Keevan & Son, Inc. v. Callier Steel Pipe & Tube, Inc.,* 107 F.R.D. 665, 671 (S.D.Fla.1985). Where the defendant receives actual notice and the plaintiff makes a good faith effort to serve the defendant pursuant to the federal rule, service of process has been effective. *Id.* Good faith efforts at service are effective particularly where the defendant has engaged in evasion, deception, or trickery to avoid being served. *Id.*

> The service of process is not a game of hide and seek. Where service is repeatedly effected in accordance with the applicable rules of civil procedure and in a manner reasonably calculated to notify the defendant of the institution of an action against him, the defendant cannot claim that the court has no authority to act when he has willfully evaded the service of process.

*Electronics Boutique Holdings Corp. v. Zuccarini,* No. Civ. A. 00–4055, 2001 WL 83388, at *9 (E.D.Pa. Jan.25, 2001).

 [2]    [3]    Personal service of process under Rule 4(e)(2), permitting service by "delivering a copy of the ... [papers] to the individual personally," does not require an "in hand"

Ali v. Mid-Atlantic Settlement Services, Inc., 233 F.R.D. 32 (2006)

delivery and acceptance of the papers. 🚩 *Gambone v. Lite–Rock Drywall Corp. Advanced Constr. Material Corp.,* No. Civ. A. 01–1071, 2003 WL 21891584, at *4 (E.D.Pa. Aug.7, 2003) (finding service effective when process server found defendant at his dwelling house and announced her business but defendant refused to accept personal service, and process server left papers under the door mat). Personal service of process

> should not become a game of wiles and tricks and a defendant should not be able to defeat service simply by refusing to accept the papers or instructing others to reject service. Even though a defendant refuses physical acceptance of a summons, service is complete if a defendant is in close proximity to a process server under such circumstances that a reasonable person would be convinced that personal service of the summons is being attempted. Delivery of a summons to the person to be served may be accomplished by leaving it in his general vicinity, such as on the floor inside the residence near such person, informing him that the process server is so doing. A process server may leave the summons outside the door of a structure, informing the defendant he is so doing, where the defendant interposes the door between himself and the process server.

*Id.* A defendant's "refusal to open the door does not invalidate plaintiff's service. Personal service need not be face to face or hand to hand." 🚩 *Villanova v. Solow,* No. Civ. A. 97–6684, 1998 WL 643686, at *2 (E.D.Pa. Sept.18, 1998) (deciding that personal service was effective where the defendant refused to open the door of his dwelling and the process server put the papers through the mail slot in the front door); *see also* 🚩 *Novak v. World Bank,* 703 F.2d 1305, 1310 n. 14 (D.C.Cir.1983) ("When a person refuses to accept service,

service may be effected by leaving the papers at a location, such as on a table or on the floor, near that person.").

**[4]** Service also may be effected by leaving copies of the papers "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein[.]" Fed.R.Civ.P. 4(e)(2). For purposes of service under this provision, an individual may have more than one " 'dwelling house or usual place of abode,' provided each contains sufficient indicia of permanence." 🚩 *Nat'l Dev. Co. v. Triad Holding Corp.,* 930 F.2d 253, 257 (2d Cir.1991). An individual need not be living in that place at that time in order for it to qualify as his usual place of abode for purposes of Rule 4(e). A usual place of abode may be a college student's permanent home address while the college student is away at college. *See* 🚩 **\*37** *Hubbard v. Brinton,* 26 F.R.D. 564, 565 (E.D.Pa.1961); *see also Derbyshire,* 157 F.R.D. at 60 (finding service effective when left with an adult at the dwelling house at the address to which defendant instructed his mail to be forwarded). "When a Defendant does not have a permanent place of residence, a Court will consider whether he intended to return to the place of service in order to determine whether it can be characterized as his usual place of abode[.]" 🚩 *Blue Cross and Blue Shield of Michigan v. Chang,* 109 F.R.D. 669 (E.D.Mich.1986). On the other hand, an intention to return to the usual place of abode is not critical to effective service when the individual has received actual notice. *See* 🚩 *Karlsson,* 318 F.2d at 668.

The validity of the service attempts in Philadelphia also can be determined by Pennsylvania law under Rule 4(e)(1). Service in Pennsylvania may be effected by handing a copy of the papers to the defendant. Pa. R. Civ. P. 402(a)(1). Alternatively, service may be effected by handing a copy of the papers "(i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or (ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides." Pa. R. Civ. P. (a)(2).

A. *Service at 113 Cree Drive*

Nawrocki, Alejandra 10/21/2022
For Educational Use Only

Ali v. Mid-Atlantic Settlement Services, Inc., 233 F.R.D. 32 (2006)

[5]   The affidavit of service filed by Liggins shows that at 8:30 p.m. on November 13, 2002, Liggins left a copy of the summons, complaint and exhibits with Paula Noble, Noble's mother, at 113 Cree Drive, Forest Heights, Maryland. According to Liggins' affidavit, Paula Noble confirmed that she resided at 113 Cree Drive, and "admitted to living there with and is the mother/co-occupant of the Defendant." The information in the affidavit establishes that the service complied with the rule provision permitting service by leaving copies "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." Fed.R.Civ.P. 4(e)(2).

Noble does not deny, either through his affidavit or any other factual support, that 113 Cree Drive was his permanent residence while he was attending law school in Philadelphia. Noble has offered no affidavit controverting the Liggins affidavit in any respect. The uncontroverted facts in the record—Paula Noble's confirmation on November 13, 2002 that Noble resided at 113 Cree Drive with her, and Noble's Cree Drive address listing on the University of Pennsylvania internet directory—establish that 113 Cree Drive was Noble's permanent residence while he was away at school. [2] Nor does Noble's affidavit deny that his mother accepted the papers from the process server, or that he received them via his mother, or that he received actual notice of the litigation. In the absence of any claim that he never received actual notice, the rules of service are to be liberally construed. Accordingly, the Cree Drive service in November 2002 was effective under Rule 4(e)(2).

## B. Service at 3131 Walnut Street

[6]   On May 13, 2003, a process server left a copy of the summons and complaint with Bowman, the concierge of Noble's apartment building in Philadelphia. Bowman called Noble after accepting the papers and then Bowman "focused on" delivering the papers to Noble as soon as possible. While Bowman did not say he recalled actually delivering the papers to Noble, Noble's affidavit does not attest that he did not receive the papers from Bowman or from another clerk or manager of the apartment building. Nor does Noble present any evidence disputing that Bowman received the papers.

Pennsylvania allows service by handing a copy of the papers "at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other

place of lodging at which he resides." Pa. R. Civ. P. 402(a)(2)(ii). Pennsylvania's intermediate appellate court has held that a receptionist at the front desk of a Catholic mission where a priest was residing fell within the category of "clerk of the ... place of lodging" for purposes of **38 Pa. R. Civ. P. 402(a)(2)(ii), even where the record did not establish that the receptionist regularly received mail on behalf of the residents of the mission. See Aquilino v. Philadelphia Catholic Archdiocese, 884 A.2d 1269, 1282–83 (Pa.Super.Ct.2005) (affirming the lower court's entry of default judgment against the priest where there was no indication that the receptionist was not the person who received mail on behalf of the mission's residents). Noble does not argue or establish that Bowman was not a clerk for purposes of service under the Pennsylvania rule. In the absence of other evidence, there is no apparent difference between the receptionist at the mission in Aquilino and the concierge at 3131 Walnut Street for purposes of service under the Pennsylvania rule. The evidence submitted establishes that the 3131 Walnut Street service complied precisely with the Pennsylvania Rule of Civil Procedure 402(a)(2)(ii). Accordingly, regardless of whether actual notice resulted, service on Noble at 3131 Walnut Street on May 13, 2003 was effective. Noetzel v. Glasgow, 338 Pa.Super. 458, 487 A.2d 1372, 1377–78 (1985) ("As long as a method of service is reasonably calculated to give notice to a defendant that an action is pending against him, the fact that such defendant fails to receive actual notice does not invalidate service on due process grounds.").

## C. Service at 724 Spruce Drive

[7]   On September 23, 2003, DaLonzo went to Noble's new Philadelphia residence at 1624 Spruce Street, Apt. 1R. DaLonzo's uncontradicted factual assertion in his affidavit is that he spoke to Noble over the telephone and delivered the summons and complaint when Noble told DaLonzo to put the papers in the door and he, Noble, would get them. Noble's claimed lack of recall of a conversation with DaLonzo does not rebut DaLonzo's assertion, nor does realleging the legal conclusion that DaLonzo did not "serve" him. A naked refutation of a process server's affidavit is insufficient to rebut the presumption of effective service that a process server's affidavit establishes. See FROF, Inc. v. Harris, 695 F.Supp. 827, 829 (E.D.Pa.1988). Noble presents no evidence or sworn factual assertions that DaLonzo did not speak with Noble, that Noble did not instruct DaLonzo to put the papers in the

Ali v. Mid-Atlantic Settlement Services, Inc., 233 F.R.D. 32 (2006)

door, that DaLonzo did not put the papers in the door, or even that Noble never received the papers that DaLonzo reported leaving. Under these circumstances, a liberal construction of Rule 4(e)(2) is warranted.

The facts submitted demonstrate that service was effective under Rule 4(e)(2)'s provision for personal service. Even though Noble did not open the door to take the papers from the process server, personal service was effected nonetheless. *See* Villanova, 1998 WL 643686, at *2 (noting that "refusal to open the door does not invalidate plaintiff's service"); Gambone, 2003 WL 21891584, at *4 (same); *see also* Electronics Boutique Holdings Corp., 2001 WL 83388, at *9 (stating that "where a defendant has actual knowledge that a lawsuit has been commenced against him, he cannot assert a post-judgment defense of lack of personal jurisdiction after willfully evading repeated attempts at service").[3]

**\*39**  II. SANCTIONS UNDER RULE 11

[8]  Rule 11 of the Federal Rules of Civil Procedure deems that a signature on any paper presented to a court certifies that

> to the best of the person's knowledge, information or belief, formed after an inquiry reasonable under the circumstances, ... that the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and] the allegations and other factual contentions have evidentiary support ... [and] the denials of factual contentions are warranted on the evidence ....

Fed.R.Civ.P. 11(b). The rule "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable." Fed.R.Civ.P. 11(b) advisory committee notes; *see also* Reynolds v. The U.S. Capitol Police Board, 357 F.Supp.2d 19, 24 (D.D.C.2004) (finding Rule 11 violated where plaintiff and counsel resubmitted the same claims after having been put "on notice that the factual allegations pled ... were not sufficient").

Whether an attorney has conducted a reasonable inquiry under Rule 11 is determined by an objective test, " 'that is, whether a reasonable inquiry would have revealed there was no basis in law or fact for the asserted claim.' " Id. at 23 (quoting Washington Bancorporation v. Said, 812 F.Supp. 1256, 1275 (D.D.C.1993)). Furthermore, the court must determine if "the actions in question were 'reasonable under the circumstances.' " Saunders v. Lucy Webb Haynes–Nat'l Training Sch. for Deaconesses and Missionaries, 124 F.R.D. 3, 7–8 (D.D.C.1989) (quoting Westmoreland v. CBS, Inc., 770 F.2d 1168, 1177 (D.C.Cir.1985)).

Sanctions for failure to comply with the requirements of Rule 11 should be imposed on the persons responsible for the failure, whether it is the party or the attorney. Fed.R.Civ.P. 11(b). The district court is accorded broad discretion to determine whether sanctions are warranted, Allen v. Utley, 129 F.R.D. 1, 3 (D.D.C.1990), on whom they should be imposed, Geller v. Randi, 40 F.3d 1300, 1304 (D.C.Cir.1995), and what form they should take to "balance between equity, deterrence, and compensation." Reynolds, 357 F.Supp.2d at 26 (quoting Hilton Hotels Corp. v. Banov, 899 F.2d 40, 46 (D.C.Cir.1990)); *see also* Fed.R.Civ.P. 11(b) advisory committee notes ("The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand or censure ....").

Sanctions may be imposed on an attorney who interposes defenses on behalf of a client that are not warranted by existing law. Fed.R.Civ.P. 11(b)(2), (c). Existing law leaves no doubt that: (1) a person may have more than one dwelling house or usual place of abode for purposes of Rule 4(e)(2) and that a college student's permanent home address may well be his usual place of abode; (2) a clerk or apartment manager in Pennsylvania may accept service for a resident who dwells within the apartment house; and (3) personal service does not require hand-to-hand or face-to-face interaction and that a refusal to open the door does not invalidate service. Noble's

Nawrocki, Alejandra 10/21/2022
For Educational Use Only

Ali v. Mid-Atlantic Settlement Services, Inc., 233 F.R.D. 32 (2006)

legal contention that none of Ali's attempts at service were effective is not warranted by existing law.

Counsel may also be sanctioned for failure to conduct a reasonable inquiry of his client's factual contentions. Fed.R.Civ.P. 11(b)(3), (b)(4), (c). The rule requires counsel to do more than simply rest upon a client's evasive and incomplete statements of fact. A reasonable inquiry would provide counsel with either supporting evidence or a reason to decline to repeat a client's assertion. Under the circumstances here, it appears that counsel did not make reasonable inquiries at minimum about whether Cree Drive was Noble's permanent home address in November 2002, and whether his mother received papers from Liggins there. Counsel was on notice from the November 24, 2004 order that bare **40** legal assertions of inadequate service were insufficient and that he was required to respond with factual particularity to all of the process servers' factual contentions. Yet, counsel submitted an affidavit from Noble that was almost contemptuously noncompliant, reciting spare and selective facts about his nonpermanent residences and paroting the legal position that he was never served.

The holes in Noble's position and the studied ambiguity in his affidavit beg for factual explanations. Counsel was obligated to conduct sufficient inquiry to assure that fact-based legal contentions are well-grounded in fact and warranted by existing law. The evidence shows that Noble has played a cat and mouse game in order to evade the jurisdiction of the court. Counsel's exact role in Noble's conduct is not plain from the submissions, but it necessarily amounts at least to a failure to conduct the required reasonable inquiry under the circumstances and a failure to restrict legal contentions to those warranted by existing law. Fed.R.Civ.P. 11(b). [4]

Ali has incurred unnecessary costs and prejudicial delay from Noble's insupportable failure to respond as required to the service of the summons and complaint. Accordingly, Ali's motion for sanctions will be granted in part and Noble's counsel will be admonished. Noble and his counsel are warned that any further delays attributable in whole or in part to any continued baseless assertion that Noble was not served may result in the imposition of monetary sanctions.

### *CONCLUSION AND ORDER*

Ali effected service on Noble three times—first in November 2002, again in May 2003, and again in September 2003. Noble has failed to answer the complaint. Accordingly, a judgment of default and order for rescission of the sale of the Southeast Washington D.C. property, will be entered unless Noble files an answer in compliance with Local Civil Rule 7(g) on or before January 17, 2006. It is further

ORDERED that plaintiff's motion for sanctions [# 51] be, and hereby is, GRANTED in part and DENIED in part. Noble's counsel, Stephen J. Williams, is hereby admonished for his role in Noble's failure to respond as required after Noble was served with the summons and complaint by making factual assertions that were not based on a reasonable inquiry or supported by the evidence, and by making fact-based legal arguments that were not based on a reasonable inquiry into the facts and not warranted by existing law. Plaintiff's motion for sanctions is DENIED in all other respects.

**All Citations**

233 F.R.D. 32

### Footnotes

1   Three other defendants have been voluntarily dismissed from the case.

2   Noble also had a motor vehicle registered in his name at that address.

3   Noble has argued that service is ineffective because DaLonzo has no idea to whom he spoke over the telephone at Noble's residence. Even if DaLonzo spoke to someone other than Noble who answered Noble's

Ali v. Mid-Atlantic Settlement Services, Inc., 233 F.R.D. 32 (2006)

residence telephone, service would not necessarily be ineffective. While Federal Rule 4(e)(2) requires that papers be left with a suitable adult residing in Noble's dwelling house, and there is no evidence here that a person other than Noble was residing in Noble's apartment, Pennsylvania Rule 402(a)(2)(i) permits leaving the papers with an adult person "in charge of" the residence. In interpreting a parallel "in charge of" requirement for service at a defendant's usual place of business, "[t]he Pennsylvania Supreme Court has held that service is effective if there is 'a sufficient connection between the person served and the defendant to demonstrate that service was reasonably calculated to give the defendant notice of the action against it.' " *Directv, Inc. v. Baratta,* No. Civ. A. 03–3265, 2004 WL 875541, at *2 (E.D.Pa. Mar.22, 2004) (quoting *Cintas Corp. v. Lee's Cleaning Services, Inc.,* 549 Pa. 84, 700 A.2d 915, 920 (1997)) (interpreting the forerunner of current Pa. R. Civ. P. 402(a)(2)(iii)). Applying the sufficient connection standard to service at a defendant's residence, a court found service effective when the summons and complaint were left with an unrelated adult who answered the residence door and told the process server that the defendant was out of town and would be returning in a few days. *Directv,* 2004 WL 875541, at *2 (finding service effective under Pa. R. Civ. P. 402(a)(2)(i) and denying motion to quash service). Here, where a man answered Noble's residence telephone as Noble and gave instructions to leave the papers in the door so he could get them, the evidence establishes a similarly sufficient connection. This service was reasonably calculated to give Noble notice of the action against him, and Noble has offered no evidence to the contrary.

4    Wholly aside from whether Noble did help swindle an ailing widow out of her home, it is a dangerous and ignominious start to a legal career for Noble to engage in such disingenuous and ultimately ineffective evasion of service. His counsel, as an officer of this Court, should be chary to abet Noble's continuing wily behavior in litigation pending before a Court.

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

 Neutral
As of: October 28, 2022 10:49 PM Z

## *Am. Clothing Express, Inc. v. Cloudflare, Inc.*

United States District Court for the Western District of Tennessee, Western Division

April 15, 2022, Decided; April 15, 2022, Filed

No. 2:20-cv-2007

**Reporter**
2022 U.S. Dist. LEXIS 72814 \*; 2022 WL 1129642

AMERICAN CLOTHING EXPRESS, INC., D/B/A/ ALLURE BRIDALS AND JUSTIN ALEXANDER, INC., Plaintiffs, v. CLOUDFLARE, INC. and DOES 1 - 200, inclusive, Defendants.

**Prior History:** *Am. Clothing Express, Inc. v. Cloudflare, Inc., 2021 U.S. Dist. LEXIS 34451, 2021 WL 722730 (W.D. Tenn., Feb. 24, 2021)*

## Core Terms

email, websites, dresses, actual notice, summons, images, waive

**Counsel:**  **[\*1]** For American Clothing Express, Inc., doing business as, Allure Bridals, Plaintiff: Grady M. Garrison, LEAD ATTORNEY, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C., Memphis, TN; Russell L. Bogart, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN & BOGART PLLC, New York, NY; Stuart Kagen, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN PLLC, New York, NY; Nicole D. Berkowitz, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, Memphis, TN.

For Justin Alexander, Inc., Plaintiff: Grady M. Garrison, LEAD ATTORNEY, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C., Memphis, TN; Russell L. Bogart, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN & BOGART PLLC, New York, NY; Stuart Kagen, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN PLLC, New York, NY; Nicole D. Berkowitz, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, Memphis, TN.

For CloudFlare, Inc., Defendant: Andrew Phillip Bridges, LEAD ATTORNEY, FENWICK & WEST, LLP, Silicon Valley Center, Mountain View, CA; Robb S. Harvey, WALLER LANSDEN DORTCH & DAVIS LLP, Nashville, TN.

For CloudFlare, Inc., Counter Claimant: Andrew Phillip

Bridges, LEAD ATTORNEY, FENWICK & WEST, LLP, Silicon Valley Center, Mountain View, CA; Robb S. Harvey, WALLER LANSDEN DORTCH **[\*2]** & DAVIS LLP, Nashville, TN.

For American Clothing Express, Inc., Counter Defendant: Grady M. Garrison, LEAD ATTORNEY, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C., Memphis, TN; Russell L. Bogart, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN & BOGART PLLC, New York, NY; Stuart Kagen, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN PLLC, New York, NY; Nicole D. Berkowitz, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, Memphis, TN.

For Justin Alexander, Inc., Counter Defendant: Grady M. Garrison, LEAD ATTORNEY, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C., Memphis, TN; Russell L. Bogart, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN & BOGART PLLC, New York, NY; Stuart Kagen, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN PLLC, New York, NY; Nicole D. Berkowitz, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, Memphis, TN.

For CloudFlare, Inc., Counter Claimant: Andrew Phillip Bridges, LEAD ATTORNEY, FENWICK & WEST, LLP, Silicon Valley Center, Mountain View, CA; Robb S. Harvey, WALLER LANSDEN DORTCH & DAVIS LLP, Nashville, TN.

For American Clothing Express, Inc., Counter Defendant: Grady M. Garrison, LEAD ATTORNEY, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C., Memphis, TN; Russell **[\*3]** L. Bogart, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN & BOGART PLLC, New York, NY; Stuart Kagen, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN PLLC, New York, NY; Nicole D. Berkowitz, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, Memphis, TN.

For Justin Alexander, Inc., Counter Defendant: Grady M. Garrison, LEAD ATTORNEY, BAKER DONELSON

2022 U.S. Dist. LEXIS 72814, *3

BEARMAN CALDWELL & BERKOWITZ, P.C., Memphis, TN; Russell L. Bogart, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN & BOGART PLLC, New York, NY; Stuart Kagen, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN PLLC, New York, NY; Nicole D. Berkowitz, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, Memphis, TN.

For CloudFlare, Inc., Counter Claimant: Andrew Phillip Bridges, LEAD ATTORNEY, FENWICK & WEST, LLP, Silicon Valley Center, Mountain View, CA; Robb S. Harvey, WALLER LANSDEN DORTCH & DAVIS LLP, Nashville, TN.

For American Clothing Express, Inc., Counter Defendant: Grady M. Garrison, LEAD ATTORNEY, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C., Memphis, TN; Russell L. Bogart, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN & BOGART PLLC, New York, NY; Stuart Kagen, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN PLLC, New York, NY; Nicole D. Berkowitz, [*4] BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, Memphis, TN.

For Justin Alexander, Inc., Counter Defendant: Grady M. Garrison, LEAD ATTORNEY, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C., Memphis, TN; Russell L. Bogart, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN & BOGART PLLC, New York, NY; Stuart Kagen, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN PLLC, New York, NY; Nicole D. Berkowitz, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, Memphis, TN.

For CloudFlare, Inc., Counter Claimant: Andrew Phillip Bridges, LEAD ATTORNEY, FENWICK & WEST, LLP, Silicon Valley Center, Mountain View, CA; Robb S. Harvey, WALLER LANSDEN DORTCH & DAVIS LLP, Nashville, TN.

For American Clothing Express, Inc., Counter Defendant: Grady M. Garrison, LEAD ATTORNEY, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C., Memphis, TN; Russell L. Bogart, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN & BOGART PLLC, New York, NY; Stuart Kagen, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN PLLC, New York, NY; Nicole D. Berkowitz, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, Memphis, TN.

For Justin Alexander, Inc., Counter Defendant: Grady M. Garrison, LEAD ATTORNEY, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C., [*5] Memphis, TN; Russell L. Bogart, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN & BOGART PLLC, New York, NY; Stuart Kagen, LEAD ATTORNEY, PRO

HAC VICE, KAGEN & CASPERSEN PLLC, New York, NY; Nicole D. Berkowitz, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, Memphis, TN.

For CloudFlare, Inc., Counter Claimant: Andrew Phillip Bridges, LEAD ATTORNEY, FENWICK & WEST, LLP, Silicon Valley Center, Mountain View, CA; Robb S. Harvey, WALLER LANSDEN DORTCH & DAVIS LLP, Nashville, TN.

For American Clothing Express, Inc., Counter Defendant: Grady M. Garrison, LEAD ATTORNEY, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C., Memphis, TN; Russell L. Bogart, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN & BOGART PLLC, New York, NY; Stuart Kagen, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN PLLC, New York, NY; Nicole D. Berkowitz, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, Memphis, TN.

For Justin Alexander, Inc., Counter Defendant: Grady M. Garrison, LEAD ATTORNEY, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C., Memphis, TN; Russell L. Bogart, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN & BOGART PLLC, New York, NY; Stuart Kagen, LEAD ATTORNEY, PRO HAC VICE, KAGEN & CASPERSEN PLLC, New York, NY; [*6] Nicole D. Berkowitz, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, Memphis, TN.

**Judges:** SAMUEL H. MAYS, JR., UNITED STATES DISTRICT JUDGE.

**Opinion by:** SAMUEL H. MAYS, JR.

# Opinion

### ORDER GRANTING MOTION TO DEEM SERVICE EFFECTIVE

Before the Court is Plaintiffs American Clothing Express, Inc., d/b/a/ Allure Bridals and Justin Alexander, Inc.'s (collectively, "Plaintiffs") Motion to Deem Service Effective against Defendant Vividress.co.za ("Vividress"). (ECF No. 67.) For the following reasons, the Motion is GRANTED.

Plaintiffs make wedding dresses and create images of models wearing dresses to display on their websites. Plaintiffs allege that 98 websites, including Vividress, use their images to sell knockoff dresses. Vividress purports to be based in South Africa. On January 6, 2020, Plaintiffs filed their Complaint, alleging copyright infringement against the Defendant websites. (ECF No. 1.) On August 12, 2020, Plaintiffs sent an

2022 U.S. Dist. LEXIS 72814, *6

email to Vividress requesting that it waive service of process. The email included copies of the Complaint and its attached exhibits. The same day, Hollie Elliot confirmed receipt of the Complaint and responded to Plaintiffs' email. On October 29, 2020, Plaintiffs filed their Motion for Leave **[*7]** to Serve Process by Substituted Service (ECF No. 42), which the Court granted. (ECF No. 52.) On July 15, 2021, Plaintiffs served Vividress at the same email address, but the email was returned as undeliverable. Plaintiffs allege that they have no other means of communicating with Vividress.

*Federal Rule of Civil Procedure 4* governs summons. A plaintiff may request that a defendant waive service of summons. *Fed. R. Civ. P. 4(d)(1)*. "Civil Procedure *Rule 4(d)(1)* should be construed liberally [] to effectuate service where actual notice of suit has been received by the defendant." *Rovinski v. Rowe, 131 F.2d 687, 689 (6th Cir. 1942)* (alteration added). Vividress has actual notice of Plaintiffs' suit. Given *Rule 4*'s liberal standard, Plaintiffs have effectively served Vividress. Plaintiffs' Motion to Deem Service Effective is GRANTED.

SO ORDERED this 15th day of April, 2022.

/s/ Samuel H. Mays, Jr.

SAMUEL H. MAYS, JR.

UNITED STATES DISTRICT JUDGE

---

**End of Document**

 Neutral

As of: October 28, 2022 11:25 PM Z

# *Boles v. Lewis*

United States District Court for the Western District of Michigan, Southern Division

January 14, 2008, Decided; January 14, 2008, Filed

Case No. 1:07-CV-277

**Reporter**

2008 U.S. Dist. LEXIS 2701 *

ROBERT BOLES, Plaintiff, v. GARY LEWIS, et al., Defendants.

**Subsequent History:** Motion denied by *Boles v. Lewis, 2008 U.S. Dist. LEXIS 2711 (W.D. Mich., Jan. 14, 2008)*

## Core Terms

effect service, mail, copy of the summons, delivery, effected, service of process, delivering, return receipt requested, certified mail, registered, Asserting, carrier, fault, terms, twice

**Counsel:** [*1] Robert Lee Boles # 156632, Jr., named as Robert Boles # 156632, plaintiff, Pro se, Detroit, MI.

For Gary Lewis, in his official capacity, Daniel Case, in his individual capacity, J. Christiansen, in his individual capacity, M. Richardson, in his individual capacity, Unknown Teft, in his individual capacity, B. Haynie, in his individual capacity, Lorenzo Lowery, in his individual capacity, defendants: Christine M Campbell, MI Dept Attorney General (Corrections), Corrections Division, Lansing, MI.

For Robert Migliorino, in his individual capacity, defendant: Michael D. Kennedy, Law Offices of Thomas J. Trenta, PLLC, Bloomfield Hills, MI.

**Judges:** Richard Alan Enslen, SENIOR UNITED STATES DISTRICT JUDGE.

**Opinion by:** Richard Alan Enslen

## Opinion

### ORDER

This matter is before the Court on Defendant Dr. Robert Migliorino's Motion to Dismiss Plaintiff's Complaint. For the reasons discussed herein, Defendant's motion is denied.

Pursuant to *Federal Rule of Civil Procedure 4(e)*, service can be properly effected upon an individual: (1) pursuant to the law of the state in which the district court is located; or (2) by delivering a copy of the summons and complaint to the individual personally or by leaving copies thereof at the individual's [*2] residence with a person of suitable age and discretion or by delivering a copy of the summons and complaint to an agent authorized to accept service of process.

Michigan law provides that service can be effected upon an individual by: (1) delivering a copy of the summons and complaint to the defendant personally; or (2) sending a summons and copy of the complaint "by registered or certified mail, return receipt requested, and delivery restricted to the addressee." *MCR 2.105(A)*. Rule 2.105(A)(2) further provides that "[s]ervice is made when the defendant acknowledges receipt of the mail" and that "[a] copy of the return receipt signed by the defendant must be attached to proof showing service under subrule (A)(2)."

Plaintiff has twice attempted to effect service on Defendant Migliorino via the United States mail service. On each occasion Plaintiff has mailed the material by registered and certified mail, return receipt requested, with delivery restricted to Defendant Migliorino. (Dkt. Nos. 21, 43). Notwithstanding Plaintiff's request for restricted delivery, the mail carrier has permitted "Peggy Wood" to sign for the material in question. *Id.* Defendant claims that Wood lacks the authority [*3] to accept service on his behalf. Asserting that he has not been properly served with a copy of the Summons and Complaint in this manner, Defendant seeks the dismissal of Plaintiff's Complaint.

Defendant Migliorino makes this request despite having actually received a copy of Plaintiff's Complaint, as evidenced by the Answer Defendant recently submitted. (Dkt. No. 52). The Court further notes that Defendant Migliorino has participated in discovery activity, having agreed to the terms of a recently entered protective order. (Dkt. No. 42). Defendant is not asserting that Plaintiff's failure to properly effect service in this matter implicates his constitutional right

to due process or the Court's ability to exercise jurisdiction over his person. Instead, Defendant Migliorino has merely identified a technical flaw in Plaintiff's attempts to effect service upon him.

While Defendant certainly enjoys the right to have service effected upon him in a manner consistent with the applicable laws and rules, *see Friedman v. Estate of Presser, 929 F.2d 1151, 1155-56 (6th Cir. 1991)*, he is not permitted to willfully evade service of process. *See Adams v. Allied Signal Gen. Aviation Avionics, 74 F.3d 882, 886 (8th Cir. 1996)*; **[*4]** *Mfrrs.' Indus. Relations Ass'n v. East Akron Casting Co., 58 F.3d 204, 206-07 (6th Cir. 1995)*.

As noted above, Plaintiff has twice attempted to properly effect service on Defendant. Plaintiff can hardly be faulted for a mail carrier's refusal to comply with Plaintiff's instruction that delivery be restricted to Defendant Migliorino. The Court finds, therefore, that good cause exists to extend the time period within which Plaintiff must properly effect service on Defendant Migliorino. Specifically, Plaintiff shall be given until April 25, 2008, to properly effect service on Defendant Migliorino. Accordingly, Defendant Migliorino's Motion to Dismiss is **denied.**

As noted above, Plaintiff's attempts to effect service on Defendant Migliorino via the United States Postal Service have been unsuccessful through no fault attributable to Plaintiff. In an attempt, therefore, to facilitate proper service on Defendant Migliorino and prevent further waste of the Court's limited resources, within ten (10) days of the entry of this Order Defendant Migliorino shall perform one of the following: (1) waive the technical defect in service identified above; (2) provide Plaintiff with an alternative address **[*5]** at which service via the United States mail service can be properly effected; (3) authorize an appropriate individual to accept service of process on his behalf and provide the identity and address of such person to Plaintiff; or (4) provide Plaintiff with his home address so that service may be attempted there. Failure by Defendant Migliorino to comply with the terms of this Order shall result in the entry of default against Defendant Migliorino.

**THEREFORE, IT IS HEREBY ORDERED** that Defendant Migliorino's Motion to Dismiss (Dkt. No. 31) is **DENIED.**

DATED in Kalamazoo, MI:

January 14, 2008

/s/ Richard Alan Enslen

RICHARD ALAN ENSLEN

SENIOR UNITED STATES DISTRICT JUDGE

**End of Document**



Positive
As of: October 30, 2022 7:52 PM Z

## *Dixie Rests., Inc. v. Philips Consumer Elecs. Co.*

United States District Court for the Western District of Tennessee, Western Division

February 18, 2005, Decided ; February 18, 2005, Filed

Case No. 02-2461 D/A JURY DEMAND, Case No. 03-2506 D/A JURY DEMAND

**Reporter**
2005 U.S. Dist. LEXIS 44078 *

DIXIE RESTAURANTS, INC. d/b/a DIXIE CAFE, Plaintiff, v. PHILIPS CONSUMER ELECTRONICS COMPANY, a Division of Philips Electronics North American Corporation, BILL SCHROEPPEL d/b/a SOUTHERN CREATIONS, and LONGWELL COMPANY a/k/a and d/b/a LONGWELL ELECTRONICS, INC., Defendants. THE ST. PAUL PROPERTY AND LIABILITY INSURANCE COMPANY As Subrogee of MBB Licensee of THE LEARNING HOUSE, Plaintiff, v. PHILIPS CONSUMER ELECTRONICS COMPANY, a Division of PHILIPS ELECTRONICS NORTH AMERICA CORP., BILL SCHROEPPEL d/b/a SOUTHERN CREATIONS, LONGWELL COMPANY a/k/a and d/b/a LONGWELL ELECTRONICS, INC., Defendants.

## Core Terms

service of process, asserts, defense motion, good cause

**Counsel:** **[*1]** For Jimmy Moore, Miscellaneous, Pro se, CIRCUIT COURT, 30TH JUDICIAL DISTRICT, Memphis, TN.

For Dixie Restaurants, Inc., doing business as Dixie Cafe, Plaintiff: Joe L. Wyatt, LEAD ATTORNEY, McWHIRTER, WYATT, & ELDER, Memphis, TN.

For St. Paul Property and Liability Insurance Company, As Subrogee of MBB Licensee of the Learing House, Plaintiff: Sam R. Marney, III, LEAD ATTORNEY, STEWART & WILKINSON, PLLC, Germantown, TN.

For Philips Consumer Electronics Company, a Division of PHILIPS ELECTRONICS NORTH AMERICAN CORPORATION, Defendant: Joe D. Spicer, Minton Philip Mayer, SPICER FLYNN & RUDSTROM, Memphis, TN.

For Bill Schroeppel, doing business as Southern Creations, Defendant: John D. Richardson, LEAD ATTORNEY, THE RICHARDSON LAW FIRM, Memphis, TN.

For Longwell Company, ThirdParty Defendant: Minton Philip Mayer, SPICER FLYNN & RUDSTROM, Memphis, TN.

**Judges:** BERNICE BOUIE DONALD, UNITED STATES

DISTRICT JUDGE.

**Opinion by:** Bernice B. Donald

## Opinion

ORDER DENYING DEFENDANT LONGWELL ELECTRONICS, INC.'S MOTION TO DISMISS AMENDED COMPLAINT OF PLAINTIFF DIXIE RESTAURANTS, INC.

This matter is before the Court on the motion of Defendant Longwell Electronics, Inc. ("Defendant") to **[*2]** dismiss the amended complaint of Plaintiff, Dixie Restaurants, Inc. ("Plaintiff") pursuant to *Rules 12(b)(5)* and *12(b)(4) of the Federal Rules of Civil Procedure*. For the following reasons, the Court DENIES Defendant's motion to dismiss.

### I. Factual Background [1]

The following facts are presumed to be true for purposes of the instant motion only. On or about January 8, 2001, a fire started in Defendant Southern Creations ("Southern Creations") located next door to Plaintiff. At some time prior to the fire. Plaintiff alleges that Defendant manufactured an electrical power cord which was sold to Defendant Philips Consumer Electronics Company ("Philips"). Philips then used the electrical cord in manufacturing a security monitoring system, which they sold to and/or installed for Southern Creations. The system was allegedly defective and dangerous. Plaintiff asserts that the system was dangerous because **[*3]** of the faulty manufacturing of the equipment by Defendant and Philips. Plaintiff further alleges that the equipment manufactured, sold, and installed by Defendant and/or Philips did not provide adequate warnings of danger. The fire at Southern Creation damaged Plaintiff's property.

Plaintiff brought an action against Philips and Southern

---

[1] The factual allegations are taken from Plaintiffs' complaint.

Creations in the Shelby County Circuit Court on May 6, 2002. Philips removed the case to federal court on June 10, 2002. Plaintiff filed an amended complaint adding Defendant on January 5, 2004. Defendant asserts that Plaintiff served Defendant on June 10, 2004. On November 2, 2004, Defendant filed the instant motion to dismiss, asserting that Plaintiff's service of process was improper, pursuant to *Federal Rules of Civil Procedure 12(b)(5)*; process was insufficient, pursuant to *Federal Rules of Civil Procedure 12(b)(4)*; and that the Court lacks personal jurisdiction over Defendant, pursuant to *Federal Rules of Civil Procedure 12(b)(2)*. However, Defendant filed an amendment to its motion to dismiss on January 25, 2005, withdrawing **[*4]** the issue of personal jurisdiction.

## II. Analysis

Defendant first argues that Plaintiff's complaint should be dismissed pursuant to *Rule 12(b)(5) of the Federal Rules of Civil Procedure* because Plaintiff did not meet the 120-day requirement under *Rule 4(m)* and because Plaintiff served a non-authorized agent under *Rule 4(e)*. *Rule 12(b)(5)* enables a defendant to file a motion to dismiss for a plaintiff's failure to effect service of process. *Rule 4 of the Federal Rules of Civil Procedure* outlines the service requirements. Courts construe provisions of *Rule 4* liberally in order to uphold service, requiring only "substantial compliance." *Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir. 1982)*.

*Rule 4(m)* governs the length of time permitted for service of process. *Rule 4(m)* states in pertinent part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that **[*5]** service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

*Fed. R. Civ. P. 4(m)*. Defendant argues that Plaintiff did not meet the *Rule 4(m)* requirement of service of process within 120 days, and, thus, the complaint should be dismissed.

When a plaintiff fails to perfect service within 120 days after filing a complaint, the plain meaning of the rule gives a district court the discretion to dismiss a complaint or to allow service to be perfected within a specified time, regardless of whether the plaintiff has demonstrated good cause. *See Henderson v. United States, 517 U.S. 654, 662, 116 S. Ct.*

*1638, 134 L. Ed. 2d 880 (1996)*; *Osborne v. First Union Nat. Bank of Delaware, 217 F.R.D. 405, 406 (S.D. Ohio 2003)*. The Advisory Committee notes following *Rule 4(m)* state:

> The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an **[*6]** application of this subdivision even if there is no good cause shown.

*Fed. R. Civ. P. 4*, Advisory Committee Notes, *Rule 4, subdivision (m)*. Furthermore, in *Henderson,* the United States Supreme Court noted that the 1993 amendments to the Rules afford courts discretion to expand the 120-day period, even if the plaintiff does not show good cause. *517 U.S. at 662*. 'The Federal Rules thus convey a clear message: Complaints are not to be dismissed if served within 120 days, or within such additional time as the court may allow." *Id. at 663*.

Plaintiff does not argue that it had good cause for the delay in service of process. Therefore, as Plaintiff correctly notes, the choices available to the Court are to dismiss without prejudice or to allow for the extra time it took for Plaintiff to effect service of process on Defendant. As the Plaintiff contends, it would be nonsensical to dismiss the action without prejudice so that Plaintiff could bring the action again with timely service. As actual service has been effected, the Court exercises its discretion and extends the time allowable for service, thus finding **[*7]** that service was timely under the requirements of *Rule 4(m)*.

Defendant further submits that it was improperly served by Plaintiff because a non-authorized individual, Kevin Fang ("Fang"), accepted service when Vincent Chen ("Chen") is the registered agent for service of process. Thus, Defendant asserts, the complaint should be dismissed for improper service, pursuant to *Federal Rule of Civil Procedure 4(e)(2)*.

*Rule 4(e)(2)* states in pertinent part that service may be effected "by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process." *Fed. R. Civ. P. 4(e)(2)*.

Plaintiff maintains that it mailed service of process to Defendant with a restricted delivery requirement limiting delivery to Chen, the registered agent. Because Defendant admits that Chen is the registered agent and Plaintiff directed delivery to Chen, the Court finds that Defendant cannot defeat service by allowing Fang, who is not the registered agent, to accept service. Therefore, the Court holds that service of process was not improper. The Court, therefore, denies **[*8]** Defendant's motion to dismiss based on improper service

pursuant to *Rule 12(b)(5)*.

Defendant next argues that process was insufficient under *Rule 12(b)(4) of the Federal Rules of Civil Procedure*. *Rule 12(b)(4)* permits a defendant to file a motion to dismiss for insufficiency of process. In this case, Defendant asserts that Plaintiff served the wrong defendant. It contends that the Longwell Company of Taiwan is the proper defendant, instead of Longwell Electronics, Inc. of Brea, California, whom Plaintiff served.

Plaintiff asserts that because the complaint names the Longwell Company a/k/a and d/b/a Longwell Electronics, Inc., the Defendant is properly named and served. Although Defendant alleges that the two companies are separate, it also admits that they are related. The Court holds that this is a question of fact that has not yet been resolved. Accordingly, Defendant's motion to dismiss for insufficiency of process is denied.

### III. Conclusion

For the aforementioned reasons, the Court **DENIES** Defendant's motion to dismiss.

**IT IS SO ORDERED** this 18 day of February, 2005.

**BERNICE BOUIE DONALD**

**UNITED STATES [*9] DISTRICT JUDGE**

---

**End of Document**

No *Shepard's* Signal™
As of: October 30, 2022 9:00 PM Z

## *United States v. Granger*

United States District Court for the Eastern District of Tennessee

April 3, 2018, Filed

Case No. 2:17-cv-222

**Reporter**
2018 U.S. Dist. LEXIS 159287 \*; 122 A.F.T.R.2d (RIA) 2018-5698

UNITED STATES OF AMERICA, Petitioner, v. WILLIAM R. GRANGER, Respondent.

## Core Terms

personal jurisdiction, summons, papers, motion to dismiss, district court, show cause, door

**Counsel:** **[\*1]** For United States of America, Petitioner: Loretta S Harber, LEAD ATTORNEY, Leah Walker McClanahan, U S Department of Justice (Knox USAO), Office of U S Attorney, Knoxville, TN.

William R. Granger, Respondent, Pro se, Bristol, TN.

**Judges:** TRAVIS R. MCDONOUGH, UNITED STATES DISTRICT JUDGE. Magistrate Judge Clifton L. Corker.

**Opinion by:** TRAVIS R. MCDONOUGH

## Opinion

**MEMORANDUM AND ORDER**

Before the Court is Respondent William R. Granger's *pro se* motion to dismiss for lack of personal jurisdiction (Doc. 9). For the following reasons, Respondent's motion will be **DENIED**.

**I. BACKGROUND**

According to Petitioner the United States of America, the Internal Revenue Service ("IRS") is investigating Respondent's potential federal income-tax liability for the years 2004 through 2007. (Doc. 1, at 1-2.) The IRS, through its Revenue Officer, Shane Murray, served upon Respondent an IRS summons (the "IRS Summons") to appear before it and produce certain records. (*Id.* at 2.) Petitioner alleges that, although Respondent appeared for the scheduled meeting, he

has not produced the requested records and, therefore, has not complied with the IRS Summons. (*Id.*)

Petitioner filed the instant petition on December 8, 2017, pursuant to *26 U.S.C. §§ 7402(b)* and *7604(a)*, seeking judicial **[\*2]** enforcement of the IRS Summons. (Doc. 1.) The United States Marshals Service attempted to serve Respondent at his residence three separate times with a copy of the court summons and petition. (Doc. 7.) The Deputy Marshal did not make contact with Respondent on his first two attempts, but instead left his business card along with an instruction to call him. (*Id.* at 4.) On December 27, 2017, during his third attempt, the Deputy Marshal made contact with an individual who stated he was Respondent. (*Id.* at 5.) Respondent refused to open the door or take the papers from the Deputy Marshal. (*Id.*) The Deputy Marshal placed a copy of the court summons and petition "between the door handle and door frame" and drove away. (*Id.*) Petitioner filed proof of service upon Respondent on January 4, 2017. (Doc. 7.)

Respondent, proceeding *pro se*, filed a document entitled "Notice Via Special Visitation By An Alien to the Court of *FRCP Rule 12(b)* Motion to Dismiss for Lack of Personal Jurisdiction" (Doc. 9), which the Court construes as a motion to dismiss for lack of personal jurisdiction. That motion is now ripe for the Court's review.

**II. STANDARD OF LAW**

In the context of a motion to dismiss for lack of personal jurisdiction pursuant **[\*3]** to *Rule 12(b)(2)*, the plaintiff bears the burden of establishing the existence of personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007)*. In determining whether the plaintiff has met his burden, the Court must construe all of the facts in the light most favorable to the plaintiff. *Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 449 (6th Cir. 2012)*. Where the district court resolves the motion without an evidentiary hearing and instead relies solely on written submissions and affidavits, as here, the plaintiff's burden is "relatively slight," and a *prima facie* showing of jurisdiction will suffice. *Id.*

Nonetheless, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* (quoting *Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991))*.

"When a federal court's subject-matter jurisdiction is based on a federal question, the court's exercise of personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the *Due Process Clause of the Fourteenth Amendment*." *AlixPartners, LLP v. Brewington, 836 F.3d 543, 549 (6th Cir. 2016)*. Tennessee's long-arm statute, *Tennessee Code Annotated § 20-2-214*, expands the jurisdiction of Tennessee courts to the full limit permitted by the *Due Process Clause. Gordon v. Greenview Hosp., Inc., 300 S.W.3d 635, 645-46 (Tenn. 2009)*. When a state's long-arm statute reaches as far as the limits of the *Due Process Clause*, the two inquiries merge, and the Court need only determine [*4] whether the exercise of personal jurisdiction violates constitutional due process. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd., 138 F.3d 624, 627 (6th Cir. 1998)*.

"Due process requires that a defendant have 'minimum contacts . . . with the forum State . . . such that he should reasonably anticipate being haled into court there.'" *Schneider v. Hardesty, 669 F.3d 693, 701 (6th Cir. 2012)* (quoting *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980))*. A forum state will have personal jurisdiction over an individual where that individual is a citizen of that state or is domiciled there. *J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 880, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011)*. Additionally, where an individual is personally served within the forum state, that state may exercise personal jurisdiction. *Id.; see also Fed. R. Civ. P. 4(k)(1)* ("Servicing a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . .").

### III. ANALYSIS

Respondent argues that the Court lacks personal jurisdiction over him because he neither "resides" nor is "found at" the address "104 Carolyn Circle, Bristol, TN 37620," as alleged by Petitioner. (Doc. 9, at 2.) Instead, according to Respondent, "[his] dwelling place is situated on private land without the United States, and within the external geographical boundaries of the union state Tennessee." (*Id.*) Respondent disclaims [*5] the zip code provided by Petitioner, as well as the signifier "TN," because those

"identify federal territory."[1] (*Id.* at 3.)

The Court can exercise personal jurisdiction over Respondent by two methods. First, because Respondent is a citizen of the State of Tennessee and is domiciled here, the Court retains personal jurisdiction over him. *J. McIntyre Machinery, 564 U.S. at 880*. Although Respondent disclaims his zip code and the abbreviation "TN," he acknowledges that his "dwelling place" is "within the external geographical boundaries of the union state Tennessee." (Doc. 9, at 2-3.) Courts "routinely reject[ ]" arguments made by tax protesters who claim to be citizens of a state, but not of the United States. *See Maxwell v. I.R.S., Civil Case No. 3090308, 2009 U.S. Dist. LEXIS 39854, 2009 WL 920533, at *2 (M.D. Tenn. Apr. 1, 2009)* (citing *Upton v. I.R.S., 104 F.3d 543, 545 (2d Cir. 1997)*; *United States v. Hilgeford, 7 F.3d 1340, 1342 (7th Cir. 1993)*; *United States v. Jagim, 978 F.2d 1032, 1036 (8th Cir. 1992))*. Accordingly, because Respondent is a citizen of and is domiciled in the State of Tennessee, this Court may properly personal jurisdiction over Respondent.

The Court may also exercise personal jurisdiction because Respondent was personally served in Tennessee. *J. McIntyre Machinery, 564 U.S. at 880*; *Fed. R. Civ. P. 4(k)(1)*; *see also United States v. Bichara, 826 F.2d 1037, 1039 (11th Cir. 1987)* ("The district court could . . . acquire personal jurisdiction over [the respondent] by the service of the show cause order and the petition for enforcement of the summons."). The Federal Rules of Civil Procedure provide that an individual [*6] may be served by "delivering a copy of the summons and of the complaint to the individual personally . . . ." *Fed. R. Civ. P. 4(e)(2)(A)*. Where an individual has received actual notice of a lawsuit, as here, the rules of service should be liberally construed. *Project X Enter., Inc. v. Karam, Nos. 14-cv-10761, 14-cv-10769, 2014 U.S. Dist. LEXIS 93518, 2014 WL 3385101, at *3 (E.D. Mich. July 10, 2014)* (citing *Rovinski v. Rowe, 131 F.2d 687 (6th Cir. 1942))*. "[P]ersonal service does not require 'in hand' delivery and acceptance of the papers.'" *2014 U.S. Dist. LEXIS 93518, [WL] at *2* (citations omitted). "[W]here a defendant attempts to avoid service *e.g.* by refusing to take the papers, it is sufficient if the server is in close proximity to the defendant, clearly communicates intent to serve court documents, and makes reasonable efforts to leave the papers with the defendant." *Id.* (quoting *Travelers Cas. & Sur. Co. of Am. v. Brenneke, 551 F.3d 1132, 1136 (9th Cir. 2009))*.

---

[1] Respondent makes similar arguments in a letter addressed to the Clerk of the Court in which he attempts to refuse service of process. (*See* Doc. 6.) To the extent it could be construed as a motion, the Court will consider Respondent's letter along with the instant motion to dismiss.

2018 U.S. Dist. LEXIS 159287, *6

Here, the Deputy Marshal spoke to an individual who identified himself as Respondent. (Doc. 7, at 5.) The Deputy Marshal attempted to hand him the papers, but Respondent refused them. (*Id.*) As a result, the Deputy Marshal placed a copy of the summons and petition "between the door handle and door frame," making a reasonable effort to leave the papers with Respondent. (*Id.*) These actions are sufficient to constitute personal service upon Respondent. Accordingly, because Respondent was [*7] personally served at his residence, located in Tennessee, the Court may exercise personal jurisdiction over him.

Respondent also "demand[s] [his] right to have the issue of personal jurisdiction decided by a jury of [his] peers . . . ." (Doc. 9, at 2.) However, "[t]he decision to exercise personal jurisdiction is a question of law based on the *Due Process Clause of the Constitution*." *Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 477 (6th Cir. 2003)* (internal quotation omitted). As such, personal jurisdiction is a question to be determined by the Court, not by a jury.

Finally, to the extent Respondent challenges this Court's subject-matter jurisdiction, *Title 26, Section 7402 of the United States Code* provides:

> If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

*See also 26 U.S.C. § 7604* (same). As explained above, Petitioner filed this petition seeking enforcement of an IRS summons, and Respondent resides in Tennessee. Accordingly, this Court is properly vested with subject-matter jurisdiction over this action. Respondent's motion to dismiss will, [*8] therefore, be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Respondent's motion to dismiss (Doc. 9) is **DENIED**. The Court will issue a separate order to show cause.

**SO ORDERED**.

*/s/ Travis R. McDonough*

**TRAVIS R. MCDONOUGH**

**UNITED STATES DISTRICT JUDGE**

## ORDER TO SHOW CAUSE

Upon the petition to enforce the Internal Revenue Service ("IRS") summons (Doc. 1) and the exhibits attached thereto, including the Declaration of Revenue Officer Shane Murray, it is hereby **ORDERED**:

1. That Respondent, William R. Granger, appear before the United States District Court for the Eastern District of Tennessee, for a hearing to commence on **Thursday, June 21, 2018**, at **10:00 a.m.**, before the undersigned in the United States Courthouse, 900 Georgia Avenue, Courtroom 1A, Chattanooga, Tennessee, to show cause why he should not be compelled to obey the IRS summons served upon him on June 23, 2017.

2. That, at the hearing, Respondent show cause why he should not be required to give testimony to the IRS, as well as produce and permit the copying of all documents responsive to the requests set forth in the summons served upon him on June 23, 2017.

3. That a copy of this order to show cause, together with the petition, exhibits, [*9] and declaration attached thereto, be personally served upon Respondent by the United States Marshal at least **thirty days** prior to the date assigned for the hearing.

4. That within **ten days** of the service of copies of this order, the petition, exhibits, and declaration, Respondent shall file and serve a written response to the petition, supported by appropriate affidavits, as well as any motions Respondent desires to make. Only those issues raised by motion or brought into controversy by the responsive pleadings, and supported by affidavit(s), will be considered. Any uncontested allegation in the petition will be considered admitted.

**SO ORDERED**

*/s/ Travis R. McDonough*

**TRAVIS R. MCDONOUGH**

**UNITED STATES DISTRICT JUDGE**

_____

End of Document

 Neutral

As of: February 10, 2023 6:18 PM Z

## *Willie McCormick & Assocs. v. Lakeshore Eng'g Servs.*

United States District Court for the Eastern District of Michigan, Southern Division

September 8, 2022, Decided; September 8, 2022, Filed

Case No. 12-15460

**Reporter**

2022 U.S. Dist. LEXIS 162196 *; 2022 WL 4104013

WILLIE MCCORMICK AND ASSOCIATES, INCORPORATED, Plaintiff, v. LAKESHORE ENGINEERING SERVICES, INCORPORATED, BOBBY W. FERGUSON, et al., Defendants.

**Prior History:** *Willie McCormick & Assocs. v. Lakeshore Eng'g Servs., 2013 U.S. Dist. LEXIS 158125 ( E.D. Mich., Nov. 5, 2013)*

## Core Terms

default judgment, factors, default, mail, void, documents, correctional institution, motions, door, process server, effectuated, antitrust, summons, visits, sworn, motion for default, underground water, duly sworn, arranged, sentence, damages, notary, notice, prison, sewer

**Counsel:** **[*1]** For Willie McCormick and Associates, Incorporated, Plaintiff: Tara A Pearson, Parker and Parker, Howell, MI; Robert G. Lahiff, Northville, MI.

For Lakeshore Engineering Services, Incorporated, Lakeshore TolTest Corporation, a Michigan coporation, Lakeshore TolTest Corporation, a Delaware corporation, Toltest Corporation, an Ohio corporation, Thomas Hardiman, Avinash Rachmale, A and H Contractors, Incorporated, Defendants: Robert P. Geller, Walter J. Piszczatowski, Hertz, Schram, (Bloomfield Hills), Bloomfield Hills, MI.

For Alfred T. Giuliano, Trustee: Eric E. Reed, Fox, Rothschild, Philadelphia, PA.

**Judges:** Honorable LAURIE J. MICHELSON, UNITED STATES DISTRICT JUDGE.

**Opinion by:** LAURIE J. MICHELSON

## Opinion

### OPINION AND ORDER DENYING FERGUSON'S

### MOTION TO SET ASIDE THE DEFAULT JUDGMENT [161]

Before Kwame Kilpatrick became Mayor of Detroit in 2002, Willie McCormick and Associates did underground water and sewer line work for the Detroit Water and Sewerage Department. But, according to McCormick, after Kilpatrick became mayor and was appointed special administrator for DWSD, he began ensuring that his longtime friend, Bobby Ferguson, and Ferguson's companies were awarded the underground water and sewer line work for DWSD. **[*2]** So in 2012, McCormick filed this lawsuit against Kilpatrick, Ferguson, and a host of other entities and individuals alleging violations of the federal antitrust laws and the Racketeer Influenced and Corrupt Organizations Act.

As this case is nearing 10 years old, it has a very long procedural history. Suffice it to say that Ferguson never appeared to defend this suit, and in time, a default judgment of over $7 million was entered against Ferguson and in favor of McCormick. Recently, Ferguson has moved to set aside that default judgment. For the reasons that follow, the Court will deny Ferguson's motion.

### I.

### A.

Through the first 10 years of its operation, McCormick often won bids to perform underground water and sewer line work for the Detroit Water and Sewerage Department. (ECF No. 33, PageID.326-327.) But, says McCormick, things changed when Kwame Kilpatrick became Mayor of Detroit in 2002. (ECF No. 33, PageID.328.) At that time, the DWSD was under a federal consent decree, and the federal court appointed Kilpatrick as the Special Administrator of DWSD. (ECF No. 33, PageID.328.) According to McCormick, as both Mayor and Special Administrator, Kilpatrick wielded great power over DWSD and **[*3]** "had authority to approve, deny and amend DWSD contracts." (ECF No. 33, PageID.329.)

McCormick says that Kilpatrick abused this power to aid his longtime friend Bobby Ferguson, which, in turn, caused McCormick to lose valuable contracts. As just one example, McCormick points to the CS-1368 contract. (ECF No. 33, PageID.340.) McCormick explains that in November 2001, the DWSD Board approved Inland Waters as the CS-1368 contractor and McCormick as one of the subcontractors. (ECF No. 33, PageID.341.) In fact, "McCormick was the only underground water and sewer line subcontractor who was both a Detroit Based and Minority Business Enterprise." (Id.) But after Kilpatrick came to power, he allegedly refused to approve or held up the process of moving forward with CS-1368, "because a Ferguson company was not one of the approved minority underground water and sewer subcontractors." (ECF No. 33, PageID.343.) According to McCormick, Kilpatrick and others engaged in secret meetings with Inland Waters representatives where it was decided that Kilpatrick would allow CS-1368 to go forward if Inland Waters agreed to remove McCormick in favor of Ferguson Enterprises and to pay bribes to Ferguson and [*4] Kilpatrick. (ECF No. 33, PageID.343.) With add-on work, $138 million was paid under the CS-1368 contract; Ferguson's company received almost $25 million. (ECF No. 33, PageID.347.) McCormick says that but for Kilpatrick and Ferguson's unlawful scheme, it would have received the work performed by Ferguson Enterprises under CS-1368 (and other contracts).

At some point, federal prosecutors got wind of the bid-rigging scheme. And in 2010, a federal grand jury indicted Kilpatrick, Ferguson, and others for RICO conspiracy, extortion, and other crimes. (ECF No. 33, PageID.330.) In 2013, Ferguson was convicted of RICO conspiracy, extortion, and bribery, and sentenced to 21 years in prison. See *United States v. Ferguson, No. 10-20403, 2018 U.S. Dist. LEXIS 31233, 2018 WL 1071743, at *1 (E.D. Mich. Feb. 27, 2018)*.

**B.**

In late 2012, McCormick initiated this civil suit against Kilpatrick, Ferguson, Ferguson's companies, and a host of other companies and individuals. (See ECF No. 1.) McCormick alleged that Ferguson committed RICO and federal antitrust violations. (ECF Nos. 1, 33.) At the time the suit was filed, Ferguson was in pretrial detention on the criminal charges. He was being held at a federal institution in Milan, Michigan.

In March 2013, Steven Coykendall, a process server, attempted to serve McCormick's complaint [*5] on Ferguson. According to Coykendall's sworn affidavit, he called "the Federal Correctional Institution located in Milan, MI." (ECF No. 28, PageID.268.) Coykendall stated that an "Assistant Warden" "confirmed that Bobby Ferguson was currently incarcerated at their facility." (Id.) Coykendall told the assistant warden that he was acting as a process server to serve Ferguson with legal documents, and she scheduled Coykendall to meet with Ferguson the following day. (Id.)

In his affidavit, Coykendall further averred that the next morning, March 19, 2013, he arrived at the "Federal Correctional Institution located at 4004 E. Arkona, Milan, MI 48160." (ECF No. 28, PageID.268.) He recalled, "Mr. Ferguson was presented to me by the correctional institution staff. I engaged in a brief conversation with Mr. Ferguson through a closed, glass security door. I identified myself to Mr. Ferguson as a Process Server and advised him that I had Summonses and Complaints to serve upon him." (Id.) Coykendall continued, "[Ferguson] verbally refused to accept service and then backed away from the security door as I attempted to hand the documents to him through the provided mail slot in the door." (Id.) And [*6] said Coykendall, "He requested that his attorney accept the documents and then he walked away. At that time the documents were retrieved by the correctional institution staff and handed back to me." (Id.)

The next month, April 2013, McCormick filed an amended complaint. (ECF No. 33.) A certificate of service indicates that McCormick sent the amended complaint to Ferguson at a post-office box for FCI Milan. (ECF No. 35, PageID.614.) The amended complaint was sent by certified mail. The accompanying green card was accepted and signed for by someone at the prison, although not Ferguson. (See ECF No. 35-1, PageID.616.)

Shortly before filing its amended complaint, McCormick filed a motion relating to service of two sets of defendants: Ferguson (and his companies) and Derrick Miller. (ECF No. 31.) McCormick indicated that it was tracking Miller in Virginia but had, to date, been unable to personally serve him. McCormick thus sought an order permitting service on Miller by alternate means (e.g., mail and publication in a newspaper). (ECF No. 31, PageID.291, 294.)

As to Ferguson, McCormick's motion sought different relief. McCormick argued that while *Rule 4* required personal service, personal service [*7] did not mean "in hand" service. (ECF No. 31, PageID.289.) In McCormick's view, Coykendall's affidavit showed that he had offered the summons and complaint to Ferguson and left it in an area that Ferguson physically controlled, which, according to McCormick, counted as personal service under the law. (Id.) McCormick thus asked the Court to issue an order "confirming" that it had effectuated personal service on Ferguson. (ECF No. 31, PageID.291.) In the alternative,

McCormick asked the Court for leave to serve Ferguson by alternate means (similar to the relief it requested for Miller). (ECF No. 31, PageID.292-293.)

In November 2013, Judge Robert H. Cleland, to whom this case was then assigned, entered an order on McCormick's motion. (ECF No. 90.) As to Miller, Judge Cleland permitted McCormick to serve him by alternate means. (ECF No. 90, PageID.3307.) As to Ferguson, Judge Cleland explained, "According to an affidavit provided by the process server, the process server attempted to pass the summons and complaint to Ferguson through a mail slot, but Ferguson refused service and told the process server to serve his attorney without identifying who his attorney is." (ECF No. 90, PageID.3306.) [*8] Judge Cleland continued, "Plaintiff sent an email to Gerald Evelyn, an attorney who represented the Ferguson Entities in litigation brought by the City of Detroit, but Evelyn did not respond to confirm whether or not he was authorized to accept service on behalf of the Ferguson Entities." (Id.) Referring to a certificate of service of a host of filings (see ECF No. 89), Judge Cleland noted that while McCormick's motion was pending, it had "filed a certificate of service, reporting that . . . it effected service on Ferguson by certified mail at the Federal Correctional Institution in Milan." (ECF No. 90, PageID.3307.) Then citing case law that a defendant cannot avoid service by physically refusing to accept the summons and that service can be effected by leaving papers near the defendant, Judge Cleland indicated that he was "inclined" to find that Coykendall's "service was valid, despite Ferguson's attempt to refuse or evade service." (ECF No. 90, PageID.3307.) "At a minimum," Judge Cleland explained, "[Ferguson's] refusal constitutes a valid basis to extend the summons. And given that service was eventually effected by certified mail, the court finds that Ferguson is on proper notice [*9] of this lawsuit and will be deemed served." (ECF No. 90, PageID.3307.) Thus, Judge Cleland ordered "that service is deemed to have been properly effected on the Ferguson Entities." (ECF No. 90, PageID.3307-3308.)

Skip ahead to 2014; Ferguson still had not filed an appearance in this suit. So McCormick requested a default, and in February 2014, the Clerk of Court entered a default against Ferguson and his companies. (ECF Nos. 102, 103, 104.) McCormick followed up with a motion for default judgment. (ECF No. 114.)

McCormick twice tried to give Ferguson notice of its efforts to obtain a default judgment. McCormick initially sent copies of the Clerk's entry of default and its motion for default judgment to Ferguson using the FCI Milan post-office-box address. But these were returned marked "Return to Sender[.] Refused[.] Unable to Forward" or "Not at Institution." (ECF No. 112, PageID.3404; ECF No. 118, PageID.3730, 3735.) So

McCormick tried again: it sent copies of the default, motion for default judgment, and the notice of hearing on that motion to Ferguson at the Wayne County Jail. (ECF No. 121, PageID.3751.) These were returned with a "Refused" sticker on the envelope. (ECF No. 121, [*10] PageID.3756, 3762.)

As it turned out, Judge Cleland never decided whether a default judgment against Ferguson was warranted. (See ECF No. 137.) Fairly early on in this case, Judge Cleland had dismissed the RICO and antitrust claims against the non-defaulted defendants because, in his view, McCormick lacked standing to pursue those claims. See Willie McCormick & Assocs., Inc. v. Lakeshore Eng'g Servs., Inc., No. 12-15460, 2013 U.S. Dist. LEXIS 178690, 2013 WL 6713999, at *7, 10 (E.D. Mich. Dec. 20, 2013). Consistent with that ruling, at the hearing on McCormick's motion for default judgment, Judge Cleland expressed reluctance about entering a default judgment on the RICO and antitrust claims. (ECF No. 129, PageID.3844, 3848.) But before Judge Cleland finally decided one way or the other, the case was reassigned to Judge Arthur J. Tarnow. (ECF No. 138.) Judge Tarnow did not share Judge Cleland's concerns about standing and entered an order vacating in part Judge Cleland's order dismissing the RICO and antitrust claims. Willie McCormick & Assocs., Inc. v. Lakeshore Eng'g Servs., Inc., No. 12-15460, 2015 U.S. Dist. LEXIS 114365, 2015 WL 5093785, at *1 (E.D. Mich. Aug. 28, 2015). An interlocutory appeal was taken on this issue, but it appears that the appeal was ultimately dismissed. (See ECF Nos. 148, 150, 151.)

Following the appeal, in November 2016, McCormick was finally able to circle back to seeking a default judgment against Ferguson. (ECF No. 152.) For Ferguson's alleged violations of RICO and the [*11] antitrust laws, McCormick sought actual damages of about $2.5 million and trebled damages of about $7.5 million. (ECF No. 152, PageID.4128.) The docket does not reflect what efforts, if any, McCormick took to provide a copy of this motion to Ferguson.

In December 2016, Judge Tarnow entered a short order providing that he would "enter default judgment against all Defendants after a hearing has been held to determine the amount of damages." (ECF No. 154, PageID.4238.) Judge Tarnow referred the hearing on damages to a magistrate judge.

In April 2018, Judge Tarnow accepted the magistrate judge's damages recommendation. In particular, he "ORDERED that default judgment be entered in favor of Plaintiff and against Defendants Kwame Kilpatrick, Bobby W. Ferguson, Ferguson's Enterprises, Inc., Xcel Construction Services, Inc., and Derrick A. Miller, in the amount of $7,477,873.83." Willie McCormick & Assocs., Inc. v. Lakeshore Eng'g Servs.,

*Inc., No. 12-15460, 2018 U.S. Dist. LEXIS 65842, 2018 WL 1875628, at *1 (E.D. Mich. Apr. 19, 2018).*

**C.**

In 2021, Kilpatrick and Ferguson were released from prison. In particular, then-President Donald Trump commuted Kilpatrick's 28-year sentence. *United States v. Ferguson, 536 F. Supp. 3d 139, 141 (E.D. Mich. 2021).* And Judge Nancy G. Edmunds, who had presided over the criminal proceedings against Kilpatrick and Ferguson, granted Ferguson compassionate release. *See id. at 145.* She reasoned in **[*12]** part, "[i]t would be inequitable to require [Ferguson] to complete the lengthy sentence originally imposed while the more culpable co-defendant [Kilpatrick], who initially received an even lengthier sentence, has been released." *Id.*

Having been released from prison, Ferguson finally turned his attention to this case. In February 2022—almost four years after Judge Tarnow ordered entry of a default judgment—Ferguson filed a motion to vacate and set aside the default judgment. (ECF No. 161.) That motion triggered a series of case reassignments, eventually ending with this case being recently assigned to the undersigned.

**II.**

In seeking to set aside the default judgment, Ferguson primarily relies on *Federal Rule of Civil Procedure 60(b)(4).* (ECF No. 161, PageID.4270.) *Rule 60(b)(4)* states, "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . the judgment is void." A judgment is void if the court lacks jurisdiction over the defendant. *Antoine v. Atlas Turner, Inc., 66 F.3d 105, 108 (6th Cir. 1995).* And a court lacks jurisdiction over the defendant if service was not effectuated. *See King v. Taylor, 694 F.3d 650, 655 (6th Cir. 2012); O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 353 (6th Cir. 2003), other aspects abrogated by Morgan v. Sundance, Inc., 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022).* Ferguson says that is the case here: "[I] was never personally or otherwise served a **[*13]** copy of the Summons and Complaint under *Rule 4(e) of the Federal Rules of Civil Procedure.*" (ECF No. 161, PageID.4271.)

**III.**

**A.**

Before examining Ferguson's challenge to service, the Court briefly comments on a threshold issue—the timeliness of Ferguson's motion. In responding to Ferguson's motion to set aside the default judgment, McCormick claims that the motion comes too late. (ECF No. 163, PageID.4293.) That is a fair point given that Ferguson's motion comes almost five years after Judge Tarnow ordered that a default judgment be entered and even longer since Judge Cleland ruled service was effectuated.

*Rule 60(c)* provides that for motions brought pursuant to *Rule 60(b)(1), (2),* or *(3),* the motion must be filed within a year after entry of judgment; but for motions brought pursuant to *(b)(4), (5),* and *(6), Rule 60(c)* only prescribes a "reasonable time." In accordance with this language, the Sixth Circuit has stated that a *Rule 60(b)(4)* motion must be "brought within a reasonable time." *United States v. Dailide, 316 F.3d 611, 617-18 (6th Cir. 2003); see also Days Inns Worldwide, Inc. v. Patel, 445 F.3d 899, 906 (6th Cir. 2006).*

The Court recognizes that there is authority to the contrary. For instance, the oft-cited Wright & Miller treatise states, "the requirement that the motion be made within a 'reasonable time,' which seems literally to apply to motions under *Rule 60(b)(4),* cannot be enforced with regard to this class of motion. A void **[*14]** judgment cannot acquire validity because of laches on the part of the judgment debtor." Mary Kay Kane, 11 Fed. Prac. & Proc. Civ. § 2862 (3d ed.). Many of the federal appellate courts have followed this reasoning. *See Norris v. Causey, 869 F.3d 360, 365 (5th Cir. 2017)* (citing Wright & Miller); *Hertz Corp. v. Alamo Rent-A-Car, Inc., 16 F.3d 1126, 1130 (11th Cir. 1994)* (citing Wright & Miller and noting that the First, Fifth, Seventh, Tenth, and D.C. Circuits have taken the position that "the time within which a *Rule 60(b)(4)* motion may be brought is not constrained by reasonableness").

But this Court is bound by Sixth Circuit authority. And "[t]he Sixth Circuit has held in various cases that periods of anywhere between three and five years between the judgment and the filing of a 60(b)(4) motion were too long to permit the filing of such a motion for relief from judgment." *Williams-El v. Bouchard, No. 05-CV-70616, 2016 U.S. Dist. LEXIS 60735, at *4 (E.D. Mich. May 9, 2016)* (citing *Dailide, 316 F.3d at 617).* Ferguson has provided no viable reason for the lengthy delay in seeking relief from judgment. And, as explained below, even if his motion is timely, Ferguson has not shown that he was not served in a manner contemplated by the Federal Rules.

**B.**

In the main, Ferguson argues that the default judgment is void under *Rule 60(b)(4)* because the statements in the process server's affidavit are false.

To start, Ferguson contests Coykendall's statements about contacting [*15] and visiting FCI Milan. In his affidavit, Coykendall stated, "I contacted the Federal Correctional Institution located in Milan" and "I arrived at the Federal Correctional Institution located at 4004 E. Arkona, Milan." (ECF No. 28, PageID.268.) Ferguson says there are two federal facilities in Milan: FCI Milan, which is a correctional institution, and FDC Milan, which is a detention center—the two are across the street from each other. (ECF No. 161, PageID.4271, 4276.) Ferguson also says that on the date of service, he was at FDC Milan. (ECF No. 161, PageID.4271.) Further, Ferguson claims that if Coykendall had actually called FCI Milan to arrange a visit, they would have directed him to arrange a "special visit" with FDC Milan. (ECF No. 161, PageID.4276.)

Ferguson also claims that additional statements in Coykendall's affidavit are false. As noted, Ferguson believes that if Coykendall had in fact arranged a visit, it would have been a special visit. (ECF No. 161, PageID.4276.) But, says Ferguson, special visits do not happen in the way Coykendall averred. For one, when special visits are arranged, the detainee is informed of both the visitor and the reason for the visit; so, says Ferguson, [*16] if Coykendall had in fact arranged a special visit, he "could have declined the visit without even coming into [contact] with Mr. Coykendall." (ECF No. 161, PageID.4277.) Ferguson also points out that Coykendall stated that he had a "brief conversation with Mr. Ferguson through a closed, glass security door." (ECF No. 28, PageID.268.) But, according to Ferguson, special visits are not behind a glass door; instead, they are conducted in a contact visiting area. (ECF No. 161, PageID.4276.) As for Coykendall's assertion that he attempted to hand Ferguson service documents "through the provided mail slot in the [glass security] door," Ferguson states that those doors have no mail slots and instead have wickets that must be opened by a guard with a key. (*Id.*)

Ferguson has not shown that the key statements of Coykendall's affidavit are false.

First, none of Ferguson's statements are sworn. Ferguson has submitted no affidavit setting out the facts alleged in his motion. He has not sworn that a "special visit" was the only manner in which Coykendall could have met with him or that the way special visits are conducted differs from the meeting Coykendall described.

In contrast, Coykendall made his [*17] statements after being "first duly sworn" and the notary indicated, "[s]ubscribed and

sworn to before me on this __ date of March, 2013." (ECF No. 28, PageID.268.) (More on the "__ date" in a moment.) Although Coykendall did not state that his statements were made "under penalty of perjury," courts have recognized that a notarized, "duly sworn" statement is comparable. *See Porter v. Quarantillo, No. 12-CV-0590 DLI VMS, 2012 U.S. Dist. LEXIS 174293, 2012 WL 6102875, at *5 (E.D.N.Y. Dec. 7, 2012)* ("[G]iven that both affidavits were 'duly sworn' before a notary public, the Court will consider them in connection with the pending motions."); *Quiles v. Sikorsky Aircraft, 84 F. Supp. 2d 154, 160 (D. Mass. 1999)* ("While the affidavits do not explicitly say that they were signed 'under the pains and penalties of perjury,' that standard is implied in the fact that the witnesses were 'duly sworn.'"); *Chrzaszcz v. United States, No. CR 09-1381-PHXJAT, 2015 U.S. Dist. LEXIS 61441, 2015 WL 2193713, at *7 (D. Ariz. May 11, 2015)* (similar); *Lambert v. First Fed. Mortg., 47 F. Supp. 3d 1310, 1313 (N.D. Ala. 2014)* (similar); *Lakeview Outlets, Inc. v. Uram, No. 95-0136, 1996 U.S. Dist. LEXIS 14780, 1996 WL 571520, at *2 (N.D.N.Y. Oct. 2, 1996)* (similar). The Court recognizes that *Team Kasa v. Humphrey* is to the contrary, but having reviewed the cases the *Team Kasa* court relied upon, it appears that the use of "duly sworn" was not the sole reason that the affidavits were not credited. *See No. CV171074JSAKT, 2018 U.S. Dist. LEXIS 12506, 2018 WL 1867117, at *4 (E.D.N.Y. Jan. 24, 2018)* (citing cases).

Ferguson points out that the notary did not include the date of notarization (i.e., "this __ date of March, 2013"). But he cites no law indicating that a notarization is invalid absent the notary [*18] dating the document. *Cf. Peters v. Lincoln Elec. Co., 285 F.3d 456, 475 (6th Cir. 2002)* (noting that "courts have held that the absence of a date" on a statement with *§ 1746*'s penalty-of-perjury language "does not render [it] invalid if extrinsic evidence could demonstrate the period when the document was signed"). The affidavit bears the notary's signature, her stamp, her commission expiration date, and the date of Coykendall's signature (March 19, 2013). It was also docketed shortly after Coykendall signed it. In other words, it appears legitimate.

In short, on one side of the scale there are contemporaneous, sworn statements, and on the other side of the scale, unsworn statements made many years later. The direction that the scale tips is obvious. *Cf. Pollock v. Pollock, 154 F.3d 601, 612 (6th Cir. 1998)* ("An unsworn affidavit cannot be used to support or oppose a motion for summary judgment."); *Tate v. Riegert, 380 F. App'x 550, 552 (7th Cir. 2010)* ("Tate's unsworn letter was entitled to no weight as substantive evidence.").

And even supposing that Ferguson's unsworn statements were entitled to the same weight as Coykendall's sworn statements, Ferguson's account is not very convincing. Many of

Ferguson's attacks on Coykendall's affidavit are to this effect: "if the proper policy or practice had been followed, then the events would not have occurred as [*19] Coykendall says they did." Noticeably absent is any direct statement by Ferguson that he never met Coykendall in March 2013. True, Ferguson does say that he "did not verbally or otherwise communicat[e] with Mr. Coykendall" but that sentence is completed by "as he was housed at FDC Milan, not FCI Milan, the facility Mr. Coykendall refers to in his affidavit." (ECF No. 161, PageID.4271.) Arguably, this too is merely an indirect denial of Coykendall's statements, i.e., "Coykendall says he went to FCI Milan, so I could not have spoken with him because I was at FDC Milan." That is much less convincing than directly stating, "I have never met Coykendall."

In short, on the record as it stands now, Ferguson has not persuaded the Court that the key facts in Coykendall's affidavit are false. *Cf. O'Brien v. R.J. O'Brien & Assocs., Inc., 998 F.2d 1394, 1398 (7th Cir. 1993)* ("A signed return of service constitutes prima facie evidence of valid service."). And if the facts are as Coykendall has stated them, then the Court sees no reason to revisit Judge Cleland's order. After all, Judge Cleland relied on Coykendall's affidavit as part of the factual basis for finding that Ferguson was served. (*See* ECF No. 90, PageID.3307.) And Ferguson has identified no erroneous law in [*20] Judge Cleland's opinion. *See Sparton Engineered Prod., Inc. v. Cable Control Techs., Inc., 178 F.3d 1296 (Table), 1999 WL 115472, at *2 & n.6 (6th Cir. 1999)* (noting that district court had stated that "one cannot avoid service by refusing physically to accept the summons" and agreeing "with the district court that by refusing the . . . service of process, Cable acted at its own peril"; *Novak v. World Bank, 703 F.2d 1305, 1310 n.14, 227 U.S. App. D.C. 83 (D.C. Cir. 1983)* ("When a person refuses to accept service, service may be effected by leaving the papers at a location, such as on a table or on the floor, near that person.").

**C.**

Ferguson makes three other points worth expressly addressing.

**1.**

For one, Ferguson relies on two of the *United Coin* factors in an effort to set aside the default judgment. In the Sixth Circuit, courts apply the three factors set out in *United Coin Meter Co. v. Seaboard Coastline RR., 705 F.2d 839 (6th Cir. 1983)*, in deciding whether to set aside a clerk's entry of default under *Rule 55(c)*. These factors are (1) "[w]hether the

culpable conduct of the defendant led to the default," (2) "whether the defendant has a meritorious defense," and (3) "whether the plaintiff will be prejudiced." *United Coin, 705 F.2d at 845*. Although applied more stringently once a default ripens into a default judgment, the *United Coin* factors also apply to *Rule 60(b)* motions to set aside a default judgment. *See id.* ("[T]he three factors which control the decision of a *Rule 55(c)* motion to set aside entry of default also apply to a *Rule 60(b)* motion to set aside [*21] entry of a judgment by default."). Here, Ferguson argues that McCormick will not suffer prejudice if the default judgment is set aside. He also asserts that he has a meritorious defense to McCormick's claims.

Although the *United Coin* factors apply to *Rule 60(b)* motions, the Court believes that when, as here, a defendant relies on *Rule 60(b)(4)* but fails to show that "judgment is void" because service was not effectuated, the other *United Coin* factors need not be addressed. *See* Mary Kay Kane, 11 Fed. Prac. & Proc. Civ. § 2862 (3d ed.) ("[A] motion under [(b)(4)] differs markedly from motions under the other clauses of *Rule 60(b)*.").

To start, *Rule 60(b)(4)* asks the Court to decide a yes-or-no question: is the judgment void? As the Wright & Miller treatise explains, "There is no question of discretion on the part of the court when a motion is under *Rule 60(b)(4)*. Nor is there any requirement, as there usually is when default judgments are attacked under *Rule 60(b)*, that the moving party show a meritorious defense. Either a judgment is void or it is valid." Mary Kay Kane, 11 Fed. Prac. & Proc. Civ. § 2862 (3d ed.); *see also Shank/Balfour Beatty v. Int'l Bhd. Of Elec. Workers Loc. 99, 497 F.3d 83, 94 (1st Cir. 2007)* ("[A] district court has no discretion when deciding a motion brought under *Rule 60(b)(4)* because a judgment is either void or it is not."). Indeed, where a defendant [*22] is successful in showing that "the judgment is void," there is no need to consider the other two *United Coin* factors. *See Antoine v. Atlas Turner, Inc., 66 F.3d 105, 108 (6th Cir. 1995)*.

And at least in the context of a *Rule 60(b)(1)* motion, the reverse is also true. The Sixth Circuit has explained, "because [*Rule 60(b)(1)*] *mandates* that a defendant cannot be relieved of a default judgment unless he can demonstrate that his default was the product of mistake, inadvertence, surprise, or excusable neglect," "it is only when the defendant can carry this burden that he will be permitted to demonstrate that he also can satisfy the other two [*United Coin*] factors." *Waifersong, 976 F.2d at 292* (emphasis added); *accord Williams v. Meyer, 346 F.3d 607, 613 (6th Cir. 2003)*; *Weiss v. St. Paul Fire & Marine Ins. Co., 283 F.3d 790, 794 (6th Cir. 2002)*.

All that rings true for *Rule 60(b)(4)* too. If the idea is that when a defendant fails to satisfy *Rule 60(b)(1)*'s "mandate[]," *Waifersong, 976 F.2d at 292*, the other two *United Coin* factors need not be addressed, then the same can be said of a defendant's failure to satisfy *Rule 60(b)(4)*'s mandate. Or perhaps the idea is that when a defendant fails to show "mistake, inadvertence, surprise, or excusable neglect" under *Rule 60(b)(1)*, an inference arises that he is culpable for the default judgment and the other two *United Coin* factors cannot carry the day. The same can be said on the facts of this case. By failing to show that service was improper, the implication is that Ferguson was served, and so it is fair **[*23]** to say that Ferguson is culpable for the default judgment such that the other two *United Coin* factors cannot carry the day.

In short, because Ferguson has failed to show that the "judgment is void," the Court declines to analyze whether McCormick would be prejudiced if the default judgment were set aside or if Ferguson has a meritorious defense to McCormick's claims. *See Thompson v. Am. Home Assur. Co., 95 F.3d 429, 433 (6th Cir. 1996)* (indicating that to prevail on a *Rule 60(b)* motion, a defendant must show "that one of the specific requirements of *Rule 60(b)* is met").

**2**.

Ferguson also points out that when McCormick mailed him court documents in this case, they were returned undeliverable. Thus, Ferguson implies that when McCormick mailed court documents, it knew he was not at the addressed location. (ECF No. 161, PageID.4278.) Ferguson also points out that McCormick had his prison registration number. (ECF No. 161, PageID.4272.) The implication, apparently, is that McCormick should have looked up his actual location instead of continuing to send documents to FCI Milan.

These arguments do not justify setting aside the default judgment. As an initial matter, not all the filings that McCormick mailed were returned, nor were they all returned as undeliverable. When McCormick sent the **[*24]** entry of default, its motion for default judgment, and the notice of the hearing on the motion to Ferguson at the Wayne County Jail, it was returned "Refused." (ECF No. 121, PageID.3756.) That suggests that Ferguson was at the jail when McCormick's mailing arrived and refused it. But even if Ferguson is correct that McCormick knew it was sending documents to the wrong location, once service was effectuated, it was Ferguson's responsibility to appear in this lawsuit and defend it. *See Fed. R. Civ. P. 55*; *E.D. Mich. LR 11.2* (2009). Ferguson cites no legal authority requiring McCormick to track his whereabouts after it effectuated service.

**3**.

Ferguson states that he "has also satisfied the [*United Coin*] factors for equitable relief under . . . *Rule 60(b)(1)* and *(3)*."

But a motion pursuant to *Rule 60(b)(1)* or *(3)* must be brought within a year of "the entry of the judgment or order or the date of the proceeding." *Fed. R. Civ. P. 60(c)(1)*. Judge Tarnow ordered that a default judgment be entered against Ferguson almost four years before Ferguson moved to set it aside, making relief under *Rule 60(b)(1)* or *(b)(3)* untimely.

**IV**.

For the reasons given, Ferguson's motion to vacate and set aside the default judgment (ECF No. 161) is DENIED.

SO ORDERED.

Dated: September 8, 2022

/s/ Laurie J. Michelson

LAURIE J. MICHELSON

UNITED **[*25]** STATES DISTRICT JUDGE

*End of Document*

**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **BRIAN CUMMINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00301** |
| | ) | |
| **BRETTON KEEFER, on behalf of the** | ) | **Chief Judge Waverly D. Crenshaw, Jr.** |
| **deceased CHESTA SHOEMAKER,** | ) | **Magistrate Judge Alistair E. Newbern** |
| **AFSOON HAGH, and** | ) | |
| **JEANNE BURTON, Trustee on behalf** | ) | |
| **of CUMMINGS MANOOKIAN, PLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DECLARATION OF ELIZABETH S. TIPPING
IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT
AGAINST DEFENDANT AFSOON HAGH**

I, Elizabeth S. Tipping, declare under penalty of perjury that the following facts are true

and correct to the best of my information and belief:

1.      I am counsel of record for the above-named Plaintiff, Brian Cummings.

2.      Service of the Summons and Amended Complaint upon Defendant Afsoon Hagh

was effected on October 11, 2022 by Deputy U.S. Marshall Robert Capus. (Doc. Nos. 39, 45.)

3.      Since service on October 11, 2022, more than 21 days have elapsed and Defendant

Hagh has failed to file a responsive pleading or otherwise defend Plaintiff's Amended Complaint.

4.      Defendant Hagh is not a minor, and, to the best of my information and belief,

Defendant Hagh is not incompetent.

5.      Defendant Hagh is not in the military service, as evidenced by the certificate issued

by the Department of Defense Manpower Data Center on February 10, 2023, which is attached

hereto as Exhibit A.

1

6.  Attached hereto as Exhibit B is a true and correct copy of a webpage from the Board of Professional Responsibility of the Supreme Court of Tennessee, reflecting the publicly available Attorney Details regarding Brian Manookian.

7.  Attached hereto as Exhibit C is a true and correct copy of Brian Cummings' Notice of Attorney's Lien filed November 27, 2020, in <u>Keefer v. Vanderbilt University Medical Center</u>, Davidson County Circuit Court Case No. 19C358 (the "Underlying Case"), obtained from the Public Inquiry System for the Offices of the Circuit Court Clerk of Davidson County, Tennessee ("CaseLink").

8.  Attached hereto as Exhibit D is a true and correct copy of Motion for Status Conference filed by Brian Cummings in the Underlying Case on December 16, 2021, obtained from CaseLink.

9.  Attached hereto as Exhibit E is a true and correct copy of Plaintiff's [Bretton Keefer's] Response in Opposition to Brian Cummings' Motion for Status Conference filed in the Underlying Case on January 10, 2022, obtained from CaseLink.

10.  Attached hereto as Exhibit F is a true and correct copy of Brian Cummings Corrected Reply to Plaintiff's [Bretton Keefer's] Response to Motion for Status Conference filed in the Underlying Case on January 13, 2022, obtained from CaseLink.

11.  Attached hereto as Exhibit G is a true and correct copy of Plaintiff's [Bretton Keefer's] Sur-Reply in Opposition to Brian Cummings' Motion for Status Conference filed in the Underlying Case on January 13, 2022, obtained from CaseLink.

12.  Attached hereto as Exhibit H is a true and correct copy of the Court's Order Altering and Amending This Court's Order of December 16, 2021, filed in the Underlying Case on January 18, 2022 and obtained from CaseLink.

2

13.     Attached hereto as Exhibit I is a true and correct copy of an Order of Voluntary Dismissal With Prejudice, filed September 22, 2022, in <u>Shahgoli v. Agnoly-Motiel</u>, Davidson County General Sessions Court Case No. 22GC8438, obtained from CaseLink.

14.     Attached hereto as Exhibit J is a true and correct copy of a Complaint, filed October 16, 2022, in <u>Linthicum v. Battle of Franklin Trust, Inc.</u>, Davidson County Circuit Court Case No. 22C2093, obtained from CaseLink.

15.     Attached hereto as Exhibit K is a true and correct copy of a webpage from the Board of Professional Responsibility of the Supreme Court of Tennessee, reflecting the publicly available Attorney Details regarding Defendant Hagh.

16.     Attached hereto as Exhibit L is a true and correct copy of the Judgment entered October 4, 2021, in <u>Manookian v. Board of Professional Responsibility of the Supreme Court of Tennessee</u>, Davidson County Chancery Court Case No. 20-0833-I, obtained from Chancery Case Information Access system for the Chancery Court Clerk & Master for Davidson County, Tennessee.

16.     Attached hereto as Exhibit M is a true and correct copy of the Order Reinstating Temporary Suspension entered October 11, 2019, in <u>In re: Brian Phillip Manookian, BPR #026455</u>, Supreme Court of Tennessee Case No. M2019-00630-CS-BAR-BP, obtained from the Board of Professional Responsibility of the Supreme Court of Tennessee.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ~~February 10~~, 2023.

_____
Elizabeth S. Tipping

3

Respectfully Submitted,

**COUNTERPOINT LEGAL, PLC**

By:  /s/ Elizabeth S. Tipping
      Elizabeth S. Tipping, No. 023066
      Kristen M. Shields, No. 036438

2689 Union Hill Road
Joelton, TN  37080
(615) 426-5566
liz@counterpointlaw.com
kristen@counterpointlaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on this the 10th day of February, 2023, via the Court's electronic filing system on the following:

Phillip G. Young, Jr.
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN  37203
phillip@thompsonburton.com

and via United States First Class mail, postage prepaid on the following:

Bretton Keefer
5554 Pumpkintown Lane
Lafayette, TN  37083

Afsoon Hagh
Hagh Law PLC
226 Pelham Drive
Brentwood, TN  37027-4237

      /s/ Elizabeth S. Tipping

4

# Exhibit A

Department of Defense Manpower Data Center

Results as of : Feb-10-2023 12:03:46 PM

SCRA 5.15



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:
Birth Date:        Aug-XX-1983
Last Name:        HAGH
First Name:        AFSOON
Middle Name:
Status As Of:      Feb-10-2023
Certificate ID:    KR7P6QRQ8LV5B3P

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

# Exhibit B



Board of Professional Responsibility

ATTORNEY LOGIN 🔒

# Board of Professional Responsibility
of the Supreme Court of Tennessee

ABOUT THE BOARD    FOR THE PUBLIC    FOR LEGAL PROFESSIONALS    NEWS & PUBLICATIONS

## Attorney Details

**Name:**
Manookian, Brian Philip

**Address:**
PO Box 150229
Nashville, TN 37215-0229

**BPR Number:**
026455

**Status:**
Suspended (10/11/2019)

**Office County:**
Davidson

**Licensed in TN Since:**
2007

**Law School:**
Vanderbilt University - Vanderbilt Law School

### Public Information:

**No Public Information Available**

### Informational Releases for Public Discipline:

| Date | Title |
| --- | --- |
| 08/06/2020 | Third Supplemental Petition for Discipline filed - #2017-2805-5-WM |
| 10/11/2019 | Order Reinstating Temporary Suspension |
| 10/11/2019 | Davidson County Lawyer Temporarily Suspended |
| 05/24/2019 | Second Supplemental Petition for Discipline filed - #2107-2805-5-WM |
| 05/17/2019 | Reinstated |
| 05/17/2019 | Davidson County Lawyer Reinstated |
| 11/21/2018 | Davidson County Lawyer Remains On Temporary Suspension |
| 09/21/2018 | Order of Temporary Suspension |
| 09/21/2018 | Davidson County Lawyer Temporarily Suspended |
| 03/22/2018 | Supplemental Petition for Discipline filed - #2107-2805-5-WM |
| 12/18/2017 | Petition for Discipline filed - #2017-2805-5-WM |

### Names Used:

**Name**

Brian Philip Manookian

* Information accurate as of Thursday, February 09, 2023 7:01 PM UTC

ABOUT THE BOARD

FOR THE PUBLIC

FOR LEGAL PROFESSIONALS

NEWS & PUBLICATIONS

LINKS OF INTERESTS

# Mission Statement

To assist the Court in protecting the public from harm from unethical lawyers by administering the disciplinary process; to assist the public by providing information about the judicial system and the disciplinary system for lawyers; and, to assist lawyers by interpreting and applying the Court's disciplinary rules.

© 2023 Board of Professional Responsibility of the Supreme Court of Tennessee.

PRIVACY STATEMENT    |    DISCLAIMER

2022-02

# Exhibit C

~COPY~

## IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| **BRETTON KEEFER, as Surviving Adult Son** | ) |
| **and Next-of-Kin of his Deceased Mother,** | ) |
| **CHESTA SHOEMAKER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **NO. 19C358** |
| | )    **Jury Demand (12)** |
| **VANDERBILT UNIVERSITY MEDICAL** | ) |
| **CENTER,** | ) |
| | ) |
| **Defendant.** | ) |

## BRIAN CUMMINGS' NOTICE OF ATTORNEY'S LIEN

Brian Cummings respectfully submits his Notice of Attorney's Lien. This Attorney's Lien relates to any settlement or recovery in this matter and includes, but is not limited to, the statutory right of recovery pursuant to Tenn. Code Ann. Section 23-2-102, and also includes the right to reimbursement for advanced, documented litigation expenses.

**RESPECTFULLY SUBMITTED**

**/s/Brian Cummings**
**Brian Cummings, #19354**
Cummings Law
4235 Hillsboro Pike #300
Nashville, TN 37215
(615) 800-6822 (phone)
(615) 815-1876 (fax)
brian@cummingsinjurylaw.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on November 27, 2020 a copy of this document was served via the methods noted for each person(s):

**The Court's electronic filing system:**

Thomas A. Wiseman, III
Brad Dowd
Wiseman Ashworth Law Group, PLC
511 Union Street, Suite 800
Nashville, TN 37219-1743
(615) 254-1877 (phone)
(615) 254-1878 (fax)

*Attorneys for the Defendant*

Afsoon Hagh
Hagh Law
Music Square West
Nashville, TN 37203
(615) 266-3653 (phone)
(615) 266-3655 (fax)
afsoon@haghlaw.com

*Attorney for the Plaintiff*

**U.S. Mail – postage prepaid:**

Brett Keefer
5960 Pumpkintown Lane
Lafayette, TN 37083

**s/Brian Cummings**

2

# Exhibit D

## IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | | |
|---|---|---|
| **BRETTON KEEFER, as a surviving adult** | ) | |
| **Son and next-of-kin of his deceased** | ) | |
| **Mother, CHESTA SHOEMAKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.: 19C358** |
| | ) | |
| **VANDERBILT UNIVERSITY MEDICAL** | ) | |
| **CENTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MOTION FOR STATUS CONFERENCE

Brian Cummings, former counsel for Plaintiff and attorney fee lien-holder, respectfully

moves the Court for a status conference concerning a hearing on the award of attorney's fees.

Respectfully submitted,

/s/   James W. Price, Jr.
James W. Price, Jr., #3538
Attorney for Brian Cummings
201 4th Avenue North, Suite 1800
Nashville, TN  37219
(615) 244-5772
jprice@pricehillkolarich.com

**THIS MOTION IS SET TO BE HEARD ON THE
14th DAY OF JANUARY, 2022, AT 9:00 A.M.**

## CERTIFICATE OF SERVICE

I certify that I have place a true and exact copy of the foregoing document in the United

States Mail, postage prepaid, addressed to:

> Afsoon Hagh
> Hagh Law PLC
> 47 Music Square West
> Nashville, TN 37203
>
> John Edwards
> William B. Bystrynski
> Edwards Kirby LLP
> 3201 Glenwood Ave., Suite 100
> Raleigh, NC 27612

This the 16th day of December, 2021.

/s/   James W. Price, Jr.
James W. Price, Jr.

# Exhibit E

# IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| **BRETTON KEEFER, on behalf of his deceased mother, CHESTA SHOEMAKER** | **NO. 19C-358** |
| **Plaintiff,** | **JURY DEMAND** |
| **v.** | |
| **VANDERBILT UNIVERSITY MEDICAL CENTER** | |
| **Defendant.** | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO BRIAN CUMMINGS' MOTION FOR STATUS CONFERENCE

The Plaintiff opposes Brian Cummings' "Motion for Status Conference." In his one-sentence Motion, Mr. Cummings asserts that he is an "attorney fee lien-holder" and requests that the Court set a status conference "concerning a hearing on the award of attorney's fees." He declines to cite any support for his belief that he is a lien holder, or that his otherwise unspecified lien should be adjudicated at some indeterminate hearing by this particular Court in this particular action.

Mr. Cummings request should be denied. As demonstrated by the Tennessee Supreme Court's holding in *Schmitt v. Smith*, Mr. Cummings is confused both as to his own status, as well as the procedure for adjudicating a purported attorney's lien. 118 S.W.3d 348 (Tenn. 2003).

1

## I. Mr. Cummings is not entitled to any portion of the proceeds of this now-concluded case.

Even if Mr. Cummings had instituted a lien dispute in the correct manner (he has not), he would not be entitled to any portion of the proceeds in this concluded case. Mr. Cummings had a written contract with the client, Brett Keefer, laying out the terms of his engagement. That engagement agreement provided that <u>if the client fired the attorney,</u> the attorney would be entitled to a portion of the ultimate recovery as well as repayment of any advanced expenses. **Exhibit 1**. Conversely, the engagement agreement provides that <u>if the attorney quit the case,</u> the attorney would only be entitled to repayment of his advanced expenses.

Mr. Cummings abruptly and without notice quit this case on October 2, 2020 after the client declined to revise the terms of Mr. Cummings' engagement agreement to increase Mr. Cummings' percentage of the recovery. Pursuant to the terms of the previous contract which Mr. Cummings dictated and signed, Mr. Cummings was and is only due repayment of his advanced expenses.

Those expenses (approximately $60,000) were the very first funds distributed when the settlement proceeds were received. Mr. Cummings has been paid in full under the terms of his own engagement agreement. His own choices and conduct preclude him from receiving additional funds, regardless of whatever he wishes he had now done in hindsight.

## II.     To the extent he believes he is entitled to any attorney fee, Mr. Cummings must institute a separate proceeding

Importantly, to the extent Mr. Cummings actually believes he is entitled to any additional payment beyond recouping his expenses, he must institute a separate proceeding. This is the case because: (1) Mr. Cummings is not a party to this proceeding; (2) Mr. Cummings must put the Defendant on notice of his claims as well as what relief Mr. Cummings is seeking by filing an actual, written Complaint which pleads particular facts and allegations; and because (3) the Defendant must then be afforded the opportunity to raise defenses to those claims.

The Tennessee Supreme Court addressed this reality in 2003 in the case of *Schmitt v. Smith,* finding that:

> While a charging lien serves to secure an attorney's fees, <u>it does not function as an adjudication of the rights between the lawyer and his or her client</u>. Thus, <u>"[a] trial court may declare the existence of an attorney's lien in the suit out of which the dispute regarding the attorney's fee arose, but ordinarily an attorney, not being a party to the proceeding, may not obtain a judgment with respect to his or her fee in that action.</u>
>
> *Schmitt v. Smith,* 118 S.W.3d 348, 353-354 (Tenn. 2003)

Examples of specific defenses to an assertion of an attorney's fee include that the attorney has contractually disclaimed more than a certain amount of payment, or that an attorney committed professional malpractice in the representation of the

3

client.  If Mr. Cummings ultimately decides to institute a separate proceeding, those and other defenses will be specifically raised and must be litigated.[1]

Finally, Mr. Cummings' own engagement agreement with the client includes a mediation and arbitration clause that precludes Mr. Cummings from asserting any claims for fees outside of a mediation and arbitration.  **Exhibit 1**.  To the extent Mr. Cummings ever institutes a separate proceeding in a trial court, any Defendant would be entitled to seek its dismissal based upon that provision.

### III.   Conclusion

Mr. Cummings request to schedule "a status conference concerning a hearing on the award of attorney's fees" should be denied.  That is not the procedure for adjudicating an attorney's fee lien.  Mr. Cummings must first institute a separate proceeding, and it appears he has already waived his ability to do so in this or any other Court via a self-imposed arbitration clause.

One fact is crystal clear: Mr. Cummings may not simply file a one-sentence

---

[1] For example, Mr. Cummings unquestionably committed malpractice on multiple occasions.  Mr. Cummings disclosed a critical physician "expert," despite the fact that the physician had never been licensed in Tennessee or a contiguous state, and such fact was apparent on the physician's resume which was sent to Mr. Cummings.

Likewise, the only two major tasks for which Mr. Cummings took responsibility were ultimately ordered to be redone by the Court in their entirety.  Finally, the manner in which Mr. Cummings withdrew, days before the start of expert depositions scheduled around Mr. Cummings' own calendar was textbook client abandonment and professional negligence. In sum, the client would testify, if called to, that Mr. Cummings' participation in the matter was a net, and major, detriment.

4

EFILED 01/10/22 11:51 AM CASE NO. 19C358 Richard R. Rooker, Clerk

motion *in this action* asking to schedule "a hearing on the award of attorney's fees." As explained by the Tennessee Supreme Court, this Court is simply not in a position to adjudicate such a controversy; nor is any as-yet unnamed Defendant in a position to respond to Mr. Cummings as-yet unarticulated claims. The Court should enter an Order denying Mr. Cummings' request and holding that no such further requests be made in this particular action.

Respectfully submitted,

s/ AFSOON HAGH

**Afsoon Hagh, #28393**
Hagh Law PLLC
(615) 566-0937 (phone)
(615) 266-3655 (fax)
afsoon@haghlaw.com

*Attorney for the Plaintiff*

5

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 3, 2021 a true and correct copy of this pleading was provided by the Court's Electronic Filing System to the following:

Tom Wiseman
Brad Dowd
Wiseman Ashworth
511 Union Street, Suite 800
Nashville, Tennessee 37219
Tom@wisemanashworth.com
Brad@wisemanashworth.com
*Attorneys for the Defendant*

James W. Price, Jr.
201 4th Avenue North, Suite 1800
Nashville, TN 37219
jprice@pricehillkolarich.com
*Attorney for Brian Cummings*

s/ AFSOON HAGH

_____

AFSOON HAGH

6

# Exhibit F

**IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE**

| | | |
|---|---|---|
| **BRETTON KEEFER, on behalf** | ) | |
| **of his deceased mother,** | ) | |
| **CHESTA SHOEMAKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Docket No: 19C-358** |
| | ) | **JURY DEMAND** |
| **VANDERBILT UNIVERSITY** | ) | |
| **MEDICAL CENTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**BRIAN CUMMINGS CORRECTED REPLY TO**
**PLAINTIFF'S RESPONSE TO MOTION FOR STATUS CONFERENCE**

The case in which this attorney fee issue arises was a wrongful death case of a patient at Vanderbilt University Medical Center. Mr. Cummings initiated this case by initial contact with the client, Brett Keefer, in April of 2017. He worked regularly as lead counsel in this matter until his withdrawl in October of 2020. Because this case was settled in October of 2021, Mr. Cummings was actively involved as lead counsel for forty-two (42) of the fifty-four (54) months of the case.

Mr. Cummings performed all aspects of the intake of this matter, including receiving initial intake information, contacting the client after the death of his mother, reviewing the medical information pertinent to the cause of the patient's death. Mr. Cummings performed a detailed comprehensive review of the Vanderbilt records and prepared a detailed summary letter that became the basis of the Complaint. This letter was sent to all of the expert witnesses. Mr. Cummings attended the pre-suit mediation as the only attorney on behalf of the Plaintiff. Mr. Cummings prepared and filed the 550 paragraph, 65 page Complaint without help from any other

attorney. Mr. Cummings prepared the written discovery which was propounded to the Defendant and contacted and retained all the Rule 26 witnesses, including nine medical experts and an expert economist. Mr. Cummings was the only attorney involved with retaining and working with the Rule 26 witnesses prior to the Rule 26 disclosure being served and was the only attorney on the Plaintiff's side of the case making any contact with any of the Rule 26 witnesses until after he withdrew from the case. Mr. Cummings prepared the 85 page Rule 26 disclosures which were provided to the parties. Until his withdrawal in October of 2020, Mr. Cummings prepared and conducted one-half of the depositions taken. The remaining depositions were taken by Ryan Manookian, his then partner. Mr. Cummings prepared the Plaintiff and the patient's fiancé for their depositions. Mr. Cummings attended these witnesses depositions with no other counsel for the Plaintiff involved.

Because of an ethical dispute between Mr. Cummings and the Plaintiff's new counsel, Afsoon Hagh, Mr. Cummings withdrew from the case in October of 2020.

### DISCUSSION:

This Court is the proper forum to determine the disposition of the attorneys' fees in the case of *Keefer v. Vanderbilt University Medical Center*. Afsoon Hagh, one of the attorneys for the Plaintiff in the underlying case, has asserted in the Response the Motion that this Court is not the proper form to resolve the attorney fee issue and states that Mr. Cummings should have filed a separate adversary proceeding in another court.

Ms. Hagh, in her Response, relies on the case of *Schmitt v. Smith*, 118 S.W.3d 348 (Tenn. 2003), for that proposition. That case, however, does not support Ms. Hagh's argument and, in

-2-

fact, stands for the proposition that this Court is the proper forum to determine the award and division of attorneys' fees.

The *Schmitt* case was a divorce action in which the attorney seeking to enforce an attorney fee lien was the second attorney and came in after the first attorney withdrew. At the conclusion of the case, the attorney filed an attorney's lien pursuant to the statute. Although it appears that the attorney filed the lien under the wrong subsection of the statute, filing her lien under the provision for an attorney who was involved with the case from the beginning instead of the second section which involves a replacement attorney. The objection to enforce the lien was, as Plaintiff's counsel claims in this case, that the attorney should have filed a separate proceeding to enforce the lien, and second, that the attorney's lien should have incorporated into the final decree of judgment. The court quickly disposed of each of these matters holding that the lien was properly filed, and it was unnecessary to include it in the final decree and, most important for this case, that because of judicial economy, it was proper for the court which heard the underlying case to hear the issue of attorneys' fees. The court stated:

> Finally, we note that it is in the interest of judicial economy to allow the same court to hear all matters regarding the property in question. Forcing the parties to proceed in a separate action with a judge unfamiliar with the underlying facts of the (divorce) action would cause both parties to incur additional attorney's fees, costs, and litigation expenses. *Schmitt* @ p. 355

Mr. Cummings properly filed his lien on November 27, 2020, and served both Thomas Wiseman, attorney for the Defendant, and Afsoon Hagh, attorney for the Plaintiff. He also mailed a copy to the Plaintiff, Brett Keefer. Accordingly, the lien is properly filed and before this Court for disposition.

-3-

Ms. Hagh has raised a number of other issues in the Response which are not relevant to

the issue of whether or not this Court has jurisdiction to dispose of the case but, if relevant at all,

would be raised at the hearing on the disposition of attorneys' fees. However, in order to not let

these allegations remain unanswered, Mr. Cummings would state that Ms. Hagh incorrectly

argues that under the existing Attorney/Fee Agreements, Mr. Cummings was only entitled to

expenses if he were to withdraw. Not only does this argument not comport with the law, it is

also a misstatement of the actual agreement.

In the initial Attorney/Fee Agreement, Mr. Cummings and his firm agreed to advance

costs. The paragraph stated by Ms. Hagh only acknowledges that by withdrawing from the case,

the Plaintiff or attorney were not abandoning their right to be reimbursed for the costs advanced

as set forth in the agreement. It does not waive the right to an attorney fee which stated in the

Agreement that Plaintiff's attorneys would be entitled to one-third (1/3) of all recovery, in

addition to the advanced costs. The paragraph cited by Ms. Hagh does not, in any way, negate

the Plaintiff's right to attorney's fees which the Court has already approved in the minor

settlement.

In Ms. Hagh's footnotes in the Response, she makes allegations which are unfounded and

unsupported regarding Mr. Cummings alleged malpractice for failure to perform. Mr. Cummings

has addressed his part generally in the introduction of this Response but certainly denies that

malpractice and will address that fully at the final hearing this attorney fee hearing.

-4-

Respectfully submitted,

/s James W. Price, Jr.
James W. Price, Jr., #3538
Attorney for Brian Cummings
Price, Hill & Kolarich
Suite 1800, 201 4th Avenue North
Nashville, TN 37219
(615) 244-5772

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing document was delivered by electronic court filing on this the 13th day of January, 2022, to:

Afsoon Hagh
Hagh Law, PLLC
afsoon@haghlaw.com

Tom Wiseman
Brad Dowd
Wiseman Ashworth
511 Union Street, Suite 800
Nashville, TN 37219

/s James W. Price, Jr.
James W. Price, Jr.

-5-

# Exhibit G

# IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

|  |  |
|---|---|
| **BRETTON KEEFER, on behalf of his deceased mother, CHESTA SHOEMAKER**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**VANDERBILT UNIVERSITY MEDICAL CENTER**<br><br>**Defendant.** | **NO. 19C-358**<br><br>**JURY DEMAND** |

## PLAINTIFF'S SUR-REPLY IN OPPOSITION TO BRIAN CUMMINGS' MOTION FOR STATUS CONFERENCE

Brian Cummings has filed a reply mischaracterizing the Tennessee Supreme Court's holding in *Schmitt v. Smith*. 118 S.W.3d 348 (Tenn. 2003). This brief sur-reply corrects his misstatement of the law applicable to attorney's liens.

### I.    *Schmitt v. Smith*

Mr. Cummings states that *Schmitt* stands for the proposition that an attorney's lien should be adjudicated in the underlying case. That is false. In fact, *Schmitt* repeatedly states the opposite, and only draws one narrow exception – which does not exist here – where the disputed property is under the trial court's direct control.

*Schmitt* was a divorce case in which the prior attorney asserted a lien for work

1

# Exhibit H

IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

BRETTON KEEFER, as surviving adult )
son and next-of-kin of his deceased )
Mother, CHESTA SHOEMAKER, )
                          )
      Plaintiff, )
                          )
VS.                         )       No. 19C358
                          )
VANDERBILT UNIVERSITY MEDICAL )
CENTER, )
                          )
      Defendant. )

## COURT'S ORDER ALTERING AND AMENDING THIS COURT'S ORDER OF DECEMBER 16, 2021

This cause came on to be heard on the 14th day of January, 2022, on motion by counsel for

Attorney Brian Cummings for this Court to conduct a status conference regarding a hearing on

Attorney Brian Cummings' request for attorney fees. Counsel for the named Plaintiffs in this case

filed a response in opposition to this Motion.

On December 16, 2021, an Amended Order of Dismissal With Prejudice was signed and

entered for this case.

T.C.A. Section 23-2-102 states as follows:

> "Attorneys and solicitors of record who begin a suit shall have a lien upon
>
> the plaintiff's or complainant's right of action from the date of the filing of
>
> the suit."

The case of *Joan C. Schmitt v. James Charles Smith*, 118 S.W.3d 353, 354 (2003) states as

follows:

> "Thus, '[a] trial court may declare the existence of an attorney's lien in the suit
>
> out of which the dispute regarding the attorney's fee arose, but ordinarily an

1

attorney, not being a party to the proceeding, may not obtain a judgment with respect to his or her fee in that action.' (internal citations omitted)

Although an attorney must generally commence a separate proceeding to enforce his or her contractual right to a fee, an exception has been carved out in which the trial court may exert jurisdiction where the money or property that is the subject of the lien 'comes within the control of the court in the case in which the services were rendered.' *Starks v. Browning*, 20 S.W.3d 645, 653 (Tenn.Ct.App.1999)"

This healthcare liability case was compromised and settled prior to the trial date, and since this Court never had control of the money which is the subject of the claimed lien by Attorney Brian Cummings, the above-stated exception does not apply.

The Court finds that this Court's Order of December 16, 2021 should be altered and amended as per TRCP 59.04 to provide that as per T.C.A. Section 23-2-102, since Attorney Brian Cummings was one of the attorneys of record for the Plaintiff who began this lawsuit, the Court declares the potential existence of an attorney's lien. The existence of an attorney's lien in behalf of Attorney Brian Cummings in this case is contested, and that issue must be determined by a separate proceeding.

"Once the Court has declared an attorney's lien, the lawyer may then commence a **separate proceeding** in a court of competent jurisdiction to enforce his or her contractual right to a fee". *Starks v. Browning*, 20 S.W.3d 645, 652 (Tenn.Ct.App.1999) (emphasis added)

IT IS SO ORDERED.

JUDGE JOE P. BINKLEY, JR.

2

<u>Certificate of Service</u>

I hereby certify that a true and correct copy of the foregoing has been mailed, postage prepaid, to:

Thomas A. Wiseman, Esq.
Bradley M. Dowd, Esq.
WISEMAN ASHWORTH LAW GROUP, PLC
511 Union Street, Suite 800
Nashville, TN 37219

Afsoon Hagh, Esq.
HAGH LAW, PLC
47 Music Square West
Nashville, TN 37203

John Edwards, Esq.
William B. Bystrynski, Esq.
Edwards Kirby, LLP
3201 Glenwood Ave., Suite 100
Raleigh, NC 27612

James W. Price, Jr.,
201 4th Avenue, North, Suite 1800
Nashville, TN 37219

on this the 18th day of January, 2022.

Deputy Clerk

3

# Exhibit I

## IN THE GENERAL SESSIONS COURT FOR DAVIDSON COUNTY, TENNESSEE

**SHAROK SHAHGOLI,**

**Plaintiff,**

**v.**

**CARCAS AGNOLY-MOTIEL,**

**Defendant.**

)
)
)
)
)
)
)
)
)

**NO. 22GC8438**

## ORDER OF VOLUNTARY DISMISSAL WITH PREJUDICE

The Plaintiff, having given notice of Voluntary Dismissal pursuant to Rule 41.01(1) of the Tennessee Rules of Civil Procedure, it is,

ORDERED, that this action is hereby dismissed *with prejudice*. Costs shall be taxed to the Plaintiff, in care of Hagh Law, PLLC, at the address below.

_____

**JUDGE**

APPROVED FOR ENTRY BY:

**Afsoon Hagh, No. 28393**
Hagh Law PLLC
226 Pelham Drive
Brentwood, Tennessee 37027
afsoon@haghlaw.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on September 21, 2022 a true and correct copy of this document was provided by electronic mail to:

Ms. Jacquelyn Hughes
The General
6000 American Parkway
Madison, WI 53783-0001
Phone: 800-280-1466 ext 4259
Fax: (800) 544-9021
jhughes@thegeneral.com
claims@thegeneral.com

**Afsoon Hagh**

# Exhibit J

# IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| **THOMAS LINTHICUM and** ) | |
| **DIANA SANABRIA,** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | **NO. _____** |
| **v.** ) | |
| ) | **JURY DEMAND** |
| **BATTLE OF FRANKLIN TRUST, INC.** ) | |
| **d/b/a CARNTON PLANTATION d/b/a** ) | |
| **CARNTON HOUSE d/b/a CARNTON,** ) | |
| **BRIGHT EVENT PRODUCTIONS, INC.,** ) | |
| ) | |
|     **Defendants.** ) | |

---

## COMPLAINT

---

The Plaintiffs respectfully state to the Court and Jury the following:

### PARTIES, VENUE, AND JURISDICTION

1.     The Plaintiffs, Thomas Linthicum and Diana Sanabria, are citizens and residents of Davidson County, Tennessee.

2.     The Defendant, Battle of Franklin Trust, Inc., ("BOFT") is a 501(c)(3) organization registered in the State of Tennessee with its principal office located at 1345 Eastern Flank Circle, Franklin, Tennessee 37064. BOFT does business, alternatively, as "Carnton," "Carnton House," and "Carnton Plantation." Throughout 2019 and 2020, BOFT solicited business in Davidson County, Tennessee and from residents of Davidson County, Tennessee. BOFT may be

1

served with process at 1345 Eastern Flank Circle, Franklin, Tennessee 37064.

3.      The Defendant, Bright Event Productions, Inc, ("Bright Event") is a Tennessee Corporation with its principal office located in Davidson County, Tennessee at 500 Brick Church Park Drive, Nashville, Tennessee 37207.  It may be served at that address through its registered agent Charles Clinton Pilkinton.

4.      Venue is proper in Davidson County Circuit Court pursuant to Tenn. Code Ann. § 20-4-104(2).

5.      This Court has jurisdiction pursuant to Tenn. Code Ann. § 16-10-101.

## STATEMENT OF FACTS

6.      Carnton or Carnton Plantation is a historic property consisting of an Antibellum-era mansion and its surrounding grounds located at 1345 Eastern Flank Circle in Franklin, Tennessee.

7.      At all times relevant to this lawsuit, and from 2019 through 2021, Defendant BOFT operated Carnton Plantation.  BOFT utilized Carnton to host paid events, including weddings and wedding receptions, in order to generate revenue for the use and enrichment of BOFT.

8.      From 2019 through 2021, BOFT held itself and Carnton out to the public as a premier wedding and wedding reception host and venue, including by advertising itself as such throughout Middle Tennessee.

9.      Defendant Bright Event Productions is a for-profit business operating

2

in Davidson County providing lighting, sound, electricity, and production for events. From 2019 through 2021, Bright Event Productions was the exclusive vendor for lighting, sound, and electricity for weddings and wedding receptions taking place at Carnton Plantation. During that time period, couples who contracted to have their wedding take place at Carnton were required by BOFT to use Bright Event Productions for lighting, sound, and electricity.

10. Plaintiffs Thomas Linthicum and Diana Sanabria became engaged in May 2019. In September of 2019, the Plaintiffs entered into an agreement with BOFT to host their outdoor evening wedding and outdoor night wedding reception at Carnton. *See*, **Exhibit 1.**

11. As part of the agreement, BOFT required that generator and electric power services be obtained and provided by Bright Event Productions. BOFT warranted to Plaintiffs that Bright Event Productions could and would provide suitable generator and electricity services to power the lighting, sound, heat, and electricity necessary to conduct the wedding and wedding reception.

12. On October 16, 2021, Plaintiffs held their wedding and wedding reception at Carnton for 163 guests, including 87 guests from out-of-town. Per BOFT's requirements and the Parties' Agreement, Bright Event Productions was to provide a generator or generators capable of providing sufficient power to operate the lighting, heat, and sound for the outdoor reception.

3

13. Bright Event Productions instead provided a substandard generator that was entirely incapable of providing even the minimum power necessary to service the wedding reception.

14. The event progressed into disaster as the night outdoor reception failed to receive adequate power, electricity, or heat. Temperatures dropped into the low 50's inside the tent-space forcing many guests to leave. The lighting went out. The band was required to perform large portions of its set without electricity and in a darkened space to the remaining guests.

15. As the disaster unfolded, BOFT and Bright Events refused to rectify the situation by providing a suitable generator, and further attempted to conceal their malfeasance by repeatedly and fraudulently representing that one or more food trucks at the venue was causing the loss in power. When advised that the food trucks were powered by their own separate generators, Defendants continued to refuse to address the situation, resulting in the wedding reception effectively ending with the mass departure of guests who could not tolerate the cold venue, which lacked suitable light or even the ability to provide the paid-for entertainment.

16. The Plaintiffs' wedding and reception were ruined as a result of Defendants' conduct. Because of Defendants' actions as well as the fundamental nature of a wedding, the years of planning required, and the logistics involved in gathering the families and guests from around the country, Plaintiffs are forever

4

deprived of enjoying or experiencing the momentous event that should have been one of the pinnacles and happiest moments of their lives. Their wedding day, and memories of the same, have been irretrievably spoiled.

## COUNT ONE: BREACH OF CONTRACT
## (ALL DEFENDANTS)

17.     The Defendants contracted and agreed to provide Plaintiffs with sufficient electrical, sound, and lighting services to power Plaintiffs' wedding reception through the provision of a suitable generator.

18.     Defendants' agreement was material and fundamental to Plaintiffs' ability to hold their wedding reception.

19.     Defendants breached their agreement by failing to provide Plaintiffs with sufficient electrical, sound, and lighting services to power Plaintiffs' wedding reception through the provision of a suitable generator.

20.     Defendants' breach caused damages, monetary and otherwise, to Plaintiffs.

## COUNT TWO: VIOLATIONS OF
## TENNESSEE CONSUMER PROTECTION ACT
## (ALL DEFENDANTS)

21.     Defendants' acts and conduct in passing off Bright Events' services and generators as suitable for providing electricity, sound, and lighting for Plaintiffs' outdoor, night wedding reception were unfair and deceptive under the Tennessee Consumer Protection Act of 1977.

22. Specifically, Defendants represented that the generators and services had qualities and characteristics as well uses and benefits, that they did not have. Namely, Defendants represented that Bright Events services and generators were suitable and sufficient for providing power to Plaintiffs' wedding reception.

23. Defendants additionally represented that Bright Events' services and generators were or a particular standard, quality, and grade which was suitable and capable of powering Plaintiffs' event, when those services and generators were not.

24. Plaintiffs suffered a loss of money and things of value as a result of Defendants unfair and deceptive acts.

## COUNT THREE: AGENCY
## (BRIGHT EVENTS AS THE AGENT OF BOFT)

25. At all times relevant to the facts alleged in this Complaint, Bright Events was the actual and apparent agent of BOFT.

26. BOFT held out Bright Events as its exclusive provider of lighting, electricity, and sound services for events at Carnton. BOFT further required that Plaintiff utilize the services of Bright Events.

27. BOFT had the authority, and exercised the authority, to control them means and manner in which Bright Events provided services to the Plaintiffs while on the premises of Carnton, including in providing lighting, electricity, and sound to Plaintiffs' wedding reception.

6

## COUNT FOUR: MISREPRESENTATION
## AND BREACH OF WARRANTIES
## (ALL DEFENDANTS)

28.     Defendants represented that the services and generators provided by Bright Events were of a quality and character sufficient to suitably power the Plaintiff's wedding receptions.

29.     Defendants further warranted that the generator and services provided by Bright Events as expressly required by BOFT's agreement with Plaintiff were fit for the particular purpose of providing electricity, sound, and lighting to an outdoor, night wedding reception of 150 to 200 guests.

30.     The Defendants' representation was not merely opinion but was made to the Plaintiffs who were expected to use Defendants' services and generators.

31.     The Defendants' representations were not true.

32.     The Plaintiffs justifiably relied upon the representations of the Defendants and were not aware that the representations were false.

33.     The Plaintiffs' reliance of Defendants' representations was a substantial factor in causing Plaintiffs' damages.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for the following relief:

1.      That proper process issue and be served upon the Defendants and

        the Defendants be required to appear and answer this Complaint

within the time required by law;

2. That the Plaintiff be awarded fair and reasonable compensatory damages not to exceed $250,000;

3. That the Plaintiffs be awarded treble damages under the Tennessee Consumer Protection Act;

4. That the Plaintiffs be awarded punitive damages to punish Defendants and deter future similar wrongful conduct;

5. That the Plaintiffs be awarded the costs of trying this action, including their attorney's fees;

6. That this action be heard by a jury;

7. That costs of this action be taxed to the Defendants;

8. That prejudgment interest be awarded to the Plaintiffs for economic damages;

9. That the Plaintiffs be awarded all and any such other and further relief as the Court deems proper; and,

10. That Plaintiffs' right to amend this Complaint to conform to the evidence be reserved.

8

Respectfully submitted,

Afsoon Hagh, #28293
226 Pelham Drive
Brentwood, Tennessee 37027
Hagh Law PLLC
(615) 566-0937

9

# Exhibit K



# Attorney Details

**Name:**
Hagh, Afsoon

**Address:**
226 Pelham Dr
Brentwood, TN 37027-4237

**BPR Number:**
028393

**Status:**
Active

**Office County:**
Williamson

**Licensed in TN Since:**
2009

**Law School:**
University of Memphis - Cecil C. Humphreys School of Law

## Public Information:

**No Public Information Available**

## Informational Releases for Public Discipline:

**No Public Discipline**

## Names Used:

| Name |
| --- |
| Afsoon Hagh |

\* Information accurate as of Thursday, February 09, 2023 6:00 PM UTC

## Mission Statement

ABOUT THE BOARD

FOR THE PUBLIC

FOR LEGAL PROFESSIONALS

NEWS & PUBLICATIONS

LINKS OF INTERESTS

To assist the Court in protecting the public from harm from unethical lawyers by administering the disciplinary process; to assist the public by providing information about the judicial system and the disciplinary system for lawyers; and, to assist lawyers by interpreting and applying the Court's disciplinary rules.

© 2023 Board of Professional Responsibility of the Supreme Court of Tennessee.

PRIVACY STATEMENT    DISCLAIMER

2022-02

# Exhibit L

IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

BRIAN P. MANOOKIAN,

    Petitioner,

v.                                                            No. 20-0833-I

BOARD OF PROFESSIONAL
RESPONSIBILITY OF THE
SUPREME COURT OF TENNESSEE,

    Respondent.



### JUDGMENT

### I. BACKGROUND

    Pursuant to Tennessee Supreme Court Rule 9, Section 33, the Petitioner, Brian P.

Manookian ("Mr. Manookian"), appeals the decision of the Hearing Panel of the Board of

Professional Responsibility (the "Hearing Panel") ordering that Mr. Manookian be suspended

from the practice of law for a period of twenty-four (24) calendar months. Mr. Manookian timely

filed a Petition for Review on August 21, 2020.

    Mr. Manookian contends that the proceedings before the Hearing Panel were plagued by

constitutional, evidentiary, and procedural errors, and that the Hearing Panel misapplied the

relevant ABA Standards for Imposing Lawyer Sanctions ("ABA Standards").

    He alleges his rights have been prejudiced because the Hearing Panel's report and

recommendation are:

       (1) in violation of constitutional and statutory provisions;
       (2) in excess of the Hearing Panel's jurisdiction;
       (3) made upon unlawful procedure;
       (4) arbitrary and capricious; and
       (5) not supported by substantial and material evidence.

More specifically, Mr. Manookian contends:

(1) The statements he made, which were the basis for the sanctions, were constitutionally protected;

(2) There were extensive procedural errors; and

(3) The Hearing Panel misapplied the relevant ABA Standard in determining the appropriate discipline.

Mr. Manookian thus moves this Court to vacate and reverse the Hearing Panel's decision, and to remand the case for a new hearing and resentencing.

The Board of Professional Responsibility of the Supreme Court of Tennessee (the "Board") contends that the Hearing Panel's findings, inferences, conclusions, and decisions with respect to Mr. Manookian's violation of the Tennessee Rules of Professional Conduct were not arbitrary or capricious, and are supported by substantial and material evidence in the record.

Furthermore, the Board contends that this Court—the Davidson County Chancery Court—has jurisdiction and proper venue over the matter, and that there were no structural procedural errors in the proceedings, which would require this Court to vacate the judgment. It also argues that the Hearing Panel decision did not violate Mr. Manookian's constitutional right to free speech.

The Board also contends:

(1) The Hearing Panel abused its discretion by disregarding the appropriate punishment set forth in the ABA Standards;

(2) The Punishment should have been disbarment rather than a two-year suspension.[1]

---

[1] However, this Court—by an order entered on July 12, 2021—granted Mr. Manookian's *Motion to Dismiss and Strike the Board's Claim as Cross-Appellant*, thereby striking and dismissing the Board's claim that the punishment should have been disbarment. The Court reasoned that the claim was not timely and properly filed in accordance with Tennessee Supreme Court Rule 9, § 33.1(a).

This Court heard oral arguments on July 9, 2021. Honorable William B. Acree, Jr., Senior Judge, sitting by designation over the Chancery Court of Davidson County, reviewed the Hearing Panel transcript, the official record with exhibits, and the appellate briefs, and considered applicable authorities.

For the following reasons, this Court affirms the Hearing Panel's findings of fact and conclusion of law, and the sanction of suspension from the practice of law for two years.

## A. PROCEDURAL HISTORY

This matter stems from a culmination of complaints filed by various individuals against Mr. Manookian, and they are summarized as follows.

The Board filed its original Petition for Discipline on December 18, 2017.[2]

The Board filed a Supplemental Petition for Discipline on March 22, 2018. The Supplemental Petition was based upon a complaint filed by C.J. Gideon, Esq., who was opposing counsel to Mr. Manookian in a medical malpractice case.

The Board filed a Second Supplemental Petition for Discipline on May 24, 2019, based upon complaints filed by Judge Don R. Ash and Phillip North, Esq. These complaints relate to conduct arising out of the same medical malpractice case.

The Hearing Panel conducted a hearing on February 25, 26, and 27, 2020.

On May 20, 2020, the Hearing Panel found by a preponderance of the evidence that during the course of the medical malpractice case, Mr. Manookian had violated Rules of Professional Conduct 1.9, 4.4, 8.2, and 8.4. It held that ABA Standard 4.31 and 6.21 were the appropriate baseline sanctions for Mr. Manookian's violations, and suspended Mr. Manookian from the practice of law for two years.

---

[2] The Hearing Panel dismissed the complaint without prejudice in an agreed order entered on December 10, 2019.

The Hearing Panel also ordered Mr. Manookian to attend at least 12 hours of anger management training, and to certify his attendance to the Board of Professional Responsibility. The Hearing Panel made his attendance and certification of anger management training a condition precedent to the filing of any petition for his reinstatement.

Prior to the May 20, 2020 Hearing Panel Report and Recommendation ordering Mr. Manookian to be suspended from the practice of law for two years, the Tennessee Supreme Court had suspended Mr. Manookian from the practice of law on the following occasions:

(1) On September 21, 2018, Mr. Manookian was temporarily suspended from the practice of law based on a finding that he posed a threat of substantial harm to the public.[3]

(2) On May 17, 2019, the Tennessee Supreme Court dissolved the temporary suspension, subject to Mr. Manookian's ongoing compliance with certain conditions.

(3) On May 21, 2019, Mr. Manookian was reinstated to the practice of law.

(4) On October 11, 2019, Mr. Manookian was again temporarily suspended from the practice of law based on two incidents, which are unrelated to the conduct presently before this Court.[4]

The Tennessee Supreme Court adopted the Hearing Panel's finding that Mr. Manookian violated a condition of his dissolution of temporary suspension and determined that he posed a threat of substantial harm to the public. It ordered the Board to proceed with "due speed" toward an ultimate resolution of the discipline at issue in this appeal.

---

[3] The Tennessee Supreme Court denied two petitions by Mr. Manookian asking the Court to dissolve his temporary suspension.

[4] In the first incident, the Hearing Panel found that Mr. Manookian improperly communicated with the client of an opposing counsel by sending the client an email designed to intimidate the client and undermine the client's relationship with the client's attorney.

In the second incident, Mr. Manookian emailed opposing counsel a photograph of the opposing counsel's wife and his home, causing opposing counsel to be fearful the safety of his family.

The Court notes that the Tennessee Supreme Court has entered two (2) orders denying Mr. Manookian's petitions for dissolution of his October 11 2019 temporary suspension.

On August 21, 2020, Mr. Manookian sought review of the Hearing Panel's decision by filing a Petition for Review, and on August 28, 2020, the Chief Justice of the Tennessee Supreme Court designated Judge William B. Acree, Jr. to hear this lawyer-disciplinary appeal.

## B. FACTS

This case stems from a serious of written communications sent by Mr. Manookian.

The Findings of Fact of the Hearing Panel accurately reflect the record and are incorporated herein by reference.

To provide clarity to this judgment, the Court summarizes the findings of fact as follows.

The complaints filed against Mr. Manookian all involve conduct relating to the medical malpractice case—*Shao v. HCA Health Services, Inc.*—in which Mr. Manookian and his co-counsel, Brian Cummings, represented the plaintiff.

Specifically, on September 16, 2016, Mr. Manookian filed a medical malpractice case in the Davidson County Circuit Court on behalf of the plaintiff, Steven Shao, against the defendants HCA Health Services, Inc., d/b/a Summit Medical Center, Toby Smith, M.D., and Middle Tennessee Pulmonary Associates, PLLC.

C.J. Gideon, a local Nashville attorney, eventually came to represent the defendant HCA Health Services, Inc. on July 25, 2017.

Phillip North, another local Nashville attorney, similarly came to represent the defendants Dr. Toby Smith and Middle Tennessee Pulmonary Associates, PLLC on March 22, 2017.[5]

---

[5] The Court notes that before Phillip North entered the case as substitute counsel, the defendants Dr. Toby Smith and Middle Tennessee Pulmonary Associates, PLLC were represented by the late Michael Geracioti.

Judge Thomas Brothers was assigned to hear the case.

It was not until approximately a year after Mr. Manookian filed the medical malpractice case that he began sending a series of troubling and offensive written communications. These communications—compounded by Mr. Manookian's enthusiasm for caustic and hostile footnotes—would become the basis for the complaints filed against him, and which are at issue today.

The Court identifies seven (7) of such written communications, and summarizes them in chronological order below. All reference the case of *Shao v. HCA Health Services, Inc.*, the medical malpractice case in which C.J. Gideon, Phillip North, and Mr. Manookian were counsel.

### 1. August 19, 2017: Email to Opposing Counsel Regarding his Daughter

During the pendency of the medical malpractice lawsuit, C.J. Gideon—who was representing the defendant HCA Health Services, Inc.—wrote a letter to Mr. Manookian about how he believed Mr. Manookian's responses to certain written discovery requests were insufficient. In the letter—dated August 17, 2017—Mr. Gideon specifically explained why Mr. Manookian's responses needed to be supplemented, and urged him to rectify them as soon as possible.

Two days later, on August 19, 2017 (the "August 19, 2017 email"), Mr. Gideon received an email through his law firm email address from Mr. Manookian through his law firm email address. The email was about Mr. Gideon's daughter, and how Mr. Manookian knew information about the daughter that was personal and embarrassing. Mr. Manookian stated that

---

Mr. Geracioti passed away on March 16, 2017, the very same day that Mr. Manookian and his co-counsel filed a Motion for Default Judgment against Mr. Geracioti's clients. After Mr. North substituted Mr. Geracioti as counsel, he filed a motion for more time to review the client file, which Mr. Manookian and his co-counsel opposed. The trial court denied the Motion for Default Judgment.

he knew that the daughter worked for a company where he had many friends, and that he would make it a point to see what he could do to "influence" her prospects at the company.

During the hearing conducted by the Hearing Panel, Mr. Gideon testified that upon reading the email, he became sick to his stomach and angry. This is because the email referenced an incident regarding his daughter, which he characterized as the worst time of his and his wife's life. Mr. Gideon was also worried that Mr. Manookian could negatively affect his daughter's prospects at the company. He considered the email to be an attack on his daughter's livelihood and her well-being.

Mr. Gideon stated that the August 19, 2017 email was a "brushback pitch," aimed to get him off Mr. Manookian's back during the medical malpractice lawsuit.

Mr. Manookian, however, testified that he was simply trying to help Mr. Gideon's daughter and that he was taking the high road.

The Court notes that the August 19, 2017 email was sent when counsel in the medical malpractice case were actively exchanging discovery and discussing discovery disputes.

As a result of the email, Mr. Gideon filed a motion for sanctions against Mr. Manookian on August 24, 2017, only attaching as an exhibit a copy of the subject line of the August 19, 2017 email. He redacted his daughter's name and the name of her employer, and purposely did not attach the email in its entirety as a means to protect his daughter's privacy.

Nonetheless, in his response to the motion for sanctions, Mr. Manookian made it a point to attach several exhibits—including a copy of the August 19, 2017 email containing the embarrassing information about Mr. Gideon's daughter—unredacted. The exhibits revealed, among other things, the name of Mr. Gideon's daughter, the name of her high school, and the name of her employer. Mr. Manookian made no effort to redact the daughter's name.

In an order dated September 28, 2017, which ruled upon Mr. Gideon's motion for

sanctions, Judge Brothers found the following with respect to the August 19, 2017 email:

1. It was a threat against the livelihood of Mr. Gideon's daughter;
2. It was a thinly veiled threat to embarrass Mr. Gideon, his child, and his family;
3. It was an act of attempted intimidation meant to secure a tactical advantage over opposing counsel;
4. It was a communication between opposing counsel in a case pending for the court; and
5. Mr. Manookian's conduct was repellent and shameful.

In his response to Mr. Gideon's motion for sanctions, Mr. Manookian not only

intentionally disclosed the name of Mr. Gideon's daughter, but he also directly referenced Mr.

Gideon's son, which is the next troubling written communication at issue in this appeal.

### 2. September 5, 2017: Court Document Regarding an Opposing Counsel's Son

On September 5, 2017, Mr. Manookian filed a response to Mr. Gideon's motions for

sanctions, specifically referring to Mr. Gideon's son in Footnote 1.

Footnote 1 references Mr. Manookian's prior experience representing Mr. Gideon's son

in a civil suit. It is one sentence long, and although it states that Mr. Manookian represented the

son in the past, it does not explain the purpose of that lawsuit, or how it is relevant to Mr.

Gideon's motion for sanctions.

The Court finds that in Footnote 1, Mr. Manookian summarizes his representation of Mr.

Gideon's son in a non-objective manner, and its purpose was to invoke a negative reaction from

opposing counsel.

At the disciplinary hearing, Mr. Manookian admitted that his reference to the son in his

response to the sanctions was done in anger.

Finally, in the order dated September 28, 2017, which ruled upon Mr. Gideon's motion for sanctions, Judge Brothers found that Mr. Manookian's "identification of and unflattering reference" of Mr. Gideon's son in a footnote of a publicly filed response was "egregious."

Taken together, Judge Brothers concluded that Mr. Manookian's August 19, 2017 email referencing the daughter and September 5, 2017 footnote referencing the son were done to embarrass, annoy, and oppress Mr. Gideon via formal filings. He thus found Mr. Manookian's actions sanctionable and imposed monetary sanctions of $5,550.00 in attorney fees.

Judge Brothers concluded by stating that he "urges Mr. Manookian to learn from this unnecessary and unfortunate situation and in the future to conduct himself in a manner that is worthy of his profession."

Mr. Manookian did not appeal the imposition of sanctions issued by Judge Brothers in the September 28, 2017 order.

While the first two written communications at issue in this appeal involved opposing counsel Mr. Gideon and his family members, the subsequent written communications involved the other opposing counsel in the medical malpractice case—Phillip North.

While Judge Brothers conducted the hearing on sanctions against Mr. Manookian for the first two written communications, Senior Judge Don R. Ash conducted the hearing on sanctions filed against Mr. Manookian for the subsequent communications.[6]

The following five (5) subsequent communications were sent by Mr. Manookian using his law firm email account, were addressed to Mr. North using his law firm email account, and referenced the medical malpractice case in the subject line.

### 3.  March 30, 2018: Email to Opposing Counsel Regarding a Judge's Opinion of Him

---

[6] On July 27, 2018, the Tennessee Supreme Court designated and assigned Senior Judge Don R. Ash to hear two pending motions to their conclusion including *Motion for Third Round of Sanctions Against Counsel for Plaintiff*.

Approximately six months after the order sanctioning Mr. Manookian for his conduct towards opposing counsel C.J. Gideon, Mr. Manookian delivered a series of five (5) disturbing communications directed towards the other opposing counsel in the medical malpractice case— Phillip North.

On March 30, 2018, Mr. Manookian sent an email to Mr. North regarding a discussion he, Mr. North, and the other lawyers in the medical malpractice case had at a case management conference with Special Master Marsh Nichols. The email stated in part:

> In addition, in response to Phillip North's specific inquiries regarding Judge Gayden, which Mr. North voiced at the most recent Case Management Conference in this matter; Plaintiff does not oppose:
>
> 1. Judge Gayden disclosing his actual experience, and resulting opinion, of Phillip North's reputation for truthfulness, honesty, and fidelity; and/or,
>
> 2. Judge Gayden disclosing his actual experience, and resulting opinion, on Phillip North's propensity for dishonesty, exaggeration and falsehood.

Mr. Manookian sent the March 30, 2018 email using his law firm email address directly to Mr. North through his law firm email address.

Mr. North testified that he was disturbed by the email, and the list of individuals who received the email. Mr. North stated that the email reflected Judge Gayden had personal knowledge of Mr. North's propensity for dishonesty, exaggeration, and falsehood, and would so testify.

Mr. Manookian testified at the disciplinary hearing that he had discussion with Judge Gayden about Mr. North, and that his opinions of him were not good. However, Judge Gayden testified at the disciplinary hearing and stated that Mr. North had a good reputation in the community for truthfulness and veracity, was a truthful person, and believed him to be an honest and straight-forward person.

Mr. North testified that he had spent 45 years establishing his reputation for honesty and integrity in Davidson County, and he found the email to be insulting, demeaning, embarrassing, and threatening, and that it was intended to distract him from preparing the medical malpractice case for trial.

### 4.   June 7, 2018: Email to Opposing Counsel Regarding a Motion

Mr. North testified that on June 7, 2018, Mr. Manookian—through his law firm email address—sent Mr. North another email via his law firm email address. Mr. Manookian copied numerous attorneys and their staff as well.

The June 7, 2018 email stated in part:

> I've had a chance to review your most recent non-substantive motion. I applaud you on finally filing something other than a "me-too, piggy-back" motion on Gideon Cooper's effort; if not your actual scholarship. Putting pen to paper is a great first step, Phillip! If you keep at it, you never know what you might achieve!

Mr. North testified that the June 7, 2018 email was another effort by Mr. Manookian to insult and embarrass Mr. North in front of colleagues and staff. He believed that Mr. Manookian sent it in an effort to distract Mr. North from preparing his case for trial.

In response to the March 30, 2018, and the June 7, 2018 emails, Mr. North filed the *Motion for Third Round of Sanctions Against Counsel for Plaintiff* on June 15, 2018, asserting that Mr. Manookian published emails containing language that insulted, disparaged, demeaned, and embarrassed Mr. North.

Prior to the hearing on Mr. North's motion for sanctions, Mr. Manookian sent Mr. North a third email.

### 5.   June 22, 2018: Email to Opposing Counsel Regarding a Certificate of Service

On June 22, 2018, Mr. Manookian wrote a third email to Mr. North and seven other

people. Mr. Manookian sent the email using his law firm email address to Mr. North through his

law firm email address.

The June 22, 2018 email stated in part:

Your tacky, dishonest tactics continue unabated in this case. I see you've stink [sic] to the "bogus certificate of service" and "hold the mail game." This is embarrassing, even for you and your firm. The irony of [sic] implicit in seeking sanctions against me (for simply agreeing to allow you to seek testimony about your own character at your own request) via a motion that you dishonestly certified is, no doubt, lost on you...

I am disappointed, but not surprised, by your attempt to serve this sanctionable piece of garbage less than one business day before a response would have been due.

During the disciplinary hearing, Mr. Manookian conceded that the email accused Mr.

North of committing fraud upon the court.

Mr. North testified that he believed there was no legitimate purpose for sending the June

22, 2018 email other than to insult, threaten, embarrass, and distract Mr. North from preparing

for trial in the pending medical malpractice case.

Mr. North also testified that he had not made any false certification as alleged by Mr.

Manookian.

After Mr. Manookian accused him of falsifying the Certificate of Service on his Motion

for Sanctions, Mr. North obtained the envelope from Mr. Manookian which the Motion for

Sanctions allegedly had arrived in, which showed a post-mark date of June 18, 2018, with the

correct amount of postage for it to arrive at its destination.

According to Mr. North's paralegal in an affidavit, she uses a different kind of address

label for Mr. North's pleadings than the one which was on the envelope provided by Mr.

Manookian. The paralegal explained that the label on the envelope submitted to the court by Mr.

Manookian is used by a different paralegal in the firm who does not work for Mr. North. That paralegal had mailed a pleading in a different case to Mr. Manookian on June 18, 2018, with the different envelope label than the type Mr. North uses, leading Mr. North to conclude that Mr. Manookian had allegedly switched envelopes in an effort to manufacture a basis for the accusation.

As a result, Mr. North filed for a Fourth Round of Sanctions against Mr. Manookian on July 20, 2018.

The Tennessee Supreme Court subsequently designated Senior Judge Ash to hear these sanctions on July 27, 2018.

As such, on September 19, 2018, Senior Judge Ash conducted a hearing on the Motions for Third and Fourth Round of Sanctions. The Order of September 28, 2018, addressed the emails sent by Mr. Manookian on March 30, 2018, June 7, 2018, and June 22, 2018.

Specifically, Judge Ash found that Mr. Manookian (1) continued to verbally attack opposing counsel despite instructions to stop such unprofessional conduct; (2) sent communication to Mr. North which threatened, insulted, disparaged, and embarrassed Mr. North, and (3) conducted himself in a reckless manner.

Judge Ash suspended Mr. Manookian from the practice of law in Davidson County and required Mr. Manookian to pay Mr. North a total of $37,164.00. He also awarded Mr. Gideon fees and expenses of $5,880.00 after he submitted his affidavit.

### 6.   August 3, 2018: Letter to Opposing Counsel Regarding His Brother and a Judge's Reputation

Approximately six weeks after the June 22, 2018 email, Mr. Manookian sent Mr. North and Mr. Gideon an email on August 3, 2018, at 7:41 p.m. Mr. Manookian attached a letter

addressed to counsel in the medical malpractice case stating that he was disclosing certain information in response to the recent filings by Mr. North.

Twenty-two minutes later, at 8:03 p.m., Mr. Manookian sent another email to Mr. North, Mr. Gideon, and 18 other individuals with an attached letter. The attached letter referenced a voicemail Mr. Manookian allegedly received from Judge Steve North ("Judge North"), Mr. Phillip North's brother, and an alleged subsequent conversation between Mr. Manookian and Judge North.

Mr. Manookian invited Mr. North to listen to the voicemail and verify that it was indeed his brother's voice. However, Mr. North did not reply to the email because he believed it was an attempt to create friction between himself and his brother.

In Footnote 1 of the August 3, 2018 letter, Mr. Manookian accused Judge Brothers of being a corrupt judge, and that he based his statement in Footnote 1 from his conservation with Judge North. Mr. Manookian wrote the following in Footnote 1:

> Preliminary to lengthier phone call conducted at the gratuitous request of Retired Davidson County Circuit Court Judge Steve North, wherein Ret. Judge North states and opines upon personal knowledge, having served on the bench with Judge Tom Brothers and being the brother of Phillip North, that: Judge Tom Brothers is "corrupt" and has been for some time, that Judge Tom Brothers' "corruption" arises out of his financial needs; that Judge Tom Brothers' "corruption" has long resulted, and continues to result, in preferable, "corrupt" treatment for certain Nashville—based companies, which benefit from consistent, "corrupt" favorable rulings in Judge Brothers' courtroom, to the exclusion of justice; that such "corruption" has, and continues to, materially benefit, among others, C.J. Gideon and his firm, in his representation of certain "corrupt" clients; as well as lengthy disclosure and dissertation on Phillip North, all of which is material to the supposed grievances in Phillip North's "Motion for Third Round of Sanctions."

During the disciplinary hearing, Judge Brothers testified that the assertions in Footnote 1 were false, incredibly offensive, defamatory, and unfounded.

Mr. North viewed the allegation in Footnote 1 as excoriating Judge Brothers. He believed

the August 3, 2018 emails, as well as Footnote 1, were intended to drive a wedge and cause

friction between him and his brother by suggesting that his brother had provided derogatory

information.

### 7. August 4, 2018: Email to Opposing Counsel Regarding Him and His Family

Finally, on August 4, 2018, at 12:41 p.m., Mr. Manookian emailed Mr. North, Mr.

Gideon, and 17 other individuals. The email stated:

> I see that my email and attachments are being repeatedly opened at the IP address
> associated with the consumer Comcast cable account for 109 Meness Lane,
> Madison, Tennessee. That address is the residential property where you have
> consistently lived with your parents (other than for a brief period of time from 1984-
> 1986 where you rented unit 602 at the Capitol Towers on Gay Street) until the North
> Family Trust essentially gifted you the property for $10.00. Upon investigation,
> this gifted piece of property in North Nashville, given to you for $10 by your
> parents, represents the sole piece of real property you own at 68 years of age.
> Further confirming that you have read my email, records additionally reflect that
> Mona Dale Cornwell North—the woman for whom you left your wife and two
> minor daughters (Nicki and Neely)—has registered a Jeep Grand Cherokee (VIN:
> 1 C4RJFLG4JC274818, TN License Plate E66307) at the same address your
> parents gave you and where my email is being viewed. Please simply reply and
> confirm your brother Steve North's voice.

Mr. North testified that the August 4, 2018 email was threatening and offensive, and an

attempt to embarrass him, his wife, and his family. As he read the email, Mr. North stated that he

felt that the email was a gangster-like message from Mr. Manookian—akin to something you

would see in the movie The Godfather.

Mr. North further testified that the August 4, 2018 cause an enormous disruption to his

life and his practice. He was forced to update his security system, provide pictures of Mr.

Manookian to the security guards at his office, and he was always looking over his shoulder.

In response to the August 3, 2018 and August 4, 2018 emails, Mr. North filed a Motion

for Fifth Round of Sanctions Against Plaintiff's Counsel on August 15, 2018, asserting that Mr.

Manookian published emails containing language that threatened, insulted, disparaged, demeaned, and embarrassed Mr. North and his family, and was a blatant act of intimidation.

On October 15, 2018, the Tennessee Supreme Court designated Judge Ash again to hear these motions for sanctions, conducting a hearing at which Mr. Manookian failed to appear.

On October 22, 2018, Judge Ash entered an order finding that Mr. Manookian "continues to conduct himself in a reckless manner in utter disregard of the Court's directives," and suspended Mr. Manookian from the practice of law in Davidson County. Judge Ash also required Mr. Manookian to pay $11,874.00 to Mr. North and $1,175.00 to Mr. Gideon.

Mr. Manookian appealed the three (3) orders imposing sanctions against him. In particular, he challenged Judge Brothers' September 28, 2017 order, and Judge Ash's September 20, 2018, and October 22, 2018 orders.

Mr. Manookian challenged Judge Brother's order as being unconstitutionally vague and ambiguous, and a prior restraint upon his First Amendment right to free speech.

Mr. Manookian challenged Judge Ash's orders as unconstitutionally exceeding his authority, and the appropriateness of the award of fees to opposing counsel.

In an opinion entered on September 16, 2019, the Court of Appeals affirmed the sanctions, and rejected Mr. Manookian's argument that the order was an unconstitutional prior restraint on his free speech.

Mr. Manookian did not seek review of the decision of the Court of Appeals, and the case is now final.

## II. STANDARD OF REVIEW

The standard of review in a lawyer-disciplinary appeal is set out in Tennessee Supreme Court Rule 9, § 33.1(b), which provides:

The review shall be on the transcript of the evidence before the hearing panel and its findings and judgment. If allegations of irregularities in the procedure before the hearing panel are made, the trial court is authorized to take such additional proof as may be necessary to resolve such allegations. The trial court may, in its discretion, permit discovery on appeals limited only to allegations of irregularities in the proceeding. The court may affirm the decision of the hearing panel or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the party filing the Petition for Review have been prejudiced because the hearing panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the hearing panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record. In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the hearing panel as to the weight of the evidence on questions of fact.

Furthermore, "[a]lthough the trial court may affirm, remand, reverse, or modify a Hearing Panel decision, the trial court may not substitute its judgment for that of the panel as to the weight of the evidence on questions of fact." *Board of Professional Responsibility v. Allison*, 284 S.W.3d 316, 322 (Tenn. 2009). This Court will not reverse the decision of the Hearing Panel so long as the evidence "furnishes a reasonably sound factual basis for the decision being reviewed." *Hughes v. Board of Professional Responsibility*, 259 S.W.3d 631, 641 (Tenn. 2008) (quoting *Jackson Mobilphone Co. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993)).

Finally, the Tennessee Supreme Court has articulated that "[w]hen none of the first three grounds for reversal are present . . . the hearing panel should be upheld unless the decision was either arbitrary or capricious, 'characterized by an abuse, or clearly unwarranted exercise, of discretion' or lacking in support by substantial and material evidence." *Hughes* at 641 (quoting *CF Indus. v. Tenn. Pub. Serv. Comm'n.*, 599 S.W.2d 536, 540 (Tenn. 1980)). "An arbitrary [or capricious] decision is one that is not based on any course of reasoning or exercise of judgment,

or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* at 641.

With regards to determining whether there is substantial and material evidence to uphold a decision, the Tennessee Supreme Court has stated that "the court should review the record carefully to determine whether the administrative agency's decision is supported by 'such relevant evidence as a rational mind might accept to support a rational conclusion.'" *Id.* (citing *Jackson Mobilphone Co. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993).

### III. ANALYSIS

Mr. Manookian's trial brief and reply brief collectively are in excess of 100 pages, but the arguments asserted therein can be summarized as follows:

(1) the statements for which he was sanctioned were constitutionally protected;
(2) there were procedural errors; and
(3) the sanctions were improper.

The Hearing Panel succinctly expressed the basis for its report and recommendation in the first three paragraphs:

> Lawyers make mistakes. Some lawyers make numerous mistakes.
>
> This matter is not about a lawyer making mistakes. Instead, it is about a lawyer who recklessly accused a judge of being corrupt, repeatedly belittled and degraded opposing counsel, and made a threat against a lawyer's family.
>
> Prior to appearing before this panel, Brian Manookian had a history of failing to adhere to the Rules of Professional Conduct and ignoring warnings from members of the judiciary. He has already been sanctioned and suspended from the practice of law on multiple occasions, yet his unethical conduct continued.

*Hearing Panel Report and Recommendation*, May 20, 2020 (p. 1983).

Despite some argument to the contrary, which the Court finds to be unfounded, the

*Findings of Fact* of the Hearing Panel are undisputed. This Court has expressly approved those

findings and has incorporated those findings into this judgment by reference.

## A. FIRST AMENDMENT CHALLENGES

The primary argument made by Mr. Manookian is that he was entitled to make these

statements—however distasteful, repugnant, disrespectful, or threatening they may have been—

because he is constitutionally entitled to do so.

Each of the seven written communications, which were the basis of the Board's

complaints, involved a lawsuit in which Mr. Manookian represented the plaintiff. The people to

whom the communications were directed and who were the targets of Mr. Manookian's fury and

scorn were the opposing counsel and the trial judge.

At the outset, the Court notes that the Court of Appeals rejected Mr. Manookian's

argument that the trial court erred by restraining his free speech when it sanctioned him. *Shao ex*

*rel. Shao v. HCA Health Servs. of Tennessee, Inc.*, No. M201802040COAR3CV, 2019 WL

4418363, at *6 (Tenn. Ct. App. Sept. 16, 2019).

Additionally, the Tennessee Supreme Court necessarily rejected this argument when it

suspended Mr. Manookian from the practice of law for making such statements.

In *Bd. of Pro. Resp. v. Parrish*, 556 S.W.3d 153 (Tenn. 2018), the Tennessee Supreme

Court considered the issue of whether pejorative statements about judges in recusal motions filed

in state court were protected by the First Amendment of the United States Constitution and

Article 1, § 19 of the Tennessee Constitution.

It stated:

> In cases analyzed in terms of the First Amendment, courts in numerous other
> jurisdictions, as well as the United States Supreme Court, have rejected the

proposition that the First Amendment provides absolute protection to attorney speech.

A majority of courts that have dealt with attorney speech in disciplinary proceedings have not drawn a distinction between in-court and out-of-court statements in considering the issue and have adopted an objective standard in determining whether attorney speech is entitled to First Amendment protection.

Under the objective standard, the court assesses the statements in terms of "what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances ... [and] focus[ing] on whether the attorney had a reasonable factual basis for making the statements, considering their nature and the context in which they were made." Gardner, 793 N.E.2d at 431 (citations omitted). "It is the reasonableness of the belief, not the state of mind of the attorney, that is determinative." Holtzman, 573 N.Y.S.2d 39, 577 N.E.2d at 34.

*Id.* 165-66.

The Tennessee Supreme Court ultimately held that the objective "reasonable attorney"

standard is the appropriate standard to apply in a disciplinary proceeding involving an attorney's

in-court speech. *Id.* 166. It concluded by stating:

Utilizing this objective standard, the hearing panel found that [the attorney] had made statements in the motions to recuse about the integrity of the judges on the Court of Appeals that a reasonable attorney would believe to be false, and that [the attorney] had made those statements with reckless disregard as to their truth or falsity.

In sum, he in-court statements that [the attorney] made in the recusal motions were not protected by the First Amendment.

*Id.* 166-67.

The Parrish Court's holding was based upon statements made by an attorney—Mr.

Parrish—in a motion and were clearly in-court statements.

Here, Mr. Manookian's statements were not made in court filings, but primarily via email

communications, which were connected to or arose out of a judicial proceeding, and involved

people in that very same judicial proceeding.

The logic in *Parrish* clearly applies here. The statements made by Mr. Manookian, when analyzed under the objective standard, were not entitled to First Amendment Protection.

Mr. Manookian's numerous statements were made in the course of a judicial proceeding but had no relevance to that proceeding. There was no purpose to the statements other than to intimidate or offend the opposing counsel or the trial court. Furthermore, no reasonable attorney would have acted as Mr. Manookian. Even though the trial court sanctioned Mr. Manookian on three occasions, he remained undeterred.

Offensive statements in court-related communications and in statements made in pleadings filed with the court is a difference without distinction.

This Court finds that under the Parrish Court's reasoning, the statements made by Mr. Manookian are not constitutionally protected. This result is supported by the decision of the Court of Appeals in affirming sanctions imposed upon Mr. Manookian under the communications at issue here. It is also supported by the suspension of Mr. Manookian by the Tennessee Supreme Court upon commensurate statements also at issue in this appeal.

## B. PROCEDURAL CHALLENGES

Mr. Manookian alleges procedural errors:

The fact that a Hearing Panel Member who participated in this action desired to be employed by the Board, (2) a replacement Hearing Panel Member indisputably failing to review the complete proceedings in this matter, (3) ex-Disciplinary Counsel's extreme and demonstrable bigotry and other animus, (4) the Board's intentional spoliation of evidence demonstrating the Board's unlawful viewpoint discrimination—have also infected this proceeding from its inception and during this appeal.

Tr. Br. 4-5.

As conceded by Mr. Manookian later in his brief, the Court has previously ruled on these issues, which were raised by motion.

A hearing panel member—after participating in the proceeding but before a decision was made—withdrew from the panel to apply for a position with the Board of Professional Responsibility. A replacement member was then designated, and the replacement member participated in the unanimous decision. The replacement member read the evidence but did not read the opening and closing statements of counsel.

This Court found that (1) it was only necessary for the Hearing Panel member to review the evidence and not the opening & closing statements; (2) the withdrawal of the hearing panel member did not affect the process; and (3) in any event, a majority who were present during the hearing found in favor of the Board and against Mr. Manookian.

Mr. Manookian also raised by motion issues concerning alleged bigotry of an ex-disciplinary counsel, and spoiliation of evidence of that bigotry. The Court denied those motions because such activity was not relevant to the complaints against Mr. Manookian. This appeal is limited to the evidence presented to the Hearing Panel.

## C. VIOLATIONS OF THE RULES OF PROFESSIONAL CONDUCT AND SANCTIONS

In Tennessee, attorneys charged with disciplinary violations have a right to an evidentiary hearing before a hearing panel, which determines whether a violation has occurred and, if so, the appropriate sanction for the violation. *Bd. of Prof'l Responsibility v. Daniel*, 549 S.W.3d 90, 99 (Tenn. 2018) (citing *Maddux v. Bd. of Prof'l Responsibility*, 409 S.W.3d 613, 621 (Tenn. 2013)).

A hearing panel must consider the applicable ABA Standards when determining the proper discipline for attorney misconduct. *Walwyn v. Bd. of Prof'l Responsibility*, 481 S.W.3d 151, 166 (Tenn. 2015) (citing Tenn. Sup. Ct. R. 9, § 8.4). The ABA Standards provide "'guideposts' for attorney discipline but are not considered 'rigid rules that dictate a particular outcome.'" *Bd. of Prof'l Responsibility v. Barry*, 545 S.W.3d 408, 421 (Tenn. 2018) (quoting

*Hyman*, 437 S.W.3d at 447). "[A]nalysis of the proper discipline involves two steps: first, identify the presumptively appropriate sanction applicable to the established misconduct, and then consider whether that sanction should be increased or decreased due to aggravating and mitigating circumstances, if any." *Bd. of Prof'l Responsibility v. Cowan*, 388 S.W.3d 264, 268 (Tenn. 2012); see also ABA Standard 9.1. Absent mitigating or aggravating factors, the presumptive sanctions apply. *Talley v. Bd. of Prof'l Responsibility*, 358 S.W.3d 185, 194 (Tenn. 2011).

Tribunals should also consider the duty violated by the lawyer, the lawyer's mental state, and actual or potential injury caused by the lawyer's misconduct. ABA Standard 3.0; see also *Cowan*, 388 S.W.3d at 268. "[T]he severity of the presumptive sanction varies depending upon the lawyer's mental state—whether the lawyer acted intentionally, knowingly, or negligently—and the seriousness of the actual or potential injury caused by the lawyer's misconduct." *Maddux v. Bd. of Prof'l Responsibility*, 409 S.W.3d 613, 624 (Tenn. 2013).

Here, the Hearing Panel found that Mr. Manookian violated four (4) Tennessee Rules of Professional Conduct: Rule 8.2(a)(1), Rule 4.4(a)(1), Rule 9.1(c), and Rule 8.4(a) & (d). The corresponding presumptive sanctions, as recommended by the American Bar Association, are listed below.

### 1.  Rule 8.2(a)(1) (Judicial and Legal Officials)

The Hearing Panel found that Mr. Manookian violated Rule 8.2(a)(1), and that the presumptive sanction was ABA Standard 6.21 (Disbarment).

**Rule 8.2(a)(1)**
**(a) A lawyer shall not make a statement that the lawyer knows to be false or that is made with reckless disregard as to its truth or falsity concerning the qualifications or integrity of the following persons:**
     **1. a judge.**

Specifically, the Hearing Panel found that Mr. Manookian violated Rule 8.2(a)(1) when he sent the August 3, 2018 letter to Mr. North that accused Judge Brothers of being corrupt.

Under the ABA Standards, Standard 6.2 (Abuse of the Legal Process) applies.

The sanctions for an attorney's abuse of the legal process under **ABA Standard 6.2** are as follows:

- **6.21 Disbarment**: Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.

- **6.22 Suspension**: Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

- **6.23 Reprimand**: Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

- **6.24 Admonition**: Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding.

### 2.  Rule 4.4(a)(1) (Respect for the Rights of Third Persons)

The Hearing Panel found that Mr. Manookian violated Rule 4.4(a)(1), and that the presumptive sanction was ABA Standard 6.21 (Disbarment).

**Rule 4.4(a)(1)**
**(a) In representing a client, a lawyer shall not:**

> **(1) use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person.**

Specifically, Mr. Manookian violated Rule 4.4(a)(1) numerous times throughout the

medical malpractice case, undeterred by trial court admonitions and sanctions. Those instances

include when he sent:

> (1) the August 19, 2017 email to opposing counsel regarding the opposing counsel's daughter;
>
> (2) the March 30, 2018 email to Mr. North and others, regarding a judge's opinion of Mr. North; (3) the August 3, 2018 email and attached letter sent to Mr. North and others accusing Judge Brothers of being corrupt; and
>
> (3) the August 4, 2018 email sent to Mr. North and others regarding Mr. North and his family.

The sanctions for an attorney's abuse of the legal process under **ABA Standard 6.2** are

as follows: 6.21 (Disbarment); 6.22 (Suspension); 6.23 (Reprimand); and 6.24 (Admonition).

### 3. Rule 1.9(c) (Duties to Former Clients)

The Hearing Panel found that Mr. Manookian violated Rule 1.9 (c), and that the

presumptive sanction was ABA Standard 4.21 (Disbarment).[7]

### Rule 1.9(c)

> **(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter reveal information relating to the representation or use such information to the disadvantage of the former client unless (1) the former client gives informed consent, confirmed in writing, or (2) these Rules would permit or require the lawyer to do so with respect to a client, or (3) the information has become generally known.**

Specifically, Mr. Manookian violated Rule 1.9(c) by revealing information relating to his

prior representation of a client when he submitted the September 5, 2017 court document that

---

[7] In the Hearing Panel's Order, the Hearing Panel incorrectly referred to ABA Standard 4.31 rather than ABA Standard 4.21. The reference was an obvious inadvertence.

maliciously referenced an opposing counsel's son. The Hearing Panel found that through that

court document, Mr. Manookian disclosed client confidences from a case that had concluded

nearly a decade ago without obtaining the former client's consent (who also happened to be the

opposing counsel's son).

The Hearing Panel also relied upon ABA Formal Opinion 479, which states as follows:

> Unless information has become widely recognized by the public (for example by
> having achieved public notoriety), or within the former client's industry,
> profession, or trade, the fact that the information may have been discussed in open
> court, or may be available in court records, in public libraries, or in other public
> repositories does not, standing alone, mean that the information is generally known
> for Model Rule 1.9(c)(1) purposes. Information that is publicly available is not
> necessarily generally known. Certainly, if information is publicly available but
> requires specialized knowledge or expertise to locate, it is not generally known
> within the meaning of Model Rule 1.9(c)(1).

Under the ABA Standards, Standard 4.2 (Failure to Preserve the Client's Confidences)

applies.

The sanctions for an attorney's failure to preserve client's confidences under **ABA**

**Standard 4.2** are as follows:

- **4.21 Disbarment**: Disbarment is generally appropriate when a lawyer, with the intent to

  benefit the lawyer or another, knowingly reveals information relating to representation of

  a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury

  or potential injury to a client.

- **4.22 Suspension**: Suspension is generally appropriate when a lawyer knowingly reveals

  information relating to the representation of a client not otherwise lawfully permitted to

  be disclosed, and this disclosure causes injury or potential injury to a client.

- **4.23 Reprimand**: Reprimand is generally appropriate when a lawyer negligently reveals information relating to representation of a client not otherwise lawfully permitted to be disclosed and this disclosure causes injury or potential injury to a client.

- **4.24 Admonition**: Admonition is generally appropriate when a lawyer negligently reveals information relating to representation of a client not otherwise lawfully permitted to be disclosed and this disclosure causes little or no actual or potential injury to a client.

### 4. Rule 8.4(a) & (d) (Misconduct)

The Hearing Panel found that Mr. Manookian violated Rule 8.4(a) & (d), and that the presumptive sanction was ABA Standard 6.21 (Disbarment).

**Rule 8.4(a) & (d)**
**It is professional misconduct for a lawyer to:**

**(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; and**

**(d) engage in conduct that is prejudicial to the administration of justice.**

Specifically, Mr. Manookian violated Rule 8.4(a)&(d) numerous times throughout the medical malpractice case. Those specific instances include all seven communications that are at issue in this appeal.

The sanctions for an attorney's abuse of the legal process under **ABA Standard 6.2** are as follows: 6.21 (Disbarment); 6.22 (Suspension); 6.23 (Reprimand); and 6.24 (Admonition).

In sum, for each of the violations described above, the Hearing Panel found the presumptive sanction was disbarment.

The Hearing Panel found four (4) aggravating factors, and no mitigating factors.[8] The aggravating factors were: (1) prior disciplinary history; (2) multiple offenses; (3) refusal to acknowledge wrongful nature of his conduct; and (4) substantial experience in the practice of law.

The Board—in its brief—argued that the order suspending Mr. Manookian rather than disbarring him was arbitrary and capricious because of its downward deviation from the presumptive sentence.

However, this Court, in an earlier order, struck the Board's assertions because it did not properly and timely appeal this issue.

### D. The Court's Assessment of the Hearing Panel's Findings of Violations

As previously stated, the Court finds that the Findings of Fact of the Hearing Panel are supported by the evidence, which is both substantial and material in light of the entire record, and it incorporates those findings by reference.

The Court further finds that the violations of the Rules of Professional Conduct as found by the Hearing Panel are supported by evidence, which is both substantial and material in light of the entire record.

With respect to those communications, the Court finds as follows.

The document concerning opposing counsel's son was nothing more than an attempt to intimidate opposing counsel by using disparaging language about the son – whom Mr. Manookian previously represented. Such was a violation of Rule 1.9(c).

---

[8] The ABA Standards provide guidance an "illustrative rather than exclusive" list of various aggravating and mitigating factors in sections 9.1, 9.2, and 9.3. *Bd. of Pro. Resp. of Supreme Ct. of Tennessee v. Daniel*, 549 S.W.3d 90, 100 (Tenn. 2018); ABA Standard 9.0.

The emails of (1) August 19, 2017, regarding opposing counsel's daughter; (2) March 20, 2018, to Mr. North and others regarding a judge's opinion of Mr. North; (3) August 3, 2018, and the attached letter sent to Mr. North and others accusing Judge Brothers of being corrupt; and (4) August 4, 2018, sent to Mr. North and others regarding Mr. North and his family, are clearly violations of Rule 4.4(a)(1).

There was absolutely no purpose for the abusive language included therein, which was in any way connected to the legal proceeding. The language was abusive, intimidating, threatening, and untrue.

The August 3, 2018 letter to opposing counsel regarding his brother and a judge's reputation was in violation of Rule 8.2(a)(1). Mr. Manookian made statements about a judge's integrity, which he knew or should have known was false. The statements accused the judge of dishonesty and impliedly asserted he had committed criminal acts. There was no purpose related to the litigation in sending the letter.

All seven of the communications were in violation of Rule 8.4(a) and (d). As previously stated, such were unrelated and irrelevant to the litigation and made with a sinister motive.

In summary, the Court finds the findings of the Hearing Panel with respect to the violations of the Rules of Professional Conduct were not arbitrary or capricious, and were supported by evidence, which is both substantial and material in light of the entire record.

The Hearing Panel found that the presumptive sanctions for each violation was disbarment under 4.21 and 6.21. Both standards require the offending attorney to act knowingly and with the intent to cause a consequence.

The repeated violations by Mr. Manookian, after having been admonished and sanctioned, clearly establish that he acted knowingly with an intended result.

The decision of the Hearing Panel in finding the presumptive sanction of disbarment was not arbitrary or capricious, and was supported by evidence, which is both substantial and material in light of the entire record.

The Hearing Panel found four (4) enhancing factors and no mitigating factors. This Court finds that the Hearing Panel's finding of the enhancing factors and lack of mitigating factors was supported by evidence, which is both substantial and material in light of the entire record.

Mr. Manookian's disciplinary history consists of a private informal admonition, a private reprimand, and numerous sanctions imposed upon him in the *Shao* case. He has committed multiple offenses on a repetitive basis. He has yet to acknowledge the wrongful nature of his conduct. Mr. Manookian has practiced law since 2007. In sum, the enhancing factors are clearly supported by substantial and material evidence.

Mr. Manookian argues that the Hearing Panel should have found that the mitigating factor of "imposition of other penalties or sanctions" was applicable.

Two judges imposed monetary sanctions upon Mr. Manookian on three separate occasions in the *Shao* case. However, Mr. Manookian has paid none of those sanctions. The Tennessee Supreme Court temporarily suspended Mr. Manookian's license, then lifted the suspension, and finally reinstated the suspension because of a violation of the suspension. To borrow an old adage, Mr. Manookian is the author of his own misfortune, and is not entitled to credit because of the prior sanctions imposed upon him.

Mr. Manookian also argues that the punishment was vastly more punitive than punishments received by others. The punishments imposed in other cases or the lack thereof, and the circumstances which caused such punishments in those cases, is not in the record. The Court is not required to impose a punishment similar to those rendered in other cases.

The sanction ordered by the Hearing Panel was a two-year suspension rather than the presumptive sanction of disbarment. The Board argues that the Hearing Panel's decision in reducing the sanction from disbarment to a two-year suspension without an explanation or finding to support the downward deviation was arbitrary and capricious.

The Board is correct in this assertion and had it timely and correctly appealed this issue, the Court would have imposed a sanction of disbarment. However, the Board did not properly raise this issue. Thus, while Mr. Manookian may believe the sanction is unduly harsh, it is significantly less than what it should have been.

The suspension, which Mr. Manookian is currently under, was ordered by the Tennessee Supreme Court in proceedings separate from this appeal. Neither the Hearing Panel nor the Court has the authority over the suspension ordered by the Tennessee Supreme Court or to run the suspension ordered herein concurrently with the Supreme Court's suspension.

Herein, Mr. Manookian's violative conduct was repetitive and contrary to the demeanor and conduct expected of a member of the Tennessee Bar Association. The suspension was supported by substantial and material evidence in light of the entire record.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that (1) the communications made by Mr. Manookian were not constitutionally protected; (2) there were no procedural errors in the record; and (3) the findings and conclusions of the Hearing Panel and the sanctions of Mr. Manookian were not arbitrary or capricious, and were supported by substantial and material evidence in light of the entire record.

It is so **ORDERED** this the 1st day of October, 2021.

**HONORABLE WILLIAM B. ACKEE**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been delivered to the following at their respective addresses, this _____ day of _____, 2021:

| *– Attorney for Petitioner* | *– Attorneys for Respondent* |
|---|---|
| **Daniel A. Horwitz** | **A. Russell Willis** |
| 4016 Westlawn Dr. | **James W. Milam** |
| Nashville, TN 37209 | BOARD OF PROFESSIONAL RESPONSIBILITY |
| Tel: (615) 739-2888 | 10 Cadillac Drive, Suite 220 |
| *daniel.a.horwitz@gmail.com* | Brentwood, TN 37207 |
| | Tel: (615) 361-7500 |
| | Fax: (615) 367-2480 |
| | *rwillis@tbpr.org* |
| | *jmilam@tbpr.org* |

_____
CLERK

### RULE 58 CERTIFICATION
A Copy of this order has been served by U. S. Mail
upon all parties or their counsel named above.

_____  10/4/21
Deputy Clerk and Master   Date
Chancery Court

# Exhibit M

# BOARD OF PROFESSIONAL RESPONSIBILITY
### OF THE
## SUPREME COURT OF TENNESSEE

**10 CADILLAC DRIVE, SUITE 220**
**BRENTWOOD, TENNESSEE 37027**
**TELEPHONE: (615) 361-7500**
**(800) 486-5714**
**FAX: (615) 367-2480**
**E-MAIL: ethics@tbpr.org**
**Website: www.tbpr.org**

### RELEASE OF INFORMATION
### RE: BRIAN PHILLIP MANOOKIAN, BPR #026455
### CONTACT: RUSSELL WILLIS
### BOARD OF PROFESSIONAL RESPONSIBILITY
### 615-361-7500

October 11, 2019

### DAVIDSON COUNTY LAWYER TEMPORARILY SUSPENDED

On October 11, 2019, the Supreme Court of Tennessee reinstated the temporary suspension of Brian Phillip Manookian from the practice of law upon finding that Mr. Manookian poses a threat of substantial harm to the public. Section 12.3 of Supreme Court Rule 9 provides for the immediate summary suspension of an attorney's license to practice law if an attorney poses a threat of substantial harm to the public.

Mr. Manookian is immediately precluded from accepting any new cases, and he must cease representing existing clients by November 10, 2019. After November 10, 2019, Mr. Manookian shall not use any indicia of lawyer, legal assistant, or law clerk nor maintain a presence where the practice of law is conducted.

Mr. Manookian must notify all clients being represented in pending matters, as well as co-counsel and opposing counsel of the Supreme Court's Order suspending his law license. Mr. Manookian is required to deliver to all clients any papers or property to which they are entitled.

This suspension remains in effect until dissolution or modification by the Supreme Court. Mr. Manookian may for good cause request dissolution or modification of the suspension by petition to the Supreme Court.

Manookian 2914-5 rel5.doc

## IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

FILED
10/11/2019
Clerk of the
Appellate Courts

**IN RE: BRIAN PHILLIP MANOOKIAN, BPR #026455**
An Attorney Licensed to Practice Law in Tennessee
(Davidson County)

**No. M2019-00630-SC-BAR-BP**
BOPR No. 2018-2914-5-WM-12.3

### ORDER REINSTATING TEMPORARY SUSPENSION

This matter is before the Court on a Petition of the Board of Professional Responsibility of the Supreme Court of Tennessee, by and through Disciplinary Counsel, for reinstatement of the temporary suspension of Brian Phillip Manookian from the practice of law, pursuant to Tenn. Sup. Ct. R. 9, § 12.3. The Petition was authorized by the Chair of the Board of Professional Responsibility and is supported by the affidavit of attorney Thomas Wiseman.

On September 21, 2018, Mr. Manookian was temporarily suspended from the practice of law by this Court, pursuant to Tenn. Sup. Ct. R. 9, § 12.3, based on a finding that he posed a threat of substantial harm to the public. Mr. Manookian sought dissolution of the temporary suspension by filing a Verified Petition for Dissolution or Amendment of Order of Temporary Suspension; on November 21, 2018, this Court entered an Order denying Mr. Manookian's petition. Mr. Manookian filed a second request for the same relief by filing a Petition for Dissolution of Order of Temporary Suspension; on February 27, 2019, this Court entered an Order denying this petition as well.

On April 9, 2019, Mr. Manookian filed a Petition for Dissolution of Order of Temporary Suspension. On May 17, 2019, this Court entered an Order granting Mr. Manookian's petition, dissolving the temporary suspension of Mr. Manookian's law license. The May 17, 2019 order dissolved the temporary suspension subject to Mr. Manookian's ongoing compliance with conditions set forth in the panel's Report and Recommendations on Third Petition for Dissolution of Order of Temporary Suspension.

On June 24, 2019, the Board filed the instant petition for reinstatement of the temporary suspension of Mr. Manookian's law license. On July 19, 2019, this Court referred the matter to a panel for a formal hearing on whether the Court should reinstate Mr. Manookian's temporary suspension. The matter was specifically referred to the Panel that had heard Mr. Manookian's second and third petitions for dissolution on January 30, 2019, and April 26, 2019, respectively. The Court also ordered the Board to submit to

this Court by August 18, 2019, the Panel's report and recommendation as to whether the temporary suspension should be reinstated.

On August 6, 2019, the Board filed a supplemental petition to reinstate the temporary suspension of Mr. Manookian's law license, along with an accompanying exhibit. By order entered by this Court on August 15, 2019, this supplemental petition was referred to the same Panel for review and formal hearing. Also on August 15, 2019, this Court granted the Panel's request for an extension of time until August 30, 2019, for filing its report and recommendation, because the hearing could not be set until August 23, 2019. On August 23, 2019, this Court granted the Panel's second request for extension for filing its report and recommendation until September 20, 2019, due to a medical emergency of one of the Panel members. On September 18, 2019, this Court granted the Panel's third request for extension for filing its report and recommendation until October 15, 2019, because Mr. Manookian claimed he had suffered a medical emergency.

The Panel conducted its hearing on reinstatement of the temporary suspension on September 26, 2019. The Panel filed its report and recommendation on October 7, 2019.[1]

On October 4, 2019, Mr. Manookian filed a "Motion to Dismiss Supplemental Petition to Reinstate Temporary Suspension and Objection to Report and Recommendation." Mr. Manookian argues that the petition and report and recommendation fail to provide a sufficient factual basis to reinstate a temporary suspension pursuant to Rule 9, section 12.3. He also argues that two members of the Panel should have recused themselves because they are defendants in a federal lawsuit that Mr. Manookian has filed against them.

On October 9, 2019, Mr. Manookian filed a supplement to his motion to dismiss in which he reiterates his argument of bias of the Panel members. Additionally, he argues that Rule 9, section 12.3, is unconstitutional on its face and as applied to Mr. Manookian as depriving him of his due process rights under the 14th Amendment. Upon review of Mr. Manookian's motion and attached exhibits, as well as the supplement to his motion, the Court respectfully DENIES the motion.

On October 4, 2019, Mr. Manookian also filed a motion to place under seal the Panel's report and recommendation. The motion states that the Panel does not oppose the motion. Mr. Manookian filed a supplemental motion as well, asking the Court to also place under seal page 19 of his October 4, 2019 "Motion to Dismiss..." and the last page of Exhibit A to that motion.

---

[1] Although the report and recommendation was filed with this Court on October 7, 2019, the report states that it was signed and submitted on October 3, 2019. It appears that Mr. Manookian received the report and recommendation shortly thereafter, based on the three responsive motions he filed on October 4, 2019.

2

Upon review, the Court GRANTS Mr. Manookian's request to place under seal page 19 of his October 4, 2019 "Motion to Dismiss..." and the final page of Exhibit A to that motion. The Court DENIES without prejudice Mr. Manookian's motion to place the Panel's report and recommendation under seal, based on the lack of specificity in the motion. Mr. Manookian has ten days from the filing of this Order in which to file a motion seeking redaction of the Panel's report and recommendation, specifying exactly what parts he contends should be redacted, along with the ground and legal basis for each redaction sought.

In its Report and Recommendation, the Panel outlined testimony at the hearing, including testimony by Mr. Manookian, regarding two incidents. In the first incident, the Panel found that Mr. Manookian improperly communicated directly with the client of opposing counsel by sending the client an email designed to intimidate the client and undermine the client's relationship with the client's attorney. In the second incident, the Panel found that Mr. Manookian intentionally sent another opposing counsel an email that contained a photograph of the opposing counsel's wife, personal information regarding his wife, and a photograph of opposing counsel's home, causing opposing counsel to be fearful for the safety of his family. The Panel rejected Mr. Manookian's explanations for these incidents and noted that Mr. Manookian has previously been disciplined for sending threatening and coercive emails regarding the families of opposing counsel. The Panel concluded that Mr. Manookian had violated a condition of the Order granting his Petition for Dissolution of Order of Temporary Suspension.

Based upon the Court's review of the Board's petition to reinstate temporary suspension, the Board's supplemental petition to reinstate temporary suspension, and the supporting affidavit and exhibits for both petitions, as well as the Panel's report and recommendation, the Court adopts the Panel's finding that Brian Phillip Manookian, Respondent, has violated a condition of the Order Granting Petition for Dissolution of Order of Temporary Suspension.

The Court finds as well that Mr. Manookian poses a threat of substantial harm to the public.

For these reasons, the Court determines that it should reinstate the temporary suspension of Mr. Manookian's law license.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1. The temporary suspension of Brian Phillip Manookian from the practice of law as provided in Tenn. Sup. Ct. R. 9, § 12.3, is hereby reinstated.

2.      Brian Phillip Manookian shall comply with Tenn. Sup. Ct. R. 9 in all respects and particularly as provided in Tenn. Sup. Ct. R. 9, § 28, regarding the responsibilities of suspended attorneys.

3.      Brian Phillip Manookian may make application for dissolution or modification of this Order as provided in Tenn. Sup. Ct. R. 9, § 12.3.

4.      The Board of Professional Responsibility shall cause notice of this suspension of Brian Phillip Manookian to be published as required by Tenn. Sup. Ct. R. 9, § 28.11.

PER CURIAM

4

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRIAN CUMMINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00301** |
| | ) | |
| **BRETTON KEEFER, on behalf of the** | ) | **Chief Judge Waverly D. Crenshaw, Jr.** |
| **deceased CHESTA SHOEMAKER,** | ) | **Magistrate Judge Alistair E. Newbern** |
| **AFSOON HAGH, and** | ) | |
| **JEANNE BURTON, Trustee on behalf** | ) | |
| **of CUMMINGS MANOOKIAN, PLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## JOINT MOTION FOR ENTRY OF AGREED ORDER

Plaintiff Brian Cummings and Defendants Bretton Keefer and Afsoon Hagh, by and through counsel, respectively move this Court to enter the Agreed Order submitted herewith, setting forth their agreement concerning the pending Motions for Entry of Default.

Respectfully Submitted,

**COUNTERPOINT LEGAL, PLC**

By: <u>/s/ Elizabeth S. Tipping</u>
    Elizabeth S. Tipping, No. 023066
    Kristen M. Shields, No. 036438

2689 Union Hill Road
Joelton, TN  37080
(615) 426-5566
liz@counterpointlaw.com
kristen@counterpointlaw.com
*Attorneys for Plaintiff*


**SPRAGENS LAW, PLC**

By: <u>/s/ John T. Spragens (by EST w perm)</u>
    John T. Spragens, No. 031445

311 22nd Ave. N.
Nashville, TN  37203
john@spragenslaw.com
*Attorney for Defendants Keefer & Hagh*


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served on this the 24th day of February, 2023, via the Court's electronic filing system on the following:

Phillip G. Young, Jr.
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN  37203
phillip@thompsonburton.com

John T. Spragens
Spragens Law, PLC
311 22nd Ave. N.
Nashville, TN  37203
john@spragenslaw.com

                        <u>/s/ Elizabeth S. Tipping</u>

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRIAN CUMMINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00301** |
| | ) | |
| **BRETTON KEEFER, on behalf of the** | ) | **Chief Judge Waverly D. Crenshaw, Jr.** |
| **deceased CHESTA SHOEMAKER,** | ) | **Magistrate Judge Alistair E. Newbern** |
| **AFSOON HAGH, and** | ) | |
| **JEANNE BURTON, Trustee on behalf** | ) | |
| **of CUMMINGS MANOOKIAN, PLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## [PROPOSED] AGREED ORDER

It appearing to the Court, as evidenced by the signatures of counsel for Plaintiff Brian Cummings and Defendants Bretton Keefer and Afsoon Hagh, that these parties have reached an agreement regarding the pending Motions for Entry of Default. Attorney John T. Spragens has been authorized by Defendant Bretton Keefer and Defendant Afsoon Hagh to accept service of process on their behalf. The parties are in agreement that service shall be completed by serving the Amended Complaint via email to john@spragenslaw.com. No additional summons is required to be issued for completion of service.

Plaintiff Brian Cummings agrees to withdraw his pending Motions for Entry of Default against these Defendants, filed February 10, 2023. The parties have agreed that Defendant Bretton Keefer and Defendant Afsoon Hagh shall file a response to the Amended Complaint in this matter no later than 60 calendar days after the Amended Complaint is emailed to Attorney Spragens. In exchange for this extension of time to respond to the Amended Complaint, Defendant Bretton

Keefer and Defendant Afsoon Hagh are waiving any defenses they may have related to the method or timing of service.

It is, therefore, ORDERED, ADJUDGED, AND DECREED, that, by agreement of the parties, Plaintiff shall serve Defendant Bretton Keefer and Defendant Afsoon Hagh by emailing a copy of the Amended Complaint to Attorney John Spragens at john@spragenslaw.com. The Motions for Entry of Default filed February 10, 2023 shall be withdrawn, and Defendant Bretton Keefer and Defendant Afsoon Hagh shall file a response to the Amended Complaint no later than 60 calendar days after the Amended Complaint is emailed to Attorney Spragens. Neither Defendant Bretton Keefer and Defendant Afsoon Hagh waive any defenses, claims, or counterclaims by virtue of their agreement.

Entered this _____ day of _____, 2023.


_____
ALISTAIR E. NEWBERN
United States Magistrate Judge

Approved and Submitted for Entry:

**COUNTERPOINT LEGAL, PLC**

By:     /s/ Elizabeth S. Tipping
          Elizabeth S. Tipping, No. 023066
          Kristen M. Shields, No. 036438

2689 Union Hill Road
Joelton, TN 37080
(615) 426-5566
liz@counterpointlaw.com
kristen@counterpointlaw.com
*Attorneys for Plaintiff*

**SPRAGENS LAW, PLC**

By:     /s/ John T. Spragens (by EST w permission)
          John T. Spragens, No. 031445

311 22nd Ave. N.
Nashville, TN 37203
john@spragenslaw.com
*Attorney for Defendants Keefer & Hagh*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on this the 24th day of February, 2023, via the Court's electronic filing system on the following:

Phillip G. Young, Jr.
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN 37203
phillip@thompsonburton.com

John T. Spragens
Spragens Law, PLC
311 22nd Ave. N.
Nashville, TN 37203
john@spragenslaw.com

                           /s/ Elizabeth S. Tipping

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **BRIAN CUMMINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00301** |
| | ) | |
| **BRETTON KEEFER, on behalf of the** | ) | **Chief Judge Waverly D. Crenshaw, Jr.** |
| **deceased CHESTA SHOEMAKER,** | ) | **Magistrate Judge Alistair E. Newbern** |
| **AFSOON HAGH, and** | ) | |
| **JEANNE BURTON, Trustee on behalf** | ) | |
| **of CUMMINGS MANOOKIAN, PLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## [~~PROPOSED~~] AGREED ORDER

It appearing to the Court, as evidenced by the signatures of counsel for Plaintiff Brian Cummings and Defendants Bretton Keefer and Afsoon Hagh, that these parties have reached an agreement regarding the pending Motions for Entry of Default. Attorney John T. Spragens has been authorized by Defendant Bretton Keefer and Defendant Afsoon Hagh to accept service of process on their behalf. The parties are in agreement that service shall be completed by serving the Amended Complaint via email to john@spragenslaw.com. No additional summons is required to be issued for completion of service.

Plaintiff Brian Cummings agrees to withdraw his pending Motions for Entry of Default against these Defendants, filed February 10, 2023. The parties have agreed that Defendant Bretton Keefer and Defendant Afsoon Hagh shall file a response to the Amended Complaint in this matter no later than 60 calendar days after the Amended Complaint is emailed to Attorney Spragens. In exchange for this extension of time to respond to the Amended Complaint, Defendant Bretton

Keefer and Defendant Afsoon Hagh are waiving any defenses they may have related to the method or timing of service.

It is therefore ORDERED that, by agreement of the parties, Plaintiff shall serve Defendant Bretton Keefer and Defendant Afsoon Hagh by emailing a copy of the Amended Complaint to Attorney John Spragens at john@spragenslaw.com. The Motions for Entry of Default filed February 10, 2023 (Doc. Nos. 47, 49) are TERMINATED, and Defendant Bretton Keefer and Defendant Afsoon Hagh shall file a response to the Amended Complaint no later than 60 calendar days after the Amended Complaint is emailed to Attorney Spragens. Neither Defendant Bretton Keefer and Defendant Afsoon Hagh waive any defenses, claims, or counterclaims by virtue of their agreement.


ALISTAIR E. NEWBERN
United States Magistrate Judge

Approved and Submitted for Entry:

**COUNTERPOINT LEGAL, PLC**

By:      /s/ Elizabeth S. Tipping
         Elizabeth S. Tipping, No. 023066
         Kristen M. Shields, No. 036438

2689 Union Hill Road
Joelton, TN  37080
(615) 426-5566
liz@counterpointlaw.com
kristen@counterpointlaw.com
*Attorneys for Plaintiff*

**SPRAGENS LAW, PLC**

By:      /s/ John T. Spragens (by EST w permission)
         John T. Spragens, No. 031445

311 22nd Ave. N.
Nashville, TN  37203
john@spragenslaw.com
*Attorney for Defendants Keefer & Hagh*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on this the 24th day of February, 2023, via the Court's electronic filing system on the following:

Phillip G. Young, Jr.
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, TN  37203
phillip@thompsonburton.com

John T. Spragens
Spragens Law, PLC
311 22nd Ave. N.
Nashville, TN  37203
john@spragenslaw.com

                                             /s/ Elizabeth S. Tipping

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **BRIAN CUMMINGS,** )<br>)<br> **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**BRETTON KEEFER, on behalf of the** )<br>**deceased, CHESTA SHOEMAKER,** )<br>**AFSOON HAGH, and JEANNE** )<br>**BURTON, Trustee on behalf of** )<br>**CUMMINGS MANOOKIAN, PLC,** )<br>)<br> **Defendants.** ) | **No. 3:22-cv-00301** |

**ORDER**

On April 26, 2022, Defendant Jeanne Burton, Trustee for the Estate of Cummings Manookian, PLC, moved for the referral of this case to the Honorable Charles M. Walker of the United States Bankruptcy Court for the Middle District of Tennessee. (Doc. No. 2 at 3). No party has opposed this motion, and all disputes regarding the completion of service have been resolved. (See Doc. No. 53).

In light of this Court's Administrative Order No. 28-11 and the facts asserted in Burton's Motion (Doc. No. 2 at 1–3), the Court is inclined to grant the Motion (Doc. No. 2) absent opposition by either Cummings or the Defendants. The parties may file individual responsive briefs of no more than 5 pages no later than **noon on March 10, 2023**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **BRIAN CUMMINGS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **BRETTON KEEFER, on behalf of the** | )     **No. 3:22-cv-00301** |
| **deceased, CHESTA SHOEMAKER,** | ) |
| **AFSOON HAGH, and JEANNE** | ) |
| **BURTON, Trustee on behalf of** | ) |
| **CUMMINGS MANOOKIAN, PLC,** | ) |
| | ) |
| **Defendants.** | ) |

**<u>ORDER</u>**

       For the reasons stated in this Court's most recent Order (Doc. No. 54) and absent timely objection by any party, Burton's Motion (Doc. No. 2) is **GRANTED**.  This case hereby is **REFERRED** to the Honorable Charles M. Walker of the United States Bankruptcy Court for the Middle District of Tennessee.  The Clerk shall close this case.

       IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | Case No, 3:19-bk-07235 |
| | Chapter 7 |
| CUMMINGS MANOOKIAN, PLLC | Judge Walker |
| Debtor. | Adv. Proc. No. 3:23-ap-90036 |
| BRIAN CUMMINGS, | |
| Plaintiff, | |
| v. | |
| BRETTON KEEFER; JEANNE BURTON, TRUSTEE; and AFSOON HAGH, | |
| Defendants. | |

## NOTICE OF BRETT KEEFER AND AFSOON HAGH
## OF OBJECTION TO REMAND AND INTENT TO SEEK RELIEF

Brett Keefer and Afsoon Hagh respectfully give notice of their objection to the transfer of Case No. 3:22-cv-00301 from the Middle District of Tennessee to this Court. Mr. Keefer and Ms. Hagh provide such notice pursuant to the following facts and for the following purposes.

1.      On March 22, 2022, Brian Cummings filed an action in the Circuit Court for Davidson County Tennessee against Bretton Keefer and Jeanne Burton as Trustee for Cummings Manookian PLC.

2.      On March 29, 2022, Brian Cummings purported to Amend his complaint to add Afsoon Hagh as a Defendant.

1

3.      On April 26, 2022, Jeanne Burton filed a Notice removing the lawsuit to the United States District Court for the Middle District of Tennessee, while simultaneously moving for the case to be remanded to Bankruptcy Court where Cummings Manookian is currently in bankruptcy. *Cummings v. Cummings Manookian*, Case No. 3:22-cv-00301, D.E. 1; D.E. 2.

4.      For the next ten (10) months, Brian Cummings failed to serve either Brett Keefer or Afsoon Hagh with his Complaint or Summons, requesting serial extensions of time to do so.  *See e.g.*, *Cummings v. Keefer*, Case No. 3:22-cv-00301, D.E. 20; D.E. 24; D.E. 31; D.E.42.

5.      On February 27, 2023, Attorney John Spragens made an appearance on behalf of Brett Keefer and Afsoon Hagh solely for the purpose of entering an Agreed Order accepting service of process and setting a deadline of sixty days later in which to file a responsive pleading.  *Cummings v. Keefer*, Case No. 3:22-cv-00301, D.E. 53.  Thus, Hagh and Keefer were permitted until at least April 27, 2023 to retain counsel, review the lawsuit, and file their response.

6.      On March 3, 2023, the Court, *sua sponte,* entered an Order in *Cummings v. Keefer*, Case No. 3:22-cv-00301, ordering the parties to file responsive briefs to Cummings Manookian's initial motion to remand by March 10, 2023 (the March 3rd Order) if they opposed the transfer of the case to Bankruptcy Court. *Id.* at D.E. 54

7.      The March 3rd Order was not served on either Brett Keefer or Afsoon Hagh either by mail or electronically.  It was also not served on their Attorney for Service, John Spragens in any manner.

8.      Neither Brett Keefer, Afsoon Hagh, or John Spragens received or was in any way aware of the Court's March 3rd Order prior to the deadline it set by March 10, 2023.

Rather, given the prior order setting a date in late April for Defendants' first response to the Complaint, both Mr. Keefer and Ms. Hagh were still engaged in selecting counsel. Moreover, neither party expected filings in the case given the established timeline such that they were monitoring online filings which were not served.

9. On March 10, 2024 – in the absence of an objection by Mr. Keefer or Mrs. Hagh – the Court remanded *Cummings v. Keefer* to the United States Bankruptcy Court for the Middle District of Tennessee. *Id.* at D.E. 54.

10. Neither Brett Keefer, Afsoon Hagh, or their Counsel for Service John Spragens were aware of the March 3rd or March 10th Orders until late March when they were served on Ms. Hagh's counsel as part of the Bankruptcy proceeding.

11. Neither Brett Keefer or Afsoon Hagh had notice or an opportunity to object to the remand or transfer of *Cummings v. Keefer* prior to the March 10 Order being entered, nor were they even aware that (a) a response had been requested or (b) a deadline had been set.

12. Mr. Keefer and Ms. Hagh both object to the transfer of the case for myriad, substantive reasons.

13. Mr. Keefer and Ms. Hagh are diligently filing this notice upon learning of the March 3rd and 10th Order to preserve their objection and alert the parties and court they will be seeking relief from the March 10th Order.

14. Mr. Keefer and Ms. Hagh are aware of a hearing tomorrow, on April 4, 2023, seeking the recusal of the presiding Bankruptcy judge.

15. Mr. Keefer and Ms. Hagh are filing this notice of objection in advance of the hearing to avoid any appearance of waiting for its adjudication or opportunistic gamesmanship.

16.     Mr. Keefer and Ms. Hagh will shortly file Motions to Alter, Amend, or otherwise Rescind the March 10th Order and for guidance from the United States District Court in proceeding on the same.  They nevertheless record their objection promptly, via this filing, for the reasons stated above and to avoid any appearance of improper motive.

Date:  April 3, 2022                              Respectfully submitted,

                                                 /s/ John Spragens
                                                 John Spragens (TN Bar No. 31445)
                                                 Spragens Law PLC
                                                 311 22nd Ave. N.
                                                 Nashville, TN 37203
                                                 T: (615) 983-8900
                                                 F: (615) 682-8533
                                                 john@spragenslaw.com

                                                 *Limited Appearance, Service Attorney*
                                                 *for Brett Keefer and Afsoon Hagh*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed April 3, 2023 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

                                                 /s/ John Spragens

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| Debtor. | **Adv. Proc. No. 3:23-ap-90036** |
| **BRIAN CUMMINGS** | |
| Plaintiff, | |
| v. | |
| **BRETTON KEEFER, on behalf of the deceased CHESTA SHOEMAKER, AFSOON HAGH, and JEANNE BURTON, Trustee on behalf of CUMMINGS MANOOKIAN, PLC,** | |
| Defendants. | |

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PENDING MEDIATION AND ARBITRATION ON BEHALF OF DEFENDANTS KEEFER AND HAGH

### I. INTRODUCTION

This lawsuit is filed by an attorney, Brian Cummings, against his former client and former co-counsel in a state medical malpractice action. The former client is Bretton Keefer, the son of Chesta Shoemaker – a middle-aged woman who died after receiving negligent care at Vanderbilt University Medical Center ("Vanderbilt" or "VUMC"). The former co-counsel is Afsoon Hagh, the lawyer who represented Mr. Keefer throughout his

1

action against Vanderbilt, and who secured a settlement on his behalf (the "Malpractice Settlement").

Mr. Cummings withdrew from representing Mr. Keefer early in the discovery phase of the litigation when Mr. Keefer rebuffed Mr. Cummings' persistent pressure to settle the matter for pennies on the dollar, and Mr. Cummings was unwilling to continue contributing to the litigation of the matter. Over the next fourteen months, Ms. Hagh continued to prosecute the matter aggressively at her own expense, including hiring nationally-renowned trial attorney John Edwards to serve as her co-counsel. The case ultimately settled on the eve of trial as Ms. Hagh and Mr. Edwards were preparing to pick a jury in front of Davidson County Circuit Court Judge Joseph Binkley, Jr.

After learning of the settlement he did not assist in achieving, and despite having actively concealed significant instances of malpractice on his own part, Mr. Cummings initiated this lawsuit asking that a Court award him some unspecified portion of the Malpractice Settlement funds. Mr. Cummings did so despite three dispositive facts precluding (1) any Court as a forum or (2) any award in his favor.

First, Mr. Cummings expressly and unambiguously entered into a contract never to file litigation arising out of his representation of Mr. Keefer; the sole subject of the pending lawsuit. Second, Mr. Cummings drafted and insisted upon a clause in the same contract requiring that claims arising out his representation of Mr. Keefer be resolved exclusively through mediation and then binding arbitration. And third, Mr. Cummings drafted and agreed upon a provision that he would not receive a portion of any settlement if he withdrew from the Keefer representation; which he did after Mr. Keefer rebuffed Mr. Cummings' efforts to pressure him to settle the lawsuit for pennies on the dollar.

The former two points require dismissal of this lawsuit with prejudice; the latter point demonstrates the overall frivolous nature of the action. Because of Mr. Cummings' own contractual demands (memorialized in an attorney-client agreement that he personally drafted and executed), any dispute arising out of his representation of Mr. Keefer is specifically and unambiguously barred from adjudication in any Court – *at Mr. Cummings' specific insistence*.

This Court thus lacks subject-matter jurisdiction to hear Mr. Cummings' claims precisely because Mr. Cummings preemptively contracted that he could not and would not present any such claims to this Court in the form of two express clauses. The first, a covenant-not-to-sue, expressly states, "Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship." *Attorney-Client Agreement*, April 19, 2017, Brian Cummings to Brett Keefer, Page 3. **Exhibit 1**. Emphasis added.

The second clause, a binding mediation-arbitration provisions states, "any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration." **Exhibit 1**, at Page 3. Emphasis added.

Despite himself drafting and pressing these clauses onto Mr. Keefer, Cummings Manookian, and Afsoon Hagh covenanting never to sue over his representation in the malpractice suit; Mr. Cummings has now filed suit against Mr. Keefer, Cummings Manookian and Afsoon Hagh over his representation in the malpractice suit. His very act in bringing this lawsuit is actionable breach of contract. It also requires summary dismissal.

3

Where a plaintiff's claims are entirely subject to a valid, enforceable arbitration agreement, the court lacks subject matter jurisdiction over the case. The Court should dismiss Mr. Cummings' Complaint with prejudice because all of its claims are expressly covered by the broad covenant-not-to-sue and mediation-arbitration clauses that Mr. Cummings, himself, inserted into the contract governing his rights and remedies relative to his employment in the Malpractice Suit. In the alternative, Defendants Keefer and Hagh (hereinafter "Defendants") request that the Court stay the action and issue an order compelling mediation and arbitration.

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.      The April 2017 Engagement Agreement

On April 19, 2017, Brett Keefer retained the law firm of Cummings Manookian, Brian Cummings, and Brian Manookian to represent him as the surviving child of Chesta Shoemaker regarding her April 14, 2017 death at Vanderbilt University Medical Center. **Exhibit 1**, at Page 1. *See also, Amended Complaint*, D.E. 1-1, Page 19, Para. 11.



Cummings Manookian and its partners, including Brian Cummings, entered into a binding written agreement with Brett Keefer laying out the terms of Mr. Cummings' employment and engagement as an attorney in the matter (the "2017 CM Agreement"). *Amended Complaint*, D.E. 1-1, Page 19, Para. 11.

In addition to specifying the scope of the representation and how the attorneys would be compensated; the contract additionally detailed the exclusive manner in which any and all disputes under the contract must be resolved.

> **<u>Mediation and Binding Arbitration of Any Attorney-Client Disputes</u>**
>
> While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

Specifically, the parties agreed that "neither the client nor the attorneys in this attorney-client relation can file litigation over or about any alleged or real dispute within the Attorney-Client relationship." Rather, the parties agreed that "the forum for any such dispute must first by a good-faith mediation and then binding arbitration.

5

> If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (bcummings@cummingsmanookian.com), fax (615-266-0250), or mail.
>
> On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me.
>
> Sincerely,
>
> *Brian Cummings*
>
> **Brian Cummings**
> **CUMMINGS MANOOKIAN PLC**

The agreement was executed by the Plaintiff who has now filed suit in this case, Brian Cummings. *Amended Complaint*, D.E. 1-1, Page 19, Para. 11. In March 2018, prior to any lawsuit being filed on behalf of Mr. Keefer, Brian Cummings left the law firm of Cummings Manookian. *Amended Complaint*, D.E. 1-1, Page 18, Para. 5.

**B.    The Updated August 2019 Engagement Agreement**

Consistent with the terms of the engagement agreement with Cummings Manookian, suit was filed on behalf of Mr. Keefer against Vanderbilt on February 11, 2019 alleging professional negligence resulting in the wrongful death of Chesta Shoemaker. *Amended Complaint*, D.E. 1-1, Page 18, Para. 8.

On August 23, 2019, following Mr. Cummings' departure from the Cummings Manookian firm, Brian Manookian sent Brett Keefer an "Updated Legal Representation and Engagement Agreement" for review and signature. The letter stated, in part:

6

> **Re:   Updated Legal Representation and Engagement**
>
> Dear Brett:
>
> As you know, Brian Cummings and I no longer practice as partners in the same firm. As a result, Cummings Manookian, the law firm, no longer exists. I am providing you this updated Attorney-Client Agreement to simply memorialize that you are now represented by Manookian PLLC. The terms are otherwise identical to the prior agreement you signed.

The updated agreement contained the same terms and provisions prohibiting suit being filed over any aspect of the attorney-client engagement, and it once again identified mediation and binding arbitration as the sole vehicle for resolving any disputes that arose between the parties. **Exhibit 2**.

> **Mediation and Binding Arbitration of Any Attorney-Client Disputes**
>
> While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

The case continued to progress in Davidson County Circuit Court throughout 2018 and 2019 under the identical terms of the initial and updated engagement agreements, both of which included covenants-not-to-sue and binding mediation-arbitration clauses.

**C.  Brian Cummings Acknowledges and Reiterates his Agreements
to the Terms of the Initial and Updated Engagement Agreements.**

On January 3, 2020, Brian Cummings emailed Brett Keefer acknowledging his receipt, review, and acceptance of the Updated August 2019 Engagement Agreement whose terms were materially identical to the Initial 2017 Engagement Agreement other than to reflect that Brian Manookian and Brian Cummings were no longer operating as law partners.  **Exhibit 3**, Email from Brian Cummings to Brett Keefer, January 3, 2020.

Indeed, Mr. Cummings simply asked Brett Keefer to confirm that Brian Cummings was still authorized to work on the case and that Brian Cummings would be reimbursed for any advanced expenses.  Mr. Cummings went on to assure Mr. Keefer that agreeing to those two points would "only supplement the previous Attorney Client Agreements you signed in this case" and not "delete any aspects of any other such documents you signed." **Exhibit 3**.

> I need to confirm with you that you have always agreed to and authorized me to work as a lawyer on this case, and that you continue to do so. I also need to confirm with you that any litigation expenses I have or that I will advance on your behalf will be reimbursed. This 2019 agreement does not speak to those two particular issues, and even if we both expected those to things to be part of the past and ongoing work done by me on this case, I need to ask that you email me back something like "I agree."
>
> This request for a responsive email is only to supplement the previous Attorney-Client Agreements you signed in this case, and this affirmation is not meant to delete any aspect of any other such documents you signed. Also, nothing about this email exchange today increases or changes the total contingency fee rate of 33.33% that is in the prior documents.
>
> Brian

The only prior attorney-client agreements Mr. Keefer had signed were the 2017 Initial Agreement and 2019 Updated Agreement, both of which contain binding covenants-not-to-sue and binding mediation-arbitration clauses.  Mr. Cummings email of January 3, 2020, expressly acknowledged and reaffirmed those terms.

**D.     Brian Cummings Seeks to Renegotiate the Terms of the Initial
and Updated Engagement Agreements and then Withdraws in a
Fit of Pique.**

On September 24, 2020, Brian Cummings wrote Brett Keefer asking him to sign a

new engagement agreement "setting for the basis on which I will continue to represent

you." *Correspondence from Brian Cummings to Brett Keefer*, September 24, 2020,

**Exhibit 4**.  The letter began by purporting to be a "follow-up" to Mr. Keefer's two prior

engagement agreements as well as Mr. Cummings' email acknowledging their validity.

> This letter is a follow up on the following enclosed documents – (1) your original Attorney-
> Client Agreement with Cummings Manookian while I was there, (2) your additional Agreement
> with Afsoon Hagh and Brian Manookian following my departure from Cummings Manookian and
> the end of that firm and the beginning of their firms, and (3) our more recent email exchange
> documenting you have continued to want me to represent you in this matter.

The letter went on to ask Mr. Keefer to sign a new engagement agreement solely

with Mr. Cummings that included identical terms to Mr. Keefer's prior engagement

agreements.  The only addition was a provision requiring the client to agree that "if you

leave any kind of review for my law firm online, including a Google review, that it will be

5/5 starts and have only positive comments." **Exhibit 4**, at Page 3.

Notably, Mr. Cummings' proposed new agreement included the same covenant-

not-to-sue and binding mediation-arbitration clause present in the operative engagement

agreements.

> ### <u>Mediation and Binding Arbitration of Any Attorney-Client Disputes</u>
>
> While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential dispute or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do I) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorney in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

When Mr. Keefer declined to sign the new Engagement Agreement, Mr. Cummings promptly – and without notice – withdrew as counsel "effective immediately" leaving only Ms. Hagh to continue prosecuting the matter. *Correspondence from Brian Cummings, October 2, 2020,* **Exhibit 5**. As the basis for his withdrawal, Mr. Cummings cited Mr. Keefer declining to sign a new engagement agreement; Mr. Keefer's feeling that Mr. Cummings was pressuring him to settle the case; as well as Ms. Hagh's characterization of Mr. Cummings' fixation on Mr. Cummings' own financial outcome in the case as "only looking out for Brian Cummings." *Id.* at Page 3.

Following Mr. Cummings' withdrawal immediately prior to the beginning of expert discovery, Ms. Hagh continued to develop, fund, and prosecute the case on her own. She ultimately brought on former United States Senator John Edwards to act as co-trial counsel. As previously discussed, the case settled in late October 2021, following adjudication of pre-trial motions, and just days before jury selection was set to begin.

## E. Brian Cummings Acknowledges All Issues Related to his Representation of Mr. Keefer must be Resolved Out-of-Court