recovery in the case of his deceased mother's estate against VUMC, I can respond generally; and I am happy to do so here.

## I. Brian Cummings is not entitled to any fee in the *Shoemaker* matter under any theory of recovery.

Brian Cummings is not entitled to any fee in the *Shoemaker* matter, either on a contractual basis or under any equitable theory. Brian Cummings quit, early in the case, when it became apparent that he could not pressure the client to settle it for pennies on the dollar. Mr. Cummings withdrawal occurred immediately prior to the commencement of expensive expert discovery for which Mr. Cummings did not want to contribute financially.

The engagement agreement with the client only permits repayment of expenses where the attorney quits or withdraws. Under the terms of that agreement, Brian Cummings is entitled to repayment of advanced expenses (which he has already received), and nothing more.

Likewise, any equitable claim to attorney's fees by Mr. Cummings fails because there was an existing contract. This alone precludes any recovery on a *quantum meruit* theory. Even if there had not been a legally binding contract, Mr. Cummings would not be entitled to any portion of the ultimate recovery because Brian Cummings' "work" on the case was (a) *de minimis* and (b) legally deficient to the point of inarguable, objective malpractice.

## II. Brian Cummings withdrew from the *Shoemaker* case, contractually precluding any claim to an attorney's fee.

The attorneys in this case had an engagement agreement with the client. The engagement agreement provides that if the client fires the attorney, the attorney will be entitled to his advanced expenses plus a reasonable attorney's fee.

The engagement agreement goes on to provide that if the attorney withdraws, as opposed to being fired, the attorney is only entitled to receive back his advanced expenses.

This was a deliberate provision, drafted by Mr. Cummings, not the client; and will be construed against Mr. Cummings. The purpose of the provision was to allow the attorneys to promptly withdraw in cases where they chose to do so, without saddling the case with an attorney's lien that could make it difficult for the client to retain new counsel.

Thus, there is an express distinction – memorialized in writing by your client – as to the consequences when an attorney is fired as opposed to when an attorney voluntarily quits. If the attorney is removed from the case without his permission, he receives his advanced expenses and "**additionally**" a reasonable portion of the attorney's fee. Conversely, where the attorney chooses to quit, the attorney only receives reimbursement of advanced expenses, with no additional attorney's fee.

I am not going to belabor this point because it is self-evident from the contract Mr. Cummings drafted. If you have any doubt, review the provision that states that in the event of

2

termination (as opposed to quitting as Mr. Cummings did), that the attorney is **"ADDITIONALLY"** entitled to a portion of the fee. No such additional allowance is made where the attorney voluntarily withdraws.

### III. Brian Cummings abandoned the client and co-counsel in his withdrawal.

Brian Cummings' withdrawal from the case was done in a highly unprofessional manner that constituted abandonment of the client. Mr. Cummings had very few responsibilities in the case, and even less that he had actually followed through with as of late September 2020. One of those responsibilities, however, was to handle expert discovery; both defending the depositions of Plaintiff's experts and conducting the depositions of Defendant's experts.

By September 30, 2020, all expert depositions had been scheduled around Mr. Cummings schedule. On that day Mr. Cummings emailed opposing counsel a final list of the deposition dates and times, confirming that he would be attending each.

Less than 72 hours later, Mr. Cummings abruptly – and out of nowhere – announced by letter that he was withdrawing from the case "effective immediately." This had never been mentioned or discussed; much less planned for such that a smooth transition could occur. At that moment over a dozen depositions of expensive, by-the-hour, experts were scheduled to go forward based upon Mr. Cummings' schedule and little could be done to rearrange those deposition given pending scheduling order deadlines.

In over a decade of practice as a plaintiff's lawyer, I have seen numerous attorneys withdraw or substitute from cases. I have never seen – or even heard of – an attorney announcing that they quit "effective immediately," without so much as consulting with co-counsel and to the clear detriment of the client.

Mr. Cummings' action in this regard were, at least, characteristic of his approach to this case from the outset. His first priority has always been himself and his own financial considerations; not what is best for the client.

### IV. Brian Cummings quit the case because he did not want to spend money on it and because the client would not settle the matter for a fraction of its final resolution; a resolution which Brian Cummings did not participate in funding or securing.

In fact, and as I later learned, Mr. Cummings had been surreptitiously attempting to have the client sign a new engagement agreement solely with Mr. Cummings' firm that provided more favorable financial terms to Mr. Cummings to the exclusion of the other lawyers who were actually working on the case.

When the client declined to renegotiate the terms of the agreement – and because the client consistently refused to settle the case for a fraction of what was ultimately recovered – Mr. Cummings quit.

3

## V.    Brian Cummings did no competent, substantive work on the case.

In any event, Brian Cummings did no competent, substantive work on the case. He essentially had two major tasks; both of which he screwed up, literally, beyond repair, and both of which later resulted in the Court ordering the Plaintiff to correct or redo.

Brian Cummings was charged with drafting the Complaint in the case. He drafted a meandering, unnecessarily long, and unfocused pleading that, despite its length, failed to include many of the most basic and fundamental causes of action. Ultimately, the Court found the Complaint so deficient that it continued the trial and ordered the Plaintiff to submit an Amended Complaint. Mr. Cummings' original Complaint was so bad as to be unsalvageable. Plaintiff's counsel had to spend close to a month redrafting an entirely new Complaint.

Brian Cummings was also charged with drafting the expert disclosure. They were equally terrible. The Court found them to lack basic elements of the experts' opinions and required Plaintiff to redo them.

In sum, even where Brian Cummings actually did work, it was so deficient as to require that it be recompleted. His "contributions" were thus not contributions, but rather a distraction that did nothing to add to the bottom line.

Other than those two items, Brian Cummings primary involvement in the case consisted of tagging along to depositions taken by Brian Manookian and antagonizing the client regarding settlement offers that Mr. Cummings wanted the client to accept.

## VI.    Brian Cummings' primary impact on the case was to commit significant malpractice, which he then fraudulently concealed.

As stated above, Mr. Cummings was tasked with drafting the Complaint and conducting expert discovery. In Tennessee, prior to filing a medical malpractice case, a Plaintiff must first secure an opinion from a qualified expert that there is a good faith basis for believing that malpractice was committed. A qualified expert is a physician in the same field or specialty that practiced in Tennessee or a contiguous state in the year immediately preceding the alleged act of malpractice.

Thus, Brian Cummings needed to secure an opinion from a doctor licensed in Tennessee or a bordering state that there was a good faith reason to believe Vanderbilt had committed malpractice in its treatment of Chesta Shoemaker.

Unbeknownst to the other attorneys, Mr. Cummings secured the pre-suit opinion from a physician, Dr. Sadikot, who was only licensed to practice in Florida. Inexplicably, Mr. Cummings then disclosed Dr. Sadikot as Plaintiff's foremost opinion expert in the case. Dr. Sadikot was, and is, statutorily incompetent to serve in either role.

Opposing counsel, Bradley Dowd, uncovered in Dr. Sadikot's deposition that she was never licensed in Tennessee or a surrounding state. Defendant immediately moved to disqualify

4

her, and Plaintiff was required to withdraw her as a testifying witness.

Plaintiff only recently discovered that Dr. Sadikot was also his pre-suit "expert" when Mr. Cummings submitted his expenses for reimbursement. But Dr. Sadikot could not serve in that role. Nevertheless, Brian Cummings executed an affidavit with the filing of the Complaint that he had received a pre-suit opinion from a qualified expert, when he had not. The ramifications of this fraud are beyond the scope of this letter, but could expose Mr. Keefer to suit by VUMC for fraud in the inducement.[2]

### VII.    Brian Cummings has substantial liability to Brett Keefer.

Mr. Cummings committed objective, black letter legal malpractice by disclosing a statutorily incompetent expert. He committed a fraud upon the Court and the client by executing an affidavit claiming that he had consulted with a qualified physician prior to bringing the case.

If VUMC were to learn of this, it is possible they could seek repayment of the settlement agreement on the basis of fraud in the inducement. By now the statute of limitations and repose have run on refiling any claims belonging to the Plaintiff. Mr. Keefer is put in a highly precarious situation by Mr. Cummings' malpractice and deceit.

### VIII.   Conclusion

I am not in a position to respond to your letter demanding that my client commit to a forum for resolving some "dispute" that Mr. Cummings simultaneously and deliberately declines to identify. And while I cannot remotely imagine what Mr. Cummings thinks he is owed here, I can assure you that if he files suit, it will be met with significant counterclaims, and, ultimately a malicious prosecution action against him and any attorney and law firm unwise enough to take his case.

Finally, to the extent your prior letter included an enclosure that actually outlines whatever it is your client is asking proceed to arbitration or litigation, please send it to me so that I can evaluate it and discuss with Mr. Keefer. It is entirely plausible that my role as lead counsel in the *Shoemaker* matter would make me a witness in any future controversy. If that is the case, I have recommended that Mr. Keefer retain both the Gideon firm and Neal and Harwell to defend any meritless claims by Mr. Cummings as well as prosecute malpractice, fraud, breach of contract, and malicious prosecution actions against him.

Sincerely,

Afsoon Hagh

---

[2] Unbelievably, Mr. Cummings still insisted on being reimbursed for his expenses in retaining Dr. Sadikot; which the client has now paid him.

5

# Exhibit 4

LAW OFFICES
**PRICE, HILL & KOLARICH**
AN ASSOCIATION
SUITE 1800

NASHVILLE, TENNESSEE 37219

TELECOPIER 615-244-5821

JAMES W. PRICE, JR.*
WM. TIMOTHY HILL
201 4th AVENUE NORTH
* ALSO ADMITTED IN FLORIDA

TELEPHONE 615-244-5772

ROBERT E. KOLARICH**

** ALSO ADMITTED IN MISSOURI AND MISSISSIPPI

February 14, 2022

<u>**Via email: afsoon@haghlaw.com**</u>
Afsoon Hagh

Re:   <u>Brian Cummings' Attorney Lien issue</u>

Dear Ms. Hagh:

I am writing in response to your February 11, 2022 letter. Your letter communicated that you claim to have some confusion about what issue I was reaching out to you about in my recent written communication. I am copying Craig Gabbert and Phillip Young on this letter because they need to understand that as recently as February 11, 2022 you appear to claim some confusion about the existence of Brian Cummings' Attorney's Lien issue.

To be clear, I was contacting you about Brian Cummings' Attorney's Lien in the Shoemaker matter.

You are certainly aware of this Lien because of the following:

1.  Notice of the Lien was filed and served in the Shoemaker case in 2020. You received a copy of that Notice.

2.  On November 4, 2021, your attorney, Craig Gabbert emailed you and your husband and told you that Brian Cummings' Attorney's Lien would attach to funds that would be held in Mr. Gabbert's trust account, as seen here:

—— Forwarded message ——
From: **Gabbert, Craig V.** <CGabbert@bassberry.com>
Date: Thu, Nov 4, 2021, 1:21 PM
Subject: Cummings
To: Afsoon Hagh <afsoon@tntriallawyers.com>, Brian Manookian <brian@tntriallawyers.com>

Cummings needs to send an email confirming he is okay with the client being paid, the Edwards firm being paid and the balance of the money being sent to my trust account, to which his lien will attach.

BBS

Craig Gabbert
Counsel

**Bass, Berry & Sims PLC**
150 Third Avenue South, Suite 2800 • Nashville, TN 37201
615-742-6277 phone • 615-742-0465 fax
cgabbert@bassberry.com • www.bassberry.com

3. On November 6, 2021, you emailed mediator John Perry and Mr. Cummings and communicated the following regarding the Attorney's Lien / division of attorneys' fees issue:

---

### Re: Shoemaker v. Vanderbilt Mediation
1 message

**Afsoon Hagh** <afsoon@haghlaw.com>                              Tue, Nov 16, 2021 at 10:56 AM
To: "John W. Perry Jr." <perry@pbmbllc.com>
Cc: "brian@cummingsinjurylaw.com" <brian@cummingsinjurylaw.com>, Afsoon Hagh <afsoon@haghlaw.com>

John,

This looks great and thank you for your assistance here. The expectation is that we will get to a prompt resolution by mediation and if not move to arbitration. To put a finer point on it, no one is looking to drag this out. After talking with Brian Cummings, we will get you position statements no later than November 26. You can then just call us up individually, hear out both sides, do what you do best, and see if a deal is reachable. If it is, I know you can get us there. If it isn't, we just go to arbitration.

Thank you again, and we will both get you our statements by November 26.

---

4. On December 3, 2021, your attorney, Craig Gabbert sent the email below to you and the others listed which again references the fact and awareness everyone on the email that the funds kept in Mr. Gabbert's trust account were subject to, among other things, Brian Cummings' "claim/lien", as seen here:

---

### RE: 19C358, Keefer vs. VUMC
1 message

**Gabbert, Craig V.** <CGabbert@bassberry.com>                          Fri, Dec 3, 2021 at 8:18 AM
To: Phillip Young <phillip@thompsonburton.com>
Cc: Afsoon Hagh <afsoon@tntrialfawyers.com>, Bill Bystrynski <bbystrynski@edwardskirby.com>, EDWARDS JOHNNY <jedwards@edwardskirby.com>,
"slefkovitz@lefkovitz.com" <slefkovitz@lefkovitz.com>, "brian@cummingsinjurylaw.com" <brian@cummingsinjurylaw.com>

Your client's claim/lien has attached to my escrow account by agreement, as has those of Brian Cummings and Phillip North's client. I am holding the fee there. The only thing I released were the funds necessary to pay/reimburse actual costs of travel, experts, etc. I don't understand why it is necessary to keep the case open.

BBS

**Craig Gabbert**
Counsel

**Bass, Berry & Sims PLC**
150 Third Avenue South, Suite 2800 · Nashville, TN 37201
615-742-6277 phone · 615-742-0465 fax
cgabbert@bassberry.com · www.bassberry.com

---

5. In 2022, you filed a document as counsel for Brett Keefer with the Fifth Circuit Court of Davidson County discussing the Attorney's Lien issue, and advocating, in part and among other arguments, for the Attorney's Lien issue to go to arbitration.

6. In 2022, in a phone hearing with Judge Joe Binkley of the Fifth Circuit Court, you orally stated, among other things, that you would speak with your client as to whether he wanted to use arbitration for the Attorney's Lien issue, and if not, that Mr. Keefer would therefore waive any such obligation.

With the above details being presented to you, it should be clear to you that the issue on which I recently wrote to you about was Brian Cummings' Attorney's Lien.

The only thing I need to hear back from you on is what was discussed with the Court weeks ago – learning what your client's decision is as to whether arbitration will be used to resolve the issue of Brian Cummings' Attorney's Lien, or if he declines (aka waives) that option.

I look forward to hearing from you in writing by Monday, February 21, 2022 regarding this singular issue. I will save my comments about the facts, law, and argument about my client's Attorney's Lien for whatever forum your client's decision provides – arbitration or the court system.

Sincerely,

James W. Price, Jr.

JWP/vg

cc:  Craig Gabbert (via email)
     Phillip Young (via email)

# Exhibit 5

LAW OFFICES
**PRICE, HILL & KOLARICH**
AN ASSOCIATION
SUITE 1800
201 4th AVENUE NORTH
NASHVILLE, TENNESSEE 37219

JAMES W. PRICE, JR.*
WM. TIMOTHY HILL

ROBERT E. KOLARICH**

* ALSO ADMITTED IN FLORIDA

** ALSO ADMITTED IN MISSOURI AND MISSISSIPPI

TELEPHONE 615-244-5772
TELECOPIER 615-244-5821

February 15, 2022

Afsoon Hagh
Hagh Law PLC
1906 Glen Echo Road, #150229
Nashville, TN 37215

226 Pelham Dr.
Brentwood, TN 37027-4237

    Re:   *Brian Cummings' Attorney Lien dispute*

Dear Ms. Hagh:

    Yesterday, I attempted to send you a copy of the letter which I mailed by the U.S. Postal Service in response to your email last Friday. Unfortunately, I discovered that your computer has blocked me. This has happened on at least two prior occasions and it has also blocked my secretary's emails to you. In addition to that, I have attempted to send you a fax, which was blocked at your office. I have, on at least one occasion, phoned you and left a message on your answering machine to return a call, which you did not do.

    In order for us to promptly proceed in this dispute concerning attorneys' fees, it is necessary that you and I are able to communicate. I am therefore requesting that you immediately remove the blocks on your computer system and your fax.

                    Very truly yours,

                    James W. Price, Jr.

JWP/vg

cc:   Brian Cummings

# Exhibit 6

Correspondence from:
**Afsoon Hagh, Attorney**
afsoon@haghlaw.com



AFSOON HAGH
Licensed to practice in TN

February 21, 2022

**VIA FAX**
James Price
201 4th Avenue North
Nashville, TN 37219
Fax: 615-244-5821

     *Re:    Keefer v. VUMC*

Mr. Price,

     I am in receipt of your letters dated February 14 and 15, 2022. In response to the latter's inquiry regarding my email, I prefer receiving correspondence by letter at 1906 Glen Echo Road, 150229, Nashville, Tennessee 37215.

     Your letter of February 14, 2022 again asks my client to elect a forum in which to be sued over a dispute you again refuse to describe. I have already explained to you in a multi-page letter why my client cannot do that given the lack of information provided. I will try to explain again here.

     You want my client to tell you whether he would prefer to arbitrate or litigate "the existence of Brian Cummings' attorney's lien issue." But an attorney's lien can only arise either out of advanced expenses or as compensation in the form of a fee for work performed. In the present matter:

1. Brian Cummings has already been paid in full for all advanced expenses for which he requested reimbursement; and

2. Brian Cummings drafted and signed a contract which does not permit a fee for work performed where the attorney quits; which Brian Cummings did.

     Mr. Cummings has been paid his expenses. And he elected not to receive a fee by insisting on a contract that precludes one in the event of an attorney's withdrawal and then withdrawing. Because of these facts, I do not know, and I cannot speculate as to, what you believe Mr. Cummings' claims to be. For whatever reason, you have repeatedly and deliberately refused to describe them.

I am sure that you fully understand that by declining to outline Mr. Cummings' "claims," you prevent my client from considering your demand regarding arbitration or litigation.

In sum, it is not productive for you to repeatedly demand decisions from my client about a matter you refuse to describe. If you would like to discuss this further, I would ask that you first send me a draft complaint of whatever you intend to file. After reviewing any legal or factual bases for Mr. Cummings' claims, I will be back in touch.

Sincerely,

Afsoon Hagh

# Exhibit 7

LAW OFFICES
**PRICE, HILL & KOLARICH**
AN ASSOCIATION
SUITE 1800
201 4th AVENUE NORTH
NASHVILLE, TENNESSEE 37219

TELEPHONE 615-244-5772
TELECOPIER 615-244-5821

JAMES W. PRICE, JR.*
WM. TIMOTHY HILL

* ALSO ADMITTED IN FLORIDA

ROBERT E. KOLARICH**

** ALSO ADMITTED IN MISSOURI AND MISSISSIPPI

March 8, 2022

Afsoon Hagh
Hagh Law PLC
1906 Glen Echo Road, #150229
Nashville, TN 37215

Re:   *Brian Cummings' Attorney Lien dispute*

Dear Ms. Hagh:

I am in receipt of your recent letter and believe, despite your assertions to the contrary, that you are fully aware of the basis of Mr. Cummings' claim for attorney fees. I therefore conclude that your client does not wish to resolve this dispute thru arbitration and that he therefore waives any right to arbitration that you or he already claimed may otherwise exist via an attorney fee agreement.

While the previous attempt at mediating the attorney's lien issue and a potential arbitration would have prevented any issues becoming public that you claim could jeopardize Mr. Keefer's settlement, the corresponding decisions by you and Mr. Keefer indicate that the two of you have no actual interest in keeping the resolution of Mr. Cummings' attorney's lien matter out of the court system to protect against that supposed concern. I presume you advised your client, Mr. Keefer, of this issue and that he relied on your advice in not agreeing to arbitration.

We will proceed to file an action in the Circuit Court to enforce Mr. Cummings' lien and obtain for him the attorney's fee amount determined by the Court.

Please let me know if you can accept service for your client. Unless I hear otherwise, I will presume you continue to represent Mr. Keefer and that you can accept service on his behalf on this issue on which you already represent him.

Very truly yours,

James W. Price, Jr.

JWP/vg

cc:   Brian Cummings

# Exhibit 8

# SPRAGENSLAWPLC

July 22, 2022

**VIA EMAIL**

James Price
201 4th Ave. North
Nashville, TN 37219
Fax: 615-244-5821
jprice@pricehillkolarich.com

     ***Re:***    ***Cummings v. Keefer***

Mr. Price,

     I represent Manookian PLLC. As you know, Manookian PLLC was retained by Bretton Keefer to prosecute a medical malpractice action against Vanderbilt University Medical Center arising out of her death at that facility.

     It appears that you have filed a lawsuit on behalf of Brian Cummings claiming that Brian Cummings is owed some unspecified amount of money for work he claims to have performed for Mr. Keefer. My client may be an interested party in that matter.

     On July 5, 2022, you filed what you apparently claim is "Proof of Service" on Bretton Keefer in *Cummings v. Keefer*, United Stated District Court for the Middle District of Tennessee, Case 3:22-cv-00301.

     To the extent you are representing to the Court or any other interested party that you have properly served Mr. Keefer with a copy of the summons and Complaint in that case, your representation appears to be both false and defective.

1. The Affidavit of Proof of Service is signed by someone named Vicki Glover. However, Ms. Glover does not declare that she personally served Mr. Keefer; she does not identify any place of service; and she does not identify any date of service.

2. Indeed, Ms. Glover does not appear to even represent that service took place. Instead, she simply checks the box for "Other" then hand writes "Certified Mail – Return Receipt Attached." This deficiency alone demonstrates that proper service has not been achieved,

in that no person is actually declaring that service took place on a specified individual at a specified location on a specified date.

3. Equally defective is the return receipt which Ms. Glover attaches. That return receipt:

    a. **is signed by someone other than Brett Keefer**;
    b. fails to identify the signatory as either the Agent or Addressee;
    c. fails to identify the printed name of the recipient; and
    d. fails to identify the date of delivery.

I have attached a copy of an engagement agreement that was executed by Brett Keefer and Mr. Cummings. **You will note that the signature on the return receipt you filed with the Court is not Brett Keefer's.**

Finally, my understanding is that the address to which you sent the certified mail identified in your "Proof of Service" is a religious community containing multiple residences. You, yourself, have sworn to that fact in an undated Declaration to the Court filed June 27, 2022. My further understanding is that Brett Keefer does not reside at that address.

I would ask that you correct your filing with the Court so that Manookian PLLC is not required to intervene to do so. I would also be happy, at your request, to make inquiries into Mr. Keefer's current place of residence in order to facilitate proper and actual service. Please simply let me know.

Sincerely,

John Spragens

SPRAGENS LAW PLC

cc:

Jeanne Burton c/o Phillip Young, Esq. (via email)

# Exhibit 9

JAMES W. PRICE, JR.*
WM. TIMOTHY HILL

* ALSO ADMITTED IN FLORIDA

AN ASSOCIATION
SUITE 1800
201 4th AVENUE NORTH
NASHVILLE, TENNESSEE 37219

ROBERT E. KOLARICH**

** ALSO ADMITTED IN MISSOURI AND MISSISSIPPI

TELEPHONE 615-244-5772
TELECOPIER 615-244-5821

August 8, 2022

John Spragens
John Spragens Law, PLC
311 22nd Ave. N.
Nashville, TN 37203

Re:   *Brian Cummings vs. Shoemaker, et al.*

Dear Mr. Spragens:

Thank you very much for your letter of July 27th concerning service of process on Mr. Keefer. I have attempted on several occasions to contact you by phone but have been unable to get through to you and accordingly am responding by mail. I very much appreciate your offer to get in contact with Mr. Keefer. Please lset me know how I may contact you.

I also note that because you are representing Cummings Manookian, PLC in the bankruptcy proceedings that you must be in contact with both Brian Manookian and his wife, Afsoon Hagh. As you are no doubt aware, I have attempted several times to serve Ms. Hagh at all of her known addresses including that which is listed with the Board of Professional Responsibility, however, I have not been able to get her to respnd. She has also blocked my email and phone so I am unable to speak to her directly. I know that she is aware that I have attempted to serve her because I spoke to her attorney, Craig Gabbert, requesting for him to accept service and he advised that based upon his conversation with her, he was unable to accept service.

I am unable to understand why she is unwilling to contact me or respond to my service of process. I would appreciate any information you can give to me or to her so that we can proceed with this lawsuit. It is in no one's best interest that this matter continue to be delayed.

Thank you for your assistance in advance.

Very truly yours,

James W. Price, Jr.

JWP/vg

cc:   Brian Cummings

# Exhibit 10

| | |
|---|---|
| **From:** | Liz Tipping |
| **Sent:** | Friday, February 24, 2023 4:09 PM |
| **To:** | John Spragens |
| **Subject:** | Cummings v. Hagh - service email |
| **Attachments:** | 12-1 - Amended Complaint.pdf |

John,

Thank-you for agreeing to accept service on behalf of Afsoon Hagh and Bretton Keefer via email. Pursuant to our agreement as confirmed in the Agreed Order filed today, attached is the Amended Complaint filed in the matter of Cummings v. Hagh et al.

Liz

**Liz Tipping**
Attorney

Counterpoint Legal, PLC
2689 Union Hill Road
Joelton, TN  37080

Phone: 615-426-5566
Email: liz@counterpointlaw.com

COUNTERPOINT
LEGAL

This electronic communication and any file attached to it are intended solely for the person to whom it is addressed and may contain information that is confidential, legally privileged, protected by privacy laws, or otherwise restricted from disclosure to anyone else. If you have received this electronic communication in error, please immediately notify the sender by reply e-mail, delete the communication, and destroy any printed copy of it. Any use, duplication, distribution, or dissemination of this electronic communication by anyone who receives it in error is strictly prohibited. Thank you.

581

| | | |
|---|---|---|
| **BRIAN CUMMINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 3:22-cv-00301** |
| **v.** | ) | |
| | ) | |
| **BRETTON KEEFER, on behalf of the** | ) | |
| **deceased, CHESTA SHOEMAKER,** | ) | |
| **AFSOON HAGH, and** | ) | |
| **JEANNE BURTON, Trustee on behalf of** | ) | |
| **CUMMINGS MANOOKIAN, PLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT

The Plaintiff, for this cause of action, respectfully states to the Court and trier of fact as follows:

### PARTIES, VENUE, AND JURISDICTION

1.     The Plaintiff, Brian Cummings ("Mr. Cummings"), is an adult resident of Tennessee.

2.     The majority of legal work performed by Mr. Cummings on behalf of his former client, and a Defendant in this action, Bretton Keefer, on behalf of the deceased, Chesta Shoemaker, was performed in Davidson County, Tennessee.

3.     The Defendant in this action, Bretton Keefer ("Mr. Keefer"), on behalf of the deceased, Chesta Shoemaker, received the benefit of Mr. Cummings' time, legal work, and financial funding of his previously-filed and now resolved health care liability, wrongful death

lawsuit that bore docket number 19C358 in the Davidson County, Tennessee Circuit Courts ("the Keefer matter"). The original Complaint in the Keefer matter was prepared and filed in February 2019, by Mr. Cummings, who was, at that time, a partner in Cummings Manookian, PLC ("Cummings Manookian"), a law firm based in Davidson County, Tennessee.

4.     Afsoon Hagh ("Ms. Hagh") was one of the attorneys who did work on behalf of Mr. Keefer in the Keefer matter, and she did some of her attorney work on this matter in Davidson County, Tennessee.

5.     Mr. Cummings voluntarily withdrew from Cummings Manookian in 2018, leaving Brian Manookian ("Mr. Manookian") as the only remaining Member of Cummings Manookian. The financial situation of Cummings Manookian changed after Mr. Cummings' withdrawal from the firm to the extent that Mr. Manookian put Cummings Manookian into bankruptcy proceedings.

6.     Jeanne Burton is the Trustee for Cummings Manookian in those bankruptcy proceedings.

7.     Attorney work was done on the Keefer matter by Brian Cummings while he was still a Member at Cummings Manookian, but that work was a very small percentage of the overall time and work performed by Mr. Cummings on the Keefer matter.

8.     The original Complaint filed in the Keefer matter by Mr. Cummings in February 2019, listed Ms. Hagh as co-counsel with Mr. Cummings for Mr. Keefer. That Complaint properly identified Mr. Cummings as being with his new firm, Cummings Law, and that Complaint properly identified Ms. Hagh as being with her firm at that time, Cummings Manookian.

9.     Jeanne Burton, as Trustee in bankruptcy for Cummings Manookian, is a proper party to this matter because some portion of the attorney work done related to the attorney's lien issue was performed by at least one attorney while such an attorney was still a part of Cummings Manookian and because the monetary value of the attorney work by any attorneys who at the time of that work were a part of Cummings Manookian makes that monetary amount a concern / asset of the Cummings Manookian bankruptcy proceeding.

10.     Venue and jurisdiction are appropriate with the Circuit Courts of Davidson County, Tennessee.

## FACTS AND CLAIMS

11.     Mr. Cummings signed Mr. Keefer as a client on behalf of Cummings Manookian in 2017 via an Attorney-Client Agreement ("CM Agreement"). The CM Agreement included a contingency fee provision, and the fee was to be earned by Cummings Manookian, via work performed by Brian Cummings and/or Brian Manookian only if Mr. Keefer received a monetary award via settlement, judgment, or award from the Keefer matter.

12.     Mr. Cummings continued to work on the Keefer matter after leaving Cummings Manookian in 2018, including with the knowledge and consent of Mr. Keefer and for the benefit of Mr. Keefer and the other beneficiaries of the Keefer matter.

13.     Mr. Cummings performed legal work on the Keefer matter for over three years until he withdrew as counsel for Mr. Keefer in October 2020.

14.     Mr. Cummings withdrew as counsel in October 2020 after separate oral statements to him by Ms. Hagh and by Mr. Keefer during an approximately one week period indicated that their working relationships were strained. Mr. Cummings promptly called the Tennessee Board of Professional Responsibility ("BPR") asking if those statements required him

to withdraw as counsel, and he was told by the BPR with no equivocation and with no qualification that he was required to withdraw as counsel and to do so as soon as possible.

15. Mr. Cummings' withdrawal as counsel was not a choice he made, and it was not a voluntary withdrawal, because it was the comments by the client and by co-counsel, Ms. Hagh, that led to the situation that resulted in the BPR telling Mr. Cummings he was required to withdraw as soon as possible because he could no longer properly and ethically represent Mr. Keefer based on the comments made by Ms. Hagh and by Mr. Keefer.

16. Mr. Cummings was ethically required to follow the instructions and advice of the BPR in response to what action to take based on the comments made to him by Mr. Keefer and by Ms. Hagh.

17. In October 2020, Mr. Cummings provided a private letter to Mr. Keefer and Ms. Hagh communicating his withdrawal as counsel, and informing Mr. Keefer and Ms. Hagh that Mr. Cummings understood he was ethically required to withdraw as counsel based on the comments that Mr. Keefer and Ms. Hagh had very recently made. Neither Mr. Keefer nor Ms. Hagh ever communicated to Mr. Cummings orally or in writing that they had any factual or legal dispute with regard to the content of Mr. Cummings' October 2020 letter to them that communicating that Mr. Cummings believed he was required to withdraw as counsel because of the comments made by Ms. Hagh and by Mr. Keefer.

18. In October 2020, Mr. Cummings filed a Motion to Withdraw as Counsel for the Plaintiff ("Motion to Withdraw"). By the time that the Motion to Withdraw was filed, Mr. Keefer and Ms. Hagh had received a copy of Mr. Cummings October 2020 letter stating that Mr. Cummings believed he was ethically required to withdraw as a result of the comments made by

Ms. Hagh and by Mr. Keefer, and neither Mr. Keefer nor Ms. Hagh filed any type of Response in any way disputing or opposing the Motion to Withdraw.

19.     On November 20, 2020, the Fifth Circuit Court entered an Order granting Mr. Cummings' Motion to Withdraw as Counsel.

20.     On November 27, 2020, Mr. Cummings filed, in the Keefer lawsuit, a document entitled "Brian Cummings' Notice of Attorney's Lien" and this document cited Tennessee Code Annotated section 23-2-102.

21.     Mr. Keefer and Ms. Hagh learned of the filing of Brian Cummings' Notice of Attorney's Lien within days of its filing, including Ms. Hagh receiving a copy through the Circuit Court's electronic filing system.

22.     According to the publicly-available information on Caselink regarding the Davidson County Circuit Courts, the Fifth Circuit Court approved a settlement involving minor beneficiaries in the Keefer matter in October 2021.

23.     The Circuit Court approved a settlement in this matter involving at least one minor beneficiary, and therefore the Court also found that the amount of the settlement was acceptable/reasonable, and any such Court-approval included approving the total attorneys' fee.

24.     Tennessee Code Annotated section 23-2-102 provides a lien upon a plaintiff's or complainant's right of action from the date of the filing of the suit.

25.     Prior to the filing of the lawsuit, Mr. Cummings performed all aspects of the intake of the case, including meeting with and signing the client within two days of the death of the client's mother.

26.     After a review of the records from Vanderbilt Hospital, Mr. Cummings prepared the detailed expert summary letter which became the basis of the Complaint and the basis of the detailed summary letter sent to all experts.

27.     Mr. Cummings attended the presuit mediation as the only attorney on behalf of the Plaintiff.

28.     Mr. Cummings prepared and timely filed the 550 paragraph, 65 page, Complaint.

29.     Mr. Cummings prepared and propounded a significant portion of the written discovery propounded upon the Defendant. Mr. Cummings worked with the Plaintiff in preparing all of Plaintiff's written responses to discovery, at least through October 2020.

30.     Mr. Cummings contacted and retained all Rule 26 witnesses including all of the medical experts.

31.     After the filing of the Complaint and written discovery, Mr. Cummings continued to work diligently on behalf of the Plaintiff, including, but not limited to, (a) keeping Mr. Keefer updated regarding case events, answering questions he had, and working with him and meeting with him to prepare his typed, formal responses to written discovery, (b) contacting, retaining, and preparing and sending summaries of case materials (including deposition testimony and responses to written discovery) and copies of the underlying case materials to all of Mr. Keefer's eventual Rule 26 experts (and being the only attorney for Mr. Keefer to do so), of which there were eight or more medical experts and one expert economist, (c) preparing Mr. Keefer for his deposition and defending his deposition (and being the only attorney for Mr. Keefer to do so), (d) preparing Edward Goodwin, the decedent's boyfriend/fiancé for his deposition and defending his deposition (and being the only attorney for Mr. Keefer to do so), (e) taking or defending approximately 14 of the approximately 30 depositions that occurred (some of these depositions

were the same witness deposed in two parts / two depositions), and (f) preparing and serving Mr. Keefer's original approximately 85 page Rule 26 disclosures (and being the only attorney for Mr. Keefer to do so).

32. The entire duration of the Keefer matter from the time of signing the client to the Court approval referenced herein was 54 months.

33. Mr. Cummings was counsel or co-counsel on the Keefer matter from April 2017 through October 2020, which is 42 months.

34. Mr. Cummings' involvement for 42 months of the 54 months of the total duration of the Keefer matter represents 78% of the total duration of the Keefer matter.

35. Another attorney, Brian Manookian ("Mr. Manookian"), did some of the work on the Keefer matter, including Mr. Manookian doing some of the work while Mr. Manookian was still a Member at Cummings Manookian.

36. Mr. Manookian was not listed as counsel of record for Mr. Keefer when the original Complaint was filed – only Mr. Cummings and Ms. Hagh were.

37. Mr. Manookian has never informed Mr. Keefer, Ms. Hagh, or Mr. Cummings that he is seeking any amount of an attorney's fee from the Keefer matter.

38. Mr. Manookian has never filed a Notice of Attorney's Lien regarding the Keefer matter.

39. During Mr. Cummings' 42 months of involvement as counsel for Mr. Keefer, he and his firm, Cummings Law, paid over $60,000.00 in litigation expenses incurred during that period of time on the Keefer matter.

40. During Mr. Cummings' 42 months of involvement as counsel for Mr. Keefer, he paid 90-100% of the litigation expenses incurred during that period of time.

41.     By the time of Mr. Cummings' withdrawal, he had tried approximately 20 healthcare liability actions to verdict, including as second-chair or first-chair, and including trials in healthcare liability trials in the Fifth Circuit Court of Davidson County, Tennessee.

42.     By the time of Mr. Cummings' withdrawal, he had successfully completed the oral exam and the written exam to become Board certified in Medical Malpractice by the American Board of Professional Liability Attorneys (ABPLA) and he was certified accordingly.

43.     Mr. Keefer and the other beneficiaries in this matter have already received their net proceeds from the Keefer matter minus the litigation expenses and minus a total 33.33% attorneys' fee.

44.     To date, Mr. Cummings has not been paid or provided an attorney's fee for his 42 months of involvement and work on the Keefer matter that has apparently settled with Court approval.

45.     At this point, the amount of money determined to be provided to Mr. Cummings related his work in this matter and related to his attorney's lien does not change the amount of net proceeds to Mr. Keefer or the other beneficiaries from the Keefer matter.

46.     The amount of money determined to be provided to Mr. Cummings related to his work in this matter and related to his attorney's lien affects what amount of money Ms. Hagh receives for her attorney work on the Keefer matter.

47.     John Edwards ("Mr. Edwards"), an attorney from North Carolina, was co-counsel for Mr. Keefer at the end of this matter for less than 12 months.

48.     Mr. Edwards and his law firm were already provided with an agreed-to amount of attorneys' fees amount for their work in this matter.

49.     The remaining balance of attorney fees after Mr. Edwards received his fee are being held in the Bass, Berry, & Sims' Attorney Trust Account and will not be distributed until the dispute over attorneys' fees has been resolved.

50.     Mr. Edwards and his law firm were paid an amount of attorneys' fees from the total attorneys' fees in this matter per the terms of an agreement that Mr. Edwards and his firm had entered into with Mr. Keefer and / or Ms. Hagh as to what that split or portion of the total attorney's fee would be.

51.     During Mr. Cummings' involvement in the case, Mr. Cummings did not have an agreement with Mr. Keefer and / or Ms. Hagh as to what Mr. Cummings' split or portion of the total attorney's fee would be.

52.     At this point, the amount of money determined to be provided to Mr. Cummings related to his work in this matter and related to his attorney's lien has no effect on the amount of attorneys' fees paid to Mr. Edwards and his law firm.

53.     Mr. Cummings attempted to resolve this attorney's lien issue via mediation in late 2021, during which time Ms. Hagh represented Mr. Keefer on the attorney's lien issue, but that mediation effort did not resolve the matter.

54.     When Ms. Hagh represented Mr. Keefer on the attorney's lien issue, her share of the total attorney's fee would decrease based on what amount of that total attorneys' fee was provided to Mr. Cummings.

55.     In filings made by Ms. Hagh on behalf of Mr. Keefer on the attorney's lien issue, Ms. Hagh indicated that Mr. Keefer contended that arbitration was required on the attorney's lien issue, and Judge Joseph Binkley of the Fifth Circuit Court told Ms. Hagh to speak with Mr. Keefer to allow Mr. Keefer to choose if he wanted to proceed with arbitration or waive that

option. Months have passed since that instruction by Judge Binkley, and during that time counsel for Mr. Cummings has repeatedly asked Ms. Hagh in writing if Mr. Keefer was choosing to arbitrate the issue, and Ms. Hagh has communicated that she and Mr. Keefer claim to not understand what issue required resolution regarding Mr. Cummings' attorney's lien and have never communicated that Mr. Keefer chooses arbitration. Consequently, any potential right Mr. Keefer may have had to require arbitration of the attorney's lien issue was declined and/or was waived.

56.     Also in filings made by Ms. Hagh on behalf of Mr. Keefer on the attorney's lien issue, Ms. Hagh indicated that Mr. Keefer contended that any litigation regarding the attorney's lien issue had to proceed via a lawsuit filed separately from the Keefer healthcare liability matter. In accordance with that position of Mr. Keefer as stated by Ms. Hagh that a separate lawsuit was required to be filed to address the attorney's lien issue, this present action is filed.

57.     In 2019, Mr. Keefer entered into a new Attorney-Client Agreement regarding the Keefer matter with a firm named Manookian PLLC ("Manookian firm" and "Manookian agreement").

58.     The only attorney who signed the Manookian agreement was Mr. Manookian.

59.     The Manookian agreement was the first Attorney-Client Agreement that Mr. Keefer signed that mentioned Ms. Hagh in any way.

60.     Ms. Hagh did not have a signature line on the Manookian agreement, and Ms. Hagh did not sign the Manookian agreement.

61.     The Manookian firm was not a party to the Attorney-Client Agreement that Mr. Keefer entered into with Cummings Manookian in 2017.

62. The Manookian agreement stated, in part, that the law firm of Cummings Manookian no longer existed, and Mr. Keefer signed and entered into the Manookian agreement.

63. The Manookian agreement stated, in part, that a portion of the total attorneys' fees on the Keefer matter may be split with Brian Cummings of Cummings Law, and that this portion of the attorneys' fees paid to Brian Cummings would come from the total 33.33% contingence fee.

64. When Mr. Keefer signed the Manookian agreement in 2019, Mr. Keefer should have reasonably understood that Mr. Cummings would receive a portion of the total attorneys' fee on the Keefer matter for the legal work that Mr. Cummings performed on the Keefer matter. Mr. Cummings was not a party or signatory to the Manookian agreement.

65. The Manookian agreement was entered into without Mr. Cummings being told by Mr. Keefer, Ms. Hagh, or Mr. Manookian about the proposal that Mr. Keefer enter into the Manookian agreement.

66. Mr. Cummings provided legal services that benefited Mr. Keefer, and that benefitted Ms. Hagh regarding her interest in the resulting total attorney's fee, that Mr. Keefer and Ms. Hagh received, that were valuable legal services, and Mr. Cummings did so without an enforceable, written agreement with Mr. Keefer or with Ms. Hagh as to what split or portion of the total attorney's fee would be paid to Mr. Cummings under any situation.

67. During the time period that Mr. Cummings provided legal services for Mr. Keefer during the Keefer matter, Mr. Cummings expected to be compensated for his legal work.

68. During the time period that Mr. Cummings provided legal services for Mr. Keefer during the Keefer matter, Mr. Keefer and Ms. Hagh should have reasonably understood that Mr. Cummings expected to be compensated for his legal work on the Keefer matter.

69. It would be unjust for Mr. Cummings to not be compensated for his legal work on the Keefer matter.

70. Ms. Hagh would be unjustly enriched if she were to receive funds which were earned by Mr. Cummings for his service in the Shoemaker matter.

71. Mr. Cummings has never entered into an agreement of any kind that waived his right to be paid a reasonable amount for his legal work he performed on the Keefer matter if he was required to withdraw as counsel under our factual situation.

72. Mr. Cummings has never entered into an agreement of any kind that waived his right to an attorney's lien, including the right to an attorney's lien that arose at the time he filed the Keefer matter in 2019.

73. Mr. Cummings has never entered into an agreement of any kind that waived his right to be paid a reasonable amount for his legal work if he withdrew as counsel for any reason if Mr. Keefer had existing co-counsel continuing to be available for Mr. Keefer and who stayed involved in the matter.

74. Mr. Keefer signed and entered into two different Attorney-Client Agreements in the Keefer matter, one in 2017 and a second in 2019, and both of these Agreements referred to Mr. Cummings receiving some unidentified portion of the total attorneys' fee.

75. The statute that provides the applicable right to an attorney's lien for Mr. Cummings, Tenn. Code Ann. section 23-2-102, does not include any exclusionary language or provisions by which such a right to an attorney's lien can be waived or negated by any facts or alleged circumstances after an attorney filed the applicable lawsuit on behalf of a plaintiff.

Plaintiff's prayers for relief are:

1. That Defendants be served and required to answer as required by law.

2.      That upon a hearing in this matter, the Court find that it would be unjust for

Mr. Cummings not be fairly compensated for the work done in the Keefer matter and that it

would be further unjust for Ms. Hagh to be paid and receive the benefits of Mr. Cummings work.


3.      That the Court determine the amount Mr. Cummings is to be awarded for his

Involvement in the Keefer matter pursuant to his timely filed Notice of Attorney's Lien, and

pursuant to the common law remedies, including quantum meruit, unjust enrichment (to Mr.

Keefer and/or Ms. Hagh), and equality and that he be granted judgement accordingly.

4.      For general relief.

Respectfully submitted,


        /s/   James W. Price, Jr.
**JAMES W. PRICE, JR., #3538**
Price, Hill, & Kolarich
201 4th Avenue N., Suite 1800
Nashville, TN 37219
(615) 244-5772 – phone
(615) 244-5821 - fax
Jprice@pricehillkolarich.com
*Attorney for the Plaintiff*

 Neutral

As of: August 2, 2023 11:06 PM Z

## *In re Project Restore, LLC*

United States Bankruptcy Court for the Middle District of Tennessee

October 7, 2022, Decided

Case No. 3:22-bk-01897, Chapter 7

**Reporter**

<mark>2022 Bankr. LEXIS 2868</mark> *; <mark>2022 WL 6233552</mark>

IN RE: Project Restore, LLC, Debtor.

## Core Terms

arbitration, involuntary, petitioning creditor, bona fide dispute, involuntary bankruptcy, arbitration agreement, bankruptcy court, contracts, disputes, parties, exclusive jurisdiction, purposes, abstain, arbitration provision, inherent conflict, Petitioning, matters, courts, cases

## Case Summary

### Overview

HOLDINGS: [1]-When creditors filed an involuntary petition against the debtor under Chapter 7 of the Bankruptcy Code relating to defaulted construction contracts, denial of the debtor's motion to dismiss or for abstention based on the arbitration agreements in the contracts signed by the creditors was appropriate because the debtor's position of requiring arbitration as a prerequisite to an involuntary bankruptcy petition unduly would have thwarted the rights of the creditors and created a result at odds with the Bankruptcy Code. Determination of the validity of the creditors' petition and whether to enter an order for relief were matters over which the court had exclusive jurisdiction and not something that was to be assigned to an arbitrator simply because the parties had an agreement to arbitrate their contract disputes.

### Outcome

Debtor's motion denied to extent motion sought dismissal or abstention based on arbitration agreements.

## LexisNexis® Headnotes

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Prerequisites for Commencement

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Standing

**HN1**[  ]  **Involuntary Cases, Prerequisites for Commencement**

The critical initial issue in any involuntary bankruptcy is whether petitioning creditors' claims are subject to a bona fide dispute — not the actual allowance, disallowance, or liquidation of those claims.

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Eligible Debtors

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Prerequisites for Commencement

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Standing

**HN2**[ ]  **Involuntary Cases, Eligible Debtors**

In deciding the efficacy of an involuntary bankruptcy, the court must determine, among other things, whether each petitioner has a claim for at least $18,600 that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount. *11 U.S.C.S. § 303(b)(1)*. A bona fide dispute exists if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts. The Sixth Circuit has stated that, importantly, the court need not resolve any genuine issues of fact or law; it only must determine that such issues exist.

Business & Corporate Compliance > ... > Alternative Dispute Resolution > Arbitration > Arbitrability

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Arbitration Agreements

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Stay Pending Arbitration

*HN3*[🔻] **Arbitration, Arbitrability**

The Federal Arbitration Act (FAA) provides that an arbitration agreement shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. *9 U.S.C.S. §§ 2 - 3*. The FAA provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, *9 U.S.C.S. § 3*; and it authorizes a federal district court to issue an order compelling arbitration if there has been a failure, neglect, or refusal to comply with the arbitration agreement, *9 U.S.C.S. § 4*. The FAA thus establishes a federal policy favoring arbitration, requiring that courts rigorously enforce agreements to arbitrate.

Bankruptcy Law > Procedural Matters > Jurisdiction

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Scope

*HN4*[🔻] **Procedural Matters, Jurisdiction**

Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate. Disputes involving the Bankruptcy Code and the Federal Arbitration Act often present a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution.

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Arbitration Agreements

Evidence > Burdens of Proof > Allocation

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Scope

*HN5*[🔻] **Federal Arbitration Act, Arbitration Agreements**

Notwithstanding the enforcement requirements of the Federal Arbitration Act (FAA), like any statutory directive, the FAA's mandate may be overridden by a contrary congressional command. When there is a tension between the FAA and another federal statute, courts must determine whether there is a contrary congressional command which may be deduced from (i) the text of the statute; (ii) the statute's legislative history; or (iii) an inherent conflict between arbitration and the statute's underlying purposes. The party seeking to prevent enforcement of the arbitration agreement bears the burden.

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Scope

*HN6*[🔻] **Arbitration, Federal Arbitration Act**

Although the Sixth Circuit has not weighed in on whether Congress intended the Bankruptcy Code as a whole to conflict with the Federal Arbitration Act under the standard, other circuit courts of appeal have overwhelmingly concluded that neither the text, nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude enforcement of agreements to arbitrate in the context of a bankruptcy case.

Bankruptcy Law > Procedural
Matters > Jurisdiction > Core Proceedings

Bankruptcy Law > Procedural
Matters > Jurisdiction > Noncore Proceedings

*HN7*[🔻] **Jurisdiction, Core Proceedings**

In deciding whether an inherent conflict exists, courts typically first determine whether the dispute that would be subject to arbitration is a core or non-core proceeding pursuant to *28 U.S.C.S. § 157(b)*. If non-core, a court is generally without discretion to preclude the enforcement of the arbitration provision and the inquiry ends. If core, the court moves to the next step in the analysis—whether enforcement of such agreement would inherently conflict with the underlying purposes of the Bankruptcy Code.

Bankruptcy Law > Procedural
Matters > Jurisdiction > Core Proceedings

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Standing

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Prerequisites for Commencement

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Grounds for Relief

### *HN8*[⬇] **Jurisdiction, Core Proceedings**

The determination of the validity of an involuntary petition for bankruptcy is a core proceeding under *28 U.S.C.S. § 157(b)(2)*. But that does not end the court's inquiry. The court must next consider whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code. Cases finding a conflict have concluded that the claims at the center of the dispute were directly related to the Bankruptcy Code. As it relates to the review of an involuntary petition, it is clear that there is an inherent conflict between the underlying purposes of the Bankruptcy Code and arbitration, at least to the extent that arbitration would preclude a creditor's right to pursue an involuntary bankruptcy.

Bankruptcy Law > Procedural Matters > Jurisdiction > Federal District Courts

Bankruptcy Law > Procedural Matters > Jurisdiction

### *HN9*[⬇] **Jurisdiction, Federal District Courts**

Through referral from district courts pursuant to *28 U.S.C.S. § 157*, bankruptcy courts have exclusive jurisdiction over bankruptcy cases. *28 U.S.C.S. § 1334(a)*.

Bankruptcy Law > Procedural Matters > Jurisdiction

### *HN10*[⬇] **Procedural Matters, Jurisdiction**

The bankruptcy court is the sole court with which a petition, whether voluntary or involuntary, may be filed to commence a bankruptcy proceeding. *11 U.S.C.S. §§ 301* and *303*.

Bankruptcy Law > ... > Voluntary Cases > Filing Requirements > Filing of Petition

Bankruptcy Law > ... > Commencement of

Case > Involuntary Cases > Prerequisites for Commencement

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Standing

### *HN11*[⬇] **Filing Requirements, Filing of Petition**

In reviewing a contested involuntary bankruptcy petition, the bankruptcy court must determine whether the petition satisfies the requirements of *11 U.S.C.S. § 303* and related Bankruptcy Rules, and then determine whether an order for relief should be entered, *11 U.S.C.S. § 303(h)*, something that happens simultaneously with the filing of a voluntary petition, *11 U.S.C.S. § 301(b)*.

Bankruptcy Law > Procedural Matters > Jurisdiction

Civil Procedure > ... > Subject Matter Jurisdiction > Jurisdiction Over Actions > Exclusive Jurisdiction

### *HN12*[⬇] **Procedural Matters, Jurisdiction**

By requiring that bankruptcy cases be commenced by the filing of a petition in a bankruptcy court, Congress clearly intended bankruptcy courts to have the exclusive jurisdiction to evaluate and rule on the validity of such a petition.

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Prerequisites for Commencement

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Standing

### *HN13*[⬇] **Involuntary Cases, Prerequisites for Commencement**

The Bankruptcy Code does not require that a petitioning creditor's claim be liquidated for it to support an involuntary bankruptcy petition; it just need not be shown by the debtor to be subject to a bona fide dispute.

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Eligible Debtors

Business & Corporate Compliance > ... > Alternative Dispute Resolution > Arbitration > Arbitrability

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

**HN14**[⬇] **Involuntary Cases, Eligible Debtors**

A creditor without an arbitration clause has the right to be a petitioning creditor for involuntary bankruptcy without having a fully adjudicated claim.

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Prerequisites for Commencement

**HN15**[⬇] **Involuntary Cases, Prerequisites for Commencement**

A creditor cannot contract away its right as a petitioner in an involuntary bankruptcy case any more than a debtor can contract away its right to file a voluntary bankruptcy.

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Prerequisites for Commencement

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Standing

**HN16**[⬇] **Involuntary Cases, Prerequisites for Commencement**

Creditors cannot prospectively delegate rights under the Bankruptcy Code to an arbitrator, so the effect of a dismissal or abstention at the petitioning stage would, indeed, be to deprive the petitioning creditors of a right under *11 U.S.C.S. § 303* without the court ever hearing any evidence about the normal factors involved in an involuntary bankruptcy case.

**Counsel:** [*1] For Project Restore LLC, Debtor, Alleged Debtor: Roscoe Green, Edmund S. Whitson, III, Adams and Reese LLP, Tampa, FL; HENRY C SHELTON, III, ADAMS AND REESE LLP, MEMPHIS, TN.

For Christopher Todd, Petitioning Creditor: WILLIAM L NORTON, III, BRADLEY ARANT BOULT CUMMINGS LLP, NASHVILLE, TN.

**Judges:** Randal S. Mashburn, United States Bankruptcy Judge.

**Opinion by:** Randal S. Mashburn

# Opinion

**ORDER AND MEMORANDUM OPINION DENYING MOTION TO DISMISS INVOLUNTARY PETITION OR, IN THE ALTERNATIVE, TO ABSTAIN BASED ON ARBITRATION AGREEMENTS, WITHOUT PREJUDICE TO OTHER ARGUMENTS**

The putative debtor in this involuntary bankruptcy, Project Restore, LLC ("Debtor"), has sought dismissal of the case based on the impact of arbitration clauses in contracts signed by the three petitioning creditors. Alternatively, Debtor has requested that the Court abstain from hearing the involuntary bankruptcy case in deference to allowing the disputed claims of the petitioning creditors to first be resolved by arbitration.

Although there generally is a strong preference for enforcing arbitration agreements even in some bankruptcy matters, Debtor's position of requiring arbitration as a prerequisite to an involuntary petition would unduly thwart the rights [*2] of petitioning creditors and create a result at odds with the Bankruptcy Code. *HN1*[⬆] The critical initial issue in any involuntary bankruptcy is whether petitioning creditors' claims are subject to a bona fide dispute — not the actual allowance, disallowance, or liquidation of those claims. Determination of the validity of the petition and whether to enter an order for relief are matters over which this Court has exclusive jurisdiction and not something that can be punted to an arbitrator simply because the parties have an agreement to arbitrate their contract disputes.

## BACKGROUND

### Involuntary Petition and Response

On June 16, 2022, Christopher M. Todd ("Todd"), Brian and Amy Maas (together as "Maas"), and R. Kenneth Barnes ("Barnes") (collectively, "Petitioning Creditors"), filed an involuntary petition against Debtor under *Chapter 7 of the Bankruptcy Code*. Each Petitioning Creditor claims to be owed an amount in excess of the statutory minimum of $18,600 relating to defaulted construction contracts. Debtor responded with a Motion to Dismiss, disputing any liability as well as the amount of the alleged debts, and requesting the Court dismiss the petition or abstain in favor of arbitration.

### [*3] Arbitration Provisions

The construction contracts between Debtor and each of the Petitioning Creditors contain arbitration provisions. The provision from the Todd and Barnes contracts states:

> Should any dispute arise relative to the performance of this contract that the parties cannot satisfactorily resolve, then the parties agree that the dispute shall be resolved by binding arbitration conducted by the American Arbitration Association. The party demanding arbitration shall give written notice to the opposite party and the American Arbitration Association promptly after the matter in dispute arises. In no event, however, shall a written notice of demand for arbitration be given after the date on which a legal action concerning the matter in dispute would be barred by the appropriate statute of limitations.

The provision from the Maas contract is virtually identical but selects a different arbitration service than the one identified in the other two contracts. It states:

> Should any dispute arise relative to the performance of this contract that the parties cannot satisfactorily resolve, then the parties agree that the dispute shall be resolved by binding arbitration conducted by a single **[*4]** arbitrator, through JAMS. The party demanding arbitration shall give written notice to the opposite party and the JAMS promptly after the matter in dispute arises. In no event, however, shall a written notice of demand for arbitration be given after the date on which legal action concerning the matter in dispute would be barred by the appropriate statute of limitations.

**Procedural Status**

The parties agreed to bifurcate the hearing on Debtor's motion to dismiss the involuntary petition. By consent, they set up a briefing and hearing schedule designed to carve out the legal issue on arbitration before moving forward with an evidentiary hearing on the factual questions that arise in an involuntary bankruptcy, such as whether the Petitioning Creditors' claims are subject to a bona fide dispute and whether the Debtor is generally paying its debts as they become due.

The Court conducted a hearing on October 4, 2022, limited to the narrow issue of whether the stipulated existence of standard arbitration clauses in the pertinent contracts would mandate that the claims first be decided by an arbitrator before the involuntary bankruptcy could proceed. Alternatively, the Court was asked to determine **[*5]** whether the role of the arbitration clauses created a sufficient justification for the Court to exercise its discretion to abstain from the matter in deference to arbitration. For purposes of the hearing on October 4, 2022, it was stipulated that the contracts containing the arbitration provisions are authentic and admissible into evidence.

The agreed upon process was for the Court first to decide the arbitration issue and then, only if it declined to dismiss the case or abstain, proceed with an evidentiary hearing scheduled for November 3, 2022.

**DISCUSSION**

**The Bona Fide Dispute Factor in Involuntary Bankruptcies**

*HN2*[ ] In deciding the efficacy of an involuntary bankruptcy, the Court must determine, among other things, whether each petitioner has a claim for at least $18,600 that is "not contingent as to liability or the subject of a bona fide dispute as to liability or amount." *11 U.S.C. § 303(b)(1)*. A bona fide dispute exists "[i]f there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts . . . ." *Riverview Trenton Railroad Co. v. DCS, Ltd. (In re DSC, Ltd.), 486 F.3d 940, 944-45 (6th Cir. 2007)* (quoting *Booher Enterprises v. Eastown Auto Co. (In re Eastown Auto Co.), 215 B.R. 960, 965 (B.A.P. 6th Cir. 1998)* (quoting *In re Lough, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986)*)). The Sixth Circuit has stated that, "[i]mportantly, the court need not resolve any genuine **[*6]** issues of fact or law; it only must determine that such issues exist." *In re DSC, Ltd., 486 F.3d at 944-45*.

Even though the Court will not actually resolve any genuinely disputed issue in connection with ruling on the involuntary petition, it is Debtor's position that the Court should dismiss the case or abstain from ruling on the petition because the Court cannot avoid deciding what Debtor argues to be non-core, arbitrable issues in the process of ruling on the petition. This is the fatal flaw in Debtor's reasoning. While it is true that it is impossible to avoid hearing evidence about the claims in determining whether they are subject to a bona fide dispute, it is not necessary to liquidate the claims or decide the ultimate allowance or disallowance of any claim.

One aspect of Debtor's argument relates to its view of the interpretation of *section 303(b)(1)*. Debtor contends that the reference to "bona fide dispute as to liability or amount" means that any dispute whatsoever as to the precise amount renders a petitioning creditor ineligible. Under Debtor's approach, a bona fide dispute over whether a debt is $50,000 or $50,001 keeps the creditor from being an eligible petitioner. Petitioning Creditors take the position that the

pertinent [*7] question is whether there is no bona fide dispute as to an amount of at least $18,600 and it is irrelevant whether there might be a legitimate debate about the exact dollar figure above that threshold amount.

Although the Court has not ruled on that interpretation question, it has indicated to the parties that it leans toward the view that a creditor can be a valid petitioner in an involuntary case as long as there is no bona fide dispute as to a minimum debt of $18,600. In doing so, it has generally accepted the rationale articulated in *In re Miller, 489 B.R. 74, 81-83 (Bankr. E.D. Tenn. 2013)*.

Debtor has argued that, given the Court's view on how to interpret the statute regarding disputes over amounts, it would be impossible for the Court to enter an order for relief without deciding that there is a valid claim in a minimum amount of $18,600 per Petitioning Creditor. Thus, Debtor argues, the Court would have to decide the merits of various defenses and even possible counterclaims that might be asserted by Debtor in making a ruling. In short, under Debtor's analysis, while the Court may not necessarily fully liquidate a claim in the involuntary bankruptcy decision process, it would effectively destroy any ability of Debtor to take advantage [*8] of the parties' agreed upon arbitration mechanism for resolving disputes about their contracts.

It is true that this Court would be required to hear some evidence relating to both liability and claim amount to rule on the involuntary petition. But it is not accurate to say that any ruling would be dispositive of the ultimate claim determination or preclude later arbitration on the claims. A similar scenario plays out frequently in the summary judgment context. A court might deny summary judgment because of a genuine issue as to material fact and later rule in favor of the same movant regarding the merits of the lawsuit. Likewise, a ruling on whether there is a bona fide dispute regarding a claim for the limited purpose of whether to enter an order for relief does not necessarily have any preclusive effect on the resolution of a specific claim. Indeed, it is possible to envision a scenario where an order for relief is entered but then the claim determination matter is still sent to an arbitrator who should have a clean slate in determining both liability and amount.

## Arbitration and Its Role in Bankruptcy

*HN3* [↑] The *Federal Arbitration Act ("FAA")* provides, in relevant part, that an arbitration agreement "shall be valid, irrevocable, [*9] and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *9 U.S.C. §§ 2-3*. "The [FAA] ... provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, *§ 3*; and it authorizes a federal district court to issue an order compelling arbitration if there has been a 'failure, neglect, or refusal' to comply with the arbitration agreement, *§ 4*." *Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987)*. "The [FAA] thus establishes a 'federal policy favoring arbitration,' requiring that '[courts] rigorously enforce agreements to arbitrate.'" *Id.* (citations omitted).

*HN4* [↑] "At the same time, however, 'Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" *Moses v. CashCall, Inc., 781 F.3d 63, 71 (4th Cir. 2015)* (quoting *Celotex Corp. v. Edwards, 514 U.S. 300, 308, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995)* (additional internal quotation marks and citation omitted)). Disputes involving the Bankruptcy Code and the FAA often "present[ ] a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution." *United States Lines, Inc. v. Am. Steamship Owners Mutual Prot. and Indem. Ass'n, Inc. (In re United States Lines, Inc.), 197 F.3d 631, 640 (2nd Cir. 1999)* (citation omitted).

*HN5* [↑] Notwithstanding the FAA's enforcement [*10] requirements, "[l]ike any statutory directive, the [FAA]'s mandate may be overridden by a contrary congressional command." *McMahon, 482 U.S. at 226*. When there is a tension between the FAA and another federal statute, courts must determine whether there is a contrary congressional command which may be deduced from (i) the text of the statute, (ii) the statute's legislative history, or (iii) an inherent conflict between arbitration and the statute's underlying purposes. *Moses, 781 F.3d at 71* (citing *McMahon, 482 U.S. at 227* (additional citation omitted)). The party seeking to prevent enforcement of the arbitration agreement bears the burden. *Id.*

*HN6* [↑] Although the Sixth Circuit has not weighed in on whether Congress intended the Bankruptcy Code as a whole to conflict with the FAA under the *McMahon* standard, "other circuit courts of appeal have overwhelmingly concluded that neither the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude enforcement of agreements to arbitrate in the context of a bankruptcy case." *In re Patriot Solar Grp., LLC, 569 B.R. 451, 456-59 (Bankr. W.D. Mich. 2017)* (citing cases from the Second, Third, Fourth, Ninth, and Eleventh Circuits).

*HN7* [↑] In deciding whether an inherent conflict exists, courts typically first determine whether the dispute that would

be subject to arbitration **[*11]** is a core or non-core proceeding pursuant to *28 U.S.C. § 157(b)*. *In re Patriot Solar Grp., LLC, 569 B.R. 451, 457 (Bankr. W.D. Mich. 2017)*. If non-core, "a court is generally without discretion to preclude the enforcement of the arbitration provision and the inquiry ends." *Id. at 457-58*. If core, "the court moves to the next step in the analysis—whether enforcement of such agreement would inherently conflict with the underlying purposes of the Bankruptcy Code." *Id. at 458*.

**Request to Arbitrate in the Context of the Involuntary Petition**

*HN8*[⬆] Starting with the first question of core or non-core, the determination of the validity of an involuntary petition is a core proceeding under *28 U.S.C. § 157(b)(2)*. *See In re Virginia Broadband, LLC, 498 B.R. 90, 93 (Bankr. W.D. Va. 2013)* (referring to a voluntary petition); *In re Loe, No. 07-12045-BKC-RBR, 2007 Bankr. LEXIS 1146, 2007 WL 997581, at *1 (Bankr. S.D. Fla. Mar. 29, 2007)* ("The determination of whether an order for relief should be granted in an involuntary case is a core proceeding." (citing *28 U.S.C. § 157(b)(2)(A)* and *11 U.S.C. § 303(h)*)); *In re Fisher Island Invs., Inc., No. 11-17047-AJC, 2014 Bankr. LEXIS 1277, 2014 WL 1343269, at *3 (Bankr. S.D. Fla. Mar. 28, 2014)* ("[T]he determination of the validity of the alleged debts underlying [involuntary] petitions is a core proceeding," since the "validity of those interests 'will determine[e] whether an order of relief should be granted.'" (citing *In re Loe, 2007 Bankr. LEXIS 1146, 2007 WL 997581, at *1*)). But does that not end the court's inquiry.

The court must next consider whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code. "[C]ases finding a McMahon conflict concluded **[*12]** that the claims at the center of the dispute were directly related to the Bankruptcy Code." *Kiskaden v. LVNV Funding, LLC (In re Kiskaden), 571 B.R. 226, 233 (Bankr. E.D. Ky. 2017)* (citing cases from Fourth, Fifth and Ninth circuit courts of appeal). As it relates to the review of an involuntary petition, it is clear that there is an inherent conflict between the underlying purposes of the Bankruptcy Code and arbitration, at least to the extent that arbitration would preclude a creditor's right to pursue an involuntary bankruptcy.

*HN9*[⬆] First, through referral from district courts pursuant to *28 U.S.C. § 157*, bankruptcy courts have exclusive jurisdiction over bankruptcy cases. *See 28 U.S.C. § 1334(a)* (With exceptions not applicable to the filing of a petition, "the district courts shall have original and exclusive jurisdiction of all cases under title 11."); *see also In re Garnett, 303 B.R.*

*274, 277 (E.D.N.Y. 2003)* ("Thus the filing of the petition commences the case, which has the effect under *28 U.S.C. § 1334(d)* of vesting exclusive jurisdiction over the property of the debtor and of the estate in the district court, and hence the bankruptcy court, in which the petition is filed.").

*HN10*[⬆] Second, the bankruptcy court is the sole court with which a petition, whether voluntary or involuntary, may be filed to commence a bankruptcy proceeding. *See 11 U.S.C. § 301, 303*. A bankruptcy case could not be **[*13]** commenced by filing a petition for bankruptcy with an arbitrator.

*HN11*[⬆] Further, in reviewing a contested involuntary petition, the bankruptcy court must determine whether the petition satisfies the requirements of *section 303 of the Bankruptcy Code* and related Bankruptcy Rules, and then determine whether an order for relief should be entered, *see § 303(h)*, something that happens simultaneously with the filing of a voluntary petition, *see § 301(b)*. If the court were to refer a ruling on the validity of the involuntary petition and the decision as to whether to enter an order for relief to an arbitrator, the arbitrator could not enter any such order. The court would be delegating to an arbitrator a question over which Congress intended that bankruptcy courts have exclusive jurisdiction.

*HN12*[⬆] By requiring that bankruptcy cases be commenced by the filing of a petition in a bankruptcy court, Congress clearly intended bankruptcy courts to have the exclusive jurisdiction to evaluate and rule on the validity of such a petition. On these specific matters — whether an involuntary petition is valid based on the eligibility of Petitioning Creditors and whether an order for relief should be entered — there is an inherent conflict between arbitration and the **[*14]** Bankruptcy Code.

Debtor seeks to ignore the clear distinction between a contested matter involving the validity of an involuntary petition, which does not require claim determination, and litigation over a claim. It would have the Court blend the two matters together and find that this Court should not decide the first issue because it is inextricably intertwined with the second issue that is subject to the arbitration provision.

Admittedly, this Court cannot decide if the petition is valid in terms of having qualified petitioners without some evidence about whether there is a bona fide dispute about Petitioning Creditors' claims, just as it must hear evidence about whether Debtor is generally paying debts as they become due. *See 11 U.S.C. § 303*. But at this stage the Court does not have to make ultimate determinations about claims any more than it must make ultimate findings about the likelihood of creditors to be paid from the Debtor's assets.

*HN13*[⬆] The Bankruptcy Code does not require that a petitioning creditor's claim be liquidated for it to support an involuntary petition; it just need not be shown by the debtor to be subject to a bona fide dispute. *In re Miller, 489 B.R. at 82*. If the Court accepted Debtor's approach on arbitration, **[*15]** the practical effect would lead to inconsistent treatment of petitioning creditors with and without arbitration agreements and would mean that any creditor who signs a contract with an arbitration provision has given up a basic right under the Bankruptcy Code. *HN14*[⬆] A creditor without an arbitration clause has the right to be a petitioning creditor without having a fully adjudicated claim. However, under Debtor's approach, a petitioning creditor with a disputed claim subject to an arbitration clause would have to have to have an arbitration award in order to qualify as a petitioning creditor, regardless of whether the dispute was bona fide.

Additionally, if the parties' positions were reversed, it is hard to imagine anyone seriously arguing that Debtor could be totally deprived of the right to file a voluntary bankruptcy because its three primary creditors held disputed, arbitrable claims. *HN15*[⬆] From the Court's standpoint, a creditor cannot contract away its right as a petitioner in an involuntary case any more than a debtor can contract away its right to file a voluntary bankruptcy.

Debtor's counsel stated at oral argument that its request is not about forfeiture of any right of the creditors **[*16]** but merely enforcement of their agreements to arbitrate. *HN16*[⬆] However, creditors cannot prospectively delegate rights under the Bankruptcy Code to an arbitrator, so the effect of a dismissal or abstention at this stage would, indeed, be to deprive the Petitioning Creditors of a right under *section 303 of the Bankruptcy Code* without the Court ever hearing any evidence about the normal factors involved in an involuntary bankruptcy case.

Debtor has also asserted that the involuntary bankruptcy is merely a collection leverage tool being utilized by three disgruntled customers. That allegation could potentially go to the issue of whether the petition was filed in good faith. It does not provide a basis for requiring arbitration of the most fundamental issues involved in an involuntary petition.

One final point of emphasis should be made. This Court is making no determination at this time regarding whether arbitration should be used at some point in resolving disputes over the claims in the event an order for relief is entered. There are numerous variables that would come into play in making that determination — some requiring further legal analysis and some based more on practical considerations. The Court will consider those **[*17]** issues if and when they arise. For purposes of this ruling, the Court is simply holding

that it is this Court, not an arbitrator, that must decide whether the involuntary petition is valid as it relates to the eligibility of Petitioning Creditors and whether an order for relief should be entered. This Court will not refrain from carrying out that obligation based on the existence of an arbitration agreement.

Debtor's motion is denied to the extent it seeks dismissal or abstention based on the arbitration agreements. The denial is without prejudice to any other argument raised in the motion to dismiss.

IT IS SO ORDERED.

/s/ Randal S. Mashburn

Randal S. Mashburn

U.S. Bankruptcy Judge

Dated: 10/7/2022

---

**End of Document**


Neutral

As of: August 2, 2023 11:02 PM Z

# *Property Mgmt. Connection, LLC v. Consumer Fin. Prot. Bureau*

United States District Court for the Middle District of Tennessee, Nashville Division

November 10, 2021, Filed

NO. 3:21-cv-00359

**Reporter**

2021 U.S. Dist. LEXIS 219041 *; 2021 WL 5282075

THE PROPERTY MANAGEMENT CONNECTION, LLC, et al., Plaintiffs, v. THE CONSUMER FINANCIAL PROTECTION BUREAU, et al., Defendants.

## Core Terms

moot, regulation, eviction, subject-matter, declaratory judgment, rent, consumer, Counts, case or controversy, moratorium, reasons, motion to dismiss, residential, cessation, requests, Bureau, subject matter jurisdiction, district court, allegations, Memorandum, repetition, temporary, asserts, facial, merits

## Case Summary

### Overview

HOLDINGS: [1]-Defendant federal agency's Motion to dismiss property managers' First Amended Complaint for lack of subject-matter jurisdiction as to its *Fed. R. Civ. P. 12(b)(1)* defense was granted and Motion as to its *Fed. R. Civ. P. 12(b)(6)* defense was denied because property managers' challenge to the federal agency regulation was moot in its entirety, which in fact foreclosed all possible avenues of relief for property managers; [2]-Property managers' claims were dismissed for lack of standing because they had not shown an injury in fact as required by U.S. Const. art. III; they did not allege damages; nor did they make any factual allegations that they had suffered compensable losses as a result of defendants' alleged violations of law. Property managers had requested only prospective relief, and prospective relief was moot.

### Outcome

Action dismissed.

## LexisNexis® Headnotes

Civil Procedure > Dismissal > Involuntary Dismissals > Motions

*HN1*[ ⬇ ]  **Involuntary Dismissals, Motions**

*Fed. R. Civ. P. 12(b)(1)* provides for the dismissal of an action for lack of subject matter jurisdiction. Subject matter jurisdiction is always a threshold determination.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation

*HN2*[ ⬇ ]  **Defenses, Demurrers & Objections, Motions to Dismiss**

There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial and factual attacks. A facial attack questions merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true. If those allegations establish federally-cognizable claims, jurisdiction exists.

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

*HN3*[ ⬇ ]  **Judges, Discretionary Powers**

A factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. Where there is a factual attack on the subject-matter jurisdiction of the court under *Fed. R. Civ. P. 12(b)(1)*, no presumptive

truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. The district court has considerable discretion in devising procedures for resolving questions going to subject matter jurisdiction.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Governments > Courts > Authority to Adjudicate

*HN4*[⬇] **Defenses, Demurrers & Objections, Motions to Dismiss**

Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Evidence > Burdens of Proof > Allocation

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

*HN5*[⬇] **Judges, Discretionary Powers**

In making its decision, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts. In reviewing a *Fed. R. Civ. P. 12(b)(1)* motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits. As always, the party invoking federal jurisdiction has the burden to prove that jurisdiction.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Civil Procedure > ... > Summary Judgment > Motions for Summary Judgment > Notice Requirement

*HN6*[⬇] **Defenses, Demurrers & Objections, Motions to Dismiss**

Consideration of evidence outside of the complaint when deciding a factual attack on subject-matter jurisdiction does not convert the motion into one for summary judgment.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

*HN7*[⬇] **Motions to Dismiss, Failure to State Claim**

Any grant of a *Fed. R. Civ. P. 12(b)(6)* motion would be a decision on the merits, and a district court simply should not render any decisions on the merits in cases where it lacks subject-matter jurisdiction and thus the jurisdiction to make any determination on the merits.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

*HN8*[⬇] **Defenses, Demurrers & Objections, Motions to Dismiss**

Mootness is a *Fed. R. Civ. P. 12(b)(1)* concern, not a *Fed. R. Civ. P. 12(b)(6)* concern.

Civil Procedure > ... > Justiciability > Mootness > Real Controversy Requirement

*HN9*[⬇] **Mootness, Real Controversy Requirement**

A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. Mootness implicates U.S. Const. art. III's case or controversy requirement. Accordingly, mootness can be raised at any stage of litigation because it is a jurisdictional requirement.

Civil Procedure > ... > Justiciability > Mootness > Real Controversy Requirement

*HN10*[⬇] **Mootness, Real Controversy Requirement**

The case-or-controversy requirement applies at all stages of review, not merely at the time the complaint is filed. If events occur during the pendency of a litigation which render the

court unable to grant the requested relief, the case becomes moot and falls outside the appellate court's jurisdiction.

Civil Procedure > ... > Justiciability > Mootness > Evading Review Exception

Constitutional Law > ... > Case or Controversy > Mootness > Conduct Capable of Repetition

### *HN11*[ ] Mootness, Evading Review Exception

Application of the capable of repetition, yet evading review exception to mootness doctrine is limited to situations where: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there is reasonable expectation that same complaining party will be subjected to same action again.

Civil Procedure > ... > Justiciability > Mootness > Evading Review Exception

Constitutional Law > ... > Case or Controversy > Mootness > Conduct Capable of Repetition

### *HN12*[ ] Mootness, Evading Review Exception

When there is no reasonable expectation that the same complaining party will be subject to the same action again, the 'capable of repetition yet evading review' exception does not apply.

Civil Procedure > ... > Justiciability > Mootness > Voluntary Cessation Exception

### *HN13*[ ] Mootness, Voluntary Cessation Exception

In any event, in voluntary cessation cases involving government entities the United States Court of Appeals for the Sixth Circuit's primary concern is not the mere possibility that the government could revert to a challenged practice but whether there is evidence that the government will flip-flop or has altered its conduct solely in response to litigation.

Governments > Courts > Authority to Adjudicate

### *HN14*[ ] Courts, Authority to Adjudicate

Standing is a critical component of the subject-matter jurisdiction of the federal courts; without it there is no Case or Controversy upon which the federal judicial power can act. Consequently if at any time a court discovers that a party bringing suit lacks standing, the case must be dismissed for want of jurisdiction. Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.

Civil Procedure > ... > Justiciability > Standing > Burdens of Proof

Constitutional Law > ... > Case or Controversy > Standing > Elements

Civil Procedure > ... > Justiciability > Standing > Injury in Fact

### *HN15*[ ] Standing, Burdens of Proof

For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue. More specifically, at least one plaintiff must have standing to seek each form of relief requested in the complaint. To have standing to sue, a plaintiff must show injury in fact, causation, and redressability.

Constitutional Law > ... > Case or Controversy > Standing > Elements

### *HN16*[ ] Standing, Elements

Injury in fact, as required for U.S. Const. art. III standing, is an invasion of a legally protected interest which is concrete and particularized and actual or imminent rather than conjectural or hypothetical. U.S. Const. Art. III, § II.

Civil Procedure > ... > Declaratory Judgments > Federal Declaratory Judgments > Scope of Declaratory Judgments

### *HN17*[ ] Federal Declaratory Judgments, Scope of

**Declaratory Judgments**

Declaratory judgment is available as a remedy only in cases of actual controversy. *28 U.S.C.S. § 2201*.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

*HN18*[⬇] **Defenses, Demurrers & Objections, Motions to Dismiss**

A dismissal under *Fed. R. Civ. P. 12(b)(1)* is necessarily not on the merits and thus is always without prejudice, even in cases where it may benefit the plaintiff little for the dismissal to be without prejudice because the prospects for curing the lack of subject-matter jurisdiction are bleak.

**Counsel:** **[*1]** For The Property Management Connection, LLC, Gordon J Schoeffler, National Association of Residential Property Managers, Plaintiffs: Benjamin M. Rose, RoseFirm, PLLC, Brentwood, TN; Caleb Kruckenberg, John Vecchione, New Civil Liberties Alliance, Washington, DC.

For The Consumer Financial Protection Bureau, Defendant: Karen S. Bloom, Consumer Financial Protection Bureau, Washington, DC; Kevin E. Friedl, Washington, DC.

For Dave Uejio, Defendant: Kevin E. Friedl, Washington, DC.

For United States of America, Defendant: James Matthew Blackburn, U.S. Attorney's Office (Nashville Office), Middle District of Tennessee, Nashville, TN.

**Judges:** ELI RICHARDSON, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ELI RICHARDSON

# Opinion

## MEMORANDUM OPINION

Pending before the Court are (1) Defendants Consumer Financial Protection Bureau and David Uejio's[1] (collectively,

---

[1] Mr. David Uejio is the acting director of the Consumer Financial Protection Bureau. *See* https://www.consumerfinance.gov/about-us/blog/the-bureau-is-taking-much-needed-action-to-protect-consumers-particularly-the-most-economically-vulnerable/ (last visited Nov. 8, 2021).

---

"CFPB") Motion to Dismiss pursuant to *Fed. Rs. Civ. P. 12(b)(1)* and *12(b)(6)* (Doc. No. 50, "CFPB Motion") supported by a memorandum of law (Doc. No. 51, "Memorandum in Support"), and (2) Defendant United States' Motion to Dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)*[2] (Doc. No. 52, "US Motion") (collectively, "Motions"). Plaintiffs responded to both Motions in a single brief. (Doc. No. 58, "Response"). Only CFPB replied. (Doc No. 59, **[*2]** "CFPB's Reply").

For the reasons discussed herein, CFPB's Motion will be granted as to its *12(b)(1)* defense and denied as moot as to its *12(b)(6)* defense. The US's Motion will be denied as moot.

## BACKGROUND[3]

Plaintiff Property Management Connection LLC ("PMC") is a company that "seeks to collect rent from tenants who rent properties it manages." (Doc. No. 38 at ¶¶ 1-2). Plaintiff Gordon J. Schoeffler is a Louisiana real estate attorney who "seeks to collect rent from tenants renting properties that his clients own and/or manage." (*Id.* at ¶ 3). Plaintiff the National

---

[2] Defendant United States asserts that the US Motion is made pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (Doc. No. 52 at 1). The Court assumes this is a scrivener's error and that the United States is actually bringing its motion pursuant to Fed. R. Civ. P. 12(b)(6) since it asserts that Plaintiffs claims "are moot and otherwise fail to state a claim on which relief may be granted." (*Id.*). This phrasing suggests that the United States believes that every basis for dismissal it asserts is one suggesting failure to state a claim and thus within the scope of Rule 12(b)(6). It is possible, however, that the United States meant to signal that the US Motion was brought under Rules 12(b)(1) & (6); if so, that would have been appropriate because, as noted below, mootness implicates Rule 12(b)(1) rather than Rule 12(b)(6).

The United States did not file a memorandum in support of its Motion as required by the local rules. However, the Court does not take issue with this for purposes of this Opinion, because the Court is dismissing the case based on the lack of subject-matter jurisdiction, which was not clearly asserted by the United States but was asserted by CFPB.

[3] The facts in this section are taken from Plaintiffs' First Amended Complaint. (Doc. No. 38). The First Amended Complaint is the operative complaint in this matter. *See Parry v. Mohawk Motors of Mich., Inc., 236 F.3d 299, 306 (6th Cir. 2000)*. Because CFPB has brought forth a factual challenge to subject-matter jurisdiction (as discussed more thoroughly below), the Court does not automatically accept the allegations of the Complaint as true (as it would in a facial challenge). However, the Court will assume arguendo that the Complaint's allegations are true, not least because they do not appear to be in dispute.

Association of Residential Property Managers ("NARPM") is an organization that "represents over 5,000 residential property managers nationwide." (*Id.* at ¶ 4). Plaintiff Matthew S. Chase is an attorney practicing law in Missouri at Chase Law Firm, which is also a plaintiff in this matter in its own stead. (*Id.* at ¶¶ 6-7). Plaintiff James Hodge is the sole owner of Plaintiff Apex Ventures, Inc., which is "a property management and real estate company in Nashville . . . [that] seeks to collect rent from tenants who rent properties owned and/or managed by [it]." (*Id.* at ¶¶ 8-9).

Defendant Bureau of Consumer Financial Protection ("CFPB") [*3] is a federal agency that regulates consumer financial products and services. (*Id.* at ¶ 10). Defendant David Uejio is CFPB's acting director. (*Id.* at ¶ 11). The United States also has been named as a Defendant, apart from the CFPB.[4] (*Id.* at ¶ 12).

On March 27, 2020, *Congress passed the Coronavirus Aid, Relief, and Economic Security Act* ("CARES Act"). (*Id.* at ¶ 16). The CARES Act placed a "limited and temporary moratorium on evictions, for certain types of federally backed housing". (*Id.*). The moratorium expired on July 24, 2020. (*Id.*).

On September 1, 2020, the Center for Disease Control ("CDC") issued the "Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19" ("Halt Order"). (*Id.* at ¶ 17). The Halt Order provides, in pertinent part, that "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action, shall not evict any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." (*Id.* at ¶ 19). Plaintiffs claim that the Halt Order essentially "stands as a backstop to [ ] state eviction moratoriums" and "purports to deprive home providers [*4] of any resort to state mechanisms for eviction." (*Id.* at ¶ 20). There have been several challenges to the Halt Order in various jurisdictions, including within the Sixth Circuit. (*Id.* at ¶¶ 37-41).

On April 22, 2021, the CFPB issued the Debt Collection Practice in Connection with the Global Covid-19 Pandemic regulation ("CFPB regulation"). (*Id.* at ¶ 42). "The CFPB [regulation] expands on the Halt Order and imposes new obligations on any person seeking to collect unpaid rent through the eviction process in any jurisdiction in which the Halt Order purportedly applies." (*Id.* at ¶ 43). Section

1006.9(c) of the CFPB regulation prohibits property owners from:

> (1) Fil[ing] an eviction action for non-payment of rent against a consumer to whom the CDC Order reasonably might apply without disclosing to that consumer clearly and conspicuously in writing, on the date that the debt collector provides the consumer with an eviction notice or, if no eviction notice is required by applicable law, on the date that the eviction action is filed, that the consumer may be eligible for temporary protection from eviction under the CDC Order; or

> (2) Falsely represent[ing] or impl[ying] to a consumer that the [*5] consumer is ineligible for temporary protection from eviction under the CDC Order.

(*Id.* at ¶ 45).

On May 3, 2021 Plaintiffs filed a motion for a temporary restraining order to prevent enforcement of the CFPB regulation. (Doc. No. 6). The Court denied the motion on May 14, 2021, concluding that in light of the Sixth Circuit's decision in *Tiger Lily LLC v. U.S. Dep't of Housing & Urban Dev., 992 F.3d 518 (6th Cir. 2021)*, Plaintiffs were not entitled to injunctive relief in part because "loss of rental income" was not sufficient to show irreparable harm. (Doc. No. 23 at 3-4, 10-18; Doc. No. 24).

Plaintiffs' First Amended Complaint asserts claims for (i) allegedly unlawful agency action in violation of the APA, (ii) the CFPB's alleged violation of the *First Amendment* for prohibiting truthful speech by requiring false speech, and (iii) declaratory judgment. (Doc. No. 38). Notably, although Plaintiffs style Count III as a separate claim for declaratory judgment, Counts I and II each itself also requests a declaratory judgment, albeit one to somewhat different effect than the one requested in Count III. (Doc. No. 38 at 27, 31).[5] More specifically, Count I requests a declaratory judgment that the CFPB regulation is in violation of the *Fair Debt Collection Practices Act*, Count II requests [*6] a declaratory judgment that the CFPB regulation is in violation of the *First Amendment*, and Count III requests a declaratory judgment that the CFPB regulation "does not apply in the Sixth Circuit, and that the Sixth Circuit Plaintiffs or anyone else in the Sixth Circuit seeking back rent in a rent or eviction proceeding are not required to provide any information to tenants about the [Halt] Order." (*Id.* at 27, 31, 33-34).[6]

---

[4] The Court is of the view that Plaintiffs' suing of the United States is duplicative of its suing of CFPB, a United States agency, but any such duplication ultimately is irrelevant to the Court's resolution of the Motions.

[5] Citations herein are to the page numbers added by the Clerk's Office as part of the electronic case filing process, which may differ from the page numbers used by the author/filer of the document.

[6] Plaintiffs define "Sixth Circuit Plaintiffs" to include Plaintiffs Hodge, Apex, PMC and the members of Plaintiff NARPM "who

Importantly, nowhere does the First Amended Complaint request an award of damages; instead it requests only prospective non-monetary relief, namely: the particular declaratory judgments just discussed; the invalidation of the CFPB regulation; and an injunction "prohibiting the [regulation]'s enforcement and prohibiting the entry, reentry, promulgation, or extension of the CFPB [regulation] or any order like it requiring anyone seeking back rent in a rent or eviction proceeding to provide any information about the [Halt] Order." (*Id.* at 27, 31, 33-34).

## LEGAL STANDARD

*HN1*[⬆] *Federal Rule of Civil Procedure 12(b)(1)* ("*Rule 12(b)(1)*") "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner, 751 F.3d 752, 759 (6th Cir. 2014)*. "Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon, 501 F.3d 534, 537 (6th Cir. 2007)* **(**citing *Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)*).

*HN2*[⬆] There are two types of motions to dismiss for lack **[*7]** of subject-matter jurisdiction: facial and factual attacks. *Gentek Bldg. Products, Inc. v. Sherman-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007)*. A facial attack questions merely the sufficiency of the pleading. *Id.* When reviewing a facial attack, a district court takes the allegations in the complaint as true. *Id.* If those allegations establish federally-cognizable claims, jurisdiction exists. *Id.*

*HN3*[⬆] A factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. *Id.* Where there is a factual attack on the subject-matter jurisdiction of the court under *Fed. R. Civ. P. 12(b)(1)*, no presumptive truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Id.* "[T]he district court has considerable discretion in devising procedures for resolving questions going to subject matter jurisdiction[.]" *Ohio Nat. Life Ins. Co. v. United States, 922 F.2d 320, 327 (6th Cir. 1990)*. The Sixth Circuit has noted that:

The factual attack, however, differs greatly for here the trial court may proceed as it never could under *12(b)(6)* or *Fed. R. Civ. Pro. 56*. *HN4*[⬆] Because at issue in a factual *12(b)(1)* motion is the trial court's jurisdiction—its very power to hear the case—there is substantial

operate within the confines of the Sixth Circuit." (Doc. No. 38 at 31-32).

authority that the trial court is free to weigh the evidence **[*8]** and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996)* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 890 (3d Cir. 1977)*).

*HN5*[⬆] In making its decision, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts.[7] *Gentek Bldg. Products, Inc., 491 F.3d at 330*; *see also Nichols v. Muskingum Coll., 318 F.3d 674, 677 (6th Cir. 2003)* ("In reviewing a *12(b)(1)* motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits."); *Cunningham v. Rapid Response Monitoring Servs., Inc., 251 F. Supp. 3d 1187, 1192 (M.D. Tenn. 2017)* (discussing *Gentek*). As always, the party invoking federal jurisdiction has the burden to prove that jurisdiction. *Global Technology, Inc. v. Yubei (XinXiang) Power Steering Sys. Co., 807 F.3d 806, 810 (6th Cir. 2015)*; *Golden v. Gorno Bros., 410 F.3d 879, 881 (6th Cir. 2005)*.

Here, although it does not expressly so state, CFPB lodges a factual attack on subject-matter jurisdiction. This is because CFBP relies on things outside of the Complaint (like the Supreme Court decision discussed in depth below) to support its challenge to subject-matter jurisdiction. Accordingly, the Court will exercise its discretion to resolve the Motions by reference to the record (and other **[*9]** matters of public record) outside of Plaintiffs' Complaint. *Alpine Indus. v. F.T.C., 40 F. Supp. 2d 938, 940 (E.D. Tenn. 1998)* ("*HN6*[⬆] Consideration of [ ] evidence [outside of the complaint when deciding a factual attack on subject-matter jurisdiction] does not convert the motion into one for summary judgment.").

## DISCUSSION

CFPB moved to dismiss Plaintiffs' First Amended Complaint "for lack of subject-matter jurisdiction . . . and for failure to

---

[7] Neither party has requested an evidentiary hearing or pointed the Court to additional evidence they might submit at such a hearing. The Court therefore exercises its discretion to rule on the present Motions without an evidentiary hearing. *See e.g., Ohio Nat. Life Ins. Co., 922 F.2d at 327*.

state a claim." (Doc. No. 50 at 1).[8] Here, the Court must start with an analysis of subject-matter jurisdiction pursuant to 12(b)(1), because if a court does not have subject-matter jurisdiction, any 12(b)(6) defense (of failure to state a claim) would become moot if the court lacks subject-matter jurisdiction in the first place. *Nassif v. Hansen, No. 1:06 CV 2563, 2008 U.S. Dist. LEXIS 121604, 2008 WL 788558, at *5 (N.D. Ohio Mar. 21, 2008)* (citing *Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir.1990)*) ("Respondents argue that the Petition . . . should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to *Rules 12(b)(1)* and *12(b)(6)*, respectively. The court is bound to consider the *Rule 12(b)(1)* motion first, since the *Rule 12 (b)(6)* challenge becomes moot if this court lacks subject matter jurisdiction."). Moreover, generally *HN7*[↑] any grant of a *Rule 12(b)(6)* motion would be a decision on the merits, and a district court simply should not render any decisions on the merits in cases **[*10]** where it lacks subject-matter jurisdiction (and thus the jurisdiction to make any determination on the merits).

Asserting lack of subject-matter jurisdiction, CFPB contends that (1) "Counts I - III of [the Complaint] are moot because the bureau's rule requires no action by Plaintiffs, and (2) Plaintiffs' speculative fear of enforcement does not defeat mootness and is not sufficient to confer standing." (Doc. No. 51 at 17, 20). CFPB further argues that even if the Court did not lack jurisdiction over Count III (for declaratory judgment), is should exercise its discretion under the *Declaratory Judgment Act* and decline to adjudicate Count III. (*Id.* at 21-22). The Court will discussion each argument in turn.

*a. Mootness*

---

[8] The United States also moved to dismiss Plaintiffs' First Amended Complaint because "Plaintiffs' claims are moot and otherwise fail to state a claim on which relief may be granted." (Doc. No. 52 at 1). Contrary to the United States' indication, *HN8*[↑] mootness is a *12(b)(1)* concern, not a *12(b)(6)* concern. *See City of Streetsboro v. Fraternal Ord. of Police*, No. 5:03 CV 1565, 2004 WL 3710234, at *2 (N.D. Ohio July 23, 2004) (citing *White v. Lee, 227 F.3d 1214, 1242 (9th Cir.2001); West Va. Highlands Conservancy v. Norton, 161 F.Supp.2d 676, 679 (S.D. W.Va.2001)*) ("While SERB brings its motion to dismiss for mootness under *Fed. R. Civ. P 12(b)(6)*, mootness is a question of standing and subject matter jurisdiction. Accordingly, a motion to dismiss for mootness is properly brought pursuant to *Fed. R. Civ. P 12(b)(1)*."). In any event, Court need not address the merits of CFPB or the United States' 12(b)(6) defense because it is dismissing the case based on lack of subject-matter jurisdiction.

CFPB claims that Counts I-III of the Complaint are moot because the CFPB regulation no longer requires any action by Plaintiffs, and therefore the parties' dispute "is no longer embedded in any actual controversy about [Plaintiffs'] particular legal rights." (Doc. No. 51 at 19). Specifically, CFPB contends that "Counts I and II, which ask the Court to set aside and invalidate the CFPB [regulation] to prevent anyone from having to provide any information about the [Halt] Order, [ ], are moot because **[*11]** it is clear that no one must provide any information about the CDC Order in any jurisdiction. Count III is likewise moot because the relief it seeks - a prompt and final determination as to whether the CFPB [regulation] applies in the Sixth Circuit, [ ] - has already effectively been provided [via the *Tiger Lily* decision]."[9] (*Id.*) (internal citations omitted). The Court agrees.

*HN9*[↑] "A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' *L.A. County v. Davis, 440 U.S. 625, 631, 99 S. Ct. 1379, 59 L. Ed. 2d 642 (1979)* (quoting *Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)*). Mootness implicates Article III's "case or controversy" requirement.[10] *Gentry v. Deuth, 456 F.3d 687, 693 (6th Cir.2006)*. Accordingly, mootness can be raised at any stage of litigation because it is a jurisdictional requirement. S*ee Midwest Media Prop., LLC v. Symmes Twp., 503 F.3d 456, 460 (6th Cir.2007)*." *League of Women Voters of Ohio v. Brunner, 548 F.3d 463, 473 (6th Cir. 2008)*.

In their Response, at the outset of their mootness discussion, Plaintiffs confusingly claim that this case is not moot because

---

[9] Via the Memorandum in Support, CFPB correctly asserts that "[t]he *Tiger Lily* decision, which was handed down after the Amended Complaint was filed, made clear that the CDC Order had no effect within the Sixth Circuit, and the developments in the Supreme Court and D.C. Circuit confirm that no CDC eviction moratorium has effect anywhere. Plaintiffs have thus effectively already received as final a 'determination as to whether the CFPB Rule applies in the Sixth Circuit,' as they could possibly hope to receive. Their entire complaint should be dismissed as moot." (Doc. No. 51 at 19).

[10] *HN10*[↑] "This case-or-controversy requirement applies 'at all stages of review, not merely at the time the complaint is filed.' *Id.* (quoting *Arizonans for Official English v. Ariz., 520 U.S. 43, 67, 117 S. Ct. 1055, 137 L. Ed. 2d 170 (1997)*). 'If events occur during the pendency of a litigation which render the court unable to grant the requested relief, the case becomes moot and . . . falls outside our jurisdiction.'" *Howard v. Tenn., 760 F. App'x 837, 840-41 (6th Cir. 2018)* (quoting *Demis, 558 F.3d at 512*)." *Jenkins v. Humphreys Cty., No. 3:18-CV-00639, 2019 U.S. Dist. LEXIS 6434, 2019 WL 189828, at *2 (M.D. Tenn. Jan. 14, 2019)*.

they "have not received complete relief" because "CFPB's [regulation] *was* facially effective against the plaintiffs. CFPB has never disavowed its prior effectiveness outside this jurisdiction, it remains facially effective in this jurisdiction and the plaintiffs who refused to follow the [regulation] face continued liability for potential private and public enforcement." (Doc. [*12] No. 56 at 7-8). Whatever Plaintiffs mean by this (and it is unclear to the Court what all Plaintiffs are actually saying here), they have not shown that their claims are not moot. Plaintiffs filed their first complaint on May 3, 2021. In the six months that have passed since then, several intervening decisions have led to Plaintiffs' claims now being moot. But even before this case was filed, as explained thoroughly in the Court's memorandum opinion in support of its denial of Plaintiffs' motion for a preliminary injunction (Doc. No. 23), the Sixth Circuit decided *Tiger Lily* on March 29, 2021, which made clear that the CDC Order had no effect within the Sixth Circuit. *992 F.3d 518 (6th Cir. 2021)*. Three months after Plaintiffs filed their Complaint, on August 26, 2021, the Supreme Court decided *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs., 141 S. Ct. 2485, 210 L. Ed. 2d 856 (2021)*. Finally, although the defendants in *Alabama Ass'n of Realtors* appealed the district court's grant of summary judgment, they moved to voluntarily dismiss the appeal promptly after the Supreme Court's opinion was issued, and the motion was granted promptly by the D.C. Circuit on September 3, 2021. *See Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs., No. 21-5093, 2021 U.S. App. LEXIS 27377, 2021 WL 4057718, at *1 (D.C. Cir. Sept. 3, 2021)*. Each of these decisions greatly impacted this case and further solidified this case's mootness, as discussed further below.

Plaintiffs also contend that [*13] the case is not moot because two exceptions apply: (1) this issue is capable of repetition, yet evading review, and (2) CFPB cannot moot this case through its voluntary cessation. (Doc. No. 56 at 11-14). But both of these arguments fail.

As to the first contention, Plaintiffs assert that the relief is not moot for the Plaintiffs who complied with the CFPB regulation because their challenge is capable of repetition, yet evading review. (*Id.* at 12). Plaintiffs further state that "[t]he issues are also capable of repetition as CFPB retains the authority to issue the [regulation's] provisions at any time and have never acknowledged that they are prohibited from doing so. . . . CFPB has never acknowledged its legal overreach and remains poised to act again at any time" (*Id.*) (citations omitted). *HN11*[⬆] Application of the "capable of repetition, yet evading review" exception to mootness doctrine is limited to situations where: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there is reasonable expectation that same

complaining party will be subjected to same action again. *Chirco v. Gateway Oaks, L.L.C., 384 F.3d 307 (6th Cir. 2004)* (citing *Weinstein v. Bradford, 423 U.S. 147, 148, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975)*). Plaintiffs here are asserting the second [*14] situation, but it is not present here. At this stage of the litigation, the Court perceives, and Plaintiffs have pointed to, nothing indicating that the Halt Order is going to be essentially reissued or reasserted by CFPB in any way. It is sheer (and unsound) speculation to suggest that it will.

Some background is helpful here. On August 3, 2021, the CDC issued an order extending its Halt Order. *See, e.g., Ajax Mortg. Loan Tr. 2019-E, Mortg.-Backed Sec., Series 2019-E by U.S. Bank Nat'l Ass'n v. Sargent, No. 1:21-CV-00018-JAW, 2021 U.S. Dist. LEXIS 167827, 2021 WL 4027198, at *2, fn. 1 (D. Me. Sept. 3, 2021)*. However, about three weeks later, on August 26, 2021, the Supreme Court decided *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs., 141 S. Ct. 2485, 210 L. Ed. 2d 856 (2021)*, which is dispositive here.[11] In this

_____

[11] The Court pauses here to address an important issue. Given the procedural posture at the time *Alabama Ass'n of Realtors* was decided, the Court understands how some courts have viewed the Supreme Court's order as perhaps merely preliminary because the order addressed only a motion to vacate the district court's *stay* of its own summary judgment, meaning that (at the time) there was still a chance of an appeal being decided on the merits after more fulsome briefing. *See, e.g., Ajax Mortg. Loan Tr. 2019-E, 2021 U.S. Dist. LEXIS 167827, 2021 WL 4027198, at *2, fn. 1* (hinting that even after the Supreme Court's decision in *Alabama Ass'n of Realtors*, the Halt Order could still be in effect because "[t]he Supreme Court vacated a stay that the district court had imposed *in anticipation of appeal*."). Theoretically, the Supreme Court's order (at the time it was decided) did not necessarily preclude the Halt Order from "coming back to life" if the defendants in that case decided to prosecute an appeal of the summary judgment and won the appeal on the merits. However, other courts have concluded easily that the Supreme Court in *Alabama Ass'n of Realtors* resolved this issue conclusively when that opinion was issued, meaning that the Halt Order was definitely no longer in effect, *i.e.*, simply gone. *See, e.g., El Papel LLC v. Durkan, No. 220CV01323RAJJRC, 2021 U.S. Dist. LEXIS 181390, 2021 WL 4272323, at *6 (W.D. Wash. Sept. 15, 2021)* (concluding that the defendants argument that plaintiffs lacked standing failed because in *Alabama Ass'n of Realtors* "the [ ] Supreme Court vacated a [d]istrict [c]ourt's stay of an order vacating the CDC eviction moratorium, so that the CDC eviction moratorium is no longer in effect."). Although the defendants in *Alabama Ass'n of Realtors* did in fact appeal the district court's grant of summary judgment, they moved to voluntary dismiss the appeal promptly after the Supreme Court's opinion was issued, and the motion was granted promptly by the D.C. Circuit on September 3, 2021. *See Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs., No. 21-5093, 2021 U.S. App. LEXIS 27377, 2021 WL 4057718, at *1 (D.C. Cir. Sept. 3, 2021)* ("Upon consideration of defendants-

case, associations of real estate agents and rental property managers sued the Department of Health and Human Services (HHS) and others, challenging a nationwide eviction moratorium for residential rental properties imposed by the director of the CDC in response to the COVID-19 pandemic. Here, the Supreme Court vacated a stay that the district court had imposed in anticipation of appeal because it concluded that "[i]f a federally imposed eviction moratorium is to continue, Congress must specifically authorize it." *Ala. Ass'n of Realtors,141 S.Ct. at 2490*. Accordingly, there is no reasonable **[*15]** expectation that the Halt Order will come back to life, especially considering the appeal's dismissal as discussed in footnote 12. *Coe v. Bell,* **230 F.3d 1357** *(6th Cir. 2000)* (citing *Sandison v. Michigan High School Athletic Ass'n, Inc., 64 F.3d 1026, 1029-30 (6th Cir.1995)*) ("*HN12*[⬆] When there is no reasonable expectation that the same complaining party will be subject to the same action again, the 'capable of repetition yet evading review' exception does not apply.").

Plaintiffs also assert that "CFPB cannot moot this case through its voluntary cessation". (Doc. No. 56 at 12-14). However, CFPB correctly refutes this argument in its Reply. There, CFPB notes that the mootness exception for a defendant's 'voluntary cessation' is inapplicable here because this case's mootness is not a result of any Bureau cessation, but of developments in other litigation that made clear that no CDC eviction moratorium applies anywhere and thus, that the Bureau's disclosure requirement (which, by its own terms, does not apply where the CDC eviction moratorium does not apply) does not apply anywhere either. *HN13*[⬆] "In any event, in . . . voluntary cessation cases involving government entities" the Sixth Circuit's 'primary concern' is not the mere possibility that the government could revert **[*16]** to a challenged practice but whether there is evidence that the government will 'flip-flop' or has altered its conduct solely in response to litigation.' *Thomas v. City of Memphis, Tennessee, 996 F.3d 318, 328 (6th Cir. 2021).* Plaintiffs do not, and could not, offer any such evidence here." (Doc. No. 59 at 3-4). The Court agrees that for these reasons, Plaintiffs' voluntary-cessation argument does not hold any water.

In short, Plaintiffs' contention that "[t]he expiration of CFPB's [regulation][12] and the partial vacatur of the underlying [Halt Order], does not foreclose *all possible* relief for Plaintiffs," (Doc. No. 56 at 8), ignores the practical effect of *Ala. Ass'n of Realtors* decision and the D.C. Circuit's dismissal of the appeal discussed in a footnote above.[13] Plaintiffs' challenge to the CFPB regulation is moot in its entirety,[14] which does in fact foreclose all possible avenues of relief for Plaintiffs. Because *Ala. Ass'n of Realtors* has effectively ended the Halt Order in every jurisdiction, and because it seems entirely clear (and something the Court is authorized to rely on herein) that the Halt Order is simply defunct everywhere at this point, Plaintiffs are no longer required to make disclosures about the eviction moratorium mandated by the Halt **[*17]** Order, and that is true in every jurisdiction. There is no longer a live case or controversy in this matter. *See Jenkins, 2019 U.S. Dist. LEXIS 6434, 2019 WL 189828 at *2* (dismissing habeas petition as moot because the petition "no longer present[ed] a case or controversy under Article III of the Constitution"). Accordingly, Counts I - III of Plaintiffs' Complaint are moot (and thus not within this Court's subject-matter jurisdiction) and must be dismissed on that basis alone. However, the Court will also entertain the parties standing arguments as discussed immediately below as an additional and alternative basis of dismissal.

*b. Standing*

*HN14*[⬆] "Standing is a critical component of the subject-matter jurisdiction of the federal courts; without it there is no 'Case' or 'Controversy' upon which the federal judicial power can act. Consequently if at any time a court discovers that a party bringing suit lacks standing, the case must be dismissed for want of jurisdiction. 'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Exec. Transp Sys. LLC v. Louisville Reg'l Airport Auth., 678 F. Supp. 2d 498, 505 (W.D. Ky.*

---

[12] Plaintiffs do not explain, and the Court does not understand, what they mean when they refer to the CFPB regulation's "expiration," but in any event, the Court does not rely on any expiration of the CFPB regulation in finding that the Court lacks subject-matter jurisdiction.

[13] Plaintiffs filed their Response on October 8, 2021, after both *Ala. Ass'n of Realtors* was decided and after the D.C. Circuit dismissed the appeal. (Doc. No. 56).

[14] Perhaps this would not be the case had Plaintiffs asserted claims for damages allegedly arising from alleged statutory and constitutional violations while the CFPB regulation still had some teeth. But Plaintiffs asserted no such claims.

---

appellants' unopposed motion to voluntarily dismiss appeal, it is ordered that the motion be granted and this case be dismissed.) Therefore, any notion that *Alabama Ass'n of Realtors* was still alive on the merits evaporated completely when the appeal was dismissed, thereby precluding any further possibility of litigation on the merits in that case that could somehow ultimately result in a ruling from the Supreme Court different from the one it expressed on August 26, 2021. Accordingly, it is appropriate to consider the Supreme Court's August 26 decision as not a preliminary one that is subject to change in that case. Thus, the Court treats this decision as dispositive, as discussed further herein.

*2010)* (quoting *Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514, 19 L. Ed. 264 (1869)* (quoted in *Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)*).

*HN15*[↑] For a legal dispute to qualify [*18] as a genuine case or controversy, at least one plaintiff must have standing to sue. *McLemore v. Gumucio, No. 3:19-CV-00530, 2020 U.S. Dist. LEXIS 228082, 2020 WL 7129023, at *5 (M.D. Tenn. Dec. 4, 2020).* More specifically, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Estates Inc., 137 S. Ct. 1645, 1647, 198 L. Ed. 2d 64 (2017).* To have standing to sue, a plaintiff must show injury in fact, causation, and redressability. *Durham v. Martin, 905 F.3d 432, 433 (6th Cir. 2018)* (*Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)*).

Regarding standing, CFPB asserts that "[t]o the extent Plaintiffs now concede that the [regulation] requires no ongoing action on their part, but they attempt to sustain their legal challenge on a speculative fear that they may someday be subject to an enforcement action for their past non-compliance with the Rule, Plaintiffs lack standing."[15] (Doc. No. 51 at 20). Plaintiffs assert in their Response that they *all* have standing to bring this suit because they suffered an injury in fact—namely that they have "incurred costs by complying with the [regulation]." (Doc. No. 56 at 14-15). However, that argument fails. "*HN16*[↑] Injury in fact,' as required for Article III standing, is an invasion of a legally protected interest which is concrete and particularized and actual or imminent rather than conjectural or hypothetical." *U.S. Const. Art. 3, § 2.* True, alleged damages, such as incurring costs, theoretically could [*19] support the finding of an injury-in-fact. But they do not do so in this case, because in the Amended Complaint, Plaintiffs did not ask for damages; nor did they make any factual allegations that they have suffered compensable losses as a result of Defendants' alleged violations of law. The only relief requested in the Amended Complaint is declaratory relief and injunctive relief. (*See* Doc. No. 38). Plaintiffs have requested only prospective relief, and prospective relief is moot, as discussed above.

Therefore, Plaintiffs' claims must be dismissed alternatively for lack of standing because Plaintiffs have not shown an

injury in fact.

#### c. *Declaratory Judgment Act*

As noted above, the First Amended Complaint requests a different declaratory judgment in each of the three counts, even though only one of the counts (Count III) is titled as a claim for declaratory judgment. Perhaps for this reason, CFPB focuses its attack on Count III's request for a declaratory judgment, although its argument actually applies to all three counts. CFPB asserts that "[e]ven if the Court did lack jurisdiction over Count III [Plaintiffs' request for declaratory judgment], [which] it does, it should exercise its discretion under the DJA [*20] and decline to adjudicate it." (Doc. No. 51 at 15). The Court agrees that it does not have jurisdiction over Count III (or any Count of the First Amended Complaint for that matter) for the reasons set forth above, but also notes that (for reasons similar to those depriving the Court of subject-matter jurisdiction) the *Declaratory Judgment Act* is inapplicable to any of the Counts. *HN17*[↑] Declaratory judgment is available as a remedy only in "case[s] of actual controversy." *See 28 U.S.C. § 2201.* As discussed above, there is no case or controversy in this matter. *See Hayden v. 2K Games, Inc., 375 F. Supp. 3d 823, 830 (N.D. Ohio 2019)* (dismissing the plaintiff's claim for declaratory judgment due to the absence of an actual "case or controversy" as required by the *Declaratory Judgment Act* and Article III). In short, the *Declaratory Judgment Act* is inapplicable for essentially one of the two reasons the Court lacks subject-matter jurisdiction, *i.e.*, the lack of an actual controversy. Accordingly, even if the Court had jurisdiction over Plaintiffs' claims—meaning among other things that it somehow could be said that there still was a "case or controversy" here within the meaning of Article III--which it does not, each request for declaratory relief would be declined because the Court would not perceive an "actual controversy" for purposes of the DJA.

#### CONCLUSION

Plaintiffs [*21] are effectively, and much more quickly, in the same (or better) position they would have been in had they prosecuted this lawsuit to the end and won all the relief they had requested. The Court may not understand why Plaintiffs apparently insist on claiming that that this is not the case, but it does understand why Plaintiffs might want to continue this litigation even though it is the case. That is, the Court understands that Plaintiffs may wish to vindicate, via a federal court's decisions, an apparently sincere view that the CFPB regulation (and, secondarily, the Halt Order) were in violation of federal statutes and the federal Constitution. If that is the case, the Court does not begrudge Plaintiffs their wish. But

---

[15] CFPB also confusingly cites to and analyzes the requirements for plaintiffs seeking to challenge a rule in the pre-enforcement context. (*See* Doc. No. 51 at 14-15). But this is irrelevant here, as the CFPB regulation is not at the pre-enforcement stage, but rather is defunct and past the enforcement stage, as discussed herein. Accordingly, the Court disregards CFPB's argument, although the Court agrees that Plaintiffs still lack standing in any event.

the Court cannot grant it; it cannot even consider vindicating any party's statutory or constitutional theories, no matter how sincere or correct they may be, if they are raised in a controversy that has become moot or if the plaintiffs have no injury-in-fact. Such is the case here. Plaintiffs have prevailed based on developments elsewhere, and they need not and cannot prevail additionally and more specifically in this action in this Court.

For the reasons discussed herein, **[*22]** the Court will grant CFPB's Motion (Doc. No. 50) as to its *12(b)(1)* defense and deny as moot CFPB's Motion as to its *12(b)(6)* defense. The US's Motion (Doc. No. 52) will be denied as moot.

An appropriate order will be entered.

/s/ Eli Richardson

ELI RICHARDSON

UNITED STATES DISTRICT JUDGE


**ORDER**

Pending before the Court are two Motions: (1) Defendants Consumer Financial Protection Bureau and David Uejio's Motion to Dismiss pursuant to *Fed. Rs. Civ. P. 12(b)(1)* and *12(b)(6)* (Doc. No. 50, "CFPB Motion"); and (2) Defendant United States' Motion to Dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* (Doc. No. 52, "US Motion").

For the reasons discussed in the accompanying Memorandum Opinion, CFPB's Motion (Doc. No. 50) as to its *12(b)(1)* defense is **GRANTED**, and CFPB's Motion as to its *12(b)(6)* defense is **DENIED as moot**. The US Motion (Doc. No. 52) is **DENIED as moot**.

*HN18*[↑] A dismissal under *Rule 12(b)(1)* is necessarily not on the merits and thus is always without prejudice, even in in cases where it may benefit the plaintiff little for the dismissal to be without prejudice because the prospects for curing the lack of subject-matter jurisdiction are bleak. Accordingly, this action is **DISMISSED without prejudice** in its entirety, and the Clerk is directed to close the file. This Order shall constitute the final **[*23]** judgment in this case pursuant to *Fed. R. Civ. P. 58*.

IT IS SO ORDERED.

/s/ Eli Richardson

ELI RICHARDSON

UNITED STATES DISTRICT JUDGE

End of Document

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **BRIAN CUMMINGS,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:23-ap-90036** |
| | ) | |
| **BRETTON KEEFER; JEANNE** | ) | |
| **BURTON, TRUSTEE; and AFSOON** | ) | **Hearing Date: August 30, 2023** |
| **HAGH,** | ) | **at 11:00 a.m.** |
| Defendants. | ) | |

**BRIAN CUMMINGS' WITNESS AND EXHIBIT LIST**
**FOR AUGUST 30, 2023 HEARING ON MOTION TO DISMISS OR, IN THE**
**ALTERNATIVE, TO STAY PENDING MEDIATION AND ARBITRATION FILED ON**
**BEHALF OF DEFENDANTS BRETTON KEEFER AND AFSOON HAGH**

Comes now Plaintiff Brian Cummings, by and through undersigned counsel, and hereby

gives notice of the witnesses he may call and exhibits he may introduce at the August 30, 2023

hearing on the Motion to Dismiss or, in the Alternative, to Stay Pending Mediation and Arbitration

Filed on Behalf of Defendants Bretton Keefer and Afsoon Hagh (Doc. No. 9) and Plaintiff's

Response in Opposition to Motion to Dismiss (Doc. No. 12):

**WITNESS LIST**

1.      James W. Price, Jr.   If called to testify, Mr. Price will testify regarding his

communications and correspondence with Afsoon Hagh and John Spragens, the matters described

in Mr. Price's declarations filed in the District Court for the Middle District of Tennessee, Ms.

Hagh's representations to the Davidson County Circuit Court, Ms. Hagh's insistence as counsel

for and on behalf of Bretton Keefer that separate litigation be filed to address the matters in dispute

in this adversary proceeding, and Ms. Hagh's actions demonstrating Defendants' waiver of arbitration of the matters in dispute in this adversary proceeding.

2. <u>Brian Cummings</u>. If called to testify, Mr. Cummings will testify regarding his communications with Bretton Keefer, Mr. Cummings' representation of Mr. Keefer in the matter of *Keefer v. Vanderbilt University Medical Center*, Mr. Cummings' relationship with Afsoon Hagh, the lack of any arbitration agreement between Mr. Cummings and Ms. Hagh, and Ms. Hagh's actions demonstrating Defendants' waiver of arbitration of the matters in dispute in this adversary proceeding.

3. <u>Afsoon Hagh</u>. If called to testify, Ms. Hagh will testify regarding her communications and correspondence with James W. Price, Jr., the matters described in Mr. Price's declarations filed in the District Court for the Middle District of Tennessee, Ms. Hagh's representations to the Davidson County Circuit Court, Ms. Hagh's insistence as counsel for and on behalf of Bretton Keefer that separate litigation be filed to address the matters in dispute in this adversary proceeding, Brian Cummings' representation of Mr. Keefer in the matter of *Keefer v. Vanderbilt University Medical Center*, Mr. Cummings' relationship with Ms. Hagh, the lack of any arbitration agreement between Mr. Cummings and Ms. Hagh, and Ms. Hagh's actions demonstrating Defendants' waiver of arbitration of the matters in dispute in this adversary proceeding.

4. <u>Bretton Keefer</u>. If called to testify, Mr. Keefer will testify regarding his communications with Brian Cummings, Mr. Cummings' representation of Mr. Keefer in the matter of *Keefer v. Vanderbilt University Medical Center*, Ms. Hagh's representation of Mr. Keefer in the matter of *Keefer v. Vanderbilt University Medical Center* and in the matters in dispute in this adversary proceeding, the resolution of *Keefer v. Vanderbilt University Medical Center*, and Ms.

Hagh's actions as counsel for and on behalf of Mr. Keefer waiving arbitration of the matters in dispute in this adversary proceeding.

5. <u>Brian Manookian</u>. If called to testify, Mr. Manookian will testify regarding his interactions with Deputy U.S. Marshal Robert Capus in October of 2022, Mr. Manookian's representation of Bretton Keefer in the matter of *Keefer v. Vanderbilt University Medical Center*, Brian Cummings' representation of Mr. Keefer in the matter of *Keefer v. Vanderbilt University Medical Center*, Afsoon Hagh's representation of Mr. Keefer in the matter of *Keefer v. Vanderbilt University Medical Center*, Mr. Manookian's communications with Mr. Cummings regarding the matter of *Keefer v. Vanderbilt University Medical Center*, and the resolution of *Keefer v. Vanderbilt University Medical Center*.

6. Brian Cummings reserves the right to call the witnesses identified by any other party, any other witnesses needed to rebut evidence offered by any other party, and any other witnesses needed to address issues raised regarding Defendants' Motion.

## EXHIBIT LIST

1. All documents previously filed with the Court in this adversary proceeding, in the adversary proceeding filed by the Trustee against Hagh Law, PLLC, Afsoon Hagh, Manookian, PLLC, and First-Citizens Bank & Trust Company (Adv. Proc. No. 3:20-ap-90002), or in the Cummings Manookian, PLLC bankruptcy case.

2. All documents attached as Exhibits to Plaintiff's Response in Opposition to Motion to Dismiss.

3. All correspondence between James W. Price, Jr., and Afsoon Hagh regarding Mr. Cummings, Mr. Keefer, Ms. Hagh, or the matters at issue in this adversary proceeding.

616

4. All correspondence between James W. Price, Jr., and John Spragens regarding Mr. Cummings, Mr. Keefer, Ms. Hagh, or the matters at issue in this adversary proceeding.

5. Brian Cummings reserves the right to introduce any exhibits identified by any party, any exhibits needed to rebut evidence offered by any party, and any other exhibits needed to address issues raised regarding Defendants' Motion.

Respectfully Submitted,

**COUNTERPOINT LEGAL, PLC**

By:    /s/ Elizabeth S. Tipping
        Elizabeth S. Tipping, No. 023066
        2689 Union Hill Road
        Joelton, TN 37080
        (615) 426-5566
        liz@counterpointlaw.com
        *Counsel for Plaintiff Brian Cummings*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was electronically filed and served via the Court's ECF system this, the 16th day of August, 2023.

/s/ Elizabeth S. Tipping
Elizabeth S. Tipping, No. 023066
Counterpoint Legal, PLC
2689 Union Hill Road
Joelton, TN 37080
(615) 426-5566
liz@counterpointlaw.com

4

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 9/5/2023



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CUMMINGS MANOOKIAN, PLLC,** | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| **BRIAN CUMMINGS,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:23-ap-90036** |
| | ) | |
| **BRETTON KEEFER; JEANNE** | ) | |
| **BURTON, TRUSTEE; and AFSOON** | ) | **Hearing Date: August 30, 2023** |
| **HAGH,** | ) | **at 11:00 a.m.** |
| Defendants. | ) | |

## ORDER DENYING MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PENDING MEDIATION AND ARBITRATION FILED ON BEHALF OF DEFENDANTS BRETTON KEEFER AND AFSOON HAGH

This matter came before the Court on August 30, 2023 for an evidentiary hearing on the Motion to Dismiss or, in the Alternative, to Stay Pending Mediation and Arbitration Filed on Behalf of Defendants Bretton Keefer and Afsoon Hagh (Doc. 9) (the "Motion to Dismiss"). Plaintiff Brian Cummings filed his Response in Opposition to Motion to Dismiss (Doc. 12) (the "Response") on August 2, 2023. Appearing at the hearing on the Motion to Dismiss were John Spragens on behalf of Defendants Bretton Keefer and Afsoon Hagh; Elizabeth S. Tipping on behalf of Plaintiff Brian Cummings; and Phillip G. Young, Jr. on behalf of Trustee Jeanne Ann Burton. No witnesses or evidence were offered by any party during the hearing.

The Court heard argument from Defendants Keefer and Hagh, Plaintiff, and the Trustee. Based upon the Motion to Dismiss, the Response, the arguments of all counsel at the August 30, 2023 hearing, and based on the entire record herein;

**IT IS HEREBY FOUND:**

    A.    Pursuant to Federal Bankruptcy Rule 7052, the Court hereby incorporates and adopts all findings and conclusions stated orally at the hearing on August 30, 2023.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

    1.    The Motion to Dismiss (Doc. 9) is **DENIED**.

    2.    The Court will schedule a status conference in this matter in January 2024.

*THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE*

Submitted for entry:

/s/ Elizabeth S. Tipping
Elizabeth S. Tipping, No. 023066
Counterpoint Legal, PLC
2689 Union Hill Road
Joelton, TN 37080
(615) 426-5566
liz@counterpointlaw.com
*Counsel for Plaintiff Brian Cummings*

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

# U.S. Bankruptcy Court
## MIDDLE DISTRICT OF TENNESSEE (Nashville)
### Adversary Proceeding #: 3:20−ap−90002

*Assigned to:* Charles M Walker            *Date Filed:* 01/08/20
*Lead BK Case:* 19−07235
*Lead BK Title:* CUMMINGS MANOOKIAN, PLLC
*Lead BK Chapter:* 7
*Demand:* $1350000
  *Nature[s] of Suit:*   13 Recovery of money/property − 548 fraudulent transfer
                         11 Recovery of money/property − 542 turnover of property
                         14 Recovery of money/property − other
                         91 Declaratory judgment
                         72 Injunctive relief − other

*Plaintiff*
——————————————————
**Jeanne Ann Burton**           represented by    **RONALD G STEEN, JR**
95 White Bridge Road, Ste 512                   Thompson Burton PLLC
Nashville, TN 37205                            6100 Tower Circle
                                      Suite 200
                                      Franklin, TN 37067
                                      615−465−6010
                                      Fax : 615−807−3048
                                      Email: ronn.steen@thompsonburton.com

                                      **PHILLIP G YOUNG**
                                      Thompson Burton PLLC
                                      One Franklin Park
                                      6100 Tower Circle, Suite 200
                                      FRANKLIN, TN 37067
                                      615−465−6008
                                      Fax : 931−381−0058
                                      Email: phillip@thompsonburton.com

V.

*Defendant*
——————————————————
**Hagh Law PLLC**           represented by    **CRAIG VERNON GABBERT, JR**
c/o Afsoon Hagh, Managing Member          BASS, BERRY & SIMS PLC
45 Music Square W                        150 THIRD AVENUE SOUTH
Nashville, TN 37203                          SUITE 2800
                                      NASHVILLE, TN 37201
                                      615−742−6277
                                      Fax : 615−742−0465
                                      Email: cgabbert@bassberry.com

                                      **GLENN BENTON ROSE**
                                      BASS, BERRY & SIMS PLC
                                      150 THIRD AVENUE SOUTH

SUITE 2800
NASHVILLE, TN 37201
615−742−6273
Fax : 615−742−0464
Email: grose@bassberry.com

**JOHN T. SPRAGENS**
SPRAGENS LAW PLC
311 22ND AVE N
NASHVILLE, TN 37203
615−983−8900
Fax : 615−682−8533
Email: JOHN@SPRAGENSLAW.COM

*Defendant*
————————————————
**Afsoon Hagh**                              represented by **CRAIG VERNON GABBERT, JR**
45 Music Square W                            (See above for address)
Nashville, TN 37203
                                             **GLENN BENTON ROSE**
                                             (See above for address)

                                             **JOHN T. SPRAGENS**
                                             (See above for address)

*Defendant*
————————————————
**Manookian PLLC**                           represented by **JOHN T. SPRAGENS**
c/o Brian Manookian, Managing Member         (See above for address)
45 Music Square W
Nashville, TN 37203

*Defendant*
————————————————
**First−Citizens Bank and Trust Company**    represented by **First−Citizens Bank and Trust**
ATTN Frank B. Holding, Jr., CEO                            **Company**
4300 Six Forks Road                                        PRO SE
#FCC22
Raleigh, NC 27609
*TERMINATED: 01/29/2020*

| Filing Date | # | Docket Text |
|---|---|---|
| 01/08/2020 | 1 | Adversary case 3:20−ap−90002. Complaint by Jeanne Ann Burton against Hagh Law PLL[...] Bank and Trust Company. Fee Amount is $350.00. Filed By Trustee, Fees will be deferred. [...] AP Cover Sheet) Nature of Suit: (13 (Recovery of money/property − 548 fraudulent transfe[...] of property)) (YOUNG, PHILLIP) (Entered: 01/08/2020) |
| 01/08/2020 | 2 | *Expedited* Motion for *Turnover*. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C #[...] G # 8 Exhibit H # 9 Exhibit I # 10 Exhibit J # 11 Exhibit K # 12 Exhibit L # 13 Exhibit M [...] 1/8/20. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered:[...] |
| 01/08/2020 | 3 | Expedited Submitted Order *Scheduling Hearing on Motion for Turnover* Filed on the behal[...] document(s)2). (YOUNG, PHILLIP) (Entered: 01/08/2020) |
| 01/09/2020 | 4 | |

2

| | | | |
|---|---|---|---|
| | | | Order Setting Expedited Hearing *on Plaintiff's Motion for Turnover of Funds. The Deadline* *4:00pm* (RE: Related Doc#: 2). Hearing scheduled 1/15/2020 at 01:30 PM at Courtroom 2, Nashville, TN 37203. Signed on 1/9/2020. (anm) (Entered: 01/09/2020) |
| 01/11/2020 | 5 | | BNC Certificate of Notice. (RE: related document(s)4 Order Setting Expedited Hearing) N 01/11/2020) |
| 01/13/2020 | 6 | | Exhibit and Witness List Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related d 01/13/2020) |
| 01/14/2020 | 7 | | Objection to *Plaintiff's Expedited Motion for Turnover of Funds*. (Attachments: # 1 Exhibi behalf of: Defendants Afsoon Hagh, Hagh Law PLLC (RE: related document(s)2). (SPRAG |
| 01/14/2020 | 8 | | Notice *of Filing Amended Certificate of Service and Counsel Signature Block* Filed on the PLLC (RE: related document(s)7). (SPRAGENS, JOHN) (Entered: 01/14/2020) |
| 01/14/2020 | 9 | | Notice of Appearance and Request for Service pursuant to Rule 2002 Filed on the behalf of (SPRAGENS, JOHN) (Entered: 01/14/2020) |
| 01/14/2020 | 10 | | *Plaintiff's* Reply to *Objection of Hagh Law PLLC and Afsoon Hagh.* Filed on the behalf of: document(s)2, 7). (YOUNG, PHILLIP) (Entered: 01/14/2020) |
| 01/14/2020 | | | Email Judge Charles M. Walker of Late Filed Matter. Filed on the behalf of: Plaintiff Jeann (YOUNG, PHILLIP) (Entered: 01/14/2020) |
| 01/15/2020 | 11 | | Motion for *Order Striking Plaintiff's Reply Brief*. (Attachments: # 1 Proposed Order)Certifi behalf of: Defendants Afsoon Hagh, Hagh Law PLLC. (SPRAGENS, JOHN) (Entered: 01/ |
| 01/15/2020 | 12 | | Summons Issued to Plaintiff for Service on First−Citizens Bank and Trust Company of AT Hagh Law PLLC of c/o Afsoon Hagh, Managing Member ; Manookian PLLC of c/o Brian **Conference is scheduled for 3/10/2020 at 09:15 AM in Courtroom 2, 2nd Floor Custom Case judge is Charles M Walker.** (RE: related documents 1 Complaint). (lel) (Entered: 0 |
| 01/16/2020 | 13 | | Witness and Exhibit List from trial or Hearing *from Hearing Held 1/15/20* (RE: related doc (Entered: 01/16/2020) |
| 01/16/2020 | 14 | | Expedited Submitted Order *On Plaintiff's Motion for Turnover of Funds* Filed on the behalf document(s)2). (YOUNG, PHILLIP) (Entered: 01/16/2020) |
| 01/16/2020 | 15 | | *Order on Plaintiff's Expedited Motion for Turnover of Funds and* Order Scheduling Hearin *submitted order has been modified by the Court*) (RE: Related Doc#: 2, 7, 10, 11). Hearing 2nd Floor Customs House, 701 Broadway, Nashville, TN 37203. Signed on 1/16/2020. (sdt (tca). (Entered: 01/16/2020) |
| 01/18/2020 | 16 | | BNC Certificate of Notice. (RE: related document(s)15 Order Scheduling Hearing) Notice |
| 01/21/2020 | 17 | | Receipt of Registry Funds − $715000.00 by PM. Receipt Number 623768. (admin) (Entere |
| 01/22/2020 | 18 | | Request for Transcript. Fee Amount is $31.00. *Request for Transcript of January 15, 2020* Hagh, Hagh Law PLLC. (SPRAGENS, JOHN) (Entered: 01/22/2020) |
| 01/22/2020 | 19 | | Receipt of Request for Transcript(3:20−ap−90002) [misc,tsreq] ( 31.00). Receipt number 1 Treasury) (Entered: 01/22/2020) |
| 01/25/2020 | 21 | | Certificate of Service mailed on 1/17/20 *Return on Summons Hagh Law* Filed on the behal PHILLIP) (Entered: 01/25/2020) |

| Date | | No. | Description |
|---|---|---|---|
| 01/25/2020 | | 22 | Certificate of Service mailed on 1/17/20 *Return on Summons Afsoon Hagh* Filed on the beh... PHILLIP) (Entered: 01/25/2020) |
| 01/25/2020 | | 23 | Certificate of Service mailed on 1/17/20 *Return on Summons Manookian PLLC* Filed on the... PHILLIP) (Entered: 01/25/2020) |
| 01/25/2020 | | 24 | Certificate of Service mailed on 1/17/20 *Return on Summons First−Citizens* Filed on the be... PHILLIP) (Entered: 01/25/2020) |
| 01/28/2020 | | 25 | Notice of Voluntary Dismissal of Party in Adversary Proceeding. *(First−Citizens Bank & T...* Jeanne Ann Burton (RE: related document(s)1). (YOUNG, PHILLIP) (Entered: 01/28/2020... |
| 01/30/2020 | | 26 | ORDER by Judge *Walker* : With regard to docket entry # 11, *The motion located at Dkt. #1... at Dkt. #15.* (RE: related document(s) 11) (lel) (Entered: 01/30/2020) |
| 01/31/2020 | | 27 | Certificate of Mailing for Order (RE: related document(s) 26 Docket Order) (Intake1) (Ente... |
| 01/31/2020 | | 28 | Notice of Appearance and Request for Service pursuant to Rule 2002 Filed on the behalf of... (GABBERT, CRAIG) (Entered: 01/31/2020) |
| 02/03/2020 | | 29 | *Plaintiff's* Exhibit and Witness List *for February 5, 2020 Hearing* Filed on the behalf of: Pl... (Entered: 02/03/2020) |
| 02/04/2020 | | 30 | Notice of Appearance and Request for Service pursuant to Rule 2002 Filed on the behalf of... (ROSE, GLENN) (Entered: 02/04/2020) |
| 02/06/2020 | | 31 | Submitted Order *on Plaintiff's Expedited Motion for Turnover of Funds* Filed on the behalf... document(s)2). (YOUNG, PHILLIP) (Entered: 02/06/2020) |
| 02/13/2020 | | 32 | Order Resolving Turnover of Property. Re: *Plaintiff's Expedited Motion for Turnover of Fu...* on 2/13/2020. (anm) (Entered: 02/13/2020) |
| 02/15/2020 | | 33 | BNC Certificate of Notice. (RE: related document(s)32 Order on Turnover of Property − B... (Entered: 02/15/2020) |
| 02/24/2020 | | 34 | Motion Requesting Entry of Default from Clerk in Adversary Proceeding. Certificate of Se... Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered: 02/24/2020) |
| 02/24/2020 | | 35 | Submitted Entry of Default for entry by the Clerk Filed on the behalf of: Plaintiff Jeanne A... PHILLIP) (Entered: 02/24/2020) |
| 02/24/2020 | | 36 | ENTRY of Default by U.S. Bankruptcy Court Clerk *Against HAGH LAW PLLC, AFSOON...* documents 34 Motion Requesting Entry of Default from Clerk − AP Motion). (Intake4) (En... |
| 03/02/2020 | | 37 | Motion to Continue Pretrial Conference Filed on the behalf of: Plaintiff Jeanne Ann Burton... |
| 03/02/2020 | | 38 | Submitted Order *Granting Motion to Continue Pretrial Conference* Filed on the behalf of: ... document(s)37). (YOUNG, PHILLIP) (Entered: 03/02/2020) |
| 03/04/2020 | | 39 | Order Granting *Plaintiff's* Motion to Continue Pre−Trial Conference (RE: Ref Doc #37), BY... **Conference is scheduled for 3/24/2020 at 09:15 AM in Courtroom 2, 2nd Floor Custom... Case judge is Charles M Walker.** (anm) (Entered: 03/04/2020) |
| 03/04/2020 | | 40 | Certificate of Mailing for Order (RE: related document(s)39 Order to Continue Pre−Trial C... |
| 03/06/2020 | | 41 | |

| | | |
|---|---|---|
| | | BNC Certificate of Notice. (RE: related document(s)39 Order to Continue Pre−Trial Confe... 03/06/2020) |
| 03/16/2020 | 42 | Answer to Complaint Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC. (... |
| 03/16/2020 | 43 | Answer to Complaint Filed on the behalf of: Defendant Manookian PLLC. (SPRAGENS, J... |
| 03/17/2020 | 44 | Notice *of Withdrawal of Entry of Default* Filed on the behalf of: Plaintiff Jeanne Ann Burto... PHILLIP) (Entered: 03/17/2020) |
| 03/18/2020 | 45 | Motion to Continue Pretrial Conference Filed on the behalf of: Plaintiff Jeanne Ann Burton... |
| 03/18/2020 | 46 | Submitted Order *Granting Motion to Continue Pretrial Conference* Filed on the behalf of: ... document(s)45). (YOUNG, PHILLIP) (Entered: 03/18/2020) |
| 03/20/2020 | 47 | Order Granting *Plaintiff's* Motion to Continue Pre−Trial Conference (RE: Ref Doc #45), B**... Conference is scheduled for 4/21/2020 at 01:00 PM in Courtroom 2, 2nd Floor Custom... Case judge is Charles M Walker.** (anm) (Entered: 03/20/2020) |
| 03/22/2020 | 48 | BNC Certificate of Notice. (RE: related document(s)47 Order to Continue Pre−Trial Confe... 03/22/2020) |
| 04/14/2020 | 49 | *Third* Motion to Continue Pretrial Conference Filed on the behalf of: Plaintiff Jeanne Ann ... |
| 04/14/2020 | 50 | Submitted Order *Granting Motion to Continue Pretrial Conference* Filed on the behalf of: ... document(s)49). (YOUNG, PHILLIP) (Entered: 04/14/2020) |
| 04/15/2020 | 51 | Order Granting *Plaintiff's* Motion to Continue Pre−Trial Conference . *Hearing will take pla... Access Code 7250422) pursuant to Judge Walker's CH7 & 11 Tuesday Docket Procedures ... website at: http://www.tnmb.uscourts.gov/coronavirus−disease−covid−19−information−relating−cou...* (RE: Ref Doc #49), BY THE COURT: Judge Charles M. Walker **Pretrial Conference is s... Courtroom 2, 2nd Floor Customs House, 701 Broadway, Nashville, TN 37203. Case ju...** 04/15/2020) |
| 04/17/2020 | 52 | BNC Certificate of Notice. (RE: related document(s)51 Order to Continue Pre−Trial Confe... 04/17/2020) |
| 05/15/2020 | 53 | *Fourth* Motion to Continue Pretrial Conference Filed on the behalf of: Plaintiff Jeanne Ann... 05/15/2020) |
| 05/15/2020 | 54 | Submitted Order *Granting Motion to Continue Pretrial Conference* Filed on the behalf of: ... document(s)53). (YOUNG, PHILLIP) (Entered: 05/15/2020) |
| 05/18/2020 | 55 | Order Granting *Plaintiff's* Motion to Continue Pre−Trial Conference (RE: Ref Doc #53), B**... Conference is scheduled for 6/30/2020 at 10:15 AM in Courtroom 2, 2nd Floor Custom... Case judge is Charles M Walker.** (anm) (Entered: 05/18/2020) |
| 05/20/2020 | 56 | BNC Certificate of Notice. (RE: related document(s)55 Order to Continue Pre−Trial Confe... 05/20/2020) |
| 06/29/2020 | 57 | Motion to Continue Pretrial Conference Filed on the behalf of: Plaintiff Jeanne Ann Burton... |
| 06/29/2020 | 58 | Expedited Submitted Order *Granting Motion to Continue Pretrial Conference* Filed on the ... document(s)57). (YOUNG, PHILLIP) (Entered: 06/29/2020) |

| | | | |
|---|---|---|---|
| 06/29/2020 | 59 | Order Granting *Plaintiff's* Motion to Continue Pre−Trial Conference . *Hearing Shall be He* 888−363−4749, Access Code 7250422#) (RE: Ref Doc #57), BY THE COURT: Judge Cha **for 8/18/2020 at 10:15 AM in Courtroom 2, 2nd Floor Customs House, 701 Broadway, Walker.** (anm) (Entered: 06/29/2020) | |
| 07/01/2020 | 60 | BNC Certificate of Notice. (RE: related document(s)59 Order to Continue Pre−Trial Confe 07/01/2020) |
| 08/17/2020 | 61 | *Joint* Pretrial Statement Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHI |
| 08/17/2020 | | Email Judge Charles M. Walker of Late Filed Matter. Filed on the behalf of: Plaintiff Jeann (YOUNG, PHILLIP) (Entered: 08/17/2020) |
| 08/18/2020 | 62 | Submitted Order *Continuing Pretrial Conference* Filed on the behalf of: Plaintiff Jeanne A 08/18/2020) |
| 08/19/2020 | 63 | Order To Continue Pretrial Conference − (RE: Related Doc#: 59). **Pretrial Conference is Courtroom 2, 2nd Floor Customs House, 701 Broadway, Nashville, TN 37203. Case ju** (anm) (Entered: 08/19/2020) |
| 08/20/2020 | 64 | Clerk's Remark − The related document has the following defect(s): − The Notice located a extinguish the Default entered by the Clerk of Court. Such action can only be effectuated by Notice *of Withdrawal of Entry of Default* Filed on the behalf of: Plaintiff Jeanne Ann Burto 08/20/2020) |
| 08/21/2020 | 65 | BNC Certificate of Notice. (RE: related document(s)63 Order to Continue Pretrial Confere 08/21/2020) |
| 01/12/2021 | 66 | Order Continuing Hearing Re: (related document(s): 59 Order to Continue Pre−Trial Confe **Hearing has been rescheduled for 04/13/2021 at 10:15 AM Telephonically. The call−in 7250422# for Judge Walker.** (lel) (Entered: 01/12/2021) |
| 02/24/2021 | 67 | Order Continuing Hearing Re: (related document(s): 59 Order to Continue Pre−Trial Confe **Hearing has been rescheduled for 04/16/2021 at 11:00 AM Telephonically. The call−in 7250422# for Judge Walker.** (lel) (Entered: 02/24/2021) |
| 03/03/2021 | 68 | Motion for *Stay of All Discovery*. (Attachments: # 1 Exhibit A)Certificate of Service maile Ann Burton. (YOUNG, PHILLIP) (Entered: 03/03/2021) |
| 03/05/2021 | 69 | Notice of Hearing on Motion − AP Motion. *Motion for Stay of All Discovery. RESPONSE* **11:00 AM Telephonically. The call−in number is 1−888−363−4749; Access Code is 725** 68 Motion − AP Motion). (lel) (Entered: 03/05/2021) |
| 03/07/2021 | 70 | BNC Certificate of Notice. (RE: related document(s)69 Notice of Hearing) Notice Date 03/ |
| 03/28/2021 | 71 | *Adversary Proceeding Defendants'* Response to *Trustee's Motion to Stay*. Filed on the beha Manookian PLLC (RE: related document(s)68). (SPRAGENS, JOHN) (Entered: 03/28/202 |
| 04/07/2021 | 72 | Submitted Order *Granting Motion to Stay Discovery and Continuing Pretrial Conference* F (RE: related document(s)68). (YOUNG, PHILLIP) (Entered: 04/07/2021) |
| 04/08/2021 | 73 | *Order Granting Plaintiff's Motion to Stay Discovery and* Order Scheduling Hearing *to Con Matter and Continuing Pretrial Conference.* (RE: Related Doc#: 68, 71). **Hearing schedul call−in number is 1−888−363−4749; Access Code is 7250422# for Judge Walker.** Signe |
| 04/08/2021 | 74 | Pretrial Conference Set − (Order Scheduling Hearing) **Pretrial Conference is scheduled f call−in number is 1−888−363−4749; Access Code is 7250422# for Judge Walker.** Case |

| | | | |
|---|---|---|---|
| | | | document(s)73 Order Scheduling Hearing) (anm) (Entered: 04/08/2021) |
| 04/10/2021 | | 75 | BNC Certificate of Notice. (RE: related document(s)73 Order Scheduling Hearing) Notice |
| 04/10/2021 | | 76 | BNC Certificate of Notice. (RE: related document(s)74 Pretrial Conference Set (Bk Motion 04/10/2021) |
| 05/26/2021 | | 77 | Order Continuing Hearing Re: (related document(s): 73 Order Scheduling Hearing) **Hearin AM Telephonically. The call−in number is 1−888−363−4749; Access Code is 7250422#** |
| 05/26/2021 | | 78 | Order Continuing Hearing Re: (related document(s): 74 Pretrial Conference Set (Bk Motion **at 11:00 AM Telephonically. The call−in number is 1−888−363−4749; Access Code is 7** 05/26/2021) |
| 05/26/2021 | | 79 | Submitted Order *Further Staying Discovery and Continuing Pretrial Conference* Filed on t (YOUNG, PHILLIP) (Entered: 05/26/2021) |
| 05/27/2021 | | 80 | Order *Further Staying Discovery and Continuing Pretrial Conference.* (RE: Related Doc#: 05/27/2021) |
| 07/20/2021 | | 81 | *Emergency* Motion to Continue Pretrial Conference Filed on the behalf of: Plaintiff Jeanne 07/20/2021) |
| 07/20/2021 | | 82 | Expedited Submitted Agreed Order *Continuing Pretrial Conference* Filed on the behalf of: document(s)81). (YOUNG, PHILLIP) (Entered: 07/20/2021) |
| 07/20/2021 | | | Email Judge Charles M. Walker of Late Filed Matter. Filed on the behalf of: Plaintiff Jeann (YOUNG, PHILLIP) (Entered: 07/20/2021) |
| 07/20/2021 | | 83 | *Agreed* Order Granting *Trustee/Plaintiff's Emergency* Motion to Continue Pre−Trial Confer THE COURT: Judge Charles M. Walker. **Pretrial Conference is scheduled for 8/11/2021 number is 1−888−363−4749; Access Code is 7250422# for Judge Walker.** Case judge is |
| 08/05/2021 | | 84 | Motion to Continue Pretrial Conference Filed on the behalf of: Plaintiff Jeanne Ann Burton |
| 08/05/2021 | | 85 | Submitted Agreed Order *Continuing Pretrial Conference* Filed on the behalf of: Plaintiff Je (YOUNG, PHILLIP) (Entered: 08/05/2021) |
| 08/09/2021 | | 86 | *Agreed* Order Granting *Trustee/Plaintiff's* Motion to Continue Pre−Trial Conference (RE: F Walker. **Pretrial Conference is scheduled for 9/17/2021 at 11:00 AM; via Zoom video f www.tnmb.uscourts.gov.** Case judge is Charles M Walker. (anm) (Entered: 08/09/2021) |
| 08/11/2021 | | 87 | BNC Certificate of Notice. (RE: related document(s)86 Order to Continue Pre−Trial Confe 08/11/2021) |
| 09/17/2021 | | 88 | Order Continuing Hearing Re: (related document(s): 86 Order to Continue Pre−Trial Confe **09/29/2021 at 01:00 PM; via Zoom video for Nashville; For details please see www.tnm** |
| 10/14/2021 | | 89 | Motion for *Scheduling Pretrial Conference or to Enter Pretrial Order.* (Attachments: # 1 E Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered: 10/14/2021) |
| 10/18/2021 | | 90 | Order Setting Expedited Hearing *on Plaintiff's Motion to Set Hearing on Pretrial Conferenc* **10/20/2021 at 11:00 AM; via Zoom video for Nashville; For details please see www.tnm** *https://www.zoomgov.com/j/16086357633. The Meeting ID is 160 8635 7633. The Audioco 833−568−8864.* Signed on 10/18/2021. (rww) (Entered: 10/18/2021) |

| | | | |
|---|---|---|---|
| 10/19/2021 | | 91 | Response to *Trustee's Motion for Scheduling Conference or to Enter Pretrial Order*. Filed o related document(s)89). (SPRAGENS, JOHN) (Entered: 10/19/2021) |
| 10/19/2021 | | | Email Judge Charles M. Walker of Late Filed Matter. *Response to Trustee's Motion for Sch Order* Filed on the behalf of: Defendant Manookian PLLC (RE: related document(s)91). (S |
| 10/20/2021 | | 92 | Submitted Order *Pretrial Order* Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOU |
| 10/29/2021 | | 93 | *Pretrial Order and* Order Setting Pretrial Conference − *Dispositive Motions Shall be Filed Shall be Filed by 7/8/2022. Reply Briefs Addressing Only New Matters Set Forth in Respon* Doc#: 89, 91). **Pretrial Conference is scheduled for 2/2/2022 at 11:00 AM; via Zoom vi www.tnmb.uscourts.gov.** *Judge Walker's Zoom Link is https://www.zoomgov.com/j/16086* (Entered: 10/29/2021) |
| 10/31/2021 | | 94 | BNC Certificate of Notice. (RE: related document(s)93 Order Setting Pretrial Conference) 10/31/2021) |
| 12/21/2021 | | 95 | Motion and Notice to Compel *Discovery Responses from Manookian, PLLC* (Attachments: Exhibit 4)Certificate of Service mailed on 12/20/21. Filed on the behalf of: Plaintiff Jeanne 12/21/2021) |
| 12/21/2021 | | 96 | Motion and Notice to Compel *Discovery Responses from Hagh Law, PLLC* (Attachments: 4)Certificate of Service mailed on 12/20/21. Filed on the behalf of: Plaintiff Jeanne Ann Bu |
| 12/21/2021 | | 97 | Motion and Notice to Compel *Discovery Responses from Afsoon Hagh* (Attachments: # 1 E Service mailed on 12/20/21. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, |
| 12/22/2021 | | 98 | Notice of Hearing on Motion and Notice to Compel − AP Motion, Motion and Notice to Compel − AP Motion, Motion and Notice to Compel − AP Motion. **Hearing scheduled 1/5/2022 at 11:00 AM; via Zoom video for Nashville; For details please see www.tnmb.uscourts.gov.** (RE: related document(s)95, 96, 97) (lel) (Entered: 12/22/2021) |
| 12/23/2021 | | 99 | *Joint* Motion to Continue Hearing On *Motions to Compel* Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC. (GABBERT, CRAIG) (Entered: 12/23/2021) |
| 12/23/2021 | | 100 | Submitted Agreed Order *to Continue Hearing on Motions to Compel* Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC (RE: related document(s)98, 99). (GABBERT, CRAIG) (Entered: 12/23/2021) |
| 12/24/2021 | | 101 | BNC Certificate of Notice. (RE: related document(s)98 Notice of Hearing) Notice Date 12/24/2021. (Admin.) (Entered: 12/24/2021) |
| 12/29/2021 | | 102 | Order *Granting* Continuance of Hearing *On Motion to Compel. Response Deadline to the Motion to Compel is January 26, 2022.* (RE: Related Doc#: 95, 96, 97, 99). **Hearing has been rescheduled for 2/2/2022 at 11:00 AM; via Zoom video for Nashville; For details please see www.tnmb.uscourts.gov.** Signed on 12/29/2021. (mlh) Modified on 12/30/2021 to correct scrivener error (tca). (Entered: 12/29/2021) |
| 12/31/2021 | | 103 | BNC Certificate of Notice. (RE: related document(s)102 Order to Continue Hearing) Notice Date 12/31/2021. (Admin.) (Entered: 12/31/2021) |
| 01/19/2022 | | 104 | *Manookian PLLC's* Motion and Notice to Compel *Plaintiff Trustee Jeanne Burton to Respond to Interrogatories* (Attachments: # 1 Exhibit |

| | | | |
|---|---|---|---|
| | | | Defendant Manookian PLLC's Interrogatories and Responses # 2 Exhibit Meet and Confer Letter)Filed on the behalf of: Defendant Manookian PLLC. (SPRAGENS, JOHN) (Entered: 01/19/2022) |
| 01/20/2022 | | 105 | Notice of Hearing on Motion and Notice to Compel − AP Motion. *Manookian PLLC's Motion and Notice to Compel Plaintiff Trustee Jeanne Burton to Respond to Interrogatories* **Hearing scheduled 2/16/2022 at 11:00 AM; via Zoom video for Nashville; For details please see www.tnmb.uscourts.gov.** (RE: related document(s)104) (lel) (Entered: 01/20/2022) |
| 01/22/2022 | | 106 | BNC Certificate of Notice. (RE: related document(s)105 Notice of Hearing) Notice Date 01/22/2022. (Admin.) (Entered: 01/22/2022) |
| 01/26/2022 | | 107 | Response to *Plaintiff's Motion to Compel.* Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC (RE: related document(s)104, 105). (GABBERT, CRAIG) (Entered: 01/26/2022) |
| 01/26/2022 | | 108 | Response to *Trustee's Motion to Compel Discovery Responses.* Filed on the behalf of: Defendant Manookian PLLC (RE: related document(s)95). (SPRAGENS, JOHN) (Entered: 01/26/2022) |
| 01/27/2022 | | 109 | *Manookian PLLC's* Motion for *Court to Determine Sufficiency of Plaintiffs Responses to Requests for Admission, or, Alternatively, to Deem Admitted.* (Attachments: # 1 Exhibit RFA Responses # 2 Exhibit Meet and Confer Letter)Filed on the behalf of: Defendant Manookian PLLC. (SPRAGENS, JOHN) (Entered: 01/27/2022) |
| 01/31/2022 | | 110 | Notice of Hearing on Motion − AP Motion. *Manookian PLLC's Motion for Court to Determine Sufficiency of Plaintiffs Responses to Requests for Admission, or, Alternatively, to Deem Admitted.* **Hearing scheduled 2/16/2022 at 11:00 AM; via Zoom video for Nashville; For details please see www.tnmb.uscourts.gov.** (RE: related document(s)109) (lel) (Entered: 01/31/2022) |
| 01/31/2022 | | 111 | Order Continuing Hearing Re: (related document(s): 89 Motion − AP Motion filed by Jeanne Ann Burton, 91 Response filed by Manookian PLLC, 93 Order Setting Pretrial Conference) **Hearing has been rescheduled for 02/16/2022 at 11:00 AM; via Zoom video for Nashville; For details please see www.tnmb.uscourts.gov.** (lel) (Entered: 01/31/2022) |
| 01/31/2022 | | 112 | Order Continuing Hearing Re: (related document(s): 95 Motion and Notice to Compel − AP Motion filed by Jeanne Ann Burton, 96 Motion and Notice to Compel − AP Motion filed by Jeanne Ann Burton, 97 Motion and Notice to Compel − AP Motion filed by Jeanne Ann Burton, 99 Motion to Continue − Reschedule Hearing filed by Afsoon Hagh, Hagh Law PLLC, 102 Order to Continue Hearing) **Hearing has been rescheduled for 02/16/2022 at 11:00 AM; via Zoom video for Nashville; For details please see www.tnmb.uscourts.gov.** (lel) (Entered: 01/31/2022) |
| 01/31/2022 | | 113 | Submitted Agreed Order *Protective Order* Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered: 01/31/2022) |
| 02/01/2022 | | 114 | Motion and Notice to Compel *Marty Fitzgerald to Comply with Subpoena for Production of Documents* (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C)Certificate of Service mailed on 2/1/22. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered: |

| | | | |
|---|---|---|---|
| | | | 02/01/2022) |
| 02/01/2022 | | 115 | Notice of Hearing on Motion and Notice to Compel − AP Motion. *Motion and Notice to Compel Marty Fitzgerald to Comply with Subpoena for Production of Documents* **Hearing scheduled 2/16/2022 at 11:00 AM; via Zoom video for Nashville; For details please see www.tnmb.uscourts.gov.** (RE: related document(s)114) (lel) (Entered: 02/01/2022) |
| 02/02/2022 | | 116 | *Protective* Order . Signed on 2/2/2022. (anm) (Entered: 02/02/2022) |
| 02/02/2022 | | 117 | BNC Certificate of Notice. (RE: related document(s)110 Notice of Hearing) Notice Date 02/02/2022. (Admin.) (Entered: 02/02/2022) |
| 02/03/2022 | | 118 | BNC Certificate of Notice. (RE: related document(s)115 Notice of Hearing) Notice Date 02/03/2022. (Admin.) (Entered: 02/03/2022) |
| 02/04/2022 | | 119 | BNC Certificate of Notice. (RE: related document(s)116 Order) Notice Date 02/04/2022. (Admin.) (Entered: 02/04/2022) |
| 02/09/2022 | | 120 | *Trustee's* Response to *Manookian PLLC's Motion to Compel and Motion to Determine Sufficiency of Responses to Requests for Admission*. (Attachments: # 1 Exhibit A) Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)104, 109). (YOUNG, PHILLIP) (Entered: 02/09/2022) |
| 02/14/2022 | | 121 | Submitted Agreed Order *Revised Protective Order*. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered: 02/14/2022) |
| 02/14/2022 | | 122 | *Manookian PLLC's* Reply to *Plaintiff's Response in Opposition to Motion to Compel and Motion to Determine the Sufficiency of Responses to Requests for Production*. Filed on the behalf of: Defendant Manookian PLLC (RE: related document(s)109, 120). (SPRAGENS, JOHN) (Entered: 02/14/2022) |
| 02/15/2022 | | 123 | *Revised Protective* Order . (RE: Related Doc#: 116). Signed on 2/15/2022. (anm) (Entered: 02/15/2022) |
| 02/16/2022 | | 124 | Submitted Order *Continuing Hearings and Pretrial Conference*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)95, 96, 97, 109, 114). (YOUNG, PHILLIP) (Entered: 02/16/2022) |
| 02/17/2022 | | 129 | BNC Certificate of Notice. (RE: related document(s)123 Order) Notice Date 02/17/2022. (Admin.) (Entered: 02/17/2022) |
| 02/18/2022 | | 130 | Order *Granting* Continuance of Hearing*(s) and Pretrial Conference*. (RE: Related Doc#: 93, 95, 96, 97, 104, 109, 114). **Hearing has been rescheduled for 3/17/2022 at 08:30 AM, Courtroom 2, 2nd Floor Customs House, 701 Broadway, Nashville, TN 37203.** Signed on 2/18/2022. (kmw) (Entered: 02/18/2022) |
| 03/09/2022 | | 131 | Expedited Submitted Agreed Order *Protective Order*. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered: 03/09/2022) |
| 03/09/2022 | | 132 | *Protective* Order . Signed on 3/9/2022. (jtd) (Entered: 03/09/2022) |

| | | | |
|---|---|---|---|
| 03/15/2022 | | <u>133</u> | Prehearing Statement*Trustee's Status Report in Advance of March 17 Hearing*. (Attachments: # <u>1</u> Exhibit 1 # <u>2</u> Exhibit 2 # <u>3</u> Exhibit 3 # <u>4</u> Exhibit 4 # <u>5</u> Exhibit 5 # <u>6</u> Exhibit 6 # <u>7</u> Exhibit 7 # <u>8</u> Exhibit 8 # <u>9</u> Exhibit 9 # <u>10</u> Exhibit 10) Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered: 03/15/2022) |
| 03/15/2022 | | | Email Judge Charles M. Walker of Late Filed Matter. Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)<u>133</u>). (YOUNG, PHILLIP) (Entered: 03/15/2022) |
| 03/18/2022 | | <u>134</u> | Request for Audio CD. Fee Amount is $32.00. Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC, Manookian PLLC (RE: related document(s)<u>130</u>). (SPRAGENS, JOHN) (Entered: 03/18/2022) |
| 03/18/2022 | | 135 | Receipt of Request for CD( 3:20−ap−90002) [misc,cdreq] ( 32.00). Receipt number A17464401. Fee amount $ 32.00. (re:Doc# <u>134</u>) (U.S. Treasury) (Entered: 03/18/2022) |
| 03/18/2022 | | <u>136</u> | Request for Audio CD. Fee Amount is $32.00. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 03/18/2022) |
| 03/21/2022 | | <u>137</u> | Request for Transcript. Fee Amount is $32.00. Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC, Manookian PLLC (RE: related document(s)<u>130</u>). (SPRAGENS, JOHN) (Entered: 03/21/2022) |
| 03/21/2022 | | 138 | Receipt of Request for Transcript( 3:20−ap−90002) [misc,tsreq] ( 32.00). Receipt number A17467281. Fee amount $ 32.00. (re:Doc# <u>137</u>) (U.S. Treasury) (Entered: 03/21/2022) |
| 03/23/2022 | | <u>140</u> | Transcript regarding Hearing Held 3/17/22. Remote electronic access to the transcript is restricted until 06/21/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office. Contact the Court Reporter/Transcriber Access Transcripts, telephone number 855−873−2223. Deadline to file Notice of Intent to Request Redaction is 3/30/2022. Deadline to file Request for Redaction is 04/13/2022. Redacted transcript due by 04/25/2022.. (WATSON, ILENE) (Entered: 03/23/2022) |
| 03/25/2022 | | <u>141</u> | Notice *Regarding Motions to Compel Order*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 03/25/2022) |
| 03/25/2022 | | <u>142</u> | Expedited Submitted Order *Regarding Motions to Compel Discovery Responses*. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered: 03/25/2022) |
| 03/25/2022 | | | Email Judge Charles M. Walker of Late Filed Matter. Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)<u>141</u>). (YOUNG, PHILLIP) (Entered: 03/25/2022) |
| 03/28/2022 | | <u>143</u> | Order Granting *(Regarding) Plaintiff's* Motion to Compel *Discovery Responses*. (RE: Ref Doc # <u>114</u>), (Related Doc#: <u>95</u>, <u>96</u>, <u>97</u>, <u>104</u>, <u>107</u>, <u>108</u>, <u>109</u>, <u>120</u>, <u>122</u>, <u>141</u>). BY THE COURT: Judge Charles M. Walker. (anm) (Entered: 03/28/2022) |
| 03/30/2022 | | <u>144</u> | BNC Certificate of Notice. (RE: related document(s)<u>143</u> Order to Compel − AP Order) Notice Date 03/30/2022. (Admin.) (Entered: 03/30/2022) |
| 04/08/2022 | | <u>145</u> | |

| | | | |
|---|---|---|---|
| | | | Notice *of Depositions of Jeanne Burton and Phillip Young*. Filed on the behalf of: Defendant Manookian PLLC (RE: related document(s)143). (SPRAGENS, JOHN) (Entered: 04/08/2022) |
| 04/08/2022 | | 146 | *Defendant Hagh Law, PLLC's* Notice *of Deposition of Jeanne Ann Burton and Phillip Young*. Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC (GABBERT, CRAIG) (Entered: 04/08/2022) |
| 04/11/2022 | | 147 | *Expedited* Motion for *Schedule Pretrial Conference and to Continue Depositions and Other Deadlines*. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered: 04/11/2022) |
| 04/11/2022 | | 148 | Expedited Submitted Order *Setting Expedited Pretrial Conference*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)147). (YOUNG, PHILLIP) (Entered: 04/11/2022) |
| 04/14/2022 | | 149 | *Order Regarding Discovery Matters and* Order Denying *Plaintiffs Expedited* Motion *for Pretrial Conference and to Continue Depositions and Other Deadlines* . (RE: Ref Doc # 147), (Related Doc#: 143). BY THE COURT: Judge Charles M. Walker. (anm) (Entered: 04/14/2022) |
| 04/16/2022 | | 150 | BNC Certificate of Notice. (RE: related document(s)149 Order on Generic Motion − AP Order) Notice Date 04/16/2022. (Admin.) (Entered: 04/16/2022) |
| 04/25/2022 | | 151 | Notice *of Deposition of Afsoon Hagh and Hagh Law, PLLC*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 04/25/2022) |
| 04/25/2022 | | 152 | Notice *of Deposition of Brian Manookian, Manookian, PLLC, and Cummings Manookian, PLC*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 04/25/2022) |
| 04/26/2022 | | 153 | *Joint* Motion for *Reschedule Deposition of Afsoon Hagh and Hagh Law, PLLC*. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered: 04/26/2022) |
| 04/26/2022 | | 154 | Submitted Agreed Order *Rescheduling Deposition of Afsoon Hagh and Hagh Law, PLLC*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)153). (YOUNG, PHILLIP) (Entered: 04/26/2022) |
| 04/29/2022 | | 155 | *Agreed* Order Granting *Joint* Motion *Rescheduling Deposition of Afsoon Hagh and Hagh Law, PLLC* . (RE: Ref Doc # 153), (Related Doc#: 143). BY THE COURT: Judge Charles M. Walker. (anm) (Entered: 04/29/2022) |
| 04/30/2022 | | 156 | *Amended* Notice *of Deposition of Afsoon Hagh and Hagh Law, PLLC*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)151). (YOUNG, PHILLIP) (Entered: 04/30/2022) |
| 05/01/2022 | | 157 | BNC Certificate of Notice. (RE: related document(s)155 Order on Generic Motion − AP Order) Notice Date 05/01/2022. (Admin.) (Entered: 05/01/2022) |
| 05/05/2022 | | 158 | Notice *of Deposition of Ronette McCarthy*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 05/05/2022) |

| Date | | No. | Description |
|---|---|---|---|
| 05/05/2022 | | 159 | Notice *of Deposition of Brian Cummings*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 05/05/2022) |
| 05/05/2022 | | 160 | Notice *of Deposition of Marty Fitzgerald*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 05/05/2022) |
| 05/05/2022 | | 161 | Motion to Recuse Judge*Charles M. Walker*. (Attachments: # 1 Exhibit Hearing Transcript # 2 Exhibit Young Deposition Excerpt # 3 Exhibit Deposition Instructions)Filed on the behalf of: Defendant Manookian PLLC. (SPRAGENS, JOHN) (Entered: 05/05/2022) |
| 05/11/2022 | | 162 | Notice *Proof of Service of Subpoena on Ronette McCarthy*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 05/11/2022) |
| 05/11/2022 | | 163 | Notice *Proof of Service of Subpoena on Brian Cummings*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 05/11/2022) |
| 05/11/2022 | | 164 | Notice *Proof of Service of Subpoena on Marty Fitzgerald*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 05/11/2022) |
| 05/11/2022 | | 165 | Order Scheduling Hearing *and Setting Response/Objection Deadline on Motion to Disqualify Bankruptcy Judge*. (RE: Related Doc#: 161). **Hearing scheduled 6/29/2022 at 01:00 PM, Courtroom 2, 2nd Floor Customs House, 701 Broadway, Nashville, TN 37203.** Objections due by 5/27/2022. Signed on 5/11/2022. (jtd) (Entered: 05/11/2022) |
| 05/17/2022 | | 166 | *Second Revised* Notice *of Deposition of Afsoon Hagh and Hagh Law, PLLC*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 05/17/2022) |
| 05/17/2022 | | | Email Judge Charles M. Walker of Late Filed Matter. Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)166). (YOUNG, PHILLIP) (Entered: 05/17/2022) |
| 05/19/2022 | | 167 | *Defendants' Unopposed* Motion for *to Continue Third Party Depositions and Reset Certain Other Deadlines*. Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC. (GABBERT, CRAIG) (Entered: 05/19/2022) |
| 05/19/2022 | | 168 | Submitted Order *Granting Defendants' Unopposed Motion to Continue Third Party Depositions and Resetting Certain Other Deadlines*. Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC (RE: related document(s)167). (GABBERT, CRAIG) (Entered: 05/19/2022) |
| 05/25/2022 | | 169 | *Expedited* Motion for *to Set Telephonic Hearing on Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Certain Other Deadlines*. Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC. (GABBERT, CRAIG) (Entered: 05/25/2022) |
| 05/25/2022 | | 170 | Expedited Submitted Order *on Motion to Set Telephonic Hearing on Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Certain Other Deadlines*. Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC (RE: related document(s)169). (GABBERT, CRAIG) (Entered: 05/25/2022) |

| | | | |
|---|---|---|---|
| 05/25/2022 | | [171](#) | ORDER by Judge *Walker* : With regard to docket entry [168](#), *The Submitted Order located at Dkt. #168 will not be entered by the Court as the related motion at Dkt. #167 is DENIED. The Courts previous order entered March 28, 2022 at Dkt. #143 paragraph 9 renders the motion as unnecessary and therefore, is moot. The issue related to any deadlines will be addressed at the emergency hearing on May 25, 2022 at 1:00 p.m.* (RE: related document(s) [168](#)) (leq) Modified on 5/25/2022 (leq). Modified on 5/25/2022 (leq). (Entered: 05/25/2022) |
| 05/25/2022 | | [172](#) | *Expedited* Order Setting Expedited Hearing *(Telephonic Hearing)* on *Defendants' Unopposed Motion to Continue Third Party Depositions and Reset Certain Other Deadline*. (RE: Related Doc#: [169](#)). **Hearing scheduled 5/25/2022 at 01:00 PM; Refer to www.tnmb.uscourts.gov for details (Nashville).** Signed on 5/25/2022. (anm) (Entered: 05/25/2022) |
| 05/27/2022 | | [173](#) | *Defendants Afsoon Hagh and Haugh Law, PLLC's* Response to *Manookian's Motion to Disqualify*. Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC (RE: related document(s)[161](#)). (GABBERT, CRAIG) (Entered: 05/27/2022) |
| 05/27/2022 | | [174](#) | *Plaintiff's* Response to *Brian Manookian and Manookian PLLC's Motion to Disqualify Bankruptcy Judge Charles Walker*. (Attachments: # [1](#) Exhibit Full Deposition Transcript) Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)[161](#)). (YOUNG, PHILLIP) (Entered: 05/27/2022) |
| 05/27/2022 | | [175](#) | BNC Certificate of Notice. (RE: related document(s)[172](#) Order Setting Expedited Hearing) Notice Date 05/27/2022. (Admin.) (Entered: 05/27/2022) |
| 05/27/2022 | | [176](#) | BNC Certificate of Notice. (RE: related document(s)[171](#) Docket Order) Notice Date 05/27/2022. (Admin.) (Entered: 05/27/2022) |
| 05/31/2022 | | [177](#) | Notice *of Deposition of Judge Charles M. Walker*. Filed on the behalf of: Defendant Manookian PLLC (SPRAGENS, JOHN) (Entered: 05/31/2022) |
| 06/01/2022 | | [178](#) | Order *Quashing Notice of Deposition*. (RE: Related Doc#: [177](#)). Signed on 6/1/2022. (leq) (Entered: 06/01/2022) |
| 06/02/2022 | | [179](#) | *Revised* Notice *of Deposition of Ronette McCarthy*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 06/02/2022) |
| 06/03/2022 | | [180](#) | *Revised* Notice *of Deposition of Brian Cummings*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 06/03/2022) |
| 06/04/2022 | | [181](#) | BNC Certificate of Notice. (RE: related document(s)[178](#) Order) Notice Date 06/04/2022. (Admin.) (Entered: 06/04/2022) |
| 06/06/2022 | | [182](#) | *Amended* Notice *of Deposition of Marty Fitzgerald*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 06/06/2022) |
| 06/09/2022 | | [183](#) | Notice *Proof of Service of Subpoena on Marty Fitzgerald*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 06/09/2022) |
| 06/14/2022 | | [184](#) | Notice of Appeal and Statement of Election to District Court. Fee Amount is $298.00. Appellant Designation due by 06/28/2022. Filed on the behalf |

| | | | |
|---|---|---|---|
| | | | of: Interested Party BRIAN MANOOKIAN, Defendant Manookian PLLC (RE: related document(s)178). (SPRAGENS, JOHN) (Entered: 06/14/2022) |
| 06/14/2022 | | 185 | Receipt of Notice or Amended Notice of Appeal and Statement of Election( 3:20−ap−90002) [appeal,ntcapl] ( 298.00). Receipt number A17596237. Fee amount $ 298.00. (re:Doc# 184) (U.S. Treasury) (Entered: 06/14/2022) |
| 06/24/2022 | | 186 | Certificate of Service mailed on 6/24/2022 on Notice of Appeal and Statement of Election (RE: related document(s)184). (leq) (Entered: 06/24/2022) |
| 06/24/2022 | | 187 | Transmittal of Notice of Appeal and Documents Related to Appeal (Rules 8003(d), 8005(b)) to District Court. (RE: related document(s)184). (leq) (Entered: 06/24/2022) |
| 06/24/2022 | | 188 | *Defendants'* Motion For Summary Judgment. (Attachments: # 1 Exhibit Statement of Undisputed Material Facts # 2 Exhibit Exhibits to Statement of Undisputed Material Facts)Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC, Manookian PLLC. (SPRAGENS, JOHN) (Entered: 06/24/2022) |
| 06/28/2022 | | 189 | *Expedited* Motion for *Status Conference*. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered: 06/28/2022) |
| 06/28/2022 | | 190 | Expedited Submitted Order *Setting Expedited Status Conference*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)189). (YOUNG, PHILLIP) (Entered: 06/28/2022) |
| 06/28/2022 | | | Email Judge Charles M. Walker of Late Filed Matter. Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)189, 190). (YOUNG, PHILLIP) (Entered: 06/28/2022) |
| 06/28/2022 | | 191 | *Expedited* Order To Continue Pretrial Conference − *(Status Conference). Responses Due by 7/7/2022.* (RE: Related Doc#: 189). **Pretrial Conference is scheduled for 7/13/2022 at 11:00 AM, Courtroom 2, 2nd Floor Customs House, 701 Broadway, Nashville, TN 37203.** Signed on 6/28/2022. (anm) (Entered: 06/28/2022) |
| 06/29/2022 | | 192 | Acknowledgement of Receipt of Appeal from District Court. Case info: District Court Case #3:22−cv−00474. . (leq) (Entered: 06/29/2022) |
| 06/29/2022 | | 193 | Request for Audio CD. Fee Amount is $32.00. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 06/29/2022) |
| 06/29/2022 | | 194 | Receipt of Request for CD( 3:20−ap−90002) [misc,cdreq] ( 32.00). Receipt number A17617065. Fee amount $ 32.00. (re:Doc# 193) (U.S. Treasury) (Entered: 06/29/2022) |
| 06/29/2022 | | 195 | *Appellants'* Statement *of Issues on Appeal and Designation of Record.* Filed on the behalf of: Interested Party BRIAN MANOOKIAN, Defendant Manookian PLLC (SPRAGENS, JOHN) (Entered: 06/29/2022) |
| 06/30/2022 | | 196 | Notice *Regarding Deposition of Marty Fitzgerald*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 06/30/2022) |

| | | | |
|---|---|---|---|
| 06/30/2022 | | 197 | Motion to Withdraw Pleading in Adversary Proceeding. (Related Document(s): 189 Motion − AP Motion filed by Plaintiff Jeanne Ann Burton) *(And to Cancel Status Conference)* Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)189). (YOUNG, PHILLIP) (Entered: 06/30/2022) |
| 06/30/2022 | | 198 | Submitted Order *Canceling Status Conference*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)197). (YOUNG, PHILLIP) (Entered: 06/30/2022) |
| 06/30/2022 | | 199 | BNC Certificate of Notice. (RE: related document(s)191 Order to Continue Pretrial Conference) Notice Date 06/30/2022. (Admin.) (Entered: 06/30/2022) |
| 07/01/2022 | | 200 | ORDER by Judge *Walker* : With regard to docket entry # 198, *The Court will take no action regarding the Submitted Order at Dkt. #198 as a motion is properly withdrawn via Notice.* (RE: related document(s) 198) (leq) (Entered: 07/01/2022) |
| 07/01/2022 | | 201 | Notice *of Withdrawal of Expedited Motion for Status Conference*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)189). (YOUNG, PHILLIP) (Entered: 07/01/2022) |
| 07/03/2022 | | 202 | BNC Certificate of Notice. (RE: related document(s)200 Docket Order) Notice Date 07/03/2022. (Admin.) (Entered: 07/03/2022) |
| 07/15/2022 | | 203 | *Defendants'* Motion for *Entry of Unopposed Summary Judgment on All Claims & Notice of Filing Proposed Order*. Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC, Manookian PLLC. (SPRAGENS, JOHN) (Entered: 07/15/2022) |
| 07/15/2022 | | 204 | Submitted Order *Granting Summary Judgment to Defendants on All Claims [Proposed]*. Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC, Manookian PLLC (RE: related document(s)203). (SPRAGENS, JOHN) (Entered: 07/15/2022) |
| 07/15/2022 | | 205 | *Plaintiff/Trustee's* Response to *Defendants' Motion for Entry of Unopposed Summary Judgment on all Claims and Notice of Filing Proposed Order*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)203). (STEEN, RONALD) (Entered: 07/15/2022) |
| 07/19/2022 | | 206 | Request for Transcript. Fee Amount is $32.00. Filed on the behalf of: Defendant Manookian PLLC (SPRAGENS, JOHN) (Entered: 07/19/2022) |
| 07/19/2022 | | 207 | Receipt of Request for Transcript( 3:20−ap−90002) [misc,tsreq] ( 32.00). Receipt number A17644125. Fee amount $ 32.00. (re:Doc# 206) (U.S. Treasury) (Entered: 07/19/2022) |
| 07/22/2022 | | 209 | Motion for *Stay of All Deadlines Pending Resolution of Appeal*. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered: 07/22/2022) |
| 07/22/2022 | | 210 | Motion and Notice to Compel*Marty Fitzgerald to Comply with Subpoena for Testimony*. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C)Certificate of Service mailed on 7/22/22. Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered: 07/22/2022) |
| 07/22/2022 | | 211 | |

| | | | |
|---|---|---|---|
| | | | Notice *of Opposition to Motion Seeking Ex Parte Relief and Request for Opportunity to Respond*. Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC, Manookian PLLC (RE: related document(s)209). (SPRAGENS, JOHN) (Entered: 07/22/2022) |
| 07/22/2022 | | 212 | Transcript regarding Hearing Held 06/29/22. Remote electronic access to the transcript is restricted until 10/20/2022. The transcript may be viewed at the Bankruptcy Court Clerk's Office. Contact the Court Reporter/Transcriber Access Transcripts, telephone number (855) 873−2223. Deadline to file Notice of Intent to Request Redaction is 7/29/2022. Deadline to file Request for Redaction is 08/12/2022. Redacted transcript due by 08/22/2022.. (WATSON, ILENE) (Entered: 07/22/2022) |
| 07/25/2022 | | 213 | Order Denying *Defendants' Motion for Summary Judgment / Entry of Unopposed Summary Judgment on All Claims*. (RE: Ref Doc #188) (Related Doc #1, 161, 177, 178, 184, 203), BY THE COURT: Judge Charles M. Walker. (ko). Related document(s) 205 Response filed by Plaintiff Jeanne Ann Burton. Modified on 7/26/2022 to add linkage (cdw). (Entered: 07/25/2022) |
| 07/28/2022 | | 214 | Response to *Motion to Stay Deadlines*. (Attachments: # 1 Exhibit Manookian Second RFAs) Filed on the behalf of: Defendant Manookian PLLC (RE: related document(s)209). (SPRAGENS, JOHN) (Entered: 07/28/2022) |
| 07/28/2022 | | 215 | Reply to *Defendant's Response to Plaintiff's Untimely Motion to Stay Already Expired Deadlines*. (Attachments: # 1 Exhibit A # 2 Exhibit B) Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)209, 214). (YOUNG, PHILLIP) (Entered: 07/28/2022) |
| 07/29/2022 | | 216 | Notice *of Intent to File Motion for Partial Summary Judgment*. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 07/29/2022) |
| 08/12/2022 | | 217 | *Plaintiff's* Objection to *Defendants Afsoon Hagh, Hagh Law, PLLC and Manookian PLLC's Joint Motion for Summary Judgment and Memorandum in Support Thereof*. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15) Filed on the behalf of: Plaintiff Jeanne Ann Burton (RE: related document(s)188). (YOUNG, PHILLIP) (Entered: 08/12/2022) |
| 02/16/2023 | | 218 | Order By District Court Judge Aleta A. Trauger, Re: Appeal on Civil Action Number: 3:22−cv−00474, The court finds that the Order the appellants seek to appeal is not a "final order" that the appellants have an automatic right to appeal. The court, therefore, construes the Notice of Appeal as incorporating a motion for leave to appeal an interlocutory order. That motion is DENIED, for the reasons set forth herein. (RE: Related Doc#: 184, 192 ). Signed on 2/16/2023. (leq) (Entered: 02/16/2023) |
| 02/18/2023 | | 219 | BNC Certificate of Notice. (RE: related document(s)218 Order District Court re: Appeal − SA Order) Notice Date 02/18/2023. (Admin.) (Entered: 02/18/2023) |
| 03/10/2023 | | 220 | Order Scheduling Hearing *on Motion to Disqualify Bankruptcy Judge*. (RE: Related Doc#: 161, 173, 174). **Hearing scheduled 3/28/2023 at** |

| | | | |
|---|---|---|---|
| | | | **01:00 PM, Courtroom 2 (Virtual hearing if allowed; see website for details); 701 Broadway, Nashville, TN 37203.** Signed on 3/10/2023. (anm) (Entered: 03/10/2023) |
| 03/12/2023 | | 221 | BNC Certificate of Notice. (RE: related document(s)220 Order Scheduling Hearing) Notice Date 03/12/2023. (Admin.) (Entered: 03/13/2023) |
| 03/27/2023 | | 222 | *Emergency* Motion to Continue Hearing On *Motion to Disqualify Bankruptcy Judge* Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC. (GABBERT, CRAIG) (Entered: 03/27/2023) |
| 03/27/2023 | | | Email Judge Charles M. Walker of Late Filed Matter. *Emergency Motion to Continue Hearing* Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC (RE: related document(s)222). (GABBERT, CRAIG) (Entered: 03/27/2023) |
| 03/27/2023 | | 223 | Order *Granting Emergency Motion for* Continuance of Hearing. (RE: Related Doc#: 222). Hearing has been rescheduled for 4/4/2023 at 08:00 AM, Courtroom 2 (Virtual hearing if allowed; see website for details); 701 Broadway, Nashville, TN 37203. Signed on 3/27/2023. (leq) (Entered: 03/27/2023) |
| 03/29/2023 | | 224 | BNC Certificate of Notice. (RE: related document(s)223 Order to Continue Hearing) Notice Date 03/29/2023. (Admin.) (Entered: 03/29/2023) |
| 04/03/2023 | | 225 | Exhibit and Witness List. Filed on the behalf of: Interested Party BRIAN MANOOKIAN, Defendant Manookian PLLC (RE: related document(s)223). (SPRAGENS, JOHN) (Entered: 04/03/2023) |
| 04/04/2023 | | 226 | Request for Transcript. Fee Amount is $32.00. Filed on the behalf of: Plaintiff Jeanne Ann Burton (YOUNG, PHILLIP) (Entered: 04/04/2023) |
| 04/04/2023 | | 227 | Receipt of Request for Transcript( 3:20−ap−90002) [misc,tsreq] ( 32.00). Receipt number A18024993. Fee amount $ 32.00. (re:Doc# 226) (U.S. Treasury) (Entered: 04/04/2023) |
| 04/05/2023 | | 229 | Order Denying Motion to Recuse Judge *Walker..* (RE: Ref Doc # 161) ( Related Doc#: 173, 174, 222), BY THE COURT: Judge Charles M. Walker. (jtd) (Entered: 04/05/2023) |
| 04/11/2023 | | 230 | Motion for *Scheduling Pretrial Conference.* Filed on the behalf of: Plaintiff Jeanne Ann Burton. (YOUNG, PHILLIP) (Entered: 04/11/2023) |
| 04/18/2023 | | 231 | Notice of Appeal and Statement of Election to District Court. Fee Amount is $298.00. Appellant Designation due by 05/2/2023. Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC, Manookian PLLC, Interested Party BRIAN MANOOKIAN (RE: related document(s)229). (SPRAGENS, JOHN) (Entered: 04/18/2023) |
| 04/18/2023 | | 232 | Receipt of Notice or Amended Notice of Appeal and Statement of Election( 3:20−ap−90002) [appeal,ntcapl] ( 298.00). Receipt number A18047791. Fee amount $ 298.00. (re:Doc# 231) (U.S. Treasury) (Entered: 04/18/2023) |
| 04/20/2023 | | 233 | Certificate of Service mailed on 4/20/2023 *on Notice of Appeal and Statement of Election* (RE: related document(s)231). (leq) (Entered: |

| | | | |
|---|---|---|---|
| | | | 04/20/2023) |
| 04/20/2023 | | 234 | Transmittal of Notice of Appeal and Documents Related to Appeal (Rules 8003(d), 8005(b)) to District Court. (RE: related document(s)231). (leq) (Entered: 04/20/2023) |
| 04/24/2023 | | 235 | Acknowledgement of Receipt of Appeal from District Court. Case info: 3:23−cv−00392. (leq) (Entered: 04/24/2023) |
| 05/05/2023 | | 236 | Statement of Issues on Appeal,*and Designation of Record*. Filed on the behalf of: Defendants Afsoon Hagh, Hagh Law PLLC, Manookian PLLC, Interested Party BRIAN MANOOKIAN (RE: related document(s) 234 ). (SPRAGENS, JOHN) (Entered: 05/05/2023) |
| 05/05/2023 | | 237 | Transcript regarding Hearing Held 4/4/23. Remote electronic access to the transcript is restricted until 08/3/2023. The transcript may be viewed at the Bankruptcy Court Clerk's Office. Contact the Court Reporter/Transcriber Access Transcripts, telephone number (855) 873−2223. Deadline to file Notice of Intent to Request Redaction is 5/12/2023. Deadline to file Request for Redaction is 05/26/2023. Redacted transcript due by 06/5/2023.. (WATSON, ILENE) (Entered: 05/05/2023) |
| 06/01/2023 | | 238 | Certified Record on Appeal Transmitted to District Court Case Number 23−cv−00392. (leq) (Entered: 06/01/2023) |

IN RE:                                      )
                                            )
CUMMINGS MANOOKIAN, PLLC,                    )     **Case No. 3:19-bk-07235**
    Debtor.                              )     **Chapter 7**
                                            )     **Judge Walker**
JEANNE ANN BURTON, TRUSTEE,                  )
    Plaintiff,                           )
                                            )
v.                                          )
                                            )
HAGH LAW, PLLC; AFSOON HAGH;                 )
MANOOKIAN, PLLC; and FIRST-                  )
CITIZENS BANK & TRUST                        )
COMPANY,                                    )
    Defendants.                          )
                                            )     **Adv. Proc. No. _____**
                                            )
                                            )
                                            )
                                            )
                                            )

## COMPLAINT

Jeanne Ann Burton, the Trustee in the above-captioned case, files this action against the above-named Defendants, for conversion, fraudulent transfer, tortious interference with contract, successor liability/alter ego, turnover, declaratory judgment, injunctive relief, and related relief, and would further state:

<u>PARTIES</u>

1.      Plaintiff Jeanne Ann Burton (the "Trustee") is the duly appointed Chapter 7 Trustee of the Estate of Cummings Manookian, PLC[1] (the "Debtor" or "CM"). The Trustee brings this Complaint in her capacity as trustee, on behalf of the Debtor, for its claims against Defendants.

---

[1] The Debtor is incorrectly named "Cummings Manookian, PLLC" in the petition.

2.     Defendant Hagh Law, PLLC ("Hagh Law") is, on information and belief, a professional limited liability company organized under the laws of Tennessee and may be served with process upon its managing member, Afsoon Hagh, at 45 Music Square W, Nashville, TN 37203.

3.     Defendant Afsoon Hagh ("Hagh") is, on information and belief, a resident of Davidson County, Tennessee and may be served with process at 45 Music Square W, Nashville, TN 37203.

4.     Defendant Manookian, PLLC ("Manookian PLLC") is, on information and belief, a professional limited liability company organized under the laws of Tennessee and may be served with process upon its managing member, Brian Manookian, at 45 Music Square W, Nashville, TN 37203.

5.     Defendant First-Citizens Bank and Trust Company ("First Citizens") is, on information and belief, a commercial bank chartered under the laws of North Carolina and may be served with process via certified United States mail upon its Chief Executive Officer, Frank B. Holding, Jr. at 4300 Six Forks Road, #FCC22, Raleigh, NC 27609, or upon its registered agent for service of process, CT Corporation System at 300 Montvue Road, Knoxville, TN 37919.

<u>JURISDICTION AND VENUE</u>

6.     This Court has jurisdiction in the matter pursuant to 28 U.S.C. § 157(b).

7.     This adversary proceeding constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b).

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

9. The statutory predicate for the relief sought herein includes, but is not limited to, 11 U.S.C. §§ 541, 542, 544, 548, 550 and 551, Rule 7001 of the Federal Rules of Bankruptcy Procedure, and T.C.A. §§ 66-3-101 *et seq.* and 66-3-301 *et seq.*

BACKGROUND

10. Upon information and belief, CM was a law firm founded by Brian Cummings and Brian Manookian ("Manookian") in 2015 that specialized in representing plaintiffs in personal injury and medical malpractice cases. In September 2018, Brian Cummings withdrew from CM. Subsequently, on December 2018, Brian Manookian's law license was temporarily suspended by the Tennessee Board of Professional Responsibility.

11. After the withdrawal of Brian Cummings from CM, Mr. Cummings took over as primary counsel of record (through his new law firm) on certain CM matters. Mr. Cummings and another attorney, Mark Hammervold, assisted with the completion of a number of CM case files. Upon information and belief, Mr. Cummings, Mr. Hammervold and CM reached an agreement concerning the division of fees between CM and these other attorneys. CM received a substantial portion of the fees of each such CM case.

12. Not all CM files were outsourced to other counsel after December 2018. CM continued providing legal services to some existing clients until at least March 2019, through Afsoon Hagh. Hagh is a licensed attorney, is the wife of Manookian, and provided legal services to CM on certain cases both before and after December 2018.

13. From December 2018 through at least March 2019, Hagh filed pleadings, under the firm name of CM, in certain cases. For example, in the case of *Fitzgerald v. Osborne*, Williamson County Circuit Court Case No. 2018-CV-311 (the "Fitzgerald Case"), Hagh filed pleadings under

the firm designation of CM through February 2019, then filed more pleadings with no firm designation but using a CM email address in March 2019.

14.    In fact, in the Fitzgerald Case, Brian Manookian filed a motion to withdraw as counsel of record on December 13, 2018, though he never submitted an order approving his withdrawal.  The motion to withdraw filed by Brian Manookian specifically stated, "Afsoon Hagh continues to represent the Plaintiffs".  That motion was signed by Brian Manookian, but included Afsoon Hagh's name, as attorneys for Cummings Manookian.

15.    On March 25, 2019, Afsoon Hagh formed Hagh Law PLLC with the Tennessee Secretary of State.  The information filed with the Secretary of State shows that Hagh Law had one member and its principal place of business was listed as "45 Music SQ W, Nashville, TN 37203 (the same address as the office of CM).

16.    Sometime after March 25, 2019, Hagh began filing pleadings in the Fitzgerald Case and certain other CM cases with a signature block of "Hagh Law PLLC".  Hagh filed no notice of substitution of counsel, nor did she file any notice of address changes in any of the CM cases in which she was continuing to provide services.  Rather, she simply changed the firm name on her signature block from CM to Hagh Law.

17.    Upon information and belief, Afsoon Hagh, now doing business as Hagh Law, continued utilizing CM's office space, CM's furnishings and equipment, CM's telephone numbers and email addresses, all to work on CM's client files.  Neither Afsoon Hagh nor Hagh Law compensated CM for use of CM's property or client files.

18.    Similarly, on January 14, 2019, Brian Manookian formed Manookian PLLC with the Tennessee Secretary of State, with a delayed effective date of February 1, 2019.  The information filed with the Secretary of State shows that Manookian PLLC had one member and

its principal place of business was listed as "45 Music SQ W, Nashville, TN 37203 (the same address as the office of CM).

19.     Sometime after May 17, 2019, after Brian Manookian's law license had been reinstated, Manookian began filing pleadings and/or taking depositions in the Fitzgerald Case and certain other CM cases with a signature block of "Manookian PLLC".  Manookian filed no notice of substitution of counsel, nor did he file any notice of address changes in any of the CM cases in which he was continuing to provide services.  Rather, he simply changed the firm name on his signature block from CM to Manookian PLLC.

20.     Upon information and belief, beginning on or after May 17, 2019, Manookian PLLC began utilizing CM's office space, CM's furnishings and equipment, CM's telephone numbers and email addresses, all to work on CM's client files.  Neither Brian Manookian nor Manookian PLLC compensated CM for use of CM's property or client files.

<u>THE RECEIVERSHIP</u>

21.     On April 25, 2019, Dean Chase, Sandra Chase and D.F. Chase, Inc. (the "Chase Plaintiffs") filed a motion (the "Receivership Motion") in the Williamson County Circuit Court asking the court to appoint a receiver to assist the Chase Plaintiffs in collecting a $750,000 sanctions award rendered jointly and severally against Brian Manookian, Mark Hammervold, CM and Hammervold PLC.  In the Receivership Motion, the Chase Plaintiffs asked the court to appoint a receiver for the purpose of levying on choses in action belonging to CM and Hammervold PLC.

22.     On June 20, 2019, the Williamson County Circuit Court granted the Receivership Motion and entered an order (the "Receivership Order") appointing Phillip G. Young (the "Receiver") as receiver for the purposes of collecting the CM and Hammervold PLC choses in action.  Among the powers granted by the court to the Receiver was:  "The right to file notices of

attorney'*[sic]* liens in any pending lawsuits and to collect payment of any amounts due Cummings Manookian and/or Hammervold PLC, their agents, assignees and assigns, from any pending litigation and to deposit same in a trust account established by the receiver and held for said purposes related to the scope of the receivership. . . ."

23.     In furtherance of this directive, the Receiver filed attorneys' liens in the following cases (the "CM Cases"):

| Case Name | Court |
| --- | --- |
| Bailey v. HCA | Davidson Circuit |
| Balay v. Hutson et al | Davidson Circuit |
| Beckworth v. LBMC | Williamson Circuit |
| Brooks v. Reinking | Davidson Circuit |
| Dyer v. Vanderbilt Imaging | Davidson Circuit |
| Fitzgerald v. Osborn | Williamson Circuit |
| Knapp v. Ripley | Davidson Circuit |
| Manookian v. Pennsylvania Higher Education et al | Davidson Circuit |
| Miller v. Vanderbilt Medical | Davidson Circuit |
| Ruffino v. Archer | M.D. Tenn. |
| Salas v. Rosdeutscher et al | Davidson Circuit |
| Shoemaker v. Vanderbilt Medical | Davidson Circuit |
| Thompson v. Sidrys | Putnam Circuit |
| Waldron v. Monroe County | Monroe Circuit |
| Wheeler Bonding Co. v. Parks | Davidson Circuit |
| Wolf v. Mid-Cumberland Resources Agency | Rutherford Circuit |

24.     The Receiver has received from Brian Cummings CM's portion of fees and expenses in the *Thompson v. Sidrys* case, plus CM's portion of fees and expenses in two cases that settled prior to the Receiver's filing of attorneys' liens (*Hanna* and *Long*).    The Trustee has received from Brian Cummings CM's portion of fees and expenses in the *Ruffino v. Archer* case.[2]

---

[2] The Trustee received one-third of the feed in the *Ruffino* case plus one-half of the expense reimbursement in that case.  The Trustee has reserved all rights regarding whether CM is entitled to more than one-half of the expenses in that case, pending further investigation by the Trustee.

25.     Upon information and belief, the Fitzgerald Case was a case in which CM was expecting a large fee.  Neither Brian Cummings' new law firm nor Mark Hammervold's law firm participated with CM in the representation of the plaintiffs.

26.     The Fitzgerald Case settled on August 19, 2019.  Pursuant to the non-confidential settlement agreement, the defendant in that case agreed to pay the plaintiffs $4,050,000.00 to settle the matter.

27.     According to the engagement agreement between the plaintiffs and CM dated May 23, 2018, CM was to receive one-third of the fees from the settlement of the Fitzgerald Case. Based upon the settlement amount and the engagement agreement, CM was entitled to receive $1,350,000.00 in fees.

28.     The Receiver made demand on the defendant's counsel to remit $1,350,000.00 to the Receiver.  The defendant's counsel refused, stating that Brian Manookian had directed him to remit the funds to Hagh Law PLLC.

29.     Brian Manookian, as counsel for Hagh Law, argued that CM was entitled to no fees for two reasons:  (1) because the engagement agreement between CM and the plaintiffs did not allegedly allow CM to receive any fees if it withdrew from representation; and (2) Brian Manookian, on behalf of CM, allegedly sent a letter to the plaintiffs on December 7, 2018 in which CM withdrew from representing the plaintiffs and disclaimed any rights to fees.  According to Manookian, CM waived its rights to attorney fees to allow the plaintiffs to retain new counsel in the case since Manookian had been suspended by the Board of Professional Responsibility.

30.     The engagement agreement between CM and the plaintiffs did not, in fact, specify that CM was entitled to no attorneys' fees if CM withdrew from representation.

31.     Furthermore, even though CM allegedly notified the plaintiffs on December 7, 2018 that it was withdrawing as counsel and that it was waiving its rights to any attorneys' fees, CM never formally withdrew as counsel in the Fitzgerald Case and it kept representing the plaintiffs through attorney Afsoon Hagh.

32.     At least through March 2019, Hagh continued to file pleadings in the Fitzgerald Case on behalf of CM.  From March 2019 through the settlement of the Fitzgerald Case in August 2019, Hagh filed pleadings and/or made appearances through her new firm, Hagh Law, and Manookian filed pleadings and/or made appearances through his new firm, Manookian PLLC.

33.     Because the defendant's counsel in the Fitzgerald Case refused to turn funds over to the Receiver, the Receiver sought and was granted a temporary restraining order on August 23, 2019 (the "First TRO").  The First TRO prevented the defendant in the Fitzgerald Case from delivering any attorneys' fees to Hagh Law.

34.     Ultimately, Manookian and the Receiver entered into an Agreed Order Regarding Temporary Restraining Order (the "Agreed Order") on August 29, 2019.  Pursuant to the terms of the Agreed Order, Hagh Law was ordered to hold $760,000 (the "Trust Funds") in an IOLTA trust account pending the Receiver's and/or the court's determination of the ownership of the Trust Funds; the remaining attorneys' fees from the Fitzgerald Case (totaling approximately $590,000) were released to Hagh Law.  The $590,000 released to Hagh Law were, in fact, fees earned by CM.

35.     In October 2019, Brian Manookian, as counsel for Hagh Law, informed the Receiver that the Trust Funds had been moved from Hagh Law's IOLTA trust account to a regular checking account in the name of "Afsoon Hagh d/b/a Hagh Law PLLC".  That account was maintained at First-Citizens Bank & Trust Company.

36.     According to Manookian, Hagh and/or Manookian moved the Trust Funds because they were instructed by the Board of Professional Responsibility that it was unethical for Hagh Law to continue holding the Trust Funds in its trust account. So, without leave of court, Hagh and/or Manookian transferred the Trust Funds out of the Hagh Law IOLTA trust account.

37.     Upon learning of the unilateral movement of the Trust Funds, and in order to protect the Receiver's interest in the Trust Funds, the Receiver filed a motion asking the court to order that the Trust Funds be paid into the Williamson County Circuit Court.

38.     The court issued an oral ruling on November 5, 2019 requiring Afsoon Hagh and/or Hagh Law to deposit the Trust Funds with the clerk of the Williamson County Circuit Court by noon on November 12, 2019. That same day Brian Manookian, as counsel for Hagh and Hagh Law, informed the court's assistant that he planned to submit a competing order prior to November 12, 2019. However, on November 8, 2019, Manookian withdrew as counsel for both Hagh and Hagh Law, citing a new suspension of his license by the Board of Professional Responsibility.

39.     Ultimately, the court entered an Order Directing Hagh Law PLLC to Deposit Funds into Court on November 12, 2019. Pursuant to the terms of that order, Hagh Law was required to deposit the Trust Funds with the clerk of the Williamson Court Circuit Court by no later than noon on November 12, 2019.

40.     The Trust Funds had not been deposited with the court as of November 18, 2019. Therefore, the Receiver sought and was granted a temporary restraining order (the "Second TRO") on November 18, 2019. Pursuant to the terms of the Second TRO, Afsoon Hagh, Hagh Law and First Citizens were each restrained from moving the Trust Funds or allowing the Trust Funds to be moved, pending further order of the court.

41.     On December 10, 2019, the court held a hearing on the Receiver's request to enjoin the disposition of the Trust Funds.  On December 13, 2019, the court entered a Temporary Injunction (the "Injunction") in which it enjoined Hagh, Hagh Law and/or First Citizens from transferring $715,000 of the Trust Funds until January 17, 2020 absent a further order of a court of competent jurisdiction.  All of the parties and the state court acknowledged that, due to the filing of this bankruptcy case, this Court was the appropriate forum to make a decision regarding the disposition of the Trust Funds.

FIRST CLAIM FOR RELIEF

(Conversion)

(As to Defendants Afsoon Hagh,  Hagh Law and Manookian PLLC)

42.      Plaintiff incorporates and restates by reference all preceding paragraphs of this Complaint.

43.      Afsoon Hagh, Hagh Law and Manookian PLLC wrongfully appropriated property of CM, exercised control over that property, and committed the tort of conversion.

44.      More specifically, Afsoon Hagh, Hagh Law and/or Manookian PLLC have taken leased premises, furniture, equipment, intellectual property, attorneys' fees, and reimbursement of costs (the "Property") in excess of $1,350,000, and exercised control over that property to the exclusion of CM.

45.      The Trustee, on behalf of CM, is entitled to judgment against Afsoon Hagh, Hagh Law and Manookian PLLC in an amount to be shown at trial, plus pre- and post-judgment interest, attorneys' fees, and the costs of this action.  Further, because Afsoon Hagh, Hagh Law and Manookian PLLC acted wrongfully, maliciously, and oppressively, the Trustee is entitled to exemplary and punitive damages in an amount to be shown at trial.

## SECOND CLAIM FOR RELIEF

### (State Law Fraudulent Transfer)

### (As to Defendants Afsoon Hagh, Hagh Law and Manookian PLLC)

46. Plaintiff incorporates and restates by reference all preceding paragraphs of this Complaint.

47. Afsoon Hagh, Hagh Law and Manookian PLLC wrongfully took the Property of CM in an attempt to hinder, delay and defraud creditors of CM.

48. Afsoon Hagh, Hagh Law and Manookian PLLC received substantial Property of CM without giving reasonably equivalent value, and such transfers caused or were during the insolvency of CM, rendered CM insolvent or unable to pay its debts when due, or were taken when CM was engaged in or about to be engaged in transactions for which CM had unreasonably small capital.

49. The Trustee, on behalf of CM, is entitled to avoid, and recover back, all such fraudulent transfers, pursuant to, among other things, Tennessee's law against fraudulent conveyances, T.C.A. § 66-3-101, *et seq.*, and Tennessee's codification of the Uniform Fraudulent Transfers Act, T.C.A. § 66-3-301, *et seq.*, which include strong-arm provisions of the Trustee pursuant to 11 U.S.C. § 544(b). The Trustee is further entitled to damages in an amount of all such fraudulent transfers, to be proven at trial, plus pre- and post-judgment interest, attorneys' fees and the costs of this action.

## THIRD CLAIM FOR RELIEF

### (Avoidance and Recovery of Fraudulent Transfers Pursuant to Bankruptcy Code)

### (As to Defendants Afsoon Hagh, Hagh Law and Manookian PLLC

50.     Plaintiff incorporates and restates by reference all preceding paragraphs of this Complaint.

51.     Afsoon Hagh, Hagh Law and/or Manookian PLLC received substantial transfers from CM for the purposes of hindering, delaying, and defrauding creditors.

52.     Further, on information and belief, Afsoon Hagh, Hagh Law and/or Manookian PLLC received substantial transfers form CM without giving reasonably equivalent value, and such transfers caused or were during the insolvency of CM, rendered CM insolvent or unable to pay its debts when due, or were taken when CM was engaged in or about to be engaged in transactions for which CM had unreasonably small capital.

53.     At all relevant times, creditors of CM existed who had the right to assert a claim for fraudulent transfer or avoidance based on such transfers.

54.     Without limitation, the fraudulent transfers consisted of all property, funds, and transfers of any kind received by Afsoon Hagh, Hagh Law and/or Manookian PLLC which belonged to CM (including the Property described above), whether Afsoon Hagh,  Hagh Law and/or Manookian PLLC received such transfers as initial, mediate, or intermediate transferees.

55.     Plaintiff is entitled to avoid, and recover back, on behalf of CM, all such fraudulent transfers, pursuant to, among other things, the United States Bankruptcy Code's Section prohibiting fraudulent transfers, 11 U.S.C. § 548.

56.     Pursuant to 11 U.S.C. §§ 550 and 551, Plaintiff is entitled to recover back the avoided property or the value thereof, and such avoidances are recovered for the benefit of the estate.  The Trustee is further entitled to recover pre- and post-judgment interest, attorneys' fees, and the costs of this action.

## FOURTH CLAIM FOR RELIEF

### (Tortious Interference with Contract)

### (As to Defendants Afsoon Hagh and  Hagh Law)

57.     Plaintiff incorporates and restates by reference all preceding paragraphs of this Complaint.

58.     CM had a binding contractual relationship with the plaintiffs in the Fitzgerald Case. More specifically, CM had an engagement agreement with the plaintiffs in which CM agreed to represent the plaintiffs in the Fitzgerald Case in exchange for one-third of the monetary recovery.

59.     Upon information and belief, Afsoon Hagh and Hagh Law had actual knowledge of the engagement agreement between the Fitzgerald Case plaintiffs and CM, intended to interfere with CM's contractual rights pursuant to that engagement agreement, and actually interfered with CM's contractual rights by coercing the Fitzgerald Case defendants from remitting to CM $1,350,000 in attorneys' fees.

60.     Afsoon Hagh and Hagh Law's interference with CM's contract with the Fitzgerald Case plaintiffs continues, as CM and the Trustee have been denied access to $1,350,000 in attorneys' fees to which CM is entitled to recover.

61.     Afsoon Hagh and Hagh Law's interference with the contract between CM and the Fitzgerald Case plaintiffs is improper and, as a result, the Plaintiff, on behalf of CM, has incurred damages in an amount of $1,350,000, plus pre- and post-judgment interest, attorneys' fees and the costs of this action.

## FIFTH CLAIM FOR RELIEF

### (Successor Liability and Alter Ego)

### (As to Defendants Hagh Law and Manookian PLLC)

62.     Plaintiff incorporates and restates by reference all preceding paragraphs of this Complaint.

63.     Hagh Law, Manookian PLLC and CM are all one and the same entity, and Hagh Law and/or Manookian PLLC are a mere continuation of CM. Many of the clients and vendors of CM are the same or are vastly similar to the clients and vendors of Hagh Law and Manookian PLLC. Brian Manookian held 100% of the membership interests of CM, and he and Afsoon Hagh were the only attorneys who rendered services on behalf of CM after September 2018. Brian Manookian is also the 100% owner of the membership interests of Manookian PLLC and Afsoon Hagh is the 100% owner of the membership interests of Hagh Law.

64.     As outlined in *RXAR Co., LLC v. Rheumatology Assoc., P.A.,* the United States District Court for the Middle District of Tennessee (citing Tennessee law), stated that a successor entity is a mere continuation if;

> 1) The predecessor "transferred its assets" to the successor, 2) the successor company "pays less than adequate consideration for the assets", 3) the successor company continues the predecessor's business, 4) both companies "share one common officer who was instrumental in the transfer", and 5) the predecessor company "is left incapable of paying its creditors."

*RXAR Co., LLC v. Rheumatology Assoc., P.A.,* 2017 U.S. Dist. LEXIS 64354 (M.D. Tenn. 2017).

65.     Hagh Law and/or Manookian PLLC provide services to many of the same clients as CM and use the same vendors as CM. They occupy the same leased real estate as CM (without a new lease), utilize the same computers and equipment as CM, and utilize some of the same telephone numbers as CM.

66.     No funds were transferred to CM as compensation for the transfer of any of these assets; in fact, funds have been diverted from CM to Hagh Law.

67.     CM provided legal services to personal injury and medical malpractice plaintiffs; both Hagh Law and Manookian PLLC provide the exact same services, and to many of the same clients.

68.     Both CM and Manookian PLLC were, or are still, 100% owned by Brian Manookian.  For several months, Afsoon Hagh was the only practicing attorney who represented CM's clients and Afsoon Hagh continues representing CM's clients through Hagh Law, which is 100% owned by Afsoon Hagh.  Brian Manookian and/or Afsoon Hagh made all decisions regarding the transfer or use of CM's assets, the creation of Hagh Law and Manookian PLLC, and the filing of CM's bankruptcy petition.  Brian Manookian, the 100% owner of CM, represented Hagh Law in diverting and instructing third parties to divert attorneys' fees owing CM to Hagh Law and/or Afsoon Hagh.

69.     According to the schedules and claims filed in this bankruptcy, CM has over $1,000,000 in liabilities but only $70,000 in assets; accordingly, due to the transfer of over $1,000,000 in CM's accounts receivable to Hagh Law and/or Afsoon Hagh, CM could not pay its debts as they came due.

70.     Brian Manookian, Afsoon Hagh, Hagh Law and Manookian, PLLC sought to shift any valuable assets away from CM and leave all debt in the corporate shell of CM, in an attempt to hinder, delay, and defraud CM's creditors.

71.     Given that Hagh Law and Manookian PLLC are nothing more than a mere continuation and alter ego of CM, Plaintiff requests that the court enter a judgment against Hagh Law and Manookian PLLC, jointly and severally, in the full amount of the indebtedness owed by CM, plus all attorneys' fees and costs incurred by the Trustee and the estate for the pursuit of this action.

## SIXTH CLAIM FOR RELIEF

### (Turnover)

### (As to Defendants Afsoon Hagh, Hagh Law and First Citizens)

72.     Plaintiff incorporates and restates by reference all preceding paragraphs of this Complaint.

73.     Plaintiff is entitled to the turnover of $715,000 held in a First Citizens bank account in the name of Hagh Law and/or Afsoon Hagh pursuant to 11 U.S.C. §542.  The $715,000 is the product of the settlement of the Fitzgerald Case, for which CM has a contractual and/or equitable right to payment of fees in the amount of $1,350,000.

74.     Moreover, Plaintiff is entitled to the turnover of an additional $635,000 from Hagh Law and/or Afsoon Hagh.  This is the amount of the Fitzgerald Case settlement funds that have been released to Hagh Law and/or Afsoon Hagh.

75.     This Court should find that the $715,000 held in a First Citizens bank account in the name of Hagh Law and/or Afsoon Hagh, that is the product of the settlement of the Fitzgerald Case, is property of the estate and that the Plaintiff is entitled to turnover of that property pursuant to 11 U.S.C. §542.

76.     Additionally, this Court should find that the $635,000 that was released to Hagh Law and/or Afsoon Hagh, but that is the product of the settlement of the Fitzgerald Case, is property of the estate and that the Plaintiff is entitled to turnover of that property pursuant to 11 U.S.C. §542.

## SEVENTH CLAIM FOR RELIEF

### (Declaratory Judgment)

### (As to Defendants Afsoon Hagh, Hagh Law and Manookian PLLC)

77. Plaintiff incorporates and restates by reference all preceding paragraphs of this Complaint.

78. Pursuant to 11 U.S.C. §541 and Rule 7001 of the Rules of Bankruptcy Procedure, the Court can determine the extent of the estate's interest in property.

79. CM has a legal and/or equitable interest in the attorneys' fees generated by each of the CM Cases, listed herein.

80. The Court should determine the extent of CM's portion of the fees and expenses generated by each of the CM cases, and find that this estate, and not Afsoon Hagh, Hagh Law or Manookian PLLC, is entitled to receive CM's portion.

WHEREFORE, the Plaintiff requests that the Court enter a judgment:

A. Granting Plaintiff a monetary judgment against Defendants Afsoon Hagh, Hagh Law and Manookian PLLC in an amount to be proven at trial;

B. Granting Plaintiff a judgment against Afsoon Hagh, Hagh Law and Manookian PLLC for the conversion of property of CM, in an amount to be proven at trial;

C. Avoiding the pre-petition fraudulent transfers to Defendants Afsoon Hagh and Hagh Law pursuant to 11 U.S.C. § 544(b) and T.C.A. §§ 66-3-101 *et seq.* and 66-3-301 *et seq.*;

D. Avoiding the pre-petition fraudulent transfers to Defendants Afsoon Hagh and Hagh Law pursuant to 11 U.S.C. §§ 548, 550 and 550;

E. Granting Plaintiff a judgment against Afsoon Hagh and Hagh Law, in an amount to be shown at trial, for tortious interference of a contract between CM and the plaintiffs in the Fitzgerald Case;

F.  Finding that Hagh Law and Manookian PLLC are a mere continuation of CM and, as such, are jointly and severally liable for all debts owed by CM, plus all attorneys' fees and costs incurred by the Trustee and the estate for the pursuit of this action, pursuant to Tennessee state law on successor liability;

G.  Finding that the $715,000 held in a First Citizens bank account in the name of Hagh Law and/or Afsoon Hagh is property of this estate, and ordering the turnover of those funds to the Trustee pursuant to 11 U.S.C. §542;

H.  Finding that the $635,000 from the Fitzgerald Case settlement funds that were released to Hagh Law and/or Afsoon Hagh is property of this estate, and ordering the turnover of those funds to the Trustee pursuant to 11 U.S.C. §542;

I.  Finding that this estate, and not Afsoon Hagh, Hagh Law or Manookian PLLC, is entitled to receive CM's portion of the fees and expenses generated by each of the CM Cases.

J.  Granting pre- and post-judgment interest, attorneys fees, the costs of this action, treble damages, and punitive damages as appropriate; and

K.  Granting such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
Tel: (615) 465-6000
phillip@thompsonburton.com

Special Counsel to Jeanne Ann Burton, Trustee

| B 104 | ADVERSARY PROCEEDING COVER SHEET | ADVERSARY PROCEEDING NUMBER |
|---|---|---|
| (Rev. 8/87) | (Instructions on Reverse) | (Court Use Only) |

**PLAINTIFFS**

Jeanne Ann Burton, Trustee

**DEFENDANTS**

Hagh Law, PLLC
Afsoon Hagh
Manookian, PLLC
First-Citizens Bank & Trust Company

**ATTORNEYS (Firm Name, Address, and Telephone No.)**

Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
(615) 465-6000

**ATTORNEYS (If Known)**
John Spragens
1200 16th Ave. South
Nashville, TN 37212
(615) 983-8900
Attorney for Hagh Law PLLC

PARTY (Check one box only) ☐ 1 U.S. PLAINTIFF ☐ 2 U.S. DEFENDANT ■ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint for conversion, fraudulent transfer, tortious interference with contract, successor liability / alter ego, turnover, declaratory judgment, Injunctive relief, and related relief

## NATURE OF SUIT
(Check the one most appropriate box only.)

| | | |
|---|---|---|
| ■ 454 To Recover Money or Property | ☐ 455 To revoke an order of confirmation of a Chap. 11 or Chap. 13 Plan | ☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action |
| ☐ 435 To Determine Validity, Priority, or Extent of a Lien or other interest in property | ☐ 426 To determine the dischargeability of a debt 11 U.S.C. §523 | ☐ 459 To determine a claim or cause of action removed to a bankruptcy court |
| ☐ 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property | ☐ 434 To obtain an injunction or other equitable relief | ☐ 498 Other (specify) |
| ☐ 424 To object or to revoke a discharge 11 U.S.C. §727 | ☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan | |

| ORIGIN OF PROCEEDINGS (Check one box only.) | ■ 1 Original Proceeding | ☐ 2 Removed Proceeding | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another Bankruptcy Court | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 |
|---|---|---|---|---|---|

| **DEMAND** | NEAREST THOUSAND $1,300 | OTHER RELIEF SOUGHT Injunctive relief and declaratory judgment | ☐ JURY DEMAND |
|---|---|---|---|

### BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR Cummings Manookian PLLC | BANKRUPTCY CASE NO. 3:19-bk-07235 |
|---|---|

| DISTRICT IN WHICH CASE IS PENDING Middle District of Tennessee | DIVISIONAL OFFICE Nashville | NAME OF JUDGE Charles Walker |
|---|---|---|

RELATED ADVERSARY PROCEEDING (IF ANY) ☐ YES ■ NO

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|

| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|

FILING FEE (Check one box only.) ☐ FEE ATTACHED ☐ FEE NOT REQUIRED ■ FEE IS DEFERRED

| DATE January 8, 2020 | PRINT NAME Phillip G. Young, Jr. | SIGNATURE OF ATTORNEY (OR PLAINTIFF) /s/ Phillip G. Young, Jr. |
|---|---|---|

B-104
(Rev. 8/87)

## ADVERSARY PROCEEDING COVER SHEET (Reverse Side)

This cover sheet must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney) and submitted to the Clerk of the court upon the filing of a complaint initiating an adversary proceeding.

The cover sheet and the information contained on it *do not* replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. This form is required for the use of the clerk of the court to initiate the docket sheet and to prepare necessary indices and statistical records. A separate cover sheet must be submitted to the clerk of the court for each complaint filed. The form is largely self explanatory.

**Parties**. The names of the parties to the adversary proceeding *exactly* as they appear on the complaint. Give the names and addresses of the attorneys if known. Following the heading "Party," check the appropriate box indicating whether the United States is a party named in the complaint.

**Cause of Action**. Give a brief description of the cause of action including all federal statutes involved. For example, "Complaint seeking damages for failure to disclose information, Consumer Credit Protection Act, 15 U.S.C. §1601 et seq.," or "Complaint by trustee to avoid a transfer of property by the debtor, 11 U.S.C. §544."

**Nature of Suit**. Place an "X" in the appropriate box. Only one box should be checked. If the cause fits more than one category of suit, select the most definitive.

**Origin of Proceedings**. Check the appropriate box to indicate the origin of the case:

1. Original Proceeding.
2. Removed form a State or District Court.
4. Reinstated or Reopened.
5. Transferred from Another Bankruptcy Court.

**Demand**. On the next line, state the dollar amount demanded in the complaint in thousands of dollars. For $1,000 enter "1," for $10,000 enter "10," for $100,000 enter "100," if $1,000,000 enter "1000." If $10,000,000 or more, enter "9999." If the amount is less than $1,000 enter "0001." If no monetary demand is made, enter "XXXX." If the plaintiff is seeking non-monetary relief, state the relief sought, such as injunction or foreclosure of a mortgage.

**Bankruptcy Case In Which This Adversary Proceeding Arises**. Enter the name of the debtor and the docket number of the bankruptcy case form which the proceeding now being filed arose. Beneath, enter the district and divisional office where the case was filed, and the name of the presiding judge.

**Related Adversary Proceedings**. State the names of the parties and the six digit adversary proceeding number form and adversary proceeding concerning the same two parties or the same property currently pending in any bankruptcy court. On the next line, enter the district where the related case is pending, and the name of the presiding judge.

**Filing Fee**. Check one box. The fee must be paid upon filing unless the plaintiff meets one of the following exceptions. The fee is not required if the plaintiff is the United States government of the debtor. If the plaintiff is the trustee or a debtor in possession, and there are no liquid funds i the estate, the filing fee may be deferred until there are funds in the estate. (In the event no funds are ever recovered for the estate, there will be no fee). There is no fee for adding a party after the adversary proceeding has been commenced.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the right of the last line of the form. If the plaintiff is represented by law firm, a member of the firm must sign. If the plaintiff is *pro se*, that is, not represented by an attorney, the plaintiff must sign.

The name of the signatory must be printed in the box to the left of the signature. The date of the signing must be indicated in the box on the far left of the last line.