# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

**Appeal from**
*Cummings v. Keefer, et al.*
**Case No. 3:20-ap-90036**

**Bretton Keefer and Afsoon Hagh, Appellants**

**v.**

**Brian Cummings, Appellee**

**Case No. 3-23-cv-00961**

**Judge Aleta A. Trauger**

---

## APPENDIX TO APPELLANTS' OPENING BRIEF

---

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BRIAN CUMMINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRETTON KEEFER, on behalf of the | ) | No. 3:22-cv-00301 |
| deceased, CHESTA SHOEMAKER, | ) | |
| AFSOON HAGH, and JEANNE | ) | |
| BURTON, Trustee on behalf of | ) | |
| CUMMINGS MANOOKIAN, PLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated in this Court's most recent Order (Doc. No. 54) and absent timely objection by any party, Burton's Motion (Doc. No. 2) is **GRANTED**. This case hereby is **REFERRED** to the Honorable Charles M. Walker of the United States Bankruptcy Court for the Middle District of Tennessee. The Clerk shall close this case.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

COPY

## IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | | |
|---|---|---|
| **BRIAN CUMMINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. _____** |
| **v.** | ) | |
| | ) | |
| **BRETTON KEEFER, on behalf of the deceased,** | ) | |
| **CHESTA SHOEMAKER, and JEANNE** | ) | |
| **BURTON, Trustee on behalf of CUMMINGS** | ) | |
| **MANOOKIAN, PLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

The Plaintiff, for this attorney's lien cause of action, respectfully states to the Court and trier of fact as follows:

### PARTIES, VENUE, AND JURISDICTION

1.      The Plaintiff, Brian Cummings ("Mr. Cummings"), is an adult resident of Tennessee.

2.      The majority of legal work performed by Mr. Cummings on behalf of his former client, and a Defendant in this action, Bretton Keefer, on behalf of the deceased, Chesta Shoemaker, was performed in Davidson County, Tennessee.

3.      The Defendant in this action, Bretton Keefer ("Mr. Keefer"), on behalf of the deceased, Chesta Shoemaker, received the benefit of Mr. Cummings' time, legal work, and financial funding of his previously-filed and now resolved health care liability, wrongful death lawsuit that bore docket number 19C358 in the Davidson County, Tennessee Circuit Courts ("the Keefer matter"). The original Complaint in the Keefer matter was prepared and filed in February

1

003

2019, by Mr. Cummings, who was, at that time, a partner in Cummings Manookian, PLC ("Cummings Manookian"), a law firm based in Davidson County, Tennessee.

4.      Mr. Cummings voluntarily withdrew from Cummings Manookian in 2018, leaving Brian Manookian ("Mr. Manookian") as the only remaining Member of Cummings Manookian.  The financial situation of Cummings Manookian changed after Mr. Cummings' withdrawal from the firm to the extent that Mr. Manookian put Cummings Manookian into bankruptcy proceedings.

5.      Jeanne Burton is the Trustee for Cummings Manookian in those bankruptcy proceedings.

6.      Attorney work was done on the Keefer matter by Brian Cummings while he was still a Member at Cummings Manookian, but that work was a very small percentage of the overall time and work performed by Mr. Cummings on the Keefer matter.

7.      The original Complaint filed in the Keefer matter by Mr. Cummings in February 2019, listed attorney Afsoon Hagh ("Ms. Hagh") as co-counsel with Mr. Cummings for Mr. Keefer. That Complaint properly identified Mr. Cummings as being with his new firm, Cummings Law, and that Complaint properly identified Ms. Hagh as being with her firm at that time, Cummings Manookian.

8.      Jeanne Burton, as Trustee in bankruptcy for Cummings Manookian, is a proper party to this matter because some portion of the attorney work done related to the attorney's lien issue was performed by at least one attorney while such an attorney was still a part of Cummings Manookian and because the monetary value of the attorney work by any attorneys who at the time of that work were a part of Cummings Manookian makes that monetary amount a concern / asset of the Cummings Manookian bankruptcy proceeding.

2

9.     Venue and jurisdiction are appropriate with the Circuit Courts of Davidson County, Tennessee.

## FACTS AND CLAIMS

10.     Mr. Cummings signed Mr. Keefer as a client on behalf of Cummings Manookian in 2017 via an Attorney-Client Agreement ("CM Agreement"). The CM Agreement included a contingency fee provision, and the fee was to be earned by Cummings Manookian, via work performed by Brian Cummings and/or Brian Manookian only if Mr. Keefer received a monetary award via settlement, judgment, or award from the Keefer matter.

11.     Mr. Cummings continued to work on the Keefer matter after leaving Cummings Manookian in 2018, including with the knowledge and consent of Mr. Keefer and for the benefit of Mr. Keefer and the other beneficiaries of the Keefer matter.

12.     Mr. Cummings performed legal work on the Keefer matter for over three years until he withdrew as counsel for Mr. Keefer in October 2020.

13.     Mr. Cummings withdrew as counsel in October 2020 after separate oral statements to him by Ms. Hagh and by Mr. Keefer during an approximately one week period indicated that their working relationships were strained.  Mr. Cummings promptly called the Tennessee Board of Professional Responsibility ("BPR") asking if those statements required him to withdraw as counsel, and he was told by the BPR with no equivocation and with no qualification that he was required to withdraw as counsel and to do so as soon as possible.

14.     Mr. Cummings' withdrawal as counsel was not a choice he made, and it was not a voluntary withdrawal, because it was the comments by the client and by co-counsel, Ms. Hagh, that led to the situation that resulted in the BPR telling Mr. Cummings he was required to

EFILED 03/22/22 09:19 AM CASE NO. 22C546 Richard R. Rooker, Clerk

withdraw as soon as possible because he could no longer properly and ethically represent Mr. Keefer based on the comments made by Ms. Hagh and by Mr. Keefer.

15. Mr. Cummings was ethically required to follow the instructions and advice of the BPR in response to what action to take based on the comments made to him by Mr. Keefer and by Ms. Hagh.

16. In October 2020, Mr. Cummings provided a private letter to Mr. Keefer and Ms. Hagh communicating his withdrawal as counsel, and informing Mr. Keefer and Ms. Hagh that Mr. Cummings understood he was ethically required to withdraw as counsel based on the comments that Mr. Keefer and Ms. Hagh had very recently made. Neither Mr. Keefer nor Ms. Hagh ever communicated to Mr. Cummings orally or in writing that they had any factual or legal dispute with regard to the content of Mr. Cummings' October 2020 letter to them that communicating that Mr. Cummings believed he was required to withdraw as counsel because of the comments made by Ms. Hagh and by Mr. Keefer.

17. In October 2020, Mr. Cummings filed a Motion to Withdraw as Counsel for the Plaintiff ("Motion to Withdraw"). By the time that the Motion to Withdraw was filed, Mr. Keefer and Ms. Hagh had received a copy of Mr. Cummings October 2020 letter stating that Mr. Cummings believed he was ethically required to withdraw as a result of the comments made by Ms. Hagh and by Mr. Keefer, and neither Mr. Keefer nor Ms. Hagh filed any type of Response in any way disputing or opposing the Motion to Withdraw.

18. On November 20, 2020, the Fifth Circuit Court entered an Order granting Mr. Cummings' Motion to Withdraw as Counsel.

4

COPY

19. On November 27, 2020, Mr. Cummings filed, in the Keefer lawsuit, a document entitled "Brian Cummings' Notice of Attorney's Lien" and this document cited Tennessee Code Annotated section 23-2-102.

20. Mr. Keefer and Ms. Hagh learned of the filing of Brian Cummings' Notice of Attorney's Lien within days of its filing, including Ms. Hagh receiving a copy through the Circuit Court's electronic filing system.

21. According to the publicly-available information on Caselink regarding the Davidson County Circuit Courts, the Fifth Circuit Court approved a settlement involving minor beneficiaries in the Keefer matter in October 2021.

22. The Circuit Court approved a settlement in this matter involving at least one minor beneficiary, and therefore the Court also found that the amount of the settlement was acceptable/reasonable, and any such Court-approval included approving the total attorneys' fee.

23. Tennessee Code Annotated section 23-2-102 provides a lien upon a plaintiff's or complainant's right of action from the date of the filing of the suit.

24. Prior to the filing of the lawsuit, Mr. Cummings performed all aspects of the intake of the case, including meeting with and signing the client within two days of the death of the client's mother.

25. After a review of the records from Vanderbilt Hospital, Mr. Cummings prepared the detailed expert summary letter which became the basis of the Complaint and the basis of the detailed summary letter sent to all experts.

26. Mr. Cummings attended the presuit mediation as the only attorney on behalf of the Plaintiff.

27. Mr. Cummings prepared and timely filed the 550 paragraph, 65 page, Complaint.

5

COPY

28. Mr. Cummings prepared and propounded a significant portion of the written discovery propounded upon the Defendant. Mr. Cummings worked with the Plaintiff in preparing all of Plaintiff's written responses to discovery, at least through October 2020.

29. Mr. Cummings contacted and retained all Rule 26 witnesses including all of the medical experts.

30. After the filing of the Complaint and written discovery, Mr. Cummings continued to work diligently on behalf of the Plaintiff, including, but not limited to, (a) keeping Mr. Keefer updated regarding case events, answering questions he had, and working with him and meeting with him to prepare his typed, formal responses to written discovery, (b) contacting, retaining, and preparing and sending summaries of case materials (including deposition testimony and responses to written discovery) and copies of the underlying case materials to all of Mr. Keefer's eventual Rule 26 experts (and being the only attorney for Mr. Keefer to do so), of which there were eight or more medical experts and one expert economist, (c) preparing Mr. Keefer for his deposition and defending his deposition (and being the only attorney for Mr. Keefer to do so), (d) preparing Edward Goodwin, the decedent's boyfriend/fiancé for his deposition and defending his deposition (and being the only attorney for Mr. Keefer to do so), (e) taking or defending approximately 14 of the approximately 30 depositions that occurred (some of these depositions were the same witness deposed in two parts / two depositions), and (f) preparing and serving Mr. Keefer's original approximately 85 page Rule 26 disclosures (and being the only attorney for Mr. Keefer to do so).

31. The entire duration of the Keefer matter from the time of signing the client to the Court approval referenced herein was 54 months.

COPY

32.     Mr. Cummings was counsel or co-counsel on the Keefer matter from April 2017 through October 2020, which is 42 months.

33.     Mr. Cummings' involvement for 42 months of the 54 months of the total duration of the Keefer matter represents 78% of the total duration of the Keefer matter.

34.     Another attorney, Brian Manookian ("Mr. Manookian"), did some of the work on the Keefer matter, including Mr. Manookian doing some of the work while Mr. Manookian was still a Member at Cummings Manookian.

35.     Mr. Manookian was not listed as counsel of record for Mr. Keefer when the original Complaint was filed – only Mr. Cummings and Ms. Hagh were.

36.     Mr. Manookian has never informed Mr. Keefer, Ms. Hagh, or Mr. Cummings that he is seeking any amount of an attorney's fee from the Keefer matter.

37.     Mr. Manookian has never filed a Notice of Attorney's Lien regarding the Keefer matter.

38.     During Mr. Cummings' 42 months of involvement as counsel for Mr. Keefer, he and his firm, Cummings Law, paid over $60,000.00 in litigation expenses incurred during that period of time on the Keefer matter.

39.     During Mr. Cummings' 42 months of involvement as counsel for Mr. Keefer, he paid 90-100% of the litigation expenses incurred during that period of time.

40.     By the time of Mr. Cummings' withdrawal, he had tried approximately 20 healthcare liability actions to verdict, including as second-chair or first-chair, and including trials in healthcare liability trials in the Fifth Circuit Court of Davidson County, Tennessee.

7

COPY

41.     By the time of Mr. Cummings' withdrawal, he had successfully completed the oral exam and the written exam to become Board certified in Medical Malpractice by the American Board of Professional Liability Attorneys (ABPLA) and he was certified accordingly.

42.     Mr. Keefer and the other beneficiaries in this matter have already received their net proceeds from the Keefer matter minus the litigation expenses and minus a total 33.33% attorneys' fee.

43.     To date, Mr. Cummings has not been paid or provided an attorney's fee for his 42 months of involvement and work on the Keefer matter that has apparently settled with Court approval.

44.     At this point, the amount of money determined to be provided to Mr. Cummings related his work in this matter and related to his attorney's lien does not change the amount of net proceeds to Mr. Keefer or the other beneficiaries from the Keefer matter.

45.     The amount of money determined to be provided to Mr. Cummings related to his work in this matter and related to his attorney's lien affects what amount of money Ms. Hagh receives for her attorney work on the Keefer matter.

46.     John Edwards ("Mr. Edwards"), an attorney from North Carolina, was co-counsel for Mr. Keefer at the end of this matter for less than 12 months.

47.     Mr. Edwards and his law firm were already provided with an agreed-to amount of attorneys' fees amount for their work in this matter.

48.     At this point, the amount of money determined to be provided to Mr. Cummings related to his work in this matter and related to his attorney's lien has no effect on the amount of attorneys' fees paid to Mr. Edwards and his law firm.

8

49. Mr. Cummings attempted to resolve this attorney's lien issue via mediation in late 2021, during which time Ms. Hagh represented Mr. Keefer on the attorney's lien issue, but that mediation effort did not resolve the matter.

50. In filings made by Ms. Hagh on behalf of Mr. Keefer on the attorney's lien issue, Ms. Hagh indicated that Mr. Keefer contended that arbitration was required on the attorney's lien issue, and Judge Joseph Binkley of the Fifth Circuit Court told Ms. Hagh to speak with Mr. Keefer to allow Mr. Keefer to choose if he wanted to proceed with arbitration or waive that option. Months have passed since that instruction by Judge Binkley, and during that time counsel for Mr. Cummings has repeatedly asked Ms. Hagh in writing if Mr. Keefer was choosing to arbitrate the issue, and Ms. Hagh has communicated that she and Mr. Keefer claim to not understand what issue required resolution regarding Mr. Cummings' attorney's lien and have never communicated that Mr. Keefer chooses arbitration. Consequently, any potential right Mr. Keefer may have had to require arbitration of the attorney's lien issue was declined and/or was waived.

51. Also in filings made by Ms. Hagh on behalf of Mr. Keefer on the attorney's lien issue, Ms. Hagh indicated that Mr. Keefer contended that any litigation regarding the attorney's lien issue had to proceed via a lawsuit filed separately from the Keefer healthcare liability matter. In accordance with that position of Mr. Keefer as stated by Ms. Hagh that a separate lawsuit was required to be filed to address the attorney's lien issue, this present action is filed.

52. Mr. Cummings has never entered into an agreement of any kind that waived his right to be paid a reasonable amount for his legal work he performed on the Keefer matter if he was required to withdraw as counsel under our factual situation.

9

COPY

53. Mr. Cummings has never entered into an agreement of any kind that waived his right to an attorney's lien, including the right to an attorney's lien that arose at the time he filed the Keefer matter in 2019.

54. Mr. Cummings has never entered into an agreement of any kind that waived his right to be paid a reasonable amount for his legal work if he withdrew as counsel for any reason if Mr. Keefer had existing co-counsel continuing to be available for Mr. Keefer and who stayed involved in the matter.

55. The statute that provides the applicable right to an attorney's lien for Mr. Cummings, Tenn. Code Ann. section 23-2-102, does not include any exclusionary language or provisions by which such a right to an attorney's lien can be waived or negated by any facts or alleged circumstances after an attorney filed the applicable lawsuit on behalf of a plaintiff.

56. While the award amount of the settlement is unknown and confidential, Mr. Cummings is entitled to a fee for his involvement in the Keefer matter, including pursuant to his timely-filed Notice of Attorney's Lien and pursuant to the common law issues, including based on equity and unjust enrichment to Ms. Hagh.

Plaintiff's prayers for relief are:

1. That the Defendants be served and required to answer as required by law.

2. That Plaintiff be granted a hearing and that when it becomes known what the amount of the settlement is, Plaintiff be granted a judgment of 40% of the total attorneys' fee of 33% of the settlement calculated prior to litigation expenses being deducted in that settlement accounting.

3. For general relief.

10

COPY

Respectfully submitted,

/s/ James W. Price, Jr.
**JAMES W. PRICE, JR., #3538**
Price, Hill, & Kolarich
201 4th Avenue N., Suite 1800
Nashville, TN 37219
(615) 244-5772 – phone
(615) 244-5821 - fax
Jprice@pricehillkolarich.com
*Attorney for the Plaintiff*

11

COPY

EFILED 03/22/22 09:19 AM CASE NO. 22C546 Richard R. Rooker, Clerk

CIRCUIT COURT SUMMONS

NASHVILLE, TENNESSEE

Service ID 285093

# STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20ᴛʜ JUDICIAL DISTRICT

BRIAN CUMMINGS

Plaintiff

vs.

BRETTON KEEFER OBO CHESTA (DECEASED)
SHOEMAKER
5960 PUMPKINTOWN LANE
LAFAYETTE, TN 37083

CIVIL ACTION
DOCKET NO. 22C546
Method of Service:
Personal Service

Defendant

Service ID 285093

To the above named Defendant:

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303 , and your defense must be made within thirty (30) days from the date this Summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the Complaint.

ISSUED: 03/22/2022

RICHARD R. ROOKER
Circuit Court Clerk
Davidson County, Tennessee

By: _____

Deputy Clerk

ADDRESS OF PLAINTIFF'S ATTORNEY OR PLAINTIFF:

JAMES W. PRICE
201 4TH AVENUE N., SUITE 1800
NASHVILLE, TN 37219

---

NOTICE TO THE DEFENDANT:

Tennessee law provides a Ten Thousand and 00/100 Dollars ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

 To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

---

rev. 09/01/2018

COPY

CIRCUIT COURT SUMMONS                                    NASHVILLE, TENNESSEE

Service ID 285093                    **STATE OF TENNESSEE**
                                     **DAVIDSON COUNTY**
                                     **20ᵀᴴ JUDICIAL DISTRICT**

BRIAN CUMMINGS

                                                          CIVIL ACTION
                                                          DOCKET NO. 22C546
                                                          Method of Service:
                                                          Personal Service
                                              Plaintiff

VS.

BRETTON KEEFER OBO CHESTA (DECEASED)
SHOEMAKER
5960 PUMPKINTOWN LANE
LAFAYETTE, TN 37083

                                              Defendant

### RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____ _____ _____, 20___, I:

_____ served this Summons and Complaint/Petition on _____ in the following manner:
_____

_____ failed to serve this Summons within 90 days after its issuance because _____
_____

                                         _____

                                              Sheriff/Process Server

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

rev. 09/01/2018

COPY

**CIRCUIT COURT SUMMONS**                                          NASHVILLE, TENNESSEE

Service ID 285094

# STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20™ JUDICIAL DISTRICT

BRIAN CUMMINGS

                                                    CIVIL ACTION
                                                    DOCKET NO. 22C546
                                          Plaintiff   Method of Service:
                                                    Certified Mail
vs.

JEANNE (TRUSTEE) BURTON OBO CUMMINGS
MANOOKIAN, PLC
C/O PHILLIP YOUNG
6100 TOWER CIRCLE, #200
FRANKLIN, TN 37067

                                          Defendant

To the above named Defendant:

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303 , and your defense must be made within thirty (30) days from the date this Summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the Complaint.

ISSUED: 03/22/2022

                              **RICHARD R. ROOKER**
                                Circuit Court Clerk
                              Davidson County, Tennessee

                    By: _____

                              _____
                              Deputy Clerk

ADDRESS OF PLAINTIFF'S ATTORNEY OR PLAINTIFF:

JAMES W. PRICE
1
NASHVILLE, TN 37201

---

**NOTICE TO THE DEFENDANT:**
Tennessee law provides a Ten Thousand and 00/100 Dollars ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

---

## CERTIFICATION

STATE OF TENNESSEE  )
COUNTY OF DAVIDSON  )

I, Richard R. Rooker, Clerk of the Circuit Court in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued in this case.

**rev. 09/01/2018**

Service ID 285094

COPY

RICHARD R. ROOKER, CLERK

By: _____  D.C.

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

Service ID 285094

rev. 09/01/2018

COPY

CIRCUIT COURT SUMMONS                                         NASHVILLE, TENNESSEE

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20ᵀᴴ JUDICIAL DISTRICT

Service ID 285094

BRIAN CUMMINGS

|  | CIVIL ACTION |
|  | DOCKET NO. 22C546 |
|  | Method of Service: |
|  | Certified Mail |

Plaintiff

vs.

JEANNE (TRUSTEE) BURTON OBO CUMMINGS
MANOOKIAN, PLC
C/O PHILLIP YOUNG
6100 TOWER CIRCLE, #200
FRANKLIN, TN 37067

Defendant

### RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _____ day of _____, 20___, I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the Summons and a copy of the Complaint/Petition in Docket No. 22C546 to the Defendant, JEANNE (TRUSTEE) BURTON OBO CUMMINGS MANOOKIAN, PLC . On the _____ day of _____, 20___, I received the return receipt for said registered or certified mail, which had been signed by _____ on the _____ day of _____, 20___. Said return receipt is filed with the original Summons Return and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME, ON THIS
PERSON
_____ DAY OF _____, 20____.

_____
_____ NOTARY PUBLIC or _____DEPUTY CLERK
MY COMMISSION EXPIRES: _____

_____
PLAINTIFF, PLAINTIFF'S ATTORNEY or OTHER

AUTHORIZED BY STATUTE TO SERVE PROCESS

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

rev. 09/01/2018

## IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| BRIAN CUMMINGS, | ) |
| | ) |
| Plaintiff, | ) |
| | )    NO. 22C546 |
| v. | ) |
| | ) |
| BRETTON KEEFER, on behalf of the deceased, | ) |
| CHESTA SHOEMAKER, AFSOON HAGH, | ) |
| and JEANNE BURTON, Trustee on behalf of | ) |
| CUMMINGS MANOOKIAN, PLC, | ) |
| | ) |
| Defendants. | ) |

## AMENDED COMPLAINT

The Plaintiff, for this cause of action, respectfully states to the Court and trier of fact as follows:

### PARTIES, VENUE, AND JURISDICTION

1. The Plaintiff, Brian Cummings ("Mr. Cummings"), is an adult resident of Tennessee.

2. The majority of legal work performed by Mr. Cummings on behalf of his former client, and a Defendant in this action, Bretton Keefer, on behalf of the deceased, Chesta Shoemaker, was performed in Davidson County, Tennessee.

3. The Defendant in this action, Bretton Keefer ("Mr. Keefer"), on behalf of the deceased, Chesta Shoemaker, received the benefit of Mr. Cummings' time, legal work, and financial funding of his previously-filed and now resolved health care liability, wrongful death lawsuit that bore docket number 19C358 in the Davidson County, Tennessee Circuit Courts ("the Keefer matter"). The original Complaint in the Keefer matter was prepared and filed in February

1

COPY

2019, by Mr. Cummings, who was, at that time, a partner in Cummings Manookian, PLC ("Cummings Manookian"), a law firm based in Davidson County, Tennessee.

4.    Afsoon Hagh ("Ms. Hagh") was one of the attorneys who did work on behalf of Mr. Keefer in the Keefer matter, and she did some of her attorney work on this matter in Davidson County, Tennessee.

5.    Mr. Cummings voluntarily withdrew from Cummings Manookian in 2018, leaving Brian Manookian ("Mr. Manookian") as the only remaining Member of Cummings Manookian.  The financial situation of Cummings Manookian changed after Mr. Cummings' withdrawal from the firm to the extent that Mr. Manookian put Cummings Manookian into bankruptcy proceedings.

6.    Jeanne Burton is the Trustee for Cummings Manookian in those bankruptcy proceedings.

7.    Attorney work was done on the Keefer matter by Brian Cummings while he was still a Member at Cummings Manookian, but that work was a very small percentage of the overall time and work performed by Mr. Cummings on the Keefer matter.

8.    The original Complaint filed in the Keefer matter by Mr. Cummings in February 2019, listed Ms. Hagh as co-counsel with Mr. Cummings for Mr. Keefer. That Complaint properly identified Mr. Cummings as being with his new firm, Cummings Law, and that Complaint properly identified Ms. Hagh as being with her firm at that time, Cummings Manookian.

9.    Jeanne Burton, as Trustee in bankruptcy for Cummings Manookian, is a proper party to this matter because some portion of the attorney work done related to the attorney's lien issue was performed by at least one attorney while such an attorney was still a part of Cummings

Manookian and because the monetary value of the attorney work by any attorneys who at the time of that work were a part of Cummings Manookian makes that monetary amount a concern / asset of the Cummings Manookian bankruptcy proceeding.

10.    Venue and jurisdiction are appropriate with the Circuit Courts of Davidson County, Tennessee.

## FACTS AND CLAIMS

11.    Mr. Cummings signed Mr. Keefer as a client on behalf of Cummings Manookian in 2017 via an Attorney-Client Agreement ("CM Agreement"). The CM Agreement included a contingency fee provision, and the fee was to be earned by Cummings Manookian, via work performed by Brian Cummings and/or Brian Manookian only if Mr. Keefer received a monetary award via settlement, judgment, or award from the Keefer matter.

12.    Mr. Cummings continued to work on the Keefer matter after leaving Cummings Manookian in 2018, including with the knowledge and consent of Mr. Keefer and for the benefit of Mr. Keefer and the other beneficiaries of the Keefer matter.

13.    Mr. Cummings performed legal work on the Keefer matter for over three years until he withdrew as counsel for Mr. Keefer in October 2020.

14.    Mr. Cummings withdrew as counsel in October 2020 after separate oral statements to him by Ms. Hagh and by Mr. Keefer during an approximately one week period indicated that their working relationships were strained.  Mr. Cummings promptly called the Tennessee Board of Professional Responsibility ("BPR") asking if those statements required him to withdraw as counsel, and he was told by the BPR with no equivocation and with no qualification that he was required to withdraw as counsel and to do so as soon as possible.

3

15.     Mr. Cummings' withdrawal as counsel was not a choice he made, and it was not a voluntary withdrawal, because it was the comments by the client and by co-counsel, Ms. Hagh, that led to the situation that resulted in the BPR telling Mr. Cummings he was required to withdraw as soon as possible because he could no longer properly and ethically represent Mr. Keefer based on the comments made by Ms. Hagh and by Mr. Keefer.

16.     Mr. Cummings was ethically required to follow the instructions and advice of the BPR in response to what action to take based on the comments made to him by Mr. Keefer and by Ms. Hagh.

17.     In October 2020, Mr. Cummings provided a private letter to Mr. Keefer and Ms. Hagh communicating his withdrawal as counsel, and informing Mr. Keefer and Ms. Hagh that Mr. Cummings understood he was ethically required to withdraw as counsel based on the comments that Mr. Keefer and Ms. Hagh had very recently made. Neither Mr. Keefer nor Ms. Hagh ever communicated to Mr. Cummings orally or in writing that they had any factual or legal dispute with regard to the content of Mr. Cummings' October 2020 letter to them that communicating that Mr. Cummings believed he was required to withdraw as counsel because of the comments made by Ms. Hagh and by Mr. Keefer.

18.     In October 2020, Mr. Cummings filed a Motion to Withdraw as Counsel for the Plaintiff ("Motion to Withdraw"). By the time that the Motion to Withdraw was filed, Mr. Keefer and Ms. Hagh had received a copy of Mr. Cummings October 2020 letter stating that Mr. Cummings believed he was ethically required to withdraw as a result of the comments made by Ms. Hagh and by Mr. Keefer, and neither Mr. Keefer nor Ms. Hagh filed any type of Response in any way disputing or opposing the Motion to Withdraw.

4

COPY

19.     On November 20, 2020, the Fifth Circuit Court entered an Order granting Mr. Cummings' Motion to Withdraw as Counsel.

20.     On November 27, 2020, Mr. Cummings filed, in the Keefer lawsuit, a document entitled "Brian Cummings' Notice of Attorney's Lien" and this document cited Tennessee Code Annotated section 23-2-102.

21.     Mr. Keefer and Ms. Hagh learned of the filing of Brian Cummings' Notice of Attorney's Lien within days of its filing, including Ms. Hagh receiving a copy through the Circuit Court's electronic filing system.

22.     According to the publicly-available information on Caselink regarding the Davidson County Circuit Courts, the Fifth Circuit Court approved a settlement involving minor beneficiaries in the Keefer matter in October 2021.

23.     The Circuit Court approved a settlement in this matter involving at least one minor beneficiary, and therefore the Court also found that the amount of the settlement was acceptable/reasonable, and any such Court-approval included approving the total attorneys' fee.

24.     Tennessee Code Annotated section 23-2-102 provides a lien upon a plaintiff's or complainant's right of action from the date of the filing of the suit.

25.     Prior to the filing of the lawsuit, Mr. Cummings performed all aspects of the intake of the case, including meeting with and signing the client within two days of the death of the client's mother.

26.     After a review of the records from Vanderbilt Hospital, Mr. Cummings prepared the detailed expert summary letter which became the basis of the Complaint and the basis of the detailed summary letter sent to all experts.

27. Mr. Cummings attended the presuit mediation as the only attorney on behalf of the Plaintiff.

28. Mr. Cummings prepared and timely filed the 550 paragraph, 65 page, Complaint.

29. Mr. Cummings prepared and propounded a significant portion of the written discovery propounded upon the Defendant. Mr. Cummings worked with the Plaintiff in preparing all of Plaintiff's written responses to discovery, at least through October 2020.

30. Mr. Cummings contacted and retained all Rule 26 witnesses including all of the medical experts.

31. After the filing of the Complaint and written discovery, Mr. Cummings continued to work diligently on behalf of the Plaintiff, including, but not limited to, (a) keeping Mr. Keefer updated regarding case events, answering questions he had, and working with him and meeting with him to prepare his typed, formal responses to written discovery, (b) contacting, retaining, and preparing and sending summaries of case materials (including deposition testimony and responses to written discovery) and copies of the underlying case materials to all of Mr. Keefer's eventual Rule 26 experts (and being the only attorney for Mr. Keefer to do so), of which there were eight or more medical experts and one expert economist, (c) preparing Mr. Keefer for his deposition and defending his deposition (and being the only attorney for Mr. Keefer to do so), (d) preparing Edward Goodwin, the decedent's boyfriend/fiancé for his deposition and defending his deposition (and being the only attorney for Mr. Keefer to do so), (e) taking or defending approximately 14 of the approximately 30 depositions that occurred (some of these depositions were the same witness deposed in two parts / two depositions), and (f) preparing and serving Mr. Keefer's original approximately 85 page Rule 26 disclosures (and being the only attorney for Mr. Keefer to do so).

6

32.     The entire duration of the Keefer matter from the time of signing the client to the Court approval referenced herein was 54 months.

33.     Mr. Cummings was counsel or co-counsel on the Keefer matter from April 2017 through October 2020, which is 42 months.

34.     Mr. Cummings' involvement for 42 months of the 54 months of the total duration of the Keefer matter represents 78% of the total duration of the Keefer matter.

35.     Another attorney, Brian Manookian ("Mr. Manookian"), did some of the work on the Keefer matter, including Mr. Manookian doing some of the work while Mr. Manookian was still a Member at Cummings Manookian.

36.     Mr. Manookian was not listed as counsel of record for Mr. Keefer when the original Complaint was filed – only Mr. Cummings and Ms. Hagh were.

37.     Mr. Manookian has never informed Mr. Keefer, Ms. Hagh, or Mr. Cummings that he is seeking any amount of an attorney's fee from the Keefer matter.

38.     Mr. Manookian has never filed a Notice of Attorney's Lien regarding the Keefer matter.

39.     During Mr. Cummings' 42 months of involvement as counsel for Mr. Keefer, he and his firm, Cummings Law, paid over $60,000.00 in litigation expenses incurred during that period of time on the Keefer matter.

40.     During Mr. Cummings' 42 months of involvement as counsel for Mr. Keefer, he paid 90-100% of the litigation expenses incurred during that period of time.

41.     By the time of Mr. Cummings' withdrawal, he had tried approximately 20 healthcare liability actions to verdict, including as second-chair or first-chair, and including trials in healthcare liability trials in the Fifth Circuit Court of Davidson County, Tennessee.

7

COPY

42.     By the time of Mr. Cummings' withdrawal, he had successfully completed the oral exam and the written exam to become Board certified in Medical Malpractice by the American Board of Professional Liability Attorneys (ABPLA) and he was certified accordingly.

43.     Mr. Keefer and the other beneficiaries in this matter have already received their net proceeds from the Keefer matter minus the litigation expenses and minus a total 33.33% attorneys' fee.

44.     To date, Mr. Cummings has not been paid or provided an attorney's fee for his 42 months of involvement and work on the Keefer matter that has apparently settled with Court approval.

45.     At this point, the amount of money determined to be provided to Mr. Cummings related his work in this matter and related to his attorney's lien does not change the amount of net proceeds to Mr. Keefer or the other beneficiaries from the Keefer matter.

46.     The amount of money determined to be provided to Mr. Cummings related to his work in this matter and related to his attorney's lien affects what amount of money Ms. Hagh receives for her attorney work on the Keefer matter.

47.     John Edwards ("Mr. Edwards"), an attorney from North Carolina, was co-counsel for Mr. Keefer at the end of this matter for less than 12 months.

48.     Mr. Edwards and his law firm were already provided with an agreed-to amount of attorneys' fees amount for their work in this matter.

49.     The remaining balance of attorney fees after Mr. Edwards received his fee are being held in the Bass, Berry, & Sims' Attorney Trust Account and will not be distributed until the dispute over attorneys' fees has been resolved.

8

50.     Mr. Edwards and his law firm were paid an amount of attorneys' fees from the total attorneys' fees in this matter per the terms of an agreement that Mr. Edwards and his firm had entered into with Mr. Keefer and / or Ms. Hagh as to what that split or portion of the total attorney's fee would be.

51.     During Mr. Cummings' involvement in the case, Mr. Cummings did not have an agreement with Mr. Keefer and / or Ms. Hagh as to what Mr. Cummings' split or portion of the total attorney's fee would be.

52.     At this point, the amount of money determined to be provided to Mr. Cummings related to his work in this matter and related to his attorney's lien has no effect on the amount of attorneys' fees paid to Mr. Edwards and his law firm.

53.     Mr. Cummings attempted to resolve this attorney's lien issue via mediation in late 2021, during which time Ms. Hagh represented Mr. Keefer on the attorney's lien issue, but that mediation effort did not resolve the matter.

54.     When Ms. Hagh represented Mr. Keefer on the attorney's lien issue, her share of the total attorney's fee would decrease based on what amount of that total attorneys' fee was provided to Mr. Cummings.

55.     In filings made by Ms. Hagh on behalf of Mr. Keefer on the attorney's lien issue, Ms. Hagh indicated that Mr. Keefer contended that arbitration was required on the attorney's lien issue, and Judge Joseph Binkley of the Fifth Circuit Court told Ms. Hagh to speak with Mr. Keefer to allow Mr. Keefer to choose if he wanted to proceed with arbitration or waive that option. Months have passed since that instruction by Judge Binkley, and during that time counsel for Mr. Cummings has repeatedly asked Ms. Hagh in writing if Mr. Keefer was choosing to arbitrate the issue, and Ms. Hagh has communicated that she and Mr. Keefer claim to not

9

understand what issue required resolution regarding Mr. Cummings' attorney's lien and have never communicated that Mr. Keefer chooses arbitration. Consequently, any potential right Mr. Keefer may have had to require arbitration of the attorney's lien issue was declined and/or was waived.

56.    Also in filings made by Ms. Hagh on behalf of Mr. Keefer on the attorney's lien issue, Ms. Hagh indicated that Mr. Keefer contended that any litigation regarding the attorney's lien issue had to proceed via a lawsuit filed separately from the Keefer healthcare liability matter. In accordance with that position of Mr. Keefer as stated by Ms. Hagh that a separate lawsuit was required to be filed to address the attorney's lien issue, this present action is filed.

57.    In 2019, Mr. Keefer entered into a new Attorney-Client Agreement regarding the Keefer matter with a firm named Manookian PLLC ("Manookian firm" and "Manookian agreement").

58.    The only attorney who signed the Manookian agreement was Mr. Manookian.

59.    The Manookian agreement was the first Attorney-Client Agreement that Mr. Keefer signed that mentioned Ms. Hagh in any way.

60.    Ms. Hagh did not have a signature line on the Manookian agreement, and Ms. Hagh did not sign the Manookian agreement.

61.    The Manookian firm was not a party to the Attorney-Client Agreement that Mr. Keefer entered into with Cummings Manookian in 2017.

62.    The Manookian agreement stated, in part, that the law firm of Cummings Manookian no longer existed, and Mr. Keefer signed and entered into the Manookian agreement.

63.    The Manookian agreement stated, in part, that a portion of the total attorneys' fees on the Keefer matter may be split with Brian Cummings of Cummings Law, and that this portion

10

COPY

of the attorneys' fees paid to Brian Cummings would come from the total 33.33% contingence fee.

64.     When Mr. Keefer signed the Manookian agreement in 2019, Mr. Keefer should have reasonably understood that Mr. Cummings would receive a portion of the total attorneys' fee on the Keefer matter for the legal work that Mr. Cummings performed on the Keefer matter. Mr. Cummings was not a party or signatory to the Manookian agreement.

65.     The Manookian agreement was entered into without Mr. Cummings being told by Mr. Keefer, Ms. Hagh, or Mr. Manookian about the proposal that Mr. Keefer enter into the Manookian agreement.

66.     Mr. Cummings provided legal services that benefited Mr. Keefer, and that benefitted Ms. Hagh regarding her interest in the resulting total attorney's fee, that Mr. Keefer and Ms. Hagh received, that were valuable legal services, and Mr. Cummings did so without an enforceable, written agreement with Mr. Keefer or with Ms. Hagh as to what split or portion of the total attorney's fee would be paid to Mr. Cummings under any situation.

67.     During the time period that Mr. Cummings provided legal services for Mr. Keefer during the Keefer matter, Mr. Cummings expected to be compensated for his legal work.

68.     During the time period that Mr. Cummings provided legal services for Mr. Keefer during the Keefer matter, Mr. Keefer and Ms. Hagh should have reasonably understood that Mr. Cummings expected to be compensated for his legal work on the Keefer matter.

69.     It would be unjust for Mr. Cummings to not be compensated for his legal work on the Keefer matter.

70.     Ms. Hagh would be unjustly enriched if she were to receive funds which were earned by Mr. Cummings for his service in the Shoemaker matter.

COPY

71. Mr. Cummings has never entered into an agreement of any kind that waived his right to be paid a reasonable amount for his legal work he performed on the Keefer matter if he was required to withdraw as counsel under our factual situation.

72. Mr. Cummings has never entered into an agreement of any kind that waived his right to an attorney's lien, including the right to an attorney's lien that arose at the time he filed the Keefer matter in 2019.

73. Mr. Cummings has never entered into an agreement of any kind that waived his right to be paid a reasonable amount for his legal work if he withdrew as counsel for any reason if Mr. Keefer had existing co-counsel continuing to be available for Mr. Keefer and who stayed involved in the matter.

74. Mr. Keefer signed and entered into two different Attorney-Client Agreements in the Keefer matter, one in 2017 and a second in 2019, and both of these Agreements referred to Mr. Cummings receiving some unidentified portion of the total attorneys' fee.

75. The statute that provides the applicable right to an attorney's lien for Mr. Cummings, Tenn. Code Ann. section 23-2-102, does not include any exclusionary language or provisions by which such a right to an attorney's lien can be waived or negated by any facts or alleged circumstances after an attorney filed the applicable lawsuit on behalf of a plaintiff.

Plaintiff's prayers for relief are:

1. That Defendants be served and required to answer as required by law.

2. That upon a hearing in this matter, the Court find that it would be unjust for Mr. Cummings not be fairly compensated for the work done in the Keefer matter and that it would be further unjust for Ms. Hagh to be paid and receive the benefits of Mr. Cummings work.

3.      That the Court determine the amount Mr. Cummings is to be awarded for his

Involvement in the Keefer matter pursuant to his timely filed Notice of Attorney's Lien, and

pursuant to the common law remedies, including quantum meruit, unjust enrichment (to Mr.

Keefer and/or Ms. Hagh), and equality and that he be granted judgement accordingly.

4.  For general relief.

Respectfully submitted,


_____ /s/  James W. Price, Jr.
**JAMES W. PRICE, JR., #3538**
Price, Hill, & Kolarich
201 4th Avenue N., Suite 1800
Nashville, TN 37219
(615) 244-5772 – phone
(615) 244-5821 - fax
Jprice@pricehillkolarich.com
*Attorney for the Plaintiff*

13

# COPY

CIRCUIT COURT SUMMONS                                    NASHVILLE, TENNESSEE

Service ID 286122

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20ᵀᴴ JUDICIAL DISTRICT

CUMMINGS, BRIAN

CIVIL ACTION
DOCKET NO. 22C546
Method of Service:
Certified Mail

**Plaintiff**

vs.

AFSOON HAGH
1906 GLEN ECHO ROAD
NASHVILLE, TN 37215

**Defendant**

To the above named Defendant:

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303 , and your defense must be made within thirty (30) days from the date this Summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the Complaint.

ISSUED: 03/29/2022

**RICHARD R. ROOKER**
Circuit Court Clerk
Davidson County, Tennessee

By: _____

_____
Deputy Clerk

ADDRESS OF PLAINTIFF'S ATTORNEY OR PLAINTIFF:

JAMES W. PRICE
201 4TH AVENUE N., SUITE 1800
NASHVILLE, TN 37219

---

### NOTICE TO THE DEFENDANT:

Tennessee law provides a Ten Thousand and 00/100 Dollars ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

---

### CERTIFICATION

STATE OF TENNESSEE    )
COUNTY OF DAVIDSON    )

I, Richard R. Rooker, Clerk of the Circuit Court in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued in this case.

RICHARD R. ROOKER, CLERK

By: _____        D.C.

 To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

rev. 09/01/2018

# COPY

**CIRCUIT COURT SUMMONS**                                              NASHVILLE, TENNESSEE

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20ᵀᴴ JUDICIAL DISTRICT

Service ID 286122

CUMMINGS, BRIAN

CIVIL ACTION
DOCKET NO. 22C546
Method of Service:
Certified Mail

Plaintiff

vs.

AFSOON HAGH
1906 GLEN ECHO ROAD
NASHVILLE, TN 37215

Defendant

### RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _____ day of _____, 20___, I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the Summons and a copy of the Complaint/Petition in Docket No. 22C546 to the Defendant, AFSOON HAGH . On the _____ day of _____, 20___, I received the return receipt for said registered or certified mail, which had been signed by _____ on the _____ day of _____, 20___. Said return receipt is filed with the original Summons Return and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME, ON THIS PERSON

_____ DAY OF _____, 20____.

_____
PLAINTIFF, PLAINTIFF'S ATTORNEY or OTHER

AUTHORIZED BY STATUTE TO SERVE PROCESS

_____
_____ NOTARY PUBLIC or _____DEPUTY CLERK
MY COMMISSION EXPIRES: _____

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

rev. 09/01/2018

COPY

CIRCUIT COURT SUMMONS                                    NASHVILLE, TENNESSEE

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20ᵀᴴ JUDICIAL DISTRICT

Service ID 286123

CUMMINGS, BRIAN

|                                                          | CIVIL ACTION |
|                                                          | DOCKET NO. 22C546 |
|                                             Plaintiff    | Method of Service: |
|                                                          | Certified Mail |

vs.

BURTON, JEANNE (TRUSTEE) O/B/O CUMMINGS
MANOOKIAN, PLC
C/O PHILLIP YOUNG
6100 TOWER CIRCLE, #200
FRANKLIN, TN 37067

Defendant

To the above named Defendant:

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303 , and your defense must be made within thirty (30) days from the date this Summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the Complaint.

ISSUED: 03/29/2022

RICHARD R. ROOKER
Circuit Court Clerk
Davidson County, Tennessee

By: _____

Deputy Clerk

ADDRESS OF PLAINTIFF'S ATTORNEY OR PLAINTIFF:

JAMES W. PRICE
201 4TH AVENUE N., STE 1800
NASHVILLE, TN 37219

NOTICE TO THE DEFENDANT:
Tennessee law provides a Ten Thousand and 00/100 Dollars ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

### CERTIFICATION

STATE OF TENNESSEE )
COUNTY OF DAVIDSON )

I, Richard R. Rooker, Clerk of the Circuit Court in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued in this case.

rev. 09/01/2018

COPY

RICHARD R. ROOKER, CLERK

By: _____ D.C.

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

Service ID 286123

rev. 09/01/2018

COPY

CIRCUIT COURT SUMMONS

NASHVILLE, TENNESSEE

Service ID 286123

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20 ᵀᴴ JUDICIAL DISTRICT

CUMMINGS, BRIAN

**CIVIL ACTION**
**DOCKET NO. 22C546**
Method of Service:
  Certified Mail

Plaintiff

vs.

BURTON, JEANNE (TRUSTEE) O/B/O CUMMINGS
MANOOKIAN, PLC
C/O PHILLIP YOUNG
6100 TOWER CIRCLE, #200
FRANKLIN, TN 37067

Defendant

### RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _____ day of _____, 20___, I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the Summons and a copy of the Complaint/Petition in Docket No. 22C546 to the Defendant, BURTON, JEANNE (TRUSTEE) O/B/O CUMMINGS MANOOKIAN, PLC . On the _____ day of _____, 20___, I received the return receipt for said registered or certified mail, which had been signed by _____ on the _____ day of _____, 20___. Said return receipt is filed with the original Summons Return and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME, ON THIS
PERSON

_____ DAY OF _____, 20____.

_____
_____ NOTARY PUBLIC or _____ DEPUTY CLERK
MY COMMISSION EXPIRES: _____

_____

PLAINTIFF, PLAINTIFF'S ATTORNEY or OTHER

AUTHORIZED BY STATUTE TO SERVE PROCESS

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

rev. 09/01/2018

036

# COPY

**CIRCUIT COURT SUMMONS**                                        NASHVILLE, TENNESSEE

Service ID 286124

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20ᵀᴴ JUDICIAL DISTRICT

CUMMINGS, BRIAN

|                                  | CIVIL ACTION |
|---|---|

Plaintiff

vs.

KEEFER, BRETTON O/B/O SHOEMAKER, CHESTA
(DECEASED)
5960 PUMPKINTOWN LANE
LAFAYETTE, TN 37083

Defendant

**CIVIL ACTION
DOCKET NO. 22C546
Method of Service:
Personal Service**

To the above named Defendant:

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303 , and your defense must be made within thirty (30) days from the date this Summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the Complaint.

ISSUED: 03/29/2022

RICHARD R. ROOKER
Circuit Court Clerk
Davidson County, Tennessee

By: _M Jougnore_

_____
Deputy Clerk

ADDRESS OF PLAINTIFF'S ATTORNEY OR PLAINTIFF:

JAMES W. PRICE
201 4TH AVE. N., STE 1800
NASHVILLE, TN 37219

---

**NOTICE TO THE DEFENDANT:**

Tennessee law provides a Ten Thousand and 00/100 Dollars ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

---

 To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

rev. 09/01/2018

# COPY

CIRCUIT COURT SUMMONS

NASHVILLE, TENNESSEE

Service ID 286124

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20™ JUDICIAL DISTRICT

CUMMINGS, BRIAN

CIVIL ACTION
DOCKET NO. 22C546
Method of Service:
Personal Service

Plaintiff

vs.

KEEFER, BRETTON O/B/O SHOEMAKER, CHESTA
(DECEASED)
5960 PUMPKINTOWN LANE
LAFAYETTE, TN 37083

Defendant

### RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____ _____ _____ , 20___, I:

_____ served this Summons and Complaint/Petition on _____ in the following manner:

_____

_____ failed to serve this Summons within 90 days after its issuance because _____

_____


_____

Sheriff/Process Server


To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

rev. 09/01/2018

COPY

CIRCUIT COURT SUMMONS

NASHVILLE, TENNESSEE

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20™ JUDICIAL DISTRICT

Service ID 285094

BRIAN CUMMINGS

| | CIVIL ACTION |
| | DOCKET NO. 22C546 |
| Plaintiff | Method of Service: |
| | Certified Mail |

vs.

JEANNE (TRUSTEE) BURTON OBO CUMMINGS
MANOOKIAN, PLC
C/O PHILLIP YOUNG
6100 TOWER CIRCLE, #200
FRANKLIN, TN 37067

Defendant

### RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the 22ⁿᵈ day of March, 2022 I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the Summons and a copy of the Complaint/Petition in Docket No. 22C546 to the Defendant, JEANNE (TRUSTEE) BURTON OBO CUMMINGS MANOOKIAN, PLC . On the 28ᵗʰ day of March, 2022 I received the return receipt for said registered or certified mail, which had been signed by B. Wood on the 25ᵗʰ day of March, 2022 Said return receipt is filed with the original Summons Return and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME, ON THIS

PERSON,

29ᵗʰ DAY OF March

NOTARY PUBLIC or _____ DEPUTY CLERK

MY COMMISSION EXPIRES: 5-5-2

PLAINTIFF, PLAINTIFF'S ATTORNEY or OTHER

AUTHORIZED BY STATUTE TO SERVE PROCESS

VICKI M. GLOVER
STATE OF TENNESSEE
NOTARY PUBLIC
DAVIDSON COUNTY

My Commission Expires
MAY 05, 2025
To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

rev. 09/01/2018

COPY

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Phillip Young
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, #200
Franklin, TN 37067

9590 9402 3459 7275 7326 13

2. Article Number (Transfer from service label)

7014 1820 0000 3466 3566

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☒ Addressee

B. Received by (Printed Name)      C. Date of Delivery
BWood                               3-25-22

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☒ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

NASHVILLE, TENNESSEE

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20™ JUDICIAL DISTRICT

Service ID 285093

**BRIAN CUMMINGS**

CIVIL ACTION
DOCKET NO. 22C546
Method of Service:
Personal Service

Plaintiff

vs.

BRETTON KEEFER OBO CHESTA (DECEASED)
SHOEMAKER
5960 PUMPKINTOWN LANE
LAFAYETTE, TN 37083

Defendant

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the _22_ day of _MARCH_ , 20_22_, I:

_____ served this Summons and Complaint/Petition on _____ in the following manner:

_____

_X_ failed to serve this Summons within 90 days after its issuance because _BRETTON KEEFER_ _WAS NOT FOUND IN COURT!_

_____

Sheriff/Process Server

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

Confidential Courier Service
& Private Process Service
611 Priscilla Ct Madison, TN 37115
Alex B. Frierson

rev. 09/01/2018

**CIRCUIT COURT SUMMONS**                                              NASHVILLE, TENNESSEE

Service ID 286123

### STATE OF TENNESSEE
### DAVIDSON COUNTY
### 20ᵀᴴ JUDICIAL DISTRICT

CUMMINGS, BRIAN

| | CIVIL ACTION |
|---|---|
| | DOCKET NO. 22C546 |
| Plaintiff | Method of Service: Certified Mail |

vs.

BURTON, JEANNE (TRUSTEE) O/B/O CUMMINGS
MANOOKIAN, PLC
C/O PHILLIP YOUNG
6100 TOWER CIRCLE, #200
FRANKLIN, TN 37067

Defendant

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _29th_ day of _March_ 20_22_ I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the Summons and a copy of the Complaint/Petition in Docket No. 22C546 to the Defendant, BURTON, JEANNE (TRUSTEE) O/B/O CUMMINGS MANOOKIAN, PLC . On the _2nd_ day of _April_, 20_22_, I received the return receipt for said registered or certified mail, which had been signed by _B. Wood_ on the _31st_ day of _March_, 20_22_ Said return receipt is filed with the original Summons Return and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME, ON THIS
PERSON,
_19th_ DAY OF _April_, 20_22_

_Vicki M. Glover_
____ NOTARY PUBLIC or ____ DEPUTY CLERK
MY COMMISSION EXPIRES: _5-3-25_

_____
PLAINTIFF, PLAINTIFF'S ATTORNEY or OTHER
AUTHORIZED BY STATUTE TO SERVE PROCESS

VICKI M. GLOVER
STATE
OF
TENNESSEE
NOTARY
PUBLIC
DAVIDSON COUNTY
My Commission Expires
MAY 05, 2023

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309

rev. 09/01/2018

Service ID 286123

EFILED 04/14/22 10:09 AM CASE NO. 22C546 Richard R. Rooker, Clerk

COPY

SENDER: COMPLETE THIS SECTION

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

Article Addressed to:

Phillip Young
6100 Tower Circle, #200
Franklin, TN 37067

COMPLETE THIS SECTION ON DELIVERY

A. Signature
☐ Agent
☒ Addressee

B. Received by (Printed Name)    C. Date of Delivery
B. Wood                          3-31-22

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Priority Mail Express™
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

Article Number
(Transfer from service label)    7014 1820 0000 3466 3771

PS Form 3811, July 2013    Domestic Return Receipt

UNITED STATES POSTAL SERVICE
NASHVILLE TN 370

2 APR 2022 PM 6 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

James W. Price, Jr.
Price, Hill, & Kolarich
201 4th Ave., N., Ste. 1800
Nashville, TN 37219

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **BRIAN CUMMINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. _____** |
| | ) | |
| **BRETTON KEEFER, on behalf of the** | ) | |
| **deceased, CHESTA SHOEMAKER,** | ) | |
| **AFSOON HAGH, and** | ) | |
| **JEANNE BURTON, Trustee on behalf** | ) | |
| **Of CUMMINGS MANOOKIAN, PLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1452, *et seq.*, defendant Jeanne Ann Burton, Chapter 7 Trustee for Cummings Manookian, PLC ("Trustee"), hereby gives notice of the removal of the above-referenced case from the Circuit Court of Davidson County, Tennessee. In support hereof, Trustee states as follows:

1.      On or about March 22, 2022, Brian Cummings ("Plaintiff") filed a *Complaint* against, Trustee and Bretton Keefer on behalf of the deceased, Chesta Shoemaker ("Complaint") in the Circuit Court of Davidson County, Tennessee (the "State Court"). Subsequently, on March 29, 2022, Plaintiff filed an Amended Complaint ("Amended Complaint") that added Afsoon Hagh as a defendant. The Amended Complaint sough a determination from the State Court concerning the rights to fees among

attorneys related to a wrongful death lawsuit brought by Defendant Keefer.[1]

      2.     This action is properly removable under 28 U.S.C. § 1452, and venue in this division is proper, because the United States District Court, Middle District of Tennessee, has original jurisdiction of this case under 28 U.S.C. § 1334.  Trustee is being sued in her capacity as the bankruptcy trustee for Cummings Manookian, PLLC; moreover, there is a pending adversary proceeding before the United States Bankruptcy Court for the Middle District of Tennessee involving the Trustee, as plaintiff, and Afsoon Hagh, as defendant, to determine the rights to these same disputed fees (Adv. Proc. No. 20-ap-90002).

      3.     Attached hereto are all pleadings and other papers filed in Davidson County Circuit Court as of the date of this notice.

      WHEREFORE, Trustee respectfully requests that this Court take jurisdiction of this action and issue all necessary orders to remove this matter from the Davidson County, Tennessee Circuit Court to the United States District Court for the Middle District of Tennessee.

April 26, 2022             Respectfully submitted,

                          s/ Phillip G. Young, Jr.
                          Phillip G. Young, Jr. (21087)
                          THOMPSON BURTON PLLC
                          6100 Tower Circle, Suite 200
                          Franklin, TN 37067
                          (615) 465-6008
                          Email: phillip@thompsonburton.com
                          *Special Counsel for Jeanne Burton, Trustee*

---

[1] The *Barton* doctrine provides that a court-appointed fiduciary, such as a bankruptcy trustee, may only be sued in the Court that appointed the trustee.  Since the Amended Complaint does not seek a judgment against the Trustee, but rather seemingly names the Trustee as a party only because the bankruptcy estate also claims an interest in the fees at issue herein, the Trustee has not invoked the *Barton* doctrine protections.  The Trustee hereby reserves all rights to invoke the *Barton* doctrine in the future if any party seeks a judgment against the Trustee.

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of April, 2022, the foregoing *Notice of Removal* was served via first-class U.S. Mail, postage prepaid, upon the following:

Brian Cummings
c/o James W. Price, Esq.
201 4th Avenue N., Suite 1800
Nashville, TN 37219

Bretton Keefter O/B/O Chesta Shoemaker (Deceased)
5960 Pumpkintown Lane
Lafayette, TN 37083

Afsoon Hagh
1906 Glen Echo Road
Nashville, TN 37215

s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| Debtor. | **Adv. Proc. No. 3:23-ap-90036** |
| **BRIAN CUMMINGS** | |
| Plaintiff, | |
| **v.** | |
| **BRETTON KEEFER, on behalf of the deceased CHESTA SHOEMAKER, AFSOON HAGH, and JEANNE BURTON, Trustee on behalf of CUMMINGS MANOOKIAN, PLC,** | |
| Defendants. | |

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PENDING MEDIATION AND ARBITRATION ON BEHALF OF DEFENDANTS KEEFER AND HAGH

### I.     INTRODUCTION

This lawsuit is filed by an attorney, Brian Cummings, against his former client and former co-counsel in a state medical malpractice action.  The former client is Bretton Keefer, the son of Chesta Shoemaker – a middle-aged woman who died after receiving negligent care at Vanderbilt University Medical Center ("Vanderbilt" or "VUMC").  The former co-counsel is Afsoon Hagh, the lawyer who represented Mr. Keefer throughout his

1

action against Vanderbilt, and who secured a settlement on his behalf (the "Malpractice Settlement").

Mr. Cummings withdrew from representing Mr. Keefer early in the discovery phase of the litigation when Mr. Keefer rebuffed Mr. Cummings' persistent pressure to settle the matter for pennies on the dollar, and Mr. Cummings was unwilling to continue contributing to the litigation of the matter. Over the next fourteen months, Ms. Hagh continued to prosecute the matter aggressively at her own expense, including hiring nationally-renowned trial attorney John Edwards to serve as her co-counsel. The case ultimately settled on the eve of trial as Ms. Hagh and Mr. Edwards were preparing to pick a jury in front of Davidson County Circuit Court Judge Joseph Binkley, Jr.

After learning of the settlement he did not assist in achieving, and despite having actively concealed significant instances of malpractice on his own part, Mr. Cummings initiated this lawsuit asking that a Court award him some unspecified portion of the Malpractice Settlement funds. Mr. Cummings did so despite three dispositive facts precluding (1) any Court as a forum or (2) any award in his favor.

First, Mr. Cummings expressly and unambiguously entered into a contract never to file litigation arising out of his representation of Mr. Keefer; the sole subject of the pending lawsuit. Second, Mr. Cummings drafted and insisted upon a clause in the same contract requiring that claims arising out his representation of Mr. Keefer be resolved exclusively through mediation and then binding arbitration. And third, Mr. Cummings drafted and agreed upon a provision that he would not receive a portion of any settlement if he withdrew from the Keefer representation; which he did after Mr. Keefer rebuffed Mr. Cummings' efforts to pressure him to settle the lawsuit for pennies on the dollar.

2

The former two points require dismissal of this lawsuit with prejudice; the latter point demonstrates the overall frivolous nature of the action. Because of Mr. Cummings' own contractual demands (memorialized in an attorney-client agreement that he personally drafted and executed), any dispute arising out of his representation of Mr. Keefer is specifically and unambiguously barred from adjudication in any Court – *at Mr. Cummings' specific insistence.*

This Court thus lacks subject-matter jurisdiction to hear Mr. Cummings' claims precisely because Mr. Cummings preemptively contracted that he could not and would not present any such claims to this Court in the form of two express clauses. The first, a covenant-not-to-sue, expressly states, "Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship." *Attorney-Client Agreement*, April 19, 2017, Brian Cummings to Brett Keefer, Page 3. **Exhibit 1**. Emphasis added.

The second clause, a binding mediation-arbitration provisions states, "any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration." **Exhibit 1**, at Page 3. Emphasis added.

Despite himself drafting and pressing these clauses onto Mr. Keefer, Cummings Manookian, and Afsoon Hagh covenanting never to sue over his representation in the malpractice suit; Mr. Cummings has now filed suit against Mr. Keefer, Cummings Manookian and Afsoon Hagh over his representation in the malpractice suit. His very act in bringing this lawsuit is actionable breach of contract. It also requires summary dismissal.

Where a plaintiff's claims are entirely subject to a valid, enforceable arbitration agreement, the court lacks subject matter jurisdiction over the case. The Court should dismiss Mr. Cummings' Complaint with prejudice because all of its claims are expressly covered by the broad covenant-not-to-sue and mediation-arbitration clauses that Mr. Cummings, himself, inserted into the contract governing his rights and remedies relative to his employment in the Malpractice Suit. In the alternative, Defendants Keefer and Hagh (hereinafter "Defendants") request that the Court stay the action and issue an order compelling mediation and arbitration.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.     The April 2017 Engagement Agreement**

On April 19, 2017, Brett Keefer retained the law firm of Cummings Manookian, Brian Cummings, and Brian Manookian to represent him as the surviving child of Chesta Shoemaker regarding her April 14, 2017 death at Vanderbilt University Medical Center. **Exhibit 1**, at Page 1. *See also*, *Amended Complaint*, D.E. 1-1, Page 19, Para. 11.



Cummings Manookian and its partners, including Brian Cummings, entered into a binding written agreement with Brett Keefer laying out the terms of Mr. Cummings' employment and engagement as an attorney in the matter (the "2017 CM Agreement"). *Amended Complaint*, D.E. 1-1, Page 19, Para. 11.

In addition to specifying the scope of the representation and how the attorneys would be compensated; the contract additionally detailed the exclusive manner in which any and all disputes under the contract must be resolved.

<u>**Mediation and Binding Arbitration of Any Attorney-Client Disputes**</u>

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

Specifically, the parties agreed that "neither the client nor the attorneys in this attorney-client relation can file litigation over or about any alleged or real dispute within the Attorney-Client relationship." Rather, the parties agreed that "the forum for any such dispute must first by a good-faith mediation and then binding arbitration.

> If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (bcummings@cummingsmanookian.com), fax (615-266-0250), or mail.
>
> On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me.
>
> Sincerely,
>
> *Brian Cum*
>
> **Brian Cummings**
> **CUMMINGS MANOOKIAN PLC**

The agreement was executed by the Plaintiff who has now filed suit in this case, Brian Cummings. *Amended Complaint*, D.E. 1-1, Page 19, Para. 11. In March 2018, prior to any lawsuit being filed on behalf of Mr. Keefer, Brian Cummings left the law firm of Cummings Manookian. *Amended Complaint*, D.E. 1-1, Page 18, Para. 5.

**B.    The Updated August 2019 Engagement Agreement**

Consistent with the terms of the engagement agreement with Cummings Manookian, suit was filed on behalf of Mr. Keefer against Vanderbilt on February 11, 2019 alleging professional negligence resulting in the wrongful death of Chesta Shoemaker. *Amended Complaint*, D.E. 1-1, Page 18, Para. 8.

On August 23, 2019, following Mr. Cummings' departure from the Cummings Manookian firm, Brian Manookian sent Brett Keefer an "Updated Legal Representation and Engagement Agreement" for review and signature. The letter stated, in part:

> **Re: Updated Legal Representation and Engagement**
>
> Dear Brett:
>
> As you know, Brian Cummings and I no longer practice as partners in the same firm. As a result, Cummings Manookian, the law firm, no longer exists. I am providing you this updated Attorney-Client Agreement to simply memorialize that you are now represented by Manookian PLLC. The terms are otherwise identical to the prior agreement you signed.

The updated agreement contained the same terms and provisions prohibiting suit being filed over any aspect of the attorney-client engagement, and it once again identified mediation and binding arbitration as the sole vehicle for resolving any disputes that arose between the parties. **Exhibit 2**.

> **Mediation and Binding Arbitration of Any Attorney-Client Disputes**
>
> While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

The case continued to progress in Davidson County Circuit Court throughout 2018 and 2019 under the identical terms of the initial and updated engagement agreements, both of which included covenants-not-to-sue and binding mediation-arbitration clauses.

## C. Brian Cummings Acknowledges and Reiterates his Agreements to the Terms of the Initial and Updated Engagement Agreements.

On January 3, 2020, Brian Cummings emailed Brett Keefer acknowledging his receipt, review, and acceptance of the Updated August 2019 Engagement Agreement whose terms were materially identical to the Initial 2017 Engagement Agreement other than to reflect that Brian Manookian and Brian Cummings were no longer operating as law partners. **Exhibit 3**, Email from Brian Cummings to Brett Keefer, January 3, 2020.

Indeed, Mr. Cummings simply asked Brett Keefer to confirm that Brian Cummings was still authorized to work on the case and that Brian Cummings would be reimbursed for any advanced expenses. Mr. Cummings went on to assure Mr. Keefer that agreeing to those two points would "only supplement the previous Attorney Client Agreements you signed in this case" and not "delete any aspects of any other such documents you signed." **Exhibit 3**.

> I need to confirm with you that you have always agreed to and authorized me to work as a lawyer on this case, and that you continue to do so. I also need to confirm with you that any litigation expenses I have or that I will advance on your behalf will be reimbursed. This 2019 agreement does not speak to those two particular issues, and even if we both expected those to things to be part of the past and ongoing work done by me on this case, I need to ask that you email me back something like "I agree."
>
> This request for a responsive email is only to supplement the previous Attorney-Client Agreements you signed in this case, and this affirmation is not meant to delete any aspect of any other such documents you signed. Also, nothing about this email exchange today increases or changes the total contingency fee rate of 33.33% that is in the prior documents.
>
> Brian

The only prior attorney-client agreements Mr. Keefer had signed were the 2017 Initial Agreement and 2019 Updated Agreement, both of which contain binding covenants-not-to-sue and binding mediation-arbitration clauses. Mr. Cummings email of January 3, 2020, expressly acknowledged and reaffirmed those terms.

**D. Brian Cummings Seeks to Renegotiate the Terms of the Initial and Updated Engagement Agreements and then Withdraws in a Fit of Pique.**

On September 24, 2020, Brian Cummings wrote Brett Keefer asking him to sign a new engagement agreement "setting for the basis on which I will continue to represent you." *Correspondence from Brian Cummings to Brett Keefer*, September 24, 2020, **Exhibit 4**. The letter began by purporting to be a "follow-up" to Mr. Keefer's two prior engagement agreements as well as Mr. Cummings' email acknowledging their validity.

> This letter is a follow up on the following enclosed documents – (1) your original Attorney-Client Agreement with Cummings Manookian while I was there, (2) your additional Agreement with Afsoon Hagh and Brian Manookian following my departure from Cummings Manookian and the end of that firm and the beginning of their firms, and (3) our more recent email exchange documenting you have continued to want me to represent you in this matter.

The letter went on to ask Mr. Keefer to sign a new engagement agreement solely with Mr. Cummings that included identical terms to Mr. Keefer's prior engagement agreements. The only addition was a provision requiring the client to agree that "if you leave any kind of review for my law firm online, including a Google review, that it will be 5/5 starts and have only positive comments." **Exhibit 4**, at Page 3.

Notably, Mr. Cummings' proposed new agreement included the same covenant-not-to-sue and binding mediation-arbitration clause present in the operative engagement agreements.

> **Mediation and Binding Arbitration of Any Attorney-Client Disputes**
>
> While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential dispute or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do I) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorney in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

When Mr. Keefer declined to sign the new Engagement Agreement, Mr. Cummings promptly – and without notice – withdrew as counsel "effective immediately" leaving only Ms. Hagh to continue prosecuting the matter. *Correspondence from Brian Cummings*, October 2, 2020, **Exhibit 5**. As the basis for his withdrawal, Mr. Cummings cited Mr. Keefer declining to sign a new engagement agreement; Mr. Keefer's feeling that Mr. Cummings was pressuring him to settle the case; as well as Ms. Hagh's characterization of Mr. Cummings' fixation on Mr. Cummings' own financial outcome in the case as "only looking out for Brian Cummings." *Id.* at Page 3.

Following Mr. Cummings' withdrawal immediately prior to the beginning of expert discovery, Ms. Hagh continued to develop, fund, and prosecute the case on her own. She ultimately brought on former United States Senator John Edwards to act as co-trial counsel. As previously discussed, the case settled in late October 2021, following adjudication of pre-trial motions, and just days before jury selection was set to begin.

**E.      Brian Cummings Acknowledges All Issues Related to his Representation of Mr. Keefer must be Resolved Out-of-Court**

Soon after Mr. Cummings learned that the case was not proceeding to trial, he retained counsel who began writing Ms. Hagh "requesting that you inform me whether or not your client, wishes to proceed with the binding arbitration as provided for in the Attorney-Client Agreement." *Correspondence from James Price*, February 1, 2022, **Exhibit 6**. The letter from MR. Cummings' counsel, James Price, acknowledged that the parties entered into binding arbitration agreement covering Mr. Cummings' claims arising out of his work on the Shoemaker case. Indeed, in its less than one-page length, the letter references binding arbitration no less than eight (8) times.

> Dear Afsoon:
>
> I emailed you at afsoon@haghlaw.com on the 24th day of January, 2022, requesting that you inform me as to whether or not your client, Mr. Keefer, wishes to proceed with the binding arbitration as provided for in the Attorney-Client Agreement. It appears that the email at this address was rejected so I am re-sending my letter by U.S. Mail, fax, and email.
>
> I am sure you agree that it is to everyone's benefit that this matter be resolved as quickly as possible. It would appear that the binding arbitration as provided for in the Attorney-Client Agreement is the most simple and quick way to resolve this issue and my client is prepared to proceed with that immediately. If you and your client agree with that, please let me know and I will be happy to provide a list of proposed arbitrators.

The letter closed by unilaterally requiring a response "no later than ten days from receipt… as to whether or not you represent Mr. Keefer and whether or not he wishes to proceed with binding arbitration." Despite no language existing in the Attorney-Client Agreement permitting such an outcome, Mr. Cummings threatened "unpleasant and lengthy litigation" if he did not receive a prompt response; concurrently announcing that a failure to respond would be treated as a waiver of arbitration.

Ms. Hagh responded by letter dated February 11, 2022. She began by recounting that "Brian Cummings previously served as counsel in *Keefer v. VUMC*. He quit early in

the matter after the client would not agree to settle the case for a fraction of its value, and because Mr. Cummings did not want to further contribute to the prosecution of the case." *Correspondence from Afsoon Hagh*, February 11, 2022, **Exhibit 7**.

Ms. Hagh pointed out to Mr. Price that [i]n such an event, the engagement agreement that your client drafted and signed is crystal clear that Mr. Cummings would only be entitled to reimbursement of his advanced costs and expenses. Your client has already been reimbursed his advanced costs and expenses. Although your letter references a 'fee dispute,' it fails to describe any such dispute. It then immediately proceeds to demand that Bretton Keefer choose arbitration or litigation as the means of adjudicating the 'dispute' that is never identified." *Id.* at Page 1. Ms. Hagh closed her response by requesting that Mr. Cummings' attorney "actually outline[] whatever it is your client is asking proceed to arbitration or litigation" so that she could meaningfully respond. Rather than do so, Mr. Cummings proceeded to file suit.

## F. Brian Cummings Breaches the Terms of the Engagement Agreements by Filing this Suit

On March 22, 2022, Brian Cummings filed an action in the Circuit Court for Davidson County Tennessee against Bretton Keefer and Jeanne Burton as Trustee for Cummings Manookian PLC. On March 29, 2022, Brian Cummings purported to Amend his complaint to add Afsoon Hagh as a Defendant.

On April 26, 2022, Jeanne Burton filed a Notice removing the lawsuit to the United States District Court for the Middle District of Tennessee, while simultaneously moving for the case to be remanded to Bankruptcy Court where Cummings Manookian is currently in bankruptcy. *Cummings v. Cummings Manookian*, Case No. 3:22-cv-00301, D.E. 1; D.E. 2.

For the next ten (10) months, Brian Cummings failed to serve either Brett Keefer or Afsoon Hagh with his Complaint or Summons, requesting serial extensions of time to do so. *See e.g.*, *Cummings v. Keefer*, Case No. 3:22-cv-00301, D.E. 20; D.E. 24; D.E. 31; D.E.42.

On February 27, 2023, Attorney John Spragens made an appearance on behalf of Brett Keefer and Afsoon Hagh solely for the purpose of entering an Agreed Order accepting service of process and setting a deadline of sixty days following service of the Complaint via email in which to file a responsive pleading. *Cummings v. Keefer*, Case No. 3:22-cv-00301, D.E. 53. To date, no Complaint has been served via email on Mr. Spragens following entry of the Court's Order permitting the same. Defendants file this Motion to Dismiss in response nonetheless.

## IV.    LAW AND ARGUMENT

### A.    Standard for Dismissal

This motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or in the alternative, Rule 12(b)(6) for failure to state a claim. Courts in the Sixth Circuit permit motions to dismiss pursuant to a covenant-not-to-sue or arbitration agreement to be brought as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *See, e.g., Winn v. Tenet Healthcare Corp.*, No. 2:10-cv-02140-JPM-cgc, 2011 WL 294407 (W.D. Tenn. Jan. 27, 2011); *Multiband Corp. v. Block*, No. 11-15006, 2012 WL 1843261, at *5 (E.D. Mich. May 21, 2012).

Rule 12(b)(1) motions to dismiss fall into two categories: facial attacks and factual attacks. *Gentek Bldg. Prods, v. Sherwin-Williams Co.*, 491 F.2d 320, 330 (6th Cir. 2007). Unlike a facial attack, a factual attack does not challenge the sufficiency of the pleading,

but the factual existence of subject matter jurisdiction. *Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "[N]o presumptive truthfulness applies to factual allegations and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citation omitted). In reviewing factual motions, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

With either challenge (facial or factual), the plaintiff bears the burden of proving that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *see also Rogers v. Stratton Indus., Inc.* 798 F.2d 913, 915 (6th Cir. 1986). Where, as in the instant case, a court lacks jurisdiction over a plaintiff's claims pursuant to Rule 12(b)(1), the complaint also fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Accordingly, "[w]hen all claims made in the litigation are subject to arbitration, the court may choose to dismiss the action in its entirety for failure to state a claim under Rule 12(b)(6)." *Rutter v. Darden Restaurants, Inc.*, No. CV 08-6106 AHM (SSx), 2008 WL 494043, at *9 (C.D. Cal. Nov. 18, 2008). **In fact, "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration**." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). (emphasis added).

## B. The Federal Arbitration Act Provides for Enforcement of the Arbitration Agreement and Covenant-Not-to-Sue.

The Federal Arbitration Act ("FAA") applies to agreements "involving commerce." 9 U.S.C. § 2. The FAA provides in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The "term 'involving commerce' in the FAA [is] the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). For the FAA to apply, the transaction that the contract evidences need only affect interstate commerce. *Allied-Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 277 (1995).

The contract at issue here clearly "affects commerce." It is an engagement agreement between a law firm, its lawyers, and a client for the purpose of bringing suit against one of the largest hospitals and health care providers in the Southeast. Accordingly, each of the engagement agreements implicated "involved commerce" and the FAA is controlling.

In enacting the FAA, Congress intended to overcome general reluctance to enforce arbitration agreements. *Allied-Bruce Terminix Cos.*, 513 U.S. at 270. The FAA establishes the types of arbitration agreements that are enforceable and provides that "[a] written provision in any contract . . . involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Circuit City Stores*, 532 U.S. at 105 (finding that the use of agreements to resolve matters through mandatory arbitration is well-recognized, valid, and enforceable); *Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (arbitration agreements must be enforced according to their terms). The FAA places arbitration on

equal footing with contracts and establishes a federal policy in favor of arbitration. *See, e.g., Green Tree Financial Corp. v. Randolph*, 531 U.S 79, 90 (2000); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Arbitration will generally be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techns., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Accordingly, any doubts regarding the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. Both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit recognize this concept and have applied a liberal presumption in favor of arbitrability. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991); *Dawson v. Rent-A-Ctr., Inc.*, 490 F. App'x 727, 729 (6th Cir. 2012).

"When faced with a motion to compel arbitration, a district court must follow the procedure set forth in [S]ection 4 of the FAA . . . ." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003). "[I]f a litigant establishes the existence of a valid agreement to arbitrate, the district court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration." *Cronk v. TRG Customer Sols., Inc.*, No. 1:17-cv-00017, 2017 WL 5517259, at *3 (M.D. Tenn. Nov. 17, 2017) (citing *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005)).

**C.      Plaintiff Cummings, as well as Co-Defendant Cummings Manookian, entered into an Enforceable Arbitration Agreement and Covenant-Not-to-Sue with the Defendants.**

The parties' arbitration agreement is valid and enforceable. The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principal that arbitration is a matter of contract. 9 U.S.C. § 4. A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA. *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under Tennessee law, a contract is formed when the parties have a meeting of the minds – an offer, an acceptance, and consideration. *See Doe v. HCA Health Servs. of Tenn., Inc.*, 26 S.W.3d 191, 196 (Tenn. 2001) (setting forth the requirements for contract formation under Tennessee law). Here, an explicit offer and acceptance occurred. Cummings literally drafted and then agreed to all of the terms within the engagement agreement, including the specific terms prohibiting the litigation of any claim in favor of a mediation and then binding arbitration.

There was also valid and ample consideration for both the covenant-not-to-sue and the arbitration agreement. Mr. Keefer was provided with representation by attorneys and the attorneys were provided with the payment in the form of a contingency fee in a significant wrongful death suit. In any event, a mere mutual agreement not to litigate is routinely considered sufficient consideration for purposes of an arbitration agreement. *See, e.g., Wilks v. Pep Boys,* 241 F. Supp. 2d 860, 863 (M.D. Tenn. 2003) (explaining that mutual promises to arbitrate claims constitutes adequate consideration); *Brown v. Heartland Emp't Servs.*, No. 19-11603, 2020 WL 2542009, *3 (E.D. Mich. May 19, 2020) (noting that "[t]he Sixth Circuit has found in numerous cases that mutual promises to arbitrate claims constitute bilateral consideration").

**D. The Covenant-Not-to-Sue and the Arbitration Agreement Apply to the Claims Raised in this Case.**

Plaintiff's claims here fall squarely within the scope of the parties' covenant-not-to-sue and arbitration agreement and are expressly contemplated by the 2017 and 2019 engagement agreements. While Mr. Keefer never accepted it, it is worth noting that the engagement agreement Mr. Cummings asked him to sign in 2020 included a verbatim provision. There is simply no doubt that Mr. Cummings, throughout the entire course of his representation and relationship with the Defendants, agreed that he would never litigate the very claims he has brought in this case: disputes arising out of his representation of Brett Keefer.

The Supreme Court has held: "absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of dispute subject to arbitration." *Equal Employment Opportunity Comm'n v. Waffle House*, 534 U.S. 279, 289 (2002). Moreover, in reviewing the scope of the arbitration agreement, the court must be guided by the principle that arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–50 (1986); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

"In the Sixth Circuit, the test for determining whether a dispute falls within the scope of a broad arbitration clause is if 'an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement – along with the presumption in favor of arbitrability and the intent of the parties.'" *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 758 (E.D. Tenn. 2011) (quoting *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008)).

Here, Mr. Cummings' own Complaint does not and cannot exist without reference to the attorney-client relationship or engagement agreements at issue. Indeed, the covenant-not-to-sue and arbitration provisions expressly informed Mr. Cummings (its drafter) that they cover all claims and controversies arising out of the attorney-client relationship: "potential" or "real." It is hard to imagine more broadly applicable language in a contract between an attorney and client than the following:

"Consequently, neither the client <u>nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship,</u> and the forum for any such dispute must first be a good-faith mediation and then binding arbitration." **Exhibit 1**. at Page 3. Emphasis added.

<u>**Mediation and Binding Arbitration of Any Attorney-Client Disputes**</u>

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

Put simply and alternatively, Mr. Keefer and Mr. Cummings did not have a relationship outside of their attorney-client relationship. Moreover, and notably, the clauses expressly cover any and all claims by "any attorneys" in the attorney-client

relationship "about... or within the attorney-client relationship." This broad, encompassing language applies to Defendants Hagh and Cummings Manookian as well. Accordingly, all of Mr. Cummings' claims fall within the scope of the covenant-not-to-sue and arbitration provisions he drafted and insisted upon.

### E. The Case Should Be Dismissed with Prejudice, or in the Alternative, the Court Should Stay the Action.

Because Mr. Cummings' claims are both barred by his own contract and arbitrable under the FAA, this Court should dismiss all of Plaintiff's claims with prejudice. Although the FAA provides for a stay of court proceedings "until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, courts routinely dismiss cases where all of the claims are subject to arbitration, <u>even in the absence of an express covenant-not-to-sue **as exists here**</u>. *See Arnold v. Arnold Corp. Printed Commc'ns for Bus.*, 920 F.2d 1269, 1275–76 (6th Cir. 1990) (holding that it was not "error for the district court to dismiss the complaint" after ordering arbitration); *Dean v. Draughons Jr. Coll., Inc.*, 917 F. Supp. 2d 751, 764 (M.D. Tenn. 2013); *Allen v. Tenet Healthcare Corp.*, 370 F. Supp. 2d 682 (M.D. Tenn. 2005) (wherein this court dismissed plaintiff's claims with prejudice where all claims were subject to binding arbitration). *See also Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (rejecting argument that the FAA requires district courts to stay suits pending arbitration rather than dismiss them).

The Sixth Circuit Court of Appeals has stated that "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.,* 200 F.3d 967, 973 (6th Cir. 2000); *SL Tennessee LLC v. Ochiai Georgia*, LLC, No. 3:11-cv-340, 2012 WL 381338, at *7–8 (E.D. Tenn. Feb. 6, 2012) ("[W]hen the court determines that all the claims in a cause of

action are to be submitted to arbitration, it may dismiss, rather than stay the action because staying the action will serve no purpose."); *see also Asbell v. Educ. Affiliates*, No. 3:12-cv-00579, 2013 WL 1775078, at *18 (M.D. Tenn. Apr. 25, 2013) (dismissing case).

The necessity for a dismissal with prejudice is further underscored here, where Mr. Cummings – a sophisticated lawyer – drafted and inserted a clause in the very contract he now seeks to litigate which **expressly** states that, "neither the client <u>nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship</u>." Mr. Cummings apparent disregard for the sanctity of his own signed representations aside, he has simply contracted himself out of this courtroom.

## V. CONCLUSION

This Court does not have the lawful authority to adjudicate Plaintiffs' claims because the parties have contractually agreed that "neither the client nor the attorneys in this Attorney Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship" and designated mediation followed by arbitration instead as the exclusive manner of resolution for all disputes between the parties. The clauses expressly and unambiguously apply to all of the claims asserted by Mr. Cummings (which arise exclusively out of his attorney-client relationship) and all of the parties (whose roles and conduct were exclusively within the attorney-client relationship). **Exhibit 1**, at Page 3. Accordingly, the Court should dismiss this matter in its entirety with prejudice.

Date: May 4, 2023

Respectfully submitted,

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Brett Keefer and Afsoon
Hagh for Purposes of Motion to Dismiss*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed May 4, 2023 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

/s/ John Spragens

## CUMMINGS MANOOKIAN

**ATTORNEY-CLIENT AGREEMENT**

April 19, 2017

**EXHIBIT**

**1**
_____

**BRIAN CUMMINGS**
Licensed to practice in
Tennessee, Georgia,
Florida, California, and
Hawaii

**Via E-Mail: chimme_chunga@yahoo.com**
Edward Goodwin
Brett Keefer

**Re: Legal Representation and Engagement**

Dear Edward and Brett:

It is our firm's practice to enter into written engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you. _Please read it carefully._

**BRIAN MANOOKIAN**
Licensed to practice in
Tennessee

Once you have reviewed this letter and are in agreement with its terms, please sign a copy in the space provided below and return it to our office. We reserve the right to not begin work on your case, or to stop existing work, until a signed copy is received. If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

### Client and Scope of Representation

www.cmtriallawyers.com

Our clients will be you as the surviving spouse and surviving child regarding the April 14, 2017 death of Chesta Shoemaker at Vanderbilt University Medical Center.

All work on this matter by Cummings Manookian, our firm, will be done by Brian Cummings or Brian Manookian. Our office phone number is (615) 266-3333. We can be reached on that line during normal business hours.

Should you have any questions or concerns about any person in our firm who is working on this matter, or any work being performed by us on your behalf, please do not hesitate to contact us. We are happy to discuss those items with you at any time.

### Contingency Fee

45 Music Square West
Nashville, TN 37203
T: (615) 266-3333
F: (615) 266-0250

Our fees for work on this case will be on a contingency basis. This means that you only pay us a fee if you receive a settlement, judgment, or

1

award in this matter. If you do not receive a settlement, judgment, or award we do not receive a fee. The contingency fee rate is 33.33%.

## Costs and Expenses

There will likely be costs and expenses involved in pursuing this matter. They may include items such as obtaining records, court filing fees, expert witness fees, court reporter fees, and deposition transcripts, among other things. We will advance those costs and expenses, arranging for them to be paid directly by our firm during the pendency of the matter. You remain ultimately responsible for the costs and expenses. At the conclusion of the matter, the costs and expenses that we advanced will be reimbursed to our firm by those expenses being deducted from the amount you receive after the contingency fee is allocated.

We specifically do not charge you for, or collect at the end of matter, expenses for general office copies, faxes, postage, courier services, long-distance phone calls, or mileage. In the potential and unlikely event that you lose in litigation via the Defendant getting dismissed via a Motion to Dismiss being granted in favor of the Defendant (which is very unlikely), you may also be responsible for the opposing party's attorneys' fees and costs.

## Review and Waiver of Conflicts

We have evaluated potential conflicts of interest with respect to our representation of you. We are not currently aware of any conflicts in connection with this matter.

## Your Responsibilities

We cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with us and to promptly provide all information known or available to you that is relevant to our representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing us of changes in your address and telephone numbers.

## Settlement or Compromise

This is your case. Prior to any settlement, we will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding.

## Termination of Professional Relationship

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you

2

Case 3:23-ap-90036-DoDoc 9-1 12Filed 05/04/23 13/26tered 05/04/23 13:30:42 Page 2 of 496
Exhibit Exhibit1-7 Page 2 of 32

070

terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

## Mediation and Binding Arbitration of Any Attorney-Client Disputes

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

*******************

If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (bcummings@cummingsmanookian.com), fax (615-266-0250), or mail.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me.

Sincerely,

Brian Cummings
CUMMINGS MANOOKIAN PLC

3

I have read and consent to the terms in this letter.

_____  4-19-17
Edward Goodwin                    DATE

_____  4-19-17
Brett Keefer                      DATE

4



**EXHIBIT**

**2**

Correspondence from:
**Brian Manookian, Esq.**
brian@tntriallawyers.com

**BRIAN MANOOKIAN**
Licensed to practice in TN

August 23, 2019

**Via E-Mail:**
Brett Keefer

### Re:   Updated Legal Representation and Engagement

Dear Brett:

As you know, Brian Cummings and I no longer practice as partners in the same firm. As a result, Cummings Manookian, the law firm, no longer exists. I am providing you this updated Attorney-Client Agreement to simply memorialize that you are now represented by Manookian PLLC. The terms are otherwise identical to the prior agreement you signed.

It is our firm's practice to enter into written engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you. Please read it carefully.

Once you have reviewed this letter and are in agreement with its terms, please sign a copy in the space provided below and return it to our office. We reserve the right to not begin work on your case, or to stop existing work, until a signed copy is received. If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

### Client and Scope of Representation

Our clients will be you as the surviving spouse and surviving child regarding the April 14, 2017 death of Chesta Shoemaker at Vanderbilt University Medical Center.

All work on this matter by Manookian PLLC or Hagh Law, our firms, will be done by Brian Manookian or Afsoon Hagh. Manookian PLLC's office phone number is (615) 266-3333. I can be reached on that line during normal business hours.

Should you have any questions or concerns about any person in our firm who is working on this matter, or any work being performed by us on your

45 Music Square West
Nashville, TN 37203
T  615.266.3333
F  615.266.0250

www.tntriallawyers.com

behalf, please do not hesitate to contact us. We are happy to discuss those items with you at any time.

## Contingency Fee

Our fees for work on this case will be on a contingency basis. This means that you only pay us a fee if you receive a settlement, judgment, or award in this matter. If you do not receive a settlement, judgment, or award we do not receive a fee. The contingency fee rate is 33.33%. We may split some portion of that fee with Brian Cummings of Cummings Law as permitted by the Tennessee Rules of Professional Conduct. Any portion of the fee paid to Brian Cummings will come from our 33.33% and will cost you nothing additional.

## Costs and Expenses

There will likely be costs and expenses involved in pursuing this matter. They may include items such as obtaining records, court filing fees, expert witness fees, court reporter fees, and deposition transcripts, among other things. We will advance those costs and expenses, arranging for them to be paid directly by our firm during the pendency of the matter. You remain ultimately responsible for the costs and expenses. At the conclusion of the matter, the costs and expenses that we advanced will be reimbursed to our firm by those expenses being deducted from the amount you receive after the contingency fee is allocated.

We specifically do <u>not</u> charge you for, or collect at the end of matter, expenses for general office copies, faxes, postage, courier services, long-distance phone calls, or mileage. In the potential and unlikely event that you lose in litigation via the Defendant getting dismissed via a Motion to Dismiss being granted in favor of the Defendant (which is very unlikely), you may also be responsible for the opposing party's attorneys' fees and costs.

## Review and Waiver of Conflicts

We have evaluated potential conflicts of interest with respect to our representation of you. We are not currently aware of any conflicts in connection with this matter.

## Your Responsibilities

We cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with us and to promptly provide all information known or available to you that is relevant to our representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing us of changes in your address and telephone numbers.

2

## Settlement or Compromise

<u>This is your case</u>. Prior to any settlement, we will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding.

## Termination of Professional Relationship

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

## Mediation and Binding Arbitration of Any Attorney-Client Disputes

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

<p align="center">*****************</p>

If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (brian@tntriallawyers.com), fax (615-266-0250), or mail.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me.

<p align="center">3</p>

Sincerely,

Brian Manookian

9-16-2019

Brett Keefer

4


# Re: Shoemaker - Brian Cummings / Cummings Law

1 me age

**Brett keefer** <brett.keefer@yahoo.com>
To: Brian Cummings <brian@cummingsinjurylaw.com>



Fri, Jan 3, 2020 at 11:42 AM

I agree

Sent from Yahoo Mail for iPhone

On Friday, January 3, 2020, 12:35 PM, Brian Cummings <brian@cummingsinjurylaw.com> wrote:

Brett   Thank you for providing me this morning with the attached Attorney Client Agreement you signed with Manookian PLLC in the second half of 2019. Today was the first time I saw a copy of that document.

I need to confirm with you that you have always agreed to and authorized me to work as a lawyer on this case, and that you continue to do so. I also need to confirm with you that any litigation expenses I have or that I will advance on your behalf will be reimbursed. This 2019 agreement does not speak to those two particular issues, and even if we both expected those to things to be part of the past and ongoing work done by me on this case, I need to ask that you email me back something like "I agree."

This request for a responsive email is only to supplement the previous Attorney Client Agreements you signed in this case, and this affirmation is not meant to delete any aspect of any other such documents you signed. Also, nothing about this email exchange today increases or changes the total contingency fee rate of 33.33% that is in the prior documents.

Brian

--
Brian Cummings
Cumming  Law
4235 Hillsboro Pike #300
Nashville, TN 37215
T: 615-800-6822
F  615 815 1876
www.cummingsinjurylaw.com

# CUMMINGS LAW

www.cummingsinjurylaw.com

**Brian Cummings**
Licensed to practice in TN, GA,
FL, CA & HI

brian@cummingsinjurylaw.com

4235 Hillsboro Pike #300
Nashville, TN 37215

Phone: (615) 800-6822
Fax: (615) 815-1876

<div style="border:2px solid black">

**EXHIBIT**

**4**

</div>

September 24, 2020

<u>**Via Email: brett.keefer@yahoo.com**</u>
Brett Keefer

Re:  <u>**Chesta Shoemaker – medical malpractice / wrongful death matter**</u>

Dear Brett:

It is my firm's practice to enter into written engagement letters with my clients.  This letter serves the purpose of setting forth the basis on which I will continue to represent you.  <u>Please read it carefully</u>.

<u>This letter is a follow up on the following enclosed documents – (1) your original Attorney-Client Agreement with Cummings Manookian while I was there, (2) your additional Agreement with Afsoon Hagh and Brian Manookian following my departure from Cummings Manookian and the end of that firm and the beginning of their firms, and (3) our more recent email exchange documenting you have continued to want me to represent you in this matter.</u>

Once you have reviewed this letter and agree with its terms, <u>please sign and date a copy in the space provided below and return it to me</u>.  <u>Nothing in this agreement increases the total attorney's fee that has already been agreed to via the contingency fee agreement of 33.33%</u>.  If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

## Client and Scope of Representation

My client will continue to be you regarding the medical malpractice related to your mother's April 14, 2017 death at Vanderbilt.

## Contingency Fee

The attorneys' fees for work on this case will be on a "contingency" basis.  This means that I only receive a fee if you receive a settlement, judgment, or award in this matter.  If you do not

078

Case 3:23-cv-00961 Document 1-12 Filed 05/04/23 Entered 05/04/23 21:36:30 Page 10 of 32  Page ID Page 504
Exhibit Exhibit1-7    Page 10 of 32

receive a settlement, judgment, or award, I do not receive a fee. The contingency fee rate is 33.33%, with that fee being split between the attorneys who have worked and are working on this matter – including as permitted by Tennessee law and the Tennessee's Rules of Professional Conduct applicable to attorneys. <u>Again, nothing in this agreement increases the total attorney's fee that has already been agreed to via the contingency fee agreement of 33.33%.</u>

## Costs and Expenses

There will likely be ongoing, additional costs and expenses involved in this matter. They may include items such as fees for obtaining records, court filing fees, expert fees, expert witness fees, court reporter fees, and fees for copies of deposition transcripts, among other things. To the extent my firm advances those costs and expenses, they will be paid directly by my firm during the pendency of the matter. You remain ultimately responsible for the costs and expenses, including regardless of the case outcome. At the conclusion of the matter, the costs and expenses that have been advanced by me and that will be advanced by me will be reimbursed to my firm.

## Review and Waiver of Conflicts

I previously evaluated potential conflicts of interest with respect to my representation of you. I continue to not be aware of any conflicts in connection with this matter.

## Your Responsibilities

I cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with me and to promptly provide all information known or available to you that is relevant to this representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing me of changes in your address and telephone numbers. You agree to provide me with an email address I can use to email you regarding this matter, including to send you electronic copies of documents.

## Settlement or Compromise

<u>This is your case</u>. Prior to any potential settlement, I will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding.

## Termination of Professional Relationship

You have the right to change attorneys to another attorney or firm at any time by sending me a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you terminate the representation before the conclusion of the matter, I will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work performed, based upon

the amount of time required, the complexity of the matter, the time frame within which the work was performed, my experience, ability, reputation, the responsibility involved, and the results obtained.

I may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you.

## Online Reviews of Law Firm

As part of this Agreement, you agree that if you leave any kind of review for my law firm online, including a Google review, that it will be 5/5 stars and have only positive comments. If you do not believe you can leave such a review, then you simply agree to not leave any type of review. This provision is included to avoid having to deal with the hypothetical possibility that a client's potential emotional response to any aspect of this matter would otherwise lead the client to leave an unjustified negative review, or to threaten such a thing, including if a medical expert is unable to provide an opinion in support of this matter.

## Mediation and Binding Arbitration of Any Attorney-Client Disputes

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential dispute or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do I) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorney in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

*****************

If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (brian@cummingsinjurylaw.com), fax (615-815-1876), or traditional U.S. Mail. I appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me at any time.

Sincerely,

Brian Cummings

3

Case 3:23-ap-90036 Doc 9-1 12 Filed 05/04/23 13/26 Entered 05/04/23 13:30:42 Desc Page ID #:506
Exhibit Exhibit1-7   Page 12 of 32

080

I have read and consent to the terms in this letter.

_____        _____
BRETT KEEFER                                        DATE

## CUMMINGS MANOOKIAN

**ATTORNEY-CLIENT AGREEMENT**

BRIAN CUMMINGS
Licensed to practice in
Tennessee, Georgia,
Florida, California, and
Hawaii

BRIAN MANOOKIAN
Licensed to practice in
Tennessee

April 19, 2017

**Via E-Mail: chimme_chunga@yahoo.com**
Edward Goodwin
Brett Keefer

**Re:    Legal Representation and Engagement**

Dear Edward and Brett:

It is our firm's practice to enter into written engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you. Please read it carefully.

Once you have reviewed this letter and are in agreement with its terms, please sign a copy in the space provided below and return it to our office. We reserve the right to not begin work on your case, or to stop existing work, until a signed copy is received. If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

### Client and Scope of Representation

Our clients will be you as the surviving spouse and surviving child regarding the April 14, 2017 death of Chesta Shoemaker at Vanderbilt University Medical Center.

All work on this matter by Cummings Manookian, our firm, will be done by Brian Cummings or Brian Manookian. Our office phone number is (615) 266-3333. We can be reached on that line during normal business hours.

Should you have any questions or concerns about any person in our firm who is working on this matter, or any work being performed by us on your behalf, please do not hesitate to contact us. We are happy to discuss those items with you at any time.

### Contingency Fee

Our fees for work on this case will be on a contingency basis. This means that you only pay us a fee if you receive a settlement, judgment, or

www.cmtriallawyers.com

45 Music Square West
Nashville, TN 37203
T: (615) 266-3333
F: (615) 266-0250

1

award in this matter. If you do not receive a settlement, judgment, or award we do not receive a fee. The contingency fee rate is 33.33%.

## Costs and Expenses

There will likely be costs and expenses involved in pursuing this matter. They may include items such as obtaining records, court filing fees, expert witness fees, court reporter fees, and deposition transcripts, among other things. We will advance those costs and expenses, arranging for them to be paid directly by our firm during the pendency of the matter. You remain ultimately responsible for the costs and expenses. At the conclusion of the matter, the costs and expenses that we advanced will be reimbursed to our firm by those expenses being deducted from the amount you receive after the contingency fee is allocated.

We specifically do not charge you for, or collect at the end of matter, expenses for general office copies, faxes, postage, courier services, long-distance phone calls, or mileage. In the potential and unlikely event that you lose in litigation via the Defendant getting dismissed via a Motion to Dismiss being granted in favor of the Defendant (which is very unlikely), you may also be responsible for the opposing party's attorneys' fees and costs.

## Review and Waiver of Conflicts

We have evaluated potential conflicts of interest with respect to our representation of you. We are not currently aware of any conflicts in connection with this matter.

## Your Responsibilities

We cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with us and to promptly provide all information known or available to you that is relevant to our representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing us of changes in your address and telephone numbers.

## Settlement or Compromise

This is your case. Prior to any settlement, we will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding.

## Termination of Professional Relationship

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you

2

083

terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

## Mediation and Binding Arbitration of Any Attorney-Client Disputes

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

******************

If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (bcummings@cummingsmanookian.com), fax (615-266-0250), or mail.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me.

Sincerely,

Brian Cummings
CUMMINGS MANOOKIAN PLC

3

I have read and consent to the terms in this letter.

_____  4-19-17
Edward Goodwin                    DATE

_____  4-19-17
Brett Keefer                      DATE

4



MANOOKIAN PLLC

Correspondence from:
**Brian Manookian, Esq.**
brian@tntriallawyers.com

BRIAN MANOOKIAN
Licensed to practice in TN

August 23, 2019

**Via E-Mail:**
Brett Keefer

Re:    **Updated Legal Representation and Engagement**

Dear Brett:

As you know, Brian Cummings and I no longer practice as partners in the same firm. As a result, Cummings Manookian, the law firm, no longer exists. I am providing you this updated Attorney-Client Agreement to simply memorialize that you are now represented by Manookian PLLC. The terms are otherwise identical to the prior agreement you signed.

It is our firm's practice to enter into written engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you. Please read it carefully.

Once you have reviewed this letter and are in agreement with its terms, please sign a copy in the space provided below and return it to our office. We reserve the right to not begin work on your case, or to stop existing work, until a signed copy is received. If you have any questions about any of the provisions in this letter, or if you would like to discuss possible modifications, please do not hesitate to call me.

**Client and Scope of Representation**

Our clients will be you as the surviving spouse and surviving child regarding the April 14, 2017 death of Chesta Shoemaker at Vanderbilt University Medical Center.

All work on this matter by Manookian PLLC or Hagh Law, our firms, will be done by Brian Manookian or Afsoon Hagh. Manookian PLLC's office phone number is (615) 266-3333. I can be reached on that line during normal business hours.

Should you have any questions or concerns about any person in our firm who is working on this matter, or any work being performed by us on your

45 Music Square West
Nashville, TN 37203
T  615.266.3333
F  615.266.0250

www.tntriallawyers.com

behalf, please do not hesitate to contact us. We are happy to discuss those items with you at any time.

## Contingency Fee

Our fees for work on this case will be on a contingency basis. This means that you only pay us a fee if you receive a settlement, judgment, or award in this matter. If you do not receive a settlement, judgment, or award we do not receive a fee. The contingency fee rate is 33.33%. We may split some portion of that fee with Brian Cummings of Cummings Law as permitted by the Tennessee Rules of Professional Conduct. Any portion of the fee paid to Brian Cummings will come from our 33.33% and will cost you nothing additional.

## Costs and Expenses

There will likely be costs and expenses involved in pursuing this matter. They may include items such as obtaining records, court filing fees, expert witness fees, court reporter fees, and deposition transcripts, among other things. We will advance those costs and expenses, arranging for them to be paid directly by our firm during the pendency of the matter. You remain ultimately responsible for the costs and expenses. At the conclusion of the matter, the costs and expenses that we advanced will be reimbursed to our firm by those expenses being deducted from the amount you receive after the contingency fee is allocated.

We specifically do not charge you for, or collect at the end of matter, expenses for general office copies, faxes, postage, courier services, long-distance phone calls, or mileage. In the potential and unlikely event that you lose in litigation via the Defendant getting dismissed via a Motion to Dismiss being granted in favor of the Defendant (which is very unlikely), you may also be responsible for the opposing party's attorneys' fees and costs.

## Review and Waiver of Conflicts

We have evaluated potential conflicts of interest with respect to our representation of you. We are not currently aware of any conflicts in connection with this matter.

## Your Responsibilities

We cannot effectively represent you without your cooperation and assistance. You agree to cooperate fully with us and to promptly provide all information known or available to you that is relevant to our representation. Your obligations include timely providing requested information and documents, assisting in discovery, disclosure and trial preparation, cooperating in scheduling and related matters, responding timely to telephone calls and correspondence, and informing us of changes in your address and telephone numbers.

2

**Settlement or Compromise**

_This is your case._ Prior to any settlement, we will first obtain your approval. Once resolved on your behalf and in accordance with your instructions, the settlement will be binding.

**Termination of Professional Relationship**

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

**Mediation and Binding Arbitration of Any Attorney-Client Disputes**

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

<p align="center">*****************</p>

If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (brian@tntriallawyers.com), fax (615-266-0250), or mail.

On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me.

<p align="center">3</p>

Sincerely,

Brian Manookian

Brett Keefer    9-16-2019

4

089


## Re: Shoemaker - Brian Cummings / Cummings Law
1 message

**Brett keefer** <brett.keefer@yahoo.com>                          Fri, Jan 3, 2020 at 11:42 AM
To: Brian Cummings <brian@cummingsinjurylaw.com>

I agree

Sent from Yahoo Mail for iPhone

On Friday, January 3, 2020, 12:35 PM, Brian Cummings <brian@cummingsinjurylaw.com> wrote:

Brett - Thank you for providing me this morning with the attached Attorney-Client Agreement you signed with Manookian PLLC in the second half of 2019. Today was the first time I saw a copy of that document.

I need to confirm with you that you have always agreed to and authorized me to work as a lawyer on this case, and that you continue to do so. I also need to confirm with you that any litigation expenses I have or that I will advance on your behalf will be reimbursed. This 2019 agreement does not speak to those two particular issues, and even if we both expected those to things to be part of the past and ongoing work done by me on this case, I need to ask that you email me back something like "I agree."

This request for a responsive email is only to supplement the previous Attorney-Client Agreements you signed in this case, and this affirmation is not meant to delete any aspect of any other such documents you signed. Also, nothing about this email exchange today increases or changes the total contingency fee rate of 33.33% that is in the prior documents.

Brian

--
Brian Cummings
Cummings Law
4235 Hillsboro Pike #300
Nashville, TN 37215
T: 615-800-6822
F: 615-815-1876
www.cummingsinjurylaw.com

Case 3:23-cv-00036 Document 112 Filed 05/04/23 Entered 05/04/23 18:30:42 Page ID #: 5516
Exhibit Exhibit1-7    Page 22 of 32

090

# CUMMINGS LAW

**Brian Cummings**
Licensed to practice in TN, GA,
FL, CA & HI

brian@cummingsinjurylaw.com

www.cummingsinjurylaw.com

4235 Hillsboro Pike #300
Nashville, TN 37215

Phone: (615) 800-6822
Fax: (615) 815-1876

October 2, 2020

**EXHIBIT**

**5**

**Via Email**
Brett Keefer
Afsoon Hagh

**Re:**     **Shoemaker matter – Brian Cummings' withdrawal as counsel**

Dear Brett and Afsoon:

First, let me say that it has been a pleasure to represent Brett since April 2017 when Brian Manookian and I practiced law together at Cummings Manookian. With that said, I am writing to communicate that, effective today, I am withdrawing as co-counsel in this matter.

After conversations last week with Afsoon and then yesterday with Brett, I believe I am ethically required to withdraw as counsel. Based on your very recent comments, my relationships with each of you have become strained, and your comments indicate there is personal conflict in these relationships. The deterioration of these relationships is unfortunate, but it happens. Professionally, however, my belief is that the situation requires me to withdraw as counsel because those strains may prevent us going forward from working as well and effectively together for the client and for the case as is at all times required.

I heard from Afsoon last week that she believed I was acting "shady" and "only looking out for Brian Cummings." I heard from Brett yesterday that he would not sign an Attorney-Client Agreement with my current firm (I do appreciate Brett stating yesterday that he believed I was "covered" under a previous agreement and that he was told this), that he was told not to sign the Agreement, that he was concerned I was trying to increase the total contingency fee above the 33.33% fee rate previously agreed to (which would be deceitful, and despite me previously stating orally and underlining in the Agreement that no such increase would occur), and telling me he felt I have become frustrated with him. Based on these very recent comments, these relationships lack the amount of complete trust and the absence of conflict that is required in my co-counsel relationships and in my Attorney-Client relationships.

I wanted to send this in writing soon after my conversation with Brett yesterday. It will be next week before I will file notice with the Court regarding my withdrawal. Because this withdrawal is effective immediately, please understand that our communications going forward will not be covered by the Attorney-Client Privilege, but nonetheless, I ask that any such communication be in writing.

Enclosed is a list of our experts' email addresses. I am providing this so Afsoon can move forward with communicating with our experts regarding confirming and scheduling their depositions, and as follow up on the recent emails I copied her on about the scheduling of their

depositions. I am willing to let the experts know that I am no longer involved in this case and that Afsoon is their contact going forward, including for payment of their future invoices, but I understand if Afsoon wants to handle those communications herself. I simply ask that nothing disparaging be said about me to the experts, including because at least one of our experts in this case is also working with me on another matter.

Logistically, I will be glad to email Afsoon any part of the file that she does not currently have, as I have always been. With that said, I leave today on a family vacation and will be doing much less work than normal during that time, but I will respond to any such request in a reasonable amount of time.

Lastly, let me wish both of you the best in this case and in all things. What occurred at Vanderbilt was awful and easily preventable, and a terrific case exists for a great outcome for Brett after all that was taken from him and his brothers, and for which dollars are the only civil remedy.

Sincerely,

Brian Cummings

Enclosure

## Email addresses for Shoemaker experts

| | |
|---|---|
| Dr. Jeffrey Springer | jrsfpdoc@gmail.com |
| Dr. Ruxana Sadikot | ruxana.sadikot@emory.edu |
| Dr. James Calland | james.forrest.calland@gmail.com |
| Dr. Don Reiff | dreiff@uabmc.edu |
| Dr. Leon Sykes | trasurg@aol.com |
| Dr. Jeffrey Jim | jjmdms@gmail.com |
| Dr. Alfred Pirro | alpirro1@gmail.com |
| Dr. Fred Callahan | stealthasc@earthlink.net |
| Dr. Gretchen Green | DrGreen@gretchengreenmd.com |
| Charles Baum, Ph.D. | cbaum@baumeconomics.com |

LAW OFFICES
**PRICE, HILL & KOLARICH**
AN ASSOCIATION
SUITE 1800
201 4th AVENUE NORTH
NASHVILLE, TENNESSEE 37219

JAMES W. PRICE, JR.*
WM. TIMOTHY HILL

* ALSO ADMITTED IN FLORIDA

ROBERT E. KOLARICH**

** ALSO ADMITTED IN MISSOURI AND MISSISSIPPI

TELEPHONE 615-244-5772
TELECOPIER 615-244-5821

February 1, 2022

> EXHIBIT
> 6

**EMAIL:** afsoon@haghlaw.com
**FAX:** 615-266-3655
**U.S. MAIL:**
Afsoon Hagh
Hagh Law PLC
1906 Glen Echo Road, #150229
Nashville, TN 37215

Re:  *Keefer v. VUMC* (Fee Dispute Mediation)

Dear Afsoon:

I emailed you at afsoon@haghlaw.com on the 24th day of January, 2022, requesting that you inform me as to whether or not your client, Mr. Keefer, wishes to proceed with the binding arbitration as provided for in the Attorney-Client Agreement. It appears that the email at this address was rejected so I am re-sending my letter by U.S. Mail, fax, and email.

I am sure you agree that it is to everyone's benefit that this matter be resolved as quickly as possible. It would appear that the binding arbitration as provided for in the Attorney-Client Agreement is the most simple and quick way to resolve this issue and my client is prepared to proceed with that immediately. If you and your client agree with that, please let me know and I will be happy to provide a list of proposed arbitrators.

Even though Mr. Cummings is prepared to proceed to arbitration, we do not feel that it is proper for him to demand that Mr. Keefer submit to arbitration. As unpleasant and lengthy as litigation may be, however, my client is prepared to go forward in that venue if Mr. Keefer does not wish to arbitrate.

In light of all of that, please contact me as soon as possible and no later than ten days from receipt of this letter as to whether or not you represent Mr. Keefer and whether or not he wishes to proceed with binding arbitration. If I do not hear from you by this time, I will assume that you represent Mr. Keefer and he does not wish to submit to binding arbitration. In that case, I will have no alternative but to file suit in the Circuit Court to enforce the lien.

Case 3:23-ap-90036 Doc 1-12 Filed 05/04/23 Entered 05/04/23 13:30:42 Desc Exhibit Exhibit 1-7   Page 26 of 32
Case 3:23-cv-00990 Document 1-2 Filed 05/04/23 Page 94 of 216 PageID #: 520
094

Ms. Afsoon Hagh
Page 2
February 1, 2022

I urge your immediate response to this.

Very truly yours,

James W. Price, Jr.

JWP/vg

Enclosure

cc:     Brian Cummings



February 11, 2022

EXHIBIT

7

**AFSOON HAGH**
Licensed to practice in TN

**VIA ELECTRONIC MAIL**
James Price
201 4th Avenue North
Nashville, TN 37219

      *Re:    Keefer v. VUMC*

Mr. Price,

      I am in receipt of your letter dated February 1, 2022. That letter demands "an immediate response" as to whether Bretton Keefer wishes to arbitrate or litigate some unarticulated "dispute" with your client, Brian Cummings. As briefly explained below, your letter is deficient as to defy response.[1]

      Brian Cummings previously served as counsel in *Keefer v. VUMC*. He quit early in the matter after the client would not agree to settle the case for a fraction of its value, and because Mr. Cummings did not want to further contribute to the prosecution of the case.

      In such an event, the engagement agreement that your client drafted and signed is crystal clear that Mr. Cummings would only be entitled to reimbursement of his advanced costs and expenses.

      Your client has already been reimbursed his advanced costs and expenses. Although your letter references a "fee dispute," it fails to describe any such dispute. It then immediately proceeds to demand that Bretton Keefer choose arbitration or litigation as the means of adjudicating the "dispute" that is never identified.

      Your letter is problematic because (1) your client objectively has no claims against Bretton Keefer, and (2) your client appears to be deliberately declining to reveal whatever claims he intends to bring *until after Mr. Keefer commits to a forum.*

      Simply stated, Mr. Keefer is not in a position to respond to threats to sue him when you decline to identify the grounds for doing so. To the extent your client incorrectly believes he is entitled to some portion of the

---

[1] This may be a result of your failing to include some enclosure that is noted in your letter but was not attached to your correspondence. If your letter contained a draft complaint or position statement, please send it to me.

recovery in the case of his deceased mother's estate against VUMC, I can respond generally; and I am happy to do so here.

## I. Brian Cummings is not entitled to any fee in the *Shoemaker* matter under any theory of recovery.

Brian Cummings is not entitled to any fee in the *Shoemaker* matter, either on a contractual basis or under any equitable theory. Brian Cummings quit, early in the case, when it became apparent that he could not pressure the client to settle it for pennies on the dollar. Mr. Cummings withdrawal occurred immediately prior to the commencement of expensive expert discovery for which Mr. Cummings did not want to contribute financially.

The engagement agreement with the client only permits repayment of expenses where the attorney quits or withdraws. Under the terms of that agreement, Brian Cummings is entitled to repayment of advanced expenses (which he has already received), and nothing more.

Likewise, any equitable claim to attorney's fees by Mr. Cummings fails because there was an existing contract. This alone precludes any recovery on a *quantum meruit* theory. Even if there had not been a legally binding contract, Mr. Cummings would not be entitled to any portion of the ultimate recovery because Brian Cummings' "work" on the case was (a) *de minimis* and (b) legally deficient to the point of inarguable, objective malpractice.

## II. Brian Cummings withdrew from the *Shoemaker* case, contractually precluding any claim to an attorney's fee.

The attorneys in this case had an engagement agreement with the client. The engagement agreement provides that if the client fires the attorney, the attorney will be entitled to his advanced expenses plus a reasonable attorney's fee.

The engagement agreement goes on to provide that if the attorney withdraws, as opposed to being fired, the attorney is only entitled to receive back his advanced expenses.

This was a deliberate provision, drafted by Mr. Cummings, not the client; and will be construed against Mr. Cummings. The purpose of the provision was to allow the attorneys to promptly withdraw in cases where they chose to do so, without saddling the case with an attorney's lien that could make it difficult for the client to retain new counsel.

Thus, there is an express distinction – memorialized in writing by your client – as to the consequences when an attorney is fired as opposed to when an attorney voluntarily quits. If the attorney is removed from the case without his permission, he receives his advanced expenses and "**additionally**" a reasonable portion of the attorney's fee. Conversely, where the attorney chooses to quit, the attorney only receives reimbursement of advanced expenses, with no additional attorney's fee.

I am not going to belabor this point because it is self-evident from the contract Mr. Cummings drafted. If you have any doubt, review the provision that states that in the event of

2

097

termination (as opposed to quitting as Mr. Cummings did), that the attorney is "**ADDITIONALLY**" entitled to a portion of the fee. No such additional allowance is made where the attorney voluntarily withdraws.

### III. Brian Cummings abandoned the client and co-counsel in his withdrawal.

Brian Cummings' withdrawal from the case was done in a highly unprofessional manner that constituted abandonment of the client. Mr. Cummings had very few responsibilities in the case, and even less that he had actually followed through with as of late September 2020. One of those responsibilities, however, was to handle expert discovery; both defending the depositions of Plaintiff's experts and conducting the depositions of Defendant's experts.

By September 30, 2020, all expert depositions had been scheduled around Mr. Cummings schedule. On that day Mr. Cummings emailed opposing counsel a final list of the deposition dates and times, confirming that he would be attending each.

Less than 72 hours later, Mr. Cummings abruptly – and out of nowhere – announced by letter that he was withdrawing from the case "effective immediately." This had never been mentioned or discussed; much less planned for such that a smooth transition could occur. At that moment over a dozen depositions of expensive, by-the-hour, experts were scheduled to go forward based upon Mr. Cummings' schedule and little could be done to rearrange those deposition given pending scheduling order deadlines.

In over a decade of practice as a plaintiff's lawyer, I have seen numerous attorneys withdraw or substitute from cases. I have never seen – or even heard of – an attorney announcing that they quit "effective immediately," without so much as consulting with co-counsel and to the clear detriment of the client.

Mr. Cummings' action in this regard were, at least, characteristic of his approach to this case from the outset. His first priority has always been himself and his own financial considerations; not what is best for the client.

### IV. Brian Cummings quit the case because he did not want to spend money on it and because the client would not settle the matter for a fraction of its final resolution; a resolution which Brian Cummings did not participate in funding or securing.

In fact, and as I later learned, Mr. Cummings had been surreptitiously attempting to have the client sign a new engagement agreement solely with Mr. Cummings' firm that provided more favorable financial terms to Mr. Cummings to the exclusion of the other lawyers who were actually working on the case.

When the client declined to renegotiate the terms of the agreement – and because the client consistently refused to settle the case for a fraction of what was ultimately recovered – Mr. Cummings quit.

## V.     Brian Cummings did no competent, substantive work on the case.

In any event, Brian Cummings did no competent, substantive work on the case.   He essentially had two major tasks; both of which he screwed up, literally, beyond repair, and both of which later resulted in the Court ordering the Plaintiff to correct or redo.

Brian Cummings was charged with drafting the Complaint in the case.   He drafted a meandering, unnecessarily long, and unfocused pleading that, despite its length, failed to include many of the most basic and fundamental causes of action.   Ultimately, the Court found the Complaint so deficient that it continued the trial and ordered the Plaintiff to submit an Amended Complaint.   Mr. Cummings' original Complaint was so bad as to be unsalvageable.   Plaintiff's counsel had to spend close to a month redrafting an entirely new Complaint.

Brian Cummings was also charged with drafting the expert disclosure.   They were equally terrible.   The Court found them to lack basic elements of the experts' opinions and required Plaintiff to redo them.

In sum, even where Brian Cummings actually did work, it was so deficient as to require that it be recompleted.   His "contributions" were thus not contributions, but rather a distraction that did nothing to add to the bottom line.

Other than those two items, Brian Cummings primary involvement in the case consisted of tagging along to depositions taken by Brian Manookian and antagonizing the client regarding settlement offers that Mr. Cummings wanted the client to accept.

## VI.    Brian Cummings' primary impact on the case was to commit significant malpractice, which he then fraudulently concealed.

As stated above, Mr. Cummings was tasked with drafting the Complaint and conducting expert discovery.   In Tennessee, prior to filing a medical malpractice case, a Plaintiff must first secure an opinion from a qualified expert that there is a good faith basis for believing that malpractice was committed.   A qualified expert is a physician in the same field or specialty that practiced in Tennessee or a contiguous state in the year immediately preceding the alleged act of malpractice.

Thus, Brian Cummings needed to secure an opinion from a doctor licensed in Tennessee or a bordering state that there was a good faith reason to believe Vanderbilt had committed malpractice in its treatment of Chesta Shoemaker.

Unbeknownst to the other attorneys, Mr. Cummings secured the pre-suit opinion from a physician, Dr. Sadikot, who was only licensed to practice in Florida.   Inexplicably, Mr. Cummings then disclosed Dr. Sadikot as Plaintiff's foremost opinion expert in the case.   Dr. Sadikot was, and is, statutorily incompetent to serve in either role.

Opposing counsel, Bradley Dowd, uncovered in Dr. Sadikot's deposition that she was never licensed in Tennessee or a surrounding state.   Defendant immediately moved to disqualify

4

Case 3:23-cv-00036   Document 1-12   Filed 05/04/23   Entered 05/04/23 16:30:42   Page ID #: 525
Exhibit Exhibit1-7    Page 31 of 32

099

her, and Plaintiff was required to withdraw her as a testifying witness.

Plaintiff only recently discovered that Dr. Sadikot was also his pre-suit "expert" when Mr. Cummings submitted his expenses for reimbursement. But Dr. Sadikot could not serve in that role. Nevertheless, Brian Cummings executed an affidavit with the filing of the Complaint that he had received a pre-suit opinion from a qualified expert, when he had not. The ramifications of this fraud are beyond the scope of this letter, but could expose Mr. Keefer to suit by VUMC for fraud in the inducement.[2]

## VII.    Brian Cummings has substantial liability to Brett Keefer.

Mr. Cummings committed objective, black letter legal malpractice by disclosing a statutorily incompetent expert. He committed a fraud upon the Court and the client by executing an affidavit claiming that he had consulted with a qualified physician prior to bringing the case.

If VUMC were to learn of this, it is possible they could seek repayment of the settlement agreement on the basis of fraud in the inducement. By now the statute of limitations and repose have run on refiling any claims belonging to the Plaintiff. Mr. Keefer is put in a highly precarious situation by Mr. Cummings' malpractice and deceit.

## VIII.   Conclusion

I am not in a position to respond to your letter demanding that my client commit to a forum for resolving some "dispute" that Mr. Cummings simultaneously and deliberately declines to identify. And while I cannot remotely imagine what Mr. Cummings thinks he is owed here, I can assure you that if he files suit, it will be met with significant counterclaims, and, ultimately a malicious prosecution action against him and any attorney and law firm unwise enough to take his case.

Finally, to the extent your prior letter included an enclosure that actually outlines whatever it is your client is asking proceed to arbitration or litigation, please send it to me so that I can evaluate it and discuss it with Mr. Keefer. It is entirely plausible that my role as lead counsel in the *Shoemaker* matter would make me a witness in any future controversy. If that is the case, I have recommended that Mr. Keefer retain both the Gideon firm and Neal and Harwell to defend any meritless claims by Mr. Cummings as well as prosecute malpractice, fraud, breach of contract, and malicious prosecution actions against him.

Sincerely,

Afsoon Hagh

---

[2] Unbelievably, Mr. Cummings still insisted on being reimbursed for his expenses in retaining Dr. Sadikot; which the client has now paid him.

5

Case 3:23-cv-00036   Document 112   Filed 05/04/23   Entered 05/04/23 18:30:42   Page of 52  Desc
Exhibit Exhibit1-7    Page 32 of 32

100

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| BRIAN CUMMINGS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:23-ap-90036** |
| | ) | |
| BRETTON KEEFER; JEANNE | ) | |
| BURTON, TRUSTEE; and AFSOON | ) | |
| HAGH, | ) | |
| Defendants. | ) | |

## RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Continuing their pattern of delays and attempts to avoid any substantive ruling on Plaintiff Brian Cummings' claims, Defendants Afsoon Hagh and Bretton Keefer have asked this Court to dismiss Plaintiff's claims and issue an order compelling arbitration. This Court should deny Defendants' Motion for three reasons: First, this Court has exclusive jurisdiction over the matters at issue, as both the Trustee and the Plaintiff have filed claims for a portion of the attorney's fees generated by the lawsuit in which Defendant Keefer was plaintiff, and these intertwined claims should be determined in the same action. Second, there is no arbitration agreement between Defendant Hagh and Plaintiff, and it would be improper to force Plaintiff to arbitrate his claim against her. Finally, the Defendants waived arbitration when they insisted that Plaintiff file this litigation and then delayed seeking arbitration of the claims for more than one year.

## Statement of Facts and Procedural History

As the Defendants note in their Motion to Dismiss, there are two types of Rule 12(b)(1) motions: facial attacks and factual attacks. In a factual attack, the court considers evidence beyond

the pleadings to resolve jurisdictional facts. *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). However, bringing a "factual attack" does not give Defendants leave to attack the merits of Plaintiff's claims by asserting competing unsupported "facts" in the guise of background information. The Sixth Circuit has made clear that a court "engages in a factual inquiry regarding the complaint's allegations only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." *Id*. If the attack on jurisdiction also implicates an element of the cause of action, the court "should find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's claim." *Id*. This "provides a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) or Rule 56, both of which place greater restrictions" on the court's discretion. *Id*.

This adversary proceeding is a dispute concerning the division of a legal fee earned in a wrongful death action (the "Shoemaker lawsuit") that was resolved at mediation in October 2021. (Doc. No. 5-15.)[1] The plaintiff in the Shoemaker lawsuit, Defendant Bretton Keefer, was initially represented by three attorneys: Plaintiff Brian Cummings, Defendant Afsoon Hagh, and Defendant Hagh's husband, Brian Manookian. (*Id*. at ¶¶ 2-5.) The three attorneys originally represented Defendant Keefer while practicing together at Cummings Manookian, PLC ("CM"). (*Id*.) In September 2018, Plaintiff voluntarily left CM and began practicing at Cummings Law. (*Id*. at ¶¶ 5, 8.) From that time until October 2020, Plaintiff and Defendant Hagh jointly represented Defendant Keefer (Mr. Manookian was suspended from the practice of law for the majority of the time that the Shoemaker lawsuit was pending). (*Id*. at ¶¶ 8, 14; Doc. No. 5-83.)

---

[1] Unless otherwise noted in the citations, all references to documents by number refer to documents that are part of the record in this adversary proceeding.

2

Case 3:23-cv-00036 Document 12 Filed 08/02/23 Page 2 of 17 PageID #: 528
Case 3:23-ap-90036 Document 1-1 Filed 08/02/23 Page 2 of 17 Document

102

Between April 2017, when Defendant Keefer retained CM, and October 2020, Plaintiff performed a substantial portion of the legal work on the Shoemaker lawsuit, including performing all pre-lawsuit investigation, preparing the 65-page complaint, preparing a significant portion of the written discovery propounded upon the defendant in that case, preparing all of Defendant Keefer's written responses to discovery, taking and defending numerous depositions, retaining all Rule 26 witnesses and medical experts, and preparing the Rule 26 disclosures. (Doc. No. 5-15 at ¶¶ 11-13, 25-31.) Plaintiff also advanced over $60,000.00 in litigation expenses, representing 90-100% of all litigation expenses incurred by Defendant Keefer during Plaintiff's representation. (*Id*. at ¶¶ 39-40.) Plaintiff withdrew as counsel for Defendant Keefer in October 2020 after being told by the Board of Professional Responsibility that comments made by Defendants Hagh and Keefer required him to withdraw immediately, and on November 27, 2020, Plaintiff filed a Notice of Attorney's Lien in the Shoemaker lawsuit. (*Id*. at ¶¶ 14-20; Doc. No. 5-84.)

While the Shoemaker lawsuit was pending, in November 2019, CM filed a bankruptcy petition in this Court because of debts incurred solely due to the actions of Brian Manookian. (Doc. No. 5-3 at ¶ 2; Doc. No. 5-15 at ¶ 5; Case No. 3:19-bk-07235 at Doc. No. 1.) Shortly after Jeanne Burton's appointment as Trustee in CM's bankruptcy action, she filed an adversary proceeding against Defendant Hagh, Defendant Hagh's law firm, and Mr. Manookian's law firm (the "Hagh AP"). (Doc. No. 5-3 at ¶¶ 2-3; Case No. 3:20-ap-90002 at Doc. No. 1.) The Trustee raised numerous claims against Defendant Hagh and the other defendants in the Hagh AP based on their fraudulent transfers and conversion of property of CM, including attorney's fees to which CM was entitled, for the purposes of hindering, delaying, and defrauding creditors. (*See generally* Case No. 3:20-ap-90002 at Doc. No. 1.) The Trustee also raised claims of successor liability and alter ego based on the fact that Defendant Hagh and Mr. Manookian used the two defendant law firms to

3

Case 3:23-ap-90036   Document 12   Filed 08/02/23   Page 3 of 17   Page ID #: 529
Case 3:23-cv-00636   Document 11-1   Filed 08/02/23   Page 3 of 17   PageID #: 529
Document   Page 3 of 17
103

transfer CM's assets and divert attorney's fees from CM in an effort to hinder, delay, and defraud CM's creditors. (*Id*.) Among the attorney's fees to which the Trustee has asserted a claim are the attorney's fees generated in the Shoemaker lawsuit (the "Keefer fee"), and the Trustee filed an attorney's lien in the Shoemaker lawsuit on October 29, 2021. (Exhibit 1; Doc. No 5-3 at ¶ 3.) Plaintiff is in agreement that a portion of his work on the Shoemaker lawsuit was performed while Plaintiff was still at CM, thus subjecting a percentage of Plaintiff's fee (and Plaintiff's lien) to the jurisdiction of the Bankruptcy Court. (Doc. No. 5-15 at ¶ 9.)

After the Shoemaker lawsuit settled, Plaintiff filed a motion for status conference concerning a hearing on his attorney's lien. (Doc. No. 5-15 at ¶ 22; Doc. No. 5-85.) Defendant Hagh, as counsel for Defendant Keefer, demanded that the state court require Plaintiff to file this separate action to resolve the issues regarding the division of the Keefer fee. (Doc. No. 5-86.) In a telephonic hearing with the state court regarding whether a separate action was required, Defendant Hagh represented that she would speak with Defendant Keefer to determine whether he wished to arbitrate Plaintiff's claim or waive arbitration. (Exhibit 4; Doc. No. 5-15 at ¶ 55.) Given Defendant Hagh's statement to the state court concerning possible waiver of arbitration, prior to filing the instant lawsuit, Plaintiff's counsel, Attorney James Price, contacted Defendant Hagh, as counsel for Defendant Keefer, to determine whether Defendant Keefer wished to proceed with arbitration of Plaintiff's claim or waive arbitration. (Exhibit 2; Doc. No. 5-15 at ¶ 55.) In a series of letters,[2] Defendant Hagh refused to answer the question of whether Defendant Keefer was waiving arbitration, and neither Defendant Hagh nor Defendant Keefer requested or mentioned

---

[2] Defendant Hagh made many false assertions in these letters concerning the merits of this case. To be clear, Plaintiff disputes Defendant Hagh's allegations regarding his representation of Defendant Keefer. Plaintiff is confident that the evidence regarding the merits of this case will demonstrate that Defendant Keefer received substantial benefits from Plaintiff's work on the Shoemaker case and that Plaintiff's work added significant value to the case.

4

arbitration until Attorney Spragens raised it in a letter sent to undersigned counsel on April 28, 2023, a week before filing the instant Motion. (Exhibits 2-7; Doc. No. 5-15 at ¶ 55.)

Plaintiff filed this lawsuit on March 22, 2022. (Doc. No. 5-1.) The Trustee removed the case to the District Court on April 26, 2022 and filed a motion to refer the case to this Court. (Doc. No. 5; Doc. No. 5-3.) No party opposed the Trustee's motion to refer the case to this Court. (Doc. No. 5-99.)

Plaintiff served Defendant Keefer via Certified Mail in June of 2022. (Doc. No. 5-25.) Attorney Spragens, who was counsel of record for Manookian PLLC at that time, sent a letter to Attorney Price claiming that service on Defendant Keefer was ineffective. (Exhibit 8.) Although Attorney Spragens offered to facilitate service, he did not respond to any of Attorney Price's requests concerning Defendant Keefer or Defendant Hagh. (Exhibits 8-9.) To resolve any doubt regarding service, Defendant Keefer was subsequently served again by private process server. (Doc. No. 5-49.)

Defendant Hagh actively evaded service of process for eight months. (Doc. No. 5-23; Doc. No. 5-29; Doc. No. 5-33; Doc. No. 5-39; Doc. No. 5-41.) In June of 2022, Plaintiff sent copies of the complaint and a request for waiver of service to Defendant Hagh at both the address she registered with the Tennessee Board of Professional Responsibility and her last known home address. (Doc. No. 5-33 at ¶ 11.) Plaintiff attempted to serve Defendant Hagh via Certified Mail, via private process server, and through counsel, before asking the District Court to order the U.S. Marshals Service to serve Defendant Hagh. (*Id*. at ¶¶ 7, 8, 12.) When the U.S. Marshals Service attempted service, Defendant Hagh's husband, Brian Manookian, intervened and aggressively impeded service, causing the Deputy U.S. Marshal to believe that Mr. Manookian would escalate the situation to a physical confrontation. (Doc. No. 5-67.)

5

Plaintiff filed Motions for Entry of Default against Defendants on February 10, 2023. (Doc. No. 5-70; Doc. No. 5-73.) On February 24, 2023, Attorney Spragens advised that he had been authorized to accept service on behalf of the Defendants if Plaintiff withdrew his Motions for Entry of Default and agreed to grant the Defendants an additional 60 days to file a responsive pleading. (Doc. No. 5-97.) Plaintiff and Defendants submitted an Agreed Order setting forth this agreement.[3] (*Id.*) On May 4, 2023, Defendants filed the instant Motion demanding an order compelling arbitration of Plaintiff's claims, fifteen months after Defendant Hagh refused to respond to Plaintiff's questions regarding whether Defendant Keefer had decided to waive arbitration.

The only document cited by Defendants that Plaintiff signed that contains an arbitration provision is a representation agreement between Plaintiff and Defendant Keefer. (*See* Doc. No. 9-1, at pp. 1-3.) Plaintiff has never agreed to submit disputes between Plaintiff and Defendant Hagh to arbitration.

## Discussion

Defendants have asked this Court to dismiss Plaintiff's claims against them,[4] relying on an arbitration provision in the representation agreement between Plaintiff and Defendant Keefer.[5] This reliance is misplaced, and Defendants' Motion should be denied.

---

[3] Defendants assert that Plaintiff failed to serve the Amended Complaint pursuant to their agreement; however, it was served by email as the parties had agreed, immediately following the submission of the Agreed Order. (Exhibit 10.)

[4] Defendants ask this Court to dismiss Plaintiff's claims with prejudice; however, "a dismissal under Rule 12(b)(1) is necessarily not on the merits and thus is always without prejudice." *Property Mgmt. Connection, LLC v. Consumer Fin. Prot. Bureau*, 2021 U.S. Dist. LEXIS 219041 at *22 (M.D. Tenn. Nov. 10, 2021) (emphasis supplied).

[5] Although they devote the bulk of their Motion addressing the arbitration provision, Defendants assert in the introduction section of their Motion that there are two separate provisions of the representation letter justifying dismissal of Plaintiff's claims. To create the other purported reason for dismissal, Defendants characterize the final sentence of the arbitration provision as a "covenant-not-to-sue." It is clear from the plain reading of the paragraph on which Defendants rely that the final sentence of that paragraph is not a separate and distinct covenant, but is simply part of the arbitration provision. (Doc. No. 9-1, at p. 3.) Since Defendants have not made any arguments concerning the claimed "covenant-not-to-sue" that are distinct from their arguments regarding arbitration, Plaintiff has not made a distinction between the arbitration paragraph and that paragraph's final sentence in this Response.

6

**A. This Court Should Deny Defendants' Motion, Because this Court has Exclusive Jurisdiction Over this Proceeding.**

The District Court transferred this matter to this Court on March 13, 2023, pursuant to the Trustee's unopposed Motion to Refer Case to Bankruptcy Court. (Doc. No. 5-99.) In her Motion, the Trustee explained that, as part of her administration of CM's estate, the Trustee had filed the Hagh AP against Afsoon Hagh, Hagh Law, PLLC, and Manookian, PLLC. (Doc. No. 5-3 at ¶ 3.) According to the Trustee, a "significant element of the allegations in the [Hagh] AP is that the defendants in the [Hagh] AP, including Afsoon Hagh (who is a defendant in this matter), received fees belonging to CM," including the Keefer fee. (*Id.*) Since Plaintiff, Defendant Hagh, and the Trustee each claim an interest in the Keefer fee, Plaintiff's claims are directly related to the Trustee's claims in the Hagh AP and to the pending bankruptcy matter.

Bankruptcy courts have exclusive jurisdiction over bankruptcy cases, the property of a debtor, and the bankruptcy estate. *In re Project Restore, LLC*, 2022 Bankr. LEXIS 2868 at *12-13 (Bankr. M.D. Tenn. Oct. 7, 2022). This Court has noted that disputes involving the Bankruptcy Code and the Federal Arbitration Act "often present a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution." *Id.* at *9. When evaluating motions to compel arbitration, courts are asked to determine whether the dispute is a core proceeding and whether an inherent conflict exists between the enforcement of an arbitration agreement and the underlying purposes of the Bankruptcy Code. *Id.* at *11. This involves conducting a "particularized inquiry into the nature of the claim and the facts of the specific bankruptcy" as well as consideration of the objectives of the Bankruptcy Code, such as "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation,

and the undisputed power of a bankruptcy court to enforce its own orders." *See Anderson v. Credit One Bank, N.A.*, 884 F.3d 382, 389 (2nd Cir. 2017).

Applying this analysis, courts around the country have found that arbitration agreements inherently conflict with the purposes of the Bankruptcy Code in a variety of circumstances. For example, the Second Circuit Court of Appeals found it was error to compel arbitration of a claim seeking a declaratory judgment of the parties' rights under various insurance policies, which provided the only funds available to numerous personal injury claimants. *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Protection & Indem. Ass'n*, 197 F.3d 631 (2nd Cir. 1999). The *U.S. Lines* Court determined that the declaratory judgment proceedings were integral to the bankruptcy court's ability to preserve and equitably distribute assets, and that the need for a centralized proceeding was augmented by the complex factual scenario, involving multiple claims, policies, and insurers. *Id*. at 640-41.

Likewise, the Fifth Circuit Court of Appeals affirmed denial of a motion to compel arbitration of a debtor's claims, which included claims of avoidance of fraudulent transfers and to recover transferred property. *Gandy v. Gandy*, 299 F.3d 489 (5th Cir. 2002). The *Gandy* Court recognized that while the claims could technically be divided and some sent to arbitration, parallel proceedings would be wasteful and inefficient, and potentially could yield different results and subject parties to dichotomous obligations. 299 F.3d at 499. The Court found that arbitration of the debtor's claims inherently conflicted with the Bankruptcy Code's goal of centralized resolution, the need to protect creditors and debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders. *Id*. at 500.

The inherent conflict can exist even where the request for arbitration does not seek to compel any claims by or against the debtor to arbitration. The Fourth Circuit Court of Appeals

affirmed denial of a motion to compel arbitration of claims where the debtor was not going to be a named party in the arbitration, because the arbitration would substantially interfere with the debtor's efforts to reorganize. *Phillips v. Congelton, L.L.C.*, 403 F.3d 164 (4th Cir. 2005). The *Phillips* Court explained that the bankruptcy court's findings regarding the impact of the proposed arbitration on the bankruptcy proceedings confirmed that the arbitration was inconsistent with the purpose of the bankruptcy laws to centralize disputes about a debtor's legal obligations. *Id*. at 170. *See also In re EPD Inv. Co., LLC*, 821 F.3d 1146 (9th Cir. 2016) (affirming denial of motion to compel arbitration of Trustee's claims, including claims to disallow proofs of claims and to avoid fraudulent transfers); *Roth v. Butler Univ.*, 594 B.R. 672 (Bankr. S.D. Ind. 2018) (declining to compel arbitration where it would require the debtor to pursue the same claims against different parties in two forums, incur the cost of two separate proceedings, and face potentially different outcomes); *Larson v. Swift Rock Financial, Inc.*, 545 B.R. 47 (D. Colo. 2015) (affirming bankruptcy court's denial of motion to compel arbitration of trustee's direct claims, including trustee's § 548 claims).

Cummings Manookian, PLC filed this bankruptcy action nearly four years ago, in November of 2019. (Case No. 3:19-bk-07235 at Doc. No. 1.) After Ms. Burton was appointed as Trustee, she filed the Hagh AP against Defendant Hagh, Defendant Hagh's law firm, and Mr. Manookian's law firm, asserting multiple claims against Defendant Hagh and the other defendants based on their fraudulent transfers and conversion of property of CM, including attorney's fees to which CM was entitled, for the purposes of hindering, delaying, and defrauding creditors. (Doc. No. 5-3 at ¶¶ 2-3; Case No. 3:20-ap-90002 at Doc. No. 1.) The Trustee also asserted claims of successor liability and alter ego based on the fact that Defendant Hagh and Mr. Manookian used

the two defendant law firms to transfer CM's assets and divert attorney's fees from CM in an effort to hinder, delay, and defraud CM's creditors. (Case No. 3:20-ap-90002 at Doc. No. 1.)

The Trustee, Defendant Hagh, and Plaintiff all claim an interest in the same funds: the Keefer fee. (Doc. No 5-3 at ¶¶ 3-4; Doc. No. 5-15 at ¶¶ 9, 44-46.) Both the Trustee and the Plaintiff filed attorney's liens in the Shoemaker lawsuit. (Exhibit 1; Doc. No. 5-84.) There is no question that resolution of the competing interests of the Trustee, Defendant Hagh, and Plaintiff (including the attorney's liens and the Plaintiff's claim against the Trustee) in the same fee from the Shoemaker lawsuit is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), (K), and (O).

The Court is therefore tasked with determining whether enforcing the arbitration provision relied upon by Defendants Hagh and Keefer inherently conflicts with the underlying purposes of the Bankruptcy Code. Compelling arbitration of Plaintiff's claims against Defendants Hagh and Keefer will result in piecemeal litigation concerning the proper distribution of the Keefer fee. More problematic is the fact that the resolution of the claims by and against the Trustee with respect to the Keefer fee in the bankruptcy court and resolution of the Plaintiff's claims against Defendants Hagh and Keefer with respect to the Keefer fee in arbitration will result in inconsistent rulings where both this Court and the arbitrator will be allocating the same fee, but among different parties. This is precisely the reason for the Bankruptcy Code's goal of centralized resolution of issues, and maintaining all claims regarding the Keefer fee in this Court is integral to the Court's ability to preserve and equitably distribute assets. As such, this Court should decline to compel arbitration of Plaintiff's claims and deny the Motion to Dismiss in its entirety.

**B. This Court Should Deny Defendants' Motion, Because There is No Arbitration Agreement Between Brian Cummings and Afsoon Hagh.**

Defendant Hagh's request that Plaintiff's claim against her be submitted to arbitration should also be denied because there is no basis for compelling arbitration of that claim. Although Defendants' Motion to Dismiss makes no distinction between Plaintiff's claim against Defendant Hagh and Plaintiff's claim against Defendant Keefer, there is a crucial difference relevant to the pending Motion: There is no arbitration provision in any contract between Plaintiff and Defendant Hagh. This is fatal to Defendant Hagh's request that this Court dismiss this case against her.

When considering a motion seeking to compel the arbitration of a dispute, the Court must first consider whether a valid arbitration agreement exists. *VIP, Inc. v. KYB Corp.*, 951 F.3d 377, 380 (6th Cir. 2020). Since arbitration is a matter of contract, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Id.* at 382 (*quoting Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010) (emphasis in original)). It also "goes without saying that a contract cannot bind a nonparty." *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625, 631 (6th Cir. 2014) (*quoting EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002)). It is well-settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (*quoting AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).

Relying on these principles, in *W.J. O'Neil*, the Sixth Circuit reversed dismissal of a plaintiff subcontractor's claims against an architect and a designer arising from the construction

of a hospital.[6] 765 F.3d at 627-28. The plaintiff subcontractor had a contract with the construction manager that contained an arbitration provision, and the architect and designer both had contracts with the property owner that contained arbitration provisions, but there was no contract between the plaintiff and the architect or the designer. *Id*. at 628, 632-33. As such, the Court found that the plaintiff had not consented to arbitrate its claims against the architect and designer and was entitled to pursue his claims through litigation. *Id*. at 633-34.

In *VIP, Inc. v. KYB Corp.*, the Sixth Circuit refused to force plaintiffs to arbitrate their claims against a manufacturer based on an arbitration clause in a warranty incorporated by reference in the plaintiffs' agreements. 951 F.3d at 380. The Sixth Circuit examined the language of the arbitration provision and determined that, by its terms, it only applied to claims filed by "original retail purchasers" of the products at issue. *Id*. at 383-84. The Court found that the plaintiffs were distributors, not original retail purchasers. *Id*. Even if, as the defendant asserted, the plaintiffs had agreed to the arbitration provision by reference, the Court concluded that the plaintiffs had not consented to arbitration of the claims at issue. *Id*. at 384. The Court stated: "No plain language reading of this arbitration provision evidences an intent to bind anyone to arbitration other than 'original retail purchasers.'" *Id*. at 383-84. Since the plaintiffs had not agreed to arbitrate the particular dispute at issue, the Court refused to force them to do so. *Id*. at 385-86.

Throughout the Motion to Dismiss, the Defendants repeatedly quote from a representation agreement between Plaintiff and Defendant Keefer. (*See* Doc. No. 9-1 at pp. 1-3.) Notably, there is no reference anywhere in the Motion to Dismiss or in the various exhibits to an arbitration

---

[6] The district court in *W.J. O'Neil* had concluded that the claims were barred by the doctrine of res judicata based on an arbitration between the plaintiff and the construction manager arising from the same construction project. 765 F.3d at 627. The construction manager had previously filed claims for indemnification against the architect and the designer, and those claims were adjudicated in a consolidated arbitration alongside the plaintiff's claims against the construction manager. *Id*. at 628-29. The Sixth Circuit held that the plaintiff's claims against the architect and the designer were not barred by res judicata. *Id*. at 627-28.

agreement between Plaintiff and Defendant Hagh. That is because no such agreement exists. Plaintiff did not agree to submit disputes between Plaintiff and Defendant Hagh to arbitration, and he cannot be forced to arbitrate his claim against her. Indeed, Defendant Hagh is not even mentioned as one of the attorneys representing Defendant Keefer in the representation agreement upon which she relies. (*See id*)

Even if Defendant Hagh had been a party to the arbitration provision, arbitration of Plaintiff's claim against her would still be improper. The arbitration provision refers to disputes arising between the attorneys and the client within the Attorney-Client relationship, not to disputes between two attorneys regarding division of a fee. (*Id*. at p. 3.) Plaintiff did not agree to arbitrate disputes that he has with other attorneys (and certainly not with an attorney who was not even a party to the arbitration provision), and it would be improper for this Court to force him to arbitrate a dispute that he did not agree should be submitted to arbitration.

## C. This Court Should Deny Defendants' Motion, Because the Defendants Waived Arbitration of Plaintiff's Claim.

Finally, the Court should deny Defendants' Motion on the grounds that, through their actions and deliberate tactics, Defendants have waived any rights they may have had to enforce arbitration.

The Sixth Circuit has previously found that a defendant waived its right to arbitrate by engaging in activities strikingly similar to those of the Defendants in this case. In *O.J. Distributing, Inc. v. Hornell Brewing Co.*, after the defendant terminated the parties' contract, the plaintiff initiated settlement discussions in April of 1997. 340 F.3d 345, 348-49 (6th Cir. 2003). The parties exchanged settlement correspondence for over a year, and the plaintiff filed suit in May of 1998. *Id*. at 347, 349-51. The plaintiff sent a Request for Waiver of Service to the defendant, which the defendant did not return, so the plaintiff sent a copy of the complaint to the defendant by overnight

13

courier. *Id*. at 347. In August and September of 1998, the defendant sent multiple letters to the plaintiff demanding arbitration and objecting to the plaintiff's attempted service. *Id*. On September 30, 1998, the plaintiff obtained an entry of default and filed a Motion for Default Judgment on October 2, 1998. *Id*. On October 5, 1998, the defendant initiated arbitration with the American Arbitration Association. *Id*.

The Sixth Circuit found that the defendant waived its right to arbitrate when it engaged in negotiations with the plaintiff for fifteen months before raising the issue of arbitration and did not initiate arbitration until after the entry of default. *Id*. at 357-59. The Court rejected the defendant's argument that it immediately demanded arbitration after the plaintiff filed suit, noting that the defendant waited another sixty days after plaintiff filed suit before demanding arbitration in a letter to plaintiff and waited more than five months before formally demanding arbitration with the AAA. *Id*. at 359. The Court found that the defendant had "slept on its rights for approximately fifteen months," while the plaintiff incurred costs.[7] *Id*. at 358-59. *See also General Star Nat'l Ins. Co. v. Administratia Asigurarilor De Stat*, 289 F.3d 434 (6th Cir. 2002) (finding that defendant waived its right to arbitrate where the defendant had actual notice of the lawsuit for 17 months but did not invoke the arbitration provision until after the district court had entered default judgment); *Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334 (6th Cir. 2010) (finding that defendants waived arbitration where they actively participated in litigation for 26 months).

In the instant case, the Plaintiff initially asked the state court where the Shoemaker lawsuit was pending to address his attorney's lien. (Doc. No. 5-85.) Defendant Hagh, as counsel for Defendant Keefer, demanded that Plaintiff's claim be addressed in a separately filed lawsuit. (Doc.

---

[7] In its analysis, the Sixth Circuit also looked at the prejudice these delays caused the plaintiff; however, the United States Supreme Court recently clarified that prejudice is not to be used as a condition for finding waiver, which is simply "the intentional relinquishment or abandonment of a known right." *See Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022)

No. 5-86.) After representing to the state court in a telephonic hearing that she would speak with Defendant Keefer regarding whether he wished to arbitrate Plaintiff's claim or waive arbitration, Defendant Hagh refused to answer direct questions regarding whether Defendant Keefer waived arbitration. (Exhibits 2-7; Doc. No. 5-15 at ¶ 55.)

Plaintiff filed this lawsuit on March 22, 2022 and served Defendant Keefer via Certified Mail in June of 2022. (Doc. No. 5-1; Doc. No. 5-25.) Although he claimed he was only representing Manookian PLLC at the time, Attorney Spragens sent a letter to Attorney Price asserting that service on Defendant Keefer was ineffective. (Exhibit 8.) Attorney Spragens initially stated that he would facilitate service, but then failed to respond to any of Attorney Price's requests concerning Defendant Keefer or Defendant Hagh. (Exhibits 8-9.)

After convincing the state court that a separate lawsuit was required and then refusing to respond to Plaintiff's questions about arbitration, Defendant Hagh actively evaded service of process for eight months. (Doc. No. 5-23; Doc. No. 5-29; Doc. No. 5-33; Doc. No. 5-39; Doc. No. 5-41.) In June of 2022, Plaintiff sent copies of the complaint and a request for waiver of service to Defendant Hagh at both the address she registered with the Tennessee Board of Professional Responsibility and her last known home address. (Doc. No. 5-33 at ¶ 11.) After unsuccessful attempts to serve Defendant Hagh via Certified Mail, via private process server, and through counsel, Plaintiff asked the District Court to order the U.S. Marshals Service to serve Defendant Hagh. (*Id.* at ¶¶ 7, 8, 12.) Defendant Hagh's husband, Brian Manookian, intervened and aggressively impeded service by the U.S. Marshals Service, behaving in such a manner that the Deputy U.S. Marshal believed that Mr. Manookian would escalate the situation to a physical confrontation. (Doc. No. 5-67.)

Despite Defendant Hagh and Defendant Keefer having actual notice of Plaintiff's claims since December 2021 and actual notice of Plaintiff's lawsuit by June 2022 at the latest, neither Defendant requested or demanded arbitration until their counsel raised it one week before filing their May 2023 Motion to Dismiss. The Defendants remained silent about arbitration for 15 months, including refusing to respond to Plaintiff's express questions regarding whether Defendant Keefer had decided to waive arbitration. Even after Plaintiff filed Motions for Entry of Default and Defendants finally engaged counsel, Defendants waited another two months before demanding arbitration. In other words, even if the Defendants had an enforceable arbitration agreement, they slept on their rights for at least 15 months. Like the Sixth Circuit found in *O.J. Distributing*, *General Star* and *Hurley*, this Court should find that the Defendants waived arbitration and deny their Motion to Dismiss.

<u>**Conclusion**</u>

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss in its entirety.

Respectfully Submitted,

**COUNTERPOINT LEGAL, PLC**

By:     /s/ Elizabeth S. Tipping
        Elizabeth S. Tipping, No. 023066
        2689 Union Hill Road
        Joelton, TN 37080
        (615) 426-5566
        liz@counterpointlaw.com
        *Counsel for Plaintiff Brian Cummings*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing document was electronically filed and served via the Court's ECF system this, the 2nd day of August, 2023.

/s/ Elizabeth S. Tipping
Elizabeth S. Tipping, No. 023066
Counterpoint Legal, PLC
2689 Union Hill Road
Joelton, TN 37080
(615) 426-5566
liz@counterpointlaw.com

# Exhibit 1

Case 3:23-ap-00036 Doc 12-1 Filed 08/02/23 Entered 08/02/23 19:17:05 Desc Exhibit 1 - Trustee Notice of Lien Page 1 of 7

118

## IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| BRETTON KEEFER O/B/O | ) | |
| CHESTA SHOEMAKER | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19C358 |
| | ) | |
| VANDERBILTY UNIVERSITY | ) | |
| MEDICAL CENTER, | ) | |
|     Defendant. | ) | |

## NOTICE OF FILING
## NOTICE OF ATTORNEY'S LIEN AND ABSTRACT OF SUIT

Jeanne Ann Burton, Chapter 7 Trustee, hereby gives notice of filing the attached Notice of

Filing Attorney's Lien and Abstract of Suit which has been recorded with the Davidson County

Register of Deed's office.

Respectfully Submitted,

Phillip G. Young, Jr. #021087
***THOMPSON BURTON PLLC***
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
615-465-6000
615-461-1737 – fax

Special Counsel for Jeanne Ann Burton, Trustee

1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent via U.S. Mail, postage prepaid, to:

Vanderbilt University Medical Center
c/o Thomas A. Wiseman III
Wiseman Ashworth Law Group, PLC
511 Union Street, Suite 800
Nashville, TN 37219-1743

Brian Manookian
PO Box 150229
Nashville, TN 37215

Afsoon Hagh
226 Pelham Drive
Brentwood, TN 37027

Brian Cummings
4235 Hillsboro Pike #300
Nashville, TN 37215

John Edwards
Edwards Kirby
3201 Glenwood Ave., Suite 100
Raleigh, NC 27612

This 29th day of October, 2021.

Phillip G. Young, Jr.

2

COPY

## IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| BRETTON KEEFER O/B/O | ) | |
| CHESTA SHOEMAKER | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19C358 |
| | ) | |
| VANDERBILTY UNIVERSITY | ) | |
| MEDICAL CENTER, | ) | |
|     Defendant. | ) | |

---

### NOTICE OF ATTORNEY'S LIEN AND ABSTRACT OF SUIT

---

TO:    Vanderbilt University Medical Center
        c/o Thomas A. Wiseman III
        Wiseman Ashworth Law Group, PLC
        511 Union Street, Suite 800
        Nashville, TN 37219-1743

Pursuant to Tenn. Code Ann § 23-2-102, et. seq., you are notified that Jeanne Ann Burton, Chapter 7 Bankruptcy Trustee for Cummings Manookian, PLC, claims an attorney's lien against all property, both real and personal, tangible and intangible, money, funds or other assets, which may be awarded to or received by Cummings Manookian, PLC, for attorneys' fee or reimbursement of expenses, through settlement or trial of this legal action. A copy of the United States Bankruptcy Court for the Middle District of Tennessee's *Notice of Bankruptcy Case Filing* is attached hereto.

Jeanne Ann Burton, Chapter 7 Bankruptcy Trustee for Cummings Manookian, PLC claims such attorney's lien for all amounts owing to Cummings Manookian, PLC in this matter.

1

## OATH

I, **JEANNE ANN BURTON, TRUSTEE**, after being first duly sworn, make oath that the facts and matters stated in the foregoing Lien are true and correct to the best of my knowledge, information and belief.

_____
Jeanne Ann Burton, Trustee

**STATE OF TENNESSEE**     )
**COUNTY OF DAVIDSON**     )

Personally appeared before me, a Notary Public in and for the aforesaid State and County, the within named **JEANNE ANN BURTON**, with whom I am personally acquainted, (or upon sufficient evidence provided), and who acknowledged that she executed the within instrument for the purposes therein contained.

WITNESS my hand and official seal on this _16th_ day of _April_, 2021.

_____
NOTARY PUBLIC
My Commission Expires: 9-5-2021



2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent via U.S. Mail, postage prepaid, to:

Vanderbilt University Medical Center
c/o Thomas A. Wiseman III
Wiseman Ashworth Law Group, PLC
511 Union Street, Suite 800
Nashville, TN 37219-1743

Brian Manookian
PO Box 150229
Nashville, TN 37215

Afsoon Hagh
226 Pelham Drive
Brentwood, TN 37027

Brian Cummings
4235 Hillsboro Pike #300
Nashville, TN 37215

John Edwards
Edwards Kirby
3201 Glenwood Ave., Suite 100
Raleigh, NC 27612

This 29th day of October, 2021.

Phillip G. Young
Special Counsel for the Trustee

3

Case 3:23-ap-90036 Doc 12-12 Filed 08/02/23 Entered 08/02/23 19:17:05 Desc
Exhibit 1 - Trustee Notice of Lien    Page 6 of 7

123

COPY

**Information to identify the case:**

| | | |
|---|---|---|
| Debtor | **CUMMINGS MANOOKIAN, PLLC** | EIN ▇▇▇▇▇▇ |
| | Name | |

United States Bankruptcy Court **MIDDLE DISTRICT OF TENNESSEE**   Date case filed for chapter **7  11/6/19**

Case number: **3:19–bk–07235**

## Official Form 309C (For Corporations or Partnerships)

## Notice of Chapter 7 Bankruptcy Case — No Proof of Claim Deadline   12/15

For the debtor listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered. This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines.

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at www.pacer.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**Do not file this notice with any proof of claim or other filing in the case.**

| | | |
|---|---|---|
| 1. **Debtor's full name** | CUMMINGS MANOOKIAN, PLLC | |
| 2. **All other names used in the last 8 years** | | |
| 3. **Address** | 45 MUSIC SQUARE WEST NASHVILLE, TN 37203 | |
| 4. **Debtor's attorney** Name and address | LEFKOVITZ AND LEFKOVITZ, PLLC 618 CHURCH ST STE 410 NASHVILLE, TN 37219 | Contact phone: 615 256–8300 Email: slefkovitz@lefkovitz.com |
| 5. **Bankruptcy trustee** Name and address | JEANNE ANN BURTON Jeanne Ann Burton PLLC 4117 Hillsboro Pk Suite 103–116 NASHVILLE, TN 37215 | Contact phone: 615 678–6960 Email: None |
| 6. **Bankruptcy clerk's office** Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov. | 701 Broadway Room 170 Nashville, TN 37203 | Hours open: 8:00AM–4:00PM Monday–Friday Contact phone: 615–736–5584 Date: 11/6/19 |
| 7. **Meeting of creditors** The debtor's representative must attend the meeting to be questioned under oath. Creditors may attend, but are not required to do so. | December 2, 2019 at 10:00 AM The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. *** Valid photo identification required *** | Location: **Customs House, 701 Broadway, Room 100, Nashville, TN 37203** |
| 8. **Proof of claim** Please do not file a proof of claim unless you receive a notice to do so. | No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now. If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline. | |
| 9. **Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |

Official Form 309C (For Corporations or Partnerships) **Notice of Chapter 7 Bankruptcy Case — No Proof of Claim Deadline**

Case 3:19-bk-07235   Doc 2   Filed 11/06/19   Entered 11/06/19 19:00:02   Desc Ch 7
First Mtg Corp No POC   Page 1 of 1

Case 3:23-cv-00990 Document 21-12 Filed 08/02/23 Page 7 of 7 PageID #: 550
Exhibit 1 - Trustee Notice of Lien   Page 7 of 7

124

# Exhibit 2

Case 3:23-ap-90036-DoDoc 42-2 Filed 08/02/23 Entered 08/02/23 16:17:05 Desc
Exhibit 2 - Price to Hagh 2-1-22    Page 1 of 3

125

LAW OFFICES
**PRICE, HILL & KOLARICH**
AN ASSOCIATION
SUITE 1800
201 4th AVENUE NORTH
NASHVILLE, TENNESSEE 37219

JAMES W. PRICE, JR.*
WM. TIMOTHY HILL

* ALSO ADMITTED IN FLORIDA

ROBERT E. KOLARICH**

** ALSO ADMITTED IN MISSOURI AND MISSISSIPPI

TELEPHONE 615-244-5772
TELECOPIER 615-244-5821

February 1, 2022

**EMAIL:** afsoon@haghlaw.com
**FAX:** 615-266-3655
**U.S. MAIL:**
Afsoon Hagh
Hagh Law PLC
1906 Glen Echo Road, #150229
Nashville, TN 37215

Re: *Keefer v. VUMC* (Fee Dispute Mediation)

Dear Afsoon:

I emailed you at afsoon@haghlaw.com on the 24th day of January, 2022, requesting that you inform me as to whether or not your client, Mr. Keefer, wishes to proceed with the binding arbitration as provided for in the Attorney-Client Agreement. It appears that the email at this address was rejected so I am re-sending my letter by U.S. Mail, fax, and email.

I am sure you agree that it is to everyone's benefit that this matter be resolved as quickly as possible. It would appear that the binding arbitration as provided for in the Attorney-Client Agreement is the most simple and quick way to resolve this issue and my client is prepared to proceed with that immediately. If you and your client agree with that, please let me know and I will be happy to provide a list of proposed arbitrators.

Even though Mr. Cummings is prepared to proceed to arbitration, we do not feel that it is proper for him to demand that Mr. Keefer submit to arbitration. As unpleasant and lengthy as litigation may be, however, my client is prepared to go forward in that venue if Mr. Keefer does not wish to arbitrate.

In light of all of that, please contact me as soon as possible and no later than ten days from receipt of this letter as to whether or not you represent Mr. Keefer and whether or not he wishes to proceed with binding arbitration. If I do not hear from you by this time, I will assume that you represent Mr. Keefer and he does not wish to submit to binding arbitration. In that case, I will have no alternative but to file suit in the Circuit Court to enforce the lien.

Ms. Afsoon Hagh
Page 2
February 1, 2022

I urge your immediate response to this.

Very truly yours,

James W. Price, Jr.

JWP/vg

cc:     Brian Cummings

# Exhibit 3



Correspondence from:
**Afsoon Hagh, Attorney**
afsoon@haghlaw.com



AFSOON HAGH
Licensed to practice in TN

February 11, 2022

**VIA ELECTRONIC MAIL**
James Price
201 4th Avenue North
Nashville, TN 37219

      *Re:*    *Keefer v. VUMC*

Mr. Price,

    I am in receipt of your letter dated February 1, 2022. That letter demands "an immediate response" as to whether Bretton Keefer wishes to arbitrate or litigate some unarticulated "dispute" with your client, Brian Cummings. As briefly explained below, your letter is deficient as to defy response.[1]

    Brian Cummings previously served as counsel in *Keefer v. VUMC.* He quit early in the matter after the client would not agree to settle the case for a fraction of its value, and because Mr. Cummings did not want to further contribute to the prosecution of the case.

    In such an event, the engagement agreement that your client drafted and signed is crystal clear that Mr. Cummings would only be entitled to reimbursement of his advanced costs and expenses.

    Your client has already been reimbursed his advanced costs and expenses. Although your letter references a "fee dispute," it fails to describe any such dispute. It then immediately proceeds to demand that Bretton Keefer choose arbitration or litigation as the means of adjudicating the "dispute" that is never identified.

    Your letter is problematic because (1) your client objectively has no claims against Bretton Keefer, and (2) your client appears to be deliberately declining to reveal whatever claims he intends to bring *until after Mr. Keefer commits to a forum.*

    Simply stated, Mr. Keefer is not in a position to respond to threats to sue him when you decline to identify the grounds for doing so. To the extent your client incorrectly believes he is entitled to some portion of the

---

[1] This may be a result of your failing to include some enclosure that is noted in your letter but was not attached to your correspondence. If your letter contained a draft complaint or position statement, please send it to me.

Case 3:23-ap-90036 Doc 42-1 Filed 08/02/23 Entered 08/02/23 16:17:05 Desc
Case 3:23-cv-00990 Document 12-3 Filed 12/13/23 Page 2 of 6 PageID #: 555
Exhibit 3 - Hagh to Price 2-11-22   Page 2 of 6
129

recovery in the case of his deceased mother's estate against VUMC, I can respond generally; and I am happy to do so here.

## I. Brian Cummings is not entitled to any fee in the *Shoemaker* matter under any theory of recovery.

Brian Cummings is not entitled to any fee in the *Shoemaker* matter, either on a contractual basis or under any equitable theory. Brian Cummings quit, early in the case, when it became apparent that he could not pressure the client to settle it for pennies on the dollar. Mr. Cummings withdrawal occurred immediately prior to the commencement of expensive expert discovery for which Mr. Cummings did not want to contribute financially.

The engagement agreement with the client only permits repayment of expenses where the attorney quits or withdraws. Under the terms of that agreement, Brian Cummings is entitled to repayment of advanced expenses (which he has already received), and nothing more.

Likewise, any equitable claim to attorney's fees by Mr. Cummings fails because there was an existing contract. This alone precludes any recovery on a *quantum meruit* theory. Even if there had not been a legally binding contract, Mr. Cummings would not be entitled to any portion of the ultimate recovery because Brian Cummings' "work" on the case was (a) *de minimis* and (b) legally deficient to the point of inarguable, objective malpractice.

## II. Brian Cummings withdrew from the *Shoemaker* case, contractually precluding any claim to an attorney's fee.

The attorneys in this case had an engagement agreement with the client. The engagement agreement provides that if the client fires the attorney, the attorney will be entitled to his advanced expenses plus a reasonable attorney's fee.

The engagement agreement goes on to provide that if the attorney withdraws, as opposed to being fired, the attorney is only entitled to receive back his advanced expenses.

This was a deliberate provision, drafted by Mr. Cummings, not the client; and will be construed against Mr. Cummings. The purpose of the provision was to allow the attorneys to promptly withdraw in cases where they chose to do so, without saddling the case with an attorney's lien that could make it difficult for the client to retain new counsel.

Thus, there is an express distinction – memorialized in writing by your client – as to the consequences when an attorney is fired as opposed to when an attorney voluntarily quits. If the attorney is removed from the case without his permission, he receives his advanced expenses and "**additionally**" a reasonable portion of the attorney's fee. Conversely, where the attorney chooses to quit, the attorney only receives reimbursement of advanced expenses, with no additional attorney's fee.

I am not going to belabor this point because it is self-evident from the contract Mr. Cummings drafted. If you have any doubt, review the provision that states that in the event of

2

termination (as opposed to quitting as Mr. Cummings did), that the attorney is **"ADDITIONALLY"** entitled to a portion of the fee. No such additional allowance is made where the attorney voluntarily withdraws.

### III.     Brian Cummings abandoned the client and co-counsel in his withdrawal.

Brian Cummings' withdrawal from the case was done in a highly unprofessional manner that constituted abandonment of the client. Mr. Cummings had very few responsibilities in the case, and even less that he had actually followed through with as of late September 2020. One of those responsibilities, however, was to handle expert discovery; both defending the depositions of Plaintiff's experts and conducting the depositions of Defendant's experts.

By September 30, 2020, all expert depositions had been scheduled around Mr. Cummings schedule. On that day Mr. Cummings emailed opposing counsel a final list of the deposition dates and times, confirming that he would be attending each.

Less than 72 hours later, Mr. Cummings abruptly – and out of nowhere – announced by letter that he was withdrawing from the case "effective immediately." This had never been mentioned or discussed; much less planned for such that a smooth transition could occur. At that moment over a dozen depositions of expensive, by-the-hour, experts were scheduled to go forward based upon Mr. Cummings' schedule and little could be done to rearrange those deposition given pending scheduling order deadlines.

In over a decade of practice as a plaintiff's lawyer, I have seen numerous attorneys withdraw or substitute from cases. I have never seen – or even heard of – an attorney announcing that they quit "effective immediately," without so much as consulting with co-counsel and to the clear detriment of the client.

Mr. Cummings' action in this regard were, at least, characteristic of his approach to this case from the outset. His first priority has always been himself and his own financial considerations; not what is best for the client.

### IV.     Brian Cummings quit the case because he did not want to spend money on it and because the client would not settle the matter for a fraction of its final resolution; a resolution which Brian Cummings did not participate in funding or securing.

In fact, and as I later learned, Mr. Cummings had been surreptitiously attempting to have the client sign a new engagement agreement solely with Mr. Cummings' firm that provided more favorable financial terms to Mr. Cummings to the exclusion of the other lawyers who were actually working on the case.

When the client declined to renegotiate the terms of the agreement – and because the client consistently refused to settle the case for a fraction of what was ultimately recovered – Mr. Cummings quit.

3

Case 3:23-ap-00036 Doc 41-3 Filed 08/02/23 Entered 08/02/23 16:17:06 Desc
Case 3:23-ap-00036 Doc 42-3 Filed 08/21/23 Entered 08/21/23 11:41:05 Desc
Exhibit 3 - Hagh to Price 2-11-22    Page 4 of 6

131

## V. Brian Cummings did no competent, substantive work on the case.

In any event, Brian Cummings did no competent, substantive work on the case. He essentially had two major tasks; both of which he screwed up, literally, beyond repair, and both of which later resulted in the Court ordering the Plaintiff to correct or redo.

Brian Cummings was charged with drafting the Complaint in the case. He drafted a meandering, unnecessarily long, and unfocused pleading that, despite its length, failed to include many of the most basic and fundamental causes of action. Ultimately, the Court found the Complaint so deficient that it continued the trial and ordered the Plaintiff to submit an Amended Complaint. Mr. Cummings' original Complaint was so bad as to be unsalvageable. Plaintiff's counsel had to spend close to a month redrafting an entirely new Complaint.

Brian Cummings was also charged with drafting the expert disclosure. They were equally terrible. The Court found them to lack basic elements of the experts' opinions and required Plaintiff to redo them.

In sum, even where Brian Cummings actually did work, it was so deficient as to require that it be recompleted. His "contributions" were thus not contributions, but rather a distraction that did nothing to add to the bottom line.

Other than those two items, Brian Cummings primary involvement in the case consisted of tagging along to depositions taken by Brian Manookian and antagonizing the client regarding settlement offers that Mr. Cummings wanted the client to accept.

## VI. Brian Cummings' primary impact on the case was to commit significant malpractice, which he then fraudulently concealed.

As stated above, Mr. Cummings was tasked with drafting the Complaint and conducting expert discovery. In Tennessee, prior to filing a medical malpractice case, a Plaintiff must first secure an opinion from a qualified expert that there is a good faith basis for believing that malpractice was committed. A qualified expert is a physician in the same field or specialty that practiced in Tennessee or a contiguous state in the year immediately preceding the alleged act of malpractice.

Thus, Brian Cummings needed to secure an opinion from a doctor licensed in Tennessee or a bordering state that there was a good faith reason to believe Vanderbilt had committed malpractice in its treatment of Chesta Shoemaker.

Unbeknownst to the other attorneys, Mr. Cummings secured the pre-suit opinion from a physician, Dr. Sadikot, who was only licensed to practice in Florida. Inexplicably, Mr. Cummings then disclosed Dr. Sadikot as Plaintiff's foremost opinion expert in the case. Dr. Sadikot was, and is, statutorily incompetent to serve in either role.

Opposing counsel, Bradley Dowd, uncovered in Dr. Sadikot's deposition that she was never licensed in Tennessee or a surrounding state. Defendant immediately moved to disqualify

4

her, and Plaintiff was required to withdraw her as a testifying witness.

Plaintiff only recently discovered that Dr. Sadikot was also his pre-suit "expert" when Mr. Cummings submitted his expenses for reimbursement. But Dr. Sadikot could not serve in that role. Nevertheless, Brian Cummings executed an affidavit with the filing of the Complaint that he had received a pre-suit opinion from a qualified expert, when he had not. The ramifications of this fraud are beyond the scope of this letter, but could expose Mr. Keefer to suit by VUMC for fraud in the inducement.[2]

## VII.    Brian Cummings has substantial liability to Brett Keefer.

Mr. Cummings committed objective, black letter legal malpractice by disclosing a statutorily incompetent expert. He committed a fraud upon the Court and the client by executing an affidavit claiming that he had consulted with a qualified physician prior to bringing the case.

If VUMC were to learn of this, it is possible they could seek repayment of the settlement agreement on the basis of fraud in the inducement. By now the statute of limitations and repose have run on refiling any claims belonging to the Plaintiff. Mr. Keefer is put in a highly precarious situation by Mr. Cummings' malpractice and deceit.

## VIII.    Conclusion

I am not in a position to respond to your letter demanding that my client commit to a forum for resolving some "dispute" that Mr. Cummings simultaneously and deliberately declines to identify. And while I cannot remotely imagine what Mr. Cummings thinks he is owed here, I can assure you that if he files suit, it will be met with significant counterclaims, and, ultimately a malicious prosecution action against him and any attorney and law firm unwise enough to take his case.

Finally, to the extent your prior letter included an enclosure that actually outlines whatever it is your client is asking proceed to arbitration or litigation, please send it to me so that I can evaluate it and discuss with Mr. Keefer. It is entirely plausible that my role as lead counsel in the *Shoemaker* matter would make me a witness in any future controversy. If that is the case, I have recommended that Mr. Keefer retain both the Gideon firm and Neal and Harwell to defend any meritless claims by Mr. Cummings as well as prosecute malpractice, fraud, breach of contract, and malicious prosecution actions against him.

Sincerely,

Afsoon Hagh

---

[2] Unbelievably, Mr. Cummings still insisted on being reimbursed for his expenses in retaining Dr. Sadikot; which the client has now paid him.

5

# Exhibit 4

LAW OFFICES
**PRICE, HILL & KOLARICH**
AN ASSOCIATION
SUITE 1800

JAMES W. PRICE, JR.*
WM. TIMOTHY HILL
201 4ᵗʰ AVENUE NORTH
* ALSO ADMITTED IN FLORIDA

NASHVILLE, TENNESSEE 37219

ROBERT E. KOLARICH**

** ALSO ADMITTED IN MISSOURI AND MISSISSIPPI

TELEPHONE 615-244-5772

TELECOPIER 615-244-5821

February 14, 2022

**Via email: afsoon@haghlaw.com**
Afsoon Hagh

Re:    Brian Cummings' Attorney Lien issue

Dear Ms. Hagh:

I am writing in response to your February 11, 2022 letter. Your letter communicated that you claim to have some confusion about what issue I was reaching out to you about in my recent written communication. I am copying Craig Gabbert and Phillip Young on this letter because they need to understand that as recently as February 11, 2022 you appear to claim some confusion about the existence of Brian Cummings' Attorney's Lien issue.

To be clear, I was contacting you about Brian Cummings' Attorney's Lien in the Shoemaker matter.

You are certainly aware of this Lien because of the following:

1. Notice of the Lien was filed and served in the Shoemaker case in 2020. You received a copy of that Notice.

2. On November 4, 2021, your attorney, Craig Gabbert emailed you and your husband and told you that Brian Cummings' Attorney's Lien would attach to funds that would be held in Mr. Gabbert's trust account, as seen here:

--------- Forwarded message ---------
From: **Gabbert, Craig V.** <CGabbert@bassberry.com>
Date: Thu, Nov 4, 2021, 1:21 PM
Subject: Cummings
To: Afsoon Hagh <afsoon@tntriallawyers.com>, Brian Manookian <brian@tntriallawyers.com>

Cummings needs to send an email confirming he is okay with the client being paid, the Edwards firm being paid and the balance of the money being sent to my trust account, to which his lien will attach.

BBS

Craig Gabbert
Counsel

**Bass, Berry & Sims** PLC
150 Third Avenue South, Suite 2800 · Nashville, TN 37201
615-742-6277 phone · 615-742-0465 fax
cgabbert@bassberry.com · www.bassberry.com

3. On November 6, 2021, you emailed mediator John Perry and Mr. Cummings and communicated the following regarding the Attorney's Lien / division of attorneys' fees issue:

---

**Re: Shoemaker v. Vanderbilt Mediation**
1 message

**Afsoon Hagh** <afsoon@haghlaw.com>                                                    Tue, Nov 16, 2021 at 10:56 AM
To: "John W. Perry Jr." <perry@pbrnbllc.com>
Cc: "brian@cummingsinjurylaw.com" <brian@cummingsinjurylaw.com>, Afsoon Hagh <afsoon@haghlaw.com>

John,

This looks great and thank you for your assistance here. The expectation is that we will get to a prompt resolution by mediation and if not move to arbitration. To put a finer point on it, no one is looking to drag this out. After talking with Brian Cummings, we will get you position statements no later than November 26. You can then just call us up individually, hear out both sides, do what you do best, and see if a deal is reachable. If it is, I know you can get us there. If it isn't, we just go to arbitration.

Thank you again, and we will both get you your statements by November 26.

---

4. On December 3, 2021, your attorney, Craig Gabbert sent the email below to you and the others listed which again references the fact and awareness everyone on the email that the funds kept in Mr. Gabbert's trust account were subject to, among other things, Brian Cummings' "claim/lien", as seen here:

---

**RE: 19C358, Keefer vs. VUMC**
1 message

**Gabbert, Craig V.** <CGabbert@bassberry.com>                                          Fri, Dec 3, 2021 at 8:18 AM
To: Phillip Young <phillip@thompsonburton.com>
Cc: Afsoon Hagh <afsoon@tntrial lawyers.com>, Bill Bystrynski <bbystrynski@edwardskirby.com>, EDWARDS JOHNNY <jedwards@edwardskirby.com>, "slefkovitz@lefkovitz.com" <slefkovitz@lefkovitz.com>, "brian@cummingsinjurylaw.com" <brian@cummingsinjurylaw.com>

Your client's claim/lien has attached to my escrow account by agreement, as has those of Brian Cummings and Phillip North's client. I am holding the fee there. The only thing I released were the funds necessary to pay/reimburse actual costs of travel, experts, etc. I don't understand why it is necessary to keep the case open.


BBS

**Craig Gabbert**
Counsel

**Bass, Berry & Sims PLC**
150 Third Avenue South, Suite 2800 · Nashville, TN 37201
615-742-6277 phone · 615-742-0465 fax
cgabbert@bassberry.com · www.bassberry.com

---

5. In 2022, you filed a document as counsel for Brett Keefer with the Fifth Circuit Court of Davidson County discussing the Attorney's Lien issue, and advocating, in part and among other arguments, for the Attorney's Lien issue to go to arbitration.

6.  In 2022, in a phone hearing with Judge Joe Binkley of the Fifth Circuit Court, you orally stated, among other things, that you would speak with your client as to whether he wanted to use arbitration for the Attorney's Lien issue, and if not, that Mr. Keefer would therefore waive any such obligation.

With the above details being presented to you, it should be clear to you that the issue on which I recently wrote to you about was Brian Cummings' Attorney's Lien.

The only thing I need to hear back from you on is what was discussed with the Court weeks ago – learning what your client's decision is as to whether arbitration will be used to resolve the issue of Brian Cummings' Attorney's Lien, or if he declines (aka waives) that option.

I look forward to hearing from you in writing by Monday, February 21, 2022 regarding this singular issue. I will save my comments about the facts, law, and argument about my client's Attorney's Lien for whatever forum your client's decision provides – arbitration or the court system.

Sincerely,

James W. Price, Jr.

JWP/vg

cc:    Craig Gabbert (via email)
       Phillip Young (via email)

# Exhibit 5

Case 3:23-ap-90036-DoD    Doc 12-5    Filed 08/02/23    Entered 08/02/23 16:17:06    Desc
Exhibit 5 - Price to Hagh 2-15-22    Page 1 of 2
138

JAMES W. PRICE, JR.*
WM. TIMOTHY HILL

* ALSO ADMITTED IN FLORIDA

LAW OFFICES
**PRICE, HILL & KOLARICH**
AN ASSOCIATION
SUITE 1800
201 4th AVENUE NORTH
NASHVILLE, TENNESSEE 37219

TELEPHONE 615-244-5772
TELECOPIER 615-244-5821

ROBERT E. KOLARICH**

** ALSO ADMITTED IN MISSOURI AND MISSISSIPPI

February 15, 2022

Afsoon Hagh
Hagh Law PLC
1906 Glen Echo Road, #150229
Nashville, TN 37215

226 Pelham Dr.
Brentwood, TN 37027-4237

Re: *Brian Cummings' Attorney Lien dispute*

Dear Ms. Hagh:

Yesterday, I attempted to send you a copy of the letter which I mailed by the U.S. Postal Service in response to your email last Friday. Unfortunately, I discovered that your computer has blocked me. This has happened on at least two prior occasions and it has also blocked my secretary's emails to you. In addition to that, I have attempted to send you a fax, which was blocked at your office. I have, on at least one occasion, phoned you and left a message on your answering machine to return a call, which you did not do.

In order for us to promptly proceed in this dispute concerning attorneys' fees, it is necessary that you and I are able to communicate. I am therefore requesting that you immediately remove the blocks on your computer system and your fax.

Very truly yours,

James W. Price, Jr.

JWP/vg

cc: Brian Cummings

# Exhibit 6

Case 3:23-ap-00036-DoD    Doc 12-6    Filed 08/02/23    Entered 08/02/23 16:17:05    Desc
Case 3:23-ap-00036    Doc 42-6    Filed 08/02/23    Entered 08/02/23    Page ID #:566
Exhibit 6 - Hagh to Price 2-21-22    Page 1 of 3

140

Correspondence from:
**Afsoon Hagh, Attorney**
afsoon@haghlaw.com



AFSOON HAGH
Licensed to practice in TN

February 21, 2022

**VIA FAX**
James Price
201 4th Avenue North
Nashville, TN 37219
Fax: 615-244-5821

     *Re:    Keefer v. VUMC*

Mr. Price,

     I am in receipt of your letters dated February 14 and 15, 2022. In response to the latter's inquiry regarding my email, I prefer receiving correspondence by letter at 1906 Glen Echo Road, 150229, Nashville, Tennessee 37215.

     Your letter of February 14, 2022 again asks my client to elect a forum in which to be sued over a dispute you again refuse to describe. I have already explained to you in a multi-page letter why my client cannot do that given the lack of information provided. I will try to explain again here.

     You want my client to tell you whether he would prefer to arbitrate or litigate "the existence of Brian Cummings' attorney's lien issue." But an attorney's lien can only arise either out of advanced expenses or as compensation in the form of a fee for work performed. In the present matter:

1. Brian Cummings has already been paid in full for all advanced expenses for which he requested reimbursement; and

2. Brian Cummings drafted and signed a contract which does not permit a fee for work performed where the attorney quits; which Brian Cummings did.

     Mr. Cummings has been paid his expenses. And he elected not to receive a fee by insisting on a contract that precludes one in the event of an attorney's withdrawal and then withdrawing. Because of these facts, I do not know, and I cannot speculate as to, what you believe Mr. Cummings' claims to be. For whatever reason, you have repeatedly and deliberately refused to describe them.

I am sure that you fully understand that by declining to outline Mr. Cummings' "claims," you prevent my client from considering your demand regarding arbitration or litigation.

In sum, it is not productive for you to repeatedly demand decisions from my client about a matter you refuse to describe. If you would like to discuss this further, I would ask that you first send me a draft complaint of whatever you intend to file. After reviewing any legal or factual bases for Mr. Cummings' claims, I will be back in touch.

Sincerely,

Afsoon Hagh

2

# Exhibit 7

Case 3:23-ap-00980-DoD Doc 12-7 Filed 08/02/23 Entered 08/02/23 16:17:05 Desc
Index 7 - Price to Hagh 3-8-22    Page 1 of 2

143

LAW OFFICES
**PRICE, HILL & KOLARICH**
AN ASSOCIATION
SUITE 1800
201 4th AVENUE NORTH
NASHVILLE, TENNESSEE 37219

JAMES W. PRICE, JR.*
WM. TIMOTHY HILL

ROBERT E. KOLARICH**

* ALSO ADMITTED IN FLORIDA

** ALSO ADMITTED IN MISSOURI AND MISSISSIPPI

TELEPHONE 615-244-5772
TELECOPIER 615-244-5821

March 8, 2022

Afsoon Hagh
Hagh Law PLC
1906 Glen Echo Road, #150229
Nashville, TN 37215

Re:   *Brian Cummings' Attorney Lien dispute*

Dear Ms. Hagh:

I am in receipt of your recent letter and believe, despite your assertions to the contrary, that you are fully aware of the basis of Mr. Cummings' claim for attorney fees. I therefore conclude that your client does not wish to resolve this dispute thru arbitration and that he therefore waives any right to arbitration that you or he already claimed may otherwise exist via an attorney fee agreement.

While the previous attempt at mediating the attorney's lien issue and a potential arbitration would have prevented any issues becoming public that you claim could jeopardize Mr. Keefer's settlement, the corresponding decisions by you and Mr. Keefer indicate that the two of you have no actual interest in keeping the resolution of Mr. Cummings' attorney's lien matter out of the court system to protect against that supposed concern. I presume you advised your client, Mr. Keefer, of this issue and that he relied on your advice in not agreeing to arbitration.

We will proceed to file an action in the Circuit Court to enforce Mr. Cummings' lien and obtain for him the attorney's fee amount determined by the Court.

Please let me know if you can accept service for your client. Unless I hear otherwise, I will presume you continue to represent Mr. Keefer and that you can accept service on his behalf on this issue on which you already represent him.

Very truly yours,

James W. Price, Jr.

JWP/vg

cc:   Brian Cummings

# Exhibit 8

Case 3:23-ap-90036 Doc 42-8 Filed 08/02/23 Entered 08/02/23 16:17:05 Desc
Exhibit 8 - Spragens to Price 7-22-22    Page 1 of 3

145

# SPRAGENS LAW PLC

July 22, 2022

**VIA EMAIL**

James Price
201 4th Ave. North
Nashville, TN 37219
Fax: 615-244-5821
jprice@pricehillkolarich.com

> Re: **Cummings v. Keefer**

Mr. Price,

I represent Manookian PLLC. As you know, Manookian PLLC was retained by Bretton Keefer to prosecute a medical malpractice action against Vanderbilt University Medical Center arising out of her death at that facility.

It appears that you have filed a lawsuit on behalf of Brian Cummings claiming that Brian Cummings is owed some unspecified amount of money for work he claims to have performed for Mr. Keefer. My client may be an interested party in that matter.

On July 5, 2022, you filed what you apparently claim is "Proof of Service" on Bretton Keefer in *Cummings v. Keefer*, United Stated District Court for the Middle District of Tennessee, Case 3:22-cv-00301.

To the extent you are representing to the Court or any other interested party that you have properly served Mr. Keefer with a copy of the summons and Complaint in that case, your representation appears to be both false and defective.

1. The Affidavit of Proof of Service is signed by someone named Vicki Glover. However, Ms. Glover does not declare that she personally served Mr. Keefer; she does not identify any place of service; and she does not identify any date of service.

2. Indeed, Ms. Glover does not appear to even represent that service took place. Instead, she simply checks the box for "Other" then hand writes "Certified Mail – Return Receipt Attached." This deficiency alone demonstrates that proper service has not been achieved,

311 22ND AVE. N. | NASHVILLE, TN 37203
P (615) 983-8900 | F (615) 682-8533 | SPRAGENSLAW.COM

Case 3:23-cv-00961 Document 21-1 Filed 08/21/23 Page 1 of 2 PageID #: 872
Exhibit 8 - Spragens to Price 7-22-22    Page 2 of 3
146

in that no person is actually declaring that service took place on a specified individual at a specified location on a specified date.

3. Equally defective is the return receipt which Ms. Glover attaches. That return receipt:

    a. **is signed by someone other than Brett Keefer**;
    b. fails to identify the signatory as either the Agent or Addressee;
    c. fails to identify the printed name of the recipient; and
    d. fails to identify the date of delivery.

I have attached a copy of an engagement agreement that was executed by Brett Keefer and Mr. Cummings. **You will note that the signature on the return receipt you filed with the Court is not Brett Keefer's.**

Finally, my understanding is that the address to which you sent the certified mail identified in your "Proof of Service" is a religious community containing multiple residences. You, yourself, have sworn to that fact in an undated Declaration to the Court filed June 27, 2022. My further understanding is that Brett Keefer does not reside at that address.

I would ask that you correct your filing with the Court so that Manookian PLLC is not required to intervene to do so. I would also be happy, at your request, to make inquiries into Mr. Keefer's current place of residence in order to facilitate proper and actual service. Please simply let me know.

Sincerely,

John Spragens
SPRAGENS LAW PLC

cc:
Jeanne Burton c/o Phillip Young, Esq. (via email)

Case 3:22-cv-00301 Document 25-1 Filed 08/23/22 Page 3 of 3 PageID #: 116
Case 3:23-ap-90036 Document 82 Filed 08/02/23 Entered 08/02/23 Page 6 of 15573
Exhibit 8 - Spragens to Price 7-22-22 Page 3 of 3
147

# Exhibit 9

LAW OFFICES
**PRICE, HILL & KOLARICH**
AN ASSOCIATION
SUITE 1800
201 4th AVENUE NORTH
NASHVILLE, TENNESSEE 37219

TELEPHONE 615-244-5772
TELECOPIER 615-244-5821

JAMES W. PRICE, JR.*
WM. TIMOTHY HILL

* ALSO ADMITTED IN FLORIDA

ROBERT E. KOLARICH**

** ALSO ADMITTED IN MISSOURI AND MISSISSIPPI

August 8, 2022

John Spragens
John Spragens Law, PLC
311 22nd Ave. N.
Nashville, TN 37203

     Re:   *Brian Cummings vs. Shoemaker, et al.*

Dear Mr. Spragens:

     Thank you very much for your letter of July 27th concerning service of process on Mr. Keefer. I have attempted on several occasions to contact you by phone but have been unable to get through to you and accordingly am responding by mail. I very much appreciate your offer to get in contact with Mr. Keefer. Please lset me know how I may contact you.

     I also note that because you are representing Cummings Manookian, PLC in the bankruptcy proceedings that you must be in contact with both Brian Manookian and his wife, Afsoon Hagh. As you are no doubt aware, I have attempted several times to serve Ms. Hagh at all of her known addresses including that which is listed with the Board of Professional Responsibility, however, I have not been able to get her to respnd. She has also blocked my email and phone so I am unable to speak to her directly. I know that she is aware that I have attempted to serve her because I spoke to her attorney, Craig Gabbert, requesting for him to accept service and he advised that based upon his conversation with her, he was unable to accept service.

     I am unable to understand why she is unwilling to contact me or respond to my service of process. I would appreciate any information you can give to me or to her so that we can proceed with this lawsuit. It is in no one's best interest that this matter continue to be delayed.

     Thank you for your assistance in advance.

                  Very truly yours,

                  James W. Price, Jr.

JWP/vg

cc:   Brian Cummings

Case 3:23-ap-90036 Doc 42-9 Filed 08/02/23 Entered 08/02/23 16:17:05 Desc
Case 3:23-ap-90036 Doc 41-2 Filed 08/02/23 Entered 08/02/23 16:17:06 Page 150 of 575
Exhibit 9 - Price to Spragens 8-8-22   Page 2 of 2

149

# Exhibit 10

**From:** Liz Tipping
**Sent:** Friday, February 24, 2023 4:09 PM
**To:** John Spragens
**Subject:** Cummings v. Hagh - service email
**Attachments:** 12-1 - Amended Complaint.pdf

John,

Thank-you for agreeing to accept service on behalf of Afsoon Hagh and Bretton Keefer via email. Pursuant to our agreement as confirmed in the Agreed Order filed today, attached is the Amended Complaint filed in the matter of Cummings v. Hagh et al.

Liz

**Liz Tipping**
Attorney



Counterpoint Legal, PLC
2689 Union Hill Road
Joelton, TN 37080

Phone: 615-426-5566
Email: liz@counterpointlaw.com

This electronic communication and any file attached to it are intended solely for the person to whom it is addressed and may contain information that is confidential, legally privileged, protected by privacy laws, or otherwise restricted from disclosure to anyone else. If you have received this electronic communication in error, please immediately notify the sender by reply e-mail, delete the communication, and destroy any printed copy of it. Any use, duplication, distribution, or dissemination of this electronic communication by anyone who receives it in error is strictly prohibited. Thank you.

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| BRIAN CUMMINGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:22-cv-00301 |
| v. | ) |
| | ) |
| BRETTON KEEFER, on behalf of the | ) |
| deceased, CHESTA SHOEMAKER, | ) |
| AFSOON HAGH, and | ) |
| JEANNE BURTON, Trustee on behalf of | ) |
| CUMMINGS MANOOKIAN, PLC, | ) |
| | ) |
| Defendants. | ) |

## AMENDED COMPLAINT

The Plaintiff, for this cause of action, respectfully states to the Court and trier of fact as follows:

### PARTIES, VENUE, AND JURISDICTION

1. The Plaintiff, Brian Cummings ("Mr. Cummings"), is an adult resident of Tennessee.

2. The majority of legal work performed by Mr. Cummings on behalf of his former client, and a Defendant in this action, Bretton Keefer, on behalf of the deceased, Chesta Shoemaker, was performed in Davidson County, Tennessee.

3. The Defendant in this action, Bretton Keefer ("Mr. Keefer"), on behalf of the deceased, Chesta Shoemaker, received the benefit of Mr. Cummings' time, legal work, and financial funding of his previously-filed and now resolved health care liability, wrongful death

lawsuit that bore docket number 19C358 in the Davidson County, Tennessee Circuit Courts ("the Keefer matter"). The original Complaint in the Keefer matter was prepared and filed in February 2019, by Mr. Cummings, who was, at that time, a partner in Cummings Manookian, PLC ("Cummings Manookian"), a law firm based in Davidson County, Tennessee.

4.  Afsoon Hagh ("Ms. Hagh") was one of the attorneys who did work on behalf of Mr. Keefer in the Keefer matter, and she did some of her attorney work on this matter in Davidson County, Tennessee.

5.  Mr. Cummings voluntarily withdrew from Cummings Manookian in 2018, leaving Brian Manookian ("Mr. Manookian") as the only remaining Member of Cummings Manookian. The financial situation of Cummings Manookian changed after Mr. Cummings' withdrawal from the firm to the extent that Mr. Manookian put Cummings Manookian into bankruptcy proceedings.

6.  Jeanne Burton is the Trustee for Cummings Manookian in those bankruptcy proceedings.

7.  Attorney work was done on the Keefer matter by Brian Cummings while he was still a Member at Cummings Manookian, but that work was a very small percentage of the overall time and work performed by Mr. Cummings on the Keefer matter.

8.  The original Complaint filed in the Keefer matter by Mr. Cummings in February 2019, listed Ms. Hagh as co-counsel with Mr. Cummings for Mr. Keefer. That Complaint properly identified Mr. Cummings as being with his new firm, Cummings Law, and that Complaint properly identified Ms. Hagh as being with her firm at that time, Cummings Manookian.

Case 3:22-cv-00301   Document 12-1   Filed 06/21/22   Page 2 of 13 PageID #: 72
Case 3:23-ap-90036   Doc 12-1   Filed 02/23/23   Entered 02/23/23 19:17:05   Desc
Exhibit 10 - Tipping to Spragens 2-24-23    Page 4 of 15

153

9.     Jeanne Burton, as Trustee in bankruptcy for Cummings Manookian, is a proper party to this matter because some portion of the attorney work done related to the attorney's lien issue was performed by at least one attorney while such an attorney was still a part of Cummings Manookian and because the monetary value of the attorney work by any attorneys who at the time of that work were a part of Cummings Manookian makes that monetary amount a concern / asset of the Cummings Manookian bankruptcy proceeding.

10.     Venue and jurisdiction are appropriate with the Circuit Courts of Davidson County, Tennessee.

## FACTS AND CLAIMS

11.     Mr. Cummings signed Mr. Keefer as a client on behalf of Cummings Manookian in 2017 via an Attorney-Client Agreement ("CM Agreement"). The CM Agreement included a contingency fee provision, and the fee was to be earned by Cummings Manookian, via work performed by Brian Cummings and/or Brian Manookian only if Mr. Keefer received a monetary award via settlement, judgment, or award from the Keefer matter.

12.     Mr. Cummings continued to work on the Keefer matter after leaving Cummings Manookian in 2018, including with the knowledge and consent of Mr. Keefer and for the benefit of Mr. Keefer and the other beneficiaries of the Keefer matter.

13.     Mr. Cummings performed legal work on the Keefer matter for over three years until he withdrew as counsel for Mr. Keefer in October 2020.

14.     Mr. Cummings withdrew as counsel in October 2020 after separate oral statements to him by Ms. Hagh and by Mr. Keefer during an approximately one week period indicated that their working relationships were strained. Mr. Cummings promptly called the Tennessee Board of Professional Responsibility ("BPR") asking if those statements required him

Case 3:22-cv-00301   Document 12-1   Filed 06/21/22   Page 3 of 13 PageID #: 73
Case 3:23-ap-90036   Doc 12-1   Filed 02/23/23   Entered 08/02/23 19:17:05   Desc
Exhibit 10 - Tipping to Spragens 2-24-23     Page 5 of 15
154

to withdraw as counsel, and he was told by the BPR with no equivocation and with no qualification that he was required to withdraw as counsel and to do so as soon as possible.

15.     Mr. Cummings' withdrawal as counsel was not a choice he made, and it was not a voluntary withdrawal, because it was the comments by the client and by co-counsel, Ms. Hagh, that led to the situation that resulted in the BPR telling Mr. Cummings he was required to withdraw as soon as possible because he could no longer properly and ethically represent Mr. Keefer based on the comments made by Ms. Hagh and by Mr. Keefer.

16.     Mr. Cummings was ethically required to follow the instructions and advice of the BPR in response to what action to take based on the comments made to him by Mr. Keefer and by Ms. Hagh.

17.     In October 2020, Mr. Cummings provided a private letter to Mr. Keefer and Ms. Hagh communicating his withdrawal as counsel, and informing Mr. Keefer and Ms. Hagh that Mr. Cummings understood he was ethically required to withdraw as counsel based on the comments that Mr. Keefer and Ms. Hagh had very recently made. Neither Mr. Keefer nor Ms. Hagh ever communicated to Mr. Cummings orally or in writing that they had any factual or legal dispute with regard to the content of Mr. Cummings' October 2020 letter to them that communicating that Mr. Cummings believed he was required to withdraw as counsel because of the comments made by Ms. Hagh and by Mr. Keefer.

18.     In October 2020, Mr. Cummings filed a Motion to Withdraw as Counsel for the Plaintiff ("Motion to Withdraw"). By the time that the Motion to Withdraw was filed, Mr. Keefer and Ms. Hagh had received a copy of Mr. Cummings October 2020 letter stating that Mr. Cummings believed he was ethically required to withdraw as a result of the comments made by

Case 3:22-cv-00301   Document 12-1   Filed 06/21/22   Page 4 of 13 PageID #: 74
Case 3:23-ap-90036   Document 12-1   Filed 02/23/23   Entered 08/02/23 19:17:05   Page 5 of 81
Exhibit 10 - Tipping to Spragens 2-24-23     Page 6 of 15     155

Ms. Hagh and by Mr. Keefer, and neither Mr. Keefer nor Ms. Hagh filed any type of Response in any way disputing or opposing the Motion to Withdraw.

19.     On November 20, 2020, the Fifth Circuit Court entered an Order granting Mr. Cummings' Motion to Withdraw as Counsel.

20.     On November 27, 2020, Mr. Cummings filed, in the Keefer lawsuit, a document entitled "Brian Cummings' Notice of Attorney's Lien" and this document cited Tennessee Code Annotated section 23-2-102.

21.     Mr. Keefer and Ms. Hagh learned of the filing of Brian Cummings' Notice of Attorney's Lien within days of its filing, including Ms. Hagh receiving a copy through the Circuit Court's electronic filing system.

22.     According to the publicly-available information on Caselink regarding the Davidson County Circuit Courts, the Fifth Circuit Court approved a settlement involving minor beneficiaries in the Keefer matter in October 2021.

23.     The Circuit Court approved a settlement in this matter involving at least one minor beneficiary, and therefore the Court also found that the amount of the settlement was acceptable/reasonable, and any such Court-approval included approving the total attorneys' fee.

24.     Tennessee Code Annotated section 23-2-102 provides a lien upon a plaintiff's or complainant's right of action from the date of the filing of the suit.

25.     Prior to the filing of the lawsuit, Mr. Cummings performed all aspects of the intake of the case, including meeting with and signing the client within two days of the death of the client's mother.

Case 3:22-cv-00301   Document 12-1   Filed 06/21/22   Page 5 of 13 PageID #: 75
Case 3:23-ap-90036   Document 12-1   Filed 02/23/23   Entered 08/02/23 19:17:05   Desc
Exhibit 10 - Tipping to Spragens 2-24-23     Page 7 of 15         156

26.     After a review of the records from Vanderbilt Hospital, Mr. Cummings prepared the detailed expert summary letter which became the basis of the Complaint and the basis of the detailed summary letter sent to all experts.

27.     Mr. Cummings attended the presuit mediation as the only attorney on behalf of the Plaintiff.

28.     Mr. Cummings prepared and timely filed the 550 paragraph, 65 page, Complaint.

29.     Mr. Cummings prepared and propounded a significant portion of the written discovery propounded upon the Defendant. Mr. Cummings worked with the Plaintiff in preparing all of Plaintiff's written responses to discovery, at least through October 2020.

30.     Mr. Cummings contacted and retained all Rule 26 witnesses including all of the medical experts.

31.     After the filing of the Complaint and written discovery, Mr. Cummings continued to work diligently on behalf of the Plaintiff, including, but not limited to, (a) keeping Mr. Keefer updated regarding case events, answering questions he had, and working with him and meeting with him to prepare his typed, formal responses to written discovery, (b) contacting, retaining, and preparing and sending summaries of case materials (including deposition testimony and responses to written discovery) and copies of the underlying case materials to all of Mr. Keefer's eventual Rule 26 experts (and being the only attorney for Mr. Keefer to do so), of which there were eight or more medical experts and one expert economist, (c) preparing Mr. Keefer for his deposition and defending his deposition (and being the only attorney for Mr. Keefer to do so), (d) preparing Edward Goodwin, the decedent's boyfriend/fiancé for his deposition and defending his deposition (and being the only attorney for Mr. Keefer to do so), (e) taking or defending approximately 14 of the approximately 30 depositions that occurred (some of these depositions

Case 3:22-cv-00301   Document 12-1   Filed 06/21/22   Page 6 of 13 PageID #: 76
Case 3:23-cv-00036   Document 112-1   Filed 08/02/23   Entered 08/02/23 19:17:05   Desc
Exhibit 10 - Tipping to Spragens 2-24-23     Page 8 of 15
157

were the same witness deposed in two parts / two depositions), and (f) preparing and serving Mr. Keefer's original approximately 85 page Rule 26 disclosures (and being the only attorney for Mr. Keefer to do so).

32.     The entire duration of the Keefer matter from the time of signing the client to the Court approval referenced herein was 54 months.

33.     Mr. Cummings was counsel or co-counsel on the Keefer matter from April 2017 through October 2020, which is 42 months.

34.     Mr. Cummings' involvement for 42 months of the 54 months of the total duration of the Keefer matter represents 78% of the total duration of the Keefer matter.

35.     Another attorney, Brian Manookian ("Mr. Manookian"), did some of the work on the Keefer matter, including Mr. Manookian doing some of the work while Mr. Manookian was still a Member at Cummings Manookian.

36.     Mr. Manookian was not listed as counsel of record for Mr. Keefer when the original Complaint was filed – only Mr. Cummings and Ms. Hagh were.

37.     Mr. Manookian has never informed Mr. Keefer, Ms. Hagh, or Mr. Cummings that he is seeking any amount of an attorney's fee from the Keefer matter.

38.     Mr. Manookian has never filed a Notice of Attorney's Lien regarding the Keefer matter.

39.     During Mr. Cummings' 42 months of involvement as counsel for Mr. Keefer, he and his firm, Cummings Law, paid over $60,000.00 in litigation expenses incurred during that period of time on the Keefer matter.

40.     During Mr. Cummings' 42 months of involvement as counsel for Mr. Keefer, he paid 90-100% of the litigation expenses incurred during that period of time.

Case 3:22-cv-00301  Document 12-1  Filed 06/21/22  Page 7 of 13 PageID #: 77
Case 3:23-ap-90036 Document 12-1 Filed 02/23/23 Entered 08/02/23 19: Page 5 Desc
Exhibit 10 - Tipping to Spragens 2-24-23    Page 9 of 15

158

41.     By the time of Mr. Cummings' withdrawal, he had tried approximately 20 healthcare liability actions to verdict, including as second-chair or first-chair, and including trials in healthcare liability trials in the Fifth Circuit Court of Davidson County, Tennessee.

42.     By the time of Mr. Cummings' withdrawal, he had successfully completed the oral exam and the written exam to become Board certified in Medical Malpractice by the American Board of Professional Liability Attorneys (ABPLA) and he was certified accordingly.

43.     Mr. Keefer and the other beneficiaries in this matter have already received their net proceeds from the Keefer matter minus the litigation expenses and minus a total 33.33% attorneys' fee.

44.     To date, Mr. Cummings has not been paid or provided an attorney's fee for his 42 months of involvement and work on the Keefer matter that has apparently settled with Court approval.

45.     At this point, the amount of money determined to be provided to Mr. Cummings related his work in this matter and related to his attorney's lien does not change the amount of net proceeds to Mr. Keefer or the other beneficiaries from the Keefer matter.

46.     The amount of money determined to be provided to Mr. Cummings related to his work in this matter and related to his attorney's lien affects what amount of money Ms. Hagh receives for her attorney work on the Keefer matter.

47.     John Edwards ("Mr. Edwards"), an attorney from North Carolina, was co-counsel for Mr. Keefer at the end of this matter for less than 12 months.

48.     Mr. Edwards and his law firm were already provided with an agreed-to amount of attorneys' fees amount for their work in this matter.

Case 3:22-cv-00301   Document 12-1   Filed 06/21/22   Page 8 of 13 PageID #: 78
Case 3:23-cv-00036   Document 12-1   Filed 01/23/23   Entered 08/02/23 19:17:05   Page 585
Exhibit 10 - Tipping to Spragens 2-24-23     Page 10 of 15

159

49. The remaining balance of attorney fees after Mr. Edwards received his fee are being held in the Bass, Berry, & Sims' Attorney Trust Account and will not be distributed until the dispute over attorneys' fees has been resolved.

50. Mr. Edwards and his law firm were paid an amount of attorneys' fees from the total attorneys' fees in this matter per the terms of an agreement that Mr. Edwards and his firm had entered into with Mr. Keefer and / or Ms. Hagh as to what that split or portion of the total attorney's fee would be.

51. During Mr. Cummings' involvement in the case, Mr. Cummings did not have an agreement with Mr. Keefer and / or Ms. Hagh as to what Mr. Cummings' split or portion of the total attorney's fee would be.

52. At this point, the amount of money determined to be provided to Mr. Cummings related to his work in this matter and related to his attorney's lien has no effect on the amount of attorneys' fees paid to Mr. Edwards and his law firm.

53. Mr. Cummings attempted to resolve this attorney's lien issue via mediation in late 2021, during which time Ms. Hagh represented Mr. Keefer on the attorney's lien issue, but that mediation effort did not resolve the matter.

54. When Ms. Hagh represented Mr. Keefer on the attorney's lien issue, her share of the total attorney's fee would decrease based on what amount of that total attorneys' fee was provided to Mr. Cummings.

55. In filings made by Ms. Hagh on behalf of Mr. Keefer on the attorney's lien issue, Ms. Hagh indicated that Mr. Keefer contended that arbitration was required on the attorney's lien issue, and Judge Joseph Binkley of the Fifth Circuit Court told Ms. Hagh to speak with Mr. Keefer to allow Mr. Keefer to choose if he wanted to proceed with arbitration or waive that

Case 3:22-cv-00301   Document 12-1   Filed 06/21/22   Page 9 of 13 PageID #: 79
Case 3:23-cv-00036   Document 112-1   Filed 08/02/23   Entered 08/02/23 19:17:05   Page 11 of 15
Exhibit 10 - Tipping to Spragens 2-24-23    Page 11 of 15    160

option. Months have passed since that instruction by Judge Binkley, and during that time counsel for Mr. Cummings has repeatedly asked Ms. Hagh in writing if Mr. Keefer was choosing to arbitrate the issue, and Ms. Hagh has communicated that she and Mr. Keefer claim to not understand what issue required resolution regarding Mr. Cummings' attorney's lien and have never communicated that Mr. Keefer chooses arbitration. Consequently, any potential right Mr. Keefer may have had to require arbitration of the attorney's lien issue was declined and/or was waived.

56. Also in filings made by Ms. Hagh on behalf of Mr. Keefer on the attorney's lien issue, Ms. Hagh indicated that Mr. Keefer contended that any litigation regarding the attorney's lien issue had to proceed via a lawsuit filed separately from the Keefer healthcare liability matter. In accordance with that position of Mr. Keefer as stated by Ms. Hagh that a separate lawsuit was required to be filed to address the attorney's lien issue, this present action is filed.

57. In 2019, Mr. Keefer entered into a new Attorney-Client Agreement regarding the Keefer matter with a firm named Manookian PLLC ("Manookian firm" and "Manookian agreement").

58. The only attorney who signed the Manookian agreement was Mr. Manookian.

59. The Manookian agreement was the first Attorney-Client Agreement that Mr. Keefer signed that mentioned Ms. Hagh in any way.

60. Ms. Hagh did not have a signature line on the Manookian agreement, and Ms. Hagh did not sign the Manookian agreement.

61. The Manookian firm was not a party to the Attorney-Client Agreement that Mr. Keefer entered into with Cummings Manookian in 2017.

Case 3:22-cv-00301   Document 12-1   Filed 06/21/22   Page 10 of 13 PageID #: 80
Case 3:23-ap-90036   Document 11-2   Filed 02/23/23   Entered 08/02/23 19:17:05   Desc
Exhibit 10 - Tipping to Spragens 2-24-23      Page 12 of 15

161

62.     The Manookian agreement stated, in part, that the law firm of Cummings Manookian no longer existed, and Mr. Keefer signed and entered into the Manookian agreement.

63.     The Manookian agreement stated, in part, that a portion of the total attorneys' fees on the Keefer matter may be split with Brian Cummings of Cummings Law, and that this portion of the attorneys' fees paid to Brian Cummings would come from the total 33.33% contingence fee.

64.     When Mr. Keefer signed the Manookian agreement in 2019, Mr. Keefer should have reasonably understood that Mr. Cummings would receive a portion of the total attorneys' fee on the Keefer matter for the legal work that Mr. Cummings performed on the Keefer matter. Mr. Cummings was not a party or signatory to the Manookian agreement.

65.     The Manookian agreement was entered into without Mr. Cummings being told by Mr. Keefer, Ms. Hagh, or Mr. Manookian about the proposal that Mr. Keefer enter into the Manookian agreement.

66.     Mr. Cummings provided legal services that benefited Mr. Keefer, and that benefitted Ms. Hagh regarding her interest in the resulting total attorney's fee, that Mr. Keefer and Ms. Hagh received, that were valuable legal services, and Mr. Cummings did so without an enforceable, written agreement with Mr. Keefer or with Ms. Hagh as to what split or portion of the total attorney's fee would be paid to Mr. Cummings under any situation.

67.     During the time period that Mr. Cummings provided legal services for Mr. Keefer during the Keefer matter, Mr. Cummings expected to be compensated for his legal work.

68.     During the time period that Mr. Cummings provided legal services for Mr. Keefer during the Keefer matter, Mr. Keefer and Ms. Hagh should have reasonably understood that Mr. Cummings expected to be compensated for his legal work on the Keefer matter.

Case 3:22-cv-00301   Document 12-1   Filed 06/21/22   Page 11 of 13 PageID #: 81
Case 3:23-ap-90036   Document 12-1   Filed 02/23/23   Entered 08/02/23 19:17:05   Desc
Exhibit 10 - Tipping to Spragens 2-24-23      Page 13 of 15

162

69. It would be unjust for Mr. Cummings to not be compensated for his legal work on the Keefer matter.

70. Ms. Hagh would be unjustly enriched if she were to receive funds which were earned by Mr. Cummings for his service in the Shoemaker matter.

71. Mr. Cummings has never entered into an agreement of any kind that waived his right to be paid a reasonable amount for his legal work he performed on the Keefer matter if he was required to withdraw as counsel under our factual situation.

72. Mr. Cummings has never entered into an agreement of any kind that waived his right to an attorney's lien, including the right to an attorney's lien that arose at the time he filed the Keefer matter in 2019.

73. Mr. Cummings has never entered into an agreement of any kind that waived his right to be paid a reasonable amount for his legal work if he withdrew as counsel for any reason if Mr. Keefer had existing co-counsel continuing to be available for Mr. Keefer and who stayed involved in the matter.

74. Mr. Keefer signed and entered into two different Attorney-Client Agreements in the Keefer matter, one in 2017 and a second in 2019, and both of these Agreements referred to Mr. Cummings receiving some unidentified portion of the total attorneys' fee.

75. The statute that provides the applicable right to an attorney's lien for Mr. Cummings, Tenn. Code Ann. section 23-2-102, does not include any exclusionary language or provisions by which such a right to an attorney's lien can be waived or negated by any facts or alleged circumstances after an attorney filed the applicable lawsuit on behalf of a plaintiff.

Plaintiff's prayers for relief are:

1. That Defendants be served and required to answer as required by law.

Case 3:22-cv-00301   Document 12-1   Filed 06/21/22   Page 12 of 13 PageID #: 82
Case 3:23-cv-00036   Document 112-1   Filed 01/23/23   Entered 08/02/23 19:17:05   Desc
Exhibit 10 - Tipping to Spragens 2-24-23   Page 14 of 15
163

2.      That upon a hearing in this matter, the Court find that it would be unjust for

Mr. Cummings not be fairly compensated for the work done in the Keefer matter and that it

would be further unjust for Ms. Hagh to be paid and receive the benefits of Mr. Cummings work.


3.      That the Court determine the amount Mr. Cummings is to be awarded for his

Involvement in the Keefer matter pursuant to his timely filed Notice of Attorney's Lien, and

pursuant to the common law remedies, including quantum meruit, unjust enrichment (to Mr.

Keefer and/or Ms. Hagh), and equality and that he be granted judgement accordingly.

4.      For general relief.

<div align="center">Respectfully submitted,</div>


<div align="center">

_/s/  James W. Price, Jr._
**JAMES W. PRICE, JR., #3538**
Price, Hill, & Kolarich
201 4th Avenue N., Suite 1800
Nashville, TN 37219
(615) 244-5772 – phone
(615) 244-5821 - fax
Jprice@pricehillkolarich.com
*Attorney for the Plaintiff*

</div>

Case 3:22-cv-00301   Document 12-1   Filed 06/21/22   Page 13 of 13 PageID #: 83
Case 3:23-cv-00036   Document 12-1   Filed 08/02/23   Entered 08/02/23 19:17:05   Desc
Exhibit 10 - Tipping to Spragens 2-24-23   Page 15 of 15

164


Neutral

As of: August 2, 2023 11:06 PM Z

# *In re Project Restore, LLC*

United States Bankruptcy Court for the Middle District of Tennessee

October 7, 2022, Decided

Case No. 3:22-bk-01897, Chapter 7

**Reporter**

2022 Bankr. LEXIS 2868 *; 2022 WL 6233552

IN RE: Project Restore, LLC, Debtor.

## Core Terms

arbitration, involuntary, petitioning creditor, bona fide dispute, involuntary bankruptcy, arbitration agreement, bankruptcy court, contracts, disputes, parties, exclusive jurisdiction, purposes, abstain, arbitration provision, inherent conflict, Petitioning, matters, courts, cases

## Case Summary

### Overview

HOLDINGS: [1]-When creditors filed an involuntary petition against the debtor under Chapter 7 of the Bankruptcy Code relating to defaulted construction contracts, denial of the debtor's motion to dismiss or for abstention based on the arbitration agreements in the contracts signed by the creditors was appropriate because the debtor's position of requiring arbitration as a prerequisite to an involuntary bankruptcy petition unduly would have thwarted the rights of the creditors and created a result at odds with the Bankruptcy Code. Determination of the validity of the creditors' petition and whether to enter an order for relief were matters over which the court had exclusive jurisdiction and not something that was to be assigned to an arbitrator simply because the parties had an agreement to arbitrate their contract disputes.

### Outcome

Debtor's motion denied to extent motion sought dismissal or abstention based on arbitration agreements.

## LexisNexis® Headnotes

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Prerequisites for Commencement

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Standing

**HN1**[ ] **Involuntary Cases, Prerequisites for Commencement**

The critical initial issue in any involuntary bankruptcy is whether petitioning creditors' claims are subject to a bona fide dispute — not the actual allowance, disallowance, or liquidation of those claims.

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Eligible Debtors

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Prerequisites for Commencement

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Standing

**HN2**[ ] **Involuntary Cases, Eligible Debtors**

In deciding the efficacy of an involuntary bankruptcy, the court must determine, among other things, whether each petitioner has a claim for at least $18,600 that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount. *11 U.S.C.S. § 303(b)(1)*. A bona fide dispute exists if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts. The Sixth Circuit has stated that, importantly, the court need not resolve any genuine issues of fact or law; it only must determine that such issues exist.

Business & Corporate Compliance > ... > Alternative Dispute Resolution > Arbitration > Arbitrability

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Arbitration Agreements

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Stay Pending Arbitration

### HN3[⬇] Arbitration, Arbitrability

The Federal Arbitration Act (FAA) provides that an arbitration agreement shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. *9 U.S.C.S. §§ 2 - 3*. The FAA provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, *9 U.S.C.S. § 3*; and it authorizes a federal district court to issue an order compelling arbitration if there has been a failure, neglect, or refusal to comply with the arbitration agreement, *9 U.S.C.S. § 4*. The FAA thus establishes a federal policy favoring arbitration, requiring that courts rigorously enforce agreements to arbitrate.

Bankruptcy Law > Procedural Matters > Jurisdiction

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Scope

### HN4[⬇] Procedural Matters, Jurisdiction

Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate. Disputes involving the Bankruptcy Code and the Federal Arbitration Act often present a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution.

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Arbitration Agreements

Evidence > Burdens of Proof > Allocation

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Scope

### HN5[⬇] Federal Arbitration Act, Arbitration Agreements

Notwithstanding the enforcement requirements of the Federal Arbitration Act (FAA), like any statutory directive, the FAA's mandate may be overridden by a contrary congressional command. When there is a tension between the FAA and another federal statute, courts must determine whether there is a contrary congressional command which may be deduced from (i) the text of the statute; (ii) the statute's legislative history; or (iii) an inherent conflict between arbitration and the statute's underlying purposes. The party seeking to prevent enforcement of the arbitration agreement bears the burden.

Business & Corporate
Compliance > ... > Arbitration > Federal Arbitration
Act > Scope

### HN6[⬇] Arbitration, Federal Arbitration Act

Although the Sixth Circuit has not weighed in on whether Congress intended the Bankruptcy Code as a whole to conflict with the Federal Arbitration Act under the standard, other circuit courts of appeal have overwhelmingly concluded that neither the text, nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude enforcement of agreements to arbitrate in the context of a bankruptcy case.

Bankruptcy Law > Procedural
Matters > Jurisdiction > Core Proceedings

Bankruptcy Law > Procedural
Matters > Jurisdiction > Noncore Proceedings

### HN7[⬇] Jurisdiction, Core Proceedings

In deciding whether an inherent conflict exists, courts typically first determine whether the dispute that would be subject to arbitration is a core or non-core proceeding pursuant to *28 U.S.C.S. § 157(b)*. If non-core, a court is generally without discretion to preclude the enforcement of the arbitration provision and the inquiry ends. If core, the court moves to the next step in the analysis—whether enforcement of such agreement would inherently conflict with the underlying purposes of the Bankruptcy Code.

Bankruptcy Law > Procedural
Matters > Jurisdiction > Core Proceedings

Bankruptcy Law > ... > Commencement of
Case > Involuntary Cases > Standing

Bankruptcy Law > ... > Commencement of
Case > Involuntary Cases > Prerequisites for
Commencement

Bankruptcy Law > ... > Commencement of
Case > Involuntary Cases > Grounds for Relief

### _HN8_[⬇] Jurisdiction, Core Proceedings

The determination of the validity of an involuntary petition
for bankruptcy is a core proceeding under _28 U.S.C.S. §
157(b)(2)_. But that does not end the court's inquiry. The court
must next consider whether there is an inherent conflict
between arbitration and the underlying purposes of the
Bankruptcy Code. Cases finding a conflict have concluded
that the claims at the center of the dispute were directly
related to the Bankruptcy Code. As it relates to the review of
an involuntary petition, it is clear that there is an inherent
conflict between the underlying purposes of the Bankruptcy
Code and arbitration, at least to the extent that arbitration
would preclude a creditor's right to pursue an involuntary
bankruptcy.

Bankruptcy Law > Procedural
Matters > Jurisdiction > Federal District Courts

Bankruptcy Law > Procedural Matters > Jurisdiction

### _HN9_[⬇] Jurisdiction, Federal District Courts

Through referral from district courts pursuant to _28 U.S.C.S. §
157_, bankruptcy courts have exclusive jurisdiction over
bankruptcy cases. _28 U.S.C.S. § 1334(a)_.

Bankruptcy Law > Procedural Matters > Jurisdiction

### _HN10_[⬇] Procedural Matters, Jurisdiction

The bankruptcy court is the sole court with which a petition,
whether voluntary or involuntary, may be filed to commence
a bankruptcy proceeding. _11 U.S.C.S. §§ 301_ and _303_.

Bankruptcy Law > ... > Voluntary Cases > Filing
Requirements > Filing of Petition

Bankruptcy Law > ... > Commencement of

Case > Involuntary Cases > Prerequisites for
Commencement

Bankruptcy Law > ... > Commencement of
Case > Involuntary Cases > Standing

### _HN11_[⬇] Filing Requirements, Filing of Petition

In reviewing a contested involuntary bankruptcy petition, the
bankruptcy court must determine whether the petition satisfies
the requirements of _11 U.S.C.S. § 303_ and related Bankruptcy
Rules, and then determine whether an order for relief should
be entered, _11 U.S.C.S. § 303(h)_, something that happens
simultaneously with the filing of a voluntary petition, _11
U.S.C.S. § 301(b)_.

Bankruptcy Law > Procedural Matters > Jurisdiction

Civil Procedure > ... > Subject Matter
Jurisdiction > Jurisdiction Over Actions > Exclusive
Jurisdiction

### _HN12_[⬇] Procedural Matters, Jurisdiction

By requiring that bankruptcy cases be commenced by the
filing of a petition in a bankruptcy court, Congress clearly
intended bankruptcy courts to have the exclusive jurisdiction
to evaluate and rule on the validity of such a petition.

Bankruptcy Law > ... > Commencement of
Case > Involuntary Cases > Prerequisites for
Commencement

Bankruptcy Law > ... > Commencement of
Case > Involuntary Cases > Standing

### _HN13_[⬇] Involuntary Cases, Prerequisites for
Commencement

The Bankruptcy Code does not require that a petitioning
creditor's claim be liquidated for it to support an involuntary
bankruptcy petition; it just need not be shown by the debtor to
be subject to a bona fide dispute.

Bankruptcy Law > ... > Commencement of
Case > Involuntary Cases > Eligible Debtors

Business & Corporate Compliance > ... > Alternative
Dispute Resolution > Arbitration > Arbitrability

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

*HN14*[⬇] **Involuntary Cases, Eligible Debtors**

A creditor without an arbitration clause has the right to be a petitioning creditor for involuntary bankruptcy without having a fully adjudicated claim.

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Prerequisites for Commencement

*HN15*[⬇] **Involuntary Cases, Prerequisites for Commencement**

A creditor cannot contract away its right as a petitioner in an involuntary bankruptcy case any more than a debtor can contract away its right to file a voluntary bankruptcy.

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Prerequisites for Commencement

Bankruptcy Law > ... > Commencement of Case > Involuntary Cases > Standing

*HN16*[⬇] **Involuntary Cases, Prerequisites for Commencement**

Creditors cannot prospectively delegate rights under the Bankruptcy Code to an arbitrator, so the effect of a dismissal or abstention at the petitioning stage would, indeed, be to deprive the petitioning creditors of a right under *11 U.S.C.S. § 303* without the court ever hearing any evidence about the normal factors involved in an involuntary bankruptcy case.

**Counsel:** [*1] For Project Restore LLC, Debtor, Alleged Debtor: Roscoe Green, Edmund S. Whitson, III, Adams and Reese LLP, Tampa, FL; HENRY C SHELTON, III, ADAMS AND REESE LLP, MEMPHIS, TN.

For Christopher Todd, Petitioning Creditor: WILLIAM L NORTON, III, BRADLEY ARANT BOULT CUMMINGS LLP, NASHVILLE, TN.

**Judges:** Randal S. Mashburn, United States Bankruptcy Judge.

**Opinion by:** Randal S. Mashburn

# Opinion

**ORDER AND MEMORANDUM OPINION DENYING MOTION TO DISMISS INVOLUNTARY PETITION OR, IN THE ALTERNATIVE, TO ABSTAIN BASED ON ARBITRATION AGREEMENTS, WITHOUT PREJUDICE TO OTHER ARGUMENTS**

The putative debtor in this involuntary bankruptcy, Project Restore, LLC ("Debtor"), has sought dismissal of the case based on the impact of arbitration clauses in contracts signed by the three petitioning creditors. Alternatively, Debtor has requested that the Court abstain from hearing the involuntary bankruptcy case in deference to allowing the disputed claims of the petitioning creditors to first be resolved by arbitration.

Although there generally is a strong preference for enforcing arbitration agreements even in some bankruptcy matters, Debtor's position of requiring arbitration as a prerequisite to an involuntary petition would unduly thwart the rights [*2] of petitioning creditors and create a result at odds with the Bankruptcy Code. *HN1*[⬆] The critical initial issue in any involuntary bankruptcy is whether petitioning creditors' claims are subject to a bona fide dispute — not the actual allowance, disallowance, or liquidation of those claims. Determination of the validity of the petition and whether to enter an order for relief are matters over which this Court has exclusive jurisdiction and not something that can be punted to an arbitrator simply because the parties have an agreement to arbitrate their contract disputes.

## BACKGROUND

### Involuntary Petition and Response

On June 16, 2022, Christopher M. Todd ("Todd"), Brian and Amy Maas (together as "Maas"), and R. Kenneth Barnes ("Barnes") (collectively, "Petitioning Creditors"), filed an involuntary petition against Debtor under *Chapter 7 of the Bankruptcy Code*. Each Petitioning Creditor claims to be owed an amount in excess of the statutory minimum of $18,600 relating to defaulted construction contracts. Debtor responded with a Motion to Dismiss, disputing any liability as well as the amount of the alleged debts, and requesting the Court dismiss the petition or abstain in favor of arbitration.

[*3] **Arbitration Provisions**

The construction contracts between Debtor and each of the Petitioning Creditors contain arbitration provisions. The provision from the Todd and Barnes contracts states:

> Should any dispute arise relative to the performance of this contract that the parties cannot satisfactorily resolve, then the parties agree that the dispute shall be resolved by binding arbitration conducted by the American Arbitration Association. The party demanding arbitration shall give written notice to the opposite party and the American Arbitration Association promptly after the matter in dispute arises. In no event, however, shall a written notice of demand for arbitration be given after the date on which a legal action concerning the matter in dispute would be barred by the appropriate statute of limitations.

The provision from the Maas contract is virtually identical but selects a different arbitration service than the one identified in the other two contracts. It states:

> Should any dispute arise relative to the performance of this contract that the parties cannot satisfactorily resolve, then the parties agree that the dispute shall be resolved by binding arbitration conducted by a single **[*4]** arbitrator, through JAMS. The party demanding arbitration shall give written notice to the opposite party and the JAMS promptly after the matter in dispute arises. In no event, however, shall a written notice of demand for arbitration be given after the date on which legal action concerning the matter in dispute would be barred by the appropriate statute of limitations.

### Procedural Status

The parties agreed to bifurcate the hearing on Debtor's motion to dismiss the involuntary petition. By consent, they set up a briefing and hearing schedule designed to carve out the legal issue on arbitration before moving forward with an evidentiary hearing on the factual questions that arise in an involuntary bankruptcy, such as whether the Petitioning Creditors' claims are subject to a bona fide dispute and whether the Debtor is generally paying its debts as they become due.

The Court conducted a hearing on October 4, 2022, limited to the narrow issue of whether the stipulated existence of standard arbitration clauses in the pertinent contracts would mandate that the claims first be decided by an arbitrator before the involuntary bankruptcy could proceed. Alternatively, the Court was asked to determine **[*5]** whether the role of the arbitration clauses created a sufficient justification for the Court to exercise its discretion to abstain from the matter in deference to arbitration. For purposes of the hearing on October 4, 2022, it was stipulated that the

contracts containing the arbitration provisions are authentic and admissible into evidence.

The agreed upon process was for the Court first to decide the arbitration issue and then, only if it declined to dismiss the case or abstain, proceed with an evidentiary hearing scheduled for November 3, 2022.

### DISCUSSION

### The Bona Fide Dispute Factor in Involuntary Bankruptcies

*HN2*[ ↑ ] In deciding the efficacy of an involuntary bankruptcy, the Court must determine, among other things, whether each petitioner has a claim for at least $18,600 that is "not contingent as to liability or the subject of a bona fide dispute as to liability or amount." *11 U.S.C. § 303(b)(1)*. A bona fide dispute exists "[i]f there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts . . . ." *Riverview Trenton Railroad Co. v. DCS, Ltd. (In re DSC, Ltd.), 486 F.3d 940, 944-45 (6th Cir. 2007)* (quoting *Booher Enterprises v. Eastown Auto Co. (In re Eastown Auto Co.), 215 B.R. 960, 965 (B.A.P. 6th Cir. 1998)* (quoting *In re Lough, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986)*)). The Sixth Circuit has stated that, "[i]mportantly, the court need not resolve any genuine **[*6]** issues of fact or law; it only must determine that such issues exist." *In re DSC, Ltd., 486 F.3d at 944-45.*

Even though the Court will not actually resolve any genuinely disputed issue in connection with ruling on the involuntary petition, it is Debtor's position that the Court should dismiss the case or abstain from ruling on the petition because the Court cannot avoid deciding what Debtor argues to be non-core, arbitrable issues in the process of ruling on the petition. This is the fatal flaw in Debtor's reasoning. While it is true that it is impossible to avoid hearing evidence about the claims in determining whether they are subject to a bona fide dispute, it is not necessary to liquidate the claims or decide the ultimate allowance or disallowance of any claim.

One aspect of Debtor's argument relates to its view of the interpretation of *section 303(b)(1)*. Debtor contends that the reference to "bona fide dispute as to liability or amount" means that any dispute whatsoever as to the precise amount renders a petitioning creditor ineligible. Under Debtor's approach, a bona fide dispute over whether a debt is $50,000 or $50,001 keeps the creditor from being an eligible petitioner. Petitioning Creditors take the position that the

pertinent [*7] question is whether there is no bona fide dispute as to an amount of at least $18,600 and it is irrelevant whether there might be a legitimate debate about the exact dollar figure above that threshold amount.

Although the Court has not ruled on that interpretation question, it has indicated to the parties that it leans toward the view that a creditor can be a valid petitioner in an involuntary case as long as there is no bona fide dispute as to a minimum debt of $18,600. In doing so, it has generally accepted the rationale articulated in *In re Miller, 489 B.R. 74, 81-83 (Bankr. E.D. Tenn. 2013)*.

Debtor has argued that, given the Court's view on how to interpret the statute regarding disputes over amounts, it would be impossible for the Court to enter an order for relief without deciding that there is a valid claim in a minimum amount of $18,600 per Petitioning Creditor. Thus, Debtor argues, the Court would have to decide the merits of various defenses and even possible counterclaims that might be asserted by Debtor in making a ruling. In short, under Debtor's analysis, while the Court may not necessarily fully liquidate a claim in the involuntary bankruptcy decision process, it would effectively destroy any ability of Debtor to take advantage [*8] of the parties' agreed upon arbitration mechanism for resolving disputes about their contracts.

It is true that this Court would be required to hear some evidence relating to both liability and claim amount to rule on the involuntary petition. But it is not accurate to say that any ruling would be dispositive of the ultimate claim determination or preclude later arbitration on the claims. A similar scenario plays out frequently in the summary judgment context. A court might deny summary judgment because of a genuine issue as to material fact and later rule in favor of the same movant regarding the merits of the lawsuit. Likewise, a ruling on whether there is a bona fide dispute regarding a claim for the limited purpose of whether to enter an order for relief does not necessarily have any preclusive effect on the resolution of a specific claim. Indeed, it is possible to envision a scenario where an order for relief is entered but then the claim determination matter is still sent to an arbitrator who should have a clean slate in determining both liability and amount.

## Arbitration and Its Role in Bankruptcy

*HN3*[⬆] The *Federal Arbitration Act ("FAA")* provides, in relevant part, that an arbitration agreement "shall be valid, irrevocable, [*9] and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *9 U.S.C. §§ 2-3*. "The [FAA] ... provides that a court must stay

its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, *§ 3*; and it authorizes a federal district court to issue an order compelling arbitration if there has been a 'failure, neglect, or refusal' to comply with the arbitration agreement, *§ 4*." *Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987)*. "The [FAA] thus establishes a 'federal policy favoring arbitration,' requiring that '[courts] rigorously enforce agreements to arbitrate.'" *Id.* (citations omitted).

*HN4*[⬆] "At the same time, however, 'Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" *Moses v. CashCall, Inc., 781 F.3d 63, 71 (4th Cir. 2015)* (quoting *Celotex Corp. v. Edwards, 514 U.S. 300, 308, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995)* (additional internal quotation marks and citation omitted)). Disputes involving the Bankruptcy Code and the FAA often "present[ ] a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution." *United States Lines, Inc. v. Am. Steamship Owners Mutual Prot. and Indem. Ass'n, Inc. (In re United States Lines, Inc.), 197 F.3d 631, 640 (2nd Cir. 1999)* (citation omitted).

*HN5*[⬆] Notwithstanding the FAA's enforcement [*10] requirements, "[l]ike any statutory directive, the [FAA]'s mandate may be overridden by a contrary congressional command." *McMahon, 482 U.S. at 226*. When there is a tension between the FAA and another federal statute, courts must determine whether there is a contrary congressional command which may be deduced from (i) the text of the statute, (ii) the statute's legislative history, or (iii) an inherent conflict between arbitration and the statute's underlying purposes. *Moses, 781 F.3d at 71* (citing *McMahon, 482 U.S. at 227* (additional citation omitted)). The party seeking to prevent enforcement of the arbitration agreement bears the burden. *Id.*

*HN6*[⬆] Although the Sixth Circuit has not weighed in on whether Congress intended the Bankruptcy Code as a whole to conflict with the FAA under the *McMahon* standard, "other circuit courts of appeal have overwhelmingly concluded that neither the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude enforcement of agreements to arbitrate in the context of a bankruptcy case." *In re Patriot Solar Grp., LLC, 569 B.R. 451, 456-59 (Bankr. W.D. Mich. 2017)* (citing cases from the Second, Third, Fourth, Ninth, and Eleventh Circuits).

*HN7*[⬆] In deciding whether an inherent conflict exists, courts typically first determine whether the dispute that would

be subject to arbitration **[*11]** is a core or non-core proceeding pursuant to *28 U.S.C. § 157(b)*. *In re Patriot Solar Grp., LLC, 569 B.R. 451, 457 (Bankr. W.D. Mich. 2017)*. If non-core, "a court is generally without discretion to preclude the enforcement of the arbitration provision and the inquiry ends." *Id. at 457-58*. If core, "the court moves to the next step in the analysis—whether enforcement of such agreement would inherently conflict with the underlying purposes of the Bankruptcy Code." *Id. at 458*.

**Request to Arbitrate in the Context of the Involuntary Petition**

*HN8*[⬆] Starting with the first question of core or non-core, the determination of the validity of an involuntary petition is a core proceeding under *28 U.S.C. § 157(b)(2)*. *See In re Virginia Broadband, LLC, 498 B.R. 90, 93 (Bankr. W.D. Va. 2013)* (referring to a voluntary petition); *In re Loe, No. 07-12045-BKC-RBR, 2007 Bankr. LEXIS 1146, 2007 WL 997581, at *1 (Bankr. S.D. Fla. Mar. 29, 2007)* ("The determination of whether an order for relief should be granted in an involuntary case is a core proceeding." (citing *28 U.S.C. § 157(b)(2)(A)* and *11 U.S.C. § 303(h)*)); *In re Fisher Island Invs., Inc., No. 11-17047-AJC, 2014 Bankr. LEXIS 1277, 2014 WL 1343269, at *3 (Bankr. S.D. Fla. Mar. 28, 2014)* ("[T]he determination of the validity of the alleged debts underlying [involuntary] petitions is a core proceeding," since the "validity of those interests 'will determine[e] whether an order of relief should be granted.'" (citing *In re Loe, 2007 Bankr. LEXIS 1146, 2007 WL 997581, at *1*)). But that does not end the court's inquiry.

The court must next consider whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code. "[C]ases finding a McMahon conflict concluded **[*12]** that the claims at the center of the dispute were directly related to the Bankruptcy Code." *Kiskaden v. LVNV Funding, LLC (In re Kiskaden), 571 B.R. 226, 233 (Bankr. E.D. Ky. 2017)* (citing cases from Fourth, Fifth and Ninth circuit courts of appeal). As it relates to the review of an involuntary petition, it is clear that there is an inherent conflict between the underlying purposes of the Bankruptcy Code and arbitration, at least to the extent that arbitration would preclude a creditor's right to pursue an involuntary bankruptcy.

*HN9*[⬆] First, through referral from district courts pursuant to *28 U.S.C. § 157*, bankruptcy courts have exclusive jurisdiction over bankruptcy cases. *See 28 U.S.C. § 1334(a)* (With exceptions not applicable to the filing of a petition, "the district courts shall have original and exclusive jurisdiction of all cases under title 11."); *see also In re Garnett, 303 B.R.*

*274, 277 (E.D.N.Y. 2003)* ("Thus the filing of the petition commences the case, which has the effect under *28 U.S.C. § 1334(d)* of vesting exclusive jurisdiction over the property of the debtor and of the estate in the district court, and hence the bankruptcy court, in which the petition is filed.").

*HN10*[⬆] Second, the bankruptcy court is the sole court with which a petition, whether voluntary or involuntary, may be filed to commence a bankruptcy proceeding. *See 11 U.S.C. § 301, 303*. A bankruptcy case could not be **[*13]** commenced by filing a petition for bankruptcy with an arbitrator.

*HN11*[⬆] Further, in reviewing a contested involuntary petition, the bankruptcy court must determine whether the petition satisfies the requirements of *section 303 of the Bankruptcy Code* and related Bankruptcy Rules, and then determine whether an order for relief should be entered, *see § 303(h)*, something that happens simultaneously with the filing of a voluntary petition, *see § 301(b)*. If the court were to refer a ruling on the validity of the involuntary petition and the decision as to whether to enter an order for relief to an arbitrator, the arbitrator could not enter any such order. The court would be delegating to an arbitrator a question over which Congress intended that bankruptcy courts have exclusive jurisdiction.

*HN12*[⬆] By requiring that bankruptcy cases be commenced by the filing of a petition in a bankruptcy court, Congress clearly intended bankruptcy courts to have the exclusive jurisdiction to evaluate and rule on the validity of such a petition. On these specific matters — whether an involuntary petition is valid based on the eligibility of Petitioning Creditors and whether an order for relief should be entered — there is an inherent conflict between arbitration and the **[*14]** Bankruptcy Code.

Debtor seeks to ignore the clear distinction between a contested matter involving the validity of an involuntary petition, which does not require claim determination, and litigation over a claim. It would have the Court blend the two matters together and find that this Court should not decide the first issue because it is inextricably intertwined with the second issue that is subject to the arbitration provision.

Admittedly, this Court cannot decide if the petition is valid in terms of having qualified petitioners without some evidence about whether there is a bona fide dispute about Petitioning Creditors' claims, just as it must hear evidence about whether Debtor is generally paying debts as they become due. *See 11 U.S.C. § 303*. But at this stage the Court does not have to make ultimate determinations about claims any more than it must make ultimate findings about the likelihood of creditors to be paid from the Debtor's assets.

HN13[⬆] The Bankruptcy Code does not require that a petitioning creditor's claim be liquidated for it to support an involuntary petition; it just need not be shown by the debtor to be subject to a bona fide dispute. *In re Miller, 489 B.R. at 82.* If the Court accepted Debtor's approach on arbitration, [*15] the practical effect would lead to inconsistent treatment of petitioning creditors with and without arbitration agreements and would mean that any creditor who signs a contract with an arbitration provision has given up a basic right under the Bankruptcy Code. HN14[⬆] A creditor without an arbitration clause has the right to be a petitioning creditor without having a fully adjudicated claim. However, under Debtor's approach, a petitioning creditor with a disputed claim subject to an arbitration clause would have to have to have an arbitration award in order to qualify as a petitioning creditor, regardless of whether the dispute was bona fide.

Additionally, if the parties' positions were reversed, it is hard to imagine anyone seriously arguing that Debtor could be totally deprived of the right to file a voluntary bankruptcy because its three primary creditors held disputed, arbitrable claims. HN15[⬆] From the Court's standpoint, a creditor cannot contract away its right as a petitioner in an involuntary case any more than a debtor can contract away its right to file a voluntary bankruptcy.

Debtor's counsel stated at oral argument that its request is not about forfeiture of any right of the creditors [*16] but merely enforcement of their agreements to arbitrate. HN16[⬆] However, creditors cannot prospectively delegate rights under the Bankruptcy Code to an arbitrator, so the effect of a dismissal or abstention at this stage would, indeed, be to deprive the Petitioning Creditors of a right under *section 303 of the Bankruptcy Code* without the Court ever hearing any evidence about the normal factors involved in an involuntary bankruptcy case.

Debtor has also asserted that the involuntary bankruptcy is merely a collection leverage tool being utilized by three disgruntled customers. That allegation could potentially go to the issue of whether the petition was filed in good faith. It does not provide a basis for requiring arbitration of the most fundamental issues involved in an involuntary petition.

One final point of emphasis should be made. This Court is making no determination at this time regarding whether arbitration should be used at some point in resolving disputes over the claims in the event an order for relief is entered. There are numerous variables that would come into play in making that determination — some requiring further legal analysis and some based more on practical considerations. The Court will consider those [*17] issues if and when they arise. For purposes of this ruling, the Court is simply holding

that it is this Court, not an arbitrator, that must decide whether the involuntary petition is valid as it relates to the eligibility of Petitioning Creditors and whether an order for relief should be entered. This Court will not refrain from carrying out that obligation based on the existence of an arbitration agreement.

Debtor's motion is denied to the extent it seeks dismissal or abstention based on the arbitration agreements. The denial is without prejudice to any other argument raised in the motion to dismiss.

IT IS SO ORDERED.

/s/ Randal S. Mashburn

Randal S. Mashburn

U.S. Bankruptcy Judge

Dated: 10/7/2022

**End of Document**



**A** Neutral

As of: August 2, 2023 11:02 PM Z

# *Property Mgmt. Connection, LLC v. Consumer Fin. Prot. Bureau*

United States District Court for the Middle District of Tennessee, Nashville Division

November 10, 2021, Filed

NO. 3:21-cv-00359

**Reporter**

2021 U.S. Dist. LEXIS 219041 *; 2021 WL 5282075

THE PROPERTY MANAGEMENT CONNECTION, LLC, et al., Plaintiffs, v. THE CONSUMER FINANCIAL PROTECTION BUREAU, et al., Defendants.

## Core Terms

moot, regulation, eviction, subject-matter, declaratory judgment, rent, consumer, Counts, case or controversy, moratorium, reasons, motion to dismiss, residential, cessation, requests, Bureau, subject matter jurisdiction, district court, allegations, Memorandum, repetition, temporary, asserts, facial, merits

## Case Summary

### Overview

HOLDINGS: [1]-Defendant federal agency's Motion to dismiss property managers' First Amended Complaint for lack of subject-matter jurisdiction as to its *Fed. R. Civ. P. 12(b)(1)* defense was granted and Motion as to its *Fed. R. Civ. P. 12(b)(6)* defense was denied because property managers' challenge to the federal agency regulation was moot in its entirety, which in fact foreclosed all possible avenues of relief for property managers; [2]-Property managers' claims were dismissed for lack of standing because they had not shown an injury in fact as required by U.S. Const. art. III; they did not allege damages; nor did they make any factual allegations that they had suffered compensable losses as a result of defendants' alleged violations of law. Property managers had requested only prospective relief, and prospective relief was moot.

### Outcome

Action dismissed.

## LexisNexis® Headnotes

Civil Procedure > Dismissal > Involuntary Dismissals > Motions

*HN1*[⬇] **Involuntary Dismissals, Motions**

*Fed. R. Civ. P. 12(b)(1)* provides for the dismissal of an action for lack of subject matter jurisdiction. Subject matter jurisdiction is always a threshold determination.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation

*HN2*[⬇] **Defenses, Demurrers & Objections, Motions to Dismiss**

There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial and factual attacks. A facial attack questions merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true. If those allegations establish federally-cognizable claims, jurisdiction exists.

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

*HN3*[⬇] **Judges, Discretionary Powers**

A factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. Where there is a factual attack on the subject-matter jurisdiction of the court under *Fed. R. Civ. P. 12(b)(1)*, no presumptive

Case 3:23-cv-00036 Document 12-1 Filed 08/02/23 Page 1 of 5 PageID #: 599

Appendix Property Mgmt. Connection v. Consumer Fin.   Page 1 of 11

173

truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. The district court has considerable discretion in devising procedures for resolving questions going to subject matter jurisdiction.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Governments > Courts > Authority to Adjudicate

### HN4[⬇] Defenses, Demurrers & Objections, Motions to Dismiss

Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Evidence > Burdens of Proof > Allocation

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

### HN5[⬇] Judges, Discretionary Powers

In making its decision, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts. In reviewing a *Fed. R. Civ. P. 12(b)(1)* motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits. As always, the party invoking federal jurisdiction has the burden to prove that jurisdiction.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Civil Procedure > ... > Summary Judgment > Motions for Summary Judgment > Notice Requirement

### HN6[⬇] Defenses, Demurrers & Objections, Motions to Dismiss

Consideration of evidence outside of the complaint when deciding a factual attack on subject-matter jurisdiction does not convert the motion into one for summary judgment.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

### HN7[⬇] Motions to Dismiss, Failure to State Claim

Any grant of a *Fed. R. Civ. P. 12(b)(6)* motion would be a decision on the merits, and a district court simply should not render any decisions on the merits in cases where it lacks subject-matter jurisdiction and thus the jurisdiction to make any determination on the merits.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

### HN8[⬇] Defenses, Demurrers & Objections, Motions to Dismiss

Mootness is a *Fed. R. Civ. P. 12(b)(1)* concern, not a *Fed. R. Civ. P. 12(b)(6)* concern.

Civil Procedure > ... > Justiciability > Mootness > Real Controversy Requirement

### HN9[⬇] Mootness, Real Controversy Requirement

A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. Mootness implicates U.S. Const. art. III's case or controversy requirement. Accordingly, mootness can be raised at any stage of litigation because it is a jurisdictional requirement.

Civil Procedure > ... > Justiciability > Mootness > Real Controversy Requirement

### HN10[⬇] Mootness, Real Controversy Requirement

The case-or-controversy requirement applies at all stages of review, not merely at the time the complaint is filed. If events occur during the pendency of a litigation which render the

Case 2:23-ap-90036 Doc 12-1 Filed 08/01/23 Entered 08/02/23 19:17:05 Page 2 of 11

Case 3:23-cv-00036 Document 112-1 Filed 08/02/23 Page 5 of 216 PageID #: 5600

Appendix Property Mgmt. Connection v. Consumer Fin.   Page 2 of 11

174

court unable to grant the requested relief, the case becomes moot and falls outside the appellate court's jurisdiction.

Civil Procedure > ... > Justiciability > Mootness > Evading Review Exception

Constitutional Law > ... > Case or Controversy > Mootness > Conduct Capable of Repetition

*HN11*[🔻] **Mootness, Evading Review Exception**

Application of the capable of repetition, yet evading review exception to mootness doctrine is limited to situations where: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there is reasonable expectation that same complaining party will be subjected to same action again.

Civil Procedure > ... > Justiciability > Mootness > Evading Review Exception

Constitutional Law > ... > Case or Controversy > Mootness > Conduct Capable of Repetition

*HN12*[🔻] **Mootness, Evading Review Exception**

When there is no reasonable expectation that the same complaining party will be subject to the same action again, the 'capable of repetition yet evading review' exception does not apply.

Civil Procedure > ... > Justiciability > Mootness > Voluntary Cessation Exception

*HN13*[🔻] **Mootness, Voluntary Cessation Exception**

In any event, in voluntary cessation cases involving government entities the United States Court of Appeals for the Sixth Circuit's primary concern is not the mere possibility that the government could revert to a challenged practice but whether there is evidence that the government will flip-flop or has altered its conduct solely in response to litigation.

Governments > Courts > Authority to Adjudicate

*HN14*[🔻] **Courts, Authority to Adjudicate**

Standing is a critical component of the subject-matter jurisdiction of the federal courts; without it there is no Case or Controversy upon which the federal judicial power can act. Consequently if at any time a court discovers that a party bringing suit lacks standing, the case must be dismissed for want of jurisdiction. Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.

Civil Procedure > ... > Justiciability > Standing > Burdens of Proof

Constitutional Law > ... > Case or Controversy > Standing > Elements

Civil Procedure > ... > Justiciability > Standing > Injury in Fact

*HN15*[🔻] **Standing, Burdens of Proof**

For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue. More specifically, at least one plaintiff must have standing to seek each form of relief requested in the complaint. To have standing to sue, a plaintiff must show injury in fact, causation, and redressability.

Constitutional Law > ... > Case or Controversy > Standing > Elements

*HN16*[🔻] **Standing, Elements**

Injury in fact, as required for U.S. Const. art. III standing, is an invasion of a legally protected interest which is concrete and particularized and actual or imminent rather than conjectural or hypothetical. U.S. Const. Art. III, § II.

Civil Procedure > ... > Declaratory Judgments > Federal Declaratory Judgments > Scope of Declaratory Judgments

*HN17*[🔻] **Federal Declaratory Judgments, Scope of**

**Declaratory Judgments**

Declaratory judgment is available as a remedy only in cases of actual controversy. *28 U.S.C.S. § 2201*.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

*HN18*[ ] **Defenses, Demurrers & Objections, Motions to Dismiss**

A dismissal under *Fed. R. Civ. P. 12(b)(1)* is necessarily not on the merits and thus is always without prejudice, even in cases where it may benefit the plaintiff little for the dismissal to be without prejudice because the prospects for curing the lack of subject-matter jurisdiction are bleak.

**Counsel:** [*1] For The Property Management Connection, LLC, Gordon J Schoeffler, National Association of Residential Property Managers, Plaintiffs: Benjamin M. Rose, RoseFirm, PLLC, Brentwood, TN; Caleb Kruckenberg, John Vecchione, New Civil Liberties Alliance, Washington, DC.

For The Consumer Financial Protection Bureau, Defendant: Karen S. Bloom, Consumer Financial Protection Bureau, Washington, DC; Kevin E. Friedl, Washington, DC.

For Dave Uejio, Defendant: Kevin E. Friedl, Washington, DC.

For United States of America, Defendant: James Matthew Blackburn, U.S. Attorney's Office (Nashville Office), Middle District of Tennessee, Nashville, TN.

**Judges:** ELI RICHARDSON, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ELI RICHARDSON

# Opinion

## MEMORANDUM OPINION

Pending before the Court are (1) Defendants Consumer Financial Protection Bureau and David Uejio's[1] (collectively,

---

[1] Mr. David Uejio is the acting director of the Consumer Financial Protection Bureau. *See* https://www.consumerfinance.gov/about-us/blog/the-bureau-is-taking-much-needed-action-to-protect-consumers-particularly-the-most-economically-vulnerable/ (last visited Nov. 8, 2021).

"CFPB") Motion to Dismiss pursuant to *Fed. Rs. Civ. P. 12(b)(1)* and *12(b)(6)* (Doc. No. 50, "CFPB Motion") supported by a memorandum of law (Doc. No. 51, "Memorandum in Support"), and (2) Defendant United States' Motion to Dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)*[2] (Doc. No. 52, "US Motion") (collectively, "Motions"). Plaintiffs responded to both Motions in a single brief. (Doc. No. 58, "Response"). Only CFPB replied. (Doc No. 59, [*2] "CFPB's Reply").

For the reasons discussed herein, CFPB's Motion will be granted as to its *12(b)(1)* defense and denied as moot as to its *12(b)(6)* defense. The US's Motion will be denied as moot.

## BACKGROUND[3]

Plaintiff Property Management Connection LLC ("PMC") is a company that "seeks to collect rent from tenants who rent properties it manages." (Doc. No. 38 at ¶¶ 1-2). Plaintiff Gordon J. Schoeffler is a Louisiana real estate attorney who "seeks to collect rent from tenants renting properties that his clients own and/or manage." (*Id.* at ¶ 3). Plaintiff the National

---

[2] Defendant United States asserts that the US Motion is made pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (Doc. No. 52 at 1). The Court assumes this is a scrivener's error and that the United States is actually bringing its motion pursuant to Fed. R. Civ. P. 12(b)(6) since it asserts that Plaintiffs claims "are moot and otherwise fail to state a claim on which relief may be granted." (*Id.*). This phrasing suggests that the United States believes that every basis for dismissal it asserts is one suggesting failure to state a claim and thus within the scope of Rule 12(b)(6). It is possible, however, that the United States meant to signal that the US Motion was brought under Rules 12(b)(1) & (6); if so, that would have been appropriate because, as noted below, mootness implicates Rule 12(b)(1) rather than Rule 12(b)(6).

The United States did not file a memorandum in support of its Motion as required by the local rules. However, the Court does not take issue with this for purposes of this Opinion, because the Court is dismissing the case based on the lack of subject-matter jurisdiction, which was not clearly asserted by the United States but was asserted by CFPB.

[3] The facts in this section are taken from Plaintiffs' First Amended Complaint. (Doc. No. 38). The First Amended Complaint is the operative complaint in this matter. *See Parry v. Mohawk Motors of Mich., Inc., 236 F.3d 299, 306 (6th Cir. 2000)*. Because CFPB has brought forth a factual challenge to subject-matter jurisdiction (as discussed more thoroughly below), the Court does not automatically accept the allegations of the Complaint as true (as it would in a facial challenge). However, the Court will assume arguendo that the Complaint's allegations are true, not least because they do not appear to be in dispute.

Case 3:23-cv-00036 Document 12-1 Filed 06/02/23 Page 4 of 11 PageID #: 602
Case 3:23-cv-00036 Document 12-1 Filed 06/02/23 Page 4 of 11 PageID #: 602
Appendix Property Mgmt. Connection v. Consumer Fin. Page 4 of 11
176

Association of Residential Property Managers ("NARPM") is an organization that "represents over 5,000 residential property managers nationwide." (*Id.* at ¶ 4). Plaintiff Matthew S. Chase is an attorney practicing law in Missouri at Chase Law Firm, which is also a plaintiff in this matter in its own stead. (*Id.* at ¶¶ 6-7). Plaintiff James Hodge is the sole owner of Plaintiff Apex Ventures, Inc., which is "a property management and real estate company in Nashville . . . [that] seeks to collect rent from tenants who rent properties owned and/or managed by [it]." (*Id.* at ¶¶ 8-9).

Defendant Bureau of Consumer Financial Protection ("CFPB") [*3] is a federal agency that regulates consumer financial products and services. (*Id.* at ¶ 10). Defendant David Uejio is CFPB's acting director. (*Id.* at ¶ 11). The United States also has been named as a Defendant, apart from the CFPB.[4] (*Id.* at ¶ 12).

On March 27, 2020, *Congress passed the Coronavirus Aid, Relief, and Economic Security Act* ("CARES Act"). (*Id.* at ¶ 16). The CARES Act placed a "limited and temporary moratorium on evictions, for certain types of federally backed housing". (*Id.*). The moratorium expired on July 24, 2020. (*Id.*).

On September 1, 2020, the Center for Disease Control ("CDC") issued the "Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19" ("Halt Order"). (*Id.* at ¶ 17). The Halt Order provides, in pertinent part, that "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action, shall not evict any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." (*Id.* at ¶ 19). Plaintiffs claim that the Halt Order essentially "stands as a backstop to [ ] state eviction moratoriums" and "purports to deprive home providers [*4] of any resort to state mechanisms for eviction." (*Id.* at ¶ 20). There have been several challenges to the Halt Order in various jurisdictions, including within the Sixth Circuit. (*Id.* at ¶¶ 37-41).

On April 22, 2021, the CFPB issued the Debt Collection Practice in Connection with the Global Covid-19 Pandemic regulation ("CFPB regulation"). (*Id.* at ¶ 42). "The CFPB [regulation] expands on the Halt Order and imposes new obligations on any person seeking to collect unpaid rent through the eviction process in any jurisdiction in which the Halt Order purportedly applies." (*Id.* at ¶ 43). Section

1006.9(c) of the CFPB regulation prohibits property owners from:

> (1) Fil[ing] an eviction action for non-payment of rent against a consumer to whom the CDC Order reasonably might apply without disclosing to that consumer clearly and conspicuously in writing, on the date that the debt collector provides the consumer with an eviction notice or, if no eviction notice is required by applicable law, on the date that the eviction action is filed, that the consumer may be eligible for temporary protection from eviction under the CDC Order; or
>
> (2) Falsely represent[ing] or imply[ing] to a consumer that the [*5] consumer is ineligible for temporary protection from eviction under the CDC Order.

(*Id.* at ¶ 45).

On May 3, 2021 Plaintiffs filed a motion for a temporary restraining order to prevent enforcement of the CFPB regulation. (Doc. No. 6). The Court denied the motion on May 14, 2021, concluding that in light of the Sixth Circuit's decision in *Tiger Lily LLC v. U.S. Dep't of Housing & Urban Dev., 992 F.3d 518 (6th Cir. 2021)*, Plaintiffs were not entitled to injunctive relief in part because "loss of rental income" was not sufficient to show irreparable harm. (Doc. No. 23 at 3-4, 10-18; Doc. No. 24).

Plaintiffs' First Amended Complaint asserts claims for (i) allegedly unlawful agency action in violation of the APA, (ii) the CFPB's alleged violation of the *First Amendment* for prohibiting truthful speech by requiring false speech, and (iii) declaratory judgment. (Doc. No. 38). Notably, although Plaintiffs style Count III as a separate claim for declaratory judgment, Counts I and II each itself also requests a declaratory judgment, albeit one to somewhat different effect than the one requested in Count III. (Doc. No. 38 at 27, 31).[5] More specifically, Count I requests a declaratory judgment that the CFPB regulation is in violation of the *Fair Debt Collection Practices Act*, Count II requests [*6] a declaratory judgment that the CFPB regulation is in violation of the *First Amendment*, and Count III requests a declaratory judgment that the CFPB regulation "does not apply in the Sixth Circuit, and that the Sixth Circuit Plaintiffs or anyone else in the Sixth Circuit seeking back rent in a rent or eviction proceeding are not required to provide any information to tenants about the [Halt] Order." (*Id.* at 27, 31, 33-34).[6]

---

[4] The Court is of the view that Plaintiffs' suing of the United States is duplicative of its suing of CFPB, a United States agency, but any such duplication ultimately is irrelevant to the Court's resolution of the Motions.

[5] Citations herein are to the page numbers added by the Clerk's Office as part of the electronic case filing process, which may differ from the page numbers used by the author/filer of the document.

[6] Plaintiffs define "Sixth Circuit Plaintiffs" to include Plaintiffs Hodge, Apex, PMC and the members of Plaintiff NARPM "who

Case 3:23-ap-90036   Doc 12-1   Filed 06/01/23   Entered 08/02/23 19:17:05   Page 5 of 63
Case 3:21-cv-00460   Doc 112   Filed 08/02/21   Page 5 of 11   Page ID 5603
Appendix Property Mgmt. Connection v. Consumer Fin.   Page 5 of 11

177

Importantly, nowhere does the First Amended Complaint request an award of damages; instead it requests only prospective non-monetary relief, namely: the particular declaratory judgments just discussed; the invalidation of the CFPB regulation; and an injunction "prohibiting the [regulation]'s enforcement and prohibiting the entry, reentry, promulgation, or extension of the CFPB [regulation] or any order like it requiring anyone seeking back rent in a rent or eviction proceeding to provide any information about the [Halt] Order." (*Id.* at 27, 31, 33-34).

## LEGAL STANDARD

*HN1*[⬆] *Federal Rule of Civil Procedure 12(b)(1)* ("*Rule 12(b)(1)*") "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner, 751 F.3d 752, 759 (6th Cir. 2014)*. "Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon, 501 F.3d 534, 537 (6th Cir. 2007)* (citing *Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)*).

*HN2*[⬆] There are two types of motions to dismiss for lack [*7] of subject-matter jurisdiction: facial and factual attacks. *Gentek Bldg. Products, Inc. v. Sherman-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007)*. A facial attack questions merely the sufficiency of the pleading. *Id.* When reviewing a facial attack, a district court takes the allegations in the complaint as true. *Id.* If those allegations establish federally-cognizable claims, jurisdiction exists. *Id.*

*HN3*[⬆] A factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. *Id.* Where there is a factual attack on the subject-matter jurisdiction of the court under *Fed. R. Civ. P. 12(b)(1)*, no presumptive truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Id.* "[T]he district court has considerable discretion in devising procedures for resolving questions going to subject matter jurisdiction[.]" *Ohio Nat. Life Ins. Co. v. United States, 922 F.2d 320, 327 (6th Cir. 1990)*. The Sixth Circuit has noted that:

> The factual attack, however, differs greatly for here the trial court may proceed as it never could under *12(b)(6)* or *Fed. R. Civ. Pro. 56*. *HN4*[⬆] Because at issue in a factual *12(b)(1)* motion is the trial court's jurisdiction—its very power to hear the case—there is substantial

authority that the trial court is free to weigh the evidence [*8] and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996)* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 890 (3d Cir. 1977)*).

*HN5*[⬆] In making its decision, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts.[7] *Gentek Bldg. Products, Inc., 491 F.3d at 330*; *see also Nichols v. Muskingum Coll., 318 F.3d 674, 677 (6th Cir. 2003)* ("In reviewing a *12(b)(1)* motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits."); *Cunningham v. Rapid Response Monitoring Servs., Inc., 251 F. Supp. 3d 1187, 1192 (M.D. Tenn. 2017)* (discussing *Gentek*). As always, the party invoking federal jurisdiction has the burden to prove that jurisdiction. *Global Technology, Inc. v. Yubei (XinXiang) Power Steering Sys. Co., 807 F.3d 806, 810 (6th Cir. 2015)*; *Golden v. Gorno Bros., 410 F.3d 879, 881 (6th Cir. 2005)*.

Here, although it does not expressly so state, CFPB lodges a factual attack on subject-matter jurisdiction. This is because CFBP relies on things outside of the Complaint (like the Supreme Court decision discussed in depth below) to support its challenge to subject-matter jurisdiction. Accordingly, the Court will exercise its discretion to resolve the Motions by reference to the record (and other [*9] matters of public record) outside of Plaintiffs' Complaint. *Alpine Indus. v. F.T.C., 40 F. Supp. 2d 938, 940 (E.D. Tenn. 1998)* ("*HN6*[⬆] Consideration of [ ] evidence [outside of the complaint when deciding a factual attack on subject-matter jurisdiction] does not convert the motion into one for summary judgment.").

## DISCUSSION

CFPB moved to dismiss Plaintiffs' First Amended Complaint "for lack of subject-matter jurisdiction . . . and for failure to

---

[7] Neither party has requested an evidentiary hearing or pointed the Court to additional evidence they might submit at such a hearing. The Court therefore exercises its discretion to rule on the present Motions without an evidentiary hearing. *See e.g.*, *Ohio Nat. Life Ins. Co., 922 F.2d at 327*.

operate within the confines of the Sixth Circuit." (Doc. No. 38 at 31-32).

Case 3:23-cv-00036 Document 12-1 Filed 08/02/23 Entered 08/02/23 19:17:05 Page 6 of 11

Case 3:23-ap-90036 Doc 12-1 Filed 06/02/23 Entered 08/02/23 19:17:05 Desc 04

Appendix Property Mgmt. Connection v. Consumer Fin.    Page 6 of 11

178

state a claim." (Doc. No. 50 at 1).[8] Here, the Court must start with an analysis of subject-matter jurisdiction pursuant to 12(b)(1), because if a court does not have subject-matter jurisdiction, any 12(b)(6) defense (of failure to state a claim) would become moot if the court lacks subject-matter jurisdiction in the first place. *Nassif v. Hansen, No. 1:06 CV 2563, 2008 U.S. Dist. LEXIS 121604, 2008 WL 788558, at \*5 (N.D. Ohio Mar. 21, 2008)* (citing *Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir.1990)*) ("Respondents argue that the Petition . . . should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to *Rules 12(b)(1)* and *12(b)(6)*, respectively. The court is bound to consider the *Rule 12(b)(1)* motion first, since the *Rule 12(b)(6)* challenge becomes moot if this court lacks subject matter jurisdiction."). Moreover, generally *HN7*[↑] any grant of a *Rule 12(b)(6)* motion would be a decision on the merits, and a district court simply should not render any decisions on the merits in cases **[\*10]** where it lacks subject-matter jurisdiction (and thus the jurisdiction to make any determination on the merits).

Asserting lack of subject-matter jurisdiction, CFPB contends that (1) "Counts I - III of [the Complaint] are moot because the bureau's rule requires no action by Plaintiffs, and (2) Plaintiffs' speculative fear of enforcement does not defeat mootness and is not sufficient to confer standing." (Doc. No. 51 at 17, 20). CFPB further argues that even if the Court did not lack jurisdiction over Count III (for declaratory judgment), is should exercise its discretion under the *Declaratory Judgment Act* and decline to adjudicate Count III. (*Id.* at 21-22). The Court will discussion each argument in turn.

*a. Mootness*

---

[8] The United States also moved to dismiss Plaintiffs' First Amended Complaint because "Plaintiffs' claims are moot and otherwise fail to state a claim on which relief may be granted." (Doc. No. 52 at 1). Contrary to the United States' indication, *HN8*[↑] mootness is a *12(b)(1)* concern, not a *12(b)(6)* concern. *See City of Streetsboro v. Fraternal Ord. of Police*, No. 5:03 CV 1565, 2004 WL 3710234, at \*2 (N.D. Ohio July 23, 2004) (citing *White v. Lee, 227 F.3d 1214, 1242 (9th Cir.2001)*; *West Va. Highlands Conservancy v. Norton, 161 F.Supp.2d 676, 679 (S.D. W.Va.2001)*) ("While SERB brings its motion to dismiss for mootness under *Fed. R. Civ. P 12(b)(6)*, mootness is a question of standing and subject matter jurisdiction. Accordingly, a motion to dismiss for mootness is properly brought pursuant to *Fed. R. Civ. P 12(b)(1)*."). In any event, Court need not address the merits of CFPB or the United States' 12(b)(6) defense because it is dismissing the case based on lack of subject-matter jurisdiction.

CFPB claims that Counts I-III of the Complaint are moot because the CFPB regulation no longer requires any action by Plaintiffs, and therefore the parties' dispute "is no longer embedded in any actual controversy about [Plaintiffs'] particular legal rights." (Doc. No. 51 at 19). Specifically, CFPB contends that "Counts I and II, which ask the Court to set aside and invalidate the CFPB [regulation] to prevent anyone from having to provide any information about the [Halt] Order, [ ], are moot because **[\*11]** it is clear that no one must provide any information about the CDC Order in any jurisdiction. Count III is likewise moot because the relief it seeks - a prompt and final determination as to whether the CFPB [regulation] applies in the Sixth Circuit, [ ] - has already effectively been provided [via the *Tiger Lily* decision]."[9] (*Id.*) (internal citations omitted). The Court agrees.

*HN9*[↑] "A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' *L.A. County v. Davis, 440 U.S. 625, 631, 99 S. Ct. 1379, 59 L. Ed. 2d 642 (1979)* (quoting *Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)*). Mootness implicates Article III's "case or controversy" requirement.[10] *Gentry v. Deuth, 456 F.3d 687, 693 (6th Cir.2006)*. Accordingly, mootness can be raised at any stage of litigation because it is a jurisdictional requirement. S*ee Midwest Media Prop., LLC v. Symmes Twp., 503 F.3d 456, 460 (6th Cir.2007)*." *League of Women Voters of Ohio v. Brunner, 548 F.3d 463, 473 (6th Cir. 2008)*.

In their Response, at the outset of their mootness discussion, Plaintiffs confusingly claim that this case is not moot because

---

[9] Via the Memorandum in Support, CFPB correctly asserts that "[t]he *Tiger Lily* decision, which was handed down after the Amended Complaint was filed, made clear that the CDC Order had no effect within the Sixth Circuit, and the developments in the Supreme Court and D.C. Circuit confirm that no CDC eviction moratorium has effect anywhere. Plaintiffs have thus effectively already received as final a 'determination as to whether the CFPB Rule applies in the Sixth Circuit,' as they could possibly hope to receive. Their entire complaint should be dismissed as moot." (Doc. No. 51 at 19).

[10] *HN10*[↑] ] "This case-or-controversy requirement applies 'at all stages of review, not merely at the time the complaint is filed.' *Id.* (quoting *Arizonans for Official English v. Ariz., 520 U.S. 43, 67, 117 S. Ct. 1055, 137 L. Ed. 2d 170 (1997)*). 'If events occur during the pendency of a litigation which render the court unable to grant the requested relief, the case becomes moot and . . . falls outside our jurisdiction.'" *Howard v. Tenn., 760 F. App'x 837, 840-41 (6th Cir. 2018)* (quoting *Demis, 558 F.3d at 512*)." *Jenkins v. Humphreys Cty., No. 3:18-CV-00639, 2019 U.S. Dist. LEXIS 6434, 2019 WL 189828, at \*2 (M.D. Tenn. Jan. 14, 2019)*.

Case 3:23-cv-00900 Document 12-1 Filed 08/02/23 Page 7 of 11 PageID #: 605
Appendix Property Mgmt. Connection v. Consumer Fin.    Page 7 of 11

179

they "have not received complete relief" because "CFPB's [regulation] *was* facially effective against the plaintiffs. CFPB has never disavowed its prior effectiveness outside this jurisdiction, it remains facially effective in this jurisdiction and the plaintiffs who refused to follow the [regulation] face continued liability for potential private and public enforcement." (Doc. [*12] No. 56 at 7-8). Whatever Plaintiffs mean by this (and it is unclear to the Court what all Plaintiffs are actually saying here), they have not shown that their claims are not moot. Plaintiffs filed their first complaint on May 3, 2021. In the six months that have passed since then, several intervening decisions have led to Plaintiffs' claims now being moot. But even before this case was filed, as explained thoroughly in the Court's memorandum opinion in support of its denial of Plaintiffs' motion for a preliminary injunction (Doc. No. 23), the Sixth Circuit decided *Tiger Lily* on March 29, 2021, which made clear that the CDC Order had no effect within the Sixth Circuit. *992 F.3d 518 (6th Cir. 2021)*. Three months after Plaintiffs filed their Complaint, on August 26, 2021, the Supreme Court decided *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs., 141 S. Ct. 2485, 210 L. Ed. 2d 856 (2021)*. Finally, although the defendants in *Alabama Ass'n of Realtors* appealed the district court's grant of summary judgment, they moved to voluntarily dismiss the appeal promptly after the Supreme Court's opinion was issued, and the motion was granted promptly by the D.C. Circuit on September 3, 2021. *See Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs., No. 21-5093, 2021 U.S. App. LEXIS 27377, 2021 WL 4057718, at *1 (D.C. Cir. Sept. 3, 2021)*. Each of these decisions greatly impacted this case and further solidified this case's mootness, as discussed further below.

Plaintiffs also contend that [*13] the case is not moot because two exceptions apply: (1) this issue is capable of repetition, yet evading review, and (2) CFPB cannot moot this case through its voluntary cessation. (Doc. No. 56 at 11-14). But both of these arguments fail.

As to the first contention, Plaintiffs assert that the relief is not moot for the Plaintiffs who complied with the CFPB regulation because their challenge is capable of repetition, yet evading review. (*Id.* at 12). Plaintiffs further state that "[t]he issues are also capable of repetition as CFPB retains the authority to issue the [regulation's] provisions at any time and have never acknowledged that they are prohibited from doing so. . . . CFPB has never acknowledged its legal overreach and remains poised to act again at any time" (*Id.*) (citations omitted). *HN11*[⬆] Application of the "capable of repetition, yet evading review" exception to mootness doctrine is limited to situations where: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there is reasonable expectation that same

complaining party will be subjected to same action again. *Chirco v. Gateway Oaks, L.L.C., 384 F.3d 307 (6th Cir. 2004)* (citing *Weinstein v. Bradford, 423 U.S. 147, 148, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975)*). Plaintiffs here are asserting the second [*14] situation, but it is not present here. At this stage of the litigation, the Court perceives, and Plaintiffs have pointed to, nothing indicating that the Halt Order is going to be essentially reissued or reasserted by CFPB in any way. It is sheer (and unsound) speculation to suggest that it will.

Some background is helpful here. On August 3, 2021, the CDC issued an order extending its Halt Order. *See, e.g., Ajax Mortg. Loan Tr. 2019-E, Mortg.-Backed Sec., Series 2019-E by U.S. Bank Nat'l Ass'n v. Sargent, No. 1:21-CV-00018-JAW, 2021 U.S. Dist. LEXIS 167827, 2021 WL 4027198, at *2, fn. 1 (D. Me. Sept. 3, 2021)*. However, about three weeks later, on August 26, 2021, the Supreme Court decided *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs., 141 S. Ct. 2485, 210 L. Ed. 2d 856 (2021)*, which is dispositive here.[11] In this

_____

[11] The Court pauses here to address an important issue. Given the procedural posture at the time *Alabama Ass'n of Realtors* was decided, the Court understands how some courts have viewed the Supreme Court's order as perhaps merely preliminary because the order addressed only a motion to vacate the district court's *stay* of its own summary judgment, meaning that (at the time) there was still a chance of an appeal being decided on the merits after more fulsome briefing. *See, e.g., Ajax Mortg. Loan Tr. 2019-E, 2021 U.S. Dist. LEXIS 167827, 2021 WL 4027198, at *2, fn. 1* (hinting that even after the Supreme Court's decision in *Alabama Ass'n of Realtors*, the Halt Order could still be in effect because "[t]he Supreme Court vacated a stay that the district court had imposed *in anticipation of appeal*."). Theoretically, the Supreme Court's order (at the time it was decided) did not necessarily preclude the Halt Order from "coming back to life" if the defendants in that case decided to prosecute an appeal of the summary judgment and won the appeal on the merits. However, other courts have concluded easily that the Supreme Court in *Alabama Ass'n of Realtors* resolved this issue conclusively when that opinion was issued, meaning that the Halt Order was definitely no longer in effect, *i.e.*, simply gone. *See, e.g., El Papel LLC v. Durkan, No. 220CV01323RAJJRC, 2021 U.S. Dist. LEXIS 181390, 2021 WL 4272323, at *6 (W.D. Wash. Sept. 15, 2021)* (concluding that the defendants argument that plaintiffs lacked standing failed because in *Alabama Ass'n of Realtors* "the [ ] Supreme Court vacated a [d]istrict [c]ourt's stay of an order vacating the CDC eviction moratorium, so that the CDC eviction moratorium is no longer in effect."). Although the defendants in *Alabama Ass'n of Realtors* did in fact appeal the district court's grant of summary judgment, they moved to voluntary dismiss the appeal promptly after the Supreme Court's opinion was issued, and the motion was granted promptly by the D.C. Circuit on September 3, 2021. *See Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs., No. 21-5093, 2021 U.S. App. LEXIS 27377, 2021 WL 4057718, at *1 (D.C. Cir. Sept. 3, 2021)* ("Upon consideration of defendants-

Case 3:23-cv-00036 Document 12-1 Filed 08/02/23 Entered 08/02/23 19:17:05 Desc
Appendix Property Mgmt. Connection v. Consumer Fin.   Page 8 of 11

180

case, associations of real estate agents and rental property managers sued the Department of Health and Human Services (HHS) and others, challenging a nationwide eviction moratorium for residential rental properties imposed by the director of the CDC in response to the COVID-19 pandemic. Here, the Supreme Court vacated a stay that the district court had imposed in anticipation of appeal because it concluded that "[i]f a federally imposed eviction moratorium is to continue, Congress must specifically authorize it." *Ala. Ass'n of Realtors,141 S.Ct. at 2490*. Accordingly, there is no reasonable **[*15]** expectation that the Halt Order will come back to life, especially considering the appeal's dismissal as discussed in footnote 12. *Coe v. Bell, 230 F.3d 1357 (6th Cir. 2000)* (citing *Sandison v. Michigan High School Athletic Ass'n, Inc., 64 F.3d 1026, 1029-30 (6th Cir.1995)*) ("*HN12*[⬆] When there is no reasonable expectation that the same complaining party will be subject to the same action again, the 'capable of repetition yet evading review' exception does not apply.").

Plaintiffs also assert that "CFPB cannot moot this case through its voluntary cessation". (Doc. No. 56 at 12-14). However, CFPB correctly refutes this argument in its Reply. There, CFPB notes that the mootness exception for a defendant's 'voluntary cessation' is inapplicable here because this case's mootness is not a result of any Bureau cessation, but of developments in other litigation that made clear that no CDC eviction moratorium applies anywhere and thus, that the Bureau's disclosure requirement (which, by its own terms, does not apply where the CDC eviction moratorium does not apply) does not apply anywhere either. *HN13*[⬆] "In any event, in . . . voluntary cessation cases involving government entities" the Sixth Circuit's 'primary concern' is not the mere possibility that the government could revert **[*16]** to a challenged practice but whether there is evidence that the government will 'flip-flop' or has altered its conduct solely in response to litigation." *Thomas v. City of Memphis, Tennessee, 996 F.3d 318, 328 (6th Cir. 2021).* Plaintiffs do not, and could not, offer any such evidence here." (Doc. No. 59 at 3-4). The Court agrees that for these reasons, Plaintiffs' voluntary-cessation argument does not hold any water.

---

appellants' unopposed motion to voluntarily dismiss appeal, it is ordered that the motion be granted and this case be dismissed."). Therefore, any notion that *Alabama Ass'n of Realtors* was still alive on the merits evaporated completely when the appeal was dismissed, thereby precluding any further possibility of litigation on the merits in that case that could somehow ultimately result in a ruling from the Supreme Court different from the one it expressed on August 26, 2021. Accordingly, it is appropriate to consider the Supreme Court's August 26 decision as not a preliminary one that is subject to change in that case. Thus, the Court treats this decision as dispositive, as discussed further herein.

In short, Plaintiffs' contention that "[t]he expiration of CFPB's [regulation][12] and the partial vacatur of the underlying [Halt Order], does not foreclose *all possible* relief for Plaintiffs," (Doc. No. 56 at 8), ignores the practical effect of *Ala. Ass'n of Realtors* decision and the D.C. Circuit's dismissal of the appeal discussed in a footnote above.[13] Plaintiffs' challenge to the CFPB regulation is moot in its entirety,[14] which does in fact foreclose all possible avenues of relief for Plaintiffs. Because *Ala. Ass'n of Realtors* has effectively ended the Halt Order in every jurisdiction, and because it seems entirely clear (and something the Court is authorized to rely on herein) that the Halt Order is simply defunct everywhere at this point, Plaintiffs are no longer required to make disclosures about the eviction moratorium mandated by the Halt **[*17]** Order, and that is true in every jurisdiction. There is no longer a live case or controversy in this matter. *See Jenkins, 2019 U.S. Dist. LEXIS 6434, 2019 WL 189828 at *2* (dismissing habeas petition as moot because the petition "no longer present[ed] a case or controversy under Article III of the Constitution"). Accordingly, Counts I - III of Plaintiffs' Complaint are moot (and thus not within this Court's subject-matter jurisdiction) and must be dismissed on that basis alone. However, the Court will also entertain the parties standing arguments as discussed immediately below as an additional and alternative basis of dismissal.

### b. Standing

*HN14*[⬆] "Standing is a critical component of the subject-matter jurisdiction of the federal courts; without it there is no 'Case' or 'Controversy' upon which the federal judicial power can act. Consequently if at any time a court discovers that a party bringing suit lacks standing, the case must be dismissed for want of jurisdiction. 'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Exec. Transp Sys. LLC v. Louisville Reg'l Airport Auth., 678 F. Supp. 2d 498, 505 (W.D. Ky.*

---

[12] Plaintiffs do not explain, and the Court does not understand, what they mean when they refer to the CFPB regulation's "expiration", but in any event, the Court does not rely on any expiration of the CFPB regulation in finding that the Court lacks subject-matter jurisdiction.

[13] Plaintiffs filed their Response on October 8, 2021, after both *Ala. Ass'n of Realtors* was decided and after the D.C. Circuit dismissed the appeal. (Doc. No. 56).

[14] Perhaps this would not be the case had Plaintiffs asserted claims for damages allegedly arising from alleged statutory and constitutional violations while the CFPB regulation still had some teeth. But Plaintiffs asserted no such claims.

Case 3:23-ap-90036 Doc 12-1 Filed 06/01/23 Entered 06/01/23 19:17:05 Desc
Appendix Property Mgmt. Connection v. Consumer Fin. Page 9 of 11

181

*2010)* (quoting *Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514, 19 L. Ed. 264 (1869)* (quoted in *Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)*).

*HN15*[↑] For a legal dispute to qualify [*18] as a genuine case or controversy, at least one plaintiff must have standing to sue. *McLemore v. Gumucio, No. 3:19-CV-00530, 2020 U.S. Dist. LEXIS 228082, 2020 WL 7129023, at *5 (M.D. Tenn. Dec. 4, 2020).* More specifically, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Estates Inc., 137 S. Ct. 1645, 1647, 198 L. Ed. 2d 64 (2017).* To have standing to sue, a plaintiff must show injury in fact, causation, and redressability. *Durham v. Martin, 905 F.3d 432, 433 (6th Cir. 2018)* (*Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)*).

Regarding standing, CFPB asserts that "[t]o the extent Plaintiffs now concede that the [regulation] requires no ongoing action on their part, but they attempt to sustain their legal challenge on a speculative fear that they may someday be subject to an enforcement action for their past non-compliance with the Rule, Plaintiffs lack standing."[15] (Doc. No. 51 at 20). Plaintiffs assert in their Response that they *all* have standing to bring this suit because they suffered an injury in fact—namely that they have "incurred costs by complying with the [regulation]." (Doc. No. 56 at 14-15). However, that argument fails. "*HN16*[↑] Injury in fact,' as required for Article III standing, is an invasion of a legally protected interest which is concrete and particularized and actual or imminent rather than conjectural or hypothetical." *U.S. Const. Art. 3, § 2.* True, alleged damages, such as incurring costs, theoretically could [*19] support the finding of an injury-in-fact. But they do not do so in this case, because in the Amended Complaint, Plaintiffs did not ask for damages; nor did they make any factual allegations that they have suffered compensable losses as a result of Defendants' alleged violations of law. The only relief requested in the Amended Complaint is declaratory relief and injunctive relief. (*See* Doc. No. 38). Plaintiffs have requested only prospective relief, and prospective relief is moot, as discussed above.

Therefore, Plaintiffs' claims must be dismissed alternatively for lack of standing because Plaintiffs have not shown an injury in fact.

### c. *Declaratory Judgment Act*

As noted above, the First Amended Complaint requests a different declaratory judgment in each of the three counts, even though only one of the counts (Count III) is titled as a claim for declaratory judgment. Perhaps for this reason, CFPB focuses its attack on Count III's request for a declaratory judgment, although its argument actually applies to all three counts. CFPB asserts that "[e]ven if the Court did lack jurisdiction over Count III [Plaintiffs' request for declaratory judgment], [which] it does, it should exercise its discretion under the DJA [*20] and decline to adjudicate it." (Doc. No. 51 at 15). The Court agrees that it does not have jurisdiction over Count III (or any Count of the First Amended Complaint for that matter) for the reasons set forth above, but also notes that (for reasons similar to those depriving the Court of subject-matter jurisdiction) the *Declaratory Judgment Act* is inapplicable to any of the Counts. *HN17*[↑] Declaratory judgment is available as a remedy only in "case[s] of actual controversy." *See* *28 U.S.C. § 2201.* As discussed above, there is no case or controversy in this matter. *See* *Hayden v. 2K Games, Inc., 375 F. Supp. 3d 823, 830 (N.D. Ohio 2019)* (dismissing the plaintiff's claim for declaratory judgment due to the absence of an actual "case or controversy" as required by the *Declaratory Judgment Act* and Article III). In short, the *Declaratory Judgment Act* is inapplicable for essentially one of the two reasons the Court lacks subject-matter jurisdiction, *i.e.*, the lack of an actual controversy. Accordingly, even if the Court had jurisdiction over Plaintiffs' claims—meaning among other things that it somehow could be said that there still was a "case or controversy" here within the meaning of Article III--which it does not, each request for declaratory relief would be declined because the Court would not perceive an "actual controversy" for purposes of the DJA.

### CONCLUSION

Plaintiffs [*21] are effectively, and much more quickly, in the same (or better) position they would have been in had they prosecuted this lawsuit to the end and won all the relief they had requested. The Court may not understand why Plaintiffs apparently insist on claiming that that this is not the case, but it does understand why Plaintiffs might want to continue this litigation even though it is the case. That is, the Court understands that Plaintiffs may wish to vindicate, via a federal court's decisions, an apparently sincere view that the CFPB regulation (and, secondarily, the Halt Order) were in violation of federal statutes and the federal Constitution. If that is the case, the Court does not begrudge Plaintiffs their wish. But

---

[15] CFPB also confusingly cites to and analyzes the requirements for plaintiffs seeking to challenge a rule in the pre-enforcement context. (*See* Doc. No. 51 at 14-15). But this is irrelevant here, as the CFPB regulation is not at the pre-enforcement stage, but rather is defunct and past the enforcement stage, as discussed herein. Accordingly, the Court disregards CFPB's argument, although the Court agrees that Plaintiffs still lack standing in any event.

Case 3:23-cv-00036 Document 22-1 Filed 08/02/23 Page 10 of 11 PageID #: 608

Appendix Property Mgmt. Connection v. Consumer Fin.    Page 10 of 11

182

the Court cannot grant it; it cannot even consider vindicating any party's statutory or constitutional theories, no matter how sincere or correct they may be, if they are raised in a controversy that has become moot or if the plaintiffs have no injury-in-fact. Such is the case here. Plaintiffs have prevailed based on developments elsewhere, and they need not and cannot prevail additionally and more specifically in this action in this Court.

For the reasons discussed herein, **[*22]** the Court will grant CFPB's Motion (Doc. No. 50) as to its *12(b)(1)* defense and deny as moot CFPB's Motion as to its *12(b)(6)* defense. The US's Motion (Doc. No. 52) will be denied as moot.

An appropriate order will be entered.

/s/ Eli Richardson

ELI RICHARDSON

UNITED STATES DISTRICT JUDGE

**ORDER**

Pending before the Court are two Motions: (1) Defendants Consumer Financial Protection Bureau and David Uejio's Motion to Dismiss pursuant to *Fed. Rs. Civ. P. 12(b)(1)* and *12(b)(6)* (Doc. No. 50, "CFPB Motion"); and (2) Defendant United States' Motion to Dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* (Doc. No. 52, "US Motion").

For the reasons discussed in the accompanying Memorandum Opinion, CFPB's Motion (Doc. No. 50) as to its *12(b)(1)* defense is **GRANTED**, and CFPB's Motion as to its *12(b)(6)* defense is **DENIED as moot**. The US Motion (Doc. No. 52) is **DENIED as moot**.

*HN18*[↑] A dismissal under *Rule 12(b)(1)* is necessarily not on the merits and thus is always without prejudice, even in in cases where it may benefit the plaintiff little for the dismissal to be without prejudice because the prospects for curing the lack of subject-matter jurisdiction are bleak. Accordingly, this action is **DISMISSED without prejudice** in its entirety, and the Clerk is directed to close the file. This Order shall constitute the final **[*23]** judgment in this case pursuant to *Fed. R. Civ. P. 58*.

IT IS SO ORDERED.

/s/ Eli Richardson

ELI RICHARDSON

UNITED STATES DISTRICT JUDGE

**End of Document**

Case 3:23-ap-90036 Doc 12-1 Filed 06/02/23 Entered 08/02/23 19:17:05 Page 609

Appendix Property Mgmt. Connection v. Consumer Fin.    Page 11 of 11

183

Charles M. Walker
U.S. Bankruptcy Judge
Dated: 9/5/2023



## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | **Case No. 3:19-bk-07235** |
| Debtor. | ) | **Chapter 7** |
| | ) | **Judge Walker** |
| BRIAN CUMMINGS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 3:23-ap-90036** |
| | ) | |
| BRETTON KEEFER; JEANNE | ) | |
| BURTON, TRUSTEE; and AFSOON | ) | **Hearing Date: August 30, 2023** |
| HAGH, | ) | **at 11:00 a.m.** |
| Defendants. | ) | |

### ORDER DENYING MOTION TO DISMISS OR, IN THE ALTERNATIVE,
### TO STAY PENDING MEDIATION AND ARBITRATION FILED ON BEHALF OF
### DEFENDANTS BRETTON KEEFER AND AFSOON HAGH

This matter came before the Court on August 30, 2023 for an evidentiary hearing on the Motion to Dismiss or, in the Alternative, to Stay Pending Mediation and Arbitration Filed on Behalf of Defendants Bretton Keefer and Afsoon Hagh (Doc. 9) (the "Motion to Dismiss"). Plaintiff Brian Cummings filed his Response in Opposition to Motion to Dismiss (Doc. 12) (the "Response") on August 2, 2023. Appearing at the hearing on the Motion to Dismiss were John Spragens on behalf of Defendants Bretton Keefer and Afsoon Hagh; Elizabeth S. Tipping on behalf of Plaintiff Brian Cummings; and Phillip G. Young, Jr. on behalf of Trustee Jeanne Ann Burton. No witnesses or evidence were offered by any party during the hearing.

The Court heard argument from Defendants Keefer and Hagh, Plaintiff, and the Trustee. Based upon the Motion to Dismiss, the Response, the arguments of all counsel at the August 30, 2023 hearing, and based on the entire record herein;

**IT IS HEREBY FOUND:**

A.    Pursuant to Federal Bankruptcy Rule 7052, the Court hereby incorporates and adopts all findings and conclusions stated orally at the hearing on August 30, 2023.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.    The Motion to Dismiss (Doc. 9) is **DENIED**.

2.    The Court will schedule a status conference in this matter in January 2024.

*THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE*

Submitted for entry:

/s/ Elizabeth S. Tipping

Elizabeth S. Tipping, No. 023066
Counterpoint Legal, PLC
2689 Union Hill Road
Joelton, TN 37080
(615) 426-5566
liz@counterpointlaw.com
*Counsel for Plaintiff Brian Cummings*

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE (NASHVILLE)

.
IN RE:                              . Case No. 19-07235
                                    . Chapter 7
CUMMINGS MANOOKIAN, PLLC,           .
                                    .
                 Debtor.            .
                                    .
. . . . . . . . . . . . . . . . .   .
                                    .
BRIAN CUMMINGS,                     . Adv. Case No. 23-90036
                                    .
                 Plaintiff,         .
                                    .
   v.                               .
                                    . 701 Broadway
BRETTON KEEFER, JEANNE BURTON,      . Nashville, Tennessee 37203
and AFSOON HAGH,                    .
                                    . Wednesday, August 30, 2023
                 Defendants.        . 11:38 a.m.
. . . . . . . . . . . . . . . . .   .

     TRANSCRIPT OF HEARING ON MOTION - AP MOTION FOR SCHEDULING
          PRETRIAL CONFERENCE FILED ON THE BEHALF OF
                 DEFENDANT JEANNE BURTON [8]
            BEFORE THE HONORABLE CHARLES M. WALKER
              UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Plaintiff:        Counterpoint Legal PLC
                          By:  ELIZABETH S. TIPPING, ESQ.
                          2689 Union Hill Road
                          Joelton, TN 37080
                          (615) 426-5566

APPEARANCES CONTINUED.

Audio Operator:           Bailie Crawford, ECR

Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46048
                          (855) 873-2223
                          www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):

For Bretton Keefer and        Spragens Law PLC
Afsoon Hagh:                  By:  JOHN T. SPRAGENS, ESQ.
                              311 22nd Avenue North
                              Nashville, TN 37203
                              (615) 983-8900


For Jeanne Burton:            Thompson Burton PLLC
                              By:  PHILLIP G. YOUNG, JR., ESQ.
                              1801 West End Avenue
                              Suite 1550
                              Nashville, TN 37203
                              (615) 465-6008

```
 1        (Proceedings commence at 11:38 a.m.)

 2            THE CLERK:  Case 23-90036, Cummings v. Keefer.

 3            THE COURT:  All right.  Let me go ahead and get

 4   appearances.

 5            MR. SPRAGENS:  Good morning, Your Honor.  John

 6   Spragens on behalf of Ms. Hagh and Mr. Keefer.

 7            MS. TIPPING:  Good morning, Your Honor.  Elizabeth

 8   Tipping here on behalf of Brian Cummings who's here with me

 9   today.

10            MR. YOUNG:  Your Honor, Phillip Young on behalf of

11   the trustee.

12            THE COURT:  Okay.  And we are here, Mr. Spragens, on

13   your motion to dismiss.

14            MR. SPRAGENS:  Yes, Your Honor.

15            MS. TIPPING:  Your Honor, may I address a procedural

16   issue before we start argument?  We -- it might significantly

17   cut this proceeding short.  We object to the defendant's

18   presenting or relying on any evidence outside of what's in the

19   complaint.  And without that evidence, they're not going to be

20   able to succeed on this motion.

21            The reason for our objection is that this Court

22   issued your order on May 25 setting this evidentiary hearing,

23   and in that order, the Court directed the exhibit list and

24   witness list be filed by August 16th.  The counsel for the

25   defendants has not filed a witness or exhibit list, and we
```

1  believe they should be precluded from presenting any evidence

2  that they did not identify ahead of time.

3          THE COURT:  Okay.

4          MR. SPRAGENS:  That's right, Your Honor.  We did not

5  file a witness or exhibit list because we intend to rely on the

6  papers, and I was just hoping to argue the motion without

7  presenting evidence today.  This is a Rule 12(b)(1)/12(b)(6)

8  motion, so -- and a reliance on extraneous evidence may not be

9  permissible anyway.

10         MS. TIPPING:  Your Honor, if they're relying on

11  outside evidence, there is no arbitration provision for us to

12  be discussing.  The documents that counsel attached to the

13  motion were not attached to the complaint and are not in the

14  record at this point.

15         THE COURT:  Okay.

16         MR. SPRAGENS:  Well, Your Honor, they were referred

17  to in the complaint, and the Court can take judicial notice of

18  a document that is integral to the complaint.  So I'm happy

19  to -- I don't have that citation in front of you, but I feel

20  very confident that that's good law in the Sixth Circuit.

21         THE COURT:  Okay.  Well, we're going to go ahead and

22  proceed with the motion.

23         Anything from the trustee as a --

24         MR. YOUNG:  No, Your Honor.

25         THE COURT:  Okay.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2237)

1          MR. SPRAGENS:  Thank you, Your Honor.  Also, as a

2     preliminary matter, I would note that the plaintiffs just

3     uploaded their exhibits within the last 25 minutes or so, so I

4     didn't receive the exhibits until I was sitting back there.  So

5     we would object to them using those exhibits, contravening the

6     local rules of this court which I've been learning so much

7     about over the last couple of years myself.

8          THE COURT:  Okay.  We'll get to that if they try to

9     use their exhibits that were just uploaded.

10         MR. SPRAGENS:  Okay.  Thank you, Your Honor.

11         We ask the Court to dismiss this adversary case, the

12    complaint, the amended complaint in this case for lack of

13    subject-matter jurisdiction and for failing to state a claim,

14    so Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

15    Procedure or, alternatively, to compel the parties to

16    arbitration and stay this proceeding.

17         The entirety of this whole dispute that's now in

18    front of this Court arises from an attorney-client contingent

19    fee agreement that was signed originally between Cummings

20    Manookian and Mr. Keefer and subsequently signed between

21    Mr. Cummings at his new firm and Mr. Keefer.  Mr. Cummings

22    drafted that agreement, at least in some form, he and

23    Mr. Keefer both signed that agreement, and then they assigned

24    an amended contract some years later.

25         This is a contract dispute, and the contract is

1   crystal clear, as we recited on Page 3 of the brief, with

2   respect to the contract that was referred to in the amended

3   complaint and that we would ask the Court to take judicial

4   notice of.  There is a binding arbitration clause.  It spells

5   out that "Any dispute between the parties to the contract"

6   cannot be resolved -- "that cannot be resolved between us must

7   first be taken to mediation for a good-faith attempt at

8   resolving the dispute, and if mediation does not completely

9   resolve the dispute, any ongoing disputed issues must be

10  submitted for final disposition by an agreed-to arbitrator for

11  binding arbitration."  And it also says, "Consequently, neither

12  the client nor the attorneys in this attorney-client

13  relationship can file litigation over or about any alleged or

14  real dispute within the attorney-client relationship."

15          Mr. Cummings drafted that language and had his client

16  sign that language, and now -- and have both of them sign it

17  again.  Cummings Manookian signed that language.  Hagh Law --

18  Ms. Hagh eventually signed that language as well.  And the

19  agreement is clear that any disputes relating to fees must be

20  mediated, and if mediation fails to resolve the dispute, it

21  must be taken into binding arbitration.

22          THE COURT:  Is that the exact term of that provision,

23  or does it just reference attorney-client relationship issues?

24          MR. SPRAGENS:  It says "any alleged or real dispute

25  within the attorney-client relationship."

 1          THE COURT:  Okay.  And how would you define attorney-

 2    client relationship?

 3          MR. SPRAGENS:  Fees are typically -- fees and costs

 4    are one of the first things that arises in a dispute between an

 5    attorney and a client.

 6          THE COURT:  Right.  Between an attorney and a client.

 7    What about between attorney and attorney?  Would that be

 8    covered under your idea of what attorney-client relationship

 9    means?

10          MR. SPRAGENS:  Certainly -- so yes, under the

11    language that was drafted and signed here by all the attorneys

12    and the client in this proceeding.  It says, "Should any

13    dispute arise within this attorney-client relationship," and

14    then it goes on and says, "neither the client nor the attorneys

15    in this attorney-client relationship can file litigation over

16    or about any alleged or real dispute within the attorney-client

17    relationship."

18          This attorney-client relationship is governed by

19    contract.  The contract includes contingency fee award,

20    recovery of costs.  It includes a provision about what happens

21    when an attorney withdraws.  It includes a provision about what

22    happens when a client discharges the attorney.  So the entire

23    nature of the attorney-client relationship is spelled out in

24    that contingent fee agreement.

25          So yes, my view is that all of the issues that

1  Mr. Cummings is seeking to litigate are -- they're really a

2  contract dispute between him and his client.  He contends that

3  his client should have paid him a portion of the fee in the

4  case that was resolved.  And his client, obviously, doesn't

5  feel the same way.  So he has a dispute with his client about

6  Mr. Cummings' entitlement to attorneys' fees.

7          His client's position is that he withdrew from the

8  representation, so I don't owe you a fee.  You're entitled to

9  recover your costs.  It's all pursuant to the terms of the

10 contract.  Mr. Cummings' position is that he was forced to

11 withdraw from the representation and, therefore, is still

12 entitled to some portion of the fee.

13         Fundamentally, this is a dispute about a contract

14 between an attorney and a client and the client making the

15 choice to pay one attorney and not the other.  I think that --

16         THE COURT:  And I don't have this document, correct?

17         MR. SPRAGENS:  It is an exhibit to our motion.  And

18 under that, because, you know, it's filed, I believe you can

19 take judicial notice of it.

20         THE COURT:  But you did not upload your witness and

21 exhibit list per the Court's order and instruction.

22         MR. SPRAGENS:  I'm sorry, Your Honor.  I didn't

23 understand that we were required to reupload exhibits that were

24 filed in support of the motion.  I thought it was if we were

25 putting on evidence in this courtroom, that we would need to

```
 1   have a sponsoring witness to authenticate that evidence.

 2           So in my view, it's routine; you know, courts decide

 3   motions to dismiss without hearings all the time.  There's no

 4   reason that the Court can't take judicial notice of a contract

 5   that was referenced in the complaint and supplied in the motion

 6   to dismiss.

 7           THE COURT:  Right.  I can take judicial notice of the

 8   contract, but that has nothing to do with authenticating or

 9   relying on anything within the contract.  There is a contract.

10   So firstly --

11           MR. SPRAGENS:  Thank you, Your Honor.  Mr. Cummings

12   is now trying to get around the language in the contract by

13   creating this into -- creating this dispute between attorneys

14   and maybe alleging some sort of common law.  It's very hard to

15   tell from the amended complaint what the causes of action are

16   here.  There's a reference to the attorney-client agreement,

17   and then there's a reference to unjust enrichment.  There's no

18   separately delineated cause of action pled in the complaint.

19           But of course, where there's a contract governing a

20   relationship, there are no, you know, common law causes of

21   action that can displace the terms of the contract.  This is a

22   contract dispute.  And the money that's at stake here was

23   Mr. Keefer's property.  And Mr. Cummings is asserting an

24   entitlement to some of Mr. Keefer's property.  His entitlement

25   is completely and totally derived from the contract with
```

1  Mr. Keefer.

2       Every attorney who is presently involved in this

3  agreed to arbitrate any dispute arising from that contract, and

4  there's a strong federal policy in favor of arbitration, which

5  we cite extensively in our brief.  Arbitration agreements

6  should be construed and given full force and effect.  There was

7  an arbitration agreement here.  It was drafted by the attorney

8  who later brought the case.

9       And so now, Mr. Cummings cannot invent federal

10  subject-matter jurisdiction for this Court by converting a

11  contract dispute into some amorphous freestanding attorney's

12  lien dispute.  There's a contract; he has a dispute with his

13  client about how much money his client owed him as a result of

14  the attorney-client relationship, and that should be dealt with

15  in arbitration pursuant to the terms of the contract.

16       If the Court doesn't have any more questions, I'll

17  let the other side go.

18       THE COURT:  Okay.  Thank you.

19       MR. SPRAGENS:  Thank you, Your Honor.

20       MS. TIPPING:  Good morning, Your Honor.  Elizabeth

21  Tipping here on behalf of Brian Cummings.

22       Before I dive right in, I would like to address two

23  things that were shared by counsel in argument.  The first is

24  the representation that not just Mr. Cummings and Mr. Keefer

25  signed an arbitration agreement, but that such an agreement was

1  signed by all of the attorneys who are involved. I flipped

2  through to make sure I was correct. None of the documents that

3  were attached to defendant's motion -- even if the Court were

4  to look at them with that authentication, none of them include

5  signatures by Ms. Hagh -- Defendant Hagh, which is the second

6  issue that we've raised as reason to deny this motion.

7       The other matter that was raised right near the end

8  of argument was the suggestion or the assertion that

9  Mr. Cummings cannot invent federal subject-matter jurisdiction.

10 And that ties well into the first point in our motion, which is

11 that the federal subject-matter jurisdiction in this case came

12 because this matter involves a bankruptcy, and the bankruptcy

13 trustee is the party who actually removed this case from state

14 court to federal court so that it could ultimately come to this

15 Court.

16      And so we have opposed the motion to dismiss for

17 three reasons. The first is that the Court has -- this Court

18 has exclusive jurisdiction over this matter and that that

19 jurisdiction trumps any arbitration provision that might apply.

20      The second is that Ms. Hagh has no agreement to

21 arbitrate with Mr. Cummings and, therefore, cannot force

22 Mr. Cummings to arbitrate with her.

23      And then finally, we've discussed the fact that both

24 Defendants Hagh and Defendant Keefer have waived arbitration by

25 sitting on their rights for over 15 months. They've known

about this claim and this case since early 2022, and the first
time that arbitration was demanded was shortly before the
filing of this motion in May.

We're prepared to --

THE COURT:  When you say they sat on their rights,
they didn't have the dispute.  So from that 15 months, tell me
that timeline.

MS. TIPPING:  So I'd be glad to, and we are prepared
to present evidence on these points, but I'll discuss it
through, and if the Court would like, we'll bring in the
exhibits and the witnesses to support it.

Mr. Cummings filed his notice of attorney's lien back
in 2020.  And after the settlement of the underlying case was
approved, he asked for a motion for status conference in
December of 2021.  So at that point, Defendants Hagh and
Defendant Keefer knew that this claim had been made or was
being made by Mr. Cummings.  There was some briefing in the
trial court over the course of about a month in which Defendant
Hagh demanded that the case had to be filed in a separate
action.  There was discussion at one point about arbitration,
and so from February 1st until March the 8th of 2022, counsel
for Mr. Cummings at that time, James Price, sought through
written correspondence, which are all attached to our motion
and we're prepared to present today, asked Defendant Hagh to
advise about Defendant Keefer's views on arbitration,

1  specifically whether this matter ought to be addressed in

2  arbitration or whether Mr. Keefer did not want to do that

3  because of all that arbitration entails.

4          In each of the responses that Defendant Hagh sent

5  back, she claimed she had no idea -- she couldn't understand

6  what was being asked, but she refused to answer any questions

7  about arbitration.  We would suggest to the Court that at least

8  through that correspondence, there was an awareness that there

9  was going to be a lawsuit filed, that there was a request about

10  arbitration, and that the defendants specifically and expressly

11  refused to address arbitration.

12          That lawsuit was then filed in March of 2022.  We've

13  outlined the issues that arose related to service, up to and

14  including the deputy U.S. marshal attempting to serve Defendant

15  Hagh and being interfered with by Mr. Manookian, who's not a

16  party in this case.

17          And finally, we resolved all of those after we filed

18  a motion for entry of default in February.

19          So if I go -- and the Court -- we discussed in our

20  brief, there are some Sixth Circuit rulings regarding waiver.

21  And one of those, I think, is illustrative or helpful in this

22  case, and that's the case of O.J. Distributing.  The court

23  found in that case -- the Sixth Circuit found that the engaging

24  in settlement negotiation period which happened for over a year

25  before the lawsuit was filed, the court included that back-and-

1   forth settlement discussion in their counting of the 15-month

2   delay.  There was discussion; there was back-and-forth filing.

3   When that was clearly not going to happen, the plaintiff filed

4   the lawsuit, similarly had trouble with service.  And then

5   three months after the lawsuit was filed, the defendant made

6   its first request for arbitration.

7            In that case, the lawsuit was only pending for three

8   months before the defendant sent the letter requesting

9   arbitration.  The Sixth Circuit said that entire period of time

10  where the defendant knew that the plaintiff had a claim and did

11  not ask for arbitration should be counted, and because the

12  defendants did not ask for arbitration throughout that time,

13  they had sat on -- I think the phrase they used was "they had

14  slept on their rights" for 15 months and, therefore, had waived

15  arbitration.

16            If I could go back -- unless Your Honor had a

17  question about that waiver, I wanted to --

18            THE COURT:  No questions.

19            MS. TIPPING:  -- I wanted to address the exclusive

20  jurisdiction piece briefly, although my knowledge of bankruptcy

21  court is this much, and I know Your Honor has much more.  But

22  we haven't heard anything about bankruptcy and how the

23  interplay of the arbitration provision and the Bankruptcy Code

24  should be addressed in this particular case.  And I think that

25  it's important for the Court to look at that.  I think there

 1   are a lot of cases out there that talk about what to do when a

 2   party wants to compel arbitration indicates that it is in the

 3   bankruptcy court.

 4        And the courts have instructed bankruptcy courts to

 5   determine whether there's an inherent conflict between

 6   enforcement of the arbitration provision and the underlying

 7   purposes of the Bankruptcy Code.  They look at the

 8   particularized inquiry into the nature of the claim and the

 9   facts of the specific bankruptcy when they are making that

10   determination.  And courts are instructed to consider the

11   objectives of the Bankruptcy Code, such as the goal of

12   centralized resolution of claims and protecting parties from

13   piecemeal litigation.

14        And where there is an inherent conflict, the

15   Bankruptcy Code trumps the Federal Arbitration Act.  That can

16   exist, and we cited the Court to the Fourth Circuit Court of

17   Appeals ruling that found that there can be an inherent

18   conflict, even when the motion to compel is not seeking to

19   compel a debtor or a trustee to arbitration but another party

20   related because of the impact on the bankruptcy.

21        And so here, we have the trustee, Mr. Cummings, and

22   Defendant Hagh all asking for a piece of the same pot of money,

23   which is the attorneys' fee from the case involving Defendant

24   Keefer.  And if one piece of that -- whether it be Mr. Cummings

25   claim just against Mr. Keefer because there's an arbitration

1   provision with Ms. Hagh, or all of Mr. Cummings' claim -- if

2   that has to go to arbitration, we're going to have two forums

3   dividing up the same pot of money but among different sets of

4   parties, and there's no way that that can happen without there

5   being inconsistent rulings.

6        So this is exactly the type of case that presents

7   that conflict that results in the Bankruptcy Code trumping the

8   Arbitration Act, so.

9        THE COURT:  So if there wasn't that conflict -- and

10  as you may be aware, there's another adversary that is on

11  appeal that is integral to resolving this case -- if that is

12  resolved and it remains with the Court, which is still yet to

13  be determined whether it does, is there conflict still present

14  if both matters are before the Court or if -- depending on what

15  happens on appeal, it may not be in the same forum or at least

16  in front of the same judge or maybe even the same district.

17  How does that affect your position?

18       MS. TIPPING:  I think that what has been raised by

19  the trustee is that because there are related issues, at least

20  with respect to this particular asset, there has been mention

21  to how do we make those two -- these two adversary proceedings

22  work together so that -- because of those commonalities and

23  whether --

24       THE COURT:  Is it your position one is before the

25  other, I guess is the easiest way to ask the question.  Do you

1   have to resolve one in order to get to the other?

2           MS. TIPPING:  I don't --

3           THE COURT:  Or are they simultaneous?

4           MS. TIPPING:  I think they could be simultaneous.  I

5   don't think that one has to be resolved before the other.  I

6   think that if -- I suppose if the trustee has no right to that

7   fee, then that would resolve the conflict, so if the decision

8   is made in the other adversary proceeding --

9           THE COURT:  That very well could happen.

10          MS. TIPPING:  Correct.  And if that did, I suppose

11  that would resolve that conflict.  But short of that, I think

12  it could be handled together or closely in time.

13          THE COURT:  Okay.  I interrupted you, so --

14          MS. TIPPING:  I apologize.

15          THE COURT:  -- please keep going.

16          MS. TIPPING:  We are prepared, as I said, to put on

17  the evidence supporting the waiver and addressing the matter

18  concerning Ms. Hagh, although as I've noted, there's no

19  agreement, authenticated or otherwise, with Ms. Hagh's

20  participation or signature or otherwise before the Court.  But

21  if Your Honor would like to hear evidence on the two -- second

22  and third issues, the waiver and the lack of arbitration

23  provision, we can put on evidence, or I'm happy to move on at

24  this point.

25          THE COURT:  Okay.  Anything from the trustee before

1  we -- since the trustee started this by bringing it from state

2  court to district court, and then it meanders its way here to

3  bankruptcy court.

4  MR. YOUNG:  Guilty as charged, Your Honor.  Phillip

5  Young on behalf of the trustee, and I really just wanted to

6  address one issue that the Court raised briefly:  that is,

7  there is jurisdiction here because there is a bankruptcy estate

8  involved.  There's a pot of money to which three parties claim

9  entitlement:  Ms. Hagh claims entitlement, Mr. Cummings claims

10  entitlement, and the bankruptcy estate claims entitlement.

11  I do believe that if those proceeded in different

12  forums you could end up with very conflicting results.  For

13  example, what if this Court said the estate was entitled to 100

14  percent?  Then what is the other court deciding, for example?

15  That's an extreme example, but illustrative, nonetheless.

16  To the Court's question about how the interplay

17  between this and the other adversary proceedings, that's really

18  what I wanted to speak to.  We removed this to this Court

19  because we think they're closely related.  In the other

20  adversary proceeding, the trustee included, in the list of

21  cases to which she's entitled to the accounts receivable, this

22  case.  This fee is listed in that other adversary proceeding.

23  We think these two need to proceed side by side for judicial

24  efficiencies.

25  Now obviously, there are other issues as between

1  these two clients that maybe the trustee is not directly

2  involved in, but the ultimate determination needs to be

3  decided, in our view, with the other adversary proceeding,

4  wherever that is, whenever that is.

5          And so that's the trustee's position because we think

6  this is actually integral to that other matter and highly

7  related to that other matter.

8          THE COURT:  Okay.

9          MR. YOUNG:  That's all I've got, unless the Court has

10  questions for me.

11          THE COURT:  Nope, thank you.

12          MR. YOUNG:  Thank you.

13          MR. SPRAGENS:  Just to respond to a couple of points,

14  Your Honor.  With respect to whether bankruptcy jurisdiction

15  should trump the Federal Arbitration Act in this particular

16  instance, that Fourth Circuit that Ms. Tipping pointed the

17  Court to, the basis for finding that bankruptcy jurisdiction

18  should trump the FAA is that it would substantially interfere

19  with the reorganization of the debtor.

20          Here, I don't think there is that risk, and frankly,

21  I think efficiency, counsel's in favor of going to arbitration

22  as required by the contract and letting the arbitrator, the

23  binding arbitration decide who's entitled to what.

24          If there's some dispute about moving the money around

25  at that point, then obviously, the trustee has plenty of tools

1   at her disposal to get relief from this Court.  But the

2   arbitrator is the one who's entrusted with this decision, and

3   there's no reason that the arbitrator couldn't make that

4   decision instead of bringing this into the bankruptcy and

5   turning it into a parallel or sequential or something adversary

6   proceeding.  So my view is efficiency favors arbitration.

7           The only other point I really wanted to address, Your

8   Honor, is Ms. Tipping's argument that Ms. Hagh somehow sat on

9   her rights and has waived her right to arbitration.  To the

10  extent the Court considers the exhibits that were filed along

11  with the motion and the exhibits that were filed with the

12  response, there's a long history of Mr. Price contacting

13  Ms. Hagh to ask about whether arbitration -- whether she would

14  be invoking arbitration, and her response was always:  what

15  claims are you talking about; what claims are you bring; what

16  is the nature of this.  Because number one, she needed to

17  evaluate and advise Mr. Keefer about whether there was going to

18  be an arbitration about this contract, and number two, she

19  needed to determine if she had a conflict with her client

20  because, obviously, the further this goes, the more possibility

21  there becomes of a conflict between the client and the

22  attorney.  So she responded to those emails and asked for more

23  information about the claims, and that information wasn't

24  forthcoming.

25          With respect to saying that this was a separate

1  dispute that needed to be brought separately, Ms. Hagh did say

2  that in the context of the medical malpractice case and an

3  attempt to enforce an attorney's lien in the medical

4  malpractice case, she said in front of Judge Joe Binkley, no,

5  this is not for this Court to decide; this would have to be a

6  separate proceeding.  And of course, that proceeding is a

7  mediation and, if unsuccessful, an arbitration.  So in our

8  view, she certainly didn't sit on her rights there.

9            I think that's all I have in response to their

10 points, Your Honor.

11            THE COURT:  Okay.  No, thank you.  Yeah.

12            MR. SPRAGENS:  Thank you.

13            THE COURT:  All right.  If you're ready, proceed with

14 your evidence.

15            MS. TIPPING:  Okay.  Thank you, Your Honor.

16            MR. SPRAGENS:  Would you like me to wait until an

17 exhibit is used to make an objection to the use of the

18 exhibits?  Or should we -- I mean, it's all the exhibits.

19            THE COURT:  So here's what I just noticed, right?  So

20 you're relying on documents that were filed in your motion, and

21 you have not uploaded a witness and exhibit list.  Counsel's

22 relying on documents that were just uploaded.

23            The Court will entertain the evidence as presented.

24 If you have a substantive objection to that evidence, raise it.

25 You can go ahead and lodge your overall objection, if you have

1   one, right now.

2         But it seems as if the Court is going to consider --

3   the Court will make a determination as we go as to, obviously,

4   the substance of the exhibits, but given the fact that the

5   exhibits were uploaded, unless there's a substantive objection,

6   the Court will likely consider.  But I'll leave that to you on

7   if you want to lodge your objection now or as we go.

8         MR. SPRAGENS:  Sure, Your Honor.  I'll just object to

9   using any exhibits that were just uploaded at about 11 o'clock

10   today.

11         THE COURT:  Okay.

12         MS. TIPPING:  Your Honor, in light of the fact that

13   there's no arbitration contract before the Court and there's

14   certainly nothing related to Defendant Hagh requiring

15   arbitration with Defendant Hagh [sic], we are going to rest on

16   the arguments that have been made at this point and ask the

17   Court to rule based on the evidence that's before you.

18         THE COURT:  Okay.

19         MR. SPRAGENS:  Thank you, Your Honor.  We're relying

20   on our papers and the exhibits thereto.

21         THE COURT:  All right.  The Court will take a five-

22   minute recess.  Or it may not be five minutes; the Court will

23   take a recess.  How about that?

24         THE CLERK:  All rise.

25     (Recess taken at 12:08 p.m.)

Case 3:23-cv-00961   Document 12-1   Filed 11/13/23   Page 207 of 216 PageID #: 5633
ACCESS TRANSCRIPTS, LLC      1-855-USE-ACCESS (873-2237)
207

1       (Proceedings resumed at 12:59 p.m.)

2               THE CLERK:  All rise.

3               THE COURT:  Take your seats.  All right.  Thank you,

4   Counsel, for your argument.  Court's ready to rule, and I'll be

5   reading an oral ruling at this time on the motion to dismiss.

6               This matter is before the Court on the motion to

7   dismiss brought by Defendants Bretton Keefer and Afsoon Hagh.

8   Counsel for the movants represented that he would rely on his

9   motion and argument and presented no evidentiary support for

10  his position that this case should be dismissed for lack of

11  subject-matter jurisdiction and lack of personal jurisdiction,

12  as well as the alternative request seeking arbitration.

13              He failed to file a witness and exhibit list and,

14  instead, sought the Court's judicial notice of documents

15  attached to his motion and to the amended complaint.

16              Court declines judicial notice of documents that have

17  not been authenticated through the evidentiary process.

18              Movants argue that this Court lacks jurisdiction

19  based on an arbitration clause in an agreement between

20  Defendant Keefer and the plaintiff.  As there is no such

21  agreement between plaintiff and Defendant Hagh, the argument on

22  her behalf is particularly lacking.

23              The very purpose of bankruptcy is to modify the

24  rights of debtors and creditors, and Congress intended to

25  centralize disputes about a debtor's assets and legal

1  obligations in the bankruptcy courts, and arbitration is

2  inconsistent with centralization of these decisions because

3  permitting an arbitrator to decide a core or noncore issue

4  would make debtor-creditor rights contingent upon an

5  arbitrator's ruling, rather than the ruling of the bankruptcy

6  judge assigned to hear the debtor's case.  And I am citing

7  Phillips v. Congleton, 403 F.3d 164 (4th Cir. 2005).

8          Bankruptcy courts consider the following factors in

9  determining whether to compel or deny an arbitration request:

10          First, whether the arbitration proceeding was

11  commenced prepetition.  It was not in this instance.

12          Whether the party seeking arbitration has formally

13  appeared in the bankruptcy case.

14          Three, whether the arbitrator has special knowledge

15  or expertise which would be helpful to the resolution of

16  disputed issues.  No arbitrator is appointed because no

17  arbitration has been commenced.

18          Number four, whether there is a strong likelihood

19  that the debtor will confirm a plan, which is inapplicable.

20          Number five, there is an international arbitration

21  agreement provision; there is not.

22          But of particular significance here are factors six

23  and seven:  six, the likelihood of piecemeal litigation.

24  Significant likelihood exists.

25          And seven, what impact resolution of the issue will

```
 1   have on the bankruptcy estate:  potentially very significant in
 2   this instance.  And that list comes from B.J. Wade and also In
 3   re Nukote from right here in the Middle District of Tennessee.
 4            So factors six and seven carry the day and outweigh
 5   all other issues.
 6            Moreover, on March 13, 2023, the District Court from
 7   the Middle District of Tennessee referred this case to the
 8   bankruptcy court on the unopposed motion of the Chapter 7
 9   trustee.  The plaintiff's claims are directly related to the
10   administration of the main bankruptcy case, as well as the
11   trustee's claim in her related adversary proceeding.
12            Moreover, Section 105 of the Bankruptcy Code
13   authorizes the Court to issue any order, process, or judgment
14   that is necessary or appropriate to carry out the provisions of
15   this title.
16            The Court determines that it is fundamentally
17   accepted that request for arbitration be denied when the
18   arbitration would frustrate the purpose of the Bankruptcy Code
19   and this Court's ability to retain jurisdiction over the
20   bankruptcy process.
21            For those reasons, the motion to dismiss is denied.
22            If I could get an order to that effect, incorporating
23   the findings and reasoning that I've just announced orally?
24            MS. TIPPING:  Yes, Your Honor.
25            THE COURT:  All right.  Any other questions from
```

1  counsel?

2      MR. SPRAGENS:  No, Your Honor.

3      THE COURT:  All right.  The one thing the Court will

4  do, since there is a collateral case, we're going to set this

5  out to January of '24, effectively, for an updated status, and

6  hopefully by that time, the case will be returned from the --

7  the other case will come back from the district court, or we'll

8  know that that piece is no longer before this Court.  So we'll

9  have some certainty, hopefully.  So plan on January of '24

10  being the next time you'll be here in front of me before -- on

11  this matter.

12      MS. TIPPING:  Thank you, Your Honor.

13      THE COURT:  All right?

14      MR. SPRAGENS:  Thank you, Your Honor.

15      THE COURT:  Thank you.  Court will be adjourned.

16      THE CLERK:  All rise.

17      (Proceedings concluded at 1:06 p.m.)

18                          *  *  *  *  *

19

20

21

22

23

24

25

1          **C E R T I F I C A T I O N**

2

3          I, Lisa Luciano, court-approved transcriber, hereby

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter, to the best of my ability.

7

8          *Lisa Luciano*

9    _____

10   LISA LUCIANO, AAERT NO.  327      DATE:  October 13, 2023

11   ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC,** | **Judge Walker** |
| Debtor. | |
| | **Adv. Proc. No. 3:23-ap-90036** |
| **BRIAN CUMMINGS,** | |
| Plaintiff, | |
| v. | |
| **BRETTON KEEFER; JEANNE BURTON, TRUSTEE; and AFSOON HAGH,** | |
| Defendants. | |

## BRETTON KEEFER AND AFSOON HAGH'S
## NOTICE OF APPEAL AND STATEMENT OF ELECTION

Bretton Keefer and Afsoon Hagh ("Appellants"), through counsel, give notice of their appeal from the Bankruptcy Court's September 6, 2023 Order (Doc. 20, signed September 5, 2023). In furtherance of the same, Appellants state as follows.

### Part 1: Identity of Appellant

1. The name of the Appellants are Bretton Keefer and Afsoon Hagh. Appellants are individually named defendants in the adversary proceeding brought by Brian Cummings.

1

213

**Part 2: Subject of the Appeal**

2.    Appellants appeal from the Court's Order Denying Appellants' Motion to Dismiss or, in the Alternative, to Stay Pending Mediation and Arbitration (Doc. 20). The Order was electronically signed on September 5, 2023 and entered on the docket by the Clerk on September 6, 2023.

**Part 3: Parties to the Appeal**

3.    The names of the Parties to the Order appealed from as well as the contact information for their attorneys are:

    a.  Afsoon Hagh
        Bretton Keefer
        John Spragens
        Spragens Law PLC
        311 22nd Ave. N.
        Nashville, TN 379203
        (615) 983-8900 (T)
        john@spragenslaw.com

    b.  Brian Cummings
        Elizabeth Tipping
        Counterpoint Legal, PLC
        2689 Union Hill Road
        Joelton, TN 37080
        (615) 426-5566 (T)
        liz@counterpointlaw.com

    c.  Debtor Cummings Manookian,
        Jay R. Lefkovitz
        Lefkovitz & Lefkovitz, PLLC
        312 East Broad Street, Suite A
        Cookeville, TN 38501
        (931) 528-5297 (T)
        931-526-6244 (F)
        JLefkovitz@lefkovitz.com

    d.  Trustee Jeanne Anne Burton
        Phillip Young
        One Franklin Park

6100 Tower Circle, Suite 200
Franklin, TN 37067
(615) 465-6008 (T)
phillip@thompsonburton.com

e.  Creditor Grant, Konvalinka & Harrison, P.C.,
John P. Konvalinka
Grant, Konvalinka & Harrison, P.C.
633 Chestnut Street Suite 900 Republic Centre
Chattanooga, TN  37450-0900
(423) 756-8400 (T)
(423) 756-6518 (F)
jkonvalinka@gkhpc.com

f.  Creditor D.F. Chase, Inc.
Daniel Puryear
Puryear Law Group
104 Woodmont Boulevard, Suite 201
Nashville, TN 37205
(615) 255-4859 (T)
(615) 630-6602 (F)
dpuryear@puryearlawgroup.com

## Part 4: Election to have appeal heard by District Court

4.  Appellants elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

Date:  September 8, 2023               Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Bretton Keefer and Afsoon Hagh*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed September 6, 2023 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*