# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRETTON KEEFER and AFSOON HAGH,** | ) | |
| | ) | |
| | ) | |
| **Appellants,** | ) | **Case No. 3:23-cv-00961** |
| | ) | **Bankr. Case No. 3:19-bk-07235** |
| **v.** | ) | **Adv. Pro. No. 3:23-ap-90036** |
| | ) | **Judge Aleta A. Trauger** |
| **BRIAN CUMMINGS,** | ) | |
| | ) | |
| **Appellee.** | ) | |

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
*In re: Cummings Manookian, PLLC.*
*Cummings v. Keefer, et al.*
Bankr. Case No. 3:23-ap-90036

---

## BRIEF OF THE APPELLEE BRIAN CUMMINGS

---

Elizabeth S. Tipping, No. 023066
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713
etipping@nealharwell.com
*Counsel for Appellee Brian Cummings*

# I.  TABLE OF CONTENTS

I.  Table of Contents ................................................................................. i

II.  Table of Authorities ............................................................................ ii

III.  Statement Regarding Oral Argument ............................................... 1

IV.  Standard of Review ............................................................................ 1

V.  Statement of the Case ......................................................................... 2

VI.  Summary of Argument ....................................................................... 7

VII.  Argument ............................................................................................. 9

    A.  The Bankruptcy Court Properly Denied Appellants' Motion, Because Arbitration of this Dispute Inherently Conflicts with the Purposes of the Bankruptcy Code. ................................. 9

    B.  This Court Should Affirm the Bankruptcy Court's Ruling Because There is No Arbitration Agreement Between Brian Cummings and Afsoon Hagh. ......................................... 17

    C.  If This Court Rules that the Bankruptcy Court Erred in its Ruling, the Court Should Remand the Case for a Determination of Whether the Appellants Waived Arbitration. ................................. 21

VIII.  Conclusion ........................................................................................ 23

IX.  Certificate of Compliance with Fed. R. Bankr. P. 8015(h) ........... 24

X.  Certificate of Service ........................................................................ 25

## II.    TABLE OF AUTHORITIES

*Anderson v. Credit One Bank, N.A.*,
　　884 F.3d 382 (2nd Cir. 2017)............................................................10

*Gandy v. Gandy*,
　　299 F.3d 489 (5th Cir. 2002).............................................................11

*General Star Nat'l Ins. Co. v. Administratia Asigurarilor De Stat*,
　　289 F.3d 434 (6th Cir. 2002).............................................................21

*Hurley v. Deutsche Bank Trust Co. Ams.*,
　　610 F.3d 334 (6th Cir. 2010)....................................................... 21, 22

*In re B.J. Wade*,
　　523 B.R. 594 (Bankr. W.D. Tenn. 2014). ..................................... 14, 15

*In re Bradford*,
　　192 B.R. 914 (E.D. Tenn. 1996). ........................................................1

*In re EPD Inv. Co., LLC*,
　　821 F.3d 1146 (9th Cir. 2016)...........................................................12

*In re F & T Contractors, Inc.*,
　　649 F.2d 1229 (6th Cir. 1981)............................................................1

*In re Nu-Kote Holding, Inc.*,
　　257 B.R. 855 (Bankr. M.D. Tenn. 2001). ............................... 14, 15, 22

*In re Project Restore, LLC*,
　　2022 Bankr. LEXIS 2868 (Bankr. M.D. Tenn. Oct. 7, 2022)........................10

*Larson v. Swift Rock Financial, Inc.*,
　　545 B.R. 47 (D. Colo. 2015).............................................................12

*O.J. Distributing, Inc. v. Hornell Brewing Co.*,
　　340 F.3d 345 (6th Cir. 2003)....................................................... 21, 22

*Phillips v. Congelton, L.L.C.*,
    403 F.3d 164 (4th Cir. 2005)................................................................. 12, 17

*Roth v. Butler Univ.*,
    594 B.R. 672 (Bankr. S.D. Ind. 2018). ........................................................12

*U.S. Lines, Inc. v. Am. S.S. Owners Mut. Protection & Indem. Ass'n*,
    197 F.3d 631 (2nd Cir. 1999)........................................................................11

*VIP, Inc. v. KYB Corp.*,
    951 F.3d 377 (6th Cir. 2020)................................................................. 18, 19

*W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*,
    765 F.3d 625 (6th Cir. 2014)................................................................. 18, 19

iii

## III.    STATEMENT REGARDING ORAL ARGUMENT

Appellee Brian Cummings submits that oral argument is not necessary in this matter. However, to the extent the Court grants oral argument to the Appellants, the Appellee would likewise request to be heard.

## IV.    STANDARD OF REVIEW

The decision to compel or deny arbitration is discretionary with the bankruptcy judge. *In re F & T Contractors, Inc.*, 649 F.2d 1229, 1232 (6th Cir. 1981). As such, the standard of review in this appeal from the Bankruptcy Court's Order denying Appellants' Motion to Dismiss based on an arbitration provision is abuse of discretion. *Id*. at 1232-33; *see also In re Bradford*, 192 B.R. 914, 916-17 (E.D. Tenn. 1996).

1

## V.    STATEMENT OF THE CASE

The Appellants devote twelve full pages of their brief to a lengthy discussion of facts—most of which are unsupported by any competent evidence. The facts relevant to the issues on appeal are straightforward, and are set forth below.

This adversary proceeding is a dispute concerning the division of a legal fee earned in a wrongful death action (the "*Shoemaker* lawsuit") that was resolved at mediation in October 2021. (Adv. Proc. 3:23-ap-90036, Doc. No. 5-15.) The plaintiff in the *Shoemaker* lawsuit, Appellant Bretton Keefer, was initially represented by three attorneys: Appellee Brian Cummings, Appellant Afsoon Hagh, and Appellant Hagh's husband, Brian Manookian. (*Id*. at ¶¶ 2-5.) The three attorneys originally represented Appellant Keefer while practicing together at Cummings Manookian, PLC ("CM"). (*Id*.) In September 2018, Mr. Cummings voluntarily left CM and began practicing at Cummings Law. (*Id*. at ¶¶ 5, 8.) From that time until October 2020, Mr. Cummings and Appellant Hagh jointly represented Appellant Keefer (Mr. Manookian was suspended from the practice of law for the majority of the time that the *Shoemaker* lawsuit was pending). (*Id*. at ¶¶ 8, 14; Adv. Proc. 3:23-ap-90036, Doc. No. 5-83.)

After the *Shoemaker* case was resolved, Mr. Cummings filed a lawsuit seeking a portion of the attorney's fee generated in the case (the "Shoemaker fee"). (Adv. Proc. 3:23-ap-90036, Doc. No. 5-15.) In support of his claim, Mr. Cummings alleged

that between April 2017, when Appellant Keefer retained CM, and October 2020, Mr. Cummings performed a substantial portion of the legal work on the *Shoemaker* lawsuit, including performing all pre-lawsuit investigation, preparing the 65-page complaint, preparing a significant portion of the written discovery propounded upon the defendant in that case, preparing all of Appellant Keefer's written responses to discovery, taking and defending numerous depositions, retaining all Rule 26 witnesses and medical experts, and preparing the Rule 26 disclosures. (*Id*. at ¶¶ 11-13, 25-31.) Mr. Cummings also advanced over $60,000.00 in litigation expenses, representing 90-100% of all litigation expenses incurred by Appellant Keefer during Mr. Cummings's representation. (*Id*. at ¶¶ 39-40.) Mr. Cummings withdrew as counsel for Appellant Keefer in October 2020 after being told by the Board of Professional Responsibility that comments made by Appellants Hagh and Keefer required him to withdraw immediately, and on November 27, 2020, Mr. Cummings filed a Notice of Attorney's Lien in the *Shoemaker* lawsuit. (*Id*. at ¶¶ 14-20; Adv. Proc. 3:23-ap-90036, Doc. No. 5-84.)

While the *Shoemaker* lawsuit was pending, in November 2019, CM filed a bankruptcy petition in this Court because of debts incurred solely due to the actions of Brian Manookian. (Adv. Proc. 3:23-ap-90036, Doc. No. 5-3 at ¶ 2; Adv. Proc. 3:23-ap-90036, Doc. No. 5-15 at ¶ 5; Bankr. Case No. 3:19-bk-07235, Doc. No. 1.) Shortly after Jeanne Burton's appointment as Trustee in CM's bankruptcy action,

she filed an adversary proceeding against Appellant Hagh, Appellant Hagh's law firm, and Mr. Manookian's law firm (the "Hagh AP"). (Adv. Proc. 3:20-ap-90002, Doc. No. 1.) The Trustee raised numerous claims against Appellant Hagh and the other defendants in the Hagh AP based on their fraudulent transfers and conversion of property of CM, including attorney's fees to which CM was entitled, for the purposes of hindering, delaying, and defrauding creditors. (*Id*.) The Shoemaker fee is one of the attorney's fees to which the Trustee has asserted a claim, and the Trustee filed an attorney's lien in the *Shoemaker* lawsuit on October 29, 2021. (Adv. Proc. 3:23-ap-90036, Doc. No. 5-3 at ¶ 3.) Mr. Cummings is in agreement that a portion of his work on the *Shoemaker* lawsuit was performed while he was still at CM, thus subjecting a percentage of Mr. Cummings' fee (and his lien) to the jurisdiction of the Bankruptcy Court. (Adv. Proc. 3:23-ap-90036, Doc. No. 5-15 at ¶ 9.)

After Mr. Cummings filed his lawsuit seeking a portion of the Shoemaker fee, the Trustee removed the case to the District Court, and filed a motion to refer the case to the Bankruptcy Court. (Adv. Proc. 3:23-ap-90036, Doc. No. 5; Adv. Proc. 3:23-ap-90036, Doc. No. 5-3.) No party opposed the Trustee's motion to refer the case to the Bankruptcy Court, and it was transferred to the Bankruptcy Court on March 13, 2023. (Adv. Proc. 3:23-ap-90036, Doc. No. 1.)

Following the transfer of Mr. Cummings' case to the Bankruptcy Court, the Appellants filed a Motion to Dismiss or, in the Alternative, to Stay Pending

Mediation and Arbitration on Behalf of Defendants Keefer and Hagh (the "Motion to Dismiss"). (Adv. Proc. 3:23-ap-90036, Doc. No. 9.) In their Motion to Dismiss, the Appellants argued that an arbitration provision contained within a representation agreement between Mr. Cummings and Appellant Keefer mandated dismissal of Mr. Cummings' claims with prejudice.

The Bankruptcy Court scheduled an evidentiary hearing concerning the Motion to Dismiss on August 30, 2023. (Adv. Proc. 3:23-ap-90036, Doc. No. 10.) Appellants did not file a witness or exhibit list by the deadline set forth in the Court's scheduling order, and they chose not to call any witnesses or present any evidence at the evidentiary hearing. (*See* Transcript of Hearing on Motion, August 30, 2023 (the "Transcript") found at Adv. Proc. 3:23-ap-90036, Doc. No. 31; Adv. Proc. 3:23-ap-90036, Doc. No. 20.) After hearing argument from counsel for Appellants, counsel for Mr. Cummings, and counsel for the Trustee, the Bankruptcy Court denied Appellants' Motion to Dismiss. (Adv. Proc. 3:23-ap-90036, Doc. No. 20.) The Bankruptcy Court ruled that (1) there was no arbitration agreement between Mr. Cummings and Appellant Hagh, and (2) an examination of the factors to be considered by a bankruptcy court in determining whether to compel or deny arbitration demonstrated that in this case arbitration should be denied, as it would frustrate the purpose of the Bankruptcy Code and the Bankruptcy Court's ability to retain jurisdiction over the bankruptcy process. (Transcript, Adv. Proc. 3:23-ap-

5

90036, Doc. No. 31, at 23-25; Adv. Proc. 3:23-ap-90036, Doc. No. 20.) This appeal followed.

## VI.    SUMMARY OF ARGUMENT

This appeal lacks merit and should be denied. Appellants Afsoon Hagh and Bretton Keefer have asked this Court to reverse the Bankruptcy Court's Order denying their Motion to Dismiss based on an alleged arbitration agreement. Relying on sweeping generalizations concerning the enforceability of arbitration agreements, the Appellants fail to appreciate or acknowledge the effect of the bankruptcy proceedings on their insistence that Mr. Cummings' claims should be resolved through arbitration.

Unlike the Appellants, the Bankruptcy Court examined the conflict between the purposes of the Bankruptcy Code and the Federal Arbitration Act. Applying the factors to be considered when a bankruptcy court is presented with a motion seeking to compel arbitration, the Bankruptcy Court properly determined that piecemeal litigation concerning the rights of the Trustee, Mr. Cummings, and Appellant Hagh to the same asset of the bankruptcy estate would frustrate the purposes of the Bankruptcy Code. The Bankruptcy Court's denial of arbitration in this dispute was a proper exercise of its discretion.

Furthermore, there is no arbitration agreement between Appellant Hagh and Mr. Cummings, and it would be improper to force Mr. Cummings to arbitrate his claim against her.

Finally, if this Court concludes that the Bankruptcy Court erred when it determined that arbitration should be denied because it would frustrate the purpose of the Bankruptcy Code, the matter should be remanded for consideration of whether the Appellants waived any rights they may have had to compel arbitration by waiting at least fifteen months to formally demand that this dispute be arbitrated.

## VII. ARGUMENT

Appellants have asked this Court to reverse the Bankruptcy Court's Order denying their Motion to Dismiss Mr. Cummings' claims against them. Appellants rely on an arbitration provision in the representation agreement between Mr. Cummings and Appellant Keefer.[1] This reliance is misplaced, and this Court should affirm the Bankruptcy Court's Order in its entirety.

### A. The Bankruptcy Court Properly Denied Appellants' Motion, Because Arbitration of this Dispute Inherently Conflicts with the Purposes of the Bankruptcy Code.

As they did in their filing in the Bankruptcy Court, the Appellants ignore the impact of the bankruptcy proceedings on their demand that Mr. Cummings' claim be determined in an arbitral forum rather than in the Bankruptcy Court. However, since the Shoemaker fee is an asset of the bankruptcy estate, and since the claims of the Trustee, Mr. Cummings, and Appellant Hagh must all be decided together to avoid inconsistent awards dividing that asset, the Bankruptcy Court is the only appropriate forum to determine each party's interest. The Bankruptcy Court properly found that arbitration of this dispute would frustrate the purpose of the Bankruptcy Code and that, as such, arbitration should be denied.

---

[1] Although Appellants characterize the final sentence of the arbitration provision as a "covenant-not-to-sue," it is clear from the plain reading of the paragraph on which Appellants rely that the final sentence of that paragraph is not a separate and distinct covenant, but is simply part of the arbitration provision. Since the Appellants have not made any arguments concerning the purported "covenant-not-to-sue" that are distinct from their arguments regarding arbitration, Appellee has not made a distinction herein between the arbitration paragraph and that paragraph's final sentence.

9

Bankruptcy courts have exclusive jurisdiction over bankruptcy cases, the property of a debtor, and the bankruptcy estate. *In re Project Restore, LLC*, 2022 Bankr. LEXIS 2868 at *12-13, 2022 WL 6233552 at *4 (Bankr. M.D. Tenn. Oct. 7, 2022). Disputes involving the Bankruptcy Code and the Federal Arbitration Act "often present a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution." *In re Project Restore*, 2022 Bankr. LEXIS 2868 at *9. When evaluating motions to compel arbitration, courts are asked to determine whether the dispute is a core proceeding and whether an inherent conflict exists between the enforcement of an arbitration agreement and the underlying purposes of the Bankruptcy Code. *Id*. at *11. This involves conducting a "particularized inquiry into the nature of the claim and the facts of the specific bankruptcy" as well as consideration of the objectives of the Bankruptcy Code, such as "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." *See Anderson v. Credit One Bank, N.A.*, 884 F.3d 382, 389 (2nd Cir. 2018).

Applying this analysis, courts around the country have found that arbitration agreements inherently conflict with the purposes of the Bankruptcy Code in a variety of circumstances. For example, the Second Circuit Court of Appeals found it was

error to compel arbitration of a claim seeking a declaratory judgment of the parties' rights under various insurance policies, which provided the only funds available to numerous personal injury claimants. *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Protection & Indem. Ass'n*, 197 F.3d 631 (2nd Cir. 1999). The *U.S. Lines* Court determined that the declaratory judgment proceedings were integral to the bankruptcy court's ability to preserve and equitably distribute assets, and that the need for a centralized proceeding was augmented by the complex factual scenario, involving multiple claims, policies, and insurers. *Id*. at 640-41.

Likewise, the Fifth Circuit Court of Appeals affirmed denial of a motion to compel arbitration of a debtor's claims, which included claims of avoidance of fraudulent transfers and to recover transferred property. *Gandy v. Gandy*, 299 F.3d 489 (5th Cir. 2002). The *Gandy* Court recognized that while the claims could technically be divided and some sent to arbitration, parallel proceedings would be wasteful and inefficient, and potentially could yield different results and subject parties to dichotomous obligations. *Id*. at 499. The Court found that arbitration of the debtor's claims inherently conflicted with the Bankruptcy Code's goal of centralized resolution, the need to protect creditors and debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders. *Id*. at 500.

11

The inherent conflict can exist even where the request for arbitration does not seek to compel any claims by or against the debtor to arbitration. The Fourth Circuit Court of Appeals affirmed denial of a motion to compel arbitration of claims where the debtor was not going to be a named party in the arbitration, because the arbitration would substantially interfere with the debtor's efforts to reorganize. *Phillips v. Congelton, L.L.C.*, 403 F.3d 164 (4th Cir. 2005). The *Phillips* Court explained that the bankruptcy court's findings regarding the impact of the proposed arbitration on the bankruptcy proceedings confirmed that the arbitration was inconsistent with the purpose of the bankruptcy laws to centralize disputes about a debtor's legal obligations. *Id*. at 170. *See also In re EPD Inv. Co., LLC*, 821 F.3d 1146 (9th Cir. 2016) (affirming denial of motion to compel arbitration of Trustee's claims, including claims to disallow proofs of claims and to avoid fraudulent transfers); *Roth v. Butler Univ.*, 594 B.R. 672 (Bankr. S.D. Ind. 2018) (declining to compel arbitration where it would require the debtor to pursue the same claims against different parties in two forums, incur the cost of two separate proceedings, and face potentially different outcomes); *Larson v. Swift Rock Financial, Inc.*, 545 B.R. 47 (D. Colo. 2015) (affirming bankruptcy court's denial of motion to compel arbitration of trustee's direct claims, including trustee's § 548 claims).

Cummings Manookian, PLC filed its bankruptcy action nearly four years ago, in November of 2019. (Bankr. Case No. 3:19-bk-07235, Doc. No. 1.) After Ms.

12

Burton was appointed as Trustee, she filed the Hagh AP against Appellant Hagh, Appellant Hagh's law firm, and Mr. Manookian's law firm, asserting multiple claims against Appellant Hagh and the other defendants based on their fraudulent transfers and conversion of property of CM, including attorney's fees to which CM was entitled, for the purposes of hindering, delaying, and defrauding creditors. (Adv. Proc. 3:20-ap-90002, Doc. No. 1; Adv. Proc. 3:23-ap-90036, Doc. No. 5-3 at ¶¶ 2-3.) The Trustee also asserted claims of successor liability and alter ego based on the fact that Appellant Hagh and Mr. Manookian used the two defendant law firms to transfer CM's assets and divert attorney's fees from CM in an effort to hinder, delay, and defraud CM's creditors. (Adv. Proc. 3:20-ap-90002, Doc. No. 1.)

When Mr. Cummings filed his claim for fees in the Davidson County Circuit Court, the Trustee removed the case to the District Court and immediately filed a Motion to Refer the Case to Bankruptcy Court. (Adv. Proc. 3:23-ap-90036, Doc. No. 5, Doc. No. 5-3.) No party opposed the Trustee's Motion, and the District Court transferred this matter to the Bankruptcy Court on March 13, 2023. (Adv. Proc. 3:23-ap-90036, Doc. No. 1.)

The Trustee, Appellant Hagh, and Mr. Cummings all claim an interest in the same funds: the Shoemaker fee. (Adv. Proc. 3:23-ap-90036, Doc. No. 5-3 at ¶¶ 3-4; Adv. Proc. 3:23-ap-90036, Doc. No. 5-15 at ¶¶ 9, 44-46.) Both the Trustee and Mr. Cummings filed attorney's liens in the *Shoemaker* lawsuit. (Adv. Proc. 3:23-ap-

13

90036, Doc. No. 12-1; Adv. Proc. 3:23-ap-90036, Doc. No. 5-84.) As discussed in Section A of the Argument in the Trustee's Brief, which is adopted and incorporated as if fully set forth herein, the Bankruptcy Court has jurisdiction to resolve the competing interests of the Trustee, Appellant Hagh, and Mr. Cummings (including the attorney's liens and the Mr. Cummings's claim against the Trustee) in the same fee from the *Shoemaker* lawsuit because it is either a core proceeding or is "related to" a core proceeding.

The Bankruptcy Court properly recognized that a request for arbitration should be denied when the arbitration would frustrate the purpose of the Bankruptcy Code and the Bankruptcy Court's ability to retain jurisdiction over the bankruptcy process. (Transcript, Adv. Proc. 3:23-ap-90036, Doc. No. 31, at 25; Adv. Proc. 3:23-ap-90036, Doc. No. 20.) In making this determination, the Bankruptcy Court looked to factors that Bankruptcy Courts in Tennessee examine when determining whether to compel arbitration. (*Id*. at 23-25; Adv. Proc. 3:23-ap-90036, Doc. No. 20.) Citing *In re Nu-Kote Holding, Inc.*, and *In re B.J. Wade*, the Bankruptcy Court examined the following factors:

(1) Whether the arbitration proceeding was commenced prepetition;

(2) Whether the party seeking arbitration has formally appeared in the bankruptcy case;

(3)     Whether the arbitrator has special knowledge or expertise which would be helpful to the resolution of the disputed issues;

(4)     Whether there is a strong likelihood that the debtor will confirm a plan;

(5)     Whether there is an international arbitration provision;

(6)     The likelihood of piecemeal litigation;

(7)     Whether the issue to be arbitrated is core or noncore; and

(8)     What impact resolution of the issue will have on the bankruptcy estate.

(Transcript, Adv. Proc. 3:23-ap-90036, Doc. No. 31, at 23-25; Adv. Proc. 3:23-ap-90036, Doc. No. 20.) *In re Nu-Kote Holding, Inc.*, 257 B.R. 855 (Bankr. M.D. Tenn. 2001); *In re B.J. Wade*, 523 B.R. 594 (Bankr. W.D. Tenn. 2014).

As discussed in detail in Section B of the Argument in the Trustee's brief, which is adopted and incorporated as if fully set forth herein, the Bankruptcy Court correctly found that these factors demonstrate that the Bankruptcy Court is the proper forum for this dispute. In particular, the Bankruptcy Court found that there was a significant likelihood of piecemeal litigation and that resolution of the issue had a potentially very significant impact on the bankruptcy estate, and that these two factors outweighed all other issues. (Transcript, Adv. Proc. 3:23-ap-90036, Doc. No. 31, at 24-25; Adv. Proc. 3:23-ap-90036, Doc. No. 20.)

Since the Trustee, Mr. Cummings, and Appellant Hagh all claim an interest in the same asset, compelling arbitration of Mr. Cummings' claims against Appellants

15

Case 3:23-cv-00961     Document 14     Filed 12/22/23     Page 19 of 29 PageID #: 5680

Hagh and Keefer will result in piecemeal litigation concerning the proper distribution of the Shoemaker fee. More problematic is the fact that the resolution of the claims by and against the Trustee with respect to the Shoemaker fee in the Bankruptcy Court, and resolution of Mr. Cummings' claims against Appellants Hagh and Keefer with respect to the Shoemaker fee in arbitration, will result in inconsistent rulings where both the Bankruptcy Court and the arbitrator will be allocating the same fee, but among different parties. This is precisely the reason for the Bankruptcy Code's goal of centralized resolution of issues, and maintaining all claims regarding the Shoemaker fee in the Bankruptcy Court is integral to the Bankruptcy Court's ability to preserve and equitably distribute assets.

Appellants claim that the Bankruptcy Court's ruling was based on "arguments that were not presented to the Court by any party" and that "no one argued [] that the Bankruptcy Court alone must exercise authority over this case." (*See* Case No. 3:23-cv-00961, Doc. No. 12, at 8, Statement B, and at 31-32.) This assertion is demonstrably false.

The Bankruptcy Court's exclusive jurisdiction over the dispute, and the conflict between the Bankruptcy Code and the Federal Arbitration Act, was discussed at length in Mr. Cummings' Response in Opposition to Motion to Dismiss and in oral argument. (*See* Adv. Proc. 3:23-ap-90036, Doc. No. 12, at 7-10; Transcript, Adv. Proc. 3:23-ap-90036, Doc. No. 31, at 14-16.) In fact, one of the

16

cases cited by the Bankruptcy Court in its ruling, *Phillips v. Congelton*, was relied upon by Mr. Cummings in his Response. (*See* Adv. Proc. 3:23-ap-90036, Doc. No. 12, at 8-9; Transcript, Adv. Proc. 3:23-ap-90036, Doc. No. 31, at 23-24; Adv. Proc. 3:23-ap-90036, Doc. No. 20.) Moreover, Appellants' own counsel briefly addressed the question of whether bankruptcy jurisdiction should trump the FAA during his rebuttal argument and attempted to distinguish this matter from the Fourth Circuit's ruling in *Phillips v. Congelton*. (Transcript, Adv. Proc. 3:23-ap-90036, Doc. No. 31, at 19.) Appellants' claim that these arguments were not raised or argued by any party is simply not supported by the record in this case.

For all of these reasons, the Bankruptcy Court did not abuse its discretion in denying Appellants' motion. Arbitration of the claims in this dispute inherently conflicts with the purposes of the Bankruptcy Code, and will lead to piecemeal litigation with unquestionably inconsistent results concerning an asset of the bankruptcy estate. This Court should affirm the ruling of the Bankruptcy Court.

### B. This Court Should Affirm the Bankruptcy Court's Ruling Because There is No Arbitration Agreement Between Brian Cummings and Afsoon Hagh.

Arbitration of Mr. Cummings' claim against Appellant Hagh is also improper because there is no basis for compelling arbitration of that claim. Although Appellants make no distinction between Mr. Cummings' claim against Appellant Hagh and Mr. Cummings' claim against Appellant Keefer, there is a crucial

difference: <u>There is no arbitration provision in any contract between Mr. Cummings and Appellant Hagh</u>. This is fatal to Appellant Hagh's appeal.

When considering a motion seeking to compel the arbitration of a dispute, the Court must first consider whether a valid arbitration agreement exists. *VIP, Inc. v. KYB Corp.*, 951 F.3d 377, 380 (6th Cir. 2020). Since arbitration is a matter of contract, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Id*. at 382 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010) (emphasis in original)). It also "goes without saying that a contract cannot bind a nonparty." *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625, 631 (6th Cir. 2014) (*quoting EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002)). It is well-settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id*. (*quoting AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).

Relying on these principles, in *W.J. O'Neil*, the Sixth Circuit reversed dismissal of a plaintiff subcontractor's claims against an architect and a designer arising from the construction of a hospital. 765 F.3d at 627-28. The plaintiff subcontractor had a contract with the construction manager that contained an

arbitration provision, and the architect and designer both had contracts with the property owner that contained arbitration provisions, but there was no contract between the plaintiff and the architect or the designer. *Id*. at 628, 632-33. As such, even though the plaintiff had agreed to arbitrate claims against another party involved in the construction project, the Court found that the plaintiff had not consented to arbitrate its claims against the architect and designer and was entitled to pursue his claims against those parties through litigation. *Id*. at 633-34.

In *VIP, Inc. v. KYB Corp.*, the Sixth Circuit refused to force plaintiffs to arbitrate their claims against a manufacturer based on an arbitration clause in a warranty. 951 F.3d at 380. The Sixth Circuit examined the language of the arbitration provision and determined that, by its terms, it only applied to claims filed by "original retail purchasers" of the products at issue. *Id*. at 383-84. The Court found that the plaintiffs were distributors, not original retail purchasers. *Id*. As such, the Court concluded that the plaintiffs had not consented to arbitration of the claims at issue. *Id*. at 384. Since the plaintiffs had not agreed to arbitrate the particular dispute at issue, the Court refused to force them to do so. *Id*. at 385-86.

Even though the Bankruptcy Court scheduled an evidentiary hearing concerning the Appellants' Motion to Dismiss, the Appellants elected not to present any witnesses or exhibits in support of their Motion. Instead, they relied upon the same unauthenticated documents they have now cited in their appellate brief. Even

if this Court were to excuse the Appellants' failure to present any competent evidence to support their Motion to Dismiss, they failed to provide the Court with <u>any</u> arbitration agreement between Mr. Cummings and Appellant Hagh. That is because no such agreement exists. Mr. Cummings did not agree to submit disputes between himself and Appellant Hagh to arbitration, and he cannot now be forced to arbitrate his claim against her. Indeed, Appellant Hagh is not even mentioned in the representation agreement upon which she relies.

Even if Appellant Hagh had been a party to the arbitration provision, arbitration of Mr. Cummings' claim against her would still be improper. The arbitration provision in the representation agreement between Mr. Cummings and Appellant Keefer refers to disputes arising between the attorneys and the client within the Attorney-Client relationship, not to disputes between two attorneys regarding division of a fee. With no explanation, Appellants simply assert that the arbitration provision applies to Mr. Cummings' claim against Appellant Hagh. Mr. Cummings did not agree to arbitrate disputes that he has with other attorneys (and certainly not with an attorney who was not even a party to the arbitration provision), and it would be improper for the Court to force him to arbitrate a dispute that he did not agree should be submitted to arbitration.

**C. If This Court Rules that the Bankruptcy Court Erred in its Ruling, the Court Should Remand the Case for a Determination of Whether the Appellants Waived Arbitration.**

Finally, if this Court determines that the Bankruptcy Court erred when it found that arbitration would frustrate the purpose of the Bankruptcy Code, the Court should remand this matter to the Bankruptcy Court to rule on Mr. Cummings' argument that, through their actions, Appellants waived any rights they may have had to enforce arbitration.

The Sixth Circuit has found that a defendant waived its right to arbitrate by engaging in tactics strikingly similar to those of the Appellants in this case. In *O.J. Distributing, Inc. v. Hornell Brewing Co.*, the Sixth Circuit found that the defendant waived its right to arbitrate when it engaged in pre-lawsuit negotiations with the plaintiff for fifteen months before raising the issue of arbitration and did not initiate arbitration until after the entry of default. 340 F.3d 345, 357-59 (6th Cir. 2003). The Court found that the defendant had "slept on its rights for approximately fifteen months," while the plaintiff incurred costs. *Id*. at 358-59. *See also General Star Nat'l Ins. Co. v. Administratia Asigurarilor De Stat*, 289 F.3d 434 (6th Cir. 2002) (finding that defendant waived its right to arbitrate where the defendant had actual notice of the lawsuit for 17 months but did not invoke the arbitration provision until after the district court had entered default judgment); *Hurley v. Deutsche Bank Trust Co.*

*Ams.*, 610 F.3d 334 (6th Cir. 2010) (finding that defendants waived arbitration where they actively participated in litigation for 26 months).

As discussed in the Response in Opposition to Motion to Dismiss, there is ample evidence demonstrating that, like the defendant in *O.J. Distributing*, the Appellants slept on their rights for at least fifteen months. (Adv. Proc. 3:23-ap-90036, Doc. No. 12.) Since the Bankruptcy Court found that arbitration should be denied based on the *Nu-Kote* factors, it was unnecessary for the Court to consider this additional basis for denying Appellants' Motion. However, if this Court vacates the Bankruptcy Court's ruling, this matter should be remanded for further proceedings regarding Mr. Cummings' alternate basis for denial of Appellant's Motion.

22

## VIII. CONCLUSION

The Bankruptcy Court correctly found that arbitration should be denied in this case, and that the determination of each party's interest in the Shoemaker fee should be made in the Bankruptcy Court. The Appellants have provided no grounds for finding that this was an abuse of the Bankruptcy Court's discretion. Furthermore, since there is no arbitration agreement between Mr. Cummings and Appellant Hagh, even if arbitration of Mr. Cummings' claim against Appellant Keefer were appropriate, there is no basis for compelling Mr. Cummings to arbitrate his claim against Appellant Hagh. For all of these reasons as more fully discussed above, this Court should affirm the Bankruptcy Court's Order, and dismiss this appeal.

Respectfully submitted,

**NEAL & HARWELL, PLC**

By:   /s/ Elizabeth S. Tipping
      Elizabeth S. Tipping, No. 023066

1201 Demonbreun Street, Suite 1000
Nashville, TN  37203
(615) 244-1713
etipping@nealharwell.com
*Counsel for Appellee Brian Cummings*

## IX.  CERTIFICATE OF COMPLIANCE WITH
## FED. R. BANKR. P. 8015(H)

This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(h) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this brief contains 4701 words.

This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman Font.

## X.    CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on this the 22nd day of December, 2023, via the Court's electronic filing system on the following:

> John T. Spragens
> Spragens Law PLC
> 311 22nd Ave. N.
> Nashville, TN  37203
> john@spragenslaw.com

> Phillip G. Young, Jr.
> Thompson Burton PLLC
> One Franklin Park
> 6100 Tower Circle, Suite 200
> Franklin, TN  37067
> phillip@thompsonburton.com

  /s/ Elizabeth S. Tipping

25